Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
Phone: 516-982-7718
Facsimile: 435-604-7850
lawrencemeadows@yahoo.com



FILED by _____ D.C.

JUL 11 2017

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. -- MIAMI

# IN THE UNITED STATES DISTRICT COURT

# FLORIDA SOUTHERN DISTRICT

| | |
|---|---|
| **LAWRENCE M. MEADOWS,** | **COMPLAINT** |
| Plaintiff, | |
| v. | |
| **ALLIED PILOTS ASSOCIATION,** | **Case No:** |
| a Texas Labor Association, and | |
| **DOES 1-10,** | |
| Defendants. | **JURY TRAIL DEMANDED** |

**COMES NOW**, the Pro Se Plaintiff, Lawrence M. Meadows, who hereby, files the following Complaint to sue Defendant's and states as follows:

## I.   JURISDICTION AND VENUE

1.        Plaintiffs' claims are filed pursuant to 28 U.S.C. § 1331 and § 1337(a) in that this suit seeks to enforce the Railway Labor Act ("RLA"), an Act of Congress regulating Commerce.  Venue is proper under 28 U.S.C. § 1391 in that defendants have either substantial contacts, or, with respect to the Allied Pilots Association has members in the state

of Florida; and the Plaintiff is domiciled in the state of Florida and is subject to personal jurisdiction.

## II.   PARTIES

2.      Plaintiff, Lawrence M. Meadows resides in Florida Utah, and as a *"pilot employee"* of American Airlines, Inc., he is a member of the class and craft of pilots, exclusively represented by defendant Allied Pilots Association, and as defined under U.S.C 45 §151- Fifth. Railway Labor Act

3.      Defendant, Allied Pilots Association (hereinafter "APA" or "Union"), is an unincorporated association, and labor organization, headquartered in Texas, with members in the state of Florida, and is the exclusive bargaining agent and *"representative"* of all pilots at American Airlines, Inc., as defined under 1 Sixth of the RLA, 45 U.S.C. § 151.Sixth.  At all relevant times APA was and is the collective bargaining agent for Plaintiff.

4.      DOES 1-10, are unknown individuals who had a role in the deprivation of Meadows contractual and statutory rights.

## III.   STATEMENT OF FACTS

5.      Plaintiff, Lawrence M. Meadows brings this action against his representative, the Allied Pilots Association, for violations of his rights pursuant to the Railway Labor Act, 45 U.S.C. § 151 et seq.

6.      The Railway Labor Act was originally enacted un 1926 to govern labor-employment relations is the rail industry, and was designed to, among other things, *"provide for the prompt an orderly settlement of all disputes growing of grievance or out of the interpretation or application of collective bargaining Agreements [CBA]."*

COMPLAINT

7.        Plaintiff alleges that; 1) That his *"representative"*, the Allied Pilots Association, breached its duty of fair representation owed him, when it treated him in arbitrary, discriminatory, and bad faith manner by willfully failing to protect his relative seniority on the American Airlines pilot's newly Integrated Seniority List ("ISL"), and 2) also refused to process Meadows' Expedited MOU Grievance, filed to protest the unfair, inequitable, and disparate treatment of his seniority rights in violation of the collective bargaining agreement.

### ***Background***

8.        On January 15, 2013, American Airlines, Inc. ("American" or "AA") and U.S. Airways ("US") executed a merger agreement entitled, Memorandum of Understanding of Contingent Collective Bargaining Agreement ("MOU), which outlined the terms of the merger to create the new American Airlines Group, and was signed by AA, US, and APA.

9.        The merger required which required the integration of all three associated pilot group's seniority lists, to include the list of Legacy American Airlines ("LAA") pilots, and the Legacy U.S. Airways ("LUS") east and west pilots.

10.      Since 1963, APA has been the exclusive bargaining agent of all LAA pilots, and remained such during the merger with U.S. Airways, and is now the representative of all pilots in the new American Airlines Group.

11.      On September 4, 2014, in accordance with the MOU, AA, US, and APA, executed a Seniority Integration Protocol Agreement ("SIPA"), which described the methodology to be used to integrate the seniority lists of the LAA pilots, LUS East and West pilots, and which would be decided by the Seniority List Integration ("SLI") arbitration proceedings, chaired by a panel of three arbitrators.

12.     APA created the American Airlines Pilots Seniority Integration Committee ("AAPSIC"), which consisted of nine APA committee members, who were was tasked with representing and protecting the seniority rights and interests of LAA pilots during the Seniority List Integration ("SLI") Arbitration proceedings.

13.     Meadows is a LAA pilot who was hired in 1991, in the following four-part bid status, MIA/FO/777/MDSB. He is currently receiving pilot long term disability benefits for more than five years, and the Company purportedly removed *"dropped"* him from the pre-merger LAA pilot seniority list on 10/24/2011, in apparent retaliation for engaging in protected whistleblower activity; which actions Meadows timely protested via grievances and litigation which were pending during the pendency of the SLI proceedings, and still are.

14.     APA currently lists Meadows and other similarly situated LAA pilots who have been on disability for greater than 5 years, using an internal status code of Medical Disability Dropped from AA seniority list ("MDD"). As of the SLI snap-shot date of December, 9, 2016, there were some 238 disabled LAA pilots in "MDD" status.

15.     Meadows and most other MDD pilots receive disability payments in the form of W-2 employee wages subject to tax-withholding, along with Active *"Pilot Employee"* Medical, Dental, Vision, Life Insurance, and Pension benefits, under the terms of the LAA 2004 Pilot Long Term Disability Plan. In which the Plan terms define these pilots as *"Inactive Pilots" "Employees" and "Pilot Employees"*.

16.     Accordingly, the AAPSIC treated many (at least 11) of these LAA MDD disabled pilots as *"Inactive Pilot"* [1] *"Employees"*, and *"pulled and plugged"* them, thereby

---

[1]     At least the treatment of these MDD pilots is consistent with Arbitrator Fishgold's 7,300 cockpit Crewmember Floor Arbitration decision, as upheld by the U.S. District Court of D.C.; which held that pilots on medical disability while *"on inactive status"* were counted as being on the pilot seniority list; because they are still considered employees and cockpit crewmembers, and in particular, *"those on medical disability receive streams of*

preserving their original relative positon on the AAPSIC certified seniority list submitted to the SLI Arbitral Board.

17.     These certain MDD pilots who received favorable treatment relative to Meadows, included very senior Captains, and none of them had outstanding individual grievances or litigation pending against the company. Meanwhile, most (approximately 228) MDD pilots including Meadows, who had pending litigation were not protected in accordance with the SIPA, and were not pulled and plugged and did not have their relative seniority protected on the certified list.

18.     Based on the treatment of other similarly situated MDD pilots, Meadows should have been treated as an *"Inactive Pilot"* and *"pulled and plugged"* at seniority number 4102 on the AAPSIC certified list, and placed immediately junior to his new-hire class mate, Jon Scruggs, EE332721 who was placed at seniority number 4101.

19.     In late February 2016, Meadows first learned that the AAPSIC failed to include him on the certified seniority list, but only includes him on SLI Joint Exhibit 0006A *AAPSIC Certified List*[2], which was a scabbed on sheet separate from the actual "certified seniority list", and was simply entitled "TAG" (Terminated Awaiting Grievance'). That "TAG" Sheet, incorrectly showed Meadows holding seniority 6085 (instead of the correct number of 4102) along with other errors of his relevant employment data.

---

income, retain seniority rights to return, and are carried on APA's membership data base." Moreover, these pilots are also defined as both *"Employees* and *"Pilot Employees"* under terms of 2004 LAA Pilot LTD Plan.

[2]     It must be noted to the extent Meadows employment data was listed in Joint Exhibit 0006A, it was not on the certified list. Additionally, that data was completely erroneous, showing and incorrect employee number, incorrect, seniority number (shows 6085, but should have been around 3900), and incorrect occupational seniority date. Further, despite Meadows raising these errors matter in correspondence to APA, AAPSIC, and the SLI panel back in March 2016, they were never corrected.

20.      To the extent, APA's AAPSIC Committee Chairman alleges that he merely blindly accepted and relied upon that erroneous data that was provided by AA, then he should have *"pulled and plugged"* Meadows at number 6085. However, his argument doesn't pass muster, because the Seniority Integration Protocol Agreement ("SIPA") ¶ 2.a.(1), imposed an affirmative duty that the, *"Merger Committees shall compile, verify, certify and exchange (in electronic Excel format whenever possible) employment data for each pilot on their respective pre-merger seniority lists,"* Accordingly, APA by and through its AAPSIC had a duty to verify and certify all LAA pilot employment/seniority information provided by American.

21.      In fact, APA's AAPSIC had ready access to an APA internal list showing all MDD pilots with their status dates, but the AAPSIC either knowingly or negligently failed to exercise proper due diligence to cross-check employment/seniority data provided by American, against those APA MDD lists.

22.      There can be no rational explanation for such arbitrary and discriminatory treatment of pilot's seniority within the sub-category of LAA MDD disabled pilots, not to mention between LUS disabled pilots (>5 years) whose relative seniority was protected and all were included on the final ISL. It seems as if the AAPSIC did not adequately represent[3] the seniority rights of LAA MDD pilots, if at all.

### *The McCaskill Bond Act and Allegheny-Mohawk LLPs Required APA To Conduct SLI proceedings To Be Conducted in a Fair and Equitable Manner*

---

[3]      In April 2014, the Allied Pilots Association declared that Meadows and other long term disabled pilots are no longer considered members, and not entitled to any union benefits, and locked its disabled pilots out of the electronic and physical union hall. Further, during and after the equity proceedings APA's counsel has asserted on numerous occasions that it does not represent Meadows or other similar situated disabled pilots, and thus, does not owe them a duty.

23.    To be certain, The Memorandum of Understanding ("MOU") ¶ 10 and Seniority
Integration Protocol Agreement ("SIPA") clearly provided that the Seniority List Integration
("SLI") proceedings are to be done in accordance with the McCaskill-Bond Statute. 49
U.S.C. §42112; which in turn incorporates Section 3 and 13 of the Allegheny-Mohawk Labor
Protective Provisions ("LPPs"). (As published at 59 C.A.B. 45). The Allegheny-Mohawk
LPPs, state that when a covered transaction (i.e., these SLI proceedings);

> "results in the combination of crafts or classes that are subject to the Railway Labor
> Act, sections 3 and 13 of the labor protective provisions imposed by the Civil
> Aeronautics Board ("CAB" or the "Board") in the Allegheny-Mohawk merger (as
> published at 59 C.A.B. 45) shall apply to the integration of covered employees of the
> covered air carriers." Id. § 42112(a)."

24.    Indeed, these Allegheny-Mohawk Labor Protective Provisions ("LPPs") require
that the carrier make provisions "*for the integration of seniority lists in a fair and equitable
manner.*"

25.    However, based on the facts presented in Meadows Motion To Intervene showed
the SLI proceedings were clearly not fair and equitable because; i) APA had abandoned
representation of its long term disabled LAA pilots, and therefore, had not adequately
represented their seniority interests, ii) to date there has been egregious inequitable and
disparate treatment of seniority rights between and amongst the long term disabled pilots of
LUS East, LAA, and LUS in these proceedings, iii) and there is a myriad of pilot seniority
and employment data errors in the certified excel pilot seniority lists, particularly with
respect to long term disabled pilots.

26.    Additionally, although unions and management were typically the parties in
Section 13 arbitrations, the CAB has also held that other employee groups and individual
employees could be granted party status or allowed to otherwise participate.

> *See, e.g., Southern Emps. v. Republic/ALEA*, 102 C.A.B. 616 (1983) (describing how seniority integration was negotiated by an "employee committee" established for that purpose without union involvement); *Pan Am-TWA Route Exchange, Arbitration Award*, 85 C.A.B. 2537 (1980) (noting that three individual engineers were parties to arbitration); *NAA I*, 95 C.A.B. at 584 (denying dissenting group "full party status" but noting that they'd been given the opportunity to participate in the LPP arbitration).

27.     Thus, the CAB held that, as indicated by the language of the LPPs, unrepresented employees still had rights to fair and equitable seniority integration and binding arbitration to resolve integration disputes under the Allegheny-Mohawk LPPs, yet Meadows was denied such rights.

28.     Most disturbingly, APA's AAPSIC and SLI Arbitral Board were put on formal notice of these egregious errors, the disparate treatment of LAA MDD pilots, and the AAPSIC's inadequate representation, via official correspondence, motions to intervene, and expedited system board grievances filed by Meadows, and other similarly LAA MDD pilots. All such requests were blatantly ignored, and APA's AAPSIC failed to take action on Meadows behalf and correct these errors.

29.     Specifically, starting on March 1, 2016, Meadows sent a certified letter to APA's AAPSIC to express his concerns that they had failed to list my name and correct employment data, EE number, seniority number, DOH, and status, and that he treated disparately compared to other LAA MDD pilots, and was not *"pulled and plugged"* on the certified seniority list, as otherwise required by the Seniority Integration Protocol Agreement ("SIPA") ¶ 2.a.(1) protocol; which stated in part,

> 2. Within 10 days of either the execution of this Protocol Agreement or the receipt from American of the information described in a. below, whichever is later, the Merger Committees shall compile, verify, certify and exchange (in electronic Excel format whenever possible) employment data for each pilot on their respective pre-merger seniority lists, as follows, subject to modification for accuracy.
>
> a. The information certified and exchanged will include the following information to the extent such information is available and can be compiled/provided by American without undue burden or expense:
>
> .Each pilot's name; employee number; seniority number; Date of hire; occupational seniority date, if any, and any other date relevant to the pilot's placement on the pre-merger seniority list; date of birth; seat, aircraft, domicile, and

information reflecting each pilot's availability to engage in revenue flying (i.e., leave status, instructor status, management pilot status, medical/disability status); [Emphasis Added].

Further, SIPA, ¶ 2. a. (7) speaks directly to the seniority treatment of pilots such as myself, and further states that;

(7) Similar information for any pilot who has been terminated or otherwise removed from the pre-merger seniority list, whose status is the subject of any pending litigation or dispute. [Emphasis Added].

30.　　　　On March 6, 2016, APA's AAPSIC Committee Chairman responded and asserted;

>I received, via email, your letter dated March 1, 2016 regarding disputed seniority claims under the Seniority Integration Protocol Agreement.

>Your name is not included on the AAPSIC's proposed integrated seniority list because you were not on the American Airlines Pilots system seniority list as of the stipulated snapshot date, 12/9/2013.

>Your name was included with the certified list AAPSIC provided to the parties and arbitrators under the Seniority Integration Protocol, on a list identifying pilots known to be disputing their termination from American Airlines and/or removal from the seniority list, in accordance with Section 2.a.(7) of the Protocol.

>If after the integrated seniority list is implemented, you are ultimately successful in your litigation/grievance regarding termination from American Airlines and/or you are able to regain FAA medical status that would allow your return to flying at American Airlines, your position on the integrated seniority list will be determined consistent with the legal ruling or settlement, the APA constitution and bylaws, the current collective bargaining agreement, any seniority integration dispute resolution procedure, and applicable union and company policy.

### *APA's And Its AAPSIC Failed Their Duty To Treat Disabled LAA Pilots Fairly and Equally in Violation of the Agreements and McCaskill Bond Act.*

31.　　　　It became clear that APA's AAPSIC was not treating all Legacy MDD pilots fairly and equally, and was simply kicking the can down the road; knowing that MDD pilots who were excluded from the ISL would in reality not have any dispute resolution remedy available to them.

32.　　　　Since, the AAPSIC failed to correct Meadows' employment/seniority data errors, on March 7, 2016, he filed a Motion to Intervene and Protect Lawrence M. Meadows Relative Position on the Integrated Seniority List directly with the SLI arbitral board asking to stay the proceedings, correct the errors, and to treat him the same as all other MDD pilots, by pulling and plugging him and protecting his relative position on the Integrated Seniority List.

33.     On March 17, 2016, after APA's AAPSIC failed to act on Meadows behalf, he filed a Request For Judicial Notice, to inform APA, AAPSIC, and the SLI arbitral panel of legal case precedent, which provided for individual employees to participate in seniority integration proceedings to ensure they were afforded "fair and equitable treatment."

34.     On March 21, 2016, after having been ignored by both APA's AAPSIC and the SLI arbitral board, Meadows submitted an Expedited System Board of Adjustment Grievance for failure of American to uphold its obligations to conduct the proceedings in a "fair and equitable manner" in accordance with the MOU ¶ 10. To date the APA has ignored and failed to process this grievance.

35.     On March 26, 2016, Meadows sent APA's AAPSIC and the SLI arbitral board a certified letter to inquire as to the status of pending Motion to Intervene, and expressed his belief that the proceeding was fatally flawed and in violation of McCaskill Bond and the Allegheny-Mohawk LPPs. I also filed a second Request For Judicial Notice to put the arbitral board on Notice of my pending expedited system board grievance

36.     To date, APA's AAPSIC callously ignored all of Meadows' certified corresponded, Motions, Notices, and grievance, and took no action whatsoever to remedy the unfair and inequitable treatment of LAA disabled pilots in the SLI Proceedings.

### *The SLI Decision and Award Contains Numerous Pilot Seniority and Employment data Errors, Which APA knew to exist and Caused LAA MDD Pilots To be Treated In An Arbitrary and Discriminatory Manner*

37.     On or around mid-September 2016, The panel issued its final SLI Decision and Award and Integrated Seniority List. Meadows carefully reviewed the 60-page document, and was very troubled to learn that despite APA's AAPSIC Committee Chairman's assurances, neither Meadows' name nor his correct employment/seniority data was never

included anywhere include in the AAPSIC's Certified Seniority List, and thus was never provided to the other committees and Arbitrators he otherwise represented, in violation of Sec. 2.a.(7) of the protocol. Moreover, Meadows seniority and employment data was never mentioned not published anywhere the final SLI Decision and Award documents.

38.     In fact there is not even a generalized mention of Meadows and ant of the 228 similarly situated MDD pilots who have pending grievances/litigation for pre-merger seniority list removals or termination who were supposed to be protected under SIPA ¶ 2.a.(7), nor is there any discussion or process by which this category of pilots will be treated with respect to being reinstated to their integrated relative positon on new Integrated Seniority List ("ISL") if successful in their claims; much less an explicit reference of any such pilots by name or employee number in the new ISL.

39.     Once again on September 19, 2016, via certified mailing Meadows informed APA's AAPSIC Committee Chairman, that despite all of his previously filed concerns/complaints; the final SLI Decisions and Award was rife with numerous disabled pilot employee seniority and data errors related Meadows and similarly situated long term disabled pilots, and gross disparate treatment of some 228 LAA MDD pilots.

40.     On September 23, 2016, APA's AAPSIC Committee Chairman replied, and refused to accept responsibility for and correct his and the AAPSIC failures. Seemingly unfazed by Meadows' allegations, he proceeded to simply reiterate his previous nebulous and hollow assurance that Meadows could utilize the Seniority Dispute Resolution procedure

41.     Furthermore, APA's the Seniority Dispute Resolution Procedure, Exhibit B only speaks to a procedure that can on be implemented by the Dispute Resolution Committee ("DRC") members or only by individual pilots whose name already appears on the ISL.

Outrageously, that procedure seems to have no direct application for MDD pilots with disputed seniority claims pending grievances/litigation who were not *"pulled and plugged"* and not placed on the ISL – leaving them all in limbo.

42.     As a result of APA's and its AAPSIC failures Meadows and similarly situated LAA MDD pilots have been left *"remediless"* and without a forum to dispute their grievances, which is contrary to the congressional intent when it drafted the RLA. *Vaca v. Sipes*, 386 U.S. 171, 185-86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967).

43.     The foregoing issues are specific Meadows and many other similarly situated LAA pilots on disability for greater than 5 years, but when considering that similarly situated LUS pilots on disability greater than 5 years potions were  remained on the new ISL; APA's AAPSIC's failure to *"pull and plug"* all LAA MDD pilots is even that much more egregious, especially given the fact that APA is the sole certified bargaining agent for all pilots of the new American, all of whom were under the same collective bargaining agreement on the snap shot date; and thus APA has a duty to treat all former LAA and LUS East and West pilots fairly and equally.

44.     Without a place on the new Integrated Seniority List Meadows is unable to resume lifelong airline piloting career with American.

## IV.  COUNT I: APA Breached Its Duty of Fair Representation (RLA, 49 U.S.C. § 151 *et. seq.*)

45.     Plaintiff incorporates by reference the foregoing paragraphs as fully set forth herein.

46.          Plaintiff, Lawrence M. Meadows, is a both pilot employee of American Airlines; and also a member of the craft or class of pilots, of which defendant APA is the exclusive bargaining agent or "representative".

47.          *"The exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."* Humphrey v. Moore, 375 U.S. 335, 55 LRRM 2031 (1964), and *"A breach of the statutory duty of fair representation occurs only when a Union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."* Vaca v. Sipes, 386 U.S. 171,190, 64 LRRM 2369, 2376 (1967).

48.          Additionally, APA's Constitution and Bylaws ("C&B") mandates that *"This Constitution and Bylaws shall be the supreme law of APA."* C&B Article II. D. goes on the state that one of the prime objectives of APA is, *"To determine and negotiate and to continue to improve the rates of compensation, benefits, pensions, hours of employment and working conditions, **and to maintain uniform principles of seniority and the perpetuation thereof."***

49.          Here, APA breached its duty of far representation, when it treated Meadows seniority rights in an arbitrary, discriminatory and bad faith manner as compared to other similarly situated long term disabled American Airlines, and in doing also failed its published duty *"to maintain uniform principles of seniority and perpetuation thereof."*

50.          On November 9, 2016, after learning that APA's AAPSIC failed to protect his relative position on the Integrated seniority list, Meadows made a good faith effort to exhaust

COMPLAINT

his internal union remedies related to his SLI seniority claim, by timely filing a Seniority

Dispute Resolution ("DRC") claim.

51.     Subsequently on January 8, 2017, APA's Dispute Resolution Committee denied

Meadows Seniority DRC claim, and in so doing has left him without a remedy to resolve his

seniority claim; which is contrary to the strong congressional interest in seeing that RLA

employees are not left *"remediless"* and without a forum to present their grievances. Cf. *Vaca*

*v Sipes*, 386 U.S. 171, 185-86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967).

52.     Accordingly, the Plaintiff respectfully seeks this Court to compel Defendant APA

to seek Meadows immediate reinstatement to the new American Airlines Integrated Seniority

Lists to his original relative position, and to reimburse him value of full back pay and

benefits with interest, as if he were never properly excluded; or in lieu of reinstatement, full

payment of all forward pay and benefit lost as a result of APA's breach of duty of fair

representation. Additionally, given APA's arbitrary, discriminatory and bad faith conduct

Plaintiff also seeks punitive damages and any other relief this Court deems just

## V.  COUNT II: APA Breached its Duty of Fair Representation
## (RLA, 49 U.S.C. § 151 *et. seq.*)

53.     Plaintiff incorporates by reference the foregoing paragraphs as fully set forth

herein.

54.     Plaintiff, Lawrence M. Meadows, is a both pilot employee of American Airlines;

and also a member of the craft or class of pilots, of which defendant APA is the exclusive

bargaining agent or "representative".

55.     *"The exclusive agent's statutory authority to represent all members of a*

*designated unit includes a statutory obligation to serve the interests of all members without*

*hostility or discrimination toward any, to exercise its discretion with complete good faith and*

*honesty, and to avoid arbitrary conduct."* Humphrey v. Moore, 375 U.S. 335, 55 LRRM

2031 (1964), and *"A breach of the statutory duty of fair representation occurs only when a*

*Union's conduct toward a member of the collective bargaining unit is arbitrary,*

*discriminatory, or in bad faith."* Vaca v. Sipes, 386 U.S. 171,190, 64 LRRM 2369, 2376

(1967).

56.         The APA Constitution and Bylaws ("C&B") mandates that *"This Constitution*

*and Bylaws shall be the supreme law of APA."* C&B Article II. B. goes on the state that in

the prime objectives of APA is, *"****To protect the individual and collective rights of the***

***members of the APA*** *and to promote their professional interests,* ***including timely***

***prosecution of individual and collective grievances."***

57.         On March 21, 2016, after having been ignored by both APA's AAPSIC and the

SLI arbitral board, in accordance with procedure in the MOU Contingent Collective

Bargaining Agreement ¶ 10, Meadows submitted an Expedited System Board of Adjustment

Grievance protesting the failure of American to uphold its contractual obligations to conduct

the proceedings in a "fair and equitable manner" as it related to disabled pilots like Meadows.

58.         To date, some 16 months after filing his Expedited MOU Grievance with APA's

System Board Coordinator, both APA and its AAPSIC have callously ignored Meadows'

certified correspondence, and failed to process and prosecute, much less submit his

Grievance to a RLA System Board of adjustment.

59.         At this juncture, due to APA's bad faith, it futile for Meadows to wait any longer

the exhaust his administrative grievance remedies, and accordingly this Court can now rule

that APA has breached duty of fair representation based on its failure to prosecute his

Expedited MOU Grievance.

60.     Additionally, APA by refusing and failing to prosecute Meadows Expedited

MOU Grievance has left Meadows without any remedy to resolve his seniority claim; which

is contrary to the strong congressional interest in seeing that RLA employees are not left

*"remediless"* and without a forum to present their grievances. Cf. *Vaca v Sipes*, 386 U.S. 171,

185-86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967).

61.     Accordingly, the Plaintiff respectfully seeks this Court to compel Defendant APA

to seek Meadows immediate reinstatement to the new American Airlines Integrated Seniority

Lists to his original relative position, and to reimburse him value of full back pay and

benefits with interest, as if he were never properly excluded; or in lieu of reinstatement, full

payment of all forward pay and benefit lost as a result of APA's breach of duty of fair

representation. Additionally, given APA's arbitrary, discriminatory and bad faith conduct

Plaintiff also seeks punitive damages and any other relief this Court deems just.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Lawrence Meadows, prays for a judgment against the

Defendants for the relief as plead herein, to include compensatory and punitive damages, and for

such other equitable relief as this Honorable Court deems just and proper.

Dated: this 7th day of July, 2017,                    Respectfully submitted,

Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr., #2112
Miami Beach, FL 33139
Phone: 516-982-7718
Facsimile: 435-604-7850
lawrencemeadows@yahoo.com