FILED by __PG__ D.C.

NOV 22 2017

STEVEN M. LARIMORE
CLERK U. S. DIST CT
S. D. of FLA. - MIAMI

Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
Phone: 516-982-7718
Facsimile: 435-604-7850
lawrencemeadows@yahoo.com

## IN THE UNITED STATES DISTRICT COURT

## FLORIDA SOUTHERN DISTRICT

| | |
|---|---|
| **LAWRENCE M. MEADOWS,**<br><br>Plaintiff,<br><br>v.<br><br>**ALLIED PILOTS ASSOCIATION,**<br>a Texas Labor Association, and<br><br>**DOES 1-10,**<br>Defendants. | **PLAINTIFF'S VERIFIED RESPONSE TO DEFENDANT ALLIED PILOTS ASSOCIATION'S MOTION TO SET ASIDE DEFUALT**<br><br><br><br><br><br>**Case No: 1:17-cv-22589-JLK**<br><br>**Honorable Judge James Lawrence King** |

## PLAINTIFF'S VERIFIED RESPONSE TO DEFENDANT ALLIED PILOTS ASSOCIATION'S MOTION TO SET ASIDE DEFAULT

**COMES NOW**, the Pro Se Plaintiff, Lawrence M. Meadows ("Meadows), who hereby, files Plaintiff's Verified Response to Defendant Allied Pilots Associations Motion To Set Aside Default.

## TABLE OF CONTENTS

Motion to Set Aside Default……………………………………………………….... 1

Table of Contents………………………………………………………………… 2

Table of Authorities……………………………………………………………… 3

### MEMORANDUM OF LAW

Introduction……………………………………………………………………… 4

Statement Of Facts……………………………………………………..…………… 6

Preliminary Matter:
APA Makes Several Misrepresentations of Fact In Its Signed Pleadings...………... 11

Argument

    A.  Legal Standard For Setting Aside Default…………………………….....… 14

    B.  APA's Default Was Culpable and Willful……………………………...…… 15

    C.  APA's Conduct Has Prejudiced The Plaintiff……………….………………… 19

    D.  APA Fails To Assert A Meritorious Defense…………………….…………… 21

Conclusion……………………………………………………...……… 23

Verification……………………………………………………………… 25

Proposed Order……………………………………………………………… 26

Certificate Of Service………………………………………..……………... 28

## TABLE OF AUTHORITIES

**Cases:**

*Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 92 S. Ct. 1562, 32 L. Ed. 2d 95 (1972)………………………………………………………………………………………21

*Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviation,* 88 F.3d 948, 951 (11th Cir. 1996)…………………………………………………………………… 15

*E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990)……………..  15

*Glover v. St. Louis-San Francisco Ry. Co.,* 393 U.S. 324, 330, 89 S.Ct. 548, 551-52, 21 L.Ed.2d 519 (1969)………………………………………………………………………….………….....  22

*Griffin IT Media, Inc., v. Intelligentz Corp.,* No. 07-80535, 2008 WL 162754, at *2 (S.D. Fla. Jan. 16 2008) (citing *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003))……………………………………………………………………………………………… 15

*Griffin IT Media, Inc., v. Intelligentz Corp.,* No. 07-80535, 2008 WL 162754, at *2 (S.D. Fla. Jan. 16 2008) .  (citing *Moldwood Corp. v. Stutts,* 410 F.2d 351, 352 (5th Cir. 1969))………….. 20

*In re Fortner,* No. 12-60478, 2012 WL 3613879, at *7 (S.D. Fla. Aug. 21, 2012) (citing *Robinson v. U.S.*, 734 F.2d 735, 739 (11th Cir. 1984))……………………….……………………. 15

*Turner Broad. Sys., Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 1002 (N.D. Ga. 1983) aff'd sub nom. Turner Broad. v. Rubin, 742 F.2d 1465 (11th Cir. 1984)……………………………………… 21


**Rules:**

Fed. R. Civ. P., Rule 55. (a)…………………………………………………………………… 14

Fed. R. Civ. P., Rule 55. (c)…………………………………………………………………… 14


**Statutes:**

Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et. seq*………………………..………………... 6, 9, 19

Labor Management Reporting and Disclosure Act of 1959, As Amended ("LMRDA"), 29 U.S.C. § 402 *et. seq.* ………………………………………………………...………………………… 9, 21

## MEMORANDUM OF LAW
### INTRODUCTION

Meadows, has been a pilot employee of American Airlines and a member of the collective bargaining unit for 26 years. He has brought this instant lawsuit against his certified bargaining agent and pilots' union, Defendant Allied Pilots Association ("APA"), for its disparate treatment of his seniority rights in violation its duty of fair representation. APA has a cadre of several learned and highly experienced lawyers at its disposal, consisting of an In-house Legal Director with a team of Staff Attorneys, two outside General Counsels and also outside litigation law firms, who routinely litigate maters nationwide throughout the federal court system. In particular, APA's General Counsel has litigated several matters involving its pilot members in the Florida Southern District ("FLSD"). As such, APA's attorneys are knowledgeable on the Federal Rules of Civil Procedure and FLSD Local Rules, and well apprised of their professional obligations thereunder.

Here, Defendant APA's culpable conduct is what resulted in the Clerk's default entry, as there is evidence it acted willfully and deliberately in flagrant disregard for the Rules and this Courts authority. Tellingly, APA admits it deliberately did not plead, much less appear in this matter, because it *"was of the understanding the Plaintiff was not moving forward with the litigation..."* (DE #11, ¶ 7), but that statement is belied by Plaintiff's actions and record facts. Indeed, that Plaintiff had timely and properly served APA's Legal Director, and the Clerk promptly published APA's mandatory answer/response deadline in the Docket. Even this Court made clear in its recent Order, that the deadlines under the Federal and Local Rules, "***remain in force and effect, there are at present no Court-imposed deadlines to stay.***" (DE# 8). Yet, APA's Counsel still not only failed to make an appearance, but failed to file its mandatory answer/response.

Additionally, APA completely disregarded Plaintiff's October 16, 2017 meet and confer email, wherein Meadows plainly put APA's Legal Director on notice that, *"However, as the service deadline approached, I still had not yet received anything, and was left to no choice but to protect my rights and timely serve that matter upon APA, via yourself on October 6th, 2017."* (SOF ¶ 14). Defendant APA was on notice, and clearly knew that absent a court imposed stay, this litigation was moving moved forward, and thus, it was required to comply with its all of obligations thereunder.

Moreover, as of October 18, 2017, the same day that Meadows unilaterally filed his Motion to Stay, APA was fully aware that by and through its own deliberate acts, that it had rendered any chance of settlement futile, and foreclosed both of Meadows asserted basses to support a stay. Thus, at this juncture, APA was fully aware that as result of its deliberate and prejudicial, that this litigation could only move forward.

Furthermore, as shown in greater detail below (after SOF), Defendant APA's post-default Counsel mislead this Court by making several misrepresentations of fact in its Motion, in what appears to be a bad-faith effort to improperly support its "good cause" arguments. Based on that alone, the Court should have serious doubts as to APA's credibility and the voracity of its Motion, and accordingly, not give it any weight. Regardless, based on analysis of APA's Motion's arguments in support of the essential factors of culpability, prejudice and meritorious defenses; it is clear that APA has failed to meet its burden to establish the requisite "good cause" needed in order vacate the Clerk's default.

Therefore, Defendant APA's culpable and prejudicial conduct, lack of meritorious defense, coupled with its misrepresentations of fact, warrant that this Court deny APA's Motion To Set Aside Default and reaffirm of the Clerk's Entry For Default.

## STATEMENT OF FACTS
### *Background*

1.      Meadows is a pilot employee of American Airlines, who receives collectively bargained

pay and benefits, and is a member class and craft of pilots represented by the certified

collective bargaining agent, the Allied Pilots Association ("APA"). (DE #1 ¶¶ 2, 13-15).

2.      Since the Spring of 2017, Meadows has been engaged in ongoing settlement discussions

with APA's new President, and General Counsel, James Clark, solely related to getting APA

to finally agree arbitrate Meadows Company Grievance 12-011[1] before a RLA System Board

of Adjustment.

3.      It must be noted that American Airlines had already agreed to such arbitration in

September, 2014, contingent upon a mutual agreement between Meadows and APA; but

APA persistently refused to such agreement for the past three years.

4.      On June 21, 2017, in the spirit of cooperation Meadows wrote APA's General Counsel,

James Clark, stating in part;

> "*Bottom-line ...I really would like to resolve my* Issues *with the 'old' APA in an amicable
> manner. To end, I would appreciate your full consideration to move G 12-011 forward,
> which offers me the best protection...Further, I will try to be as accommodative as
> possible to make that happen.*"

5.      On June 30, 2017, APA' General Counsel, informed Meadows

that APA had decided to arbitrate Grievance 12-011

---

[1]      In accordance with the American Airlines - APA collective bargaining agreement ("CBA") and the Railway
Labor Act ("RLA"), 49 U.S.C. § 151 *et. seq.*; Meadows filed Company Grievance 12-011, to protest American Airlines
improperly removing him from the pilot's seniority list on the basis of a medical disability in violation of the CBA. In
September 2013, APA's former President refused to forward that grievance to binding arbitration, as otherwise
mandated under the RLA, 49 U.S.C. § 184. Meadows' subsequently filed suit in federal court, seeking to enforce his
individual statutory right compel to his grievance to arbitration as provided under the RLA *Id*.; litigation of that
matter remains ongoing.  As of July 1, 2016, APA has both a new President and General Counsel, who had recently
given favorable consideration to moving Grievance 12-011 forward and resolving it via arbitration.
       To be certain, Grievance 12-011 involves the Company's violations of the CBA, and the recent discussions
with APA to now finally arbitrate it were completely unrelated to this instant lawsuit; as this suit involves APA's
own breaches of duty of fair representation which took place in the 2016 Seniority List Integration proceedings.
.

without any conditions, and that they would speak to the Company representatives the following week (of 4th of July) to schedule it.

6.      Later that same day, as a show of good faith Meadows offered to delay filing this instant lawsuit (which was unrelated to G12-011), contingent upon APA agreeing to sign a Tolling Agreement.

### *Plaintiff Files Instant Lawsuit*

7.      On July, 6, 2017, APA's General Counsel informed Meadows that APA would not agree to sign a tolling agreement, and hadn't met with the Company to schedule Grievance 12-011 as promised; and instead suddenly said it was now working on a written conditional Agreement" to arbitrate Grievance 12-011, promising to have it for Meadows the next day.

8.      On July 8, 2017, APA having refused to sign the tolling agreement and failing to provide Meadows with the promised Grievance 12-011 "Agreement", left him with no choice but to move his litigation forward.  Accordingly, Meadows via FedEx priority overnight timely filed, this lawsuit against Defendant Allied Pilots Association, and Does 1-10. (DE #1).

9.      After some three months, and despite Meadows repeated follow-ups, APA's General Counsel never provided him with the promised "Agreement" setting forth the terms of arbitration of Grievance 12-011.

### *APA Is Properly And Timely Served*

10.     On October 4, 2017, Meadows continued to move this litigation forward, and timely served Defendant APA's, Staff Attorney, Tricia Kennedy at APA Headquarters, but subsequently discovered a ministerial error in the service documents. (Exhibit 1).

11.     On October 6, 2017, Meadows once again timely and properly served a new summons

with copy of his Complaint via hand delivery upon Defendant APA's Legal Director,

Johnathan Elfison, and then promptly filed the Executed Summons. (Exhibit 2).

12.     Shortly after being served, on October 6th, APA's General Counsel, informed Meadows

via email that he hoped to have the G12-011 "Agreement" the following week, but it was

never produced by following Friday.

13.     On October 13, 2017, the Clerk docketed the Executed Summons on Plaintiff's

Complaint as to Defendant APA; and published a docket entry which stated that APA had *"a*

*21day response/answer filing deadline"*, and more specifically ***"answer due 10/27/2017."***

14.     On October 16, 2017, Meadows sent meet and confer email to APA's Legal Director, Mr.

Elifson, asking if APA either supported or opposed Meadows proposed Motion to Stay, and

made clear that absent a stay this litigation was moving forward, stating in relevant part;

> *"Most recently, around two weeks ago, Jim had said he hoped to have an agreement to me.*
> ***However, as the service deadline approached, I still had not yet received anything, and was left***
> ***to no choice but to protect my rights and timely serve that matter upon APA, via yourself on***
> ***October 6th, 2017."*** [Emphasis Added]. (Exhibit 3).

15.     APA's Legal Director, never responded to Mr. Meadows, much less assert whether APA

supported or opposed such stay, nor if it wanted to file a joint motion.

16.     However, late in the evening on October 16, 2017, some three months after originally

promising to do so, APA's General Counsel finally sent Meadows an email which attached a

copy of the "Agreement" to arbitrate Grievance 12-011. Oddly, that email was silent as to

Meadows' earlier meet and confer request sent to APA's Legal Director.

17.     APA's Agreement to arbitrate Grievance 12-011, was onerous and prejudicial, if not

outright extortionary, and APA knew it was dead on arrival. Among other things, in

exchange for agreeing to arbitrate Grievance 12-011, APA insisted on the following onerous

terms; i) it refused provide Meadows with a guarantee that the arbitration would actually

occur, ii) it refused to provide him with legal representation during the arbitration, and

admitted that APA would provide testimony contrary to his positons, iii) it demanded that he

waive his right to a duty fair representation which APA otherwise owed him under the

Railway Labor Act 45 U.S.C. § 151 et. seq., and iv) that Meadows waived all other unrelated

claims against APA, to include dismissal with prejudice of this instant lawsuit.

18.     On October 17, 2017, Meadows discussed the onerous terms of APA's "Agreement" with

his Union Domicile Representative (shop steward), who agreed it was wholly unacceptable.

19.     Indeed, the next day, Meadows' Union Representative informed APA's General Counsel

of the wholly unacceptable nature of the "Agreement", and demanded major modifications.

Ultimately, APA dug in it heels, and refused to make any substantive modifications.

20.     On October 18, 2017, Meadows filed his Motion to Stay, and copied APA's Legal

Director and General Counsel via email; Meadows motion requested that the;

> *"Honorable Court stay these proceedings at least until such time that the parties have a*
> *full opportunity to fully negotiate, review, and effectuate **a mutually acceptable***
> ***settlement agreement, which establishes a date certain for arbitration of Grievance 12-***
> ***011**. Or, alternatively, **until such time Meadows has fully exhausted his internal union***
> ***remedies, under APA's C&B…"*** [Emphasis Added]. (DE #7).

21.     On October 18, 2017, shortly after Meadows revealed in his Motion To Stay, that he still

had internal union remedies pending under APA's Constitution and Bylaws ("C&B") related

seniority claims in the instant lawsuit; APA's President suddenly issued a directive letter to

Meadows, which in bad-faith suddenly and unilaterally stripped away his status as a member

in good-standing (which he previously had enjoyed for years). This also amounted to a

retaliatory violation of APA's C&B and the statutory law of the Labor Management

Reporting and Disclosure Act ("LMRDA"), 49 U.S.C. § 402 *et. seq.*

22.      As a result of APA President's deliberate and retaliatory act, of stripping away his standing, Meadows was instantly foreclosed on his ability to continue to prosecute his internal union remedies (Article VII charges) for his seniority related claims. That combined with an unacceptable settlement "Agreement" instantly rendered the bases for Meadows' Motion to Stay moot - and APA knew it, but it still failed to file its answer/response.

23.      Additionally, on October 19, 2017, the Clerk Docketed Meadows' Motion to Stay These Proceedings, and provided notice that *"Responses due 11/2/2017."*

24.      Regardless, Defendant APA never filed a response to Meadows' Motion To Stay; and also neither informed the Court if it supported it, nor gave an explanation as to why it didn't intend to answer Meadows' Complaint.

### *APA Failed To Appear Or File Its Answer/Response*

25.      On October 27, 2017, after APA's answer deadline had lapsed, and despite being properly served and on notice that the lawsuit was continuing; APA's Counsel never made an appearance, nor filed its answer/response. (Docket as of 11/8/17, Exhibit 4).

26.      On November 7, 2017, the Court entered an Order Denying Motion To Stay. Wherein, the Honorable Senior Judge James Lawrence King, noted that Defendant APA failed to file its Answer, specifically stating;

> *"The Court notes that while Return of Service filed in this matter indicates that <u>Defendant Allied Pilots Association was served on October 6, 2017, making its Answer due October 27, 2017, no Answer has been filed.</u> Moreover, no scheduling order has been entered in this matter. Apart from the Rules imposed by the Local Rules of this Court and the Federal Rules of Civil Procedure, **including rules regarding time for answering complaints after proper service and dismissal for lack of prosecution, <u>which deadlines remain in force and effect, there are at present no Court-imposed deadlines to stay.</u>"* [Emphasis Added]. (DE #8).

27.      Despite the Court's Order, which spelled out that APA was in technical default, it still failed to file its answer/response.

28.     On the evening of November 7, 2017, Meadows meet and conferred with his APA

Union Base Representative. He briefly discussed the failed settlement "Agreement",

and also explained the recent Court's Order, which subjected APA to an entry of

default; and finally, asked if his Representative to contact APA's General Counsel on

his behalf.

29.     On November 8, 2017, having not heard from APAs General Counsel, Meadows

also attempted to contact APA's General Counsel directly to meet and confer and

emailed a message stating;

> *"**I will reiterate that** I much prefer mutually agreeing to arbitrate G12-022 as*
> *opposed to **continuing to litigate these issues**. I would appreciate it if you can*
> ***call to me to discuss asap…"*** [Emphasis added]. (Exhibit 5).

### *Clerk Entered Default Against Defendant APA*

30.     On October 8, 2017, as close of business approached, having not heard back from

APA's General Counsel, Meadows requested that the Clerk enter default against

APA, and a Clerks' Default was Entered. (DE #10).

31.     On October 9, 2017, APA had local counsel, Ms. Capri Trigo, file a Motion to Set

Aside Default (DE #11), but she never met and conferred with Meadows, nor served

him with a Notice of Appearance to inform him she was now counsel of record.

*(Note: being Pro Se, Meadows does not receive electronic notices via the ECF system).*

32.     Perhaps most troubling is that APA's new post-default Counsel has made several

material misrepresentations of fact to this tribunal in support of APA's Motion.

## PRELIMINARY MATTER:
### APA Makes Several Misrepresentations of Fact To This Tribunal In Its Signed Pleadings

Under the duty of candor towards the Tribunal, Plaintiff is obligated to inform this honorable Court that Defendant APA's signed pleading, its Motion To Set Aside Clerk Default, contains several material misrepresentations of fact. (DE #11).

First, APA's Motion ¶ 1 at 6, misrepresents that; *"On or about October 13th, 2017, Defendant was served with the Complaint."* That statement is demonstrably false, and plainly contradicted by the Docket Entry #6, which contains the notarized proof of service document, plainly showing APA's Legal Director, Jonathan Elfison was in fact served at 2:30PM on 10/6/2017, a full week earlier than APA otherwise represented. Additionally, APA's representation is also in conflict with the Court's Order dated November 7, 2017 (DE #8), which plainly stated that, *"The Court notes that while Return of Service in this matter indicates that Defendant Allied Pilots Association was served on October 6, 2017…").*

Second, APA's Motion ¶ 6 at 1, misrepresents that; *"Defendant has been in active discussions to resolve…the claims alleged in the complaint."* When in fact those discussions never sought to resolve claims in this Complaint, but instead the only issue discussed was the unrelated claims and arbitration of Meadows Company Grievance 12-011. (SOF ¶¶ 2-5, and Footnote 1 and 2).

Third, APA's Motion ¶ 7 at 2, misrepresents that APA; *"…was of the understanding the Plaintiff was not moving forward with litigation pending exhaustion of the parties' effort to address his concerns and resolves issues involved in this case."* That statement is plainly contradicted by Meadows' clear and unambiguous actions to move his litigation forward without pause. First, after filing this lawsuit, on October 4th Meadows served one staff attorney at APA (SOF ¶ 10), and then on October 6th served APA's Legal Director (SOF ¶ 11), and on October 16th Meadows stated in meet and confer email that;

"Most recently, around two weeks ago, Jim had said he hoped to have an agreement to me. However, as the service deadline approached, I still had not yet received anything, **and was left to no choice but to protect my rights and timely serve that matter upon APA, via yourself on October 6th, 2017."** [Emphasis Added]. (SOF ¶ 14).

Additionally, Meadows was never attempting to resolves issues in this instant case as APA otherwise misleads this Court, but instead only seeking to stay them, pending a full and final resolution of Company violations in grievance 12-011. (SOF ¶¶ 2-5, and Footnote 2).

Fourth, APA's Motion ¶ 8 at 2, APA misrepresents that; "*Plaintiff, Pro Se, unbeknownst to defendant, disingenuously filed a Clerks' Default...*" Once again, that statement is demonstrably false. Specifically, on the evening of October 7, 2017, Meadows did in fact confer telephonically with APA as a Party via his Union Domicile Representative. Whereby, he explained Judge King's recent Order describing APA's failure to timely respond or appear, and potential of filing for entry of default, and asked his representative to contact APA's General Counsel on his behalf asap. He also attempted to contact APA's General Counsel. (SOF ¶¶ 28-29).

Fifth, APA's Motion last sentence at 2, mispresents that; "*Plaintiff was fully aware that Defendant was represented by counsel and, unbelievably, made no attempt to meet and confer regarding his intentions to move for a clerk's default.*" Not only is that statement demonstrably false, but it is an offensive and baseless attack on Meadows credibility and character. In fact, Meadows was never aware at any time that APA was represented by any Counsel of Record in this matter, nor could he have been. Because, none of APA's cadre of attorneys ever filed a Notice of Appearance in this matter, nor did its post-default counsel, Ms. Trigo for that matter. Up until October 9, 2017, Ms. Trigo was a ghost in this mater, and never noticed, nor made Meadows aware that she is now suddenly representing APA as Counsel of Record in this matter. Moreover, contrary to her misrepresentations, Meadows did indeed attempt to meet and confer with APA's Miami Domicile Representative and its General Counsel. (SOF ¶¶ 28-29). Thus, it is

quite rich that Ms. Trigo would falsely represent to this Court, and accuse Meadows of failing to meet and confer. Especially, given the fact that she was the one who not only failed to file or serve Meadows with a Notice of Appearance, but also failed to meet and confer with him.

Sixth, APA's Counsel in Motion also erroneously certifies in the Certificate of Service that Meadows was served via U.S. Mail on November 9, 2017, when in fact the Motion was not mailed and postmarked until November 10th. (Exhibit 6).

Finally, Meadows was a former U.S. Air Force Officer who served as a military pilot during Gulf War I, and accordingly he has always held himself to the highest moral, ethical and professional standards. As such, Meadows finds Ms. Trigo's baseless and unsupported attacks on his credibility characterizing him as "disingenuous", along with her false assertions that he failed to comply with the rules (meet and confer), to be highly offensive and not well taken.  Therefore, based on the foregoing, it is evident the Court should treat APA's Motion and misrepresentations contained therein with great skepticism.

## ARGUMENT

### A. Legal Standard for Setting Aside Default

Pursuant to Rule 55. (a) of the Federal Rules of Civil Procedure, *"[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."* Fed. R. Civ. P. 55. (a). Once a default has been entered, Rule 55. (c) of the Federal Rules of Civil Procedure states, *"court may set aside an entry of default for good cause."*

The good cause standard is to be construed liberally on a case-by-case basis. *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviation,* 88 F.3d 948, 951 (11th Cir. 1996).  When evaluating good cause, courts have considered multiple factors, which include: (1) whether the default was culpable or willful; (2) whether setting it aside would

prejudice the adversary; (3) whether the defaulting party presents a meritorious defense; (4) whether the public interest is implicated; (5) whether there was significant financial loss to the defaulting party; and (6) whether the defaulting party acted promptly to correct the default. *Id.* These factors are not "talismanic"; the Eleventh Circuit frequently reiterates that these factors should be seen simply as "a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." *Id.* (quoting Matter of *Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992)).

However, the most oft considered factors are willfulness, prejudice, and a meritorious defense. See *Griffin IT Media, Inc., v. Intelligentz Corp.,* No. 07-80535, 2008 WL 162754, at *2 (S.D. Fla. Jan. 16 2008) (citing *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003)). Moreover, the party moving to set aside the default bears the burden establishing good cause. See *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).

Regardless, "The Court is vested with considerable discretion in ruling on a motion to set aside an entry of default." [Emphasis Added]. *In re Fortner*, No. 12-60478, 2012 WL 3613879, at *7 (S.D. Fla. Aug. 21, 2012) (citing *Robinson v. U.S.*, 734 F.2d 735, 739 (11th Cir. 1984)).

## B. APA Default Was Culpable and Willful

APA's cadre of several learned and experience in-house and outside attorneys are knowledgeable of all Federal Rules of Civil Procedure and the FLSD Local Rules, and well apprised their professional obligations thereunder. Thus, there can be no rational excuse for their failure to file an answer/response. Instead, as shown below, Defendant APA Counsel's failure to file was a willful and flagrant disregard for the Rules and authority of this Court.

APA's attorney's cannot deny that they had first-hand knowledge and were aware that this litigation was moving forward for over four months. In July 2017, Meadows informed

APA's General Counsel that he was filing this instant lawsuit. (SOF ¶¶ 6-8).  Subsequently, on

October 6th, Meadows timely and proper served said lawsuit upon APA at its headquarters two

different times, and then promptly retuned the executed proof of service to the Clerk. (SOF ¶¶

10-12).  At all times thereafter, at least two in-house attorneys at APA, to include its in-house

Legal Director, had first-hand knowledge that APA was timely and properly served with this

instant lawsuit. Immediately, afterwards, APA was duly noticed by the Clerk via the Court's

published docket which plainly showed APA's mandatory answer/response deadline of October

27, 2017. (SOF ¶13).   Yet, despite being on notice APA's counsel willfully failed a make an

appearance, much less file its answer/response by the mandatory deadline.

   Additionally, on October 16th, Meadows in hopes of obtaining an agreement to arbitrate

grievance 12-011[2] did indeed make good faith attempts to meet and confer with APA's In-house

Legal Director, General Counsel, and its Miami Union Domicile Officers regarding his proposed

Motion to Stay.  However, APA ignored Meadows meet and confer letter, and never responded

to the specific requests asking if APA opposed, supported, or wanted to join the Motion.

Wherein, Meadows informed APA's in-house legal director, that he *"was left to no choice but to

protect my rights"*; and continued to actively litigate as evidenced by his timely serving APA.

(SOF ¶¶ 14-15).  Thereafter, APA never substantively responded to Meadows meet and confer

---

[2]       As mentioned previously Grievance 12-011 protested the Company's violations of the CBA. If resolved in
Meadows favor, it could have likely mooted the unrelated claims against APA in this instant matter. However, if
the result was not favorable, Meadows would be left with no choice but to preserve and continue to pursue his
claims against APA in this instant action. Thus, APA knew that at best, Meadows would only agree to stay these
instant proceedings, and was unable to dismiss them until full resolution of G12-011.
        Therefore, these discussions were never intended to settle this instant lawsuit, but instead to first resolve
G12-011. Yet, despite knowing this after this suit was filed, continued to engage in bad-faith discussion for several
months, Then, on October, 16th, ten days after being served, and the same day Meadows sought to confer on his
Motion to Stay, APA's General Counsel finally provided an "Agreement" to arbitrate G12-011; which suddenly
insisted Meadows dismiss this instant action with Prejudice, which APA knew all-along was deal breaker. The next
day Meadows through his union representative informed APA's General Counsel that terms of its "Agreement"
were wholly unacceptable

request, never appeared, never filed its answer/response, and never filed a response to Meadows Motion To Stay. Now, Defendant APA disingenuously wants this Court to believe that its absolute absence and silence in these proceedings, somehow meant APA *"did not object to Plaintiffs motion to Stay...",* and its *"understanding that Plaintiff was not moving forward with the litigation..."* (DE# 11, ¶ 7 At 2).  Regardless, as of Oct 16th (eleven days before its answer/response deadline), APA's knew that absent a Court order imposing a stay, this litigation was indeed moving forward.

Moreover, instead spending its time to respond to this lawsuit as otherwise required under the Rules, APA chose to engage in conduct prejudicial to Plaintiff, which not only had the effect of rendering any chance of settlement futile, but also mooted both bases of Meadows' Motion to Stay.  First, APA deliberately included terms in its final "Agreement" that were onerous and wholly unacceptable; in which APA demanded Meadows waive his statutory rights to representation and any claims related to breach of the duty to which Meadows was otherwise entitled, thereby ensuring settlement discussions failed. Indeed, Meadows' Union Domicile Representative, informed APA's General Counsel that the settlement was wholly unacceptable, but APA refused to make any substantive changes. (SOF ¶¶ 16-19). Second, APA suddenly issued a Presidential Directive, which unilaterally stripped away Meadows status as a union member in good standing; thereby foreclosing him from exhausting his internal union remedies. (SOF ¶¶ 21-22). This appears to be have been a deliberate and concerted effort by APA, intended to thwart the two bases for Meadows' Motion to Stay and thereby rendering it moot, create a false record of Meadows' member status. Thus, by October 18th (nine days before its answer deadline), APA knew that it had effectively killed any chance for a settlement "Agreement", and also deprived Meadows of his internal union remedies; and in so doing knowingly and

prejudicially eliminated both basses upon which Meadows had relied upon to support October, 18th Motion to Stay. Yet, despite having first-hand knowledge that their actions had mooted the only bases for a stay, APA still willfully failed file its answer/response by its mandatory October 27, 2017 deadline.

Furthermore, APA in its Motion now outrageously, and falsely attempts to paint Meadows conduct as "disingenuous" and "unbelievable", in what amounts to a bad faith effort to somehow shift blame onto Meadows for APA's failures to comply with its very own mandatory deadlines. In fact, it is disingenuous for APA to imply that because Meadows had engaged good-faith discussions in the unrelated matter the arbitration of Company Grievance 12-011, and also sought a stay these instant proceedings, that he somehow had usurped the Court's authority, and relived APA of its mandatory filing obligations under both Federal and Local rules. Indeed, APA and its learned attorneys clearly know that only the Court can modify such deadlines. Which never happened in this case, as the Court's November 7th Order plainly stated, deadlines "***remain in force and effect, there are at present no Court-imposed deadlines to stay.***" (DE# 8).

In sum, APA's flagrant culpable pre-default conduct of knowingly failing to appear, and failing to file its answer/response in a willful violation of the Federal and Local Rules, coupled with APA's new post-default Counsel's additional violations of the Rules of failing to provide notice of appearance and failing to meet and confer, along with APA's serial misrepresentation of facts in its Motion; plainly shows APA's conduct was culpable and willful. Therefore, based on this factor alone this Court need to look no further, to decide that APA fails to meet its burden to establish good cause for its default. However, next Meadows will also show that APA failed to meet its burden on the remaining factors of prejudice, and meritorious defenses.

## C. APA's Default Has Prejudiced Plaintiff

While it was supposed to be working on and filing its answer/response, APA has instead spent its time behaving in a prejudicial and retaliatory manner, attempting to delay Meadows with dilatory and insincere settlement tactics, and fabricating a false record of defenses; in what amounted to a prejudicial effort to strip Meadows of his statutory and constitutional union member rights, and ultimately preclude Meadows from otherwise litigating his meritorious claims.

More specifically, Meadows filed his Motion to Stay on October 18th, a full nine days before APA's answer/response was due. However, APA instead of diligently working on and filing its answer/response, otherwise engaged in bad-faith dilatory tactics; intended to not only preclude and moot Meadows bases for a proposed stay, but also to fabricate a false record to create and perfect defenses which never existed. It seems APA's prejudicial efforts were nothing more than a tactical maneuver to create a false record, intended to defeat and preclude Meadows' instant breach of duty of fair representation lawsuit altogether.

First, on October 18th day APA's General Counsel was informed by Meadows' Union Domicile representative, that the terms of the settlement agreement to arbitrate Grievance 12-011 was wholly unacceptable[3].  Regardless, APA refused to modify its "Agreement" and eliminate the most onerous terms, which violated Meadows statutory rights as airline employee under Railway Labor Act ("RLA"), 45 U.S.C. §151 *et. seq.*  Thus, at that juncture APA knew that it had deliberately eliminated any chance of settlement and mooted the first basis of Meadows to

---

[3]       The terms APA's "Agreement" attempted to create false record, and get Meadows concede and waive his rights as bona-fide member of the collective bargaining unit to which he was otherwise entitled under the RLA, 45 U.S.C. § 151 *et. seq.* Wherein, APA not only refused to represent Meadows during his grievance arbitration, but also insisted that he waive any associated duty of fair representation claims against APA, to which he was otherwise entitled to under the RLA.

Stay. Moreover, APA with is settlement was hoping to create a record, whereby, if signed Meadows would have admitted that he was not a member of the collective bargaining unit; and thusly, help APA fabricate its "meritorious" defense that *"Defendant [APA] owed not duty of representation to Plaintiff and thus, did not breach any such duty to him."* (DE# 11 AT 3). This amounts to a blatant violation of Meadows rights as an air carrier employee under the RLA *Id.*

Second, APA went one step further, and deliberately eliminated Meadows' second basis for his Motion to Stay. On October 18th, after Meadows filed his Motion to Stay, which citied exhaustion of his internal union remedies as his second basis, and he immediately courtesy copied to APA's Legal Director and General Counsel. That afternoon, after years of Meadows enjoying rights as union "member in good standing", APA suddenly issued a Presidential Directive, which unilaterally stripped away Meadows status as a union member in good standing; thereby, foreclosing him from exhausting his internal union remedies under Article VII of APA's Constitution and Bylaws (C&B). (SOF ¶¶ 21-22). Additionally, being stripped of his "good standing" also prevents Meadows from enjoying all rights and privileges of APA union membership. As a result, he is now barred from attending union meetings, or pursuing internal union remedies (Article VII Charges). This amounts to a blatant violation of Meadows statutory Union Member Bill of Rights, including Freedom of Speech and Assembly in the union hall, Equal Rights of Participation, and Protection of the Right to Sue without fear retaliation. Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411.

In sum, Defendant APA's foregoing bad-faith conduct has shown that it has a proclivity to create a false record, in a deliberate effort to manufacture evidence and create defenses which previously did not exist. Such bad-faith tactics if allowed to continue will only further prejudice the claims and rights of the Plaintiff by not only delaying prosecution of this matter, but worse

make it impossible to adjudicate it fairly on the merits; as it would increase opportunities for further fraudulent misrepresentations, fabrication/ loss of evidence, and cause discovery difficulties. See *Griffin IT Media, Inc., v. Intelligentz Corp.*, No. 07-80535, 2008 WL 162754, at *3 (S.D. Fla. Jan. 16 2008). (quoting Burrell v. Henderson, 434 F.3d 826, 835 (6th Cir. 2006)). ([a plaintiff] would have to show that the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties.").

Therefore, based on all the foregoing, setting aside APA's default would be highly prejudicial to the Plaintiff. Thus, Defendant APA has failed meet its burden to establish "good cause" on this factor as well.

### D.   APA Fails To Assert A Meritorious Defense

Defaulted Defendant APA, makes bald and conclusory assertions in its Motion that it somehow has meritorious defenses. Incredibly, without justification or any hint of support, APA simply alleges that; first, *"it is submitted that claims in Plaintiff's Complaint are time-barred and fail on their merits."*, and that second, *"Plaintiff's claims fail on the merits because Defendant owed no duty of representation to Plaintiff and thus, did not breach any such duty to him."* See *Turner Broad. Sys., Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 1002 (N.D. Ga. 1983) aff'd sub nom. *Turner Broad. v. Rubin*, 742 F.2d 1465 (11th Cir. 1984) (General denials and conclusive statements are insufficient to establish a meritorious defense). Additionally, APA has not provided by clear statements even a *"hint of suggestion"* that its alleged defenses have any merit whatsoever, simply because it cannot. See *Griffin IT Media, Inc., v. Intelligentz Corp.*, No. 07-80535, 2008 WL 162754, at *2 (S.D. Fla. Jan. 16 2008) (citing *Moldwood Corp. v. Stutts,* 410 F.2d 351, 352 (5th Cir. 1969)).

Moreover, Defendant APA is now in default, which amounts to adjudication of Meadows' Complaint on the merits, wherein all facts and allegations are now deemed admissions by APA. Further, the facts in Meadows' Complaint plainly refute and disprove, both of APA's alleged meritorious defenses.

First, Meadows' Complaint was indeed timely filed, and the facts contained therein plainly show that at the time of filing he was exhausting his administrative remedies as required under the Railway Labor Act, 45 U.S.C. §151 *et. seq.*, via an Expedited MOU Grievance as provided under the terms of American Airlines-APA Memorandum of Understanding ("MOU"). See *Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 92 S. Ct. 1562, 32 L. Ed. 2d 95 (1972) (The Supreme Court has specifically rejected the contention of a railroad employee that he was entitled to pursue a suit in federal court without first exhausting the remedies available to him under the Railway Labor Act).  The MOU served as the Contingent Collective Bargaining Agreement at the time of APA's breach of duty of fair representation during the pilot seniority list integration proceedings. Subsequently, upon filing the instant Complaint Meadows declared his exhaustion efforts to be wholly futile (after his Grievance was pending some 16 months without any action by APA).  *See Glover v. St. Louis-San Francisco Ry. Co.,* 393 U.S. 324, 330, 89 S.Ct. 548, 551-52, 21 L.Ed.2d 519 (1969) (recognizing a futility exception to the exhaustion requirement when the effort to proceed with administrative remedies would be "wholly futile"). It was only after Meadows' exhaustion efforts were deemed futile, that the six-month statute of limitations began to run for APA's breach of duty of fair representation. (DE #1, ¶¶ 57-60).

Secondly, Meadows' Complaint plainly states that under the terms of the collective bargaining agreement, he is defined as a "*Pilot Employee*" who receives collectively bargained

income and benefits; and as such he is a member of the Class and Craft of American Airlines pilots for which APA's serves as the certified bargaining agent. (DE #1, ¶¶ 2, 13-15). Accordingly, APA owes Meadows a statutory duty of fair representation.  (DE #1, ¶¶ 3, 46-47, 54-55).

Furthermore, APA was properly served and noticed, giving it a full and fair opportunity to argue and support any such defenses via an answer or responsive pleading; yet as noted in this Court's recent Order (DE #8), APA failed to file an answer/response by the deadlines published in the docket and as required under the Federal Rules of Civil Procedure. Therefore, Defendant APA, having made nothing more than bald unsupported claims of meritorious defenses in its Motion, has also failed to meet its burden establish good cause based on this factor as well.

## CONCLUSION

Based on all the foregoing facts, it is clear that despite being properly served, Defendant APA knowingly and flagrantly disregarded its obligations under the Federal and Local rules, by willfully failing to appear and timely plead or otherwise defend against Meadows' claims within the required deadline plainly published in the Court's docket. Defendant APA, not only failed to meet its burden to show "good cause" for its default, but also made several material misrepresentations of fact in its Motion to help defend against the otherwise culpable and willful nature of its default. The Court need look no further than APA's culpable conduct and misrepresentations of fact in its Motion. However, it is also clear that APA's conduct has also prejudiced the Plaintiff, and that it failed to assert any meritorious defenses. Therefore, Plaintiff respectfully requests this honorable Court deny Defendant Allied Pilots Association's Motion To Set Aside Clerk's Default.

Dated: this 22nd day of November, 2017,                    Respectfully Submitted,

Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr., #2112
Miami Beach, FL 33139
Phone: 516-982-7718
Facsimile: 435-604-7850
lawrencemeadows@yahoo.com

## <u>VERIFICATION</u>

I, Lawrence M. Meadows, declare as follows;

I am on the Plaintiff in the above-entitled action. I have read the foregoing motion and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of Florida that the foregoing is true and correct.

Date: November 22, 2017;


Lawrence M. Meadows, Pro Se

[PROPOSED ORDER]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION

CASE NO. 17-CIV-22589-KING

**LAWRENCE M . MEADOWS,**

Plaintiff,

v.

**ALLIED PILOTS ASSOCIATION,** a Texas Labor Association, and DOES 1-10,

Defendants).

_____/

### ROPOSED ORDER DENYING DEFENDANT ALLIED PILOTS ASSOCIATION'S

### MOTION TO SET ASIDE CLERK'S DEFAULT

**THIS CAUSE** came before the Court upon Defendant Allied Pilot's Association's

Motion To Set Aside Clerk's Default (DE #11)) filed on November 9th, 2017.

As noted in this Court's previous Order (DE #8);

*Return of Service filed in this matter indicates that Defendant Allied Pilots
Association was served on October 6, 2017, making its Answer due October 27,
2017, no Answer has been filed. Moreover, no scheduling order has been entered
in this matter. Apart from the Rules imposed by the Local Rules of this Court and
the Federal Rules of Civil Procedure, including rules regarding time for
answering complaints after proper service and dismissal for lack of prosecution,
which deadlines remain in force and effect, there are at present no Court-imposed
deadlines to stay.*

Thus, in accordance with Fed. R. Civ. P., Rule 55. (a), Defendant Allied Pilots Association

plainly failed to plead or otherwise defend against claims in Plaintiff's Complaint, and

accordingly the Deputy Clerk entered a Clerks' Default as to Allied Pilot Association, holding;

*It appearing that the defendant(s) herein, is/are in default for failure to appear, answer, or otherwise plead to the complaint filed herein within the time required by law. Default is hereby entered against Defendant(s) **Allied Pilots Association***

The Court finds that Allied Pilots Association was culpable and willfully defaulted in complete disregard for the Federal Rules of Civil Procedure, and the Local Rules of this Court. Therefore, Defendant Allied Pilots Association failed to meet its burden to establish that there was good cause for its default, as required under Fed. R. Civ. P., Rule 55. (c),

Thereby, it is **ORDERED, ADJUDGED**, and **DECREED** that Defendant Allied Pilots Association's Motion To Set Aside Clerk's Default (DE #11), and the same hereby is, **DENIED**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this ___th day of November 201 7.

_____

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

**Cc:  All Counsel of Record**

**Lawrence Meadows,** pro se
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139

Capri Trigo, Esq.
**Gordon Rees Scully Mansukhani**
100 SE Second Street, Suite 3900
Miami, FL 33131
Telephone: (305) 428-5323
Facsimile: (877) 634-7245
Ctrigo@gordonrees.com

## CERTIFICATE OF SERVICE

**I, Lawrence M. Meadows, Pro Se Appellant hereby certify,** that a true and correct copy of the foregoing was served by U.S. Mail on November 22, 2017, on all counsel or parties of record on the Service List below.

Signature of Filer

### SERVICE LIST

Capri Trigo, Esq.
**Gordon Rees Scully Mansukhani**
100 SE Second Street, Suite 3900
Miami, FL 33131
Telephone: (305) 428-5323
Facsimile: (877) 634-7245
Ctrigo@gordonrees.com

**Counsel for Defendant –
Allied Pilots Association**

Plaintiffs Verified Response

# EXHIBIT 1

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _Allied Pilots Association_

was received by me on *(date)* _10-04-17_ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☑ I served the summons on *(name of individual)* _Trish Kennedy_ , who is designated

by law to accept service of process on behalf of *(name of organization)* _Allied Pilots Association_

_delivered at 14600 Trinity Blvd. #500 Ft Worth, Tx. 76155_ on *(date)* _10-04-17   2:30PM_ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ other *(specify)* _____

_____

_____

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____

I declare under penalty of perjury that this information is true.

Date: _10-04-17_

_SCH #11593_
_Exp-07/31/2018_

SWORN AND ~~SUBSCRIBED BEFORE~~
ME ON THE ~~___ DAY OF OCT 2017~~

_____

Additional information regarding attempted service, etc:

~~Server's signature~~

_Mark Palmer - Authorized Person_
Printed name and title

**Legal Eagle, Inc.**
3600 W Pioneer Pkwy, #6
Server's address
Arlington, TX 76013-4501

CHRISTOPHER J. FIORE
Notary Public, State of Texas
Comm. Expires 12-22-2019
Notary ID 11826697

# EXHIBIT 2

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  17-CV-22589

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _ALLIED PILOTS ASSOCIATION_

was received by me on *(date)* _10/6/17_.

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☑ I served the summons on *(name of individual)* _JONATHAN ELIFSON, BY HAND_ , who is

designated by law to accept service of process on behalf of *(name of organization)* _ALLIED PILOTS_

_ASSOCIATION_ on *(date)* _10/6/17_ ; or
_AT 2:30 p.m._

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _0.00_

I declare under penalty of perjury that this information is true.


Date: _6 OCT 17_

_Charles A. H____
Server's signature

_CHARLES A. HEISER  1216 6/ 7-31-2019_
Printed name and title

SWORN AND SUBSCRIBED TO
ME ON THE 6 DAY OF OC 2/17

**Legal Eagle, Inc.**
3600 W Pioneer Pkwy, #6
Arlington, TX 76013-4501
Server's address

Additional information regarding attempted service, etc:

CHRISTOPHER J. FIORE
Notary Public, State of Texas
Comm. Expires 1-22-2019
Notary ID 11826897

# EXHIBIT 3

Lawrence Meadows <lawrencemeadows@yahoo.com>
To
jelifson@alliedpilots.org Jim Clark
CC
CA Dan Carey Biilyray Read APA MIA Vice-Chair Ed Sicher

Oct 16 at 12:38 PM

Mr. Elifson,

I am writing to meet and confer regarding the above reference matter, which was filed this past July, and involved claims of disparate treatment of my seniority rights during Seniority List Integration (SLI) proceedings.

I had delayed service of that matter, because during the past three months APA's new General Counsel, Jim Clark had previously informed me that he was working on an agreement to finally move my company Grievance 12-011, to System Board of Arbitration. Most recently, around two weeks ago, Jim had said he hoped to have an agreement to me. However, as the service deadline approached, I still had not yet received anything, and was left to no choice but to protect my rights and timely serve that matter upon APA, via yourself on October 6th, 2017.

However, the above referenced matter involves claims related to the disparate treatment of my seniority rights during the SLI proceedings; but my seniority claims should be full resolved once G12-011 is fully resolved; and thereby, obviate the need to prosecute the above lawsuit.

Therefore, in the interest of judicial economy and conservation of the parties resources; I intend to file a Motion to Stay the above referenced matter pending exhaustion of my administrative remedies in G-12-011. Please let me know by tomorrow morning if APA supports or opposes such motion, and/or if it would like to file  it as a joint motion. If you have any questions, feel free to call me.


Sincerely,

Lawrence M. Meadows
MIA/FO/777/MDSB
AA# 332713

Cell: 516-982-7718

# EXHIBIT 4

AMS

# U.S. District Court
## Southern District of Florida (Miami)
## CIVIL DOCKET FOR CASE #: 1:17-cv-22589-JLK

Meadows v. Allied Pilots Association et al
Assigned to: Senior Judge James Lawrence King
Cause: 28:1331 Fed. Question: Railway Labor Act

Date Filed: 07/11/2017
Jury Demand: None
Nature of Suit: 740 Labor: Railway
Labor Act
Jurisdiction: Federal Question

**Plaintiff**

**Lawrence Meadows**

represented by **Lawrence Meadows**
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
516-982-7718
Fax: 435-604-7850
PRO SE

V.

**Defendant**

**Allied Pilots Association**
*a Texas Labor Association*

**Defendant**

**Does 1-10**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/11/2017 | 1 | COMPLAINT against Allied Pilots Association, Does 1-10. Filing fees $ 400.00, filed by Lawrence Meadows. (Attachments: # 1 Civil Cover Sheet) (vmz) (Entered: 07/11/2017) |
| 07/11/2017 | 2 | Clerks Notice of Judge Assignment to Senior Judge James Lawrence King. Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Andrea M. Simonton is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. Pro se (NON-PRISONER) litigants may receive Notices of Electronic Filings (NEFS) via email after filing a Consent by Pro Se Litigant (NON-PRISONER) |

| | | to Receive Notices of Electronic Filing. The consent form is available under the forms section of our website. (vmz) (Entered: 07/11/2017) |
|---|---|---|
| 07/11/2017 | 3 | NOTICE of Filing Appearance by Lawrence Meadows (vmz) (Entered: 07/11/2017) |
| 07/12/2017 | 4 | Clerks Notice of Receipt of Filing Fee received on 7/12/2017 in the amount of $ 400.00, receipt number FLS100147152 (vt) (Entered: 07/12/2017) |
| 10/04/2017 | 5 | Summons Issued as to Allied Pilots Association. (rms1) (Entered: 10/04/2017) |
| 10/13/2017 | 6 | SUMMONS (Affidavit) Returned Executed on 1 Complaint with a 21 day response/answer filing deadline Allied Pilots Association served on 10/6/2017, answer due 10/27/2017. (rms1) (Entered: 10/13/2017) |
| 10/19/2017 | 7 | MOTION to Stay with Incorporated Memorandum by Lawrence Meadows. Responses due by 11/2/2017 (rms1) (Entered: 10/19/2017) |
| 11/07/2017 | 8 | ORDER Denying 7 Motion to Stay. Signed by Senior Judge James Lawrence King on 11/7/2017. (jw) (Entered: 11/07/2017) |
| 11/08/2017 | 9 | MOTION for Clerks Entry of Default as to Allied Pilots Association by Lawrence Meadows. (rms1) (Entered: 11/08/2017) |
| 11/08/2017 | 10 | Clerks Entry of Default as to Allied Pilots Association - Motions Terminated: 9 Motion for Clerks Entry of Default Signed by DEPUTY CLERK on 11/8/17. (rms1) (Entered: 11/08/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/08/2017 19:21:34 | | |
| **PACER Login:** | wp1631:3640898:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:17-cv-22589-JLK |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# EXHIBIT 5

Lawrence Meadows <lawrencemeadows@yahoo.com>  To
Jim Clark
CC
Buckley, George dcarey@alliedpilots.org flysich@aol.com billyray2@bellsouth.net Clark,
James (Jim)

Nov 8 at 1:18 PM

Jim,

My base rep Ed Sicher is on vacation, I wanted clarify where you and him left off, but he is
unavailable. So In the interest of time I'm reaching out to you directly.
Based on what Ed and I discussed last week we agreed the following provisions were
unacceptable.

First, APA's refusal to represent me is very problematic. As I'm being treated lesser than other
members of APA; and in fact now being told I'm not even a member in good standing; and have
been unlawfully denied the appeals of ny lending article VII charges. Additionally, declaring me
as not a member in good standing is plainly contradicted by prior APA AB and arbitral
precedent, federal court ruling in case of similarly situated MDD pilot Emery which held she was
active member good standing, and as recently as May JamHof again admitted in federal court
pleadings  that Emery, as a similarly situated longtime MDD pilot, was indeed a member in good
standing at all times.

So why am I being treated differently.  Clearly, under the LMRDA I meet the definition of a
member in good standing, who is entitled to all union member bill of rights. Further, any position
APA takes in its C&B or otherwise that contradicts my entitlement to those rights is deemed
without force or effect as a matter of statutory law under the LMRDA.

Regardless, I remember from Emery's SBOA case, that she recused APAs counsel as being
conflicted, but then APA legal insisted that she wasn't allowed to rep herself Pro Se, but instead
was required to her own counsel at great personal expense. The current version of your
agreement places me in the very same untenable and detrimental position.

Therefore, to the extent APA is still refusing to represent me, I would respectfully ask that APA
provide me with unconflicted 3rd Party representation at the associations expense. Just as TWA
pilots have been provided in the ED, Supp CC and Supp C arbitrations.

Secondly, I think it is wrong and highly improper for APA to assert and potentially testify that
APA has "accepted" a past-practice of terminating and removing 5yr LTD pilots from the list.  I
know you've only been here a year, but APA had not previously accepted such practice, and in
fact disputed it. Moreover, such position not only undercuts my grievance, but was simply not
APAs position until  Mark Meyers, Keith Wilson's, and Rusty McDaniels recent sworn
testimony in the Emery case last summer.  In fact, such newfound "acceptance" plainly
contradicts prior written representations by APA's former Legal Director, APA positions adopted

in LGA base G11-054 and DFW base G12-012, as well as recent sworn testimony of two of the Company's Managing Directors.

Third, given the above issues, I have serious concerns that my grievance will be handled in a fair and equitable manner. Which gives rise to my concern to the makeup of the system board panel. Assuming, APA will provide me 3rd party representation, I would also request that I get to personally pick the two APA panel members, or possibly be heard before a sole neutral.

Jim, bottomline I would like to resolve this matter amicably and try to arrive at a mutually acceptable agreement to arbitrate G12-011, but it must be a fair agreement that doesn't prejudicially tie my hands behind my back. I will reiterate that I much prefer mutually agreeing to arbitrate G12-022 as opposed to continuing to litigate these issues.

I would appreciate it if you can call to me to discuss asap, and will make myself available to you anytime this week or weekend.

Respectfully,

Lawrence M. Meadows
516-982-7718
Sent from my iPhone

# EXHIBIT   6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 9, 2017, a true copy of the foregoing was electronically filed with the Clerk of Court by using the Florida E-Filing Portal, which will serve a copy of this document by electronic notice to the parties identified on the following Service List and by regular U.S. Mail and/or email to Plaintiff.

_s/ Capri Trigo_
Capri Trigo, Esq.

### SERVICE LIST

Lawrence Meadows
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
Telephone: 516-982-7718
Facsimile: 435-604-7850
PRO SE



:DON&REES
Y MANSUKHANI

WER
ECOND STREET
)0
33131

Lawrence Meadows
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139

33139-149337

GORDON REES SCULLY MANSUKHANI
100 SE Second Street, Suite 3900, Miami, FL 33131