UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LAWRENCE MEADOWS,

     Plaintiff,

v.

ALLIED PILOTS ASSOCIATION,
et al.

     Defendant.

CASE NO. 17-CV-22589-JLK

---

## DECLARATION OF MARK R. MYERS, ESQ.

I, MARK R. MYERS, hereby depose and state as follows:

1. I am an attorney admitted to practice law in the State of Texas.

2. I am an in-house attorney for the Defendant Allied Pilots Association ("APA") and have been employed in that position continuously since 2008.  As such, I am fully familiar with the information contained herein.

3. I submit this declaration upon personal knowledge and upon review of relevant documents maintained by the APA.

4. Attached hereto as Exhibit A is a copy of the Memorandum of Understanding Regarding Contingent Collective Bargaining Agreement which was executed by American Airlines, US Airways, APA and the US Airline Pilots Association ("USAPA") and is incorporated by reference in the Complaint.

5. Attached hereto as Exhibit B is the document that Plaintiff submitted on March 21, 2016, entitled Expedited System Board of Adjustment Grievance which is incorporated by reference in the Complaint.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 4, 2018

Mark R. Myers

## MEMORANDUM OF UNDERSTANDING

## REGARDING

## CONTINGENT COLLECTIVE BARGAINING AGREEMENT

Pursuant to this Memorandum of Understanding Regarding Contingent Collective Bargaining Agreement (this "Memorandum"), US Airways, Inc. and any successor (collectively, "US Airways"), American Airlines, Inc. ("American"), Allied Pilots Association ("APA"), and US Airline Pilots Association ("USAPA", and with US Airways, American, and APA, the "Parties"), hereby agree as follows:

1.  US Airways and APA agreed to a Conditional Labor And Plan Of Reorganization Agreement executed April 13, 2012 and as amended from time-to-time (the "CLA").  Upon the Memorandum Approval Date (as defined in Paragraph 18), this Memorandum shall supersede and replace the CLA. This Memorandum provides a process for reaching:

> (a) a Merger Transition Agreement (the "MTA") between APA and an entity ("New American Airlines") formed in connection with a plan of reorganization ("POR") for such of those AMR Corporation-related debtors required to effectuate a combination of American and US Airways (the "Merger").  The MTA shall consist of the collective bargaining agreement between American and APA approved on December 19, 2012 by the Bankruptcy Court in In Re AMR Corporation, et al., jointly administered Ch. 11 Case No. 11-15463 (SHL) (the "2012 CBA"), as amended pursuant to the provisions of this Memorandum;

> (b) a Joint CBA (the "JCBA") to apply to a merged workforce composed of pilots employed by American and US Airways.

2.  The negotiation and interest arbitration processes provided in this Memorandum will be binding and apply to all Parties as of the Memorandum Approval Date.  The results of the negotiation and interest arbitration processes will be binding and apply to all Parties as provided herein. Notwithstanding the foregoing, any changes made to the MTA prior to the implementation of the JCBA will apply with equal force to all pilots.

3.  Beginning on the effective date of the POR (the "Effective Date"), pilots employed by US Airways shall be paid in accordance with the provisions of the MTA that are generally applicable to pilots employed by New American Airlines.  The eligibility of US Airways pilots for a defined contribution plan accrual shall commence on the Effective Date, and US Airways' contribution to the retirement plan beginning on the Effective Date shall be calculated by multiplying an eligible pilot's eligible compensation under the applicable retirement plan by the percentage contribution made by New American Airlines to its pilots' defined contribution retirement plan.

4.  It is the intent of the Parties that, as of the Effective Date, the terms and conditions of employment for pilots employed by New American Airlines and US Airways will be set by the MTA (as defined in Paragraph 1(a)) and in accordance with the process specified herein.  The Parties further understand,

**EXHIBIT A**

however, that it will take some period of time for those terms to be implemented.  Accordingly, except for those terms specifically identified in Paragraph 3, the Parties agree that each term of the MTA shall be applicable to all US Airways pilots at the earliest practicable time for each such term, and such terms, when applicable, shall govern and displace any conflicting or wholly or partially inconsistent provision of the former US Airways pilot agreements or the *status quo* arising thereunder. Once the MTA has been fully implemented, it shall fully displace and render a nullity any prior collective bargaining agreements applicable to US Airways pilots and any *status quo* arising thereunder.

5.  US Airways, and its successors, if any, shall continue to recognize and treat with USAPA as the representative of the pilots employed by US Airways until another representative for the pilot craft or class is certified by the National Mediation Board (the "NMB").  Subject to the provisions of Paragraph 27, negotiations to convert this Memorandum and the MTA into the JCBA and any implementation or other interim agreement, if any, shall be conducted with USAPA and APA jointly, until such time as one union is certified by the NMB to be the collective bargaining representative of the combined pilot craft or class.  At that time, the duly-certified representative shall have exclusive authority to negotiate on behalf of the pilots with respect to the JCBA.  It is the Parties' intention that the JCBA shall replace any and all prior collective bargaining agreements for USAPA; however, for APA, the JCBA shall be an amendment to the MTA.

6. During the period US Airways is obligated to bargain with USAPA, it will provide information requested by duly authorized representatives of USAPA's Negotiating Advisory and Merger Committees that is reasonably related to the Merger, subject to the execution of standard confidentiality agreements by USAPA and/or affected individuals upon US Airways' request.  US Airways will similarly provide such information on such conditions to APA.  Notwithstanding the foregoing, US Airways shall continue to supply information pursuant to Attachment M of the Basic East Agreement in matters unrelated to the Merger.

7. US Airways shall reimburse USAPA for expenses incurred after May 1, 2012, as well as for all flight pay loss, incurred in developing and carrying out the functions specified in this Memorandum.  The reimbursement provided to USAPA pursuant to the preceding provisions shall not be more than $1.5 million.  In addition, New American Airlines and US Airways shall reimburse the merger representatives involved in the seniority integration process in an aggregate not to exceed $4 million. However, any such reimbursement shall not include expenses or flight pay loss associated with litigation against US Airways, American, New American Airlines, or their affiliates, related entities or successor(s), if any, or with respect to the current seniority dispute at issue in the United States District Court for the District of Arizona or to influence the representation choices of their employees or affect their organization rights under Section 2, Ninth of the Railway Labor Act.  The reimbursement for expenses related to seniority list integration shall be made no later than 30 days after presentation of an integrated seniority list to US Airways and New American Airlines that complies with the provisions of Paragraph 10, including the obligation to produce an integrated seniority list within the time limitations in Paragraph 10 unless such failure is caused by the airline(s).  Reimbursement for expenses, other than for seniority list integration, shall be made no later than 30 days after submission of an invoice in a suitable form so long as USAPA or APA have submitted the invoice within 45 days of the later of the date when the expense was incurred or the date when APA's Board of Directors approves this Memorandum, or USAPA's membership ratifies this Memorandum, as applicable.  All expenses for flight pay loss shall be paid directly by the airlines and USAPA and APA shall provide supporting information to support the flight pay loss claim.  US Airways and New American Airlines shall also make positive space transportation available to members of USAPA's

Merger and Negotiating Advisory Committees, and similar APA committee members, when engaged in activities related to seniority list integration and contract negotiations.

8.  The protections in this Paragraph begin on the Effective Date and last until the earlier of eighteen (18) months after US Airways and the New American Airlines obtain a single operating certificate, or the date on which a JCBA and integrated seniority list are in effect.  From the Effective Date until the effective date of the JCBA, the terms and conditions of employment of the New American Airlines and US Airways pilots shall be governed by the MTA.

a.  The New American Airlines pilots and US Airways pilots will perform work in accordance with the MTA, including flying and training, and neither airline will interchange pilots between their operations.  Neither New American Airlines nor US Airways may utilize in its flight operations or flight training operations a pilot employed by the other airline, except :  (i) for pilots hired from one airline by the other pursuant to Paragraphs 8(i) and 8(j); (ii) as may be needed to comply with conditions prescribed by the Federal Aviation Administration for the purpose of transition to, and eventual operation under, a single operating certificate; or (iii) to train pilots who will make up the initial cadre of check airmen for a new fleet type.  APA and USAPA, as applicable, shall support the efforts of US Airways and New American Airlines to obtain regulatory approval for the Merger and issuance of the single operating certificate.

b.  Except for the circumstances described in paragraph (a) above, no pilot of New American Airlines or US Airways will fly as a crewmember on aircraft in the Fleet of the other airline.  The "Fleet" of each airline shall be defined to include all aircraft in the service of or stored by the airline, or on order or option by the airline, on the  Memorandum Approval Date.  A list of all aircraft in the respective Fleets of American and US Airways as of the Memorandum Approval Date is included as Attachment A.  All orders, options, and anticipated returns set forth in the airlines' fleet plans as of the Memorandum Approval Date are included as Attachment B.

c.  In the event that American/New American Airlines or US Airways acquires aircraft not listed in Attachments A or B as a replacement for an existing aircraft, that aircraft shall be designated as American Airlines or US Airways based upon the aircraft being replaced.  For purpose of this section, "replacement" means that the newly acquired aircraft can be matched, on a one-to-one basis, to an aircraft that has left or will leave the service of the airline within six (6) months before or after the new aircraft enters service.

d.  With respect to new aircraft not listed on Attachments A or B and not assigned under Paragraph 8(c) above, the pilots of each airline will operate any of their respective unique aircraft types.  As to all other aircraft, the following procedure will be applied:  the airline will provide notice to APA and USAPA, if applicable, of its intent to acquire any such aircraft not less than 270 days prior to such aircraft entering service, and will inform the organization(s), to the extent known, of the type, model and number of such aircraft, the type of engines on them, their ETOPS capability, if any, and the extent to which such aircraft will be used as replacements for other aircraft then or previously operated.  The representative(s) of the New American Airlines and US Airways pilots will promptly determine which pilot group will operate such aircraft or will implement binding arbitration, if necessary, to determine the allocation of such flying; the pilot representative(s) shall notify the airlines of the results of this process no later than thirty (30) days after receiving notice from the airlines.  If the airlines do not agree with the position of the labor representative(s), the dispute will be resolved pursuant to final and binding interest arbitration with a decision issued no later than 120 days prior to the date when the aircraft is scheduled to be placed in service.  The standard to be applied by the arbitrator will be the fair and equitable allocation of flying between the two pilot groups giving

due consideration to the airline business plans.  Nothing in this Paragraph will delay or prevent the planned implementation of such aircraft into revenue service.

e.  The total number of aircraft block hours scheduled to be flown by mainline US Airways East pilots (excluding Group I aircraft) during any rolling 12-month look-back period shall be no less than 664,426.  The total number of aircraft block hours scheduled to be flown by mainline US Airways West pilots during any rolling 12-month look-back period shall be no less than 436,850.  The number of widebody positions, either maintained or pay protected, for US Airways pilots shall be no less than 291 US Airways widebody captain positions and 475 US Airways widebody first officer positions.  A pay-protected pilot under this Paragraph 8(e) shall not be eligible for additional pay protection under Paragraph 12(a).  In the event a pilot is eligible for pay protection under both Paragraphs 8(a) and 12(a), such pilot shall be entitled to whichever pay protection produces the higher pay and shall also fulfill one of the minimum number of widebody positions required herein.

f.  The total number of aircraft block hours scheduled to be flown by mainline New American Airlines pilots (excluding Group I) in any rolling twelve month look back period shall be no less than 1,995,663 hours.

g.  Commencing when the total number of US Airways aircraft in Equipment Group I equals 31, subsequent Group I aircraft shall be delivered on a ratio of two (2) Group I aircraft to New American Airlines for every one (1) Group I aircraft to US Airways.

h.  For purposes of this Paragraph 8, block hours scheduled to be flown for a given month shall be determined by reference to an airline's flight schedule as published for sale 30 days prior to the first day of the month.  US Airways shall furnish the block hour data to USAPA, if applicable, and APA no later than 30 days prior to the first day of each month.

i.  New American Airlines will not hire new pilots if pilots at US Airways are on furlough unless the most junior pilot on the American Airlines Pilots' System Seniority List has been offered a position at the New American Airlines.

Effective when the most junior pilot on the American Airlines Pilots' System Seniority List has been offered a position at New American Airlines, future positions at New American Airlines will be offered to furloughed US Airways pilots to the extent consistent with the terms of the April 9, 2010 Opinion and Award in FLO-0108 and September 14, 2011 Preferential Hiring Agreement entered into pursuant to that Award.  Prior to making offers under this provision, US Airways, New American Airlines and the pilot representative(s) shall agree to the order in which any such offers shall be made to US Airways pilots.  A furloughed US Airways pilot who declines a position as a New American Airlines pilot retains the right to be offered a position in a future New American Airlines new-hire class and also retains the right to be recalled to, or otherwise offered a position with, US Airways.

A US Airways pilot who accepts a position at New American Airlines:

(1)  will be treated as junior to all pilots who are on the American Airlines Pilots' System Seniority List on the Effective Date, but pilots on the US Airways seniority list employed by New American Airlines under this provision will be ranked among themselves in the order of their acceptance of positions with New American Airlines, and

(2)  will be considered an employee of New American Airlines during the period prior to the expiration of the protections in this Paragraph 8 and be subject to the MTA, and

(3) will retain, accrue and be entitled to use his/her combined longevity at both airlines for all purposes, including but not limited to, pay (excluding furlough pay, which will be calculated based on time at New American Airlines only), benefits, vacation accrual, and eligibility towards retirement contributions and health and welfare participation, and

(4) cannot return to US Airways for up to eighteen (18) months from the date of employment as a pilot for New American Airlines, and

(5) will retain his/her position on the US Airways seniority list, and

(6) will not be required to serve a probation period as a pilot for New American Airlines, and

(7) will not receive furlough pay from US Airways with respect to the period of service as a pilot for New American Airlines, and

(8) will be subject to any applicable background checks and employment requirements for New American Airlines pilots returning from furlough.

j.  US Airways will not hire new pilots if pilots at New American Airlines are on furlough unless the most junior US Airways pilot has been offered recall or another position with US Airways and all New American Airlines pilots on furlough have been offered a position at US Airways.

Effective when the most junior US Airways pilot has been offered recall or another position with US Airways, future positions at US Airways will be offered to furloughed New American Airlines in seniority order.  A furloughed New American Airlines pilot who declines a position as an US Airways pilot retains the right to be offered a position in a future US Airways new-hire class and also retains the right to be recalled to New American Airlines in accordance with his/her American Airlines seniority.

A New American Airlines pilot who accepts a position at US Airways:

(1) will be treated as junior to all pilots who are on the US Airways seniority list on the Effective Date, but pilots on the American Airlines Pilots' System Seniority List employed by US Airways under this provision will be ranked among themselves in seniority order, and

(2) will be considered an employee of US Airways during the period prior to the expiration of the protections in this Paragraph 8 and be subject to the terms and conditions set forth in the MTA (as provided in Paragraphs 3-4 of this Memorandum), and

(3) will retain, accrue and be entitled to use his/her combined longevity at both airlines for all purposes, including but not limited to, pay (excluding furlough pay, which will be calculated based on time at New American Airlines only), benefits, vacation accrual, and eligibility towards retirement contributions and health and welfare participation, and

(4) cannot return to New American Airlines for up to eighteen (18) months from the date of employment as a pilot for US Airways, and

(5) will retain his/her position on the American Airlines Pilots' System Seniority List, and

(6) will not be required to serve a probation period as a pilot for US Airways, and

(7) will not receive furlough pay from New American Airlines with respect to the period of service as a pilot for US Airways, and

(8)  will be subject to any applicable background checks and employment requirements for US Airways pilots returning from furlough.

k.  No pilot base other than St. Louis shall be closed prior to October 1, 2013.

l.  Neither New American Airlines nor US Airways will establish TDY positions at a pilot domicile of the other airline.

m.  All Shuttle flying between DCA, LGA and BOS shall be performed by US Airways pilots.

n.  All existing flying between PHX and Hawaii shall be performed by US Airways pilots.

o.  All Trans-Pacific (Asia) flying shall be performed by pilots on the American Airlines Pilots' System Seniority List.

p.  All of the provisions of this Paragraph 8 shall be subject to Paragraph 21.

9.  Nothing herein shall prevent placement of the "US" code on flights operated by American or New American Airlines (or by any other airline when displaying the "AA" code), or placement of the "AA" code on flights operated by US Airways (or by any other airline when displaying the "US" code), immediately upon the Effective Date, and it is expressly agreed that US Airways and American or New American Airlines may do so.  Subject to the provisions of this Memorandum, immediately upon the Effective Date, US Airways and New American Airlines or their successors (if any) may move forward with obtaining and utilizing a single operating certificate, and otherwise combining the operations of the two carriers, except for those measures that are dependent upon implementation of an integrated seniority list.

10.  a.  A seniority integration process consistent with McCaskill-Bond shall begin as soon as possible after the Effective Date.  If, on the date ninety (90) days following the Effective Date, direct negotiations have failed to result in a merged seniority list acceptable to the pilots at both airlines, a panel of three neutral arbitrators will be designated within fifteen (15) days to resolve the dispute, pursuant to the authority and requirements of McCaskill-Bond.  That arbitration proceeding will commence no later than 60 days after the designation of the arbitrators, or as soon thereafter as practicable given the availability of the designated arbitrators, provided that it is understood that, in no event, shall the seniority integration arbitration proceeding commence prior to final approval of the JCBA pursuant to the deadlines and procedures in Paragraph 27 below.  The panel of arbitrators will render its award within six (6) months of the commencement of the arbitration, and in any event not later than 24 months after the Effective Date.

b.  The panel of arbitrators may not render an award unless it complies with all of the following criteria:  (i) the list does not require any active pilot to displace any other active pilot from the latter's position; (ii) furloughed pilots may not bump/displace active pilots; (iii) except as set forth in Paragraphs 12 and 13 below, the list does not require that pilots be compensated for flying not performed (e.g., differential pay for a position not actually flown); (iv) the list allows pilots who, at the time of implementation of an integrated seniority list, are in the process of completing or who have completed initial qualification training for a new category (e.g., A320 Captain or 757 First Officer), or who have successfully bid such a position but have not been trained because of conditions beyond their control (such as a company freeze), to be assigned to the positions for which they have been trained or successfully bid, regardless of their relative standing on the integrated seniority list; and (v) it does not contain conditions and restrictions that materially increase costs associated with training or company paid move as specified in the JCBA.

c. The integrated seniority list resulting from the McCaskill-Bond process shall be final and binding on APA and USAPA (and/or the certified bargaining representative of the combined pilot group), the company(ies) and its(their) successors (if any), and all of the pilots of American/New American Airlines and US Airways.

d. During the McCaskill-Bond process, including any arbitration proceeding, US Airways, American or New American Airlines, or their successors (if any), shall remain neutral regarding the order in which pilots are placed on the integrated seniority list, but such neutrality shall not prevent said carriers from insuring that the award complies with the criteria in Paragraph 10(b)(i)-(v).

e. The obligations contained in this Paragraph shall be specifically enforceable on an expedited basis before a System Board of Adjustment in accordance with Paragraph 20, provided that the obligations imposed by McCaskill-Bond may be enforced in a court of competent jurisdiction.

f. A Seniority Integration Protocol Agreement ("Protocol Agreement") consistent with McCaskill-Bond and this Paragraph 10 will be agreed upon within 30 days of the Effective Date.  The Protocol Agreement will set forth the process and protocol for conducting negotiations and arbitration, if applicable, and will include a methodology for allocating the reimbursement provided for in Paragraph 7.  The company(ies) will be parties to the arbitration, if any, in accordance with McCaskill-Bond.  The company(ies) shall provide information requested by the merger representatives for use in the arbitration, if any, in accordance with requirements of McCaskill-Bond, provided that the information is relevant to the issues involved in the arbitration, and the requests are reasonable and do not impose undue burden or expense, and so long as the merger representatives agree to appropriate confidentiality terms.

g. This Memorandum is not a waiver of any argument that participants may make in the seniority integration process.  Nor do the provisions of this Memorandum constitute an admission as to the appropriate allocation of flying following the expiration of the protections in Paragraph 8 of this Memorandum, or the manner in which the respective pre-merger carriers would have operated in the absence of a merger, or the job entitlements or equities that arguably underlie the construction of an integrated seniority list, or for any other purpose.  This Memorandum may be offered into evidence or shown to a mediator as background information and to describe the actual operations of the separate carriers prior to expiration of the protections in Paragraph 8 of this Memorandum.

h. US Airways agrees that neither this Memorandum nor the JCBA shall provide a basis for changing the seniority lists currently in effect at US Airways other than through the process set forth in this Paragraph 10.

i. Nothing in this Paragraph 10 shall modify the decision of the arbitration panel in Letter of Agreement 12-05 of the 2012 CBA.

11. a. During the term of the MTA, US Airways shall not furlough any pilots who have established and maintain seniority on the US Airways mainline system as of the Effective Date.  USAPA will

provide, by name, East Pilot "X" and West Pilot "Y" who will be the most junior US Airways pilots afforded this furlough protection. US Airways shall not furlough any such pilot in anticipation of the transaction that results in the formation of New American Airlines or of the operationally merged carrier consisting of New American Airlines and US Airways. The parties intend that this furlough protection will be part of the status quo during contract negotiations pursuant to Section 6 of the Railway Labor Act for a successor agreement to the JCBA.

      b.  New American Airlines shall not furlough any pilots during the term of the MTA whose names appear on the American Airlines' Pilots System Seniority List as of the Effective Date and who are not:  (i) on furlough as of the Effective Date; (ii) junior to the least senior active pilot on the Effective Date.  This protection includes American Eagle pilots with American Airlines seniority numbers when they flow up and become active employees at New American Airlines and who are senior to the most junior active pilot on the Effective Date.  The parties intend that this furlough protection will be part of the status quo during contract negotiations pursuant to Section 6 of the Railway Labor Act for a successor agreement to the JCBA.

      c.  This Paragraph 11 is subject to Paragraph 21.

12.    a.  Any US Airways pilot as of the Effective Date who is thereafter involuntarily displaced to a lower paying position shall be pay protected.  The pay protections of this Paragraph shall continue unchanged if the affected pilot(s) suffer(s) multiple displacements, but shall end whenever such pilot(s) can hold the position from which the pilot was originally displaced or an equivalent or greater pay position.  USAPA will provide, by name, East Pilot "X" and West Pilot "Y" who will be the most junior US Airways pilots afforded this pay protection.  The final version of this pay protection provision, including its duration, will be substantively the same as in the MTA.

      b.  If any currently-active New American Airlines pilot is involuntarily displaced to a Group I aircraft, the pilot's hourly pay rate shall not be reduced.  This pay protection shall terminate if and when the involuntarily-displaced pilot can hold a position at the same or higher pay rate.

If any currently-active New American Airlines pilot is displaced from his bid position to another bid position within his base, or to a bid position at a different base, that pilot will be pay protected against a pay rate reduction unless:

      1.  That pilot could have been awarded a displacement within his base to a bid position of equal or greater pay, but elected a displacement to a lower paying bid position. (A lateral displacement (International / Domestic, and vice versa) is considered a displacement of equal pay); or

      2.  No bid position of equal or greater pay was available at his current base, and that pilot elected not to be awarded a displacement at a new base to a bid position which would have provided that pilot equal or greater pay when compared to the bid position displaced from. (A lateral displacement to a different base (International / Domestic, and vice versa) is considered a displacement of equal pay).

This pay protection shall terminate if and when the displaced pilot could return or advance to a position in any base at the same or higher pay rate from which the pilot was initially displaced.

The value and treatment of this pay protection shall be governed by Paragraph 24.

13.   Commencing on the date of single operating certificate for US Airways and New American Airlines or their successors (if any), all pilots, who have established and maintain seniority on the US Airways mainline system and who are eligible for furlough protection pursuant to Paragraph 11 above, will be paid in accordance with the Group I pay rates as set forth in Paragraph 22 when flying a Group I aircraft except for the following pay protection: a Group I captain shall be paid at Group III first officer pay rates unless the captain can hold a Group III first officer or higher-paying position; a Group I first officer shall be paid at Group II first officer pay rates unless the first officer can hold a Group II first officer or higher-paying position.

14.   USAPA agrees to waive all change of control provisions, including, but not limited to, Section 1.D in the East collective bargaining agreement, LPPs, daily minimum utilization, and minimum fleet requirements in the East and West collective bargaining agreements and in the Transition Agreement conditioned upon the occurrence of the Effective Date.

15.   US Airways agrees that it will comply with the East and West CBAs and the Transition Agreement until the Effective Date.

16.   US Airways shall provide a bridge of Short Term Disability ("STD") coverage for thirty-six (36) months for eligible former America West pilots who remain employed by US Airways and have not forfeited their seniority rights as of the Effective Date. This STD coverage shall begin at the time the eligible former America West pilots are covered by New American Airlines' long-term disability plan. Eligibility for this coverage shall be determined according to the terms of the America West STD plan; the coverage shall contain, at a minimum, the plan design features in Appendix B of the current America West collective bargaining agreement except that the Maximum Benefit Duration shall be up to 90 days of a disability.

17.   Any US Airways pilot with a sick leave balance in excess of 1000 hours as of the Effective Date shall be allowed to use the sick leave for illness or injury in excess of 1000 hours until the pilot's sick leave balance is reduced to 1000 hours or less.  For US Airways pilots with a sick leave balance in excess of 1000 hours, their sick leave accruals on or after the Effective Date will be treated the same as American Airlines pilots under the MTA.

18.      a.  This Memorandum shall become effective (the "Memorandum Approval Date") upon the date when all of the following have occurred:  (i) approval by APA's Board of Directors; (ii) approval by US Airways' Board of Directors; and (iii) approval by AMR Corporation's Board of Directors.  If all of these approvals do not occur, this Memorandum shall be null and void in its entirety and as to all Parties.

     b.  This Memorandum shall become applicable to USAPA upon the later of (i) the

Memorandum Approval Date; and (ii) USAPA's Board of Pilot Representatives' recommending that USAPA's membership ratify this Memorandum and USAPA's membership's subsequent ratification of this Memorandum.  USAPA will inform the Parties whether its Board of Pilot Representatives has agreed to recommend that its membership ratify the MTA on or before January 4, 2013.  If recommended, the ratification vote of USAPA's membership shall be completed no earlier than approval of the Merger by AMR Corporation's Board of Directors and no later than 60 days after such approval (if any).  If such recommendation and ratification do not timely occur, this Memorandum shall be of no force or effect as to USAPA but shall remain in full force and effect as to the other parties.

      c. For purposes of clarity, this Memorandum shall be null and void in its entirety and as to all Parties if the Merger is not consummated.

      d. This Memorandum will only apply to this Merger, and will apply to this Merger regardless of its corporate structure.  This Memorandum shall not affect or have any applicability to American's stand-alone plan or any merger or transaction other than this Merger.

      e. If this Memorandum or the MTA is deemed to be unenforceable or nullified, in whole or in part, for any reason after the Effective Date, USAPA and APA agree that the terms and conditions of employment for the pilots employed by US Airways and New American Airlines will be as provided in the 2012 CBA as modified by the process in Paragraph 24 of this Memorandum.

19. It is the intent of the Parties that, notwithstanding anything to the contrary in this Memorandum, Paragraphs 8, 9, 18(e), and the results obtained through the process identified in Paragraph 24, shall remain in effect after the Effective Date even if this Memorandum is subsequently deemed to be unenforceable or nullified for any reason, and that these provisions are severable from the other terms of this Memorandum.  The parties shall meet and confer within fifteen (15) days after this provision is triggered to agree upon replacement protections for the provisions held to be unenforceable or nullified, and provided further that if replacement protections are not agreed upon by the Parties within thirty (30) days thereafter, either party may submit the dispute to binding arbitration on an expedited basis in accordance with the procedure described in Paragraph 20 of this Memorandum.  The interest arbitrator shall be charged with constructing alternatives having the same economic value as, and operating effects comparable to, the unenforceable or nullified MOU provisions they are replacing.

20. Except as expressly provided otherwise in this Memorandum, any dispute over the interpretation or application of this Memorandum shall be resolved in accordance with this provision.  Any such dispute shall be arbitrated on an expedited basis directly before a specially-created one-person System Board of Adjustment consisting of arbitrator Richard Bloch or Ira Jaffe, whoever shall be available to hear the dispute earliest.  If Arbitrator Bloch or Jaffe declines to serve in this capacity or is not available to resolve the dispute, another neutral arbitrator shall be selected.  The dispute shall be heard no later than thirty (30) days following the submission to the System Board (subject to the availability of the arbitrator), and shall be decided no later than thirty (30) days following the first day of the hearing, unless otherwise agreed to in writing.

21. The provisions described in Paragraphs 8 and 11 shall not apply in circumstances where the Company's non-compliance is caused in substantial part by Conditions Beyond The Company's Control.  "Conditions Beyond The Company's Control" shall include, but not be limited to, the

following: (1) an act of God; (2) a strike by any other company employee group or the employees of a Commuter Air Carrier operating pursuant to an authorized codeshare arrangement with the company; (3) a national emergency; (4) involuntary revocation of the company's operating certificate(s); (5) grounding of a substantial number of the company's aircraft; (6) a reduction in the company's operation resulting from a decrease in available fuel supply caused by either governmental action or by commercial suppliers being unable to meet the company's demands; and (7) the unavailability of aircraft scheduled for delivery.

22.     Pilot hourly pay rates shall be in accordance with the 2012 CBA Section 3 and Supplement A.

23.  Section 9 of the 2012 CBA shall be modified as follows:  (1) vacation accrual and value (i.e., how accrual translates to days off) shall be computed in accordance with the existing program for US Airways (West) pilots; and (2) New American Airlines minimum monthly vacation obligation will be 5.0% of the awarded vacations for the year (i.e., total accrued vacations less floated vacations), or 2.75% of the total accrued vacation, whichever is lower.

24.     a.  APA is entitled to modifications to the 2012 CBA valued at an average of $87 million/year over six years.

        b.  APA will provide its list of proposed modifications, and corresponding valuations with underlying documentation and modeling, within twenty-one (21) days of APA's Board of Directors' approval of this Memorandum.  APA, American, and US Airways will negotiate with respect to the means by which the modifications identified in Paragraph 24(a) will be achieved and the appropriate valuation of each APA proposed modification.  To the extent the parties are unable to reach an agreement as to the appropriate modifications and valuations, US Airways and American shall offer final and binding interest arbitration, and the APA shall accept such proffer, to resolve the dispute. Richard Bloch shall serve as the arbitrator.  If Arbitrator Bloch declines to serve in this capacity or is not available to resolve the parties' dispute, the parties shall select another arbitrator.  The arbitration decision on any contested modifications or valuation issues shall be issued no later than 60 days after APA provides its list of proposed modifications and corresponding valuations with underlying documentation and modeling; provided, however, that the arbitrator shall not have jurisdiction to modify any of the provisions of Paragraph 25 of this Memorandum.  In resolving contested valuation issues, the arbitrator will take into consideration economic cost and, where warranted, balance sheet liability.  For example, with regard to an item such as retiree medical benefits, balance sheet liability will be considered in addition to economic cost.

        c.  APA agrees that Supplement X regarding profit sharing is hereby eliminated from the 2012 CBA, and that profit sharing shall not be part of APA's proposed modifications referred to in this Paragraph.

        d.  The pay protection described in Paragraph 12 shall be valued at $12 million for each year of protection, and shall count against the total value of the modifications provided for in Paragraph 24(a).

        e.  Flights over sixteen (16) hours will be manned with two (2) Captains and two (2) First Officers.

11

25.  Section 1 (Recognition and Scope) of the MTA shall be the 2012 CBA as modified in a. through f. below.

    a.  The maximum number of commuter aircraft as a percentage of the Mainline Narrow-Body Fleet shall not exceed 75%.

    b.  The maximum number of large regional commuter aircraft as a percentage of the Mainline Narrow-Body Fleet shall not exceed 30% through 2014, 35% in 2015 and 40% thereafter.

    c.  Codeshare modified to accommodate full AA/US codesharing plus 15% codesharing with domestic air carriers, both exclusive of AS and HA carve outs.

    d.  Existing CRJ900s and E175s fleet in operation at US grandfathered from 76 seat limitation.

    e.  Accommodate US Shuttle as provided in CLA.

f.  Baseline for international flying set to number of international block hours scheduled during the previous 12 months by AA/US combined.


26.  APA shall file a single carrier petition with the NMB as soon as practicable after the Effective Date, when APA determines that the facts support the legal requirements for the filing of a petition but in no event later than four months after the Effective Date.  If and when the NMB makes a single-carrier finding, the single carrier acknowledged by the NMB and the certified representative shall be governed by this Memorandum.


27.  If and when the NMB makes a single-carrier finding, the organization certified to represent the pilots of the single carrier, the single carrier acknowledged by the NMB and the certified organization shall promptly engage or re-engage in negotiations to achieve a JCBA to be applicable to the carrier that will be the product of the Merger.  In the event that such negotiations are not completed within 30 days of the NMB's certification, New American Airlines will offer final and binding interest arbitration under Section 7 of the RLA, and the organization will accept such proffer, to resolve once and for all the terms of the JCBA.  The arbitration decision shall be issued no later than 60 days after the close of the 30-day negotiation period.  A panel of three arbitrators led by Richard Bloch shall serve as the arbitrators for this process.  If Arbitrator Bloch declines to serve in this capacity or is unable to resolve the parties' dispute, the parties shall select another arbitrator.  The arbitrator's jurisdiction and award will be limited to fashioning provisions which are consistent with the terms of the MTA, including provisions which implement the terms of the MTA or facilitate the integration of pilots under the terms of the MTA.  The arbitrator's award specifically shall adhere to the economic terms of the MTA and shall not change the MTA's Scope terms (Paragraph 25 of this Memorandum) or the modifications generated through the process set forth in Paragraph 24 of this Memorandum.


28.  US Airways and USAPA agree to be bound and abide by the arbitration decision contemplated by Letter of Agreement 12-05 of the 2012 CBA.  Nothing in the MTA shall modify the decision of the arbitration panel thereunder.


29.  Attachment C summarizes the timelines prescribed by this Memorandum for the creation of the MTA, JCBA, and integrated seniority list and shall not prevent the Parties from developing the JCBA earlier.

30.  This Memorandum is ultimately subject to approval by the Bankruptcy Court in In Re AMR Corporation, et al., jointly administered Ch. 11 Case No. 11-15463 (SHL) in connection with the Merger.

**APA:**

ALLIED PILOTS ASSOCIATION

By: _X C. Wil_____

Name: _KEITH C. WILSON_____

Title: _PRESIDENT_____

**USAPA:**

US AIRLINE PILOTS ASSOCIATION

By: _____

Name:_____

Title:_____

**American:**

AMERICAN AIRLINES, INC.

By: _____

Name:_____

Title:_____

**US Airways:**

US AIRWAYS, INC.

By: _____

Name:_____

Title:_____

30. This Memorandum is ultimately subject to approval by the Bankruptcy Court in <u>In Re AMR Corporation</u>, et al., jointly administered Ch. 11 Case No. 11-15463 (SHL) in connection with the Merger.

### APA:

ALLIED PILOTS ASSOCIATION

By: _____
Name: _____
Title: _____

### USAPA:

US AIRLINE PILOTS ASSOCIATION

By: _____
Name: GARY HUMMEL
Title: PRESIDENT

### American:

AMERICAN AIRLINES, INC.

By: _____
Name: _____
Title: _____

### US Airways:

US AIRWAYS, INC.

By: _____
Name: _____
Title: _____

13

30.  This Memorandum is ultimately subject to approval by the Bankruptcy Court in In Re AMR Corporation, et al., jointly administered Ch. 11 Case No. 11-15463 (SHL) in connection with the Merger.

**APA:**

ALLIED PILOTS ASSOCIATION

By: _____
Name:_____
Title:_____

**USAPA:**

US AIRLINE PILOTS ASSOCIATION

By: _____
Name:_____
Title:_____

**American:**

AMERICAN AIRLINES, INC.

By: _____
Name: _____DENISE LYNN_____
Title: _____SVP, People_____

**US Airways:**

US AIRWAYS, INC.

By: _____
Name:_____
Title:_____

13

30. This Memorandum is ultimately subject to approval by the Bankruptcy Court in <u>In Re AMR Corporation</u>, et al., jointly administered Ch. 11 Case No. 11-15463 (SHL) in connection with the Merger.

**APA:**

ALLIED PILOTS ASSOCIATION

By: _____
Name:_____
Title:_____

**USAPA:**

US AIRLINE PILOTS ASSOCIATION

By: _____
Name:_____
Title:_____

**American:**

AMERICAN AIRLINES, INC.

By: _____
Name:_____
Title:_____

**US Airways:**

US AIRWAYS, INC.

By: _____
Name:___ J. Scott Kirby_____
Title:___ President_____

13

Attachment A: Current Fleet Count, American
as of February 13, 2013

### B737-800, Current Fleet = 199

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | N901AN | 51 | N952AA | 101 | N814NN | 151 | N865NN |
| 2 | N902AN | 52 | N953AN | 102 | N815NN | 152 | N866NN |
| 3 | N903AN | 53 | N954AN | 103 | N816NN | 153 | N867NN |
| 4 | N904AN | 54 | N955AN | 104 | N817NN | 154 | N868NN |
| 5 | N905AN | 55 | N956AN | 105 | N818NN | 155 | N869NN |
| 6 | N906AN | 56 | N957AN | 106 | N819NN | 156 | N871NN |
| 7 | N907AN | 57 | N958AN | 107 | N820NN | 157 | N872NN |
| 8 | N908AN | 58 | N959AN | 108 | N821NN | 158 | N870NN |
| 9 | N909AN | 59 | N960AN | 109 | N822NN | 159 | N874NN |
| 10 | N910AN | 60 | N961AN | 110 | N823NN | 160 | N873NN |
| 11 | N912AN | 61 | N962AN | 111 | N824NN | 161 | N875NN |
| 12 | N913AN | 62 | N963AN | 112 | N825NN | 162 | N876NN |
| 13 | N914AN | 63 | N964AN | 113 | N826NN | 163 | N877NN |
| 14 | N915AN | 64 | N965AN | 114 | N827NN | 164 | N878NN |
| 15 | N916AN | 65 | N966AN | 115 | N829NN | 165 | N879NN |
| 16 | N917AN | 66 | N967AN | 116 | N830NN | 166 | N880NN |
| 17 | N918AN | 67 | N968AN | 117 | N831NN | 167 | N881NN |
| 18 | N919AN | 68 | N969AN | 118 | N832NN | 168 | N882NN |
| 19 | N920AN | 69 | N970AN | 119 | N833NN | 169 | N883NN |
| 20 | N921AN | 70 | N971AN | 120 | N834NN | 170 | N884NN |
| 21 | N922AN | 71 | N972AN | 121 | N835NN | 171 | N885NN |
| 22 | N923AN | 72 | N973AN | 122 | N836NN | 172 | N886NN |
| 23 | N924AN | 73 | N974AN | 123 | N837NN | 173 | N887NN |
| 24 | N925AN | 74 | N975AN | 124 | N838NN | 174 | N889NN |
| 25 | N926AN | 75 | N976AN | 125 | N839NN | 175 | N890NN |
| 26 | N927AN | 76 | N978AN | 126 | N840NN | 176 | N891NN |
| 27 | N928AN | 77 | N979AN | 127 | N841NN | 177 | N892NN |
| 28 | N929AN | 78 | N980AN | 128 | N842NN | 178 | N893NN |
| 29 | N930AN | 79 | N981AN | 129 | N843NN | 179 | N894NN |
| 30 | N931AN | 80 | N982AN | 130 | N844NN | 180 | N895NN |
| 31 | N932AN | 81 | N983AN | 131 | N845NN | 181 | N896NN |
| 32 | N933AN | 82 | N987AN | 132 | N846NN | 182 | N898NN |
| 33 | N934AN | 83 | N989AN | 133 | N847NN | 183 | N899NN |
| 34 | N935AN | 84 | N990AN | 134 | N848NN | 184 | N901NN |
| 35 | N936AN | 85 | N991AN | 135 | N849NN | 185 | N902NN |
| 36 | N937AN | 86 | N992AN | 136 | N850NN | 186 | N903NN |
| 37 | N938AN | 87 | N800NN | 137 | N851NN | 187 | N904NN |
| 38 | N939AN | 88 | N801NN | 138 | N852NN | 188 | N905NN |
| 39 | N940AN | 89 | N802NN | 139 | N853NN | 189 | N906NN |
| 40 | N941AN | 90 | N803NN | 140 | N854NN | 190 | N907NN |
| 41 | N942AN | 91 | N804NN | 141 | N855NN | 191 | N908NN |
| 42 | N943AN | 92 | N805NN | 142 | N856NN | 192 | N897NN |
| 43 | N944AN | 93 | N806NN | 143 | N857NN | 193 | N909NN |
| 44 | N945AN | 94 | N807NN | 144 | N858NN | 194 | N910NN |
| 45 | N946AN | 95 | N808NN | 145 | N859NN | 195 | N912NN |
| 46 | N947AN | 96 | N809NN | 146 | N860NN | 196 | N913NN |
| 47 | N948AN | 97 | N810NN | 147 | N861NN | 197 | N914NN |
| 48 | N949AN | 98 | N811NN | 148 | N862NN | 198 | N915NN |
| 49 | N950AN | 99 | N812NN | 149 | N863NN | 199 | N916NN |
| 50 | N951AA | 100 | N813NN | 150 | N864NN | | |

## Attachment A: Current Fleet Count, American
## as of February 13, 2013

| **B757-200, Current Fleet = 106** | | | | **B767-200ER, Current Fleet = 13** | | **B767-300ER, Current Fleet = 58** | |
|---|---|---|---|---|---|---|---|
| 1 | N612AA | 51 | N692AA | 1 | N319AA | 1 | N342AN |
| 2 | N613AA | 52 | N693AA | 2 | N320AA | 2 | N343AN |
| 3 | N615AM | 53 | N694AN | 3 | N323AA | 3 | N344AN |
| 4 | N617AM | 54 | N695AN | 4 | N324AA | 4 | N345AN |
| 5 | N618AA | 55 | N696AN | 5 | N327AA | 5 | N346AN |
| 6 | N619AA | 56 | N697AN | 6 | N328AA | 6 | N347AN |
| 7 | N621AM | 57 | N698AN | 7 | N329AA | 7 | N348AN |
| 8 | N622AA | 58 | N699AN | 8 | N332AA | 8 | N349AN |
| 9 | N623AA | 59 | N601AN | 9 | N335AA | 9 | N350AN |
| 10 | N624AA | 60 | N602AN | 10 | N336AA | 10 | N351AA |
| 11 | N625AA | 61 | N603AA | 11 | N338AA | 11 | N352AA |
| 12 | N628AA | 62 | N604AA | 12 | N339AA | 12 | N353AA |
| 13 | N630AA | 63 | N605AA | 13 | N321AA | 13 | N354AA |
| 14 | N631AA | 64 | N606AA | | | 14 | N355AA |
| 15 | N633AA | 65 | N607AM | | | 15 | N39356 |
| 16 | N634AA | 66 | N608AA | | | 16 | N357AA |
| 17 | N635AA | 67 | N609AA | | | 17 | N358AA |
| 18 | N638AA | 68 | N673AN | | | 18 | N359AA |
| 19 | N639AA | 69 | N674AN | | | 19 | N360AA |
| 20 | N640A | 70 | N675AN | | | 20 | N361AA |
| 21 | N642AA | 71 | N676AN | | | 21 | N362AA |
| 22 | N645AA | 72 | N677AN | | | 22 | N363AA |
| 23 | N646AA | 73 | N678AN | | | 23 | N39364 |
| 24 | N647AM | 74 | N679AN | | | 24 | N39365 |
| 25 | N649AA | 75 | N680AN | | | 25 | N366AA |
| 26 | N652AA | 76 | N181AN | | | 26 | N39367 |
| 27 | N653A | 77 | N182AN | | | 27 | N368AA |
| 28 | N654A | 78 | N183AN | | | 28 | N369AA |
| 29 | N655AA | 79 | N184AN | | | 29 | N370AA |
| 30 | N656AA | 80 | N185AN | | | 30 | N371AA |
| 31 | N657AM | 81 | N186AN | | | 31 | N372AA |
| 32 | N658AA | 82 | N187AN | | | 32 | N373AA |
| 33 | N659AA | 83 | N188AN | | | 33 | N374AA |
| 34 | N660AM | 84 | N189AN | | | 34 | N7375A |
| 35 | N662AA | 85 | N190AA | | | 35 | N376AN |
| 36 | N663AM | 86 | N191AN | | | 36 | N377AN |
| 37 | N665AA | 87 | N192AN | | | 37 | N378AN |
| 38 | N666A | 88 | N193AN | | | 38 | N379AA |
| 39 | N7667A | 89 | N194AA | | | 39 | N380AN |
| 40 | N668AA | 90 | N195AN | | | 40 | N381AN |
| 41 | N682AA | 91 | N196AA | | | 41 | N382AN |
| 42 | N683A | 92 | N197AN | | | 42 | N383AN |
| 43 | N684AA | 93 | N198AA | | | 43 | N384AA |
| 44 | N685AA | 94 | N199AN | | | 44 | N385AM |
| 45 | N686AA | 95 | N175AN | | | 45 | N386AA |
| 46 | N687AA | 96 | N176AA | | | 46 | N387AM |
| 47 | N688AA | 97 | N177AN | | | 47 | N388AA |
| 48 | N689AA | 98 | N174AA | | | 48 | N389AA |
| 49 | N690AA | 99 | N179AA | | | 49 | N390AA |
| 50 | N691AA | 100 | N178AA | | | 50 | N391AA |
| | | 101 | N173AN | | | 51 | N392AN |
| | | 102 | N172AJ | | | 52 | N393AN |
| | | 103 | N672AA | | | 53 | N394AN |
| | | 104 | N669AA | | | 54 | N395AN |
| | | 105 | N671AA | | | 55 | N396AN |
| | | 106 | N681AA | | | 56 | N397AN |
| | | | | | | 57 | N398AN |
| | | | | | | 58 | N399AN |

Attachment A: Current Fleet Count, American
as of February 13, 2013

| B777-200ER, Current Fleet = 47 | | B777-300ER, Current Fleet = 3 | |
|---|---|---|---|
| 1 | N770AN | 1 | N717AN |
| 2 | N771AN | 2 | N718AN |
| 3 | N772AN | 3 | N719AN |
| 4 | N773AN | | |
| 5 | N774AN | | |
| 6 | N775AN | | |
| 7 | N776AN | | |
| 8 | N777AN | | |
| 9 | N778AN | | |
| 10 | N779AN | | |
| 11 | N780AN | | |
| 12 | N781AN | | |
| 13 | N782AN | | |
| 14 | N783AN | | |
| 15 | N784AN | | |
| 16 | N785AN | | |
| 17 | N786AN | | |
| 18 | N787AL | | |
| 19 | N788AN | | |
| 20 | N789AN | | |
| 21 | N790AN | | |
| 22 | N791AN | | |
| 23 | N792AN | | |
| 24 | N793AN | | |
| 25 | N794AN | | |
| 26 | N795AN | | |
| 27 | N796AN | | |
| 28 | N797AN | | |
| 29 | N798AN | | |
| 30 | N799AN | | |
| 31 | N750AN | | |
| 32 | N751AN | | |
| 33 | N752AN | | |
| 34 | N753AN | | |
| 35 | N754AN | | |
| 36 | N755AN | | |
| 37 | N756AM | | |
| 38 | N757AN | | |
| 39 | N758AN | | |
| 40 | N759AN | | |
| 41 | N760AN | | |
| 42 | N761AJ | | |
| 43 | N762AN | | |
| 44 | N765AN | | |
| 45 | N766AN | | |
| 46 | N767AJ | | |
| 47 | N768AA | | |

## Attachment A: Current Fleet Count, American
## as of February 13, 2013

**MD80, Current Fleet = 185**

| # | Reg | # | Reg | # | Reg | # | Reg |
|---|---|---|---|---|---|---|---|
| 1 | N76200 | 51 | N44503 | 101 | N580AA | 151 | N963TW |
| 2 | N76201 | 52 | N70504 | 102 | N581AA | 152 | N964TW |
| 3 | N76202 | 53 | N505AA | 103 | N582AA | 153 | N965TW |
| 4 | N403A | 54 | N7506 | 104 | N583AA | 154 | N966TW |
| 5 | N424AA | 55 | N7508 | 105 | N584AA | 155 | N967TW |
| 6 | N70425 | 56 | N90511 | 106 | N585AA | 156 | N968TW |
| 7 | N426AA | 57 | N7512A | 107 | N586AA | 157 | N969TW |
| 8 | N433AA | 58 | N513AA | 108 | N587AA | 158 | N970TW |
| 9 | N434AA | 59 | N7514A | 109 | N589AA | 159 | N971TW |
| 10 | N435AA | 60 | N3515 | 110 | N590AA | 160 | N972TW |
| 11 | N436AA | 61 | N516AM | 111 | N591AA | 161 | N973TW |
| 12 | N437AA | 62 | N7517A | 112 | N592AA | 162 | N974TW |
| 13 | N438AA | 63 | N7518A | 113 | N593AA | 163 | N975TW |
| 14 | N439AA | 64 | N7519A | 114 | N594AA | 164 | N976TW |
| 15 | N454AA | 65 | N7520A | 115 | N595AA | 165 | N9677W |
| 16 | N455AA | 66 | N7521A | 116 | N596AA | 166 | N978TW |
| 17 | N456AA | 67 | N7522A | 117 | N597AA | 167 | N979TW |
| 18 | N466AA | 68 | N7525A | 118 | N598AA | 168 | N980TW |
| 19 | N467AA | 69 | N7526A | 119 | N599AA | 169 | N9681B |
| 20 | N468AA | 70 | N7527A | 120 | N954U | 170 | N982TW |
| 21 | N469AA | 71 | N7528A | 121 | N955U | 171 | N983TW |
| 22 | N470AA | 72 | N70529 | 122 | N931TW | 172 | N984TW |
| 23 | N471AA | 73 | N7530 | 123 | N9401W | 173 | N569AA |
| 24 | N472AA | 74 | N7537A | 124 | N9402W | 174 | N570AA |
| 25 | N473AA | 75 | N7538A | 125 | N9403W | 175 | N571AA |
| 26 | N474 | 76 | N7539A | 126 | N9404V | 176 | N578AA |
| 27 | N475AA | 77 | N7540A | 127 | N9405T | 177 | N557AN |
| 28 | N476AA | 78 | N7541A | 128 | N9406W | 178 | N558AA |
| 29 | N477AA | 79 | N7542A | 129 | N9407R | 179 | N559AA |
| 30 | N478AA | 80 | N7543A | 130 | N948TW | 180 | N574AA |
| 31 | N479AA | 81 | N7544A | 131 | N9409F | 181 | N573AA |
| 32 | N480AA | 82 | N16545 | 132 | N9412W | 182 | N575AM |
| 33 | N481AA | 83 | N7546A | 133 | N9413T | 183 | N556AA |
| 34 | N482AA | 84 | N7547A | 134 | N9615W | 184 | N560AA |
| 35 | N483AA | 85 | N7548A | 135 | N9616G | 185 | N561AA |
| 36 | N484AA | 86 | N7549A | 136 | N9617R | | |
| 37 | N485AA | 87 | N7550 | 137 | N9618A | | |
| 38 | N486AA | 88 | N14551 | 138 | N9619V | | |
| 39 | N487AA | 89 | N552AA | 139 | N9620D | | |
| 40 | N488AA | 90 | N553AA | 140 | N9621A | | |
| 41 | N489AA | 91 | N554AA | 141 | N9622A | | |
| 42 | N490AA | 92 | N555AN | 142 | N9624T | | |
| 43 | N491AA | 93 | N564AA | 143 | N9625W | | |
| 44 | N492AA | 94 | N565AA | 144 | N9626F | | |
| 45 | N493AA | 95 | N566AA | 145 | N9627R | | |
| 46 | N494AA | 96 | N567AM | 146 | N9628W | | |
| 47 | N496AA | 97 | N568AA | 147 | N9629H | | |
| 48 | N499AA | 98 | N576AA | 148 | N9630A | | |
| 49 | N501AA | 99 | N577AA | 149 | N961TW | | |
| 50 | N33502 | 100 | N579AA | 150 | N962TW | | |

**Attachment A: Current Fleet Count, US Airways**

Date: February 13, 2013

| **A319, Count = 93** | | | **A319, Cont.** | | **A320, Count = 72** | | | **A320, Cont.** |
|---|---|---|---|---|---|---|---|---|
| | Aircraft | | Aircraft | | Aircraft | | | Aircraft |
| 1 | N700UW | 56 | N802AW | 1 | N102UW | 56 | | N660AW |
| 2 | N701UW | 57 | N803AW | 2 | N103US | 57 | | N661AW |
| 3 | N702UW | 58 | N804AW | 3 | N104UW | 58 | | N662AW |
| 4 | N703UW | 59 | N805AW | 4 | N105UW | 59 | | N663AW |
| 5 | N704US | 60 | N806AW | 5 | N107US | 60 | | N664AW |
| 6 | N705UW | 61 | N807AW | 6 | N108UW | 61 | | N665AW |
| 7 | N708UW | 62 | N808AW | 7 | N109UW | 62 | | N667AW |
| 8 | N709UW | 63 | N809AW | 8 | N110UW | 63 | | N668AW |
| 9 | N710UW | 64 | N810AW | 9 | N111US | 64 | | N669AW |
| 10 | N711UW | 65 | N812AW | 10 | N112US | 65 | | N672AW |
| 11 | N712US | 66 | N813AW | 11 | N113UW | 66 | | N673AW |
| 12 | N713UW | 67 | N814AW | 12 | N114UW | 67 | | N675AW |
| 13 | N714US | 68 | N815AW | 13 | N117UW | 68 | | N676AW |
| 14 | N715UW | 69 | N816AW | 14 | N118US | 69 | | N677AW |
| 15 | N716UW | 70 | N817AW | 15 | N119US | 70 | | N678AW |
| 16 | N717UW | 71 | N818AW | 16 | N121UW | 71 | | N679AW |
| 17 | N721UW | 72 | N819AW | 17 | N122US | 72 | | N680AW |
| 18 | N722US | 73 | N820AW | 18 | N123UW | | | |
| 19 | N723UW | 74 | N821AW | 19 | N124US | | | |
| 20 | N724UW | 75 | N822AW | 20 | N125UW | | | |
| 21 | N725UW | 76 | N823AW | 21 | N126UW | | | |
| 22 | N730US | 77 | N824AW | 22 | N127UW | | | |
| 23 | N732US | 78 | N825AW | 23 | N128UW | | | |
| 24 | N733UW | 79 | N826AW | 24 | N601AW | | | |
| 25 | N737US | 80 | N827AW | 25 | N602AW | | | |
| 26 | N738US | 81 | N828AW | 26 | N604AW | | | |
| 27 | N740UW | 82 | N829AW | 27 | N620AW | | | |
| 28 | N741UW | 83 | N830AW | 28 | N621AW | | | |
| 29 | N742PS | 84 | N831AW | 29 | N622AW | | | |
| 30 | N744P | 85 | N832AW | 30 | N624AW | | | |
| 31 | N745VJ | 86 | N833AW | 31 | N625AW | | | |
| 32 | N746UW | 87 | N834AW | 32 | N626AW | | | |
| 33 | N747UW | 88 | N835AW | 33 | N627AW | | | |
| 34 | N748UW | 89 | N836AW | 34 | N628AW | | | |
| 35 | N749US | 90 | N837AW | 35 | N629AW | | | |
| 36 | N750UW | 91 | N838AW | 36 | N631AW | | | |
| 37 | N751UW | 92 | N839AW | 37 | N632AW | | | |
| 38 | N752US | 93 | N840AW | 38 | N633AW | | | |
| 39 | N753US | | | 39 | N637AW | | | |
| 40 | N754UW | | | 40 | N640AW | | | |
| 41 | N755US | | | 41 | N642AW | | | |
| 42 | N756US | | | 42 | N644AW | | | |
| 43 | N757UW | | | 43 | N647AW | | | |
| 44 | N758US | | | 44 | N648AW | | | |
| 45 | N760US | | | 45 | N649AW | | | |
| 46 | N762US | | | 46 | N650AW | | | |
| 47 | N763US | | | 47 | N651AW | | | |
| 48 | N764US | | | 48 | N652AW | | | |
| 49 | N765US | | | 49 | N653AW | | | |
| 50 | N766US | | | 50 | N654AW | | | |
| 51 | N767UW | | | 51 | N655AW | | | |
| 52 | N768US | | | 52 | N656AW | | | |
| 53 | N769US | | | 53 | N657AW | | | |
| 54 | N770UW | | | 54 | N658AW | | | |
| 55 | N801AW | | | 55 | N659AW | | | |

**Attachment A: Current Fleet Count, US Airways**

Date: February 13, 2013

## A321, Count = 76

| | Aircraft |
|---|---|
| 1 | N161UW |
| 2 | N162UW |
| 3 | N163US |
| 4 | N165US |
| 5 | N167US |
| 6 | N169UW |
| 7 | N170US |
| 8 | N171US |
| 9 | N172US |
| 10 | N173US |
| 11 | N174US |
| 12 | N176UW |
| 13 | N177US |
| 14 | N178US |
| 15 | N179UW |
| 16 | N180US |
| 17 | N181UW |
| 18 | N182UW |
| 19 | N183UW |
| 20 | N184US |
| 21 | N185UW |
| 22 | N186US |
| 23 | N187US |
| 24 | N188US |
| 25 | N189UW |
| 26 | N190UW |
| 27 | N191UW |
| 28 | N192UW |
| 29 | N193UW |
| 30 | N194UW |
| 31 | N195UW |
| 32 | N196UW |
| 33 | N197UW |
| 34 | N198UW |
| 35 | N507AY |
| 36 | N508AY |
| 37 | N509AY |
| 38 | N510UW |
| 39 | N519UW |
| 40 | N520UW |
| 41 | N521UW |
| 42 | N523UW |
| 43 | N524UW |
| 44 | N534UW |
| 45 | N535UW |
| 46 | N536UW |
| 47 | N537UW |
| 48 | N538UW |
| 49 | N539UW |
| 50 | N540UW |
| 51 | N541UW |
| 52 | N542UW |
| 53 | N543UW |
| 54 | N544UW |
| 55 | N545UW |

## A321, Cont.

| | Aircraft |
|---|---|
| 56 | N546UW |
| 57 | N547UW |
| 58 | N548UW |
| 59 | N549UW |
| 60 | N550UW |
| 61 | N551UW |
| 62 | N552UW |
| 63 | N553UW |
| 64 | N554UW |
| 65 | N555AY |
| 66 | N556UW |
| 67 | N557UW |
| 68 | N558UW |
| 69 | N559UW |
| 70 | N560UW |
| 71 | N561UW |
| 72 | N562UW |
| 73 | N563UW |
| 74 | N564UW |
| 75 | N565UW |
| 76 | N566UW |

## A330- 200, Count = 7

| | Aircraft |
|---|---|
| 1 | N279AY |
| 2 | N280AY |
| 3 | N281AY |
| 4 | N282AY |
| 5 | N283AY |
| 6 | N284AY |
| 7 | N285AY |

## A330- 300, Count = 9

| | Aircraft |
|---|---|
| 1 | N270AY |
| 2 | N271AY |
| 3 | N272AY |
| 4 | N273AY |
| 5 | N274AY |
| 6 | N275AY |
| 7 | N276AY |
| 8 | N277AY |
| 9 | N278AY |

## E190, Count = 18

| | Aircraft |
|---|---|
| 1 | N944UW |
| 2 | N945UW |
| 3 | N946UW |
| 4 | N947UW |
| 5 | N948UW |
| 6 | N949UW |
| 7 | N950UW |
| 8 | N951UW |
| 9 | N952UW |
| 10 | N953UW |
| 11 | N954UW |
| 12 | N955UW |
| 13 | N956UW |
| 14 | N957UW |
| 15 | N958UW |
| 16 | N959UW |
| 17 | N961UW |
| 18 | N965UW |

## B737-400, Count = 32

| | Aircraft |
|---|---|
| 1 | N406US |
| 2 | N409US |
| 3 | N419US |
| 4 | N420US |
| 5 | N425US |
| 6 | N426US |
| 7 | N427US |
| 8 | N430US |
| 9 | N432US |
| 10 | N433US |
| 11 | N434US |
| 12 | N435US |
| 13 | N438US |
| 14 | N439US |
| 15 | N440US |
| 16 | N441US |
| 17 | N442US |
| 18 | N443US |
| 19 | N444US |
| 20 | N445US |
| 21 | N449US |
| 22 | N450UW |
| 23 | N451UW |
| 24 | N452UW |
| 25 | N453UW |
| 26 | N454UW |
| 27 | N455UW |
| 28 | N456UW |
| 29 | N457UW |
| 30 | N458UW |
| 31 | N459UW |
| 32 | N460UW |

## B757-200, Count = 24

| | Aircraft |
|---|---|
| 1 | N200UU |
| 2 | N201UU |
| 3 | N202UW |
| 4 | N203UW |
| 5 | N204UW |
| 6 | N205UW |
| 7 | N206UW |
| 8 | N207UW |
| 9 | N901AW |
| 10 | N902AW |
| 11 | N904AW |
| 12 | N905AW |
| 13 | N906AW |
| 14 | N908AW |
| 15 | N909AW |
| 16 | N910AW |
| 17 | N935UW |
| 18 | N936UW |
| 19 | N937UW |
| 20 | N938UW |
| 21 | N939UW |
| 22 | N940UW |
| 23 | N941UW |
| 24 | N942UW |

## B767-200, Count = 10

| | Aircraft |
|---|---|
| 1 | N245AY |
| 2 | N246AY |
| 3 | N248AY |
| 4 | N249AU |
| 5 | N250AY |
| 6 | N251AY |
| 7 | N252AU |
| 8 | N253AY |
| 9 | N255AY |
| 10 | N256AY |

**ATTACHMENT B**

A list of all aircraft orders, options, and anticipated returns set forth in the fleet plans of American Airlines, Inc. and US Airways, Inc. as of the Memorandum Approval Date was provided to APA and USAPA and is subject to the Non-Disclosure Agreement as well as the pre-existing confidentiality agreements.

**ATTACHMENT C**

| COMMENCE JCBA PRE MERGER POR | MOU Execution | Board Approval -AMR -US Airways -APA → 21 Days For List of Valuation Modifications -USAPA→ Recommendation Decision by 01/04/13; If Recommended, Membership Ratification Vote Completed Between AMR Board Approval Of Merger and 60 Days Thereafter | 60 Days From APA list Of Valuation Modifications | = MTA By agreement - Or - Arbitrator's Decision |
|---|---|---|---|---|
| | | | Agreement Reached On Valuation - Or - Conclusion Of Interest Arbitration | |

**\* JCBA NEGOTIATIONS** →

| ON AND AFTER MERGER POR | POR | 4 months | At NMB Discretion, But Projected 6-8 Months From Petition | 30 days | 60 days | = JCBA |
|---|---|---|---|---|---|---|
| | MTA in effect For APA and USAPA If USAPA Ratifies or MTA In Effect For APA and USAPA Under Status Quo JCBA Negotiations Begin | APA Petition For Single Carrier Status | NMB Single Carrier Finding | * JCBA Negotiation Complete -Or- If Not Complete → | JCBA Interest Arbitration Before Panel of 3 Arbitrators | |

\* JCBA negotiations shall begin as soon as practicable after the POR and may be completed anytime between the POR and the deadline of 30 days past NMB Single Carrier finding.

| ON AND AFTER MERGER POR | POR | 30 days | 90 days From POR | 15 Days | 60 Days But Not Before JCBA Effective | 6 Months and No Later Than 24 Months After POR | Integrated = Seniority List |
|---|---|---|---|---|---|---|---|
| | Seniority Integration Process Begins | APA and USAPA Seniority Integration Protocol Agreement | Direct Negotiations Between APA and USAPA | Panel of 3 Arbitrators Designated | Integrated Seniority List Arbitration Commences | Arbitration Panel Renders Award | |

March 21, 2016

Lawrence M. Meadows
MIA/FO/777/MDSB
AA# 332713
PO Box 4344
Park City, UT 84060

**<u>Via E-mail and Certified Mail:</u>**

American Airlines, Inc.
Ms. Helen Yu - System Board Coordinator
Employee Relations
4333 Amon Carter Boulevard
Fort Worth, TX 76155

Allied Pilots Association
c/o Mallory Gloria - System Board Coordinator
O'Connell Building - Suite 500
14600 Trinity Blvd.
Fort Worth, TX 76155-2512

**RE: Individual Submission Of Grievance To Expedited System Board Of Adjustment In Accordance With MOU ¶¶ 10.f and 20, To Dispute American Airlines Failure To Uphold Its Obligations Under The MOU ¶ 10., And The Resultant Violation Of Seniority Rights Of Lawrence M. Meadows And Similarly Situated Pilots On Long Term Disability.**

Dear Ms. Yu and Ms. Gloria,

Lawrence M. Meadows, hereby submits this Grievance, in accordance with the

Memorandum of Understanding Regarding The Contingent Collective Bargaining Agreement

("MOU") ¶¶ 10.e and 20., as executed on January 15, 2013. He does so on the basis that American

Airline's Seniority List Integration Proceedings are inconsistent with the McCaskill-Bond Statute,

and therefore violate the MOU ¶10.a, and f.

<u>FACTS</u>

1.  The Memorandum of Understanding ("MOU") ¶ 10.a, requires, "*A seniority

    integration process consistent with McCaskill-Bond.*"49 U.S.C. §42112.

1

**EXHIBIT B**

2.        The McCaskill-Bond Statute in turn incorporates Sections 3 and 13 of the Allegheny-Mohawk Labor Protective Provisions ("LPPs"). (As published at 59 C.A.B. 45).

3.        The **Allegheny-Mohawk LPPs**, state that when a covered transaction (i.e., American Airline's Seniority List Integration proceedings);

> *"results in the combination of crafts or classes that are subject to the Railway Labor Act, sections 3 and 13 of the labor protective provisions imposed by the Civil Aeronautics Board ("CAB" or the "Board") in the Allegheny-Mohawk merger (as published at 59 C.A.B. 45) shall apply to the integration of covered employees of the covered air carriers." Id. § 42112(a).*

4.        In short, these Allegheny-Mohawk Labor Protective Provisions ("LPPs") require that the carrier make provisions "*for the integration of seniority lists in a fair and equitable manner,*"

5.        However, for several reasons, the Seniority List Integration Proceedings are clearly inconsistent with the McCaskill-Bond Statute, and thus not fair and equitable because; 1) American has inconsistently treated the seniority rights between and amongst the long term disabled pilots of LUS East, LAA, and LUS West pilots in these proceedings, and done so in a unfair and  inequitable manner, 2) American, has failed to compile and provide complete and accurate LAA pilot seniority and employment information, particularly with respect to long term disabled and terminated pilots who were "removed" from pre-merger seniority list, 3) The APA and Board of Arbitrators have ignored disabled pilots requests to correct known pilot seniority and employment data errors, and 4) The Allied Pilots Association ("APA") has abandoned representation of disabled LAA pilots, as such they were not provided adequate representation (if any) in the Seniority List Integration proceedings.

6.        Additionally, although unions and management were typically the parties in Section 13 arbitrations, the CAB has also held that other employee groups and underlined individual employees could be granted party status or allowed to otherwise participate.

2

*See, e.g., Southern Emps. v. Republic/ALEA*, 102 C.A.B. 616 (1983) (describing how seniority integration was negotiated by an "employee committee" established for that purpose without union involvement); *Pan Am-TWA Route Exchange, Arbitration Award*, 85 C.A.B. 2537 (1980) (noting that three individual engineers were parties to arbitration); *NAA I*, 95 C.A.B. at 584 (denying dissenting group "full party status" but noting that they'd been given the opportunity to participate in the LPP arbitration).

7.        Thus, the CAB held as indicated by the language of the Allegheny-Mohawk LPPs, that unrepresented employees still had rights to fair and equitable seniority integration and participation in binding arbitration to resolve seniority integration disputes.

## CONCLUSON

Based on all the foregoing facts, American Airlines has clearly violated ¶¶ 10.a, and f. of the MOU, and failed to uphold its obligations thereunder. Additionally, in such event the MOU ¶10.e; provides for enforcement of those obligation, stating that;

> "e. The obligations contained in this Paragraph [MOU ¶ 10.] shall be specifically enforceable on an expedited basis before a System Board of Adjustment in accordance with Paragraph 20, provided that the obligations imposed by McCaskill-Bond may be enforced in a court of competent jurisdiction."

Furthermore, the MOU ¶ 20., provides for resolution of this dispute on an expedited basis before a System Board consisting of a sole neutral within 30 days, and states;

> "20. Except as expressly provided otherwise in this Memorandum, any dispute over the interpretation or application of this Memorandum shall be resolved in accordance with this provision. Any such dispute shall be arbitrated on an expedited basis directly before a specially-created one-person System Board of Adjustment consisting of arbitrator Richard Bloch or Ira Jaffe, whoever shall be available to hear the dispute earliest. If Arbitrator Bloch or Jaffe declines to serve in this capacity or is not available to resolve the dispute, another neutral arbitrator shall be selected. The dispute shall be heard no later than thirty (30) days following the submission to the System Board (subject to the availability of the arbitrator), and shall be decided no later than thirty (30) days following the first day of the hearing, unless otherwise agreed to in writing."

In closing, the APA has declared that Meadows is not a member, and explicitly denied him of his right of representation, and further asserted it owes him no duty.  Regardless, Meadows has standing, and is an interested party, pursuant to the MOU ¶ 10.c., which states that the integrated seniority list "*shall be final and binding on…all of the pilots of the American/New American*

*Airlines."*  Unless, this grievance is adjusted Meadows and other similar situated pilot's relative positon on the integrated seniority list will not be protected, and they will suffer irreparable harm and a manifest injustice. Therefore, Meadows is left with no choice, but to exercise his individual right, to ensure this grievance is handled and adjusted by an expedited System Board of Adjustment as provided for under the MOU ¶ 20.  Finally, please consider this document as Meadows individual grievance and request to the System Board Coordinator to submit this dispute to a special expedited SBOA, and contact the other parties, to coordinate, schedule, and subsequently notify all parties of the date, time and location of such proceeding.

Respectfully Submitted,

Lawrence M. Meadows
First Officer, American Airlines

CC: Keith Wilson, Pres. APA; Gary Hummel, Pres. USAPA, Denise Lynn, AAL SVP People; Scott Kirby, Pres. US Airways; Ira Jaffe, Esq; Richard Bloch, Esq.