Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
Phone: 516-982-7718
Facsimile: 435-604-7850
lawrencemeadows@yahoo.com

FILED by PG D.C.
FEB 09 2018
STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.

**IN THE UNITED STATES DISTRICT COURT**

**FLORIDA SOUTHERN DISTRICT**

| | |
|---|---|
| **LAWRENCE M. MEADOWS,**<br><br>Plaintiff,<br><br>v.<br><br>**ALLIED PILOTS ASSOCIATION,**<br><br>a Texas Labor Association, and<br><br>**DOES 1-10,**<br><br>Defendants. | **PLANITIFF'S MOTION TO RECUSE JUDGE JAMES LAWRENCE KING PURSUANT TO 28U.S.C. §144 AND § 455(A), AND TO VACATE PENDING DEADLINES, AND STAY THESE PROCEEDINGS PENDING DECISION ON THIS MOTION**<br><br>**Case No: 1:17-cv-22589-JLK**<br><br>**Honorable Judge James Lawrence King** |

**PLAINTIFF'S MOTION TO RECUSE JUDGE JAMES LAWRENCE KING PURSUANT TO 28 U.S.C. §144 and §455(a), AND TO VACATE PENDING DEADLINES, AND TO STAY THESE PROCEEDING PENDING DECSION ON THIS MOTION**

Lawrence M. Meadows ("Meadows"), Pro Se Plaintiff, in the above styled cause, hereby timely files this combined motion pursuant to 28 U.S.C. § 144 Bias or Prejudice of Judge and 28 U.S.C. §455(a) Disqualification of justice, judge, or magistrate judge.

# PLANTIFF's MEMORANDUM TO RECUSE JUDGE JAMES LAWRENCE KING PURSUANT TO 28 U.S.C. §144 and §455(a), AND TO VACATE PENDING DEADLINES, AND TO STAY THESE PROCEEDING PENDING DECSION ON THIS MOTION

## INTRODUCTION

Pro Se Plaintiff Meadows moves to recuse and disqualify Judge James Lawrence King from any further ruling or participation in any proceedings related to Meadows, and there is authority to disqualify a Judge in circumstances such as these even if there only a perception of bias or favoritism pursuant 28 U.S.C. §144 and §455(a), which state in part;

> **28 U.S.C. § 144. Bias or prejudice of judge**
> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> **28 U.S.C. § 455. Disqualification of justice, judge, or magistrate judge**
> **(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

As shown in the following Statement of Facts, throughout these proceedings this Court has exhibited a prejudicial bias against a Pro Se Plaintiff Meadows, and deep-seated favoritism towards Defendant Allied Pilots Association's ("APA").

## STATEMENT OF FACTS

### ***Background:*** ***Meadows Is an American Airlines Pilot Who Was Purportedly Terminated And Removed From the Pilot Seniority list Solely On the Basis Of His Disability***

1. In 1991, Meadows landed his dream job and was hired by American Airlines ("American Airlines")[1], shortly thereafter he also became a member in good standing of his pilots' union,

[1] **Meadows graduated magna cum laude from Embry-Riddle Aeronautical University in 1985, with a B.S. Degree in Aeronautical Engineering. Upon graduation, he was immediately commissioned Officer in the U.S. Air Force, where he served honorably for six years as a military pilot flying T-37, T-38 supersonic training jets, and C-9A aeromedical airlift aircraft. After spending 10 years of his life acquiring the requisite education, training, experience, and credentials, Meadows landed his dream job and was hired by American Airlines in October 1991, where he piloted DC-10 B-727, MD-11, and B-777 aircraft, until he suffered a debilitating illness which grounded him. Meadows condition is finally in remission, and treated with medications recently approved by the FAA, enabling to once again meet eligibility criteria to hold the FAA Airman's Medical Certificate required to perform his pilot duties. Other long-term disabled pilots have all**

the Allied Pilots Association ("APA"), and was a member of the craft or class of pilots employed by American. (Doc 1 ¶¶ 2, 13 and 15).

2. Unfortunately, Meadows began to suffer from a debilitating illness and American approved him for pilot long-term disability ("LTD") benefits. After being on disability for more than 5 years American purportedly terminated Meadows and removed him from pilot system seniority list in violation of the collective bargaining agreement and the American's with Disabilities Act ("ADA").

3. Accordingly, in February 2012, Meadows filed company termination grievance #12-011, which seeks his reinstatement and remains pending, but APA has refused to prosecute it.

4. On July 17, 2017, Plaintiff filed his Complaint in this matter which alleges that; 1) That his "*representative*", the APA breached its duty of fair representation owed him, when it treated him in arbitrary, discriminatory, and bad faith manner by willfully failing to protect his relative seniority on the American Airlines pilot's newly Integrated Seniority List ("ISL"), and 2) also refused to process Meadows' Expedited MOU Grievance, filed to protest the unfair, inequitable, and disparate treatment of his seniority rights in violation of the collective bargaining agreement.

***Instant Case Procedural History***

5. Since filing his Complaint, Plaintiff was engaged in settlement discussions with Defendant APA, but as the deadline to serve his suit approached APA has still not produced the promised settlement agreement.

---

**been subsequently reinstated to the seniority list and flying jobs at American. Which is exactly what Meadows seeks, but APA failure to protect his relative position on the pilot seniority list stands in his way. At 54 years old he has 11 years of earnings potential as a 777 pilot. He will continue to suffer a manifest injustice unless he is allowed pursue remedies and be reinstated and resume his airline piloting career.**

6. Therefore, on October 6, 2017, Plaintiff timely served a summons with copy of his Complaint upon Defendant APA, and then promptly filed the Executed Summons with the Clerk.

7. On October, 13, 2017, the Clerk docketed the Executed Summons on Plaintiff's Complaint as to Defendant APA; and further stated that APA had *"a 21day response/answer filing deadline"*, and more specifically *"answer due 10/27/2017."*

8. On October 19, 2017, Plaintiff filed a Motion to Stay, giving a detailed explanation of describing ongoing settlement discussions and need to exhaust administrative union remedies. APA neither objected nor filed a response. (Doc 7).

9. On or after, the response/answer deadline of 10/21/2017, Defendant APA had neither appeared nor filed a responsive pleading to Meadows Complaint.

10. On November 7, 2017, the Court entered an Order Denying Motion To Stay. Wherein, the Honorable Senor Judge King, noted that despite deadlines APA failed to its Answer, specifically stating;

> *The Court notes that while Return of Service filed in this matter indicates that* ***Defendant Allied Pilots Association was served on October 6, 2017, making its Answer due October 27, 2017, no Answer has been filed.*** *Moreover, no scheduling order has been entered in this matter. Apart from the Rules imposed by the Local Rules of this Court and the Federal Rules of Civil Procedure,* ***including rules regarding time for answering complaints after proper service and dismissal for lack of prosecution, which deadlines remain in force and effect, there are at present no Court-imposed deadlines to stay.*** (Doc 8). [Emphasis Added].

11. Meadows was surprised that his Motion to Stay was denied, and immediately called the Clerk, who told him that Judges Order basically said that APA was effectively in Default, and that he could consider filing for a Clerk's Entry For Default.

12. On November 8, 2017, Meadows moved for Default against APA for failure to appear timely file its responsive pleading, and a Clerk's Entry For Default was entered that same day. (Doc 10).

13. On November 9, 2017, Defendant APA, despite having not yet made and appearance, suddenly filed a Motion to Set Aside Default. (Doc 11).

14. On November 22, 2017, Plaintiff tile filed his response and noted several material misrepresentations of fact made by Defendant APA. (Doc 12).

15. On December 4, 2017, APA timely filed its Reply to its Motion to Set Aside Default. (Doc 14).

16. On December 6, 2017, (two full months after APA was properly served), this Court set aside Defendant APA's Default (Doc 15), and graciously gave APA yet another 30 days to file its first responsive pleading in this action.

> >" its failure to timely respond to Plaintiffs complaint was the result of the good faith misunderstanding- based on the Motion to Stay and suspend al1 deadlines Plaintiff himself filed after perfecting service on APA, and on the months of settlement negotiations referred to in Plaintiffs Motion to Stay that Plaintiff was not pressing forward with this case until settlement talks were exhausted. Plaintiff argues in response that APA's position is an admission that it willfully failed to respond to the complaint.
>
> >The Court finds that Defendant's failure to timely respond to Plaintiffs complaint is excusable under the circumstances…
>
> ≥Defendant Allied Pilots Association shall plead as it may be advised, or answer Plaintiffs Complaint within 30 days of the date of this Order."
> (Doc 15). [Emphasis Added].

17. It was not until January 5, 2018, a full 91 days after proper and timely service, and after being found in Default, that Defendant APA finally file its Motion to Dismiss. (Doc 18).

18. APA's excessively long delay unduly burdened Pro Se Plaintiff, who has limited resources, and an excessive legal workload in two other matters involving his employer

American Airlines (as a result of APA's representational failures), by causing him to deal with responding with lengthy amended complaint at the most inopportune time.

19. Thus, on January 9, 2018, Plaintiff filed a Motion For Extension of Time (requesting to extend response deadline by 45 days) and to Stay these proceedings pending decision on that motion. (Doc 19). Plaintiff asserted the following grounds to stay;

> "Plaintiff has been prejudiced as a direct result of Defendant Allied Pilots Association ("APA") excessively long delay in responding to his Complaint (91 days after service date). Now Meadows is now squarely in the middle of briefing a voluminous federal appellate brief due late next month in another matter.

>Additionally, since Meadows has serving his original complaint, Defendant APA has engaged in conduct which has given rise to several new causes of action, necessitating a complete and lengthy amendment to his original Complaint. Thus, at this juncture as a Pro Se litigant with limited time and resources, it is particularly burdensome for Meadows to do so whilst in the midst of meeting his other current legal obligations.

>Furthermore, as your Defendant APA is well aware, Meadows is currently on long term medical disability, and on that basis he also would request additional time as a reasonable accommodation.

>Therefore, in light of the foregoing circumstances, Meadows respectfully requests that this Court grant an extension of time of 45 days after his current response deadline, making his new response deadline March 5, 2018." [Emphasis Added].

20. On, January, 23, 2018, Defendant APA filed its Response, which stated in relevant part that it; *"...agrees to thirty (30) days versus the forty-five (45) days Plaintiff requested for an extension of time."*

21. Later that week Plaintiff, received APA's Response and was working on a Reply to reassert why he needed the full 45-day extension, versus just the 30-day extension APA agreed to, and anticipate timely filing it on January 30, 2018.

22. On Saturday, January 27, 2018, Pro Se Plaintiff checked his U.S. Mailbox, and received from the Court a paper Notice of Electronic Filing. (Exhibit 1). Upon reading it, he was surprised learn that the day immediately after APA filed its Response, and before he had a

chance to timely file his Reply, that this Court had already issued an Order via electronic docket entry only (Doc 21) which stated;

| | | |
|---|---|---|
| 01/24/2018 | 21 | **ORDER granting 19 Plaintiff's Motion for Extension of Time to File Response to Motion to Dismiss, and denying Motion to Stay. Plaintiff shall file its Response to Defendant's Motion to Dismiss on or before January 30, 2018. Signed by Senior Judge James Lawrence King on 1/24/2018.** (dsr) (Entered: 01/24/2018) |

23. On January 30, 2018, Plaintiff was confused that the Court despite Ordering that it as "granting" his Motion for Extension of Time was in fact only giving him 3 days to file his response as opposed 45 requested in his motion, or 30 days as agreed to by Defendant APA. So he filed a "Motion Seeking Clarification of Order and/or Reconsideration and request to stay these proceedings Pending Decision on the Motion.' (Doc 22).

24. The very next day on, January 31, 2018, the Court ignored Plaintiffs' reasonable request for additional time, despite his citing to his high case load in other matters, medical condition and need to file a length amendment; and instead immediately issued an Order which not only refused to extend Meadows' deadline for 45 days (3/5/2017) as he requested, but also refused the 30 days extension (2/19/18) to which Defendant APA had agreed. (Doc

25. On February, 9, 2018, as the result of this Court's prejudicial bias against Pro Se Plaintiff and favoritism of Defendant APA throughout these proceedings, culminating in its unreasonable denial to the additional time requested (which was mutually agreed to by Defendant), the associated stresses resulting from the Court's bias are making Plaintiff physical ill and currently incapable to meet the Court's burdensome an unreasonable demands. Therefore, in light of what Plaintiff reasonably believes to be a lack of impartiality by this Court, he has no choice but to seek recusal of Judge King via this instant motion.

## ARGUMENT

### A. This Court Has A History of Exhibiting A Prejudicial Bias Against Pro Se Plaintiff Meadows While Showing Deep-seated Favoritism to Defendant APA

As shown in the previous Statement of Facts, throughout these proceedings this Court has exhibited a prejudicial bias against a Pro Se Plaintiff Meadows by subjectively and arbitrarily applying the rules. Indeed, this Court has shown Defendant APA considerably favoritism and has consistently overlooked Defendant APA's failures and violations of the local and feral rules of civil procedure, while simultaneouly denying Plaintiff's timely, reasonable, and unopposed motions.

First, shortly after serving Defendant APA, the Plaintiff filed a Moton to Stay these proceedings citing ongoing settlement discussions as the primary reason to do so. Moreover, Defendant APA never objected to that motion and also failed to opposed it. Yet despite those facts, this Court unreasonably and prejudicially denied said motion without a rational explanation, ad in complete disregard for the plainly ongoing settlement talks. (SOF 8-11).

Second, Defendant APA failed to appear or timely file a responsive pleading, despite there not being a stay and all deadlines under the local and federal rules being in full "force and effect", as this Court noted in its November 8th Order. Subsequently, the Clerk Entered a Default against APA. (SOF 9-12). APA then filed a motion to set aside, to which Plaintiff timely responded, and highlighted several material misrepresentations of fact made by APA in support of its Motion, all of which this Court ignored. Perhaps, most outrageous, was that this Court issued an Order granted APA's motion to set aside, on the basis that APA's failure was "excusable" due to its "good faith misunderstanding" that "settlement talks were not exhausted." (SOF 16). Which is quite troubling considering that the Court previously completely disregarded

said " (SOF 8-10). It is not fair for the Court to give APA the benefit of believing that "settlement talks" were ongoing as the reason to grant its motion to set aside, especially when the Court previously ignored Plaintiffs stated basis of very same ongoing "settlement talks" for his previous unopposed Motion to Stay, which its summarily denied. (SOF 8).

Third, not only did this Court ignore Defendant APA's material misrepresentation of fact in it motion to set aside and give APA favorably consideration of ongoing "settlement talks" as a basis to "excuse" its failures; but it went outside of the rules, and gratuitously granted yet another 30 days to file its answer/responsive pleading, in addition to the 61 days that had already elapsed from the service date of the Complaint. Thus, despite flouting the rules, failing to appear, failing to timely file a responsive pleading, having a Default entered, and making several material misrepresentations of fact, the Court not only seemingly not only has ignored Defendant APA procedural failures, but has even treated them with deep-seated favoritism; by giving APA no less than 91 days to finally file its response/answer to the original Complaint. Clearly, this Court has exhibited deep-seated favoritism towards defendant APA, to the detriment of Plaintiff.

Fourth, Defendant APA's excessive delay in responding, some three months after service has also severely prejudiced Plaintiff. Who acting Pro Se, at this juncture now also has other obligations to file voluminous briefings and also attend a hearing in two other legal matters, which should have been handled by his union representative, Defendant APA, ut for its rampant representational failures. Accordingly, Plaintiff filed a Motion for extension of time seeking to extend his response deadline by 45 days (3/5/2017), citing that he was prejudiced by APA's delay in filing, which now over-lapped and conflicted deadlines/obligations in over legal proceedings; and specifically cited his high pro se legal case load, the need to file a lengthy amended Complaint given APA's recent conduct, and also asked for an accommodation due to

his medical disability. (SOF 19). APA in turn, filed a response and agreed to such extension of time, but for only 30 days (making deadline 2/19/2018). (SOF 20). Ultimately, the Court seemingly “granted” Plaintiffs motion for additional time (albeit only through a docket entry which lacked rationale or specificity), but otherwise ignored his request for 45 days, and also ignored APA’s request for only 30 days; and instead prejudicially gave Plaintiff just six days (only three after mailing) to file his response to APA’s motion to Dismiss. (SOF 22).

Fifth, Plaintiff was confused by Court’s seeming to have “granted” his Motion to extend deadlines by 45 days (3/5/2018), but which in fact demanded his response be filed by February 2, 2018. Accordingly, Plaintiff file a Motion for Clarification and/ or reconsideration. The Court immediately entered an order the very next day, which continued to ignore Plaintiff’s request for a 45-day extension (deadline 3/5/2018), nor considered to allow for defendant’s agreement for at least a 30-day extension (deadline 2/19/2018) file; and instead asserted that the “Plaintiff is not excused from the rules”, and must file his response to Defendant’s MTD just one week later, by February 9, 2018. This case’s deadlines are already far outside the rules given defendant APA’s procedural failures, and it would only be fair to grant Plaintiff’s request for a 45-day extension, especially considering that Defendant APA was afforded a full 91 days to respond after being properly served.

Finally, this Court has consistently and favorably exempted APA from the Rules, while seeking to strictly enforcing them against Pro Se plaintiff, who has cited several extenuating circumstances for his motions to stay and for reasonable extension of time, both of which were unreasonably denied. Here the Courts prejudicial bias against Plaintiff is plainly apparent, especially considering that Defendant APA had already agreed to an extension of time of at least 30 days. Yet this Court prejudicially denied Plaintiff’s reasonable requests, arbitrarily holding

him as a Pro Se to a much higher standard, while showing favoritism to professional represented Defendant APA considerable leeway. Thus, Plaintiff reasonably believes that this Court has a prejudicial bias against him perhaps personally, but most definately as a Pro Se litigant. Moreover, Plaintiff has researched Judge King in the *"Robing Room"*, and finds comments that he is *"In zeal to dispose of cases quickly, this judge is far too ready to grant dismissals and summary judgments"*, and that he has a *"nasty temperament. More concerned with treating his cronies well than doing the right thing",* to be not only disturbing, but to ring all too true in this matter. (Exhibit 1).

Regardless, the goal of 28 U.S.C. § 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has a prejudicial bias against Plaintiff, and/or also exhibits a deep seated favoritism towards Defendant, as is the case here, then at a minimum an appearance of partiality is created. Accordingly, section 455 (a) of Title 28 mandates that the Court "shall disqualify himself" if his impartiality might reasonably be questioned. Added to the clear language of Section 445, which requires disqualification where the court's impartiality might reasonably be questioned, is the forceful holding of the U.S. Supreme Court in *Liteky v. U.S.*, 510 U.S. 540, 557 (1994), clearly requiring disqualification under in such circumstances as presented here: "Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Accordingly, since Judge King impartiality is in question, he must recuse himself from any further participation in these proceedings.

**B. <u>28 U.S.C. §Sec 144</u>**

For purposes of Section 144 of Title 28, the allegations of a certified affidavit must be accepted by the Court as true, and the Court must act in accordance with the mandate of 144 and

recuse itself. U.S. v. Sykes, 7 F. 3d 1331 (7th Cir. 1993). Please accept this Verified Motion as my certified affidavit as being filed in good faith.

***Meet and Confer Certification***

Pro Se, Plaintiff Meadows certifies that on February 8, 2018, he attempted to meet and confer with Defendant's Counsel in writing regarding this instant Motion. As of this filing has Defendant's Counsel raised no objection to the instant motion.

**CONCLUSION**

Based on all the foregoing facts and argument in this sworn motion, and in accordance with 28 U.S.C. §144 and §455, I reasonably to believe that Judge King has shown a personal bias and prejudice against myself as the Pro Se Plaintiff, causing his impartiality to be reasonably questioned. Therefore, it is inappropriate for Judge King to preside any further over these proceedings, and accordingly he must immediately disqualify himself, and that all pending deadlines be vacated, and that these proceedings be stayed pending decision of this motion and reassignment of a new judge.

Signed: February 8, 2018

Respectfully Submitted,

Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr., #2112
Miami Beach, FL 33139
Phone: 516-982-7718
Facsimile: 435-604-7850
lawrencemeadows@yahoo.com

**VERIFICATION/AFFADAVIT**

I, Lawrence M. Meadows, am over 18 years of age and am domiciled in the State of Florida, I declare and swear as follows;

I am the Plaintiff in the above-entitled action. I have read the foregoing Motion and know the contents thereof. With respect to the facts and allegations stated by me, the same is true by my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare and swear under penalty of perjury under the laws of the state of Florida that the foregoing is true and correct. Affiant further sayeth not.

Date: February 8, 2018;

Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr., #2112
Miami Beach, FL 33139

County Of )) Summit

State Of )) Utah

Notary ))

COLIN WATKINS
Notary Public
State of Utah
Comm. No. 682743
My Comm. Expires Apr 24, 2019

**CERTIFICATE OF SERVICE**

**I, Lawrence M. Meadows, Pro Se Appellant hereby certify,** that a true and correct copy of the foregoing was served by U.S. Mail on February 8, 2018 on all counsel or parties of record on the Service List below.

Signature of Filer

**SERVICE LIST**

Capri Trigo, Esq.
**Gordon Rees Scully Mansukhani**
100 SE Second Street, Suite 3900
Miami, FL 33131
Telephone: (305) 428-5323
Facsimile: (877) 634-7245
Ctrigo@gordonrees.com

**Counsel for Defendant –**
**Allied Pilots Association**

# **EXHIBIT 1**

# THE ROBING ROOM

*where judges are judged*

Home

FAQs

Contact

Privacy Notice

Legal Notice

## Hon. James Lawrence King

District Judge
S.D.Fla.

Average Rating:5.3 - 6 rating(s)

See Rating Details

See Comments

Please send me alerts on this judge
E-mail Address:
Register

---

**Add your own rating**

E-Mail Address (will not be displayed)

Confirm E-mail Address

Zip

Occupation Criminal Defense Lawyer

Add a comment only

**Ratings**

| | | |
|---|---|---|
| *Temperament: | No Opinion | (1=Awful,10=Excellent) |
| *Scholarship: | No Opinion | (1=Awful,10=Excellent) |
| *Industriousness: | No Opinion | (1=Not at all industrious,10=Highly industrious) |
| *Ability to Handle Complex Litigation: | No Opinion | (1=Awful,10=Excellent) |
| *Punctuality: | No Opinion | (1=Chronic`y Late,10=Always on Time) |
| *Evenhandedness in Civil Litigation: | No Opinion | (1=Demonstrates Bias,10=Entirely Evenhanded) |
| *Evenhandedness in Criminal Litigation: | No Opinion | (1=Demonstrates Bias,10=Entirely Evenhanded) |
| Flexibility In Scheduling | No Opinion | (1=Completely Inflexible,10=Very Flexible) |
| General Inclination Regarding Bail | No Opinion | (1=Pro-Defense,10=Pro-Government) |
| General Inclination in Criminal Cases, Pre-Trial: | No Opinion | (1=Pro-Defense,10=Pro-Government) |
| Involvement in Civil Settlement Discussions: | No Opinion | (1=Least Involved,10=Most Involved) |
| General Inclination in Criminal Cases, Trial: | No Opinion | (1=Pro-Defense,10=Pro-Government) |
| General Inclination in Criminal Cases, Sentencing: | No Opinion | (1=Most Lenient,10=Most Harsh) |
| Typical Discount Off Guidelines for Cooperators: | No Opinion | (1=10%,10=100%) |

Items marked with (*) are averaged into the displayed overall rating

**Comments**

Type the text

Privacy & Terms

Submit

**What others have said about Hon. James Lawrence King**

**Comments**

Civil Litigation - Private
Comment #: 7665
Rating:1.3
Comments:
Nasty temperament. More concerned with treating his cronies well than with doing the right thing.

Send e-mail to this poster 12/23/2008 9:16:59 AM

Civil Litigation - Private
Comment #: 2319
Rating:6.4
Comments:
In zeal to dispose of cases quickly, this judge is far too ready to grant dismissals and summary judgments.

Send e-mail to this poster 9/15/2006 9:36:23 AM

Criminal Defense Lawyer
Comment #: 1338
Rating:9.7
Comments:
Judge King is a great Judge; you have to know how to read him. Have tried many cases with him--I do think he is very fair.

Send e-mail to this poster 6/26/2006 2:10:29 PM

Criminal Defense Lawyer
Comment #: 1327
Rating:2.8
Comments:
off the wall; will handle the whole trial himself

Send e-mail to this poster 6/26/2006 12:31:36 PM

fedex.com 1.800.GoFedEx 1.800.463.3339

**FedEx Express** *Package US Airbill*

FedEx Tracking Number 8106 6127 5120

**Recipient's Copy**

**1 From** [redacted]

Date 2/8/17

Sender's Name Lawrence Meadows Phone 516 982 7718

Company Case No. 1:17-cv-22589-JLK

Address 1900 Sunset Harbour Dr #2112 Dept./Floor/Suite/Room

City Miami Beach State FL ZIP 33139

**2 Your Internal Billing Reference**

**3 To**

Recipient's Name Clerk of Court Phone 305 523-5100

Company Wilkie D. Ferguson Jr. Fed. Court House

Address

We cannot deliver to P.O. boxes or P.O. ZIP codes. Dept./Floor/Suite/Room

Address 400 North Miami Ave

Use this line for the HOLD location address or for continuation of your shipping address.

City Miami State FL ZIP 33128

☐ Hold Weekday — FedEx location address REQUIRED. NOT available for FedEx First Overnight.

☐ Hold Saturday — FedEx location address REQUIRED. Available ONLY for FedEx Priority Overnight and FedEx 2Day to select locations.

8106 6127 5120

**4 Express Package Service** *To most locations. *Packages up to 150 lbs. For packages over 150 lbs., see the FedEx Express Freight US Airbill.*

Next Business Day

- ☐ FedEx First Overnight — Earliest next business morning delivery to select locations. Friday shipments will be delivered on Monday unless Saturday Delivery is selected.
- ☐ FedEx Priority Overnight — Next business morning.* Friday shipments will be delivered on Monday unless Saturday Delivery is selected.
- ☒ FedEx Standard Overnight — Next business afternoon.* Saturday Delivery NOT available.

2 or 3 Business Days

- ☐ FedEx 2Day A.M. — Second business morning.* Saturday Delivery NOT available.
- ☐ FedEx 2Day — Second business afternoon.* Thursday shipments will be delivered on Monday unless Saturday Delivery is selected.
- ☐ FedEx Express Saver — Third business day.* Saturday Delivery NOT available.

**5 Packaging** *Declared value limit $500.

☒ FedEx Envelope* ☐ FedEx Pak* ☐ FedEx Box ☐ FedEx Tube ☐ Other

**6 Special Handling and Delivery Signature Options** Fees may apply. See the FedEx Service Guide.

☐ Saturday Delivery — NOT available for FedEx Standard Overnight, FedEx 2Day A.M., or FedEx Express Saver.

☐ No Signature Required — Package may be left without obtaining a signature for delivery.

☒ Direct Signature — Someone at recipient's address may sign for delivery.

☐ Indirect Signature — If no one is available at recipient's address, someone at a neighboring address may sign for delivery. For residential deliveries only.

Does this shipment contain dangerous goods? One box must be checked.

☒ No ☐ Yes As per attached Shipper's Declaration. ☐ Yes Shipper's Declaration not required. ☐ Dry Ice Dry Ice, 9, UN 1845 ___ x ___ kg

Restrictions apply for dangerous goods — see the current FedEx Service Guide. ☐ Cargo Aircraft Only

**7 Payment** *Bill to:*

Enter FedEx Acct. No. or Credit Card No. below. Obtain recip. Acct. No. ☐

☒ Sender Acct. No. in Section 1 will be billed. ☐ Recipient ☐ Third Party ☐ Credit Card ☐ Cash/Check

[redacted] 9 [redacted]

Total Packages Total Weight lbs. Credit Card Auth.

†Our liability is limited to US$100 unless you declare a higher value. See the current FedEx Service Guide for details.

644

Rev. Date 3/15 • Part #167002 • ©2012–2015 FedEx • PRINTED IN U.S.A. RRDA 00/00

2A 2B

fedex.com 1.800.GoFedEx 1.800.463.3339

