# EXHIBIT A

THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| Lawrence M. Meadows, ) | |
| ) | Case No. 2:14CV00115DS |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER GRANTING PLAINTIFF'S MOTION TO AMEND AND |
| ) | DEFENDANTS' MOTIONS TO |
| Allied Pilots Association, et al. ) | DISMISS |
| ) | |
| Defendants. ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Before the Court is Plaintiff's Motion to File a First Amended Complaint (#21). Also before the Court is Defendant Allied Pilots Association's ("the Union") Motion to Dismiss Plaintiff's amended complaint (#23). Plaintiff filed a response in opposition (#26), to which the Union replied (#32). Also before the Court is Defendant American Airlines' ("American") Motion to Dismiss Plaintiff's amended complaint (#24). Plaintiff filed a response in opposition (#25), to which American replied (#31).[1]

# I. BACKGROUND

Plaintiff was hired as a pilot by American years ago, and became a member of the Union immediately after he was hired (#21, ¶¶ 10, 11). Plaintiff worked for American until he suffered from a debilitating illness that left him unable to perform his pilot duties (#21, ¶ 13). American approved Plaintiff for long term disability benefits shortly after (#21, ¶ 14).

American later sent Plaintiff a letter informing him that he had exhausted his Sick Leave of Absence time allotted under his Collective Bargaining Agreement ("CBA") (#23, Ex. C). The

---

[1] Also before the Court are the Union's Motion to Dismiss (#6) and American's Motion to Dismiss (#8) Plaintiff's original complaint. Both of these motions are rendered moot in light of today's decision.

1

letter also informed Plaintiff that he needed to either obtain the necessary medical approval to return to work as a pilot or identify a reasonable accommodation option for returning to work in a different capacity. Id. American extended Plaintiff's Sick Leave of Absence an additional two months to give him time to make a decision. Id.

Once Plaintiff's Sick Leave of Absence expired, American removed Plaintiff from the Pilot System Seniority List ("Seniority List") (#21, ¶ 46). Plaintiff challenged his removal and filed a grievance against American (#21, ¶¶ 48-49). The Union assigned a staff attorney, Charles Hairston ("Hairston"), to assist Plaintiff during his appeal hearing (#21, ¶ 54). American, however, denied Plaintiff's grievance at the hearing (#21, ¶ 61).

The Union president later advanced Plaintiff's grievance to a Pre-Arbitration Conference, but American declined to settle (#21, ¶¶ 62, 64-65). Plaintiff asked the Union to advance his grievance to arbitration before the System Board of Adjustment ("System Board"), but the Union president declined Plaintiff's request (#21, ¶¶ 65-66). The Union president explained that he would not pursue Plaintiff's grievance because it was based on federal statutory claims, and Plaintiff was already pursuing those claims before the appropriate federal agencies (#23, Ex. E).

In response, Plaintiff filed a second grievance and alleged that American violated the CBA when it removed him from the Seniority List (#21, ¶ 109). American, however, denied Plaintiff's second grievance at an appeals hearing (#21, ¶¶ 121-122). Plaintiff asked the Union president to appeal his second grievance to a Pre-Arbitration Conference, but the Union president denied the request (#21, ¶ 123). The Union president explained that he would not pursue Plaintiff's second grievance because it was contrary to the language of the CBA (#23, Ex. I). Subsequently, Plaintiff filed a complaint (#1) with this Court attempting to compel the Union and American to participate in arbitration regarding Plaintiff's grievances.

2

## II. ANALYSIS

*A. Plaintiff's Motion to File First Amended Complaint*

Plaintiff requests leave to file a First Amended Complaint, which adds several new factual allegations and a Labor-Management Reporting and Disclosure Act ("LMRDA") claim against the Union. A party may amend its pleading once as a matter of course within twenty-one days of service of a 12(b) motion. FED. R. CIV. P. 15(a)(1)(B). Plaintiff filed his motion within the Rule 15(a)(1)(B) deadline, and neither the Union nor American opposed Plaintiff's motion. Therefore, Plaintiff's motion is granted.

*B. The Union's Motion to Dismiss*

Plaintiff's amended complaint alleges that (1) Plaintiff has a right to compel arbitration, (2) the Union breached its duty of fair representation, and (3) the Union violated the LMRDA. The Union moves to dismiss those claims under FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Plausibility, in the context of a motion to dismiss, means that a plaintiff has pleaded facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Consequently, the Court will analyze each of Plaintiff's allegations in light of the pleaded facts to determine whether they are plausible.

*1. Plaintiff's Right to Compel Arbitration*

Plaintiff alleges he has a contractual right to compel arbitration of his grievances under the CBA. Plaintiff is incorrect. It is well settled that the relationship existing between a union and its members is contractual and that the constitution, charter, by-laws and regulations, if any, constitute a binding contract. James v. Int'l Bhd. of Locomotive Eng'rs, 302 F.3d 1139,

3

1146 (10th Cir. 2002). Courts, in turn, must enforce the constitution, charter, by-laws and regulations so long as they are free from illegality or invalidity. See Adams v. Int'l Bhd.of Boilermakers, 262 F.2d 835, 839 (10th Cir. 1958).

Neither the Union's Constitution and Bylaws ("Constitution") nor the CBA gives Plaintiff a contractual right to appeal his grievances before the System Board; instead, those documents accord that right to the Union president. Under the CBA, the Union President has "the right to appeal [grievances] either to the Pre-Arbitration Conference . . . or . . . to the System Board of Adjustment." See #23, Ex. B, § 21(G)(5). The Union's Constitution also gives the Union "the right to resolve institutional and individual grievances in its sole discretion as the collective bargaining representative of the pilots." (#23, Ex. A, Art. II(C)). Thus, the Union's Constitution and CBA grant the Union President, not Plaintiff, the right to appeal Plaintiff's grievances.

Additionally, Plaintiff has not shown, and the Court has not found, anything that suggests that the Union's Constitution or CBA is illegal or invalid. Therefore, the Court rejects Plaintiff's allegation that he has a contractual right to arbitrate his grievances.[2]

Plaintiff also alleges that he has a statutory right under the Railway Labor Act to arbitrate his grievances. Plaintiff's argument, however, is unpersuasive. Plaintiff relies primarily on dicta from the Eleventh and Third Circuit Courts (#21, ¶¶ 156, 164), but fails to give any explanation or analysis as to why this Court should follow these dicta in its decision. Therefore, the Court rejects Plaintiff's allegation that he has a statutory right to arbitrate his grievances.

---

[2] At this point, Plaintiff alleges that he never intended to waive his right to appeal when he became a union member. This argument, however, is unpersuasive because it is a conclusory statement and lacks any supporting facts or analysis.

4

*2. The Union's Duty of Fair Representation*

Plaintiff alleges that the Union breached its duty of fair representation. A union breaches its duty of fair representation if its actions during negotiations with an employer are "arbitrary, discriminatory, or in bad faith." Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1357 (10th Cir. 1994). A union may also breach its duty of fair representation if its actions are perfunctory. See Vaca v. Sipes, 386 U.S. 171, 191 (1967). When determining whether a union breached its duty of fair representation, courts are highly deferential toward the union and recognize the "wide latitude that negotiators need for the effective performance of their bargaining responsibilities." Considine, 43 F.3d at 1357. However, even if a union breaches its duty of fair representation, a plaintiff must show that that the breach seriously undermined the grievance proceedings. Hinkley v. Roadway Express, Inc., 249 F. App'x 13, 17 (10th Cir. 2007).

*a. Arbitrary Actions*

Plaintiff asserts that the Union acted arbitrarily when it assigned him 'conflicted counsel,' declined to advance his grievances to arbitration, refused to argue his federal claims at his appeal, refused to draft his briefs, and refused to represent him during the appeal of his second grievance (#21, ¶¶ 56-58, 60, 118-120, 123). Plaintiff is incorrect. A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational. Considine, 43 F.3d at 1357. Under this standard, the Union's actions in the present case are not arbitrary.

The Union's decision to assign Hairston as Plaintiff's counsel was not arbitrary because Hairston did not have a conflict of interest, as Plaintiff suggests. A conflict of interest exists when a division of loyalties affects counsel's performance. Mickens v. Taylor, 535 U.S.

5

162, 171, 122 S.Ct. 1237, 1243 (2002). This conflict must actually affect a client's representation; it cannot be a mere theoretical division of loyalties. Id.

Plaintiff asserts that Hairston had a conflict of interest because he helped select the disability claims reviewer that rejected an administrative appeal that Plaintiff filed years before. Plaintiff's first grievance, however, did not address that administrative appeal; instead, it addressed Plaintiff's removal from the Seniority List (#21, ¶¶ 48-49). Furthermore, the facts do not suggest that Hairston had divided loyalties, or would receive some sort of benefit if Plaintiff were removed from the Seniority List. Plaintiff's allegation, therefore, is merely theoretical and fails to show that the Union acted irrationally when it assigned Hairston to assist Plaintiff.

The Union's refusal to advance Plaintiff's first grievance to arbitration was also not arbitrary because the System Board did not have jurisdiction over Plaintiff's first grievance. The CBA states that the System Board has jurisdiction over "disputes . . . growing out of grievances, or out of the interpretation or application of any of the terms of this Agreement." (#23, Ex. B, § 23(E)). The CBA also states that a grievance must be either a contractual grievance, or a discipline and discharge grievance (#23, Ex. B, § 21(D)). Plaintiff's first grievance, which consisted of federal statutory claims, did not fall under the System Board jurisdiction because it did not dispute the interpretation or application of the CBA, and was not a contractual, or a discipline and discharge grievance. Therefore, the Union's refusal to advance Plaintiff's first grievance to the System Board was not irrational.

The Union's refusal to advance Plaintiff's second grievance to the System Board was also not arbitrary because the Union did not believe Plaintiff's grievance had any merit under the CBA. Plaintiff's second grievance asserted that American violated the CBA when it removed him from the Seniority List (#21, ¶ 110). The CBA, however, expressly allows

6

American to remove a pilot from the Seniority List if the pilot exhausts his or her sick leave of absence (#23, Ex. B, § 11(D)(1); Ex. B, Supplement F(1)(5)(d)). Plaintiff had exceeded the sick leave of absence time permitted under the CBA (#21, ¶ 13, ¶ 46; #23, Ex. C). Thus, when American removed Plaintiff from the Seniority List, it acted within the confines of the CBA. The Union realized this when it processed Plaintiff's second grievance, and notified Plaintiff (#23, Ex. I). Consequently, the Union's refusal to advance Plaintiff's second grievance to arbitration was not arbitrary.

Plaintiff finally contends that the Union acted arbitrarily when it refused to draft Plaintiff's briefs, argue Plaintiff's federal claims, and represent Plaintiff during the appeal of his second grievance. However, these statements are conclusory and fail to show the Court how the Union acted arbitrarily. Therefore, the Court rejects Plaintiff's allegation that the Union acted arbitrarily in the present case.

### b. Discriminatory Actions

Plaintiff alleges that the Union's actions were discriminatory because the Union refused to arbitrate his second grievance when it advanced a similar grievance to arbitration (#21, ¶¶ 129-30). Plaintiff's argument, however, does not have merit. A union's discriminatory conduct violates its duty of fair representation only if it is 'invidious.' Considine, 43 F.3d at 1357. Plaintiff, however, does not allege nor show the Court how the Union's actions were 'invidious.'

Furthermore, the grievance identified in Plaintiff's amended complaint is not similar to Plaintiff's second grievance. The grievance identified in Plaintiff's amended complaint asserts that American failed to give adequate notice to several disabled pilots before they were removed from the Seniority List (#21, ¶¶ 129-30). Plaintiff's second grievance is quite different;

7

it contends that pilots who are sick or disabled longer than five years should cease to accrue seniority, but not be removed from the Seniority List (#21, Ex. 3).

Plaintiff fails to plausibly allege that the Union's actions were discriminatory. The Court, therefore, rejects Plaintiff's allegation.

### c. Actions Made in Bad Faith

Plaintiff alleges that the Union's actions were made in bad faith. Plaintiff's allegation is without merit. "Bad faith requires a showing of fraud, or deceitful or dishonest action." Considine, 43 F.3d at 1357. Additionally, when alleging fraud, Plaintiff must state with particularity the circumstances constituting the fraud. FED. R. CIV. P. 9(b). Plaintiff fails to meet these requirements because his allegation is a mere conclusory statement. Therefore, the Court rejects Plaintiff's allegation.

### d. Perfunctory Actions

Plaintiff alleges that the Union's actions were perfunctory. However, Plaintiff fails to show the Court that the Union acted in a perfunctory manner. For the Union to act in a perfunctory fashion, it needs to act without concern or solicitude, or give a claim only cursory attention. Hinkley, 249 F. App'x at 17. In the present case, the Union devoted several resources to assist Plaintiff: it assigned him counsel, analyzed his grievances, processed his grievances, arranged his appeals, and spoke during his first appeal. The Union also wrote letters to Plaintiff explaining why it would not advance his grievances to arbitration (#23, Ex. E; Ex. I). While the Union certainly could have done more to assist Plaintiff, the facts do not suggest that the Union only gave his grievances cursory attention. Therefore, the Court rejects Plaintiff's allegation

### e. The Union's Alleged Breach of Duty

Even if the Court were to hold that the Union breached its duty of fair representation, Plaintiff's allegations still fail because Plaintiff fails to show the Court that

8

Union's alleged breach seriously undermined his grievance proceedings. Hinkley, 249 F. App'x at 17. According to the facts before the Court, Plaintiff's first grievance was outside the jurisdiction of the System Board, and his second grievance was not supported by the CBA. Thus, even if the Union were to advance Plaintiff's grievances to the System Board, the result would be the same: Plaintiff's grievances would fail or be rejected. Therefore, the Court holds that the Union's alleged breach did not seriously undermine Plaintiff's grievance proceedings.

### 3. Plaintiff's LMRDA Claim

Plaintiff finally alleges that the Union violated the LMRDA because it denied 233 medically disabled pilots access to its members-only discussion forum (#21, ¶ 195). Plaintiff's claim, however, is not timely. Federal law allows a union to require a member "to exhaust reasonable hearing procedures . . . before instituting legal or administrative proceedings against [the union] or any officer thereof." 29 U.S.C. § 411(a)(4). The Union's Constitution requires a member who has been restricted access to the Union's website to obtain a mandatory review prior to filing suit (#23, Ex. A, Art. VII(D)(5)). Plaintiff has not shown that he has exhausted this union remedy. He also does not contend that this procedure is unreasonable. Therefore, the Court holds that Plaintiff must exhaust his union remedies before filing his LMRDA claim.

### C. American's Motion to Dismiss

American contends that Plaintiff fails to state a plausible claim against it. The Court agrees. In his amended complaint, Plaintiff alleges that American breached its duty when Plaintiff was unable to arbitrate his grievances (#21, pp. 25-30). However, Plaintiff's allegation is a conclusory statement. Furthermore, the facts suggest that American fulfilled its obligations under the CBA. Id. Therefore, the Court grants American's motion to dismiss.

9

### III. CONCLUSION

Accordingly, it is **HEREBY ORDERED** that Plaintiff's Motion to File First Amended Complaint (#21) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant American Airlines' Motion to Dismiss Plaintiff's First Amended Complaint (#24) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Allied Pilot Association's Motion to Dismiss Plaintiff's First Amended Complaint (#23) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant American Airlines' Motion to Dismiss (#8) and Defendant Allied Pilot Association's Motion to Dismiss (#6) are **DENIED** as moot.

DATED this 3rd day of November, 2014.

BY THE COURT:

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT