# EXHIBIT B

USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3-2-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re

**AMR CORPORATION, et al.,**

        Debtors.

        16-CV-9429 (ALC)

**Order**

-----------------------------------------------------------X

LAWRENCE M. MEADOWS,

        Appellant,

v.

AMR CORPORATION, et al.,

        Appellees.

-----------------------------------------------------------X

**ANDREW L. CARTER, JR., United States District Judge:**

    Before the Court is an appeal by Lawrence M. Meadows ("Meadows" or "Appellant"), *pro se*, of three orders of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"): (1) enforcing the Plan and Confirmation Order against Meadows; and (2) denying Meadows' motion for reconsideration; and (3) denying Meadows' motion to strike. ECF No. 1. Appellee AMR Corporation, an indirect, wholly-owned subsidiary of American Airlines Group, Inc. ("American"), opposes. For the reasons that follow, the Court affirms the Bankruptcy Court's orders.

**COPIES MAILED**

I.  **Facts**

On November 29, 2011, AMR Corporation and its related debtor entities (the "Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court. Bankr. Dkt. Nos. 10361, 10367.[1] On October 21, 2013, the Bankruptcy Court entered an order confirming the Debtor's Chapter 11 Plan (the "Plan"). *Id.* On December 9, 2013, the effective date of the Plan, the Debtors emerged from chapter 11. Bankr. Dkt. No. 11402.

Section 10.2 of the Plan contains a discharge provision, which states, in relevant part, as follows:

> [U]pon the Effective Date, all existing Claims against the Debtors . . . shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims . . . shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or property, any other or further Claim . . . based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim . . . and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

Bankr. Dkt. No. 12717 at 2-3.

Section 10.5 and 10.6 reflect the Plan's injunction provisions, which state, in relevant part, as follows:

> [A]ll Persons or Entities who have held, hold, or may hold Claims . . . and all other parties in interest . . . shall be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim . . . against the Debtors or the Reorganized Debtors or property of any of the Debtors or the Reorganized Debtors other than actions to enforce the Plan or with respect to the allowance of Claims and Equity Interests . . . .

---

[1] The parties did not designate a joint appendix in connection with this appeal (preferring instead to file separate appendices), so the Court will cite directly to the designated documents as they appear on the Bankruptcy Court's docket. Additionally, because the Court only cites to materials with record support, the Court does not cite to the significant portions of parties' factual recitations which lack cites to the record, or where the necessary citations cannot be easily located. *See* Fed. R. Bankr. P. 8010(a)(1)(D) (requiring "statement of the facts relevant to the issues presented for review, with appropriate references to the record").

*Id.* at 3.

The Bankruptcy Court's order similarly enjoins parties from bringing actions based on discharged claims. Bankr. Dkt. Nos. 10361, 10367 at 67. Relatedly, Section 10.3 of the Plan and paragraph 65 of the order contain provisions providing that on the effective date, a claim holder "shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date." Bankr. Dkt. Nos. 10361, 10367 at 70.

On December 16, 2013, notice was given to all known creditors and parties in interest, including Meadows. Bankr. Dkt. No. 12587 at 9; *see* Bankr. Dkt. No. 11402. On March 17, 2014, the Debtors filed their objections to Appellant's three claims on the basis that, among other things, (i) Appellant's claim for non-payment of long-term disability benefits was fully litigated and resolved in favor of American by the United States District Court for the Southern District of Florida and affirmed by the United States Court of Appeals for the Eleventh Circuit and (ii) the claims should be disallowed and expunged for failure to satisfy the relation-back requirement. Bankr. Dkt. No. 12587 at 9. These claims were asserted against the debtors for "Pilot Long Term Disability Benefits" and "EEOC charges including but not limited to wrongful termination and discrimination, SOX claim, etc." *Id.*; *see* Bankr. Dkt. No. 12588 Ex. 7 (proofs of claim).

On April 17, 2014, the Bankruptcy Court held a contested hearing on the Debtors' objections. *See* Bankr. Dkt. No. 12012 (transcript). On September 5, 2014, the Bankruptcy Court entered an order that disallowed and expunged Appellant's claims. Bankr. Dkt. No. 12258. On December 8, 2015, this Court affirmed that order. Bankr. Dkt. No. 12658. On October 31, 2016, the Court of Appeals for the Second Circuit also affirmed. *See In the Matter of: AMR Corp.*, 662 F. App'x 77 (2d Cir. 2016).

3

At various times, Appellant was pursuing certain claims against American in other venues, which remain pending and/or stayed while this appeal proceeds. In 2011, Appellant filed a whistleblower complaint with OSHA alleging that American defrauded shareholders by improperly reporting pension obligations and retaliated against him for reporting protected whistleblower activity. Bankr. Dkt. No. 12588 Ex. 10. After OSHA dismissed the complaint, Appellant requested a hearing before an administrative law judge ("ALJ"). Bankr. Dkt. No. 12588 Ex. 11. The ALJ thereafter stayed the proceeding, at Appellant's request, pending resolution of the appeal of this Court's order disallowing and expunging the Appellant's claims. Bankr. Dkt. No. 12588 Ex. 12.

In 2015, Appellant initiated an action in the Northern District of Illinois alleging that American violated the Americans with Disabilities Act by terminating his employment and removing him from the pilot seniority list in October 2011. Bankr. Dkt. No. 12588 Ex. 2. The same year, Appellant also sent the Debtors a copy of an "AIR21 Complaint"[2] asserting that his "career was abruptly ended, when [he] was removed from the pilot seniority list and [his] employment was terminated without cause." Bankr. Dkt. No. 12588 Ex. 4. The Federal Aviation Administration determined that Appellant's complaint did not meet the criteria for the Administration's whistleblower protection. Bankr. Dkt. No. 12619 at 3. Also in 2015, Appellant filed a second whistleblower complaint with OSHA after American sent a letter to him–in response to a voicemail he left with a senior attorney at American–requesting that he communicate only with outside counsel regarding his pending litigation matters. Bankr. Dkt. No. 12588 Ex. 5. After OSHA dismissed the complaint, Appellant requested an ALJ hearing. Bankr. Dkt. No. 12619 at 13.

---

[2] AIR21 is a short-form for the Wendel H. Ford Aviation Investment Reform Act for the 21st Century, and provides whistleblower protections, codified at 49 U.S.C. § 42121, for air carrier industry employees. *See Hernandez v. Metro-N. Commuter R.R.*, 74 F. Supp. 3d 576, 579 (S.D.N.Y. 2015).

4

Additionally, over the past several years, Appellant has contacted American employees directly regarding his pending litigation matters, from sending e-mails and letters to stopping in the offices of senior executives without an appointment. Bankr. Dkt. No. 12587 at 15. Although American requested that Appellant only communicate with American's outside counsel regarding these matters, Meadows continued to do so. *Id.*; *see* Bankr. Dkt. No. 12588 Exs. 6, 21-27.

On March 17, 2014, American filed a motion to prevent Appellant from pursuing relief in any action based on alleged conduct or claims arising prepetition. Bankr. Dkt. No. 11840. Meadows opposed. Bankr. Dkt. No. 12615. On July 29, 2015, the Bankruptcy Court held a contested hearing on this motion, and, on April 14, 2016, the Bankruptcy Court issued a decision granting American's motion. *See* Bankr. Dkt. No. 12601 (Notice of Agenda); *see also* Bankr. Dkt. No. 12717 (decision). It specifically concluded that the actions that American sought to enjoin involved conduct that arose prepetition and were thus barred by the Plan's injunction provisions. *Id.* at 11. In addition, the Bankruptcy Court rejected Appellant's argument that the Plan's injunction provisions did not apply because the claims asserted in the actions at issue arose from American's ongoing postpetition conduct. *Id.* at 12-16. The Bankruptcy Court concluded that Appellant was terminated prior to the Plan's Effective Date, and thus "all claims arising out of his employment and termination were discharged." *Id.* at 12.

The Bankruptcy Court also rejected Appellant's argument that he was never terminated by American, noting that his position "contradict[ed] the facts established in this case and his own prior statements" and that he "provide[d] no basis to refute the avalanche of evidence of statements attesting to his termination." *Id.* at 13. The court cited not only three other decisions finding that Appellant was terminated prepetition, but also Appellant's own statements to the effect that he had been terminated. *Id.*; *see* Bankr. Dkt. No. 12620 Ex. 44 (identifying

5

documents in which Appellant stated he was terminated by American). The court also rejected Appellant's postpetition claims that American retaliated against him by refusing to reinstate him as an employee, reasoning that American had not employed him before American's commencement of chapter 11 proceedings, and that American's refusal to "accede to Meadows' demands to be rehired does not constitute new discriminatory and retaliatory conduct." Bankr. Dkt. No. 12717 at 14.

Appellant thereafter sought, among other things, reconsideration of the Bankruptcy Court's order, and those requests were denied. Bankr. Dkt. Nos. 12748, 12798. Appellant timely appealed, and this matter was fully briefed on May 15, 2017, without a reply brief from Appellant. This Court has jurisdiction based on 28 U.S.C. § 158(a)(1) to hear an appeal from an order of the United States Bankruptcy Court.

## II. Standard of Review

A district court functions as an appellate court in reviewing judgments rendered by bankruptcy courts. *See In re Sanshoe Worldwide Corp.,* 993 F.2d 300, 305 (2d Cir. 1993) ("[Appellant] relies on several cases for the reasonable proposition that the district court acts as an appellate court in reviewing a bankruptcy court's judgments."). The standard of review applicable to matters within bankruptcy jurisdiction is governed by the Federal Rules of Bankruptcy Procedure. On appeal, the court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

Findings of fact are reviewed for clear error. *See* Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...." *Id.; see Solow v. Kalikow (In re Kalikow),* 602 F.3d 82, 91 (2d Cir. 2010) (noting that "[f]indings of fact are reviewed for clear error."). A finding of fact is clearly erroneous if

6

the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)); *ASM Capital, LP v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 582 F.3d 422, 426 (2d Cir. 2009). While the Bankruptcy Court's "findings of fact are not conclusive on appeal, the party that seeks to overturn them bears a heavy burden." *H & C Dev. Grp., Inc. v. Miner (In re Miner)*, 229 B.R. 561, 565 (B.A.P. 2d Cir. 1999). Likewise, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013; *cf. United States v. Iodice,* 525 F.3d 179, 185 (2d Cir. 2008) (counseling "particularly strong deference" to findings based on "credibility determinations"). *Accord In re Cody, Inc.,* 338 F.3d 89, 94 (2d Cir. 2003).

A bankruptcy court's conclusions of law, by contrast, are reviewed *de novo. See In re Cody,* 338 F.3d at 94; *In re 139–141 Owners Corp.,* 313 B.R. 364, 367 (S.D.N.Y. 2004) (same). Finally, mixed questions of law and fact are reviewed either "*de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." *Serv. Emps. Int'l, Inc. v. Dir., Office of Workers Comp. Program,* 595 F.3d 447, 455 (2d Cir. 2010) (citation omitted).

Nonetheless, district courts occasionally apply an abuse of discretion standard when reviewing some bankruptcy court orders. *See S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.),* No. 96-CV-5801 (JFK), 1997 WL 31197, at *8 (S.D.N.Y. Jan. 28, 1997) (collecting cases addressing motions to compel arbitration and the scope of permissible discovery). A Bankruptcy Court's refusal to lift a plan injunction is reviewed for abuse of discretion. *In re Worldcom, Inc.*, No. 05-CV-5704 (RPP), 2006 WL 2270379, at *2 (S.D.N.Y. Aug. 4, 2006). An abuse of discretion exists when the lower court has made an error of law or clearly erroneous

7

finding of fact which forms the predicate for the order under review. *Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 315–16 (2d Cir. 1982); *see Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990). An error of law occurs if the lower court failed to consider a relevant factor that should have been given weight or failed to apply the proper legal standard. *See Stormy Clime Ltd. v. Progroup, Inc.*, 809 F.2d 971, 973–74 (2d Cir. 1987).

### III. Discussion

Applying the standards recited above, the Court concludes that the Bankruptcy Court did not err in enforcing the plan injunction against Meadows.

*First*, despite Meadows' vague suggestion that the Bankruptcy Court lacked jurisdiction to enforce the plan injunction (see Appellant's Opening Brief ("Meadows Br.") at 32 (ECF No. 7)), the Bankruptcy Court properly determined that it retained jurisdiction to interpret and enforce the Plan. *See In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 96 (2d Cir. 2005) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders. . . .") (citation omitted). The type of determination that the Bankruptcy Court made–that Meadows' claims arose prior to the Plan's commencement date, and thus were barred by the plan injunction (*see* Bankr. Dkt. No. 12717 at 9, 11)–was within its jurisdiction.

*Second*, in enforcing the plan injunction, the Bankruptcy Court did not, despite Meadows' assertions otherwise (Meadows Br. at 36-38), impermissibly rule on a "minor dispute" under the Railway Labor Act ("RLA"). A "minor dispute" necessarily involves a collective bargaining agreement. *See Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 722-25 (1945) (discussing scope of possible disputes under the RLA). However, the Bankruptcy Court did not need to refer to a collective bargaining agreement to determine that Meadows was terminated and removed from the pilot seniority list prepetition, especially given Meadows' own factual averments that he had been terminated. Bankr. Dkt. No. 12620 at Ex. 44.

*Third*, the Bankruptcy Court did not err in determining that Meadows' claims arose from prepetition conduct.[3] The Bankruptcy Court found that Meadows' claims all arose from the denial of his long-term disability benefits on December 26, 2007 and his removal from the pilot seniority list on October 24, 2011. Bankr. Dkt. No. 12717 at 11. Because these events occurred prior the commencement date, the Bankruptcy Court correctly determined that Meadows' claims were barred by the plan injunction, and, moreover, did not arise from American's ongoing postpetition actions. *Id.* Even Meadows admits that the actions he filed "stem[] from the same set of facts: starting with American's denial of disability benefits on December 26, 2007." Meadows Br. at 18. As the Bankruptcy Court correctly found, this is entirely consistent with the holding of *O'Loghlin v. Cty. of Orange*, 229 F.3d 871 (9th Cir. 2000), which suggests that the continuing violation cannot be invoked where, as here, all of the conduct at issue occurred outside the limitations period. Bankr. Dkt. No. 12717 at 12 (citing *O'Loghlin*, 229 F.3d at 875). That Meadows' claims arise from prepetition conduct also distinguishes his case from *U.S. Commodity Futures Trading Commission v. NRG Energy, Inc.*, 457 F.3d 776 (8th Cir. 2006), upon which Meadows now substantially relies (Meadows Br. at 39-41), where the government's action sought to enjoin *future* conduct, and therefore was not discharged by NRG's reorganization plan. *Id.* at 780.

*Fourth*, the Bankruptcy Court did not clearly err in combing the record and determining that Meadows was not, in fact, still employed by American. Bankr. Dkt. No. 12717 at 13. That the Court considered Meadows' prior statements to the effect that he had been terminated does not, contrary to Meadows' suggestion (Meadows Br. at 44-45), constitute an improper

---

[3] Meadows' submission confusingly contains a point heading in this regard, but no argument appears to follow. *See* Meadows Br. at 38-39. Because his other arguments touch on this issue to some degree, the Court will assume, as it is obliged to do, that Meadows intended to raise this argument. *See Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (discussing obligation to "construe complaints filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest") (citation omitted).

9

application of the "judicial estoppel" doctrine against him. Bankr. Dkt. No. 12717 at 13 (citing *In re G.S. Distribution, Inc.*, 331 B.R. 552, 564 (S.D.N.Y. 2005) (discussing relevant factors)). Moreover, the court relied on other record evidence to determine that Meadows provided "no basis to refuse the avalanche of evidence and statements attesting to his termination[,]" further concluding that he had not "justified why he should be allowed to contradict his earlier statements about his termination." Bankr. Dkt. No. 12717 at 13. Thus, the Bankruptcy Court did not clearly err in determining that Meadows was terminated, nor did it commit legal error in suggesting that he was estopped from claiming otherwise.

*Fifth*, the remedy that the Bankruptcy Court fashioned–enjoining Meadows from pursuing further claims, directing him to dismiss certain actions, and ordering him to communicate exclusively with American's outside counsel regarding his pending litigation against American–was entirely appropriate under the circumstances. The Bankruptcy Court correctly applied the relevant factors provided by the Court of Appeals in determining whether a litigant's future access to courts should be restricted and, in doing so, fashioned an appropriate remedy. Bankr. Dkt. No. 12717 at 16 (citing *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005)). The Bankruptcy Court reasoned that Meadows' actions "entailed duplicative lawsuits, caused needless expense to the Debtors, and imposed an unnecessary burden on courts across the country." *Id*. It also noted that Meadows' communications with American were "unprofessional at best and threatening at worst" and that Meadows had ignored American's repeated requests to communicate only with outside counsel regarding the litigation he was pursuing against it. Bankr. Dkt. No. 12717 at 17.[4] Thus, the Court finds no error in the relief that the Bankruptcy Court ordered.

---

[4] Meadows suggests, citing no authority, that the portion of the order prohibiting him from further communicating with American employees regarding these litigation matters "amounts to an unlawful infringement of his Constitutional First Amendment Right of Freedom of Speech" and also violates his "right of assembly and freedom

*Sixth*, and finally, Meadows' claim that the Bankruptcy Court erred by entering an order that was inconsistent with a prior order to the extent the prior order had allowed him to pursue Grievance No. 12-011 (Meadows Br. at 49-52), is flatly contradicted by the text of the order, which indicates that it "does not prohibit Meadows from pursuing Appeal No. 15-4139 in the United States Court of Appeals for the Tenth Circuit as it relates to Grievance No. 12-011." Bankr. Dkt. No. 12738 at 4. Thus, Meadows can continue to litigate Grievance No. 12-011, including his appeal before the Tenth Circuit. The Court thus finds no reason to assign error in this regard.

## CONCLUSION

The Bankruptcy Court's orders enforcing the plan injunction against Meadows are affirmed. The Clerk of Court is respectfully directed to enter judgment and terminate the case.

Dated: New York, New York
      March 2, 2017

SO ORDERED.

Andrew L. Carter, Jr.
United States District Judge

---

of speech in the union hall," as provided by his Union Member Bill of Rights under 29 U.S.C. § 401. Meadows Br. at 48-49. However, to the extent that the Bankruptcy Court's order reaches constitutionally protected speech, it was narrowly tailored to limiting communications with *employees* with regard to *litigation matters only*, and thus does not constitute a prior restraint. *See Conn. Magazine, A Div. of Arc Commc'ns, Inc. v. Moraghan*, 676 F. Supp. 38, 44 (D. Conn. 1987) (in assessing legality of prior restraint, "a court must attempt to minimize the restrictive effect of a prior restraint by proscribing only those communications that represent the danger sought to be avoided"); *cf. Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) (concluding that an injunction limiting party's communications with adversary, its employees, and counsel, regarding *any matter* in perpetuity constituted an unlawful prior restraint, despite party's history of threatening and harassing behavior). Similarly, the order does not appear to apply to Meadows' ability to speak freely in a union hall, so long as it does not pertain to his ongoing litigation efforts, and thus it does not appear to violate any of his statutory rights.

11