

Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
Phone: 516-982-7718
Facsimile: 435-604-7850
lawrencemeadows@yahoo.com

## IN THE UNITED STATES DISTRICT COURT
## FLORIDA SOUTHERN DISTRICT

| | |
|---|---|
| **LAWRENCE M. MEADOWS,** | **PLAINTIFF'S REPLY TO DEFENDANT ALLIED PILOTS ASSOCIATION'S RESPONSE TO PLAINTIFF'S AMENDED MOTION TO FILE FIRST AMENDED COMPLAINT** |
| Plaintiff, | |
| v. | |
| **ALLIED PILOTS ASSOCIATION,** | **Case No:1:17-cv-22589-JLK** |
| a Texas Labor Association, and | |
| **DOES 1-10,** | |
| Defendants. | |

## PLAINTIFF'S REPLY TO DEFENDANT ALLIED PILOTASSOCIATION'S RESPONSE TO PLAINTIFF'S AMENDED MOTION TO FILE FIRST AMENDED COMPLAINT

Pro Se Plaintiff, Lawrence M. Meadows, hereby file his Reply to Defendant Allied Pilots

Association ("APA") Response in Opposition to Plaintiff's Amended Motion to Amend.

## REPLY MEMORANDUM

## INTRODUCTION

Defendant APA's Response and Opposition (Doc 29) To Plaintiff's Motion to File An

Amended Complaint (Doc 28), is in fact a hybrid motion; in which APA also makes pre-mature

unripe motion to dismiss arguments attacking the substantive facts and claims within Plaintiffs

Amended Complaint itself. In so doing, APA has effectively treated Amended Complaint as the operative complaint in this action; and thereby, rendered the Original Complaint (Doc 1) and APA's associated Motion to Dismiss (Doc 18) as moot. Thus, Meadows' believes APA has acquiesced to the Amended Complaint as being timely and properly filed in accordance with F.R.C.P. Rule 15. Therefore, he respectfully requests that his honorable Court approve Plaintiff's Motion to Amend, and ignore and/or strike any of APA's unripe substantive arguments as to the facts and claims in the Amended Complaint. Alternatively, this Court can permissively and liberally grant leave to amend as justice so requires, and should do so here.

Moreover, APA should be required to file a proper responsive pleading to Plaintiff's Amended Complaint, especially to the extent it seeks to dismiss it; to afford the Plaintiff the full due process of full motion practice, to include Response in Opposition and hearing as otherwise required under the Rules. Additionally, on February 27, 2018, this Court entered its Order denying Plaintiff's motion to recuse, but was remained silent as to the motion's request to vacate all response deadlines, or interim stay of the proceedings. Notably, Defendant APA never complained, moved for default, nor filed Notice to Request to Submit its Motion to Dismiss. (See SOF 24-25 below). Finally, it is disingenuous for Defendant APA to accuse Plaintiff of flouting the rules, when in fact it was APA itself whom this Court entered an Entry of Default against for not timely filing its responsive pleading; in addition to also wrongly accusing long-time Florida resident Meadows of forum shopping. (See SOF 30 below).

In sum, Plaintiff has acted in good-faith despite his extenuating circumstances related to his caseload, medical disability and influenza, and this Court in its most recent order dated February 27, 2018, was silent as to the request to vacate deadlines and to stay the proceedings, and APA did not assert in any way that Meadows was late or in default; thus there was not a

willful act of non-compliance or undue delay. (See SOF 16 and 23 below).  Therefore, Plaintiff respectfully requests this honorable Court grant his Motion to Amend, either as of a matter of right or permissively, so that he can have the same opportunity to fully and fairly adjudicate his case on the merits; just as was already afforded to Defendant APA in setting aside its default, and allowing additional time to file their otherwise  untimely responsive pleading.

### *Instant Case Procedural History*

1.          Since filing his Complaint, Plaintiff was engaged in settlement discussions with Defendant APA, but as the deadline to serve his suit approached APA has still not produced the promised settlement agreement.

2.          Therefore, on October 6, 2017, Plaintiff timely served a summons with copy of his Complaint upon Defendant APA, and then filed the Executed Summons with the Clerk.

3.          On October, 13, 2017, the Clerk docketed the Executed Summons on Plaintiff's Complaint as to Defendant APA; and further stated that APA had *"a 21day response/answer filing deadline",* and more specifically *"answer due 10/27/2017."*

4.          On October 18, 2017, Plaintiff filed a Motion to Stay, giving a detailed explanation of describing ongoing settlement discussions and need to exhaust administrative union remedies. APA neither objected nor filed a response. Meadows motion stated in relevant part;

> "Additionally, prior to filing this instant lawsuit, Meadows' made a good faith effort to exhaust his internal union remedies under Article VII of APA's Constitution and Bylaws (C&B), by bringing charges against APA's "American Airlines Pilots Seniority Integration Committee", for its willful violation of the APA C&B, Art. II.D., by specifically by failing, "to maintain uniform principles of seniority and the perpetuation thereof. That matter was timely filed, and is currently pending appeal to a neutral arbitrator, and not yet fully exhausted." (Emphasis Added). (Doc 7).

5.          That very same day, after Meadows revealed in his Motion that he was pursuing

his administrative union remedy of arbitration against APA's Seniority Committee; APA's

President suddenly issued an Interpretation of APA's Constitution and Bylaws ("C&B").

Which declared Meadows was an Inactive member and no longer in good standing, for the

improper purpose of foreclosing him from any further internal union remedies, in particular

those related his LMRDA, Breach of contract and Seniority claim. (Doc 28-1, ¶¶ 167-171).

6.          On or after, the response/answer deadline of 10/21/2017, Defendant APA had

neither appeared nor filed a responsive pleading to Meadows Complaint.

7.          On November 7, 2017, the Court entered an Order Denying Motion To

Stay. Wherein, the Honorable Senor Judge King, noted that despite deadlines APA

failed to its Answer, specifically stating;

> *The Court notes that while Return of Service filed in this matter indicates that*
> ***Defendant Allied Pilots Association was served on October 6, 2017, making its Answer***
> ***due October 27, 2017, no Answer has been filed.*** *Moreover, no scheduling order has*
> *been entered in this matter. Apart from the Rules imposed by the Local Rules of this*
> *Court and the Federal Rules of Civil Procedure, **including rules regarding time for***
> ***answering complaints after proper service and dismissal for lack of prosecution, which***
> ***deadlines remain in force and effect, there are at present no Court-imposed deadlines***
> ***to stay.*** (Doc 8). [Emphasis Added].

8.          Meadows was surprised that his Motion to Stay was denied, and immediately

called the Clerk, who told him that Judges Order basically said that APA was effectively in

Default, and that he could consider filing for a Clerk's Entry For Default.

9.          On November 8, 2017, Meadows moved for Default against APA for failure to

appear timely file its responsive pleading, and a Clerk's Entry For Default was entered that

same day. (Doc 10).

10.         On November 9, 2017, Defendant APA, despite having not yet made and

appearance, suddenly filed a Motion to Set Aside Default. (Doc 11).

11.        On November 22, 2017, Plaintiff tile filed his response and noted several material misrepresentations of fact made by Defendant APA. (Doc 12).

12.        On December 4, 2017, APA timely filed its Reply to its Motion to Set Aside Default. (Doc 14).

13.        On December 6, 2017, (*two full months after APA was properly served*), this Court set aside Defendant APA's Default and graciously gave APA yet another 30 days to file its first responsive pleading in this action, setting response deadline of 1/6/18. (Doc 15).

14.        It was not until January 5, 2018, a full 91 days after proper and timely service, and after being found in Default, Defendant APA finally file its Motion to Dismiss. (Doc 18).

15.        APA's excessively long delay unduly burdened Pro Se Plaintiff, who has limited resources, and an excessive legal workload in several other matters, including two federal appeals, two federal lawsuits, Objection's in the U.S. Bankruptcy Court, and a pending Dept. of Labor ALJ Whistleblower case hearing, all  involving his employer American Airlines (*and triggered as a result of APA's representational failures*), by causing him to deal with responding with lengthy amended complaint at the most inopportune time.

16.        Thus, on January 9, 2018, Plaintiff filed a Motion For Extension of Time (requesting to extend response deadline by 45 days) and to Stay these proceedings pending decision on that motion, and asserted the following grounds to stay;

> **"Plaintiff has been prejudiced as a direct result of Defendant Allied Pilots Association ("APA") excessively long delay in responding to his Complaint (91 days after service date).** Now Meadows is now squarely in the middle of briefing a voluminous federal appellate brief due late next month in another matter.

> Additionally, since Meadows has serving his original complaint, **Defendant APA has engaged in conduct which has given rise to several new causes of action, necessitating a complete and lengthy amendment to his original Complaint.** Thus, **at this juncture as a Pro Se litigant with limited time and resources, it is particularly burdensome for Meadows to do so whilst in the midst of meeting his other current legal obligations.**

>Furthermore, as your Defendant APA is well aware, **Meadows is currently on long term medical disability, and on that basis he also would request additional time as a reasonable accommodation.** [Emphasis Added]. (Doc 19).

17.        On, January, 23, 2018, Defendant APA filed its Response, which stated in relevant part that it; *"...agrees to thirty (30) days versus the forty-five (45) days Plaintiff requested for an extension of time."*

18.        Later that week Plaintiff, received APA's Response and was working on a Reply to reassert why he needed the full 45-day extension, versus just the 30-day extension APA agreed to, and anticipated timely filing it on January 30, 2018.

19.        On Saturday, January 24, 2018, before Plaintiff had a chance to file a Reply to APA' s response, this Court had already issued an Order via electronic docket entry date 1/24/18, which Granted Plaintiffs Motion For Extension of Time, but explicitly Denied the incorporated Motion to Stay. (Doc 21).

20.        On January 30, 2018, Plaintiff was confused that the Court despite Ordering that it as "granting" his Motion for Extension of Time was in fact only giving him 3 days to file his response as opposed 45 requested in his motion, or 30 days as agreed to by Defendant APA. So he filed a "Motion Seeking Clarification of Order and/or Reconsideration and request to stay these proceedings Pending Decision on the Motion.' (Doc 22).

21.        The very next day on, January 31, 2018, the Court ignored Plaintiffs' reasonable request for additional time, despite his cited bases of his other legal cases and medical condition; and instead immediately issued an Order which not only refused to extend Meadows' request to extend his deadline by 45 days, but also refused APA's agreement to at least a 30-day extension,  and also explicitly denied his Motion to Stay the Proceedings Pending Decision, and set the response deadline for 2/9/18. (Doc 23).

22.         On February, 9, 2018, Plaintiff perceived a prejudicial bias and favoritism of Defendant APA throughout these proceedings, which he reasonably believed precipitated an unreasonable denial of his request for additional time *(which was mutually agreed to by Defendant)*; and as a result of the associated stresses he became physically very ill and incapable of meeting what he perceived to be this Courts unfair and prejudicial demands. Thus, Plaintiff felt, he had no choice but to file a Motion Recuse Judge King, To Vacate Pending Deadlines, and To Stay Proceedings Pending Decision. (Doc 24).

23.         On February 16, 2018, Meadows and his wife had 103-degree fever, and both tested positive for and were treated for Influenza-B; which was severe, leaving him bed ridden and unable to concentrate. Two weeks later, after his condition had begun to improve he had suffered a relapsed leaving him sick for weeks.  (Exhibit 16 *out of sequence*).

24.         On February 27, 2018, this Court entered an Order which simply Denied Meadows' Motion to Recuse, but was silent as to the Motion To Vacate Pending Deadlines, and To Stay Proceedings Pending Decision. (Doc 26).

25.         Notably, APA never moved to default Plaintiff, nor did it ever file a Notice to Request to submit its Motion to Dismiss for decision.

26.         On March 16, 2018, as soon as he fully recovered Plaintiff drafted and filed his Motion to Amend, but inadvertently submitted his draft copy. So, on March 19, 2018 he filed an Amended Motion to Amended, with the final 111-page version Amended Complaint. Subsequently, this Court set a response deadline for Defendant APA of 4/2/18. (Doc 28).

27.         On April 2, 2018, Defendant APA filed and served upon Plaintiff  via U.S. Mail only, its Response in Opposition to Plaintiffs' Motion For Leave to File An Amended Complaint. However, in its Response APA went far beyond opposing Plaintiff' Motion to

Amend, and also made motion to dismiss type arguments attacking the specific facts and

claims in Plaintiff's Amended Complaint (Doc 29).

28.         On April 11, 2018, Plaintiff timely filed His Reply to Defendant APA's Response

in Opposition to Plaintiff's Motion For Leave to File An Amended Complaint. (Doc 30).

*__Meadows Has a 26 Year Continuing Employment Relationship With American Airlines
And Is Still A "Pilot Employee" Under the Terms of the Collective Bargaining Agreement;
To Extent he was Purportedly "Administratively Terminated" and Removed from Pilots'
Seniority List it was due to APA's Representational and Contractual Failures, and No RLA
System Board, Neutral Arbitrator or ALJ Has Ever Heard His Still Pending Individual and
Collective Grievances Related to his Employment Status Much Less Adjudicated on the Merits__*

29.         In April 1985, Meadows graduated cum laude from Embry-Riddle Aeronautical

University, in Daytona Beach FL, earning a B.S. Degree in Aeronautical Engineering. Upon

graduation, he was immediately commissioned Officer in the U.S. Air Force, where he

served honorably for six years as a military pilot flying T-37, T-38 supersonic training jets,

and C-9 Aeromedical Airlift aircraft.

30.         Meadows spent his childhood growing up in Florida, attending his high school

and college years there prior to entering military service (*during which he never gave up his

Florida residency*). After being honorably discharged, he moved back to Florida and has

remained domiciled there ever since; where he has been continuously homesteaded since

1997, registered to vote, and licensed to drive, and currently domiciled in Miami for his

employer American Airlines. Since being on long term disability Meadows has traveled quite

a bit seeking other temporary employment opportunities as they arise. He also owns

investment property in Park City, Utah, where he resided when he filed his original LMRDA

lawsuit in the U.S. District Court, District of Utah, and current appeal in the 10th Circuit

Court of Appeals. To the extent he has also filed pleadings in the Southern District of New

York and the 2nd Circuit Court of Appeals, it is because it was related to his pre-petition

bankruptcy claims against his employer American Airlines, who filed for Chapter 11 bankruptcy protection in that district.

### *Record Evidence Plainly Shows that Meadows Has a 26 Year Continuing Employment Relationship With American Airlines*

31.     After his military service, in October 1991, Meadows was hired by American Airlines ("American") as a *"Cockpit Crewmember",* and placed on American's Pilot System Seniority List, and served as in the non-flying position of Flight Engineer on the DC-10 tri-jet. Meadows subsequently upgraded, and was type-rated and continued to serve as an "Active" a line *"Pilot Employee"* flying B-727, MD-11, and B-777 aircraft.

32.     Despite APA's conflicting assertions to the contrary, Meadows has been at all times a member of the craft or class of pilots employed by American, who are represented by the Allied Pilots Association ("APA"), as their bargaining *Representative*, as provided under the Railway Labor Act ("RLA"), 45 U.S.C. §151 Sixth. (Doc 28-1, ¶ 13).

33.     Meadows is and has always been model *"Pilot Employee"* with over 8,500 incident free hours of commercial airline flying; 1) He never had any employee discipline or performance issues, nor any negative entries in his Personal Employment History ("PEH") file, 2) he never had any flight training deficiencies, nor busted (failed) any simulator or inflight "Check-rides" (*pilot evaluations*), and 3) he never had any incidents, accidents, nor certificate violations in his Federal Aviation Administration ("FAA") airman records.

34.     Ever since American hired Meadows, he has always been a *"Participant"* who continuously accrued over 26 years of *"Credited Service"* as a *"Pilot Employee",* with no breaks in service, serving in the status of either Active, disability benefits as provided under the terms of the Pilot Retirement Benefit Program *("Program"),* or disability benefits under §the 2004 American Airlines, Inc. Pilot Long Term Disability Plan ("Plan" or "LTD"), as

negotiated under the Collective Bargaining Agreement ("CBA"), and as reflected on his December 2016 Pension Benefit Statement.  (Exhibit 1).

35.        Currently, Meadows is considered both *"Employee"* and *"Pilot Employee"*, under the CBA, Letter KK, and the *"Plan"*. (Exhibit 2).

36.        Meadows is paid *"Compensation"* subject to federal tax withholding in the form of W-2 *"Pilot Employee"* Wages, as defined under CBA, Letter KK, and the *"Plan"*. (Exhibit 3).

37.        Meadows also receives *"Active Pilot Employee"* Medical Plan, Dental Plan, and Life Insurance Benefits (Exhibit 4)., and accrues pilot *"Pension Credited Service"* as provided under the terms of the CBA, Letter KK and Supplement-K. (*Id.* Exhibit 1).

38.        As of September 14, 2011, Defendant APA was/is fully aware of that Meadows meets two prongs of having both an *"actual disability"* and *"record of disability"*, and is a *"qualified individual"* who is entitled to a *"reasonable accommodation"* (*which he requested in writing*) as defined under the American's with Disabilities Act, as Amended 1990 ("ADA"), 29 U.S.C. § 12101, as clinically verified by the Mayo Clinic Rochester, MN. (Doc 28-1, ¶ 39 and 41).

39.        On September, 28, 2011, Meadows Chief Pilot Superior, Capt. Robert Raleigh, awarded him a 20-year service pin, and a congratulatory letter which stated in part;

> *"I want to congratulate you on 20 years of service with American Airlines...I wish you many more years of career success, good health, and enjoyment of the best job ever."*

40.        Moreover, on October, 24, 2013, highly respected RLA and MLB Arbitrator Professor Stephen Goldberg, awarded Meadows a full share payout of American's $1B bankruptcy settlement Equity Distribution, on the basis that he considered Meadows should be treated as a *"Pilot Employee"* who should on *"Pilot System Seniority List"* as of January 1, 2013, and that further that Meadows' pilots' union, the Allied Pilots Association ("APA")

ignored its duty of fair representation and treated his individual grievance 12-011 arbitrarily,

because it failed to treat it as sufficiently likely to prevail, holding in part;

> "FO Meadows filed a grievance in February 2012 alleging that the reason why American removed him from the seniority list was not that he had been on sick leave for more than five years (which would have called for his removal in 2009), **but because he had filed a 2011 Sarbanes-Oxley complaint against American...In sum, then, it is reasonable to assume that if the grievance is sustained, FO Meadows would be treated by the arbitrator as a pilot who should have been on the seniority list on January 1, 2013,** the date on which pilots on the seniority list are eligible for recovery from all four silos, even if they were on LTD status."(Exhibit 5 at 60 and 61).

41.         To date, American has never provided Meadows, any sort of "*final, definitive, and unequivocal notice*" of discharge or termination from a Chief Pilot Superior. "*'Final' and 'definitive' notice is a communication that is decisive or conclusive, i.e., leaving no further chance for action, discussion, or change.*", and "*Unequivocal' notice means communication that is not ambiguous, i.e., free of misleading possibilities.*" See *Coppinger-Martin. Nordstrom, Inc.*, Dept. of Labor, ARB 07-067, 2007-SOX-019 (ARB Sept. 25, 2009).

42.         Moreover, on November 8, 2011, after Meadows complained to his union, the Allied Pilots Association ("APA"), its Legal Director informed Meadows via certified letter, that he was in fact not terminated, and that he had a right to return to the list, stating in part;

> "**let me clarify the Company did not terminate you**; rather," [you were simply] "*administratively you were dropped from the seniority list, [which] differs from being involuntarily terminated, which is a considered a 'permanent separation.' Among other distinctions should you obtain your First Class Medical you may request a return to active status...Certainly should you obtain your First Class Medical Certificate and wish to return to the seniority list in the future, APA will assist you in the process of requesting your return to the seniority list.*" [Emphasis Added]. (Exhibit 6).

43.         Just three weeks later on November 29, 2011 ("petition date"), American's parent corporation, AMR Corporation, filed voluntary petitions for relief under Chapter 11 of the

Bankruptcy Code, and the U.S. Bankruptcy Court. S.D.N.Y. entered an Order authorizing payment of all pre-petition employee wages and benefits.

44.        American's false assertions that Meadows employment was administratively terminated are unsubstantiated, not supported under the terms of the CBA, contradicted by his bargaining representative's legal director, and pending arbitration in two grievances.

45.        Even post-petition, American has continued to engage in ongoing systemic unlawful employment practices, and committed acts of discrimination and retaliation, in violation of Meadows statutory rights, and APA has failed to protect or enforce his rights.

46.        Accordingly, on February, 4, 2012, Meadows filed individual Grievance 12-011[1] wherein he protested his purported discharge and removal from the pilot seniority list; citing contributing factors of discrimination and retaliation in violation of the ADA and SOX Acts. (Exhibit 7). Meadows union refused to arbitrate that grievance, so in February 2014, Meadows sued APA to compel arbitration of that grievance, and that matter is pending on appeal. On September 14, 2014 American had agreed in writing to arbitrate that grievance, but APA is still refuses to move it forward as his bargaining unit representative.

47.        On May 22, 2012, APA also filed a collective DFW Domicile Grievance 12-012, on behalf of disabled pilots similarly-situated to Meadows; which protested;

> *"the Company's violation of Sections 11.D, Supplement F(1), and all other related sections of the Agreement as well as past practice, for failing to reinstate pilots to the Pilots' Seniority System List and for failing to provide pilots notice of termination prior to terminating employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years."* (Exhibit 8).

---

[1]        By way of background, Defendant APA has steadfastly ignored its duty otherwise owed Meadows and refused to represent Meadows or prosecute his valuable Company Grievance 12-011, which seeks his reinstatement to the pilots' seniority list; in spite of the fact that U.S. Bankruptcy Judge Sean Lane during American Airlines bankruptcy proceedings has ordered that, ***"Mr. Meadows shall be permitted to arbitrate Grievance 12-011 before the System Board..."*** Moreover, Meadows's employer, American Airlines, has informed APA explicitly in writing that it agreed to arbitrate that grievance. Thus, APA is the only party refusing to arbitrate Meadows valuable contractual and statutory grievance.

48.        Indeed, on January 13, 2013, American in bankruptcy court pleadings admitted;

> ***"Meadows is currently party pursuant to American's collective bargaining agreement ("CBA") ...the APA filed a grievance (DFW Domicile Grievance No. 12-012) (the "APA Grievance") on behalf of Meadows and certain other DFW based pilots..."*** (Exhibit 9, ¶¶ 3 and 11).

That collective grievance is open and remains pending. Further, in December 2015, APA staff attorney, Mark Meyers admitted under oath, that grievance 12-012 applies to all similarly-situated disabled pilots system-wide, including Meadows.

49.        Meadows' Indvidvial Grievance 12-011, and DFW Domicile Collective Grievance 12-012 is explicitly incorporated into the American Airlines Pilot's 2015 Joint Collective Bargaining Agreement ("JCBA"), LOA 12-01, and Meadows has substantial contractual and statutory rights and remedies which flow from those grievances. (Exhibit 10).

50.        In fact, as of July 31, 2012, some seven months after of Americans' bankruptcy commencement, and ten months after Meadows purported removal from the seniority list, American's own internal pay activity records still showed him as an Inactive (INA) Pilot Employee, with seniority number 4703 on the Pilot System Seniority List. (Exhibit 11).

51.        On December 17, 2012 Meadows filed a Motion to Lift Stay, in part to seek determination of his employment status, because, "*Meadows was not provided the customary termination paperwork and Debtors failed to provide proper notice to Meadows as to his employment status.*", and he "*was informed via telephone he was no longer an employee of American Airlines...*" (Exhibit 12). Additionally, Meadows's counsel asserted that, "*debtor [American] at various times treated him as both employed and unemployed*" (Exhibit 13).

52.        On September 5, 2014, Judge Lane in American's bankruptcy proceeding issued an Order allowing Meadows to proceed with his Grievance 12-011, stating in relevant part;

ORDERED that, notwithstanding the foregoing, Meadows shall be permitted to arbitrate Grievance 12-011 before the System Board to the extent ~~that such arbitration is limited in scope to claims involving the interpretation of the CBA and provides remedies, if any and if appropriate, that are customary under the grievance procedures created by the RLA~~ *permitted by applicable law*; [Emphasis in ordinal]. (Exhibit 14).

53.        In fact, despite the Bankruptcy Court's September 5, 2014 Order, American and APA have continuously worked hand -in-glove to thwart Meadows efforts to have his grievance 12-011 resolved by a RLA System Board of Adjustment.

54.        Interpretations of collective bargaining agreement as it relates to the termination grievances of RLA employee, such as Meadows, is subject to the exclusive jurisdiction of a RLA System Board of Adjustment, RLA, 45 USC § 184. To date, No RLA System Board, Sole Neutral Arbitrator adjudicator ALJ or nor adjudicator other has ever heard, much less determined on the merits, the issues related to Meadows disputed to employment and seniority status. And his individual and collective grievances are still pending.

55.        Regardless, as shown in ¶¶ 29-52 above, to date, for over the past 26 and a half years, Meadows has continuously has remained in *Continuing Employment Relationship* with American, as both an *"Employee"* and *"Pilot Employee".*

56.        American Airlines, has a long-standing practice of providing medically disqualified pilots (*similarly-situated to Meadows*) non-flying "Special Assignment" jobs in the pilots' bargaining unit at fully pensionable pilot pay, and Meadows has made several written requests for such accommodation; but both American and APA have treated him disparately and refused to provide him with such accommodation, and APA continues to refuse to prosecute any of his individual or collective grievances.

57.        Regardless, under newly revised FAA medical regulations, and in accordance with long standing past-practice Meadows still hopes to return to work the cockpit to resume

the remaining ten years of his American Airlines piloting career; just like many other pilots

on long-term disability, who have returned to the cockpit, after being out of service for a

medical condition for over 10 years and in some cases in as many as 17 years.

58.         Meadows has been unable to resume his career as an American Airlines pilot,

solely as the result of APA's representational failures, breaches of contract, and breaches of

duty. As a result, Meadows has been prejudiced and substantially harmed. In early 2014,

APA was put on notice of Meadows economic damages, and provided a detailed 19 page

report, prepared by economic experts Berkeley research Group, which valued his lost piloting

career at $5.609M[2] (*under the old CBA*). (Exhibit 15).

## ARGUMENT

### A. APA Misrepresents that Plaintiff is Flouting the Rules and Forum Shopping

.   Pro se Plaintiff, Lawrence Meadows. is a former Commissioned Officer in the U.S.

Air Force, and professional airline pilot; as such he has always strived to hold himself to the

highest moral, ethical and professional standards of conduct. Thus, he finds Defendant APA'

representations that he has somehow flouted the rules and engaged in forum shopping highly

offensive, as they are untrue,  and not well taken.

First of all, on February 27, 2018, this Court entered its Order denying Plaintiff's motion

to recuse, but was remained silent as to the motion's request to vacate all response deadlines, or

---

[2]      This report, report was written based on Arbitrator Stephen Goldberg's 10/17/13 Decision and Award (*in another closely related APA matter, See SOF 38*), which held that APA ignored its duty of fair representation and treated Meadows individual grievance 12-011 arbitrarily because it failed to treat it as sufficiently likely to prevail, and his reasonable assumption that Meadows grievance would result in his reinstatement to the seniority list fully retroactive to the date he was removed. Meadows' economic expert valued his career at $5.609M (*under the old pilots' CBA, under the new 20015 CBA that amount will considerably higher*), based on lost back pay and benefits with interest, and reinstatement to a full paying position in pilots' bargaining unit; or in lieu of reinstatement, plus full payment of all back pay/benefits and forward pay/benefits lost as a result of APA's breaches of duty and contractual obligations.

interim stay of the proceedings. This was notably different from all of this Court's other Orders in response to Meadows Motion to Stay (Doc 7), Motion for Extension of Time (Doc 19), Motion for Clarification (Doc 22), all of which asked to stay these proceedings; and this Court explicitly denied the requests to stay in each one of those orders. In stark contrast, when this Court entered its most recent Order in response to Plaintiff's Motion to Recuse, and to Vacate Pending Deadlines, and to Stay the proceedings; it was explicitly denied ONLY as to the recusal, and silent as the vacation of deadlines and the stay. (Doc 26). Therefore, it seems reasonable to presume that absent language to the contrary, and absent a Clerks entry of response deadline in docket, that Meadows' requested vacation of deadlines and stay was effective.

Furthermore, it is disingenuous for Defendant APA to accuse Plaintiff of flouting the rules, when in fact it was APA itself whom had an Entry of Default entered against it, for not timely filing its responsive pleading in violation of the Rules. (SOF 7-9). Additionally, Plaintiff, never missed a published response deadline, and despite his medical disability and influenza, he never was willfully non-compliant with this Court's Orders. (SOF 16 and 23). Thus, despite Defendant APA's assertion to the contrary, Meadows was not in violation of the rules or any order of this honorable Court. Notably, APA never moved to default Plaintiff, nor did it ever file a Notice to Request to submit its Motion to Dismiss for decision. (SOF 16-25 and 30).

Secondly, Defendant APA engaged in a disingenuous personal attack intended to impugn Meadows' character, when it wrongly accused him of forum shopping; despite the facts in the public record which show that he is in fact a long-time Florida resident, having spent some 40-years of his life there, with substantial contacts, including but limited to homestead, voter registration, vehicle registration, driver's license. Moreover, APA's internal member records which show Meadows is a Miami based pilot with a residential address in Miami Beach. (SOF 30).

**B. Plaintiff's Motion to Amend Was Timely and Should Be Granted as a Matter of Course**

Here, Defendant APA has effectively attacked and treated Amended Complaint as the operative complaint in this action; and thereby, essentially mooted Plantiff's Original Complaint (Doc 1) and APA's associated Motion to Dismiss (Doc 18). Thus, Plaintoff believes APA has acquiesced to the Amended Complaint as being timely and properly filed in accordance with F.R.C.P. Rule 15 (a).  Moreover, this honorable Court in its most recent order dated February 27, 2018, was silent as to the request to vacate deadlines and to stay the proceedings, and APA nor this honorable Court did not assert in any way that Meadows was either acting in a willful bad-faith manner, or in default; thus there was not an undue delay. (SOF 16 and 23).  Therefore, Plaintiff respectfully requests this honorable Court grant his Motion to Amend, as a matter of course in accordance with F.R.C.P. Rule 15(a)(1).

**C.  Alternatively, Motion to Amend Should Be Liberally and Permissively Granted**

Arguendo, even if Plaintiff's Motion to Amend is somehow deemed untimely, he has acted in good-faith and without undue delay, despite of his extenuating circumstances related to his excessive Pro se caseload (*stemming solely from APA's representational failures*), record medical disability and severe influenza. (SOF ¶¶ 15,16 and 23). Additionally, he did not willfully violate any Court orders, or Clerk published response deadlines. This Court in its most recent order dated February 27, 2018, was silent as to the request to vacate deadlines and to stay the proceedings, and the Clerk did not publish a response deadline in the docket (*as it has done on every other responsive pleading*), and APA did not ever assert in any way that Meadows was late or in default; thus there was not an undue delay. (SOF 16 and 23). Moreover, Rule 15 is often identified as establishing a *"liberal standard"* such that courts should *"freely"* allow amendment as justice so requires.  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Therefore, Plaintiff respectfully requests this honorable Court grant leave to Amend his Complaint, permissively in accordance with F.R.C.P., Rule 15(a)(2). So that Plaintiff can have the same opportunity for justice, to fully and fairly adjudicate his case on the merits. Just as was already afforded to Defendant APA in setting aside its default, and allowing APA additional time (beyond the requirement in the Rules) to file their untimely responsive pleading.

**D.   Defendant APA's Response is an Unripe Motion Dismiss Disguised as an Opposition, and Attacks Substantive Facts and Claims in Amend Complaint APA**

Defendant APA's Response and Opposition (Doc 29) To Plaintiff's Motion to File An Amended Complaint (Doc 28), is in fact a hybrid motion. Indeed, here APA has effectively filed a pre-mature and unripe Motion to Dismiss under the guise of an Opposition of a Motion to Amend, attacking the facts and claims within Plaintiffs Amended Complaint itself.

In so doing, APA has treated Amended Complaint as the operative in this action; and thereby, mooting the Original Complaint (Doc 1) and APA's associated Motion to Dismiss (Doc 18). Thus, Meadows' believes APA has acquiesced to the Amended Complaint as being timely and properly filed in accordance with F.R.C.P. Rule 15. Therefore, he respectfully requests that his honorable Court approve Plaintiff's Motion to Amend, and ignore and/or strike any of APA's unripe substantive arguments as to the facts and claims in the Amended Complaint.

**E.   Defendant APA Makes Premature Motion to Dismiss Arguments and in so doing has Accepted the Amended Complaint as Operative and Mooted the Original**

Meadows believes APA's pre-mature motion to dismiss type arguments attacking the facts and claims in his Amended Complaint are unripe, and should be stricken in their entirety and refiled in a proper Motion to Dismiss. However, out of an abundance of caution he will rebut such arguments to the extent possible in this limited Reply. However, to the extent the Court is inclined to accept APA's substantive, arguments, then Meadows would request he be afforded

due process of full motion practice and proper Opposition and hearing. Regardless, Meadows asserts that every one of his claims are timely filed, and disputes APA's unsubstantiated contentions to the contrary.

### 1. APA has taken Wildly Inconsistent Positons as to Meadows' Membership Status, Regardless, his LMRDA, Breach of Contract, and Fiduciary Responsibility Claims Became Ripe and were ALL Timely filed as of October 18, 2017

By way of background, on April 22, 2014, APA's Board of Directors ("BOD") during its "Special" closed Session BOD meeting, outrageously issued a secret directive which declared that disabled pilots like Meadows, are NOT APA members; and did so purely for the improper purpose of locking him and 233 other disabled APA members out of the virtual and physical union hall meetings (Doc 28-1, Ex. 1).  Eventually, another similarly-situated disabled APA member sued APA, and the Honorable Judge Hurley ruled that APA's lock-out of its disabled members was an impermissible infringement of free speech and unlawful violation of the Labor Management Reporting and Disclosure Act, of 1959 ("LMRDA"), 45 U.S.C. § 401 *et. seq.*, *Emery v. Allied Pilots Association* (FLSD, Case No. 9:14-cv-80518, Jan. 4, 2017). That case involved APA's LMRDA violations related to its refusal to issue membership cards and locking-out all of its disabled pilot members from the virtual union hall (*electronic members only message forum*). Further, <u>Judge Hurley also issued an Injunction and ordering APA to treat disabled APA member *Emery* as an Active APA member in good standing and immediately reinstate  access to C&R.</u>

Regardless, just four months after APA secretly declared Meadows to be a non-member, it represented the inapposite in its pleadings to the U.S. District Court in, *Meadows v. APA and American Airlines"* (UDC, Case No. 2:14-cv-00115-DS). Wherein, APA asserted in pleadings and argued to the district court that is undisputed that Meadows is member of APA, and that the

supreme law of his union, the APA Constitution & Bylaws ("C&B"), is in fact a binding contract between APA and its members; (Doc 28-1, ¶ 132); and further that Meadows as an APA member in good standing must first exhaust his administrative internal union remedies (i.e.; individual charges under APA C&B Article VII.)[3], before litigating them in civil litigation.

Thus, its surprising that APA would now embarrass itself by trotting out the Order of the Utah District Court which was not even its final order, and in so do highlighting its material misrepresentations of fact, which are the subject of still pending motions for sanctions. Regardless, based on APA's representations, on November 3, 2014, the Utah Court Dismissed Meadows' LMRDA claims <u>without prejudice</u>, and ruled *"Therefore, the Court holds that Plaintiff must exhaust his union remedies before filing his LMRDA claim."* On April 27, 2015, the Utah court further clarified that, *"Plaintiff's LMRDA claims were dismissed by the court because he had not yet exhausted his union remedy.* (#35 p. 9). **As such, the claim was not timely and therefore dismissed. Plaintiff may file again once he has exhausted Union remedies."** (Exhibit 17). (*Id.* UDC, Case No. 2:14-cv-00115-DS, Doc 40).

In April 2015, Meadows in good-faith began to exhaust his administrative union remedies, and timely filed three separate Article VII charges; 1) *Meadows v. Wilson* (former APA Pres.), 2) *Meadows v. Torell* (APA Sec-Treasurer), and 3) *Meadows v. AAPSIC* (APA's seniority integration committee). Those charges included but were not limited to Meadows' LMRDA, Breach of Contract (APA C&B) relating to seniority and grievance prosecution failures, and Breach of Fiduciary Duty claims relating to seniority. Meadows expended a great deal of cost and time, and diligently prosecuted those charges for 2 ½ years; and the later cases

---

[3]     APA C&B Article I. Sec. 4.A. mandates that**, "This APA Constitution and Bylaws shall be the <u>supreme law of the APA.</u>"**; further Article VII.B.1. states; **"<u>Charges may be brought under this Article by any member in good standing</u> against any other member. (09/23/2009)"**

of both *Torell* and *APA's Seniority Committee,* were both pending a timely filed appeal to a neutral arbitrator in accordance with APA C&B Article VII. (Doc 28-1, ¶¶ 142 and 211).

However, on October 18, 2017, once Plaintiff informed this court in his Motion to Stay, that he was still exhausting his internal union remedies, and in particular those related to his seniority integration claims in Counts I and II (SOF 4); on that very same day APA's President suddenly issued Presidential C&B Interpretation which declared Meadows to no longer be an APA member in good standing, for the improper purpose of foreclosing all of his internal union remedies (i.e.; Article VII charges). (SOF 5). Thereby, making all of Plaintiff's LMRDA, Breach of Contract, and Breach of Fiduciary claims ripe for civil litigation as of 10/18/17, and in particular, all claims in Counts I, and Counts III through X in Plaintiff's Amended Complaint.

## 2.   APA Takes Conflicting Positions as to Meadows' Employment Status, citing to an Order that has No *Stare Decisis* and Contradicts Prior Positons and Evidence Which Plainly Shows Meadows is Indeed Still an American "Pilot Employee

APA cites to an interim appellate order of the U.S. District Court S.D.N.Y. (Doc 29-2), which was only the first level of appeal[4] taken from an Order in American's bankruptcy proceedings. Plaintiff contends the underlying order was plainly erroneous and contradicts prior admissions by American and also prior's orders of that bankruptcy court, and also that his termination grievances any purported terminator claims related thereto are subject to the exclusive jurisdiction of a RLA System Board Arbitration, 45 U.S.C. § 184.

First, on January 13, 2013, American Airlines in its bankruptcy court proceedings *(in which APA was a major creditor)*, admitted; "***Meadows is currently party pursuant to American's collective bargaining agreement ("CBA") ...the APA filed a grievance (DFW***

---

[4]    All bankruptcy court orders are subject to two levels of appeal. First to the U.S District Court or B.A.P., then second to the U.S. Court of Appeals. If the first order is timely appealed as was the case here, then it has no *stare decisis* value.

***Domicile Grievance No. 12-012) (the "APA Grievance") on behalf of Meadows and certain***

***other DFW based pilots..."*** Additionally, American asserted that *"APA Grievance",* will

*"determine his employment status"* and that; *"The APA Grievance is pending. Unless resolved in*

*that process, it will be decided by a Board of Adjustment under the CBA as required by the*

*Railway Labor Act, 49 U.S.C. § 184."* (SOF 48, Ex. 9, ¶¶ 3 and 11).  Moreover, in December

2015, APA staff attorney, Mark Meyers admitted under oath, that collective DFW Domicile

Grievance 12-012 is open, remains pending, and applies to all similarly-situated disabled pilots'

system-wide. (SOF 48).

Regardless, the interim appellate order of the U.S. District Court S.D.N.Y. (*Id.*), has been

timely appealed to the second level and is now docketed in the 2nd Circuit Court of Appeals,

rendering the first appellate order moot, as it has no *Stare Decisis* value. (Exhibit 18). Further, it

is well settled that, on second level of appeal, the circuit court of appeals independently reviews

the bankruptcy court's order without deference to the district court's determination. *Grella v.*

*Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994); accord In re Foust, 52 F.3d 766, 768

(8th Cir. 1995) ("Although the district court's conclusions about the bankruptcy court's decisions

may carry some persuasive weight, our appellate review of the bankruptcy court's decision is

independent of the district court's opinion."); *In re Graves*, 33 F.3d 242, 246 (3d Cir. 1994)

(circuit court's review in a bankruptcy appeal "duplicates that of the district court and [it] view

[s] the bankruptcy court decision unfettered by the district court's determination*"*); *In re Eagle-*

*Picher Indus.*, Inc., 999 F.2d 969, 972 (6th Cir. 1993) (same).

Secondly, the very same bankruptcy court whose order was subject to that interim first

level of appeal, also entered a prior Order dates September 5, 2014;  which Ordered that

*"Meadows shall be permitted to arbitrate Grievance 12-011 before the System Board to the*

*extent **permitted by applicable law;** ",* in order to determine I employment status. Moreover, individual grievance 12-011 protested Meadows improper discharge and removal from the seniority list in violation of the CBA, SOX Act and ADA, and remains pending until the 10th Circuit Appeal review of his Utah action is fully decided. Even then there is a pos-judgment Rule 60 motion pending in the lower district court of Utah, which seeks to reverse APA's ill-gotten ruling obtained based on former and fired general counsel's is material misrepresentations. Furthermore, arbitration of Grievance 12-011 was the very subject of recent settlement discussions with APA's general counsel from March through November 2017. (SOF 4 and 46).

Thus, as APA is keenly aware Meadows has two pending grievances, both individual grievance 12-011 and collective DFW Domicile Grievance 12-012, both of which are subject to the exclusive jurisdiction of a RLA System Board of Adjustment, RLA, 45 U.S.C. § 184, and either will finally and fully determine his employment status and reinstatement to the pilots' seniority list. (SOF 46-49 and 54).

Thirdly, on November 2011, APA's in-house Legal Director, Bennett Boggess, Esq., plainly asserted in certified correspondence that Meadows WAS NOT terminated, stating in relevant part; *"**let me clarify the Company did not terminate you;** "* (SOF 42). Then, outrageously, some five months later, that very same APA legal director, without notifying Meadows, filed collective DFW Domicile Grievance 12-012, on behalf of all other disabled pilots similarly-situated to Meadows, which explicitly protested American's failure "to *provide pilots notice of termination prior to terminating employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years.* " (SOF 47). The very same grievance that American asserted to the U.S. bankruptcy court, was filed on behalf of Meadows

and certain other DFW pilots, and that Meadows was also a party to the pilots' CBA (*i.e.;*

*member of the collective bargaining unit*). (SOF 48).

### 3. APA has taken Wildly Conflicting Positons as to Whether Meadows is a Member of the American Pilots' Collective Bargaining Unit Under the Railway Labor Act

Despite National Mediation Board (NMB)[5] guidance to the contrary, APA's former and

fired general counsel and in-house attorneys[6], along with seniority committee chairman have

routinely asserted that Meadows and similarly-situated disabled pilots are no longer members of

the pilots' collective bargaining unit (Exhibit 19); for the improper and unlawful purpose of

ignoring/denying the statutory duty of fair representation and contractual fiduciary responsibility

otherwise owed these pilots. And in so doing APA has willfully and deliberately denied

Meadows and others of the same contractual rights and protections offered to all other members

under its supreme law, the APA C&B; and more specifically, ***"To protect the individual and***

***collective rights of the members of the APA…", and to maintain uniform principles of***

***seniority and the perpetuation thereof."*** (Doc 28-1, ¶¶ 167 and 259, *APA C&B Art. II.B and D.*).

Thus, APA cannot have its cake and eat too. Based APA Counsel's previous assertions

Meadows is NOT a member of the American pilots' bargaining unit (*consisting of the class and*

---

[5]      The National Mediation Board (NMB), established by the 1934 amendments to the Railway Labor Act of 1926, is an independent U.S. Federal-government agency that facilitates labor-management relations within the nation's railroad and airline industries. Pursuant to the Railway Labor Act, NMB programs provide dispute-resolution processes to effectively meet its statutory objectives:  avoiding interruption to commerce or to the operation of any carrier; forbidding any limitation upon freedom of association among employees; providing for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; and providing for the prompt and orderly settlement of all disputes growing out of grievances related to the implementation and management of collective bargaining agreements.

[6]      It is notable that on July 1, 2016, APA's new President terminated APA's former long-time (20+ years) RLA general counsel, James & Hoffman of 20 years, then 6 months later terminated its former long-time (26 years) in-house Legal Director, Bennett Boggess, Esq. in part to their frivolous LMRDA litigation relating to the unlawful lock-out of disabled APA's disable members, whose excessive claims which resulted in the non-renewal of APA professional Directors Liability (E&O) Insurance policy.

## **CONCLUSION**

In sum, record evidence shows that APA has taken wildly inconsistent positions as to Meadows standing as a members of his pilots' collective bargaining unit, as to his APA membership status, and employment status with American, for the improper purpose of depriving him of his and statutory and contractual rights. At best Defendant APA's has shown it has taken wildly inconsistent positions as to Meadows member, bargaining unit and employment status; and thusly, Plaintiff's Motion to Amend should be granted and his Amended Complaint and facts therein should be accepted as true on its face. At worse there is a material dispute of facts on those issues, which should be fully adjudicated on the merits. Regardless, as a direct result of Defendant APA's arbitrary, discriminatory bad faith conduct, representational failures, ongoing breaches of duty and contractual obligations. Plaintiff has been prevented from resuming his career as an American Airlines Pilot.

Therefore, Meadows respectfully, prays this Court ignore, APA's unripe motion to dismiss arguments grant leave his Motion For Leave to file his Amended Complaint, otherwise, he will be left *"remediless"* without a forum in which to resolve his claims, which is contrary to the strong congressional intent for employees (like Meadows) protected under the Railway Labor Act. Cf. *Vaca v. Sipes*, 386 U.S. 171, 185-86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967).

In the event, the Court is somehow inclined to deny Plaintiff's Motion to File his Amended Complaint and grant APA's Motion to Dismiss, then Meadows would ask that all Counts other than Count II, be dismissed without prejudice, as Counts I, and Counts III – X did not become ripe until 10/18/17, when APA suddenly foreclosed Meadows from exhausting of his administrative internal union remedies.

Dated this 10th Day of April, 2018;                    Respectfully submitted,

Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
Cell: 516-982-7718
Fax: 435-604-7850
lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

**I, Lawrence M. Meadows, Pro Se Plaintiff hereby certify,** that a true and correct copy of the foregoing was served by U.S. Mail on April 10, 2018 on all counsel or parties of record on the Service List below.

_____
Signature of Filer

## SERVICE LIST

Capri Trigo, Esq.
**Gordon Rees Scully Mansukhani**
100 SE Second Street, Suite 3900
Miami, FL 33131
Telephone: (305) 428-5323
Facsimile: (877) 634-7245
Ctrigo@gordonrees.com

**Counsel for Defendant –
Allied Pilots Association**

# EXHIBIT 1

# <u>12/31/2016 A PLAN BENEFIT STATEMENT</u><br><u>American Airlines, Inc. Pilot Retirement</u><br><u>Benefit Program</u>

Prepared for:
**LAWRENCE M MEADOWS - #00332713**

| | |
|---|---|
| Calculation Run Date: | June 14, 2017 |
| A Plan Normal (Age 60) Retirement Date: | April 1, 2023 |
| A Plan Age 65 Mandatory Retirement Date: | April 1, 2028 |
| Date of Birth: | March 8, 1963 |
| Marital Status: | Married |
| Plan Entry Date: | November 1, 1992 |

### <u>Defined Benefit Plan Pension Information</u>

You are 100% vested in the American Airlines, Inc. Pilot Retirement Benefit Program ("Fixed Income Plan" or "A Plan"). Once you are vested, you have an irrevocable right to a benefit from the "A Plan".

Credited Service in the Defined Benefit Plan is used for two purposes: (1) to determine eligibility for Early Retirement benefits and (2) to determine the amount of your retirement benefits. For purposes of this statement, the credited service used to determine eligibility for Early Retirement benefits will be referred to as "Early Retirement Credited Service" and the credited service used to determine the amount of your retirement benefits will be referred to as "A Plan Benefit Credited Service".

> **Your total Early Retirement Credited Service in the Plan is: 25.167**

Early Retirement Credited Service begins accruing on your date of hire as an American Airlines pilot. (Generally service with AirCal, Reno Air, TWA, and TWA LLC counts as Early Retirement Credited Service.) A pilot with 10 years of Early Retirement Credited Service can begin receiving a pension benefit as early as age 50. A pilot with less than 10 years of Early Retirement Credited Service cannot begin receiving a pension benefit until age 60. In any event, a pilot must terminate from the Company to begin receiving pension payments.

**Your accrued benefit (i.e., your earned annuity benefit) in the Plan was based on the following information:**

| Final | | Average | Salary: | | $68,026.61 |
|---|---|---|---|---|---|
| A | Plan | Benefit | Credited | Service: | 20.000 |

A Plan Benefit Credited Service begins accruing on your Plan Entry Date.

Note: Your A Plan Benefit Credited Service accrual ceased as of October 31, 2012. Your Early Retirement Credited Service continues to accrue. Pensionable service performed in October 2012 and related pensionable pay earned for that service has been taken into account in calculating the final benefits accrued as of October 31, 2012.

## Your Accrued Annual Benefit is $34,013.31

Per the A Plan provisions, your accrued benefit is calculated under two different formulas and paid using the formula that produces the highest benefit. The Minimum Benefit Formula is calculated using your A Plan Benefit Credited Service, less certain periods of unpaid leave, multiplied by $1,500. The Final Average Salary Formula is based on your Final Average Salary multiplied by 2.5% multiplied by your A Plan Benefit Credited Service. Your Final Average Salary is the annualized average of the 60 consecutive highest paid months during the last 120 months of A Plan Benefit Credited Service.

Your Final Average Salary was determined at the time you commenced your disability benefit. For any questions regarding the pay used in this calculation, contact the Pension Plan Administration Office at 817-967-1079

Your accrued benefit was determined using the Final Average Salary formula, because this formula gave you the larger benefit.

## Qualified Domestic Relations Order

According to our records, you do not have an A Plan Qualified Domestic Relations Order (QDRO) on file.

## Periods of Leave

Your unpaid periods of leave were taken into account when determining your accrued benefit. For some leaves, pay and service is imputed. For information on how the various leaves impact your pension, refer to the Pilot Summary Plan Description.

| Type of Leave | Start Date | End Date |
|---|---|---|
| SICK OR IOD | 4/19/2004 | 5/16/2004 |
| PILOT MED DISAB | 5/17/2004 | 12/26/2007 |
| PILOT LTD | 12/27/2007 | - |

The periods of leave are based on your actual unpaid days as reflected in your employment records

## Basic Accumulation

This Basic Accumulation is used in several of the retirement and death calculations. This **is not** the lump sum value of your pension benefit. Due to the Plan freeze, there will be no further Pensionable Pay credits. The 4% Total Interest Credit will continue to apply to the Total Basic Accumulation.

|  | Total as of 12/31/2014 | Total as of 12/31/2015 | Total as of 12/31/2016 |
|---|---|---|---|
| 4% of Total Pensionable Pay | $45,954.22 | $45,954.22 | $45,954.22 |
| Total 4% Interest Credit | $36,383.90 | $39,677.42 | $43,102.69 |
| Total Basic Accumulation | $82,338.12 | $85,631.64 | $89,056.91 |

## Military Leave of Absence (USERRA)

The Uniformed Services Employment and Reemployment Rights Acts of 1994 (USERRA) requires employers to grant employees credit for time during military absences provided they return to work at the end of the military leave. If you have been on a Military Leave of Absence and returned to work from your leave, you have received full pension credit for the period of the leave. If you are currently still on a Military Leave of Absence, your statement will be updated within two months after your return to work. The Calculation Run Date at the top of the statement reflects the last time your pension data was updated.

**Disclaimer:** We have made every effort to provide accurate information regarding your pension benefits under the Retirement Benefit Program and the governing RBP documents

(the RBP). However, your eligibility for pension benefits and the actual amount of your benefits are governed ultimately by the RBP. If there is any discrepancy between the information in this statement and your actual benefit entitlement under the RBP, Federal or Company regulations or applicable collective bargaining agreements, the RBP, regulations or agreements will govern. Neither this statement, the RBP nor the collective bargaining agreements constitutes a contract of continued employment.

Diane Johnson

Pension Plan Administration

817-967-1079

# EXHIBIT 2

# JOINT COLLECTIVE BARGAINING AGREEMENT (JCBA)

between

## AMERICAN AIRLINES, INC.

and

## THE AIRLINE PILOTS

in the service of

## AMERICAN AIRLINES, INC.
and
## US AIRWAYS, INC.

as represented by the

## ALLIED PILOTS ASSOCIATION

## EFFECTIVE: JANUARY 30, 2015

LETTER KK (1)

# **AmericanAirlines**®

February 1, 2004

Captain John E. Darrah
President
Allied Pilots Association
14600 Trinity Boulevard, Ste 500
Fort Worth, TX  76155

Re:     Pilot Long Term Disability Plan

Dear Captain Darrah:

This letter confirms the agreement to provide a new long-term disability plan for pilots ("Pilot LTD Plan") for disabilities incurred on or after February 1, 2004.  Such Pilot LTD Plan shall provide the disability benefits required under Supplement F and be subject to all provisions of Supplement F and the Pilot Retirement Benefit Program (the "Program") relating to the disability retirement benefit, except for the requirement that the benefit be paid from the Program and the one year waiting period for participation.  Furthermore, a disabled pilot who resumes duties as an active pilot, but returns to disability status due to the same cause within 31 days of the commencement of flight crewmember training shall resume his disability benefit under the Pilot LTD Plan or the Program, as applicable, following the last day paid as an active pilot.  The monthly benefit will be the same amount as the pilot received prior to returning to work and the pilot will not be required to satisfy a new elimination period.  Monthly benefit payments will be made on the same pay schedule as a line pilot's regular paycheck.  All other provisions of Supplement F, including the continued accrual of Credited Service for periods that a pilot receives a disability benefit, shall continue in full force and effect.

The Program shall be amended to remove the Disability Retirement provisions for all disabilities incurred on or after February 1, 2004 and such disabilities shall be paid from the Pilot LTD Plan. Disabilities incurred prior to February 1, 2004 shall continue to be paid from the Program in accordance with provisions in effect on January 31, 2004.

With respect to the long term funding of the Pilot LTD Plan, American Airlines, Inc, ("Company") shall pay all benefits as they become payable and may establish a trust from which to fund and pay benefits.

The Company shall provide the Allied Pilots Association ("Association") with an annual accounting of all payment from the Pilot LTD Plan and, upon request by the Association, information necessary to independently audit the funded status or operation of the Pilot LTD Plan.  In addition, the Company shall provide the Association with a copy of any annual report required to be filed with any governmental agency or required by any other regulatory organization within ten (10) days of filing such report.

All documentation regarding the establishment of this Pilot LTD Plan shall be established by mutual agreement between the Association and the Company.  Any subsequent modification of the Pilot LTD Plan shall be subject to the provisions of Supplement F(4).  Any disputes under this letter of agreement shall be handled in accordance with the provisions of Supplement F(4).

Pilots disabled after January 31, 2004 shall receive medical and dental coverage under the pilot active medical plan.  The Company shall make every reasonable effort to ensure that such pilots are able to participate completely in all benefits, rights and features of the active medical and dental plan (e.g., the ability to make pretax contributions for medical coverage and flexible spending accounts, select among all benefit options provided to active participants, continue active dental coverage, among others).  Any costs or savings resulting from disabled pilots participating in the active medical plan shall apply to the $10,000,000 annual savings in active medical and dental costs.

Sincerely,

/signed/
Mark L. Burdette
Director of Employee Relations, Flight

Agreed and Accepted:

/signed/_____
Captain John E. Darrah
President, Allied Pilots Association

# AMERICAN AIRLINES, INC. PILOT LONG TERM DISABILITY PLAN

## I.    PURPOSE

Income protection during periods of Disability is a fundamentally important concern for each of us.

Long term Disability benefits for eligible pilots have previously been provided under the Disability provisions of the American Airlines, Inc. Pilot Retirement Benefit Program ("the Program").  This Plan replaces the Disability benefits provided under the Program for Disabilities incurred after the Plan's Effective Date and is provided, administered and funded by the Company subject to the Agreements between the Association and the Company.

Pilot Employees must follow the procedures and meet the requirements of the Plan, as contained in this document, to obtain Disability benefits. Questions about the Plan should be directed to your local crew base Flight Administrator.

Throughout this document any reference to gender-specific terms (such as, "he" or "him") shall apply to both genders.

This document constitutes the complete and official Plan document and Summary Plan Description.  It is intended to give you an understandable description of the benefits provided by this Plan, how to apply for benefits and your rights under the Plan.

## II.    EFFECTIVE DATE OF PLAN

The provisions of this Plan shall be effective for Disabilities incurred on or after February 1, 2004.  Disabilities incurred prior to February 1, 2004 are not covered under the terms of this Plan but are covered under the Disability provisions of the Program.  This means that if you were Disabled prior to February 1, 2004, you will be covered under the Disability provisions of the Program even though your Disability benefit payments may not begin until after February 1, 2004.

## III.    DEFINITIONS

For purposes of this Plan, the following definitions shall apply, unless the context clearly indicates otherwise.  These defined terms are capitalized throughout this document to indicate their special meaning within the context of the Plan:

A.  **"Active Pilot Employee"** means a Pilot Employee who performs or is eligible to perform duties as a pilot for the Company.  An Active Pilot Employee will include a Pilot Employee who is receiving Compensation from an Employer or the Association for periods during an Authorized Leave of Absence.

B.  **"Administrator"** means the Company.

C.  **"Agreement(s)"** mean(s) a "bona fide" collective bargaining agreement or agreements (within the meaning of section 7701(a)(46) of the Code) between the Association and the Company.

In determining Average Monthly Compensation for the 12 consecutive month period specified above, the period and applicable wages due to: 1) an emergency leave of absence generated by the strike of another organized group which causes the Employer to suspend operations, 2) an Authorized Leave of Absence at the Employer's request to avoid the Furlough of other Pilot Employees and 3) an Authorized Leave of Absence on account of Disability regardless of whether a Disability benefit is paid or unpaid either from this Plan or the Program, which would normally fall within such 12-month period shall be excluded.  Average Monthly Compensation shall be computed on such reduced 12-month period.

For example, assume a Pilot Employee had a 2-month approved unpaid sick leave of absence that fell within this 12-month period and that he earned $90,000 for the 10 months that he worked.  His Average Monthly Compensation would be $9,000 ($90,000/10 months).

I. **"Beneficiaries"** means any person designated by a Pilot Employee who is or may become eligible to receive outstanding payments under the Plan following the death of such Pilot Employee.

J. **"Board of Directors"** or **"Board"** means the Board of Directors of the Company, or any committee appointed by the Board of Directors and serving at the pleasure of such Board of Directors which is given authority to exercise some or all of the powers of such Board of Directors with respect to the Plan.

K. **"Code"** means the Internal Revenue Code of 1986, as amended, and any regulations or rulings thereunder.

L. **"Company"** means American Airlines, Inc., a Delaware corporation.

M. **"Compensation"** means, for any Pilot Employee for any period, the total gross remuneration, including base pay, flying pay, minimum pay and pay for periods of vacation and sick leaves, variable compensation as provided under the Agreement between the Company and the Association (effective February 26, 1991), and compensation paid by the Association to a Pilot Employee, but excluding expense allowances and reimbursement for expenses, actually paid to such Pilot Employee for such period by the Employer or, for the period of an Association Leave, such expenses paid or reimbursed by the Association and any Disability benefit payments under this Plan.  A Pilot Employee's Compensation shall not include, unless otherwise expressly stated in the Plan, any amount paid to the Pilot Employee with respect to Service performed by the Pilot Employee other than as a Pilot Employee.

N. **"Disability"** or **"Disabled"** means an illness or injury, verified through a qualified medical authority in accordance with Section V of the Plan, which prevents a Pilot Employee from continuing to act as an Active Pilot Employee in the Service of the Employer, other than:

(1) Fear of flying syndrome, unless there is a preeminent psychiatric diagnosis; or

(2) Chemical dependency showing no progress toward recovery after two (2) years; or

(3) Any illness or injury which was intentionally self-inflicted or an attempted suicide; or

(4) Any illness or injury which was contracted, suffered or incurred while the Pilot Employee was engaged in a criminal activity; or

(5) Any illness or injury which was the result of war or any act of war, whether war is declared or not; or

(6) Any illness or injury which arose during the period of an unpaid leave of absence (other than an Association Leave) or Furlough while such Pilot Employee was absent from employment with the Employer; provided, however, that if a Pilot Employee had a Disability prior to beginning a Furlough and the Pilot Employee would have been recalled absent an illness or injury that would be considered a Disability, the Pilot Employee is deemed to have a Disability (if the illness or injury would otherwise qualify as such) from the date that the Pilot Employee would have been recalled.

O.   **"Elimination Period"** means the period between the Pilot Employee's date of Disability and the date Disability benefit payments commence under the Plan.  The benefits shall commence ninety (90) days after the onset of the Disability or related Disability or on the expiration of paid sick leave and/or vacation, whichever occurs later; provided that there has been and continues to be qualified medical care consistent with the nature of the illness or injury.

P.   **"Employee"** means any person on the payroll of the Company or a Related Employer whose wages from the Employer are subject to withholding for purposes of Federal income taxes.  In addition, the term "Employee" shall mean any leased employee (within the meaning of section 414(n)(2) of the Code) that section 414(n)(2) of the Code requires the Employer to treat as an employee.

Q.   **"Employer"** means the Company and any Related Employer that duly joins in the Plan with the approval of the Company and the Association.

R.   **"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended, and any regulations or rulings thereunder.

S.   **"Furlough"** means the removal of a Pilot Employee from active duty as a pilot with the Employer due to a reduction in work force, or the period during which such Pilot Employee is not in the active employment as a pilot of the Employer due to such reduction in work force.

T.   **"Hour of Service"** shall be determined as in the same manner as determined under the Program.

U.   **"Inactive Pilot"** means a pilot that is not an Active Pilot Employee.

V.   **"Normal Retirement Age"** means "Normal Retirement Age" as defined in the Program.

W.   **"Normal Retirement Date"** means, in the case of a Pilot Employee who attains Normal Retirement Age on the first day of a month, the first day of such month, and in the case

of any other Pilot Employee, the first day of the first month following the day the Pilot Employee attains Normal Retirement Age.

X. **"Pension Benefit Administration Committee"** or **"PBAC"** means the committee whose members are appointed to and which have the responsibilities specified in Section VII of the Plan.

Y. **"Pilot Employee"** means an Employee on the Pilot System Seniority List of the Company for such period or periods that he is on such list.  Pilot Employee will include an individual permitted to participate in the Plan as provided under the Agreements.

Z. **"Plan"** means the American Airlines, Inc. Pilot Long Term Disability Plan, as set forth herein and modified from time to time.

AA. **"Program"** means the American Airlines, Inc. Pilot Retirement Benefit Program.

BB. **"Related Employer"** means any business entity that is, along with the Company:

    (1) A member of a controlled group of corporations (as defined in section 414(b) of the Code;

    (2) A member of a group of trades or businesses (whether or not incorporated) that are under common control (within the meaning of section 414(c) of the Code); or

    (3) A member of an affiliated service group (within the meaning of section 414(m) of the Code).

CC. **"Record"** means all documents, records, and other information relevant to a Pilot Employee's claim for Plan benefits and relevant to a Pilot Employee's appeal from a denial of benefits, as such materials exist at any level of the claims process.

DD. **"Retirement"** means the termination of Service for reasons other than death or Disability after a Pilot Employee has satisfied the requirements for a "Retirement Benefit" as defined in the Program. Retirement shall be considered as commencing on the first day immediately following a Pilot Employee's last day of Service.

EE. **"Service"** means employment (whether or not as an Employee) with the Company or a Related Employer.  Service will begin on the date an Employee first performs one (1) Hour of Service for the Company or a Related Employer.

## IV.   ELIGIBILITY AND TERMINATION OF PLAN PARTICIPATION

A. Eligibility for Plan Coverage

Active Pilot Employees on the U.S. payroll of an Employer shall become eligible for coverage as of February 1, 2004.  Pilot Employees hired on or after February 1, 2004 become eligible for coverage on their first day of Service.  Pilot Employees who are not Active Pilot Employees on February 1, 2004 (who are, for example, (1) receiving Disability benefits under the Program, (2) on an Authorized Leave of Absence, (3) on

# EXHIBIT 3

**2017 W-2 AND EARNINGS SUMMARY**

## Employee Reference Copy

**W-2** Wage and Tax Statement **2017**

Copy C for employee's records.    OMB No. 1545-0008

| Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 000036128 V05 | | RITO | S    47186 |

**Employer's name, address, and ZIP code**

AMERICAN AIRLINES INC
4000 E SKY HARBOR BLVD RWE-PAY
PHOENIX, AZ  85034

f  **Employee's name, address, and ZIP code**

LAWRENCE M MEADOWS
1900 SUNSET HARBOR DR #2112
MIAMI BEACH, FL  33139-1493

| Employer's FED ID number | a  Employee's SSA number |
|---|---|
| 13-1502798 | 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 |

| Wages, tips, other comp. | 2  Federal income tax withheld |
|---|---|
| 70418.80 | |

| 3  Social security wages | 4  Social security tax withheld |
|---|---|
| | |

| 5  Medicare wages and tips | 6  Medicare tax withheld |
|---|---|
| | |

| Social security tips | 8  Allocated tips |
|---|---|
| | |

| | 10  Dependent care benefits |
|---|---|
| | |

| 11 Nonqualified plans | 12a See instructions for box 12 |
|---|---|
| | DD    17765.16 |

| 14  Other | 12b |
|---|---|
| | 12c |
| | 12d |
| | 13 Stat emp. Ret. plan 3rd party sick pay |

| 15 State Employer's state ID no. | 16 State wages, tips, etc. |
|---|---|
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

This summary section is included with your W-2 to help describe this portion in more detail. The reverse side includes general information that you may also find helpful. The following reflects your final pay stub, plus any adjustments made by your employer.



| GROSS PAY | 75,000.00 |
|---|---|

| SOCIAL SECURITY TAX WITHHELD BOX 04 OF W-2 | |
|---|---|

| FED. INCOME TAX WITHHELD BOX 02 OF W-2 |  |
|---|---|

| MEDICARE TAX WITHHELD BOX 06 OF W-2 | |

| STATE INCOME TAX BOX 17 OF W-2 | |
|---|---|
| LOCAL INCOME TAX BOX 19 OF W-2 | |

| SUI/SDI BOX 14 OF W-2 | |

**To change your employee W-4 profile information file a new W-4 with your payroll department**

LAWRENCE M MEADOWS
1900 SUNSET HARBOR DR #2112
MIAMI BEACH, FL  33139-1493

Social Security Number:  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
Taxable Marital Status:
  SINGLE
Exemptions/Allowances:
  Federal: 0
  State:   0
  Local:   0

© 2016  ADP, LLC

PAGE 01 OF 01

---

**Federal Filing Copy**

| Wages, tips, other comp. | 2  Federal income tax withheld |
|---|---|
| 70418.80 | |

| 3  Social security wages | 4  Social security tax withheld |
|---|---|
| 5  Medicare wages and tips | 6  Medicare tax withheld |

| Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 000036128 V05 | | RITO | 47186 |

c  **Employer's name, address, and ZIP code**

AMERICAN AIRLINES INC
4000 E SKY HARBOR BLVD RWE-PAY
PHOENIX, AZ  85034

| Employer's FED ID number | a  Employee's SSA number |
|---|---|
| 13-1502798 | |

| Social security tips | 8  Allocated tips |
|---|---|
| | 10  Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12 |
| | DD    17765.16 |
| 14  Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp. Ret. plan 3rd party sick pay |

e/f  **Employee's name, address and ZIP code**

LAWRENCE M MEADOWS
1900 SUNSET HARBOR DR #2112
MIAMI BEACH, FL  33139-1493

| 15 State Employer's state ID no. | 16 State wages, tips, etc. |
|---|---|
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

**W-2** Wage and Tax Statement **2017**

OMB No. 1545-0008

Copy B to be filed with employee's Federal Income Tax Return.

---

**State Filing Copy**

| 1  Wages, tips, other comp. | 2  Federal income tax withheld |
|---|---|
| 70418.80 | |

| 3  Social security wages | 4  Social security tax withheld |
|---|---|
| 5  Medicare wages and tips | 6  Medicare tax withheld |

| d  Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 000036128 V05 | | RITO | 47186 |

c  **Employer's name, address and ZIP code**

AMERICAN AIRLINES INC
4000 E SKY HARBOR BLVD RWE-PAY
PHOENIX, AZ  85034

| b  Employer's FED ID number | a  Employee's SSA number |
|---|---|
| 13-1502798 | |

| 7  Social security tips | 8  Allocated tips |
|---|---|
| 9 | 10  Dependent care benefits |
| 11 Nonqualified plans | 12a |
| | DD    17765.16 |
| 14  Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp. Ret. plan 3rd party sick pay |

e/f  **Employee's name, address and ZIP code**

LAWRENCE M MEADOWS
1900 SUNSET HARBOR DR #2112
MIAMI BEACH, FL  33139-1493

| 15 State Employer's state ID no. | 16 State wages, tips, etc. |
|---|---|
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

**W-2** Wage and Tax Statement **2017**

OMB No. 1545-0008

Copy 2 to be filed with employee's State Income Tax Return.

---

**City or Local Filing Copy**

| 1  Wages, tips, other comp. | 2  Federal income tax withheld |
|---|---|
| 70418.80 | |

| 3  Social security wages | 4  Social security tax withheld |
|---|---|
| 5  Medicare wages and tips | 6  Medicare tax withheld |

| d  Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 000036128 V05 | | RITO | 47186 |

c  **Employer's name, address, and ZIP code**

AMERICAN AIRLINES INC
4000 E SKY HARBOR BLVD RWE-PAY
PHOENIX, AZ  85034

| b  Employer's FED ID number | a  Employee's SSA number |
|---|---|
| 13-1502798 | |

| 7  Social security tips | 8  Allocated tips |
|---|---|
| 9 | 10  Dependent care benefits |
| 11 Nonqualified plans | 12a |
| | DD    17765.16 |
| 14  Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp. Ret. plan 3rd party sick pay |

e/f  **Employee's name, address and ZIP code**

LAWRENCE M MEADOWS
1900 SUNSET HARBOR DR #2112
MIAMI BEACH, FL  33139-1493

| 15 State Employer's state ID no. | 16 State wages, tips, etc. |
|---|---|
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

**W-2** Wage and Tax Statement **2017**

OMB No. 1545-0008

Copy 2 to be filed with employee's City or Local Income Tax Return.

**W-2 (Copy 1 of 4)**

Employer identification number 13-1502798

AMERICAN AIRLINES INC
4000 E SKY HARBOR BLVD
PHOENIX AZ 85034

12a DD 17926.20

1 Wages, tips, other compensation 69387.52

LAWRENCE M MEADOWS
1900 SUNSET HARBOR DR #2112
MIAMI BEACH, FL 33139-1493

Copy B To Be Filed With Employee's FEDERAL Tax Return

---

**W-2 (Copy 2)**

Employer identification number 13-1502798

AMERICAN AIRLINES INC
4000 E SKY HARBOR BLVD
PHOENIX AZ 85034

12a DD 17926.20

1 Wages, tips, other compensation 69387.52

LAWRENCE M MEADOWS
1900 SUNSET HARBOR DR #2112
MIAMI BEACH, FL 33139-1493

Copy 2 To Be Filed With Employee's STATE, CITY or LOCAL Income Tax Return

---

**W-2 (Copy 3)**

Employer identification number 13-1502798

AMERICAN AIRLINES INC
4000 E SKY HARBOR BLVD
PHOENIX AZ 85034

12a DD 17926.20

1 Wages, tips, other compensation 69387.52

LAWRENCE M MEADOWS
1900 SUNSET HARBOR DR #2112
MIAMI BEACH, FL 33139-1493

Copy 2 To Be Filed With Employee's STATE, CITY or LOCAL Income Tax Return

---

**W-2 (Copy C)**

Employer identification number 13-1502798

AMERICAN AIRLINES INC
4000 E SKY HARBOR BLVD
PHOENIX AZ 85034

12a DD 17926.20

1 Wages, tips, other compensation 69387.52

LAWRENCE M MEADOWS
1900 SUNSET HARBOR DR #2112
MIAMI BEACH, FL 33139-1493

Copy C For EMPLOYEE'S RECORDS. (See Notice to Employee on back.)

Employee's social security number 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

Form W-2 Wage and Tax Statement 2016 - Reissued Statement   Department of the Treasury-Internal Revenue Service   OMB # 1545-0008

| a Employer identification number (EIN) 13-1502798 | | 12a See instructions for box 12 $ | 1 Wages, tips, other compensation 69796.89 | 2 Federal income tax withheld |
| b Employer's name, address, and ZIP code AMERICAN AIRLINES INC | 12b $ | 3 Social security wages | 4 Social security tax withheld |
| | 12c $ | 5 Medicare wages and tips | 6 Medicare tax withheld |
| PO BOX 619616 DFW AIRPORT, TX 75261 | 12d $ | 7 Social security tips | 8 Allocated tips |
| e Employee's first name and initial     Last name     Suff | 12e $ | 9 | 10 Dependent care benefits |
| LAWRENCE M MEADOWS | | 11 Nonqualified plans | 13 |
| 1900 SUNSET HARBOR DR #2112 MIAMI BEACH, FL 33139-1493 | Copy B To Be Filed With Employee's FEDERAL Tax Return | 14 Other |
| Import Code: P498A2EU | a Employee's social security number | |
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement 2015 - Reissued Statement     Department of the Treasury-Internal Revenue Service     OMB No. 1545-0008     Copy B To Be Filed With Employee's FEDERAL Tax Return

| a Employer identification number (EIN) 13-1502798 | | 12a $ | 1 Wages, tips, other compensation 69796.89 | 2 Federal income tax withheld |
| b Employer's name, address, and ZIP code AMERICAN AIRLINES INC | 12b $ | 3 Social security wages | 4 Social security tax withheld |
| | 12c $ | 5 Medicare wages and tips | 6 Medicare tax withheld |
| PO BOX 619616 DFW AIRPORT, TX 75261 | 12d $ | 7 Social security tips | 8 Allocated tips |
| e Employee's first name and initial     Last name     Suff | 12e $ | 9 | 10 Dependent care benefits |
| LAWRENCE M MEADOWS | | 11 Nonqualified plans | 13 |
| 1900 SUNSET HARBOR DR #2112 MIAMI BEACH, FL 33139-1493 | Copy 2 To Be Filed With Employee's STATE, CITY or LOCAL Income Tax Return | 14 Other |
| Import Code: P498A2EU | a Employee's social security number | |
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement 2015 - Reissued Statement     Department of the Treasury-Internal Revenue Service     OMB No. 1545-0008     Copy 2 To Be Filed With Employee's State, City or Local Tax Department

| a Employer identification number (EIN) 13-1502798 | | 12a $ | 1 Wages, tips, other compensation 69796.89 | 2 Federal income tax withheld |
| b Employer's name, address, and ZIP code AMERICAN AIRLINES INC | 12b $ | 3 Social security wages | 4 Social security tax withheld |
| | 12c $ | 5 Medicare wages and tips | 6 Medicare tax withheld |
| PO BOX 619616 DFW AIRPORT, TX 75261 | 12d $ | 7 Social security tips | 8 Allocated tips |
| e Employee's first name and initial     Last name     Suff | 12e $ | 9 | 10 Dependent care benefits 0.00 |
| LAWRENCE M MEADOWS | | 11 Nonqualified plans | 13 |
| 1900 SUNSET HARBOR DR #2112 MIAMI BEACH, FL 33139-1493 | Copy 2 To Be Filed With Employee's STATE, CITY or LOCAL Income Tax Return | 14 Other |
| Import Code: P498A2EU | a Employee's social security number 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 | |
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement 2015 - Reissued Statement     Department of the Treasury-Internal Revenue Service     OMB No. 1545-0008     Copy 2 To Be Filed With Employee's State, City or Local Tax Department

| a Employer identification number (EIN) 13-1502798 | | 12a See instructions for box 12 $ | 1 Wages, tips, other compensation 69796.89 | 2 Federal income tax withheld |
| b Employer's name, address, and ZIP code AMERICAN AIRLINES INC | 12b $ | 3 Social security wages | 4 Social security tax withheld |
| | 12c $ | 5 Medicare wages and tips | 6 Medicare tax withheld |
| PO BOX 619616 DFW AIRPORT, TX 75261 | 12d $ | 7 Social security tips | 8 Allocated tips |
| e Employee's first name and initial     Last name     Suff | 12e $ | 9 | 10 Dependent care benefits 0.00 |
| LAWRENCE M MEADOWS | | 11 Nonqualified plans | 13 |
| 1900 SUNSET HARBOR DR #2112 MIAMI BEACH, FL 33139-1493 | Copy C For EMPLOYEE'S RECORDS (See Notice to Employee on back.) | 14 Other |
| Import Code: P498A2EU | a Employee's social security number | |
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement 2015 - Reissued Statement     Department of the Treasury-Internal Revenue Service     OMB No. 1545-0008     Copy C For Employee's Records



W-2 WAGES

**2012**

| a Employer identification number (EIN) 13-1502798 | 12a See instructions for box 12 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|
| b Employer's name, address, and ZIP code | 12b | 800.00 | 1382.08 |
| AMERICAN AIRLINES INC | | 3 Social security wages | 4 Social security tax withheld |
| | 12c | | |
| PO BOX 619616 | | 5 Medicare wages and tips | 6 Medicare tax withheld |
| DFW AIRPORT, TX 75261 | 12d | | |
| e Employee's first name and initial   Last name   Suff. | 12e | 7 Social security tips | 8 Allocated tips |
| of 1   ID:10101000000000000145534073 | | | |
| LAWRENCE M MEADOWS | | 9 | 10 Dependent care benefits |
| | | 11 Nonqualified plans | 13 [ ] [X] [ ] |
| | Copy B To Be Filed With Employee's FEDERAL Tax Return | 14 Other | |
| | a Employee's social security number | | |
| f Employee's address and ZIP code | | | |
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement 2012   Department of the Treasury-Internal Revenue Service   OMB No. 1545-0008   Copy B To Be Filed With Employee's FEDERAL Tax Return

**2013**

| a Employer identification number (EIN) 13-1502798 | 12a See Instructions for box 12 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|
| b Employer's name, address, and ZIP code | 12b | 5.50 | |
| AMERICAN AIRLINES INC | | 3 Social security wages | 4 Social security tax withheld |
| | 12c | | |
| PO BOX 619616 | | 5 Medicare wages and tips | 6 Medicare tax withheld |
| DFW AIRPORT, TX 75261 | 12d | | |
| e Employee's last name and initial   Last name   Suff. | 12e | 7 Social security tips | 8 Allocated tips |
| of 1 | | | |
| LAWRENCE M MEADOWS | | 9 | 10 Dependent care benefits |
| | | 11 Nonqualified plans | 13 [ ] [ ] [ ] |
| | Copy B To Be Filed With Employee's FEDERAL Tax Return | 14 Other | |
| | Import Code: 57X54OZE   a Employee's social security number | | |
| f Employee's address and ZIP code | | | |
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement 2013   Department of the Treasury-Internal Revenue Service   OMB No. 1545-0008   Copy B To Be Filed With Employee's FEDERAL Tax Return

**2014**

| a Employer identification number (EIN) 13-1502798 | 12a See instructions for box 12 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|
| b Employer's name, address, and ZIP code | 12b | .22 | |
| AMERICAN AIRLINES INC | | 3 Social security wages | 4 Social security tax withheld |
| | 12c | | |
| PO BOX 619616 | | 5 Medicare wages and tips | 6 Medicare tax withheld |
| DFW AIRPORT, TX 75261 | 12d | | |
| e Employee's first name and initial   Last name   Suff. | 12e | 7 Social security tips | 8 Allocated tips |
| of 1 | | | |
| LAWRENCE M MEADOWS | | 9 | 10 Dependent care benefits |
| | | 11 Nonqualified plans | 13 [ ] [ ] [ ] |
| | Copy B To Be Filed With Employee's FEDERAL Tax Return | 14 Other | |
| | Import Code: RKGH2KAX   a Employee's social security number | | |
| f Employee's address and ZIP code | | | |
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement 2014   Department of the Treasury-Internal Revenue Service   OMB No. 1545-0008   Copy B To Be Filed With Employee's FEDERAL Tax Return

# EXHIBIT 4



American Airlines

Subscriber Name:
**LAWRENCE M. MEADOWS**
Identification Number:
AMR830183154

American Airlines, Inc.
Standard Plan

Group Number:          169026
Coverage Date:        01/01/18

| | |
|---|---|
| Office Visit | $30 |
| Specialist | 20%* |
| Urgent Care | 20%* |
| Hospital Service | 20%* |
| Emergency Room | $100** + 20%* |

**BCA**
* After Deductible
** Waived if admitted

PPO



**my.aa.com**
Member/Patient Services: 1-844-714-5678
Int'l Toll #: +1-513-765-2870 (Caller paid)
AMERICAN AIRLINES INSIGHT
**AMERICAN AIRLINES**
LAWRENCE MEADOWS
Group #: 1001672
Effective: 01/01/2016

American Airlines

Fully Insured and Underwritten by Fidelity Security Life Insurance Company

# MetLife

## Get Your Dental ID Card

**Participant Name:** LAWRENCE MEADOWS

**Coverage Type:** employee, spouse and children   **Group Name:** American Airlines, Inc.

You can find the names, addresses, specialties, languages spoken and telephone numbers of participating dentists by searching our online Find a Dentist directory.

**MetLife**                                                       Dental

**Your ID Number:**

**Network:**            PDP

**Name:**              LAWRENCE MEADOWS

**Dental Group Plan:**     38908

Your ID can be used when calling MetLife or submitting claims.

Member Service:  Customer Service: 866-838-1072

website:  www.metlife.com/mybenefits

Dental Customer Service Consultants are available to answer your questions Monday through Friday: 8:00AM to 11:00PM ET

For Dentists Only: 1-877-638-3379 www.metdental.com

Mail Claims to: MetLife Dental Claims P.O. Box 981282 El Paso, TX 79998-1282

Fax Claims to: 1-859-389-6505

Electronic Payor Number: 65978

You do not need to present an ID Card to confirm that you are eligible for dental benefits. This card is not evidence of coverage and confers no right to benefits. Metropolitan Life Insurance Company, New York, NY 10166

© 2000-2018 Metropolitan Life Insurance Company, New York, NY
All Rights Reserved. L1017500149[exp1218][All States][DC,GU,MP,PR,VI]

 Print                                                                                           Close window

# MetLife

**Saturday, April 7, 2018**

## Plan Coverage

| | |
|---|---|
| **employee:** | LAWRENCE MEADOWS |
| **Patient Name:** | Self |
| **employee ID:** | XXXXXXXXX |
| **Group:** | 38908 |
| **Benefits as of:** | 04/07/2018 |
| **Network:** | PDP |

| Procedure Description (Code) | Coverage Type | | In Network | Out-of-Network |
|---|---|---|---|---|
| Periodic Oral Evaluation (D0120) | Deductible | Individual | $50.00 | $50.00 |
| | | Met-to-Date | $0.00 | $0.00 |
| | | Lifetime | None | None |
| | | Met-to-Date | None | None |
| | | Family | None | None |
| | | Met-to-Date | None | None |
| | | Lifetime | None | None |
| | | Met-to-Date | None | None |
| | Maximum Benefit | Individual | $1,000.00 | $1,000.00 |
| | | Used to Date | $0.00 | $0.00 |
| | | Lifetime | None | None |
| | | Used to Date | None | None |
| | | Family | None | None |
| | | Used to Date | None | None |
| | | Lifetime | None | None |
| | | Used to Date | None | None |
| | Benefit Level | | 80% | 80% |
| Limited Oral Evaluation - Problem Focused   (D0140) | Deductible | Individual | $50.00 | $50.00 |
| | | Met-to-Date | $0.00 | $0.00 |
| | | Lifetime | None | None |
| | | Met-to-Date | None | None |
| | | Family | None | None |
| | | Met-to-Date | None | None |
| | | Lifetime | None | None |
| | | Met-to-Date | None | None |
| | Maximum Benefit | Individual | $1,000.00 | $1,000.00 |
| | | Used to Date | $0.00 | $0.00 |
| | | Lifetime | None | None |
| | | Used to Date | None | None |
| | | Family | None | None |
| | | Used to Date | None | None |
| | | Lifetime | None | None |
| | | Used to Date | None | None |
| | Benefit Level | | 80% | 80% |
| Oral Evaluation For A Patient Under Three Years Of Age And Counseling With Primary Caregiver   (D0145) | Deductible | Individual | $50.00 | $50.00 |
| | | Met-to-Date | $0.00 | $0.00 |
| | | Lifetime | None | None |
| | | Met to Date | None | None |
| | | Family | None | None |
| | | Met-to-Date | None | None |

# EXHIBIT 5

ALLIED PILOTS ASSOCIATION EQUITY DISTRIBUTION ARBITRATION

In the Matter of

DISTRIBUTION OF EQUITY BY ALLIED          DECISION AND AWARD
PILOTS ASSOCIATION


**Arbitrator:  Stephen B. Goldberg**


HEARING APPEARANCES – ALLIED PILOTS ASSOCIATION:

    Edgar N. James, Attorney (James & Hoffman, P.C.)
    Daniel Rosenthal, Attorney (James & Hoffman, P.C.)
    Jeff Vockrodt, Attorney (James & Hoffman, P.C.)

    Mark R. Myers, Attorney, Allied Pilots Association

HEARING APPEARANCES – CHALLENGERS:

    **Counsel:**

    John O'B. Clark, Jr., Attorney for CA David Williams, FO Thomas Duncan, *et al.*
    Gavin MacKenzie, Representative for FO Gregory Cordes
    Stanley Silverstone, Attorney for CA Larry Scerba, *et al.*
    Scott Singer, Attorney for CA Ann Singer
    Ronald Surkin, Attorney for FO Wallace Preitz

    **Challengers:**

| | | |
|---|---|---|
| CA Keith Bounds | FO Richard Elder | FO Wallace Preitz |
| CA Markus Bras | FO Kathy Emery | FO Eric Sapp |
| FO James Callaway | CA Steven Fulmer | CA Larry Scerba |
| FO Gregory Cordes | CA Stephen Greene | CA Sammy Lynn Sevier |
| CA Stephen Cox | FO Lloyd Hamlin | FO Leland Shanle |
| FO Stephen Davidson | FO Mark Hass | CA Ann Singer |
| FO James Dodson | CA Harold Hoffman | FO Brian Smith |
| FO Glen Dominy | FO Melanie Jarvi | CA Roy Wall |
| CA Martin Dravis | FO Lawrence Meadows | FO Ken Wuttke |
| | FO Momcilo Mihailovic | |

a.       FO Lawrence Meadows.

First Officer Lawrence Meadows began LTD status on April 19, 2004. In December 2007, AA terminated his disability benefits on the ground that he was no longer disabled. AA thus placed him on Sick Leave of Absence. FO Meadows filed an ERISA action in the U.S. District Court for the Southern District of Florida challenging the termination of his disability benefits. This action was dismissed on summary judgment in March 2011, and an appeal from that decision is pending before the U.S. Court of Appeals for the Eleventh Circuit.

On or about September 12, 2011, FO Meadows filed a complaint with OSHA, alleging that AA's termination of his disability benefits in 2007 had been part of a scheme to deny disability benefits to many pilots in order to reduce American's obligations under its defined benefit plan, thus violating the Sarbanes-Oxley Act. According to FO Meadows, he informally advised AA counsel of his intention to file this action and, on July 18, 2011, he reported the allegedly unlawful scheme to AA managers and counsel.[107]

On August 5, 2011, shortly after FO Meadows informed American of his pending Sarbanes-Oxley complaint, he was advised by American that because he had been on Sick Leave of Absence (SLOA) since April 19, 2004, he had exceeded the contractual and Company policy time limit of five years on SLOA, and his administrative separation from employment was required.[108]  FO Meadows was administratively separated from the Company and removed from the seniority list on November 4, 2011.

On February 4, 2012, FO Meadows filed a grievance claiming that his November 4, 2011, removal from the AA seniority list and his discharge were in retaliation for his having filed a Sarbanes-Oxley complaint. By agreement of American and APA, that grievance, along with several others, was preserved in the AA bankruptcy proceedings. FO Meadows' grievance was denied by American on June 6, 2013. On June 28, 2013, APA submitted the grievance to the System Board for a Pre-Arbitration Conference, noting that the grievance "protest[ed] the Company's action in removing him from the seniority list and discharging him from American Airlines."

APA determined that for Equity Fund distribution purposes, FO Meadows was an LTD Category 2 pilot, no longer on the seniority list, hence eligible for distributions solely from the

---

[107] FO Meadows' Sarbanes-Oxley complaint was scheduled for hearing before a Department of Labor Administrative Law Judge on June 10, 2013. That hearing was stayed at American's request because of the pending bankruptcy proceedings.

[108] Article 11.D(1) of the 2003 CBA provides:

When leaves are granted on account of sickness or injury, a pilot shall retain and continue to accrue his seniority irrespective of whether or not he is able to maintain his required certificates or ratings, until he is able to return to duty or is found to be unfit for such duty. A leave of absence for sickness or injury shall not commence until after a pilot has exhausted accrued sick leave credits provided under Section 10 of this Agreement. Such leave of absence for sickness or injury may not exceed a total continuous period of three (3) years *unless extended by mutual consent of the Company and the Association, in which case it may not exceed a total continuous period of five (5) years*. . . . (Emphasis added).

59

Pension and Per Capita Silos. FO Meadows asserts that he should be eligible for distributions from all four silos as a result of his February 4, 2012, grievance.

APA defends its determination on the grounds that:

> FO Meadows has been inactive for more than five years, starting when he began receiving disability benefits in 2004. He is no longer on the seniority list and APA reasonably determined that pilots in his condition were very unlikely to be affected by the concessions associated with the Inverse Seniority Silo and the Years of Service Silo.[109]

It is true that FO Meadows has been inactive and on sick leave for more than five years, and that in the normal situation the CBA would call for his administrative separation and removal from the seniority list. But those are not the only relevant facts. FO Meadows filed a grievance in February 2012 alleging that the reason why American removed him from the seniority list was not that he had been on sick leave for more than five years (which would have called for his removal in 2009), but because he had filed a 2011 Sarbanes-Oxley complaint against American. APA has submitted that grievance to a Pre-Arbitration Conference, noting that the grievance "protest[ed] the Company's action in removing him from the seniority list and discharging him from American Airlines." Hence, if his grievance is sustained, FO Meadows' administrative termination will be overturned, and he will be back on the seniority list, presumably retroactive to the date he was removed, *i.e.*, November 4, 2011. It is equally safe to assume that if his grievance is sustained, the arbitrator would not countenance his removal from the seniority list in the period between November 4, 2011, and the date of the arbitration award. In sum, then, it is reasonable to assume that if the grievance is sustained, FO Meadows would be treated by the arbitrator as a pilot who should have been on the seniority list on January 1, 2013, the date on which pilots on the seniority list are eligible for recovery from all four silos, even if they were on LTD status.

FO Meadows argues that he should be treated like a TAG pilot because of his pending grievance. Much like a TAG pilot who will be returned to active duty if his grievance is successful, Meadows will be returned to the seniority list if his grievance is successful. To be sure, the outcomes are different, but in each case the grieving pilot may obtain an advantageous change of status. And in each case APA supports the pilot's efforts at reinstatement, whether it is to active duty for a TAG pilot or to the seniority list for Meadows.

APA claims that Meadows cannot be treated as a TAG pilot because TAG is an internal APA code, which has always been used to describe pilots who have a pending grievance challenging their termination for cause, not an administrative termination such as the one underlying FO Meadows' grievance. APA states, "TAG is a code entirely internal to the APA; the arbitrator should defer to APA's interpretation of its own internal policy."[110]

---

[109] APA Post-Hearing Brief at 34-35.
[110] APA Post-Hearing Brief at 32.

I accept APA's position and do not require APA to deviate from its policy of using the TAG denomination solely to refer to pilots who have a grievance pending that challenges their termination for cause. I do, however, hold that it is arbitrary for APA to treat pilots who have a pending TAG grievance as sufficiently likely to be successful that they will be treated, for purposes of Equity Fund eligibility, as if they will be successful, while treating differently pilots who have a pending non-TAG grievance that challenges an administrative termination.

APA offers no explanation for this different treatment, other than to state, as previously noted, that its treatment of TAG pilots is "consistent with APA's advocacy for these pilots' reinstatement to active status and with the fact that a substantial portion of pilots on TAG have been reinstated." APA ignores the fact that it also is advocating for FO Meadows, albeit for reinstatement to the seniority list. Furthermore, while the assertion that "a substantial portion of pilots on TAG have been reinstated" may be true, it is wholly unsupported by evidence in the record. Nor is there record evidence that a grievance seeking reinstatement to active duty is more likely to be successful than a grievance seeking reinstatement to the seniority list.

FO Meadows' challenge is sustained and APA will be directed to make him eligible for a distribution from all silos.

  b.  FO Kathy Emery and FO Wallace Preitz.

Both FO Emery and FO Preitz have presented voluminous evidence regarding the termination of their LTD benefits, including their efforts to have those benefits reinstated. Not all of this evidence is ultimately relevant to the disposition of their challenges, but I summarize much of it here.

  i.  *FO Kathy Emery: summary of the evidence.*

FO Kathy Emery joined American Airlines in September 1992 and flew for more than 10 years before she was medically disqualified from flying. In April 2003, she applied for LTD benefits and her application was approved. Her benefits were terminated on January 25, 2007, due to a lack of substantiation of her medical disability. FO Emery appealed this denial to AA's Pension Benefits Administration Committee ("PBAC"), seeking reinstatement of her LTD benefits. As part of its consideration of FO Emery's appeal, PBAC purported to rely on evaluations made by Western Medical Evaluators ("WME"). No one from WME ever examined FO Emery and the record suggests that someone from PBAC may have influenced WME's opinion.[111] FO Emery's appeal to the PBAC was denied on October 22, 2007.

After FO Emery's appeal was denied, she received a letter from her supervisor advising her that she needed to return to work or be terminated. She asserts that a hearing was held with

---

[111] In addition, FO Emery and FO Preitz both suggest that fraud at WME contributed to the PBAC denial of their appeals. As outlined by FO Preitz in his Post-Hearing Brief, WME and its principals were indicted by the State of Texas and entered pleas of no contest on charges of securing execution of documents by deception. (FO Preitz Post-Hearing Br. at 6.) WME and its principals have also been accused of sending out forged or fraudulent doctors' reports and one of the two doctors who allegedly wrote a report in support of the termination of FO Preitz's benefits has sworn that the alleged report was forged. (FO Preitz Post-Hearing Br. at 7, 10.) While troubling, these allegations of fraud are not necessary to my decision on these challenges.

# EXHIBIT   6



**ALLIED PILOTS ASSOCIATION**
*Representing the pilots of American Airlines*

O'Connell Building • 14600 Trinity Boulevard, Suite 500 • Fort Worth, TX 76155-2512 • 817.302.2272 • www.alliedpilots.org

November 18, 2011

VIA CERTIFIED MAIL / RETURN RECEIPT
REQUESTED #7008 3230 0000 8494 0484

First Officer Lawrence M. Meadows
P. O. Box 4344
Park City, UT 84060-4344

  Re: Medical Disability Reinstatement

Dear First Officer Meadows:

  This confirms receipt of your email dated November 8, 2011, to Captain Scott Iovine, APA MIA Domicile Chairman (Encl. #1). In your electronic message, you requested APA's assistance with respect to your "termination" by the Company. Your correspondence has been forwarded to me for response.

  In preparation for this response, I reviewed several pieces of your previous correspondence, the majority of which was directed to the Company with a courtesy copy to APA. I have also discussed your case with your domicile representatives, members of the APA Benefits Department and staff from APA Legal.

  It is my understanding that you received pilot long-term disability (LTD) benefits from approximately May 2004 through December 2007, at which time Dr. Thomas Bettes, AMR Corporate Medical, terminated your benefits. You then appealed that decision to the American Airlines Pension Benefit Administration Committee (PBAC). I have confirmed that prior to submitting your appeal, you received direct assistance from both the APA Benefits Department and Dr. Keith Martin, of Virtual Flight Surgeons, now known as Aviation Medicine Advisory Service (AMAS). Dr. Martin reviewed your denial letter and recommended that you obtain a formal psychiatric evaluation in addition to submitting complete medical records from your nurse psychologist. Dr. Martin then reviewed your formal psychiatric evaluation and additional records prior to you submitting them to the PBAC. As you know, APA contracts with AMAS to provide consultation services and aeromedical advice to APA members at no charge to the individual pilot.

  Unfortunately, the PBAC denied your appeal in June 2008. In October 2008, APA retained outside counsel in Oakland, California to assist APA in aggressively reviewing individual pilot LTD cases. Outside counsel assisted APA with pending appeals, and in cases where the PBAC had already denied a pilot's appeal, such as yours, outside counsel also reviewed the case for possible litigation. With your permission, your case was sent to outside counsel in February 2009. After a review, outside counsel, along with APA Benefits and Legal, your domicile representatives and the APA Secretary-Treasurer held a telephone conference with you on August 12, 2009, to discuss your case. Although the general opinion was that your case

*First Officer Lawrence Meadows*
*November 18, 2011*
*Page 2*

was not very strong for litigation, referrals were provided to you for competent lawyers near your home and where you were based.

We are aware you retained a lawyer and pursued litigation. Regrettably, we understand your case was dismissed on summary judgment. In response to your previous request for reimbursement of your individual litigation costs to date, as well as your request to fund and pursue your case through the appellate process, APA must respectfully decline your requests. This decision comes only after careful consultation with APA Leadership, APA Benefits and APA Legal Departments, as well as consultation with our outside legal and ERISA experts.

In response to your concerns regarding APA's future action in addressing your "termination," (again Encl. #1), let me clarify that the Company did not "terminate" you; rather, your employer is seeking to exercise administrative procedures contained in the Collective Bargaining Agreement ("CBA"). Specifically, pursuant to Section 11.D.1 of the CBA, a leave of absence for sickness or injury may not exceed five (5) years. Because you have been out on medical disability and/or on a Sick Leave of Absence since 2004, you exceeded the five (5) year limit. The Company now asserts they had no choice but to drop you from the seniority list as prescribed by the CBA. This is presumably what Scott Hansen, Company Director Flight Administration, was trying to explain in his letter to you dated August 5, 2011 (Encl. #2). Being administratively dropped from the seniority list differs from being involuntarily terminated, which is considered a "permanent separation." Among other distinctions, should you obtain your First Class Medical Certificate in the future, you may request to return to active status if approved by both the Company and APA. Certainly, should you obtain your First Class Medical Certificate and wish to return to the seniority list in the future, APA will assist you in the process of requesting your return to the seniority list.

As to your reference to a violation of the Sarbanes-Oxley Act (your "SOX whistle-blower" case), while APA is your exclusive representative with respect to the bargaining agreement under the Railway Labor Act, we are not in a position to represent you individually in your allegations and filing of this particular complaint.

Should you have an issue that is grievable under the CBA, we are very willing to assist you with that matter. Specifically, if you are able to return to active flight status in the future, please contact APA Legal for assistance in that process.

Sincerely,

J. Bennett Boggess
Director of Representation

Enclosures (2)

cc:     Captain David Bates, APA President
        Captain Scott Iovine, APA MIA Chairman

# EXHIBIT   7

**Lawrence Meadows/AA#332713**                                                    **4Feb12**
**Po Box 4344**
**Park City, UT 84060**

**Captain Robert Raleigh**
**MIA Chief Pilot**
**MIA Intl Airport/Concourse D/Level 3/MD 2030**
**Miami, FL 33152**

**Sent via e-mail and certified mail:**   Re: Greievance 12-011

Dear Captain Hale.

I'm writing to grieve the improper assertions and actions, made via e-mail by Scott Hansen, Director HQD Flight Administration with respect to my employment status, seniority, and discharge. For the record I have never been contacted by, nor received any formal notice from my supervisor MIA Chief Pilot Raleigh, with respect to any of the above. Keep in mind I have a disability that affords me rights and protections under the American with Disabilities Act (ADA). Moreover, on 6Dec11 the company acknowledged such when they re-approved my Pilot Long Term Disability benefits.

In Blatant violation of the ADA, I was unilaterally removed me from the pilot seniority list, and discharged from American Airlines, not by my supervisor, but instead by the Mr. Hansen; who also denied me additional sick leave as a reasonable accommodation. Notwithstanding the fact that the "EEOC Enforcement guidance on the ADA and Psychiatric Disabilities, Para. 29", clearly states the _"No-Leave" policies_ (such as the company's 5 years max sick leave rule) are _strictly prohibited._ Instead, I should have been granted additional leave as a reasonable accommodation, as long as necessary to meet the medical requirements of my job. In the interim the company is required to keep my same job, and position (i.e., seniority) open, until I'm able to return to work.

Furthermore, I protected then, as I am now as a Federal Whistle Blower. Yet Mr. Hansen, acting in a non-supervisory capacity asserted that he revoked my seniority and discharged me from the company; which constitutes a blatant violation of my rights and protections under federal law:

**Sarbanes–Oxley Section 1107: Criminal penalties for retaliation against whistleblowers:**
_"Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any federal offense, shall be fined under this title, imprisoned not more than 10 years, or both."_

Therefore as provided under Section 21 of the Pilots CBA, Section Please consider this my formal request for grievance on the above matter.

Sincerely,

_L. M. Meadows_

Lawrence Meadows/ 777FO MIA

Page 1 of 1

# EXHIBIT 8

# ALLIED PILOTS ASSOCIATION 

O'Connell Building • 14600 Trinity Boulevard, Suite 500 • Fort Worth, TX 76155-2512 • 817.302.2272 • www.alliedpilots.org

May 22, 2012

VIA CERTIFIED MAIL, RETURN RECEIPT
REQUESTED # 7011 0470 0000 9113 1546

Captain John Hale
Vice President Flight
American Airlines, Inc.
P. O. Box 619617  MD851
DFW Airport, TX 75261-9617

Re:    DFW Domicile Grievance No. 12-012

Dear Captain Hale:

Pursuant to the May 1, 2003, Agreement ("Agreement"), between American Airlines, Inc., and the airline pilots in its employ, as represented by Allied Pilots Association, the undersigned hereby file this grievance, on behalf of all DFW-based pilots protesting the Company's violation of Sections 11.D, Supplement F(1), and all other related sections of the Agreement as well as past practice, for failing to reinstate pilots to the Pilots' Seniority System List and for failing to provide pilots notice of termination prior to terminating employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years.

In accordance with Section 21.F.3 of the Agreement, I hereby elect to waive the Initial Hearing in this matter so that an Appeal Hearing can be held at the earliest possible date.

In addition, we request that the Company send a copy of all hearing notices and decisions rendered in this case to the undersigned and the Legal Department, Allied Pilots Association, 14600 Trinity Blvd., Suite 500, Fort Worth, TX 76155-2512.

Sincerely,

Captain Rusty McDaniels
Chairman - DFW

First Officer Russell Moore
Vice Chairman - DFW

cc:    Ms. Reagan Heine, AA Specialist HR Ops Support (via Shelley Handman)
Captain Tom Kachmar, Grievance Coordinator – DFW
First Officer Neil Roghair, Negotiating Committee Chairman
Captain Frank McGill, Contract Compliance Committee Chairman
APA Legal Department (JBB)

# EXHIBIT   9

**HEARING DATE AND TIME: January 9, 2013 at 10:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: January 2, 2013 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Alfredo R. Pérez
Stephen A. Youngman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                      :

**In re**                              :      **Chapter 11 Case No.**

                                        :

**AMR CORPORATION, *et al.*,**        :      **11-15463 (SHL)**

                                        :

                        **Debtors.**     :      **(Jointly Administered)**

                                        :

------------------------------------------------------------x

## DEBTORS' LIMITED OBJECTION TO MOTION OF
## LAWRENCE MEADOWS FOR RELIEF FROM AUTOMATIC STAY

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

        AMR Corporation and its related debtors, as debtors and debtors in possession

(collectively, the **"Debtors"** or **"American"**), submit this Limited Objection to the second

motion of Lawrence Meadows (**"Meadows"**) for relief from the automatic stay, filed December

12, 2012 (ECF No. 5731) (the **"Motion"**), and respectfully represent:

### Preliminary Statement

    1.      Meadows seeks relief from the automatic stay to (i) allow the United

States Court of Appeals for the Eleventh Circuit to rule on the Appeal (as hereinafter defined);

US_ACTIVE:\44167833\4\14013.0139

## Activity Sheet Detail

Print | Close Window

```
PP004        MIA   332713  CREWMEMBER PRE/POST ACTIVITY REPORT  MONTH STARTING 02JUL12 AND ENDING 31JUL12  PROCESS DATE    08/08/12
MEADOWS LM            04703 332713 MIA  INA
                                       MAX     0.00   WAV48-N
H 3055349978                  B 516 982 7718 CELL
PROJ 0.00   GTD 0.00  PPROJ 0.00   SPROJ 0.00  CPA 0.00  FTCPA
ORIG GUAR   0.00 ADJ GUAR   0.00 ADJ GUAR PENDING NO
D EXP 0.00   W2 0.00   I EXP 0.00 W2 0.00
MISC EXP 0.00  W2 0.00  TTL 0.00
RALS 0.00  MMBA 0.00  FLT TIME 0.00 YTD TTL 0.00
 ACT/SKD PROJ 0.00 YTD 0.00
CPA BORROWED TIME 0.00 BCPFU N  CPA PAYOUT TIME 0.00
AVBL SK 0.00    YTD SK ACRL 0.00     SK USED MTD 0.00
 DD ST RMV ADD SEQ   FLT   FLT   SKED  STTL  ACT  GRTR  GTTL
NO ADDITIONAL DATA
END OF ACTIVITY
```

# EXHIBIT   12

**Hearing Date and Time:  January 9, 2013 at 10:00 a.m.**
**Objection Date:  January 2, 2013 at 4:00 p.m.**

Philip J. Layfield, Esq. (Pro Hac Vice Pending)
**THE LAYFIELD LAW FIRM, APC**
4640 Admiralty Way, Suite 500
Marina del Rey, California 90292
Telephone: (424) 835-6100
Facsimile: (800) 644-9861

Attorney for Movant and Creditor,
*Lawrence Meadows*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
**In re**                                      :
                                               :          **Chapter 11**
                                               :
**AMR CORPORATION. *et al.*,**                 :          **Case No. 11-15463 (SHL)**
                                               :
                                               :          **(Jointly Administered)**
               **Debtors.**                    :
-----------------------------------------------------x

### NOTICE OF MOTION TO LIFT THE AUTOMATIC STAY TO (1) ALLOW THE ELEVENTH CIRCUIT TO RULE ON THE PENDING APPEAL; (2) SEEK JUDICIAL DETERMINATION OF MOVANT'S EMPLOYEMENT STATUS; AND (3) SEEK JUDICIAL DETERMINATON OF WHICH BENEFIT PLAN APPLIES TO MOVANT

     1.     Lawrence Meadows ("Meadows"), a creditor in the above-styled and numbered

bankruptcy case, files this Motion to Lift the Automatic Stay for three (3) reasons – first, to

allow the Eleventh Circuit to Rule on the Pending Appeal (Appellant case captioned,

*LAWRENCE MEADOWS v. AMERICAN AIRLINES, INC., AMERICAN AIRLINES, INC. PILOT*

Retirement Benefit Program (the "Plan"). Docket entry 188. Their motion was based, in part, on the fact that the Plan is separately funded, and is not property of the bankrupt estate. Creditor and movant Lawrence Meadows' suit against American Airlines for benefits under this plan has been appealed to the Eleventh Circuit, where oral argument on the matter was set to be heard during the week of March 19, 2012. As this Court knows, the issue was ripe for decision – it has been fully briefed, and only oral arguments are needed.

6.     Additionally, Mr. Meadows is currently receiving disability benefits in connection with his departure from Debtor, but is being paid benefits pursuant to the "new" plan, which has reduced the amount of money that he receives each month by approximately 50%. Movant seeks a judicial determination by a state court as to which plan is actually applicable to his situation. Such a determination will not affect the bankruptcy estate, as the funds are paid out of a funded pension plan, which has been fully briefed by the Department of Labor for this Court. Docket entry 45 – Adversary Proceeding, Case No.: 12-01203 (SHL).

7.     Finally, Mr. Meadows was notified by Debtor in November 2011 that he was terminated – his seniority was lost and his access to the online employee document system was cut-off. Mr. Meadows was not provided any of the customary termination paperwork and Debtors have failed to provide proper notice to Mr. Meadows as to his employment status. However, as noted above, he continues to receive disability, and currently has an appeal pending with the Allied Pilots' Association. Movant requests that this Court lift the automatic stay so that the issue of Movant's employment status can be finalized, by judicial determination if necessary. Mr. Meadows does not believe he was actually terminated because if he was terminated while an application for disability was pending, it is clear that Debtor would have exposed itself to significant liability under numerous statutes designed to prevent such behavior.

3

was disposed of on a Motion for Summary Judgment. Meadows appealed this decision to the Appeals Court, which granted oral argument on October 28, 2011. Again, arguments were set to be heard during the week of March 19, 2012, the matter is fully briefed and ripe for decision. As this Court knows, in December 2011, Movant attempted to reach an agreement with Debtor to lift the stay for the purpose of the appeal, but Debtor refused.

12.    In November 2011, Movant was informed via telephone that he was no longer an employee of American Airlines as of October 21, 2011.

13.    Less than a month after being told he was terminated, American Airlines determined that Meadows is disabled under the Plan based on an application submitted prior to his "purported" termination date, and has renewed payment of benefits. See Exhibit 1, Letter from American Airlines of December 6, 2011.

14.    The benefits movant is receiving are benefits under the "new" benefits plan, and not the plan to which he believes he is entitled, known as the "2004 Plan." This issue is currently being reviewed by the Allied Pilots' Association, and what is left for the appellant court to decide is Movant's coverage under the Plan from approximately 2008 through December 6, 2011.

15.    The Plan itself is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq,* and as such is legally independent from Debtors and holds assets that are for the exclusive use and benefit of plan participants. All benefits Movant seeks would be paid by trust funds dedicated to that purpose.

## LAW AND ARGUMENT

16.    The filing of a bankruptcy petition "initiates a broad automatic stay that prevents any attempts to enforce or collect pre-petition claims or any actions that would affect property of the estate." *In re Carhaugh*, 278 B.R. 512, 524 (10th Cir. B.A.P. 2002). However, a court may

5

# EXHIBIT   13

Hearing Date and Time: January 9, 2013 at 10:00 a.m.

Objection Date: January 2, 2013 at 4:00 p.m.

Philip J. Layfield, Esq. (Pro Hac Vice)

THE LAYFIELD LAW FIRM, APC

525 S. Douglas St., Suite 280

El Segundo, CA 90245

Telephone: (424) 835-6100

Facsimile: (800) 644-9861

Attorney for Movant and Creditor,
*Lawrence Meadows*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| | : | |
| **AMR CORPORATION.** *et al.*, | : | **Case No. 11-15463 (SHL)** |
| | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |

--------------------------------------------------------x

**LAWRENCE M. MEADOWS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO LIFT THE AUTOMATIC STAY TO (1) ALLOW THE ELEVENTH CIRCUIT TO RULE ON THE PENDING APPEAL; (2) SEEK JUDICIAL DETERMINATION OF MOVANT'S EMPLOYEMENT STATUS; AND (3) SEEK JUDICIAL DETERMINATON OF WHICH BENEFIT PLAN APPLIES TO MOVANT**

1.      Lawrence Meadows ("Meadows"), a creditor in the above-styled and numbered

bankruptcy case, files this Reply Memorandum in Support of his Motion to Lift the Automatic

Stay to Allow the Eleventh Circuit to Rule on the Pending Appeal (Appellant case captioned,

*LAWRENCE MEADOWS v. AMERICAN AIRLINES, INC., AMERICAN AIRLINES, INC. PILOT*

*RETIREMENT BENEFIT PROGRAM, ERISA benefit plan, PENSION BENEFITS ADMINISTRATION COMMITTEE, A fiduciary to an ERISA benefit plan,* United States Court of Appeals, 11th Circuit, Case Nos.: 11-11894 & 11-12173); for movant to seek a judicial determination as to his employment status, as debtor at various times has treated him as both employed and terminated, and to allow movant to seek a judicial determination regarding which benefits plan (the "2004 Plan" or "New Plan") applies to him (hereinafter "Motion").

  2. As a preliminary matter, there has been no objection to allowing the stay to be lifted to allow the Eleventh Circuit to hear the appeal, and as such, this Court should grant the motion. As to lifting the stay for a judicial determination of Meadows' employment status and for a determination of which benefits plan applies to him. Although AMR makes the assertion that such issues will likely be determined by the pending APA grievance and/or the pending appeal, it has offered no supporting evidence to this effect. The reality is that the pending grievance will likely determine nothing, and which Plan applies to Movant *may* be clear after the appeal.

## INTRODUCTION

  3. As stated above, there is no objection to lifting the stay for the Appeal to proceed, and this Court should modify the stay. The Court should also lift the stay to allow Movant to seek a determination of his employment status and which Plan he is subject to. Neither of these issues will be resolved without Court intervention, despite AMR's assertions to the contrary.

  4. AMR has offered no evidence that the pending American Pilots' Association grievance of February 2012 ("APA Grievance") will determine Movant's employment status, nor have they offered any evidence that any ruling by the Eleventh Circuit on the pending appeal will determine which Plan movant is subject to. Although it is possible that these issues *may* be

# EXHIBIT   14

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                                :

**In re**                                    :                  **Chapter 11 Case No.**
                                               :

**AMR CORPORATION, et al.,**            :                  **11-15463 (SHL)**
                                               :

                **Debtors.**          :                  **(Jointly Administered)**
                                             :
-----------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. § 502(b) AND**
**FED. R. BANKR. P. 3007 DISALLOWING AND EXPUNGING PROOF**
**OF CLAIM NOS. 13478, 13788, AND 13865 FILED BY LAWRENCE M. MEADOWS**

        1.      Upon the Objection, dated March 17, 2014 (the **"Objection"**),[1] of AMR

Corporation and its related debtors, as debtors and reorganized debtors (collectively. the

**"Debtors"**), pursuant to section 502(b) of title 11 of the United States Code and Rule 3007(a) of

the Federal Rules of Bankruptcy Procedure, seeking to disallow and expunge Proof of Claim

Nos. 13478. 13788, and 13865 filed by Lawrence M. Meadows, all as more fully described in the

Objection; and the Court having jurisdiction to consider the Objection and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of

Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Objection and

the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and

proper notice of the Objection having been provided, and it appearing that no other or further

notice need be provided; and a hearing having been held to consider the relief requested in the

Objection (the **"Hearing"**); and upon the record of the Hearing and all of the proceedings had

before the Court; and the Court having found and determined that the relief sought in the

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such
terms in the Objection.

Objection is in the best interests of the Debtors, creditors, and all parties in interest, and that the

legal and factual bases set forth in the Objection establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Objection is granted as provided herein; and it is further

ORDERED that Proof of Claim Nos. 13478, 13788, and 13865 are disallowed

and expunged in their entirety; and it is further

ORDERED that, notwithstanding the foregoing, Meadows shall be permitted to

arbitrate Grievance 12-011 before the System Board to the extent ~~that such arbitration is limited~~

~~in scope to claims involving the interpretation of the CBA and provides remedies, if any and if~~

~~appropriate, that are customary under the grievance procedures created by the RLA~~ *permitted by*

*applicable law*; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
        September 5, 2014


                                    */s/ Sean H. Lane*
                                    United States Bankruptcy Judge


2

# EXHIBIT   15



Peter D. Wrobel, CPA/ABV, CFE, CFF,
CGMA
Director

550 South Hope Street
Suite 2150
Los Angeles, CA  90071
pwrobel@brg-expert.com
Telephone: 213.261.7707
Fax: 213.622.0390

March 7, 2014

Lawrence Meadows
516-982-7718

Re:   **Lawrence Meadows**
      **Potential Earnings – American Airlines Pilot**

Dear Mr. Meadows:

You engaged me in the above-referenced matter.  You asked me to calculate the amount of
damages, if any, suffered by you as a result of certain actions on the part of the American
Airlines.  All work was performed by me or by other employees of BRG LLC working at my
direction.  My CV is attached as Exhibit A.

## I.   EXPERT OPINIONS

It is my opinion that Mr. Meadows suffered at least $5,609,000 in damages.  These damages are
summarized on the attached Schedules 1 through 14 and are as follows:

**Value of Mr. Meadows Earnings and Benefits**

| | |
|---|---|
| Present Value of Back Pay, Forward Pay and Benefits [1] | $3,978,804 |
| Present Value of Defined Benefit Retirement [2] | 238,388 |
| Present Value of Additional Employer 401(k) Contributions [3] | 445,445 |

Letter to Mr. Lawrence Meadows
March 7, 2014
Page 2

| | |
|---|---|
| Present Value of Return on Additional Employer 401(k) Contributions [3] | 492,581 |
| Present Value of Return on Additional Personal 401(k) Contributions [4] | 453,869 |
| Present Value of Back Pay, Forward Pay and All Benefits | $5,609,086 |

**Mr. Meadows Damages During LTD Denial Period**

| | |
|---|---|
| Simple Interest on Retroactive LTD Benefits [5] | $55,026 |
| Mr. Meadows' Out of Pocket Medical Costs | 37,688 |
| Total Potential Damages During LTD Denial Period | $92,714 |

**Actual and Estimated Payments Made by American Airlines**

AMR Paid LTD and Medical Insurance Benefits

| | |
|---|---|
| From 10/24/11 - 12/12/11 [6] | $9,871 |
| From 12/13/11 - 3/31/14 [7] | 193,421 |
| Total AMR Paid LTD and Medical Insurance Benefits [8] | $203,292 |

Note:
[1] See Schedule 2
[2] See Schedule 7
[3] See Schedule 9
[4] See Schedule 10
[5] See Schedule 12
[6] Pro-rated based on retroactive payment made.
[7] See Schedule 13
[8] The additional LTD and medical insurance benefits that AMR would pay through Mr. Meadows' age 65 are $947,476.

All future amounts were reduced to 2014 values using a 3.55% discount rate. See Schedule 14.

Background

Lawrence Meadows is a former American Airlines pilot.  In 2003 Mr. Meadows suffered a debilitating episode of major depression which subsequently led to his loss of his Federal Aviation Authority ("FAA") Medical Certificate.  It is my understanding that American Airlines subsequently approved Mr. Meadows for contractual Pilot Long Term Disability ("PLTD") Benefits.  It is also my understanding that on December 27, 2007, American Airlines targeted

Letter to Mr. Lawrence Meadows
March 7, 2014
Page 3

Mr. Meadows for cost savings and terminated his PLTD benefits, using a "Pilot Disability Cost Savings" report, prepared by American Airline's Senior Budget Analyst. I understand that these reports targeted certain disabled pilots for benefit termination, which were further facilitated through the use of a third party medical claims reviewer. It is my understanding that Mr. Meadows subsequently reported this procedure used by American Airlines under the Sarbanes-Oxley Act. I understand that American Airlines then terminated Mr. Meadows on October 24, 2011. It is my understanding that there will be expert medical testimony which will establish that, but for American Airline's actions, Mr. Meadows would have returned to work as a pilot at American Airlines due to changes in FAA medical requirements allowing antidepressant medications and anticipated changes in his medical condition. Additionally, it is my understanding that there will also be expert testimony, which will show that until such time when Mr. Meadows obtains his FAA Medical Certificate, he should have been accommodated within his bargaining unit as an X-type Check Airman; and that there is a statutory, regulatory, past practice and contractual basis to do so. At this point, Mr. Meadows is not able to work at American Airlines and has and will suffer lost earnings, benefits and pension losses.

## II.   DOCUMENTS CONSIDERED

A listing of the sources I considered in forming my opinions are attached as Exhibit B.

This report presents my opinions. It is my understanding that I may receive additional information. The opinions in this report are subject to modification based on additional facts that may surface from now through trial. This report is prepared and issued to you solely for your use in the above-referenced matter in connection with your dispute with American Airlines in this matter.

Very truly yours,

Peter D. Wrobel, CPA/ABV, CFE
Director

PDW:com

**Exhibit A**

**Peter D. Wrobel, CPA/ABV, CFE, CFF**

Peter D. Wrobel is a Director with Berkeley Research Group ("BRG").  With more than twenty years of forensic accounting and business valuation experience, Mr. Wrobel has testified as an expert in both Federal and State courts in cases involving business valuation, fraud, breach of contract, wrongful termination, and personal injury matters.  He specializes in damage determination; statistical, economic and cost analysis; and mathematical modeling and database development.  He has extensive experience in developing trial graphics and other exhibits.

Prior to BRG he was a Director of LECG LLC and Navigant Consulting, Inc. and a Managing Director of FTI Consulting, Inc. in Los Angeles. Prior to joining FTI Consulting, Mr. Wrobel was Senior Partner of Simpson LLP. Most of this work involved determining and analyzing damages.  Prior to the formation of Simpson LLP, he was a Senior Manager in the Litigation Services practice in the Los Angeles office of Coopers & Lybrand (now known as PricewaterhouseCoopers LLP).

Mr. Wrobel holds an MBA with a concentration in Accounting from the University of Southern California and a BA and MA in History from UCLA.  He is a Certified Public Accountant, a Certified Fraud Examiner and a Chartered Global Management Accountant.  Mr. Wrobel also holds the American Institute of Certified Public Accountants' Accreditation in Business Valuation and is Certified in Financial Forensics.  Mr. Wrobel is a member of the American Institute of Certified Public Accountants and the Association of Certified Fraud Examiners.

Mr. Wrobel has participated in and taught various professional courses for the USC Gould School of Law and the American Institute of Certified Public Accountants and California Society of Certified Public Accountants.

**Exhibit B**

**Documents Considered**

- Agreement between American Airlines, Inc. and the Allied Pilots Association Effective May 1, 2003
- Agreement between American Airlines, Inc. and the Allied Pilots Association Effective January 1, 2013, Revision 1 – March 8, 2013
- September 26, 2013 Claim for Benefits under the American Airlines, Inc. Pilot Long Term Disability Plan #513
- American Airlines, Inc. Pilot Retirement Benefit Program, SPD (Sept. 2012)
- January 2014 Allied Pilots Association Contract Comparison
- JP Morgan Account Overview
- American Airlines, Inc. Pilot Long Term Disability Plan dated February 1, 2004
- November 12, 2008 correspondence from Benefit Concepts
- Various government and statistical sources, as referenced.

Schedule 1

**Lawrence Meadows**
**Total Potential Earnings and Benefits**
**American Airlines Captain**

**Value of Mr. Meadows Earnings and Benefits**

| | |
|---|---:|
| Present Value of Back Pay, Forward Pay and Benefits [1] | $3,978,804 |
| Present Value of Defined Benefit A-Plan Retirement [2] | 238,388 |
| Present Value of Additional Employer 401(k) Contributions [3] | 445,445 |
| Present Value of Return on Additional Employer 401(k) Contributions [3] | 492,581 |
| Present Value of Return on Additional Personal 401(k) Contributions [4] | 453,869 |
| Present Value of Back Pay, Forward Pay and All Benefits | $5,609,086 |

**Mr. Meadows Damages During LTD Denial Period**

| | |
|---|---:|
| Simple Interest on Retroactive LTD Benefits [5] | $55,026 |
| Mr. Meadows' Out of Pocket Medical Costs | 37,688 |
| Total Potential Damages During LTD Denial Period | $92,714 |

**Actual and Estimated Payments Made by American Airlines**

| | |
|---|---:|
| AMR Paid LTD and Medical Insurance Benefits | |
| From 10/24/11 - 12/12/11 [6] | $9,871 |
| From 12/13/11 - 3/31/14 [7] | 193,421 |
| Total AMR Paid LTD and Medical Insurance Benefits [8] | $203,292 |

Note:
    [1] See Schedule 2
    [2] See Schedule 7
    [3] See Schedule 9
    [4] See Schedule 10
    [5] See Schedule 12
    [6] Pro-rated based on retroactive payment made.
    [7] See Schedule 13
    [8] The additional LTD and medical insurance benefits that AMR would
    pay through Mr. Meadows' age 65 are $947,476.

    All future amounts were reduced to 2014 values using a 3.55% discount
    rate. See Schedule 14.

Schedule 2

**Lawrence Meadows**
**Estimated Lost Earnings and Benefits**
**American Airlines Captain**
**2011 - 2028**

| Period Start | Period End | Total Earnings | Total Per Diem | Total Insurance Benefits | Non-Revenue Travel Benefits | Total Lost Earnings and Benefits | Present Value of Lost Earnings and Benefits |
|---|---|---|---|---|---|---|---|
| **Back Pay and Benefits:** | | | | | | | |
| **2003 CBA** | | | | | | | |
| 10/24/11 | 11/18/11 | $12,482 | $1,923 | $883 | $1,541 | $16,828 | $16,828 |
| 11/19/11 | 12/31/11 | 20,643 | 3,180 | 1,460 | 2,548 | 27,831 | 27,831 |
| 01/01/12 | 11/18/12 | 155,061 | 23,885 | 11,261 | 19,480 | 209,687 | 209,687 |
| 11/19/12 | 12/31/12 | 20,643 | 3,124 | 1,473 | 2,548 | 27,788 | 27,788 |
| **2013 CBA** | | | | | | | |
| 01/01/13 | 11/18/13 | 156,428 | 24,459 | 10,247 | 20,652 | 211,785 | 211,785 |
| 11/19/13 | 12/31/13 | 20,889 | 3,285 | 1,376 | 2,774 | 28,325 | 28,325 |
| 01/01/14 | 03/31/14 | 48,077 | 6,836 | 2,932 | 5,910 | 63,756 | 63,756 |
| Subtotal: | | 434,222 | 66,692 | 29,632 | 55,453 | 586,000 | 586,000 |
| **Forward Pay and Benefits:** | | | | | | | |
| 04/01/14 | 12/31/14 | 147,034 | 20,908 | 8,968 | 18,075 | 194,986 | 192,418 |
| 01/01/15 | 12/31/15 | 199,005 | 27,744 | 12,185 | 24,559 | 263,493 | 252,250 |
| 01/01/16 | 12/31/16 | 202,985 | 27,744 | 12,476 | 25,146 | 268,352 | 248,094 |
| 01/01/17 | 12/31/17 | 207,045 | 27,744 | 12,775 | 25,747 | 273,310 | 244,016 |
| 01/01/18 | 12/31/18 | 211,186 | 27,744 | 13,080 | 26,362 | 278,372 | 240,015 |
| 01/01/19 | 12/31/19 | 216,233 | 27,744 | 13,393 | 26,992 | 284,362 | 236,774 |
| 01/01/20 | 12/31/20 | 221,401 | 27,744 | 13,713 | 27,637 | 290,495 | 233,588 |
| 01/01/21 | 12/31/21 | 226,693 | 27,744 | 14,040 | 28,298 | 296,775 | 230,456 |
| 01/01/22 | 12/31/22 | 232,111 | 27,744 | 14,376 | 28,974 | 303,205 | 227,378 |
| 01/01/23 | 12/31/23 | 280,082 | 27,744 | 14,720 | 29,667 | 352,212 | 255,074 |
| 01/01/24 | 12/31/24 | 286,776 | 27,744 | 15,071 | 30,376 | 359,967 | 251,752 |
| 01/01/25 | 12/31/25 | 293,629 | 27,744 | 15,432 | 31,102 | 367,907 | 248,484 |
| 01/01/26 | 12/31/26 | 300,647 | 27,744 | 15,800 | 31,845 | 376,037 | 245,268 |
| 01/01/27 | 12/31/27 | 307,833 | 27,744 | 16,178 | 32,606 | 384,361 | 242,103 |
| 01/01/28 | 03/08/28 | 58,680 | 5,165 | 3,084 | 6,216 | 73,145 | 45,134 |
| Subtotal: | | 3,391,339 | 386,745 | 195,291 | 393,602 | 4,366,977 | 3,392,804 |
| Total: | | $3,825,562 | $453,437 | $224,923 | $449,055 | $4,952,977 | $3,978,804 |

Schedule 3

**Lawrence Meadows**
**Estimated Annual Earnings**
**American Airlines Captain**

| | | Hourly Base Pay Component | | | | | Mileage Pay Component | | | Weight Pay Component | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Bid Status | Hourly Pay Rate [1] | Years of Service | Service Percentage | Maximum Annual Hours [2] | Annual Base Pay | Cents per Mile Flown | Miles per Hour | Annual Mileage Pay | Cents per 1,000 lbs | Aircraft Weight | Annual Weight Pay | Total Earnings |
| | | A | | B | C | D = A × B × C | E | F | G = C × E × F | H | I | J = C × H × I | K = D + G + J |
| 10/24/11 | Captain 737 Intl | $144.25 | 12+ | 100.00% | 1,058.2 | $152,645 | $0.03 | 540 | $17,143 | $0.03 | 175,000 | $5,556 | $175,344 |
| 11/29/11 | Captain 737 Intl | 144.25 | 12+ | 100.00% | 1,058.2 | 152,645 | 0.03 | 540 | 17,143 | 0.03 | 175,000 | 5,556 | 175,344 |
| 11/29/12 | Captain 737 Intl | 144.25 | 12+ | 100.00% | 1,058.2 | 152,645 | 0.03 | 540 | 17,143 | 0.03 | 175,000 | 5,556 | 175,344 |
| 01/01/13 | Captain 737 Intl | 167.68 | 12+ | 100.00% | 1,058.2 | 177,439 | | | | | | | 177,439 |
| 11/29/13 | Captain 737 Intl | 167.68 | 12+ | 100.00% | 1,058.2 | 177,439 | | | | | | | 177,439 |
| 01/01/14 | Captain 767 Intl | 184.38 | 12+ | 100.00% | 1,058.2 | 195,111 | | | | | | | 195,111 |
| 01/01/15 | Captain 767 Intl | 188.06 | 12+ | 100.00% | 1,058.2 | 199,005 | | | | | | | 199,005 |
| 01/01/16 | Captain 767 Intl | 191.82 | 12+ | 100.00% | 1,058.2 | 202,985 | | | | | | | 202,985 |
| 01/01/17 | Captain 767 Intl | 195.66 | 12+ | 100.00% | 1,058.2 | 207,045 | | | | | | | 207,045 |
| 01/01/18 | Captain 767 Intl | 199.57 | 12+ | 100.00% | 1,058.2 | 211,186 | | | | | | | 211,186 |
| 01/01/19 | Captain 767 Intl | 204.34 | 12+ | 100.00% | 1,058.2 | 216,233 | | | | | | | 216,233 |
| 01/01/20 | Captain 767 Intl | 209.22 | 12+ | 100.00% | 1,058.2 | 221,401 | | | | | | | 221,401 |
| 01/01/21 | Captain 767 Intl | 214.22 | 12+ | 100.00% | 1,058.2 | 226,693 | | | | | | | 226,693 |
| 01/01/22 | Captain 767 Intl | 219.34 | 12+ | 100.00% | 1,058.2 | 232,111 | | | | | | | 232,111 |
| 01/01/23 | Captain 777 Intl | 264.68 | 12+ | 100.00% | 1,058.2 | 280,082 | | | | | | | 280,082 |
| 01/01/24 | Captain 777 Intl | 271.00 | 12+ | 100.00% | 1,058.2 | 286,776 | | | | | | | 286,776 |
| 01/01/25 | Captain 777 Intl | 277.48 | 12+ | 100.00% | 1,058.2 | 293,629 | | | | | | | 293,629 |
| 01/01/26 | Captain 777 Intl | 284.11 | 12+ | 100.00% | 1,058.2 | 300,647 | | | | | | | 300,647 |
| 01/01/27 | Captain 777 Intl | 290.90 | 12+ | 100.00% | 1,058.2 | 307,833 | | | | | | | 307,833 |
| 01/01/28 | Captain 777 Intl | 297.85 | 12+ | 100.00% | 1,058.2 | 315,190 | | | | | | | 315,190 |

Note:
[1]: per Sec 12.B.2(a) of the 2003 AA-APA CBA, 88 hours and 11 minutes per month x 12 months = 1,058.2 hours per year
[2]: After 2018, hourly pay rates are increased by the estimated annual increase in the CPI. See Schedule 11.

Source:
Section 3.A, 3.E, and 3.F of the 2003 AA-APA CBA
Section 3.B.1. of the 2013 AA-APA CBA

Schedule 4

**Lawrence Meadows**
**Estimated Per Diem and Lodging Expenses**
**American Airlines Captain**

| Date | Daily Per Diem Rate (Estimated) | Nightly Contract Lodging or Allowance (Estimated) | Total Per Diem and Lodging Allowance | Monthly Scheduled Days of Service | Estimated Monthly Per Diem | Annual Per Diem |
|---|---|---|---|---|---|---|
| | A | B | C = A + B | D | E = C x D | F = E x 12 |
| 10/24/11 | $32.40 | $100.00 | $132.40 | 17 | $2,251 | $27,010 |
| 01/01/13 | 36.00 | 100.00 | 136.00 | 17 | 2,312 | 27,744 |

Source:
Lawrence Meadows
January 2014 APA Contract Comparison

Schedule 5

**Lawrence Meadows**
**Estimated Annual Active Medical Insurance Benefits**
**American Airlines Captain**

| Year | BCBS POS Individual + 2 Monthly Total Cost | Less: Employee Share | Estimated Employer Monthly Cost | Estimated Employer Annual Cost |
|------|------|------|------|------|
| | A | B | C = A - B | D = C x 12 |
| 2009 | $1,106 | $126 | $980 | $11,759 |
| Growth Rate: | 2.39% | 2.39% | | |
| 2010 | 1,133 | 126 | 1,006 | 12,076 |
| 2011 | 1,160 | 126 | 1,033 | 12,401 |
| 2012 | 1,188 | 126 | 1,061 | 12,734 |
| 2013 | 1,216 | 247 | 969 | 11,623 |
| 2014 | 1,245 | 253 | 992 | 11,901 |
| 2015 | 1,275 | 259 | 1,015 | 12,185 |
| 2016 | 1,305 | 266 | 1,040 | 12,476 |
| 2017 | 1,336 | 272 | 1,065 | 12,775 |
| 2018 | 1,368 | 278 | 1,090 | 13,080 |
| 2019 | 1,401 | 285 | 1,116 | 13,393 |
| 2020 | 1,435 | 292 | 1,143 | 13,713 |
| 2021 | 1,469 | 299 | 1,170 | 14,040 |
| 2022 | 1,504 | 306 | 1,198 | 14,376 |
| 2023 | 1,540 | 313 | 1,227 | 14,720 |
| 2024 | 1,577 | 321 | 1,256 | 15,071 |
| 2025 | 1,614 | 329 | 1,286 | 15,432 |
| 2026 | 1,653 | 336 | 1,317 | 15,800 |
| 2027 | 1,693 | 344 | 1,348 | 16,178 |
| 2028 | 1,733 | 353 | 1,380 | 16,565 |

Source:
    November 12, 2008 COBRA Annual Enrollment Correspondence
    Attachment A to LOA 05-06 of the 2003 AA-APA CBA
    Supplement K of the 2013 AA-APA CBA

**Lawrence Meadows**
**Estimated Non-Revenue Travel Benefits**
**American Airlines Captain**

| Year | Number of D-3 One-Way Buddy Passes | Number of D-2 One Way Personal Passes | Total Number of One-Way Passes | U.S. Average Domestic Itinerary Fare [1] | Estimated Non-Revenue Travel Benefits |
|------|------|------|------|------|------|
| | A | B | C = A + B | D | E = C x D |
| 2011 | 24 | 96 | 120 | $180 | $21,644 |
| 2012 | 24 | 96 | 120 | 184 | 22,028 |
| 2013 | 24 | 96 | 120 | 195 | 23,426 |
| | | | | | |
| Growth Rate: | | | | 2.39% | |
| | | | | | |
| 2014 | 24 | 96 | 120 | 200 | 23,986 |
| 2015 | 24 | 96 | 120 | 205 | 24,559 |
| 2016 | 24 | 96 | 120 | 210 | 25,146 |
| 2017 | 24 | 96 | 120 | 215 | 25,747 |
| 2018 | 24 | 96 | 120 | 220 | 26,362 |
| 2019 | 24 | 96 | 120 | 225 | 26,992 |
| 2020 | 24 | 96 | 120 | 230 | 27,637 |
| 2021 | 24 | 96 | 120 | 236 | 28,298 |
| 2022 | 24 | 96 | 120 | 241 | 28,974 |
| 2023 | 24 | 96 | 120 | 247 | 29,667 |
| 2024 | 24 | 96 | 120 | 253 | 30,376 |
| 2025 | 24 | 96 | 120 | 259 | 31,102 |
| 2026 | 24 | 96 | 120 | 265 | 31,845 |
| 2027 | 24 | 96 | 120 | 272 | 32,606 |
| 2028 | 24 | 96 | 120 | 278 | 33,385 |

Note:
[1] The US Average Domestic Itinerary Fare is based primarily on round-trip
fares.  For purposes of this analysis, the average fare is reduced by 50%
to estimate the one-way fare average cost.

Source:
Lawrence Meadows
US. Department of Transportation statistics

**Lawrence Meadows**
**Present Value of A-Plan Retirement Annuity Benefits**
**American Airlines Captain**
**2028 - 2042**

| Period Start | Period End | Actual Retirement Benefits | Present Value of Retirement Benefits |
|---|---|---|---|
| 03/09/28 | 12/31/28 | $27,842 | $16,883 |
| 01/01/29 | 12/31/29 | 34,125 | 20,046 |
| 01/01/30 | 12/31/30 | 34,125 | 19,359 |
| 01/01/31 | 12/31/31 | 34,125 | 18,695 |
| 01/01/32 | 12/31/32 | 34,125 | 18,054 |
| 01/01/33 | 12/31/33 | 34,125 | 17,435 |
| 01/01/34 | 12/31/34 | 34,125 | 16,838 |
| 01/01/35 | 12/31/35 | 34,125 | 16,260 |
| 01/01/36 | 12/31/36 | 34,125 | 15,703 |
| 01/01/37 | 12/31/37 | 34,125 | 15,165 |
| 01/01/38 | 12/31/38 | 34,125 | 14,645 |
| 01/01/39 | 12/31/39 | 34,125 | 14,143 |
| 01/01/40 | 12/31/40 | 34,125 | 13,658 |
| 01/01/41 | 12/31/41 | 34,125 | 13,190 |
| 01/01/42 | 08/25/42 | 22,143 | 8,314 |
| Total: | | $493,610 | $238,388 |

Assumptions:
A-Plan (Frozen as of 11/01/12)
Formula: 1.25% x (Length of Service - 1) x Final Average Earnings

| | |
|---|---|
| Length of Service as of 11/01/12: | 21.0 years |
| Pension Credited Service as of 11/01/12  (21 - 1): | 20.0 years |
| Final Average Earnings per American Airlines: | $136,503 |
| A-Plan Annuity Amount Payable Annually at Age 65: | |
| 1.25% x 20 years x $136,503 = | $34,125 |
| Age 65 Retirement Date: | 3/8/2028 |
| Life Expectancy Date: | 8/25/2042 |
| Life Expectancy Age: | 79.5 years |

Source:
Supplement F to 2013 AA-APA CBA

Schedule 8

**Lawrence Meadows**
**A-Plan Retirement Benefits Payable in 2028**
**American Airlines Captain**

A-Plan (Frozen as of 11/01/12) [1]

Annuity Formula: 1.25% x (Length of Service - 1) x Final Average Earnings

| | |
|---|---|
| Credited Service as of 11/01/12 | 21.0 years |
| Pension Credited Service as of 11/01/12  (21 - 1) | 20.0 years |
| Final Average Earnings per American Airlines | $136,503 |
| A-Plan Annuity Amount Payable Annually at Age 65: [2] | |
| 1.25% x 20 years x $136,503 = | $34,125 |

Note:
[1] According to Mr. Meadows, American Airlines froze any and all defined benefit service accruals
   and final compensation as of 11/01/12.
[2] See APA TASC A-Plan calculator

Source:
   Lawrence Meadows
   Supplement F(1) to 2013 AA-APA CBA

Schedule 9

**Lawrence Meadows**
**Value of Additional Employer Contributions and Returns on Additional Employer Contributions to 401(k) Plan**
**American Airlines Captain**

| Period Start | Period End | Beginning Balance of Additional Contributions | Additional 401(k) Contribution [1] | Estimated Return [2] (10.76%) | Ending Balance of Additional Contributions | Present Value of Estimated Contributions at End of Period | Cumulative Present Value of Additional Contributions | Present Value of Estimated Return at End of Period | Cumulative Present Value of Estimated Return |
|---|---|---|---|---|---|---|---|---|---|
| | | A | B | C = (A+(B/2)) x 10.76% | D = A+B+C | E | F | G | H |
| 10/24/11 | 12/31/11 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 01/01/12 | 12/31/12 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 01/01/13 | 12/31/13 | 0 | 24,824 | 1,336 | 26,160 | 24,824 | 24,824 | 1,336 | 1,336 |
| 01/01/14 | 12/31/14 | 26,160 | 31,218 | 4,494 | 61,872 | 30,412 | 55,236 | 4,378 | 5,714 |
| 01/01/15 | 12/31/15 | 61,872 | 31,841 | 8,370 | 102,083 | 29,955 | 85,191 | 7,875 | 13,589 |
| 01/01/16 | 12/31/16 | 102,083 | 32,478 | 12,731 | 147,292 | 29,507 | 114,698 | 11,567 | 25,155 |
| 01/01/17 | 12/31/17 | 147,292 | 33,127 | 17,631 | 198,051 | 29,065 | 143,763 | 15,469 | 40,624 |
| 01/01/18 | 12/31/18 | 198,051 | 33,790 | 23,128 | 254,968 | 28,630 | 172,393 | 19,596 | 60,221 |
| 01/01/19 | 12/31/19 | 254,968 | 34,597 | 29,296 | 318,862 | 28,309 | 200,702 | 23,971 | 84,192 |
| 01/01/20 | 12/31/20 | 318,862 | 35,424 | 36,215 | 390,501 | 27,992 | 228,695 | 28,617 | 112,810 |
| 01/01/21 | 12/31/21 | 390,501 | 36,271 | 43,969 | 470,741 | 27,679 | 256,373 | 33,553 | 146,363 |
| 01/01/22 | 12/31/22 | 470,741 | 37,138 | 52,650 | 560,529 | 27,369 | 283,742 | 38,800 | 185,163 |
| 01/01/23 | 12/31/23 | 560,529 | 44,813 | 62,724 | 668,066 | 31,893 | 315,634 | 44,639 | 229,803 |
| 01/01/24 | 12/31/24 | 668,066 | 45,884 | 74,352 | 788,302 | 31,535 | 347,170 | 51,101 | 280,904 |
| 01/01/25 | 12/31/25 | 788,302 | 46,981 | 87,349 | 922,632 | 31,182 | 378,352 | 57,975 | 338,879 |
| 01/01/26 | 12/31/26 | 922,632 | 48,104 | 101,863 | 1,072,598 | 30,833 | 409,185 | 65,291 | 404,170 |
| 01/01/27 | 12/31/27 | 1,072,598 | 49,253 | 118,061 | 1,239,913 | 30,487 | 439,672 | 73,079 | 477,250 |
| 01/01/28 | 03/08/28 | 1,239,913 | 9,389 | 24,932 | 1,274,234 | 5,773 | 445,445 | 15,331 | 492,581 |
| | | | $575,131 | $699,103 | | $445,445 | | $492,581 | |

Source:
Lawrence Meadows
January 2014 APA Contract Comparison

Note:
[1] Assumes a 14% contribution in 2013 and a 16% contribution thereafter of salary to the employee's 401(k) plan.
[2] The Estimated Return is calculated on the estimated Additional 401(k) Contribution balance as of the midpoint of the period.

Schedule 10

**Lawrence Meadows**
**Value of Returns on Additional Personal Contributions to 401(k) Plan**
**American Airlines Captain**

| Period Start | Period End | Beginning Balance of Additional Contributions | Additional 401(k) Contribution | Estimated Return (10.76%) | Ending Balance of Additional Contributions | Present Value of Estimated Return at End of Period | Cumulative Present Value |
|---|---|---|---|---|---|---|---|
| | | A | B | C = (A+(B/2)) x 10.76% | D = A+B+C | E | F |
| 10/24/11 | 12/31/11 | $0 | $16,500 | $888 | $17,388 | $888 | $888 |
| 01/01/12 | 12/31/12 | 17,388 | 17,000 | 2,786 | 37,173 | 2,786 | 3,673 |
| 01/01/13 | 12/31/13 | 37,173 | 23,000 | 5,237 | 65,410 | 5,237 | 8,910 |
| 01/01/14 | 12/31/14 | 65,410 | 23,000 | 8,276 | 96,686 | 8,062 | 16,972 |
| 01/01/15 | 12/31/15 | 96,686 | 23,000 | 11,641 | 131,327 | 10,951 | 27,924 |
| 01/01/16 | 12/31/16 | 131,327 | 23,000 | 15,368 | 169,695 | 13,962 | 41,886 |
| 01/01/17 | 12/31/17 | 169,695 | 23,000 | 19,497 | 212,192 | 17,106 | 58,992 |
| 01/01/18 | 12/31/18 | 212,192 | 23,000 | 24,069 | 259,261 | 20,394 | 79,386 |
| 01/01/19 | 12/31/19 | 259,261 | 23,000 | 29,134 | 311,395 | 23,839 | 103,225 |
| 01/01/20 | 12/31/20 | 311,395 | 23,000 | 34,743 | 369,138 | 27,454 | 130,679 |
| 01/01/21 | 12/31/21 | 369,138 | 23,000 | 40,957 | 433,095 | 31,254 | 161,933 |
| 01/01/22 | 12/31/22 | 433,095 | 23,000 | 47,838 | 503,933 | 35,254 | 197,188 |
| 01/01/23 | 12/31/23 | 503,933 | 23,000 | 55,461 | 582,394 | 39,470 | 236,658 |
| 01/01/24 | 12/31/24 | 582,394 | 23,000 | 63,903 | 669,297 | 43,920 | 280,578 |
| 01/01/25 | 12/31/25 | 669,297 | 23,000 | 73,254 | 765,551 | 48,620 | 329,198 |
| 01/01/26 | 12/31/26 | 765,551 | 23,000 | 83,611 | 872,161 | 53,592 | 382,789 |
| 01/01/27 | 12/31/27 | 872,161 | 23,000 | 95,082 | 990,243 | 58,855 | 441,645 |
| 01/01/28 | 03/08/28 | 990,243 | 4,282 | 19,880 | 1,014,405 | 12,224 | 453,869 |
| | | | $382,782 | $631,623 | | $453,869 | |

Note:

The Estimated Return is calculated on the estimated Additional 401(k) Contribution balance as of the midpoint of the period.  This

Schedule 11

**Consumer Price Index**
**2003 through 2013**

| Year | CPI |
|------|-------|
| 2003 | 184.0 |
| 2004 | 188.9 |
| 2005 | 195.3 |
| 2006 | 201.6 |
| 2007 | 207.3 |
| 2008 | 215.3 |
| 2009 | 214.5 |
| 2010 | 218.1 |
| 2011 | 224.9 |
| 2012 | 229.6 |
| 2013 | 233.0 |

| | |
|------|-------|
| Compound Growth Rate | 2.39% |

Schedule 12

**Lawrence Meadows**
**Interest on Retroactively Paid Long Term Disability Benefits**
**American Airlines Captain**
**2007 - 2011**

| Period Start | Period End | Unpaid LTD Benefits | Simple Interest Rate | Years to 12/13/11 | Simple Interest |
|---|---|---|---|---|---|
| 01/01/08 | 01/31/08 | $6,000 | 10% | 3.87 | $2,322 |
| 02/01/08 | 02/29/08 | 6,000 | 10% | 3.79 | 2,274 |
| 03/01/08 | 03/31/08 | 6,000 | 10% | 3.70 | 2,220 |
| 04/01/08 | 04/30/08 | 6,000 | 10% | 3.62 | 2,172 |
| 05/01/08 | 05/31/08 | 6,000 | 10% | 3.53 | 2,118 |
| 06/01/08 | 06/30/08 | 6,000 | 10% | 3.45 | 2,070 |
| 07/01/08 | 07/31/08 | 6,000 | 10% | 3.37 | 2,022 |
| 08/01/08 | 08/31/08 | 6,000 | 10% | 3.28 | 1,968 |
| 09/01/08 | 09/30/08 | 6,000 | 10% | 3.20 | 1,920 |
| 10/01/08 | 10/31/08 | 6,000 | 10% | 3.12 | 1,872 |
| 11/01/08 | 11/30/08 | 6,000 | 10% | 3.03 | 1,818 |
| 12/01/08 | 12/31/08 | 6,000 | 10% | 2.95 | 1,770 |
| 01/01/09 | 01/31/09 | 6,000 | 10% | 2.86 | 1,716 |
| 02/01/09 | 02/28/09 | 6,000 | 10% | 2.79 | 1,674 |
| 03/01/09 | 03/31/09 | 6,000 | 10% | 2.70 | 1,620 |
| 04/01/09 | 04/30/09 | 6,000 | 10% | 2.62 | 1,572 |
| 05/01/09 | 05/31/09 | 6,000 | 10% | 2.54 | 1,524 |
| 06/01/09 | 06/30/09 | 6,000 | 10% | 2.45 | 1,470 |
| 07/01/09 | 07/31/09 | 6,000 | 10% | 2.37 | 1,422 |
| 08/01/09 | 08/31/09 | 6,000 | 10% | 2.28 | 1,368 |
| 09/01/09 | 09/30/09 | 6,000 | 10% | 2.20 | 1,320 |
| 10/01/09 | 10/31/09 | 6,000 | 10% | 2.12 | 1,272 |
| 11/01/09 | 11/30/09 | 6,000 | 10% | 2.03 | 1,218 |
| 12/01/09 | 12/31/09 | 6,000 | 10% | 1.95 | 1,170 |
| 01/01/10 | 01/31/10 | 6,000 | 10% | 1.86 | 1,116 |
| 02/01/10 | 02/28/10 | 6,000 | 10% | 1.79 | 1,074 |
| 03/01/10 | 03/31/10 | 6,000 | 10% | 1.70 | 1,020 |
| 04/01/10 | 04/30/10 | 6,000 | 10% | 1.62 | 972 |
| 05/01/10 | 05/31/10 | 6,000 | 10% | 1.54 | 924 |
| 06/01/10 | 06/30/10 | 6,000 | 10% | 1.45 | 870 |
| 07/01/10 | 07/31/10 | 6,000 | 10% | 1.37 | 822 |
| 08/01/10 | 08/31/10 | 6,000 | 10% | 1.28 | 768 |
| 09/01/10 | 09/30/10 | 6,000 | 10% | 1.20 | 720 |
| 10/01/10 | 10/31/10 | 6,000 | 10% | 1.12 | 672 |
| 11/01/10 | 11/30/10 | 6,000 | 10% | 1.03 | 618 |
| 12/01/10 | 12/31/10 | 6,000 | 10% | 0.95 | 570 |
| 01/01/11 | 01/31/11 | 6,000 | 10% | 0.87 | 522 |
| 02/01/11 | 02/28/11 | 6,000 | 10% | 0.79 | 474 |
| 03/01/11 | 03/31/11 | 6,000 | 10% | 0.70 | 420 |
| 04/01/11 | 04/30/11 | 6,000 | 10% | 0.62 | 372 |
| 05/01/11 | 05/31/11 | 6,000 | 10% | 0.54 | 324 |
| 06/01/11 | 06/30/11 | 6,000 | 10% | 0.45 | 270 |
| 07/01/11 | 07/31/11 | 6,000 | 10% | 0.37 | 222 |
| 08/01/11 | 08/31/11 | 6,000 | 10% | 0.28 | 168 |
| 09/01/11 | 09/30/11 | 6,000 | 10% | 0.20 | 120 |
| 10/01/11 | 10/31/11 | 6,000 | 10% | 0.12 | 72 |
| 11/01/11 | 11/30/11 | 6,000 | 10% | 0.04 | 24 |
| 12/01/11 | 12/12/11 | 2,323 | 10% | 0.00 | 0 |
| Total: | | $284,323 | | | $55,026 |

**Lawrence Meadows**
**Long Term Disability Benefits and Active Medical**
**American Airlines Captain**
**2011 - 2028**

| Period Start | Period End | LTD Benefits | Total Insurance Benefits | Total LTD and Medical Benefits | Present Value of LTD and Medical Benefits |
|---|---|---|---|---|---|
| **Historical:** | | | | | |
| 12/13/11 | 12/31/11 | $3,745 | $645 | $4,390 | $4,390 |
| 01/01/12 | 12/31/12 | 72,000 | 12,734 | 84,734 | 84,734 |
| 01/01/13 | 12/31/13 | 72,000 | 11,623 | 83,623 | 83,623 |
| 01/01/14 | 03/31/14 | 17,741 | 2,932 | 20,674 | 20,674 |
| Subtotal: | | 165,487 | 27,935 | 193,421 | 193,421 |
| | | | | | |
| **Future:** | | | | | |
| 04/01/14 | 12/31/14 | 54,259 | 8,968 | 63,227 | 62,394 |
| 01/01/15 | 12/31/15 | 72,000 | 12,185 | 84,185 | 80,593 |
| 01/01/16 | 12/31/16 | 72,000 | 12,476 | 84,476 | 78,099 |
| 01/01/17 | 12/31/17 | 72,000 | 12,775 | 84,775 | 75,688 |
| 01/01/18 | 12/31/18 | 72,000 | 13,080 | 85,080 | 73,357 |
| 01/01/19 | 12/31/19 | 72,000 | 13,393 | 85,393 | 71,102 |
| 01/01/20 | 12/31/20 | 72,000 | 13,713 | 85,713 | 68,922 |
| 01/01/21 | 12/31/21 | 72,000 | 14,040 | 86,040 | 66,813 |
| 01/01/22 | 12/31/22 | 72,000 | 14,376 | 86,376 | 64,775 |
| 01/01/23 | 12/31/23 | 72,000 | 14,720 | 86,720 | 62,803 |
| 01/01/24 | 12/31/24 | 72,000 | 15,071 | 87,071 | 60,896 |
| 01/01/25 | 12/31/25 | 72,000 | 15,432 | 87,432 | 59,051 |
| 01/01/26 | 12/31/26 | 72,000 | 15,800 | 87,800 | 57,267 |
| 01/01/27 | 12/31/27 | 72,000 | 16,178 | 88,178 | 55,542 |
| 01/01/28 | 03/08/28 | 13,405 | 3,084 | 16,488 | 10,174 |
| Subtotal: | | 1,003,663 | 195,291 | 1,198,954 | 947,476 |
| | | | | | |
| Total: | | $1,169,150 | $223,225 | $1,392,375 | $1,140,897 |

**Lawrence Meadows**
**Assumptions Used**

| | |
|---|---|
| Date of Birth | 3/8/1963 |
| Occupational Seniority Date | 11/19/1991 |
| Date of Termination/Accomodation [1] | 10/24/2011 |
| Date at Age 65 (Mandatory Retirement Age per FAA) | 3/8/2028 |
| Valuation Date | 4/1/2014 |

| | |
|---|---|
| Length of Credited Service as of 11/19/11 | 20.0 years |

Highest Bid Status which his system seniority can hold from: [2]

| | |
|---|---|
| 10/24/11 - 12/31/13 | Captain 737 Intl |
| 01/01/14 - 12/31/22 | Captain 767 Intl |
| 01/01/23 - 03/08/28 | Captain 777 Intl |

Retirement Plans:
   A-Plan (Frozen as of 11/01/12)
     Formula: 1.25% x (Length of Service - 1) x Final Average Earnings

| | |
|---|---|
|      Length of Service as of 11/01/12 | 21.0 years |
|      Pension Credited Service as of 11/01/12  (21 - 1) | 20.0 years |
|      Final Average Earnings per American Airlines | $136,503 |
|      A-Plan Annuity Amount Payable Annually at Age 65: | |
|       1.25% x 20 years x $136,503 = | $34,125 |

   B-Fund (Terminated as of 11/31/12)
     Previously Fully Distributed to Pilot

| | |
|---|---|
| Life Expectancy at Valuation Date [3] | 28.4 years |
| Life Expectancy Date | 8/25/2042 |

| | |
|---|---|
| Discount Rate [4] | 3.55% |

Source:
   [1] Reasonable accommodation to X-Type Check Airman under CBA Sec. 12.B.10
   [2] CBA Sec. 12.B
   [3] US Dept. of Health and Human Services
   [4] US Dept. of the Treasury, Daily Treasury Yield Curve Rates
    30 Year Treasury Constant Maturity

# EXHIBIT   16

Urgent Care Office Clinic Note
* Final Report *

MEADOWS, LAWRENCE M - 55

# * Final Report *

## Chief Complaint
Sx began 4-5 days ago with cough, fever, ST, body aches and chills.

## Assessment/Plan
1. Cough
   Influenza B positive.
   Ordered:   Manual Entry - Influenza POC

2. Influenza B
   Discussion and reassurance.
   Tamiflu as noted below.
   Fluids rest and symptomatic treatment as needed.
   Follow-up not improving next 3-5 days.
   Follow-up sooner new or worsening symptoms.
   Prescription written for wife who is present with similar symptoms at this time.

   Orders:
   Tamiflu 75 mg oral capsule, 1 cap, Oral, BID, X 5 days, # 10 cap, 0 Refill(s),
   Signed: 02/16/18 18:59:00 MST, Acute, 02/21/18, Pharmacy: RITE AID-950 IRON
   HORSE DR., 1 cap Oral BID,x5 days

## History of Present Illness
Patient sudden onset 2 days ago fever chills body aches and chest cough.  Minimal
sore throat or congestion.  No upset stomach.  No flu shot.  Patient is here
concurrently with significant other was similar symptoms.  He did not get flu shots
this year.

## Review of Systems
Constitutional: As noted
Eye: No recent visual problems
ENT: As noted
Respiratory: Shortness of breath
Cardiovascular: No Chest pain, palpitations, syncope
Gastrointestinal: No nausea, vomiting, diarrhea
Musculoskeletal: No back or neck pain, joint pain, muscle pain, or decreased ROM
Integumentary: No rash, pruritus, abrasions
Neurologic: Alert & oriented X 4

PFSH:  Employed, Non-smoker, married

## Physical Exam

   Vitals & Measurements

## Problem List/Past Medical History
Ongoing
   Bursitis

## Procedure/Surgical History
No qualifying data available

## Medications
   allopurinol 100 mg oral tablet, 0, Oral
   Tamiflu 75 mg oral capsule, 75 mg= 1
     cap, Oral, BID
   Zoloft 50 mg oral tablet, 0, Oral

## Allergies
No Known Medication Allergies

## Social History
   Tobacco - 04/27/2017
     Use: Never smoker.

## Lab Results

   Influenza A POC: Negative
   Influenza B POC: Positive

## Imaging Results (Last 24 Hour)
No qualifying data available.

## ECG (Last 12 Hours)
No qualifying data available.

Result type:        Urgent Care Office Clinic Note
Result date:        February 16, 2018 19:01 MST
Result status:      Auth (Verified)
Result title:       Urgent Care Office Visit Note
Performed by:       BOHNN, MD, CRESS R on February 16, 2018 19:02 MST
Verified by:        BOHNN, MD, CRESS R on February 16, 2018 19:02 MST
Encounter info:     1212380889, PKIC_InstaCare, Clinic, 02/16/18 - 02/16/18

Urgent Care Office Clinic Note

MEADOWS, LAWRENCE M - 55████████

* Final Report *

**T:** 36.6  °C (Tympanic)  **HR:** 82(Peripheral)  **RR:** 12  **BP:** 130/83  **SpO2:** 95%
**HT:** 172.7 cm  **WT:** 86.9 kg  **BMI:** 29.14
CONSTITUTIONAL: well appearing in no acute distress.
SKIN: Warm, dry, and intact without rash or open wounds.
EYES: extraocular movements are grossly intact, clear conjunctiva.
HEENT: Normocephalic, atraumatic, moist mucus membranes without erythema or
exudate.  TM's and EAC's clear.
NECK: no obvious swelling, normal range of motion.  No adenopathy.
PULMONARY: CTA without rales rhonchi or wheezing.
CARDIOVASCULAR: regular rate, distal extremities are warm and well perfused.
GASTROINTESTINAL: NA
GENITOURINARY: NA
NEUROLOGIC: normal speech, moves all extremities.
MUSCULOSKELETAL: no gross deformities, atraumatic.
PSYCHIATRIC: ████████████████████████████.
Shock Index: 0.63

**Signature Line**

Electronically Signed on 02/16/18 07:02 PM

_____

BOHNN, MD, CRESS R

**Completed Action List:**
* Perform by BOHNN, MD, CRESS R on February 16, 2018 19:02 MST
* Sign by BOHNN, MD, CRESS R on February 16, 2018 19:02 MST
* VERIFY by BOHNN, MD, CRESS R on February 16, 2018 19:02 MST

Result type:        Urgent Care Office Clinic Note
Result date:        February 16, 2018 19:01 MST
Result status:      Auth (Verified)
Result title:       Urgent Care Office Visit Note
Performed by:       BOHNN, MD, CRESS R on February 16, 2018 19:02 MST
Verified by:        BOHNN, MD, CRESS R on February 16, 2018 19:02 MST
Encounter info:     1212380889, PKIC_InstaCare, Clinic, 02/16/18 - 02/16/18

Printed by: CLUCK, TRACEY ELIZABETH
Printed on: 04/09/2018 10:34 MDT

Urgent Care Office Clinic Note
* Final Report *

MARINO, ANN MARIE - 548████

# * Final Report *

## Vitals and Measurements
**T:** 37.9 °C (Tympanic)  **HR:** 89(Peripheral)  **RR:** 18  **BP:** 125/79  **SpO2:** 97%
**HT:** 156 cm  **WT:** 52 kg  **BMI:** 21.37

## Note
S:

HPI: Started with URI s/sx 4-5 days ago.  Pt now c/o of a minimally
productive cough, chest congestion and soreness, postnasal drip,
fatigue, sore throat, some sinus congestion and ear congestion.  Has
had significant fever /chills to 103°F last night.  No SOB.  Is not
sleeping well at night w/cough. Eating and drinking ok, no
dehydration. Has  ill contacts.  Husband has a flulike illness.


PMH: No history of asthma.  No history of diabetes, heart disease or
significant pneumonias.
SH: No recent  foreign travel  , nonsmoker
ROS:
Constitutional: Generally healthy, active.  Not feeling dehydrated.
HEENT: See HPI
Resp: See HPI
Card: no chest pain but has had bronchial soreness or tightness,
especially with cough.
GI: no nausea or vomiting or abd pain
Lymph: no swollen lymph nodes noted
MS: few myalgias
Neuro: Reports  headache.


O:

General: Alert and oriented x 3, no acute distress, vital signs
reviewed
HEENT: Eyes: EOMI, PERRL. Ears: Canals normal bilaterally; TMs
pearly gray and intact bilaterally. Oropharynx benign, with min
erythema and no exudate.

## Problem List/Past Medical History
Ongoing
    Abdominal pain

## Procedure/Surgical History
No qualifying data available

## Medications
albuterol 90 mcg/inh aerosol inhaler, 2
    puffs, Inhale, every 4 hr, PRN
Armour Thyroid, Oral, Daily
azithromycin 250 mg oral tablet, 250
    mg= 1 tabs, Oral, Daily
Cheratussin AC 10 mg-100 mg/5 mL
    oral syrup, 5 mL, Oral, every 4 hr,
    PRN
fluticasone 50 mcg/inh nasal spray, 2
    sprays, Nasal, Daily
predniSONE 10 mg oral tablet, 10 mg=
    1 tabs, Oral, QID
Wellbutrin, Oral
Med/Rec Done 02/16/18 18:06

## Allergies
Bactrim
sulfa drugs

## Social History
Tobacco - 03/31/2017
    Use: Never smoker.

## Imaging Results (Last 24 Hours)
No qualifying data available.

## ECG (Last 12 Hours)
No qualifying data available.

Result type:      Urgent Care Office Clinic Note
Result date:      February 16, 2018 21:42 MST
Result status:    Auth (Verified)
Result title:     Bronchitis
Performed by:     MCMAHAN, PA-C, MICHAEL G. on February 16, 2018 21:43 MST
Verified by:      MCMAHAN, PA-C, MICHAEL G. on February 16, 2018 21:43 MST
Encounter info:   1212380820, PKIC_InstaCare, Clinic, 02/16/18 - 02/16/18

Urgent Care Office Clinic Note

MARINO, ANN MARIE - ███████

* Final Report *

Neck: Supple, FROM, no lymphadenopathy.
CV: Regular rate and rhythm, no gallops, rubs.  There is a 1/6 systolic
murmur that she is aware of and is thought to be benign.
Lungs: Clear to auscultation bilaterally, no wheezes, rhonchi, or
rales.  Nl resp effort and lung expansion.  Wheezy cough, especially
with forced expiration.
Ext: No cyanosis, clubbing, or edema.
Neuro: No focal neurologic deficits noted.
Psych: Normal mood and affect.

A:
Acute bronchitis
Likely viral
P:
Rx: Cheratussin with codeine cough medicine
albuterol inhaler, prednisone
Rx for azithromycin to be filled next week if symptoms persist,
sooner if they worsen.
 (Discussed med use and possible SE's).
Rest, maintain hydration.  IBU/tylenol for aches.  Humidifier.
RTC 3-5 days if no improvement, sooner if symptoms worsen.
 Expect nonproductive cough to last for 10 days to 2 weeks.
The patient has respiratory symptoms, physical exam and history
consistent with a viral bronchitis. The patient does not show signs of
respiratory distress, hypoxia, or dehydration and is taking adequate
oral intake.
There is no history of asthma. Clinical exam is not concerning for
bacteremia or sepsis.  I am comfortable with home management
and having patient start on antibiotics with option to follow up if
symptoms worsen or persist. The patient was discharged home with
appropriate medications and  follow-up instructions. Return
precautions were given to include increased work of breathing,
purulent sputum, persistent fevers >101 for >2-3 days, severe
vomiting,  lethargy, worsening chest pain, or other new concerns.
Patient and/or Caregiver verbalized understanding, feels

Result type:        Urgent Care Office Clinic Note
Result date:        February 16, 2018 21:42 MST
Result status:      Auth (Verified)
Result title:       Bronchitis
Performed by:       MCMAHAN, PA-C, MICHAEL G. on February 16, 2018 21:43 MST
Verified by:        MCMAHAN, PA-C, MICHAEL G. on February 16, 2018 21:43 MST
Encounter info:     1212380820, PKIC_InstaCare, Clinic, 02/16/18 - 02/16/18

Urgent Care Office Clinic Note

MARINO, ANN MARIE -

* Final Report *

comfortable with proposed plan, and all questions were answered
prior to discharge.

   1. Acute bronchitis
   Orders:
      albuterol 90 mcg/inh aerosol inhaler, 2 puffs, Inhale, every 4 hr, PRN as needed
      for wheezing, # 6.7 g, 0 Refill(s), Signed: 02/16/18 18:05:00 MST,
      Maintenance, Pharmacy: RITE AID-950 IRON HORSE DR., 2 puffs Inhale every
      4 hr,PRN:as needed for wheezing
      azithromycin 250 mg oral tablet, 1 tabs, Oral, Daily, 2 tablets on day 1, then 1
      per day., # 6 tabs, 0 Refill(s), Signed: 02/20/18 18:04:00 MST, Maintenance
      Cheratussin AC 10 mg-100 mg/5 mL oral syrup, 5 mL, Oral, every 4 hr, PRN as
      needed for cough, # 240 mL, 0 Refill(s), Signed: 02/16/18 18:06:00 MST,
      Maintenance
      predniSONE 10 mg oral tablet, 1 tabs, Oral, QID, 1 tab 4 times a day for 5 days
      then 3 tabs per day for 2 days, then 2 tabs per day for 2 days then 1 per day, X
      11 days, # 32 tabs, 0 Refill(s), Signed: 02/16/18 18:05:00 MST, Acute,
      Pharmacy: RITE AID-950 IRON HORSE DR., 1 tabs Ora...

         .

**Signature Line**
Electronically Signed on 02/16/18 09:43 PM

_____

MCMAHAN, PA-C, MICHAEL G.

**Completed Action List:**
* Perform by MCMAHAN, PA-C, MICHAEL G. on February 16, 2018 21:43 MST
* Sign by MCMAHAN, PA-C, MICHAEL G. on February 16, 2018 21:43 MST
* VERIFY by MCMAHAN, PA-C, MICHAEL G. on February 16, 2018 21:43 MST

Result type:       Urgent Care Office Clinic Note
Result date:       February 16, 2018 21:42 MST
Result status:     Auth (Verified)
Result title:      Bronchitis
Performed by:      MCMAHAN, PA-C, MICHAEL G. on February 16, 2018 21:43 MST
Verified by:       MCMAHAN, PA-C, MICHAEL G. on February 16, 2018 21:43 MST
Encounter info:    1212380820, PKIC_InstaCare, Clinic, 02/16/18 - 02/16/18

# EXHIBIT   17

THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

<table>
<tr><td>Lawrence M. Meadows,</td><td>)</td><td>Case No. 2:14-CV-00115-DS</td></tr>
<tr><td>Plaintiff,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ORDER ON PLAINTIFF'S<br>MOTION Seeking Clarification</td></tr>
<tr><td>vs.</td><td>)</td><td>MOTION to Amend/Correct and<br>Memorandum in Support, and</td></tr>
<tr><td></td><td>)</td><td>MOTION to Stay</td></tr>
<tr><td>Allied Pilots Association</td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
</table>

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.      Statement of Facts

American Airlines (American) hired the Plaintiff as a pilot, years ago. (#21, ¶ 11). Plaintiff then became a member in good standing with the Defendant, Allied Pilots Association (the Union). *Id.* Later, Plaintiff suffered an illness and was unable to continue working as a pilot. (#21, ¶ 13). American then allowed Plaintiff to receive long-term disability. (#21, ¶ 14).

Later, American removed Plaintiff from the program. (#21, ¶ 16). After various Court proceedings—some of which are finally decided some of which are stayed, (#35, p. 2)—American informed Plaintiff that he exhausted his Sick Leave of Absence. (#23, Ex. C.). As a result, Plaintiff would need to either obtain approval to continue work as a pilot or to identify a reasonable accommodation to return to work in a different capacity. *Id.* The Sick Leave of Absence extended another two months to give Plaintiff time to decide. *Id.*

1

The two month extension expired and American removed Plaintiff from the Pilot System Seniority List. (#21, ¶ 16). Plaintiff filed Grievance No. 12-011, claiming that removing Plaintiff from that list violated his rights under the Americans with Disabilities Act and was retaliation for his involvement in a prior case against American. (#21, ¶¶ 48-49). American denied the grievance in an appeal hearing. (#21, ¶ 61). Charles Hairston (Hairston), the Union staff attorney, assisted Plaintiff during the appeal hearing. (#21, ¶ 54).

After denial of the appeal, the Union attempted, unsuccessfully, to settle with American. (#21, ¶¶ 64-65). Plaintiff wished to advance the claim to arbitration via the System Board of Adjustment, but the Union denied the request. (#21, ¶¶ 65-66). The Union explained their refusal by stating that the grievance was based on federal statutory claims, which Plaintiff was already pursuing before the appropriate agencies. (#23, Ex. E).

Plaintiff then filed Grievance No. 13-064, alleging that American violated the Collective Bargaining Agreement (CBA) by removing him from the Seniority List. (#21, ¶ 109). Plaintiff presented the Grievance at an appeal hearing; it was denied. (#21, ¶¶ 121-122). Plaintiff asked the Union to advance the claim; that request was denied. (#21, ¶ 123). The Union explained that Plaintiff's request was against the CBA and therefore had to be denied. (#23, Ex. I). Plaintiff filed a complaint (#1) seeking to compel Union and American to arbitrate his grievances.

Plaintiff has since amended his complaint. (#21 Ex. 1). The Union filed a motion to dismiss the amended complaint for failure to state a claim. (#23). The Court issued a judgment concerning the amended complaint and dismissed each claim. (#35). Plaintiff currently seeks clarification concerning the decision handed down by the Court. (#36).

## II.     Analysis

### A.   The Court granted leave to amend..

The Court must grant leave to amend as justice requires. Fed. R. Civ. Pro. 15(a)(2). The Court granted leave to amend, (# 35 p. 3), and utilized the amended complaint found on #21 Ex. 1. Therefore 15(a)(2)'s requirement was met.

### B.   There was no error of law when dismissing Plaintiff's complaint.

All of the Plaintiff's claims were dismissed. Some were dismissed with prejudice and others without prejudice. A claim made by a *pro se* plaintiff is dismissed with prejudice for failure to state a claim when it would be futile to amend because it is obvious that the Plaintiff cannot succeed on the facts as they are presented. *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001) (*citing Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 806 (10th Cir. 1999)). In the instant case, the court was more lenient towards Plaintiff's claims because of his *pro se* status. *See Curley*, 246 F.3d at 1281. Nevertheless, it was clear that the Plaintiff could not succeed on the facts as presented and the claims were dismissed as explained in the previous memorandum decision and clarified herein.

When considering a motion for clarification the standard of review is whether there was a clear error of law. *See e.g. Fenstermacher v. Telelect, Inc.* (*citing Harsco Corp. v. Zlotnick*, 779 F.2d 906, 909 (3d Cir.1985) (*quoted by Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992)).

The Plaintiff in the present case presented three claims upon which he believes relief should be granted. First, he alleges that he has a right to compel arbitration. Second, he contends that the Union has violated its duty of fair representation. Last, he believes that the Union

3

violated Labor-Management Reporting and Disclosure Act of 1959 (LMRDA). Utilizing the

futility standard and the clear error of law standard, the Court will clarify whether the Plaintiff's

First Amended Complaint was dismissed with or without prejudice.

### C.   Plaintiff's Right to Compel Arbitration

Plaintiff contends that he has a right to compel arbitration either through the CBA or as a

statutory right under the Railway Labor Act (RLA). First, Plaintiff presents an argument that

under the CBA he has a right to arbitrate his claims before the System Board. He bases his claim

by quoting § 23(E)(1) of the CBA, which reads: "The System Board shall have jurisdiction over

disputes between any employee covered under this Agreement or between the Association and

the Company growing out of grievances, or out of the interpretation or application of any of the

terms of this Agreement." (#23 Ex. B, § 23(E)(1)). The Plaintiff believes that this statement

means that his claims must be handled by the System Board. (#21, ¶ 149). The Court disagreed

in its memorandum dismissing the Plaintiff's claim. (#35, p. 3). In that decision, the Court held

that a union's constitution, bylaws, and regulations create a binding contract. (#35, p. 3 (*citing*

*James v. Int'l Bhd. of Locomotive Eng'rs*, 302 F.3d 1139, 1146 (10th Cir. 2002))). Further, the

Court held that it must enforce the constitution, bylaws, and regulations if these are free from

invalidity or illegality. (#35, p. 3 (*citing Adams v. Int'l Bhd. of Boilermakers*, 262 F.2d 835, 839

(10th Cir. 1958))). Finding that no bylaw, no section of the Union's Constitution, and no portion

of the CBA granted the Plaintiff the right to arbitrate his claim, the Court held that it was instead

up to the president of the Union to handle such arbitration claims and that the president has the

right to appeal Plaintiff's grievances. Further, the Court did not find nor do the facts suggest that

the constitution, CBA, or bylaws are illegal or invalid. This claim was dismissed with prejudice.

Next, the Plaintiff claims that he has a statutory right under the RLA to compel arbitration. The Court disagreed with him here as well. (#35, p. 4). The Court rejected his claim because Plaintiff relied on dicta from the Eleventh and Third Circuits to support his claim and did not give any explanation or analysis to indicate why the Court should follow the cited dicta. *Id.* However, it is apparent from the record before the Court that the Plaintiff, in agreeing to the CBA, gave his right to arbitrate his grievances to the Union. Any argument that Plaintiff did not contemplate signing away his right to compel arbitration is futile since Plaintiff did in fact sign it away. *See* (#35, p. 4 fn. 2).  The Court did not err in dismissing this claim, with prejudice.

The Court did not err in dismissing the Plaintiff's arbitration claims. The plaintiff, has no contractual right to arbitrate his grievances, and also has no statutory right since he gave that right to the Union. Because the Court did not err, his arbitration claims were dismissed with prejudice.

### D. *Union's Duty of Fair Representation*

Plaintiff also seeks clarification about the dismissal of his claim that the Union violated its duty of fair representation. (#36 ¶ 6). To violate its duty of fair representation, a union's actions during negotiations must be "arbitrary, discriminatory, or in bad faith." *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1357 (10th Cir. 1994). Or the union breaches if its actions are perfunctory. *See Vaca v. Sipes*, 386 U.S. 171, 191 (1967). Courts are deferential towards unions because of the wide latitude needed to bargain effectively. *Considine*, 43 F.3d at 1357. Further, the court found that any breach must seriously undermine the Plaintiff's grievance proceedings. *Hinkley v. Roadway Express, Inc.*, 249 F. App'x 13, 17 (10th Cir. 2007).  And the

courtt held that the Plaintiff must show that if a breach of duty occurred that it must also seriously undermine the Plaintiff's grievance proceedings. *See Hinkley*, 249 F. App'x at 17.

This Court found that the System Board has no power to adjudicate Plaintiff's first grievance, and that his second grievance is not supported by the CBA. Therefore, even if the Union acted arbitrarily, discriminatorily, with bad faith, or perfunctorily the Plaintiff's claim could not stand. Plaintiff's claim that the Union breached its duty of fair representation is futile and that claim was dismissed with prejudice.

The System board did not act arbitrarily. To be arbitrary, the System Board's actions must be so far outside the scope of reasonability that the actions can only be classified as irrational. *Considine*, 43 F.3d at 1357. His assigned counsel did not have a conflict of interest. since his interest and loyalties were not split. Also, the System Board did not have jurisdiction over his first grievance. And, after review, the Union found that the CBA allowed American to remove disabled pilots from the seniority list. Last, the plaintiff did not support his claim that it was arbitrary for the Union not to present his federal claims. Such an allegation was conclusory. Therefore, the allegation that the Union acted arbitrarily is dismissed with prejudice

The Court also found that the Plaintiff could not plausibly claim the Union's actions were discriminatory. (#35 p. 8). This is because the Plaintiff did not claim nor show why the supposed discrimination was invidious, nor why his amended complaint is not similar to his second grievance. (#35 p. 7). The second grievance states that pilots sick or disabled for longer than five years should not accrue seniority; whereas the amended complaint states American did not give notice about removal from the Seniority List. (#21 ¶ 49). Plaintiff should have made sure his

6

claims in his amended complaint were similar to his second grievance. As such, the court did not err in dismissing this portion of the complaint with prejudice.

The Court rejected the arguments that the Union's actions were done in bad faith because bad faith requires showing "fraud, or deceitful or dishonest action," *Considine*, 43 F.3d at 1357, and the circumstances surrounding the fraud must be stated with particularity. Fed. R. Civ. P. 9(b). Plaintiff's allegations were conclusory, since they were not supported with particular facts, and therefore rejected. (#35 p. 8).

The Court rejected the claim that the Union acted perfunctorily, (#35 p. 8), finding that that the Union did not act without concern for Plaintiff's claim, and that the Union gave more than cursory attention to Plaintiff's grievances. *Hinkley*, 249 F. App'x at 17. This is because the Union expended several resources and explained why the Union would not advance his grievances to arbitration. #35 p. 8. Therefore no set of facts that Plaintiff could conjure would indicate that the Union gave only cursory attention to his claim. As such, the Court did not err in dismissing this claim with prejudice.

None of the actions by the Union were perfunctory, made in bad faith, discriminatory, or arbitrary. However, even if they were, none of these violations undermined Plaintiff's claim since the System Board did not have power to adjudicate the first grievance, and the second grievance is not supported by the CBA. As such, the Court's prior dismissal with prejudice of the Plaintiff's claim that the Union violated its duty of fair representation stands.

E.  *Plaintiff's LMRDA Claims*

Plaintiff's LMRDA claims were dismissed by the court because he had not yet exhausted his union remedy. (#35 p. 9). As such, the claim was not timely and therefore dismissed. Plaintiff may file again once he has exhausted Union remedies.

### III.   CONCLUSION

The Court granted Plaintiff's original motion to amend his complaint and considered the amended complaint in connection with the motion to dismiss. The Court dismissed with prejudice Plaintiff's claims that he has a right to compel arbitration and that the Union breached its duty of fair representation. The court dismissed Plaintiff's LMRDA claims, and Plaintiff will need to exhaust his Union remedies before proceeding with his LMRDA claims in this Court. Plaintiff's motion to amend/correct is denied. Plaintiff's motion to stay is denied.  The clerk of the court is directed to close the case.

SO ORDERED.

Dated this 27th day of April, 2015.


David Sam
Senior Judge
United States District Court

8

# EXHIBIT   18

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**ROBERT A. KATZMANN**
CHIEF JUDGE

**CATHERINE O'HAGAN WOLFE**
CLERK OF COURT

Date: March 19, 2018

Docket #: 18-753

Short Title: In re: AMR Corporation
Debtors, Parent, American Airlines

DC Docket #: 16-cv-9429
DC Court: SDNY (NEW YORK CITY)
DC Judge: Carter

## DOCKETING NOTICE

A notice of appeal filed by Lawrence M. Meadows in the above referenced case was docketed today as 18-753. This number must appear on all documents related to this case that are filed in this Court. For pro se parties the docket sheet with the caption page, and an Acknowledgment and Notice of Appearance Form are enclosed. In counseled cases the docket sheet is available on PACER. Counsel must access the Acknowledgment and Notice of Appearance Form from this Court's website http://www.ca2.uscourts.gov.

The form must be completed and returned within 14 days of the date of this notice. The form requires the following information:

YOUR CORRECT CONTACT INFORMATION: Review the party information on the docket sheet and note any incorrect information in writing on the Acknowledgment and Notice of Appearance Form.

The Court will contact one counsel per party or group of collectively represented parties when serving notice or issuing our order. Counsel must designate on the Acknowledgment and Notice of Appearance a lead attorney to accept all notices from this Court who, in turn will, be responsible for notifying any associated counsel.

CHANGE IN CONTACT INFORMATION: An attorney or pro se party who does not immediately notify the Court when contact information changes will not receive notices, documents and orders filed in the case.

An attorney and any pro se party who is permitted to file documents electronically in CM/ECF must notify the Court of a change to the user's mailing address, business address, telephone number, or e-mail.  To update contact information, a Filing User must access PACER's Manage

My Appellate Filer Account, https://www.pacer.gov/psco/cgi-bin/cmecf/ea-login.pl. The Court's records will be updated within 1 business day of a user entering the change in PACER.

A pro se party who is not permitted to file documents electronically must notify the Court of a change in mailing address or telephone number by filing a letter with the Clerk of Court.

CAPTION: In an appeal, the Court uses the district court caption pursuant to FRAP 12(a), 32(a). For a petition for review or original proceeding the Court uses a caption pursuant to FRAP 15(a) or 21(a), respectively. Please review the caption carefully and promptly advise this Court of any improper or inaccurate designations in writing on the Acknowledgment and Notice of Appearance form. If a party has been terminated from the case the caption may reflect that change only if the district court judge ordered that the caption be amended.

APPELLATE DESIGNATIONS: Please review whether appellant is listed correctly on the party listing page of the docket sheet and in the caption. If there is an error, please note on the Acknowledgment and Notice of Appearance Form. Timely submission of the Acknowledgment and Notice of Appearance Form will constitute compliance with the requirement to file a Representation Statement required by FRAP 12(b).

For additional information consult the Court's instructions posted on the website.

Inquiries regarding this case may be directed to 212-857-8628.

Lawrence M. Meadows, Pro Se
PO Box 4344
Park City, UT 84060
Phone: 516-982-7718
E-facsimile: 435-604-7850
lawrencemeadows@yahoo.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 1 6 2018

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LAWRENCE M. MEADOWS,**<br>Appellant. | **PLAINTIFF'S NOTICE OF APPEAL** < |
| **AMR Corporation**, *et. al.*<br>a Delaware Corporation,<br><br>Appellees. | **Case No.  1:16-cv-09429-ALC**<br><br>**Judge Paul Andrew L. Carter, Jr.** |

### NOTICE OF APPEAL

Comes Now, Pro Se Plaintiff, Lawrence M. Meadows in the above styled cause, who

hereby appeals to the United State District Court of Appeals for the Second Circuit, from the

Order (ECF No. 10) and Judgment (ECF No. 11 entered on March 2, 2018.


Dated: this 15th day of March 2018;                         Respectfully Submitted,


_Lawrence M. Meadows. Pro Se_

1

## Certificate of Service

**I hereby certify,** that a true and correct copy of the foregoing was served by U.S. Mail on March 15, 2018 on all counsel or parties of record on the Service List below.

Signature of Filer

## SERVICE LIST

**Stephen Andrew Youngman**
**Alfredo Rey Perez**
**Stephen Karotkin**
Weil, Gotshal & Manges LLP
200 Crescent Court
Dallas, TX 75201
(214)-746-7758
Fax: (214)-746-7777
Email: stephen.youngman@weil.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

CLOSED,APPEAL,ECF

### U.S. District Court
### Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:16-cv-09429-ALC

In Re: AMR Corporation
Assigned to: Judge Andrew L. Carter, Jr
 Case in other court:  USBC-SDNY, 11-B-15463 (SHL)
Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA

Date Filed: 12/06/2016
Date Terminated: 03/02/2018
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal (801)
Jurisdiction: Federal Question

**In Re**

**AMR Corporation**

**Debtor**

**AMR Corporation**

**Appellant**

**Lawrence M. Meadows**                       represented by   **Lawrence M. Meadows**
                                                               P.O. Box 4344
                                                               Park City, UT 84060
                                                               PRO SE

V.

**Appellee**

**AMR Corporation**                           represented by   **Alfredo Rey Perez**
                                                               Weil, Gotshal & Manges LLP (TX)
                                                               700 Louisiana Street, Suite 1700
                                                               Houston, TX 77002
                                                               (713)-546-5040
                                                               Fax: (713)-224-9511
                                                               Email: alfredo.perez@weil.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Stephen Karotkin**
                                                               Weil, Gotshal & Manges LLP (NYC)
                                                               767 Fifth Avenue, 25th Fl.
                                                               New York, NY 10153
                                                               (212) 310-8000
                                                               Fax: (212) 833-3148
                                                               Email: stephen.karotkin@weil.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Stephen Andrew Youngman**
                                                               Weil, Gotshal & Manges LLP
                                                               200 Crescent Court
                                                               Dallas, TX 75201
                                                               (214)-746-7758
                                                               Fax: (214)-746-7777
                                                               Email: stephen.youngman@weil.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

| 12/06/2016 | 1 | NOTICE OF APPEAL FROM THE BANKRUPTCY COURT TO THE S.D.N.Y. from the Order of Judge Sean H. Lane dated October 21, 2016. Bankruptcy Court Case Numbers: 11−B−15463 (SHL). Certified copies of file received.Document filed by Lawrence M. Meadows.(bkar) (Entered: 12/06/2016) |
|---|---|---|
| 12/06/2016 | | Magistrate Judge Andrew J. Peck is so designated. (bkar) (Entered: 12/06/2016) |
| 12/06/2016 | | Case Designated ECF. (bkar) (Entered: 12/06/2016) |
| 12/06/2016 | 2 | DESIGNATION OF BANKRUPTCY RECORD ON APPEAL re: 1 Bankruptcy Appeal,. Document filed by Appellant Lawrence M. Meadows. (bkar) (Entered: 12/06/2016) |
| 12/06/2016 | 3 | COUNTER DESIGNATION OF BANKRUPTCY RECORD ON APPEAL Document filed by Appellee AMR Corporation. (bkar) (Entered: 12/06/2016) |
| 12/14/2016 | 4 | NOTICE OF RECORD OF APPEAL AVAILABILITY (COMPLETION). Re: 1 Bankruptcy Appeal,. All Documents from the United States Bankruptcy Court − Southern District of New York have been filed with the U.S.D.C. S.D.N.Y. Record of Appeal is Complete and Available Electronically. Appellant Brief due by 1/13/2017. (bkar) (Entered: 12/14/2016) |
| 12/28/2016 | 5 | LETTER addressed to Judge Andrew L. Carter, Jr. from Lawrence M. Meadows, dated 12/27/16 re: Appellant requests that the Court grant him an extension of forty−five days for the appellant's scheduled Brief date of 1/13/17 and the appellees' respective briefing deadlines. Document filed by Lawrence M. Meadows.(sc) (Entered: 12/28/2016) |
| 01/04/2017 | 6 | MEMO ENDORSEMENT on re: 5 Letter, filed by Lawrence M. Meadows. ENDORSEMENT: So ordered., ( Appellant Brief due by 2/27/2017., Appellee Brief due by 5/15/2017.) (Signed by Judge Andrew L. Carter, Jr on 1/4/2017) Copies Mailed By Chambers. (lmb) (Entered: 01/04/2017) |
| 03/07/2017 | 7 | APPELLANT'S OPENING BRIEF. Document filed by Lawrence M. Meadows. Appellee Brief due by 4/6/2017. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit)(sc) (Entered: 03/08/2017) |
| 03/08/2017 | 8 | APPELLANTS' RECORD EXCERPTS APPENDIX VOLUME 4 OF 7. Document filed by Lawrence M. Meadows. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit) (sc) (Entered: 03/17/2017) |
| 05/15/2017 | 9 | Appellee's BRIEF. Document filed by AMR Corporation. Appellant Reply Brief due by 5/30/2017. (Youngman, Stephen) (Entered: 05/15/2017) |
| 03/02/2018 | 10 | ORDER. The Bankruptcy Court's orders enforcing the plan injunction against Meadows are affirmed. The Clerk of Court is respectfully directed to enter judgment and terminate the case. So ordered. (Signed by Judge Andrew L. Carter, Jr on 3/2/2018). Copies Mailed By Chambers. (rjm) (Entered: 03/02/2018) |
| 03/02/2018 | | Transmission to Judgments and Orders Clerk. Transmitted re: 10 Order to the Judgments and Orders Clerk. (rjm) (Entered: 03/02/2018) |
| 03/02/2018 | 11 | CLERK'S JUDGMENT re: 10 Order, in favor of AMR Corporation against Lawrence M. Meadows. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Order dated March 2, 2018, the Bankruptcy Court's orders enforcing the plan injunction against Meadows are affirmed; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 03/02/2018) (Attachments: # 1 Right to Appeal)(km) (Entered: 03/02/2018) |
| 03/16/2018 | 12 | NOTICE OF APPEAL from 11 Clerk's Judgment, 10 Order. Document filed by Lawrence M. Meadows. Filing fee $ 505.00, receipt number 465401204698. Form D−P is due within 14 days to the Court of Appeals, Second Circuit. (tp) (Entered: 03/19/2018) |
| 03/19/2018 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 12 Notice of Appeal. (tp) (Entered: 03/19/2018) |

| 03/19/2018 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 12 Notice of Appeal filed by Lawrence M. Meadows were transmitted to the U.S. Court of Appeals. (tp) (Entered: 03/19/2018) |

# EXHIBIT   19

**Subject:**  RE: POC, Grievance Hearing Date, BOD Meeting

**From:**  Hairston, Charles R. (chairston@alliedpilots.org)

**To:**  lawrencemeadows@yahoo.com; copelandthomas@hotmail.com; ivanmad@aol.com;

**Date:**  Friday, January 17, 2014 2:56 PM


Larry –


As you know, Grievance No. 12-011 was not advanced to the System Board and has been closed.  Your most recent grievance, No. 13-064, is pending appeal hearing.  You are free to pursue whatever remedies you wish during that hearing.  <u>As we have discussed, APA does not represent you since you are no longer a member of the bargaining unit.</u>


As far as scheduling, you elected not to proceed with the hearing on the previously scheduled date of January 16, 2013.  It is my understanding that Tom and Ivan are waiting for schedules to come out on the 18th to see whether February is workable from their end.  We will let you know what the schedule looks like.


Charles R. Hairston

Attorney / Election Administrator

Allied Pilots Association
14600 Trinity Boulevard
Suite 500
Fort Worth, Texas 76155-2512

Telephone: (817) 302-2178
Facsimile: (817) 302-2187


THIS E-MAIL MAY CONTAIN CONFIDENTIAL OR PRIVILEGED INFORMATION.  IF YOU BELIEVE YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY.


**From:** Lawrence Meadows [mailto:lawrencemeadows@yahoo.com]
**Sent:** Friday, January 17, 2014 3:27 PM
**To:** Hairston, Charles R.; Copeland, Thomas J.; Rivera, Ivan - Sec
**Subject:** POC, Grievance Hearing Date, BOD Meeting


Hello Chuck,

I just wanted to follow-up with you on a few items;

1.  It is my understanding that the SDNY issued an order that all claims arising under the rejection of executory contracts (CBA) must be filed by Jan 24th, and that APA is amending/updating its umbrella Proof of Claim. I just want to be sure that my legal remedies under my previously preserved grievance #12-011  continue to be preserved, and  that the contractual and legal remedies under my pending grievance #13-064 are also fully preserved. Please let me know what action APA is taking related to preservation all of my grievance claims against AA related to my termination and removal form the seniority list, which arose under the CBA pre-commencement.

2.   Any word on scheduling for my grievance? I understand Feb. is bad for Thomas, but just want to let you know that I can be available anytime in Feb.or March, and would like to re-schedule at the earliest date possible that works for everyone involved.

3.   Finally, I saw brief blurb in the APA news digest that yesterday Bennett had briefed the BOD on the LTD 5 year rule, and the possibility of an extension or reinstatement to the seniority list. Could you elaborate more on that matter, and let me know what it means as it relates to me and my current grievance.

Thanks,

Larry

# EXHIBIT   20

# JOINT COLLECTIVE BARGAINING AGREEMENT (JCBA)

between

## AMERICAN AIRLINES, INC.

and

## THE AIRLINE PILOTS

in the service of

## AMERICAN AIRLINES, INC.
and
## US AIRWAYS, INC.

as represented by the

## ALLIED PILOTS ASSOCIATION

## EFFECTIVE: JANUARY 30, 2015

# AGREEMENT
## between
## AMERICAN AIRLINES, INC.
### and
## THE AIR LINE PILOTS
### in the service of
## AMERICAN AIRLINES, INC. and US AIRWAYS, INC.
### as represented by the
## ALLIED PILOTS ASSOCIATION
## Effective: January 30, 2015

THIS AGREEMENT is made and entered into in accordance with the provisions of the Railway Labor Act, as amended, by and between AMERICAN AIRLINES, INC., hereinafter known as the "Company", and the air line pilots in the service of AMERICAN AIRLINES INC. and US AIRWAYS, INC. as represented by the ALLIED PILOTS ASSOCIATION, hereinafter known as the "Association".

In making this Agreement the parties hereto recognize that compliance with the terms of the Agreement and the development of a spirit of cooperation is essential for mutual benefit and for the intent and purpose of this Agreement.

It is hereby mutually agreed:

# Table of Contents
## Sections

Note: Single vertical line in the table of Contents indicates the Section, Supplement or Letter was not contained in the Merger Transition Agreement (MTA).

Single vertical line in the body of this Agreement indicates a change from the MTA, revision 1.

| Section | Subject | Page |
|---|---|---|
| 1. | RECOGNITION AND SCOPE | 1-1 |
| 2. | DEFINITIONS | 2-1 |
| 3. | PAY | 3-1 |
| 4. | MINIMUM GUARANTEES | 4-1 |
| 5. | PAY AND CREDIT PILOT RELIEVED OF FLYING DUTIES | 5-1 |
| 6. | TRAINING | 6-1 |
| 7. | EXPENSES AWAY FROM BASE | 7-1 |
| 8. | MOVING EXPENSES | 8-1 |
| 9. | VACATIONS | 9-1 |
| 10. | SICK LEAVE | 10-1 |
| 11. | LEAVES OF ABSENCE | 11-1 |
| 12. | SUPERVISORY PILOTS, CHECK AIRMEN & FLIGHT TEST | 12-1 |
| 13. | SENIORITY | 13-1 |
| 14. | PROBATION PERIOD | 14-1 |
| 15. | HOURS OF SERVICE and WORK RULES | 15-1 |
| 16. | CERTIFICATES AND RATINGS | 16-1 |
| 17. | FILLING VACANCIES, DISPLACEMENTS, REINSTATEMENTS, FURLOUGHS, AND RECALLS | 17-1 |
| 18. | HOME BASES | 18-1 |
| 19. | MISCELLANEOUS FLYING, JUMPSEAT, DEADHEAD, TRAVEL | 19-1 |
| 20. | PHYSICAL EXAMINATIONS | 20-1 |
| 21. | DISCIPLINE, GRIEVANCES, HEARINGS, AND APPEALS | 21-1 |
| 22. | PRE-ARBITRATION CONFERENCE | 22-1 |
| 23. | SYSTEM BOARD OF ADJUSTMENT | 23-1 |
| 24. | GENERAL | 24-1 |
| 25. | AGENCY SHOP AND DUES CHECKOFF | 25-1 |
| 26. | DURATION | 26-1 |

# Table of Contents
## Supplements

| Supplement | Subject | Page |
|---|---|---|

| Supplement A | Reserved | A-1 |
| Supplement B | Reserved | B-1 |
| Supplement C | TWA Pilot Protected Positions | C-1 |
| Supplement D | MTA Scope Supplement | D-1 |
| Supplement E | Reserved | E-1 |
| Supplement F | Pilot Retirement Benefit Plans | F-1 |
| Supplement G | Commuter Policy | G-1 |
| Supplement H | Civil Reserve Air Fleet (CRAF) | H-1 |
| Supplement I | International Agreement | I-1 |
| Supplement J | Brake Release Agreement | J-1 |
| Supplement K | Retiree Medical Coverage | K-1 |
| Supplement L | Drug and Alcohol Testing | L-1 |
| Supplement M | Reserved | M-1 |
| Supplement N | CPA Pay-out Provisions | N-1 |
| Supplement O | Temporary Check Airman Provisions | O-1 |
| Supplement P | International Crew Bases | P-1 |
| Supplement Q | Crew Rest Seats | Q-1 |
| Supplement R | Reserved | R-1 |
| Supplement S | Reserved | S-1 |
| Supplement T | Reserved | T-1 |
| Supplement U | LAX Supplemental Flying (SAN) | U-1 |
| Supplement V | Reserved | V-1 |
| Supplement W | Eagle Flow-Thru | W-1 |
| Supplement X | Reserved | X-1 |
| Supplement Y | Training Provisions | Y-1 |
| Supplement Z | Terrorism, Sabotage or Hostage | Z-1 |

# Table of Contents
## Letters

| Letter | Subject | Page |
|---|---|---|
| Letter A. | Telephonic Recording System | 1 |
| Letter B. | Codesharing Examples | 1 |
| Letter C (1). | ACARS | 1 |
| Letter C (2). | Flight Data Recorder | 3 |
| Letter C (3). | ACARS Update | 5 |
| Letter D. | Central Crew Tracking | 1 |
| Letter E. | Paper Trip Selections (until PBS Implementation) | 1 |
| Letter F. | Company Issued Tablet Computers | 1 |
| Letter G. | Furlough Length of Service | 1 |
| Letter H. | Reserved | 1 |
| Letter I. | Reserved | 1 |
| Letter J. | Training Prohibit Days | 1 |
| Letter K. | Reserved | 1 |
| Letter L. | Layovers and Change of Airports Other Than Co-Terminals | 1 |
| Letter M. | Airport Parking Permits | 1 |
| Letter N. | Captain's Recommendation Re: Hotels During OSO | 1 |
| Letter O. | Reserved | 1 |
| Letter P. | Reserved | 1 |
| Letter Q. | Accommodation of Other Airline Jump Seat Riders in the Cabin | 1 |
| Letter R. | Crew Meals | 1 |
| Letter S. | Reserved | 1 |
| Letter T. | Recall Deferral | 1 |
| Letter U. | Weighted Average Cost of Capital | 1 |
| Letter V. | Crew Rest Facilities | 1 |
| Letter W. | Former America West Pilot Rapid Accrual | 1 |
| Letter X. | Reserved | 1 |
| Letter Y. | Reserved | 1 |
| Letter Z. | Maintenance Prior to Takeoff | 1 |
| Letter AA. | Affiliation of American Airlines Group, Inc. | 1 |
| Letter BB. | Reserved | 1 |
| Letter CC. | Reserved | 1 |
| Letter DD. | Reserved | 1 |
| Letter EE. | Reserved | 1 |
| Letter FF. | Reserved | 1 |
| Letter GG. | Processing of Removals from Prior Removal Sequences | 1 |
| Letter HH (1). | Displacement Flying While on Union Leave | 1 |
| Letter HH (2). | Flying While on Union Leave | 3 |
| Letter II. | PU If Needed | 1 |
| Letter JJ (1). | Scope: Commuter Codeshare | 1 |
| Letter JJ (2). | Scope: Removing AA Code from OA Flights | 3 |
| Letter JJ (3). | Scope: Route Profitability Analysis | 5 |
| Letter JJ (4). | Scope: Excess Baggage | 15 |
| Letter JJ (5). | Scope: Baseline Correction | 17 |

Letter JJ (6). Reserved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Letter KK (1). Long Term Disability Pre-October 1, 2012 . . . . . . . . . . . . . . . . . . . 1
Letter KK (2). Long Term Disability Post October 1, 2012 . . . . . . . . . . . . . . . . . 3
Letter LL.       Reserved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Letter MM.    Reserved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Letter NN.     Reserved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Letter OO.     Reserved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Letter PP.       Reserved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Letter QQ.     Reserved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Letter RR.      Reserved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Letter SS.      Reserved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Letter TT.       Furlough Stand in Stead . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Letter UU.     Reserved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Letter VV.      Reserved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Letter WW.    CPA Fill Up/Payout Option . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

fedex.com  1.800.GoFedEx  1.800.463.3339

# FedEx
Express

## Package
## US Airbill

FedEx
Tracking
Number   8106 6127 5174

**1 From**   Date  4/24/18

Sender's
Name   Lawrence Meadows   Phone  510 982-7718

Company   Case No 1 17-cv-22589-JLK

Address   1900 Sunset Harbour Dr #2112

City   Miami Beach   State  FL   ZIP  33139

**2 Your Internal Billing Reference**

**3 To**
Recipient's
Name   Clerk of Court

Company   Wilkie D Ferguson Jr U.S. Courthouse   Phone  305 523-5100

Address   400 North Miami Ave

We cannot deliver to P.O. boxes or P.O. ZIP codes.

City   Miami   State  FL   ZIP  33128

8106 6127 5174

---

## 4 Express Package Service   *To most locations.

Packages up to 150 lbs.
For packages over 150 lbs., use the
FedEx Express Freight US airbill.

- [ ] FedEx First Overnight
- [ ] FedEx Priority Overnight
- [X] FedEx Standard Overnight
- [ ] FedEx 2Day A.M.
- [ ] FedEx 2Day
- [ ] FedEx Express Saver

## 5 Packaging   *Declared value limit $500.

- [X] FedEx Envelope*
- [ ] FedEx Pak*
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

## 6 Special Handling and Delivery Signature Options

- [ ] SATURDAY Delivery
- [ ] No Signature Required
- [X] Direct Signature
- [ ] Indirect Signature

**Does this shipment contain dangerous goods?**
- [ ] No
- [ ] Yes (Shipper's Declaration not required)
- [ ] Yes (As per attached Shipper's Declaration)
- [ ] Cargo Aircraft Only
- [ ] Dry Ice

## 7 Payment   Bill to:

- [X] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

Total Packages   Total Weight   Total Declared Value

644

Rev. Date 3/11 • Part #157382 • ©2011-2011 FedEx • PRINTED IN U.S.A. SRCA 6030

## Recipient's Copy

fedex.com  1.800.GoFedEx  1.800.463.3339