UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**LAWRENCE MEADOWS,**

    Plaintiff,                                   **CASE NO. 1:17-CV-22589-EA**

v.

**ALLIED PILOTS ASSOCIATION, *et al.*,**

    Defendants.

_____/

## TIME-SENSITIVE MOTION FOR A STAY OF DEPOSITIONS AND MOTION FOR A PROTECTIVE ORDER

Defendant Allied Pilots Association ("APA") respectfully requests a stay of eight subpoenas that that currently require compliance between October 17-30, 2025, as well as a protective order clarifying the permissible bounds of discovery in this matter. Plaintiff Lawrence Meadows has served no discovery requests on APA. Instead, over the course of less than a week, he served eight Rule 45 subpoenas, each seeking both deposition testimony and production of documents. Four of those subpoenas were served on non-parties (including current and former APA officers, representatives, and outside counsel), and another four were served on current employees/agents and officers of APA in an attempt to circumvent the rules pertaining to party discovery. In addition, four of the eight subpoenas were issued to attorneys, and seven subpoenas expressly seek privileged communications. The subpoenas also seek information that postdates the Amended Complaint by four years or more.

Defendant APA requests an order (1) temporarily staying enforcement of the subpoenas to allow time to resolve this motion, (2) clarifying that the permissible subjects of discovery do not include events and communications occurring between 2022 and 2025, (3) limiting the scope of

permissible discovery to preclude discovery requests that explicitly seek privileged material, and permitting APA to conduct a privilege review of potentially privileged documents possessed by the non-party witnesses, (4) prohibiting Plaintiff from using Rule 45 subpoenas issued to APA attorneys and officers to seek documents belonging to APA, and (5) instructing the parties to confer regarding a reasonable schedule for any depositions to occur.[1]

## BACKGROUND

APA is a labor union that represents the pilots at American Airlines. Dkt. No. 35 (Am. Compl.) ¶ 3. Plaintiff, a former employee of American Airlines and former member of APA, was terminated by American Airlines, Inc. ("American") in 2011 after remaining inactive due to medical disability for more than five years. *Id.* ¶¶ 15, 17. Plaintiff has filed a "blizzard" of cases against American related to his termination, none of which has been successful. *See* Report and Recommendations, *Meadows v. Am. Airlines*, Case No. 1:24-cv-20518-DPG, 2024 WL 5248006, at *5-6 (S.D. Fla. Oct. 22, 2024). Plaintiff brought a previous lawsuit against APA arising out of many of the same facts, which was dismissed in 2014. *See Meadows v. APA*, Case No. 2:14-cv-00115-DS, 2015 WL 13650044, at *4 (D. Utah Apr. 27, 2015), *aff'd*, 822 F. App'x 653 (10th Cir. 2020).

Plaintiff filed his original complaint in this case on July 11, 2017. He filed the operative Amended Complaint on October 16, 2018. *See* Dkt. No. 35. The Amended Complaint asserts breach of duty-of-fair-representation claims under the Railway Labor Act ("RLA"), claims under

---

[1] To reserve its rights, APA intends to serve on Plaintiff a notice for him to be deposed on October 31, 2025, which would fall after Plaintiff is scheduled to provide APA with written discovery responses on October 27, 2025. APA is amenable to conferring with Plaintiff about an alternative date for that deposition if the Court so allows.

the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), as well as two state-law breach of contract claims covering the same allegations. Among other allegations, Plaintiff alleged that APA improperly delayed resolving Grievance 12-012, which Plaintiff alleges pertains to pilots who were terminated due to medical disability, and retaliated against him for filing lawsuits and criticizing APA. The allegations describe conduct allegedly occurring between 2011 and 2018. *See id.* at ¶¶ 246, 348.

At the parties' joint request, the lawsuit was stayed on November 1, 2018. Dkt. No. 37. The parties sought to settle the claims over a period of several years while Plaintiff pursued other lawsuits against APA and American Airlines. Dkt. No. 72 at 20. The stay was lifted on March 11, 2025. Dkt. No. 50.

For several months, Plaintiff has told APA and the Court that he intends to move for leave to amend the complaint to include new facts and theories pertaining to events that occurred between 2022 and January 2025. *See* Dkt. No. 89 ¶ 3. APA has told Plaintiff that it would oppose any such motion. *Id.* Plaintiff has not filed any motion for leave to amend, meaning that the claims in the case as it stands today pertain to events that allegedly occurred before October 2018.

Discovery is currently set to close on November 1, 2025. Dkt. No. 74. APA served written discovery requests on Plaintiff on August 8, 2025. Plaintiff has not served any discovery requests on APA itself. The parties filed a joint motion to extend the discovery deadline on September 4, 2025, which remains pending. Dkt. No. 89. During the meet-and-confer sessions over that joint motion, lead counsel for APA, Joshua Shiffrin, informed Plaintiff that he would be unavailable in late October due to pre-trial proceedings and preparations for a November 3-14, 2025 trial in *Board of Trustees of the Bakery and Confectionery Union and Industry International Pension Fund v. United States Bakery, et al.*, Case No. 3:21-cv-00617-SI (D. Or.). *See* Dkt. No. 89 ¶ 9. APA also

3

agreed to extend Plaintiff's deadline to respond to APA's discovery requests until October 27, 2025 as part of the meet-and-confer about the joint motion to extend discovery deadlines.

Between October 2 and 8, 2025, Plaintiff gave APA notice of eight subpoenas seeking both deposition testimony and production of documents. *See* Exs. 1-8 (Subpoenas). The subpoena recipients are:

- Sue Edwards: Attorney, Outside Counsel to APA
- James Clark: Attorney, APA Senior Director of Legal Affairs
- Mark Myers: Attorney, APA Director of Pilot Negotiations and Contract Administration
- Tricia Kennedy: Attorney, APA Director of Grievances and Dispute Resolution
- Nick Silva: President of APA
- Edward Sicher: Former President of APA
- Tom Rempfer: Former Committee Chair at APA
- Jay Wilhelm: Miami Base Chair at APA

*See* Clark Decl. ¶¶ 2, 4-9. (describing identities of deponents). To APA's knowledge, the subpoena on Jay Wilhelm has not yet been served as of the time of this filing.

The subpoenas largely seek information regarding events and communications that postdate the October 2018 Amended Complaint by many years. During the October 9 meet-and-confer telephone call, Plaintiff explained his intent to use the discovery sought by the subpoenas to investigate new claims that he may seek leave to assert against APA. Multiple subpoenas request documents "post-Sicher recall," an event that occurred in October 2024. *See* Ex. 3 (Myers Subpoena), No. 8; Ex. 6 (Sicher Subpoena), No. 6; Ex. 7 (Rempfer Subpoena), Nos. 5-6; Ex. 8 (Wilhelm Subpoena), No. 2. The subpoena to Mr. Rempfer seeks multiple documents from May 2023. *See* Ex. 7 (Rempfer Subpoena), Nos. 3-4. The subpoena to Captain Sicher exclusively

4

requests documents from 2022-2025. *See* Ex. 6 (Sicher Subpoena), Nos. 1-7. Many of the requests pertain to a settlement that APA entered into in January 2025 with American Airlines regarding Grievance 23-031. Ex. 1 (Edwards Subpoena), Nos. 3, 6; Ex. 2 (Clark Subpoena), No. 7; Ex. 3 (Myers Subpoena), No. 8; Ex. 4 (Kennedy Subpoena), No. 4; Ex. 8 (Wilhelm Subpoena), No. 1.

All four subpoenas to attorneys seek expressly privileged communications. For example, the subpoena to outside counsel Ms. Edwards seeks "[a]ll emails/texts between you and James Clark, Mark Myers, Trish Kennedy, or Nick Silva (2023-present)" on four listed topics. Ex. 1 (Edwards Subpoena), No. 5. The subpoena to in-house attorney Ms. Kennedy seeks her communications with Ms. Edwards over a January 2025 settlement agreement. *See* Ex. 4 (Kennedy Subpoena), No. 4. The subpoena to in-house attorney Mr. Myers seeks "[a]ny behind-the-scenes communication, texts, memos, notes, with Sue Edwards, Jim Clark, Trish Kennedy, or Nick Silva after June 24, 2024," as well as "[e]very email/text with Clark, Kennedy, Silar, or Edwards post-Sicher recall" about two grievances and a 2025 letter. *See* Ex. 3 (Myers Subpoena), Nos. 6, 8.

The non-attorney subpoenas also expressly request privileged communications. The subpoena to Captain Sicher requests "[a]ny directive you gave Trish Kennedy or APA legal (July 13-14, 2024)"—a time period when Sicher was President of APA—"to schedule or move grievance 12-11 forward for expedited hearing." Ex. 6 (Sicher Subpoena), No. 4. That subpoena also requests "[a]ll communications with Sue Edwards (mid-May 2024 onward)" regarding four topics. *Id.* No. 2. The subpoena to Captain Wilhelm seeks his communications with APA attorneys Mr. Clark and Ms. Edwards, as well as "[a]ny communications . . . with any APA . . . attorneys" regarding two topics related to Meadows, and "[a]ll . . . memos . . . mentioning Meadows, lawsuit . . . retaliation," and similarly broad topics. *See* Ex. 8 (Wilhelm Subpoena), Nos. 1, 5-6. The copy of the subpoena to APA President Nick Silva that was served on APA counsel refers to an Exhibit A, but no exhibit

5

was included with the subpoena. The inclusion of requests for communications between attorneys and President Silva on other subpoenas nonetheless show Mr. Meadows' attempt to access President Silva's privileged communications as well.

All of the subpoenas also command each witness to bring their "personal cell phone" and laptop, with "device unlocked" to the deposition. *See* Exs. 1-8.

The subpoenas are noticed for a two-week period across four states. *See* Exs. 1-8. Plaintiff unilaterally chose the dates without prior notice to APA counsel.

- Sue Edwards: October 17, 9:00 AM, Albany, NY
- Tom Rempfer: October 17, 12:30 PM, Tucson, AZ or Hereford, AZ
- Jay Wilhelm: October 23, 2025, 8:00 AM, Miami Beach, FL
- Edward Sicher: July 23, 2025, 9:30 AM, Miami Beach, FL[2]
- Mark Myers: October 28, 2025, 10:00 AM, Dallas, TX
- Tricia Kennedy: October 29, 2025, 9:00 AM, Dallas, TX
- James Clark: October 29, 2025, 1:00 PM, Dallas, TX
- Nick Silva: October 30, 2025, 9:00 AM, Dallas, TX

APA's counsel emailed Plaintiff on October 8 and described the nature of this dispute. After APA's counsel met and conferred with Plaintiff on October 9, 2025, APA utilized the Court's procedures under its Standing Discovery Order to bring this dispute to the Court's attention that same day. APA received an email from Chambers granting it permission to file this motion for a protective order and seek a stay.

---

[2] The subpoena to Captain Sicher is defective in that it sets a deposition for a date in the past. Presumably, Plaintiff intended to notice the deposition for a date in October.

**LEGAL STANDARD**

Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The district court's role is to "balance the interests of those requesting the order." *St. Louis Condo. Ass'n Inc. v. Rockhill Ins. Co.*, Case No. 18-cv-21365, 2019 WL 2011401, at *1 (S.D. Fla. Mar. 11, 2019) (citing *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91 (11th Cir. 1989)). A party seeking a protective order makes the proper showing by "demonstrat[ing] good cause," and "mak[ing] 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Id.* (quoting *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. 2005)).

**ARGUMENT**

APA seeks a protective order under Rule 26(c) for several reasons. First, Plaintiff is abusing the discovery process to seek information about claims that he has not sought leave to assert—and that would be out of time if he sought to assert them—rather than use it for discovery regarding the claims actually at issue in the Amended Complaint. Second, Plaintiff should not be permitted to propound discovery requests that primarily seek privileged communications. It would be unduly burdensome and harassing to expect attorney witnesses to produce privilege logs, or sit for depositions, regarding largely privileged information. The discovery requests to non-party individuals also put APA's privileged information at risk, as the subpoenas call for the non-parties (who may possess privileged information given their roles and former roles as officers and representatives of APA) to disclose communications with APA attorneys. Third, Plaintiff is seeking to impermissibly circumvent the rules on party discovery by serving subpoenas on APA's in-house attorneys that call for information belonging to APA. Finally, the schedule for the eight depositions

7

unilaterally established by the Plaintiff is unreasonable, particularly in light of the document requests made in connection with those subpoenas.

**I.     A Protective Order Is Necessary Because the Subpoenas Impermissibly Seek Discovery Regarding Events Not Relevant to the Claims Asserted in the Amended Complaint**

As described above, the Amended Complaint was filed in October 2018, and it alleges facts, and asserts certain claims and legal theories, based on alleged events that occurred before the date of filing. In contrast, the subpoenas served by Plaintiff largely seek the production of documents regarding events that post-date the facts alleged in the Amended Complaint by many years—primarily from 2022 to January 2025. Ex. 1 (Edwards Subpoena), Nos. 4-6; Ex. 2 (Clark Subpoena), Nos. 4-8; Ex. 3 (Myers Subpoena), Nos. 6-8; Ex. 4 (Kennedy Subpoena), Nos. 3-4, 6-8; Ex. 6 (Sicher Subpoena), Nos. 1-7; Ex. 7 (Rempfer Subpoena), Nos. 3-6; Ex. 8 (Wilhelm Subpoena), Nos. 1-3, 5-6. As described above, the requests seek information that is far afield from, and not relevant to, any claim asserted in the Amended Complaint—such as the recall of APA President Sicher by the APA Board in October 2024 and the subsequent disbandment of an APA committee by President Silva. Ex. 2 (Clark Subpoena), No. 5; Ex. 4 (Kennedy Subpoena), No. 6; Ex. 7 (Rempfer Subpoena), Nos. 5-6; Ex. 8 (Wilhelm Subpoena), No. 2. In fact, several of the proposed deponents had no knowledge or awareness of Plaintiff, his claims, or the underlying events at the time the Amended Complaint was filed in 2018.  Presumably, Plaintiff intends to ask the deponents questions that are similarly disconnected from the allegations of the Amended Complaint.

Among the topics identified in Plaintiffs' requests is the settlement of Grievance 23-031, which occurred in January 2025.[3] Although that grievance's predecessor is the subject of Count III of the Amended Complaint, the legal theory stated in the Amended Complaint is that APA breached its duty of fair representation by failing to advance the grievance to arbitration prior to the filing of the Amended Complaint in October 2018. *See* Dkt. No. 35 ¶ 250. Now that Grievance 23-031 has been settled, Plaintiff appears to want to explore a new theory of liability not asserted in the Amended Complaint, which is that, after advancing the grievance to arbitration, APA breached its duty of fair representation by agreeing to a negotiated resolution of the grievance in 2025. The allegations of the Amended Complaint do not state such a theory.

It is unsurprising, then, that Plaintiff has represented to APA (and the Court, *see* Dkt. No. 89 ¶ 3) that he intends to file a motion for leave to amend his complaint to assert a new claim based on APA's settlement of Grievance 23-031. APA has told Plaintiff that it would oppose any such motion. Among other reasons, because Plaintiff became aware of the settlement in January 2025, any such claim would now be untimely under the six-month statute of limitations that applies to claims for breach of the duty of fair representation under the Railway Labor Act. *Smallakoff v. Air Line Pilots Ass'n, Int'l*, 825 F.2d 1544, 1545-46 (11th Cir. 1987). Further, the deadline for motions for leave to amend pleadings under the Court's scheduling order passed on June 27, 2025. Dkt. No. 74. As Plaintiff has failed to timely seek leave to file a second amended complaint, it is clear that his intention in serving these subpoenas is nothing more than to seek discovery on claims that he has not asserted, and which he cannot assert at this time. In fact, Plaintiff stated in the parties'

---

[3] Grievance 23-031 is a successor to Grievance 12-012, the grievance that is one of the subjects of the Amended Complaint. Grievance 12-012 was extinguished in 2023 when then-President Sicher converted it to Presidential Grievance 23-031.

9

October 9 telephonic meet and confer that he plans to use the subpoenas to develop evidence for claims that he has not yet sought to assert.

Under Rule 26, discovery is to be limited to matters "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While courts have construed the term "relevant" broadly, "the scope of discovery . . . is not without limits." *Auto-Owners Ins. Co.*, 231 F.R.D. at 430. (citing *Oppenheimer Fund v. Sanders,* 437 U.S. 340, 351 (1978)). Thus, a party has "standing to move for a protective order if . . . subpoenas seek irrelevant information beyond the permissible scope of discovery." *Continuum on S. Beach Condo. v. QBE Ins. Corp.*, 338 F.R.D. 668, 670 (S.D. Fla. 2021). An order imposing temporal limitations is appropriate here because "a plaintiff may not raise new claims after discovery has begun without amending his complaint." *Cloaninger ex rel. Est. of Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (collecting cases from five Circuits, including Eleventh Circuit).

Plaintiff should not be permitted to subject APA's witnesses and non-party witnesses to wholesale discovery regarding facts and theories that are not relevant to the claims as they are currently pled in the Amended Complaint. To do so would be grossly unfair to APA, as APA is entitled to notice of the claims and allegations that are at issue in this litigation, and it would be unduly burdensome on the witnesses. This is particularly so here, where any further effort to amend the Amended Complaint would be futile as any potential claims that Plaintiff has indicated that he wants to seek leave to assert are likely time-barred. The Court should enter a protective order prohibiting Plaintiff from conducting discovery regarding events and communications from 2022 to 2025 as they clearly have no relevance to the claims asserted in the Amended Complaint.

**II.    A Protective Order Is Necessary Because the Subpoenas Expressly Seek Expansive Categories of Privileged Communications**

Under Rule 26, only "nonprivileged matter" is discoverable. Fed. R. Civ. P. 26(b)(1). Plaintiff has turned that limitation inside out by issuing wide-ranging requests for communications among APA attorneys, or between APA attorneys and officers and representatives of APA. *See supra* at 4-6. Four of the subpoenaed individuals are attorneys, and the remaining four are current or former officers or representatives of APA who likely possess information covered by APA's attorney-client privilege. *See Cox v. Adm'r. U.S. Steel & Carnegie*, 17 F.3d 1386, 1416 (11th Cir.), *opinion modified on unrelated grounds on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (holding that attorney-client privilege protected communications between union attorneys and union officers in suit brought by union members).

As to the documents specifically requested, requiring attorneys to conduct a burdensome document review only to produce privilege logs for communications that are plainly outside the scope of Rule 26 is an inappropriate use of the discovery process and constitutes harassment. *See Rocket Real Est., LLC v. Maestres*, No. 15-cv-62488, 2016 WL 11503947, at *1 (S.D. Fla. June 8, 2016); *W. Peninsular Title Co. v. Palm Beach Cnty.*, 132 F.R.D. 301, 302 (S.D. Fla. 1990). Given the nature of the claims, if APA had been served with timely discovery requests, APA would have been prepared to conduct a diligent review of communications involving its attorneys to distinguish privileged from nonprivileged, responsive documents. But the requests in their current form are vastly overbroad and vague, rendering such a review unduly burdensome to the point of impossibility.

In this respect, we note that discovery directed toward attorneys is disfavored in general. "Federal courts . . . have held that depositions of attorneys inherently constitute an invitation to harass the attorney and parties, and to disrupt and delay the case." *Rocket Real Est.*, 2016 WL 11503947, at *1 (quoting *W. Peninsular Title*, 132 F.R.D. at 302) (collecting cases). "Such

depositions are so disruptive that there is a presumption of good cause to support the entry of a protective order, which the party seeking the deposition must overcome." *Id.*

Finally, the demand that deponents arrive at depositions with laptops and phones unlocked is patently unreasonable. Forcing deponents to submit to an on-the-spot document review and production at Plaintiff's behest without any opportunity to review documents for privilege, confidentiality, or relevance would be grossly unfair to APA and each witness.

Plaintiff should be ordered to revise his requests to non-party witnesses to avoid asking directly for privileged communications with APA counsel, and APA should be given an opportunity to conduct a privilege review of any responsive documents in the possession of the non-party witnesses before production to the Plaintiff. (The document requests to APA's in-house attorneys should be disallowed in their entirety for reasons explained in the next section.)

### III.  A Protective Order Is Necessary to Prevent Plaintiff from Using Rule 45 Subpoenas to Circumvent the Procedures for Party Discovery

Under Rule 34, a party who has been served with a request for production has 30 days to respond. Fed. R. Civ. P. 34(b)(2)(A). Plaintiff has not served any discovery requests on APA in this matter, and he cannot timely do so under Local Rule 26.1(d) in light of the current November 1, 2025 discovery cutoff date. To circumvent that limitation, Mr. Meadows served Rule 45 subpoenas on three APA in-house attorneys and officers on October 8, each with a period for compliance of approximately 21 days.

The subpoenas unquestionably seek documents belonging to APA. For example, the subpoena to Ms. Kennedy seeks APA emails, agreements ("mutual-abeyance letters") between APA and American Airlines, APA Board of Director meeting minutes, as well as "transcript[s]" of a closed session meeting of the APA Board of Directors. Ex. 4 (Kennedy), Nos. 1, 5-6. The subpoena to Mr. Myers seeks grievances filed by APA, APA "internal document[s]," meeting

transcripts and reports of an APA committee, as well other communications that would exist primarily on APA's servers. Ex. 3 (Myers), Nos. 1-3. *See also* Ex. 2 (Clark), Nos. 2-6.

Courts have consistently held that Rule 45 subpoenas cannot be served on parties or their employees as a means to circumvent the requirements of Rule 34. "Rule 45 . . . is not the appropriate mechanism for Plaintiff to seek information from an employee of the Defendant . . . ." *Watkins v. Bigwood*, Case No. 18-CV-63035, 2020 WL 6785356, at *1 (S.D. Fla. Nov. 18, 2020) (denying motion to compel service of a Rule 45 subpoena on a party). "[P]ermitting Rule 45 subpoenas for information that could be obtainable through a Rule 34 request 'circumvent[s] the proper discovery procedure' and deprives parties of the 'opportunity to object.'" *Holladay v. Gestamp Ala., LLC*, Case No. 2:21-CV-1712-AMM, 2023 WL 11995606, at *7 (N.D. Ala. Apr. 17, 2023) (citing *Watkins*). *See also Suarez v. Padron*, Case No. 18-CV-23930, 2019 WL 13256088, at *2 (S.D. Fla. Mar. 25, 2019) (quashing Rule 45 subpoena issued to party where the subpoena "improperly attempts to get around the Rule 34 procedures"); *Hatcher v. Precoat Metals*, 271 F.R.D. 674, 676 (N.D. Ala. 2010) (quashing Rule 45 subpoena that made untimely requests for documents from a party).

For these reasons, the Court should enter an order preventing Plaintiff from enforcing his document requests to Mr. Clark, Ms. Kennedy, and Mr. Myers.

### IV. The Subpoenas Fail to Provide Reasonable Time to Comply and Set an Unreasonable Schedule for Discovery

Seven of the eight deposition subpoenas received by APA include extensive document requests, including requests for emails and other electronically stored information. As explained in Section II, *supra*, the requests in their current form would require extensive privilege logs for each deponent. The two to three weeks' notice Plaintiff afforded is plainly insufficient to conduct that extensive review for any witness, and it is particularly insufficient in light of the cumulative

13

number of requests for all of the depositions that Plaintiff unilaterally scheduled to occur on a compressed timeline. While a fourteen-day timeframe may be presumptively reasonable in the ordinary course, courts determine reasonableness by considering a range of factors, including "the breadth of the document request," as well as relevance and the party's need for the documents. *See La. Corral Mgmt., LLC v. Axis Surplus Ins. Co.*, 650 F. Supp. 3d 491, 500 (E.D. La. 2023); *see also Progressive Emu Inc. v. Nutrition & Fitness Inc.*, 785 F. App'x 622, 628 (11th Cir. 2019) (considering breadth of request).[4] Here, the time period for compliance for each of the subpoenas is unreasonable in light of the breadth of the information sought and the time necessary for collection, review, and production of electronically stored information, such as emails. And the subpoena to Jay Wilhelm is presumptively unreasonable because it had not yet been served as of this filing on October 10, leaving less than two weeks' notice.

  Further, the schedule of depositions unilaterally set by Plaintiff—calling for eight depositions to occur over fourteen days across four states—is unreasonable, particularly in light of the time constraints on APA's lead counsel, which were known to Plaintiff when he issued the subpoenas. While Plaintiff may understandably wish to conduct discovery before the November 1 discovery deadline, it is nonetheless unreasonable to serve a swath of deposition subpoenas as the end of discovery draws near without regard to the obligations those subpoenas impose on others, or the legitimate time constraints of opposing counsel. Typically, parties to litigation confer with respect to deposition scheduling. However, Plaintiff did not propose any dates for depositions to APA's counsel before unilaterally serving the subpoenas at issue here. If permitted

---

[4] APA has a cognizable interest in the time allotted for compliance for all eight subpoenas because the subpoenas seek communications covered by APA's attorney-client privilege. *La. Corral Mgmt., LLC* 650 F. Supp. 3d at 501-02.

by the Court, counsel for APA is confident that the parties could agree on a reasonable schedule for appropriate depositions to take place before the end of the year, after APA counsel's two-week trial in the District of Oregon in November is concluded.

**V.  Good Cause Exists to Temporarily Stay Enforcement of the Subpoenas Until These Matters Can be Fully Heard**

"In deciding whether to stay discovery pending resolution of a pending motion, the Court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery. This involves weighing the likely costs and burdens of proceeding with discovery." *JERMC, Ltd. v. Town of Redington Shores*, Case No. 8:19-CV-688-T-60AAS, 2020 WL 2850144, at *1 (M.D. Fla. June 2, 2020) (citation omitted).

As things currently stand, the first two depositions noticed by Plaintiff are scheduled for October 17, 2025. If the depositions were to proceed on the schedule set by the Plaintiff through his subpoenas, APA would be deprived of a meaningful opportunity to be fully heard regarding the substantial issues raised by this Motion, and APA and the non-party witnesses would be subjected to the unreasonable and burdensome discovery sought by Plaintiff. These potential harms are unmatched by any relevant considerations on the other side of the balance, as Plaintiff is not entitled to much of the discovery sought by his subpoenas, and APA is amenable to setting a reasonable schedule, if the Court so allows, for Plaintiff to obtain the discovery to which he is entitled. For that reason, APA respectfully requests that the Court stay enforcement of the subpoenas until the Motion is briefed and heard by the Court. (The Court has set a discovery status conference for October 28, 2025 at 10 am via Zoom. Dkt. No. 99.)

## CONCLUSION

For the foregoing reasons, Defendant APA requests an order (1) staying enforcement of the subpoenas to allow time to resolve this motion, (2) clarifying that the permissible subjects of discovery do not include requests pertaining to alleged events and communications occurring between 2022 and 2025, (3) limiting the scope of permissible discovery to preclude discovery requests that explicitly seek privileged material, and permitting APA to conduct a privilege review of potentially privileged documents possessed by the non-party witnesses, (4) prohibiting the Plaintiff from using Rule 45 subpoenas issued to APA attorneys and officers to seek documents belonging to APA, and (5) instructing the parties to confer regarding a reasonable schedule for any depositions to occur.

Dated: October 10, 2025,  Respectfully submitted,

/s/Joshua B. Shiffrin
Joshua B. Shiffrin*
Grace Rybak*
BREDHOFF & KAISER PLLC
805 15th Street NW, Suite 1000
Washington, D.C. 20005
jshiffrin@bredhoff.com
grybak@bredhoff.com
*Admitted *Pro Hac Vice*

 /s/ Capri Trigo
**CAPRI TRIGO, ESQ.**
Florida Bar No. 28564
**GORDON REES**
**SCULLY MANSUKHANI**
Miami Tower
100 S.E. Second Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428-5309
Email: ctrigo@grsm.com

*Counsel for Defendant Allied Pilots Association*