Lawrence M. Meadows, Plaintiff
1900 Sunset Harbour Dr., #2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

FILED BY _Mco_ D.C.

OCT 14 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# IN THE UNITED STATES DISTRICT COURT
# FLORIDA SOUTHERN DISTRICT

| | |
|---|---|
| **LAWRENCE M. MEADOWS**<br><br>*Plaintiff,*<br><br><br><br>*v.*<br><br>**ALLIED PILOTS ASSOCIATION, et al.**<br>*a Texas Labor Association,*<br><br>*Defendant.* | **PLAINTIFF'S EMERGENCY OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER (ECF 100); PLAINTIFF'S MOTION TO VACATE THE TEMPORARY STAY (ECF 101); AND PLAINTIFF'S MOTION TO DISQUALIFY JOSHUA SHIFFRIN FOR ETHICAL VIOLATIONS AND IMPROPER WITNESS CONTACT**<br><br><br>Case No: 1:17-cv-22589-EA<br>Honorable Judge Ed Artau |

**PLAINTIFF'S EMERGENCY OPPOSITION
TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER (ECF 100);
PLAINTIFF'S MOTION TO VACATE TEMPORARY STAY (ECF 101);
AND PLAINTIFF'S MOTION TO DISQUALIFY JOSHUA SHIFFRIN
FOR ETHICAL VIOLATIONS AND IMPROPER WITNESS CONTACT**

## I. INTRODUCTION AND STANDING

1.  **Plaintiff Lawrence Meadows ("Meadows")**, proceeding pro se, respectfully moves this Court under Federal Rules of Civil Procedure 26(c) and 45, and Local Rule 7.1, to vacate the stay of discovery entered on October 10, 2025, and to deny Defendant's Motion for Protective Order. If the stay remains in place, the Court will have eliminated the Plaintiff's ability to conduct *any*

1

depositions prior to the current discovery cutoff of November 1, 2025, thereby fatally undermining the Plaintiff's ability to present his case. Plaintiff requests an expedited in-person hearing by October 15, 2025, due to imminent prejudice from the November 1, 2025, discovery cutoff.

2. On October 10, 2025, at 3:20 p.m., Defendant, Allied Pilots Association ("APA"), filed a sixteen-page motion for protective order and stay (ECF 100) - without any meaningful good faith conferral and after threatening ex parte contact with Magistrate Judge Reid. Thereafter, an Order staying Plaintiff's subpoenaed depositions (ECF 101) issued within just twenty minutes. Plaintiff respectfully submits that the Magistrate's Standing Discovery Order (ECF 95) was bypassed, and Pro Se Plaintiff was never given a hearing nor invited to respond in advance.

3. Discovery in this matter closes November 1, 2025. A joint motion to modify the scheduling order and extend all deadlines six months (ECF 89, filed September 4, 2025) remains ripe and pending before Judge Artau. Absent immediate vacatur, Plaintiff's seven non-party depositions- served October 2nd–9th will be forfeited forever, causing severe prejudice and irreparable harm to Plaintiff in light of the existing November 1st discovery cutoff date as provided in (ECF 94). Plaintiff has prepaid October 15, 2025 Delta flight to Albany; and secured lodging in Saratoga Springs, New York, to conduct his properly subpoenaed deposition on October 17th, 2025.

4. Therefore, Plaintiff respectfully requests an in-person hearing no later than October 15, 2025, while Defendants may appear via Zoom, and also requests the Court compel First Officer ("FO") Tom Rempfer to testify vis zoom, in support of Plaintiff's motion to disqualify Defendant's counsel as he is a reluctant witness fearful retaliation, due Defendant APA's counsel phone call and warning that he may be subject to union discipline doesn't' limit his testimony as outlined in an subsequently emailed "gag-list." Plaintiff should be allowed to depose Rempfer this Friday, as scheduled, to document evidence of witness intimidation based on Rempfer's own representations.

## II. FACTUAL BACKGROUND

5. Between October 2nd and October 9th, 2025, Plaintiff served subpoenas on seven non-parties whose testimony bears directly on the continuing pattern-or-practice of breaches of duty in violation of the Railway Labor Act ("RLA"), breached of contract to Defendant Allied Pilots Association ("APA") Constitution and Bylaws, and violations of Plaintiff's Labor Management Relations Disclosure Act ("LMRDA") Union Member Bill rights of free speech, equal member rights and privileges, and right to sue with reprisal or retaliation, as alleged in Counts I-VII of the First Amended Complaint (ECF 35). *See also* Order denying Defendant's motion to dismiss as untimely due to Defendant's multiple delays (ECF 91).

6. October 6, 2025 – Josh B. Shiffrin, lead counsel for APA, called Plaintiiff's second subpoenaed non-party, unpresented witness, First Officer, Thomas Rempfer. Thereafter, on October 10th, Rempfer then spoke with Plaintiff via speakerphone with Plaintiff's wife Ann Marie Marino listening - who has a verbatim notes of the teleconference. During the call Rempfer stated, *inter alia,* that Shiffrin also emailed him and warned that he if produces or testifies about certain materials and issues, particularly a non-privileged PowerPoint presentation – "violation of the policy will subject the offender to union disciplinary action in accordance with the APA Constitution and Bylaws Article 7 R04-19." despite that presentation being created personally by Rempfer, in direct collaboration with Plaintiff Meadows and another similarly situated formerly disabled pilot, Wallace Preitz, using public domain facts and documents, and not any APA privileged documents. (Meadows Decl. ¶23). Simultaneously, APA's Legal Director James Clark also called former APA President Edward Sicher, another subpoenaed witness, and delivered similar gag instructions, restricting his production and testimony.

3

7.      October 9, 2025 – During scheduling of a meet and confer on the day prior to Defendant's filing of its stay motion, Shiffrin insisted on a 1:15 p.m. conferral despite Meadows advising he would be driving. Meadows emailed Shiffrin at 11:40 a.m., and asked Shiffrin to push conferral until 3:00 -4:00 p.m. Shiffrin replied: "If I don't hear from you before 1:15… we can't connect then…we email to the Magistrate's chambers" - without a conferral. (Meadows Decl. ¶15 Ex. F). Meadows answered while driving - the call lasted thirteen minutes; Shiffrin abruptly demanded yes/no answers, rejected all compromise (such as Zoom overlays for his remote appearance, table objections depo-only subpoenas, etc.), and hung up while Meadows was still explaining his objections. Meadows immediately emailed him a detailed post-conferral communication protesting the lack of proper conferral and that Shiffrin's filing would be in contravention of the Court's Standing Discovery Order (ECF 95), and otherwise objected to Shiffrin's conduct with respect to the motion and pre-motion conferral. (Meadows Decl. ¶17 Ex. G). Thereafter, contrary to the directives in the Court's Standing Discovery Order, within minutes Shiffrin filed a proscribed discovery motion seeking immediate relief, which stands to eliminate Plaintiff's right to conduct any depositions in this matter, without affording Plaintiff a hearing and full notice of such. (Meadows Decl. ¶18).

## III. ARGUMENT

### A. Lack Of Due Process Standing Discovery Order:

Just 15 minutes after Defendant's counsel Mr. Shiffrin's alleged "conferral", at 1:45 p.m., Defendant in violation requirement the Standing Discovery Order Standing Order's ("SDO") (ECF 95) Shiffrin in violation of the SDO sent an argument based email to chambers ex parte; in what amounted to a voluminous quasi-motion.  Just one hour and nineteen minutes later, the Magistrate's clerk, then invited APA to "file a motion for protective order", and "include a request

for subpoena's to be stayed…" Plaintiff received no such invitation. The very next day without the required hearing, Defendant APA filed its, Time-Sensitive Motion for Stay of Deposition and Protective Order (ECF 100), and a Order staying Plaintiff's depositions was entered just twenty minutes later, despite no hearing or response.

In sum, Different APA ignored the standing discovery order's no-motion rule to improperly obtain their stay, otherwise depriving Plaintiff of the due process provided therein. If Plaintiff isn't allowed to depose his lawfully subpoenaed witnesses depositions before the November 1st discovery cutoff, these witnesses vanish, which is extremely prejudicial to the Plaintiff, and will cause his case irreparable harm by entirely eliminating Plaintiff's right to conduct depositions Therefore, APA's protective order and stay must be vacated, particularly in light of Defendant's conduct .

**B. Unlocked Device Language Is Routine - Not Burdensome:**

Every subpoena issued by the Plaintiffs states: Bring personal cell phone and laptop, device unlocked. This ensures operational access for the witness to perform keyword searches on the record – and does not require the witness to provide their password, surrender their personal device or submit to any invasion of privacy. The witness retains control. Rule 45(d)(3)(A)(iii) requires the party moving to quash a subpoena demonstrate undue burden; here there is none.

**C. Relevance Of Subpoenaed Witnesses:**

Each witness directly supports existing counts In First Amended Complaint ("FAC") (ECF 35). All seven witnesses will testify to ongoing breaches of duty of fair representation in violation of RLA (Count III), breach of contract (Count IV-V), and LMRDA violations (Counts VII–VIII), all as pleaded in Plaintiff's FAC. No new claims are asserted - only supplemental evidence of ongoing pattern-and-practice abandonment of duty of fair representation, speech suppression,

retaliation, and collusion. Every subpoenaed witness has relevant information reasonably calculated to lead to admissible evidence in support of the existing claims in the FAC. More, specifically, each subpoenaed witness has relevant information as follows:

- **Sue Edwards** – Hired March 2023 by non-party witness former APA President Ed Sicher to resolve Grievance 12-012, and as subsequently re-denominated Sicher Presidential Expedited Grievance 23-031. APA's own motion to dismiss (ECF 72, p. 9 n.3) admits the conversion of the grievance title, and collateral estoppel bars it from now claiming irrelevance, supports Count III in the FAC (ECF 35). Additionally, Edward's was retained by President Sicher to represent Meadows in his ADA disability discrimination/retaliation filed against American Airlines, and she obtained all of his ADA case work product, but she was abruptly withdrawn from his ADA case, after APA ex post facto conditioned her representation on Meadows dropping this instant lawsuit, in retaliation for his exercise of his LMRDA right to sue his union, as pleaded in Count VIII of the FAC. Edwards despite being conflicted, then directly negotiated with Meadows' hostile adversaries, American's ADA counsel, in January 15, 2025 settlement (ECF 87-1, Ex. E), and they mutually carved Meadows out of the grievance settlement and foreclosed his seniority reinstatement claims related to his individual and collective grievances 12-011 and grievance 12-012/23-031, leaving him remediless without notice in violation of rights under the RLA and LMRAD relating back to Counts III and VII in his FAC. The settlement agreement negotiated by APA and Edwards specifically references Meadows and, despite giving him no prior notice, extinguished his grievance rights "with prejudice." It simultaneously provides for the complete restoration of the rights and benefits of other, similarly-situated MDD pilots. The disparate treatment of the Plaintiff without substantial justification further supports his existing claims against the Defendant.

- **Thomas Rempfer** – National Drop Reinstatement Committee, Chair. Created a non-privileged 16-slide PowerPoint documenting APA's representational failures, abandonment of representation, and failure to prosecute grievances and Board resolutions to seek full seniority reinstatement and return-to-work of Plaintiff Meadows and other similarly situated formerly disabled MDD pilots. (Meadows Decl. ¶23). Rempfer also possesses a memo for the record showing retaliation by APA Director of Grievances, Tricia Kenendy, and former APA Bod Of Director, Thomas Westbrook, who disregard Meadows' demands to move Grievance 12-012 to arbitration. In addition, Rempfer e-mailed and called the new APA President Nick Silva, the day after Sicher's ouster, to further arbitration of Grievance 12-012/23-031 and to further advocate for Meadows and three other MDD pilots – but he was ignored and his committee was immediately dissolved. Without Sicher and Rempfer, Meadows was stripped of his key union advocates and abandoned by Silva. This testimony relates back to FAC Counts III and VIII.

- **Edward Sicher** – Plaintiffs Miami pilot Domicile Union Representative from 2014-2022, APA President from July 2022 to October 2024. In 2023 and 2024, he ordered Meadows' seniority reinstatement grievances 12-011 and 12-12/23-031 to be scheduled and arbitrated before a RLA System Board of Adjustment. (ECF 87-1, Ex. D). He was recalled by APA's Board of Directors without notice on October 4, 2024, and evicted from headquarters with the timing strongly suggesting a motive to derail Meadows' reinstatement. Sicher has advocated for Meadows from 2014 through 2024, and his testimony relates back to FAC Counts I-VII.

- **Mark Myers** – APA Director of Pilot Negotiations. During the July 2013 Equity Distribution arbitration, Myers misrepresented that MDD (Medical Disability Dropped from AA Seniority

7

List")[1] like Meadows, were not member of the bargaining unit, not owed a duty, not entitled to any equity, and that collective DFW Domicile Grievance didn't apply to any one specific MDD pilot, and was not seeking their seniority reinstament. He did this for the improper purpose of abandoning representation of Meadows and 241 other similarly situated MDD pilots, and collectively depriving him and that group of approximately $24 Million in equity payouts. Fortunately, Meadows also an individual seniority reinstatement grievance 12-011, based on which Arbitrator Stephen Goldberg, held part that; 1) APA ignored the fact it was supposed to be advocating for him, 2) gave no rational explanation why it treated his grievance arbitrarily, and, 3) thought it was reasoble to presume Meadows would be reinstated to the seniority list fully retroactive. Thereby. Awarding Meadows full-share equity award, the only one out of 1,200 arbitrates. (ECF 87-1, Ex. C). Thereafter, Myers had a hostile animus towards Meadow ever since. Two years later, when put under oath, in December 2015 (Emery v. APA DFR lawsuit) Myers recanted and admitted grievance 12-012 did in fact apply to all MDD pilots system-wide. On December 13, 2016 he secretly obtained a false legal opinion letter to justify his abandonment of representation of MDD pilots based on his false narrative. The very next day the APA Board of

---

[1] Meadows' union, the APA, classifies him as MDD ("Medically Disability Dropped from AA Seniority List"), which is membership code for adversely affected disabled pilots' administratively dropped from the seniority list for exceeding five years on disability. Discovery in Preitz v. Allied Pilots (ED Pa., Case No. 2:17-cv-01166-MSG) (Mar 16, 2017) showed that out of the original 241 MDD pilots circa 2017, 55 of those who subsequently obtained their FAA Airman's First Class Medical Certificates, had applied for reinstatement to their original pilot position and relative seniority number through American's and APA's published Return-To-Work ("RTW") process. Of those 55, only three such pilots were denied reinstatement, FO Lawrence Meadows, FO Kathy Emery, and FO Susan Twitchell, all of whom had sued APA. for breaching their duty of fair representation. Two of those, Emery and Twitchell, took monetary settlements in exchange for waiving their right to reemployment as a pilot. with American. Meadows did not take such settlement despite being offered one, and thus never waived his right to reemployment. Leaving Meadows as the only MDD pilot denied reinstatement,

Directors passed a resolution R2016-30, ordering the negotiating committee, to which Myers was Director, to seek immediate reinstatement of all MDD pilots, but Myers continued to subvert that resolution and collective grievance 12-012 for the next eight years to the career detriment of Meadows and all MDD pilots. This ongoing breach of duty in violation the RLA relates back to FAC Counts I - VIII.

- **Tricia Kennedy** – Director of Grievances. Oversaw grievances 12-011 and 12-012/12-031 progression summer-fall 2024, and immediately after Sicher's recall in October 2014, she de-scheduled arbitration of Grivance 12-012, and instead submitted the grievance to mediated negotiation contrary to American's court pleadings asserting it "was filed on behalf of Meadows" and "Will be arbitrated to a System Board of Adjustment." Additionally, she secretly kept Grievance 12-012 delayed for 11 years, through secret "abeyance letters" mutually signed with American Airlines and ignored Meadows' 2014 and 2014 certified demand letters to move that grievance forward to arbitration. In the same timeframe after Sicher was recalled, she also abandoned prosecution of Meadows Grievance 12-011 without prior notice to Meadows, and subsequently falsely recharacterized it as "closed with zero value since 2013", as recited by non-party witnesses Sue Edwards and James Clark. Her testimony relates back to FAC Counts II, III, and VIII.

- **James Clark** – APA Senior Legal Director since 2016, replaced failed, former, APA Legal Director, Bennett Boggess, who was terminated twice due to his abandonment of representation of APA's formerly disabled MDD pilots, drafted onerous 2017 "settlement" communications threatening DFR waiver and no representation, in exchange for inducing Meadows to move Grievances 12-011 to arbitration, which precipitated the original complaint in this action. In January 15, 2025 Settlement ?? and his February 7th, 2025 communication, Clark, falsely claimed

9

12-11 was closed since 2013 despite U.S. Bankruptcy Judge Sean Lane's 2021 final Order discharging all of APA's bankruptcy proof of claims against American Airlines, *except* for Meadows individual grievance preservation order. This relates back to FAC Counts III - VIII.

- **Nicholas Silva** – Became APA President in October, 2024, after Sicher was abruptly recalled. He inherited the 23-31 arbitration; and converted the arbitration to a mediated Defendant-controlled negotiation; signed the secret settlement agreement (ECF 87-1, Ex. E) that, without prior notice, extinguished Meadows' seniority reinstatement rights and return to work as an American pilot; then, two days after the Court lifted the stay on this instant lawsuit, on May 1, 2025, Silva retaliated by terminating Meadows' 34-year status as an APA member in good standing despite the fact that he was then serving on the APA National Aeromedical sub-Committed as Disabled Pilot Coordinator. (ECF 87-1, Ex. G) in violation of his LMRDA Union Member Bill of Rights, of free speech, equal member rights/privileges, and right to sue without reprisal or retaliation, which all relate back to FAC Counts III – VIII.

**D. Plaintiff is Entitled to Discovery on Post-filing Retaliation:**

Federal Rule of Civil Procedure 26(a) entitles Plaintiff to discovery on issues that are relevant to his claims and proportional to the needs of the case. Relevance, for purposes of discovery does not hinge on admissibility at trial and is construed broadly to include any matter that reasonably could lead to the discovery of admissible evidence. *See* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). A party moving for protective order must show that "good cause" exists for the court to issue such an order. Fed. R. Civ. P. 26(c)(1). To carry its burden of demonstrating "good cause," the moving party must make a particular and specific demonstration of fact. *See, e.g.,* Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc., 231 F.R.D. 429-30 (M.D. Fla. 2005). In addition to finding good cause, the

court must also be satisfied that, on balance, the interests of the party seeking the protective order outweigh the interests of the opposing party. *See* McCarthy v. Barnett Bank of Polk Cty., 876 F.2d 89, 91 (11th Cir. 1989).

Defendant alleges that Plaintiff's subpoenas "are not relevant" because they seek the production of documents that "post-date" the facts alleged in his Amended Complaint. It specifically references the APA's settlement of Grievance 23-031 as a topic that cannot be relevant to Plaintiff's asserted claims and speculates that applicable statutes of limitations would bar Plaintiff from asserting claims related to the settlement. Absurd, especially considering APA argued Grievance 23-031 in its failed motion to dismiss (ECF 72, at 9 n3), which was simply an expedited conversion of grievance 12-012 using the exact same language, which formed the basis of Plaintiff's FAC's Count III. (ECF 35, at 63 ¶¶ 241-253). Issues of timeliness and Plaintiff's right to amend/supplement his complaint are not before the Court on the present motion.

Defendant offers no support for its broad assertion that post-complaint cannot be relevant to Plaintiff's claims. In discrimination cases, analogous to Plaintiff's DFR claims asserting arbitrary, discriminatory, or bad faith conduct of the Defendant, courts have consistently ordered the production of documents that both pre- and post-date the operative complaint. *EEOC v. Frontier Hot-Dip Galvanizing, Inc.*, No. 16-CV-0691V(Sr), 2022 U.S. Dist. LEXIS 35006, at *7 (W.D.N.Y. Feb. 28, 2022) ("More generally, courts commonly extend the scope of discovery to a reasonable number of years both prior to and following the allegedly discriminatory conduct."); *Radcliffe v. Darcy Hall Med. Inv'rs, LLC*, No. 09-81063-CIV-MARRA/JOHNSON, 2010 U.S. Dist. LEXIS 152792, at *9 (S.D. Fla. Mar. 22, 2010) ("Furthermore, as Plaintiff correctly observes, courts routinely allow discovery for a five year period before the alleged violation and two years after the violation."). Additionally, a union's disparate treatment of other similarly-situated

members is clear evidence of DFR violations. *See Carter v. Transp. Workers Union of Am.*, Civil Action No. 3:17-CV-2278-X, 2022 U.S. Dist. LEXIS 126456, at *25 (N.D. Tex. July 1, 2022). In *Carter*, the union objected a member's proposed trial evidence related to the treatment of the dues objectors both before and after the member's termination. The Court admitted the member's disparate treatment evidence as relevant to the issue of whether the union had violated its DFR obligations.

Plaintiff's subpoenas are relevant to the claims in his complaint, including his allegations that Defendant breached its DFR violations. Defendant's course of conduct, both before and after the complaint filing date, is relevant to its animus towards and discriminatory treatment of the Plaintiff. The 2025 settlement provided full relief to similarly situated MDD pilots while simultaneously extinguishing plaintiff's active grievance. Plaintiff's proposed subpoenas seek information directly related to his existing DFR claims.

**E. One-Sided Prejudice and Irreparable Harm:**

Plaintiff has expanded $2,986.00 in process service fees, plus airfare and travel to Albany, NY and lodging. (Meadows Decl. ¶13 Ex. E). Defendants lost nothing - yet schedule Meadows' deposition for October 31 (ECF 99), which is unduly burdensome being scheduled in Miami, whilst he is otherwise scheduled to be in Dallas doing four depositions from October 28 through the evening of the 30th. Not to mention it would be prejudicial and lack reciprocity to sallow staying all of Plaintiff's depositions, whilst allowing Defendant to depose Meadows on the last day of discovery before the November 1, 2025 cutoff date – giving an unfair advantage to APA. The parties joint motion to extend discovery deadlines (ECF 89) remains unresolved for six weeks. Therefore, absent vacatur, Meadows cannot meet November 1 cutoff; and his economic expert report due October 27 will be derailed.

**F. Unethical Conduct and Improper Witness Contact – APA's Counsel Joshua B. Shiffrin Must Be Disqualified:**

Defendant APA's counsel, Joshua B. Shiffrin, is a guest who is practicing in this district under the licensed privilege Pro Hac Vice[2], which is revocable at any time and tied to good conduct. In light of the facts below his pro hac admission should be reviewed.

On October 6, 2025, five days before filing for a "time-sensitive" and receiving ex parte protective order, Mr. Shiffrin, contacted Plaintiff's subpoenaed unrepresented non-party witness, First Officer (FO) Thomas Rempfer, who was never a union officer or employee, and over a year earlier was abruptly terminated from his volunteer committee serving as an advocate for Plaintiff and other similarly situated formerly disabled MDD pilots. (Meadows Decl. ¶19). Mr. Shiffrin, offered to represent Rempfer and quash his subpoena, but Rempfer declined both, and stated he wanted to be "transparent" and gets this over with. Despite FO Rempfer's admission that he had no contact with APA's attorneys nor possession of any attorney-client privileged information, Mr. Shiffrin then emailed him a detailed "gag-list" of what he could not produce or testify to; warning that, "violation of the policy will subject the offender to union disciplinary action in accordance with the APA Constitution and Bylaws Article 7 R04-19." (Meadows Decl. ¶21).

Four days later on October 10, 2025, FO Rempfer spoke to Plaintiff, stating was "scared" and he was then asked "if you testify are you fearful of your career, union membership, or retaliation by the union?" – he affirmatively stated "Absolutely…look what they've done to

---

[2] Under Rule 4(b) of the Southern District of Florida's Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, the Florida sponsor (local counsel) who files the pro hac vice motion must certify they've reviewed the out-of-state attorney's qualifications and character, and they remain responsible for ensuring ongoing compliance with all local rules, ethics, and court orders. Misconduct by the pro hac vice counsel can lead to sanctions on the sponsor also -joint and several. Ms. Capri Trigo, Esq. as Shiffrin's Florida sponsor, bears responsibility under Local Rule 4(b) for his witness intimidation and conferral failures; the Court should order her to show cause why her admission shouldn't be reviewed.

everyone that opposed them..." (Meadows Decl. ¶24).Simply, astounding considering he was a former Air Force combat fighter pilot – men who generally don't scare easily. Ultimately, this had a chilling effect on FO Rempfer willingness to testify, who then tried to convince Plaintiff that there were enough facts in the record, and pleaded to not be deposed, because he feared retaliation by the union.

Thereafter, on later that day, despite FO Rempfer declining representation, Mr. Shiffrin continued to engage in pattern of witness manipulation, and again called Rempfer late Friday to inform him that his "subpoena was stayed", giving him the impression he was off the hook. This concerned Meadows as FO Rempfer might pickup an international flight and become unavailable. (Meadows Decl. ¶25). The next day, Meadows sent Mr. Shiffrin a meet and confer email, and put him on notice to "demand you cease all contact with my subpoenaed witnesses. (Meadows Decl. ¶26).

In sum, Mr. Shiffrin's intimidating and misleading conduct, while threatening union discipline ha the effect of influencing, delaying or outright preventing he lawfully subpoenaed testimony, to the sever prejudice of the Plaintiff. Worse doing so with an unrepresented witness without advising right to counsel violates ABA Model Rules 3.7 and 4.3, necessitating his disqualification. This conduct also undermines fair discovery in violation of **18 U.S. Code § 1512 - Tampering with a witness, victim, or an informant**, which states in relevant part;

> **(b)** Whoever knowingly uses **intimidation, threatens,** or corruptly persuades another person, or attempts to do so, or engages in **misleading conduct** toward another person, with intent to—
>
> > **(1) Influence, delay, or prevent the testimony** of any person in an official proceeding;
> >
> > **(2)** cause or induce any person to—

14

> **(A) <u>withhold testimony, or withhold a record, document</u>, or other object, from an official proceeding;**
>
> **(D) <u>be absent from an official proceeding to which such person has been summoned by legal process;</u>** [Emphasis added].

Therefore, given APA's lead counsel Joshua B. Shiffrin above referenced conduct, he is both a material witness and advocate, and potential defendant - falling squarely within the scope of John Does 1 through 10 identified in the Amended Complaint. (ECF 35 at 1). No amendment needed.

Pursuant to ABA Model Rules of Professional Conduct, this conduct is a violation of Model Rule 3.7, which bars a lawyer from acting as advocate if they'll need to testify as a fact witness, unless the testimony is uncontested or disqualification is substantially unfair-exactly what we've got here. Furthermore, the Florida Bar adopts 3.7 almost verbatim (Rule 4-3.7), and this Court can enforce it directly. That now makes Mr. Shiffrin a material witness. and potential party to this action.

Accordingly, disqualification is required, and all filings by Mr. Shiffrin and possibly Bredhoff & Kaiser must be stayed until new counsel appears. Finally, the staying of Rempfer's deposition, and loss before the discovery cutoff will severely prejudices the Plaintiff, and leaves Mr. Shiffrin as the only witness to testify as to his improper contact and impact on Plaintiff's witness FO Rempfer.

## IV. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE , Plaintiff respectfully prays this honorable court: ; (1) schedule an in-person hearing on or before October 15, 2025, Defendants may appear via Zoom; (2) and compel Tom Rempfer to testify vis zoom, in support of motion to disqualify - as he is a reluctant witness fearful of APA's retaliatory animus; or alternatively, allow Plaintiff to depose Rempfer as this

Friday via zoom, as subpoenaed and scheduled this Friday- to document evidence of witness intimidation; (3) that the Court vacate Order staying his subpoena depositions, (ECF 101) by October 16, 2025; (4) deny Defendant's Motion For 5Stay of Depositions and For Protective Order (ECF 100) in full; (5) and disqualify Joshua B. Shiffrin and stay all filings by Bredhoff & Kaiser until new counsel appears; () Any further relief the Court deems just, including sanctions for witness intimidation.

Dated: this 14th day of October 2025;                    Respectfully submitted,

*/s/ Lawrence M. Meadows*
Lawrence M. Meadows, Pro Se Plaintiff
1900 Sunset Harbour Dr., #2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

**I, Lawrence M. Meadows, Pro Se Plaintiff, hereby certify,** that a true and correct copy of the foregoing was served via E-mail and U.S. Mail on October 14, 2025.

_____
Signature of Filer

## SERVICE LIST

**Capri Trigo**
Gordon & Rees LLP
100 SE Second Street
Suite 3900
Miami, FL 33131
305-428-5323
Email: ctrigo@gordonrees.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Joshua B. Shiffrin**
**Grace Rybak**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W.
Suite 1000
Washington, D.C. 20005
202-842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.vom
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Counsel for Defendant – Allied Pilots Association**