Lawrence M. Meadows, Plaintiff
1900 Sunset Harbour Dr., 2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

# IN THE UNITED STATES DISTRICT COURT

# FLORIDA SOUTHERN DISTRICT

| | |
|---|---|
| **LAWRENCE M. MEADOWS,** | FILED BY ⎯ MCO ⎯ D.C. <br><br> OCT 1 4 2025 <br><br> ANGELA E. NOBLE <br> CLERK U.S. DIST. CT. <br> S. D. OF FLA. - MIAMI |
| *Plaintiff,* | |
| v. | |
| **ALLIED PILOTS ASSOCIATION, et al.** | **Case No: 1:17-cv-22589-EA** |
| *a Texas Labor Association,* | **Honorable Judge Ed Artau** |
| *Defendant.* | |

## DECLARATION OF LAWRENCE M. MEADOWS
## IN SUPPORT OF PLAINTIFF'S EMERGENCY OPPOSITION
## TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER (ECF 100);
## PLAINTIFF'S MOTION TO VACATE TEMPORARY STAY (ECF 101);
## AND  PLAINTIFF'S MOTION TO DISQUALIFY JOSHUA SHIFFRIN
## FOR ETHICAL VIOLATIONS AND IMPROPER WITNESS CONTACT

I, Lawrence M. Meadows ("Meadows"), hereby declare as follows:

    1. I am over 18 years of age and the named Plaintiff in the above-captioned matter.

    2. I make this Declaration and exhibits attached herewith are true and correct to the best of my

       personal knowledge and would so testify in person.

1

### *Plaintiff Background – Case Synopsis*

3. I am, and a Gulf War I veteran, former Air Force Officer, military pilot, American Airlines pilot, FAA type-rated, current, and Boeing B-777 Captain and Instructor Pilot for Atlas Air, and FAA medically re-certified, seeking seniority reinstament at American Airlines.

4. After an extended period of disability, I was removed from the pilot seniority list and administratively terminated by my employer, in violation of the collective bargaining agreement, on the purported grounds that I had been on medical disability for more than five years. In response, APA filed collective DFW Domcile Grievance 12-012 protesting that American Airlines' had terminated and removed from the seniority list myself and all other similarly situated MDD pilots in violation of the collective bargaining agreement. **Exhibit A.** The outcome placed me among a class of other Medical Disability Dropped from AA seniority list for exceeding five years on disability leave ("MDD") pilots, numbering approximately 241. I also filed individual Grievance 12-011, protesting my no-notice termination and removal from the seniority list as a violation of the APA-American Airline Pilots' Collective Bargaining Agreement. **Exhibit B.** My union,

5. APA's failure to timely prosecute those grievances, their RLA breaches of duty of representation in violation of the Railway Labor Act ("RLA"), breaches of contract of APA Constitution and Bylaws, and violations of my Labor Management Relations Disclosure Act ("LMRDA") Union Member Bill of Rights of free speech/assembly, equal member rights/privileges, rights to sue with reprisal/retaliation gave rise to this lawsuit, and APA's ongoing pattern and practice of those breaches/violations continues to date

### *Discovery Deadline and Joint Motion to Modify*

1. On May 13, 2025, Judge Moore enter a schedule order, setting trial for February, 9, 2026, and **discovery cut-off date of November 1ˢᵗ 2025**. (ECF 74)

2. On September 4, 2025, the parties filed a joint motion to extend discovery deadlines by six-months (ECF 89), which to date still remains ripe and unresolved.

3. Thereafter, on September 18, 2025 Judge Moore ordered the case transferred to Judge Aratu, and "ORDERED all deadlines will REMAIN IN EFFECT unless altered by District Judge Edward L. Artau." (ECF 92).

### *District Clerk's Procedural Failures, Refusal to Follow FRCP and FLSD Rules and Standing Court Orders – Prejudicing My Discovery Efforts*

4. With discovery deadline still set for November 1st, I became concerned and on September 26, 2025 called to district clerk, Randy Toby, to inquire about getting AO88 witness testimony and production subpoenas signed. The clerk refuse to sign any subpoenas for documents for a Pro Se litigation without a court order, despite no such restriction in FRCP R45 or the FLSD Local Rules.

5. That same day, I called Magistrate Reid's chamber and sought help to get my subpoenas signed, her clerk Rocio advised me to send a detailed email with my specific request to get an order for subpoenas and advise of pending motion for extension of discovery deadlines, which I did on September 28. **Exhibit C.**

6. I also conferred with APA's counsel Josh Shiffrin, and informed him that absent the extension I would need to subpoena and conduct several depositions by late October, so on September 29, we called Judge Artaus clerk to inform them of the still unresolved 2025, joint motion to extend discovery deadlines.

7. By October 1st, I became concerned and individually filed a notice about the pending joint motion to extend discovery deadlines, but Josh Shiffrin refused participate.

8. That same day, Magistrate Reids clerk, Corono, called to inform me the subpoena issue with the district clerk was resolved, so the next day, October, 2, 2025. I got the subpoenas for

Sue Edwards and Tom Rempfer signed by the district clerk without issue, and served them that night.

9. The next day I sent my assistant in to get three subpoenas signed for Ed Sicher, Jay Wilhelm, and Dan Carey, but once gain district clerk Randy Tony was combative, and refused to sign the subpoenas, asserting there was no trial date and discovery was closed, which was total contrary to Judge Moore's prior scheduling order (ECF 74) setting discovery cutoff for November 1, 2025, and his transfer order mandating all deadlines will REMAIN IN EFFECT (ECF 92).

10. My assistant emailed me to report clerk Randy Toby's refusal to sign subpoena absent a trial date court order, despite Judge Moore's standing orders in the docket. Once again I called to report this issue to Magistrate's clerk Rocio. **Exhibit D.**

11. The following week, I finally got my subpoena's signed for Ed Sicher, Jay Wilhelm, and Dan Carey, along with Mark Myers, Tricia Kennedy, Jim Clark, and Nicke Silva, and proceeded to notice APA's counsel of my intent to serve - who made no objections, and had them all lawfully served have them served, setting two depositions for October 17th one in NY, one remote in AZ, one on October 23rd in Miami. one on the 28th, two on the 29th, and one on the 30th all in Dallas at APA's Headquarters.

12. I served Sue Edwards on Thursday Oct 2nd, and Tom Rempfer on Friday Oct 3rd, but APA's counsel never objected or raised and issues.

13. I incurred substantial costs to include approximately $2,986 for services of process of seven subpoenas, plus $516.18 in airfare and $500 in lodging for the trip to NY for Sue Edwards alone. **Exhibit E.**

14. I later learned that on Monday October 6th, that APA's Counsel began a pattern of improper contact with several unrepresented non-party witnesses of over the course of the

week, starting with Tom Rempfer, Ed Sicher, and Sue Edwards. Yet,  it waited until end

of the week, a full 7 seven days after first service to email the Magistrate, and didn't file

its alleged "Time-Sensitive" Motion with Magistrate until Friday October 10th, rendering

its claims of urgency specious.

### *Lack of Good Faith Conferral and Due Process*
### *In Violation of Standing Discovery Order (ECF 95) For Magistrate Reid*

15.   On October 9, 2025, Meadows due to work and personal commitments emailed APA's

counsel, Josh Shiffrin at 11:40 a.m., and asked him to push his proposed 1:15 conferral

until 3:00 -4:00 p.m. Shiffrin replied: "If I don't hear from you before 1:15… we can't

connect then…we email to the Magistrate's chambers" -  without a conferral. **Exhibit F.**

16.    Shiffrin called me at 1:15 p.m. while driving, so I pulled over in parking lot unprepared

for the call – which lasted thirteen minutes. He abruptly demanded yes/no answers, rejected

all compromise (such as Zoom overlays for his remote appearance, table objections,  depo-

only subpoenas, etc.); throughout he was rushed and exhibited a combative and

condescending tone stating  five times then *"hire an attorney"*  and *"oh yeah your the*

*victim"*, and hung up while Meadows was still trying to explain his objections.

17.  Meadows immediately emailed him a detailed post-conferral communication protesting

the lack of proper conferral and that Shiffrin's filing would be in contravention of the

Court's Standing Discovery Order (ECF 95), and otherwise objected to Shiffrin's conduct

with respect to the motion and pre-motion conferral. **Exhibit G.**

18.  Thereafter, contrary to the directives in the Court's Standing Discovery Order, within

minutes Shiffrin filed a proscribed discovery motion seeking immediate relief, which

stands to eliminate Plaintiff's right to conduct any depositions in this matter, without

affording Plaintiff a hearing and full notice of such.

### *APA Counsel Josh Shiffrin's Unethical Conduct and Improper Witness Contact*

19. On October 6, 2025, five days before filing for a "time-sensitive" and receiving ex parte protective order, Mr. Shiffrin, contacted Plaintiff's subpoenaed unrepresented non-party witness, First Officer (FO) Thomas Rempfer, who was never a union officer or employee, and over a year earlier was abruptly terminated from his volunteer committee serving as an advocate for Plaintiff and other similarly situated formerly disabled MDD pilots.

20. Simultaneously, APA's Legal Director James Clark also called former APA President Edward Sicher, another subpoenaed, non-party witness, and delivered similar gag instructions, restricting his production and testimony.

21. Mr. Shiffrin, offered to represent Rempfer and quash his subpoena, but Rempfer declined both, and stated he wanted to be "transparent" and gets this over with. Despite FO Rempfer's admission that he had no contact with APA's attorneys nor possession of any attorney-client privileged information, Mr. Shiffrin then emailed him a detailed "gag-list" of what he could not produce or testify to; warning that, "violation of the policy will subject the offender to union disciplinary action in accordance with the APA Constitution and Bylaws Article 7 R04-19."

22. Shiffrin appeared to confuse Rempfer by improperly conflating HIPPA and APA confidential documents with attorney-client privileged documents, leading Rempfer as a layperson to believe he could not disclose anything at all, without being subject to union discipline, making him fearful and reluctant to testify.

23. Shiffrin specifically told Rempfer he was not to provide his 16-page PowerPoint presentation presented at the May 2023 APA Board of Directors ("BOD") meeting claiming it was attorney-client privileged. Odd, because APA's attorneys never knew of it or saw it until the BOD meeting. That was created by Rempfer in collaboration with myself

and MDD pilot Wallace Preitz, using public domain facts and documents, and not any APA privileged documents. **Exhibit H.**

24. Four days later on October 10, 2025, FO Rempfer spoke to Plaintiff, stating was *"scared"* and I then asked, *"if you testify are you fearful of your career, union membership, or retaliation by the union?"* – he affirmatively stated, *"Absolutely…look what they've done to everyone that opposed them…"*

25. Thereafter, later that day, despite FO Rempfer declining representation, Mr. Shiffrin continued to engage in pattern of witness manipulation, and once again called Rempfer late Friday to inform him that his *"subpoena was stayed"*, giving him the false impression he was off the hook for the deposition. This concerned Meadows as FO Rempfer might pickup an international flight and become unavailable, if the temporary stay was vacated.

26. The next day, I sent Mr. Shiffrin a meet and confer email, and put him on notice to *"demand you cease all contact with my subpoenaed witnesses."* **Exhibit I, ¶5.**


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Date: October 14th , 2025;

Lawrence M. Meadows

## <u>CERTIFICATE OF SERVICE</u>

**I, Lawrence M. Meadows, Pro Se Plaintiff, hereby certify,** that a true and correct copy

of the foregoing was served via E-mail and U.S. Mail on October 14th, 2025 on all counsel or

parties of record on the Service List below.

Signature of Filer

### SERVICE LIST

**Capri Trigo**
Gordon & Rees LLP
100 SE Second Street
Suite 3900
Miami, FL 33131
305-428-5323
Email: ctrigo@gordonrees.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Joshua B. Shiffrin**
**Grace Rybak**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W.
Suite 1000
Washington, D.C. 20005
202-842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.vom
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Counsel for Defendant – Allied Pilots Association**

## **EXHIBIT A**

**ALLIED PILOTS ASSOCIATION** 

O'Connell Building • 14600 Trinity Boulevard, Suite 500 • Fort Worth, TX 76155-2512 • 817.302.2272 • www.alliedpilots.org

May 22, 2012

VIA CERTIFIED MAIL, RETURN RECEIPT
REQUESTED # 7011 0470 0000 9113 1546

Captain John Hale
Vice President Flight
American Airlines, Inc.
P. O. Box 619617  MD851
DFW Airport, TX 75261-9617

Re:     DFW Domicile Grievance No. 12-012

Dear Captain Hale:

Pursuant to the May 1, 2003, Agreement ("Agreement"), between American Airlines, Inc., and the airline pilots in its employ, as represented by Allied Pilots Association, the undersigned hereby file this grievance, on behalf of all DFW-based pilots protesting the Company's violation of Sections 11.D, Supplement F(1), and all other related sections of the Agreement as well as past practice, for failing to reinstate pilots to the Pilots' Seniority System List and for failing to provide pilots notice of termination prior to terminating employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years.

In accordance with Section 21.F.3 of the Agreement, I hereby elect to waive the Initial Hearing in this matter so that an Appeal Hearing can be held at the earliest possible date.

In addition, we request that the Company send a copy of all hearing notices and decisions rendered in this case to the undersigned and the Legal Department, Allied Pilots Association, 14600 Trinity Blvd., Suite 500, Fort Worth, TX 76155-2512.

Sincerely,

Captain Rusty McDaniels
Chairman - DFW

First Officer Russell Moore
Vice Chairman - DFW

cc:     Ms. Reagan Heine, AA Specialist HR Ops Support (via Shelley Handman)
        Captain Tom Kachmar, Grievance Coordinator -- DFW
        First Officer Neil Roghair, Negotiating Committee Chairman
        Captain Frank McGill, Contract Compliance Committee Chairman
        APA Legal Department (JBB)

# EXHIBIT  B

**GRIEVANCE 12-011**

**Lawrence Meadows/AA#332713**                                                    **4Feb12**
**Po Box 4344**
**Park City, UT 84060**


**Captain Robert Raleigh**
**MIA Chief Pilot**
**MIA Intl Airport/Concourse D/Level 3/MD 2030**
**Miami, FL 33152**


**Sent via e-mail and certified mail:**

Dear Captain Hale,

I'm writing to grieve the improper assertions and actions, made via e-mail by Scott Hansen, Director HQD Flight Administration with respect to my employment status, seniority, and discharge. For the record I have never been contacted by, nor received any formal notice from my supervisor MIA Chief Pilot Raleigh, with respect to any of the above. Keep in mind I have a disability that affords me rights and protections under the American with Disabilities Act (ADA). Moreover, on 6Dec11 the company acknowledged such when they re-approved my Pilot Long Term Disability benefits.

In Blatant violation of the ADA, I was unilaterally removed me from the pilot seniority list, and discharged from American Airlines, not by my supervisor, but instead by the Mr. Hansen; who also denied me additional sick leave as a reasonable accommodation. Notwithstanding the fact that the "EEOC Enforcement guidance on the ADA and Psychiatric Disabilities, Para. 29", clearly states the _"No-Leave" policies_ (such as the company's 5 years max sick leave rule) are _strictly prohibited._ Instead, I should have been granted additional leave as a reasonable accommodation, as long as necessary to meet the medical requirements of my job. In the interim the company is required to keep my same job, and position (i.e., seniority) open, until I'm able to return to work.

Furthermore, I protected then, as I am now as a Federal Whistle Blower. Yet Mr. Hansen, acting in a non-supervisory capacity asserted that he revoked my seniority and discharged me from the company; which constitutes a blatant violation of my rights and protections under federal law:

**Sarbanes–Oxley Section 1107: Criminal penalties for retaliation against whistleblowers:**
_"Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any federal offense, shall be fined under this title, imprisoned not more than 10 years, or both."_


Therefore as provided under Section 21 of the Pilots CBA, Section Please consider this my formal request for grievance on the above matter.

Sincerely,

_L. M. Meadows_

Lawrence Meadows/ 777FO MIA

Page 1 of 1

# **EXHIBIT C**

| | |
|---|---|
| **Subject** | Discovery Issue: Meadows v Allied Pilots Association, Case No. 17–cv-22859-EA |
| **From** | Lawrence Meadows <lawrencemeadows@yahoo.com> |
| **To:** | reid@uscourts.gov <reid@uscourts.gov> |
| **Cc:** | Josh Shiffrin <jshiffrin@bredhoff.com>, Grace Rybak <grybak@bredhoff.com> |
| **Date** | Sep 28 at 9:24 PM |

Subject: Request for Standing Order or Clerk Authorization on Subpoenas Duces Tecum for Documents


Dear Magistrate Judge Reid,

I respectfully send your honor this email to resolve my discovery issue, as your Clerk Rocio directed last Friday afternoon.  Additionally, I met and conferred with Defendant's Counsel, Josh Shiffrin, on this issue and he didn't raise any objections.

Pursuant to Federal Rule of Civil Procedure Rule 45, and the FLSD Local Rules, there is no language prohibiting or restricting pro se parties from issuing subpoenas for the production of documents, it only that the district court clerk must sign them if the party is not an attorney.  Nevertheless, the clerk refuses to sign any of my US Courts AO-88A subpoena forms that seeks joint testimony and documents/records, or just production of documents/records – absent a judge's order.  However, your Standing Discovery Order (Doc95) prohibits any discovery motions.

Therefore, I respectfully request two alternatives: either issuance of a standing order directing the Clerk to sign both document and combined subpoenas submitted by me in this matter, or alternatively, authorization for your own chambers clerk to execute them as filed.  Either would resolve this without forcing piecemeal filings or prejudicing my

case relative to opposing counsel's sole ability to
subpoena documents

Additionally, I'm compelled to bring secondary issue to
your attention.  Pursuant to the original Joint Proposed
Scheduling Order (Doc 62), fact discovery cutoff was
set for October 22, with trial on February 4th. As you
are aware, last week this case was reassigned to Judge
Artau (Doc 92), and your honor was assigned for
all discovery matters (Doc 84).

By way of background, last month the parties mutually
stipulated the all discovery destined and team dates by
6-months, and on September 4th filled a Joint Motion
to Modify Scheduling Order (Doc 89) - unopposed, it's
ripe and still pending. Tomorrow the parties will
mutually call Judge Artau's  chambers to seek ruling.  I
simply want to make you aware that the existing
discovery deadlines will likely shift, assuming you're
relying on the original case schedule.

Thank you for your indulgence.  My Subpoena forms
will be ready upon your guidance.

Sincerely,
Lawrence Meadows
Pro Se Plaintiff


Sent from Yahoo Mail for iPhone

**EXHIBIT D**

**Subject**  Clerk of Court | Refusal to Sign Subpoenas

**From**  Monique M <momeadow21@gmail.com>

**To:**  Lawrence Meadows
<lawrencemeadows@yahoo.com>

**Date**  Oct 3 at 6:28 PM

Good Afternoon,

After two attempts this afternoon, I was unsuccessful in obtaining the signatures of the clerk at Wilkie D. Ferguson Jr. U.S. Courthouse this afternoon.

I presented five subpoenas for signature and was informed by a staff member named Susan that the clerk could not sign the subpoenas until the Pro Se Plaintiff filed a motion with the judge and/or because there is no trial scheduled. I informed Susan that the clerk's office signed two subpoenas just yesterday. She claimed that was erroneous and the staff should not have done that. I went on to tell Susan that there is a standing discovery procedure order and discovery is open and due to close on October 22, 2025. She said discovery only pertains to documentation, not depositions.

I went downstairs to call you and inform you of this matter. Shortly thereafter, Magistrate Reid's clerk called the clerk's office. I went back upstairs and was then met by Randy Toby who was a bit combative. He said he was familiar with your case and that he just got off the phone with Magistrate Reid's clerk and he informed her that Judge Artau must file an order in order for the clerk to sign the subpoenas. He said Magistrate Reid's clerk was misinformed. He insisted he was following the rules and I asked him if he was referring to FRCP 45 and he said "No, I'm following the rules of Mickey Mouse." I explained I was unfamiliar with which rule he was referring to and asked if he could kindly enlighten me. He said he did not have time for that but I was "welcome to come back on Monday" and we could "go sit in the corner with the big book of rules for several hours" if I want him to educate me. He then asked me if I was an attorney and what my name was.

Let me know if you have any questions.

Thank you,

Monique

## **EXHIBIT E**

**Constable Court Services, LLC**
Tax ID: 20-8568792
Phone: +1 443-657-0023; Website:
constablecourtservices.com



**PAID**

**Invoice No#**: 572343
**Invoice Date**: Oct 4, 2025
**Due Date**: Oct 4, 2025

**$0.00**

**AMOUNT DUE**

**BILL TO**
Lawrence Meadows
lawrencemeadows@yahoo.com

| # | ITEMS & DESCRIPTION | QTY/HRS | PRICE | AMOUNT($) |
|---|---|---|---|---|
| 1 | Services of Process - Vermont 600.00 + 3% | 1 | $619.00 | $619.00 |
| 2 | United State District Court Fee 129.00 + 3% | 1 | $129.00 | $129.00 |
| 3 | Service of Process - Arizona | 1 | $312.00 | $312.00 |
| 4 | Constable Court Services - Admistrative Fee Constable Court Services - Adminstrative Fee for Vermont Constable Court Services - Adminstarive Fee for Arizona | 1 | $106.00 | $106.00 |

| | | |
|---|---|---|
| Subtotal | | $1,166.00 |
| **TOTAL** | | **$1,166.00 USD** |
| Amount paid | | $1,166.00 |
| **AMOUNT DUE** | | **$0.00 USD** |

# INVOICE

**Constable Court Services, LLC**
Tax ID: 20-8568792
Phone: +1 443-657-0023; Website:
constablecourtservices.com

**Invoice No#**: 572344
**Invoice Date**: Oct 4, 2025
**Due Date**: Oct 4, 2025



`PAID`

**$0.00**

**AMOUNT DUE**

**BILL TO**
Lawrence Meadows
lawrencemeadows@yahoo.com

| # | ITEMS & DESCRIPTION | QTY/HRS | PRICE | AMOUNT($) |
|---|---------------------|---------|-------|-----------|
| 1 | Adminstrative Fee | 1 | $100.00 | $100.00 |

| | | |
|---|---|---|
| | Subtotal | $100.00 |
| | **TOTAL** | **$100.00 USD** |
| | Amount paid | $100.00 |
| | **AMOUNT DUE** | **$0.00 USD** |

# INVOICE

**Constable Court Services, LLC**
Tax ID: 20-8568792
Phone: +1 443-657-0023; Website:
constablecourtservices.com



**PAID**

**Invoice No#**: 572345
**Invoice Date**: Oct 7, 2025
**Due Date**: Oct 7, 2025

**$0.00**

**AMOUNT DUE**

**BILL TO**
Lawrence Meadows
lawrencemeadows@yahoo.com

| # | ITEMS & DESCRIPTION | QTY/HRS | PRICE | AMOUNT($) |
|---|---|---|---|---|
| 1 | Service of Process - Ft Lauderdale and Naples FL Travel Fee Ft Lauderdale 85.00 | 1 | $100.00 | $100.00 |
| 2 | Travel Fee Ft Lauderdale Jay Wilhelm | 1 | $85.00 | $85.00 |
| 3 | Travel Fee Ft Lauderdale FL Edward Sicher | 1 | $85.00 | $85.00 |
| 4 | Service of process - Naples, FL | 1 | $100.00 | $100.00 |
| 5 | Travel Fee Naples FL Daniel F Carey | 1 | $53.00 | $53.00 |
| 6 | Constable Court Services - Adminstration Fee - Ft Lauderdale | 1 | $100.00 | $100.00 |
| 7 | Constable Court Services - Adminstarion Fee - Ft Lauderdale FL | 1 | $100.00 | $100.00 |
| 8 | Constable Court Services - Adminstation Fee - Naples FL | 1 | $100.00 | $100.00 |

| | | |
|---|---|---|
| Subtotal | | $723.00 |
| **TOTAL** | | **$723.00 USD** |
| Amount paid | | $723.00 |
| **AMOUNT DUE** | | **$0.00 USD** |

# INVOICE

**Constable Court Services, LLC**
Tax ID: 20-8568792
Phone: +1 443-657-0023; Website:
constablecourtservices.com

**Invoice No#**: 572346
**Invoice Date**: Oct 8, 2025
**Due Date**: Oct 8, 2025



**PAID**

**$0.00**

**AMOUNT DUE**

**BILL TO**
Lawrence Meadows
lawrencemeadows@yahoo.com

| # | ITEMS & DESCRIPTION | QTY/HRS | PRICE | AMOUNT($) |
|---|---|---|---|---|
| 1 | Service of Process - Ft Worth TX<br>Tricia Kennedy, Esq. | 1 | $80.00 | $80.00 |
| 2 | Service of Process Ft Worth TX<br>Admiral Mark Myers, Esq. | 1 | $80.00 | $80.00 |
| 3 | Service of Process - Ft Worth TX<br>Nick Silva - Company President | 1 | $80.00 | $80.00 |
| 4 | Service of Process - Ft Worth TX<br>James P Clark, Esq | 1 | $80.00 | $80.00 |
| 5 | Travel Fee x 4 (63.00 round off to 65.00 for<br>purchace) | 4 | $65.00 | $260.00 |
| 6 | Adminstartion Fee (100.00 x 4 for Constable Court<br>Services | 4 | $100.00 | $400.00 |

|  | Subtotal | $980.00 |
|---|---|---|
|  | **TOTAL** | **$980.00 USD** |
|  | Amount paid | $980.00 |
|  | **AMOUNT DUE** | **$0.00 USD** |

 **Check Your Identification For REAL ID Before Your Flight**

Beginning on May 7, 2025, the Transportation Security Administration (TSA) will require a federally issued REAL ID-compliant license or identification card or another acceptable form of ID, such as a passport, to fly within the United States. Visit **tsa.gov** for a list of acceptable forms of ID and additional information regarding REAL ID.

## Flight Receipt

Ticket #: **0062370947983**
Place of Issue:
Issue Date: 09OCT25
Expiration Date: 09OCT26

| METHOD OF PAYMENT | |
|---|---|
| AX***********8675 | **$258.49 USD** |

| CHARGES | |
|---|---|
| **Air Transportation Charges** | |
| Base Fare | $226.22 USD |
| **Taxes, Fees and Charges** | |
| United States - September 11th Security Fee(Passenger Civil Aviation Security Service Fee) (AY) | $5.60 USD |
| United States - Transportation Tax (US) | $16.97 USD |
| United States - Passenger Facility Charge (XF) | $4.50 USD |
| United States - Flight Segment Tax (ZP) | $5.20 USD |
| **TICKET AMOUNT** | **$258.49 USD** |

## Checked Bag Allowance

The fees below are based on your original ticket purchase. Fees may be converted to local currency based on your departure airport. **If you qualify for free or discounted checked baggage**, this will be taken into account when you check in. Visit **delta.com** for details on baggage embargoes that may apply to your itinerary and for additional baggage policy updates.

| Wed 15 Oct 2025 | | MIA-LGA |
|---|---|---|
| CARRY ON | FIRST | SECOND |
| FREE | FREE (70LBS/32KG) | $45.00 USD (50LBS/23KG) |

| **Subject** | Reservation Details for Your Upcoming Stay at Hyatt Place Saratoga/Malta |
|---|---|
| **From** | Hyatt Place <no-reply@t1.hpe-esp.hyatt.com> |
| **To:** | <LAWRENCEMEADOWS@YAHOO.COM> |
| **Date** | Oct 5 at 4:51 AM |

# WORLD OF HYATT

Book Now  |  My Account  |  Customer Service

Everything you need to know for your upcoming stay.





## Your stay is confirmed at
## Hyatt Place Saratoga/Malta

We look forward to your visit,
Lawrence Meadows.

Reservation Details

Confirmation #
20994684

| **Guest Name** | **Membership #** |
|---|---|
| Lawrence Meadows | *****380B |

| **Check-in** | **Checkout** |
|---|---|
| Thursday, 16-Oct-2025 | Saturday, 18-Oct-2025 |
| | 12:00 PM |
| 04:00 PM | |

| **Adults** | **Children** |
|---|---|
| 2 | 0 |

**Room(s) booked**
1

# **EXHIBIT F**

| **Subject** | RE: [EXTERNAL] Re: Third-Party Subpoenas-- Time Sensitive Request to Meet and Confer |
|---|---|
| **From** | Joshua Shiffrin <jshiffrin@bredhoff.com> |
| **To:** | Lawrence Meadows <lawrencemeadows@yahoo.com> |
| **Cc:** | Grace Rybak <grybak@bredhoff.com>, Capri Trigo <ctrigo@grsm.com>, Andrew Dymowski <ddymowski@grsm.com> |
| **Date** | Oct 9 at 10:46 AM |

Larry—

Given the time sensitive nature of the matters wish to raise with the Magistrate, we need to email her chambers well before the close of business today.  Please call me whenever you are next available.  If I don't hear from you before 1:15, I will try you at that time.  If we cannot connect then, we will plan to email the Magistrate's chambers, but we can update our submission once we have had a chance to confer.

Thank you,

Josh

Show trimmed content ❯

**Disclaimer**

This electronic transmission is intended only for the addressee shown above. It may contain information that is privileged, confidential or otherwise protected from disclosure. Any review, dissemination or use of this transmission or its contents by persons other than the addressee is strictly prohibited. If you have received this electronic transmission in error, please delete the e-mail and notify us immediately by telephone or by reply e-mail. This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience.

**EXHIBIT G**

| | |
|---|---|
| **Subject** | Re: [EXTERNAL] Re: Third-Party Subpoenas-- Time Sensitive Request to Meet and Confer |
| **From** | Lawrence Meadows <lawrencemeadows@yahoo.com> |
| **To:** | Joshua Shiffrin <jshiffrin@bredhoff.com> |
| **Cc:** | Grace Rybak <grybak@bredhoff.com>, Capri Trigo <ctrigo@grsm.com>, Andrew Dymowski <ddymowski@grsm.com> |
| **Date** | Oct 9 at 1:58 PM |

Dear Josh:

It's a little difficult to understand the current rush you are in given that you did not respond to the subpoenas you were noticed on for over a week.

I hope you understand that I have little choice in the matter given the court's failure to address, to date, our joint motion to modify the scheduling order. Unfortunately, you are not in a position to guarantee the a favorable determination and I cannot afford to forfeit my discovery rights by taking a wait and see approach.

In view of your delay in addressing the matter, I do not believe you cannot dictate a rushed conferral on your schedule alone, and I think it unreasonable for you to not allow me to evaluate and consider over night. I had to pull over in my car before work, to confer at roadside dur to you demand to confer on your schedule, under your threat you would otherwise go ex parter to Magistrate Reid.

Unfortunately, in light of Judge Moore's standing Scheduling Order (Doc 74) with a Nov. 1st discovery cutoff, I cannot to pause or withdraw my subpoenaed depositions, and intend to proceed with them –

because I simply have no option.

In addition, I object your stated intention to motion for protective order, such motion appears to constitute a direct violation of Magistrate Reid's discovery procedures order. (Doc 95) Which require conferral, "after providing a reasonable time to respond" – which didn't happen here.

Moreover,  pursuant to the DPO you are only allowed to seek notice of a hearing without making any argument. Unfortunately, I am unavailable the next three Wednesdays, traveling to NY on 10/15 (See flight info below),  to then drive Vermont to depose Sue Edwards, the following Wednesday, 10/22,  I'm flying back to Miami to depose Ed Sicher, and the following Wednesday I'm
flying to Dallas to depose Mark Myers.

Sincerely,
Lawrence

**< Your Flight Receipt - LAWRENCE MICH...  AA**



You're all set. If your plans change, you can make adjustments or cancel your itinerary on **My Trips** on the Fly Delta app or **delta.com** before your flight departs.

Have a great trip, and thank you for choosing Delta.

**Passenger Info**

Name: LAWRENCE MICHAEL MEADOWS
SkyMiles #9
Silver

| FLIGHT | SEAT |
|--------|------|
| DELTA 2387 | 21C |

Visit **delta.com** or download the **Fly Delta app** to view, select or change your seat. If you purchased an upgrade or a Trip Extra, please visit **My Trips** to access a receipt of your purchase.

| Wed, 15OCT | DEPART | ARRIVE |
|------------|--------|--------|
| DELTA 2387 | MIAMI | NYC-LAGUARDIA |
| Delta Main (K) | 07:00AM | 09:59AM |

 Delta Air Lines                    [ Visit site ]

Sent from Yahoo Mail for iPhone

Show trimmed content ⌄

# **EXHIBIT H**



# ALLIED PILOTS ASSOCIATION

## DROPPED REINSTATEMENT AD HOC
## BRIEFING TO THE sBoD MAY 2023

# DRC MISSION STATEMENT HIGHLIGHTS...



- Allied Pilots Association leaves "no pilot behind"... This committee is tasked with finding avenues of reinstatement for those who have been dropped from the seniority list, by virtue of disability, merger, or other reason, not including retirement or discipline.

- ... examine possible avenues for reinstatement, helping to blunt the shortage of pilots we have available to employ, avoid future litigation of APA by its members, and eventually guide the reinstatement of members that have been dropped from the seniority list for reasons other than retirement or discipline.

- ... not authorized to interview our in-house counsel...

- In Unity, CA Edward F. Sicher, President, Allied Pilots Association

- Currently, multiple pilots were left behind and await reinstatement
   - For over ten years, despite APA BoD's Resolution to fix it 7 years ago

# LOSS OF SENIORITY IAW THE JCBA



## F. Loss of Seniority

1. Resignations, Retirement and Discharges

   A pilot who resigns from the service of the Company, retires, or is discharged for just cause, shall forfeit all seniority as a pilot.

2. Failure to Return from Furlough

   When a pilot who has been furloughed is offered, by written notice from the Company, the opportunity to return to duty as a pilot and such pilot elects, by written statement to the Company, not to return to such duty, or if a recalled pilot fails to comply with the requirements of Section 17.W. of this Agreement, his seniority right of preference in re-employment shall at that time terminate, and all his seniority as a pilot shall be forfeited.

3. Duration of Recall Rights

   A pilot shall retain recall rights indefinitely until refused under 2. above.

4. Retention of Company Benefits

   Upon return from furlough, a pilot shall receive all Company benefits accruing by reason of his previous active service.

# JCBA, SEC 13, items F or B, ON SENIORITY LOSS DOES NOT INCLUDE LTD/DISABILITY



## B. Seniority Date

Seniority shall begin to accrue from the date a pilot is first assigned to air line flying duty and shall continue to accrue during such period of duty except as provided in Sections 11 and 12 of this Agreement.

## C. Retention of Seniority

A pilot once having established seniority shall not lose such seniority except as provided in this Section, nor shall such pilot's relative position on the Pilots' System Seniority List be changed for any reason, including disciplinary action, except as provided in paragraph B. of this Section.

➡ Loss of seniority is "relative position" only under Sec 13.B/C, NOT TOTAL SENIORITY LOSS

4

# SEC 13 REFERS TO SEC 11 ON LEAVES



## D. Sickness or Injury Leaves

1. When leaves are granted on account of sickness or injury, a pilot shall retain and continue to accrue his seniority irrespective of whether or not he is able to maintain his required certificates or ratings, until he is able to return to duty or is found to be unfit for such duty. A leave of absence for sickness or injury shall not commence until after a pilot has exhausted accrued sick leave credits in accordance with Section l0.C.8 of this Agreement. Such leave of absence for sickness or injury may not exceed a total continuous period of three (3) years unless extended by mutual consent of the Company and the Association, in which case it may not exceed a total continuous period of five (5) years. Length of service for pay purposes shall accrue during leaves granted because of injury on duty, and during the first ninety (90) days of any leave granted for sickness or injury sustained off duty.

2. A pilot returning from any leave due to sickness or injury shall assume a bid status to which entitled by seniority upon return to active flying duty.

JCBA Rev.1        SECTION 11 - 1        November 1, 2015

# SUPP F(1)5(d) REQUIRED FIXING AS WELL

**APA**

(d) A pilot shall retain and continue to accrue his seniority for the purposes of this Supplement F only for a period of five (5) years commencing at the expiration of his paid sick leave. In the event such a pilot member recovers and returns to the Company as a pilot, during the five (5) year period in which he has not lost his seniority, his monthly disability pension shall cease. He will again become a participant in the Plan for the accrual of additional Basic and Variable Annuity benefits payable at Normal Retirement Date, subject to the eligibility provisions of the Plan. In the event such a pilot member works for the Company in a capacity other than as a pilot, his pilot benefits shall not be paid while he is employed in such a capacity. However, during such period he shall be eligible to participate in the pension programs applicable to his job category.

6

# FRESH SETS OF EYES ON AGREED UPON SOLUTIONS RELATED TO GRIEVANCE 12-012, NOW 23-031

Re:    DFW Domicile Grievance No. 12-012

Dear Captain Hale:

Pursuant to the May 1, 2003, Agreement ("Agreement"), between American Airlines, Inc., and the airline pilots in its employ, as represented by Allied Pilots Association, the undersigned hereby file this grievance, on behalf of all DFW-based pilots protesting the Company's violation of Sections 11.D, Supplement F(1), and all other related sections of the Agreement as well as past practice, for failing to reinstate pilots to the Pilots' Seniority System List and for failing to provide pilots notice of termination prior to terminating employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years.

In accordance with Section 21.F.3 of the Agreement, I hereby elect to waive the Initial Hearing in this matter so that an Appeal Hearing can be held at the earliest possible date.

In addition, we request that the Company send a copy of all hearing notices and decisions rendered in this case to the undersigned and the Legal Department. Allied Pilots Association, 14600 Trinity Blvd., Suite 500, Fort Worth, TX 76155-2512.

Sincerely,

Captain Rusty McDaniels
Chairman - DFW



First Officer Russell Moore
Vice Chairman - DFW

7

# CAREY MEMO FIXED SUPP F(1), BUT NOT SEC 11, AND ONLY PROSEPCTIVELY, NOT RETRO

The Parties agree to the following amendment to the Collective Bargaining Agreement ("CBA") to effect this agreement:

Supplement F(1).5.d

A pilot shall retain and continue to accrue his seniority for the purposes of this Supplement F while disabled. In the event such a pilot member recovers and returns to the Company as a pilot, his monthly disability pension shall cease. He will again become a participant in the Plan for the accrual of additional Basic and Variable Annuity benefits payable at Normal Retirement Date, subject to the eligibility provisions of the Plan. In the event such a pilot member works for the Company in a capacity other than as a pilot, his pilot benefits shall not be paid while he is employed in such a capacity. However, during such period he shall be eligible to participate in the pension programs applicable to his job category.

The parties agree that this amendment is prospective only. That is, this amendment has no application to pilots whose employment terminated prior to the effective date of this Agreement. The effective date of this agreement shall be September 30, 2016.

Please indicate your concurrence with the foregoing by execution in the space provided below.

Sincerely,

_____
Captain Kimball Stone
Vice President, Flight Operations
Flight
American Airlines, Inc.

_____
Beth Holdren
Managing Director Labor Relations,
American Airlines, Inc.

# AA's JAMES ANDERSON DEPOSITION, JCBA SME & former AA Director of Crew Qualifications



- Sec 21 - B. Investigation and Rights of Representation

- 1. A pilot shall not be disciplined or dismissed from service with the Company without an investigation and written notification of such action, including the precise charge(s) and an explanation for any action taken. A pilot shall be provided with an opportunity to meet with that pilot's Flight Department supervisor prior to the rendering of the Company's decision with regard to discipline or dismissal.

- Sec 24 - I. Orders to be in Writing

- 1. All orders to pilots involving a change in status or leave of absence shall be stated in writing… & 13.D requires notice as well!

- Pg 18, line 4 ?: Does 11d 5-year allow termination for disability? – "No"

9

# IN 2016 THE BoD's AGREED TO FIX IT BOTH SUPP F(1)5D & SEC 11D RE THE 5-YEAR ISSUE



- BE IT RESOLVED

- Modify the language in the JCBA

- Sup F. (1) 5. (d) Disability Retirement

- And Section 11.D.1… REF five (5) years

- Removing the pilot from the seniority list

- Negotiate language [PRECLUDING] pilots with long term disabilities from being removed from the seniority

- Negotiate contractual language … for the immediate reinstatement

- Prevent the further removal of pilots from the Pilot System Seniority List

- Gather the names of the pilots

---

*Disposition: Adopted 19-3-4-0 on 12/13/2016*

| | FOR | 19 |
| SOURCE MIA | AGAINST | 3 |
| | ABSTAIN | 0 |
| | ABSENT | 0 |

Title: **Supplement F and Section 11.D.1 – Negotiating Committee Tasking**

Presented by: **CA Ed Sicher**    Seconded by: **CA Bilvny Reid**

Policy Manual _____ Cons. & Bylaws _____

R 2016 – 30 Rev 1
BOD MTG
06-07-09/2016

1   WHEREAS, the three separate contracts prior to the merger of US Air East, America West,

2   and American Airlines treated disability retirements differently, and,

3   WHEREAS, the JCBA Supplement F. (1) 5. (d) and Section 11.D.1 adopted the most

4   restrictive of the three, the American Airlines contract, which has been subjectively reinterpreted by

5   the Company to allow the removal of a pilot from the seniority list after five (5) years of continuous

6   disability; and.

7   WHEREAS, the former U.S. Air East contract allowed disabled pilot to remain on the

8   seniority list until they reach the federally mandatory retirement age for pilots; and.

9   WHEREAS, the former America West contract effectively removed pilots from the seniority

10   list for retirement disabilities longer than eight (8) years without a provision to be reinstated in the

11   event that pilot should ever regain his or her Class A medical; and,

12   WHEREAS, the merging of the seniority lists is creating a disparate treatment amongst the

13   individual pilot groups; and,

14   WHEREAS, the most beneficial treatment of all of our disabled pilots is to allow them

15   reinstatement from long-term disability in as expeditious and fair a manner as possible, and.

16   WHEREAS, there has been some evidence indicating that the company has unfairly

17   withheld reinstatement to long-term disabled pilots who have regained their Class A medicals from

18   being reinstated if they were considered problematic employees, therefore.

R 2016-30 Rev 1

# NEW JCBA LANGUAGE SHOULD FIX IT –
## Delete the 5-year language per BoD R2016-030

**APA**

- D. Sickness or Injury Leaves

- 1. When leaves are granted on account of sickness or injury, a pilot shall retain and continue to accrue his relative seniority irrespective of whether or not he is able to maintain his required certificates or ratings, until he is able to return to duty. Leave of absence for sickness or injury shall not commence until after a pilot has exhausted accrued sick bank in accordance with Section 10.C.8 of this Agreement. Any loss of seniority is strictly governed by Sect. 13.F. Length of service for pay purposes shall accrue during leaves granted because of injury on duty, and during the first ninety (90) days of any leave granted for sickness or injury sustained off duty.

- 2. A pilot returning from any leave due to sickness or injury shall assume a bid status to which entitled by relative seniority upon return to active flying duty.

11

# PREITZ v. APA "judgment for Allied [APA]"



- "Long-running dispute over Allied's representation of pilots who were medically disqualified from flying"

- "American Airlines and Allied interpreted a provision of the applicable collective bargaining agreement as automatically terminating the employment of pilots, such as Plaintiff, who had been on disability leave for longer than five years, referring to such pilots "medically disabled dropped" ("MDD")"

- "Allied argues that MDD pilots were not members of its bargaining unit because they were automatically terminated…But Allied offers no documentation defining the scope of its bargaining unit during 2011 through 2016 and merely asserts that nonemployees were not members."

- "A factfinder could infer that terminated MDD pilots, including Plaintiff, were members of the bargaining unit."

12



# PREITZ v. APA, continued...

- "Allied's present position that MDD pilots should have had their relative seniority restored upon returning"

- "... 2016, Allied and American Airlines agreed that disabled pilots would no longer be removed from the seniority list after being on leave for five years— essentially, that no new pilots would be designated MDD" – "prospective-only"

- "... 2016, Allied's Board of Directors passed a resolution to seek "the immediate reinstatement and return to the Pilot System Seniority List" of all MDD pilots"

- "Dallas grievance ...advocated an interpretation of CBA § 11.D consistent with Plaintiff's view that MDD pilots did not automatically lose seniority."

13

# STATUS & SUGGESTED COURSES OF ACTION

**APA**

- THE PREITZ CASE WAS DECIDED IN APA'S FAVOR - COURT NOTED: "The Dallas grievance was never arbitrated. Instead, Allied and American Airlines repeatedly agreed to hold the Dallas grievance "in abeyance every sixty days"

- AND THAT 12-012 (Now 23-031) "advocated an interpretation of CBA § 11.D... that MDD pilots did not automatically lose seniority."

- WHILE APA'S ACTIONS WERE NOT A DFR VIOLATION...
- NOTHING BARS APA FROM BOARD DIRECTED JCBA FIXES
- E.G., NOTHING BARS APA FROM INSTITUTING BoD R2016-30
- I.E., REMOVE THE TIME LIMITS FROM 11.D & SUPP F(1)

14

## DANGLING CHADS...

**APA**

- NC PRIORITIES
  - SUPP F SHOULD BE FIXED TO MEMORIALIZE CAREY MEMO
  - IAW BoD Resolution, REMOVE 5-YEARS LANGUAGE IN SEC 11.D
  - IAW BoD Resolution, ENFORCE NOTIFICATION OF STATUS CHANGES
  - DEFINE RELATIVE SENIORITY IN SEC 13
  - UPHOLD APA C&B: "MAINTAIN UNIFORM PRINCIPLES OF SENIORITY"
  - TIMELY RESOLUTION OF GRIEVANCES PER APA C&Bs Art II.B., & JCBA sec 23.D.4, 2 year & 28-month grievance limits; plus, JCBA Sec 21.H.3 language: "expedite all hearings, decisions and appeals"

- SUPPORT APA PRESIDENT & DROPPED REINSTATEMENT AD HOC COMM TO COMPLETE TASKS IN PRES GREIVANCE 12-012/23-031 & BoD R2016-30

- BL – JCBA, C&B's, seniority preservation principles support the above priorities

15

# NOTES & QUESTIONS

**APA**

- Note – APA BoD's meeting video reference on 3/5-year time issues:
- "20221102_SBOD_Recent Events Discussion - Early Afternoon"
- LTD vs Sec 11d discussion starting at time stamp 02:50 thru 14:00
- Summary: it's happened before and could happen again unless negotiated contract modifications occur IAW BoD R2016-030
- https://www.alliedpilots.org/Videos?VideoId=d39ed5bd1c1be6c25a

- ????????

16

**EXHIBIT I**

**Subject**  Urgent Meet and Confer Request – Emergency
Motion and Related Issues

**From**  Lawrence Meadows
<lawrencemeadows@yahoo.com>

**To:**  Josh Shiffrin <jshiffrin@bredhoff.com>

**Cc:**  Grace Rybak <grybak@bredhoff.com>, Caitlin
Kekacs <ckekacs@bredhoff.com>, Hans-Peter
Von Thielen <hpvonthielen@bredhoff.com>, Capri
Trigo <ctrigo@grsm.com>, Andrew Dymowski
<ddymowski@grsm.com>

**Date**  Oct 12 at 5:17 AM

## Meadows v. APA: CASE NO. 1:17-CV-22589-EA

**Subject:** Urgent Meet and Confer Request –
Emergency Motion and Related Issues

Dear Josh,

I am making a good-faith effort to meet and confer on
the following urgent issues. I am available to discuss
telephonically anytime Sunday, or on Monday before
12:00 PM EDT. Time is of the essence due to the
discovery cutoff and your recently obtained stay order.

1. **Emergency Motion to Vacate Stay and
Oppose Protective Order:**  Your motion for a
protective order and the resulting stay have
eviscerated my seven scheduled depositions,
costing me $3,000 in service fees alone plus travel
arrangements/costs.  I intend to file an emergency
motion to vacate the stay and oppose your
protective order with Magistrate Judge Reid. I
called you today seeking to confer telephonically,
and left a detailed voicemail on your cell phone at
7:30 PM.  If I do not hear back by Monday at 12:00
PM, I will file the motion on an emergency basis,
noting your non-response.

2. **Rescheduling My Deposition:** Your notice to
depose me on October 31st at 10:00 AM conflicts

with my scheduled depositions in Dallas from October 28-30th, and I will be traveling on October 31st back home to Utah. This scheduling is unduly burdensome. I request you propose alternate dates to accommodate my existing commitments, assuming the stay is vacated, as I expect to proceed with my Dallas depositions as noticed.

3. **Pending Joint Motion to Modify Scheduling Order (Doc. 89)**: On Thursday, you indicated willingness to allow depositions past the existing November1st discovery cutoff. However, last week you declined to join my request to expedite a ruling on our joint motion filed September 4th.  I propose we file a joint notice Monday via your ECF account to request a decision on Doc. 89. If you decline, I will file a notice individually, citing your representations.

4. **Representation of Sue Edwards**: Your October 9th, letter states you represent Sue Edwards. Please clarify if this is limited to this case or extends to future actions. As you know, Ms. Edwards previously represented me in my ADA lawsuit against American, obtained my work product, then withdrew after I refused to drop this lawsuit. She later negotiated a secret settlement with American's ADA counsel, which abandoned arbitration of G12-012, excluding me without notice. Confirm whether you will accept service for claims against her unrelated to this case, or if I should serve her directly.

5. **Alleged Witness Intimidation**: I have evidence that on October 6th, four days before your own "time-sensitive" protective order-you contacted my unrepresented non-party witness, offered to quash their subpoena, and sent a written warning and threatened union discipline for disclosing non-privileged, public-domain information. That timing speaks for itself, and this conduct appears improper. I demand you cease all contact with my subpoenaed witnesses.

Please contact me by Monday, October 13, at 12:00 PM

Please contact me by Monday, October 13, at 12:00 PM EDT to confer. Absent a response, I will proceed with filings and note your non-participation.


Sincerely,

Lawrence Meadows