Lawrence M. Meadows, Plaintiff
1900 Sunset Harbour Dr., #2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

FILED BY __MCo__ D.C.

OCT 21 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## IN THE UNITED STATES DISTRICT COURT
## FLORIDA SOUTHERN DISTRICT

| | |
|---|---|
| **LAWRENCE M. MEADOWS**<br><br>*Plaintiff,* | **PLAINTIFF'S EMERGENCY MOTION TO DISQUALIFY DEFENDANT'S COUNSEL JOSHUA B. SHIFFRIN AND BREDHOFF & KAISER, FOR WITNESS TAMPERING AND OTHER MISCONDUCT; FOR SANCTIONS; FOR AN ORDER TO SHOW CAUSE DIRECTED TO SPONSORING COUNSEL; AND FOR AN IMMEDIATE STAY OF ALL DISCOVERY PROCEEDINGS** |
| *v.*<br><br>**ALLIED PILOTS ASSOCIATION, et al.**<br>*a Texas Labor Association,*<br><br>*Defendant.* | **Case No: 1:17-cv-22589-EA**<br>**Honorable Judge Ed Artau** |

**PLAINTIFF'S EMERGENCY MOTION TO DISQUALIFY
DEFENDANT'S COUNSEL JOSHUA B. SHIFFRIN AND BREDHOFF & KAISER,
FOR WITNESS TAMPERING AND OTHER MISCONDUCT; FOR SANCTIONS;
FOR AN ORDER TO SHOW CAUSE DIRECTED TO SPONSORING COUNSEL;
AND FOR AN IMMEDIATE STAY OF ALL DISCOVERY PROCEEDINGS**

### I. INTRODUCTION AND STANDING

**Plaintiff Lawrence M. Meadows ("Plaintiff"),** proceeding *pro se*, respectfully files this

Emergency Motion and asks this Court to intervene to protect the integrity of these proceedings

1

from Defendant's Allied Pilots Association ("APA") escalating pattern of bad-faith litigation conduct, culminating in witness tampering by its *pro hac vice* counsel, Joshua B. Shiffrin. This matter is far beyond the scope of a routine discovery dispute. The alleged misconduct by Mr. Shiffrin strikes at the core of the entire proceeding, and his continued presence in this case would cause irreparable harm to Plaintiff and result in a manifest injustice. Therefore, Plaintiff respectfully submits that this matter is dispositive in nature and must be reviewed by the presiding District Judge, the Honorable Ed Artau. To preserve the integrity of these proceedings, Plaintiff respectfully urges the Court to issue an immediate stay of all discovery proceedings, including the hearing on October 28, 2025 (ECF No. 106), pending resolution of this motion.

The facts justifying this emergency motion are stark. The very next business day after Plaintiff served a lawful subpoena on a key witness, Mr. Shiffrin initiated *ex parte* contact with the unrepresented non-party witness, First Officer ("FO") Thomas Rempfer. As documented in a transcript of a subsequent call (Am. Decl., ¶11, Ex. A) and follow-up text messages (Am. Decl., ¶ 15, Ex. B), Mr. Shiffrin threatened FO Rempfer with institutional reprisal, union discipline in accordance with the APA Constitution and Bylaws ("C&B") Article VII, which provides for discipline up to and including expulsion, should he provide truthful testimony (Am. Decl., ¶12, Ex. A). The threat was devastatingly effective. When later asked if he was fearful of union retaliation, FO Rempfer stated without hesitation, "Absolutely" and "It's not just a concern about the retaliatory behavior of APA and the fact that these attorneys who I don't know have sent me warnings on behalf of association." *Id.* This conduct, which strikes at the heart of the judicial process, has irreparably tainted a key witness and made Mr. Shiffrin a necessary fact witness under Florida Rule 4-3.7, compelling his disqualification.

This misconduct is the latest step in an ongoing pattern of obstruction by Defendant, which includes violating Magistrate Judge Reid's Standing Discovery Order (ECF No. 95) to obtain an improper *ex parte* stay. To prevent further prejudice and to address this direct assault on the judicial process, Plaintiff requests that the Court: (1) disqualify Joshua B. Shiffrin and the firm of Bredhoff & Kaiser, PLLC; (2) award sanctions; (3) issue an Order to Show Cause directed to sponsoring local counsel, Capri Trigo; and (4) issue an immediate stay of all discovery proceedings pending resolution of this motion.

## II. FACTUAL BACKGROUND

This dispute arises from Defendant APA's escalating campaign to obstruct discovery through procedural abuse and, ultimately, witness tampering. With a discovery deadline of November 1, 2025, Plaintiff timely noticed seven depositions[1] for key witnesses over three business weeks in October, two on October 17, 2025 (one in-person in VT and another remote in AZ), one on October 24, 2025 in Miami, and four over three days October 28-30, 2025 at APA's headquarters in Dallas. In response, Defendant and its counsel have engaged in a pattern of conduct designed to derail discovery and intimidate witnesses into silence including, but not limited to, phone calls, zoom calls, and, subsequently, texting/emailing "gag-lists" to unrepresented non-party witnesses. (Am. Decl., ¶13, Ex. A).

### A. Defendant's Procedural Abuse to Obtain an Improper Stay

Rather than engage in good-faith discovery, Defendant's first act was to violate this Court's rules to obtain an improper stay. On September 22, 2025, Magistrate Judge Lisette M. Reid issued

---

[1] Plaintiff attempted to serve eight depositions but unrepresented, non-party witness Captain ("CA") Jay Wilhelm, Plaintiff's Miami Pilot Base APA representative, refused to answer his door and evaded service despite three service attempts.

3

a Standing Discovery Order ("SDO") explicitly forbidding the filing of discovery motions, including motions for protective orders, unless requested by the Court after a hearing. (ECF No. 95, at 1-2). The SDO's stated purpose is to resolve disputes at a hearing, not through motion practice. In fact, the SDO explicitly forbids argument from being made in the initial Notice of Hearing email. (*Id.* at 2).

Defendant flagrantly disregarded this order. After Plaintiff served subpoenas on October 2 and 3, 2025, Defendant's counsel, Mr. Shiffrin, neither contacted Plaintiff nor raised any objections. Instead, he waited six days, and on October 9, 2025, dictated that if Plaintiff did not answer at precisely his unilaterally imposed a 1:15pm call time, absent contact he threatened to email chambers without conferring. Plaintiff requested to confer later, between 3:00 - 4:00 P.M., but Mr. Shiffrin rebuffed that reasonable request, asserting the time-sensitive nature. (Am. Decl., ¶ 5). Odd, when on considers Mr. Shiffrin waited a full 7-days since the first subpoena was served. Plaintiff was forced to answer while driving, and was then subjected to rushed yes/no demands with no compromise, and a condescending tone. (Am. Decl., ¶ 6, Ex. A) Immediately, thereafter within 15 minutes, Mr. Shiffrin sent a voluminous argument-based quasi motion under the guise of a "notice" email to the Magistrate's chambers. (Am. Decl., ¶ 7) Thereafter, only an hour and thirty-five minutes later, without notice or hearing, Mr. Shiffrin subsequently obtained permission from Chambers, to file his full 16-page, Motion for Protective Order and Stay of all of Plaintiff's subpoenas (ECF No. 100), the very type of filing the SDO is designed to prevent. (Am. Decl., ¶ 8) Just twenty-one minutes after Mr. Shiffrin's motion was filed in violation of SDO protocol, the Magistrate Judge issued an *ex parte* paperless order which immediately stayed all eight subpoenas. (ECF No. 101). *Id.* This procedural gamesmanship denied Plaintiff the hearing guaranteed by the SDO and cost Plaintiff $2,986.00 in non-refundable process of service fees, and deprived Plaintiff

4

of all his subpoenaed depositions, just three weeks before the November 1, 2025, discovery cutoff date. (Am. Decl., ¶ 9; Doc 104, ¶13, Ex. E.).

**B. Defendant's Counsel Engages in Witness Tampering**

The procedural abuse was merely a prelude to far more serious misconduct that was occurring four days before. Instead of immediately seeking the Court's intervention after the subpoenas were served, Mr. Shiffrin instead took matters into his own hands. On October 6, 2025, Mr. Shiffrin initiated *ex parte* contact with FO Rempfer, a key unrepresented, non-party Plaintiff witness. In that communication, Mr. Shiffrin engaged in a multi-pronged effort to intimidate and mislead FO Rempfer to influence his testimony, in direct violation of 18 U.S.C. § 1512(b). The subsequent facts are documented in a transcript of a recorded telephone call between Plaintiff and FO Rempfer on October 10, 2025 (Am. Decl., ¶ 11, Ex. A) and in follow-up text messages from FO Rempfer on October 17, 2025 (Am. Decl., ¶15 Ex. B).

1. **The Threat of Institutional Retaliation:**

   Mr. Shiffrin explicitly threatened FO Rempfer with institutional punishment from the union if he complied with the subpoena. FO Rempfer recounted Mr. Shiffrin's warning about producing documents, stating that the, "***obligation to safeguard information does not end when you leave your position. Violation of the policy will subject the offender to disciplinary action in accordance with C&B Article 7 R04-19.***"[2] (Am. Decl., ¶ 12, Ex. A, at 1, 00:52). This threat of union discipline, including potential suspension or expulsion, was a direct act of intimidation.

---

[2] APA Constitution and Bylaws ("C&B") Article VII Section 1. Violations, A. mandates, *"Any member is subject to disciplinary action, including but not limited to fines, placing a member in bad standing, suspension or expulsion…"*

5

2. **The Overbroad and Misleading "Gag-List":**

   Mr. Shiffrin further attempted to suppress testimony by providing FO Rempfer with a vaguely worded and overbroad "gag-list." FO Rempfer characterized the instructions as follows: **"He just warned me about the implications of saying something. Very broadly that basically you can't say anything about anything, without giving me any specifics."** (Am. Decl., ¶13, Ex. A, at 4, 11:23). Mr. Shiffrin also misleadingly claimed that a non-privileged PowerPoint "presentation given to the APA board of directors" (*Id.* at 1, 00:52) was confidential and could not be produced. Disengenuous, considering that FO Rempfer asserted the presentation was his personal work-product created solely in collaboration with Plaintiff and similarly situated MDD [3] pilot, Wallace Preitz.

3. **The Documented "Chilling Effect":**

   Mr. Shiffrin's threats had their intended effect. During the call, FO Rempfer, a former U.S. Air Force A-10 fighter pilot, expressed his reluctance to testify and stated, ***"I think my testimony is compelling because of the dirty pool the APA's played. Um, but***

---

[3]  Meadows' union, the APA, classifies him as MDD ("Medically Disability Dropped from AA Seniority List"), which is membership code for adversely affected disabled pilots' administratively dropped from the seniority list for exceeding five years on disability. Discovery in *Preitz v. Allied Pilots* (ED Pa., Case No. 2:17-cv-01166-MSG, Mar 16, 2017) showed that out of the original 241 MDD pilots circa 2017, 55 of those who subsequently obtained their FAA Airman's First Class Medical Certificates, had applied for reinstatement to their original pilot position and relative seniority number through American's and APA's published Return-To-Work ("RTW") process. Of those 55, only three such pilots were denied reinstatement, FO Lawrence Meadows, FO Kathy Emery, and FO Susan Twitchell, all of whom had sued APA for breaching their duty of fair representation ("DFR"). Two of those, Emery and Twitchell, took monetary settlements in exchange for waiving their right to reemployment as a pilot with American. Meadows did not take such settlement despite being offered one, and, thus, never waived his right to re-employment. Leaving Meadows as the only MDD pilot denied reinstatement.

*I'm going to say that, right? I'm not going to use anything that's pejorative."* (Am. Decl., ¶ 11, Ex. A, at 5, 6:34). Then, Plaintiff asked, *"If you testify, are you fearful for your career, your union membership, or retaliation by the union?"* to which FO Rempfer replied, *"Absolutely...the prima facie evidence is the fact that the union tried to recall me twice unsuccessfully and then close my committee* [the MDD pilot seniority reinstatement committee] *down at the eve of the mediation* [pertaining to the settlement of MDD Grievance 12-012/23-031]." (Am. Decl., ¶ 11, Ex. A, at 6, 17:06-17:49). Days later, on October 26, 2025, the chilling effect worsened. In text messages to Plaintiff, FO Rempfer expressed that the stress of the situation was affecting his family and explicitly stated he would, *"prefer not to testify about the union counsel's caution about information that is not permissible to be discussed or their comments on potentially facing discipline. The situation is creating stress in my home and my wife has asked me to disengage."* (Am. Decl., ¶ 15, Ex. B). Mr. Shiffrin's conduct has thus irreparably tainted this witness.

### C. Counsel's Evasion and Refusal to Address the Misconduct

On October 20, 2025, Plaintiff sent an email to Mr. Shiffrin, detailing the allegations of witness tampering and demanding that he admit or deny the statements. (Am. Decl., ¶ 16, Ex. C). Later that day, Plaintiff conferred by telephone with local sponsoring counsel, Capri Trigo, pursuant to S.D. Fla. L.R. 7.1(a)(3). Despite being on notice of the serious allegations, Ms. Trigo declined to state a position on the forthcoming motion. (Am. Decl., ¶ 19; Ex. D), Email Confirming Call). This pattern of evasion and obstruction necessitates this Court's immediate intervention.

### LEGAL ARGUMENT

**I. Disqualification is Mandated by Counsel's Witness Tampering in Violation of 18 U.S.C. § 1512(b).**

Disqualification is a drastic remedy, but it is required when counsel's misconduct is so egregious that it threatens the due administration of justice. Here, the documented evidence demonstrates that Mr. Shiffrin has engaged in conduct that facially violates the federal witness tampering statute, **18 U.S.C. § 1512 – Tampering with a witness, victim, or an informant**. This statute provides, in relevant part;

> **(b) <u>Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—</u>**
>
> **(1) <u>influence, delay, or prevent the testimony of any person in an official proceeding;</u>**
>
> **(2) <u>cause or induce any person to—</u>**
>
> **(A) <u>withhold testimony, or withhold a record, document,</u> or other object, from an official proceeding;**
>
> **(C) <u>evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or</u>**
>
> **(D) <u>be absent from an official proceeding to which such person has been summoned by legal process;</u>** [Emphasis Added].

Mr. Shiffrin's conduct meets every element of the statute. He knowingly used intimidation by threatening FO Rempfer with union discipline for complying with a subpoena. He engaged in misleading conduct by providing a vague, overbroad gag-list and mischaracterizing non-privileged documents as confidential. Mr. Shiffrin's intent, to cause FO Rempfer to withhold documents and limit his testimony, is clear from the context and confirmed by the resulting "chilling effect" on the witness. Such a profound abuse of an attorney's power warrants the severe sanction of disqualification. *See, e.g., United States v. Ofshe*, 817 F.2d 1508,1512, and 1516 (11th Cir. 1987) (recognizing courts' inherent power to disqualify counsel for "misconduct which would undermine the fairness of the trial to all parties and the public's interest in proper functioning of the judicial process.").

## II. The Recording of the Witness Tampering is Admissible.

This is a federal question case and the admissibility of evidence is governed by the Federal Rules of Evidence. Plaintiff's wife was compelled to make a recording of his conversation with FO Rempfer to preserve what she reasonably believed was evidence of ongoing criminal witness tampering. While the recording was made in Florida, federal law controls its admissibility. *See, e.g., Caro v. Ameriprise Fin. Servs., Inc.*, No. 13-60589-CIV, 2013 WL 4828389, at *2 (S.D. Fla. Sept. 10, 2013) (holding "Florida's wiretapping statute does not apply to recordings made in federal court proceedings because federal law governs the admissibility of evidence in federal court."). See also. *U.S. v. Noriega*, 128 F.3d 735, 741 (11th Cir. 1997) (holding "the district court did not err in admitting wiretap evidence obtained in violation of Florida's two-party consent law, as the federal wiretap statute's one-party consent provision governs in federal prosecutions, and the exclusionary rule does not extend to state law violations absent a federal constitutional violation.").

Even if the recording is found to be in technical violation of Florida law, it is still admissible under Federal Rule of Evidence 403[4]. The recording's probative value is immense: it is direct, incontrovertible evidence of an officer of the court threatening a federal witness. This immense probative value is not "substantially outweighed" by any unfair prejudice. The prejudice to Defendant is not "unfair"; it is the direct result of its own counsel's misconduct. Excluding this evidence would have the perverse effect of rewarding the witness tampering and cause irreparable harm to Plaintiff's case, and otherwise require Mr. Shiffrin to testify as a material witness.

---

[4] The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

9

### III. Disqualification is Required Under the Advocate-Witness Rule.

By engaging in witness tampering, Mr. Shiffrin has transformed himself from an advocate into a central fact witness. Florida Rule of Professional Conduct 4-3.7 states that a "lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." Mr. Shiffrin's conversation with FO Rempfer is now a material, contested event in this litigation. The only two parties to that conversation are FO Rempfer and Mr. Shiffrin. To ascertain the truth of the threats made, Mr. Shiffrin's testimony will be necessary. He cannot be both a fact witness regarding his own misconduct and an advocate arguing the case. Disqualification is therefore mandatory.

### IV. Sanctions and an Order to Show Cause are Warranted for the Broader Pattern of Bad Faith.

Mr. Shiffrin's misconduct is part of a larger pattern of obstruction that justifies sanctions and an order to show cause directed at his sponsoring counsel. This pattern includes:

1. Violating the SDO (ECF No. 95) to obtain an improper *ex parte* stay.
2. Filing a Bad-Faith Motion for Protective Order complaining of discovery burdens only after counsel's own extra-judicial attempts at witness suppression failed.
3. Witness Tampering by Mr. Shiffrin.
4. Evasion by Sponsoring Counsel Capri Trigo, who, despite being on notice of the allegations, declined to state a position during a conferral call, in disregard of her duties pursuant to S.D. Fla. L.R. 4(b) to ensure her sponsored counsel's compliance with all rules and standards.

This Court has the inherent authority to sanction such bad-faith conduct. An Order to Show Cause is necessary to compel Ms. Trigo to explain her failure to supervise her sponsored *pro hac vice* counsel and to justify why she and her firm should not be sanctioned for this

profound breach of the Southern District of Florida's Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys Rule 4(b)[5].

## V. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff Lawrence M. Meadows respectfully requests that this Court enter an Order:

1. DISQUALIFYING Joshua B. Shiffrin and the law firm of Bredhoff & Kaiser, PLLC from any further participation in this case;

2. IMMEDIATELY STAYING all discovery proceedings, including the hearing scheduled before the Magistrate Judge, pending the resolution of this Emergency Motion;

3. ISSUING an Order to Show Cause directed to sponsoring counsel Capri Trigo as to why she and her firm should not be sanctioned for the misconduct of her sponsored *pro hac vice* counsel;

4. AWARDING Plaintiff monetary sanctions for the costs and fees incurred in responding to Defendant's bad-faith motion and bringing this motion;

5. SCHEDULING an expedited evidentiary hearing on this Motion; and

6. Granting any other relief this Court deems just and proper.

---

[5] Under Rule 4(b) of the Southern District of Florida's Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, the Florida sponsor (local counsel) who files the *pro hac vice* motion must certify they've reviewed the out-of-state attorney's qualifications and character, and they remain responsible for ensuring ongoing compliance with all local rules, ethics, and court orders. Misconduct by the pro hac vice counsel can lead to sanctions on the sponsor also -joint and several. Ms. Capri Trigo, Esq. as Shiffrin's Florida sponsor, bears responsibility under Local Rule 4(b) for his witness intimidation and conferral failures; the Court should order her to show cause why her admission shouldn't be reviewed.

## **_CERTIFICATION OF GOOD FAITH CONFERRAL_**

Pursuant to S.D. Fla. L.R. 7.1(a)(3), I, Lawrence M. Meadows, certify that I made multiple good-faith efforts to confer with opposing lead counsel, Capri Trigo, regarding the relief sought in this Motion. On Friday, October 17, 2025, I left a detailed voicemail for Ms. Trigo, and offered to be available to confer anytime through that evening, over the weekend, and alternatively offered to meet in-person at her office or telephonically on Monday to which I received no response. On Monday, October 20, 2025, at approximately 5:15 P.M., I once again called her cell phone and Ms. Trigo answered. During our call, Ms. Trigo acknowledged receipt of all prior pleadings and correspondence sent to Mr. Shiffrin. Then, I formally requested her position on the instant forthcoming Motion. Ms. Trigo declined to state a position at this time and, despite being afforded the opportunity, the issues herein could not be resolved. Shortly thereafter, I emailed a detailed meet and confer email to Ms. Trigo, Mr. Shiffrin, and all other associates informing them of filing this instant motion and once requesting their position. At the time of filing, I have not been provided Defendant counsels' position on this Motion.

Dated: this 21st day of October 2025;                    Respectfully submitted,

Lawrence M. Meadows, Pro Se Plaintiff
1900 Sunset Harbour Dr., #2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

**I, Lawrence M. Meadows, Pro Se Plaintiff, hereby certify,** that a true and correct copy of the foregoing was served via E-mail and U.S. Mail on October 21, 2025.

_____
Signature of Filer

## SERVICE LIST

**Capri Trigo**
Gordon & Rees LLP
100 SE Second Street
Suite 3900
Miami, FL 33131
305-428-5323
Email: ctrigo@gordonrees.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Joshua B. Shiffrin**
**Grace Rybak**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W.
Suite 1000
Washington, D.C. 20005
202-842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.vom
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Counsel for Defendant – Allied Pilots Association**

13