Lawrence M. Meadows, Plaintiff
1900 Sunset Harbour Dr., 2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

FILED BY_____MCO__D.C.

OCT 2 1 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# IN THE UNITED STATES DISTRICT COURT

## FLORIDA SOUTHERN DISTRICT

| | |
|---|---|
| **LAWRENCE M. MEADOWS,** | |
| *Plaintiff,* | |
| v. | |
| **ALLIED PILOTS ASSOCIATION, et al.** | **Case No: 1:17-cv-22589-EA** |
| *a Texas Labor Association,* | **Honorable Judge Ed Artau** |
| *Defendant.* | |

**AMENDED DECLARATION OF LAWRENCE M. MEADOWS
IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO DISQUALIFY
DEFENDANT'S COUNSEL JOSHUA B. SHIFFRIN AND BREDHOFF & KAISER,
FOR WITNESS TAMPERING AND OTHER MISCONDUCT; FOR SANCTIONS;
FOR AN ORDER TO SHOW CAUSE DIRECTED TO SPONSORING COUNSEL;
AND FOR AN IMMEDIATE STAY OF ALL DISCOVERY PROCEEDINGS**

I, Lawrence M. Meadows ("Meadows"), hereby declare as follows:

1.  I am over 18 years of age and the named Plaintiff in the above-captioned matter.

2.  I make this Declaration and exhibits attached herewith are true and correct to the best of

    my personal knowledge and would so testify in personal

3.  After graduating cum laude with a B.S. degree in Aeronautical Engineering, in 1985, I was commissioned U.S. Air Force Officer where I served honorably for six years as a military pilot and Gulf War I veteran, then in 1991 was hired as American Airlines pilot. I'm currently qualified as an FAA type-rated Boeing B-777 Captain and Instructor Pilot working in Boeing's Flight Training Center in Miami. I have continuously held an FAA Airman's First Class Medical Certificate since November 2018 and meet all essential job functions of an American Airlines Captain. Nonetheless, APA has carved me out from a secret settlement agreement that reinstated to the seniority list and returned to active line pilot service several other similarly situated MDD (Medical Disability Dropped from AA Senioirity List) pilots.

### *PROCEDURAL ABUSE AND BAD-FAITH CONDUCT*

4.  After this Court set a November 1, 2025 discovery deadline (ECF No. 74), and with the parties' joint motion to extend deadlines (ECF No. 89) still pending, I served subpoenas on seven key non-party witnesses between October 2 and October 9, 2025, to preserve my discovery rights.

5.  On October 9, 2025, Defendant's counsel, Mr. Shiffrin, demanded an immediate conferral call. I informed him via email that I was driving from work and requested we speak later that afternoon. He replied via email: "If I don't hear from you at 1:15…we can't connect then…we email to the Magistrates chambers" – without a conferral.

6.  Forced to comply, I took the call on speaker phone while pulled over on the side of the road and stated my wife was present during the call as my witness. The call was not a good-faith conferral; but instead a one-sided, thirteen-minute demand for "yes or no" answers, during which Mr. Shiffrin repeatedly stated I should "hire an attorney" and refused all compromises.

7. Immediately following this call, Mr. Shiffrin submitted a quasi-motion full of argument under the guise of a Notice of Hearing email to Magistrate Judge Reid's chambers. Shortly thereafter, he was invited via email to file a motion for protective order and a stay.

8. Thereafter, on October 10, 2025, Defendant filed its formal Motion for Protective Order (ECF No. 100). Within twenty-one minutes, the Court issued a paperless order staying all depositions (ECF No. 101), despite me not being provided with neither a hearing nor opportunity to respond.

9. This stay was highly prejudicial to me, created a grave risk irreparable harm in light of the then November 1, 2025 discovery cutoff, and resulted in the cancellation of seven depositions, associated flight, hotels, and caused me to forfeit over $2,986 in non-refundable costs for service of process. (Doc104, ¶13, Ex. E).

### *EVIDENCE OF WITNESS TAMPERING*

10. Prior to seeking the Court's intervention, on October 6, 2025, Mr. Shiffrin engaged in *ex parte* contact with my lawfully subpoenaed, unrepresented non-party witness, and longtime union unpaid union volunteer and MDD pilot advocate, First Officer ("FO") Thomas Rempfer, who was never an Officer or employee of the Defendant APA.

11. On October 10, 2025, I had a telephone conversation with FO Rempfer, to explain that a temporary stay of his subpoenaed deposition was issued, and that his depo was on hold. During the call he expressed his concerns and sudden reluctance to testify. That's when I began to fully understand the nature of Mr. Shiffrin's contact with him. I was physically located in Florida and FO Rempfer was physically located in Arizona. While I spoke with FO Rempfer on my wife's phone, my wife, Ann Marie Marino, who was also present, used my phone to make an audio recording of the conversation to preserve evidence of what I

believed to be witness tampering. Attached hereto as **Exhibit A** is a true and accurate transcript prepared from that recording.

12. During that call, FO Rempfer confirmed that Mr. Shiffrin had contacted him on October 6, 2025 via zoom and also via email, FO Rempfer stated that Mr. Shiffrin warned he could face union discipline if he complied with the subpoena and warned him that producing documents would *"subject the offender to disciplinary action in accordance with C&B Article 7." (Id. at 6, 00:52).*

13. FO Rempfer also stated that Mr. Shiffrin provided him a vague and overbroad "gag-list" of topics, which FO Rempfer characterized as follows: *"He just warned me about the implications of saying something. Very broadly that basically you can't say anything about anything, without giving me any specifics." (Id. at 4, 11:52).*

14. *When I asked FO Rempfer if he was fearful of retaliation from the union for testifying,* he stated without hesitation, *"Absolutely."* He. explained that his fear was based on a history of prior union retaliation for advocating for seniority reinstatement of myself and other similarly situated MDD pilots, stating: *"I'm not just scared...they're already tried to retaliate against me...over and over again, right? So now, where does it go next?" (Id. at 4, 11:52).*

15. On October 17, 2025, the chilling effect of Mr. Shiffrin's threats worsened. FO Rempfer sent me a series of text messages, stating that the stress of the situation was affecting his family and that he would *"prefer not to testify about the union counsel's caution about...potentially facing discipline."* True and correct copies of these text messages are attached hereto as **Exhibit B.**

### *EVASION BY DEFENSE COUNSEL*

16. On the morning of October 20, 2025, I sent an email to Mr. Shiffrin detailing these allegations of witness tampering and demanding that he admit or deny his conduct. A true and correct copy of this email is attached hereto as **Exhibit C**. As of the time of this filing, I have received no substantive response, despite him sending two emails late that evening.

17. On Friday October 17, 2025, I initially attempted to confer with Defendant's sponsoring local and lead counsel, Ms. Capri Trigo, regarding Mr. Shiffrin's conduct and called her cell phone and left a detailed voicemail, offering to be available through Friday evening, through the weekend, and all day Monday - either in her office or telephonically.

18. After receiving no response from Ms. Trigo, late in the afternoon on October 20, 2025, I once again called her cell phone and spoke with her to fulfill my duty to confer under S.D. Fla. L.R. 7.1. Despite my advising her of the motion and its basis in witness tampering, and her acknowledging receipt of all intervening emails sent to her and Mr. Shiffrin, Ms. Trigo declined to state a position until circling back with Mr. Shiffrin. Later Mr. Shiffrin emailed to advise he was lead counsel despite the docket listing his *pro hac vice* sponsor as such.

19. Immediately following that call, I sent Ms. Trigo, along with Mr, Shiffrin and their four associates, an email memorializing our conversation informing her in writing of this motion and once again requested her position on this motion. A true and correct copy of that email is attached hereto as **Exhibit D.** At the time of filing neither Ms. Trigo, nor Mr. Shiffrin have provided their position.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: October 21st, 2025;

Lawrence M. Meadows

## CERTIFICATE OF SERVICE

I, **Lawrence M. Meadows, Pro Se Plaintiff, hereby certify,** that a true and correct copy

of the foregoing was served via E-mail and U.S. Mail on October 21st, 2025 on all counsel or

parties of record on the Service List below.

Signature of Filer

## SERVICE LIST

**Capri Trigo**
Gordon & Rees LLP
100 SE Second Street
Suite 3900
Miami, FL 33131
305-428-5323
Email: ctrigo@gordonrees.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Joshua B. Shiffrin**
**Grace Rybak**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W.
Suite 1000
Washington, D.C. 20005
202-842-2600
jshiffrin@bredhoff.com
grybak@bredhoff.vom
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Counsel for Defendant – Allied Pilots Association**

**<u>EXHIBIT A</u>**

**TRANSCRIPT TOM REMPFER -LAWRENCE MEADOWS**
**CONVERSATION: 10/10/2025 1549 EST – 21 MINS**

**0:05 Tom:** Hola.

**0:06 Larry:** Hey, man. I think you cut off. It wasn't me.

**0:08 Tom:** Yeah. Yeah. Yeah. No, I I I I'm not sure why I got cut off, but I figured you could call back. Um, you know, bottom line is is is uh we got it covered. **I'll I I will I am going to read the stuff from the APA lawyers, Josh Shiffrin, uh his <u>warnings,</u>** uh and then I'm going to ask you just simply keep me within those guidelines and if you object to them, uh, you can do whatever you need to do as far as trying to get the broader testimony later on or whatever.

**0:40 Larry:** And they they sent this to you or told you this.

**0:42 Tom:** They sent it to me

**0:44 Larry:** When? What day?

**0:45 Tom:** I don't know. Um, I'd have to go back and look. I'll read it to you.

**0:50 Larry:** Okay. Go ahead.

**0:52 Tom:** Yeah. Um, I went back and forth a bit. Um, All right. So, **he starts by telling me he starts by telling me um thank you for our conversation this afternoon. Uh and so the email was dated uh 10/6 October 6th. Um, as "we discussed, I understand that on or around October 3rd, 2025, you were served with a third party subpoena by the plaintiff in the case of Meadows** versus blah blah blah, seeking **that you provide documents and deposition testimony pertaining to matters that you handled while acting as the chair of an APA committee.** Please be aware that section 1.18 of the APA policy manual states the following. And there's that like blah blah blah blah blah, you know, but the point of it is is stuff that does not comply with HIPPA privacy notice uh for the applicable APA sponsored benefit plans. **Confidential information is defined as sensitive non-public information, the unauthorized disclosure of which would damage or diminish the welfare effectiveness, privacy, longevity of the association and jeopardize the welfare of its membership and includes without limitation attorney client privilege uh uh work products, communications, negotiating strategy, and protected health information as defined under HIPPA. <u>This obligation to safeguard information does not end when you leave your position. Violation of the policy will subject the offender to disciplinary action in accordance with C&B Article 7 R04-19.</u>** I have attached the current policy current version of the policy manual. This provision was included in prior versions of the policy manual included in those affected uh including those effective in 2022 and 2023. **APA considers confidential information subject to this provision <u>to include presentations given to the APA board directors </u>include session communications with attorneys representing APA, communications with or from APA officers, council and employees regarding the handling of 12-11, 12-12 and 23-31. APA does not authorize the disclosure of any such materials in response to the subpoena served you in the Meadows case."**

**3:43 Tom:** And then you still with me, Larry?

**3:45 Larry:** Yeah, I'm listening. I'm listening. I'm trying I'm not interrupting you. Go ahead.

**3:49 Tom:** Yeah. And then uh and then so I asked him I said uh thank you for the policy manual citation, Josh. Since you additionally referenced C&B Article 7, could you provide me that citation? And so then he says, "I've attached the C&B blah blah blah." And uh um and then uh I said, "Thank

1

**TRANSCRIPT TOM REMPFER -LAWRENCE MEADOWS
CONVERSATION: 10/10/2025 1549 EST – 21 MINS**

you, Josh. If the deposition goes forward as subpoenaed, it sounds like the informational bar is HIPPA related. Anything personally identifiable related to medical info of particular pilots. Would you agree that if I guard my testimony against citing any particular pilot other than the plaintiff that this approach is in compliance with the PM and the C&B? Regarding the other attorney other areas, attorney client privileged attorney work communications projects and uh product communications and negotiating strategy, I was not privy to any of that information from any attorney or their work products. Nor was I involved in the actual negotiations related to the final settlement agreement. So again, I would only testify about my experience, my work products, my review of the historical facts and documents. my analysis and my conclusions. Then he comes back and he says, um, "Hi Tom, to answer your question, APA does not agree that the approach you have outlined would fully comply with the policy manual. **APA's understanding is that you are in possession of confidential information, the disclosure of which it would be detrimental to APA or its membership. As I explained in my email, that confidential information includes communications with the APA's councils that is privileged as well as confidential communications about uh grievance handling strategy.** APA has an interest in protecting those categories of information from disclosure without regard to the information may be covered by HIPPA or uh pertain to particular pilots. As I've explained, APA intends to file a motion to seek clarity on how these issues should be addressed before any deposition takes place. I'll keep you posted on what we file and what the court does."

**5:58 Larry:** And he

**6:00 Tom:** I said and then so I said I said I said "Copy. **Appreciate the reply Josh.** Please give me specifics about what confidential information you are referring to and I will not mention it or will provide the caveat of why I cannot discuss it based on your guidance." Then he comes back and he says **"Hi Tom. Once a witness is sworn in and is being deposed pursuant to the subpoena, it is difficult for a witness to refuse to answer a question. For that reason APA is seeking to get clarification about the permissible bounds of the deposition prior to the deposition take place. As I said, I'll keep you apprised of anything we file and any response from the courts. Otherwise, APA's position on what it considered to be confidential information is described in the email I sent."** You know, **it's basically very broad, right? <u>Like you can't talk about anything.</u>**

**6:50 Larry:** Yeah, he's lying because he he's not seeking any of that. He's seeking to just stay the depositions and get a protective order and stop it all. He doesn't want clarification or that's what I suggest. I said, "Why don't you limit the deficit of testimony coming to the table and object to whatever you consider to be privileged, but he's just trying to kill it in in total." He's not trying to narrow it. That's a lie.

**7:10 Tom:** And and and we can address that in the deposition if they're present and accounted for and just say

**7:15 Larry:** "Yeah, they they'll be there. They have a right to be there. They'll be there. But I'm just saying he he's what he's he'll tell representing you is not true. They're they're trying to quash it.
**7:24:** and we and we'll make that a part of the deposition. Josh, you told me this. What boundaries are there? What clarifications did you get? Did you get any? No. Did you ask for any like you told me you were going to ask for any? You know, and you know, we can we can we can probably, you know, uh, you know, make it look like they're just trying to, you know, muzzle me.

**7:50 Larry:** Well, it sounds like he's trying to pin you down, but he's not giving you specificity. So, it's like very oblique. I mean, what the hell?

2

**TRANSCRIPT TOM REMPFER -LAWRENCE MEADOWS
CONVERSATION: 10/10/2025 1549 EST – 21 MINS**

**7:56 Tom:** Right. Right. That and that's what I've asked. I've asked for specifics. And oh, by the way, Josh, If I'm going to address something, I'll I'll give you generally what I intend on talking about. And then if you want to object to it, you can object to it. And then then I can still probably speak to it, but then a federal judge would decide whether or not his objection was relevant and it should be redacted from the deposition. Does that make sense?

**8:20 Larry:** Yeah. Again, I don't…this guy's slippery, but but see, he said that after you talked to him or before? That was a follow up?

**8:30 Tom:** Yeah, hold on one second here. There's a a new my f*** jeepers, man. Yeah, so the FB went illegal for that trip. So I could have totally jumped on that trip today. How ridiculous. Um, okay. So ask your question again.

**8:52 Larry:** No, this was sent after they spoke to you?

**8:53 Tom:** Yes. Yeah. All that was happened after after they spoke to me.

**9:01 Larry:** But you you I mean you feel like you you said they didn't threaten you, but they warned you like that. You you said I mean I feel I feel really Look, man, I'm just going to follow the rules, but I I feel really bad. I don't want to cause you any heartburn or harm, but I mean I mean it sounds like I mean they're trying to scare you and that's not right.

**9:20 Tom:** Yeah, that's **my point to you is if my if my testimony isn't actually legally relevant because you already have the exact same crucial testimony.**

**9:30 Larry:** I'll talk to somebody. Look, I mean, if if if let's see what happens cuz I'm going to

**9:35 Tom:** Yeah. I mean, my my suggestion would be you don't need to put me in this position. If you already have the information uh that came from the union, both in that I think I think both both in both in direct texts from Ed. My my testimony about what I got from Ed is irrelevant considering Ed sent you the same thing about your grievance moving forward. He said it twice in that text.

**10:03 Larry:** I get it, but that's one piece of it. What bothers me is I mean I think you have a lot of stuff that's relevant in particular just your role as a committee man. You feel like you were getting you know pushed back and try attempts to recall you.

**10:16 Tom:** But that's all but but that is all established by the facts. **They tried to recall me. They tried to recall me. They closed my committee. Those are facts that have nothing to do with me. Those are they they They stripped me away from being able to be an advocate for you and help you out.**

**10:37 Larry:** Tom, look, I'm just going to

**10:38 Tom:** Larry, it's your testimony. It's the fact that your representation was taken away from you and your membership was taken away from you. And me speaking to it going, "Yep, they tried to recall me. They tried to recall me and then they closed my committee." Those are all established facts based on the board documents.

**10:59 Larry:** I don't know. I'll talk to somebody.

3

**TRANSCRIPT TOM REMPFER -LAWRENCE MEADOWS**
**CONVERSATION: 10/10/2025 1549 EST – 21 MINS**

**11:00 Tom:** All publicly posted.

**11:03 Larry:** I don't want to hurt you, Tom. It sounds like you you're very worried and scared of them retaliate against you. Is it is that I mean

**11:08 Tom:** <u>I'm not just I'm not just scared of they've already tried to retaliate against me, right? Over and over again, right? So now, where does it go next? Right?</u>

**11:16 Larry:** But did Josh leave you like the impression if you talk to me or to to testify is

**11:23 Tom:** No, he didn't say he didn't say don't talk to Larry. Okay. <u>He just warned me about the implications of saying something, very broadly that basically you can't say anything about anything without giving me any specifics.</u>

**11:37 Larry:** I mean they they offered to represent but they so they offered to represent you but they're not representing you. Correct? Because I don't

**11:44 Tom:** <u>I think my impression was they offered to represent me if I wanted the deposition quashed.</u>

**11:50 Larry:** and **you said you didn't want it quashed?**

**11:52 Tom:** **I said no. I said that's not my intention. My intention is not to be not transparent. My intention is to get this over with um if it needs to happen** and and so unfortunately I've got to there's probably nothing I can do about this uh uh trip. God damn it.

**12:09 Larry:** Well, listen, I I I'll talk to I I don't want to unless unless you do this, but right now it's set, but they since we talked, they filed a 16 page motion like late Friday afternoon. I doubt it's going to get any traction to the court until Monday's a holiday. It's Tuesday. They may get a stay. I may move to vacate, but it's going to be like I told you earlier. It's going to be a very back and forth thing. So, if if it's off, I'll say it's off for now, but stay in standby cause I'm going to move to vacate the the stay and that, you know, an emergency basis ask for a hearing on Wednesday or Thursday and it's going to be really tenuous. I mean, but I'm doing you remote. So, if I can get it if it gets put in place, I can get it lifted. I could do it via remote. But, you know, see what happens with Sue Edwards. Sue Edwards probably has enough information. I mean, it's not good for them either way. They're they're very worried about what's going to come out from everybody, I think, and rightfully so. But I I'm sorry.

**13:02 Tom:** Anyway Anyway, I gave you the text via an and basically my conclusion was is I don't think you need my testimony because you're basically just asking me for information you're basically just making asking me information that's already come directly from the source.

**13:19 Larry:** Yeah, I know. But I've already served you and I think you are relevant. I think

**13:23 Tom:** That's fine. And but again and and even if it's a story about your representation being a pattern of denying your representation. That's all provable based based on the facts. Also, all of these people that were representing you got removed from service and that's those are just facts.

**13:39 Larry:** I get it. All right. Well, I appreciate it. Like I said, I don't want you in an awkward position. I really don't, Tom.

**TRANSCRIPT TOM REMPFER -LAWRENCE MEADOWS
CONVERSATION: 10/10/2025 1549 EST – 21 MINS**

**13:45 Tom:** Yeah, it is an it is an awkward position. I mean, I I consider myself a fairly gutsy person. I always stand up and I do the right thing. I certainly will respond to a federal subpoena if it if it ends up going forward. The problem is is I actually think it's an unnecessary uh position to be put in because because once I read in your text that you had the exact information that you were saying you needed my text to uh prove uh I I realized you actually don't need thirdhand person's verification of something that you got firsthand from the source from the union president.

**14:25 Larry:** Your story is important. You're the advocate for the group and you're get you're they're trying to push you out the door every step of the way. I mean and it's just a pattern but I tell you what, listen, right now it's on. They're doing everything in their power to kill it. And as soon as it is an answer one way the other, I'll let you if you they kill it, I'll say it's stayed for now. I'm moving to vacate, be in standby, and I'll I'll let you know as soon as possible. And you know, otherwise, I'm going to make if if it gets stayed, I I get pushed to a corner by Friday, it's going to get rescheduled probably. But I I'll let you know. I'll keep you informed the loop and as long as you're not represented by them, I can talk to you. I don't want to talk to you beyond anything procedural. And I and I I do want to take note about your concerns and I'll I'll I'll take that under consideration. I I got to talk to this other attorney I'm working with and and a whole strategy, but I mean I think you are relevant, but I I I I hear the concern and your fear and I don't want to put you in a bad spot. I mean, I'm in a bad spot.

**15:21 Tom:** And you also you also understand not just <u>not just the concern about the retaliatory behavior of APA and the fact that these attorneys who I don't know have like sent me warnings on behalf of the association</u>, but also just the fact that the very premise of the requested testimony is something that you you can already establish all of that as fact. I'm not actually bolstering those facts because I'm third person.

**15:51 Larry:** I mean, I need a witness. I mean, ah, f***.

**15:57 Tom:** Yeah, but your witness is your witness is Ed. He's the president. Your witness is his text to you saying that
**16:02 Larry:** they're trying they're trying to block him, too. They're trying to block everybody. That's that's

**16:04 Tom:** I know, but you still But you still have his text to you. His text is the proof.

**16:09 Larry:** The texts aren't going to win the case, Tom. They're not going to win the case.

**16:16 Tom:** Yeah, but they're trying to block his, too. Are they representing him?

**16:20 Larry:** They're trying to block everybody. They're trying to block people whether

**16:22 Tom:** Are they representing him, though? So, if they

**16:24 Larry:** I don't know if they're representing Ed, but just like they're doing with you. They're try they're trying to quash everything even though they're that you're not their client.

**16:34 Tom:** All right. Anyway, Larry, you get you get my point. My point is I don't I don't actually think that my testimony is additive. <u>I think my testimony is compelling because of the dirty pool the APA's played. Um, but I'm not going to say that, right? I'm not going to use anything that's pejorative</u>

**TRANSCRIPT TOM REMPFER -LAWRENCE MEADOWS**
**CONVERSATION: 10/10/2025 1549 EST – 21 MINS**

**against the union.**

**16:54 Larry:** Well, you got to tell the truth. If you're put under oath, you got to tell the truth, no matter how how much you like it or not.

**16:58 Tom:** Larry, I would always tell the truth, but I'm not going to do so in any kind of pejorative language, right? I'll tell the facts, you know, but uh but the

**17:06 Larry: if you testify, are you fearful for your career, your union membership or retaliation by the union?**

**17:13 Tom: Absolutely.**

**17:14 Larry:** Well, yeah, that's the answer. That's not good. All right, Tom. Look, let me just It may get cancelled. It may not. Right now, it's on. I will be the first to notify you if it stayed. I'm sure they will, too. But I'll notify you and I'm going to tell you if they stay it. I'm going to move to vacate whatever order they get. And I got another attorney in Florida to help me with this. So, um it's going to be a battle and it may may be stayed for a day or two and be back on Friday, maybe res for a week and then I'll I'll I'll take consideration you said if if you're really not necessarily I think you are, but if I I I'm worried for you. I don't want to I don't want to

**17:49 Tom:** just just look at you know just look at the thing I sent you. I sent you two three items that basically say the exact same thing that you seem to believe that my testimony I got everything secondhand. I got some stuff secondhand from Sue, some stuff secondhand from uh from Ed. Um and and every everything that I have to say is secondhand. And and oh, by the way, the fact that I got removed, you know, my testimony about that is is like secondhand. The the **the prima facie evidence is the fact that the union tried to recall me twice unsuccessfully and then closed my uh committee down at on the eve of the mediation. That those are just facts.** Okay. You don't need you don't need

**18:38 Larry:** Ok, Tom. I I I get it. I get it. Don't freak out.

**18:42 Tom:** I'm not freaking out. I'm not freaking out. I am just trying to make a point to you that I I I **in a way I feel like you're putting me in a uncomfortable situation because they are warning me about** because this the stuff you're going to ask me, you're going to try to drag it out of me. And it's all the stuff that they don't want me to speak to.

**19:02 Larry: Tom, I just want the truth. I asked your declaration. You said to subpoena you. I I took your advice to protect you. You wanted to be subpoenaed. You weren't comfortable with the declaration, but you have relevant evidence.** But that's that's it. I mean, I'll let I'll update you what happens the next day over the probably by Tuesday, we'll know something.

**19:16 Tom:** All right. And and I of course will be there if it goes forward it goes forward. And we'll just and we'll just walk through it and we'll do it in a very dispassionate manner and I'll read what the what the union attorneys have told me that I have to be careful of. You know, and and we'll proceed according to that guidance. And if you think that something uh and they object to it, then you can you can sort that out with the court later as to whether or not I speak to it, you know, more completely.

6

**TRANSCRIPT TOM REMPFER -LAWRENCE MEADOWS**
**CONVERSATION: 10/10/2025 1549 EST – 21 MINS**

**19:43 Larry:** And I'm just going to tell you, I absolutely wanted to depose you. I think you have stuff to offer. However, I inside my heart, I hear your fear. I'm generally concerned for you and and I'll I'll I'll consider that.

**19:57 Tom:** Look at what they look Look at what they've done to everybody that has opposed them, right? You know, and and so um you know, in my heart of hearts, I hope you get a a massive remedy and and justice for this. What will they do? They will frame it as though Rempfer or Sicher are responsible for the union membership

**20:22 Larry:** for doing the right thing,  for upholding the constitutional bylaws, for pilots, taking care of pilots. Yeah. f*** these lawyers. These lawyers are so dirty.

**20:30 Tom:** You understand? You You understand? You know, this is a this is what Hugh Fenwick and Plumber do as the surrogates is they go out there and say, you know, uh "these pilots personally cost the union millions of dollars," you know, and and they try to and they will smear a guy, you know. Um

**20:50 Larry:** having in Park City guy me a couple weeks ago in Park City, so here here you're suing us for millions of dollars. You can take our money, friend of mine.

**20:58 Tom:** Yeah.

**20:59 Larry:** Like I'm stealing his money out of  his union dues.

**21:00 Tom:** Right. Right. And and that's and that is exactly I mean that's
**21:05 Larry:** notwithstanding I've been deprived of a $500,000 a year job my career.

**21:08 Tom:** Right. And that's the way it's and that's the way it's been going to be spun and that's just my hunch and you already have verification that that's exactly the message that they're that they're going to be conveying.

**21:20 Larry:** Okay. I get it. But if you have any other concerns

**21:22 Tom:** not that they failed not that <u>they failed in their in their DFR responsibilities. Not that they failed to protect our pilots</u> but instead that these people conspired to cost union membership their hard-earned dues money. You know.

**21:36 Larry:** I get it. I get it. And but so long as you're not represented we're legal to talk but I'll just keep the procedural stuff. I I thanks for letting me know and I I know you're concerned and and I'll take under advisement. Let's we'll see what happens. Thank you. Take care.

**21:52 Tom:** Bye.

**EXHIBIT  B**





**Tom Rempfer**

As with the earlier concern that you subpoenaed my testimony to corroborate what the union President already told you directly, I prefer not to testify about the union counsel's caution about information that is not permissible to be discussed or their comments on potentially facing discipline.

The situation is creating stress in my home and my wife has asked me to disengage.

I tried to do my duty as a union officer to advocate for you and our other





**2:50**

Photo ⌄          Done

I tried to do my duty as a union officer to advocate for you and our other MDD pilots, so I hope you will understand my need to focus on my family priorities.





**EXHIBIT C**

| **Subject** | Time -Sensitive Response Needed By Close of Business |
|---|---|
| **From** | Lawrence Meadows <lawrencemeadows@yahoo.com> |
| **To:** | Josh Shiffrin <jshiffrin@bredhoff.com>, Capri Trigo <ctrigo@grsm.com> |
| **Cc:** | Andrew Dymowski <ddymowski@grsm.com>, Caitlin Kekacs <ckekacs@bredhoff.com>, Grace Rybak <grybak@bredhoff.com>, Hans-Peter Von Thielen <hpvonthielen@bredhoff.com> |
| **Bcc:** | Monique Julianne Meadows <momeadow21@gmail.com> |
| **Date** | Today at 10:47 AM |

Dear Josh:

Captain Thomas Rempfer, a key witness in this case, has reported to me that you have made intimidating statements to him, which I consider to be both unethical and in violation of 18 U.S.C. § 1512(b)'s prohibition of witness tampering in several respects.  The statements you reportedly made to Captain Rempfer would also warrant your immediate disqualification as an advocate in this case.

Captain Rempfer advises that you made the following statements to him via email communication and or telephone:

> \* that in providing his testimony, Captain Rempfer will be subject to Union constitutional provisions that prohibit the disclosure of "communications," irrespective of whether they are covered by an attorney-client privilege, that would "diminish the welfare, effectiveness, privacy [or] longevity" of the Union.

> \* that, if Captain Rempfer were to disclose communications that the Union considered to be confidential, he would be subject to "disciplinary action in accordance with" APA Constitution and Bylaws Article 7.

    \*    that you further advised him that "APA considers confidential information subject to this provision" to include "communications with or from APA officers, counsel, and employees regarding the handling of [grievances] 12-11, 12-12, and 23-31" and that "APA does not authorize the disclosure of any such materials."

    \*    When Captain Rempfer asked you to be more precise, you reportedly told him: "You know it's basically very broad, right?  Like you can't talk about anything."  [LS:  Did Josh say this or was it Tom's characterization?]

    \*    Captain Rempfer summarized the directions he received from you in the following terms: "He just warned me about the implications of saying something. Very broadly that basically you can't say anything about anything, without giving me any specifics."

    \*    Captain Rempfer told me that your communications to him left him fearful of adverse consequences to his career as a pilot, his Union membership, and the prospect of Union retaliation if he were to provide full testimony that did not conform to your directives.

I request that, no later than the 5:00 P.M., October 21, you either admit or deny the statements as quoted above.  In the absence of a response, I will proceed on the premise that Captain Rempfer accurately reported and/or characterized your statements.

Assuming that you admit the veracity of some or all of the above statements, I request that you provide, by the same deadline, any

explanation for these statements that would render them non-violative of your ethical obligations and the provisions of 18 U.S.C. § 1512(b).

Sincerely,

Lawrence Meadows

**EXHIBIT D**

| | |
|---|---|
| **Subject** | Meet and Confer - Meadows v APA: Case No. 17-22589-EA |
| **From** | Lawrence Meadows <lawrencemeadows@yahoo.com> |
| **To:** | Capri Trigo <ctrigo@grsm.com>, Andrew Dymowski <ddymowski@grsm.com> |
| **Cc:** | Josh Shiffrin <jshiffrin@bredhoff.com>, Grace Rybak <grybak@bredhoff.com>, Caitlin Kekacs <ckekacs@bredhoff.com>, Hans-Peter Von Thielen <hpvonthielen@bredhoff.com> |
| **Bcc:** | Monique Julianne Meadows <momeadow21@gmail.com> |
| **Date** | Today at 6:22 PM |

## Subject: Meet and Confer Regarding Forthcoming Motion to Disqualify Counsel - Meadows v. APA, Case No. 17-cv-22589-EA

Dear Ms. Trigo,

Pursuant to S.D. Fla. L.R. 7.1(a)(3), I am writing to you in a third and final good-faith effort to confer regarding a forthcoming **Emergency Motion to Disqualify Joshua B. Shiffrin and the firm of Bredhoff & Kaiser, PLLC, For Sanctions, and For an Order to Show Cause, and Stay of All Discovery.** The motion will be based on evidence of witness tampering in violation of 18 U.S.C. § 1512(b) and multiple violations of the Rules of Professional Conduct.

Unfortunately, Josh was unresponsive to my email sent to him earlier today at 10:47 A.M., titled "Time-Sensitive Response Needed By Close of Business," seeking answers relating to his apparent witness tampering. (See Fwd. email below).

At approximately 5:15 P.M. today, I called your cell phone and we spoke, wherein you declined to state a position until circling back with Josh.  Therefore, please state your position as to whether you consent to or oppose this motion.

Finally, in light of these circumstances and your role as lead and sponsoring local counsel, please be advised of the following communication protocol which I will follow going forward: I will direct all future communications exclusively to you. **I will expect all official responses and correspondence requiring action on my behalf to originate from you or your firm, Gordon Rees Scully Mansukhani.** Pending the court's resolution of the forthcoming motion, I will no longer engage directly with counsel from Bredhoff & Kaiser on substantive matters.

Thank you for your professional attention to this matter.

Sincerely,

Lawrence M. Meadows

----- Forwarded Message -----
**From:** Lawrence Meadows <lawrencemeadows@yahoo.com>
**To:** Josh Shiffrin <jshiffrin@bredhoff.com>; Capri Trigo <ctrigo@grsm.com>
**Cc:** Andrew Dymowski <ddymowski@grsm.com>; Caitlin Kekacs <ckekacs@bredhoff.com>; Grace Rybak <grybak@bredhoff.com>; Hans-Peter Von Thielen <hpvonthielen@bredhoff.com>
**Sent:** Monday, October 20, 2025 at 10:47:42 AM EDT
**Subject:** Time -Sensitive Response Needed By Close of Business

Dear Josh:

Captain Thomas Rempfer, a key witness in this case, has reported to me that you have made intimidating statements to him, which I consider to be both unethical and in violation of 18 U.S.C. § 1512(b)'s prohibition of witness tampering in several respects.  The statements you reportedly made to Captain Rempfer would also warrant your immediate disqualification as an advocate in this case.

Captain Rempfer advises that you made the following statements to him via email communication and or telephone:

      \*     that in providing his testimony, Captain

Rempfer will be subject to Union constitutional provisions that prohibit the disclosure of "communications," irrespective of whether they are covered by an attorney-client privilege, that would "diminish the welfare, effectiveness, privacy [or] longevity" of the Union.

\* that, if Captain Rempfer were to disclose communications that the Union considered to be confidential, he would be subject to "disciplinary action in accordance with" APA Constitution and Bylaws Article 7.

\* that you further advised him that "APA considers confidential information subject to this provision" to include "communications with or from APA officers, counsel, and employees regarding the handling of [grievances] 12-11, 12-12, and 23-31" and that "APA does not authorize the disclosure of any such materials."

\* When Captain Rempfer asked you to be more precise, you reportedly told him: "You know it's basically very broad, right?  Like you can't talk about anything."  [LS:  Did Josh say this or was it Tom's characterization?]

\* Captain Rempfer summarized the directions he received from you in the following terms: "He just warned me about the implications of saying something. Very broadly that basically you can't say anything about anything, without giving me any specifics."

\* Captain Rempfer told me that your communications to him left him fearful of adverse consequences to his career as a pilot, his Union membership, and the prospect of Union retaliation if he were to provide full testimony that did not conform

he were to provide full testimony that did not conform
to your directives.

I request that, no later than the 5:00 P.M., October 21, you either
admit or deny the statements as quoted above.  In the absence of a
response, I will proceed on the premise that Captain Rempfer
accurately reported and/or characterized your statements.

Assuming that you admit the veracity of some or all of the above
statements, I request that you provide, by the same deadline, any
explanation for these statements that would render them non-
violative of your ethical obligations and the provisions of 18 U.S.C.
§ 1512(b).

Sincerely,

Lawrence Meadows