FILED BY _____ D.C.

NOV 12 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

LAWRENCE MEADOWS,

    Plaintiff,

    v.

ALLIED PILOTS ASSOCIATION, et al.,

    Defendants.

CASE NO. 1:17-CV-22589-EA

_____/

### PLAINTIFF'S NOTICE OF CORRECTION TO THE RECORD

    Plaintiff Lawrence Meadows, pursuant to his ethical duty to ensure the accuracy of the judicial record, hereby files this Notice to correct at least six material misstatements of fact made by Defendant Allied Pilot Association's counsel, John M. Pellettieri, during the October 28, 2025 discovery hearing (ECF No.125, Oct. 28, 2025 Hrg. Tr.).

    On November 11, 2025, Plaintiff conferred with defense counsel and provided a detailed list of these misstatements, requesting that counsel correct the record. Counsel has refused to do so, stating in writing, "You have not identified anything we said at the hearing that was incorrect. We are aware of no basis for a correction." (See Email Correspondence, Nov. 11, 2025, attached as **Exhibit** A). Accordingly, this Notice is necessary to prevent the Court from relying on a tainted record for future rulings.

### Corrections to the Official Record

The following material misstatements of fact by Mr. Pellettieri are directly contradicted by sworn pleadings, sworn declarations, deposition testimony, and documentary evidence.

**1. Misstatement Regarding Representation by Sue Edwards**

**Misstatement:**

MR. PELLETTIERI: I would say, to clarify, Sue Edwards is an outside attorney who represented APA with respect to a particular grievance, and she never represented Mr. Meadows. (ECF No. 125, Oct. 28, 2025 Hrg. Tr., at 16:8-10).

MR. PELLETTIERI: …I just want to clarify up front that she represented APA and she did not represent, THE COURT: Represent Mr. Meadows, MR. PELLETTIERI: Mr. Meadows. (*Id.* at 16:13-20).

**Rebuttal: This statement is false.** Evidence in the record confirms that Ms. Edwards was retained by Plaintiff and took substantive actions on his behalf. Plaintiff's sworn declaration states that APA retained Ms. Edwards to represent him. (See Declaration of Lawrence Meadows ¶ 14, ECF No. 87 at 31, attached as **Exhibit B**). Further documentary evidence, including Ms. Edwards's work product and communications regarding her representation of Plaintiff, is also in the record. (See Pl.'s Verified Motion for Leave to File Supplemental Pleading, ECF No. 129 at 88-94, Exhibits O & P, attached as **Exhibit C**).

**2. Misstatement Regarding the Collective Bargaining Agreement (CBA) and Termination**

**Misstatement:**

MR. PELLETTIERI: And the collective bargaining agreement in place at the time permitted American Airlines to terminate a pilot if they were on medical leave for disability for more than five years. (ECF No.125, Oct. 28, 2025 Hrg. Tr., at 17:18-21).

**Rebuttal:** **This statement is false.** The CBA provides no such basis for termination, a fact confirmed by the sworn testimony of American Airlines' own Senior Principal of Employee Relations Flight, James Anderson, the individual responsible for administering the American Airlines Pilots' CBA. When asked if the CBA permits termination after five years of disability, his answer was "No." (See Oral Deposition of James Anderson, *Emery v. APA*, 9:14-cv-80518-HURLEY, at 17:24-25;18:1-4, attached as **Exhibit D**). Mr. Anderson further testified that "when removing a pilot off the seniority list after five years. That's just a practice we do. It's not a termination…" (*Id.* at 42:19-21), and finally when asked, "Is it you position that when a pilot is removed from the seniority list that they are permanently terminated.", he answered "No." (*Id.* at 43:23-25, 44:1). Mr. Pellettieri's misstatement is also contradicted by APA Board of Directors Resolution, R2016-30, which states in relevant part; "…the American Airlines' contract, which has been subjectively reinterpreted by the Company to allow the removal of a pilot from the seniority list after five (5) years of continuous disability." (See ECF No. 35 at 109-111, Ex. B, attached as **Exhibit E**).

**3. Misstatement Regarding the Scope of Grievance 1212**

**Misstatement:**

MR. PELLETTIERI: In May 2012, there was a grievance filed [DFW Domicile Grievance 12-012] on -- it was a base grievance, meaning it was not fully national throughout everyone in the union. (ECF No.125, Oct. 28, 2025 Hrg. Tr., at 17:22-24).

**Rebuttal:** **This statement is false.** It is directly contradicted by the sworn deposition testimony of APA attorney and Director of Negotiations, Mark Myers, who testified unequivocally that the issues underlying Grievance 12-12 were "systemic -- system-wide they would apply system-wide." (See Oral Deposition of Mark Myers, *Emery v. APA*, 2:17-cv-01166-MSG, ECF No. 59, at

22:18-25; 23:3-5, attached as **Exhibit F**). This is further corroborated by American Airlines'
bankruptcy court pleadings admitting, "APA filed a grievance (DFW Domicile Grievance 12-
012) on behalf of Meadows..." , who was based in the Miami Domicile - confirming its
application beyond a single domicile. (See Plaintiff's Verified Motion for Leave to File
Supplemental Pleading, ECF No. 129, Ex. F, at 51-52, ¶ 11, attached hereto as **Exhibit G**).

**4. Misstatement Regarding Plaintiff's Exclusion from the 2025 Settlement**

**Misstatement:**

MR. PELLETTIERI: ...And APA settled that grievance in 2025. And the settlement did not
include Mr. Meadows and did not provide relief to Mr. Meadows. (ECF No.125, Oct. 28, 2025
Hrg. Tr., at 20:6-11).

**Rebuttal: This statement is a gross misrepresentation.** Plaintiff was explicitly named as one
of four "identified individuals" in the settlement agreement itself. The agreement did not "not
include" him as Mr. Pellettieri falsely asserted; rather, it included Plaintiff by name for the
express purpose of denying him the reinstatement relief granted to the other three identified
pilots. (See Plaintiff's Verified Motion for Leave to File Supplemental Pleading, ECF No. 129,
Exhibit M, at 78-79, ¶ 1, attached as **Exhibit H**); see also Declaration of Lawrence Meadows ¶
11, ECF No. 87 at 29-30, attached **as Exhibit I,** (describing how Plaintiff was named and then
uniquely denied relief).

**5. Misstatement Regarding Relevance of Grievance 2313 to This Action**

**Misstatement:**

THE COURT: But everything after that, the grievance 2313, that's not a part of this action?

MR. PELLETTIERI: Absolutely. That's correct, your Honor. (ECF No.125, Oct. 28, 2025 Hrg.
Tr., at 21:20-23).

4

**Rebuttal:** **This is a direct misrepresentation of the current procedural posture of this case.** This is a direct misrepresentation of the current procedural posture. Grievance 23-013 flows directly from Grievance 12-012 and is a continuing violation of Plaintiff's claims for Breach of the Duty of Fair Representation (FAC Count III, ECF No. 35, ¶¶ 242-251) and Breach of Contract (FAC Counts IV-V, id. ¶¶ 252-285). The grievance is the central subject of Plaintiff's pending Motion for Leave to File Supplemental Pleading (ECF No. 129), which seeks to formally incorporate these ongoing events into this action. This matter is squarely before the Court.

For the reasons stated above, Plaintiff respectfully requests the Court take judicial notice of these corrections to ensure the integrity of the record upon which future rulings will be based.

Dated: this 12th day of November 2025;            Respectfully submitted,

Lawrence M. Meadows, Pro Se Plaintiff
1900 Sunset Harbour Dr., #2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.comted:
November 12, 2025

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Pro Se Plaintiff, hereby certify that on November 12, 2025, a

true and correct copy of the foregoing was sent via email and U.S. mail, and filed with the Clerk

of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of

record.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com
Lead Counsel for Defendant

**John M. Pellettieri, Esq.**
**Grace Rybak, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: Jpellettieri@bredhoff.com;
grybak@bredhoff.com;jshiffrin@bredhoff.com
Pro Hac Vice Counsel for Defendant

# **EXHIBIT A**

| | |
|---|---|
| **Subject** | RE: [EXTERNAL] Re: Discovery Dispute in Meadows v. APA, Case No. 1:17-cv-225-89-EA |
| **From** | John M. Pellettieri <jpellettieri@bredhoff.com> |
| **To:** | Lawrence Meadows <lawrencemeadows@yahoo.com>, Capri Trigo <ctrigo@grsm.com> |
| **Cc:** | Grace Rybak <grybak@bredhoff.com>, Joshua Shiffrin <jshiffrin@bredhoff.com>, Andrew Dymowski <ddymowski@grsm.com>, Caitlin Kekacs <ckekacs@bredhoff.com>, Hans-Peter von Thielen <hpvonthielen@bredhoff.com> |
| **Date** | Yesterday at 11:30 AM |

Larry,

Our position on item 4 as set forth in our earlier email remains the same. You have not identified anything we said at the hearing that was incorrect. We are aware of no basis for a correction. We do not intend to get into a back-and-forth regarding our respective views on factual questions during the meet and confer.

Thanks,

John


Show trimmed content ✔


**Disclaimer**

This electronic transmission is intended only for the addressee shown above. It may contain information that is privileged, confidential or otherwise protected from disclosure. Any review, dissemination or use of this transmission or its contents by persons other than the addressee is strictly prohibited. If you have received this electronic transmission in error, please delete the e-mail and notify us immediately by telephone or by reply e-mail. This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience.

RE: [EXTERNAL] Re: Discovery Dispute in Meadows v. APA, Case No. 1:17-cv-225-89-EA

From:  John M. Pellettieri (jpellettieri@bredhoff.com)

To:  lawrencemeadows@yahoo.com; citrigo@gordonrees.com

Cc:  grybak@bredhoff.com; jshiffrin@bredhoff.com; ctrigo@grsm.com; ddymowski@grsm.com; ckekacs@bredhoff.com; hpvonthielen@bredhoff.com

Date:  Tuesday, November 11, 2025 at 10:44 AM EST

Larry,

Thank you for your email. For purposes of facilitating our discussion, here are our positions on the issues you've identified:

1. Thank you for proposing specific edits to the protective order as we have requested. It is possible we will agree to those proposed edits, or at least some of them, but we need time to review. We will not be able do that review before today's call at noon. We will therefore respond to your proposed edits in writing.

2. We oppose a postponement of your deposition. There is no basis in law or in custom and practice for delaying your deposition until after you have received APA's discovery. The purpose of the deposition is to obtain information that you possess, and you do not need – and are not entitled to – documents from APA to provide the information that you already possess. In addition, we initially noticed your deposition for October 31, and at your request we agreed to postpone the deposition and re-schedule it for December 4. You agreed to that date and did not indicate that you would need to review APA's document production before the deposition. Indeed, at the time you agreed to a deposition on December 4, you had not requested any documents from APA. All of this indicates that the new request is likely for purposes of delay.

3. We oppose a request to lift the stay on the eight subpoenas. APA's motion for a protective order remains pending, and until the court rules on the motion, the subpoenas are stayed. There is no basis to lift the stay while the motion is still pending. To be clear, we do not categorically oppose depositions of the witnesses on our initial disclosures, but we will not agree to a deposition until the Court rules on the proper scope of discovery.

4. You have not identified anything we said at the hearing that was incorrect. We are aware of no basis for a correction. We do not intend to get into a back-and-forth regarding our

7 respective views on factual questions during the meet and confer.

To the extent these responses do not obviate the need for a telephonic meet-and-confer, we trust they will nonetheless streamline any discussion.

Thanks,

John

**Disclaimer**

This electronic transmission is intended only for the addressee shown above. It may contain information that is privileged, confidential or otherwise protected from disclosure. Any review, dissemination or use of this transmission or its contents by persons other than the addressee is strictly prohibited. If you have received this electronic transmission in error, please delete the e-mail and notify us immediately by telephone or by reply e-mail. This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience.

---

**From:** Lawrence Meadows <lawrencemeadows@yahoo.com>
**Sent:** Tuesday, November 11, 2025 12:47 AM
**To:** John M. Pellettieri <jpellettieri@bredhoff.com>; Capri Trigo <citrigo@gordonrees.com>
**Cc:** Grace Rybak <grybak@bredhoff.com>; Joshua Shiffrin <jshiffrin@bredhoff.com>; Capri Trigo <ctrigo@grsm.com>; Andrew Dymowski <ddymowski@grsm.com>; Caitlin Kekacs <ckekacs@bredhoff.com>; Hans-Peter von Thielen <hpvonthielen@bredhoff.com>
**Subject:** [EXTERNAL] Re: Discovery Dispute in Meadows v. APA, Case No. 1:17-cv-225-89-EA

**To:** John M. Pellettieri; Capri Trigo; Grace Rybak; Joshua Shiffrin; Andrew Dymowski, Catlin Kekacs, Peter Von Thielen
**From:** Lawrence Meadows lawrencemeadows@yahoo.com
**Date:** November 10, 2025

**Subject: Formal Agenda for Court-Directed November 11th Meet and Confer and Proposed Joint Motion and Protective Order**

Dear Mr. Pellettieri and Ms. Trigo,

Pursuant to the explicit instructions from Judge Reid's chambers, I am confirming that I will be available to meet and confer tomorrow, November 11th, at the mutually agreed upon time of 12:00-1:00PM. Please contact me at 516-982-7718 when you are ready to start. I am providing my proposals in advance of our court-ordered meet and confer.

Given the gravity of these issues, which involve procedural integrity, discovery disputes, and material statements made to the court, I had requested the attendance of sponsoring counsel, Capri Trigo, at tomorrow's conference, and understand she will be available at the agreed time of 12:00 PM.

The agenda for our conference will cover four critical, unresolved issues:

**1. The Joint Motion and Proposed Confidentiality Order:**

The "Joint Motion" is procedurally deficient as it contains no legal argument, forcing the Court to litigate the dispute for the parties. This is inefficient and improper. To remedy this, I have attached two documents for discussion:

- **Attachment A:** Plaintiff's redlined version of the Joint Motion, revised to include sections for each party's legal argument.

- **Attachment B:** Plaintiff's redlined version of *your* proposed protective order, These revisions are narrowly tailored to address the overbreadth and procedural flaws of the original draft, including the improper burden-shifting in the challenge provision. As you know, the Defendants have never identified any categories of documents that would require coverage under a protective order; therefore, I have defined confidential material to be protected as documents related to: (a) an individual's Social Security number, taxpayer identification number, or financial records or communications revealing sensitive financial information, and (b) medical records and communications regarding medical diagnosis or treatment. Protective orders are to be drafted narrowly because they inherently conflict with the presumption in favor of a transparent discovery process. To date, you have provided no rationale for a broader protective order. Therefore, the proposed order I have offered provides all necessary protection for legitimately sensitive information in compliance with Rule 26(c).

**2. Motion for a Protective Order Regarding My Deposition:**

The deposition currently noticed for December 4, 2025, should be postponed. Proceeding before I have received and had adequate time to review your client's complete document production (due November 28th) is fundamentally prejudicial under Rule 26(c). It is impossible for me to be fairly examined on documents I have not seen. Therefore, I request that my deposition be postponed until 30 days after your full production is complete and verified. In view of the fact that, I will not be able to provide comprehensive answers to many of your questions in the absence of Defendants' discovery responses, and that I will not be subject to recall, it is manifestly in the Defendants' interest that my deposition be postponed as I have requested. If you do not agree to such postponement, I will be forced to move for a temporary protective order and stay.

**3. Motion to Lift the Stay on Plaintiff's Subpoenas:**

The stay on my subpoenas is no longer tenable. Your client's own Initial Disclosures specifically identify both current and former APA attorneys and officers as individuals with discoverable information, many of whom I have also subpoenaed, including but not limited to CA Dan Carey, CA Ed Sicher, Jim Clark, and Mark Myers. It is a direct and indefensible contradiction to argue on one hand that these individuals possess relevant knowledge, while on the other preventing me from deposing them. Reciprocal discovery is fundamental to a fair process. The stay must be lifted immediately, particularly as your client intends to proceed with my deposition.

**4. Correction of Material Misstatements to the Court:**

Finally, we must address several material misstatements of fact made to Judge Reid during the October 28 hearing. These misstatements, including but not limited to representations about exclusion from prior settlements and grievance claims, must be corrected on the record. At our conference, I expect to discuss your plan to formally correct these inaccuracies. Failing a satisfactory resolution, I am ethically obligated to file a formal Notice of Correction with the Court to ensure the integrity of the judicial record.

I have provided these materials and this detailed agenda to facilitate a good-faith resolution. I look forward to a productive discussion tomorrow.

Respectfully,

Lawrence Meadows
*Pro Se* Plaintiff

# **EXHIBIT  B**

Lawrence M. Meadows, Plaintiff
1900 Sunset Harbour Dr., 2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

## IN THE UNITED STATES DISTRICT COURT

## FLORIDA SOUTHERN DISTRICT

| | |
|---|---|
| **LAWRENCE M. MEADOWS,** | |
| *Plaintiff,* | |
| v. | |
| **ALLIED PILOTS ASSOCIATION, et al.** | **Case No: 1:17-cv-22589-KMM** |
| *a Texas Labor Association,* | **Honorable Judge Michael K. Moore** |
| *Defendant.* | |

## DECLARATION OF LAWRENCE M. MEADOWS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT ALLIED PILOTS ASSOCIATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT

I, Lawrence M. Meadows, hereby declare as follows:

1.      I am the named Plaintiff in the above-captioned matter.

2.      I make this Declaration based on my personal knowledge and would so testify in person.

1

withdraw a grievance without receiving anything for the employee in return, it must give notice to the employee of its intention to do so."); *Smyj v. Consolidated Rail Corp.*, 1986 U.S. Dist. LEXIS 29876 (S.D.N.Y. 1986); *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1052, n.9 (11th Cir. 1996) ("individual airline employees *are* entitled to convene special boards of adjustment as a matter of statutory right"); *Pratt v. United Air Lines, Inc.*, 468 F. Supp. 508, 513 (N.D. Cal. 1978) (under the RLA, "the Union does not have exclusive control over grievances"); *Bumpus v. Air Line Pilots Association and UAL*, 606 F. Supp. 3d 845, 857 (N.D. Ill. 2022) ("Individual employees have a statutory right to compel arbitration. The union cannot act as a 'gatekeeper' and prevent plaintiff from invoking his statutory right to arbitration.").   Based on this precedent, I requested in the letter that my right to prosecute the grievance be restored.   APA denied this request.

14.     Since filing my FAC in November 2018,  APA has made numerous assurances it would prosecute my grievances including but not but not limited to; 1) the APA President promised he would not sign an CBA or major agreement, i.e.; 737 MAX or COVID Agreement, etc., that didn't include my seniority reinstatement, 2) I was promised, and APA hired, outside counsel Sue Edwards to represent me in Grievance 12-012/23-31, 12-011, and 3) APA also retained her to represent me in an ADA anti-discrimination/retaliation lawsuit against American. But APA eventually reneged and withdrew counsel and abandoned my representation, after I refused to drop this instant lawsuit, whilst it was stayed at all relevant times. Notably, I did agree in writing to drop any and all claims against APA, if and when I obtained my seniority reinstatment and returned to active line pilot duty.

15.     On May 1, 2025, just two days after I filed a motion to reopen this instant lawsuit, the newly Board appointed President, Captain Nick Silva, who replaced my long-time

American on the eve of response deadline a 12)b(6) motion (which I lost), 2) exclusion from the Grievance 12-012/23-31 Settlement Agreement, and 3) just last month unlawful termination of my APA union membership after 33-years.

21.         I respectfully request that the Court deny APA's Motion to Dismiss, and grant leave to amend my complaint.

7. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 9th , 2025;

Lawrence M. Meadows

**10**

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

LAWRENCE M. MEADOWS,

     Plaintiff,

     v.

ALLIED PILOTS ASSOCIATION, et al.,

and

DOES 1-10,

     Defendants.

JURY TRIAL DEMANDED

_____/

CASE NO. 17-cv-22589-EA

Honorable Judge Ed Artau

**PLAINTIFF'S CORRECTED AMENDED VERIFIED SUPPLEMENTAL PLEADING**
**PURSUANT TO FED. R. CIV. P. 15(d)**

**PRELIMINARY STATEMENT**

1.      This supplement closes the gap between the Plaintiff's First Amended Complaint

("FAC," ECF No. 35), stayed in November 2018, and the subsequent events that

demonstrate a continuing, escalating pattern of bad faith conduct by the Allied Pilots

Association ("APA"). What began as promises and "rays of hope" for reinstatement

devolved into strategic delay and denial, retaliatory threats, the collusive extinguishment of

Plaintiff's statutory grievance rights, and the unlawful termination of his union membership.

1

of that's grievance. (**Exhibit BB**, April 2018 Cert. Letters). Rempfer documented the attack in a Memorandum for Record ("MFR"). (**Exhibit CC**, May 18, 2023 MFR).

- **October 2024:** On October 7, 2024, President Ed Sicher was recalled by the Board of Directors immediately after he refused to sign a settlement agreement that excluded Plaintiff. The very next day, new President Nick Silva disbanded the NDRC and terminated FO Tom Rempfer from his role.

35.      In total, from 2020 to 2024, at least seven APA pilot members serving as advocates for Plaintiff and the MDD pilot group were removed from their positions, recalled, or had their committees disbanded, demonstrating a clear and chilling pattern of targeted retaliation designed to isolate Plaintiff and suppress his claims.

### SUPPORT FOR EXISTING CLAIMS

36.      These supplemental facts directly support Plaintiff's existing and ongoing claims for breach of DFR (Count III), breach of contract (Counts IV-V), and violations of the LMRDA (Counts VI-VIII), by demonstrating the continuing violations and escalating nature of APA's bad-faith conduct, representational failures, and retaliatory animus.

### ⮚ VERIFICATION .

Pursuant to 28 U.S.C. § 1746, I, Lawrence M. Meadows, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on November 3, 2025,

Lawrence M. Meadows, Plaintiff, Pro Se

12

Dated: this 3rd day of November 2025;                Respectfully submitted,


Lawrence M. Meadows, Plaintiff Pro Se
1900 Sunset Harbour Dr., #2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

13

# **EXHIBIT O**



**067116144478**

This is the Opp to AA's MTD I years ago in the 7th Cir, cutting caseload law the the original complaint became a nullity and thus the original MTD was rendered moot. Do you know what the specific case law on that issue is in the 11th Cir., or FLSD?

In this instant matter the judge has order my Opp be filed within 14-days by 6/20, but the under Frcp 15, I have 21-days to amend. It send I'm not forced to amend 7-days early.

1:55

**Sue**

I have looked into it already and consulted with local counsel. I think the Florida Court will follow this case law. We will amend and force them to refile opp to the amended complaint. We have 21 days from when they filed the MTD which was June 5 but obvious we need to file prior to June 20. We also need to make sure to file the scheduling order. I think I have secured local counsel.Need to get him approved by Ed – will work on that by the end of the day. Then need to file phv papers.

I spoke with Ed yesterdays updated him, telling him we has discussed in dual and had a plan, and that I felt very comfortable and desired you represent me on this matter. However, that Ed's just before saw your email regarding your pro hac issue.

Anyway he Ed's was very sportive and repeated his desire to use association resources to support me on this claim.

As to the amended complaint, I can't find 11th Cir case law as to the effect of an ACmplt on a MTD. But it seems deadline to amend my list be 14-days as opposed to the 21 in rule 15.

I think the more detailed statement of facts in my verified reply to the EEOC (resent to you yesterday via email) would be very helpful in creating the

**<u>EXHIBIT P</u>**

Case 1:17-cv-22589-EA  Document 137  Entered on FLSD Docket 11/13/2025  Page 24 of 51
Case 1:17-cv-22589-EA  Document 129  Entered on FLSD Docket 11/04/2025  Page 92 of 135
Case 1:24-cv-20518-DPG  Document 20  Entered on FLSD Docket 06/14/2024  Page 1 of 3

Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

FILED BY _____ D.C.

JUN 14 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# IN THE UNITED STATES DISTRICT COURT

# FLORIDA SOUTHERN DISTRICT

LAWRENCE M. MEADOWS,

    Plaintiff,

v.

AMERICAN AIRLINES, INC.,

a Delaware Corporation,
    Defendant.

UNOPPOSED MOTION FOR
EXTENSION OF TIME

Case No: 1:24-cv-20518-DPG

Honorable Judge Darrin. P. Gayles

## UNOPPOSED MOTION FOR EXTENSION OF TIME

    COMES NOW, the Pro Se Plaintiff, Lawrence M. Meadows ("Meadows), who hereby, files this Motion For Extension Of Time. Plaintiff has been in discussions with his pilots' union, the Allied Pilots Association, ("APA"), and they have agreed to retain outside counsel to represent him in this matter. However, the attorney they've proposed to use is out of state and will require a local sponsor and Pro Hac Vice application. As such it may take a week or longer for them to make an appearance, and they will also need additional time to get up to speed on this case.

    The Plaintiff has not sought any previous extensions.

1
Motion For Extension Of Time

Case 1:14-cv-22589-DPG   Document 28   Entered on FLSD Docket 06/14/2024   Page 2 of 3

## Meet and Confer Certification

*Pro Se, Plaintiff Meadows certifies that on June 13, 2024, he met and conferred with Defendant's Counsel in writing, who informed him that Defendant, "American does not oppose a 30-day extension of the outstanding deadlines."*

Therefore, based on the foregoing, such an extension is fair and equitable, and Plaintiff respectfully requests that this honorable Court grant a 30-extension of all outstanding deadlines; to include, Motion to Dismiss Response and/or Amended Complaint, and any other necessary motion deadlines. Additionally, he asks that these proceedings and any associated deadlines be stayed pending the Court's decision on this Motion.

Dated: this 14th day of June, 2024,

Respectfully submitted,

Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr., #2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

July 19, 2024

Lawrence M. Meadows, Plaintiff
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
Phone: 516-982-7718

Re: Letter Of Explanation: *Meadows v. American Airlines*, Inc. (FLSD Case No.1:24-cv-20518-DPG)

Honorable Judge Darrin P. Gayles
Wilkie D. Ferguson, Jr. United States Courthouse
400 North Miami Avenue
Room 11-1
Miami, Florida 33128
gayles@flsd.uscourts.gov

Dear Judge Gayles,

I submit this letter of explanation to your Honor to explain why I am still appearing Pro Se on this matter.

As this Court may recall, on June 14, 2024, I filed a Motion for Extension of Time, on the basis that my new Counsel needed time to appear and preapare, which specifically stated in relevant part:

> "Plaintiff has been in discussions with his pilots' union the Allied Pilots Association ("APA") and they agreed to retain outside counsel to represent him on this matter.  However, the attorney they've proposed to use is out of state and will require a local sponsor and Pro Hac Vice application. As such, it may take a week or longer for them to make an appearance, and they will also need additional time to get up to speed on the case."

Unfortunately, APA's outside counsel, Sue Edwards, Esq., had to subsequently decline further representation on my behalf, after learning of a conflict of interest involving concomitant duty of fair representation claims against my union. (See email attached herewith) As such, I have been left without representation, and now have no choice, but to continue Pro Se.

I want to assure this Court that my Motion For Extension of Time was made in good faith based on representations, assurances, and actions that my union took my behalf, and apologize for any inconvenience and delay this has caused.

Sincerely,

*L. M. Meadows*

Lawrence M Meadows, Plaintiff

CC: Defendant American Airlines Counsel of Record
ATTCH: Email from APA's Outside Counsel

# **EXHIBIT D**

1

2

3                    IN THE UNITED STATES DISTRICT COURT

4                 FOR THE SOUTHERN DISTRICT OF FLORIDA

5

6    KATHY EMRY,                          )

7                        Plaintiff,       )

8    VS.                                  )  CIVIL ACTION NO.:

9    ALLIED PILOTS ASSOCIATION,           )

10                       Defendant.        )  9:14-80518-CIV-HURLEY

11

12              ------------------------------------

13                       ORAL DEPOSITION OF

14                  >    JAMES ANDERSON

15                       OCTOBER 17, 2016

16                          VOLUME

17              ------------------------------------

18       ORAL DEPOSITION OF JAMES ANDERSON, produced as a

19   witness at the instance of the PLAINTIFF, and duly

20   sworn, was taken in the above-styled and numbered cause

21   on October 17, 2016, from 1:40 p.m. to 3:04 p.m., before

22   Kathleen McCurry, CSR in and for the State of Texas,

23   reported by machine shorthand, at the offices of

24   CANDLEWOOD SUITES, 4200 Reggis Drive, Fort Worth, Texas

25   76155, pursuant to the Federal Rules of Civil Procedure.

1   ambiguous; mischaracterizes what is written; calls for

2   speculation.

3       Q.    (BY MS. EMERY) Can you tell me what is written

4   in 24?

5       A.    "All orders to pilots involving a change in

6   status or leave of absence shall be stated in writing,

7   except that temporary assignment of pilots shall not be

8   construed as requiring a written order other than the

9   necessary flight forms."

10      Q.    So when there's a change in status is the

11  order to be in writing?

12      A.    That's what the language says.

13      Q.    Okay.  In your opinion, a pilot who falls off

14  the -- let's go back to Section 11 D.  Are you familiar

15  with the term "relative seniority"?

16      A.    Yes.

17      Q.    What does that mean to you?

18      A.    Where you fit within your base.

19      Q.    Does Section 11 D permit the termination of a

20  pilot?

21           MR. BERG:  Objection; calls for

22  speculation.

23      A.    I don't know.

24      Q.    (BY MS. EMERY)  Do you see anything in 11 D

25  that leads you to believe that a pilot is terminated

1   after five years after disability?

2                   MR. BERG:   Objection; calls for

3   speculation.

4        A.     No.

5        Q.    (BY MS. EMERY)   So there's no provision

6   stating that a pilot's terminated; is that correct?

7                   MR. BERG:   Objection; vague and

8   ambiguous.

9                   MS. EMERY:   I'm just asking him if

10  there's a written provision in the contract, in that

11  section of the contract that calls for the termination

12  of a pilot.

13                  MR. BERG:   In all of Section 11?

14       Q.    (BY MS. EMERY) Yeah, you can say in all of

15  Section 11, but specifically 11 D?

16       A.    The long standing past practice that has been

17  accepted by the company and the association that a pilot

18  is removed from the seniority list at the expiration of

19  five years on disability that predated me when they

20  started doing the seniority list in 2001 and it

21  continues to this day.

22       Q.    Is that a permanent termination of the pilot?

23       A.    Not necessarily.

24       Q.    Okay.   Are you familiar with any instances

25  where pilots after they were removed where they got

Jim Anderson                                                          42

```
 1         A.    It is what the document says, yes.
 2         Q.    And the first page of the document, do you
 3  know what that is?
 4         A.    I don't know what the entry is, but it's as of
 5  the end of October, '03.
 6         Q.    October '03?
 7         A.    As of 01, October, for the month of
 8  October 2003.
 9         Q.    Okay.  And can you tell me how many hours of
10  sick leave I had at that time?
11         A.    It says 65 hours.
12         Q.    Okay.  Are you familiar with a -- I might have
13  asked you this before and if I did I apologize.  Are you
14  familiar with a business practice of American Airlines
15  prior to 2003 -- 2013 and 2014 of terminating a pilot
16  who has been on disability more than five years without
17  notice?
18         A.    No.  The term termination, I don't use the
19  term termination when removing somebody off the
20  seniority list after five years.  That's just a practice
21  that we do.  It's not a termination to me, it's just
22  removal from the seniority list.
23         Q.    So does American have a practice of
24  terminating disabled pilots or pilots with a history of
25  disability without notice?
```

Jim Anderson                                                                                    43

```
 1                    MR. BERG:   Objection; form; vague and
 2      ambiguous; calls for speculation; calls for a legal
 3      conclusion.
 4           Q.   (BY MS. EMERY)   Mr. Hansen had indicated in
 5      his declaration and documents that I was terminated.   He
 6      states that I was removed -- termination date of
 7      October 18th, 2007, which was -- I had not been on
 8      disability more than five years, but he refers to it has
 9      effective termination date.
10                    So are you familiar with American's
11      policy or practice or why American would terminate
12      pilots that have a history of disability without written
13      notice?  Is that in accordance with American's policies
14      or procedures?
15                    MR. BERG:   Objection; vague and
16      ambiguous; calls for speculation.
17           A.   I am familiar with the practice of removing
18      pilots from the seniority list due to length of time on
19      disability.
20           Q.   (BY MS. EMERY)  Okay.  But you're not familiar
21      with any practice of terminating a pilot?
22           A.   I'm not familiar with it.
23           Q.   Okay.  Is it your position that when a pilot
24      is removed from the seniority list that they're
25      permanently terminated?
```

Jim Anderson                                                          44

1          A.     No.

2          Q.     Okay.  Does this separation PTR history, it

3    appears it's only one line from the history in the

4    computer and I don't know if it's in DECS or what form

5    it comes in, but it's an e-mail from Scott Hansen.  Is

6    that an indication to you that my employment has been

7    terminated?

8          A.     I'm not familiar with this.

9          Q.     Generally when American terminates a pilot, is

10   that the type of notice that they would receive for

11   termination?

12         A.     I have no knowledge of what type of

13   notification somebody would receive.

14         Q.     You've never seen a termination notice from

15   American for a pilot?

16         A.     Not that I recall.

17         Q.     Okay.  Generally if American is going to

18   terminate a pilot, do they tell them the reason for the

19   termination?

20         A.     I don't know.

21         Q.     I'm referring you back to Section 24, again?

22         A.     Okay.

23         Q.     When a pilot's status has changed, is there to

24   be a written order?

25         A.     According to the language in Section 24, yes.

DepoTexas, inc.

**<u>EXHIBIT E</u>**

*Disposition: Adopted 19-3-0-0 on 12/13/2016*

| | | | |
|---|---|---|---|
| R2016 – 30 Rev 1 | SOURCE: __MIA__ | FOR | 19 |
| BOD MTG: | | AGAINST | 3 |
| 06/07-09/2016 | | ABSTAIN | 0 |
| | | ABSENT | 0 |

Title: __Supplement F and Section 11.D.1. - Negotiating Committee Tasking__

Presented by: __CA Ed Sicher__          Seconded by: __CA Billyray Read__

Policy Manual: _____          Cons. & Bylaws: _____

1      **WHEREAS,** the three separate contracts prior to the merger of US Air East, America West,

2   and American Airlines treated disability retirements differently; and,

3      **WHEREAS,** the JCBA Supplement F. (1) 5. (d) and Section 11.D.1 adopted the most

4   restrictive of the three, the American Airlines contract, which has been subjectively reinterpreted by

5   the Company to allow the removal of a pilot from the seniority list after five (5) years of continuous

6   disability; and,

7      **WHEREAS,** the former U.S. Air East contract allowed disabled pilots to remain on the

8   seniority list until they reach the federally mandatory retirement age for pilots; and,

9      **WHEREAS,** the former America West contract effectively removed pilots from the seniority

10   list for retirement disabilities longer than eight (8) years without a provision to be reinstated in the

11   event that pilot should ever regain his or her Class A medical; and,

12      **WHEREAS,** the merging of the seniority lists is creating a disparate treatment amongst the

13   individual pilot groups; and,

14      **WHEREAS,** the most beneficial treatment of all of our disabled pilots is to allow them

15   reinstatement from long-term disability in as expeditious and fair a manner as possible; and,

16      **WHEREAS,** there has been some evidence indicating that the company has unfairly

17   withheld reinstatement to long-term disabled pilots who have regained their Class A medicals from

18   being reinstated if they were considered problematic employees; therefore.
   R2016-30 Rev 1                                                                                    1

FIRST AMENDED COMPLAINT

19          **BE IT RESOLVED,** that the Negotiating Committee expeditiously engage the company in

20  in negotiations which seek to:

      1.  Modify the language in the JCBA Sup F. (1) 5. (d) Disability Retirement and

22         Section 11.D.1 so that it will not prevent a pilot from retaining and accruing

23         seniority after a disability period of more than five (5) years commencing at the

24         expiration of the pilot's paid sick leave and thus results in effectively removing

25         the pilot from the seniority list;

26      2.  Negotiate language which allows pilots with long term disabilities from being

27         removed from the seniority list until they reach the federally mandated retirement

28         age for pilots;

29      3.  Negotiate contractual language that provides for the immediate reinstatement and

30         return to the Pilot System Seniority List of all pilots who are currently out sick or

31         on disability and who have been removed from the seniority list as a result of the

32         provisions previously contained in the respective contracts, and;

33      4.  Prevent the further removal of pilots from the Pilot System Seniority List as a

34         result of sickness or disability until they reach the mandatory pilot retirement age,

35         and;

36      5.  Gather the names of the pilots from the three separate pilot groups that were

37         medically retired due to long-term disability or disabilities and thus removed from

38         their respective seniority lists and include them on the Seniority List Integration

39         currently being negotiated.

R2016-30 Rev 1

2

**110**

**FIRST AMENDED COMPLAINT**

# **EXHIBIT F**

Mark Myers                                                                                    1

1                       UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF FLORIDA
2                          PALM BEACH DIVISION

3                  CASE NO. 14-80518-CIV-RYSKAMP/HOPKINS

4    KATHY E. EMERY,                    )
                                        )
5            Plaintiff,                 )
                                        )
6    v.                                 )
                                        )
7    ALLIED PILOTS ASSOCIATION          )
                                        )
8            Defendant.                 )

9

10

11

12   * * * * * * * * * * * * * * * * * * * * * * * * * * * *
                          ORAL DEPOSITION
13                              OF
                            MARK MYERS
14          (REDACTED NON-CONFIDENTIAL TESTIMONY)
                    TAKEN:  December 11, 2015
15   * * * * * * * * * * * * * * * * * * * * * * * * * * * *

16

17

18           ORAL DEPOSITION of MARK MYERS, produced as a
     witness at the instance of the Plaintiff, and duly
19   sworn, was taken in the above-styled and -numbered cause
     on the 11th day of December, 2015, from 1:15 p.m. to
20   5:03 p.m., before Hope Lewandoski, CSR, in and for the
     State of Texas, Reported by Machine Shorthand, at the
21   Candlewood Suites DFW South, located at 4200 Reggis
     Court, City of Fort Worth, County of Tarrant, State of
22   Texas, pursuant to the Federal Rules of Civil Procedure
     and the provisions stated on the record or attached
23   hereto.

24

25

1        Q.    Is it the APA's position that that

2   responsibility falls upon the company?

3              MR. DALMAT:  Objection.  The witness isn't

4   here as a 30(b)(6) witness.  If he happens to know APA's

5   position on the matter, go ahead and state it.

6              THE WITNESS:  I am -- I am unfamiliar with

7   APA's -- whether there's an official APA position.  And

8   any conversations I would have had related to that

9   position would be attorney-client privileged.

10       Q.    (BY MS. EMERY)  Did the APA file grievances

11   with the company related to the company's failure to

12   notify pilots that they're about to fall off the list?

13       A.    There have been two grievances filed related [G12-012 & 11-054]

14   to Section 11.D and Supp. F, which are the two

15   provisions that allow for the company to terminate

16   employment for a pilot who has been out on leave

17   disability or unpaid sick for longer than five years.

18       Q.    What are the two grieve -- on -- on whose

19   behalf were the two grievances filed?

20       A.    Well, they were both base grievances, so, in

21   that sense, they were on behalf of any affected base

22   pilot.

23       Q.    So if APA prevails on a base grievance -- is

24   that only applicable to the Dallas base if they prevail

25   on a grievance?

Mark Myers 28

1        A.   It depends on what the issue is.  I mean, if

2   it's a base-specific issue, then, yes, it's specific to

> 3   that base.  These two issues were -- were systemic --

> 4   system-wide, and so arguably they would -- they would

> 5   apply system-wide.

6        Q.   To all pilots.  Have -- is that correct?  To

7   all pilots?

8        A.   Well, to all affected pilots.

9        Q.   All affected pilots.  Okay.

10                  Have any of those grievances been

11   resolved?

12        A.   One was converted to an individual grievance,

13   and that grievance has been resolved.

14        Q.   Has the -- what were the bases under which the

15   grievances were filed?

16                  MR. DALMAT:  The -- the pilot --

17        Q.   (BY MS. EMERY)  The base grievances.  It's

18   obviously --

19        A.   Oh, DFW and New York.

20        Q.   Were they -- the individual grievance, who was

21   that filed on behalf of?

22        A.   The New York grievance was converted to an

23   individual grievance.  The individual was Rodney

24   Charlson.

25        Q.   Is that portion of the base grievance still

**<u>EXHIBIT G</u>**

Case 1:17-cv-22589-EA   Document 137   Entered on FLSD Docket 11/13/2025   Page 42 of 51
Case 1:17-cv-22589-EA   Document 129   Entered on FLSD Docket 11/04/2025   Page 51 of 135
11-15463-shl   Doc 5926   Filed 01/02/13   Entered 01/02/13 14:30:09   Main Document
Pg 4 of 14

administratively terminated pursuant to a provision of the CBA that states that pilots who have been inactive for longer than five years will be terminated (the **"Five-Year Rule"**). However, because of a newly diagnosed condition, Meadows became eligible for and was awarded disability benefits in December 2011, under another disability plan then applicable (the **"New Plan"**). Meadows continues to receive disability benefits from American under the New Plan.

8.      On November 29, 2011 (the **"Commencement Date"**), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11, United States Code (the **"Bankruptcy Code"**). As a result of the commencement of the Debtors' chapter 11 cases, and by operation of law pursuant to section 362 of the Bankruptcy Code, the automatic stay enjoined all entities from, among other things, commencing or continuing any judicial action against any of the Debtors, including the Appeal, that was or could have been initiated before the Commencement Date, or seeking to recover a claim against the Debtors that arose before the Commencement Date.

9.      Because of the commencement of the Debtors' chapter 11 cases, on January 3, 2012, the Eleventh Circuit stayed the Appeal pending further orders of the Bankruptcy Court and the Eleventh Circuit.

10.     Meadows first filed a motion in this Court for relief from the automatic stay on December 22, 2011 (ECF No. 444) (the **"First Motion"**). The Court denied the First Motion by order dated January 27, 2012 (ECF No. 898).

11.     On February 4, 2012, the APA filed a grievance (DFW Domicile Grievance No. 12012) (the **"APA Grievance"**) on behalf of Meadows and certain other DFW-based pilots that had been terminated because of the Five-Year Rule, asserting that they had not received adequate notice of their terminations. The APA Grievance is pending. Unless resolved

4

Case 1:17-cv-22589-EA   Document 137   Entered on FLSD Docket 11/13/2025   Page 43 of 51
Case 1:17-cv-22589-EA   Document 129   Entered on FLSD Docket 11/04/2025   Page 52 of 135

11-15463-shl   Doc 5926   Filed 01/02/13   Entered 01/02/13 14:30:09   Main Document
Pg 5 of 14

in that process, it will be decided by a Board of Adjustment under the CBA as required by the

Railway Labor Act, 49 U.S.C. § 184.

### The Motion Should Be Granted In Part and Denied In Part

12.     Although the automatic stay does apply to the Appeal, the Debtors do not

object to Meadows's request to modify the stay for the *limited purpose* of allowing the Appeal to

proceed to final determination by the Eleventh Circuit because the Appeal has been fully briefed

and Meadows's claim against American may be disposed of in its entirety through the Eleventh

Circuit's disposition.  The additional expense to American's chapter 11 estate and the distraction

of management are offset by the particular circumstances of this matter given that a ruling in the

Appeal may dispose of Meadows's claims, and, as American proposes, a further review of

additional relief from the automatic stay would be undertaken if the Eleventh Circuit's ruling

does not dispose of this matter.

13.     The automatic stay *should not, however,* be modified to allow any further

judicial proceedings related to the Appeal beyond determination by the Eleventh Circuit,

including, but not limited to, continuation of the Appeal on remand, or to allow collection of

damages, if any, awarded in connection with the Appeal.  Such limited relief is consistent with

what is requested in the Motion.  Indeed, in the Motion, Meadows states that nothing in the

Motion "should be seen as requesting that this Court lift the stay for any further proceedings

against the [D]ebtor[s] that would require payment of money damages.  In the event that the

[Eleventh Circuit] finds in favor of Lawrence Meadows, and the case is remanded back to the

district court, Mr. Meadows will seek a supplemental order from this Court." (Motion ¶ 4.)

14.     Although American does not object to modification of the automatic stay

with regard to the Appeal for the limited purpose discussed above, American *does object* to

US_ACTIVE \44167833\4\14013.0139

# **EXHIBIT H**

# SETTLEMENT AGREEMENT

## Between

## AMERICAN AIRLINES, INC.

### and the

## ALLIED PILOTS ASSOCIATION

American Airlines, Inc., including its subsidiaries, affiliates, and parent companies, (collectively "American" or "Company"), and the Allied Pilots Association ("APA" or "Union") (collectively referred to as the "Parties"), mutually desire to settle and resolve Sicher Expedited Presidential Grievance 23-031 (converted from DFW Domicile Grievance No. 12-012). Accordingly, the Parties hereby agree to the following terms to compromise, settle, fully and finally resolve Sicher Expedited Presidential Grievance 23-031, including the underlying DFW Domicile Grievance No. 12-012, in its entirety, as follows:

WHEREAS, on May 22, 2012, the APA DFW Domicile Representatives filed Grievance No. 12-012 protesting the Company's alleged violation of the 2003 Collectively Bargained Agreement for failing to provide pilots notice of termination prior to terminating the employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five (5) years; and

WHEREAS, on March 13, 2023, the APA converted the DFW Domicile Grievance No. 12-012 into Sicher Expedited Presidential Grievance 23-031 (collectively with DFW Domicile Grievance No. 12-012, the "Presidential Grievance"). The Presidential Grievance continued to protest the Company's alleged violation of the Collectively Bargained Agreement for failing to provide pilot notice of termination prior to terminating the employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years; and

WHEREAS, in the Presidential Grievance the APA contended that the Company's failure to provide notice to pilots of their impending removal from the seniority list and separation from employment precluded those pilots from either attempting to return to service prior to being dropped from the seniority list and separated from their employment, and/or filing a grievance challenging the Company's decision to drop them from the seniority list and separate them from employment; and

WHEREAS, the remedy sought in the Presidential Grievance was an award ordering the Company to provide affected individuals with notice of their removal from the seniority list and separation from service thereby allowing them to then file a grievance challenging that action based upon the facts that existed at the time the original notice should have been given; and

WHEREAS, the Company contends the APA may not convert a domicile grievance into a presidential grievance and the APA disagrees with same;

WHEREAS, the Company contends the Presidential Grievance is without merit; and

WHEREAS, the Parties conducted a mediation on November 7, 2024, before a Neutral, and

through subsequent discussions, reached an agreement to resolve the Presidential Grievance; and

WHEREAS, the Parties desire to avoid further controversy and fully settle and compromise the Presidential Grievance, without any further proceedings.

NOW, THEREFORE, in exchange for the mutual considerations described herein, the sufficiency of which is hereby acknowledged, the Parties agree to fully resolve the Presidential Grievance, as follows:

1.  Although no specific pilots are referenced in the Presidential Grievance or the underlying Domicile Grievance, the Parties have identified the following four (4) individuals who were on inactive status, unpaid sick, or disability for more than five years, were removed from the pilot seniority list and separated from employment with the Company, and have represented that they have since obtained, or have filed paperwork to obtain, an FAA First Class Medical Certificate, and expressed a desire to be reinstated to employment as a pilot with the Company: Timothy Curren (354581), Dale Churovich (354629), Lawrence Meadows (332713); and Roger Wagner (318588) (collectively the "Identified Individuals").

2.  One of the Identified Individuals, however, Lawrence Meadows, was provided and received the notice attached as Exhibit A during his prior employment in advance of his removal from the seniority list and separation from employment in 2011, and the Parties agree that none of the other Identified Individuals received similar communications from the Company prior to their separation from employment. Following Mr. Meadows' removal from the seniority list and separation from employment, he filed two grievances challenging the Company's actions. The Company disputes that the notice given was required by the CBA while the APA contends that the notice was required and that the provided notice may not have been compliant in form. However, the APA has concluded that, under the totality of circumstances of this case, it is unlikely to prevail on its argument before the System Board, particularly in light of the fact that Mr. Meadows filed Grievance 12-011 and Grievance 13-064 challenging the Company's decision to separate him from employment at the time. Both grievance 12-011 and 13-064 were subsequently disposed of and closed after the APA declined to advance them in 2013 and 2014, respectively. As a result, Mr. Meadows is deemed not to be an Eligible Individual under this Agreement, and thus, he is not eligible for reinstatement under this Agreement.

3.  Based on the Parties' knowledge, Timothy Curren (354581), Dale Churovich (354629), and Roger Wagner (318588) (collectively "Eligible Individuals") did not receive notice prior to their removal from the seniority list and separation from employment and did not file a grievance challenging the Company's actions at the time. The Eligible Individuals may elect to utilize the process detailed below for possible reinstatement to the Pilot Seniority List and return to employment and active status at the Company, provided they satisfy the conditions detailed below.

4.  The Parties agree to offer a one-time opportunity to the Eligible Individuals to utilize the following process for possible reinstatement to the Pilot Seniority List and return to

**EXHIBIT I**

Lawrence M. Meadows, Plaintiff
1900 Sunset Harbour Dr., 2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

## IN THE UNITED STATES DISTRICT COURT

## FLORIDA SOUTHERN DISTRICT

**LAWRENCE M. MEADOWS,**

*Plaintiff,*

v.

**ALLIED PILOTS ASSOCIATION, et al.**           **Case No: 1:17-cv-22589-KMM**

*a Texas Labor Association,*                        **Honorable Judge Michael K. Moore**

*Defendant.*

## DECLARATION OF LAWRENCE M. MEADOWS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT ALLIED PILOTS ASSOCIATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT

I, Lawrence M. Meadows, hereby declare as follows:

1.      I am the named Plaintiff in the above-captioned matter.

2.      I make this Declaration based on my personal knowledge and would so testify in person.

1

to facilitate my reinstatement, no reinstatement plan was implemented. Thereafter, APA successfully obtained the reinstatement of several MDD pilots, similarly situated to me, who obtained their FAA medicals shortly after I had obtained mine.

10.       In March 2023, after MDD Pilot collective grievance (DFW Domicile Grievance No. 12-012) sat in limbo for 11-years, until at my request, the APA President, Captain Ed Sicher, agreed that he would finally advance it to arbitration, which was then converted to Expedited Presidential Grievance No. 23-031. **Exhibit D.** Thereafter, the APA President also indicated to me that he would expedite the processing of my individual grievance.

11.       On January 15, 2025, some 13-years after Grievance 12-012 was filed APA and American Airline entered into a settlement agreement resolving MDD Pilot Expedited Grievance No. 23-031 (formerly DFW Domicile Grievance 12-012), attached hereto as **Exhibit E.** The settlement agreement identified four remaining MDD pilots who had obtained the requisite FAA medical clearance and continued to seek reinstatement with the Company: Timothy Curren, Dale Churovich, Roger Wagner, and me -- Lawrence Meadows. The first three individuals were provided with a process for seniority reinstatement and re-employment with the Company, and **only** I was expressly denied that opportunity. The January 15 settlement agreement states, with respect to my situation:

> Following Mr. Meadows' removal from the seniority list and separation from employment, he filed two grievances challenging the Company's actions. <u>The Company disputes that the notice given was required by the CBA while the APA contends that the notice was required and that the provided notice may not have been compliant in form.</u> However, the APA has concluded that, under the totality of circumstances of this case, it is unlikely to prevail on its

argument before the System Board, particularly in light of the fact that Mr. Meadows filed Grievance 12-011 and Grievance 13-064 challenging the Company's decision to separate him from employment at the time. Both grievance 12-011 and 13-064 were subsequently disposed of and closed after the APA declined to advance them in 2013 and 2014, respectively. As a result, Mr. Meadows is deemed not to be an Eligible Individual under this Agreement, and thus, he is not eligible for reinstatement under this Agreement.

*Id.* a 2.

12.      Strikingly, the reason provided in the settlement agreement for the disparate treatment of me was that the APA had declined to process my individual grievance when it was initially filed and had therefore waived my claim for reinstatement. Pursuant to the settlement agreement, the APA additionally withdrew Expedited Grievance No. 23-031) (formerly DFW Domicile Grievance 12-012), with prejudice, and thereby closed that avenue of potential relief for me. I was given no prior notice that APA intended to withdraw the grievance, of which I was an intended beneficiary, nor did APA provide me an opportunity to prosecute the grievance using my own resources prior to withdrawing the grievance "with prejudice."

13.      On learning of the executed settlement, on January 29, 2025, I emailed and Fedex'd a letter to APA Senior Director of Legal Affairs, to advise him that APA's recent actions constituted a violation of the duty of fair representation and referenced the above-cited case law in support. A true and accurate copy of this correspondence is attached hereto as **Exhibit F.** In this letter, I cited the following case law in support: *Stevens v. Teamsters Local 2707*, 504 F. Supp. 332, 336 (W.D. Wash. 1980) ("before the defendant union might

5

American on the eve of response deadline a 12)b(6) motion (which I lost), 2) exclusion

from the Grievance 12-012/23-31 Settlement Agreement, and 3) just last month unlawful

termination of my APA union membership after 33-years.

21.      I respectfully request that the Court deny APA's Motion to Dismiss, and grant leave

to amend my complaint.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct.


Dated: June 9th , 2025;


Lawrence M. Meadows


10