UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:17-cv-22589-EA

LAWRENCE MEADOWS,

Plaintiff,

v.

ALLIED PILOTS ASSOCIATION, *et al.*,

Defendants.
_____/

## ORDER GRANTING DEFENDANT ALLIED PILOTS ASSOCIATION'S MOTION FOR PROTECTIVE ORDER

**THIS CAUSE** is before the Court on Defendant Allied Pilots Association ("Defendant" or "the APA"), Motion for Protective Order ('the "Motion"). [ECF No. 100]. *Pro se* Plaintiff, Lawrence Meadows ("Plaintiff"), filed a Response along with a Declaration, and Defendant filed its Reply. [ECF Nos. 103; 104; 113]. The Undersigned held a hearing on the Motion. [ECF No. 119]. Upon review of the filings and applicable case law, Defendant's Motion for Protective Order [ECF No. 100] is **GRANTED**.

### BACKGROUND

A. *Procedural Background*

This is one of many *pro se* cases Plaintiff has filed regarding his termination and removal from American Airlines' pilot seniority list in 2011. *See Meadows v. American Airlines*, No. 24-cv-20518-GAYLES/GOODMAN, 2024 WL 5248006 at *2, (S.D. Fla. Oct. 22, 2024) ("Pursuant to the Pilot Collective Bargaining Agreement ("CBA") between American and the APA,

Meadows' employment was terminated and he was removed from the pilot seniority list in 2011 after five years on disability leave. *See, e.g.*, *In re AMR Corp.*, No. 11-15463, 2016 WL 1559294, at *2 (Bankr. S.D.N.Y. Apr. 14, 2016), *subsequently aff'd*, 764 F. App'x 88 (2d Cir. 2019) ("Meadows was ultimately terminated from his employment with American in October 2011."); *Meadows v. Allied Pilots Ass'n*, 822 F. App'x 653, 655 (10th Cir. 2020) ("In 2011, American terminated [Meadows'] employment."); *Meadows v. Am. Airlines, Inc.*, No. 15 CV 3899, 2016 WL 4011231, at *1 (N.D. Ill., July 27, 2016) ("Meadows was ... eventually terminated."); *Meadows v. AMR Corp.*, 539 B.R. 246, 248 (S.D.N.Y. Oct. 8, 2015) ("In October 2011, Meadows's employment at American was terminated.")).

Plaintiff filed this case against Defendant Allied Pilots Association in 2017. In his Amended Complaint filed in 2018, he alleges that the APA breached its duty-of-fair-representation under the Railway Labor Act ("RLA"), violated the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), and further alleged state breach of contract claims against the APA. *See* [ECF No. 35]. His claims center on Defendant's failure to properly resolve his grievance, Grievance 12-012, which pertains to pilots who were terminated due to a medical disability, and he also claims retaliation against him as a whistleblower. *See* [*id.*]. In his prayer for relief, he seeks compensatory damages in the amount of career earnings of "no less than $5.609 million . . ., punitive damages, emotional distress, pre- and post-judgment interest, expert witness fees, and for any such other injunctive or equitable relief." [*Id.* at 104].

The allegations in the Amended Complaint relate to conduct that occurred between 2011 and 2018. *See* [*id.*]. In 2018, the parties jointly petitioned the Court to stay the case. [ECF No. 36]. The motion to stay was granted and the case remained stayed until May 12, 2025. [ECF Nos. 37; 52; 64; 71].

Importantly, a scheduling order in this case had required discovery to be completed by November 1, 2025. [ECF No. 74]. On September 4, 2025, the parties jointly moved to amend the scheduling order and sought to extend discovery by six months. [ECF No. 89]. Before the Court ruled on the joint motion to amend the scheduling order, Plaintiff served eight subpoenas on Defendant's attorneys and officers. The subpoenas were served between October 2, and October 8, and were noticed for the weeks of October 17–October 30. [ECF No. 100]. On October 10, 2025, Defendant filed the instant Motion seeking to stay the depositions and a protective order. [*Id.*]. Defendant claims Plaintiff unilaterally chose the dates for the depositions without conferring with Defendant. [*Id.*]. The Court stayed enforcement of the subpoenas while the matter was fully briefed. [ECF No. 101]. Shortly, after the Motion was filed and the subpoenas stayed, the Court extended discovery in this case by three months with a new discovery deadline of February 2026. [ECF No. 105].

B. *The Motion*

Plaintiff served subpoenas the following individuals:

Sue Edwards, Esq. ("Attorney Edwards"): Defendant's Outside Counsel;
James Clark, Esq. ("Attorney Clark"): Defendant's Senior Director of Legal Affairs;
Mark Myers, Esq. ("Attorney Myers"): Defendant's Director of Pilot Negotiations and Contract Administration;
Tricia Kennedy, Esq. ("Attorney Kennedy"): Defendant's Director of Grievances and Dispute Resolution;
Nick Silva ("Mr. Silva"): Defendant's President;
Edward Sicher ("Mr. Sicher"): Defendant's Former President;
Tom Rempfer ("Mr. Rempfer"): Defendant's Former Committee Chair; and
Jay Wilhelm ("Mr. Wilhelm"): Defendant's Miami Base Chair.

[ECF Nos. 100-2; 100-3; 100-4; 100-5; 100-6; 100-7; 100-8; 100-9].

The subpoenas command each witness to bring their personal cell phone and laptop unlocked to the deposition, seek communications between the attorneys and individuals within the

Defendant organization and seeks documents and communications which post-date the events in the Amended Complaint. [*Id*.].

Defendant seeks a protective order limiting permissible areas of discovery to exclude events and communications occurring after 2022, precluding discovery of privileged material, and permitting Defendant to conduct a privilege review of potentially privileged documents possessed by the non-party witnesses, prohibiting Plaintiff from using Rule 45 subpoenas issued to attorneys and officers to seek documents belonging to Defendant, and instructing the parties to confer regarding a reasonable schedule for any depositions to occur. [ECF No. 100 at 1–2].

In Response, Plaintiff argues Defendant violated the Undersigned's Standing Discovery Order; that requiring the witnesses to bring their laptops and cellphones unlocked to their depositions is not burdensome; testimony from all the subpoenaed witnesses is relevant to his claims; and he is entitled to discovery on matters including up to the present because the Defendant's retaliation is on-going. [ECF No. 103 at 4–12]. He further alleges unethical conduct and improper witness tampering by one of the attorneys currently representing Defendant as the attorney contacted some of the subpoenaed individuals who are or were officers of Defendant. [*Id.* at 13–15]. The Undersigned will not discuss the alleged unethical conduct and improper witness tampering since Plaintiff filed a standalone motion to disqualify Defendant's counsel, which is currently pending before the District Judge. [ECF No. 109]. Plaintiff also filed a motion to withdraw the witness tampering allegations from his Response and Declaration prior to the hearing. [ECF No. 117]. Plaintiff's Declaration provides factual background to support the arguments made in the Response. [ECF No. 104].

In Reply, Defendant reiterates that events from 2022 to 2025 are neither relevant nor proportional to the needs of this case. [ECF No. 113 at 3–8].  Further, Defendant stated that

4

Plaintiff has not shown how searches of the witnesses' electronics are proportional to the needs of the case. [*Id.* at 8–9]. Additionally, it is Defendant's position that Plaintiff waived any objection to its request for a protective order on attorney-client privilege grounds. [*Id.* at 9]. Lastly, Defendant asserts it complied with the Standing Discovery Order in the case. [*Id.* at 9–10].

## LEGAL STANDARD

The federal trial courts enjoy broad discretion in controlling the discovery in a case. *See Mut. Service Ins. v. Frit Indus., Inc.*, 358 F.3d 1312, 1322 (11th Cir. 2004). Federal Rule of Civil Procedure 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

However, under Rule 26(c)(1), "[a] party or any person from whom discovery is sought may move for a protective order . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). The party seeking a protective order must demonstrate "'good cause' for the protection sought." *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1277 (S.D. Fla. 2008). "Good cause has been defined as a sound basis or legitimate need to take judicial action." *Id.* (internal quotations omitted).

## DISCUSSION

A. *Defendant Complied with the Standing Discovery Order.*

As an initial matter, the Court finds that Defendant complied with the Standing Discovery Order. The Standing Discovery Order states that within fifteen days after conferral, the parties shall email chambers providing a brief description of the dispute and request a hearing. [ECF No. 95 at 1]. Further, as per the Standing Discover Order "[n]o written notices or motions, including motions to compel and motions for protective order, shall be filed unless requested by Judge Reid." [*Id.* at 2]. In compliance with the Standing Discovery Order, Defendant emailed chambers, after having conferred with Plaintiff, providing a description of the dispute; at which point the Undersigned allowed the Motion to be filed on the docket. Therefore, Defendant complied with the Standing Discovery Order.

B. *The Subpoenas Constitute an Impermissible Use of Rule 45.*

In the Motion, Defendant argues Plaintiff failed to serve discovery requests on Defendant before subpoenaing Defendant's in-house counsels and officers. [ECF No. 100 at 12].

"In general, a Rule 45 subpoena is a discovery vehicle to be used against non-parties to, among other things, obtain documents relevant to a pending lawsuit." *Watkins v. Bigwood*, No. 18-CV-63035, 2020 WL 6785356, at *1 (S.D. Fla. Nov. 18, 2020) (internal quotations omitted). "[I]t is well settled that 'Rule 45 subpoenas are not to be used as an "end-run" around the regular discovery rules that apply to parties, i.e., notices of deposition in Rule 30, or for production of documents in Rule 34.'" *Panchoosingh v. Gen. Lab. Staffing Servs., Inc.*, No. 07-80818-CIV, 2009 WL 10667883, at *1 (S.D. Fla. Jan. 28, 2009) (quoting *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 2008 WL 4186989, *2 (M.D. Fla. Sept. 8, 2008)).

When Plaintiff served all eight subpoenas on Defendant's attorneys and current/former officers it had not propounded any discovery on Defendant itself. Plaintiff cannot obtain documents from non-parties that he could have obtained from Defendant by making proper

6

discovery requests under Rule 34. *See Blok Indus., Inc. v. Sisloy, LLC*, No. 2:20-CV-00224-SCJ, 2021 WL 6926813, at *2 (N.D. Ga. Dec. 17, 2021) ("Plaintiff served a subpoena asking for materials that, if properly tailored, were discoverable under Rule 34. And just like in *Hatcher*, Plaintiff requested the tangible objects at the end of the discovery period and in a manner that limits Defendants' ability to object to the Request and provide the requested objects during the discovery period."). Therefore, all eight subpoenas are improper.

C. *The Subpoenas Seek Information Protected by Attorney-Client Privilege.*

Defendant argues that the request for documents to the eight witnesses are likely to contain information protected by the attorney-client privilege because the eight witnesses are either Defendant's attorneys or Defendant's current or former officers. [ECF No. 100 at 11]. Further Defendant argues that Plaintiff's requests are so broad and vague that it would be unduly burdensome for Defendant to conduct a review of responsive documents to be able to distinguish privileged documents from nonprivileged documents. [*Id.*]. Plaintiff does not explain in his Response why the documents he seeks would not be protected by attorney-client privilege. *See* [ECF Nos. 103; 104]. However, during the hearing he stated that attorney-client privilege does not apply because the attorneys have engaged in criminal misconduct. [ECF No. 125, Hearing Transcript, 33:1–35:13]. Nonetheless, Plaintiff does not dispute that Defendant's attorneys have not been convicted of any crime and there is no court order showing so. [*Id.* at 35:5–13]. In Reply, Defendant argues that Plaintiff has waived the arguments regarding privilege. [ECF No. 113 at 9].

"Protective orders totally prohibiting a deposition are rarely granted absent extraordinary circumstances." *W. Peninsular Title Co. v. Palm Beach Cnty.*, 132 F.R.D. 301, 302 (S.D. Fla. 1990) (citations omitted). However, the "deposition of a party's attorney [] calls for a special scrutiny of this general rule." *Id.* Although taking the deposition of a party's attorney is not

explicitly prohibited by the Federal Rules of Civil Procedure, federal courts "have held that depositions of attorneys inherently constitute an invitation to harass the attorney and parties, and to disrupt and delay the case." *Id.* (citing *N.F.A. Corp. v. Riverview Narrow Fabrics*, 117 F.R.D. 83, 85 (M.D.N.C.1987); *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429, 437–39. (E.D.Pa.1981)). Further, "costs are added to litigation, burdens are placed upon attorneys, and the attorney client relationship is threatened." *Id.* (citations omitted). As a result, the party seeking the deposition has the burden of overcoming these presumptions and must show the propriety and need for the deposition. *Id.* "The party seeking an attorney's deposition should show that the information sought will not invade the realm of the attorney's work product, or any attorney-client privilege. This information must be relevant and its need must outweigh the dangers of deposing a party's attorney." *Id.* at 302–03 (internal citations omitted).

It is true that, the attorney-client privilege does not protect communications made in furtherance of a crime or fraud. "In deciding whether the crime-fraud exception applies to a communication between a lawyer and his client, courts apply a two part test." *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir.1987).

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*Id.* (citations omitted).

"The first prong is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Id.* (footnote and citations omitted). Such "showing must have some foundation in fact, for mere allegations of criminality are insufficient to warrant application of the exception." *Id.* (citations

8

omitted). On the other hand, the second prong's purpose is to identify "communications that should not be privileged because they were used to further a crime or a fraud." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1416 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (quotations omitted). Even though, "that determination must take into account that the [party seeking discovery] does not know precisely what the material will reveal or how useful it will be . . . [t]here is no reason to permit opponents of the privilege to engage in groundless fishing expeditions[.]" *Id.* (internal quotations omitted).

Here, Plaintiff subpoenaed for deposition four of Defendant's attorneys and, recently, two of the attorneys involved in the current litigation. *See* [ECF No. 100 at 4]; [ECF No. 125, Hearing Transcript, 78:2–17]. The six subpoenas served on the attorneys seek information likely protected by attorney-client privilege. For example, Plaintiff requested Attorney Edwards to produce: "All emails, texts, call logs with Miranda Rosenthanl, Lucretia Guia, Mark Robertson, Kelly Wood, or any American Airlines counsel mentioning Meadows, grievances, settlement, exclusion, or reinstatement." [ECF No. 100-2 at 5]. The subpoena to Attorney Clark seeks "[e]very email, text, telegram message, note, memo, or phone logs between you and BOD Officers and APA Attorneys showing your involvement in any or all attempts to recall President Sicher." [ECF No. 100-3 at 4]. Further, Plaintiff seeks from Attorney Myers "[a]ny behind the scenes communications, texts, memos, notes with [Attorney] Edwards, Jim Clark, Trish Kennedy, or Nick Silva after June 24, 2024, especially anything ordering her to dropping [*sic*] 12-012/23-031 arbitration, and instead converting it to mediated negotiation, or crafting the 12-011 closed in 2013 with zero value – for excuse. If you dictated the exclusion language, show all docs related thereto." [ECF No. 100-4 at 5]. Lastly, the subpoena directed to Attorney Kennedy requests "[p]ost-Sicher recall emails

(October 4, 2024-present) with Nick Silva, Myers, Clark, Edwards saying scrap 12-012 arbitration, do mediation only, bury Meadows claims grievances." [ECF No. 100-5 at 5].

As evidenced by the examples above, Plaintiff requests communications between Defendant's attorneys or with Defendant's officers about how grievance 12-012 was handled. It is more than probable that the communications, if they exist, involved legal advice from the attorneys to Defendant regarding grievance 12-012. Further, Plaintiff's subpoenas to the attorneys representing Defendant in this matter, Attorney Shiffrin and Attorney Rybak, are improper as well. Plaintiff has not overcome his burden of showing how the information sought will not violate the attorney-client privilege.

Importantly, Plaintiff has not shown that deposing Defendant's outside counsel, in-house counsels, and current litigation attorneys is the only practical means of obtaining the information sought—especially considering that Plaintiff had not propounded any discovery requests on Defendant when the subpoenas were served. *See Curley v. Stewart Title Guar. Co.*, No. 2:18-CV-9-FTM-38UAM, 2019 WL 2552245, at *4 (M.D. Fla. Feb. 20, 2019) ("Further, because Licastro served as in-house counsel for Defendant, Plaintiff has the burden of demonstrating the relevance of information sought from Licastro's deposition and that Licastro's deposition is the only reasonably available means of procuring the information."); *Shenzhen Kinwong Elec. Co. v. Kukreja*, No. 18-61550-CIV, 2019 WL 8298217, at *4 (S.D. Fla. Dec. 12, 2019) ("Plaintiffs cannot show that Torres is the only practical means of obtaining the information sought."). *But see Ferrigan v. City of Delray Beach, Fla.*, No. 22-81088-CV, 2022 WL 22832757 (S.D. Fla. Dec. 12, 2022) (declining to follow *W. Peninsular Title Co. v. Palm Beach Cnty.*, 132 F.R.D. 301, 302 (S.D. Fla. 1990)).

Similarly, asking the witnesses to attend the depositions with their electronic devices unlocked is improper since it is Plaintiff's intention to do keyword searches on their phones. [ECF No. 103 at 5]; [ECF No. 125, Hearing Transcript, 34:16–23]. Such keyword searches on the phones of Defendant's in-house counsels, outside counsel, and current/former employees is likely to reveal privileged information.

To the extent that Plaintiff argued at the hearing that the crime-fraud exception to attorney-client privilege applies, the Court determines that Plaintiff has failed to produce any evidence showing Defendant has engaged in criminal or fraudulent conduct when it sought the advice of counsel. Further, the Court determines Plaintiff has not shown evidence of how Defendant's communications with its counsels regarding this case furthered or were closely related to an effort to commit a crime or fraud. Plaintiff has only asserted his subjective belief that some unnamed criminal conduct occurred.

Therefore, the six subpoenas to the attorneys are quashed. *See W. Peninsular Title Co.*, *132 F.R.D. at 303* ("As stated, it is easy to foresee that the questioning of defendants' attorneys might reveal information from confidential communications between the defendants and their attorneys.").

D. *The Subpoenas Impermissibly Seek Discovery Regarding Events Not Relevant to the Claims Asserted in the Amended Complaint.*

Defendant argues that the subpoenas seek information that post-date the 2018 Amended Complaint. [ECF No. 100 at 8–10]. Specifically, Defendant explains that Plaintiff is seeking information regarding the recall of Defendant's president, the disbandment of a committee and the settlement of Grievance 23-031, which occurred in 2025.[1] [*Id.* at 8–9]. According to Defendant

---

[1] Grievance 23-031 is the successor to Grievance 12-012—the subject of Count III in the Amended Complaint. [ECF No. 39 at 64–67]. However, Count III alleges that Defendant breached its duty

11

several of the deponents have "no knowledge or awareness of Plaintiff, his claims, or the underlying events at the time the Amended Complaint was filed in 2018." [*Id.* at 9].

Plaintiff in his Response argues that the subpoenaed individuals have knowledge of on-going breaches of duty of fair representation, breaches of contract and LMRDA violations. [ECF No. 103 at 5]. Further, it is Plaintiff's position that in discrimination cases, like his, courts have allowed post-complaint discovery. [*Id.* at 11]. In reply, Defendant note again that all claims in the Amended Complaint relate to conduct that happened before October 2018, yet the subpoenas seek information post-2022—four years after the Amended Complaint was filed. [ECF No. 113 at 3–7].

"[R]equiring relevance to a claim or defense 'signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.'" *Builders Flooring Connection, LLC v. Brown Chambless Architects*, No. 2:11CV373–MHT, 2014 WL 1765102, at *1 (M.D. Ala. May 1, 2014) (quoting GAP Report of Advisory Committee to 2000 amendments to Rule 26). On the other hand, proportionality requires the court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, the court is guided by the non-exclusive list of factors in Rule 26(b)(1). *See Polycarpe v. Seterus, Inc.*, No. 616CV1606ORL37TBS, 2017 WL 2257571, at *4 (M.D. Fla. May 23, 2017) (citations omitted). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what

---

of fair representation by failing to advance the grievance to arbitration prior to the filing of the Amended Complaint. [*Id.*].

degree the requested discovery bears on those claims and defenses." *Id.* (internal quotations omitted).

This Court agrees with Defendant that limiting post-Amended Complaint discovery to the years of 2018 to 2021 is reasonable and proportional to the needs of the case. According to Plaintiff's Response, two of the eight subpoenaed witnesses, Attorney Edwards and Mr. Silva, were hired after 2018. [ECF No. 103 at 6, 10]. Attorney Edwards was hired March 2023, and Mr. Silva became Defendant's President in October 2024. [*Id.*]. Similarly, Mr. Wilhelm started his role as Defendant's Miami Base Chair in November 2024. [ECF No. 100-1 at 2]. Further, even though, Mr. Sicher worked for Defendant from 2014 to 2022 as a union representative, Plaintiff is seeking to depose him about his role as Defendant's President, which he served as from 2022 to 2024. [ECF No. 103 at 7]. Thus, the witnesses would not have first-hand evidence relevant to his claims.

Additionally, the document requests are neither relevant nor proportional to the needs of the case. For example, Plaintiff wants Mr. Sicher to produce:

> All emails, texts, Telegram messages, Slack, Teams, call logs, letters, or notes (April 1, 2022 to present) between you and American executives Robert Isom, Stephen Johnson, the COO, or any other C-Suite execs [*sic*] or counsel, mentioning Meadows reinstatement, MDD pilots, resolution of Grievance 12-011, 12-012, Scope of Grievance and associated MDD settlement or any carve-out agreements include dates, times, full threads.

[ECF No. 100-7 at 5]. Another request, asks Mr. Rempfer for "NRC Power Point Presentation from May 5, 2023 special board meeting." [ECF No. 100-8 at 5]. Such document requests have no relevance and are not proportional to the needs of the case.

The Amended Complaint alleges that Defendant breached its duty for failure to prosecute Grievance 12-012. *See* [ECF No 35]. Thus, Defendant's conduct and communications relevant to the timeframe of the alleged breached are discoverable. Defendant concedes that communications and conduct up to 2021 may have some evidentiary value. However, after 2021, these individuals

would have no relevant evidence of his claim. Plaintiff has presented nothing other than his conjecture that the breach is ongoing. This is insufficient.

## CONCLUSION

For the reasons expressed above, Defendant's Motion for Protective Order [ECF No. 100] is **GRANTED**.

**SIGNED** this 13th day of November 2025.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

**cc:**   **U.S. District Court Judge Ed Artau;**

**Plaintiff;**

**All Counsel of Record**