FILED BY _MP_ D.C.

NOV 26 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LAWRENCE MEADOWS,
    Plaintiff,

v.

ALLIED PILOTS ASSOCIATION,
    Defendant.

CASE NO. 1:17-cv-22589-EA
HONORABLE ED ARTAU
_____/

### PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S ORDER GRANTING DEFENDANT ALLIED PILOTS ASSOCIATION'S MOTION FOR PROTECTIVE ORDER (ECF NO. 138)

Plaintiff Lawrence Meadows, pursuant to Federal Rule of Civil Procedure 72(a), objects to Magistrate Judge Lisette M. Reid's November 13, 2025 Order Granting Defendant Allied Pilots Association's Motion for Protective Order (ECF No. 138) (the "Order"). The Order, which quashes eight critical fact-witness subpoenas and arbitrarily limits all discovery to pre-2022 events, is the tainted "fruit of a poisonous tree." It was procured through a series of material misrepresentations by opposing counsel, whose ethical standing to appear and continue in these proceedings is the subject of multiple pending motions before this Court (ECF Nos. 109/110, 142, 144). Because the Order is predicated on a distorted record and a misapplication of controlling law, it is clearly erroneous, contrary to law.  The Order makes it impossible for Plaintiff to prove his case, will cause him irreparable harm, and will result in a manifest injustice. For the reasons set forth herein, the Order must be set aside.

1

## BACKGROUND

This case alleges over a 15-years long, continuing pattern of bad-faith conduct, breaches of the duty of fair representation ("DFR") under the Railway Labor Act ("RLA") 45 U.S.C. §151 *et. seq.*, breaches of contractual obligations contained within the Union's Constitution and Bylaws ("C&B"), and retaliation in violation of the Labor Management Reporting and Disclosure Act ("LMRDA") 29 U.S.C. § 411, union member "Bill of Rights", Sec. 101(a), by the Defendant, Allied Pilots Association ("APA"), as alleged in Plaintiff's First Amended Complaint ("FAC") (ECF NO. 35), and recently filed motion for leave to file his proposed Verified Supplemental Pleading (ECF No. 129, Ex. 1).

By way of background, Plaintiff, First Officer ("FO") Meadows, was a formerly disabled MDD[1] pilot, but now FAA medically certified and current and qualified as an FAA type-rated B-777 Captain working in Boeing's Flight Training Center in Miami, who meets all essential job functions as an American pilot, and has diligently sought seniority reinstatement and return to work as an active line pilot in accordance with longstanding past practice since December 2018. Plaintiff has been the only MDD pilot deprived of the opportunity to resume his life-long airline

---

[1] Meadows' union, the APA, classifies him as MDD (Medical Disability Dropped from AA seniority list), which is the membership code for adversely affected disabled pilots administratively dropped from the seniority list for exceeding five years on disability; albeit in violation of the CBA as protested by APA in multiple grievances, including G12-012 and 23-031. Discovery in *Preitz v. Allied Pilots*, Case No. 2:17-cv-01166-MSG (E.D. Pa. Mar 16, 2017) showed that out of the original 241 MDD pilots circa 2017, 55 of those who subsequently obtained their FAA Airman's First Class Medical Certificates, had applied for reinstatement to their original pilot position and relative seniority number through American's and APA published Return-To-Work ("RTW") procedure. Of those 55, only three such pilots were denied reinstatement, FO Lawrence Meadows, FO Kathy Emery, and FO Susan Twitchett, all of whom had sued APA for breaching their duty of fair representation. Two of those, Emery and Twitchell, took monetary settlement in exchange for waiving their right to reemployment as a pilot with American. Unlike Emery and Twitchell, Meadows never waived his right to reemployment, leaving him as the only MDD pitot denied reinstatement.

2

piloting career, a result of ongoing bad-faith breaches of DFR obligations and retaliation for being one of the most outspoken advocates of disabled and MDD pilots. Plaintiffs is the founder of the *http://www.disabledairlinepilotsfoundation.com* and has been publicly critical of APA's egregious representational failures and outright abandonment of the representation of himself and other MDD pilots. In this very court, in the matter of a similarly situated MDD pilot, *Emery v. Allied Pilots Ass'n*, 227 F. Supp. 3d 1292 (S.D. Fla. 2017), involving APA's mass lockout from the virtual and physical union hall of all of APA's disabled and MDD pilots, Judge Hurley found that the APA's policy of denying MDD pilots access to Challenge & Response (C&R) message board constituted an impermissible infringement on their right to free speech guaranteed by LMRDA. *Id.* at 1302.

To obtain evidence of APA's pattern and practice of bad faith DFR breaches and retaliation with respect to the handling of grievances, Plaintiff served narrowly tailored subpoenas on eight non-party key fact witnesses, including; 1) former APA Presidents and an APA committeeman, who represented and/or advocated for Plaintiff, and have first-hand knowledge and direct dealings on multiple issues related to him and other MDD pilots[2]; 2) in-house attorneys who acted as

---

[2]   APA's representational failures related to Plaintiff and other MDD pilots, include but are not limited to; 1) mutually selecting and hiring a known to be procedural flawed and fraudulent non-clinical disability claims reviewer in violation of the CBA, 2) which facilitated American Airlines Corporate Medical Department's "Pilot Disability Nurse Case Management Cost Savings Reports" used to target the costly disabled pilots for benefits termination on cost savings, 3) failed to defend against these mass disability benefit terminations despite publicly promising to do so, 4) former APA's President Llyod Hills admission that the institution secretly abandonment these disabled pilot's statutory representation due to the high cost of litigating their ERISA claims and the fact that they weren't paying dues while on disability, 5) mis-handled Plaintiffs individual and collective MDD pilot seniority reinstatement grievances protesting the no-notice administrative terminative and removal from the seniority list and failure to reinstate these MDD pilots in violation of the CBA and past practice, 6) APA Director of Negotiations failed to follow union policy, APA Board resolutions and associated tasking orders seeking MDD pilot seniority reinstament, 7) APA GC and Mark Myers argued against him and 240 other MDD pilots in APA's Equity Distribution arbitration, claiming they were no longer members of the bargaining and not

surrogate union representatives in their roles as Director of Negotiations and Director of Grievances, who have first-hand knowledge and direct dealings with Plaintiff and other MDD pilots on issues described in footnote 2 below, and 3) an outside attorney who the APA President hired to act as Plaintiff's own counsel to personally represent him in his individual ADA lawsuit against his employer, American Airlines, and whose services were abruptly withdrawn when Plaintiff refused to drop this instant lawsuit, and who subsequently participating in a secret settlement involving American's adversarial ADA counsel, and 4) the current APA President who signed the secret settlement that extinguished his seniority reinstament rights for zero value without notice and subsequent summarily terminated his 34-years of union membership just two days after Plaintiff moved to reopen this instant lawsuit.

---

and not owed a duty of representation, to improperly deprive them of $24M in collective equity, 8) locked out Plaintiff and all 240 MDD pilots from the virtual and physical union hall after plaintiff threatened to file mass EEOC charges for discriminating against the MDD group, 9) sought false Babb-Denison legal opinion letters to justify their otherwise unlawful abandonment of statutory duty representation otherwise owed MDD pilots, 10) When confronted and asked about MDD legal opinions during the Jan 2020 REDDI (Reinstament of Disability Dropped Investigative) Committee, Chaired by CA Sicher, investigated both APA Director of Negotiations, Mark Myers and APA Legal Director lied to the committee about its existence and purpose, 11) APA President Sicher's hiring outside counsel Sue Edward in May 2024 to personally represent Meadows personally in his individual ADA lawsuit, only to abruptly yanking her off the case the following month on the eve dispositive responsive deadline - after he refused to drop this instant lawsuit, 12) the prior action was done by the APA President via hostile text messages, stating "its over Larry...you're on your own...APA isn't advocating for you now...Treat the union as your enemy.", 13) The subsequent purging and immediate recall of President Sicher shortly after he refused to sign a grievance settlement the excluded Meadows from seniority reinstament, 14) the immediate disbanding of the APA MDD reinstatement committee and termination of Meadows key advocate FO Tom Rempfer, 14) the signing of the January 2025 Grievance 12-012/23-031 secret settlement agreement that named Meadows, but explicitly and disparatelty excluded him from seniority reinstatement, and extinguished all his grievance claims for zero value without notice, or statutory right to arbitrate at his own expense, and 15) the new APA President Nick Silva's retaliatory May 1, 2025 letter, terminating Meadows 34-years of union membership as a member in good standing serving on the APA National Aeromedical Committee, just two days after moving to reopen, this suit, and requesting to speak at the May APA Board of Director meeting to expose the secret settlement on the midst of an APA national officer election.

4

As argued in Plaintiff's Emergency Opposition to Defendant's "Times-sensitive" Motion For Stay A Of Deposition and Motion For Protective Order Protective, On October 10, 2025, APA obtained that alleged "time-sensitive" order, *ex parte*, in bad faith, and in violation of Standing Discovery Order procedures (ECF No. 95), all of which deprived plaintiff of due process protections reflected in the requirement of good faith conferral, notice of a hearing, and right to a response.

APA's counsel Joshua Shifrin, after receiving Plaintiff's deposition subpoenas, instead of immediately objecting, spent the next week engaging in an unethical campaign of multiple *ex parte* communications with several non-party unrepresented witnesses. Most egregious, was Mr. Shiffrin's contacts with key unrepresented nonparty witness, FO Thomas Rempfer, APA's former unpaid volunteer, MDD seniority reinstatement committee ("NDRC") chairman, who was an MDD subject matter expert, and ardent advocate for Plaintiff. Mr. Shiffrin engaged in multiple *ex parte* communication over several days including sending four emails to FO Rempfer, a detailed "gag list", and a zoom call, as admitted in his 17-paragraph fact intensive declaration (ECF No. 113-1, Declaration of Josh Shiffrin). FO Rempfer, expressed multiple timed that his desire "isn't to quash it…my goal is complete transparency…I would like to do the deposition. I have federal court subpoena, I will comply with…" Despite, FO Rempfer making his intent to testify abundantly clear - Mr. Shiffrin didn't relent, and in his own words showed his true intent, stating 'would be filing a motion to quash…and looking to put off your deposition indefinitely." (ECF No. 113-1, Decl. Grace Rybak, Zoom Call). Mr. Shiffrin's "gag list" was intended to mislead FO Rempfer on what he could testify to, conflating the concept of union confidential information with attorney-client privileged information,  and asserting FO Rempfer couldn't say anything about anything, and warning him he could face union discipline under Article VII of APA C&B (which

5

includes expulsion), for disclosing non-privileged information. Mr. Shiffrin's conduct had a "chilling effect" on the discovery process and prevented FO Rempfer's testimony, which is more fully described in the pending Emergency Motion to Disqualify Defendant's Counsel Joshua Shiffrin For Witness Tampering, as supported by a sworn declaration and recording of tampered witness FO Rempfer. (ECF Nos. 109 and 110).

Finally, on October 9, 2025, Mr. Shiffrin sent Plaintiff a letter stating he was now suddenly representing, previously unrepresented non-party witness, APA outside counsel, Sue Edwards, who personally represented Plaintiff in his related individual ADA lawsuit against American Airlines, and demanded her subpoena immediately be withdrawn – which Plaintiff refused as she was a key witness. Mr. Shiffrin later represented in an email that he was only representing her for the limited purpose of her subpoena – essentially admitting his sole purpose was to quash subpoena to suppress her testimony and relevant evidence related to her involvement of the secret settlement that extinguished Plaintiff's grievance claims for zero value and without notice. Mr. Shiffrin's act of representing Plaintiff's former counsel has created a textbook impermissible non-waivable conflict firm-wide conflict, in violation of the professional rules regulating the Florida Bar 4.1-09 and 4.1-10(a), precipitating Plaintiff's now pending Motion to Disqualify the Law Firm of Bredhoff & Kaiser. (ECF No. 143).

Only after Mr. Shiffrin's weeklong a campaign to suppress witness testimony failed to discourage testimony from every witness did he belated seek what he disingenuously titled as his "time sensitive" motion. Worse, his conduct involving FO Rempfer, veered into the realm of criminal witness tampering. Mr. Shiffrin now may be subpoenaed as a material witness, which prevented him from arguing at the hearing for the protective order he sought.

**APA Suddenly Brings In A Criminal Attorney For Its Protective Order Hearing**

At a hearing on October 28, 2025, APA's newly admitted *pro hac vice* defense counsel, John M. Pellettieri, suddenly appeared to represent APA after its lead counsel, Joshus Shiffrin and his associate Grace Rybak, were accused of witness tampering[3], and proceeded to make no fewer than six material misstatements of fact to the Magistrate on the core issues of witness conflicts and the scope of Plaintiff's claims. (ECF No. 144). Relying on this poisoned record, the Magistrate issued the Order, which: (1) quashed all eight witness subpoenas, and (2) imposed a blanket prohibition on any discovery of events after December 31, 2021, barring Plaintiff from discovery into the full truth, which justice requires for this case to be fairly adjudicated, and not on the bowdlerized version of events APA sought to impose by misleading the magistrate with several misrepresentations of material facts.

This Order shields from discovery APA's most egregious and recent misconduct including but not limited to; abruptly yanking outside counsel, Sue Edwards, off his individual ADA lawsuit against his American Airlines for refusing to drop this instant lawsuit; Ms. Edwards and APA's involvement in the collusive January 15, 2025 secret grievance settlement; and APA President First Officer ("FO") Nick Silva's  May 1, 2205, retaliatory union membership termination letter sent to Plaintiff - the very acts that form the basis of Plaintiff's pending Motion for Leave to File

---

[3]      Notably, APA's newest of its cadre of seven attorneys currently working on this case is former DOJ Criminal attorney John M. Pellettieri, who recently served on Jack Smith's Special Counsel Team. (See Bredhoff Bio: John M. Pellettieri). On October 22, 2025, Mr. Pellettieri filed a motion to appear pro hac vice, the very day after Plaintiff filed his Emergency Motion to Disqualify Defendant's lead counsel, Joshua B. Shiffrin for criminal witness tampering. During the first substantive hearing in this matter, Mr. Pellettieri, consistent with his extensive criminal oriented bio showing no experience in labor law, appeared in lieu of labor attorney Mr. Shiffrin, and argued in this complex labor case involving unique issues under the Railway Labor Act ("RLA") and Labor Management Relations Disclosure Act ("LMRDA"). During that October 28, 2025 hearing, he asserted that Mr. Shiffrin was still lead counsel, but was busy with a trial. Odd, because Mr. Shiffrin and his associate, Grace Rybak, who is also involved in the alleged criminal witness tampering and witness advocate issues, were both present during the entire Zoom hearing, but made no formal appearance and remained silent the entire time.

a Supplemental Pleading (ECF No. 129). Compounding the prejudice, the Order leaves Plaintiff exposed to APA's extremely burdensome and expansive discovery requests spanning from 2011 to 2025, including 15-years of emails from 42 individuals, totaling 64,951 pages, all while limiting Plaintiff's own discovery to a fraction of that period and depriving him of relevant and deposition testimony of every one of his key facts witnesses necessary to prove his claims, despite four of them being identified as witnesses on APA's very own initial disclosures - creating a grossly inequitable imbalance.

## STANDARD OF REVIEW

With respect to non-dispositive matters, the Court "may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed R. Civ. P. 72(a). A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997). An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Tolz v. Geico Gen. Ins. Co.*, No. 08-80663-CIV, 2010 U.S. Dist. LEXIS 6709, at *2 (S.D. Fla. Jan. 27, 2010). The Court reviews the Magistrate Judge's application of the law de novo, because "application of an improper legal standard . . . is never within a court's discretion." *United States v. Doe No. 2*, 2009 U.S. Dist. LEXIS 143390, at *3 (S.D. Fla. Oct. 23, 2009) (quoting *Johnson & Johnson Vision Care, Inc., v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002)). The Magistrate's Order is both clearly erroneous and contrary to law.

## ARGUMENT

8

## I. The Arbitrary Temporal Restriction Is an Abuse of Discretion and Contrary to Law.

The Order's most prejudicial defect is its arbitrary blanket prohibition on any discovery of events after December 31, 2021. This cutoff makes it legally and factually impossible for Plaintiff to prosecute the central theory of his case, depriving him of necessary and relevant witnesses and documents. The scope of discovery under Rule 26(b) is broad. *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 685 (S.D. Fla. 2010). Under Rule 26, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). Discovery is not limited to the issues raised by the pleadings because "discovery itself is designed to help define and clarify the issues." *Id.* at 352.

## A. The Order Fatally Prejudices Plaintiff's Continuing Violation Claim.

A continuing violation links older discriminatory acts to recent, timely acts as part of a single, ongoing unlawful practice. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). The Magistrate's summary dismissal of this doctrine as "pure conjecture" (Order at 13) is clear error. Plaintiff's pending supplemental pleading (ECF No. 129) details concrete, post-FAC and, specifically, post-2021 acts that constitute ongoing breaches of the DFR, breaches of contract, and escalating retaliation all of which are the culmination of the exact pattern of conduct alleged in the First Amended Complaint ("FAC") (ECF No. 35):

1. **LMRDA Retaliation via Withdrawal of Counsel (June 14, 2024):** APA President Ed Sicher, after agreeing in mid-May 2024 to hire attorney Sue Edwards to represent Plaintiff in his related, individual ADA lawsuit against American Airlines, less than one month later sent Plaintiff hostile text messages and abruptly withdrew that representation for the sole reason that Plaintiff refused to drop this instant lawsuit - retaliatory act punishing

9

him for exercising his statutory right to sue under the LMRDA. (ECF No. 129, Ex. V, at 96-98). This alone is prima facie evidence of continuing retaliation for Plaintiff's engagement in protected activity under the LMRDA.

2. **RLA/DFR Breach via Secret Settlement (January 15, 2025):** APA consummated its breach of the Duty of Fair Representation ("DFR") by secretly settling the central grievance at issue in the FAC, Count III (Grievance 12-012). This settlement agreement[4], which settled Grievance 23-031 (the verbatim twin expedited successor to Plaintiff's Grievance 12-12), expressly defined Plaintiff as an "Identified Individual," and favorably resolved the grievance for all other MDD pilots while singling out Plaintiff, extinguishing his claims "with prejudice" for zero value and without notice, (*Id.* at 77-83, Ex. M), violating his statutory RLA right to notice and the opportunity to pursue arbitration individually at his own expense. This is not conjecture; but instead, is *prima facie* evidence

---

[4]     On January 15, 2025, APA using Plaintiff's former conflicted counsel Sue Edwards and American Airlines adversarial counsel from his ADA litigation, negotiated, and entered into to a secret Settlement Agreement for Grievance 12-012 (pled as DFR violation in FAC Count III), and its verbatim twin converted expedited Grievance 23-031, that included by name four "Identified Individuals", Meadows and three other similarly situated who were formerly disabled MDD pilots, who had since obtained the FAA medical certification required to work as an airline pilot. Three of those pilots, Dale Churovich, Roger Wagner, and Tim Curren, were out on disability for as much as 24-years, and just like Meadows they were considered administratively terminated; but unlike Meadows, those three were offered reinstatement to their original relative seniority position and return to their former jobs as American Airlines pilots. Meadows was carved-out and explicitly excluded from reinstament Whereby, APA secretly explcitly disposed of both his individual and collective seniority reinstament grievance claims and right to reinstatement for zero value, and without notice. To date, out of 241 original MDD pilots who were administratively terminated, some 58 have been reinstated, and Meadows is the only one ever denied such reinstament as affirmed by former APA President Dan Carey in a official Board of Directors meeting packet.

of a continuing violation bad faith grievance handling and retaliation, and contrary to RLA jurisprudence[5].

3. **LMRDA Retaliation via Unlawful Termination of Union Membership (May 1, 2025):** In the ultimate act of retaliation, just two days after Plaintiff moved to reopen this case and shortly after he requested to speak at an APA board meeting to expose the secret settlement in the midst of an APA National Officer elections, APA's President Silva, sent Plaintiff a letter that summarily terminated his 34-year APA union membership without the due process guaranteed by its own constitution, and his statutory union member "Bill of Rights" under the LMRDA 29 U.S.C. § Sec 411, Sec, 101(a). *(Id.*, Ex. V, at 112-133). This is further prima facie evidence of continuing violation of retaliation for engaging in protected activity under the LMRDA.

It is a manifest abuse of discretion to deny a litigant the ability to discover facts essential to proving a core element of his claims. *See* Fed. R. Civ. P. 26(b)(1). The Magistrate's order creates an impossible catch-22: it demands proof of a continuing violation while simultaneously prohibiting any discovery into the continuing acts.

**B. The Order Creates a Grossly Inequitable and Non-Reciprocal Discovery Imbalance.**

The Order grants APA carte blanche to demand discovery from Plaintiff spanning fourteen years (2011–2025), while restricting Plaintiff's discovery to a fraction of that time. This one-sided structure is fundamentally unfair and violates the principle of reciprocal discovery. It is an abuse

---

[5]     A Union has no authority to supplant an individual grieving's party status. *Stevens v. Teamsters Local 2707*, 504 F. Supp. 332, 336 (W.D. Wash. 1980) (finding that the union's withdrawal of individual grievances was in reckless disregard of the statutory rights of the plaintiffs to pursue their own grievances). Notably, in the *Stevens* decision, the court held, **"before the defendant union might withdraw a grievance without receiving anything for the employee in return, it must give notice to the employee of its intention to do so."** [Emphasis Added].

of discretion to permit one party to develop its themes of delay and vexatiousness over a decade while forbidding the other from discovering the retaliatory acts that define the same period. The history of this case has a litany of APA's procedural failures and strategic delays, and was twice admonished by this Court. First on May 5, 2025, Judge Moore entered an order stating, "to comply with this Court's previous order, Defendant...must address timeliness, specifically Defendant's prolonged delay in bringing a motion to dismiss." (ECF No. 70). Again, on September 18, 2025, Judge Moore entered an Order denying APA's motion to dismiss as untimely, and issued a scathing rebuke; "there were several periods over the course of this litigation where this action was not stayed and where defendant was obligated to respond to the Amended Complaint...The Court will not condone this... Defendant's position... is unreasonable and does not justify this prolonged delay in seeking dismissal... the Court is not a de facto babysitter..." (ECF No. 92 at 5-6).

## II. The Order Is Contrary to Law Because its Misapplies Binding Precedent on Attorney-Client Privilege.

The Order's conclusion that the information sought is "squarely protected by the attorney-client privilege" (ECF No. 138 at 9) is contrary to law because it ignores two well-established exceptions.

### A. The Magistrate Ignored the Fiduciary Exception, Which Independently Pierces the Privilege.

As a threshold matter, a union's assertion of privilege against its own members is not absolute. Under the fiduciary exception, recognized by the Eleventh Circuit in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), "the attorney-client privilege does not apply with respect to communications made to certain fiduciaries who obtain legal advice in the execution of their fiduciary obligations." *Moore v. Metro. Life Ins. Co.*, 799 F. Supp. 2d 1290, 1292 (M.D. Ala. 2011) Multiple courts have applied the fiduciary exception to DFR actions, precisely because these claims allege fundamental breaches of the union fiduciary duty, and the applicability of the

12

doctrine remains an open question in the Eleventh Circuit. *Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386, 1414-15 (11th Cir. 1994). The Magistrate's complete failure to even consider this well-established legal doctrine is reversible error.

**B. The Magistrate Erroneously Narrowed the Crime-Fraud Exception.**

The Magistrate summarily rejected the crime-fraud exception because Plaintiff had not shown a that a crime has been committed. (ECF No. 138 at 11). This is a fundamental misstatement of Eleventh Circuit law. A party need only *present prima facie* evidence that the client was engaged in or planning fraudulent conduct and the attorney's assistance was obtained in furtherance of it. *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987). Notably, here in this instant matter, APA's counsel has been accused of criminal witness tampering in violation of 18 U.S.C § 1512(b), (ECF No. 109), as supported by a sworn declaration and recording of the tampered witness. (ECF No. 110); which is reasonably believed to be in furtherance of covering up APA's historical and ongoing bad faith grievance handling and malicious retaliation, to defraud Plaintiff and other similarly situated MDD (Medical Disability Dropped from AA seniority list) of their statutory right to DFR, collective rights, grievances, pay, disability benefits, and equity distributions.

The leading precedent is *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994). In *Cox*, a labor union DFR/LMRA context, the Eleventh Circuit held that evidence of a "union cover up" was sufficient to establish a prima facie element of the crime-fraud exception. *Id.* at 1416. The Court additionally required some evidence of a connection between the attorney and alleged criminal acts. Plaintiff has presented overwhelming prima facie evidence of the Union's fraudulent scheme to deprive Plaintiff of his contractual and statutory rights as well a connection between that scheme and the APA's attorneys. In furtherance of the Union's

conspiracy, its attorneys have engaged in criminal witness tampering, material misrepresentations to this court, and the secret settlement which unlawful extinguished Plaintiff's statutory grievance rights. (ECF Nos. 109/110, 144). The Magistrate's imposition of a non-existent "criminal conviction" requirement is clear legal error.

## III. The Order Is Clearly Erroneous in Quashing Subpoenas for Key Fact Witnesses.

The Magistrate's Order quashing every one of Plaintiff's subpoenas is predicated on a cascade of legal and factual errors. It misapplies the standard for deposing attorneys who are fact witnesses, ignores the non-delegable statutory duties of a union under the Railway Labor Act ("RLA"), and disregards the core protections of the Labor-Management Reporting and Disclosure Act ("LMRDA"). This has resulted in the creation of an indefensible standard of disparate treatment that contradicts prior discovery rulings in this very District.

### A. The Magistrate Erred by Permitting APA's Retaliatory Abandonment of Representation.

The Magistrate's apparent acceptance of APA's position—that it could instruct its representatives to cease communicating with Plaintiff because he filed this lawsuit—is fundamentally contrary to law. A union's statutory Duty of Fair Representation (DFR) under the RLA is not suspended when a member exercises their protected LMRDA right to sue the union.

Section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), explicitly provides that no labor organization shall limit the right of any member to institute an action in any court. "The LMRDA of 1959 was designed to protect the rights of union members to discuss freely and criticize the management of their unions and the conduct of their officers." *Fulton Lodge No. 2 of Int'l Asso. of Machinists & Aerospace Workers v. Nix*, 415 F.2d 212, 218 (5th Cir. 1969) (quoting *Salzhandler v. Caputo*, 316 F.2d 445, 448-49 (2d Cir. 1963)). Filing a lawsuit is the ultimate expression of that protected right.

Therefore, instructing a member's local representative—here, MIA Domicile Chairman Jay Wilhelm—to "go dark" or abandon his representational duties in response to a lawsuit is a form of unlawful "discipline" intended to chill the exercise of LMRDA rights. *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 92 n.15 (1989) (noting that LMRDA "discipline" is not limited to formal union proceedings). The Magistrate's failure to recognize this bedrock principle of labor law is a clear legal error that tainted her entire analysis of the subpoenas. Testimony regarding such a directive is not privileged; it is direct evidence of an illegal retaliatory act.

**B. APA's Counsel Are Discoverable Fact Witnesses, Not Shielded Trial Counsel.**

The Order's reliance on the principles of *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) is misplaced. That rule narrowly protects an opposing party's *current trial counsel* from depositions about litigation strategy.   As explained by this Court:

> The Shelton test was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy.... Shelton was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial. In such circumstances, the protection Shelton provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case.

*Berntheizel v. Safeco Ins. Co. of Ill.*, No. 21-cv-14482-Can, 2023 U.S. Dist. LEXIS 237044, at *4 (S.D. Fla. Dec. 1, 2023) (quoting *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002)).   Given the facts of this case, the Magistrate's application of *Shelton* was legal error.   The proposed deponents have not appeared in the current action of behalf of the Union.   Instead, Plaintiff seeks to depose the APA counsel who handled his grievances, now withdrawn with prejudice by the APA without Plaintiff's consent, and his own ADA counsel who subsequently withdrew from that action:

15

- **James Clark, Mark Myers, and Tricia Kennedy:** Their testimony is sought regarding their factual roles in handling Plaintiff's grievances, their conflicting statements to non-client union committees, and their direct communications with Plaintiff. They were actors and decision-makers performing core union functions that Plaintiff alleges breached the DFR and his contractual rights under the APA Constitution & Bylaws (FAC, Counts I-VIII) and the ongoing violations thereof as pled in Plaintiff's verified supplemental pleading claims. (ECF No. 129, Ex. 1, ¶¶ 1-36). Their testimony is about historical facts not privileged legal strategy for this case.

- **Sue Edwards:** As Plaintiff's former attorney retained by APA, she is a central fact witness regarding her work on his ADA lawsuit, her receipt of his confidential litigation strategy, and her participation in subsequent negotiations that extinguished his grievance rights. To shield her is to conceal the ongoing violation of his rights (FAC, Counts III and VIII), and the core facts of Plaintiff's verified supplemental pleading claims (ECF No. 129, Ex. 1, ¶ 21).

## C. APA's Officers and Committeemen Possess Essential, First-Hand Knowledge.

The quashed subpoenas for APA's officers and committee members are even less defensible. These individuals are indispensable fact witnesses who directly participated in the events underlying the FAC and the continuing violations thereof as plead in Plaintiff's proposed Supplemental Pleading.

- **CA Ed Sicher (Former President; MIA Domicile Representative):** As a ten-year advocate for Plaintiff and the APA President who ordered Grievance 12-012 be arbitrated and hired Ms. Edwards, his testimony is essential to prove the history of APA's promises, its retaliatory motives, and the facts underlying FAC Counts I-VIII, and continuing

violations thereof as plead in Plaintiff's proposed Supplemental Pleading. (ECF No. 129, Ex. 1, ¶¶ 1-36).

- **FO Tom Rempfer (Committee Chairman):** As the author of a non-privileged 16-slide PowerPoint detailing APA's DFR failures, and a witness to directives to stall Plaintiff's grievances, his testimony is crucial to proving the violations of FAC Counts III and VIII, and continuing violations thereof as plead in Plaintiff's proposed Supplemental Pleading. (ECF No. 129, Ex. 1, ¶¶ 10-20, and 34-36). He is now also the key fact witness to the alleged witness tampering by APA's counsel. (ECF Nos. 109, 110).

- **CA Nick Silva (Current President):** As the APA President who executed the January 2025 secret settlement that excluded Plaintiff and issued the retaliatory membership termination letter on May 1, 2025, just two days after Plaintiff moved to reopen this case, his testimony is direct evidence of the continuing DFR breach (FAC Count III) and LMRDA violations for retaliation and suppression of free speech and the right to sue (FAC Counts VI-VIII), and continuing violations thereof as plead in Plaintiff's proposed Supplemental Pleading. (ECF No. 129, Ex. 1, ¶¶ 10-20, 23-24, and 34).

- **CA Jay Wilhelm (MIA Domicile Chairman):** As Plaintiff's direct union representative at the local level who was allegedly instructed to cease communications, his testimony is necessary to prove APA's bad faith and its policy of retaliatory abandonment of Plaintiff's grievances in violation of the LMRDA and RLA. FAC Counts III, VI-VIII, and continuing violations thereof as plead in Plaintiff's proposed Supplemental Pleading. (ECF No. 129, Ex. 1, ¶¶ 10-20, 23-24, and 35).

- **CA Dan Carey (Former President):** He possesses direct factual knowledge of promises made to Plaintiff regarding his reinstatement and the union's handling of his grievances,

which is central to the DFR, contract, and LMRDA claims in the FAC Counts I-VIII, and continuing violations thereof as plead in Plaintiff's proposed Supplemental Pleading. (ECF No. 129, Ex. 1, ¶¶ 10-20, and 25-33).

**D. The Order's Prejudicial and Disparate Treatment of Plaintiff is Unprecedented.**

The Order's blanket quashing of every one of Plaintiff's key witness constitutes a manifest injustice, compounded by two undeniable facts.

First, **APA itself identified four of the quashed witnesses,** (APA Officers CA Dan Carey and CA Ed Sicher; APA Attorneys James Clark and Mark Myers) as individuals likely to have discoverable information in its very own initial disclosures. (Exhibit A, ¶ I. A., B., F., and G.). Accordingly, APA cannot claim that deposing its own designated witnesses is unduly burdensome or irrelevant.

Second, the Order treats Plaintiff disparately compared to every other similarly situated MDD pilot who has sued APA in this very Court and other U.S. District Courts across the country. *See, e.g., Emery v. Allied Pilots Ass'n*, No. 9:20-cv-81781-KLR (S.D. Fla.); *Emery v. Allied Pilots Ass'n*, No. 9:14-cv-80518-HURELY (S.D. Fla.); *Preitz v. Allied Pilots Ass'n*, No. Case 2:17-cv-01166-MSG (E.D. Pa.); *Twitchell v. Allied Pilots Ass'n*, 4:16-cv-00493-DCB (D. Ariz.). *Pro Se* MDD pilots in the above nearly-identical RLA DFR and LMRDA cases have deposed and/or called as witnesses including the following litany of former and current APA officers, attorneys and committeemen; CA Dan Carey (President, LGA CH, LGA VC), CA Ed Sicher (President, MIA CH, MIA VC, REDDI Committee CH, Contract Compliance Committee), CA Keith Wilson (APA President), CA Rusty McDaniels (DFW CH, Membership Committee CH), Mark Myers, Esq. (APA Director of Negotiations), Bennet Boggess, Esq. (APA Legal Director), Sandi Denison, Esq (APA outside counsel), and APA National Committeeman, CA Mark Stephens (also an

attorney Equity Distribution and AAPSIC), and CA Joe Barkate (also an attorney, Negotiating Committee and Appeals Board).

Additionally, prior to filing this lawsuit, in April 2014 APA took a secret vote and declared MDD pilots to no longer to members, and unlawfully[6] locked out Plaintiff and all other 241 of its MDD pilots from virtual and physical union hall, as pled her here, in violation of his LMRDA union member "Bill of Rights", of freedom of speech and assembly (FAC, Count VI, ¶¶ 119-129 and 286-307, Ex. A at 106-108). APA's general counsel asserted that prior to filing in federal court, he had to first exhaust those LMRDA claims through his internal union remedies, i.e.; filing formal charges for an Article VII Hearing and appeals thereof to AAA arbitration, as provided under the APA Constitution and Bylaws. Accordingly, through 2017 the Plaintiff prosecuted two such formal transcribed hearings and AAA arbitrations, *Meadows v. APA President Kieth Wilson* and *Meadows v. APA Secretary-Treasurer, Pam Torrell.* Wherein, he personally subpoenaed witnesses and took sworn testimony of several current APA officers, attorneys and committeeman, including but not limited to; APA's General Counsel Stephen Hoffman, Esq, Legal Director, Bennett Boggess, Esq., President Keith Wilson, Secretary-Treasurer Pam Torell, Board of Director Officers, Rusty McDaniels. Mark Stephens, Esq., and Thomas Copeland. (Four of whom are named in APA's initial disclosures in this matter). (Exhibit A, ¶ I. A., B., F., and G.).

There is no legal or factual basis to quash all of Plaintiff key witnesses, and afford him less discovery than every other MDD pilots' RLA and LMRDA case in this and other U.S. district courts across the country, or in prior union Article VII and AAA arbitration proceedings. This

---

[6]    In the individual lawsuit of MDD pilot similarly situated MDD pilot Kathy Emery, *Emery v. Allied Pilots Ass'n*, No. 9:14-cv-80518-HURELY (S.D. Fla.), this court held that APA's action was an impermissible infringement of free speech in violation of the LMRDA.

arbitrary, indefensible, and prejudicial ruling results in manifest injustice and is clearly erroneous and must be reversed.

<strong>CONCLUSION</strong>

The wholesale gutting of Plaintiff's case through the deprivation of necessary and relevant discovery including full temporal scope and all of his key fact witnesses, is based on a poisoned record and a clearly erroneous gross misapplication of controlling law, and is contrary to other cases in this very district involving similarly situated MDD APA members and the very same Defendant, APA. Worse, it shields APA from accountability of their egregious ongoing pattern and practice of unlawful conduct, i.e., continuing violation, that has already created a federally recognized class of wronged APA members, its MDD pilots, that have individually and collectively been subjected arbitrary, discriminatory, bad faith retaliatory conduct by and through APA's violations of the RLA, LMRDA, and APA C&B, and creating severe prejudice and irreparable harm to Plaintiff's case resulting in a manifest injustice. In sum, based on all the foregoing, the Magistrate's Order is clearly erroneous and contrary to law and must be set aside in its entirety.

WHEREFFORE, Plaintiff Lawrence Meadows respectfully requests that this honorable Court sustain his objections, vacate the Magistrate Judge's Order of November 18, 2025 (ECF No. 138), deny APA's motion for a protective order, and grant such other relief as is just.

Dated: November 26, 2025

Respectfully submitted,

20

Lawrence M. Meadows, *Pro Se*
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, *Pro Se* Plaintiff, hereby certify that on November 26, 2025, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record listed below, and was also served via email and U.S. Mail.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com
*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Grace Rybak, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com;
jpellettieri@bredhoff.com;
grybak@bredhoff.com;
*Pro Hac Vice Counsel for Defendant*

22

**EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

LAWRENCE MEADOWS,

*Plaintiff,*

v.

ALLIED PILOTS ASSOCIATION, *et al.,*

*Defendants.*

Civil Action No. 17-CV-22589-JLK

## DEFENDANT ALLIED PILOTS ASSOCIATION'S INITIAL DISCLOSURES

Defendant Allied Pilots Association ("APA"), by and through undersigned counsel, hereby makes initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1).

These disclosures are based upon information reasonably available to APA at the present time and represent a good faith effort to identify discoverable information currently and reasonably believed to fall within Rule 26(a)(1). By making these disclosures, APA does not waive any privilege that may exist under statutory or common law; nor does APA represent that it is identifying every witness, document, or tangible thing that it may use to support its case or defend against the claims asserted against it. APA's future discovery responses and deposition testimony will constitute additional disclosure. APA is continuing to investigate the claims and defenses and, if necessary, will supplement these initial disclosures as soon as is practicable, and in accordance with Rule 26(e). APA reserves any objections it may have to the subsequent production or use of these documents under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or any privilege or other right which may exist under statutory or common law.

1

## I.    Individuals Likely to Have Discoverable Information

### A.  Dan Carey

Captain Carey is likely to have discoverable information regarding communications between APA, American Airlines, and Larry Meadows from the fall of 2018. Captain Carey's phone number and address is (307) 654-1104; 4403 Southside Drive, Gulf Breeze, Florida 32563.

### B.  James Clark

Mr. Clark is likely to have discoverable information regarding communications with Mr. Meadows the collective bargaining agreements between APA and American Airlines, the APA Constitution, and correspondence related to Meadows' membership status. Mr. Clark can be contacted through undersigned counsel.

### C.  Chuck Hairston

Mr. Hairston is likely to have discoverable information regarding Grievances 12-011 and 12-012 and allegations pertaining to him in the First Amended Complaint. Mr. Hairston's last known phone number and address is (817) 421-6367; 3348 Spruce Lane, Grapevine, Texas 76051.

### D.  Lawrence Meadows

Mr. Meadows is likely to have discoverable information regarding the allegations in his First Amended Complaint, the circumstances surrounding his employment with American Airlines, the history of his attempts to be re-hired by American Airlines, the grievances he filed, his efforts to mitigate his damages, and his claimed damages.

### E. Rusty McDaniels

Captain McDaniels is likely to have discoverable information regarding the filing of Grievance 12-012 and allegations pertaining to him in the First Amended Complaint. Captain McDaniels's last known phone number and address is (817) 832-0909; 3525 Creekside Court, Bedford, Texas 76021.

### F. Mark Myers

Mr. Myers is likely to have discoverable information regarding the seniority list information process and Mr. Meadows' correspondence with APA regarding that process. He is also likely to have discoverable information regarding the collective bargaining agreements between APA and American Airlines, American Airlines' process for re-hiring pilots after periods of medical disability, and APA's efforts to reach a settlement with American Airlines relating to Mr. Meadows' employment. Mr. Myers is also likely to have discoverable information regarding Grievances 12-011 and 12-012. Mr. Myers can be contacted through undersigned counsel.

### G. Ed Sicher

Captain Sicher is likely to have information about efforts by APA to resolve grievances 12-011 and 12-012 and allegations pertaining to him in the First Amended Complaint. Mr. Sicher's last known phone number and address is (954) 224-6908; 1401 NE 9th Street, Apt. 62, Fort Lauderdale, Florida 33304.

3

### H.  Mark Stephens

Captain Stephens is likely to have discoverable information regarding the seniority list integration process and correspondence between APA and Plaintiff regarding that process. Mr. Stephens can be contacted through undersigned counsel. Mr. Stephens's last known address is 106 Avenida de la Paz, Lamy, New Mexico 87540.

### I.  Pam Torell

Captain Torell is likely to have discoverable information regarding the allegations pertaining to her in the First Amended Complaint. Captain Torrell's last known phone number and address is (772) 708-8129; 18604 Kitty Hawk Court, Port St. Lucie, Florida 34987.

### J.  Keith Wilson

Captain Wilson is likely to have discoverable information regarding Grievance 12-011, interpretations of the APA Constitution, and other matters pertaining to allegations in the First Amended Complaint. Captain Wilson's last known address and phone number is (301) 385-1448; 117 Lynthwaite Farm Lane, Wilmington, Delaware 19803.

## II.      Documents in APA's Possession Likely to Support Its Defenses

A.  APA Constitution and Bylaws

B.  Collective bargaining agreements between APA and American Airlines

C.  Record of seniority list integration proceedings

D.  Records of Meadows' internal Article VII charges

E.  Records related to the American Airlines bankruptcy

F.  Records related to Grievance 12-011

G.  Records related to DFW Grievance 12-012

H.  Arbitration decisions in proceedings involving Meadows

I.   Records from *Meadows v. Allied Pilots Association*, No. 15-cv-4139 (D. Utah)

J.   Records from *Preitz v. Allied Pilots Association*, No. 17-cv-1166 (E.D. Pa.)

K.   Records from *Meadows v. American Airlines*, No. 24-cv-20518 (S.D. Fla)

L.   Presidential constitutional interpretations relating to inactive members

M.   Correspondence between Meadows and APA

### III.   Computation of Damages

As a defendant, APA does not seek any damages in this action.

### IV.   Applicable Insurance Information

The applicable insurance agreement is attached pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(4) at APA_000001 to APA_000169.


DATED:        August 1, 2025            Respectfully submitted,


*/s/ Capri Trigo*
Capri Trigo, Esq. (Fl. Bar No. 28564)
Andrew Dymowski (Fl. Bar No. 1058209)
GORDON REES SCULLY MANSUKHANI
100 S.E. Second Street, Suite 3900
Miami, Florida 33131
ctrigo@grsm.com
ddymowski@grsm.com

*/s/ Joshua B. Shiffrin*
Joshua B. Shiffrin*
Grace Rybak*
BREDHOFF & KAISER PLLC
805 15th Street NW, Suite 1000
Washington, D.C. 20005
jshiffrin@bredhoff.com
grybak@bredhoff.com
*Admitted Pro Hac Vice

*Counsel for Defendant Allied Pilots Association*

5