**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**LAWRENCE MEADOWS,**

    Plaintiff,                                  **CASE NO. 1:17-CV-22589-EA**

v.

**ALLIED PILOTS ASSOCIATION,** *et al.*

    Defendants.

_____/

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S OBJECTIONS TO THE**
**MAGISTRATE JUDGE'S PROTECTIVE ORDER**

Defendant Allied Pilots Association ("APA") files this opposition to Plaintiff's objections to the protective order entered by Magistrate Judge Reid. ECF No. 149. Magistrate Judge Reid entered the order after Plaintiff improperly sought discovery on matters that fall well outside of the allegations in the Amended Complaint as well as APA's privileged communications. The Magistrate Judge, acting well within her broad discretion, entered a protective order that imposed a temporal limit on Plaintiff's discovery and quashed Plaintiff's subpoenas to APA's lawyers. The Magistrate Judge's rulings ensured that discovery in this case occurs through the proper procedures and is focused on the claims in Plaintiff's Amended Complaint and proportional to the needs of the case. Document productions and depositions are now on track to be completed by the discovery deadline on February 1, 2026. The Court should reject Plaintiff's attempts to blow up this schedule and enlarge discovery through the improper use of non-party subpoenas under Federal Rule of Civil Procedure 45.

1

**BACKGROUND**

Plaintiff is a former employee of American Airlines ("American") and a former member of APA, a labor union that represents the pilots at American. ECF No. 35 (Am. Compl.) ¶¶ 2-3. American terminated Plaintiff in 2011 and removed him from the pilot seniority list after Plaintiff had been on long-term disability and inactive for more than five years. *Id.* ¶¶ 12, 15, 17, 38. Plaintiff has a long history of suing American and APA—unsuccessfully—regarding his 2011 termination from American. *See Meadows v. Am. Airlines*, No. 1:24-CV-20518, 2024 WL 5248006, at *1 (S.D. Fla. Oct. 22, 2024) (noting at least "33 litigation matters" brought by Plaintiff, most concerning Plaintiff's termination from American).

Plaintiff filed his original complaint in this case in 2017, ECF No. 1, and an amended complaint on October 16, 2018, ECF No. 35. The Amended Complaint asserts multiple claims that APA breached a duty of fair representation it owed to Plaintiff under the Railway Labor Act and retaliated against Plaintiff in violation of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"). *See generally* ECF No. 35. This case was stayed from November 1, 2018, through March 11, 2025. ECF Nos. 37, 50. After the stay was lifted, Plaintiff stated that he intended to seek leave to supplement the Amended Complaint with events that occurred during the several years the case was stayed. On June 10, 2025, for example, Plaintiff informed APA and the Court that "[t]he passage of time, combined with the surge of new retaliatory actions, requires that the Plaintiff seek leave to further amend" the Amended Complaint, and according to Plaintiff, he planned to seek leave to amend the complaint "within two weeks." ECF No. 87, at 2-3.[1]

Plaintiff did not timely seek to amend the Amended Complaint. Instead, in early October 2025, Plaintiff forged ahead with eight third-party subpoenas for discovery that largely pertained

---

[1] Page citations to ECF documents are to the page listed in the ECF header.

to events that post-dated the allegations in the Amended Complaint. *See* ECF Nos. 100-2–100-9. The subpoenas sought documents and noticed depositions to take place across four states between October 17 and October 30, 2025. *See id.* Four of the subpoena recipients were lawyers who served as internal or outside counsel for APA. *See* ECF No. 100-2 (Sue Edwards, outside counsel); ECF No. 100-3 (James Clark, in-house counsel); ECF No. 100-4 (Mark Myers, in-house counsel); ECF No. 100-5 (Tricia Kennedy, in-house counsel). The four non-lawyer recipients held or currently hold positions at APA. *See* ECF No. 100-6 (Nick Silva, current president); ECF No. 100-7 (Edward Sicher, former president); ECF No. 100-8 (Tom Rempfer, former committee chair); ECF No. 100-9 (Jay Wilhelm, current Miami base chair).[2]

At the time Plaintiff served the subpoenas, the deadline to complete discovery was November 1, 2025, *see* ECF No. 74, although a joint motion to extend the deadline was pending before the Court, *see* ECF No. 89. APA had served written discovery requests on Plaintiff on August 8, 2025, but despite the pending deadline, at the time he served the third-party subpoenas, Plaintiff had not served any discovery requests on APA itself.

APA filed a motion for a protective order on October 10, 2025. ECF No. 100. The motion sought to limit discovery to events related to the claims alleged in the Amended Complaint by way of a temporal limit on Plaintiff's discovery. *Id.* at 8-10. The motion also sought to foreclose Plaintiff from using third-party subpoenas to obtain APA's privileged information. *Id.* at 10-12. The motion further sought to foreclose Plaintiff from improperly using Rule 45 subpoenas to

---

[2] Plaintiff suggests (ECF No. 149, at 17-18) that he also served a subpoena on former APA President Dan Carey and that the Magistrate Judge quashed the subpoena. APA has never received notice of a subpoena to Dan Carey, and the Magistrate Judge did not consider—let alone quash— a subpoena to Dan Carey. *See* ECF No. 138, at 3.

circumvent the procedures for party discovery, including the procedures for requesting the production of documents under Federal Rules of Civil Procedure 34. *Id.* at 12-13.

While APA's motion for a protective order was pending, Plaintiff sought the disqualification of Joshua Shiffrin—an attorney at Bredhoff & Kaiser, PLLC, and APA's lead counsel in this matter—and the Bredhoff & Kaiser firm. ECF No. 103, at 13-15; ECF No. 109.[3] On October 27, 2025, the day before the hearing with Magistrate Judge Reid on APA's motion for a protective order, Plaintiff—with no prior notice—served subpoenas for documents and deposition testimony on two attorneys at Bredhoff & Kaiser who represent APA in this matter, Mr. Shiffrin and Grace Rybak. The subpoenas sought discovery for Plaintiff's disqualification motion.

After the hearing on October 28, *see* ECF No. 125 (hearing transcript), Magistrate Judge Reid granted APA's motion for a protective order. ECF No. 138. First, the court concluded (*id.* at 6-7) that the subpoenas constituted an improper use of Rule 45 because Plaintiff sought to use the subpoenas—before he had propounded any discovery on APA itself—to obtain documents that he could have requested from APA by making proper discovery requests under Federal Rule of Civil Procedure 34. Second, the court ruled that "the six subpoenas to the attorneys are quashed." *Id.* at 11.[4] The court concluded (*id.* at 7-11) that the subpoenas to APA attorneys sought information likely protected by attorney-client privilege and Plaintiff had not shown that deposing the lawyers "is the only practical means of obtaining the information sought—especially considering that Plaintiff had not propounded any discovery requests on Defendant when the subpoenas were

---

[3] Following a playbook he has employed in other litigation, see ECF No. 154, at 12, Plaintiff has filed an array of vexatious motions seeking disqualification of Bredhoff & Kaiser and attorneys at the firm, as well as sanctions against those attorneys. Those motions are all fully briefed. *See* ECF Nos. 103, 109, 110, 120, 132, 142, 144, 148, 152, 154, 155, 156. As we have explained in our filings, Plaintiff's motions are all baseless.

[4] That directive quashed the subpoenas to Sue Edwards, James Clark, Mark Myers, Tricia Kennedy, Joshua Shiffrin, and Grace Rybak.

served." *Id.* at 10; *see id.* at 7-11. Third, the court limited Plaintiff's discovery to the period before 2022, concluding that "limiting post-Amended Complaint discovery to the years of 2018 to 2021 is reasonable and proportional to the needs of the case." *Id.* at 13.

On October 14, 2025, while APA's motion for a protective order was pending, this Court granted in part the joint motion to extend the discovery deadline. ECF No. 105. The Court extended discovery by three months, to February 1, 2026, and stated that "no further extension of times related to the scheduling order shall be granted, absent exceptional circumstances." *Id.* Plaintiff subsequently served interrogatories and requests for documents on APA, and APA is in the process of producing voluminous documents in response to those requests. Plaintiff has also noticed a deposition of APA pursuant to Federal Rule of Civil Procedure 30(b)(6), and APA has informed Plaintiff that Mark Myers (one of the individuals previously subpoenaed by Plaintiff) will testify on APA's behalf. APA has informed Plaintiff that during the deposition it will make Mr. Myers available to testify in his personal capacity regarding non-privileged matters as well.

Plaintiff now objects to Magistrate Judge Reid's protective order and seeks to expand the scope of discovery delineated in the order. Plaintiff largely objects on two grounds. First, Plaintiff contends (ECF No. 149, at 9-12, 16-18) that events between 2022 and 2025 are relevant and central to the claims alleged in his 2018 Amended Complaint and therefore the court abused its discretion in imposing a temporal restriction on discovery. Second, Plaintiff asserts (*id.* at 12-14, 15-16) that the court erred in quashing the subpoenas to APA attorneys because those subpoenas do not seek privileged communications.

**LEGAL STANDARD**

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The factors relevant to proportionality are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1)(A). These provisions give courts "wide discretion" to set "reasonable limits on discovery based on the common-sense concept of proportionality." *Subsea Marine Servs., Inc. v. Sint Maarten Int'l Telecomms. Servs., Inc.*, No. 24-CV-14016, 2024 WL 4881085, at *1 (S.D. Fla. Oct. 30, 2024) (quoting *In re Takata Airbag Prods. Liab. Litig.*, No. 14-CV-24009, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016)).

Limitations placed on discovery by a district court are reviewed on appeal "only for abuse of discretion." *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991). "The trial court . . . has wide discretion in setting the limits of discovery, and its decisions will not be reversed unless a clearly erroneous principle of law is applied, or no evidence rationally supports the decision." *Id.* Limitations on discovery imposed by a magistrate judge are likewise reviewed for an abuse of discretion when a district court reviews objections to those limitations under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(A). A district court judge must affirm a magistrate judge's non-dispositive discovery ruling unless "it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* Fed. R. Civ. P. 72(a). This is "an extremely deferential standard of review." *Kxuber v. Berkshire Life Ins. Co. of Am.*, No. 19-

6

CV-80211, 2019 WL 8275156, at *1 (S.D. Fla. Oct. 11, 2019); *accord Sec. & Exch. Comm'n v. Charnas*, 717 F. Supp. 3d 1233, 1238 (S.D. Fla. 2024)*; Jakab v. Arch Specialty Ins. Co.*, No. 23-CV-61624, 2024 WL 3100133, at *1 (S.D. Fla. June 24, 2024)*; Gaudet & Co., Inc. v. ACE Fire Underwriters Ins. Co.*, No. 21-CV-00372, 2024 WL 171697, at *1 (S.D. Ala. Jan. 16, 2024). "[M]agistrate judges enjoy extremely broad discretion in controlling discovery." *Zamber v. Am. Airlines, Inc.*, No. 16-CV-23901, 2017 WL 5202748, at *5 (S.D. Fla. Feb. 17, 2017); *see Runton by & through Adult Advoc. & Representation v. Brookdale Senior Living, Inc.*, No. 17-CV-60664, 2018 WL 1083493, at *4 (S.D. Fla. Feb. 27, 2018).

## ARGUMENT

The protective order was a proper exercise of Magistrate Judge Reid's discretion. The subpoenas noticed by Plaintiff were overbroad, burdensome, and improper. They sought large swaths of evidence that were irrelevant to the claims alleged in the Amended Complaint, privileged, and disproportionate to the needs of the case. Plaintiff identifies no factual or legal errors in Magistrate Judge Reid's ruling, let alone clear errors that would permit the Court to set aside or modify the discovery ruling.

I.     **The Magistrate Judge Did Not Abuse Her Discretion by Imposing a Temporal Limit on Plaintiff's Discovery**

Under Federal Rule of Civil Procedure 26, discovery is to be limited to matters "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While courts have construed the term "relevant" broadly, "the scope of discovery . . . is not without limits." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla. 2005). A court "has the authority to confine discovery to the claims and defenses asserted in the pleadings," and a party has "no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334,

7

355 (11th Cir. 2012) (quoting advisory committee notes to 2000 amendments to Fed. R. Civ. P. 26). A party accordingly has "standing to move for a protective order if . . . subpoenas seek irrelevant information beyond the permissible scope of discovery." *Continuum on S. Beach Condo. v. QBE Ins. Corp.*, 338 F.R.D. 668, 670 (S.D. Fla. 2021). Moreover, "in addition to relevance, the Court must also consider 'the proportionality of the discovery requested to the needs of the case.'" *Matter of in re Skanska USA Civ. Se. Inc.*, No. 20-CV-05980, 2021 WL 2515645, at *3 (N.D. Fla. June 19, 2021) (quoting Fed. R. Civ. P. 26(b)). Discovery with "minimal potential relevance" may not be "proportional to the needs of the case." *Id.* (quoting *TMH Med. Servs., LLC v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 17-CV-920, 2018 WL 6620880, at *1 (M.D. Fla. May 1, 2018)). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Polycarpe v. Seterus, Inc.*, No. 16-CV-1606, 2017 WL 2257571, at *4 (M.D. Fla. May 23, 2017) (citations omitted). "When discovery does not relate to the actual issues in the case, then it does not meet the relevance and proportionality requirements." *Runton*, 2018 WL 1083493, at *6.

Magistrate Judge Reid acted well within here discretion in concluding that "limiting post-Amended Complaint discovery to the years of 2018 to 2021 is reasonable and proportional to the needs of the case." ECF No. 138, at 13. The Amended Complaint only alleges facts that occurred before October 16, 2018, and it asserts claims, based on those alleged facts, that APA breached its duty of fair representation toward Plaintiff, breached its contractual obligations toward Plaintiff, and retaliated against Plaintiff. *See* ECF No. 35 ¶¶ 219-353. Events that took place between 2022 and 2025, years after the Amended Complaint was filed, are not relevant or proportional to the claims alleged in the Amended Complaint and instead could only be relevant to new claims based

on new facts and new legal theories. As the court concluded, witnesses with knowledge only of facts between 2022 and 2025 "would not have first-hand evidence relevant to [Plaintiff's] claims." ECF No. 138, at 13. Moreover, even assuming facts between 2022 and 2025 might have some marginal relevance to the claims in the alleged complaint, Plaintiff's wide-ranging requests for documents from the period are not "proportional to the needs of the case." ECF No. 138, at 13. Although Plaintiff contends (ECF No. 149, at 16) that the APA officers and committee members he subpoenaed—Nick Silva (ECF No. 100-6), Edward Sicher (ECF No. 100-7), Tom Rempfer (ECF No. 100-8), and Jay Wilhelm (ECF No. 100-9)—are "indispensable fact witnesses," the subpoenas to those witnesses sought discovery exclusively about events that took place between 2022 and the present and that are not the subject of any allegations in the Amended Complaint.

Plaintiff contends (ECF No. 149, at 9-11) that events between 2022 to 2025 are relevant to the retaliation and duty-of-fair-representation claims asserted in the Amended Complaint in three respects. Although we address each of his arguments in turn below, in all, Plaintiff's arguments merely confirm that he seeks discovery about new claims based on new legal theories that are not pled in the Amended Complaint. Indeed, Plaintiff has belatedly filed a motion to supplement the Amended Complaint with allegations and new claims regarding events extending through 2025. ECF No. 121. For the reasons set out in APA's opposition to that motion, the proposed supplemental pleading is untimely, futile, and prejudicial at this late stage in the discovery process. ECF No. 141. For purposes of Plaintiff's objections to the protective order, however, the operative pleading is the Amended Complaint filed in 2018—as Magistrate Judge Reid recognized in the protective order.

First, Plaintiff claims (ECF No. 149, at 9-10) that in 2024, after he refused to drop this lawsuit, APA retaliated against him by withdrawing an offer to pay for a lawyer to represent him

in a discrimination lawsuit he filed against American in 2024. These allegations are not relevant to any retaliation claims alleged in the Amended Complaint, which are predicated on allegedly protected activity and retaliatory acts that took place before October 16, 2018. Plaintiff instead seeks to establish a new retaliation claim based on different allegations of new retaliatory conduct (withdrawing an offer to pay for a lawyer) and new protected activity (maintaining a lawsuit), both of which took place in 2024, several years after the Amended Complaint was filed. Any retaliation offense based on that conduct would have "accrue[d] when the retaliatory action occur[ed]" in 2024, *Rassier v. Sanner*, 996 F.3d 832, 837 (8th Cir. 2021), and would not be relevant to the separate pre-2018 retaliation claims alleged in the Amended Complaint.

Second, Plaintiff claims (ECF No. 149, at 10-11) that APA breached the duty of fair representation it owed to him when it settled Grievance 23-031 in January 2025. As APA has explained in other filings, there are no allegations regarding Grievance 23-031 (which was filed in 2023) in Plaintiff's Amended Complaint (which was filed in 2018). *See* ECF No. 100, at 9; ECF No. 141, at 7-8, 15-16; ECF No. 154, at 8-9. Although Grievance 23-031 was a successor to a grievance that is at issue in the Amended Complaint (Grievance 12-012), Plaintiff appears to seek to assert a new theory of liability based on Grievance 23-031 that is not stated in the Amended Complaint—that is, he wants to challenge the manner in which APA resolved Grievance 23-031, rather than the timing of APA's handling of Grievance 12-012, which is what is alleged in the Amended Complaint. *See* ECF No. 112, at 4-5; ECF No. 141, at 15-16. The facts about the settlement of Grievance 23-031 in January 2025 are not relevant or proportional to Plaintiff's claim about Grievance 12-012 in the Amended Complaint.

Third, Plaintiff claims (ECF No. 149, at 11) that in May 2025, after he reopened this case, APA retaliated against him by sending him a letter informing him that he was not a member of

10

APA in good standing. Again, these allegations are not relevant to any retaliation claim alleged in the Amended Complaint and instead could only be relevant to a new alleged retaliation claim based on conduct that occurred entirely in 2025, years after the Amended Complaint was filed.

Plaintiff attempts (ECF No. 149, at 9-11, 16-18) to connect these three new claims to the claims alleged in the Amended Complaint by characterizing the retaliation and duty-of-fair-representation claims in his Amended Complaint as "continuing violations." None of Plaintiff's claims in the Amended Complaint plead a "continuing violations" theory—nor could they. Under the continuing violations doctrine, when a statute creates a cause of action that is "composed of a series of separate acts that collectively constitute one" statutory violation, such as a hostile-work-environment claim under Title VII, a claim alleging a violation of the statue is timely filed if "an act contributing to the claim occurs within the filing period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Plaintiff does not cite any decision that has applied the doctrine to determine whether post-complaint events are related to a claim alleged in the complaint, but regardless, even assuming the doctrine applies in that context, Plaintiff's reliance on the continuing violations doctrine is unavailing. *See also* ECF No. 141, at 11-13, 17 (explaining why proposed supplemental claims are distinct from currently operative claims).

The retaliation and duty-of-representation claims pleaded in the Amended Complaint are not pleaded as continuing violations, and the causes of action at issue are not capable of being pleaded as continuing violations. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 114 (concluding that each incident of retaliatory conduct was separately actionable under Title VII); *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1001 (6th Cir. 1994) (concluding that a duty-of-fair-representation claim based on an alleged failure to file or follow up on a member's grievance is not a continuing violation); *see also Hamic v. Harris Cnty. W.C. & I.D. No. 36*, 184 F. App'x 442,

447 (5th Cir. 2006) (concluding that a retaliation claim is not a continuing violation). By their nature, the retaliation and duty-of-representation claims in the Amended Complaint are discrete claims that accrued well before Plaintiff filed his Amended Complaint. *See Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 887 (11th Cir. 1985) (a duty-of-fair-representation claim accrues when the member "knows or should know of his union's breach of its duty to represent him"); *Rassier*, 996 F.3d at 837 ("Retaliation claims generally accrue when the retaliatory action occurs . . . ."). Thus, even if it had been pleaded in the Amended Complaint, the continuing violations doctrine does not provide a basis for Plaintiff to seek discovery between 2022 and 2025.

In addition to his argument about continuing violations, Plaintiff contends (ECF No. 149, at 11-12) that the district court abused its discretion by imposing a temporal limitation on Plaintiff's discovery while permitting APA to obtain discovery through the present. According to Plaintiff, "[t]his one-sided structure is fundamentally unfair and violates the principle of reciprocal discovery." ECF No. 149, at 11. But as Magistrate Judge Reid explained, Plaintiff is seeking damages up until the present and therefore APA is entitled to discovery relevant to Plaintiffs' damages through the present. ECF No. 125, at 62-63, *see id.* at 48-49, 55-56.

Plaintiff also suggests (ECF No. 149, at 18) that the court's temporal limitation "constitutes a manifest injustice" because APA identified Ed Sicher as a potential witness in its initial disclosures and therefore APA cannot claim that deposing Mr. Sicher "is unduly burdensome or irrelevant." But APA listed Sicher as a potential witness because he is "likely to have information about efforts by APA to resolve grievances 12-011 and 12-012 and allegations pertaining to him in the First Amended Complaint." ECF No. 149, at 26. As Magistrate Judge Reid explained, although Mr. Sicher "worked for [APA] from 2014 to 2022 as a union representative, Plaintiff is seeking to depose him about his role as [APA's] President, which he served as from 2022 to 2024." ECF No.

138, at 13. APA has not opposed Plaintiff from seeking deposition testimony by Mr. Sicher about events that are encompassed within the allegations of the Amended Complaint, but Plaintiff has not sought to depose Mr. Sicher about those events.

*　　　*　　　*

The Magistrate Judge appropriately foreclosed Plaintiff from subjecting witnesses to wholesale discovery regarding facts and theories that are not relevant to the claims as they are currently pleaded in the Amended Complaint. The protective order avoids burdensome, overbroad discovery to the witnesses, as well as unfairness to APA, which is entitled to notice of the claims and allegations that are at issue in this litigation. The Magistrate Judge acted well within her broad discretion to control and manage discovery in imposing a temporal limit on Plaintiff's discovery.

**II.     The Magistrate Judge Did Not Abuse Her Discretion by Quashing the Subpoenas to APA's Lawyers.**

Courts closely scrutinize requests for discovery from a party's attorney. *See, e.g.*, *W. Peninsular Title Co. v. Palm Beach Cnty.*, 132 F.R.D. 301, 302 (S.D. Fla. 1990); *Wilcox v. La Pensee Condo. Ass'n, Inc.*, 603 F. Supp. 3d 1291, 1293 (S.D. Fla. 2022). A deposition of a party's attorney threatens the attorney-client relationship and raises the potential for harassment, disruption, delay, and added litigation costs. *W. Peninsular Title Co.*, 132 F.R.D. at 302. As a result, when determining whether to permit a deposition of a party's attorney, courts consider whether the information sought is likely to be privileged, whether the party seeking the deposition has shown a need for the information, whether the information is available through other means, and whether the party's need for the information outweighs the dangers of deposing a party's attorney. *Id.* at 302-03.

Magistrate Judge Reid acted well within her discretion in weighing these considerations here and concluding that permitting discovery from APA's attorneys pursuant to the subpoenas

13

noticed by Plaintiff was not justified. Reviewing the document requests in the subpoenas, the court concluded that the "subpoenas served on the attorneys seek information likely protected by attorney-client privilege." ECF No. 138, at 9. And "especially considering that Plaintiff had not propounded any discovery requests on Defendant when the subpoenas were served," the court reasonably concluded that Plaintiff had not shown that deposing APA's attorneys "is the only practical means of obtaining the information sought." ECF No. 138, at 10.[5]

Plaintiff contends (ECF No. 149, at 15) that Magistrate Judge Reid erroneously applied a "rule" adopted by the Eighth Circuit. But the court did not apply a rigid rule and instead weighed multiple factors to guide the exercise of discretion. Although "[t]he Eleventh Circuit has not adopted" a particular approach for "evaluating lawyer depositions," *Bank of Am., N.A. v. Ga. Farm Bureau Mut. Ins. Co.*, No. 12-CV-155, 2014 WL 4851853, at *3 (M.D. Ga. Sept. 29, 2014), the approach taken by the court here is well in line with how other courts within the Eleventh Circuit have considered whether to permit discovery from a party's attorney, including former counsel, *see, e.g.*, *Shenzhen Kinwong Elec. Co. v. Kukreja*, No. 18-CV-61550, 2019 WL 8298217, at *3 (S.D. Fla. Dec. 12, 2019), and in-house counsel, *see, e.g.*, *Stull v. Suntrust Bank*, No. 09-CV-82302, 2011 WL 13224911, at *3 (S.D. Fla. Jan. 20, 2011). Magistrate Judge Reid's exercise of discretion in this case was not clearly erroneous or contrary to law. *See, e.g.*, *Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-80521, 2007 WL 4592267, at *1 (S.D. Fla. Dec. 28, 2007) ("The mere fact that a reviewing court might have decided the issue differently is not sufficient to overturn a decision when there are two permissible views of the issue.").

---

[5] The court also quashed the subpoenas to Mr. Shiffrin and Ms. Rybak. ECF No. 138, at 10. Plaintiff does not object to that ruling.

14

Plaintiff also argues (ECF No. 149, at 12-14) that the district court abused its discretion because the subpoenas to APA's lawyers did not seek information protected by the attorney-client privilege. Plaintiff contends for the first time that he was entitled to the information requested in the subpoenas under the "*Garner* doctrine," *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994) (citing *Garner v. Wolfinbarger*, 430 F.2d 1093, 1101 (5th Cir.1970)), and he further claims that documents requested in the subpoenas is discoverable under the crime-fraud exception to the attorney-client privilege. A district court typically should "not consider new arguments, evidence, or case law that could have been but were not presented to the magistrate judge." *Fed. Trade Comm'n v. Vylah Tec, LLC*, No. 17-CV-228, 2019 WL 8348950, at *3 (M.D. Fla. Aug. 2, 2019); *see In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 403-04 (S.D.N.Y. 2020) (explaining that "[n]ew arguments and factual assertions cannot properly be raised for the first time in objections to [a magistrate's discovery order]"). For that reason alone, Plaintiff's new arguments should be rejected. Regardless, even if they were properly raised, these new arguments lack merit.

First, Plaintiff fails to demonstrate that he is entitled to otherwise privileged communications under the *Garner* doctrine. The *Garner* doctrine is a limited exception to the attorney-client privilege, which allows for the discovery of privilege communications in certain shareholder derivative-type actions. In *Cox*, the Eleventh Circuit declined to decide whether *Garner* extends to disputes between a union and its members, 17 F.3d at 1415, and we are not aware of any court in this Circuit that has applied the doctrine to such a dispute. In any event, "[e]ven assuming the *Garner* doctrine applies to unions," Plaintiff fails to show that discovery of the attorney-client communications should be allowed on the facts of this case. *Id.* As an initial matter, Plaintiff, as a former member of APA, cannot invoke *Garner*. *See Weil v. Inv./Indicators,*

15

*Rsch. & Mgmt., Inc.*, 647 F.2d 18, 23 (9th Cir. 1981) (concluding that *Garner* was "inapposite" because, among other things, the plaintiff was "not currently a shareholder"). Even under *Garner*, it would be Plaintiff's burden to show good cause why he should have access to APA's privileged communications. *Cox*, 17 F.3d at 1414. Plaintiff has not attempted to establish good cause, nor could he if he tried. Among other things, Plaintiff brings this lawsuit for himself alone and not on behalf of APA's membership as a whole, as would be the case in a shareholder derivative type action. *See id.* at 1415-16. In addition, "the present case seek[s] damages not on behalf of the Union, but for [Plaintiff's] personal benefit at the expense of the Union and its other members." *Id.* at 1416.

Second, Plaintiff does not demonstrate that the Magistrate Judge clearly erred in rejecting application of the crime-fraud exception. A party invoking the crime-fraud exception must (1) make a prima facie showing that the client engaged in or planned to engage in criminal or fraudulent conduct when seeking the advice of counsel, and (2) show that "the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *In re Grand Jury Subpoena*, 2 F.4th 1339, 1345 (11th Cir. 2021) (quotation marks omitted). As the Magistrate Judge concluded, "Plaintiff has failed to produce any evidence showing [APA] has engaged in criminal or fraudulent conduct when it sought the advice of counsel," nor has he "shown evidence of how [APA's] communications with its counsels regarding this case furthered or were closely related to an effort to commit a crime or fraud." ECF No. 138, at 11.

Plaintiff does not contend that the client (APA) committed a crime but instead suggests (ECF No. 149, at 13-14) that APA's counsel in this litigation (Joshua Shiffrin) allegedly committed a crime (apparently in October 2025) that could support application of the crime-fraud exception. Even assuming that alleged criminality by a lawyer could "forfeit the privilege of an innocent

16

client," *In re Grand Jury Proc.*, 417 F.3d 18, 23 n.5 (1st Cir. 2005), Plaintiff's allegations against Mr. Shiffrin are entirely meritless and baseless, *see* ECF No. 112, at 11-18, and Plaintiff thus fails to make a prima facie showing of criminal or fraudulent conduct. Moreover, Plaintiff does not—and cannot—plausibly contend that APA's privileged communications sought in his subpoenas to APA attorneys furthered or related to the alleged criminal conduct by Mr. Shiffrin in October 2025. *See In re Grand Jury Subpoena*, 2 F.4th at 1345 (explaining that the proponent of the crime-fraud exception must show that "the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it") (quotation marks omitted). Plaintiff's attempt to invoke the crime-fraud exception is baseless.

Finally, Plaintiff contends (ECF No. 149, at 18) that it was improper to quash the subpoenas to APA attorneys Jim Clark and Mark Myers because APA identified them as potential witnesses in its initial disclosures. The subpoenas to Mr. Clark and Mr. Myers were overbroad, burdensome, and improper. The subpoenas called for privileged information, as well as evidence that Plaintiff could have—and should—sought from APA via Federal Rule of Civil Procedure 34. The Magistrate Judge properly quashed the subpoenas. APA nonetheless recognizes that deposition testimony from Mr. Clark and Mr. Myers may be appropriate within proper boundaries. APA has already informed Plaintiff that when Mr. Myers is deposed in his capacity as a representative of APA under Federal Rule of Civil Procedure 30(b), APA will make Mr. Myers available to testify in his personal capacity regarding non-privileged matters as well.

\* \* \*

Magistrate Judge Reid correctly quashed the Rule 45 subpoenas to APA's lawyers. Those subpoenas were overbroad, vague, and burdensome. Plaintiff now may properly seek discovery from APA through the appropriate channels under Federal Rules of Civil Procedure 30 and 34, a

process that is already underway pursuant to Plaintiff's October 31 discovery requests and November 17 deposition notice. Magistrate Judge Reid acted well within her discretion to control and manage discovery. Plaintiff's objections have no merit.

### III.    Plaintiff's Remaining Arguments Are Unavailing

1.    Adverting to the fruit-of-the-poisonous-tree doctrine under the Fourth Amendment, Plaintiff accuses APA's lawyers of an array of unethical and criminal conduct and suggests (ECF No. 149, at 1,7, 20) that the Magistrate Judge's protective order is the poisoned "fruit" of that misconduct. As explained elsewhere, Plaintiff's claims of misconduct by APA's lawyers are meritless and vexatious. *See* ECF Nos. 113, 132, 152, 154. Rhetoric aside, Plaintiff fails to identify erroneous factual findings or legal conclusions in the protective order, let alone link such error to any alleged misconduct. Plaintiff's vague reliance on the fruits doctrine is unavailing.

2.    Plaintiff suggests (ECF No. 149, at 14-15, 17) that APA instructed APA director Jay Wilhelm to cease communicating with Plaintiff, and he argues that this alleged instruction was a breach of APA's duty of fair representation. Plaintiff fails to connect these assertions to the protective order or otherwise explain their relevance to his objections to the protective order. The arguments should also be disregarded because Plaintiff did not raise them before the Magistrate Judge and cannot raise them for the first time here. *See supra* p. 15.

3.    Plaintiff contends (ECF No. 149, at 18-20) that Magistrate Judge Reid abused her discretion because he and other litigants have obtained discovery from APA's lawyers and officers in other legal proceedings. The scope of discovery in prior proceedings does not determine the proper scope of discovery in this case, which must be connected to the particular facts and circumstances of this case, including the unique allegations and claims in Plaintiff's Amended Complaint.

18

## CONCLUSION

For the foregoing reasons, APA respectfully requests that the Court uphold the Magistrate

Judge's protective order in its entirety.

Respectfully submitted,

*/s/ Andrew Dymowski*
Andrew Dymowksi, Esq.
Florida Bar No.1058209
Capri Trigo, Esq.
Florida Bar No. 28564
GORDON REES SCULLY MANSUKHANI
Miami Tower
100 S.E. Second Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428-5309
Email: ctrigo@grsm.com

*/s/ Joshua B. Shiffrin*
Joshua B. Shiffrin*
John M. Pellettieri*
Grace Rybak*
BREDHOFF & KAISER PLLC
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
Email: jshiffrin@bredhoff.com
Email: jpellettieri@bredhoff.com
Email: grybak@bredhoff.com
*Admitted *Pro Hac Vice*

*Counsel for Defendant Allied Pilots Association*

Dated: December 15, 2025