UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 17-22589-ARTAU


LAWRENCE MEADOWS,                        Miami, Florida

              Plaintiff,                 January 7, 2026

        vs.                              2:16 p.m.

ALLIED PILOTS ASSOCIATION,
et al.,

              Defendants.                Pages 1 to 142
_____


DISCOVERY HEARING
(TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)
BEFORE THE HONORABLE LISETTE M. REID,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:


FOR THE PLAINTIFF:          LAWRENCE MEADOWS
                            (Appearing *Pro Se*)
                            1900 Sunset Harbour Drive
                            Unit 2112
                            Miami Beach, Florida 33139


FOR THE DEFENDANTS:         JOSHUA B. SHIFFRIN, ESQ.
                            JOHN M. PELLETTIERI, ESQ.
                            GRACE RYBAK, ESQ.
                            JOSHUA B. SHIFFRIN, ESQ.
                            BREDHOFF & KAISER, PLLC
                            805 15th Street, Northwest
                            Suite 1000
                            Washington, D.C. 20005


                            ANDREW J. DYMOWSKI, ESQ.
                            CAPRI TRIGO, ESQ.
                            GORDON, REES, SCULLY & MANSUKHANI
                            100 Southeast Second Street
                            Suite 3900
                            Miami, Florida 33131

```
TRANSCRIBED BY:          LISA EDWARDS, RDR, CRR
                         Reporterlisaedwards@gmail.com
                         (305) 439-7168
```

THE COURT:  Good afternoon, everyone.  Sorry about that short delay.  The morning went longer than we expected it in terms of hearings.

Okay.  So we are here for Case No. 17-22589.  Let's start with appearances.

Mr. Meadows is present.  Correct?

THE PLAINTIFF:  (No audible response.)

THE COURT:  Oh, you're on mute.

THE PLAINTIFF:  I'm sorry, your Honor.  Good afternoon. Lawrence Meadows appearing on behalf of myself, *pro se.*

THE COURT:  Okay.  Who else is present?

MR. SHIFFRIN:  Good afternoon, your Honor.  This is Joshua Shiffrin from the law firm of Bredhoff & Kaiser on behalf of Allied Pilots Association.  With me in the room are Grace Rybak and John Pellettieri, who's not on camera.  And I see that our local counsel, Drew Dymowski, is here as well.

MR. DYMOSKI:  Good afternoon, your Honor.

THE COURT:  All right.  And I have my interns here on the Zoom and my law clerk, Ms. Rocio Iglesias-Gonzalez.  All right.

Mr. Meadows, I see you have a number of issues to address.  And one of them is the concerns you had with the deposition and setting the time for the 30(b)(6) deposition. Correct?

THE PLAINTIFF:  I thought that -- well, that matter is

before Judge Artau now on objection.  But I did have an issue of that.  And I thought it was prejudicial because it was so close to the cutoff.

THE COURT:  When was the cutoff?

THE PLAINTIFF:  February 1st.

THE COURT:  Okay.

THE PLAINTIFF:  So it allowed no time for follow-on discovery.

THE COURT:  Okay.  So that's the discovery cutoff.  But then when is the dispositive motion deadline?

THE PLAINTIFF:  Currently --

MR. SHIFFRIN:  February 20th, your Honor.

THE COURT:  February 20th.  Okay.  Because -- and I believe that Judge Artau's order allows for this.  Most of the district judge's orders, although they may have a discovery cutoff, if by agreement of the parties they want to continue discovery for a week or two beyond that, generally that is permitted.

THE PLAINTIFF:  Mr. Shifrin has continually refused to go beyond February 1st.

THE COURT:  I see.  Okay.

THE PLAINTIFF:  That was my concern.

THE COURT:  That's another topic.

So let me take a look at the judge's order, scheduling order.

THE PLAINTIFF: That's another problem, your Honor. We're not really under a scheduling order. The order we're under is Judge Moore's order from May, which Judge Artau extended three months after the joint scheduling order, which never got approved.

THE COURT: Oh, so we don't have --

THE PLAINTIFF: No. No, we do not.

THE COURT: -- a scheduling order. So when you tell me that the deadline for dispositive motions is February 20th, what order are you getting that from?

THE PLAINTIFF: Well, that would be Judge Moore's order plus three months. And I think if you calculate it off the not-yet-approved joint motion before Judge Artau, it would be, I think, a day later, maybe.

THE COURT: Okay.

THE PLAINTIFF: It's a variation of a day or two on the different --

THE COURT: So there is no such deadline at this point, really.

Okay. Rocio, can you direct me to where I look on the docket to figure out the deadlines?

THE PLAINTIFF: Judge Moore's order was ECF No. 74, your Honor. And I think the fact discovery, 100 days before trial.

THE COURT: But where are the -- where's the more

recent order by Judge Artau?

THE PLAINTIFF:  That would be October -- let me find it for you -- and he just extended the -- all deadlines three months.  Then he asked for a joint scheduling order, which was never -- if we submitted, and it was never ruled on.

THE COURT:  Okay.  So let me see if I can find all of that.

THE LAW CLERK:  The motion is ECF -- the order is ECF 97.

THE COURT:  Okay.  97.  Let's start with that.

THE PLAINTIFF:  Then the order ECF 105 is Judge Artau's paperless order approving the extension.

THE COURT:  Okay.  So 97 is an order granting motion for extension of time to file a response or answers to the amended complaint.  Okay.  And there's a pending joint motion to extend the discovery deadline.  So that's a joint motion.

THE LAW CLERK:  And then 105 is the order extending the deadlines for discovery and pretrial.

THE COURT:  Okay.  Defendant shall consult with the Plaintiff and shall apply a scheduling order resetting -- okay.  Setting all the deadlines in a manner consistent with this three-month extension of time.  The Court also notes that this case has been pending since 2017 and orders no further extension of time to be granted after that.

So the parties were to file a proposed scheduling

order.  And where do I find that?  Where is the proposed scheduling order filed by the parties?

Mr. Shiffrin, if you know.

MR. SHIFFRIN:  Ma'am, we -- I'm trying to find the correct docket.

THE PLAINTIFF:  It's ECF No. 108, your Honor.

THE COURT:  Notice of filing joint proposed scheduling order.  Okay.

MR. SHIFFRIN:  Yeah.  And I believe it was then -- the order itself was emailed -- the proposed order itself was emailed to Judge Artau's chambers for -- for that practice.

THE COURT:  Okay.  So let's see what you -- oh, so basically, this is just a joint submission, and it's not attached.

MR. SHIFFRIN:  Correct, your Honor.  We could, I think, pretty quickly get it to you, though.

THE COURT:  Okay.  So, Mr. Shiffrin, if you could tell me what your understanding is of the discovery cutoff --

MR. SHIFFRIN:  Yes.

THE COURT:  -- and the deadline for filing motions.

MR. SHIFFRIN:  My understanding is the discovery cutoff -- I mean, the discovery cutoff comes straight from Judge Artau's order.  It's February 1st.  And he said that he won't issue further extensions, as you read, without -- absent extraordinary circumstances.

And then adding three months to all of the other dates that were in the prior scheduling order, the deadline for dispositive motions is February 20th. And that's what we've been working with.

THE COURT: Okay. So you agree that it is February 20th as well?

MR. SHIFFRIN: Yes.

THE COURT: Okay. But that scheduling order -- but that you have submitted to the judge --

MR. SHIFFRIN: It was never entered as an order.

THE COURT: Right. But it did say February 1st is the deadline?

MR. SHIFFRIN: February 1st, I believe, comes from -- I apologize while I find it --

THE COURT: Oh, from the order.

MR. SHIFFRIN: From the order that actually was entered. And that order said: Please submit --

THE COURT: [Indiscernible.]

MR. SHIFFRIN: Yeah. Exactly.

THE COURT: That was back in October?

MR. SHIFFRIN: Yeah.

THE COURT: But then in seven days, the Court shall consult and file a proposed scheduling order resetting all deadlines in a manner consistent with this three-month extension of time.

MR. SHIFFRIN:  Correct.

THE COURT:  I understand.  Okay.

THE PLAINTIFF:  Your Honor, I'm looking at ECF 105.  There's no -- it does not state the fact cutoff is February 1st.  I think that comes from -- it was October 1st with -- I'm sorry -- November 1st with Judge Moore's order.  So the assumption is we're adding three months to that as of right now.  It's the only scheduling order that's been approved, is Judge Moore's order from May 18th, which I think is ECF No. 74.  That's the only active scheduling order.

THE COURT:  Oh, it's a bit confusing.  And we just need to make sure that --

THE PLAINTIFF:  Sure.

THE COURT:  -- we all agree as to what it is.

But as I said, generally, when a scheduling order is entered, the parties can by agreement continue their discovery beyond that date.

But you're saying, Mr. Shiffrin, that there's no agreement at this point?

MR. SHIFFRIN:  Well, Mr. Meadows characterized my position.  Let me be clear about what it is.  He's asked to extend the period for discovery.  In light of Judge Artau's order, I think that's not likely to happen.  And I don't see that it's necessary.

Mr. Meadows served discovery requests late in this

case.  We've done -- well, I'm sure we'll talk about it -- our best to comply as expeditiously as we can.  I don't see a reason to extend discovery beyond what Judge Artau has said will be the final date for discovery.

Judge, Mr. Meadows has not asked for, you know, despite that cutoff, for certain discovery events to take place after February 1st.  He hasn't said, for example, I'd like to take this deposition or that deposition.  Instead, we've had a dispute, which your Honor resolved, about when depositions would be scheduled.  And he made arguments related to that.

But, you know, I believe the deposition schedule is now set.

THE COURT:  Okay.  So the deposition for the 30(b)(6) will be on January 21st.

MR. SHIFFRIN:  Correct.

THE COURT:  Let me ask you, Mr. Meadows, what other discovery is outstanding at this point?

THE PLAINTIFF:  Well, your Honor, if I may, I mean, this whole case is fatally flawed at this juncture.  There's no less than seven motions, and objections pending before Judge Artau.  And as a confluence of events, your original protective order is under objection, as based on what I've alleged to be material misrepresentations of fact made by Mr. Pellettieri. And I've sought sanctions for that.  That's a pending motion before Judge Artau.

So the expectation is that order is likely to be vacated or modified.

There's also a motion to supplement the pleadings filed November 4th, which has not yet been addressed, which would expand the temporal scope of discovery.

And prior to that, I mean, I have a standing objection that this matter in discovery is even moving forward -- let me just pull up my notes here -- you know --

THE COURT:  But what I'm interested in finding out is --

THE PLAINTIFF:  Well, it --

THE COURT:  -- what other depositions do you want to do?

THE PLAINTIFF:  Well, the problem is, your Honor, you've denied me every single one of my key witnesses in your protective order.  And there's been four other cases identical to mine throughout the country, two of which are in this district, and they've all been granted the exact same witnesses I have sought; but you denied those witnesses and quashed all my subpoenas.  You've also limited my temporal scope, which I think is prejudicial.

So I've objected to that.

THE COURT:  But other than the issues or the individuals that are on appeal to Judge Artau, are there other individuals that you want to depose in this case?

THE PLAINTIFF:  Well, the eight people I'd like to depose, you quashed.

THE COURT:  Okay.  So there's no one else other than those.

THE PLAINTIFF:  Well, there might be two other tertiary or secondary individuals, but I -- I don't want to waste -- I really need clarification on the motion to supplement the pleadings before -- because I'm afraid if I depose, for example --

THE COURT:  I see.

THE PLAINTIFF:  -- a witness and I'm limited to pre-'21 on temporal scope and then if the supplemental pleading is granted, then I might not get a second bite at the apple. So that's a huge concern.

And the other thing I want to address, you know, you can't ignore the fact that Mr. Shiffrin and his associate, Grace Rybak, are facing a motion to disqualify for criminal witness tampering.  And under the material witness and advocate rule, the whole firm is under a motion to disqualify for an impermissible conflict under Rule 109 and 110 for representing my former counsel.  And none of those things have been addressed.

So I do object.  I think it's highly prejudicial to be going forward in these proceedings until these issues have been addressed.  And they -- they've been fully briefed for over two

months.

THE COURT:  Okay.

THE PLAINTIFF:  So there's three ethics motions.
There's an objection to your protective order.  There's a
motion to supplement.  There's two more objections.  The
30(b)(6) has been objected to.

Mr. Shiffrin said he would not allow me to proceed with
discovery after February 1st after I deposed his 30(b)(6)
designee.  So -- and I have not sought an extension yet.  I am
concerned I need one.  Because of the confluence of all these
factors, it's possible for me -- I've been totally deprived of
due process.  And as we get into the hearing and make my
argument, you'll see they have violated every single aspect of
discovery production and they still have not produced all their
documents.

THE COURT:  Okay.

THE PLAINTIFF:  And they have not produced their expert
witness on time.  So there's a lot of issues at play here.

And I hate to say it, but they've just engaged in the
same form of prolonged delay.  They were admonished by Judge
Moore twice in ECF No. 70 and 91 for engaging in a pattern of
prolonged delay.  They failed to answer the complaint no less
than four times.  The first time we got a default judgment
against them.  And despite orders from Judge King and Judge
Moore, they didn't ever timely answer the complaint in the

14-day window.  That's why their motion to dismiss was denied as untimely.

And then we were transferred to you and Judge Artau. And this whole pattern of obstructionism and delay has continued throughout discovery.  They've been absolutely 100 percent obstructionist.  I can tell you of the five [indiscernible] pilots that have brought cases like this, I'm the only one that's been subjected to this level of delay and obstruction in discovery.  And I've been -- I have had all my witnesses struck.

Cathy Emory, another pilot situated identical to me, the exact same claims, in the Florida Southern District before Judge Hurley, has had the exact same witnesses called at trial and on depositions in her case.  And I've been deprived.  It's just really egregious to me.

THE COURT:  Okay.  I think I understand your argument. And I don't want to have you reargue those now.

THE PLAINTIFF:  Okay.  Yeah.  I did -- but I just wanted to make a point that I think we're -- the cart's getting put before the horse.  And I'm trying to do my best.

I've met all my -- unlike APA's counsel,  I've met every one of my obligations.  I've produced 65,000 documents in accordance with your order in a nine-day or eight-day window, you know, with emails from 42 individuals spanning 15 years. It was extremely burdensome.  And they were just harassing me

the entire time I was producing it. Mr. Pellettieri was writing me every day with a protective order and demanding rolling production.

Now, I've given them Tier 1 level production with RFP associated folders, keyword searchable. They have given me a tiny fraction of that. It's not keyword searchable. I can't even open the files. They're all Bates-numbered. They're not organized in the course -- and which are maintained in the usual course of business. They're in violation of Rule 34. They have not done it in accordance with the RFP. It's like a digital needle in a haystack.

THE COURT: I'm trying to follow you.

THE PLAINTIFF: And I'm going to demand they --

THE COURT: I want to follow you, but I'm trying to determine where you are on your notice of issues.

So --

THE PLAINTIFF: Well, I'm happy to go through them one by one, if you'd like me to.

THE COURT: Let's do that, so that I can follow you.

THE PLAINTIFF: Sure.

THE COURT: So No. 1 is Plaintiff's forthcoming motion to quash harassing and disproportional third-party subpoenas served by Defendant on Plaintiff's current and former employees [sic] in violation of 26(b)(1) and 45(d)(3).

THE PLAINTIFF: Yes, your Honor.

THE COURT:  So what is that one about?

THE PLAINTIFF:  Okay.  So on December 5th, they told me they wanted to subpoena my current employers and wanted granular payroll and hourly data.

And I strenuously objected to it and said I thought it was unduly burdensome and harassing.  And they weren't in my custody.  So I objected.

Then they didn't do anything with it.

Right after Christmas, on December 26th, they served those subpoenas.

I strenuously objected.  As soon as I could, on Monday, I contacted chambers on this issue, which is why this hearing was called.  And, you know, it's disproportionate to -- to the needs of the case under Rule 26(b)(1).  They have all of my tax returns and all of my W-2 and 1099s.  They have everything they need to calculate their damages offset.

So -- but I feel these subpoenas serve no purpose other than to harass me and cause reputational and professional harm.  In fact, they have.  Boeing called me and wanted to know why I was suing them when they first got notice from the service agent.

And it's a small community that I work in, the professional airline pilot instructors at Boeing for the manufacturer.  And, you know, it's just to stigmatize me like I'm suing my employer.  So there was no need for that.

And not only that.  I mean, I guess they needed it to -- they allegedly needed it to do their mitigation of damages.  But they haven't even timely produced their witness.  They violated Rule 34 and they haven't -- or Rule 26.  They haven't provided their rebuttal expert within the 30-day time clock.

THE COURT:  Okay.

THE PLAINTIFF:  And I demand --

THE COURT:  Let me make sure I understand your objection.

So first of all, your objection is proportionality.  You're saying that --

THE PLAINTIFF:  It's disproportionate.  It's unduly burdensome and harassing.  It's in violation of Rule 26(b)(1).  They already possessed the information they need in the form of my W-2s, 1099s and tax returns.

THE COURT:  Okay.  All right.

THE PLAINTIFF:  And that's definitive evidence of mitigation income.

THE COURT:  Very good.

THE PLAINTIFF:  It's also an undue burden under Rule 45.

And I would like a motion for leave to file -- I'd like leave to file a motion to quash and sanctions of striking that information from the record and [indiscernible].  The damage

has already been done with my employer, unfortunately.

THE COURT:  Okay.  So now let me go back to the Defendant and allow you to respond to that.

MR. SHIFFRIN:  Yeah.  Your Honor.  As you might imagine, we take issue with a lot of what Mr. Meadows has said in the way he both characterizes the facts about our conduct and about APA's conduct in other cases and -- so let me lay out what's actually occurred here.

Mr. Meadows has served us with an expert witness report that make -- that includes damages calculations based on the number of hours that he says he would have worked as an American Airlines pilot had he been employed by American Airlines during the period in question.

And I'll say, pilots are paid hourly.  They're not paid a set salary.  So their compensation varies with the number of hours worked.

And he's also said in papers filed with this Court that he works full-time for Atlas Airlines.  We don't think that the hours projections in his damages calculations are realistic. And so one way to rebut that would be -- was to find out the number of hours he's actually worked during this period of time.

So the reason that we're seeking the information is not for the purposes of mitigation.  We pointed this out to Mr. Meadows.  But it's for purposes of rebutting the

assumptions made in his expert's report.

THE COURT: Okay.

MR. SHIFFRIN: And that -- I appreciate the concerns about seeking information from someone's employer. And we've done our best to mitigate that concern. We first served discovery requests on Mr. Meadows for the exact information that we're seeking. We -- that was on -- we received his discovery -- excuse me. We received his expert report on December 1st. We sent out those requests to him on December 5th, I believe. And we had a followup call with him on December 11th.

In that call -- and this is reflected in the notes that me and Ms. Rybak were both present, and this is reflected in the notes that we took -- Mr. Meadows said to us, I don't have those materials. And he said, Feel free -- that's what our notes reflect -- feel free to subpoena my employers for that. And so that's what --

THE COURT: And what materials -- what materials specifically are you asking for?

MR. SHIFFRIN: We're asking for payroll records, documents to evidence the number of hours that he worked monthly.

And I'll say, today we received a response from Atlas Air with precisely that information. So I don't believe that is burdensome for them to respond. They responded within 14

days with a spreadsheet that provides information.  I've shared that with Mr. Meadows as well.

THE COURT:  So W-2 and tax returns will have his income.  And it won't say how many he worked.

MR. SHIFFRIN:  Exactly, your Honor.

THE COURT:  Okay.

MR. SHIFFRIN:  And the hours information is what -- I don't -- it's what's important to us, is the number of hours.

THE COURT:  Okay.  Because then you can compare that -- apples to apples.  You get paid hourly at American, is what you're saying.

MR. SHIFFRIN:  Exactly.  Yes.

THE COURT:  Okay.

MR. SHIFFRIN:  It's a little bit more complicated than that.  But hourly -- to say that pilots' pay is connected to the numbers of hours they actually work.

THE COURT:  Connected to the number of hours.

MR. SHIFFRIN:  Yeah.

THE COURT:  And you're saying it's your understanding that he wouldn't give you -- you couldn't get that directly from Mr. Meadows, and that's why you had to go to the employer to get it?

MR. SHIFFRIN:  Correct, your Honor.  We kept our request to the employers as narrow as possible, seeking nothing other than the hours information that Mr. Meadows told us that

he did not have.  And he said, Feel free to go get it from them.

We sent him a letter on December 16th saying that that's what we planned to do.  He didn't respond to that letter.

And then we went ahead and did that.

So I don't know what more we could have done to -- to -- and the material that we're seeking is relevant and it -- we've done our best to avoid any --

THE COURT:  Okay.

MR. SHIFFRIN:  -- harm to Mr. Meadows.  But this is information that we believe we're entitled to for purposes of this case.

THE COURT:  And I have another question with regard to how much money is at stake.  How much is he asking for in terms of damages based on last income?

MR. SHIFFRIN:  Well, depending on how you read his damages report, it's somewhere in the range of $4 million to $7 million.  We think that -- much of the damages period that he's seeking, there is no possible --

THE COURT:  So this is a substantial amount of money.  And you need to look into it and determine whether it's correct.  Okay.

MR. SHIFFRIN:  Great.

THE PLAINTIFF:  Your Honor, if I may rebut.

THE COURT:  Let me just make sure that Mr. Shiffrin is finished.

MR. SHIFFRIN:  I'm finished, your Honor.

THE COURT:  Okay.  All right.

THE PLAINTIFF:  I think Mr. Shiffrin is being disingenuous.  At American, I'd be under the collective bargaining agreement.  And he's objecting to the fact that the expert's using the maximum average line value.  Pilots are paid at American up to 88 hours a month.  There's a guarantee of 75 hours a month, a line guarantee.  And at most, the variation might be 10 percent.  But there's guarantees when you're holding a fixed schedule called a line or on reserve.  And there's a maximum average line value.

There's also a thing called IMAX.  There's certain pilots making between a half -- in my status, my category, making over half a million to $700,000 a year, depending if they fly what they call IMAX.

But what he's seeking from Atlas and Boeing doesn't exist.  I'm not under a collective bargaining agreement.  There's no minimum-maximum guarantees.  I'm not bidding a monthly schedule line.  I'm a training instructor.  It's absolutely apples and oranges.  It's not apples and apples.  It's completely different.  There's no basis for that information to mitigate his damages calculation in my expert report.  So he's being completely disingenuous.

Now, if I was at another airline -- even then, he has no idea how much I'm going to work.  But I will tell you after being deprived of my career, holding a [indiscernible] certificate for the last eight years and being out of pay as a current medically qualified pilot of almost $5 million, I would have flown a maximum amount to make up for all the years I wasn't flying.

So that's speculative.  And nothing he's getting from Atlas or Boeing would change what the hours I would work may or may not be.  But the bottom line is, there's a guaranteed amount.  So whether I work zero days a month or not, I'm going to get paid the line guarantee of 75 hours.

THE COURT:  Okay.

THE PLAINTIFF:  And that varies month to month.

THE COURT:  And there was something else Mr. Shiffrin said, and I just want to make sure that you heard this.  And he's asking you -- he's saying that you were -- you said that it's fine for them to go ahead and get this --

THE PLAINTIFF:  No.  I never said it was fine.  I always objected.

THE COURT:  -- from his employer because you were not --

THE PLAINTIFF:  No.  I never -- I never said it was fine.  I always objected to it, because I knew it was going to cause me some heartburn professionally.  And I didn't like it

and I thought it was totally unnecessary.

I mean, I produced 65,000 pages of documents, a large portion of which was financial documents.  They have everything I've made.  So I think it's very disingenuous and it's harassing, especially in light of the fact that they haven't produced anything I've asked for.

THE COURT:  Okay.

MR. SHIFFRIN:  Your Honor --

THE COURT:  Under Rule 45, if the company felt that it was an undue burden to them, they could of course file an objection.  It seems they did not.  And they have already provided the documentation.

So there's no need for me to quash when they have no objection to it.

I --

THE PLAINTIFF:  I don't think it's a need to quash.  But I would like you to sanction them and not allow them to use the data, because I think it was -- the only reason we can't quash it is because it took too long to get this hearing, given the holidays and your criminal duty and the 31st of December.  But this matter should have been addressed sooner.  And I tried to as soon as possible.  But the damage is done.

THE COURT:  I appreciate that.

THE PLAINTIFF:  They have the data.  And it's caused me heartburn with Boeing.  And I -- I'm --

THE COURT:  So I think --

THE PLAINTIFF:  Go ahead.  I no longer work at Boeing, but --

THE COURT:  I think the appropriate way to handle this then probably would be more of a motion *in limine* with the judge, the trial judge in this case, because you want the judge to --

THE PLAINTIFF:  Well, you could sanction them and strike that evidence from the record.  Your discovery matter. I would request you do that.  But that's your choice.  I respectfully ask you to do so.

THE COURT:  So you're asking me to strike this evidence that's -- as being somehow not relevant to the case?

THE PLAINTIFF:  It's not -- it's -- for the reasons I just -- it's disproportionate, unduly burdensome.  It violates Rule 26 and Rule 45.  And I think if this was heard sooner, it should have been quashed; and unfortunately it can't be.  They have it.  The damage is done reputationally and professionally.

THE COURT:  It's clearly not overly burdensome for the --

THE PLAINTIFF:  Well, I got a phone call from Boeing; and their feeling was they don't want to be in violation of a court-ordered subpoena.  And they just -- it was easier to comply with it than fight it.  That's what I was told.

THE COURT:  Okay.

THE PLAINTIFF:  So --

THE COURT:  And certainly they did.  So I don't have any basis for striking it at this point.

THE PLAINTIFF:  Understood.

THE COURT:  And let me -- so we'll move on.

But I want to make sure I understand your case as well. So right now, you work for Boeing?

THE PLAINTIFF:  No.

THE COURT:  You're saying that you're -- go ahead.

THE PLAINTIFF:  I worked for Boeing from 2018 until 2024.  I resigned because Boeing's work was sporadic.  And I was hired by one of their lead customers in 2020, Atlas Air, or Southern Air and then Atlas Air, and I've been working at Atlas Air full-time ever since.

THE COURT:  As a pilot?

THE PLAINTIFF:  As an instructor pilot and a Part 121 training center, training 777 captains and first officers.

THE COURT:  So an instructor and a pilot.

And for Boeing, you were working as a --

THE PLAINTIFF:  Same thing.  I was a purchase service instructor pilot.  I trained pilots on customer-bought aircraft, primarily in a Boeing 777-87 aircraft.

THE COURT:  And you're -- okay.  And when you were -- at American, were you also an instructor pilot?

THE PLAINTIFF:  No.  I was an international 777 first

officer, flying the same aircraft I'm training on now.

THE COURT:  I understand.  All right.

So let's move on to No. 2, Plaintiff's forthcoming motion to compel Defendant's document production.  So there are documents that Defendants have failed to produce and there are also documents that were produced but not in a searchable format.  Do I understand that correctly?

THE PLAINTIFF:  Yes, your Honor.  I can -- would you like me to address that?

THE COURT:  Yes.

THE PLAINTIFF:  Okay.  You know, their deadline to produce documents was December 1st.

Then they came and said, Well, we can't give it all to you then.  It's entirely burdensome.  We'll give you some and we'll give you substantial completion.  Their goal of substantial completion was January 5th, which they have not complied with.

They gave me one tranche of documents.  Their documents are deficient.  They're all Bates-numbered files.  They're not keyword searchable.

And then they gave me a second tranche right before Christmas.  The link was defective.  I couldn't open it.  I didn't realize until the holidays.

I contacted Mr. Shiffrin and then he gave me the link, which was the first I was able to open them.  When I click on

these files, they don't immediately open.  They're in some type of high-tech software that law firms use.  I don't have e-discovery software.  I'm *pro se*.

And these files are a complete violation of Rule 34(2)(E)(i) [sic], which requires them to produce documents in the manner in which they're kept in the usual course of business.  They are not.  They're not labeled.  They have Bates numbers as file names.  They've all been renamed as file names.  They have made it as difficult as possible for me to search these documents.  And I can't keyword search any of them.  And they've only produced 19,250 documents as opposed to -- which is a fraction of the 65,000 I produced.  They promised to produce full completion as of January 5th.  They have not done so.

And --

THE COURT:  Okay.  So let me make sure I understand.

THE PLAINTIFF:  So I -- well, I think it's highly offensive.  I was forced by this Court to produce 65,000 documents in nine days.  And they -- a Tier 1 law firm that's a sponsor of 1600 lawyers and a national labor firm of 40 lawyers can't produce documents?  I don't buy it.  And it's prejudicial and dilatory and obstructionary.  It's really prejudicial to me.

THE COURT:  So I want to make sure I understand.  So some of the documents were sent with Bates numbers on them.

THE PLAINTIFF:  All of them were.

THE COURT:  In hard copy or --

THE PLAINTIFF:  No.  Electronically.

THE COURT:  Electronically.  Okay.

So they came to you electronically.  But you're not able to search them?

THE PLAINTIFF:  Yeah.  Well, they're not keyword searchable.

THE COURT:  Why not?

THE PLAINTIFF:  I don't know.  They're just not.  You can't search a single file.  You can't word-search a single file, much less the whole folder.  And they're not organized in folders.  It's just 19,250 files with Bates numbers as a file name.

THE COURT:  Okay.

THE PLAINTIFF:  It's ridiculous.  I mean --

THE COURT:  Let me ask you this.

THE PLAINTIFF:  -- it's a digital --

THE COURT:  I'm assuming you said -- you requested these production of documents in a numeric.  Right?  You had numeric?

THE PLAINTIFF:  Yeah.  I had numeric RFPs, just like they did.

THE COURT:  Right.

THE PLAINTIFF:  I did everything in the course of a

Tier 1 law firm.

THE COURT:  I want to make sure I understand.  What you received, electronically, was it marked as "These documents are responsive to No. 1" --

THE PLAINTIFF:  No.

THE COURT:  -- "these documents are responsive to No. 2"?

THE PLAINTIFF:  Absolutely not.  No.  It was just a document dump of Bates numbers.

THE COURT:  Now I understand.

So let me go to Mr. Shiffrin.  Your response.

MR. SHIFFRIN:  Let me first address the timing of our production and what we've done.

First of all, we received -- Mr. Meadows has made two document requests.  The first was sent on October 31st, the evening.  And the second, November 17th.

THE COURT:  Okay.

MR. SHIFFRIN:  Since October 31st, we have kicked into high gear to do everything we can to get documents to him as expeditiously as possible.  And obviously, we were working at the end of the year with the holidays in mind.  We assigned two attorneys from our firm to handle -- to focus solely on the document issues.  We've collected documents from 26 custodians at APA, have searched -- there was about a terabyte of data that we collected and searched over a decade of -- worth of

materials to then -- and employed contract attorneys to help with the productions.

We've done everything that we can do in a forensically appropriate way to produce documents on a table -- on a timetable that makes sense for this case, but also it takes into account the practical realities that we're dealing with. A lot of documents and had -- that had not had the benefit of the request prior to October 31st.

THE COURT:  Okay.

MR. SHIFFRIN:  Mr. Meadows says he produced documents in nine days.  We had pretty well served document requests on him in August.  So he had three months to do his document production.  We had -- we have done our best to see it as quickly as possible.

We produced the first tranche of documents to him on December 1st of the documents that were sort of the go-get, the low-hanging fruit, things that we were able to grab without doing a lot of electronic review.

We produced another set of documents to him on December 19th.  And we've told him that we expect to make a final production to him on January 9th.  And we are working toward that deadline.  We're working with our vendor today to finalize that.

There's a great number of documents that require privilege review.  And we're going through that process and

making appropriate redactions and the like.  And I expect to make a final production to Mr. Meadows on January 9th.  That's Friday of this week.

As to the manner in which they've been produced, we've produced documents to Mr. Meadows just as we have to countless other litigants in countless other cases.  We've -- we've -- did a collection of documents using a vendor.  We applied -- we de-duplicated them.  We applied search terms.  And as I said, we went through a contract review and an attorney review process and produced those documents to him.  They have been produced as PDFs.

I had not heard before his submission to the Court yesterday that those PDFs are not searchable.  I believe that they are.  But if there's an issue with that, I'll look into that.

And I -- this morning, I produced to him the type of metadata that a law firm would usually receive as a load file in connection with a production of documents that contains all of the file names and custodians and the like.  If Mr. Meadows would like it in a different format that he's able to load into a database product, we can provide that to him.  But otherwise, we've done what litigants in litigation typically do with respect to document production.

THE COURT:  Okay.

MR. SHIFFRIN:  I'll say, they have been produced in

accordance with Rule 34 in that they've been produced in the manner that they are kept in the ordinary course of business, electronically on APA's files, and they have been subject to the type of conventional review process and production that litigants typically do.

THE COURT:  So I asked Mr. Meadows a question.  I want to make sure that there was a response to it.  A request for production of documents.  Of course, these are numbered requests.  When you produced the document for Mr. Meadows, are they produced, "Here's the response to No. 1; here's a response to No. 2"?

MR. SHIFFRIN:  No.  And -- but Rule 34 doesn't require that.  What Rule 34 says is you can produce it in the way that they're kept in the usual course of business or produce it in such a manner.  We've produced them in the usual course of business consistent with the way that our firm has produced documents in litigation.

THE COURT:  So explain to me.  The normal course of business for APA?

MR. SHIFFRIN:  Yeah.  I mean, these are documents.  These are emails, largely emails and electronic documents that are maintained in email servers.  They are largely organized by custodian in what we produced to Mr. Meadows.

THE COURT:  Okay.  So that's how you got them from APA --

MR. SHIFFRIN:  Correct.

THE COURT:  -- emails organized by custodian, and that's how you've turned them over?

MR. SHIFFRIN:  Largely.  I mean, there are also paper documents that we get.  We've done a full review, you know, a full screening of what it is that there is to review.  So within the production, there's also paper documents and the like.  But for the large part, it's emails and the type of stuff that you collect electronically, produce electronically with metadata saying, "This is where it came from."

THE COURT:  Okay.  I'm no expert on -- certainly, on this type of computer search.  But of course, for me to search a PDF document, I just do Control F and it pops up.  And I put in the name of the document I'm looking for and I find it.  Is it as sophisticated as that?  Or more, Mr. Shiffrin?

MR. SHIFFRIN:  I would expect -- it would be news to me that that would not be possible.  And I would -- obviously -- I would agree that that should be possible.  I will go double-check with our vendors after this call and make sure that that's possible.  If it's not, I will make sure that the documents are produced to -- with the ability to do those things.

THE COURT:  Okay.

MR. SHIFFRIN:  To the extent -- I mean, it's often not the case if you're looking at scanned paper documents.  You

can't do that type of keyword searching.  But if the document was originally in an electronic file and has been produced, it should be keyword searchable.  It's news to me that they're not, and we will double-check.  I would expect them to be.

THE COURT:  Okay.  So, Mr. Meadows, you would have preferred for them to be divided by the request.  Is that what you're saying?

THE PLAINTIFF:  Well, I think Mr. Shiffrin is also very disingenuous, because first of all, there's numerous emails where he promised -- first of all, this production was due December 1st, end of story, under the rules.  And I'm pretty certain if I didn't produce my documents when you ordered me to, there would have been contempt sanctions.  But he didn't comply with the deadline under the rules, number one.

And then he promised that he'd have them all by January 5th, not January 9th.  So he has not complied with his own promises, number one.

Number two, they're not -- not only not organized in accordance with my RFPs; they're not in a -- produced in the manner in which they're usually kept.  I'm pretty certain APA doesn't keep their emails with Bates numbers as file names.  Every file name is a Bates number.  I can't search anything.  I gave them all my documents with date, timestamps, to and from and topics for every single communication.  Theirs is a Bates number.

And I know for a fact that APA doesn't keep their emails with Bates numbers in anticipation of the next lawsuit, even though they're getting sued quite a bit by pilots like me.

So --

THE COURT:  Well, I don't think he's saying -- of course the Bates numbers are added.  But he says they keep them --

THE PLAINTIFF:  No.  The file names are Bates numbers. If you look at the -- it's one giant file, 19,000 -- well, there's two tranches, one 11,000, one 7,000 and some-odd documents, all just the file names or the Bates numbers themselves.  There's no way to decipher what they are or where they come from.  It's a total document dump.  They're not keyword searchable.  The entire production is absolutely 100 percent defective.

And I've been deprived of documents to this day -- I don't have them -- so I'm going to insist that they reproduce their documents in a manner that I can read them and search them without going through a digital haystack.  It's highly prejudicial.  And it's just -- I hate to say it, but it's just designed to obstruct and not to disclose.  And I've had this reviewed by --

MR. SHIFFRIN:  Can I --

THE COURT:  It's not organized by custodian?

THE PLAINTIFF:  No.  It's not organized by custodian.

That's an absolute falsehood.  It's not.

MR. SHIFFRIN:  Your Honor, I --

THE COURT:  Well, in order to somehow resolve this issue, I guess all I can do is have some sort of expert who compiled your documents tell us what there is and how he could search them.

THE PLAINTIFF:  Your Honor, I would like to file a motion to compel and give you examples of the files they gave me.  They're not searchable at all and they're not organized by custodian.  That's an absolute mistruth.  I mean, come on.

THE COURT:  I understand.

MR. SHIFFRIN:  Your Honor, I'd like to respond.

THE COURT:  Here's what I'd like to do.  I would like to resolve it so that you can do the search you want to do --

THE PLAINTIFF:  But it's not possible.

THE COURT:  -- and find out if there's an expert that we need that can help.

Mr. Shiffrin.

MR. SHIFFRIN:  Your Honor, he has this information.  It's contained as it is in litigation typically in the metadata for each of these files.  What we've done is work with a vendor that -- this is what they do.  And we produced documents in the way that they're produced in litigation every day in cases across the country.

I know that Mr. Meadows is *pro se*.  This isn't one of

those points where having legal experience is important.

I --

THE COURT: So let me ask you this.

MR. SHIFFRIN: If I can say a little bit more about that.

THE COURT: No. One more thing.

MR. SHIFFRIN: Yeah.

THE COURT: If he has the name of the vendor and a contact individual, can he call that individual and ask them, How do you search this?

MR. SHIFFRIN: Well, we will work with him to get him that information. Again, this is an issue that he raised for the first time in the submission to this Court. I -- he doesn't -- and we will work with our vendor to make sure he has it. But I provided this morning to him spreadsheets for the two productions that we have made so far -- and we'll do the same for the production that we're going to make on Friday -- that contain the file names, the custodians, all of the metadata that is typically provided to a law firm in a load file. He has all that information for each of the documents that he's received from us.

THE PLAINTIFF: Your Honor, that's a lie. He gave -- just before this hearing, he provided me --

THE COURT: Excuse me, Mr. Meadows. Mr. Meadows.

THE PLAINTIFF: I'm sorry.

THE COURT:  I won't permit you to --

THE PLAINTIFF:  I'm sorry.

THE COURT:  -- speak of a fellow lawyer in that manner.

THE PLAINTIFF:  Okay.

THE COURT:  We will not engage in that.

THE PLAINTIFF:  Okay.

THE COURT:  What I'm trying to do is resolve this issue so that you can understand the documents that you have.

THE PLAINTIFF:  May I speak, your Honor?

THE COURT:  So without name-calling, what is the best way that we can do that?

THE PLAINTIFF:  Well, I think the problem is, now that he's called on the carpet before you, facing down his failed production, he produced these spreadsheets apparently -- right before the hearing, I noticed he sent me an email.  I haven't had time to look at it.  But he hasn't produced any spreadsheets or custodian information until now, is what he's saying.  And I have not had any of that stuff.

This -- this document dump is not searchable.  It's deficient.

THE COURT:  So here's what we're going to do.

THE PLAINTIFF:  It doesn't comply with Rule 34.

THE COURT:  Excuse me, Mr. Meadows.

THE PLAINTIFF:  Okay.

THE COURT:  Please review what you have received.

THE PLAINTIFF:  I have, ma'am.

THE COURT:  Okay.  And once you -- once you've looked at it, if you're not able to understand it, then we're going to have to have an --

THE PLAINTIFF:  I can't understand it.  I want to file a motion to compel, your Honor, because this is defective and deficient and unsearchable.  I've had a lawyer look at it I -- I already know.  I don't need to waste time.

THE COURT:  So --

THE PLAINTIFF:  But again, I can't proceed with discovery with my hands tied behind my back and no documents. So I have no documents right now.  No production from them.

MR. SHIFFRIN:  If I can respond to some of that, your Honor.

THE COURT:  Mr. Shiffrin.

MR. SHIFFRIN:  Mr. Meadows has accused me of being disingenuous and of unethical behavior throughout these proceedings.  At some point, I'd just like to say -- respond to some of it.

We -- I did not know until yesterday when Mr. Meadows raised this issue with us that he was upset with the manner in which documents had been produced when he first raised that matter with the Court.

I then immediately got on with the attorneys handling this, and we got in touch with the vendor to produce the

spreadsheets to him.  It's not disingenuous.  It's not meant to sandbag him.  We're doing our very best to work with Mr. Meadows to resolve these issues.  We're typically able to do so in litigation between parties.  We're having trouble here.

But I -- I think that these are all matters that can be resolved in terms of -- if he -- the formatting and whatever else.  They had not been raised to our attention before 2:00 yesterday.  I took steps this morning to address them.  And if there's additional steps, we'll take those steps.

THE COURT:  Okay.  So, Mr. Shiffrin, what you're telling me is you could find a way to reformat the documents so that they would be easier to search and Mr. Meadows would be able to review them?

MR. SHIFFRIN:  I've asked Mr. Meadows to tell us what he'd like us to -- what format he'd like them in, and we'll work with him to -- if that's something we're able to do to accomplish that.

THE COURT:  Okay.  So, Mr. Meadows, the format you would like them in is...?

THE PLAINTIFF:  I would like them in accordance -- just like I gave them in accordance with my RFPs, clearly labeled so -- by custodian, so I can find them.  And I want them all keyword searchable.

So the bottom line is, here we are five weeks past our

deadline.  I don't have any -- their production is entirely deficient and defective.  And it's useless to me.  So I shouldn't be forced to keep marching to a discovery cutoff with this handicap.  It's prejudicial.  Highly.

THE COURT:  All right.  So --

THE PLAINTIFF:  So they need to cure this.  But they're in violation of Rule 34.  Any way you cut it, they're in violation of Rule 34, deliberately.  And they know this.

And it's just frustrating, your Honor.  I know I'm *pro se*, but I have gone to law school.  I've been in several litigations as a developer in complex bank litigation.  I've been through discovery more burdensome than this.  And I know what's correct and what's not correct.  And I think the whole thing's just highly offensive and obstructionist.  It needs to be addressed.

THE COURT:  Well, that's what --

THE PLAINTIFF:  I've tried to resolve it.

THE COURT:  -- we're doing right now.

THE PLAINTIFF:  I've tried to resolve it.

THE COURT:  That's what we're trying to do right now.

THE PLAINTIFF:  Okay.

THE COURT:  This is what we'll have -- Mr. Shiffrin will try to reformat the documents in the manner that we've discussed.  January 9th is when you'll have your final tranche of documents.  At that time, can they -- can you reformat the

documents that you have provided and are going to produce so that they fit with what Mr. Meadows has just requested?

MR. SHIFFRIN:  Well, I'll say, I certainly can look into why they may not be keyword searchable and make sure that they are.

THE COURT:  Yes.

MR. SHIFFRIN:  Assigning them to particular requests would be burdensome and not required by the rules and time-consuming, and certainly not something that can be done by the 9th.  I don't think that we are required to do that.  We're required to produce them as they're maintained in the usual course of the business, and that's what we've done.  We've provided the metadata to him.  If there's another way that he'd like that, I'm happy to work with him to do that.

I will -- I'm hesitant to say I can get all of that done by the 9th, just knowing how vendors work.  But if it's not by the 9th, I will do it as soon as we can.  I think that Monday would be realistic for the other productions.  Our focus has been on getting the documents that we still have out to him as soon as possible.  That's been a task in itself.

THE COURT:  All right.  So what we are trying to do is, you're going to try to make sure that it will be searchable.  You'll get the metadata to him.

MR. SHIFFRIN:  Yes.

THE COURT:  And that you can try to do by the 9th?

MR. SHIFFRIN:  Yes.

THE COURT:  That's the end of this week.  That's only two days away.

MR. SHIFFRIN:  Yes.

THE COURT:  Okay.  All right.

THE PLAINTIFF:  Your Honor --

THE COURT:  As far as whether they are in the format in which they are kept, Mr. Meadows, that is --

THE PLAINTIFF:  That's my question, because I'm pretty certain.  I'd like you to ask Mr. Shiffrin if APA keeps all their emails correspondence stored with file names of Bates numbers.  I'm pretty certain they don't.  And that's what --

MR. SHIFFRIN:  Your Honor, when documents are produced in litigation, they're typically renamed.  But that information is then provided to the other party.  That's what's happened here.  That metadata about what the name of the document is has been provided to him.

THE PLAINTIFF:  And when have you provided that information, Mr. Shiffrin?  Because I didn't have it until today.  I still don't have it.  I haven't seen it.

MR. SHIFFRIN:  Your Honor, I'll direct my answers to you.

THE COURT:  Thank you.

MR. SHIFFRIN:  Yeah.  As I said, after I received Mr. Meadows's statement of issues, I contacted our vendor and

we produced spreadsheets with that metadata to him this morning.

THE COURT:  Okay.  Very good.

All right.  Let's move on to the next --

THE PLAINTIFF:  Your Honor --

THE COURT:  -- number.

THE PLAINTIFF:  Your Honor, I have one question.  Why was I not given metadata in these spreadsheets on his first production?  Why not?

THE COURT:  Okay.  So, Mr. Meadows, as I understand it, you have now let the Court know that you have problems searching the documents.  I see that you filed that in your notice of issues.

Mr. Shiffrin became aware of that issue, and he's attempting to remedy that by giving you this metadata.

THE PLAINTIFF:  Okay.  Well, I would -- I would like to compel -- I'd like them to entirely reproduce everything, your Honor, the correct way, in a way I can search it and get through it, like I gave them.

THE COURT:  Okay.  I'll make a ruling on that.

THE PLAINTIFF:  Thank you.

THE COURT:  As long as they are in the course of business kept in the manner in which they're produced, Mr. Shiffrin is right about the rule.  And that --

THE PLAINTIFF:  Well, the rule --

THE COURT: Unless you have some other issue. And I'm sure when you --

THE PLAINTIFF: Well, no, but the rule says in accordance with --

THE COURT: -- depose -- excuse me.

THE PLAINTIFF: Excuse me.

THE COURT: When you depose the 30(b)(6) deposition on the 21st, perhaps a question you can ask is about how documents are kept. And you'll have information to produce to the Court to show that Mr. Shiffrin is wrong. At this point, all we can do is talk about it. And I don't want to waste anyone's time with that.

THE PLAINTIFF: Well, my time's been wasted. I mean, I can't believe you're going to ignore the fact that they're five weeks late in production.

THE COURT: I'm not ignoring it at all.

THE PLAINTIFF: Okay.

THE COURT: I'm not.

The let's go to No. 3.

THE PLAINTIFF: But I guess, how am I expected to prepare -- he says he needs weeks to prepare for his 30(b)(6) deposition. How am I going to prepare for it when I don't even have the documents and it's less than two weeks away?

THE COURT: Okay. You'll have it by the 9th.

THE PLAINTIFF: I mean --

THE COURT:  And it is a week and a half away.  Yes.

THE PLAINTIFF:  And we're talking probably a magnitude of, like, 50,000 documents, and they've only produced 19,000 so far.

THE COURT:  Understood.

Let's go on to No. 3.

THE PLAINTIFF:  Yes, ma'am.  I'm sorry, your Honor.  I didn't mean to call you ma'am.  I was in the military.  We call female authority figures "ma'am."  But I -- no disrespect.  I'll call you "your Honor."

Issue 4, APA has issued numerous improper blanket objections to my written discovery and refused to answer basic interrogatories and RFPs, often with the disingenuous claim they can't find my documents.  For example, with respect to former APA President Dan Carey's promises not to sign a collective bargaining agreement without my reinstatement, I cite an email of March 11th, 2019.  He said he couldn't find it.

Now, I gave him a Dropbox file with folders, RP 12 for all communications, subfolders for every custodian, including Dan Carey, both email, PDFs and native documents.  And I just checked that with the Dropbox and put it in the date of that email and it came up immediately.

So I provided him that email directly, because he seems to not be able to find it, according to him.  But that's just

one example of the type of objections he's raising.  It's too burdensome for him to do a keyword search and find the one email that goes to my RFI.  So -- and it's just across the board with all my RFIs and my 30(b)(6) topics, which is the next issue.

But yes.  That's a problem.

THE COURT:  So we're on No. 3 or No. 4?

THE PLAINTIFF:  No. 4.

THE COURT:  Okay.

THE PLAINTIFF:  The improper objection.

MR. SHIFFRIN:  I think we're on No. 3.

THE COURT:  So on No. 3, did we complete that when --

THE PLAINTIFF:  Oh, I'm sorry.

THE COURT:  -- we were talking about the --

THE PLAINTIFF:  Well, I thought we -- we did noncompliant.  We covered 2 and 3, I think, your Honor, in the last round.

THE COURT:  Okay.  All right.  So --

THE PLAINTIFF:  So it's all been addressed.

THE COURT:  -- we're going --

THE PLAINTIFF:  I might have conflated those two.  I'm sorry.  I got ahead of myself in that one.  But yes.  We discussed both Nos. 2 and 3.

THE COURT:  Okay.  So No. 4:  Defendant to withdraw its improper objections.  So apparently, the Defendant has objected

to some of the 30(b)(6) topics.  And what topics exactly have been --

THE PLAINTIFF:  Well, your Honor, we're on No. 4 still.

THE COURT:  Yeah.  I'm on No. 4.  So that what it says: Defendant to withdraw its improper objections to 30(b)(6) topics.

So that means --

MR. SHIFFRIN:  If I may, your Honor, just for the sake of clarity:  No. 3 refers to interrogatories and requests for production, and No. 4 refers to the 30(b)(6) topics.  So I imagine that's what Mr. Meadows would like to address.

THE COURT:  Okay.  So where are we now?  On 30(b)(6) topics?

THE PLAINTIFF:  Well, I did mention his claim that he couldn't find the March 11th email.  That was an improper objection to the interrogatories.

THE COURT:  Oh, that has to do with interrogatories.  Okay.

THE PLAINTIFF:  Yeah.

THE COURT:  So the Defendant has made an objection to certain interrogatories.

What is the interrogatory?  And what is the objection?

THE PLAINTIFF:  The objection was, I was asking for numerous things.  He's objected broadly to most everything.

But with respect to former president -- APA President

Dan Carey's promises not to sign a collective bargaining agreement that didn't include my reinstatement, there was -- I referenced a March 11th, 2019, email, which he said he couldn't find.

It's labeled with that exact date. It's in the RFP 12 folder and subfolder for custodian Dan Carey. You can literally go there and find it in sequence. Everything's chronologically sequenced like soldiers. But he could have key word searched it and found it.

He said he couldn't find it. So I emailed it to him yesterday to remove any shadow of a doubt that he could access it. But that's just one example of many broad-based objections to my RFIs.

THE COURT: Okay. But if I'm to rule on these objections, I need to understand what they are. I need to have the --

THE PLAINTIFF: Well, your Honor, I thought -- honestly, I thought the purpose of today's hearing was to get permission to file motions to compel and I was going to document all this stuff. I mean, I'm seeking to file a motion to compel those items. And now you're making me argue on the merits.

And I'm happy to give you the best argument I can make right now, but I was seeking to file motions to compel --

THE COURT: I see. So generally --

THE PLAINTIFF:  -- because that's what your standing discovery order says.

THE COURT:  I understand what you're saying now.

So what we try to do with these hearings and making a magistrate judge available so quickly to hear these matters is to avoid the accumulation of attorney's fees and costs that come from motions being filed on the docket, responses and then the Court having to rule.  So there are two things that happen: Costs are accumulated from that and, second, time.  Right?  Of course, Judge Artau has to take the time to review all of those motions and decide whether -- and rule on them and write a written order.  And so what we're trying to do is avoid all of that cost.

So if you tell me what your issues are and I can resolve them here and hear the argument, then we've saved a lot of time, we've saved a lot of money and you know where you are in terms of a court order.

Now, of course, you can appeal those decisions to Judge Artau.  But then there's another layer of time where Judge Artau will have to then review my order, listen to more argument.

What we're trying to do is facilitate --

THE PLAINTIFF:  I understand, your Honor.  But I -- I didn't prepare a specific list of numbered objections.  I was going to do that in a motion because I was following your

standing discovery order.  But I mean, that's -- so if -- that's the one example I can cite.  But there's many.  There's many, many.  And I could document it all in a detailed motion.

THE COURT:  So what litigants generally do is they also email me the interrogatories.

THE PLAINTIFF:  I didn't want to burden you --

THE COURT:  Oh.

THE PLAINTIFF:  -- with too much information.  I was told --

THE COURT:  That's what I do.  That's what I do.

THE PLAINTIFF:  Okay.  I'm sorry.

THE COURT:  You don't put that on the court record, but you email me the interrogatory so then I'll know exactly what the question is.

THE PLAINTIFF:  Okay.

THE COURT:  And then here's the objection.  I can make a ruling.

I mean, the example you've given me that the response was, Well, I'm simply not aware of that email --

THE PLAINTIFF:  He said he can't find it.  But it's easily available just by looking in the folder or by keyword searching it.  And he claims he couldn't find it.  So I'm sorry.

THE COURT:  But that's -- but that's --

THE PLAINTIFF:  But I gave him the email.

THE COURT: Now that --

THE PLAINTIFF: Well, I gave him the email and he hasn't given me the response. So --

THE COURT: But you gave him the email yesterday?

MR. SHIFFRIN: Yesterday. Yes.

THE COURT: So of course it's going to take a moment for him to confer with his client and then respond.

So that's not something that we need to have you file a six-page motion on and wait for a response from Mr. Shiffrin and then an order from me. So that's what I'm trying to do, is facilitate that. Now that you've brought that up --

THE PLAINTIFF: I get that.

THE COURT: -- Mr. Shiffrin is aware. He can go back and take a look at it. I can tell him: Okay, Mr. Shiffrin. Can you respond to that question now by January 9th, along with the other documents that you're going to be producing? And he can say yes or he can say no. Done. End of story.

THE PLAINTIFF: Okay.

THE COURT: Do you see what I'm saying?

Are there other interrogatories that you want to address?

THE PLAINTIFF: I don't have a list of specificity here. I do elsewhere. But like I say, I was preparing -- I was under the impression we were going to file a motion after the fact.

THE COURT:  Right.

THE PLAINTIFF:  But we can move to No. 4 for now.  And I can write Mr. Shiffrin a detailed email.  But my luck --

THE COURT:  That would be excellent.

THE PLAINTIFF:  -- but my luck with him resolving things has been pretty unsuccessful.  He's been very uncooperative and very obstructionist the entire way.  He's basically strived to deprive me every single document, every single witness in this case.

THE COURT:  Well, it sounds like he's trying -- he's trying to give you some documents, and we're going to try and resolve that here.

THE PLAINTIFF:  I hope so.

THE COURT:  Okay.  All right.

THE PLAINTIFF:  Okay.

MR. SHIFFRIN:  Your Honor, I've invited Mr. Meadows many times to provide me with specific interrogatories and -- that he'd like to discuss, and he hasn't taken me up on those.

THE COURT:  Well, he's going to do that now.

So, Mr. Meadows, when can Mr. Shiffrin expect that email with your specific --

THE PLAINTIFF:  Well, I could give it to him by the end of the week.

THE COURT:  Sounds good.

THE PLAINTIFF:  I have to work the next few days.

THE COURT:  That sounds good.  And then you'll have to give him some time to resolve those issues that you've --

THE PLAINTIFF:  Okay.

THE COURT:  -- talked about.  Okay?  All right.  Very good.  That's why we need meet-and-confers.

THE PLAINTIFF:  We've done that several times.

THE COURT:  We understand that you're busy as well, Mr. Meadows.

THE PLAINTIFF:  No.  But I've met and conferred.  I mean, I didn't want to burden with the voluminous email chains.  And I've asked for several hearings.  This is the first time I've asked for a hearing, because this stuff isn't new.  It's been ongoing for weeks, for the whole month of December.

THE COURT:  Okay.

THE PLAINTIFF:  Okay.  I'm ready to go to No. 4, your Honor, for improper 30(b)(6) objections.

THE COURT:  No. 4.  Go ahead.

THE PLAINTIFF:  Yeah.  Issue No. 4 is APA's improper objections to my 30(b)(6) topics.  They're attempting to shield discovery from every key element that proves their bad faith and retaliatory motive.  This evidence of prior acts is directly relevant and admissible under Rule of Evidence 404(b) to show their motive, intent and plan.  And many of these issues are stated explicitly in the first amended complaint and the facts.  And he's basically -- and I've given him an omnibus

rebuttal letter yesterday citing all these topics, including the pilot disciplinary [indiscernible] case management cost savings scheme, the 2013 equity distribution proceedings.  And I could -- do you want me to go by those, what each one details?  I can.

THE COURT:  Let me go to Mr. Shiffrin now and --

THE PLAINTIFF:  Well, I'd like to fully state my position on that, since I haven't done it yet.

THE COURT:  Okay.  First of all, I want to understand some things about the deposition topics.

Mr. Shiffrin, did you have objections to some of the 30(b)(6) deposition topics?

MR. SHIFFRIN:  Yes, your Honor.  I mean, pursuant to Rule 30, we've attempted to confer with Mr. Meadows about the topics that he sent us.

THE COURT:  Okay.

MR. SHIFFRIN:  And I --

THE COURT:  And how many topics are there?

MR. SHIFFRIN:  I believe that there were 15 or there may have been -- sorry -- 23 all together.

THE COURT:  23.

THE PLAINTIFF:  No.  There's not 23.

THE COURT:  How many of those --

MR. SHIFFRIN:  Oh, no.  I take that back.  I apologize. Not 23 topics all together.

THE PLAINTIFF:  There's 14, I believe, your Honor.  13 or 14.

MR. SHIFFRIN:  Yeah.

THE COURT:  And how many of them did you object to, Mr. Shiffrin?

MR. SHIFFRIN:  We had objections to, I think, roughly ten of them.  But in many cases -- I mean, many of the topics I'll say sought information that is precluded by the protective order that you had previously entered in the case.  And so we've noted that.

And in other cases, we've made objections but have offered compromise positions as to what a witness is able to do in order to resolve the disputes.  And I -- I sent to chambers -- we sent to chambers yesterday -- I'm not sure if you've had a chance to review it -- a letter that we sent out on December 5th, I believe, that summarized our -- you know, where things stood with respect to the meet-and-confer issues that we were trying to raise.  And then I also provided the response that Mr. Meadows sent to us yesterday as well.

I'm happy to discuss the individual issues that I believe are remaining between the parties.

THE COURT:  Okay.  So there's only ten topics that have been -- that are in dispute?  Okay.

MR. SHIFFRIN:  If I understand Mr. Meadows's response, he's not -- we've made certain objections; and he's not seeking

to -- a ruling from you on certain of those objections.  So I believe some of those are settled.  There's others that he wishes to raise with you.

THE COURT:  So let's go to -- back to you, Mr. Meadows.

How many of these --

THE PLAINTIFF:  Well --

THE COURT:  -- do you --

THE PLAINTIFF:  Broadly speaking, he objected anywhere I've asked for information that -- because I've argued there is a continuing violation doctrine.  And a lot of the stuff is -- consistently existed from 2011 to 2025, but you limited me to 2021.

So I said to the extent that these topics are not in accordance with the protective order, I'll agree to that.  But I'm not going to waive my objection because in the event that that protective order is vacated or modified or supplemental pleading is granted, then I'm going to expect to be able to go beyond 2021 on those issues.

So for now, I'll obey your order and stay within the confines of pre-2022.  But on certain topics, they're really trying to shield their bad faith and motive, particularly their one key witness, who was also their 30(b)(6) designee and their client representative, Mark Myers.  He's a very conflicted fiduciary.  He's been involved in most of the bad-faith dealings involving the group of pilots like me called medical

disability drop, or MDD pilots. There's 240 of us. And this is a federally recognized class in multiple district courts in this country. Many of these pilots have sued the APA over these same issues.

The first one is the pilot disability nurse case management cost savings reports, which APA is aware of and they took no effort to rein it in. They ignored it and allowed pilots like me to have our disability benefits terminated based on cost savings, forcing pilots like me to sue American Airlines individually to get my benefits back, which I obtained. But once you sue American Airlines one time, you're not welcome back. And that's why I'm not getting reinstated, because I sued the company on that one issue. But I've sued them on other issues.

THE COURT: Here's what I want to understand. So you want the 30(b)(6) witness to be able to -- to be ready to testify with regard to the pilot disability cost savings report?

THE PLAINTIFF: Right. And there's a whole passage of facts alleged in my first amended complaint, because it all goes towards their motive, intent and abandonment of representation and bad-faith grievance handling, failure to file grievances. And I've --

THE COURT: So they've objected --

THE PLAINTIFF: It's essential --

THE COURT:  They've objected --

THE PLAINTIFF:  Yeah.

THE COURT:  -- to it and they feel that the 30(b)(6) witness should not have to testify --

THE PLAINTIFF:  Right.

THE COURT:  -- regarding that --

THE PLAINTIFF:  It's essential background info of motive and intent under Rule 404(b).

THE COURT:  Okay.  All right.  So let's address that. Mr. Shiffrin.

MR. SHIFFRIN:  Your Honor, the facts that he wants to have discovery on now go back to 2007 to 2012, a time period that's long past.  Mr. Meadows filed a lawsuit against American Airlines regarding his -- the handling of his disability claim. He lost that lawsuit.  It was affirmed by the Eleventh Circuit. He had his day in court on these issues.

He should not now bring into this case claims that have long expired, that he did not bring in time if he had any inkling to bring them.  There's a six-month statute of limitations for duty of fair representation claims.  That's for a reason.  Causing -- requiring APA to go back and essentially litigate within the context of trying to prove APA's motive, issues pertaining to disputes that occurred almost two decades ago, is burdensome and we think disproportionate to the needs of the case.

THE COURT:  So this report was from what date?

MR. SHIFFRIN:  Let me say, what he seeks is not just about a report.  And the -- his 30(b)(6) topics are included in my December 5th letter that I provided to the Court.

So looking at Page 2 of the letter, his -- the topic is:  all facts, communications and decisions related to the pilot disability and nurse case management cost savings reports; B, the mutual selection and use of Western Medical Evaluators as a third-party disability claim reviewer, including APA's role in its selection and knowledge of WMEA's alleged fraudulent activities; C, the retention of ERISA litigator Lewis Feinberg; and, D, APA's subsequent decisions to abandon representation of the approximately 100 pilots whose LTD benefits were terminated, including the role of Mark Myers and Chuck Harrison, both of whom are attorneys for APA.  Or Mark Myers is currently; Chuck Harrison has not been with APA for many, many years.

So he's seeking sort of a large amount of information about facts and events that happened a very long time ago, the characterization of which would be greatly in dispute; and all, my understanding is, for the purpose of proving intent or motive.  But this is not the type of state-of-mind evidence that would go to someone's intent or motive.  This is asking a lot for a very limited purpose in this case.  And we think it's disproportionate to the needs of the case.

THE COURT:  I see.

THE PLAINTIFF:  Your Honor, if I may.

THE COURT:  Yes.

THE PLAINTIFF:  So what he's failing to tell you is his 30(b)(6) designee was the point man on this very issue.  And APA hired a national ERISA litigator and professed to spare no expense in [indiscernible] membership in defending these.  They call this whole thing a sick disability jihad by American Airlines prior to [indiscernible] in 2011.  And he was hired to represent all of us.  And he hired this national ERISA litigator and then didn't file a single lawsuit.  And he went radio silent after two years.  So internally they made the decision to abandon representation of pilots.

The reason I'm here talking to you today is that stems from -- that's the genesis of their failures and abandonment of representation.  They failed to tell us as pilot members of the union at that time.  But this is an unknown fact.  The former president of APA, Ed Sicher, testified to this fact.  And it's very relevant because they've abandoned representation and they should have filed grievances.  They didn't.

And the reason I'm sitting here talking to you today, why I had to file my own ERISA lawsuit, get blacklisted by American for being a litigious employee, is because of the union's failure.  So it is extremely relevant.

And it's not a burden at all, because Mark Myers, the

30(b)(6) designee, has firsthand knowledge of this information. And he was part and parcel of it. He was the one representing --

THE COURT: Was this part of a prior litigation?

THE PLAINTIFF: It's not a prior litigation. It's a course of conduct in a union of how to handle the MDD pilot group, which is -- this has been in every other --

THE COURT: Can I ask, was this course of conduct part of a prior litigation against --

THE PLAINTIFF: No. No. --

THE COURT: -- American or APA?

THE PLAINTIFF: No. No.

THE COURT: Or this issue was decided by another court?

THE PLAINTIFF: No. Their course -- it's been alleged in -- this DFR violation has been alleged by Cathy Emory in Florida Southern District. They settled her out after summary judgment -- I'm sorry -- after a motion to dismiss.

It was alleged by Susan Twitchell in her case. And after a motion to dismiss, AP settled her out. She's situated -- their pilots are situated exactly like me.

So it --

MR. SHIFFRIN: Your Honor, if there -- if he had a duty to --

THE COURT: I want to make sure I understand Mr. Meadows.

THE PLAINTIFF:  And it's -- and Mr. Shiffrin is trying to confuse you with DFR.

I'm not making a DFR claim.  I'm not making a DFR claim.  I'm just -- it's a pattern and practice of APA's abandonment of representation.  They didn't tell us they weren't representing us anymore.  But that was their course of conduct.  And we didn't know it until 2013.  And they've been all over the map.  Ever since 2013, they've taken wildly inconsistent positions on our membership in the collective bargaining unit, whether they owe us a duty or not.

And they've gotten a fraudulent legal opinion letter to say they didn't.  And then officers of the union, pilots, took positions to represent us.

So there's been a huge internal conflict between the legal department and the pilot officers that represent pilots like me.  And that's why --

THE COURT:  You know what?  Mr. Meadows, here's my concern.  I understand that you're very passionate about your case.

THE PLAINTIFF:  I'm not passionate.  It's -- the -- I --

THE COURT:  Excuse me.

But a deposition is to ask questions to which you want to either find out the answer because you don't know it or you know the answer but you want the witness -- you want to have

the witness put on record what their position is.  Right?  So those are the two things you're trying to accomplish in a deposition.

My concern is that you will be speaking more than the 30(b)(6) witness, because you seem to understand and have a great amount of information about the history of this case.  And that's good, because you're the litigant.  But if what you want to do is find out from this witness what their position is going to be and -- you're going to need to ask the question and then wait for an answer.  And if you disagree with the answer, then that's something you raise in a summary judgment motion or at trial.

But my concern is that you might end up simply arguing with the witness.

THE PLAINTIFF:  Absolutely not, your Honor.

THE COURT:  Okay.

THE PLAINTIFF:  I would not.

THE COURT:  Because I --

THE PLAINTIFF:  Because this --

THE COURT:  Because I feel that's what's happening with me.

THE PLAINTIFF:  Okay.  I'm sorry.

THE COURT:  And I --

THE PLAINTIFF:  And I feel -- I feel defensive, your Honor, because we have opposing counsel that's done everything

possible to delay and obstruct my discovery process.

THE COURT:  Well, you've said that about ten times.

THE PLAINTIFF:  Well, it's true.

THE COURT:  I need to know what improper -- what deposition topics you want to explore with this witness.

THE PLAINTIFF:  Well, that's one --

THE COURT:  That's a very narrow question I'm trying to ask.  And I'm having a lot of trouble getting the answer to that.

THE PLAINTIFF:  Okay.  But --

THE COURT:  I want to know what questions you want to ask this witness, whether those -- and why there are objections to those issues and resolve it.  That's all I want to do.

THE PLAINTIFF:  Okay.  All right.  Would you like to go to the next topic?

THE COURT:  No.

MR. SHIFFRIN:  If I --

THE COURT:  I'd like to stay on this topic.

THE PLAINTIFF:  Okay.

THE COURT:  One of the things I heard about -- I've got a letter up here.  It's a December 5, 2025, letter, and I see that that's from Mr. Shiffrin to you, Mr. Meadows.

Is that what I should be looking at, Mr. Shiffrin?

MR. SHIFFRIN:  Yes.  Yes, your Honor.

THE COURT:  And then there's a letter from Mr. Meadows

to you, January 6th, 2026.

MR. SHIFFRIN:  Correct, your Honor.

THE COURT:  Okay.  So the December letter was your objections.

MR. SHIFFRIN:  It was the followup letter to a first set of objections.  We sent it -- because this was the best distillation of the parties' positions on these issues.  This was after one round of a meet-and-confer.

So it's a long way of saying, yes, your Honor, this contains our objections.

THE COURT:  Okay.  So No. 1, I see pilot disability review and abandonment of representation.

MR. SHIFFRIN:  Right.

THE COURT:  So that's something that you want to ask, Mr. Meadows, this witness about.  Correct?  Pilot disability review and abandonment of representation from 2007 to 2012.

The APA has objected to this topic on the grounds that the matters identified are not relevant to any claim or defense in this case while outside of the statute of limitations for any claim asserted in this case.  It would be unduly burdensome to produce a witness to testify regarding matters that occurred so long ago.

In response, you state that this history is directly relevant to establishing the background motive and intent of APA's subsequent course of conduct.  Okay.

So you're asking about events that happened from 2007 to 2012?

THE PLAINTIFF:  No, ma'am.  No.  From 2011 to 2013.

THE COURT:  Okay.  From 2011 to 2013.

THE PLAINTIFF:  And they're alleged in the first amended complaint with specificity, all these facts.

THE COURT:  Okay.  Now, how are these facts relevant to your cause of action?  I mean, you can allege a number of facts in your complaint.  But I want to understand how these --

THE PLAINTIFF:  I'm not looking to bring any additional claims on this issue.  It supports the existing claims because the union has -- when it suits their needs, it has abandoned representation and refused to prosecute grievances.  And other times, they've alleged to advocate for us when they're deliberately subverting grievances.

THE COURT:  But here's my question, though:  If everything you say is true, then why didn't you bring a cause of action in 2013, when that happened?

THE PLAINTIFF:  Because I wasn't aware of it in 2013.

THE COURT:  When did you become aware of it?

THE PLAINTIFF:  It came to light in 2021 in the litigation of Wallace Preitz, in the testimony about Captain Ed Sicher.

THE COURT:  So this is the course of conduct.

THE PLAINTIFF:  So this is a lot of newfound

information.

THE COURT:  Okay.

THE PLAINTIFF:  It postdates my first amended complaint.  A lot of this stuff was unknown.

THE COURT:  Okay.  So once you --

THE PLAINTIFF:  And understand that --

THE COURT:  Once you ask this witness about this, does this advance with any knowledge of what happened --

THE PLAINTIFF:  Yes.  Firsthand knowledge.

THE COURT:  Okay.

THE PLAINTIFF:  He was involved in the whole process.

THE COURT:  Okay.  And why does it say 2007 to 2012?  Is that --

THE PLAINTIFF:  That's Mr. Shiffrin saying that.  That's not me.

MR. SHIFFRIN:  Your --

THE COURT:  Okay.

MR. SHIFFRIN:  Your Honor --

THE COURT:  You don't want to know what happened in 2007?

THE PLAINTIFF:  No.  Not at all, ma'am.

MR. SHIFFRIN:  Your Honor, that is taken from his -- I'm sorry to interrupt.  But just for the sake of clarity, the 2007 to 2012 is what his notice says.  What's in italics is quoting his deposition notice.

THE COURT:  Okay.  Do you want to go back and check your notice to see what years --

THE PLAINTIFF:  Yeah, your Honor.  Like I say, they decided the abandonment of representation somewhere in the timeframe of at least 2010-2011.  That's when they actually decided.  The 2007, '08, is when all these cost savings reports occurred.

But the union hired counsel to represent the 240 pilots like me who had their disability benefits taken away on cost savings and then internally decided we were too costly to defend, and they abandoned our claims in late 2010.

THE COURT:  Okay.

THE PLAINTIFF:  And that's what I'm -- so that's all my complaint --

THE COURT:  2007 to 2012, you want to know things that happened in that time period?

THE PLAINTIFF:  I don't really need to go back to -- I already know what happened in 2007.  What I didn't know is what the union did after the fact.

THE COURT:  So --

THE PLAINTIFF:  But I recently --

THE COURT:  So if you already know this, then why do you want to ask this witness about it?

THE PLAINTIFF:  Because it's -- I don't have firsthand knowledge of it.  This witness is directly involved.  And all

questions about this issue have not been asked.

MR. SHIFFRIN:  Your Honor, if I could suggest --

THE COURT:  That's the point I'm trying to make.  If you already know about something --

THE PLAINTIFF:  I don't know -- ma'am, I need to establish evidence and facts in the record in this case.  And they don't exist in this case.

THE COURT:  And this is relevant because this is part of a pattern or practice that has now come to light.  Correct?

THE PLAINTIFF:  Yes.

THE COURT:  That's what you're talking about?

THE PLAINTIFF:  Yes.  Ongoing, continuing violation.

THE COURT:  Mr. Shiffrin?

MR. SHIFFRIN:  Yeah.  I mean, we've -- as we've said in this December 5th letter, in connection with the Rule 30(b)(6) deposition of this witness -- his name is Mark Myers; he's an attorney with APA -- we would allow Mr. Meadows to ask Mr. Myers questions in his personal capacity on this and other issues.  So I think that resolves the issue.  I mean, if he wants to know what Mr. Myers has to say about this, that's fine.  We still take the position that it's not relevant to the case.

THE COURT:  Okay.

MR. SHIFFRIN:  But we'd understand that to be fair grounds for a deposition of Mr. Myers in his personal capacity.

What doesn't make sense is it requires Mr. Myers to spend -- I don't know how much time it would take to review what was going on 2007 to 2012, you know, when a number of people who were around then have now left to become fully educated to speak on behalf of APA on these issues.

THE COURT:  Okay.  So he's willing to speak on behalf of what he personally remembers --

MR. SHIFFRIN:  Yes.

THE COURT:  -- about that incident, about that timeframe, and -- rather than speaking on behalf of the APA, because he doesn't have full knowledge of everything the APA knew, did or has in its records regarding that time period?

MR. SHIFFRIN:  Correct.

THE COURT:  Okay.  All right.  Mr. Meadows, is that sufficient, that he -- as you say, he knows about it.  He's willing to testify as to what he knows.

THE PLAINTIFF:  Yes, ma'am.  Yes, your Honor.

THE COURT:  Is that something that will resolve this issue from your point of view?

THE PLAINTIFF:  Not to the extent he wants to try to file a motion in limine and object to all this course-of-conduct stuff.  But for the purpose of the deposition, I would agree that would resolve it if I'm allowed to ask that during deposition.

THE COURT:  To make sure that we're all clear, you're

allowed to ask questions with respect to what Mr. Myers personally knows as an individual --

THE PLAINTIFF:  Yes.

THE COURT:  -- with respect to that time period.  So he doesn't have to go in and research and look for every single document that he --

THE PLAINTIFF:  Not at all.

THE COURT:  They may have --

THE PLAINTIFF:  What I will ask him is -- he will have firsthand knowledge of.

THE COURT:  Okay.  Very good.  I think we have an understanding on that.

The next one is grievance handling deposition and abeyance [sic], 2011 to the present.

So this is a very large period of time as well.

MR. SHIFFRIN:  And, your Honor, I don't think that there's a dispute as to that.  I mean, to know -- again, I apologize for interrupting.  But just -- I think to streamline things, looking at Mr. Meadows's letter from yesterday, the January 6th letter, he lists five topics which I believe are the ones that he now wishes to raise to the Court.  So if that's --

THE COURT:  Okay.  And you have no dispute as to those?  Oh, you mean I should go to his letter --

MR. SHIFFRIN:  Yes.

THE COURT:  -- rather than go through yours.

The first document production, No. 34 -- Rule 34, improper objection to 30(b)(6) deposition topics.  Okay.

So we've talked about the pilot disability nurse case management scheme.

THE PLAINTIFF:  Yes, your Honor.

MR. SHIFFRIN:  That's right.

THE COURT:  We are looking at the 2013 equity distribution proceedings.

THE PLAINTIFF:  Correct.

THE COURT:  Is that where -- what we were just talking about?

THE PLAINTIFF:  No.  That is a separate issue.

THE COURT:  Okay.  So the 2013 equity distribution proceedings explicitly pled in FAC, Paragraph 70 to 82.  You want Mr. Myers to testify on behalf of the APA with regard to something -- these equity distribution proceedings from 2013?

THE PLAINTIFF:  Yes.  Mr. Myers actually ran those proceedings.  He was the counsel arguing on behalf of APA.

THE COURT:  Okay.  And what's your objection to that, Mr. Shiffrin?

MR. SHIFFRIN:  Again, looking to the actual request he's made, they go -- the request asks for information that goes well beyond Mr. Meadows.  He asked for the criteria, process and factual and legal basis for the exclusion of

approximately 241 MDD pilots from certain silos and full-share payout with a 2013 equity distribution.

Let me back up and put it in a little bit of context. In 2013 or so, American Airlines entered into bankruptcy. Actually, a little earlier than that, but a lot of what occurred was in 2013. And American Airlines and APA entered into a settlement. And as part of that settlement, APA received a large share of equity in American Airlines, which it then had a role in distributing to the members of APA, to the pilots who worked at American.

And it set up a process to determine a fair way to allocate those shares. And there was a complicated process. And there was a backstop of arbitration. So if any pilot was upset with his distribution or his or her distribution and wanted to challenge it, he or she could dispute and have it resolved by an arbitrator. And that's what occurred.

And Mr. Meadows was one of the pilots who filed a challenge and was successful in the challenge.

In that process, there were many disabled pilots who were treated in different ways, according to their circumstances. And it's difficult to characterize their treatment across the board. And APA took certain positions for different reasons with respect to different pilots.

THE COURT:  Okay.

MR. SHIFFRIN:  Asking Mr. Myers to put himself back

into the role that he played in 2013 as to why there was treatment of -- different treatment for these 240 pilots or whomever would be very burdensome and difficult --

THE COURT:  I see.

MR. SHIFFRIN:  -- and not necessarily to the purpose of the case.  I've looked at the allegations in the amended complaint.  They all pertain to Mr. Meadows's treatment in that process.  And we said, as we said in the objections, that we're willing to produce a witness to testify on behalf of APA regarding the positions that APA took with respect to Mr. Meadows.

THE COURT:  Okay.

MR. SHIFFRIN:  We object to having an APA witness be asked to be prepared to testify as to other --

THE COURT:  The other 239 individuals.

MR. SHIFFRIN:  Yeah.  Well, as we've said, Mr. Myers will -- can answer questions in his personal capacity in his deposition as well.  So, you know, we've attempted to provide a path forward on this issue, as we have before.

THE COURT:  So, Mr. Meadows, to the extent that Mr. Myers will be testifying with regard to your equity distribution, is that sufficient?  Or are you asking him about --

THE PLAINTIFF:  Well, what Mr. Shiffrin is trying to tell you is, APA deprived 239 pilots like me of $100,000 of

equity each, about $24 million, and are petrified of having to pay all that with prejudgment interest.

I'm the only pilot, any of the former pilots -- 1200 pilots filed arbitration.  I'm the only one that won that proceeding.  And it's extremely relevant because this is the first time we learned that Mr. Myers, APA's general counsel, declared we were no longer members of the bargaining unit, which was news to us.  We didn't know that.

THE COURT:  And -- but then we're back to the situation where you are now testifying.  You're telling me these facts.

THE PLAINTIFF:  No, no.  I'm just saying --

THE COURT:  What is it that you need to ask?

THE PLAINTIFF:  I want to ask Mark Myers why they -- they finally -- they concluded we were no longer members of the bargaining unit and didn't owe us a duty, because that's how they treated us at this juncture.  We didn't know that up to that point.

And also --

THE COURT:  Well, he can answer that with respect to you, rather than us.

THE PLAINTIFF:  With me.  With me.  Yeah.  They're all concerned about the other pilots.  I'm only worried about me and my claims.

Now, the other thing is --

THE COURT:  He's saying, I need to prepare this

witness.

THE PLAINTIFF:  He doesn't need to prepare the witness at all.  The witness -- the witness is fully capable of answering from memory.  He's a very intelligent man.  He's a Navy JAG officer.  He's -- he ran that whole proceeding.

THE COURT:  We can all be very intelligent, but not remember everything that --

THE PLAINTIFF:  But yeah.  I've -- he's very --

THE COURT:  I'd like to remember everything that happened in 2013.  But I don't.

THE PLAINTIFF:  Unless he got hit in the head, he's got pretty good recall.  I've known him for a long time.  He's very accomplished.

THE COURT:  So you have no objection to the fact that his testimony will be limited to what he remembers about your particular --

THE PLAINTIFF:  Exactly.  Yeah.  That's all -- yeah. I'm not seeking on the other pilots.  No.

THE COURT:  Perfect.  Then we're good.

THE PLAINTIFF:  Okay.

THE COURT:  Then we can go on.  The sourcing and use of Bad Dennison [phonetic] legal opinion and REDDI committee.  I don't know what any of these things are.

THE PLAINTIFF:  Okay.  Well, the Bad Dennison opinion letter was a secret legal paper obtained by Mr. Myers to

justify their abandonment of representation of the pilots in the equity distribution.  It was issued in December 12th, 2016.

THE COURT:  Okay.  It's a secret.

So let's start with this.  Is there an attorney-client privilege?

MR. SHIFFRIN:  Yes, your Honor.

THE PLAINTIFF:  There is not.

MR. SHIFFRIN:  Yes.  It's privileged.

THE COURT:  Have you seen it?  Have you seen -- Mr. Meadows, have you seen this legal opinion?

THE PLAINTIFF:  I've had it since 2017.  It was -- the REDDI committee is what they call the reinstatement of disability dropped investigative committee.

In 2019, the president of the union formed a committee to investigate all the representational failures and grievance -- failure to prosecute this grievance for reinstatement of all the pilots in the MDD group [indiscernible] 1212.

And this legal opinion letter -- panel of three pilots was created for a formal proceeding.  They investigated APA's attorneys, Mark Myers and James Clark, and the board of directors was shocked that they were never given a copy of this legal opinion which would require authorization by APA's board of directors, the governing body.  They were never given -- Mr. Myers obtained this legal opinion with the premise that

they didn't believe they owed pilots like us the duty of representation, and he gave a narrative to this lawyer to get this opinion.

And -- but then it went on to say that they were cautioned if they took any action on behalf of any one of us pilots, the duty to [indiscernible] would reattach.  But that legal opinion letter was in the REDDI committee.  Mr. Myers was queried on it.  So was the APA legal director, James Clark.

It was later -- in the public record, in the docket of the matter of *Wallace Preitz versus Allied Pilots* of Pennsylvania, Eastern District court, it was questioned in a deposition of APA president Ed Sicher and it was discussed heavily.  The REDDI committee was not subject to attorney-client privilege.  They had carte blanche to interview and investigate all officers and staff of the union and all documents.

And that letter was -- I provided it to the committee. It was given to me.  And it's been in the public domain for now eight years.  And APA has never tried to claw that back.

THE COURT:  Okay.  Let me ask you this.  What is it that you want from Mr. Myers relative to that letter?

THE PLAINTIFF:  I want to know what -- why he sought that letter, what -- what his motivation was, who authorized it and what the purpose was.  This was highly prejudicial to pilots like me.

THE COURT: All that sounds privileged to me.

THE PLAINTIFF: No, it's not.

THE COURT: He --

THE PLAINTIFF: It's not privileged.

THE COURT: Was he an officer of APA at that time?

THE PLAINTIFF: Who?

THE COURT: Mr. Myers.

THE PLAINTIFF: Mr. -- Mr. -- no. He's a director of negotiations. He's an in-house attorney.

THE COURT: So he's an in-house attorney. And is he seeking a legal opinion from --

THE PLAINTIFF: But this REDDI committee --

THE COURT: I understand you saw the legal opinion.

THE PLAINTIFF: Okay. But --

THE COURT: But the --

THE PLAINTIFF: Your Honor --

THE COURT: -- the reason he asked for that legal opinion would be privileged, wouldn't it?

THE PLAINTIFF: Well, it wasn't privileged because it was unauthorized legal opinion. It wasn't --

THE COURT: I'm not saying the legal opinion itself. You have it. I understand.

THE PLAINTIFF: Okay.

THE COURT: But his reasoning behind why --

THE PLAINTIFF: I would argue that we had this

discussion before.  And I believe you were misinformed on the crime fraud exception.  You said you didn't have any knowledge of the [indiscernible] Labor Act and the LMRDA in our last hearing.

But in labor cases, there's a parallel to crime fraud in *Cox versus U.S. Steel* in Florida Southern District.  There's case law that established that you can pierce attorney-client privilege when there is bad-faith grievance handling and retaliation, as is the case for me here.

So to the extent -- I don't believe that -- what I'm asking is privileged.  But to the extent it is, it should be allowed to be questioned.

But the bottom line is, this letter has been discussed heavily in the REDDI committee in an open forum that was not provided.  It was later subsequently discussed as part of the deposition testimony of the APA president.  And it's in the public docket.  I mean, so -- and the --

THE COURT:  It sounds like the letter is public.  But I'm asking something a little different.

Let me go to Mr. Shiffrin.

MR. SHIFFRIN:  Yeah.  Much of what Mr. Meadows has represented is not true.  The APA has never waived its attorney-client privilege with respect to this legal opinion that it sought from outside counsel.

It -- we don't know how Mr. Meadows has obtained it.

Mr. Meadows has never told us how he obtained it.  He was the one to provide it to this committee.  But in all of the depositions that have taken place with -- about this, APA has always objected that the letter is privileged.  We've maintained it's privileged always.

But the REDDI committee was a committee, international committee, of APA.  It -- when it was deliberating with lawyers from APA, those communications were privileged, just like any other --

THE COURT:  So the REDDI committee is within the APA?

MR. SHIFFRIN:  Yes.  The REDDI committee was a committee established by the then-president of APA.  It was a committee under APA's constitution and bylaws, subject to all the confidentiality restrictions of an APA committee.

And its materials were -- have always been -- not all of its materials, but the materials in terms of its communications with lawyers are privileged.

THE COURT:  So --

MR. SHIFFRIN:  So we've never waived --

THE COURT:  I understand.

Mr. Meadows, I think that when you ask these questions of the -- of the witness, he's going to claim a privilege.  At that point, you're going to preserve the objection and bring it before the Court.  And then we'll know exactly what the objection is.

And you're going to have to explain why his -- why the crime fraud exception will apply to the questions that you're asking.  Because I need to know the exact questions and then I need to understand where the crime is or the fraud so that I can make a ruling.  Because right now, it's still theoretical.

THE PLAINTIFF:  Understood.  But however, what Mr. Shiffrin didn't tell you, the REDDI committee was open -- is a publicly -- there's no privilege.  I have all the notes, the handwritten notes and typed notes of the committee members. They were given to me and other pilots like me.  They're public.

So everything that was said in those committee proceedings is not privileged.  They interviewed attorneys and all that stuff.  Eric Ferguson, the president of the union, specifically said it was not subject to attorney-client privilege.  It was part of the mission statement of that committee, because they wanted to get to the core of the rot in the legal department of the APA, because it's a pilots' union. It's supposed to protect pilot members.  But what has really gone on over the years is the lawyers have protected the institution from the pilots themselves, and there's been a constant tension.  And that isn't a new thing.  Adversely, it's ruined pilots' careers to the tune of tens of millions or hundreds of millions of dollars of lost earnings.

So it's really a serious matter, and it needs to be

addressed.

But the things I want to ask are in the notes.  It's already been part of deposition testimony in the *Preitz* litigation.  So I'm not -- I don't know if anything I'm really seeking is privileged.  To the extent it is, I would defer to you.  I would probably stop the deposition and like to call chambers and ask for an in-camera review if there's any documents or anything that would be deemed to be privileged.

But you can ask Mr. Shiffrin.  To my knowledge, APA, he's claiming they still assert as privileged the letter.  But they've never made any effort to claw it back.

THE COURT:  Well, any document that is -- anytime an in-house lawyer is requesting a legal opinion with regard to a matter, it's going to be privileged.  Right?  That's just basic.

THE PLAINTIFF:  Understood.

THE COURT:  You're saying that privilege was waived at some point --

THE PLAINTIFF:  Yes.

THE COURT:  -- because it was discussed during this -- with this REDDI committee.

THE PLAINTIFF:  Well, it was in the public domain.  It was on public websites for years, for like at least eight or nine years.  Everyone who cares about it knows about it.

THE COURT:  So --

THE PLAINTIFF:  APA has never made any effort to claw it back.

MR. SHIFFRIN:  Your --

THE COURT:  So that's another issue.

But this particular lawyer has not waived it.  And if he's going to make that objection, we'll deal with that objection.

THE PLAINTIFF:  Okay.  But I just want to make clear with you, I want to make sure I stay within the guidelines that you assert.  If there's publicly -- there's notes of the committee's proceedings in the public domain and I want to question on topics within those notes as it relates to him, that's fair game, is it not?

THE COURT:  Testimony that he made or testimony that he gave in another proceeding?  Is that what you're asking?

THE PLAINTIFF:  Not really testimony.  It wasn't sworn.

THE COURT:  But statements that he made in front of this committee?

THE PLAINTIFF:  Yes.

THE COURT:  Okay.  Mr. Shiffrin?  Can I --

MR. SHIFFRIN:  I would have to see them.  I'm not sure what he's referring to.

I don't agree that the proceedings -- APA doesn't agree that the proceedings of the committee were not subject to attorney-client privilege.  Some of them were not and some of

them were.  When Mr. Myers was speaking to the committee, I suspect that they were privileged.  If he has -- if Mr. Meadows is --

THE COURT:  An in-house lawyer.

[Indiscernible speaker overlap.]

MR. SHIFFRIN:  -- of notes, you know, he would not have been authorized to have received them.  And APA --

THE PLAINTIFF:  The --

MR. SHIFFRIN:  This is news to me that he has them.  So I am --

THE PLAINTIFF:  Your Honor, to be clear, because I know Mr. Shiffrin's newer here and he probably doesn't understand the whole history.  But these notes were available to anyone that asked for them.  The committee sent them to me and other pilots like me that requested them, because the intent at President Ferguson's time was to air this out and resolve it, not bury it.

In the end, it got buried because it was deemed so devastating to the institution that the president felt he had to safeguard against the interests -- best interests of the union because they were in the middle of contract negotiations. They thought it would be derailed because Mr. Myers was director of negotiations and he was severely conflicted.  So he was recommended for termination for ethics grounds, and the president decided not to take that tact because of the

collateral damage to the contract negotiations.  But this is all in notes.

THE COURT:  So it sounds like whoever did, I guess, reveal what's in this legal opinion did so without the authority to do so, is what I'm hearing you say.

THE PLAINTIFF:  I don't believe so.

MR. SHIFFRIN:  That's --

THE PLAINTIFF:  The notes -- the notes were allowed to be distributed, and they were distributed by the committee to pilots that asked for them.

MR. SHIFFRIN:  I'd be curious to know from Mr. Meadows how he obtained the legal opinion in the first place.

THE COURT:  Okay.

MR. SHIFFRIN:  We haven't understood that.  I think it's central to his claim that it's been authorized.

THE COURT:  That somehow it's waived.

So let's see what happens at the deposition.  If he determines -- if Mr. Myers determines that the documents are privileged, then at that point you'll be able to explain to the Court why they are not and why even if they are privileged that they fall within the exception.

So let's go on to the *Emory versus APA* litigation.  The facts and findings in *Emory* are directly relevant.  Now, why would Mr. Myers be someone who can testify with regard to the facts and findings in this litigation?  It seems to me that the

facts and findings in that litigation would be public knowledge.  It would be --

THE PLAINTIFF:  Mr. Myers was a witness in that litigation also and arguing attorney.

THE COURT:  So what would he have that would not already be in --

THE PLAINTIFF:  This is what he has.  This is a 30(b)(6) topic.  Remember?  I'm not deposing Mark Myers directly.  This is a 30(b)(6) issue.  So it's relevant to my case because it's identical -- the *Emory* litigation involved --

THE COURT:  No, no.  I'm not arguing it's not relevant. But there's a litigation.  It's been decided, I'm assuming, in some court somewhere.

THE PLAINTIFF:  In this court by Judge Hurley.

THE COURT:  Okay.  And you want to ask the APA about this litigation.  What exactly --

THE PLAINTIFF:  Yes.

THE COURT:  -- do you want to ask them about the litigation?

THE PLAINTIFF:  Well, it's parallel -- I believe they're estopped from arguing -- I have Count 6 in this claim that argues free speech retaliation in violation of the LMRDA for an incident that occurred in April of 2014 when the union board of directors met in closed session and secretly declared that pilots like us were no longer members of the union.  They

have locked us out of the union website.  Not just the 240 MDD pilots, but all 950 disabled pilots.  They locked us out without notice from the website after we filed an EEOC charge, and it was in violation of the LMRDA.

I sued the APA.  Cathy Emory sued the APA.  In my case they convinced the Utah judge to force me into the internal remedies, the administrative remedies they had in the union -- the appeals board.  Emory's judge didn't buy into that, and he allowed her to continue her LMRDA claim.  And she prevailed on the merits, and they deemed it to be an impermissible infringement of free speech in violation of the LMRDA.  Her order in the findings of fact and law said that certain board members were likely motivated to silence and muzzle the MDD pilots viewed to be the most combative and litigious.  They explicitly named me by name and one of the postings I made in the union website.

So it's highly relevant to my claim, Count 6.  It's the identical act, identical fact pattern.

And for some reason, Mr. Shiffrin thinks he wants to exclude it.  He says that the judge's order is hearsay.

I know I'm *pro se*, but I'm pretty certain court orders are not hearsay.

MR. SHIFFRIN:  I haven't said that, your Honor.

THE COURT:  Let me see if I can understand what the objection is, Mr. Shiffrin.

MR. SHIFFRIN: Correct. Yeah. We have not -- we have not said that the *Emory* case cannot be cited in this case at all. That's not our position. We understand that it may be relevant. We understand that Mr. Meadows may try to argue that it has some type of preclusive effect. We'd probably take issue with that.

The issue is, what is the witness, Mr. Myers, expected to do in deposition? And the topics that are listed -- the way that it's described is that he's asking for APA's litigation position, testimony, depositions in *Emory* and Judge Hurley's findings of fact that a certain APA board officer was motivated by the desire to silence a group.

It's unduly burdensome to ask a witness to become familiar with all the trial testimony and depositions in another case. And that's our objection. We've said that Mr. Myers will answer questions in his personal capacity about APA's positions. We say that here in the December 5th letter, and that he'll -- he would answer questions about Judge Hurley's decision. But asking him to review an entire litigation record to prepare is unreasonable.

THE COURT: Okay. So it looks to me that you're asking the witness, Mr. Meadows, to be familiar with the facts and the findings in *Emory*. Is that what you're asking?

THE PLAINTIFF: Well, no, your Honor. First of all, when I --

THE COURT:  Okay.  Good.

THE PLAINTIFF:  What --

THE COURT:  Just "no" is enough.

THE PLAINTIFF:  Well, I --

THE COURT:  Mr. Shiffrin, he said no.

THE PLAINTIFF:  Of course.  Let me be clear.  When I asked these topics, I had no idea Mark Myers was going to be the designee.  He happens to be the person best equipped to answer it because he argued on behalf of APA and was deposed as a witness.  I think he may have been on the stand in that case even.  And he had very relevant testimony to how they treated the MDD pilots.

THE COURT:  I understand that.  But how long ago was this litigation?

THE PLAINTIFF:  20 --

MR. SHIFFRIN:  It was 2014 or so.

THE PLAINTIFF:  -- 17.  The ruling was in 2017 or 2018.

THE COURT:  So here's the concern that an attorney has when you give them a list of issues:  that Mr. Myers may not remember some topic or some issue that you want to ask him about that had something to do with that case.  And then you'll turn around and say, But it was in the list of topics.  You should have studied that entire case transcript and every deposition so that you could answer my question.

They're concerned that you're going to say that.  Do

you see what I'm saying?

THE PLAINTIFF:  No.  I'm asking him about --

THE COURT:  That's why they're saying --

THE PLAINTIFF:  I'm going to ask him about documents in that case and statements made.  I'll show him the documents. He can answer --

THE COURT:  And what are you going to ask him about the documents?  Did he draft those documents?

THE PLAINTIFF:  No.

THE COURT:  Does he have an opinion on the documents?

THE PLAINTIFF:  He has certain testimony that affected pilots like me.  I want to know why he said certain things. Maybe he can answer it; maybe he can't.  But he's relevant.  I mean, like I said --

THE COURT:  I'm not saying he's not relevant.  My question goes to, how much information do you want him to have with --

THE PLAINTIFF:  I don't need the whole case file.  I'm aware of the case file.  I don't expect him to know all that.

THE COURT:  Are you expecting him to know what his testimony was in that case and you --

THE PLAINTIFF:  Yes.  I'm expecting him to know what he knows, personally.

THE COURT:  Which would be his testimony.

THE PLAINTIFF:  His testimony and positions.

THE COURT:  Let me go back to Mr. Shiffrin.  We can narrow it down to his testimony.  Although I don't know if that's days of testimony, weeks --

THE PLAINTIFF:  No.

THE COURT:  -- of testimony.

MR. SHIFFRIN:  That's reasonable, your Honor.  We can comply with that.

I'll note that Mr. Myers won't testify as to privileged topics.  But to the extent matters are non-privileged, you know, he can be prepared to testify that.

THE COURT:  Okay.

THE PLAINTIFF:  I'd like to question him about his testimony and positions he may have taken on a record in that case.  That's what I want to ask him.

THE COURT:  Okay.  Next were board resolution 2016-30 and the Carey promise.  These topics are essential to proving APA's bad faith and its breach of promises.

THE PLAINTIFF:  Yeah.

THE COURT:  What's -- what is this about?

And, Mr. Shiffrin, what's your objection to this?

MR. SHIFFRIN:  Well, first of all, there is no objection to board -- to testimony about board resolution 2630, so I'm not sure why that's listed here.  We've -- I think that was Topic No. 7.  We've said that we would testify to the extent there is testimony to be had on that.

As to the Carey promise, my understanding is Mr. Meadows contends that a prior president of APA made a promise to him that that president would not sign a new collective bargaining agreement on behalf of the union without including a provision that would return Mr. Meadows to employment in American.

And we -- APA's position is, no such promise was made. Like, as a factual matter, that's not true.

But we've said, and as is spelled out in the December 5th letter, that to the extent he wanted to ask questions about communications that occurred between this president and Mr. Meadows, he can do so.  We just don't --

THE COURT:  To the extent that Mr. Myers knows about it.

MR. SHIFFRIN:  Yeah.  If he says that we as an institution could even come up with that.  But yes.

THE COURT:  Okay.

MR. SHIFFRIN:  But we don't agree with the premise that there was a promise made.  And that's all that we -- that was the objection on that point.

THE COURT:  All right.  So, Mr. Meadows, Mr. Myers is willing to testify to what the APA would know about --

THE PLAINTIFF:  Yes.  That's fine.

I'm pretty certain Mr. Myers and Mr. Clark know that the promise was made, because in the election in 2022, when

Captain Sicher was elected, the legal department was proffering a narrative that Captain Sicher shouldn't be elected because he's a puppet for Lawrence Meadows and he won't sign a collective bargaining agreement that doesn't include Lawrence Meadows because that was a promise previously made.  So the legal department is fully aware.

THE COURT:  Well, all this is very interesting.  But all I'm trying to say --

THE PLAINTIFF:  Yeah.  By -- so yes.  I agree, and that's fine.

THE COURT:  Let's go on to the next topic.

THE PLAINTIFF:  And 2630, there's no objection.  I'm good with that also.  Thank you.

THE COURT:  Great.  Okay.  And the improper objections, we already discussed that.

THE PLAINTIFF:  Yes.

THE COURT:  So we're going now to No. 5:  Plaintiff's forthcoming motion to strike Defendant's untimely expert witness and report due to Defendant's failure to comply with the 30-day deadline.

So there was some sort of expert witness report that was provided to you?

MR. SHIFFRIN:  Your Honor, I'm happy to speak to this.

We received Mr. Meadows's expert report on December 1st of 2025.  It was only a few days earlier that -- the Wednesday

before Thanksgiving that he confirmed for us that he was going to have an expert witness. That was long after any deadline that we had agreed to for such disclosure.

So starting December 1st, we set about to identify, retain, engage and, you know, get to an expert the type of information that he would need to respond to Mr. Meadows's expert report.

As soon as I was able to -- I believe it was in December -- in mid-December, I disclosed to Mr. Meadows that we would be calling a rebuttal witness and I told him that we would be --

THE COURT: Okay.

MR. SHIFFRIN: -- we expected to provide a rebuttal report to Mr. Meadows by January 15th --

THE COURT: Okay.

MR. SHIFFRIN: -- that date being what was most realistic, given the time period that we were in and the holidays.

THE COURT: Okay.

MR. SHIFFRIN: And I'm --

THE COURT: So that's -- he's saying it's untimely because it's 15 days late?

MR. SHIFFRIN: Yes.

THE COURT: Okay. And did the expert witness provide a report by January 15th?

MR. SHIFFRIN:  Well, we're not there yet, your Honor. I mean, we're working on it now.  January 15th is next Thursday.  And we're -- the expert is working to meet that deadline.

THE COURT:  Okay.

MR. SHIFFRIN:  And we've scheduled a deposition for Mr. Meadows's expert on January 26th, for our expert on January 27th.  So there's no -- there's no prejudice from -- to Mr. Meadows from the timing of when that report will be delivered to him.

THE COURT:  Okay.  So, Mr. Meadows, your response?

THE PLAINTIFF:  Well, your Honor, again, this is yet another blatant and indefensible violation of the rules.  I served my expert report December 1st.  Mr. Shiffrin threatened me that if I didn't provide my report before my deposition he was going to strike my expert.  I said, Listen, based on Judge Moore's order and the three-month extension, the expert disclosure deadline is January 1st.

So I -- instead of getting in a contest with him, I had my expert do my report over the Thanksgiving holiday and he had it Monday, which I didn't believe was required.  But I felt like I didn't want to get in front of you arguing over what the discovery -- the expert disclosure date was.  So I just submitted my report.

That triggered -- under Rule 26(a)(2)(D)(ii), that

triggered Mr. Shiffrin's rebuttal obligation to submit a written report within 30 days.

I asked him in mid-December, When are you going to submit this report?

He said, January 15.

I said, That's not acceptable.  You've got 30 days.

He goes -- he cited the holidays.

Yes.  Christmas and New Year's are two legal holidays. But that's a legally frivolous excuse.

The presumptive sanction under Rule 37(c)(1) is exclusion.  And I request leave to file a motion to strike the report because this isn't a one-off problem.  This is a part of a pattern of prolonged delay, just like Judge Moore cited, with their production, with their RFIs.

I mean, I'm glad to be in front of you now, but I'm here to tell you, there's been so many meet-and-confers and so many email chains in the last month and a half, your head would spin.  And it's just intolerable that they can --

THE COURT:  How --

THE PLAINTIFF:  On to the next -- parallel to this topic, I wanted to subpoena their expert.  He refused to -- he gave me a CV with a P.O. box, which is actually a UPS Package Store.

I asked Mr. Shiffrin for his physical address and email so I could serve him under Rule 45.

He said he would accept service.

I hate to say it, but I'm distrustful of APA's counsel. So I wanted to serve it under Rule 45, because he is unrepresented.  Mr. Shiffrin doesn't even have the authority to really accept service for a nonparty.

But I chose to -- and he refused to give me his contact information.  He said it wasn't --

THE COURT:  That's not a non -- the expert's just the expert.  Yes.  He --

THE PLAINTIFF:  But he's not represented by Mr. Shiffrin.

THE COURT:  Oh, I understand.  But this is --

THE PLAINTIFF:  He should be served under Rule 45.

THE COURT:  Regardless, let me ask these questions.

THE PLAINTIFF:  Sure.

THE COURT:  First of all, I understand that you submitted yours on the -- December the 1st.

THE PLAINTIFF:  Correct.

THE COURT:  I understand that they're going to be about 15 days late.

What prejudice is there to you as a result of that?

THE PLAINTIFF:  Because -- I mean, I don't have the report.  And they're flouting the rules.  I mean, it seems like these -- they violated the rules with impunity.  If I dared violating one of these rules, I'm certain I'd be sanctioned or

have my --

THE COURT:  Well, it's a little -- you're held to a standard as the Plaintiff, who's filed this litigation --

THE PLAINTIFF:  I understood.  But they should be -- they're professional attorneys --

THE COURT:  -- that you will do certain things.

THE PLAINTIFF:  You're telling me it's okay for them to violate the rules?

THE COURT:  It is not okay.  But I'm trying to understand the argument that you're making as to why the penalties should be to strike the expert.

THE PLAINTIFF:  Because --

THE COURT:  Tell me how this prejudices you.

THE PLAINTIFF:  Everything prejudices me because I have no documents, number one.  I've asked for additional documents for calculations, which aren't due just yet.  But I'm not going to get to depose this guy until, like, four days before the fact discovery cutoff.

THE COURT:  Uh-huh.

THE PLAINTIFF:  And it's just really late.  The whole thing's late.

THE COURT:  Okay.  So let me go back, then --

THE PLAINTIFF:  Like I said, Mr. Shiffrin threatened me to strike my expert -- there was a dispute -- it's clear based on what we discussed earlier that disclosure is January 1st.

The fact [indiscernible] based on Judge Moore's scheduling order and [indiscernible] standing at three months.

THE COURT:  So he disclosed the name of his expert witness before January 1st?

THE PLAINTIFF:  Not in full.

MR. SHIFFRIN:  Yes.

THE PLAINTIFF:  He didn't provide all the contact information and didn't provide his -- his pay rate.  It wasn't a full disclosure.

THE COURT:  But there was a disclosure of that fact -- the fact that there was an expert witness before January 1st?

THE PLAINTIFF:  But it wasn't in accordance with the rules.  It wasn't a complete disclosure.  And he's required to provide the report before January 1st.  Not just the disclosure.  The rebuttal report is due 30 days after my report is submitted.  If there's written -- a written report, the expert rebuttal report has to be submitted within 30 days.  And that's --

THE COURT:  And when did the Defendant first learn that you had an expert?

THE PLAINTIFF:  Well, I told him early on.  I gave him my expert report, a previous one, and told him I was going to use this expert.  It was done in production on November 7th.  They knew they had the report.  And he asked me, Am I declaring [indiscernible] use the same expert?  I told him that.

THE COURT:  Okay.

THE PLAINTIFF:  And I didn't file -- now, here's --

THE COURT:  And also, I want to understand what this expert is.  What expert report is --

THE PLAINTIFF:  Economic expert.

THE COURT:  In what issue?  Economic in what issue?

THE PLAINTIFF:  With respect to my damages, lost pay and lost earnings.

THE COURT:  Oh, I see.

THE PLAINTIFF:  What we were talking about earlier, the motion to quash, the damages.

THE COURT:  So your expert is explaining what your damages are with respect to --

THE PLAINTIFF:  Economic expert.  Yes, your Honor.

THE COURT:  Okay.  And they learned that you would have this expert when they received the report on December the 1st?

THE PLAINTIFF:  Yes.

THE COURT:  And they learned of the identity.  Okay.

THE PLAINTIFF:  Yes.

THE COURT:  So before January 1st, they told you, Well, we'll have a rebuttal expert, and they told you the name of the person.  But you're saying they didn't give you the address.

THE PLAINTIFF:  Right.  And they refused to give me the address.

THE COURT:  Okay.

THE PLAINTIFF:  And I can't serve the guy at a UPS Store.

THE COURT:  So, Mr. Shiffrin, if you could help me understand why you didn't give the address at that point, one. And, two, why your expert needs till January 15th.

MR. SHIFFRIN:  On the first point, your Honor, I've told Mr. Meadows that I will accept service of a subpoena on behalf of the expert.  That's very common in litigation.

THE COURT:  Okay.

MR. SHIFFRIN:  Given that's the case, there is no good reason for why Mr. -- why -- our expert's name is Matt Barton -- should be served at his personal address.  It's harassing to send a process server to somebody's house.

There is no need for Mr. Meadows to have Mr. Barton's email address under any circumstances.  It's not necessary for Rule 45 service.

Just -- having said that, I will accept the service. That should be sufficient and end the inquiry as to Mr. Barton's contact information.  I'll note that Mr. Meadows has a tendency to send intemperate communications to people like myself.  And I do not want to subject our expert to that type of behavior.  So I think that should completely resolve that issue, the fact that I've said that Mr. --

THE COURT:  That the attorney would accept service for the expert.  That's fine.

MR. SHIFFRIN:  Exactly.

As to the timing, Mr. Barton has been working through the holidays to get an expert report done.  But there's just time that it takes to -- first of all, it took time to retain him, to get him the information that he needs from APA to do his work.  And now he's doing that work.  And we will get him a report by January 15th.

If you asked Mr. Barton, he'd say, Gosh, I really need another month.  I've been pushing him to get it to me as soon as he can.  It's just what is realistic to do.  And so January 15th was the earliest possible date that we were able to get.

THE COURT:  Was he -- did he need that -- also that information from Boeing regarding --

MR. SHIFFRIN:  Well, that will play into it if we're able to get it in time.  I hope that we will have it.  We received information from Atlas, and --

THE COURT:  Atlas.

MR. SHIFFRIN:  -- that would be relevant to his report. We received it today.  I'll pass it on to Mr. -- to our expert as soon as I'm able to.

But yes.  I mean, there's also information from APA that Mr. -- Mr. Barton prior to this had not been familiar with any of this.  And so there's some startup time in order to get him on board and in a position to prepare an expert report. And doing so -- I mean, I think, as we all experienced, there

was sort of a long holiday period this year around the holidays.  We've been working to do that.

And January 15th, I think, is a reasonable date for that.  Mr. Meadows has not been reasonable in terms of the timing with respect to these matters.  And so that's what we've told him that we're going to do, as he has not identified any prejudice to -- from that date.  We think it's a good date and there should be no consequences from that.

THE COURT:  Okay.  So --

THE PLAINTIFF:  Your Honor, if I may, I find his mischaracterizations of my -- I think he used "intemperate emails" -- offensive and not well-taken.  All my emails were very professional and done in a proper manner.

Mr. Shiffrin's conduct has given me pause to trust him. I don't need four days before the fact discovery cutoff to have his witness suddenly getting the flu or have some excuse not to appear.  I'm sorry, but I don't trust Mr. Shiffrin.

THE COURT:  Well, your concern is that --

[Indiscernible speaker overlap.]

THE PLAINTIFF:  -- 45, as is my right.  And he has all these excuses.  But Rule 26 and 34 don't allow for excuses.  He has a 30-day deadline, not to mention the disclosure cutoff in this case is January 1st.  So it would be January 2nd.  And that's it.  That's the cutoff.

So if we're not going to adhere to rules, I mean, I'm

confused.  I know I'm *pro se*, but I'm a pilot.  I'm a former military officer.  And the rules are the rules.  You follow the rules or you suffer consequences.

And I mean, this isn't a one-off violation.  This is a pattern.  And a court has recognized it, Judge Moore; and this Court should do the same.  They should not be allowed to flout the rules brazenly and not be sanctioned for it.  And I want to seek sanctions under Rule 37(c)(1) for this.

So I would like to move to strike.  I'd like permission for leave to file a motion to strike their expert.  And they've had plenty of time.  It's inexcusable.

You don't understand the phone call I got from him the day before Thanksgiving when I had a tooth rotting out of my mouth in extreme pain, how he's threatening to strike my damages if I don't get him a report within, like, one week, less than a week.  He wanted it by Tuesday, I think, the day after Thanksgiving.

I called my expert.  He did me a huge favor because I worked with him before in a bank case, and he did it over the holiday weekend.

So I don't want to hear excuses from Mr. Shiffrin how his expert can't do it because of Christmas and New Year's.  I'm sorry.  The deadlines exist for a reason.  And if we're not going to follow them, then I don't know what the point of the whole thing is.  It's just very frustrating.

THE COURT:  Well --

MR. SHIFFRIN:  To put that in context, your Honor, Mr. Meadows's deposition was scheduled for December 4th.  He had not at any point in this litigation prior to that provided us a damages calculation.  It wasn't included in his initial disclosures as it was required to be.  He had missed a September deadline for disclosing his expert.

And so in a meet-and-confer call prior to Thanksgiving, Mr. Meadows told us for the first time that he intended to call an expert.  And I said I needed that information.  I need that information before his deposition.  His deposition, as you may recall, was then postponed because of his emergency dental surgery.

But that's the context for why we were insisting on getting his expert report then, which was that we were very late in receiving it when we should have had it long before his deposition was scheduled.

THE COURT:  So the Plaintiff has also missed a deadline for disclosing the fact that he even had an expert?

THE PLAINTIFF:  That's not true, your Honor.  I gave --

THE COURT:  Oh.

THE PLAINTIFF:  I put in my initial disclosures.  I attached -- I told him about the original report and that we expected to update based on the new collective bargaining agreement, which they didn't get to me timely.

So that -- they were fully aware of -- they had an earlier version of a damage report that's only been updated to an increased amount based on the new contract rates.

THE COURT:  And you told them back in September that you would have this --

THE PLAINTIFF:  Yeah.  I told them -- I declared my damages.  And they knew about my expert.  I produced it in my production that you ordered on November 7th.  They had it in the file.  It was clearly spelled out.  So --

THE COURT:  I'm not asking whether you produced that expert report.  I'm just trying to understand whether you --

THE PLAINTIFF:  I timely disclosed any expert.

THE COURT:  -- disclosed that you had an expert back in December.

THE PLAINTIFF:  Yeah.  I -- timely --

MR. SHIFFRIN:  That's not true, your Honor.  That's not true.

THE COURT:  Okay.

MR. SHIFFRIN:  He did not disclose his expert until November 26th, the Tuesday before Thanksgiving.

THE COURT:  Why are we having a disagreement on something so --

MR. SHIFFRIN:  I would -- I would be --

THE PLAINTIFF:  Well, again, in -- the cutoff to disclose an expert was January 1st.  And I did it well before

the cutoff. So I don't -- you know, it seems like he wants to flip things back.

THE COURT: The cutoff was not in September? The cutoff was not in September? There was not a disclosure deadline in September?

THE PLAINTIFF: No, there was not. Mr. Shiffrin lied to me all through the summer, had me to believe that the joint scheduling order we submitted in April was operative, and it was not. It was actually Judge Moore's order. And I was misunderstanding that. But he misled me all through the summer and into September about various dates that were in an order that was never approved.

So I'm sorry. I'm *pro se*.

THE COURT: I see.

THE PLAINTIFF: So I'm --

THE COURT: So this is the problem and discrepancy. So I understand now.

THE PLAINTIFF: Okay.

THE COURT: There is no operative order. There was an order --

THE PLAINTIFF: Well, there is. Judge --

[Indiscernible speaker overlap.]

THE COURT: And now there is really no operative order. And I'm being asked to strike an expert on an order -- for missing a deadline that is really not a deadline --

THE PLAINTIFF:  Well, irrespective of the order, the trigger for their expert rebuttal report is 26(a)(2)(ii).  It's got nothing to do with the scheduling order.  When I gave them my report, they had 30 days to produce a rebuttal report.

THE COURT:  Okay.

THE PLAINTIFF:  They were aware --

THE COURT:  Okay.  So --

THE PLAINTIFF:  -- and I put them on notice --

THE COURT:  So I --

THE PLAINTIFF:  -- and they refused.

THE COURT:  I understand.  But they can still ask the Court for more time.

THE PLAINTIFF:  They haven't done that, though.  And they didn't --

THE COURT:  Well, it sounds like what they're doing right now.

THE PLAINTIFF:  It's too late.  I'm sorry.  It's too late.

THE COURT:  Oh, I see.  Okay.  So because we have the issues with the case in terms of court deadlines, because we have one judge and I'm a new judge on the case, and we don't actually have an order in place, it seems inappropriate for me to then strike a report that, at best, there's no stated disadvantage to the Plaintiff in that the depositions are set; it's within the deadline for discovery; and you haven't really

articulated a specific reason other than the rule itself.

THE PLAINTIFF:  Well, again, the order's irrelevant because the trigger is Rule 26.  It doesn't --

THE COURT:  I understand.

THE PLAINTIFF:  -- doesn't matter what the scheduling order says.  Once I gave them my report, they had 30 days.  And he refused to comply.  He was obstinate.  He wasn't cooperative.  I brought this to his attention December 15th before the holidays.  And he had plenty of notice to fix it and cure it.  He refused.  He's also refusing to give me his service address, which is --

THE COURT:  So I understand.  But he was --

THE PLAINTIFF:  And that was the other thing I wanted to --

THE COURT:  -- willing to accept service.

THE PLAINTIFF:  -- bring to --

THE COURT:  So --

THE PLAINTIFF:  I want -- I want a binding subpoena on their expert.  I don't want to -- it's too close to the fact --

THE COURT:  So right now, I can tell you this.  Mr. Shiffrin has agreed to have the expert available --

What date?  Just --

MR. SHIFFRIN:  December -- I don't want to get it wrong on the record.  I believe it's January 27th.

THE COURT:  So let's -- if you want to double-check so

we can just put it on the record.

MR. SHIFFRIN:  January 27th.  That's correct.

THE COURT:  January 27th.

THE PLAINTIFF:  My concern --

THE COURT:  That's his representation to the Court.

THE PLAINTIFF:  Your Honor -- I understand.  Are you ordering that, I guess?  Because my concern is if he doesn't appear, what's my resource?

THE COURT:  Right.  He's made a representation to the Court.  We're all here.

THE PLAINTIFF:  Okay.

THE COURT:  The problem would be that he will have gone back on that representation and then you can tell me what prejudice that has to you, which will be that you're now missing the --

THE PLAINTIFF:  Okay.

THE COURT:  -- deadline.

THE PLAINTIFF:  That's fair.

THE COURT:  And we can -- we can go further at that point to discuss it.  Okay?

THE PLAINTIFF:  Okay.

THE COURT:  No. 7.  So we're at the last issue.  The Defendant's failure to cooperate in scheduling a court-ordered mediation deadline.  That's in Plaintiff's unilateral action.  So what's happened with court-ordered mediation?

THE PLAINTIFF:  Yeah.  So I got concerned.  I spoke to Mr. Shiffrin in a pretty detailed meet-and-confer December 19th and I raised the scheduling order issue.  And he said he would file a notice that we could sign jointly, but he never did that until just yesterday.

THE COURT:  Okay.

THE PLAINTIFF:  And the landscape has changed significantly.

And he also promised to contact the mediator.  And I -- again, I was a little skeptical.  And we went all through the holidays.  He never contacted the mediator, and I watched her calendar book up.  I got very concerned that she had very limited dates.  So I put a demand on him last week and said, Listen, there's, like, six dates available.  You know, before the -- our deadline is February 20th to do the mediation.

And he kind of just said, Well, I can't really commit. I'll have to check with APA.  He had all these excuses.

So finally I told him yesterday, I was like, Listen, I'm going to book -- he says, Maybe we can do it the 10th or the 11th.

I said, Well, the 10th is no longer available.  So yesterday I took a risk and booked at my own expense and had them invoice him, and now he's suddenly willing to pay the invoice.  And I'm sorry to bring this to your attention, but it's a game of brinksmanship.  And I'm not about to be -- as a

*pro se* to be put in a position of violating a court order.  I'm not willing to violate any court order.

THE COURT:  I appreciate that.

THE PLAINTIFF:  So I think if he pays, it should be resolved, you know.  And that's it.

THE COURT:  Isn't the cost of the mediation split between the parties?

MR. SHIFFRIN:  Your Honor, yeah.  To put this in a little context, because a lot of what Mr. Meadows said was again a mischaracterization of our communications on this:  I apologize.  I did say that I would contact the mediator over the holidays.  Much of my time was taken up dealing with Mr. Meadows on other matters, and I didn't have time to do that.

On Friday, this past Friday, Mr. Meadows contacted me to say, Here are dates that the mediator has available.

And on Monday, I said, Let me check with the client, because I need to bring to a mediation people with --

THE COURT:  Or you have to have --

MR. SHIFFRIN:  -- authority to settle.  And I cannot answer for them and I don't have their calendars.  So I told Mr. Meadows that I would do that.

On Monday night, I wrote to him and said, Here are two dates that I believe are going to work, the 10th or the 11th, based on the communications I had so far.  I said, I can't

finally confirm these, but those are the dates we're looking at.  And I'm hoping by the -- today, though at this point it might be tomorrow, to be able to confirm that we can do -- go forward on the 11th.  It's just a question of -- I'm doing my best -- he emailed me on a Friday and I responded on a Monday.  I'm not quite sure what more I can do.

THE COURT:  Mr. Meadows, you're no longer available the 11th?

THE PLAINTIFF:  Oh, I've been available.  I booked it.  I'm the one that booked the mediation for the 11th.  As long as Mr. Shiffrin pays his bill, I guess it's going to happen.  And it shouldn't warrant any further involvement.

THE COURT:  Okay.  Very good.

MR. SHIFFRIN:  To be clear, I'm still working to confirm with my client that we can be available that day.  I'm hoping that's the case.

THE PLAINTIFF:  So --

MR. SHIFFRIN:  If not, I'll confirm with Mr. Meadows those two other dates for the mediation.  It's the best we can do.

THE PLAINTIFF:  The only thing I'd like to add, your Honor, I relied on Mr. Shiffrin's assurance that he was going to contact the mediator.  He did not.  I took the matter into my own hands.  I don't want to be held accountable if this mediation doesn't timely happen because I made every effort to

make it happen.  And now he's saying even though I booked the 11th, and I would like a sanction to have my fees reimbursed if it doesn't happen the 11th.

THE COURT:  Okay.

MR. SHIFFRIN:  There won't be any fees, your Honor. The mediator's fees would be --

THE COURT:  It would simply shift it to the date that you need it.

MR. SHIFFRIN:  Yes.

THE COURT:  So hopefully it will go forward on the 11th.  But it does not look like a failure to cooperate at this point.  Let's give it the opportunity -- give Mr. Shiffrin the opportunity to contact his client and confirm that date.

THE PLAINTIFF:  Okay.

THE COURT:  Okay.  So I think we've discussed everything that is pending here.  I would like some assistance in preparing this order.  There are some issues that I will be handling --

THE PLAINTIFF:  Your Honor?

THE COURT:  Yes.

THE PLAINTIFF:  I do get to make a close -- can I make a closing statement?

THE COURT:  I don't see any reason to.

THE PLAINTIFF:  Well, I want to make clear, I just want to be clear.  I still would like leave to file a motion to

compel.  I'm not convinced they're going to produce all the stuff.  They haven't.

And I'd like to strike their expert.  And the other thing I'm going to ask, given all that, either -- I'd like to request a motion to extend the discovery deadlines, because this truncated process -- everything you've heard is extremely prejudicial.  Nothing's ready for prime time.  And we have a cutoff in three weeks.  And we still need to get specificity on the motion to supplement the pleadings, any objection to your protective order.  That will change the landscape significantly if any of those happen.

And I don't know what -- I did give Judge Artau a notice two weeks ago about all the matters that are ripe before him.  So I would hope that there would be a hearing.  But even if there's a hearing in the next week or so or two weeks, it's going to be very close to cutoff.  So I would like to extend --

THE COURT:  I'm sure Judge Artau will handle that.

THE PLAINTIFF:  Okay.

THE COURT:  That's his --

THE PLAINTIFF:  But should I --

THE COURT:  -- that's his --

THE PLAINTIFF:  Should I file a motion to extend the deadlines with you or with him?  Because it's a discovery issue.

THE COURT:  He's already said that he would not extend

the deadlines.

THE PLAINTIFF:  Yes.  But --

THE COURT:  But if you are going to file one, it would have to be with him, and not with me.

THE PLAINTIFF:  Okay.  But he said "under exceptional circumstances."  I think criminal witness tampering and firm-wide conflicts and making misstatements on the record subject to sanctions and a motion to supplement the pleadings are exceptional circumstances.  I wouldn't expect any of that to be pending three weeks before discovery -- a fact cutoff.

THE COURT:  All I can tell you is, he would be the right person.

THE PLAINTIFF:  Okay.  I just -- I don't want to overstep your authority, and I want to make sure not to do it through you.

THE COURT:  Right.  If you want an extension on the discovery deadline, that would be through him.

THE PLAINTIFF:  Okay.

THE COURT:  So here is what I would like --

THE PLAINTIFF:  And one -- your Honor, one final item.

THE COURT:  -- to do --

THE PLAINTIFF:  I'm confused.  Forgive me.  I'm *pro se*. They filed a response to your -- the objection to your previous order.  Their sponsor -- and that's one of the -- I'm baffled. I mean, Mr. Shiffrin is a guest in the state of Florida.  He's

not licensed here.  He's sponsored by Capri Trigo.  But she's no longer signing pleadings in this matter.  Her associate, Drew Dymowski, is.  And he's not an attorney of record.

Under Rule 11(a), all pleadings have to be signed by an attorney of record.  But the last three pleadings have been signed by someone who's not an attorney of record in this matter.  And I'm stymied -- I mean, just explain to me if that's valid or if that's something I need to raise, because it doesn't -- it seems like another -- yet another rule violation.

THE COURT:  Well, I really haven't looked at these documents.  It's not something I'm --

THE PLAINTIFF:  I understand.  But I'm just --

THE COURT:  I will ask Mr. Dymowski.

MR. DYMOWSKI:  Your Honor, if I could just make a point to that.

My understanding under the local rules is that any signature of a pleading does count as an appearance also.  So by me signing pleadings, that counts as me appearing in the matter.

THE COURT:  Okay.

THE PLAINTIFF:  I'm not aware of the local rule.  Is there a rule I can look up to verify that?

MR. DYMOWSKI:  I don't have it off the top of my head.  But it --

THE COURT:  I'm sure that's something that you could

meet and confer about, Mr. Dymowski, if you could send him --

MR. DYMOWSKI:  I'm happy to do that.

THE PLAINTIFF:  Thank you.

MR. DYMOWSKI:  And also file an NOA, just to be safe.

THE COURT:  That would be fine.

THE PLAINTIFF:  Thank you.

THE COURT:  Okay.

THE PLAINTIFF:  I appreciate it.

THE COURT:  Back to today's hearing:  I'd like for the Defendant to prepare an order.  And I will go ahead and -- and please make sure that you send a copy of that draft to Mr. Meadows and then send the completed draft to me.

To the extent that there are any disagreements, just highlight those for me.  And between myself and my law clerk, we will be entering an order on today's hearing.

So when do you think you'd have that order to me, Mr. Shiffrin?

MR. SHIFFRIN:  I'm looking at my able associate here.

THE COURT:  I know you have much to know by the 9th.

MR. SHIFFRIN:  Yes.  We'll send a draft to Mr. Meadows tomorrow.

THE COURT:  Okay.  So if it's possible to have it to me by the 9th, that would be great.

MR. DYMOWSKI:  And if I could --

THE COURT:  I understand that you have a lot to do

before the 9th.  Then the 12th is --

MR. SHIFFRIN:  Yes.

MR. DYMOWSKI:  Sorry to interrupt one more time.  It's Local Rule 11.1(d), just so the record has it.

THE COURT:  Thank you, counsel.

Okay.  I think we've managed to get a lot done.  Again, Mr. Meadows, my effort is -- what I am trying to do is be most efficient, keep your case moving and get your case to a resolution.  It's been since 2017, and I know you want to get it before the Court.  We're doing --

THE PLAINTIFF:  Yeah.

THE COURT:  -- what we can to help.

THE PLAINTIFF:  I do want to make clear:  I want to get to trial.  I really don't want to disturb the trial dates.  But I do want to make sure I have fair due process in discovery and get the time needed to do followup discovery.  That's my biggest concern.

But I was unaware.  I read your standing discovery order 95 explicitly.  And I didn't believe you wanted to fully resolve this stuff right here and now.  And I would have been more prepared with specificity.

But I will get Mr. Shiffrin the specific RFI objection rebuttals that you asked for and do my end of it.  But I appreciate your time.  I didn't -- I didn't expect you to spend this much time.  But thank you.  And I hope we can resolve

everything timely.

MR. SHIFFRIN:  Thank you very much, your Honor.  We appreciate it.

THE COURT:  Very good.  Court is adjourned.

THE PLAINTIFF:  Thank you.

(Proceedings concluded.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter produced to the best of my ability.

_____          /s/Lisa Edwards
    DATE              LISA EDWARDS, RDR, CRR
                      (305) 439-7168
                      Reporterlisaedwards@gmail.com

**$**

**$100,000** [1] - 76:25
**$24** [1] - 77:1
**$700,000** [1] - 22:16

**'**

**'08** [1] - 70:6

**/**

**/s/Lisa** [1] - 123:19

**1**

**1** [8] - 1:8, 15:4, 15:21, 28:19, 30:1, 30:4, 33:10, 67:11
**10** [1] - 22:11
**100** [5] - 1:24, 5:23, 14:5, 36:14, 61:13
**1000** [1] - 1:21
**105** [3] - 6:11, 6:17, 9:3
**108** [1] - 7:6
**109** [1] - 12:20
**1099s** [2] - 16:15, 17:16
**10th** [3] - 114:19, 114:21, 115:24
**11(a** [1] - 120:4
**11,000** [1] - 36:10
**11.1(d** [1] - 122:4
**110** [1] - 12:20
**11th** [12] - 19:11, 47:17, 49:15, 50:3, 114:20, 115:24, 116:4, 116:8, 116:10, 117:2, 117:3, 117:11
**12** [2] - 47:19, 50:5
**1200** [1] - 77:3
**121** [1] - 26:16
**1212** [1] - 79:18
**12th** [2] - 79:2, 122:1
**13** [1] - 57:1
**14** [3] - 19:25, 57:1, 57:2
**14-day** [1] - 14:1
**15** [5] - 14:24, 56:19, 97:22, 99:5, 100:20
**15th** [9] - 1:20, 97:14, 97:25, 98:2, 104:5, 105:7, 105:11, 106:3, 112:8
**1600** [1] - 28:20
**16th** [1] - 21:3

**17** [1] - 92:17
**17-22589** [1] - 3:4
**17-22589-ARTAU** [1] - 1:2
**17th** [1] - 30:16
**18th** [1] - 9:9
**19,000** [2] - 36:9, 47:3
**19,250** [2] - 28:11, 29:13
**1900** [1] - 1:15
**19th** [2] - 31:20, 114:2
**1st** [27] - 4:5, 4:20, 7:23, 8:11, 8:13, 9:5, 9:6, 10:7, 13:8, 19:9, 27:12, 31:16, 35:11, 96:24, 97:4, 98:14, 98:18, 100:17, 101:25, 102:4, 102:11, 102:14, 103:16, 103:20, 106:23, 109:25

**2**

**2** [6] - 27:3, 30:7, 33:11, 48:16, 48:23, 61:5
**20** [1] - 92:15
**20005** [1] - 1:21
**2007** [10] - 60:12, 67:16, 68:1, 69:12, 69:20, 69:24, 70:6, 70:15, 70:18, 72:3
**2010** [1] - 70:11
**2010-2011** [1] - 70:5
**2011** [5] - 58:11, 62:9, 68:3, 68:4, 73:14
**2012** [7] - 60:12, 67:16, 68:2, 69:12, 69:24, 70:15, 72:3
**2013** [15] - 56:3, 64:7, 64:8, 68:3, 68:4, 68:18, 68:19, 74:8, 74:14, 74:17, 75:2, 75:4, 75:6, 76:1, 78:10
**2014** [2] - 89:23, 92:16
**2016** [1] - 79:2
**2016-30** [1] - 94:15
**2017** [4] - 6:23, 79:11, 92:17, 122:9
**2018** [2] - 26:10, 92:17
**2019** [3] - 47:17, 50:3, 79:14

**2020** [1] - 26:12
**2021** [3] - 58:12, 58:18, 68:21
**2022** [1] - 95:25
**2024** [1] - 26:11
**2025** [3] - 58:11, 66:21, 96:25
**2026** [2] - 1:5, 67:1
**20th** [6] - 4:12, 4:13, 5:9, 8:3, 8:6, 114:15
**2112** [1] - 1:16
**21st** [2] - 10:14, 46:8
**23** [4] - 56:20, 56:21, 56:22, 56:25
**239** [2] - 76:15, 76:25
**240** [4] - 59:1, 70:8, 76:2, 90:1
**241** [1] - 75:1
**26** [5] - 17:4, 25:16, 30:23, 106:21, 112:3
**26(a)(2)(D)(ii** [1] - 98:25
**26(a)(2)(ii)** [1] - 111:2
**26(b)(1** [1] - 15:24
**26(b)(1)** [2] - 16:14, 17:14
**2630** [2] - 94:22, 96:12
**26th** [3] - 16:9, 98:7, 109:20
**27th** [4] - 98:8, 112:24, 113:2, 113:3
**2:00** [1] - 41:8
**2:16** [1] - 1:6
**2nd** [1] - 106:23

**3**

**3** [8] - 46:19, 47:6, 48:7, 48:11, 48:12, 48:16, 48:23, 49:9
**30** [7] - 56:14, 99:2, 99:6, 102:15, 102:17, 111:4, 112:6
**30(b)(6** [25] - 3:23, 10:13, 13:6, 13:8, 46:7, 46:21, 48:4, 49:1, 49:5, 49:10, 49:12, 55:16, 55:19, 56:12, 58:22, 59:16, 60:3, 61:3, 62:5, 63:1, 65:5, 71:15, 74:3, 89:8, 89:9
**30-day** [3] - 17:5, 96:20, 106:22
**305** [2] - 2:2, 123:20
**31st** [4] - 24:20, 30:15, 30:18, 31:8
**33131** [1] - 1:25

**33139** [1] - 1:16
**34** [11] - 15:9, 17:4, 33:1, 33:12, 33:13, 39:22, 42:7, 42:8, 74:2, 106:21
**34(2)(E)(i** [1] - 28:5
**37(c)(1** [2] - 99:10, 107:8
**3900** [1] - 1:25

**4**

**4** [12] - 21:18, 47:11, 48:7, 48:8, 48:24, 49:3, 49:4, 49:10, 54:2, 55:15, 55:17, 55:18
**40** [1] - 28:20
**404(b** [1] - 55:22
**404(b)** [1] - 60:8
**42** [1] - 14:24
**439-7168** [2] - 2:2, 123:20
**45** [8] - 17:22, 24:9, 25:16, 99:25, 100:3, 100:13, 104:16, 106:20
**45(d)(3)** [1] - 15:24
**4th** [2] - 11:4, 108:3

**5**

**5** [3] - 23:5, 66:21, 96:17
**50,000** [1] - 47:3
**5th** [10] - 16:2, 19:10, 27:16, 28:13, 35:16, 57:16, 61:4, 71:15, 91:17, 95:10

**6**

**6** [2] - 89:21, 90:17
**65,000** [4] - 14:22, 24:2, 28:12, 28:18
**6th** [2] - 67:1, 73:20

**7**

**7** [4] - 1:5, 21:19, 94:24, 113:22
**7,000** [1] - 36:10
**70** [2] - 13:21, 74:15
**74** [2] - 5:22, 9:9
**75** [2] - 22:9, 23:12
**777** [2] - 26:17, 26:25
**777-87** [1] - 26:22

**7th** [2] - 102:23, 109:8

**8**

**805** [1] - 1:20
**82** [1] - 74:15
**88** [1] - 22:9

**9**

**91** [1] - 13:21
**95** [1] - 122:19
**950** [1] - 90:2
**97** [3] - 6:9, 6:10, 6:13
**9th** [13] - 31:21, 32:2, 35:16, 42:24, 43:10, 43:16, 43:17, 43:25, 46:24, 53:15, 121:19, 121:23, 122:1

**A**

**abandon** [2] - 61:13, 62:13
**abandoned** [3] - 62:19, 68:12, 70:11
**abandonment** [7] - 59:21, 62:15, 64:5, 67:12, 67:16, 70:4, 79:1
**abeyance** [1] - 73:14
**ability** [2] - 34:21, 123:17
**able** [19] - 27:25, 29:6, 31:17, 32:20, 40:3, 41:3, 41:14, 41:17, 47:25, 57:12, 58:17, 59:16, 88:19, 97:8, 105:11, 105:15, 105:20, 116:3, 121:18
**above-entitled** [1] - 123:17
**absent** [1] - 7:24
**absolute** [2] - 37:1, 37:10
**absolutely** [5] - 14:5, 22:22, 30:8, 36:14, 65:15
**accept** [6] - 100:1, 100:5, 104:7, 104:17, 104:24, 112:15
**acceptable** [1] - 99:6
**access** [1] - 50:11
**accomplish** [2] - 41:18, 65:2
**accomplished** [1] -

78:13
**accordance** [9] - 14:23, 15:10, 33:1, 35:19, 41:21, 41:22, 46:4, 58:14, 102:12
**according** [2] - 47:25, 75:20
**account** [1] - 31:6
**accountable** [1] - 116:24
**accumulated** [1] - 51:9
**accumulation** [1] - 51:6
**accurate** [1] - 123:16
**accused** [1] - 40:16
**act** [1] - 90:18
**Act** [1] - 82:3
**action** [4] - 68:8, 68:18, 80:5, 113:24
**active** [1] - 9:10
**activities** [1] - 61:11
**acts** [1] - 55:21
**actual** [1] - 74:22
**add** [1] - 116:21
**added** [1] - 36:6
**adding** [2] - 8:1, 9:7
**additional** [3] - 41:10, 68:10, 101:15
**address** [15] - 3:22, 12:15, 27:9, 30:12, 41:9, 49:11, 53:21, 60:9, 99:24, 103:22, 103:24, 104:4, 104:12, 104:15, 112:11
**addressed** [7] - 11:4, 12:22, 12:25, 24:21, 42:15, 48:19, 85:1
**adhere** [1] - 106:25
**adjourned** [1] - 123:4
**administrative** [1] - 90:7
**admissible** [1] - 55:22
**admonished** [1] - 13:20
**advance** [1] - 69:8
**adversely** [1] - 84:22
**advocate** [2] - 12:18, 68:14
**affected** [1] - 93:11
**affirmed** [1] - 60:15
**afraid** [1] - 12:8
**afternoon** [4] - 3:1, 3:9, 3:12, 3:17
**agent** [1] - 16:21
**ago** [5] - 60:24, 61:19, 67:22, 92:13,

118:13
**agree** [9] - 8:5, 9:14, 34:18, 58:14, 72:23, 86:23, 95:18, 96:9
**agreed** [2] - 97:3, 112:21
**agreement** [10] - 4:16, 9:16, 9:19, 22:7, 22:19, 47:16, 50:2, 95:4, 96:4, 108:25
**ahead** [7] - 21:6, 23:18, 25:2, 26:9, 48:22, 55:17, 121:10
**air** [1] - 87:16
**Air** [5] - 19:24, 26:12, 26:13, 26:14
**aircraft** [3] - 26:22, 27:1
**airline** [2] - 16:23, 23:1
**Airlines** [10] - 18:12, 18:13, 18:18, 59:10, 59:11, 60:14, 62:9, 75:4, 75:6, 75:8
**al** [1] - 1:7
**allegations** [1] - 76:6
**allege** [1] - 68:8
**alleged** [8] - 10:22, 59:20, 61:11, 63:14, 63:15, 63:18, 68:5, 68:14
**allegedly** [1] - 17:2
**Allied** [2] - 3:14, 80:10
**ALLIED** [1] - 1:7
**allocate** [1] - 75:12
**allow** [5] - 13:7, 18:3, 24:17, 71:17, 106:21
**allowed** [8] - 4:7, 59:7, 72:23, 73:1, 82:12, 88:8, 90:9, 107:6
**allows** [1] - 4:14
**almost** [2] - 23:5, 60:23
**amended** [6] - 6:15, 55:24, 59:20, 68:6, 69:3, 76:6
**American** [17] - 18:12, 20:10, 22:6, 22:9, 26:24, 59:9, 59:11, 60:13, 62:8, 62:23, 63:11, 75:4, 75:6, 75:8, 75:10, 95:6
**amount** [6] - 21:21, 23:6, 23:11, 61:18, 65:6, 109:3
**ANDREW** [1] - 1:23
**answer** [17] - 13:22,

13:25, 47:12, 64:24, 64:25, 65:10, 66:8, 76:17, 77:19, 91:16, 91:18, 92:9, 92:24, 93:6, 93:13, 115:21
**answering** [1] - 78:4
**answers** [2] - 6:14, 44:21
**anticipation** [1] - 36:2
**anytime** [1] - 85:12
**AP** [1] - 63:19
**APA** [60] - 30:24, 33:19, 33:25, 35:20, 36:1, 44:10, 47:11, 47:15, 49:25, 59:3, 59:6, 60:21, 61:15, 61:16, 62:6, 62:18, 63:11, 67:17, 71:17, 72:5, 72:10, 72:11, 74:16, 74:19, 75:6, 75:7, 75:9, 75:22, 76:9, 76:10, 76:13, 76:25, 80:8, 80:12, 80:19, 81:5, 82:16, 82:22, 83:3, 83:7, 83:8, 83:10, 83:12, 83:14, 84:18, 85:9, 86:1, 86:23, 87:7, 88:22, 89:15, 90:5, 91:11, 92:9, 95:2, 95:22, 105:5, 105:21, 114:17
**APA's** [18] - 14:21, 18:7, 33:3, 55:18, 60:22, 61:10, 61:12, 64:4, 67:25, 77:6, 79:20, 79:23, 83:13, 91:9, 91:17, 94:17, 95:7, 100:2
**apologize** [4] - 8:14, 56:24, 73:18, 115:11
**appeal** [2] - 11:24, 51:18
**appeals** [1] - 90:8
**appear** [2] - 106:17, 113:8
**appearance** [1] - 120:17
**APPEARANCES** [1] - 1:13
**appearances** [1] - 3:5
**appearing** [3] - 1:15, 3:10, 120:18
**apple** [1] - 12:13
**apples** [5] - 20:10, 22:22
**applied** [2] - 32:7, 32:8

**apply** [2] - 6:20, 84:2
**appreciate** [6] - 19:3, 24:23, 115:3, 121:8, 122:24, 123:3
**appropriate** [3] - 25:4, 31:4, 32:1
**approved** [4] - 5:5, 5:13, 9:8, 110:12
**approving** [1] - 6:12
**April** [2] - 89:23, 110:8
**arbitration** [2] - 75:13, 77:4
**arbitrator** [1] - 75:16
**argue** [3] - 50:21, 81:25, 91:4
**argued** [2] - 58:9, 92:9
**argues** [1] - 89:22
**arguing** [6] - 65:13, 74:19, 89:4, 89:11, 89:21, 98:22
**argument** [6] - 13:13, 14:16, 50:23, 51:15, 51:21, 101:10
**arguments** [1] - 10:10
**Artau** [14] - 4:1, 5:3, 5:13, 6:1, 10:3, 10:21, 10:25, 11:24, 14:3, 51:10, 51:19, 51:20, 118:12, 118:17
**Artau's** [5] - 4:14, 6:11, 7:11, 7:23, 9:22
**articulated** [1] - 112:1
**aspect** [1] - 13:13
**assert** [2] - 85:10, 86:10
**asserted** [1] - 67:20
**assigned** [1] - 30:21
**assigning** [1] - 43:7
**assistance** [1] - 117:16
**associate** [3] - 12:16, 120:2, 121:18
**associated** [1] - 15:5
**ASSOCIATION** [1] - 1:7
**Association** [1] - 3:14
**assuming** [2] - 29:19, 89:12
**assumption** [1] - 9:7
**assumptions** [1] - 19:1
**assurance** [1] - 116:22
**Atlas** [9] - 18:18, 19:23, 22:18, 23:9,

26:12, 26:13, 105:16, 105:17
**attached** [2] - 7:14, 108:23
**attempted** [2] - 56:14, 76:18
**attempting** [2] - 45:15, 55:19
**attention** [3] - 41:8, 112:8, 114:24
**attorney** [16] - 32:9, 71:17, 79:4, 80:14, 81:9, 81:10, 82:7, 82:23, 84:15, 86:25, 89:4, 92:18, 104:24, 120:3, 120:5, 120:6
**attorney's** [1] - 51:6
**attorney-client** [6] - 79:4, 80:14, 82:7, 82:23, 84:15, 86:25
**attorneys** [7] - 30:22, 31:1, 40:24, 61:15, 79:21, 84:13, 101:5
**audible** [1] - 3:7
**AUDIO** [1] - 1:11
**August** [1] - 31:12
**authority** [5] - 47:9, 88:5, 100:4, 115:20, 119:14
**authorization** [1] - 79:23
**authorized** [3] - 80:23, 87:7, 88:15
**available** [10] - 51:5, 52:21, 87:13, 112:21, 114:14, 114:21, 115:16, 116:7, 116:9, 116:15
**average** [2] - 22:8, 22:13
**avoid** [3] - 21:9, 51:6, 51:12
**aware** [11] - 45:14, 52:19, 53:13, 59:6, 68:19, 68:20, 93:19, 96:6, 109:1, 111:6, 120:21

**B**

**background** [2] - 60:7, 67:24
**backstop** [1] - 75:13
**bad** [6] - 55:20, 58:21, 58:24, 59:22, 82:8, 94:17
**Bad** [2] - 78:22, 78:24
**bad-faith** [3] - 58:24,

59:22, 82:8

**baffled** [1] - 119:24
**bank** [2] - 42:11, 107:19
**bankruptcy** [1] - 75:4
**bargaining** [10] - 22:7, 22:19, 47:16, 50:1, 64:10, 77:7, 77:15, 95:4, 96:4, 108:24
**Barton** [3] - 104:12, 105:2, 105:22
**barton** [1] - 105:8
**Barton's** [2] - 104:14, 104:19
**based** [11] - 10:22, 18:10, 21:16, 50:12, 59:8, 98:16, 101:24, 102:1, 108:24, 109:3, 115:25
**basic** [2] - 47:12, 85:15
**basis** [3] - 22:23, 26:3, 74:25
**Bates** [14] - 15:7, 27:19, 28:7, 28:25, 29:13, 30:9, 35:21, 35:22, 35:24, 36:2, 36:6, 36:8, 36:11, 44:11
**Bates-numbered** [2] - 15:7, 27:19
**Beach** [1] - 1:16
**became** [1] - 45:14
**become** [3] - 68:20, 72:4, 91:13
**BEFORE** [1] - 1:11
**behalf** [12] - 3:10, 3:14, 72:5, 72:6, 72:10, 74:16, 74:19, 76:9, 80:5, 92:9, 95:4, 104:8
**behavior** [2] - 40:17, 104:22
**behind** [2] - 40:11, 81:24
**benefit** [1] - 31:7
**benefits** [4] - 59:8, 59:10, 61:14, 70:9
**best** [15] - 10:2, 14:20, 19:5, 21:9, 31:13, 39:10, 41:2, 50:23, 67:6, 87:20, 92:8, 111:23, 116:5, 116:19, 123:17
**between** [7] - 22:15, 41:4, 57:21, 64:14, 95:11, 115:7, 121:14
**beyond** [6] - 4:17,

4:20, 9:17, 10:3, 58:18, 74:24
**bidding** [1] - 22:20
**biggest** [1] - 122:17
**bill** [1] - 116:11
**binding** [1] - 112:18
**bit** [5] - 9:11, 20:14, 36:3, 38:4, 75:3
**bite** [1] - 12:13
**blacklisted** [1] - 62:22
**blanche** [1] - 80:14
**blanket** [1] - 47:11
**blatant** [1] - 98:13
**board** [12] - 48:4, 75:22, 79:21, 79:23, 89:24, 90:8, 90:12, 91:11, 94:15, 94:22, 105:24
**body** [1] - 79:24
**Boeing** [12] - 16:19, 16:23, 22:18, 23:9, 24:25, 25:2, 25:21, 26:7, 26:10, 26:19, 26:22, 105:13
**Boeing's** [1] - 26:11
**book** [2] - 114:12, 114:19
**booked** [4] - 114:22, 116:9, 116:10, 117:1
**bottom** [3] - 23:10, 41:25, 82:13
**bought** [1] - 26:21
**box** [1] - 99:22
**brazenly** [1] - 107:7
**breach** [1] - 94:17
**Bredhoff** [1] - 3:13
**BREDHOFF** [1] - 1:20
**briefed** [1] - 12:25
**bring** [9] - 60:17, 60:18, 60:19, 68:10, 68:17, 83:23, 112:16, 114:24, 115:18
**brinksmanship** [1] - 114:25
**broad** [1] - 50:12
**broad-based** [1] - 50:12
**broadly** [2] - 49:24, 58:8
**brought** [3] - 14:7, 53:11, 112:8
**burden** [5] - 17:21, 24:10, 52:6, 55:10, 62:25
**burdensome** [14] - 14:25, 16:6, 17:14, 19:25, 25:15, 25:19, 27:14, 42:12, 43:8,

48:2, 60:24, 67:20, 76:3, 91:13
**buried** [1] - 87:18
**bury** [1] - 87:17
**business** [8] - 15:9, 28:7, 33:2, 33:14, 33:16, 33:19, 43:12, 45:23
**busy** [1] - 55:7
**buy** [2] - 28:21, 90:8
**BY** [1] - 2:1
**bylaws** [1] - 83:13

# C

**calculate** [2] - 5:12, 16:16
**calculation** [2] - 22:24, 108:5
**calculations** [3] - 18:10, 18:19, 101:16
**calendar** [1] - 114:12
**calendars** [1] - 115:21
**camera** [2] - 3:15, 85:7
**cannot** [2] - 91:2, 115:20
**capable** [1] - 78:3
**capacity** [4] - 71:18, 71:25, 76:17, 91:16
**CAPRI** [1] - 1:23
**Capri** [1] - 120:1
**Captain** [3] - 68:22, 96:1, 96:2
**captains** [1] - 26:17
**career** [1] - 23:3
**careers** [1] - 84:23
**cares** [1] - 85:24
**Carey** [4] - 47:21, 50:6, 94:16, 95:1
**Carey's** [2] - 47:15, 50:1
**carpet** [1] - 39:13
**cart's** [1] - 14:19
**carte** [1] - 80:14
**CASE** [1] - 1:2
**case** [54] - 6:23, 10:1, 10:19, 11:25, 14:14, 16:14, 21:13, 25:6, 25:13, 26:6, 31:5, 34:25, 54:9, 56:2, 57:9, 59:5, 60:17, 60:25, 61:7, 61:24, 61:25, 63:18, 64:19, 65:6, 67:19, 67:20, 71:6, 71:7, 71:22, 74:4, 76:6, 82:7, 82:9, 89:10,

90:5, 91:2, 91:15, 92:10, 92:21, 92:23, 93:5, 93:18, 93:19, 93:21, 94:14, 104:10, 106:23, 107:19, 111:20, 111:21, 116:16, 122:8
**Case** [1] - 3:4
**cases** [8] - 11:16, 14:7, 18:7, 32:6, 37:23, 57:7, 57:11, 82:5
**category** [1] - 22:15
**Cathy** [3] - 14:11, 63:15, 90:5
**caused** [1] - 24:24
**causing** [1] - 60:21
**cautioned** [1] - 80:5
**center** [1] - 26:17
**central** [1] - 88:15
**certain** [20] - 10:6, 22:14, 35:12, 35:20, 44:10, 44:12, 49:21, 57:25, 58:1, 58:20, 75:1, 75:22, 90:12, 90:21, 91:11, 93:11, 93:12, 95:24, 100:25, 101:6
**certainly** [4] - 26:2, 34:11, 43:3, 43:9
**certificate** [1] - 23:4
**certify** [1] - 123:15
**chains** [2] - 55:10, 99:17
**challenge** [3] - 75:15, 75:18
**chambers** [5] - 7:11, 16:12, 57:14, 85:7
**chance** [1] - 57:15
**change** [2] - 23:9, 118:10
**changed** [1] - 114:7
**characterization** [1] - 61:20
**characterize** [1] - 75:21
**characterized** [1] - 9:20
**characterizes** [1] - 18:6
**charge** [1] - 90:3
**check** [6] - 34:19, 35:4, 70:1, 112:25, 114:17, 115:17
**checked** [1] - 47:22
**choice** [1] - 25:10
**chose** [1] - 100:6
**Christmas** [4] - 16:9, 27:22, 99:8, 107:22
**chronologically** [1] -

50:8
**Chuck** [2] - 61:15, 61:16
**Circuit** [1] - 60:15
**circumstances** [5] - 7:25, 75:21, 104:15, 119:6, 119:9
**cite** [2] - 47:17, 52:2
**cited** [3] - 91:2, 99:7, 99:13
**citing** [1] - 56:1
**claim** [13] - 47:13, 49:14, 60:14, 61:9, 64:3, 64:4, 67:18, 67:20, 83:22, 88:15, 89:21, 90:9, 90:17
**claiming** [1] - 85:10
**claims** [8] - 14:12, 52:22, 60:17, 60:20, 68:11, 70:11, 77:23
**clarification** [1] - 12:7
**clarity** [2] - 49:9, 69:23
**Clark** [3] - 79:21, 80:8, 95:24
**class** [1] - 59:2
**claw** [3] - 80:19, 85:11, 86:1
**clear** [10] - 9:21, 72:25, 86:8, 87:11, 92:6, 101:24, 116:14, 117:24, 117:25, 122:13
**clearly** [3] - 25:19, 41:22, 109:9
**clerk** [2] - 3:19, 121:14
**CLERK** [2] - 6:8, 6:17
**click** [1] - 27:25
**client** [11] - 53:7, 58:23, 79:4, 80:14, 82:7, 82:23, 84:15, 86:25, 115:17, 116:15, 117:13
**clock** [1] - 17:6
**close** [4] - 4:3, 112:19, 117:21, 118:16
**closed** [1] - 89:24
**closing** [1] - 117:22
**collateral** [1] - 88:1
**collect** [1] - 34:9
**collected** [2] - 30:23, 30:25
**collection** [1] - 32:7
**collective** [8] - 22:6, 22:19, 47:16, 50:1, 64:9, 95:4, 96:4,

108:24

**combative** [1] - 90:14

**commit** [1] - 114:16

**committee** [28] - 78:22, 79:12, 79:13, 79:14, 80:7, 80:13, 80:17, 81:12, 82:14, 83:2, 83:6, 83:7, 83:10, 83:11, 83:12, 83:13, 83:14, 84:7, 84:9, 84:12, 84:17, 85:21, 86:18, 86:24, 87:1, 87:14, 88:9

**committee's** [1] - 86:11

**common** [1] - 104:8

**communication** [1] - 35:24

**communications** [8] - 47:20, 61:6, 83:8, 83:17, 95:11, 104:20, 115:10, 115:25

**community** [1] - 16:22

**company** [2] - 24:9, 59:13

**compare** [1] - 20:9

**compel** [8] - 27:4, 37:8, 40:6, 45:17, 50:19, 50:21, 50:24, 118:1

**compensation** [1] - 18:15

**compiled** [1] - 37:5

**complaint** [10] - 6:15, 13:22, 13:25, 55:24, 59:20, 68:6, 68:9, 69:4, 70:14, 76:7

**complete** [3] - 28:4, 48:12, 102:13

**completed** [1] - 121:12

**completely** [3] - 22:23, 22:25, 104:22

**completion** [3] - 27:15, 27:16, 28:13

**complex** [1] - 42:11

**complicated** [2] - 20:14, 75:12

**complied** [2] - 27:17, 35:16

**comply** [7] - 10:2, 25:24, 35:14, 39:22, 94:7, 96:19, 112:7

**compromise** [1] - 57:12

**computer** [1] - 34:12

**concern** [11] - 4:22,

12:14, 19:5, 64:18, 65:4, 65:13, 92:18, 106:18, 113:4, 113:7, 122:17

**concerned** [5] - 13:10, 77:22, 92:25, 114:1, 114:12

**concerns** [2] - 3:22, 19:3

**concluded** [2] - 77:14, 123:6

**conduct** [9] - 18:6, 18:7, 63:6, 63:8, 64:7, 67:25, 68:24, 72:22, 106:14

**confer** [7] - 53:7, 56:14, 57:17, 67:8, 108:8, 114:2, 121:1

**conferred** [1] - 55:9

**confers** [2] - 55:5, 99:16

**confidentiality** [1] - 83:14

**confines** [1] - 58:20

**confirm** [5] - 116:1, 116:3, 116:15, 116:18, 117:13

**confirmed** [1] - 97:1

**conflated** [1] - 48:21

**conflict** [2] - 12:20, 64:14

**conflicted** [2] - 58:23, 87:23

**conflicts** [1] - 119:7

**confluence** [2] - 10:21, 13:10

**confuse** [1] - 64:2

**confused** [2] - 107:1, 119:22

**confusing** [1] - 9:11

**connected** [2] - 20:15, 20:17

**connection** [2] - 32:18, 71:15

**consequences** [2] - 106:8, 107:3

**consistent** [3] - 6:21, 8:24, 33:16

**consistently** [1] - 58:11

**constant** [1] - 84:22

**constitution** [1] - 83:13

**consult** [2] - 6:19, 8:23

**consuming** [1] - 43:9

**contact** [8] - 38:9, 100:6, 102:7, 104:19, 114:9, 115:11, 116:23, 117:13

**contacted** [5] - 16:12, 27:24, 44:25, 114:11, 115:15

**contain** [1] - 38:18

**contained** [1] - 37:20

**contains** [2] - 32:18, 67:10

**contempt** [1] - 35:13

**contends** [1] - 95:2

**contest** [1] - 98:19

**context** [5] - 60:22, 75:3, 108:2, 108:14, 115:9

**continually** [1] - 4:19

**continue** [3] - 4:16, 9:16, 90:9

**continued** [1] - 14:5

**continuing** [2] - 58:10, 71:12

**contract** [5] - 31:1, 32:9, 87:21, 88:1, 109:3

**Control** [1] - 34:13

**conventional** [1] - 33:4

**convinced** [2] - 90:6, 118:1

**cooperate** [2] - 113:23, 117:11

**cooperative** [1] - 112:8

**copy** [3] - 29:2, 79:22, 121:11

**core** [1] - 84:17

**correct** [20] - 3:6, 3:24, 7:5, 7:15, 9:1, 10:15, 20:23, 21:23, 34:1, 42:13, 45:18, 67:2, 67:15, 71:9, 72:13, 74:10, 91:1, 100:18, 113:2

**correctly** [1] - 27:7

**correspondence** [1] - 44:11

**cost** [9] - 51:13, 56:2, 59:6, 59:9, 59:17, 61:7, 70:6, 70:9, 115:6

**costly** [1] - 70:10

**costs** [2] - 51:6, 51:9

**counsel** [10] - 3:16, 12:21, 14:21, 65:25, 70:8, 74:19, 77:6, 82:24, 100:2, 122:5

**Count** [2] - 89:21, 90:17

**count** [1] - 120:17

**countless** [2] - 32:5, 32:6

**country** [3] - 11:17,

37:24, 59:3

**counts** [1] - 120:18

**course** [25] - 15:8, 15:9, 24:10, 28:6, 29:25, 33:2, 33:8, 33:14, 33:15, 33:18, 34:12, 36:6, 43:12, 45:22, 51:10, 51:18, 53:6, 63:6, 63:8, 63:14, 64:6, 67:25, 68:24, 72:22, 92:6

**course-of-conduct** [1] - 72:22

**Court** [19] - 6:22, 8:22, 18:17, 28:18, 32:12, 38:13, 40:23, 45:11, 46:9, 51:8, 61:4, 73:21, 83:24, 88:20, 107:6, 111:12, 113:5, 113:10, 122:10

**COURT** [445] - 1:1, 3:1, 3:8, 3:11, 3:18, 4:4, 4:6, 4:9, 4:13, 4:21, 4:23, 5:6, 5:8, 5:15, 5:18, 5:25, 6:6, 6:10, 6:13, 6:19, 7:7, 7:12, 7:17, 7:20, 8:5, 8:8, 8:11, 8:15, 8:18, 8:20, 8:22, 9:2, 9:11, 9:14, 10:13, 10:16, 11:9, 11:12, 11:23, 12:3, 12:10, 13:2, 13:16, 14:16, 15:12, 15:14, 15:19, 15:21, 16:1, 17:7, 17:9, 17:17, 17:20, 18:2, 19:2, 19:18, 20:3, 20:6, 20:9, 20:13, 20:17, 20:19, 21:10, 21:14, 21:21, 22:1, 22:4, 23:13, 23:15, 23:21, 24:7, 24:9, 24:23, 25:1, 25:4, 25:12, 25:19, 25:25, 26:2, 26:5, 26:9, 26:15, 26:18, 26:23, 27:2, 27:10, 28:16, 28:24, 29:2, 29:4, 29:9, 29:15, 29:17, 29:19, 29:24, 30:2, 30:6, 30:10, 30:17, 31:9, 32:24, 33:6, 33:18, 33:24, 34:2, 34:11, 34:23, 35:5, 36:5, 36:24, 37:3, 37:11, 37:13, 37:16, 38:3, 38:6, 38:8, 38:24, 39:1, 39:3, 39:5, 39:7, 39:10, 39:21, 39:23, 39:25,

40:2, 40:9, 40:15, 41:11, 41:19, 42:5, 42:16, 42:18, 42:20, 42:22, 43:6, 43:21, 43:25, 44:2, 44:5, 44:7, 44:23, 45:3, 45:6, 45:10, 45:20, 45:22, 46:1, 46:5, 46:7, 46:16, 46:18, 46:24, 47:1, 47:5, 48:7, 48:9, 48:12, 48:14, 48:18, 48:20, 48:24, 49:4, 49:12, 49:17, 49:20, 50:14, 50:25, 51:3, 52:4, 52:7, 52:10, 52:12, 52:16, 52:24, 53:1, 53:4, 53:6, 53:13, 53:19, 54:1, 54:4, 54:10, 54:14, 54:19, 54:24, 55:1, 55:4, 55:7, 55:14, 55:17, 56:6, 56:9, 56:16, 56:18, 56:21, 56:23, 57:4, 57:22, 58:4, 58:7, 59:15, 59:24, 60:1, 60:3, 60:6, 60:9, 61:1, 62:1, 62:3, 63:4, 63:8, 63:11, 63:13, 63:24, 64:17, 64:22, 65:16, 65:18, 65:20, 65:23, 66:2, 66:4, 66:7, 66:11, 66:16, 66:18, 66:20, 66:25, 67:3, 67:11, 67:14, 68:4, 68:7, 68:16, 68:20, 68:24, 69:2, 69:5, 69:7, 69:10, 69:12, 69:17, 69:19, 70:1, 70:12, 70:15, 70:20, 70:22, 71:3, 71:8, 71:11, 71:13, 71:23, 72:6, 72:9, 72:14, 72:18, 72:25, 73:4, 73:8, 73:11, 73:23, 74:1, 74:8, 74:11, 74:14, 74:20, 75:24, 76:4, 76:12, 76:15, 76:20, 77:9, 77:12, 77:19, 77:25, 78:6, 78:9, 78:14, 78:19, 78:21, 79:3, 79:9, 80:20, 81:1, 81:3, 81:5, 81:7, 81:10, 81:13, 81:15, 81:17, 81:21, 81:24, 82:18, 83:10, 83:18, 83:20, 85:12, 85:17, 85:20, 85:25, 86:4, 86:14, 86:17, 86:20, 87:4, 88:3, 88:13,

88:16, 89:5, 89:11, 89:15, 89:18, 90:24, 91:21, 92:1, 92:3, 92:5, 92:13, 92:18, 93:3, 93:7, 93:10, 93:15, 93:20, 93:24, 94:1, 94:5, 94:11, 94:15, 94:19, 95:13, 95:17, 95:21, 96:7, 96:11, 96:14, 96:17, 97:12, 97:15, 97:19, 97:21, 97:24, 98:5, 98:11, 99:19, 100:8, 100:12, 100:14, 100:16, 100:19, 101:2, 101:6, 101:9, 101:13, 101:19, 101:22, 102:3, 102:10, 102:19, 103:1, 103:3, 103:6, 103:9, 103:12, 103:15, 103:18, 103:20, 103:25, 104:3, 104:9, 104:24, 105:12, 105:17, 106:9, 106:18, 108:1, 108:18, 108:21, 109:4, 109:10, 109:13, 109:18, 109:21, 110:3, 110:14, 110:16, 110:19, 110:23, 111:5, 111:7, 111:9, 111:11, 111:15, 111:19, 112:4, 112:12, 112:15, 112:17, 112:20, 112:25, 113:3, 113:5, 113:9, 113:12, 113:17, 113:19, 113:22, 114:6, 115:3, 115:6, 115:19, 116:7, 116:13, 117:4, 117:7, 117:10, 117:15, 117:20, 117:23, 118:17, 118:19, 118:21, 118:25, 119:3, 119:11, 119:16, 119:19, 119:21, 120:10, 120:13, 120:20, 120:25, 121:5, 121:7, 121:9, 121:19, 121:22, 121:25, 122:5, 122:12, 123:4
**court** [16] - 25:23, 51:17, 52:12, 60:16, 63:13, 80:11, 89:13, 89:14, 90:21, 107:5, 111:20, 113:23, 113:25, 115:1, 115:2,

123:4
**court-ordered** [3] - 25:23, 113:23, 113:25
**courts** [1] - 59:2
**covered** [1] - 48:16
**Cox** [1] - 82:6
**created** [1] - 79:20
**crime** [4] - 82:2, 82:5, 84:2, 84:4
**criminal** [3] - 12:17, 24:20, 119:6
**criteria** [1] - 74:24
**CRR** [2] - 2:1, 123:20
**cure** [2] - 42:6, 112:10
**curious** [1] - 88:11
**current** [3] - 15:23, 16:3, 23:5
**custodian** [9] - 33:23, 34:2, 36:24, 36:25, 37:10, 39:17, 41:23, 47:20, 50:6
**custodians** [3] - 30:23, 32:19, 38:18
**custody** [1] - 16:7
**customer** [1] - 26:21
**customer-bought** [1] - 26:21
**customers** [1] - 26:12
**cut** [1] - 42:7
**cutoff** [21] - 4:3, 4:4, 4:9, 4:16, 7:18, 7:22, 9:4, 10:6, 42:3, 101:18, 106:15, 106:22, 106:24, 109:24, 110:1, 110:3, 110:4, 118:8, 118:16, 119:10
**CV** [1] - 99:22

**D**

**D.C** [1] - 1:21
**damage** [5] - 17:25, 24:22, 25:18, 88:1, 109:2
**damages** [14] - 16:16, 17:3, 18:10, 18:19, 21:16, 21:18, 21:19, 22:24, 103:7, 103:11, 103:13, 107:15, 108:5, 109:7
**Dan** [4] - 47:15, 47:21, 50:1, 50:6
**dared** [1] - 100:24
**data** [4] - 16:4, 24:18, 24:24, 30:24
**database** [1] - 32:21

**DATE** [1] - 123:20
**date** [15] - 9:17, 10:4, 35:23, 47:22, 50:5, 61:1, 97:16, 98:23, 105:11, 106:3, 106:7, 112:22, 117:7, 117:13
**dates** [9] - 8:1, 110:11, 114:13, 114:14, 115:16, 115:24, 116:1, 116:19, 122:14
**days** [20] - 5:23, 8:22, 20:1, 23:11, 28:19, 31:11, 44:3, 54:25, 94:3, 96:25, 97:22, 99:2, 99:6, 100:20, 101:17, 102:15, 102:17, 106:15, 111:4, 112:6
**de** [1] - 32:8
**de-duplicated** [1] - 32:8
**deadline** [26] - 4:10, 5:9, 5:18, 6:16, 7:20, 8:2, 8:12, 27:11, 31:22, 35:14, 42:1, 96:20, 97:2, 98:4, 98:18, 106:22, 108:7, 108:18, 110:5, 110:25, 111:25, 113:17, 113:24, 114:15, 119:17
**deadlines** [10] - 5:21, 6:3, 6:18, 6:21, 8:24, 107:23, 111:20, 118:5, 118:23, 119:1
**deal** [1] - 86:6
**dealing** [2] - 31:6, 115:12
**dealings** [1] - 58:25
**decade** [1] - 30:25
**decades** [1] - 60:23
**December** [33] - 16:2, 16:9, 19:9, 19:10, 19:11, 21:3, 24:20, 27:12, 31:16, 31:20, 35:11, 55:13, 57:16, 61:4, 66:21, 67:3, 71:15, 79:2, 91:17, 95:9, 96:24, 97:4, 97:9, 98:14, 99:3, 100:17, 103:16, 108:3, 109:14, 112:8, 112:23, 114:2
**decide** [1] - 51:11
**decided** [6] - 63:13, 70:4, 70:6, 70:10, 87:25, 89:12
**decipher** [1] - 36:12
**decision** [2] - 62:13,

91:19
**decisions** [3] - 51:18, 61:6, 61:12
**declared** [3] - 77:7, 89:24, 109:6
**declaring** [1] - 102:24
**deemed** [3] - 85:8, 87:18, 90:10
**default** [1] - 13:23
**defective** [4] - 27:22, 36:15, 40:6, 42:2
**defend** [1] - 70:11
**Defendant** [9] - 6:19, 15:23, 18:3, 48:24, 48:25, 49:5, 49:20, 102:19, 121:10
**Defendant's** [4] - 27:4, 96:18, 96:19, 113:23
**defendants** [1] - 1:8
**Defendants** [1] - 27:5
**DEFENDANTS** [1] - 1:18
**defending** [1] - 62:7
**defense** [1] - 67:18
**defensive** [1] - 65:24
**defer** [1] - 85:5
**deficient** [4] - 27:19, 39:20, 40:7, 42:2
**definitive** [1] - 17:18
**delay** [7] - 3:2, 13:20, 13:22, 14:4, 14:8, 66:1, 99:13
**deliberately** [2] - 42:8, 68:15
**deliberating** [1] - 83:7
**delivered** [1] - 98:10
**demand** [3] - 15:13, 17:8, 114:13
**demanding** [1] - 15:2
**denied** [3] - 11:15, 11:19, 14:1
**Dennison** [2] - 78:22, 78:24
**dental** [1] - 108:12
**department** [4] - 64:15, 84:18, 96:1, 96:6
**depose** [6] - 11:25, 12:2, 12:8, 46:5, 46:7, 101:17
**deposed** [2] - 13:8, 92:9
**deposing** [1] - 89:8
**deposition** [34] - 3:23, 10:8, 10:11, 10:13, 46:7, 46:22,

56:10, 56:12, 64:23, 65:3, 66:5, 69:25, 71:16, 71:25, 72:23, 72:24, 73:13, 74:3, 76:18, 80:12, 82:16, 85:3, 85:6, 88:17, 91:8, 92:24, 98:6, 98:15, 108:3, 108:11, 108:17
**depositions** [7] - 10:9, 11:12, 14:14, 83:3, 91:10, 91:14, 111:24
**deprive** [1] - 54:8
**deprived** [5] - 13:11, 14:14, 23:3, 36:16, 76:25
**derailed** [1] - 87:22
**described** [1] - 91:9
**designed** [1] - 36:21
**designee** [5] - 13:9, 58:22, 62:5, 63:1, 92:8
**desire** [1] - 91:12
**despite** [2] - 10:5, 13:24
**detailed** [3] - 52:3, 54:3, 114:2
**details** [1] - 56:5
**determine** [3] - 15:15, 21:22, 75:11
**determines** [2] - 88:18
**devastating** [1] - 87:19
**developer** [1] - 42:11
**DFR** [4] - 63:15, 64:2, 64:3
**different** [8] - 5:17, 22:23, 32:20, 75:20, 75:23, 76:2, 82:19
**difficult** [3] - 28:9, 75:21, 76:3
**digital** [3] - 15:11, 29:18, 36:19
**DIGITAL** [1] - 1:11
**dilatory** [1] - 28:22
**direct** [2] - 5:20, 44:21
**directly** [7] - 20:20, 47:24, 55:22, 67:23, 70:25, 88:23, 89:9
**director** [3] - 80:8, 81:8, 87:23
**directors** [3] - 79:22, 79:24, 89:24
**disability** [13] - 59:1, 59:5, 59:8, 59:17, 60:14, 61:7, 61:9, 62:8, 67:11, 67:15,

70:9, 74:4, 79:13
**disabled** [2] - 75:19, 90:2
**disadvantage** [1] - 111:24
**disagree** [1] - 65:10
**disagreement** [1] - 109:21
**disagreements** [1] - 121:13
**disciplinary** [1] - 56:2
**disclose** [3] - 36:21, 109:19, 109:25
**disclosed** [4] - 97:9, 102:3, 109:12, 109:13
**disclosing** [2] - 108:7, 108:19
**disclosure** [10] - 97:3, 98:18, 98:23, 101:25, 102:9, 102:10, 102:13, 102:15, 106:22, 110:4
**disclosures** [2] - 108:6, 108:22
**discovery** [47] - 4:8, 4:9, 4:15, 4:17, 5:23, 6:16, 6:18, 7:18, 7:21, 7:22, 9:16, 9:22, 9:25, 10:3, 10:4, 10:6, 10:17, 11:5, 11:7, 13:8, 13:14, 14:5, 14:9, 19:6, 19:8, 25:9, 28:3, 40:11, 42:3, 42:12, 47:12, 51:2, 52:1, 55:20, 60:12, 66:1, 98:23, 101:18, 106:15, 111:25, 118:5, 118:23, 119:10, 119:17, 122:15, 122:16, 122:18
**DISCOVERY** [1] - 1:10
**discrepancy** [1] - 110:16
**discuss** [3] - 54:18, 57:20, 113:20
**discussed** [9] - 42:24, 48:23, 80:12, 82:13, 82:15, 85:20, 96:15, 101:25, 117:15
**discussion** [1] - 82:1
**disingenuous** [7] - 22:6, 22:25, 24:4, 35:9, 40:17, 41:1, 47:13
**dismiss** [3] - 14:1, 63:17, 63:19
**dispositive** [3] -

4:10, 5:9, 8:3
**disproportional** [1] - 15:22
**disproportionate** [5] - 16:13, 17:13, 25:15, 60:24, 61:25
**dispute** [7] - 10:9, 57:23, 61:20, 73:17, 73:23, 75:15, 101:24
**disputes** [2] - 57:13, 60:23
**disqualify** [2] - 12:17, 12:19
**disrespect** [1] - 47:9
**distillation** [1] - 67:7
**distributed** [2] - 88:9
**distributing** [1] - 75:9
**distribution** [9] - 56:3, 74:9, 74:14, 74:17, 75:2, 75:14, 76:22, 79:2
**DISTRICT** [2] - 1:1, 1:1
**District** [4] - 14:12, 63:16, 80:11, 82:6
**district** [3] - 4:15, 11:18, 59:2
**distrustful** [1] - 100:2
**disturb** [1] - 122:14
**divided** [1] - 35:6
**DIVISION** [1] - 1:2
**docket** [5] - 5:21, 7:5, 51:7, 80:9, 82:17
**doctrine** [1] - 58:10
**document** [20] - 27:4, 30:9, 30:15, 30:23, 31:11, 31:12, 32:23, 33:9, 34:13, 34:14, 35:1, 36:13, 39:19, 44:16, 50:20, 52:3, 54:8, 73:6, 74:2, 85:12
**documentation** [1] - 24:12
**documents** [77] - 13:15, 14:22, 19:21, 24:2, 24:3, 27:5, 27:6, 27:12, 27:18, 28:5, 28:10, 28:11, 28:19, 28:21, 28:25, 29:20, 30:3, 30:6, 30:19, 30:23, 31:4, 31:7, 31:10, 31:15, 31:16, 31:19, 31:24, 32:5, 32:7, 32:10, 32:18, 33:8, 33:17, 33:20, 33:21, 34:5, 34:7, 34:21, 34:25, 35:12,

35:23, 36:11, 36:16, 36:18, 37:5, 37:22, 38:20, 39:8, 40:11, 40:12, 40:22, 41:12, 42:23, 42:25, 43:1, 43:19, 44:13, 45:12, 46:8, 46:23, 47:3, 47:14, 47:21, 53:16, 54:11, 80:16, 85:8, 88:18, 93:4, 93:5, 93:8, 93:10, 101:15, 120:11
**dollars** [1] - 84:24
**domain** [3] - 80:18, 85:22, 86:11
**done** [27] - 10:1, 15:10, 18:1, 19:5, 21:7, 21:9, 24:22, 25:18, 28:13, 30:13, 31:3, 31:13, 32:22, 34:5, 37:21, 43:9, 43:12, 43:16, 53:17, 55:6, 56:8, 65:25, 102:23, 105:3, 106:13, 111:13, 122:6
**double** [3] - 34:19, 35:4, 112:25
**double-check** [3] - 34:19, 35:4, 112:25
**doubt** [1] - 50:11
**down** [2] - 39:13, 94:2
**draft** [4] - 93:8, 121:11, 121:12, 121:20
**Drew** [2] - 3:16, 120:3
**Drive** [1] - 1:15
**drop** [1] - 59:1
**Dropbox** [2] - 47:19, 47:22
**dropped** [1] - 79:13
**due** [6] - 13:12, 35:10, 96:19, 101:16, 102:15, 122:15
**dump** [3] - 30:9, 36:13, 39:19
**duplicated** [1] - 32:8
**during** [4] - 18:13, 18:21, 72:24, 85:20
**duty** [7] - 24:20, 60:20, 63:22, 64:10, 77:15, 80:1, 80:6
**DYMOSKI** [1] - 3:17
**DYMOWSKI** [7] - 1:23, 120:14, 120:23, 121:2, 121:4, 121:24, 122:3
**Dymowski** [4] - 3:16, 120:3, 120:13, 121:1

**E**

**e-discovery** [1] - 28:3
**earliest** [1] - 105:11
**early** [1] - 102:21
**earnings** [2] - 84:24, 103:8
**easier** [2] - 25:23, 41:13
**easily** [1] - 52:21
**Eastern** [1] - 80:11
**ECF** [8] - 5:22, 6:8, 6:11, 7:6, 9:3, 9:9, 13:21
**economic** [3] - 103:5, 103:6, 103:14
**Ed** [3] - 62:18, 68:22, 80:12
**educated** [1] - 72:5
**EDWARDS** [2] - 2:1, 123:20
**Edwards** [1] - 123:19
**EEOC** [1] - 90:3
**effect** [1] - 91:5
**efficient** [1] - 122:8
**effort** [5] - 59:7, 85:11, 86:1, 116:25, 122:7
**egregious** [1] - 14:15
**eight** [5] - 12:1, 14:23, 23:4, 80:19, 85:23
**eight-day** [1] - 14:23
**either** [2] - 64:24, 118:4
**elected** [2] - 96:1, 96:2
**election** [1] - 95:25
**electronic** [3] - 31:18, 33:21, 35:2
**electronically** [7] - 29:3, 29:4, 29:5, 30:3, 33:3, 34:9
**element** [1] - 55:20
**Eleventh** [1] - 60:15
**elsewhere** [1] - 53:23
**email** [21] - 33:22, 39:15, 47:17, 47:21, 47:23, 47:24, 48:3, 49:15, 50:3, 52:5, 52:13, 52:19, 52:25, 53:2, 53:4, 54:3, 54:21, 55:10, 99:17, 99:24, 104:15
**emailed** [4] - 7:10, 7:11, 50:10, 116:5
**emails** [11] - 14:24,

33:21, 34:2, 34:8, 35:9, 35:21, 36:2, 44:11, 106:12
**emergency** [1] - 108:12
**Emory** [9] - 14:11, 63:15, 88:22, 88:23, 89:10, 90:5, 91:2, 91:10, 91:23
**Emory's** [1] - 90:8
**employed** [2] - 18:12, 31:1
**employee** [1] - 62:23
**employees** [1] - 15:23
**employer** [5] - 16:25, 18:1, 19:4, 20:21, 23:21
**employers** [3] - 16:3, 19:16, 20:24
**employment** [1] - 95:6
**end** [9] - 30:21, 35:11, 44:2, 53:17, 54:22, 65:13, 87:18, 104:18, 122:23
**engage** [2] - 39:5, 97:5
**engaged** [1] - 13:19
**engaging** [1] - 13:21
**entered** [6] - 8:10, 8:17, 9:16, 57:9, 75:4, 75:6
**entering** [1] - 121:15
**entire** [5] - 15:1, 36:14, 54:7, 91:19, 92:23
**entirely** [3] - 27:14, 42:1, 45:17
**entitled** [2] - 21:12, 123:17
**equipped** [1] - 92:8
**equity** [9] - 56:3, 74:8, 74:14, 74:17, 75:2, 75:8, 76:21, 77:1, 79:2
**Eric** [1] - 84:14
**ERISA** [4] - 61:11, 62:6, 62:10, 62:22
**especially** [1] - 24:5
**ESQ** [6] - 1:18, 1:18, 1:19, 1:19, 1:23, 1:23
**essential** [3] - 59:25, 60:7, 94:16
**essentially** [1] - 60:21
**establish** [1] - 71:6
**established** [2] - 82:7, 83:12
**establishing** [1] -

67:24

**estopped** [1] - 89:21
**et** [1] - 1:7
**ethics** [2] - 13:3, 87:24
**Evaluators** [1] - 61:9
**evening** [1] - 30:16
**event** [1] - 58:15
**events** [4] - 10:6, 10:21, 61:19, 68:1
**Evidence** [1] - 55:22
**evidence** [7] - 17:18, 19:21, 25:9, 25:12, 55:21, 61:22, 71:6
**exact** [6] - 11:18, 14:12, 14:13, 19:6, 50:5, 84:3
**exactly** [10] - 8:19, 20:5, 20:12, 49:1, 52:13, 63:20, 78:17, 83:24, 89:16, 105:1
**example** [7] - 10:7, 12:9, 47:14, 48:1, 50:12, 52:2, 52:18
**examples** [1] - 37:8
**excellent** [1] - 54:4
**exception** [3] - 82:2, 84:2, 88:21
**exceptional** [2] - 119:5, 119:9
**exclude** [1] - 90:20
**exclusion** [2] - 74:25, 99:11
**excuse** [8] - 19:8, 38:24, 39:23, 46:5, 46:6, 64:22, 99:9, 106:16
**excuses** [4] - 106:21, 107:21, 114:17
**exist** [3] - 22:19, 71:7, 107:23
**existed** [1] - 58:11
**existing** [1] - 68:11
**expand** [1] - 11:5
**expect** [9] - 31:20, 32:1, 34:16, 35:4, 54:20, 58:17, 93:19, 119:9, 122:24
**expectation** [1] - 11:1
**expected** [5] - 3:2, 46:20, 91:7, 97:13, 108:24
**expecting** [2] - 93:20, 93:22
**expeditiously** [2] - 10:2, 30:20
**expense** [2] - 62:7, 114:22
**experience** [1] - 38:1

**experienced** [1] - 105:25
**expert** [66] - 13:17, 17:5, 18:9, 19:8, 22:24, 34:11, 37:4, 37:16, 96:18, 96:21, 96:24, 97:2, 97:5, 97:7, 97:24, 98:3, 98:7, 98:14, 98:16, 98:17, 98:20, 98:23, 99:21, 100:9, 101:11, 101:24, 102:3, 102:11, 102:17, 102:20, 102:22, 102:23, 102:25, 103:4, 103:5, 103:12, 103:14, 103:16, 103:21, 104:5, 104:8, 104:21, 104:25, 105:3, 105:19, 105:24, 107:10, 107:18, 107:22, 108:7, 108:10, 108:15, 108:19, 109:7, 109:11, 109:12, 109:13, 109:19, 109:25, 110:24, 111:2, 112:19, 112:21, 118:3
**expert's** [4] - 19:1, 22:8, 100:8, 104:11
**expired** [1] - 60:18
**explain** [4] - 33:18, 84:1, 88:19, 120:7
**explaining** [1] - 103:12
**explicitly** [4] - 55:24, 74:15, 90:15, 122:19
**explore** [1] - 66:5
**extend** [7] - 6:16, 9:22, 10:3, 118:5, 118:16, 118:22, 118:25
**extended** [2] - 5:4, 6:3
**extending** [1] - 6:17
**extension** [8] - 6:12, 6:14, 6:22, 6:24, 8:25, 13:9, 98:17, 119:16
**extensions** [1] - 7:24
**extent** [12] - 34:24, 58:13, 72:20, 76:20, 82:10, 82:11, 85:5, 94:9, 94:25, 95:10, 95:13, 121:13
**extraordinary** [1] - 7:25
**extreme** [1] - 107:14
**extremely** [4] - 14:25, 62:24, 77:5,

118:6

## F

**FAC** [1] - 74:15
**facilitate** [2] - 51:22, 53:11
**facing** [2] - 12:17, 39:13
**fact** [26] - 5:23, 9:4, 10:23, 12:16, 16:19, 22:7, 24:5, 36:1, 46:14, 53:25, 62:17, 62:18, 70:19, 78:14, 90:12, 90:18, 91:11, 101:18, 102:1, 102:10, 102:11, 104:23, 106:15, 108:19, 112:19, 119:10
**factors** [1] - 13:11
**facts** [15] - 18:6, 55:25, 59:20, 60:11, 61:6, 61:19, 68:6, 68:7, 68:8, 71:6, 77:10, 88:23, 88:25, 89:1, 91:22
**factual** [2] - 74:25, 95:8
**failed** [4] - 13:22, 27:5, 39:13, 62:16
**failing** [1] - 62:4
**failure** [6] - 59:22, 62:24, 79:16, 96:19, 113:23, 117:11
**failures** [2] - 62:15, 79:15
**fair** [6] - 60:20, 71:24, 75:11, 86:13, 113:18, 122:15
**faith** [6] - 55:20, 58:21, 58:24, 59:22, 82:8, 94:17
**fall** [1] - 88:21
**falsehood** [1] - 37:1
**familiar** [3] - 91:14, 91:22, 105:22
**far** [4] - 38:16, 44:7, 47:4, 115:25
**fatally** [1] - 10:19
**favor** [1] - 107:18
**February** [14] - 4:5, 4:12, 4:13, 4:20, 5:9, 7:23, 8:3, 8:5, 8:11, 8:13, 9:5, 10:7, 13:8, 114:15
**federally** [1] - 59:2
**fees** [4] - 51:6, 117:2, 117:5, 117:6

**Feinberg** [1] - 61:12
**fellow** [1] - 39:3
**felt** [3] - 24:9, 87:19, 98:21
**female** [1] - 47:9
**Ferguson** [1] - 84:14
**Ferguson's** [1] - 87:16
**few** [2] - 54:25, 96:25
**fiduciary** [1] - 58:24
**fight** [1] - 25:24
**figure** [1] - 5:21
**figures** [1] - 47:9
**file** [45] - 6:14, 6:25, 8:23, 17:23, 17:24, 24:10, 28:8, 29:11, 29:12, 29:13, 32:17, 32:19, 35:2, 35:21, 35:22, 36:8, 36:9, 36:11, 37:7, 38:18, 38:20, 40:5, 44:11, 47:19, 50:19, 50:20, 50:24, 53:8, 53:24, 59:23, 62:11, 62:22, 72:21, 93:18, 93:19, 99:11, 103:2, 107:10, 109:9, 114:4, 117:25, 118:22, 119:3, 121:4
**filed** [12] - 7:2, 11:3, 18:17, 45:12, 51:7, 60:13, 62:20, 75:17, 77:4, 90:3, 101:3, 119:23
**files** [8] - 15:7, 27:19, 28:1, 28:4, 29:13, 33:3, 37:8, 37:21
**filing** [2] - 7:7, 7:20
**final** [5] - 10:4, 31:21, 32:2, 42:24, 119:20
**finalize** [1] - 31:23
**finally** [3] - 77:14, 114:18, 116:1
**financial** [1] - 24:3
**findings** [6] - 88:23, 88:25, 89:1, 90:12, 91:11, 91:23
**fine** [8] - 23:18, 23:19, 23:24, 71:21, 95:23, 96:10, 104:25, 121:5
**finished** [2] - 22:2, 22:3
**firm** [10] - 3:13, 12:19, 28:19, 28:20, 30:1, 30:22, 32:17, 33:16, 38:19, 119:7
**firm-wide** [1] - 119:7
**firms** [1] - 28:2
**first** [34] - 13:23,

16:20, 17:11, 19:5, 26:17, 26:25, 27:25, 30:12, 30:14, 30:15, 31:15, 35:9, 35:10, 38:13, 40:22, 45:8, 55:11, 55:24, 56:9, 59:5, 59:20, 67:5, 68:5, 69:3, 74:2, 77:6, 88:12, 91:24, 94:21, 100:16, 102:19, 104:6, 105:4, 108:9
**firsthand** [4] - 63:1, 69:9, 70:24, 73:10
**fit** [1] - 43:2
**five** [4] - 14:6, 41:25, 46:14, 73:20
**fix** [1] - 112:9
**fixed** [1] - 22:12
**flawed** [1] - 10:19
**flip** [1] - 110:2
**FLORIDA** [1] - 1:1
**Florida** [7] - 1:4, 1:16, 1:25, 14:12, 63:16, 82:6, 119:25
**flout** [1] - 107:6
**flouting** [1] - 100:23
**flown** [1] - 23:6
**flu** [1] - 106:16
**fly** [1] - 22:17
**flying** [2] - 23:7, 27:1
**focus** [2] - 30:22, 43:18
**folder** [3] - 29:12, 50:6, 52:21
**folders** [3] - 15:5, 29:13, 47:19
**follow** [6] - 4:7, 15:12, 15:14, 15:19, 107:2, 107:24
**follow-on** [1] - 4:7
**following** [1] - 51:25
**followup** [3] - 19:10, 67:5, 122:16
**FOR** [2] - 1:14, 1:18
**force** [1] - 90:6
**forced** [2] - 28:18, 42:3
**forcing** [1] - 59:9
**foregoing** [1] - 123:15
**forensically** [1] - 31:3
**forgive** [1] - 119:22
**form** [2] - 13:20, 17:15
**formal** [1] - 79:20
**format** [5] - 27:7, 32:20, 41:16, 41:19, 44:7
**formatting** [1] - 41:7

**formed** [1] - 79:14
**former** [7] - 12:21, 15:23, 47:15, 49:25, 62:17, 77:3, 107:1
**forthcoming** [3] - 15:21, 27:3, 96:18
**forum** [1] - 82:14
**forward** [5] - 11:7, 12:24, 76:19, 116:4, 117:10
**four** [4] - 11:16, 13:23, 101:17, 106:15
**fraction** [2] - 15:6, 28:12
**fraud** [4] - 82:2, 82:5, 84:2, 84:4
**fraudulent** [2] - 61:11, 64:11
**free** [5] - 19:15, 19:16, 21:1, 89:22, 90:11
**Friday** [5] - 32:3, 38:17, 115:15, 116:5
**frivolous** [1] - 99:9
**FROM** [1] - 1:11
**front** [3] - 86:17, 98:22, 99:15
**fruit** [1] - 31:17
**frustrating** [2] - 42:9, 107:25
**full** [9] - 18:18, 26:14, 28:13, 34:5, 34:6, 72:11, 75:1, 102:5, 102:9
**full-share** [1] - 75:1
**full-time** [2] - 18:18, 26:14
**fully** [7] - 12:25, 56:7, 72:4, 78:3, 96:6, 109:1, 122:19

**G**

**game** [2] - 86:13, 114:25
**gear** [1] - 30:19
**general** [1] - 77:6
**generally** [4] - 4:17, 9:15, 50:25, 52:4
**genesis** [1] - 62:15
**giant** [1] - 36:9
**given** [15] - 15:4, 15:5, 24:19, 45:8, 52:18, 53:3, 55:25, 79:22, 79:24, 80:18, 84:10, 97:17, 104:10, 106:14, 118:4
**glad** [1] - 99:15
**go-get** [1] - 31:16

**goal** [1] - 27:15
**Gonzalez** [1] - 3:19
**GORDON** [1] - 1:24
**Gosh** [1] - 105:8
**governing** [1] - 79:24
**grab** [1] - 31:17
**GRACE** [1] - 1:19
**Grace** [2] - 3:15, 12:17
**granted** [4] - 6:24, 11:18, 12:13, 58:17
**granting** [1] - 6:13
**granular** [1] - 16:4
**great** [5] - 21:24, 31:24, 65:6, 96:14, 121:23
**greatly** [1] - 61:20
**grievance** [5] - 59:22, 73:13, 79:16, 82:8
**grievances** [4] - 59:23, 62:20, 68:13, 68:15
**grounds** [3] - 67:17, 71:25, 87:24
**group** [4] - 58:25, 63:7, 79:17, 91:12
**guarantee** [3] - 22:9, 22:10, 23:12
**guaranteed** [1] - 23:10
**guarantees** [2] - 22:11, 22:20
**guess** [6] - 17:1, 37:4, 46:20, 88:3, 113:7, 116:11
**guest** [1] - 119:25
**guidelines** [1] - 86:9
**guy** [2] - 101:17, 104:1

**H**

**half** [4] - 22:15, 22:16, 47:1, 99:17
**handicap** [1] - 42:4
**handle** [4] - 25:4, 30:22, 63:6, 118:17
**handling** [6] - 40:24, 59:22, 60:14, 73:13, 82:8, 117:18
**hands** [2] - 40:11, 116:24
**handwritten** [1] - 84:9
**hanging** [1] - 31:17
**happy** [6] - 15:17, 43:14, 50:23, 57:20,

96:23, 121:2
**harass** [1] - 16:18
**harassing** [6] - 14:25, 15:22, 16:6, 17:14, 24:5, 104:13
**Harbour** [1] - 1:15
**hard** [1] - 29:2
**harm** [2] - 16:18, 21:11
**Harrison** [2] - 61:15, 61:16
**hate** [3] - 13:19, 36:20, 100:2
**haystack** [2] - 15:11, 36:19
**head** [3] - 78:11, 99:17, 120:23
**hear** [3] - 51:5, 51:15, 107:21
**heard** [5] - 23:16, 25:16, 32:12, 66:20, 118:6
**hearing** [13] - 13:12, 16:12, 24:19, 38:23, 39:15, 50:18, 55:12, 82:4, 88:5, 118:14, 118:15, 121:9, 121:15
**HEARING** [1] - 1:10
**hearings** [3] - 3:3, 51:4, 55:11
**hearsay** [2] - 90:20, 90:22
**heartburn** [2] - 23:25, 24:25
**heavily** [2] - 80:13, 82:14
**held** [2] - 101:2, 116:24
**help** [4] - 31:1, 37:17, 104:3, 122:12
**hereby** [1] - 123:15
**hesitant** [1] - 43:15
**high** [2] - 28:2, 30:19
**high-tech** [1] - 28:2
**highlight** [1] - 121:14
**highly** [7] - 12:23, 28:17, 36:19, 42:4, 42:14, 80:24, 90:17
**himself** [1] - 75:25
**hired** [5] - 26:12, 62:6, 62:9, 62:10, 70:8
**history** [3] - 65:6, 67:23, 87:13
**hit** [1] - 78:11
**holding** [2] - 22:12, 23:3
**holiday** [3] - 98:20, 106:1, 107:20
**holidays** [11] - 24:20,

27:23, 30:21, 97:18, 99:7, 99:8, 105:3, 106:2, 112:9, 114:11, 115:12
**honestly** [1] - 50:18
**Honor** [84] - 3:9, 3:12, 3:17, 4:12, 5:1, 5:23, 7:6, 7:15, 9:3, 10:9, 10:18, 11:14, 15:25, 18:4, 20:5, 20:23, 21:25, 22:3, 24:8, 27:8, 37:2, 37:7, 37:12, 37:19, 38:22, 39:9, 40:6, 40:14, 42:9, 44:6, 44:13, 44:21, 45:5, 45:7, 45:18, 47:7, 47:10, 48:16, 49:3, 49:8, 50:17, 51:23, 54:16, 55:16, 56:13, 57:1, 60:11, 62:2, 63:22, 65:15, 65:25, 66:24, 67:2, 67:9, 69:18, 69:22, 70:3, 71:2, 72:17, 73:16, 74:6, 79:6, 81:16, 87:11, 90:23, 91:24, 94:6, 96:23, 98:1, 98:12, 103:14, 104:6, 106:10, 108:2, 108:20, 109:16, 113:6, 115:8, 116:22, 117:5, 117:19, 119:20, 120:14, 123:2
**HONORABLE** [1] - 1:11
**hope** [4] - 54:13, 105:15, 118:14, 122:25
**hopefully** [1] - 117:10
**hoping** [2] - 116:2, 116:16
**horse** [1] - 14:20
**hourly** [4] - 16:4, 18:14, 20:10, 20:15
**hours** [14] - 18:11, 18:16, 18:19, 18:21, 19:21, 20:7, 20:8, 20:16, 20:17, 20:25, 22:9, 22:10, 23:9, 23:12
**house** [5] - 81:9, 81:10, 85:13, 87:4, 104:13
**huge** [3] - 12:14, 64:14, 107:18
**hundreds** [1] - 84:24
**Hurley** [2] - 14:13, 89:14

**Hurley's** [2] - 91:10, 91:19

**I**

**idea** [2] - 23:2, 92:7
**identical** [5] - 11:16, 14:11, 89:10, 90:18
**identified** [2] - 67:18, 106:6
**identify** [1] - 97:4
**identity** [1] - 103:18
**Iglesias** [1] - 3:19
**Iglesias-Gonzalez** [1] - 3:19
**ignore** [2] - 12:16, 46:14
**ignored** [1] - 59:7
**ignoring** [1] - 46:16
**imagine** [2] - 18:5, 49:11
**IMAX** [2] - 22:14, 22:17
**immediately** [3] - 28:1, 40:24, 47:23
**impermissible** [2] - 12:20, 90:10
**important** [2] - 20:8, 38:1
**impression** [1] - 53:24
**improper** [10] - 47:11, 48:10, 48:25, 49:5, 49:15, 55:16, 55:18, 66:4, 74:3, 96:14
**impunity** [1] - 100:24
**in-camera** [1] - 85:7
**in-house** [4] - 81:9, 81:10, 85:13, 87:4
**inappropriate** [1] - 111:22
**incident** [2] - 72:9, 89:23
**include** [2] - 50:2, 96:4
**included** [2] - 61:3, 108:5
**includes** [1] - 18:10
**including** [5] - 47:20, 56:1, 61:10, 61:14, 95:5
**income** [3] - 17:19, 20:4, 21:16
**inconsistent** [1] - 64:9
**increased** [1] - 109:3
**indefensible** [1] - 98:13

**indiscernible** [15] - 8:18, 14:7, 23:3, 56:2, 62:7, 62:9, 79:18, 80:6, 82:3, 87:5, 102:1, 102:2, 102:25, 106:19, 110:22
**indiscernible]** [1] - 17:25
**individual** [4] - 38:9, 57:20, 73:2
**individually** [1] - 59:10
**individuals** [5] - 11:24, 11:25, 12:6, 14:24, 76:15
**inexcusable** [1] - 107:11
**info** [1] - 60:7
**information** [37] - 17:15, 17:25, 18:23, 19:4, 19:6, 19:24, 20:1, 20:7, 20:25, 21:12, 22:24, 37:19, 38:12, 38:20, 39:17, 44:14, 44:19, 46:9, 52:8, 57:8, 58:9, 61:18, 63:1, 65:6, 69:1, 74:23, 93:16, 97:6, 100:7, 102:8, 104:19, 105:5, 105:13, 105:16, 105:21, 108:10, 108:11
**infringement** [1] - 90:11
**initial** [2] - 108:5, 108:22
**inkling** [1] - 60:19
**inquiry** [1] - 104:18
**insist** [1] - 36:17
**insisting** [1] - 108:14
**instead** [2] - 10:8, 98:19
**institution** [3] - 84:21, 87:19, 95:16
**instructor** [5] - 22:21, 26:16, 26:18, 26:21, 26:24
**instructors** [1] - 16:23
**intelligent** [2] - 78:4, 78:6
**intemperate** [2] - 104:20, 106:11
**intended** [1] - 108:9
**intent** [7] - 55:23, 59:21, 60:8, 61:21, 61:23, 67:24, 87:15
**interest** [1] - 77:2
**interested** [1] - 11:9

**interesting** [1] - 96:7
**interests** [2] - 87:20
**internal** [2] - 64:14, 90:6
**internally** [2] - 62:12, 70:10
**international** [2] - 26:25, 83:6
**interns** [1] - 3:18
**interrogatories** [8] - 47:13, 49:9, 49:16, 49:17, 49:21, 52:5, 53:20, 54:17
**interrogatory** [2] - 49:22, 52:13
**interrupt** [2] - 69:23, 122:3
**interrupting** [1] - 73:18
**interview** [1] - 80:14
**interviewed** [1] - 84:13
**intolerable** [1] - 99:18
**investigate** [2] - 79:15, 80:15
**investigated** [1] - 79:20
**investigative** [1] - 79:13
**invited** [1] - 54:16
**invoice** [2] - 114:23, 114:24
**involved** [4] - 58:24, 69:11, 70:25, 89:10
**involvement** [1] - 116:12
**involving** [1] - 58:25
**irrelevant** [1] - 112:2
**irrespective** [1] - 111:1
**is..** [1] - 41:20
**issue** [33] - 4:1, 7:24, 16:12, 18:5, 32:14, 37:4, 38:12, 39:7, 40:21, 45:14, 46:1, 47:11, 48:5, 59:13, 62:5, 63:13, 68:11, 71:1, 71:19, 72:19, 74:13, 76:19, 86:4, 89:9, 91:6, 91:7, 92:20, 103:6, 104:23, 113:22, 114:3, 118:24
**Issue** [1] - 55:18
**issued** [2] - 47:11, 79:2
**issues** [26] - 3:21, 11:23, 12:24, 13:18, 15:15, 30:23, 41:3, 44:25, 45:13, 51:14,

55:2, 55:24, 57:17, 57:20, 58:18, 59:4, 59:14, 60:16, 60:23, 66:13, 67:7, 71:19, 72:5, 92:19, 111:20, 117:17
**italics** [1] - 69:24
**item** [1] - 119:20
**items** [1] - 50:21
**itself** [5] - 7:10, 43:20, 81:21, 112:1

**J**

**JAG** [1] - 78:5
**James** [2] - 79:21, 80:8
**January** [34] - 1:5, 10:14, 27:16, 28:13, 31:21, 32:2, 35:15, 35:16, 42:24, 53:15, 67:1, 73:20, 97:14, 97:25, 98:2, 98:7, 98:18, 99:5, 101:25, 102:4, 102:11, 102:14, 103:20, 104:5, 105:7, 105:10, 106:3, 106:23, 109:25, 112:24, 113:2, 113:3
**jihad** [1] - 62:8
**John** [1] - 3:15
**JOHN** [1] - 1:18
**joint** [8] - 5:4, 5:13, 6:4, 6:15, 6:16, 7:7, 7:13, 110:7
**jointly** [1] - 114:4
**JOSHUA** [2] - 1:18, 1:19
**Joshua** [1] - 3:13
**judge** [11] - 8:9, 10:5, 25:6, 51:5, 90:6, 90:8, 110:21, 111:21
**JUDGE** [1] - 1:12
**Judge** [36] - 4:1, 4:14, 5:3, 5:11, 5:13, 5:22, 6:1, 6:11, 7:11, 7:23, 9:6, 9:9, 9:22, 10:3, 10:20, 10:25, 11:24, 13:20, 13:24, 14:3, 14:13, 51:10, 51:18, 51:19, 89:14, 91:10, 91:18, 98:16, 99:13, 102:1, 107:5, 110:9, 118:12, 118:17
**judge's** [3] - 4:15, 4:24, 90:20
**judgment** [3] - 13:23, 63:17, 65:11

**juncture** [2] - 10:19, 77:16
**justify** [1] - 79:1

**K**

**Kaiser** [1] - 3:13
**KAISER** [1] - 1:20
**keep** [5] - 35:21, 36:1, 36:6, 42:3, 122:8
**keeps** [1] - 44:10
**kept** [8] - 20:23, 28:6, 33:2, 33:14, 35:20, 44:8, 45:23, 46:9
**key** [4] - 11:15, 50:8, 55:20, 58:22
**keyword** [12] - 15:5, 15:6, 27:20, 28:10, 29:7, 35:1, 35:3, 36:14, 41:24, 43:4, 48:2, 52:21
**kicked** [1] - 30:18
**kind** [1] - 114:16
**King** [1] - 13:24
**knowing** [1] - 43:16
**knowledge** [10] - 61:10, 63:1, 69:8, 69:9, 70:25, 72:11, 73:10, 82:2, 85:9, 89:2
**known** [1] - 78:12
**knows** [6] - 72:15, 72:16, 73:2, 85:24, 93:23, 95:13

**L**

**labeled** [3] - 28:7, 41:22, 50:5
**Labor** [1] - 82:3
**labor** [2] - 28:20, 82:5
**landscape** [2] - 114:7, 118:10
**large** [5] - 24:2, 34:8, 61:18, 73:15, 75:8
**largely** [3] - 33:21, 33:22, 34:4
**last** [8] - 21:16, 23:4, 48:17, 82:3, 99:17, 113:22, 114:13, 120:5
**late** [10] - 9:25, 46:15, 70:11, 97:22, 100:20, 101:20, 101:21, 108:16, 111:17, 111:18
**LAW** [2] - 6:8, 6:17

**law** [11] - 3:13, 3:19, 28:2, 28:19, 30:1, 32:17, 38:19, 42:10, 82:7, 90:12, 121:14
**LAWRENCE** [2] - 1:4, 1:14
**Lawrence** [3] - 3:10, 96:3, 96:4
**lawsuit** [5] - 36:2, 60:13, 60:15, 62:11, 62:22
**lawyer** [6] - 39:3, 40:7, 80:2, 85:13, 86:5, 87:4
**lawyers** [5] - 28:20, 83:7, 83:17, 84:20
**lay** [1] - 18:7
**layer** [1] - 51:19
**lead** [1] - 26:12
**learn** [1] - 102:19
**learned** [3] - 77:6, 103:15, 103:18
**least** [2] - 70:5, 85:23
**leave** [5] - 17:23, 17:24, 99:11, 107:10, 117:25
**left** [1] - 72:4
**legal** [25] - 38:1, 64:11, 64:15, 74:25, 78:22, 78:25, 79:10, 79:19, 79:23, 79:25, 80:7, 80:8, 81:11, 81:13, 81:17, 81:20, 81:21, 82:23, 84:18, 85:13, 88:4, 88:12, 96:1, 96:6, 99:8
**legally** [1] - 99:9
**less** [5] - 10:20, 13:22, 29:12, 46:23, 107:16
**letter** [28] - 21:3, 21:5, 56:1, 57:15, 61:4, 61:5, 64:11, 66:21, 66:25, 67:3, 67:5, 71:15, 73:19, 73:20, 73:24, 78:25, 79:19, 80:7, 80:17, 80:21, 80:23, 82:13, 82:18, 83:4, 85:10, 91:17, 95:10
**level** [2] - 14:8, 15:4
**Lewis** [1] - 61:12
**licensed** [1] - 120:1
**lie** [1] - 38:22
**lied** [1] - 110:6
**light** [4] - 9:22, 24:5, 68:21, 71:9
**likely** [3] - 9:23, 11:1, 90:13
**limine** [2] - 25:5,

72:21

**limitations** [2] - 60:20, 67:19

**limited** [6] - 11:20, 12:11, 58:11, 61:24, 78:15, 114:13

**line** [9] - 22:8, 22:10, 22:12, 22:13, 22:21, 23:10, 23:12, 41:25, 82:13

**link** [2] - 27:22, 27:24

**LISA** [2] - 2:1, 123:20

**LISETTE** [1] - 1:11

**list** [4] - 51:24, 53:22, 92:19, 92:22

**listed** [2] - 91:8, 94:23

**Listen** [3] - 98:16, 114:14, 114:18

**listen** [1] - 51:20

**lists** [1] - 73:20

**literally** [1] - 50:7

**litigant** [1] - 65:7

**litigants** [4] - 32:6, 32:22, 33:5, 52:4

**litigate** [1] - 60:22

**litigation** [26] - 32:22, 33:17, 37:20, 37:23, 41:4, 42:11, 44:14, 63:4, 63:5, 63:9, 68:22, 85:4, 88:22, 88:25, 89:1, 89:4, 89:10, 89:12, 89:16, 89:19, 91:9, 91:20, 92:14, 101:3, 104:8, 108:4

**litigations** [1] - 42:11

**litigator** [3] - 61:12, 62:6, 62:11

**litigious** [2] - 62:23, 90:14

**LMRDA** [5] - 82:3, 89:22, 90:4, 90:9, 90:11

**load** [3] - 32:17, 32:20, 38:19

**local** [3] - 3:16, 120:16, 120:21

**Local** [1] - 122:4

**locked** [2] - 90:1, 90:2

**look** [12] - 4:24, 5:20, 21:22, 32:14, 36:9, 39:16, 40:7, 43:3, 53:14, 73:5, 117:11, 120:22

**looked** [3] - 40:2, 76:6, 120:10

**looking** [12] - 9:3, 34:14, 34:25, 52:21,

61:5, 66:23, 68:10, 73:19, 74:8, 74:22, 116:1, 121:18

**looks** [1] - 91:21

**lost** [4] - 60:15, 84:24, 103:7, 103:8

**low** [1] - 31:17

**low-hanging** [1] - 31:17

**LTD** [1] - 61:14

**luck** [2] - 54:3, 54:5

## M

**ma'am** [9] - 7:4, 40:1, 47:7, 47:8, 47:9, 68:3, 69:21, 71:5, 72:17

**MAGISTRATE** [1] - 1:12

**magistrate** [1] - 51:5

**magnitude** [1] - 47:2

**maintained** [4] - 15:8, 33:22, 43:11, 83:5

**man** [2] - 62:5, 78:4

**managed** [1] - 122:6

**management** [4] - 56:2, 59:6, 61:7, 74:5

**manner** [13] - 6:21, 8:24, 28:6, 32:4, 33:2, 33:15, 35:20, 36:18, 39:3, 40:21, 42:23, 45:23, 106:13

**MANSUKHANI** [1] - 1:24

**manufacturer** [1] - 16:24

**map** [1] - 64:8

**March** [3] - 47:17, 49:15, 50:3

**marching** [1] - 42:3

**Mark** [9] - 58:23, 61:14, 61:16, 62:25, 71:16, 77:13, 79:21, 89:8, 92:7

**marked** [1] - 30:3

**material** [3] - 10:23, 12:18, 21:8

**materials** [7] - 19:15, 19:18, 31:1, 83:15, 83:16

**Matt** [1] - 104:11

**matter** [15] - 3:25, 11:7, 24:21, 25:9, 40:23, 80:10, 84:25, 85:14, 95:8, 112:5, 116:23, 120:2, 120:7, 120:19, 123:17

**matters** [8] - 41:6,

51:5, 67:18, 67:21, 94:9, 106:5, 115:13, 118:13

**maximum** [4] - 22:8, 22:13, 22:20, 23:6

**MDD** [7] - 59:1, 63:6, 75:1, 79:17, 90:1, 90:13, 92:12

**MEADOWS** [2] - 1:4, 1:14

**Meadows** [90] - 3:6, 3:10, 3:21, 9:20, 9:25, 10:5, 10:16, 18:5, 18:9, 18:25, 19:6, 19:14, 20:2, 20:21, 20:25, 21:11, 30:14, 31:10, 32:2, 32:5, 32:19, 33:6, 33:9, 33:23, 35:5, 37:25, 38:24, 39:23, 40:16, 40:20, 41:3, 41:13, 41:15, 41:19, 43:2, 44:8, 45:10, 49:11, 54:16, 54:20, 55:8, 56:14, 57:19, 58:4, 60:13, 63:25, 64:17, 66:22, 66:25, 67:15, 71:17, 72:14, 74:24, 75:17, 76:11, 76:20, 79:10, 82:21, 82:25, 83:1, 83:21, 87:2, 88:11, 91:4, 91:22, 95:2, 95:5, 95:12, 95:21, 96:3, 96:5, 97:9, 97:14, 98:9, 98:11, 104:7, 104:14, 104:19, 106:4, 108:9, 115:9, 115:13, 115:15, 115:22, 116:7, 116:18, 121:12, 121:20, 122:7

**Meadows's** [8] - 44:25, 57:24, 73:19, 76:7, 96:24, 97:6, 98:7, 108:3

**mean** [36] - 7:22, 10:18, 11:6, 17:1, 24:2, 29:16, 33:20, 34:4, 34:24, 37:10, 46:13, 46:25, 47:8, 50:20, 52:1, 52:18, 55:10, 56:13, 57:7, 68:8, 71:14, 71:19, 73:17, 73:24, 82:17, 93:14, 98:2, 99:15, 100:22, 100:23, 105:21, 105:25, 106:25, 107:4, 119:25, 120:7

**means** [1] - 49:7

**meant** [1] - 41:1

**mediation** [8] - 113:24, 113:25, 114:15, 115:6, 115:18, 116:10, 116:19, 116:25

**mediator** [5] - 114:9, 114:11, 115:11, 115:16, 116:23

**mediator's** [1] - 117:6

**Medical** [1] - 61:8

**medical** [1] - 58:25

**medically** [1] - 23:5

**meet** [8] - 55:5, 57:17, 67:8, 98:3, 99:16, 108:8, 114:2, 121:1

**meet-and-confer** [4] - 57:17, 67:8, 108:8, 114:2

**meet-and-confers** [2] - 55:5, 99:16

**members** [8] - 62:16, 75:9, 77:7, 77:14, 84:9, 84:19, 89:25, 90:13

**membership** [2] - 62:7, 64:9

**memory** [1] - 78:4

**mention** [2] - 49:14, 106:22

**merits** [2] - 50:22, 90:10

**met** [4] - 14:21, 55:9, 89:24

**metadata** [10] - 32:17, 34:10, 37:20, 38:19, 43:13, 43:23, 44:16, 45:1, 45:8, 45:15

**MIAMI** [1] - 1:2

**Miami** [3] - 1:4, 1:16, 1:25

**mid** [2] - 97:9, 99:3

**mid-December** [2] - 97:9, 99:3

**middle** [1] - 87:21

**might** [7] - 12:5, 12:13, 18:4, 22:11, 48:21, 65:13, 116:3

**military** [2] - 47:8, 107:2

**million** [5] - 21:18, 21:19, 22:16, 23:5, 77:1

**millions** [2] - 84:23, 84:24

**mind** [2] - 30:21, 61:22

**mine** [1] - 11:17

**minimum** [1] - 22:20

**minimum-maximum** [1] - 22:20

**mischaracterization** [1] - 115:10

**mischaracterizations** [1] - 106:11

**misinformed** [1] - 82:1

**misled** [1] - 110:10

**misrepresentations** [1] - 10:23

**missed** [2] - 108:6, 108:18

**missing** [2] - 110:25, 113:15

**mission** [1] - 84:16

**misstatements** [1] - 119:7

**mistruth** [1] - 37:10

**misunderstanding** [1] - 110:10

**mitigate** [2] - 19:5, 22:24

**mitigation** [3] - 17:2, 17:19, 18:24

**modified** [2] - 11:2, 58:16

**moment** [1] - 53:6

**Monday** [6] - 16:11, 43:18, 98:21, 115:17, 115:23, 116:5

**money** [3] - 21:15, 21:21, 51:16

**month** [12] - 6:22, 8:24, 22:9, 22:10, 23:11, 23:14, 55:13, 60:19, 98:17, 99:17, 105:9

**monthly** [2] - 19:22, 22:21

**months** [8] - 5:4, 5:12, 6:4, 8:1, 9:7, 13:1, 31:12, 102:2

**Moore** [4] - 13:21, 13:25, 99:13, 107:5

**Moore's** [8] - 5:3, 5:11, 5:22, 9:6, 9:9, 98:17, 102:1, 110:9

**morning** [5] - 3:2, 32:16, 38:15, 41:9, 45:2

**most** [7] - 4:14, 22:10, 49:24, 58:24, 90:14, 97:16, 122:7

**motion** [38] - 4:10, 5:13, 6:8, 6:13, 6:15, 6:16, 10:24, 11:3, 12:7, 12:17, 12:19,

13:5, 14:1, 15:21, 17:23, 17:24, 25:5, 27:4, 37:8, 40:6, 50:20, 51:25, 52:3, 53:9, 53:24, 63:17, 63:19, 65:11, 72:21, 96:18, 99:11, 103:11, 107:10, 117:25, 118:5, 118:9, 118:22, 119:8

**motions** [9] - 5:9, 7:20, 8:3, 10:20, 13:3, 50:19, 50:24, 51:7, 51:11

**motivated** [2] - 90:13, 91:11

**motivation** [1] - 80:23

**motive** [9] - 55:21, 55:23, 58:21, 59:21, 60:8, 60:22, 61:22, 61:23, 67:24

**mouth** [1] - 107:14

**move** [5] - 26:5, 27:3, 45:4, 54:2, 107:9

**moving** [2] - 11:7, 122:8

**MR** [148] - 3:12, 3:17, 4:12, 7:4, 7:9, 7:15, 7:19, 7:21, 8:7, 8:10, 8:13, 8:16, 8:19, 8:21, 9:1, 9:20, 10:15, 18:4, 19:3, 19:20, 20:5, 20:7, 20:12, 20:14, 20:18, 20:23, 21:11, 21:17, 21:24, 22:3, 24:8, 30:12, 30:18, 31:10, 32:25, 33:12, 33:20, 34:1, 34:4, 34:16, 34:24, 36:23, 37:2, 37:12, 37:19, 38:4, 38:7, 38:11, 40:13, 40:16, 41:15, 43:3, 43:7, 43:24, 44:1, 44:4, 44:13, 44:21, 44:24, 48:11, 49:8, 53:5, 54:16, 56:13, 56:17, 56:19, 56:24, 57:3, 57:6, 57:24, 60:11, 61:2, 63:22, 66:17, 66:24, 67:2, 67:5, 67:13, 69:16, 69:18, 69:22, 71:2, 71:14, 71:24, 72:8, 72:13, 73:16, 73:25, 74:7, 74:22, 75:25, 76:5, 76:13, 76:16, 79:6, 79:8, 82:21, 83:11, 83:19,

86:3, 86:21, 87:6, 87:9, 88:7, 88:11, 88:14, 90:23, 91:1, 92:16, 94:6, 94:21, 95:15, 95:18, 96:23, 97:13, 97:16, 97:20, 97:23, 98:1, 98:6, 102:6, 104:6, 104:10, 105:1, 105:14, 105:18, 108:2, 109:16, 109:19, 109:23, 112:23, 113:2, 115:8, 115:20, 116:14, 116:18, 117:5, 117:9, 120:14, 120:23, 121:2, 121:4, 121:18, 121:20, 121:24, 122:2, 122:3, 123:2

**multiple** [1] - 59:2

**mute** [1] - 3:8

**mutual** [1] - 61:8

**muzzle** [1] - 90:13

**Myers** [37] - 58:23, 61:14, 61:16, 62:25, 71:16, 71:18, 71:20, 71:25, 72:1, 73:1, 74:16, 74:18, 75:25, 76:16, 76:21, 77:6, 77:13, 78:25, 79:21, 79:25, 80:7, 80:21, 81:7, 87:1, 87:22, 88:18, 88:24, 89:3, 89:8, 91:7, 91:16, 92:7, 92:19, 94:8, 95:13, 95:21, 95:24

**N**

**name** [11] - 29:14, 34:14, 35:22, 38:8, 39:10, 44:16, 71:16, 90:15, 102:3, 103:21, 104:11

**name-calling** [1] - 39:10

**named** [1] - 90:15

**names** [8] - 28:8, 32:19, 35:21, 36:8, 36:11, 38:18, 44:11

**narrative** [2] - 80:2, 96:2

**narrow** [3] - 20:24, 66:7, 94:2

**national** [3] - 28:20, 62:6, 62:10

**native** [1] - 47:21

**Navy** [1] - 78:5

**necessarily** [1] - 76:5

**necessary** [2] - 9:24, 104:15

**need** [36] - 9:11, 12:7, 13:10, 16:16, 16:25, 17:15, 21:22, 24:13, 24:16, 37:17, 40:8, 42:6, 50:15, 53:8, 55:5, 65:9, 66:4, 70:17, 71:5, 77:12, 77:25, 78:2, 84:3, 84:4, 93:18, 97:6, 104:14, 105:8, 105:12, 106:15, 108:10, 115:18, 117:8, 118:8, 120:8

**needed** [4] - 17:1, 17:2, 108:10, 122:16

**needle** [1] - 15:11

**needs** [9] - 16:14, 42:14, 46:21, 60:24, 61:25, 68:12, 84:25, 104:5, 105:5

**negotiations** [4] - 81:9, 87:21, 87:23, 88:1

**never** [18] - 5:5, 6:5, 8:10, 23:19, 23:23, 79:22, 79:24, 80:19, 82:22, 83:1, 83:19, 85:11, 86:1, 110:12, 114:4, 114:11

**new** [6] - 55:12, 84:22, 95:3, 108:24, 109:3, 111:21

**New** [2] - 99:8, 107:22

**newer** [1] - 87:12

**newfound** [1] - 68:25

**news** [4] - 34:16, 35:3, 77:8, 87:9

**next** [11] - 36:2, 45:4, 48:5, 54:25, 66:15, 73:13, 94:15, 96:11, 98:2, 99:20, 118:15

**night** [1] - 115:23

**nine** [4] - 14:23, 28:19, 31:11, 85:24

**nine-day** [1] - 14:23

**NO** [1] - 1:2

**NOA** [1] - 121:4

**non** [2] - 94:9, 100:8

**non-privileged** [1] - 94:9

**noncompliant** [1] - 48:16

**none** [1] - 12:21

**nonparty** [1] - 100:5

**normal** [1] - 33:18

**Northwest** [1] - 1:20

**Nos** [1] - 48:23

**not-yet-approved** [1] - 5:13

**note** [2] - 94:8, 104:19

**noted** [1] - 57:10

**notes** [16] - 6:22, 11:8, 19:12, 19:14, 19:16, 84:8, 84:9, 85:2, 86:10, 86:12, 87:6, 87:13, 88:2, 88:8

**nothing** [3] - 20:24, 23:8, 111:3

**nothing's** [1] - 118:7

**notice** [12] - 7:7, 15:15, 16:20, 45:13, 69:24, 69:25, 70:2, 90:3, 111:8, 112:9, 114:4, 118:13

**noticed** [1] - 39:15

**November** [6] - 9:6, 11:4, 30:16, 102:23, 109:8, 109:20

**number** [17] - 3:21, 18:11, 18:15, 18:21, 19:21, 20:8, 20:17, 31:24, 35:14, 35:17, 35:18, 35:22, 35:25, 45:6, 68:8, 72:3, 101:15

**numbered** [4] - 15:7, 27:19, 33:8, 51:24

**numbers** [11] - 20:16, 28:8, 28:25, 29:13, 30:9, 35:21, 36:2, 36:6, 36:8, 36:11, 44:12

**numeric** [3] - 29:20, 29:21, 29:22

**numerous** [3] - 35:9, 47:11, 49:24

**nurse** [3] - 59:5, 61:7, 74:4

**O**

**obey** [1] - 58:19

**object** [4] - 12:23, 57:4, 72:21, 76:13

**objected** [14] - 11:22, 13:6, 16:5, 16:7, 16:11, 23:20, 23:24, 48:25, 49:24, 58:8, 59:24, 60:1, 67:17, 83:4

**objecting** [1] - 22:7

**objection** [31] - 4:1, 10:22, 11:6, 13:4, 17:10, 17:11, 24:11,

24:14, 48:10, 49:16, 49:20, 49:22, 49:23, 52:16, 58:15, 74:3, 74:20, 78:14, 83:23, 83:25, 86:6, 86:7, 90:25, 91:15, 94:20, 94:22, 95:20, 96:12, 118:9, 119:23, 122:22

**objections** [22] - 10:20, 13:5, 47:12, 48:1, 48:25, 49:5, 50:12, 50:15, 51:24, 55:16, 55:19, 56:11, 57:6, 57:11, 57:25, 58:1, 66:12, 67:4, 67:6, 67:10, 76:8, 96:14

**obligation** [1] - 99:1

**obligations** [1] - 14:22

**obstinate** [1] - 112:7

**obstruct** [2] - 36:21, 66:1

**obstruction** [1] - 14:9

**obstructionary** [1] - 28:22

**obstructionism** [1] - 14:4

**obstructionist** [3] - 14:6, 42:14, 54:7

**obtained** [6] - 59:11, 78:25, 79:25, 82:25, 83:1, 88:12

**obviously** [2] - 30:20, 34:17

**occurred** [8] - 18:8, 60:23, 67:21, 70:7, 75:6, 75:16, 89:23, 95:11

**October** [6] - 6:2, 8:20, 9:5, 30:15, 30:18, 31:8

**odd** [1] - 36:10

**OF** [1] - 1:1

**offensive** [3] - 28:18, 42:14, 106:12

**offered** [1] - 57:12

**officer** [5] - 27:1, 78:5, 81:5, 91:11, 107:2

**officers** [4] - 26:17, 64:12, 64:15, 80:15

**offset** [1] - 16:16

**often** [2] - 34:24, 47:13

**omnibus** [1] - 55:25

**once** [6] - 40:2, 59:11, 69:5, 69:7, 112:6

**one** [54] - 3:22, 11:15, 12:3, 13:10, 14:8, 14:22, 15:17, 15:18, 16:1, 18:20, 26:12, 27:18, 35:14, 35:17, 36:9, 36:10, 37:25, 38:6, 45:7, 48:1, 48:2, 48:22, 50:12, 52:2, 56:4, 58:22, 59:5, 59:11, 59:13, 63:2, 66:6, 66:20, 67:8, 73:13, 75:17, 77:4, 80:5, 83:2, 90:15, 99:12, 100:25, 101:15, 102:22, 104:4, 107:4, 107:15, 111:21, 116:10, 119:3, 119:20, 119:24, 122:3

**one-off** [2] - 99:12, 107:4

**ones** [1] - 73:21

**ongoing** [2] - 55:13, 71:12

**open** [6] - 15:7, 27:22, 27:25, 28:1, 82:14, 84:7

**operative** [3] - 110:8, 110:19, 110:23

**opinion** [19] - 64:11, 78:22, 78:24, 79:10, 79:19, 79:23, 79:25, 80:3, 80:7, 81:11, 81:13, 81:18, 81:20, 81:21, 82:23, 85:13, 88:4, 88:12, 93:10

**opportunity** [2] - 117:12, 117:13

**opposed** [1] - 28:11

**opposing** [1] - 65:25

**oranges** [1] - 22:22

**order** [82] - 4:14, 4:24, 4:25, 5:2, 5:3, 5:4, 5:8, 5:10, 5:11, 5:22, 6:1, 6:4, 6:8, 6:11, 6:12, 6:13, 6:17, 6:20, 7:1, 7:2, 7:8, 7:10, 7:23, 8:2, 8:8, 8:10, 8:15, 8:16, 8:17, 8:23, 9:6, 9:8, 9:9, 9:10, 9:15, 9:23, 10:22, 11:1, 11:16, 13:4, 14:23, 15:2, 37:3, 51:2, 51:12, 51:17, 51:20, 52:1, 53:10, 57:9, 57:13, 58:14, 58:16, 58:19, 90:12, 90:20, 98:17, 102:2, 105:23, 110:8, 110:9, 110:11,

110:19, 110:20, 110:23, 110:24, 111:1, 111:3, 111:22, 112:6, 114:3, 115:1, 115:2, 117:17, 118:10, 119:24, 121:10, 121:15, 121:16, 122:19

**order's** [1] - 112:2

**ordered** [5] - 25:23, 35:12, 109:8, 113:23, 113:25

**ordering** [1] - 113:7

**orders** [4] - 4:15, 6:23, 13:24, 90:21

**ordinary** [1] - 33:2

**organized** [8] - 15:8, 29:12, 33:22, 34:2, 35:18, 36:24, 36:25, 37:9

**original** [2] - 10:21, 108:23

**originally** [1] - 35:2

**otherwise** [1] - 32:21

**outside** [2] - 67:19, 82:24

**outstanding** [1] - 10:17

**overlap** [3] - 87:5, 106:19, 110:22

**overly** [1] - 25:19

**overstep** [1] - 119:14

**owe** [2] - 64:10, 77:15

**owed** [1] - 80:1

**own** [4] - 35:16, 62:22, 114:22, 116:24

**P**

**p.m** [1] - 1:6

**P.O** [1] - 99:22

**Package** [1] - 99:22

**Page** [1] - 61:5

**page** [1] - 53:9

**pages** [1] - 24:2

**Pages** [1] - 1:8

**paid** [5] - 18:14, 20:10, 22:8, 23:12

**pain** [1] - 107:14

**panel** [1] - 79:19

**paper** [4] - 34:4, 34:7, 34:25, 78:25

**paperless** [1] - 6:12

**papers** [1] - 18:17

**Paragraph** [1] - 74:15

**parallel** [3] - 82:5, 89:20, 99:20

**parcel** [1] - 63:2

**part** [10] - 34:8, 63:2, 63:4, 63:8, 71:8, 75:7, 82:15, 84:16, 85:3, 99:12

**Part** [1] - 26:16

**particular** [3] - 43:7, 78:16, 86:5

**particularly** [1] - 58:21

**parties** [7] - 4:16, 6:25, 7:2, 9:16, 41:4, 57:21, 115:7

**parties'** [1] - 67:7

**party** [3] - 15:22, 44:15, 61:9

**pass** [1] - 105:19

**passage** [1] - 59:19

**passionate** [2] - 64:18, 64:20

**past** [3] - 41:25, 60:13, 115:15

**path** [1] - 76:19

**pattern** [7] - 13:21, 14:4, 64:4, 71:9, 90:18, 99:13, 107:5

**pause** [1] - 106:14

**pay** [6] - 20:15, 23:4, 77:2, 102:8, 103:7, 114:23

**payout** [1] - 75:2

**payroll** [2] - 16:4, 19:20

**pays** [2] - 115:4, 116:11

**PDF** [1] - 34:13

**PDFs** [3] - 32:11, 32:13, 47:21

**Pellettieri** [3] - 3:15, 10:23, 15:1

**PELLETTIERI** [1] - 1:18

**penalties** [1] - 101:11

**pending** [6] - 6:15, 6:23, 10:20, 10:24, 117:16, 119:10

**Pennsylvania** [1] - 80:11

**people** [4] - 12:1, 72:4, 104:20, 115:18

**percent** [3] - 14:6, 22:11, 36:15

**perfect** [1] - 78:19

**perhaps** [1] - 46:8

**period** [11] - 9:22, 18:13, 18:21, 21:19, 60:12, 70:16, 72:12, 73:4, 73:15, 97:17, 106:1

**permission** [2] - 50:19, 107:9

**permit** [1] - 39:1

**permitted** [1] - 4:18

**person** [3] - 92:8, 103:22, 119:12

**personal** [5] - 71:18, 71:25, 76:17, 91:16, 104:12

**personally** [3] - 72:7, 73:2, 93:23

**pertain** [1] - 76:7

**pertaining** [1] - 60:23

**petrified** [1] - 77:1

**phone** [2] - 25:21, 107:12

**phonetic** [1] - 78:22

**physical** [1] - 99:24

**pierce** [1] - 82:7

**pilot** [23] - 14:11, 16:23, 18:12, 23:5, 26:15, 26:16, 26:18, 26:21, 26:24, 56:2, 59:5, 59:17, 61:7, 62:16, 63:6, 64:15, 67:11, 67:15, 74:4, 75:13, 77:3, 84:19, 107:1

**Pilots** [2] - 3:14, 80:10

**pilots** [44] - 14:7, 18:14, 22:8, 22:15, 26:21, 36:3, 58:25, 59:1, 59:3, 59:8, 59:9, 61:13, 62:13, 63:20, 64:12, 64:15, 70:8, 75:1, 75:10, 75:17, 75:19, 75:23, 76:2, 76:25, 77:3, 77:4, 77:22, 78:18, 79:1, 79:17, 79:19, 80:1, 80:6, 80:25, 84:10, 84:21, 87:15, 88:10, 89:25, 90:2, 90:14, 92:12, 93:12

**PILOTS** [1] - 1:7

**pilots'** [3] - 20:15, 84:18, 84:23

**place** [4] - 10:6, 83:3, 88:12, 111:22

**Plaintiff** [5] - 1:5, 6:20, 101:3, 108:18, 111:24

**PLAINTIFF** [339] - 1:14, 3:7, 3:9, 3:25, 4:5, 4:7, 4:11, 4:19, 4:22, 5:1, 5:7, 5:11, 5:16, 5:22, 6:2, 6:11, 7:6, 9:3, 9:13, 10:18,

11:11, 11:14, 12:1, 12:5, 12:11, 13:3, 13:17, 14:18, 15:13, 15:17, 15:20, 15:25, 16:2, 17:8, 17:13, 17:18, 17:21, 21:25, 22:5, 23:14, 23:19, 23:23, 24:16, 24:24, 25:2, 25:8, 25:14, 25:21, 26:1, 26:4, 26:8, 26:10, 26:16, 26:20, 26:25, 27:8, 27:11, 28:17, 29:1, 29:3, 29:7, 29:10, 29:16, 29:18, 29:22, 29:25, 30:5, 30:8, 35:8, 36:8, 36:25, 37:7, 37:15, 38:22, 38:25, 39:2, 39:4, 39:6, 39:9, 39:12, 39:22, 39:24, 40:1, 40:5, 40:10, 41:21, 42:6, 42:17, 42:19, 42:21, 44:6, 44:9, 44:18, 45:5, 45:7, 45:16, 45:21, 45:25, 46:3, 46:6, 46:13, 46:17, 46:20, 46:25, 47:2, 47:7, 48:8, 48:10, 48:13, 48:15, 48:19, 48:21, 49:3, 49:14, 49:19, 49:23, 50:17, 51:1, 51:23, 52:6, 52:8, 52:11, 52:15, 52:20, 52:25, 53:2, 53:12, 53:18, 53:22, 54:2, 54:5, 54:13, 54:15, 54:22, 54:25, 55:3, 55:6, 55:9, 55:15, 55:18, 56:7, 56:22, 57:1, 58:6, 58:8, 59:19, 59:25, 60:2, 60:5, 60:7, 62:2, 62:4, 63:5, 63:10, 63:12, 63:14, 64:1, 64:20, 65:15, 65:17, 65:19, 65:22, 65:24, 66:3, 66:6, 66:10, 66:14, 66:19, 68:3, 68:5, 68:10, 68:19, 68:21, 68:25, 69:3, 69:6, 69:9, 69:11, 69:14, 69:21, 70:3, 70:13, 70:17, 70:21, 70:24, 71:5, 71:10, 71:12, 72:17, 72:20, 73:3, 73:7, 73:9, 74:6, 74:10, 74:13, 74:18, 76:24, 77:11, 77:13, 77:21, 78:2, 78:8, 78:11,

78:17, 78:20, 78:24, 79:7, 79:11, 80:22, 81:2, 81:4, 81:6, 81:8, 81:12, 81:14, 81:16, 81:19, 81:23, 81:25, 84:6, 85:16, 85:19, 85:22, 86:1, 86:8, 86:16, 86:19, 87:8, 87:11, 88:6, 88:8, 89:3, 89:7, 89:14, 89:17, 89:20, 91:24, 92:2, 92:4, 92:6, 92:15, 92:17, 93:2, 93:4, 93:9, 93:11, 93:18, 93:22, 93:25, 94:4, 94:12, 94:18, 95:23, 96:9, 96:12, 96:16, 98:12, 99:20, 100:10, 100:13, 100:15, 100:18, 100:22, 101:4, 101:7, 101:12, 101:14, 101:20, 101:23, 102:5, 102:7, 102:12, 102:21, 103:2, 103:5, 103:7, 103:10, 103:14, 103:17, 103:19, 103:23, 104:1, 106:10, 106:20, 108:20, 108:22, 109:6, 109:12, 109:15, 109:24, 110:6, 110:15, 110:18, 110:21, 111:1, 111:6, 111:8, 111:10, 111:13, 111:17, 112:2, 112:5, 112:13, 112:16, 112:18, 113:4, 113:6, 113:11, 113:16, 113:18, 113:21, 114:1, 114:7, 115:4, 116:9, 116:17, 116:21, 117:14, 117:19, 117:21, 117:24, 118:18, 118:20, 118:22, 119:2, 119:5, 119:13, 119:18, 119:20, 119:22, 120:12, 120:21, 121:3, 121:6, 121:8, 122:11, 122:13, 123:5

**Plaintiff's** [5] - 15:21, 15:23, 27:3, 96:17, 113:24
**plan** [1] - 55:23
**planned** [1] - 21:4
**play** [2] - 13:18, 105:14

**played** [1] - 76:1
**pleading** [3] - 12:12, 58:17, 120:17
**pleadings** [8] - 11:3, 12:8, 118:9, 119:8, 120:2, 120:4, 120:5, 120:18
**pled** [1] - 74:15
**plenty** [2] - 107:11, 112:9
**PLLC** [1] - 1:20
**plus** [1] - 5:12
**point** [23] - 5:18, 9:19, 10:17, 14:19, 26:3, 40:18, 46:10, 62:5, 71:3, 72:19, 77:17, 83:23, 85:18, 88:19, 95:20, 104:4, 104:6, 107:24, 108:4, 113:20, 116:2, 117:12, 120:14
**pointed** [1] - 18:24
**points** [1] - 38:1
**pops** [1] - 34:13
**portion** [1] - 24:3
**position** [10] - 9:21, 56:8, 65:1, 65:8, 71:21, 91:3, 91:10, 95:7, 105:24, 115:1
**positions** [9] - 57:12, 64:9, 64:13, 67:7, 75:22, 76:10, 91:17, 93:25, 94:13
**possessed** [1] - 17:15
**possible** [15] - 13:11, 20:24, 21:20, 24:22, 28:9, 30:20, 31:14, 34:17, 34:18, 34:20, 37:15, 43:20, 66:1, 105:11, 121:22
**postdates** [1] - 69:3
**postings** [1] - 90:15
**postponed** [1] - 108:12
**practical** [1] - 31:6
**practice** [3] - 7:11, 64:4, 71:9
**pre-'21** [1] - 12:12
**pre-2022** [1] - 58:20
**precisely** [1] - 19:24
**precluded** [1] - 57:8
**preclusive** [1] - 91:5
**preferred** [1] - 35:6
**Preitz** [3] - 68:22, 80:10, 85:3
**prejudgment** [1] - 77:2
**prejudice** [4] - 98:8, 100:21, 106:7, 113:14

**prejudices** [2] - 101:13, 101:14
**prejudicial** [9] - 4:2, 11:21, 12:23, 28:21, 28:22, 36:20, 42:4, 80:24, 118:7
**premise** [2] - 79:25, 95:18
**prepare** [9] - 46:21, 46:22, 51:24, 77:25, 78:2, 91:20, 105:24, 121:10
**prepared** [3] - 76:14, 94:10, 122:21
**preparing** [2] - 53:23, 117:17
**present** [4] - 3:6, 3:11, 19:13, 73:14
**preserve** [1] - 83:23
**president** [12] - 49:25, 62:18, 79:14, 80:12, 82:16, 83:12, 84:14, 87:19, 87:25, 95:2, 95:3, 95:11
**President** [3] - 47:15, 49:25, 87:16
**presumptive** [1] - 99:10
**pretrial** [1] - 6:18
**pretty** [11] - 7:16, 31:11, 35:11, 35:20, 44:9, 44:12, 54:6, 78:12, 90:21, 95:24, 114:2
**prevailed** [1] - 90:9
**previous** [2] - 102:22, 119:23
**previously** [2] - 57:9, 96:5
**primarily** [1] - 26:22
**prime** [1] - 118:7
**privilege** [10] - 31:25, 79:5, 80:14, 82:8, 82:23, 83:22, 84:8, 84:16, 85:17, 86:25
**privileged** [20] - 79:8, 81:1, 81:4, 81:18, 81:19, 82:11, 83:4, 83:5, 83:8, 83:17, 84:13, 85:5, 85:8, 85:10, 85:14, 87:2, 88:19, 88:20, 94:8, 94:9
**Pro** [1] - 1:15
**pro** [9] - 3:10, 28:3, 37:25, 42:10, 90:21, 107:1, 110:13, 115:1, 119:22
**problem** [7] - 5:1, 11:14, 39:12, 48:6,

99:12, 110:16, 113:12
**problems** [1] - 45:11
**proceed** [2] - 13:7, 40:10
**proceeding** [4] - 77:5, 78:5, 79:20, 86:15
**proceedings** [13] - 12:24, 40:18, 56:3, 74:9, 74:15, 74:17, 74:19, 84:13, 86:11, 86:23, 86:24, 123:6, 123:16
**process** [14] - 13:12, 31:25, 32:10, 33:4, 66:1, 69:11, 74:25, 75:11, 75:12, 75:19, 76:8, 104:13, 118:6, 122:15
**produce** [19] - 27:5, 27:12, 28:5, 28:13, 28:18, 28:21, 31:4, 33:13, 33:14, 34:9, 35:12, 40:25, 43:1, 43:11, 46:9, 67:21, 76:9, 111:4, 118:1
**produced** [39] - 13:14, 13:17, 14:22, 17:3, 24:2, 24:6, 27:6, 28:11, 28:12, 31:10, 31:15, 31:19, 32:4, 32:5, 32:10, 32:11, 32:16, 32:25, 33:1, 33:9, 33:10, 33:15, 33:16, 33:23, 34:21, 35:2, 35:19, 37:22, 37:23, 39:14, 39:16, 40:22, 44:13, 45:1, 45:23, 47:3, 109:7, 109:10, 123:17
**producing** [2] - 15:1, 53:16
**product** [1] - 32:21
**production** [27] - 13:14, 15:3, 15:4, 27:4, 29:20, 30:13, 31:13, 31:21, 32:2, 32:18, 32:23, 33:4, 33:8, 34:7, 35:10, 36:14, 38:17, 39:14, 40:12, 42:1, 45:9, 46:15, 49:10, 74:2, 99:14, 102:23, 109:8
**productions** [3] - 31:2, 38:16, 43:18
**professed** [1] - 62:6
**professional** [4] - 16:18, 16:23, 101:5, 106:13
**professionally** [2] -

23:25, 25:18
**proffering** [1] - 96:1
**projections** [1] - 18:19
**prolonged** [3] - 13:20, 13:22, 99:13
**promise** [7] - 94:16, 95:1, 95:3, 95:7, 95:19, 95:25, 96:5
**promised** [4] - 28:12, 35:10, 35:15, 114:9
**promises** [4] - 35:17, 47:15, 50:1, 94:17
**proper** [1] - 106:13
**proportionality** [1] - 17:11
**proposed** [5] - 6:25, 7:1, 7:7, 7:10, 8:23
**prosecute** [2] - 68:13, 79:16
**protect** [1] - 84:19
**protected** [1] - 84:20
**protective** [8] - 10:21, 11:16, 13:4, 15:2, 57:8, 58:14, 58:16, 118:10
**prove** [1] - 60:22
**proves** [1] - 55:20
**provide** [10] - 32:21, 54:17, 76:18, 83:2, 97:13, 97:24, 98:15, 102:7, 102:8, 102:14
**provided** [17] - 17:5, 24:12, 38:15, 38:19, 38:23, 43:1, 43:13, 44:15, 44:17, 44:18, 47:24, 57:18, 61:4, 80:17, 82:15, 96:22, 108:4
**provides** [1] - 20:1
**proving** [2] - 61:21, 94:16
**provision** [1] - 95:5
**public** [9] - 80:9, 80:18, 82:17, 82:18, 84:11, 85:22, 85:23, 86:11, 89:1
**publicly** [2] - 84:8, 86:10
**pull** [1] - 11:8
**puppet** [1] - 96:3
**purchase** [1] - 26:20
**purpose** [7] - 16:17, 50:18, 61:21, 61:24, 72:22, 76:5, 80:24
**purposes** [3] - 18:24, 18:25, 21:12
**pursuant** [1] - 56:13
**pushing** [1] - 105:9
**put** [14] - 14:20,

34:13, 47:22, 52:12, 65:1, 75:3, 75:25, 108:2, 108:22, 111:8, 113:1, 114:13, 115:1, 115:8

**Q**

**qualified** [1] - 23:5
**quash** [6] - 15:22, 17:24, 24:13, 24:16, 24:19, 103:11
**quashed** [3] - 11:19, 12:2, 25:17
**queried** [1] - 80:8
**questioned** [2] - 80:11, 82:12
**questions** [13] - 64:23, 66:11, 71:1, 71:18, 73:1, 76:17, 83:21, 84:2, 84:3, 91:16, 91:18, 95:10, 100:14
**quickly** [3] - 7:16, 31:14, 51:5
**quite** [2] - 36:3, 116:6
**quoting** [1] - 69:25

**R**

**radio** [1] - 62:12
**raise** [5] - 57:18, 58:3, 65:11, 73:21, 120:8
**raised** [5] - 38:12, 40:21, 40:22, 41:8, 114:3
**raising** [1] - 48:1
**ran** [2] - 74:18, 78:5
**range** [1] - 21:18
**rate** [1] - 102:8
**rates** [1] - 109:3
**rather** [3] - 72:10, 74:1, 77:20
**RDR** [2] - 2:1, 123:20
**read** [4] - 7:24, 21:17, 36:18, 122:18
**ready** [3] - 55:15, 59:16, 118:7
**realistic** [4] - 18:19, 43:18, 97:17, 105:10
**realities** [1] - 31:6
**realize** [1] - 27:23
**really** [20] - 5:2, 5:19, 12:7, 14:15, 28:22, 58:20, 70:17, 84:19, 84:25, 85:4, 86:16, 100:5, 101:20, 105:8,

110:23, 110:25, 111:25, 114:16, 120:10, 122:14
**reargue** [1] - 14:17
**reason** [12] - 10:3, 18:23, 24:18, 60:21, 62:14, 62:21, 81:17, 90:19, 104:11, 107:23, 112:1, 117:23
**reasonable** [3] - 94:6, 106:3, 106:4
**reasoning** [1] - 81:24
**reasons** [2] - 25:14, 75:23
**reattach** [1] - 80:6
**rebut** [2] - 18:20, 21:25
**rebuttal** [10] - 17:5, 56:1, 97:10, 97:13, 99:1, 102:15, 102:17, 103:21, 111:2, 111:4
**rebuttals** [1] - 122:23
**rebutting** [1] - 18:25
**receive** [1] - 32:17
**received** [14] - 19:7, 19:8, 19:23, 30:3, 30:14, 38:21, 39:25, 44:24, 75:8, 87:7, 96:24, 103:16, 105:16, 105:19
**receiving** [1] - 108:16
**recent** [1] - 6:1
**recently** [1] - 70:21
**recognized** [2] - 59:2, 107:5
**recommended** [1] - 87:24
**record** [15] - 17:25, 25:9, 52:12, 65:1, 71:6, 80:9, 91:20, 94:13, 112:24, 113:1, 119:7, 120:3, 120:5, 120:6, 122:4
**RECORDING** [1] - 1:11
**records** [2] - 19:20, 72:12
**redactions** [1] - 32:1
**REDDI** [11] - 78:22, 79:12, 80:7, 80:13, 81:12, 82:14, 83:6, 83:10, 83:11, 84:7, 85:21
**REES** [1] - 1:24
**referenced** [1] - 50:3
**referring** [1] - 86:22
**refers** [2] - 49:9, 49:10
**reflect** [1] - 19:16

**reflected** [2] - 19:12, 19:13
**reformat** [3] - 41:12, 42:23, 42:25
**refused** [9] - 4:19, 47:12, 68:13, 99:21, 100:6, 103:23, 111:10, 112:7, 112:10
**refusing** [1] - 112:10
**regard** [6] - 21:14, 59:17, 74:16, 76:21, 85:13, 88:24
**regarding** [6] - 60:6, 60:14, 67:21, 72:12, 76:10, 105:13
**regardless** [1] - 100:14
**REID** [1] - 1:11
**reimbursed** [1] - 117:2
**rein** [1] - 59:7
**reinstated** [1] - 59:12
**reinstatement** [4] - 47:16, 50:2, 79:12, 79:17
**related** [2] - 10:10, 61:6
**relates** [1] - 86:12
**relative** [1] - 80:21
**relevant** [20] - 21:8, 25:13, 55:22, 62:19, 62:24, 67:18, 67:24, 68:7, 71:8, 71:21, 77:5, 88:23, 89:9, 89:11, 90:17, 91:4, 92:11, 93:13, 93:15, 105:18
**relied** [1] - 116:22
**remaining** [1] - 57:21
**remedies** [2] - 90:7
**remedy** [1] - 45:15
**remember** [4] - 78:7, 78:9, 89:8, 92:20
**remembers** [2] - 72:7, 78:15
**remove** [1] - 50:11
**renamed** [2] - 28:8, 44:14
**report** [46] - 18:9, 19:1, 19:8, 21:18, 22:25, 59:18, 61:1, 61:3, 96:19, 96:21, 96:24, 97:7, 97:14, 97:25, 98:9, 98:14, 98:15, 98:20, 98:24, 99:2, 99:4, 99:12, 100:23, 102:14, 102:15, 102:16, 102:17, 102:22, 102:24, 103:4,

103:16, 105:3, 105:7, 105:18, 105:24, 107:15, 108:15, 108:23, 109:2, 109:11, 111:2, 111:4, 111:23, 112:6
**reporterlisaedwards@gmail.com** [1] - 2:1
**Reporterlisaedwards@gmail.com** [1] - 123:21
**reports** [3] - 59:6, 61:8, 70:6
**represent** [4] - 62:10, 64:13, 64:15, 70:8
**representation** [16] - 59:22, 60:20, 61:13, 62:13, 62:16, 62:19, 64:5, 67:12, 67:16, 68:13, 70:4, 79:1, 80:2, 113:5, 113:9, 113:13
**representational** [1] - 79:15
**representative** [1] - 58:23
**represented** [2] - 82:22, 100:10
**representing** [3] - 12:20, 63:3, 64:6
**reproduce** [2] - 36:17, 45:17
**reputational** [1] - 16:18
**reputationally** [1] - 25:18
**request** [9] - 20:24, 25:10, 31:8, 33:7, 35:6, 74:22, 74:23, 99:11, 118:5
**requested** [3] - 29:19, 43:2, 87:15
**requesting** [1] - 85:13
**requests** [8] - 9:25, 19:6, 19:9, 30:15, 31:11, 33:9, 43:7, 49:9
**require** [3] - 31:24, 33:12, 79:23
**required** [6] - 43:8, 43:10, 43:11, 98:21, 102:13, 108:6
**requires** [2] - 28:5, 72:1
**requiring** [1] - 60:21
**research** [1] - 73:5
**reserve** [1] - 22:12
**resetting** [2] - 6:20,

8:23
**resigned** [1] - 26:11
**resolution** [3] - 94:15, 94:22, 122:9
**resolve** [17] - 37:3, 37:14, 39:7, 41:3, 42:17, 42:19, 51:15, 54:12, 55:2, 57:13, 66:13, 72:18, 72:23, 87:16, 104:22, 122:20, 122:25
**resolved** [4] - 10:9, 41:7, 75:16, 115:5
**resolves** [1] - 71:19
**resolving** [1] - 54:5
**resource** [1] - 113:8
**respect** [13] - 32:23, 47:14, 49:25, 57:17, 73:1, 73:4, 75:23, 76:10, 77:19, 82:23, 103:7, 103:13, 106:5
**respectfully** [1] - 25:11
**respond** [9] - 18:3, 19:25, 21:4, 37:12, 40:13, 40:18, 53:7, 53:15, 97:6
**responded** [2] - 19:25, 116:5
**response** [15] - 3:7, 6:14, 19:23, 30:11, 33:7, 33:10, 52:18, 53:3, 53:9, 57:19, 57:24, 67:23, 98:11, 119:23
**responses** [1] - 51:7
**responsive** [2] - 30:4, 30:6
**restrictions** [1] - 83:14
**result** [1] - 100:21
**retain** [2] - 97:5, 105:4
**retaliation** [2] - 82:9, 89:22
**retaliatory** [1] - 55:21
**retention** [1] - 61:11
**return** [1] - 95:5
**returns** [3] - 16:15, 17:16, 20:3
**reveal** [1] - 88:4
**review** [17] - 31:18, 31:25, 32:9, 33:4, 34:5, 34:6, 39:25, 41:14, 51:10, 51:20, 57:15, 67:12, 67:16, 72:2, 85:7, 91:19
**reviewed** [1] - 36:22
**reviewer** [1] - 61:9
**RFI** [2] - 48:3, 122:22

**RFIs** [3] - 48:4, 50:13, 99:14
**RFP** [3] - 15:4, 15:10, 50:5
**RFPs** [4] - 29:22, 35:19, 41:22, 47:13
**ridiculous** [1] - 29:16
**ripe** [1] - 118:13
**risk** [1] - 114:22
**Rocio** [2] - 3:19, 5:20
**role** [4] - 61:10, 61:14, 75:9, 76:1
**rolling** [1] - 15:3
**room** [1] - 3:14
**rot** [1] - 84:17
**rotting** [1] - 107:13
**roughly** [1] - 57:6
**round** [2] - 48:17, 67:8
**RP** [1] - 47:19
**ruined** [1] - 84:23
**rule** [11] - 12:19, 45:24, 45:25, 46:3, 50:14, 51:8, 51:11, 112:1, 120:9, 120:21, 120:22
**Rule** [33] - 12:20, 15:9, 16:14, 17:4, 17:14, 17:21, 24:9, 25:16, 28:4, 33:1, 33:12, 33:13, 39:22, 42:7, 42:8, 55:22, 56:14, 60:8, 71:15, 74:2, 98:25, 99:10, 99:25, 100:3, 100:13, 104:16, 106:21, 107:8, 112:3, 120:4, 122:4
**ruled** [1] - 6:5
**rules** [15] - 35:11, 35:14, 43:8, 98:13, 100:23, 100:24, 100:25, 101:8, 102:13, 106:25, 107:2, 107:3, 107:7, 120:16
**ruling** [5] - 45:20, 52:17, 58:1, 84:5, 92:17
**RYBAK** [1] - 1:19
**Rybak** [3] - 3:15, 12:17, 19:13

**S**

**safe** [1] - 121:4
**safeguard** [1] - 87:20
**sake** [2] - 49:8, 69:23
**salary** [1] - 18:15

**sanction** [4] - 24:17, 25:8, 99:10, 117:2
**sanctioned** [2] - 100:25, 107:7
**sanctions** [5] - 10:24, 17:24, 35:13, 107:8, 119:8
**sandbag** [1] - 41:2
**saved** [2] - 51:15, 51:16
**savings** [7] - 56:3, 59:6, 59:9, 59:17, 61:7, 70:6, 70:10
**saw** [1] - 81:13
**scanned** [1] - 34:25
**schedule** [3] - 10:11, 22:12, 22:21
**scheduled** [4] - 10:10, 98:6, 108:3, 108:17
**scheduling** [21] - 4:24, 5:2, 5:4, 5:8, 6:4, 6:20, 6:25, 7:2, 7:7, 8:2, 8:8, 8:23, 9:8, 9:10, 9:15, 102:1, 110:8, 111:3, 112:5, 113:23, 114:3
**scheme** [2] - 56:3, 74:5
**school** [1] - 42:10
**scope** [3] - 11:5, 11:20, 12:12
**screening** [1] - 34:6
**SCULLY** [1] - 1:24
**Se** [1] - 1:15
**se** [9] - 3:10, 28:3, 37:25, 42:10, 90:21, 107:1, 110:13, 115:1, 119:22
**search** [16] - 28:9, 28:10, 29:6, 29:11, 32:8, 34:12, 35:22, 36:18, 37:6, 37:14, 38:10, 41:13, 45:18, 48:2
**searchable** [13] - 15:5, 15:6, 27:6, 27:20, 29:8, 32:13, 35:3, 36:14, 37:9, 39:19, 41:24, 43:4, 43:22
**searched** [3] - 30:24, 30:25, 50:9
**searching** [3] - 35:1, 45:12, 52:22
**second** [4] - 12:13, 27:21, 30:16, 51:9
**Second** [1] - 1:24
**secondary** [1] - 12:6
**secret** [2] - 78:25,

79:3
**secretly** [1] - 89:24
**see** [26] - 3:16, 3:21, 4:21, 6:6, 7:12, 9:23, 10:2, 12:10, 13:13, 31:13, 45:12, 50:25, 53:19, 62:1, 66:21, 67:11, 70:2, 76:4, 86:21, 88:17, 90:24, 93:1, 103:9, 110:14, 111:19, 117:23
**seek** [1] - 107:8
**seeking** [14] - 18:23, 19:4, 19:7, 20:24, 21:8, 21:20, 22:18, 50:20, 50:24, 57:25, 61:18, 78:18, 81:11, 85:5
**seeks** [1] - 61:2
**seem** [1] - 65:5
**selection** [2] - 61:8, 61:10
**send** [6] - 104:13, 104:20, 121:1, 121:11, 121:12, 121:20
**sense** [2] - 31:5, 72:1
**sent** [12] - 19:9, 21:3, 28:25, 30:15, 39:15, 56:15, 57:13, 57:14, 57:15, 57:19, 67:6, 87:14
**separate** [1] - 74:13
**September** [6] - 108:7, 109:4, 110:3, 110:4, 110:5, 110:11
**sequence** [1] - 50:7
**sequenced** [1] - 50:8
**serious** [1] - 84:25
**serve** [4] - 16:17, 99:25, 100:3, 104:1
**served** [9] - 9:25, 15:23, 16:9, 18:9, 19:5, 31:11, 98:14, 100:13, 104:12
**server** [1] - 104:13
**servers** [1] - 33:22
**service** [10] - 16:20, 26:20, 100:1, 100:5, 104:7, 104:16, 104:17, 104:24, 112:11, 112:15
**session** [1] - 89:24
**set** [7] - 10:12, 18:15, 31:19, 67:6, 75:11, 97:4, 111:24
**setting** [2] - 3:23, 6:21
**settle** [1] - 115:20
**settled** [3] - 58:2,

63:16, 63:19
**settlement** [2] - 75:7
**seven** [2] - 8:22, 10:20
**several** [3] - 42:10, 55:6, 55:11
**severely** [1] - 87:23
**shadow** [1] - 50:11
**shall** [3] - 6:19, 6:20, 8:22
**share** [2] - 75:1, 75:8
**shared** [1] - 20:1
**shares** [1] - 75:12
**shield** [2] - 55:19, 58:21
**Shiffrin** [63] - 3:13, 7:3, 7:17, 9:18, 12:16, 13:7, 22:1, 22:5, 23:15, 27:24, 30:11, 34:15, 35:8, 37:18, 40:15, 41:11, 42:22, 44:10, 44:19, 45:14, 45:24, 46:10, 53:9, 53:13, 53:14, 54:3, 54:20, 56:6, 56:11, 57:5, 60:10, 64:1, 66:22, 66:23, 69:14, 71:13, 74:21, 76:24, 82:20, 84:7, 85:9, 86:20, 90:19, 90:25, 92:5, 94:1, 94:20, 98:14, 99:24, 100:4, 100:11, 101:23, 104:3, 106:17, 107:21, 110:6, 112:21, 114:2, 116:11, 117:12, 119:25, 121:17, 122:22
**SHIFFRIN** [143] - 1:18, 1:19, 3:12, 4:12, 7:4, 7:9, 7:15, 7:19, 7:21, 8:7, 8:10, 8:13, 8:16, 8:19, 8:21, 9:1, 9:20, 10:15, 18:4, 19:3, 19:20, 20:5, 20:7, 20:12, 20:14, 20:18, 20:23, 21:11, 21:17, 21:24, 22:3, 24:8, 30:12, 30:18, 31:10, 32:25, 33:12, 33:20, 34:1, 34:4, 34:16, 34:24, 36:23, 37:2, 37:12, 37:19, 38:4, 38:7, 38:11, 40:13, 40:16, 41:15, 43:3, 43:7, 43:24, 44:1, 44:4, 44:13, 44:21, 44:24, 48:11, 49:8, 53:5, 54:16,

56:13, 56:17, 56:19, 56:24, 57:3, 57:6, 57:24, 60:11, 61:2, 63:22, 66:17, 66:24, 67:2, 67:5, 67:13, 69:16, 69:18, 69:22, 71:2, 71:14, 71:24, 72:8, 72:13, 73:16, 73:25, 74:7, 74:22, 75:25, 76:5, 76:13, 76:16, 79:6, 79:8, 82:21, 83:11, 83:19, 86:3, 86:21, 87:6, 87:9, 88:7, 88:11, 88:14, 90:23, 91:1, 92:16, 94:6, 94:21, 95:15, 95:18, 96:23, 97:13, 97:16, 97:20, 97:23, 98:1, 98:6, 102:6, 104:6, 104:10, 105:1, 105:14, 105:18, 108:2, 109:16, 109:19, 109:23, 112:23, 113:2, 115:8, 115:20, 116:14, 116:18, 117:5, 117:9, 121:18, 121:20, 122:2, 123:2
**Shiffrin's** [4] - 87:12, 99:1, 106:14, 116:22
**Shifrin** [1] - 4:19
**shift** [1] - 117:7
**shocked** [1] - 79:22
**short** [1] - 3:2
**show** [3] - 46:10, 55:23, 93:5
**sic** [3] - 15:24, 28:5, 73:14
**Sicher** [5] - 62:18, 68:23, 80:12, 96:1, 96:2
**sick** [1] - 62:8
**sign** [5] - 47:15, 50:1, 95:3, 96:3, 114:4
**signature** [1] - 120:17
**signed** [2] - 120:4, 120:6
**significantly** [2] - 114:8, 118:10
**signing** [2] - 120:2, 120:18
**silence** [2] - 90:13, 91:12
**silent** [1] - 62:12
**silos** [1] - 75:1
**simply** [3] - 52:19, 65:13, 117:7
**single** [9] - 11:15,

13:13, 29:11, 35:24, 54:8, 54:9, 62:11, 73:5

**sitting** [1] - 62:21
**situated** [3] - 14:11, 63:20
**situation** [1] - 77:9
**six** [3] - 53:9, 60:19, 114:14
**six-month** [1] - 60:19
**six-page** [1] - 53:9
**skeptical** [1] - 114:10
**small** [1] - 16:22
**software** [2] - 28:2, 28:3
**soldiers** [1] - 50:8
**solely** [1] - 30:22
**some-odd** [1] - 36:10
**someone** [2] - 88:24, 120:6
**somewhere** [3] - 21:18, 70:4, 89:13
**soon** [7] - 16:11, 24:22, 43:17, 43:20, 97:8, 105:9, 105:20
**sooner** [2] - 24:21, 25:16
**sophisticated** [1] - 34:15
**sorry** [20] - 3:1, 3:9, 9:6, 38:25, 39:2, 47:7, 48:13, 48:22, 52:11, 52:23, 56:20, 63:17, 65:22, 69:23, 106:17, 107:23, 110:13, 111:17, 114:24, 122:3
**sort** [5] - 31:16, 37:4, 61:18, 96:21, 106:1
**sought** [6] - 10:24, 11:19, 13:9, 57:8, 80:22, 82:24
**sounds** [7] - 54:10, 54:24, 55:1, 81:1, 82:18, 88:3, 111:15
**sourcing** [1] - 78:21
**Southeast** [1] - 1:24
**Southern** [4] - 14:12, 26:13, 63:16, 82:6
**SOUTHERN** [1] - 1:1
**spanning** [1] - 14:24
**spare** [1] - 62:6
**speaker** [3] - 87:5, 106:19, 110:22
**speaking** [4] - 58:8, 65:4, 72:10, 87:1
**specific** [5] - 51:24, 54:17, 54:21, 112:1, 122:22
**specifically** [2] -

19:19, 84:15
**specificity** [4] - 53:22, 68:6, 118:8, 122:21
**speculative** [1] - 23:8
**speech** [2] - 89:22, 90:11
**spelled** [2] - 95:9, 109:9
**spend** [2] - 72:2, 122:24
**spin** [1] - 99:18
**split** [1] - 115:6
**sponsor** [2] - 28:20, 119:24
**sponsored** [1] - 120:1
**sporadic** [1] - 26:11
**spreadsheet** [1] - 20:1
**spreadsheets** [6] - 38:15, 39:14, 39:17, 41:1, 45:1, 45:8
**staff** [1] - 80:15
**stake** [1] - 21:15
**stand** [1] - 92:10
**standard** [1] - 101:3
**standing** [5] - 11:6, 51:1, 52:1, 102:2, 122:18
**start** [3] - 3:5, 6:10, 79:4
**starting** [1] - 97:4
**startup** [1] - 105:23
**state** [5] - 9:4, 56:7, 61:22, 67:23, 119:25
**state-of-mind** [1] - 61:22
**statement** [3] - 44:25, 84:16, 117:22
**statements** [2] - 86:17, 93:5
**STATES** [2] - 1:1, 1:12
**status** [1] - 22:15
**statute** [2] - 60:19, 67:19
**stay** [3] - 58:19, 66:18, 86:9
**Steel** [1] - 82:6
**stems** [1] - 62:14
**steps** [3] - 41:9, 41:10
**stigmatize** [1] - 16:24
**still** [11] - 13:14, 43:19, 44:20, 49:3, 71:21, 84:5, 85:10, 111:11, 116:14,

117:25, 118:8
**stood** [1] - 57:17
**stop** [1] - 85:6
**Store** [2] - 99:23, 104:2
**stored** [1] - 44:11
**story** [2] - 35:11, 53:17
**straight** [1] - 7:22
**streamline** [1] - 73:18
**Street** [2] - 1:20, 1:24
**strenuously** [2] - 16:5, 16:11
**strike** [13] - 25:9, 25:12, 96:18, 98:16, 99:11, 101:11, 101:24, 107:9, 107:10, 107:14, 110:24, 111:23, 118:3
**striking** [2] - 17:24, 26:3
**strived** [1] - 54:8
**struck** [1] - 14:10
**studied** [1] - 92:23
**stuff** [10] - 34:9, 39:18, 50:20, 55:12, 58:10, 69:4, 72:22, 84:14, 118:2, 122:20
**stymied** [1] - 120:7
**subfolder** [1] - 50:6
**subfolders** [1] - 47:20
**subject** [7] - 33:3, 80:13, 83:13, 84:15, 86:24, 104:21, 119:8
**subjected** [1] - 14:8
**submission** [3] - 7:13, 32:12, 38:13
**submit** [3] - 8:17, 99:1, 99:4
**submitted** [7] - 6:5, 8:9, 98:24, 100:17, 102:16, 102:17, 110:8
**subpoena** [6] - 16:3, 19:16, 25:23, 99:21, 104:7, 112:18
**subpoenas** [4] - 11:20, 15:22, 16:10, 16:17
**subsequent** [2] - 61:12, 67:25
**subsequently** [1] - 82:15
**substantial** [3] - 21:21, 27:15, 27:16
**subverting** [1] - 68:15
**successful** [1] - 75:18

**suddenly** [2] - 106:16, 114:23
**sue** [2] - 59:9, 59:11
**sued** [6] - 36:3, 59:3, 59:13, 90:5
**suffer** [1] - 107:3
**sufficient** [3] - 72:15, 76:22, 104:18
**suggest** [1] - 71:2
**suing** [2] - 16:20, 16:25
**Suite** [2] - 1:21, 1:25
**suits** [1] - 68:12
**summarized** [1] - 57:16
**summary** [2] - 63:16, 65:11
**summer** [2] - 110:7, 110:10
**Sunset** [1] - 1:15
**supplement** [5] - 11:3, 12:7, 13:5, 118:9, 119:8
**supplemental** [2] - 12:12, 58:16
**supports** [1] - 68:11
**supposed** [1] - 84:19
**surgery** [1] - 108:13
**Susan** [1] - 63:18
**suspect** [1] - 87:2
**sworn** [1] - 86:16

## T

**table** [1] - 31:4
**tact** [1] - 87:25
**tampering** [2] - 12:18, 119:6
**task** [1] - 43:20
**tax** [3] - 16:14, 17:16, 20:3
**tech** [1] - 28:2
**temporal** [3] - 11:5, 11:20, 12:12
**ten** [3] - 57:7, 57:22, 66:2
**tendency** [1] - 104:20
**tens** [1] - 84:23
**tension** [1] - 84:22
**terabyte** [1] - 30:24
**terminated** [2] - 59:8, 61:14
**termination** [1] - 87:24
**terms** [8] - 3:3, 21:15, 32:8, 41:7, 51:17, 83:16, 106:4, 111:20

**tertiary** [1] - 12:5
**testified** [1] - 62:18
**testify** [12] - 59:17, 60:4, 67:21, 72:16, 74:16, 76:9, 76:14, 88:24, 94:8, 94:10, 94:24, 95:22
**testifying** [2] - 76:21, 77:10
**testimony** [20] - 68:22, 78:15, 82:16, 85:3, 86:14, 86:16, 91:10, 91:14, 92:11, 93:11, 93:21, 93:24, 93:25, 94:2, 94:3, 94:5, 94:13, 94:22, 94:25
**Thanksgiving** [6] - 97:1, 98:20, 107:13, 107:17, 108:8, 109:20
**THE** [788] - 1:11, 1:11, 1:14, 1:18, 3:1, 3:7, 3:8, 3:9, 3:11, 3:18, 3:25, 4:4, 4:5, 4:6, 4:7, 4:9, 4:11, 4:13, 4:19, 4:21, 4:22, 4:23, 5:1, 5:6, 5:7, 5:8, 5:11, 5:15, 5:16, 5:18, 5:22, 5:25, 6:2, 6:6, 6:8, 6:10, 6:11, 6:13, 6:17, 6:19, 7:6, 7:7, 7:12, 7:17, 7:20, 8:5, 8:8, 8:11, 8:15, 8:18, 8:20, 8:22, 9:2, 9:3, 9:11, 9:13, 9:14, 10:13, 10:16, 10:18, 11:9, 11:11, 11:12, 11:14, 11:23, 12:1, 12:3, 12:5, 12:10, 12:11, 13:2, 13:3, 13:16, 13:17, 14:16, 14:18, 15:12, 15:13, 15:14, 15:17, 15:19, 15:20, 15:21, 15:25, 16:1, 16:2, 17:7, 17:8, 17:9, 17:13, 17:17, 17:18, 17:20, 17:21, 18:2, 19:2, 19:18, 20:3, 20:6, 20:9, 20:13, 20:17, 20:19, 21:10, 21:14, 21:21, 21:25, 22:1, 22:4, 22:5, 23:13, 23:14, 23:15, 23:19, 23:21, 23:23, 24:7, 24:9, 24:16, 24:23, 24:24, 25:1, 25:2, 25:4, 25:8, 25:12, 25:14, 25:19, 25:21, 25:25, 26:1, 26:2, 26:4, 26:5, 26:8,

26:9, 26:10, 26:15, 26:16, 26:18, 26:20, 26:23, 26:25, 27:2, 27:8, 27:10, 27:11, 28:16, 28:17, 28:24, 29:1, 29:2, 29:3, 29:4, 29:7, 29:9, 29:10, 29:15, 29:16, 29:17, 29:18, 29:19, 29:22, 29:24, 29:25, 30:2, 30:5, 30:6, 30:8, 30:10, 30:17, 31:9, 32:24, 33:6, 33:18, 33:24, 34:2, 34:11, 34:23, 35:5, 35:8, 36:5, 36:8, 36:24, 36:25, 37:3, 37:7, 37:11, 37:13, 37:15, 37:16, 38:3, 38:6, 38:8, 38:22, 38:24, 38:25, 39:1, 39:2, 39:3, 39:4, 39:5, 39:6, 39:7, 39:9, 39:10, 39:12, 39:21, 39:22, 39:23, 39:24, 39:25, 40:1, 40:2, 40:5, 40:9, 40:10, 40:15, 41:11, 41:19, 41:21, 42:5, 42:6, 42:16, 42:17, 42:18, 42:19, 42:20, 42:21, 42:22, 43:6, 43:21, 43:25, 44:2, 44:5, 44:6, 44:7, 44:9, 44:18, 44:23, 45:3, 45:5, 45:6, 45:7, 45:10, 45:16, 45:20, 45:21, 45:22, 45:25, 46:1, 46:3, 46:5, 46:6, 46:7, 46:13, 46:16, 46:17, 46:18, 46:20, 46:24, 46:25, 47:1, 47:2, 47:5, 47:7, 48:7, 48:8, 48:9, 48:10, 48:12, 48:13, 48:14, 48:15, 48:18, 48:19, 48:20, 48:21, 48:24, 49:3, 49:4, 49:12, 49:14, 49:17, 49:19, 49:20, 49:23, 50:14, 50:17, 50:25, 51:1, 51:3, 51:23, 52:4, 52:6, 52:7, 52:8, 52:10, 52:11, 52:12, 52:15, 52:16, 52:20, 52:24, 52:25, 53:1, 53:2, 53:4, 53:6, 53:12, 53:13, 53:18, 53:19, 53:22, 54:1, 54:2, 54:4, 54:5, 54:10, 54:13, 54:14, 54:15, 54:19, 54:22,

54:24, 54:25, 55:1, 55:3, 55:4, 55:6, 55:7, 55:9, 55:14, 55:15, 55:17, 55:18, 56:6, 56:7, 56:9, 56:16, 56:18, 56:21, 56:22, 56:23, 57:1, 57:4, 57:22, 58:4, 58:6, 58:7, 58:8, 59:15, 59:19, 59:24, 59:25, 60:1, 60:2, 60:3, 60:5, 60:6, 60:7, 60:9, 61:1, 62:1, 62:2, 62:3, 62:4, 63:4, 63:5, 63:8, 63:10, 63:11, 63:12, 63:13, 63:14, 63:24, 64:1, 64:17, 64:20, 64:22, 65:15, 65:16, 65:17, 65:18, 65:19, 65:20, 65:22, 65:23, 65:24, 66:2, 66:3, 66:4, 66:6, 66:7, 66:10, 66:11, 66:14, 66:16, 66:18, 66:19, 66:20, 66:25, 67:3, 67:11, 67:14, 68:3, 68:4, 68:5, 68:7, 68:10, 68:16, 68:19, 68:20, 68:21, 68:24, 68:25, 69:2, 69:3, 69:5, 69:6, 69:7, 69:9, 69:10, 69:11, 69:12, 69:14, 69:17, 69:19, 69:21, 70:1, 70:3, 70:12, 70:13, 70:15, 70:17, 70:20, 70:21, 70:22, 70:24, 71:3, 71:5, 71:8, 71:10, 71:11, 71:12, 71:13, 71:23, 72:6, 72:9, 72:14, 72:17, 72:18, 72:20, 72:25, 73:3, 73:4, 73:7, 73:8, 73:9, 73:11, 73:23, 74:1, 74:6, 74:8, 74:10, 74:11, 74:13, 74:14, 74:18, 74:20, 75:24, 76:4, 76:12, 76:15, 76:20, 76:24, 77:9, 77:11, 77:12, 77:13, 77:19, 77:21, 77:25, 78:2, 78:6, 78:8, 78:9, 78:11, 78:14, 78:17, 78:19, 78:20, 78:21, 78:24, 79:3, 79:7, 79:9, 79:11, 80:20, 80:22, 81:1, 81:2, 81:3, 81:4, 81:5, 81:6, 81:7, 81:8, 81:10, 81:12, 81:13, 81:14, 81:15, 81:16, 81:17,

81:19, 81:21, 81:23, 81:24, 81:25, 82:18, 83:10, 83:18, 83:20, 84:6, 85:12, 85:16, 85:17, 85:19, 85:20, 85:22, 85:25, 86:1, 86:4, 86:8, 86:14, 86:16, 86:17, 86:19, 86:20, 87:4, 87:8, 87:11, 88:3, 88:6, 88:8, 88:13, 88:16, 89:3, 89:5, 89:7, 89:11, 89:14, 89:15, 89:17, 89:18, 89:20, 90:24, 91:21, 91:24, 92:1, 92:2, 92:3, 92:4, 92:5, 92:6, 92:13, 92:15, 92:17, 92:18, 93:2, 93:3, 93:4, 93:7, 93:9, 93:10, 93:11, 93:15, 93:18, 93:20, 93:22, 93:24, 93:25, 94:1, 94:4, 94:5, 94:11, 94:12, 94:15, 94:18, 94:19, 95:13, 95:17, 95:21, 95:23, 96:7, 96:9, 96:11, 96:12, 96:14, 96:16, 96:17, 97:12, 97:15, 97:19, 97:21, 97:24, 98:5, 98:11, 98:12, 99:19, 99:20, 100:8, 100:10, 100:12, 100:13, 100:14, 100:15, 100:16, 100:18, 100:19, 100:22, 101:2, 101:4, 101:6, 101:7, 101:9, 101:12, 101:13, 101:14, 101:19, 101:20, 101:22, 101:23, 102:3, 102:5, 102:7, 102:10, 102:12, 102:19, 102:21, 103:1, 103:2, 103:3, 103:5, 103:6, 103:7, 103:9, 103:10, 103:12, 103:14, 103:15, 103:17, 103:18, 103:19, 103:20, 103:23, 103:25, 104:1, 104:3, 104:9, 104:24, 105:12, 105:17, 106:9, 106:10, 106:18, 106:20, 108:1, 108:18, 108:20, 108:21, 108:22, 109:4, 109:6, 109:10, 109:12, 109:13, 109:15,

109:18, 109:21, 109:24, 110:3, 110:6, 110:14, 110:15, 110:16, 110:18, 110:19, 110:21, 110:23, 111:1, 111:5, 111:6, 111:7, 111:8, 111:9, 111:10, 111:11, 111:13, 111:15, 111:17, 111:19, 112:2, 112:4, 112:5, 112:12, 112:13, 112:15, 112:16, 112:17, 112:18, 112:20, 112:25, 113:3, 113:4, 113:5, 113:6, 113:9, 113:11, 113:12, 113:16, 113:17, 113:18, 113:19, 113:21, 113:22, 114:1, 114:6, 114:7, 115:3, 115:4, 115:6, 115:19, 116:7, 116:9, 116:13, 116:17, 116:21, 117:4, 117:7, 117:10, 117:14, 117:15, 117:19, 117:20, 117:21, 117:23, 117:24, 118:17, 118:18, 118:19, 118:20, 118:21, 118:22, 118:25, 119:2, 119:3, 119:5, 119:11, 119:13, 119:16, 119:18, 119:19, 119:20, 119:21, 119:22, 120:10, 120:12, 120:13, 120:20, 120:21, 120:25, 121:3, 121:5, 121:6, 121:7, 121:8, 121:9, 121:19, 121:22, 121:25, 122:5, 122:11, 122:12, 122:13, 123:4, 123:5

**theirs** [1] - 35:24

**themselves** [2] - 36:12, 84:21

**then-president** [1] - 83:12

**theoretical** [1] - 84:5

**they've** [18] - 11:18, 12:25, 13:19, 14:5, 28:8, 28:11, 32:4, 33:1, 47:3, 59:24, 60:1, 62:19, 64:7, 64:8, 64:11, 68:14,

85:11, 107:10

**thing's** [2] - 42:14, 101:21

**thinks** [1] - 90:19

**third** [2] - 15:22, 61:9

**third-party** [2] - 15:22, 61:9

**threatened** [2] - 98:14, 101:23

**threatening** [1] - 107:14

**three** [15] - 5:4, 5:12, 6:3, 6:22, 8:1, 8:24, 9:7, 13:3, 31:12, 79:19, 98:17, 102:2, 118:8, 119:10, 120:5

**three-month** [3] - 6:22, 8:24, 98:17

**throughout** [3] - 11:17, 14:5, 40:17

**Thursday** [1] - 98:3

**tied** [1] - 40:11

**Tier** [3] - 15:4, 28:19, 30:1

**time's** [1] - 46:13

**time-consuming** [1] - 43:9

**timeframe** [2] - 70:5, 72:10

**timely** [7] - 13:25, 17:3, 108:25, 109:12, 109:15, 116:25, 123:1

**timestamps** [1] - 35:23

**timetable** [1] - 31:5

**timing** [4] - 30:12, 98:9, 105:2, 106:5

**tiny** [1] - 15:6

**today** [7] - 19:23, 31:22, 44:20, 62:14, 62:21, 105:19, 116:2

**today's** [3] - 50:18, 121:9, 121:15

**together** [2] - 56:20, 56:25

**tomorrow** [2] - 116:3, 121:21

**took** [11] - 19:14, 24:19, 41:9, 59:7, 64:12, 75:22, 76:10, 80:5, 105:4, 114:22, 116:23

**tooth** [1] - 107:13

**top** [1] - 120:23

**Topic** [1] - 94:24

**topic** [9] - 4:23, 61:5, 66:15, 66:18, 67:17, 89:8, 92:20, 96:11, 99:21

**topics** [28] - 35:24,

48:4, 49:1, 49:6, 49:10, 49:13, 55:19, 56:1, 56:10, 56:12, 56:15, 56:18, 56:25, 57:7, 57:22, 58:13, 58:20, 61:3, 66:5, 73:20, 74:3, 86:12, 91:8, 92:7, 92:22, 94:9, 94:16

**total** [1] - 36:13
**totally** [2] - 13:11, 24:1
**touch** [1] - 40:25
**toward** [1] - 31:22
**towards** [1] - 59:21
**trained** [1] - 26:21
**training** [4] - 22:21, 26:17, 27:1
**tranche** [4] - 27:18, 27:21, 31:15, 42:24
**tranches** [1] - 36:10
**TRANSCRIBED** [2] - 1:11, 2:1
**transcript** [1] - 92:23
**transcription** [1] - 123:16
**transferred** [1] - 14:3
**treated** [3] - 75:20, 77:16, 92:11
**treatment** [4] - 75:22, 76:2, 76:7
**trial** [7] - 5:24, 14:13, 25:6, 65:12, 91:14, 122:14
**tried** [4] - 24:21, 42:17, 42:19, 80:19
**trigger** [2] - 111:2, 112:3
**triggered** [2] - 98:25, 99:1
**TRIGO** [1] - 1:23
**Trigo** [1] - 120:1
**trouble** [2] - 41:4, 66:8
**true** [7] - 66:3, 68:17, 82:22, 95:8, 108:20, 109:16, 109:17
**truncated** [1] - 118:6
**trust** [2] - 106:14, 106:17
**try** [7] - 42:23, 43:22, 43:25, 51:4, 54:11, 72:20, 91:4
**trying** [24] - 7:4, 14:20, 15:12, 15:14, 39:7, 42:20, 43:21, 51:12, 51:22, 53:10, 54:10, 54:11, 57:18, 58:21, 60:22, 64:1, 65:2, 66:7, 71:3,

76:24, 96:8, 101:9, 109:11, 122:7
**Tuesday** [2] - 107:16, 109:20
**tune** [1] - 84:23
**turn** [1] - 92:22
**turned** [1] - 34:3
**twice** [1] - 13:21
**Twitchell** [1] - 63:18
**two** [24] - 4:17, 5:16, 11:17, 12:5, 12:25, 13:5, 30:14, 30:21, 35:18, 36:10, 38:16, 44:3, 46:23, 48:21, 51:8, 60:23, 62:12, 65:2, 99:8, 104:5, 115:23, 116:19, 118:13, 118:15
**type** [11] - 28:1, 32:16, 33:4, 34:8, 34:12, 35:1, 48:1, 61:22, 91:5, 97:5, 104:22
**typed** [1] - 84:9
**typically** [6] - 32:22, 33:5, 37:20, 38:19, 41:3, 44:14

## U

**U.S** [1] - 82:6
**unauthorized** [1] - 81:20
**unaware** [1] - 122:18
**uncooperative** [1] - 54:7
**under** [27] - 5:2, 5:3, 10:22, 12:18, 12:19, 12:20, 16:14, 17:21, 22:6, 22:19, 24:9, 35:11, 35:14, 53:24, 55:22, 60:8, 83:13, 98:25, 99:10, 99:25, 100:3, 100:13, 104:15, 107:8, 119:5, 120:4, 120:16
**understood** [6] - 26:4, 47:5, 84:6, 85:16, 88:14, 101:4
**undue** [2] - 17:21, 24:10
**unduly** [5] - 16:6, 17:13, 25:15, 67:20, 91:13
**unethical** [1] - 40:17
**unfortunately** [2] - 18:1, 25:17
**unilateral** [1] - 113:24

**union** [17] - 62:17, 63:6, 64:12, 68:12, 70:8, 70:19, 79:14, 80:15, 84:14, 84:18, 87:21, 89:23, 89:25, 90:1, 90:7, 90:16, 95:4
**union's** [1] - 62:24
**Unit** [1] - 1:16
**unit** [3] - 64:10, 77:7, 77:15
**UNITED** [2] - 1:1, 1:12
**unknown** [2] - 62:17, 69:4
**unless** [2] - 46:1, 78:11
**unlike** [1] - 14:21
**unnecessary** [1] - 24:1
**unreasonable** [1] - 91:20
**unrepresented** [1] - 100:4
**unsearchable** [1] - 40:7
**unsuccessful** [1] - 54:6
**untimely** [3] - 14:2, 96:18, 97:21
**up** [16] - 11:8, 22:9, 23:6, 34:13, 47:23, 53:11, 54:18, 65:13, 66:21, 75:3, 75:11, 77:16, 95:16, 114:12, 115:12, 120:22
**update** [1] - 108:24
**updated** [1] - 109:2
**UPS** [2] - 99:22, 104:1
**upset** [2] - 40:21, 75:14
**useless** [1] - 42:2
**usual** [5] - 15:9, 28:6, 33:14, 33:15, 43:11
**Utah** [1] - 90:6

## V

**vacated** [2] - 11:2, 58:16
**valid** [1] - 120:8
**value** [2] - 22:8, 22:13
**variation** [2] - 5:16, 22:10
**varies** [2] - 18:15, 23:14

**various** [1] - 110:11
**vendor** [7] - 31:22, 32:7, 37:21, 38:8, 38:14, 40:25, 44:25
**vendors** [2] - 34:19, 43:16
**verify** [1] - 120:22
**version** [1] - 109:2
**versus** [3] - 80:10, 82:6, 88:22
**view** [1] - 72:19
**viewed** [1] - 90:14
**violate** [2] - 101:8, 115:2
**violated** [3] - 13:13, 17:4, 100:24
**violates** [1] - 25:15
**violating** [2] - 100:25, 115:1
**violation** [16] - 15:9, 15:24, 17:14, 25:22, 28:4, 42:7, 42:8, 58:10, 63:15, 71:12, 89:22, 90:4, 90:11, 98:13, 107:4, 120:9
**voluminous** [1] - 55:10
**vs** [1] - 1:6

## W

**W-2** [2] - 16:15, 20:3
**W-2s** [1] - 17:16
**wait** [2] - 53:9, 65:10
**waive** [1] - 58:15
**waived** [5] - 82:22, 83:19, 85:17, 86:5, 88:16
**Wallace** [2] - 68:22, 80:10
**wants** [5] - 60:11, 71:20, 72:20, 90:19, 110:1
**warrant** [1] - 116:12
**Washington** [1] - 1:21
**waste** [3] - 12:6, 40:8, 46:11
**wasted** [1] - 46:13
**watched** [1] - 114:11
**ways** [1] - 75:20
**website** [3] - 90:1, 90:3, 90:16
**websites** [1] - 85:23
**Wednesday** [1] - 96:25
**week** [9] - 4:17, 32:3, 44:2, 47:1, 54:23, 107:15, 107:16,

114:13, 118:15
**weekend** [1] - 107:20
**weeks** [10] - 41:25, 46:15, 46:21, 46:23, 55:13, 94:3, 118:8, 118:13, 118:15, 119:10
**welcome** [1] - 59:12
**well-taken** [1] - 106:12
**Western** [1] - 61:8
**whole** [14] - 10:19, 12:19, 14:4, 29:12, 42:13, 55:13, 59:19, 62:8, 69:11, 78:5, 87:13, 93:18, 101:20, 107:25
**wide** [1] - 119:7
**wildly** [1] - 64:8
**willing** [7] - 72:6, 72:16, 76:9, 95:22, 112:15, 114:23, 115:2
**window** [2] - 14:1, 14:23
**wishes** [2] - 58:3, 73:21
**withdraw** [2] - 48:24, 49:5
**witness** [45] - 12:11, 12:18, 13:18, 17:3, 18:9, 54:9, 57:12, 58:22, 59:16, 60:4, 64:25, 65:1, 65:5, 65:8, 65:14, 66:5, 66:12, 67:15, 67:21, 69:7, 70:23, 70:25, 71:16, 76:9, 76:13, 78:1, 78:2, 78:3, 83:22, 89:3, 91:7, 91:13, 91:22, 92:10, 96:19, 96:21, 97:2, 97:10, 97:24, 102:4, 102:11, 106:16, 119:6
**witnesses** [5] - 11:15, 11:18, 11:19, 14:10, 14:13
**WMEA's** [1] - 61:10
**won** [1] - 77:4
**word** [2] - 29:11, 50:9
**word-search** [1] - 29:11
**works** [1] - 18:18
**worried** [1] - 77:22
**worth** [1] - 30:25
**write** [2] - 51:11, 54:3
**writing** [1] - 15:2
**written** [5] - 47:12, 51:12, 99:2, 102:16

**wrote** [1] - 115:23

## Y

**year** [3] - 22:16, 30:21, 106:1
**Year's** [2] - 99:8, 107:22
**years** [10] - 14:24, 23:4, 23:6, 61:17, 62:12, 70:2, 80:19, 84:20, 85:23, 85:24
**yesterday** [13] - 32:13, 40:20, 41:9, 50:11, 53:4, 53:5, 56:1, 57:14, 57:19, 73:19, 114:5, 114:18, 114:22

## Z

**zero** [1] - 23:11
**Zoom** [1] - 3:19