**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

FILED BY _____ D.C.

JAN 14 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**LAWRENCE MEADOWS,**
     **Plaintiff,**

v.

**ALLIED PILOTS ASSOCIATION,**
     **Defendant.**

**CASE NO. 1:17-cv-22589-EA
HONORABLE JUDGE ED ARTAU**

_____/

**PLAINTIFF'S AMENDED TIME-SENSITIVE MOTION FOR EXTENSION OF ALL
CASE DEADLINES AND FOR AN INTERIM STAY OF THE DISCOVERY CUTOFF
AND REQUEST FOR AN IMMEDIATE STATUS CONFERENCE**

Plaintiff Lawrence Meadows, proceeding *pro se*, respectfully files this Amended Time-Sensitive Motion for an extension of all case deadlines, interim stay of discovery cutoff, and requests an immediate status conference. This motion is filed at the direction of Magistrate Judge Lisette M. Reid, who, during the January 7, 2026 discovery hearing, instructed Plaintiff to bring this matter before Your Honor. While this Court's prior order (ECF No. 105) stated that no further extensions would be granted absent "exceptional circumstances," Plaintiff submits that the events of the past several months are not merely exceptional; they are an extraordinary testament to Defendant Allied Pilots Association's ("APA") ongoing misconduct that has rendered the current schedule untenable and profoundly prejudicial.

This relief is urgently needed due to a toxic "confluence of events," including: (1) a long and continuing history of Defendant Allied Pilots Association's ("APA") prolonged delays, for which it has been twice admonished by this Court; (2) its bad-faith obstructionism, delays and abuses of the discovery process; (3) ethical misconduct; (4) a slate of unresolved, case-dispositive

1

motions that make proceeding with discovery impossible; and (5) a recent, case altering development - the ripening of new, timely ADA. *See* **Exhibit A**. Most recently, APA's discovery document production, now six weeks delinquent, remains fundamentally defective and unsearchable. With the court-ordered Rule 30(b)(6) deposition of Mark Myers scheduled for January 21, 2026, Plaintiff is being forced to prepare without the ability to meaningfully access or search over 32,000 documents, making a fair examination impossible and likely necessitating a second deposition at great expense to both parties.

Given the above toxic "confluence of events," and the ripening of new, case-altering ADA claims, an expansion of the case's temporal scope and a corresponding extension of the case schedule is a procedural necessity.

**ARGUMENT**

## I. APA's Unrelenting Campaign of Obstruction Is An Extraordinary Circumstance.

APA's strategy of attrition has crippled Plaintiff's ability to prepare his case. This is not new; Judge Moore twice admonished APA for its **"prolonged delay,"** finding its excuses "unreasonable" and stating that **"the Court is not a de facto babysitter"** (ECF 70, 90). The pattern has worsened, creating extraordinary circumstances that demand intervention:

### A. Delinquent and Deliberately Defective Production:

APA's discovery production is not merely six weeks late late - it is fundamentally defective and unusable. It violates Rule 34 as it is not organized or labeled to correspond to categories in the RFP requests, not keyword searchable, contains no native files and proper metadata, and lacks a privilege log. Plaintiff cannot prepare for the January 21 deposition of APA's 30(b)(6) designee, Mark Myers, by manually opening 32,466 individual files. This is not a good-faith production; it is a discovery

2

violation designed to prejudice Plaintiff. *See* **Exhibit B**, Plaintiff's Demand Letter (Jan. 12, 2026).

### B. Providing Materially False Disclosures:

In a shocking display of bad faith, APA provided a fictitious address for former President Dan Carey. After being caught, APA "amended" the disclosure with another invalid address. This is a direct violation of Rule 26(g) and is sanctionable conduct. *See* **Exhibit C**, Email Demands regarding Carey Address.

## II. The Confluence of Unresolved, Dispositive Motions Precludes Meaningful Discovery.

This case is being forced toward a discovery deadline while its fundamental contours remain in flux. Plaintiff cannot effectively depose witnesses while the following foundational issues are pending: the **Motion to Disqualify Counsel** for criminal witness tampering (ECF Nos. 109, 110); the **Motion to Disqualify the Bredhoff & Kaiser Firm** (ECF No. 142); the **Motion for Sanctions Against John Pellettieri** (ECF No. 148); the **Motion to Supplement the Pleadings** (ECF No. 129); and three **Objections to the Magistrate's Orders** that improperly quashed key witnesses and limited the temporal scope of discovery (ECF Nos. 149, 159, 162).    To proceed further without rulings on these is a waste of judicial and party resources.

## III. The Ripening of New ADA Claims Is a Case-Altering, Exceptional Circumstance.

As detailed in Plaintiff's Notice of Supplemental Authority (ECF No. 167), Plaintiff received an EEOC Right to Sue letter on December 30, 2025. *See* **Exhibit A.** The resulting 90-day deadline requires Plaintiff to bring new ADA claims arising from APA's 2025 conduct.

Critically, these new claims **mandate an expansion of the temporal scope of discovery to the present day**, rendering the Magistrate's prior order limiting discovery functionally moot. It

3

is impossible to prosecute these claims without a significant extension for new pleadings and discovery into these 2025 events.

This is a procedural necessity, not a matter of discretion, and is precisely the type of exceptional circumstance that warrants a modification of the scheduling order.

## CONCLUSION AND RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests the Court:

1. **GRANT** this Amended Motion and approve a 90-day extension of all unexpired case deadlines; and,

2. **GRANT** an interim stay of the February 1, 2026 discovery cutoff pending a ruling on this motion to prevent irreparable prejudice while it is being briefed and decided; and,

3. **CONVENE** an immediate status conference to address the cascade of unresolved issues.

### *CERTIFICATE OF CONFERENCE PURSUANT TO S.D. FLA. L.R. 7.1(a)(3)*

I hereby certify that on January 9, 2026, at 9:48 AM EST, I conferred in writing with counsel for Defendant, Joshua Shiffrin, via email regarding an extension of all deadlines. Mr. Shiffrin stated that "APA does not consent to a 90 day extension of all deadlines in this matter." Based on this unequivocal refusal, I certify that further conferral on this issue would be futile.

Dated: January 14, 2026

Respectfully submitted,

Lawrence M. Meadows, *Pro Se*
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

4

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, *Pro Se* Plaintiff, hereby certify that on January 14, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record listed below, and was also served via email and U.S. Mail.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com
*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Grace Rybak, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com;
jpellettieri@bredhoff.com;
grybak@bredhoff.com;
*Pro Hac Vice Counsel for Defendant*

5

# **EXHIBIT A**

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Miami District Office**
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/30/2025

**To:** Lawrence  Meadow
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139

Charge No: 510-2026-02977

EEOC Representative and email:   MAXIMILIAN FEIGE
ENFORCEMENT SUPERVISOR
MAX.FEIGE@EEOC.GOV

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2026-02977.

On behalf of the Commission,

Digitally Signed By:Evangeline Hawthorne
12/30/2025
_____
Evangeline Hawthorne
Director

Cc:
NA NA
14600 TRINITY BLVD STE 500
FORT WORTH, TX 76155


Please retain this Notice for your records.

EEOC No. 510-2026-02977 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC<br>Florida Commission On Human Relations | 510-2026-02977 |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Lawrence  Meadow

Phone No.:        (516) 982-7718

Year of Birth:

Mailing Address: 1900 Sunset Harbour Drive, #2112

Miami Beach, FL 33139

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: ALLIED PILOTS ASSOCIATION SCHOLARSHIP FUND

No. Employees, Members: 15 - 100 Employees

Phone No.: (817) 302-2272

Mailing Address: 14600 TRINITY BLVD STE 500

FORT WORTH, TX 76155, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Disability, Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 01/01/2009

Latest: 12/30/2025

Continuing Action

THE PARTICULARS ARE:

I allege that APA has breached its statutory duty of fair representation and that both APA and American have engaged in a coordinated, years-long campaign of disability discrimination and retaliation against me. This campaign is a direct result of my protected activities, which include my advocacy for disabled pilots and my successful legal challenges against both entities. Their actions violate the Americans with Disabilities Act ("ADA") and the Labor-Management Reporting and Disclosure Act ("LMRDA"). The most recent retaliatory acts occurred in 2024 and 2025 and are part of a continuing violation that makes this charge timely.

For over a decade, I have engaged in protected activities by opposing practices made unlawful by the ADA and advocating for the rights of myself and other disabled pilots. Both the APA and American have been fully aware of my protected advocacy at all relevant times. This has made me a target for both APA and American. My protected activities include, but are not limited to:

A. Prosecuting grievances that explicitly alleged disability discrimination and retaliation, including my individual Grievance 12-011 and collective Grievance 12-012, which both sought seniority reinstament after being removed from the seniority list for being on long term disability. Under federal case law, a grievance alleging employment discrimination is itself a form of protected activity. See, e.g., Batuyong v. Gates, 337 F. App'x 451, 456 (6th Cir. 2009).

| EEOC Form 5 (06/24) | Page 1 of 5 |
|---|---|

# CHARGE OF DISCRIMINATION

This is a charge of employment discrimination under the Americans with Disabilities Act (ADA) and other applicable statutes.

**AGENCY:**
Equal Employment Opportunity Commission (EEOC)

**EEOC CHARGE NO.:**
(To be assigned by EEOC)

## 1. COMPLAINANT / CHARGING PARTY

- **Name:** Lawrence Meadows
- **Address:** 1900 Sunset Harbour Drive, #2112, Miami Beach, FL 33139
- **Telephone:** (516) 982-7718
- **Email:**

## 2. NAMED RESPONDENTS (THE PARTIES WHO DISCRIMINATED AGAINST ME)

### A. Allied Pilots Association ("APA")

- **Address:** 14600 Trinity Blvd., Suite 500, Fort Worth, TX 76155
- **Telephone:** (817) 302-2272

### B. American Airlines, Inc. ("American")

- **Address:** 1 Skyview Drive, Fort Worth, TX 76155 (Headquarters)
- **Registered Agent:** Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701

## 3. CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

- RETALIATION
- DISABILITY

## 4. DATE(S) DISCRIMINATION TOOK PLACE

- **Earliest:** January 1, 2009
- **Latest:** December 23, 2025
- **[X] Continuing Action**

## 5. THE PARTICULARS ARE:

1

## I. Introduction & Charging Party

I am a former veteran and military pilot, multiple type-rated airline pilot, and a long-standing member of the Allied Pilots Association ("APA"), the collective bargaining representative for pilots at American Airlines, Inc. ("American"). I was formerly on long-term disability and am classified by APA as a Medically Disability Dropped from American Airlines Seniority List ("MDD") pilot. I am now fully medically recertified by the Federal Aviation Administration ("FAA") and qualified to work as an airline pilot, current and qualified as a Boeing B-777 Captain and Instructor Pilot, who meets all Essential Job Functions of an American Airlines Pilot. This charge details a continuous, ongoing pattern of disability discrimination and retaliation against me by both APA and American, culminating in their recent actions to extinguish my collectively bargained seniority rights and unlawfully terminate my union membership.

## II. Summary of Charges

I allege that APA has breached its statutory duty of fair representation and that both APA and American have engaged in a coordinated, years-long campaign of disability discrimination and retaliation against me. This campaign is a direct result of my protected activities, which include my advocacy for disabled pilots and my successful legal challenges against both entities. Their actions violate the Americans with Disabilities Act ("ADA") and the Labor-Management Reporting and Disclosure Act ("LMRDA"). The most recent retaliatory acts occurred in 2024 and 2025 and are part of a continuing violation that makes this charge timely.

## III. History of My Protected Activity

For over a decade, I have engaged in protected activities by opposing practices made unlawful by the ADA and advocating for the rights of myself and other disabled pilots. Both the APA and American have been fully aware of my protected advocacy at all relevant times. This has made me a target for both APA and American. My protected activities include, but are not limited to:

**A.** Prosecuting grievances that explicitly alleged disability discrimination and retaliation, including my individual Grievance 12-011 and collective Grievance 12-012, which both sought seniority reinstatement after being removed from the seniority list for being on long term disability. Under federal case law, a grievance alleging employment discrimination is itself a form of protected activity. *See, e.g., Batuyong v. Gates*, 337 F. App'x 451, 456 (6th Cir. 2009).

**B.** Filing and prosecuting multiple federal lawsuits against APA to challenge its discriminatory practices and breaches of its duty of fair representation, in connection with their handling of my and other disabled pilots' grievances and rights.

**C.** Serving as a vocal and persistent advocate for the rights of disabled and MDD pilots within APA, publicly criticizing APA leadership for its failure to represent our interests, which resulted in APA locking out myself an all other similarly situated pilots from the virtual and physical union hall.

2

**D.** Serving as the founder of the **Disabled Airline Pilots Foundation**
(                                                      ), an organization created to advocate on behalf of myself
and other similarly situated disabled pilots at American Airlines who have been subjected to
discriminatory and treatment.

**E.** Directly opposing and intervening in the **American Airlines bankruptcy proceedings**. I filed
two federal appeals to ensure that the nationwide EEOC Consent Decree, settling claims of a
pattern or practice of disability discrimination and retaliation from 2009 to 2015, included and
protected the rights of pilots at American Airlines. My successful advocacy delayed the
confirmation of American's bankruptcy plan by approximately two years, drawing the sustained
ire of both American and APA leadership.

## IV. The Discriminatory and Retaliatory Acts

In retaliation for my protected activities, and because of my disability status, APA and American
have engaged in a continuous series of adverse actions designed to destroy my career and silence
my advocacy. These acts include:

**A. Breach of Duty of Fair Representation/Abandonment of Representation:** APA has
deliberately and in bad faith mishandled, delayed, and ultimately abandoned my meritorious
grievances related to my seniority rights and right to reinstatement, in stark contrast to its
treatment of pilots who have not engaged in protected activity, leaving me as the only formerly
disabled American pilot to be denied seniority reinstatement and return-to work, who hasn't
waived such right via a settlement.

**B. Discriminatory Failure to Reinstate:** American, in concert with APA, has refused to
reinstate me to my rightful position as an active line pilot, despite my having obtained all
necessary FAA medical certifications. This is in direct contrast to scores of other MDD pilots
who were reinstated, making me the only qualified MDD pilot who engaged in protected activity
to be permanently denied reinstatement.

**C. Secret Settlement to Extinguish My Rights:**

1. On or about **January 15, 2025**, APA under its newly board appointed President Nick
Silva, entered into a secret settlement agreement with American Airlines, that resolved
the very grievances at issue in my federal lawsuit. This agreement resolved Presidential
Expedited Grievance 23-031 (the successor twin verbatim fast-tracked conversion of the
long-pending collective disabled pilot seniority reinstatement Grievance 12-012, which
American admitted applied to me specifically in its bankruptcy court pleadings) and
provided for the reinstatement of three other similarly situated formerly   disabled MDD
pilots; but explicitly and discriminatorily carved me out, extinguishing my claims "with
prejudice" and without notice, consent, or compensation.

3

2. This settlement agreement explicitly named as an "Identified Individual", but carved me out and excluded me from seniority reinstament, extinguishing my grievance rights "with prejudice" and for zero value and no notice. APA never provided a copy of this agreement, and I only obtained a copy of it from an external source in **mid-March 2025**. I was shocked when I read the language of the agreement and its disparate treatment of myself, as compared to the three other similarly situated former disabled pilots whose seniority was reinstated and returned to training for active line pilot service, one of whom was on disability for 24-years. I believe this exclusion was in direct retaliation for my long history of protected ADA-related activity on behalf of myself and other similarly situated long term disabled pilots.

3. The retaliatory motive for my exclusion is further evidenced by the settlement agreement's own pretextual and false assertion that my individual Grievance 12-11 had been "closed since 2013." This is demonstrably false. Grievance 12-11 was expressly preserved by the U.S. Bankruptcy Court in November 2021, and former APA President Captain Ed Sicher was began actively moving it toward arbitration on June 13, 2024, and it was in the que to be heard as late as October 7, 2024, right before Captain Sicher was summarily recalled and purged from his position as APA President, shortly after refusing to sign the secret settlement that excluded me from seniority reinstatement. This false statement was manufactured to justify my exclusion. This collusive act was a direct and malicious retaliation for my protected activity and pending federal lawsuit against APA.

**D. Retaliatory Termination of Union Membership:**

1. On or about **May 1, 2025**, just **two days** after I filed a motion to reopen my pending federal duty of fair representation lawsuit against the APA, and five days before I asked the address the May APA Spring Board of Directors during membership guest hour to expose the secret a settlement and its abrogation of seniority rights, APA President Nick Silva summarily terminated my 34-year union membership by letter sent via email. I was immediately locked out of the APA website, the virtual and physical union hall, and stripped of APA supplemental medical benefits(which continued into retirement) to which I paid premiums for over 20-years.This action was taken without cause and without any of the due process required by the APA's own Constitution & Bylaws.

2. I believe this termination of my membership was a further blatant targeted act of retaliation designed to punish me for my protected activity of exercising my right to sue the union and to silence my advocacy for disabled pilots, in direct violation of the ADA's anti-retaliation provisions, 42 U.S.C. § 12203.

**E. Ongoing Retaliatory Obstruction of Justice:** In my current federal lawsuit, *Meadows v. APA*, No. 1:17-cv-22589-EA (S.D. Fla.), APA's counsel continues its retaliatory campaign by systematically obstructing discovery. They have refused to produce key documents, violated federal rules regarding expert disclosures, and engaged in bad-faith gamesmanship to prevent the deposition of their corporate representative, all in an effort to prevent me from vindicating my rights in court.

4

## V. Continuing Violation

The actions described above are not isolated incidents but are part of an unbroken chain of discriminatory and retaliatory conduct stretching back over a decade and continuing to this day. The most recent adverse actions in 2025 are directly linked to and are the culmination of the Respondents' long-standing animus toward me for my protected activities.

## VI. Conclusion

For all the foregoing reasons. I believe APA and American has unlawfully retaliated and discriminated against me in violation of the Americans with Disabilities Act by excluding me from the January 15, 2025 settlement using a false pretext, and by terminating my union membership on May 1, 2025. Furthermore, I believe I have been treated differently on the basis of my disability. I am aware of statements made by senior airline executives, in the presence of APA leadership, expressing specific concern about reinstating pilots with psychiatric conditions, like my own. The differential treatment of my case compared to other former disabled pilots reinstated (two of whom were out on disability for 24-years) under the January 2025 secret settlement agreement supports an inference of disability discrimination and retaliation

## IV. Request for Relief

Given that I am less than three years form the FAA mandatory retirement age of 65-years – time is of the essence, I request that the EEOC provide and immediate right to sue and/or investigate this charge and that I be granted full "make-whole" relief, including but not limited to: reinstatement of my union membership, an order compelling the APA to secure my seniority reinstatement with American Airlines, back pay, front pay, compensatory damages for emotional distress, punitive damages, and any other relief the Commission deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

**Lawrence M. Meadows**
Dated: December 30, 2025

5

## EXHIBIT  B

URGENT: Formal Demand to Correct Material Misstatements to the Court and Cure Deficient Document Production

From: Lawrence Meadows (lawrencemeadows@yahoo.com)

To: jshiffrin@bredhoff.com; grybak@bredhoff.com

Cc: ctrigo@grsm.com; ddymowski@grsm.com; ckekacs@bredhoff.com; jpellettieri@bredhoff.com; jnguyen@bredhoff.com

Bcc: ssmpls@aol.com

Date: Monday, January 12, 2026 at 08:07 AM EST

**To:** Joshua B. Shiffrin
**Cc:** All Counsel of Record
**From:** Lawrence Meadows
**Date:** January 12, 2026

**Subject: URGENT: Formal Demand to Correct Material Misstatements to the Court and Cure Deficient Document Production**

Mr. Shiffrin,

This email serves as a formal demand regarding two critical issues: (1) your material misstatements of fact made to Magistrate Judge Reid during the January 7, 2026 discovery hearing; and (2) your continued failure to provide a complete and compliant document production.

**I. Demand to Correct Material Misstatements**

During the January 7 hearing, you made at least two material misstatements to the Court that require immediate correction:

1. **Misstatement on Production Deadline:** You represented to the Court that you had promised to complete your production by January 9, 2026. This is false. Your email to me on November 21, 2025, explicitly stated: "We will thereafter produce documents to you on a rolling basis, with the goal of substantially completing our document production to you by January 5." Your representation to the Court obscured the fact that you had already missed your own self-imposed deadline, which itself was more than a month past the original December 1, 2025 due date.

2. **Misstatement on Document Searchability:** You represented to the Court that you believed your production was keyword searchable. This was also false. In your email dated

January 8, 2026, you were forced to admit the contrary, stating, "we determined that the first production was searchable, but, inadvertently, the second production was not." Moreover, even with your "re-issued" second tranche, the production as a whole remains functionally unsearchable, as detailed below.

A lawyer's duty of candor toward the tribunal is absolute. *See, e.g.,* Model Rules of Pro. Conduct r. 3.3. Your statements were not accurate, and they misled the Court regarding your diligence and compliance. I demand that you immediately file a notice with the Court correcting the record on both of these points.

## II. Demand to Cure Defective Document Production

Your document production, now over six weeks delinquent, remains woefully deficient and non-compliant with the Federal Rules of Civil Procedure. I demand that you cure the following defects and re-produce your entire production in a compliant format no later than **January 16, 2026, at 5:00 PM EST**.

Your production is defective for at least the following reasons:

1. **Violation of Fed. R. Civ. P. 34(b)(2)(E):** You have produced documents in a disorganized data dump. The production is neither organized and labeled to correspond to the categories in my Requests for Production, nor is it produced as kept in the usual course of business. This is a direct violation of Rule 34.

2. **Lack of Group Searchability:** Your production is not keyword searchable as a complete set. A production of over 32,000 individual files that requires me to open each file to perform a search is not a "searchable" production in any meaningful sense. It is a "digital needle in a haystack" that obstructs, rather than facilitates, discovery.

3. **Absence of Native Files and Metadata:** You have failed to produce native file formats for emails and other electronic documents, stripping them of critical, discoverable metadata. The summary spreadsheet you provided is not an adequate substitute for the actual metadata embedded within native files.

4. **Omission of Text and Telegram Messages:** You have failed to produce any text messages or Telegram messages, despite specific requests in my First and Second Sets of RFPs. The existence of such communications is confirmed by, inter alia, the sworn declaration of APA's Legal Director, James Clark (ECF 113-2), which describes a text message chain involving APA attorneys and its then-President.

5. **Failure to Produce a Privilege Log:** My RFPs sought communications that you may contend are privileged (e.g., RFPs 9, 10, 21, 23, 26). You have produced no such documents and have failed to produce a privilege log expressly describing the nature of any documents withheld on the basis of privilege, as required by Fed. R. Civ. P. 26(b)(5).

Your prompt action to cure these deficiencies is required. Should you fail to do so by the deadline specified, I will seek immediate court intervention and sanctions pursuant to Rule 37.

Regards,

Lawrence Meadows

 2025.11.21 JS-LM email-re extending 30b6 depo and production deadlines.pdf
118.9 KB

 2026.01.08 JS-LM Email Re Production reissue 2nd tranche- JS Admits was not searchable.pdf
132.6 KB

**EXHIBIT C**

Re: [EXTERNAL] URGENT: Materially False Information in Defendant's Rule 26 Initial Disclosures Regarding Witness Dan Carey

From:  Lawrence Meadows (lawrencemeadows@yahoo.com)

To:    grybak@bredhoff.com; ctrigo@grsm.com; ddymowski@grsm.com; ckekacs@bredhoff.com; jpellettieri@bredhoff.com; jnguyen@bredhoff.com; jshiffrin@bredhoff.com

Date:  Monday, January 12, 2026 at 02:11 PM EST

**Subject: RE: Your Second, Still-Incorrect Amended Disclosure for Witness Dan Carey**

Mr. Shiffrin,

I am in receipt of your First Amended Initial Disclosures, filed after I was forced to demand you correct the fictitious Gulf Breeze address for former APA President Dan Carey.

Your purported "correction" is also materially false. The Naples address you have now provided is incorrect and is not a valid address for service. We have already wasted significant time and money attempting service at this location in October 2025, which failed because Mr. Carey was not there.

Your suggestion that this might be a "different Dan Carey" is absurd and insulting. There is only one former APA President Dan Carey on your witness list. Your obligation under Rule 26 is not to guess, nor is it to provide old or intermittently used addresses. It is to provide a current address where the witness can be found and served. You have now failed to do so twice, costing me approximately $800 in wasted service fees, for which I will be seeking full reimbursement and sanctions.

This is your final opportunity to comply with Rule 26 before I file a motion for sanctions on this issue. Provide a valid service address for Mr. Carey.

Regards,

Lawrence Meadows

On Monday, January 12, 2026 at 01:00:33 PM EST, Lawrence Meadows <lawrencemeadows@yahoo.com> wrote:

**Subject: RE: Your Failure to Address Materially False Disclosures Regarding Witness Dan Carey**

Mr. Shiffrin,

I am in receipt of your email in which you attempt to justify your prior misstatements to the Court. I will not debate those points further via email; the record, including your conflicting correspondence and the hearing transcript, speaks for itself and will be addressed in the proper forum.

You have, however, completely failed to address the most serious issue raised in my previous email: **your firm's provision of a fictitious service address for former APA President Dan Carey in your Rule 26 Initial Disclosures.**

This is not an issue you can ignore. Providing false information about a key witness - one you designated - is a flagrant violation of your discovery obligations under Rule 26(a) and (e). Your duty to correct this false disclosure is immediate and absolute.

Your continued silence on this matter will be presented to the Court as further evidence of a pattern of bad-faith obstruction and will be a central component of my forthcoming motion for sanctions.

I demand a substantive response and a corrected, valid service address for Mr. Carey by close of business today.

Regards,

Lawrence Meadows

On Monday, January 12, 2026 at 12:43:44 PM EST, Joshua Shiffrin <jshiffrin@bredhoff.com> wrote:

Mr. Meadows:

We have reviewed the transcript from the January 7, 2026 hearing, and it confirms that I did not make any misstatements to the Court as to the production deadline or the searchability of our production.

1. Statements on Production Deadline: At the hearing, I stated, "we've told him that we expect to make a final production to him on January 9th." Tr. 31:20-21. Our December 16 letter (attached) stated the expected production deadline of January 9. There was no misstatement on this issue.

2. Statements on Document Searchability: At the hearing, I stated, "I had not heard before his submission to the Court yesterday that those PDFs are not searchable. I believe that they are. But if there's an issue with that, I'll look into that." Tr. 32:12-15. That statement correctly stated my belief at the time of the hearing. After the hearing, we looked into the issue and discovered that one of the two production sets was inadvertently produced in a non-searchable format. We immediately corrected the issue. There was no misstatement on this issue.

We will send a separate response on the remaining discovery issues you raise in your email below at a later time.

Sincerely,

Joshua Shiffrin

**From:** Lawrence Meadows <lawrencemeadows@yahoo.com>
**Sent:** Monday, January 12, 2026 10:12 AM
**To:** Joshua Shiffrin <jshiffrin@bredhoff.com>; Grace Rybak <grybak@bredhoff.com>; Capri Trigo <ctrigo@grsm.com>; Andrew Dymowski <ddymowski@grsm.com>; Caitlin Kekacs <ckekacs@bredhoff.com>; John M. Pellettieri <jpellettieri@bredhoff.com>; Justine Nguyen <jnguyen@bredhoff.com>
**Subject:** [EXTERNAL] URGENT: Materially False Information in Defendant's Rule 26 Initial Disclosures Regarding Witness Dan Carey

## Subject: URGENT: Materially False Information in Defendant's Rule 26 Initial Disclosures Regarding Witness Dan Carey

Mr. Shiffrin,

I am writing to address a serious deficiency in your Rule 26(a) initial disclosures. Your disclosures identify former APA President Dan Carey as a potential witness and provide a corresponding address for him in Gulf Breeze, Florida.

This information is false. I have spoken directly with Mr. Carey, who confirms he has never lived in Gulf Breeze, Florida.

Providing a fictitious address for a key witness - the very one you designated - is a material violation of your obligations under Federal Rule of Civil Procedure 26(a) and your continuing duty to supplement under Rule 26(e). This act of obstruction has forced me to expend my own time and resources to independently locate a witness you were obligated to identify correctly.

Pursuant to your duties under the Federal Rules, I demand that you immediately file a supplemental disclosure with the Court correcting this false information and provide me with a valid, current service address for Mr. Carey by close of business today.

Failure to do so will result in seeking a motion for sanctions.

Regards,

Lawrence Meadows

**Disclaimer**

This electronic transmission is intended only for the addressee shown above. It may contain information that is privileged, confidential or otherwise protected from disclosure. Any review, dissemination or use of this transmission or its contents by persons other than the addressee is strictly prohibited. If you have received this electronic transmission in error, please delete the e-mail and notify us immediately by telephone or by reply e-mail. This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience.