UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 17-22589-ARTAU


LAWRENCE MEADOWS,                        Miami, Florida

            Plaintiff,              January 23, 2026

        vs.                         10:03 a.m.

ALLIED PILOTS ASSOCIATION,
et al.,

            Defendants.          Pages 1 to 70
_____


STATUS CONFERENCE
(TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)
BEFORE THE HONORABLE LISETTE M. REID,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:


FOR THE PLAINTIFF:      LAWRENCE MEADOWS
                        (Appearing *Pro Se*)
                        1900 Sunset Harbour Drive
                        Unit 2112
                        Miami Beach, Florida 33139


FOR THE DEFENDANTS:     JOSHUA B. SHIFFRIN, ESQ.
                        JOHN M. PELLETTIERI, ESQ.
                        GRACE RYBAK, ESQ.
                        BREDHOFF & KAISER, PLLC
                        805 15th Street, Northwest
                        Suite 1000
                        Washington, D.C. 20005


                        ANDREW J. DYMOWSKI, ESQ.
                        GORDON, REES, SCULLY & MANSUKHANI
                        100 Southeast Second Street
                        Suite 3900
                        Miami, Florida 33131

TRANSCRIBED BY:          LISA EDWARDS, RDR, CRR
                         Reporterlisaedwards@gmail.com
                         (305) 439-7168

THE COURT:  Hi.  Good morning.

MR. SHIFFRIN:  Good morning.

THE COURT:  We're here to have a status conference and handle some outstanding matters.

Let's see.  Is Mr. Meadows here?  There we go.  Very good.

Lawrence Meadows versus Allied Pilots Association, et al., Case No. 17-22589.

Let's start with appearances for the record. Plaintiff?  Mr. Meadows, you are here, correct?

THE PLAINTIFF:  Yes, ma'am.  I was just trying to close these curtains.  Plaintiff Lawrence Meadows, proceeding *pro se* on behalf of myself.

THE COURT:  Very good.

MR. SHIFFRIN:  Good morning, your Honor.  On behalf of the Defendants,  Joshua Shiffrin on behalf of Defendant Allied Pilots Association.  With me in my office are my colleagues Grace Rybak and John Pellettieri.  And our local counsel, Drew Dymowski, is also on the screen.

THE COURT:  Okay.  Very good.  All right.

Where to start?  First of all, I have an hour.  We do have another hearing coming up after this, so I want to be as efficient as possible.

Judge Artau has how referred many of the matters on this docket to me, so I want to try to sort through some of the

pending matters on the docket and resolve them.

I see that there's also an issue regarding a deposition of Dan Carey, who would I guess be the former president of the APA --

MR. SHIFFRIN:  Correct.

THE COURT:  -- and another discovery issue regarding the deposition notice of APA's present president.

MR. SHIFFRIN:  That's correct.

THE COURT:  That would be Nick Silva.

So first of all, Mr. Meadows, why do you want to depose Dan Carey?

THE PLAINTIFF:  Your Honor, President Carey was president of the union from 20 -- actually, July of 2016 through July 31 2019.  He was involved in trying to obtain my reinstatement.  He's made promises not to sign a contract unless I was reinstated.  He has direct involvement in the claims in this case that are at bar.

THE COURT:  Okay.  You know, I wanted to start also by looking at your amended complaint and making sure I understand your claims.

So briefly, as I understand it, you were on a disability -- or a list of disabled pilots?

THE PLAINTIFF:  Yes, ma'am.

THE COURT:  And at some point, you were removed from that list?

THE PLAINTIFF:  Purportedly, your Honor, yes.

THE COURT:  And that's really the basis of your litigation, because you feel you should have remained on that list?

THE PLAINTIFF:  Well, the basis is that the union didn't properly process -- timely prosecute the grievances related to my removal from the list, which sought my reinstatement.  It was an individual grievance, Grievance 12011 --

THE COURT:  Okay.

THE PLAINTIFF:  -- and a collective grievance, Grievance 12012, which is the basis of Count 3.  There's also an MOU grievance filed in -- both those were filed -- pending during President Carey's tenure.  The memorandum of understanding grievance was supposed to be prosecuted in 30 days.  Grievance 1212, the standard for prosecuting grievances under the current CBA, is within 28 months.

They never prosecuted 1211.  They never responded to my grievance -- the MOU grievance, even though American Airlines did.  And Grievance 1212 was pending for over 13 years in abeyance.

THE COURT:  Okay.

THE PLAINTIFF:  And the APA constitutional bylaws also states that one of the prime objectives of the APA is to protect the individual and collective rights of members and

timely prosecute their individual and collective grievances. And that's in Article 2(d) of that document -- or (2)(b). I'm sorry. Article (2)(b) of the APA constitutional bylaws.

THE COURT: Okay. And if they don't timely prosecute the grievances, what's the remedy?

THE PLAINTIFF: The remedy is to bring a DFR lawsuit, as we've done here, under the Railway Labor Act.

I also have additional remedies of retaliation for my right to sue under the LMRDA and also for my free speech under the LMRDA and also for breach of contract. The APA constitutional bylaws is the supreme law of the union. The union has argued, and case law supports, that it is a contract between APA and its members.

THE COURT: Okay.

THE PLAINTIFF: So we essentially have a duty -- we have three duty of fair representation claims under the Railway Labor Act; we have two breach-of-contract claims under the APA constitutional bylaws; and we have three LMRDA claims, one for membership rights, one for freedom of speech and assembling in the union hall and one for right to sue without fear of reprisal or retaliation.

THE COURT: Okay. And what evidence would Mr. Carey have with respect to that that you don't already have?

THE PLAINTIFF: Mr. Carey has substantial evidence. He was one of the biggest advocates. He took office in July '16.

He purged their former general counsel and subsequently removed their 20-year general counsel and their 20-year in-house legal director and terminated another pilot that had involvement in these matters.  He brought in his own general counsel to try to cure these things.

And he made efforts to get pilots like me back as members in good standing in the union, which was eventually done later by another president.

He tried to make an effort to move this grievance forward, but there was always resistance from the lawyers and the union not to prosecute these grievances because if any one of these pilots like me prevailed, it would create a binding precedent that all the pilots who were removed under the [indiscernible] should have been reinstated and they would have been awarded -- there was an equity distribution proceeding in 2013 where they distributed $1.1 billion to all the pilots of the union --

THE COURT:  Okay.

THE PLAINTIFF:  -- because --

THE COURT:  I just wanted to focus on the --

THE PLAINTIFF:  Yes.  I'm sorry.

THE COURT:  Mr. Carey has evidence that would help you in --

THE PLAINTIFF:  A substantial amount of evidence.

THE COURT:  Okay.  So why --

THE PLAINTIFF:  In particular, promises he made not to sign a collective bargaining agreement that didn't include my return.

THE COURT:  Okay.

THE PLAINTIFF:  And he since stated that he leaves --

THE COURT:  So let me back up, then.

THE PLAINTIFF:  Okay.

THE COURT:  So you believe he's evading service?

THE PLAINTIFF:  I know he's evading service.  I've tried -- so first of all, APA --

THE COURT:  So are you asking the Court to give you permission to do some sort of alternative service on him?  Or what are you --

THE PLAINTIFF:  I gave you those affidavits.  APA gave me an erroneous address in their initial disclosures.  They named him as one of their witnesses.

THE COURT:  Okay.

THE PLAINTIFF:  He's under their control because he's covered by their directors and officers liability insurance.

THE COURT:  Okay.  I --

THE PLAINTIFF:  And they gave me --

THE COURT:  I think that's where we have the error.  But he's not currently an officer of the APA.  Correct?

THE PLAINTIFF:  Yes, ma'am.  But he has been deposed in four other cases like this in federal district courts across

the country on the same exact facts.

And APA --

THE COURT:  But he is not under their control?

THE PLAINTIFF:  Well, he is under their control.  He told me to serve him at his home address, that I believe APA has spoken to him and asked to have him quash his subpoena because he doesn't want to be represented by APA's attorneys. He wants his own representation by the former general counsel of the union because he doesn't trust their attorneys --

THE COURT:  Right.

THE PLAINTIFF:  -- and he wants to be --

THE COURT:  But what does he want the Court to do, is my question.

THE PLAINTIFF:  Well, in the matter of *Wallace Preitz versus APA*, a parallel case to this in 2021, this exact same fact pattern, APA gave erroneous address information.  They refused to accept service under Rule 30.  And he had -- Wallace Preitz had a difficult time serving Dan Carey.  After six attempts, I believe, of service, he went to court and the Court in the Eastern District of Pennsylvania, U.S. District Court, ordered APA to produce him because, even though he was no longer APA president, they had control over him because they're going to pay for his representation and his liability under the D&O policy.

THE COURT:  Okay.  But you just told me that he's going

to get his own representation.

THE PLAINTIFF:  At APA's expense.  APA is going to pay for that --

THE COURT:  Okay.

THE PLAINTIFF:  -- under their policy.

THE COURT:  But his attorney would be the person that would accept service for him --

THE PLAINTIFF:  Well, my understanding now --

THE COURT:  -- because --

THE PLAINTIFF:  -- is APA is refusing -- they want to represent him.  They're refusing to pay for outside counsel and are insisting on representing him and having him quash -- agree to quash the subpoena, which he will not do.

THE COURT:  Okay.  All right.  Thank you.

So let me go back to Mr. Shiffrin.  Your response?

MR. SHIFFRIN:  Yeah.  I don't -- I mean, much of what Mr. Meadows has said is news to me.

APA does not control Mr. Carey.  I agree, first of all, that Mr. Carey has information relevant to the case, and I would love to ask Mr. Carey questions myself.

But we have done nothing to stand in the way of Mr. Meadows serving him with a subpoena.  From Mr. Meadows's declaration, it sounds like he's communicated directly with Mr. Carey.  Mr. Carey has provided him an address for him in New York that APA doesn't even have.

There's nothing that I can do to compel Mr. Carey's appearance at a deposition.

THE COURT:  Okay.

MR. SHIFFRIN:  Ordering APA to produce him would put APA in a very untenable position.

I'll just -- I'll correct two other things.

THE COURT:  You don't have any control over the former president.

MR. SHIFFRIN:  I don't have any control over the former president.

I'm not aware of any claim that's been made under an APA D&O policy.  And I'm also not aware of any dispute about who's going to represent Mr. Carey where there's been no request, certainly, by me to quash any subpoena to him.

I'm all for him being served with a subpoena.  I just don't have the power to make someone show up at a deposition, because he's not under my control.

And I'll just say, Mr. Meadows has misstated what occurred in the *Preitz* case.  And I'll leave it at that.

THE COURT:  Okay.  So, Mr. Meadows, if what you're asking the Court to do is order the APA to accept service on behalf of Mr. Carey, the Court will not order that, and for the reason that this is a former employee, not a current employee.  And it is a former employee who wants his own representation, as you've told us.  He does not want to be represented by the

APA.

So I'm going to decline to impose that requirement on the APA.

THE PLAINTIFF:  Your Honor, if I may, I mean, there's already precedent --

THE COURT:  I understand.  But I'm not aware of that precedent.  I want to go on to the next issue.

THE PLAINTIFF:  Excuse me, your Honor.  I've submitted an affidavit from Wallace Preitz explaining exactly what happened in that case.  And I can give you the court order, if you'd like it.

But I --

THE COURT:  No.

THE PLAINTIFF:  -- disagree that APA --

THE COURT:  I understand you're disagreeing.  I respect that.

THE PLAINTIFF:  I'm sorry, your Honor.

THE COURT:  I respect that.  Okay?  I do.

All right.  Next let's go on to the next issue.  You're requesting an order -- the APA wants to quash a deposition notice to the APA's current president.  So that's Mr. Shiffrin.

MR. SHIFFRIN:  Yes.  So Mr. Silva is the current president of APA.  He's one of the witnesses to whom a subpoena was directed back in October, and his subpoena was quashed because he doesn't have any information within the relevant

time period for the case.

But last week, we served on Mr. Meadows APA's rebuttal expert report, which just as a formality was addressed to Mr. Silva as the president of the union.  And Mr. Meadows then thereafter served deposition notice for Mr. Silva, claiming that because he was the addressee of the rebuttal expert report, that he's now a fact witness and should testify about the basis of the report and the hiring of the expert.

The basis -- any questions that Mr. Meadows has about the basis of the report should be directed to the expert who drafted the report and not to Mr. Silva, who simply was one of the recipients of it.

And any questions about the commissioning of the report and the hiring of the expert would be privileged.  I mean, it's -- frankly, I was the one who went and found the expert and hired him.

And so I -- there's no legitimate reason for subjecting the president of the union, who has quite a busy schedule, to a deposition on that basis.

THE COURT:  Okay.  All right.  Mr. Meadows, your response?

THE PLAINTIFF:  Yeah, your Honor.  If I may.

First, APA's counsel's attempt to add this motion to quash to the agenda via an email to your clerk yesterday while I was deposing a witness is a flagrant violation of Judge

Artau's order requiring the parties to meet and confer telephonically in person.  That never occurred.  And I -- Mr. Pellettieri sent this email *ex parte* without communicating to me while I was busy deposing their 30(b)(6) witness.

Second, on the merits, the motion is baseless.  Your Honor previously quashed Mr. Silva's subpoena because his relevance appeared to be tied to the post '21 events.  That has now fundamentally changed for two reasons:  First, by addressing their economic report directly to Mr. Silva, APA has made him a direct percipient witness to the creation of evidence in this case.  He's no longer shielded by the apex doctrine.

Their expert's own report calculates my damages through March of 2028.  This action [indiscernible] themselves completely destroys the basis for the Court's '21 temporal scope limitation on economic issues.  If they can introduce evidence about my damages through 2028, I must be allowed discovery on the same topic.

Second:  My pending motion to supplement the pleadings is based on an ADA claim and an EEOC right-to-sue letter regarding discrimination, retaliatory conduct by APA in 2025, at the hands of Nick Silva himself and is at the very heart of the claim and discovery that is essential to pursue that claim.  Otherwise, we'll be -- if you do not allow the temporal scope to be expanded, there'll be a second lawsuit filed against APA

within 90 days or 70 days; basically, parallel claims to this lawsuit on the same set of facts on the same continued violation of the same exact parties, and it'll be an absolute waste of judicial resources for the Court and for the parties as well.

THE COURT: Okay. I'm not sure I understand your second point. Can you give me that second point again?

THE PLAINTIFF: There's an -- there's an EEOC right-to-sue letter I received on December 30th, 2025.

THE COURT: Okay. That's the --

THE PLAINTIFF: I must --

THE COURT: That's the letter under the Americans With Disabilities Act that I was reading about?

THE PLAINTIFF: Yes, ma'am.

THE COURT: Okay.

THE PLAINTIFF: And it's tied directly towards the conduct of President Silva and APA between January '25 and May of '25.

And it's not -- it's a continuing violation of the same sort of disability discrimination retaliation I've been suffering for the last several years. And I think it's really important. There's new acts that are adding on to this pattern, and I will have to file that lawsuit. So if it doesn't get allowed to be added into this action, I need -- I need discovery.

Mr. Silva decides if it's a valid claim to [indiscernible] this action. I know it is. And if I don't get that discovery and we don't expand the temporal scope, I will immediately file a second lawsuit against APA in this very court, which seems very wasteful to me on the same exact witnesses, the same exact facts and the same parties.

THE COURT: Okay. So let me take your issues one at a time.

First of all --

THE PLAINTIFF: Can I just -- one -- so I would respectfully request the Court deny APA's motion to quash and find that they failed to properly meet and confer to produce Mr. Silva for this deposition and ask that they produce him on the 28th or on a new date before March 14th.

Now, Mr. Shiffrin seems to want to push everything off. Not just a 45-day extension. But he's ignoring the fact that we really only have two more weeks to do depositions, because if I depose Mr. Silva two weeks from now and want to get another witness or documents, I've got to wait 30 days. And with this expert report, the same situation.

I'm deposing their expert Tuesday. I asked for the documents. The report was two weeks late. They haven't given me -- they haven't given me the documents I requested last Saturday. I couldn't request them any sooner.

If you remember, I wanted to subpoena them under Rule

45. I can have those documents by the second week of January. But by the Court's ordering me to depose him through Mr. Shiffrin and not providing his address, I'm under Rule 30. Now Mr. Shiffrin is saying he doesn't have to provide documents for 30 days. And this deposition for Mr. Barton has been set weeks.

THE COURT: Mr. Who?

THE PLAINTIFF: So it's extremely prejudicial. And they're just continuing to engage in this obstructionist conduct.

I will add that at the start of the deposition on the 21st in 30(b)(6), they gave me a fourth tranche of documents which I never saw and they gave me a --

THE COURT: Mr. Meadows, I'm so sorry, but I can't -- I can't absorb all of the different arguments you're making.

THE PLAINTIFF: Okay. Well --

THE COURT: I wanted to stick to the situation that --

THE PLAINTIFF: Okay.

THE COURT: -- deals with Mr. Silva.

THE PLAINTIFF: Thank you. The --

THE COURT: Am I -- can I respond to your --

THE PLAINTIFF: I'm done with the arguments on Mr. Silva. Thank you, your Honor.

THE COURT: Okay. Very good. You're going in another direction, and I need to --

THE PLAINTIFF:  Understood.

THE COURT:  -- deal with Mr. Silva first.

So as I understand it, you said two things.  You want to get the discovery requests on the damages that were in that expert's report because those damages go out to 2028.

THE PLAINTIFF:  Yes, ma'am.

THE COURT:  So if you need discovery on an expert report, the person that you should depose is the expert.  So I agree:  If there's an expert report, you certainly should get discovery from that expert concerning what the expert says.  That is aside, though, from discovery on every individual who's received the report.

If what you want to do is find out about those damages and you ask Mr. Silva, I'm pretty sure Mr. Silva is going to say:  Well, all I know is what was in this report that the expert prepared for the APA.  So that alone is not a reason to depose Mr. Silva.

Your second reason is that you stated there's a right-to-sue letter from the EEOC regarding the -- a claim that you want to pursue regarding the Americans With Disabilities Act.

Of course, you have a right to pursue that claim.  But that claim is not currently part of this lawsuit.  Should we expand the 2017 case to add a new claim for violation of the ADA, we would be prolonging this case even more.

I understand your point that you might have to file a case against -- I'm not sure who, but for a violation of the ADA.  You can do that.  If some of the evidence overlaps, the good news is, well, you have the evidence that you need for that from this expert's report, I presume.

But that still doesn't mean that that claim is even a part of this case yet.  I don't think the district judge has ruled that an ADA claim is a part of this case.

THE PLAINTIFF:  Well, your Honor, I think that matters before you right now.  That's the point.  The motion to supplement all dispositive and nondispositive motions pretrial are before your Honor.  And there's a motion to supplement the pleadings which seeks to add new counts and new facts.  And there was also an objection of your protective order pending before Judge Artau.

And I must add that all these pending motions, two disqualification motions, motion for sanctions against Mr. Pellettieri for misstatements to your Honor on the October 28th hearing and the motion to correct the record and the motion to supplement the pleadings, and the objections of your protective order, those should have been decided long before now; and the case is handicapped and limping along.  Until those are decided, everything's going to end up on appeal, a writ of mandamus or something.

This really needs to be heard.  I would respectfully

say we need an evidentiary hearing sooner than later to address those matters.

And respectfully, Mr. Silva has a long-term relationship with Mr. Barton. I spoke to another individual with APA. Mr. Silva's a finance expert. He was on the economic and financial analysis committee at APA. And he was working with a financial expert called Jamler Johnson. They brought in Matt Barton to evaluate a contract. So I know he has a personal relationship, and he has a personal interest.

My expert says he's never seen an expert economic report addressed to the CEO or the president of a company or a union ever. He says it's highly irregular. It's always to the attorney.

THE COURT: Okay.

THE PLAINTIFF: So it seems that Mr. Silva has a vested interest. And he personally terminated my union membership after 34 years without cause in violation of the LMRDA Act.

So I would respectfully argue he is extremely relevant as a witness.

And to make -- to put this ADA case --

THE COURT: Well, let me just say this, since I've already ruled with respect to the issue of the discovery damages that you need to depose that expert. But you just said something that I wanted to make sure I understand, that Mr. Silva is personally responsible for something in this case.

And I want to make sure I understood what you just said. What does --

THE PLAINTIFF: My understanding is he has a personal relationship and prior dealings with Mr. Barton. And I find it highly irregular that this report is not addressed to Mr. Shiffrin; it's -- the first address on the page is to President -- First Officer Nick Silva. Then the second address is Mr. Shiffrin. And it's addressed first to Officer Silva, not to Mr. Shiffrin.

So why is the president of the union involved in an economic report that the attorney should be dealing with unless he has a personal interest?

THE COURT: So is that the only question you have? You can certainly --

THE PLAINTIFF: That's not a question; that's a statement of fact.

THE COURT: You can pose that question to the expert or you can pose that question right now and we can ask Mr. Shiffrin why did Mr. Silva get a copy of the expert report, and we can find out the answer without setting a deposition.

THE PLAINTIFF: Okay. Well, one question. I'm supposed to depose their expert on Tuesday at 1:00 a.m. East Coast time.

He's saying he can't provide the expert's case file by today. He's also obligated on my third set of production given

to him December 24th to produce supplemental documents related to comparator data to other pilots like me and other pilots that had SIP leave of absence, special assignments. And that is due today.

So I want -- I would like this Court to order him to produce all those documents, if not by the close of business today, by Monday, because they've been -- they're still delinquent in the original production. They have not produced any metadata --

THE COURT: Mr. Meadows? Mr. Meadows?

THE PLAINTIFF: Yes, ma'am.

THE COURT: I appreciate your passion for your case. But here's my problem: As the judge, I can only handle one problem at a time.

THE PLAINTIFF: Okay.

THE COURT: And we were trying to finish Mr. Silva's issue.

THE PLAINTIFF: Okay.

THE COURT: So if you can allow Mr. Shiffrin to respond as to why Mr. Silva got a copy of the --

MR. SHIFFRIN: Yeah. I mean, I think it would be news to Mr. Silva that he is the addressee of this report, since it was sent directly to me, and I don't know that he actually has seen it at this point.

I -- you know, the person to ask why Mr. Silva was

the -- the report was addressed to him is Mr. Barton, the expert.  Mr. Silva won't have any information about that.

THE COURT:  Okay.

MR. SHIFFRIN:  I'm not aware of --

THE COURT:  You'll be able to ask that on Tuesday.

MR. SHIFFRIN:  Yeah.

THE PLAINTIFF:  Well --

MR. SHIFFRIN:  I am happy to address these other issues that Mr. Meadows has raised, because there's a number of things that are not correct.

THE COURT:  Okay.

MR. SHIFFRIN:  First of all --

THE COURT:  So there's a couple of things that Mr. Meadows said about getting some things from the experts, some documents that he needs before the deposition.

MR. SHIFFRIN:  Right.

THE COURT:  Do you want to address that?

MR. SHIFFRIN:  I'm happy to do that.

We received a document request from Mr. Meadows last Saturday for documents related to Mr. Barton.  The request is far overbroad and exceeds -- and asks for information, including communications between attorneys and Mr. Barton, that he's not entitled to under the -- under Rule 26.

Mr. Meadows and I have been in deposition all week. Mr. Meadows took two days of deposition of APA's witness.  We

are doing our best to get him documents in advance of the deposition scheduled for Tuesday.

But the reality is that him declaring that the documents need to be provided by Friday is a very short time period.  And I don't understand us to have an obligation to provide documents in advance of the deposition.  I think it would be to everyone's benefit to do so.  But we plan on making a production hopefully today, if not today, in advance of the deposition, of the documents that we believe he's actually entitled to and not to the -- not to just the entire case file, because that would include materials to which Mr. Meadows is not entitled, but to the type of material that's contemplated by Rule 26.

And as I say, I've offered to Mr. Meadows because the Court -- Judge Artau has now extended discovery, we could eliminate this scheduling pressure by moving the deposition of Mr. Meadows -- excuse me -- Mr. Barton, you know, slightly so that no one's doing this at the last minute.

THE COURT:  And you could have more time.

MR. SHIFFRIN:  Mr. Meadows has not taken me up on the invitation.  Fine.

But as a practical matter, we're doing what we can within the constraints of the case within the fact that we were -- I was in two days of deposition with Mr. Meadows to get the documents out as soon as we can and as possible.  But, you

know, certainly by the time of his deposition, which is the only time that I think he'd be -- we'd be obligated to provide documents, we'll provide documents to him.

As to the document requests that we received on December 23rd, we'll be responding to that today within the 30 days.  There's no need for a court order.  He wasn't entitled to a response before then.  I told Mr. Meadows that he'll get a response today, and that's what we intend to do.

THE COURT:  Okay.  Mr. Meadows --

THE PLAINTIFF:  Your Honor --

THE COURT:  -- so I understand that the documents will be produced, that you've been in depositions this week.  If there's some privileged documents in there, Mr. Shiffrin and his staff has to go through those documents before they can turn over what you're requesting.

And their question is:  Would you want to change the deposition in any way and the date of the deposition in order to have more time to review the documents?

THE PLAINTIFF:  Your Honor, I think it's prejudicial to delay because they've continued to delay.

And I want you to understand that within 48 hours -- their report was two weeks late.  You allowed that.  Within 48 hours, I made the document request, and now I'm bound by Rule 30 instead of 45.  So I shouldn't be prejudiced.

And I asked for communications between -- all

communications from the expert should not be privileged.  And to the extent they're claiming privilege, they should provide a privilege log.  But the communication between him and Nick Silva are certainly not privileged.  And that's what I'm seeking.

And the problem is, how are they going to produce --

THE COURT:  But Nick Silva is his client.  So --

THE PLAINTIFF:  The expert -- there's no attorney-client privilege between an expert and a client.

THE COURT:  I mean the expert.  I understand.

THE PLAINTIFF:  Yeah.

MR. SHIFFRIN:  There are no communications between Nick Silva and Mr. Barton.  And they wouldn't be relevant to anything in the case even if there were.  And even if this is a Rule 45 subpoena, Mr. Meadows wouldn't be entitled to documents from the expert before the day of the deposition.

So we'll -- as I said, we're going to do our best to get documents to him as soon as we can and in advance of the deposition if we're able to do so.  And that's what Mr. Meadows is entitled to.

THE COURT:  Okay.

THE PLAINTIFF:  Your Honor --

THE COURT:  But, Mr. Meadows, here's my concern.

THE PLAINTIFF:  Yeah.

THE COURT:  I've asked you if you wanted to change the

date of the deposition to get any more time. You've said no. The Court has already extended the discovery deadline till March 14th. I can do no more on this issue.

THE PLAINTIFF: Well, I --

THE COURT: You're going to get the documents --

THE PLAINTIFF: Okay.

THE COURT: -- according to Mr. Shiffrin prior to the deposition. I can do no more on that issue except, you know, ask you if you want to change the date. And since you don't, I think we're fine.

So let's move on. I want to make sure that you get an opportunity to discuss your issues within this period of time.

THE PLAINTIFF: Okay.

THE COURT: So the next issue I see on the email has to do with some notes that --

MR. SHIFFRIN: Judge, I apologize to interrupt. Before we move on, because I know we shifted issues, could we just finish on the Nick Silva issue so that APA has direction on what we need to do there?

THE COURT: Yes.

MR. SHIFFRIN: I think we're awaiting your ruling on that.

THE COURT: With respect to Mr. Silva, he does not have to be -- I see no reason that he -- that I change my ruling quashing the deposition subpoena. The information that you

need with regard to the expert report should be produced or should be a question that you present to the expert during his deposition. And you're certainly free to ask the expert during that deposition why he gave a copy of that report to Mr. Silva. If something comes out of that deposition that then shows that Mr. Silva has unique information regarding the expert report, then you can come back to the Court. Okay? That's the ruling on that issue.

With respect to -- it appears a note was passed to someone during the deposition.

MR. SHIFFRIN: Yeah. I can address this.

THE PLAINTIFF: Your Honor, I'd like to address that, since I was the moving party in that issue, if I may.

THE COURT: Okay. Go ahead.

THE PLAINTIFF: Yes. During the deposition, I hired a videographer to observe Mr. Shiffrin's side of the table, including Mrs. Rybak, who sat to his left, and their client representative, Mr. Myers, who sat to her left.

THE COURT: So Mr. Myers's deposition. Okay.

THE PLAINTIFF: No, no. It was the deposition of myself. Mr. Myers was attending as client representative for APA. Mr. Shiffrin was deposing --

THE COURT: Oh, you were the one that was being deposed, not Mr. Myers?

THE PLAINTIFF: Yes. Correct.

THE COURT:  Oh.  So then why does it matter whether Mr. Myers and Mr. Shiffrin passed notes to each other?

THE PLAINTIFF:  Because Mr. Myers was coaching the attorney and he was doing it under the table in a surreptitious manner.  It's been -- we had a videographer capture their side of the table.  My wife attended as an observer.  And she notes -- noticed they were passing notes under the table from Mr. Myers to Ms. Rybak to Mr. Shiffrin.  He would look at it, pass it back to Ms. Rybak, and she'd fold it up and put it in a binder.

When I was informed of this, as we took a break, I went back in and requested to see what notes they were passing.  And they refused to produce them to me.

And then later at the lunch break, they said they'd hold them later, preserve them.  But I have no idea if they've tampered with these notes.  But it was done at least twice that we -- that my observer observed and that's on video.  There might be more times.

But every time they did it, they wanted to immediately take a break because Mr. Shiffrin's line of questioning was failing.  And we took a lunch break after, like, only two hours and 20 minutes.  No one was hungry in the room.  We took a consensus.  He insisted on stopping right then and there after receiving that note.

So I think it was highly suspicious.  And it needs to

be addressed, because this is not proper for --

THE COURT:  Does that --

THE PLAINTIFF:  Keep in mind, Mr. Myers is a fact witness on my initial disclosures.  He's a 30(b)(6) witness.  He was deposed in his individual capacity and he'll be called at trial.  And he shouldn't be passing notes to Mr. Shiffrin as counsel.  And they tried to claim this was attorney-client privileged.  The witness was handing -- their witness was handing him notes, not the other way around.

THE COURT:  So if I understand what you're saying, it was your -- you were the one -- the witness that was being deposed --

THE PLAINTIFF:  Yes.

THE COURT:  -- when Mr. Shiffrin was asking you questions.

THE PLAINTIFF:  Yes, your Honor.

THE COURT:  And during a break or at some time during the deposition, Mr. Myers, who was simply present in the room, and Mr. Shiffrin were passing notes to each other.

THE PLAINTIFF:  During the deposition.  Not during a break; during the actual deposition.

THE COURT:  Okay.  Is that a violation of some rule?  Are you saying that that violated a rule of civil procedure?

THE PLAINTIFF:  Yeah, I believe it was.  I believe they were trying to coach -- instead of coaching the witness, they

were trying to coach the attorney.

And I -- when I sat down --

THE COURT:  There's no violation of -- as far as I know, there isn't any rule that says you can't coach the attorney --

THE PLAINTIFF:  Okay, your Honor.  With --

THE COURT:  -- even if that's happening.  It's -- of course, you can't coach the witness.  That's different --

THE PLAINTIFF:  I have a question, your Honor.

THE COURT:  -- while the witness is testifying, while the witness is testifying at deposition or during a trial.  But I'm not aware of any rule that says that you can't pass notes to the lawyer.

THE PLAINTIFF:  Well, I've been advised it's highly improper and unethical.

But I will ask this question.  When I sat down, I had a piece of paper of standing objections to make because I was being deposed myself.  And in the end, on rebuttal, Mr. Shiffrin insisted I cross-examine myself via question and answer instead of a dialogue or a monologue.  But he demanded to review the piece of paper I had in my hand.  He said everything has to be seen by everyone.

So just like when he produced an exhibit and everyone needs to see it, I believe to the extent there was notes being passed they should have been observed by the witness, the

deposer and a court reporter.  And I don't believe it was proper.

THE COURT:  Okay.

THE PLAINTIFF:  Because I didn't see what they said. They did admit later -- they refused to show them, later admitted they preserved them, they allegedly have them.  I don't know if they've been changed.  But I believe it's highly irregular and improper.

THE COURT:  Okay.  So, Mr. Meadows, you haven't cited a particular rule of civil procedure that's been violated.  But I can tell you as -- my understanding of what you've just said is that you believe there's some reason that an attorney and a representative of the client can't pass notes during a deposition.

Well, they can.  There's no rule of procedure that would prevent them from doing so.

So there's really nothing for the Court to do in that instance.

THE PLAINTIFF:  Okay.

THE COURT:  So let's try to resolve a few of the other pending issues in the case.  And I will issue some orders to see if I can clean up the docket.

But I noticed that one of the main concerns that you have, Mr. Meadows, is this motion to disqualify Joshua Shiffrin, and that seems to have come up in various other

motions. So I want to address that.

As I understand it, you are arguing that Mr. Shiffrin should not be contacting employees and former employees of the APA regarding this case and that that is improper. Is that --

THE PLAINTIFF: That's not what I'm arguing, your Honor.

THE COURT: -- a correct understanding?

THE PLAINTIFF: No. That's not what I argued.

THE COURT: You tell me.

THE PLAINTIFF: I argued that they contacted an unrepresented nonparty who no longer holds a position in the union, just like Dan Carey, who they have no control over. And they proceeded to engage in no less than four or five contacts via Zoom, phone call and emails and they misled him, intimidated him and threatened him with retaliation if he testified and revealed any -- in his words, anything about anything.

And I don't think this matter could be resolved in a one-hour Zoom call. It requires a full evidentiary hearing with Mr. Shiffrin and Ms. Rybak and the witness, Tom Rempfer, which has an extreme chilling effect. He's petrified. This guy is a former A-10 and F-117 fighter pilot, and he is panicked and does not want to testify for fear of his career -- in his own words, his career, his union membership and his family. And he's begging not to be -- he -- in a text message,

he says:  Please don't depose me.  I don't want to have to testify and have Mr. Shiffrin caution me that I could be subject to union discipline up to and including expulsion if I revealed anything that was confidential -- not privileged; confidential -- in a federal -- under a federal subpoena.

And he was asked -- he expressed -- he said, I would like to be represented; and Mr. Shiffrin said, in a Zoom transcript that he provided, in his own declaration -- so he's a fact.  So is Ms. Rybak.  They submitted detailed declarations with numerous facts.  And a transcript of a Zoom call with allegedly contemporaneous notes that read like a recording.  And no less than 11 times did Mr. -- or F/O Rempfer say that he didn't want to quash the subpoena; he wanted to testify truthfully; he wanted to be fully transparent and he wanted to comply with the subpoena.

And Mr. Shiffrin kept browbeating him, saying, Listen, we can't represent you unless you -- your interests are aligned with the APA's.  He says, We are seeking to quash your subpoena and postpone your testimony indefinitely.

So they showed intent, criminal intent, to prevent this witness from testifying.  He is a key witness.  He's a subject-matter expert on the MDD pilot group, medical disabled and dropped pilots, which I'm one, in this federally recognized class of discriminated pilots.  He is the most -- next to Captain Sicher, probably the second most knowledgeable member

of the union, and he has a wide range of knowledge and expertise.

And they threatened him, misled him. And it's totally a violation of 18 USC 1512(b). And if it's not, the only way I believe it could be resolved is through an evidentiary hearing, which would require the testimony of both Ms. Rybak and Mr. Shiffrin, which would -- which would disqualify him under the witness advocate rule under 4-3.7 under Florida professional rules.

And I will strenuously object. If this matter is not given its due process, an evidentiary hearing, it will have to be objected to. Rule 59 writ of mandamus. And this will handicap the case. But this matter has to be addressed first and foremost.

THE COURT: Okay.

THE PLAINTIFF: It's pending --

THE COURT: Can you tell me again the name of the witness that you say was threatened? What was the --

THE PLAINTIFF: First Officer Tom Rempfer, R-E-M-P-F-E-R.

THE COURT: Okay. So this is the person that you had named in the motion. All right.

THE PLAINTIFF: Yes, ma'am.

THE COURT: So let me just start with this. An evidentiary hearing is needed only when, one, there's a dispute

as to the facts or, two, even if we assume -- if I assume the facts that you've just described, that there's -- but let me put it this way:  If I assume the facts that you just described, then there's no need for an evidentiary hearing.  Right?  So if we assume that what you say is true, he contacted a former -- this was a former employee of the APA that you're talking about?

THE PLAINTIFF:  Well, it was a committee man that was charged with getting myself and others like me reinstated.  And the --

THE COURT:  Committee man.  So he wasn't an employee?  He was an employee of the APA?

THE PLAINTIFF:  No.  He was not an employee of the APA.  He was a volunteer pilot committee man.  He was never paid any union leave.  He was an absolute volunteer on a committee.  And he was threatened in the course of helping pilots, helping pilots.  Many of our pilots that work in the union are volunteers.  They're not paid by APA.

THE COURT:  So he is on a committee, an APA committee.

THE PLAINTIFF:  Yes.

THE COURT:  Okay.

THE PLAINTIFF:  And he -- and let me add, he was appointed to this ad hoc committee with a $50,000 budget by former APA president Ed Sicher.  The day they recalled President Sicher, Nick Silva took over and fired Mr. Rempfer

because he didn't want this matter resolved.

THE COURT: Okay. That aside -- I don't want to get off the topic.

THE PLAINTIFF: Okay.

THE COURT: So first of all, he contacted someone who was a part of the APA. Mr. Shiffrin represents the APA.

THE PLAINTIFF: He was not part of the APA, your Honor. He was fired from the APA as a volunteer. He was not part of the --

THE COURT: How could he be fired if he's not on the committee?

THE PLAINTIFF: No. He was terminated from the committee on October 7th, 2024 -- 2024. Mr. Shiffrin contacted him a year later. He was just a regular line pilot when he was contacted, unrepresented nonparty witness.

THE COURT: Oh, I understand. When he contacted him. But at some time, he was a part of a committee. He was on a committee.

THE PLAINTIFF: He was a volunteer on a committee.

THE COURT: Volunteer. Got it.

THE PLAINTIFF: Unpaid volunteer.

THE COURT: You asked him to testify, and he told you that he could not testify and that --

THE PLAINTIFF: He did not say that, your Honor. He said -- he said: Subpoena me. I'm afraid of retaliation. I'd

give you a declaration, but I want to be subpoenaed.  He wants to testify.  He said --

THE COURT:  He wants to testify.

THE PLAINTIFF:  He said he's afraid to testify now.

I didn't say --

(Incomprehensible speaker overlap.)

THE COURT:  Because he was told by Mr. Shiffrin that if he testified with regard to anything confidential that he could be responsible for that, that there could --

THE PLAINTIFF:  Your Honor, may I ask you a question?  Have you read this motion and my affidavit?

THE COURT:  I've read all the motions.  I'm just --

THE PLAINTIFF:  And have you listened to the recording?

THE COURT:  The recording of...?

THE PLAINTIFF:  I offered up a recording into evidence.  I gave a verbatim transcript, certified it, and I offered Judge Artau a recording --

THE COURT:  Okay.  No.  I have not listened to the recording.

THE PLAINTIFF:  This recording and my production of the same.  Have you listened to the recording?

THE COURT:  No, I have not.

THE PLAINTIFF:  Okay.  I think you need to.

THE COURT:  Okay.  I definitely will.

THE PLAINTIFF:  I respectfully ask that you do so.

THE COURT:  I'll definitely listen to it.  Where is the recording?  Did you put it in --

THE PLAINTIFF:  I offered it to the Court when the Court requested it.  I will provide it via USB or link, however you'd like it.

THE COURT:  And this recording is of what, exactly?

THE PLAINTIFF:  There's two recordings.  The recordings of Tom Rempfer calling me, expressing all the things that Mr. Shiffrin did to him.  There's also a Zoom transcript from the call from Mr. Shiffrin and Ms. Rybak to Mr. Rempfer.

THE COURT:  Okay.

THE PLAINTIFF:  And I think there's a dispute of facts. What they say and what Mr. Rempfer says and what I say in my sworn declaration.  And I don't know how you're going to resolve it without a hearing.  I just can't see how.

THE COURT:  So I want to find out if there's a dispute. So let's go to Mr. Shiffrin.

MR. SHIFFRIN:  Yeah.  Let me try to clear some of this up.  And we obviously take issue with Mr. Meadows's characterization of the facts, though I do think the facts are undisputed.

Mr. Meadows served Mr. Rempfer with a subpoena in October.  Shortly thereafter that, Mr. Rempfer contacted APA. I didn't contact Mr. Rempfer first.  Mr. Rempfer contacted APA, asking if APA would provide representation to him.

That led to me having a call with him over Zoom. My colleague, Grace Rybak, took notes. There's not a Zoom transcript that we have of that. I don't know if Mr. Rep was recording it. But Ms. Rybak took notes, and we provided those notes to the Court.

And in that call, I was explaining to -- I explained to Mr. Rempfer my role as APA's attorney. I explored whether we would be in a position to provide him representation, since APA has an interest in protecting its confidential information. And Mr. Rempfer did not seem to share that interest.

I concluded that we would not be in a position to provide him representation. But I told him that APA was intending to quash the subpoenas, which we then did. We -- not -- it wasn't a threat to him. We were just saying, in representing the APA's interests, as your Honor well knows, we came to you and said, these -- we think these subpoenas are overbroad and seek information that Mr. Meadows is not entitled to. And we were -- you know, we didn't want Mr. Rempfer to provide that information to Mr. Meadows.

But the way that we went about doing that was not through threats but by seeking Court intervention to quash the subpoenas. So that's what we did. There's no threats. I mean, all of -- you have in front of you all the communication that occurred between myself and Mr. Rempfer.

And Mr. Rempfer's characterization or Mr. Meadows's

characterization of those communications is kind of beside the point. There was nothing improper about APA contacting a former committee member who has either confidential and privileged information or taking steps to protect that not through threats, but by quashing -- by seeking to quash -- successfully, I should say, seeking to quash a subpoena. And that was the extent of it.

There was -- I also -- to be clear, in those communications, I did not at any point suggest that Mr. Rempfer would be disciplined by the union for his participation in this case. He had asked me to provide the section of the policy -- APA policy manual that pertains to the protection of confidential information. And I provided that information to him.

THE COURT: Okay. So --

THE PLAINTIFF: Your Honor, if I may. Mr. Shiffrin's mis --

THE COURT: I just want to understand what the evidence is.

THE PLAINTIFF: But, your Honor, he's misrepresenting facts. You need to be aware of it.

THE COURT: Don't worry. I'll get back to you.

THE PLAINTIFF: Okay.

THE COURT: Mr. Shiffrin, did you say there was a Zoom -- a Zoom call? So there's a transcript?

MR. SHIFFRIN:  There is Zoom call that occurred. There's no transcript.  But my colleague, Grace Rybak, who's here, took contemporaneous notes, and we provided those to the Court in response to the motion.

THE COURT:  Okay.  I'll look for those notes.  But it's a Zoom call that was not recorded.

MR. SHIFFRIN:  Correct.  Certainly not by Bredhoff & Kaiser.  I don't know if Mr. Rempfer was separately recording it, but we don't have a recording of it.

THE COURT:  Okay.  Now, let me go back to you, Mr. Meadows.  And your evidence, Mr. Meadows, is in recordings that are -- are they -- you said you can supply them to the Court?  Or are they all --

THE PLAINTIFF:  Yeah.  I have two recordings and multiple text messages that I've offered to Judge Artau when I filed this motion, that I said they were available and I would provide them to the Court.

Mr. Shiffrin --

THE COURT:  I would appreciate it if you could provide them to me.  When would you be able to provide them?

THE PLAINTIFF:  How would you like -- what format would you like them in, your Honor?

THE COURT:  Did you say you could put them on a thumb drive?

THE PLAINTIFF:  Yes, I can.  I can deliver it to the

Court.  Would I take them to chambers or the clerk?  How would I do it?

THE COURT:  Let me ask my courtroom deputy.  She would know.

THE COURTROOM DEPUTY:  It's nothing that is going to be filed?  It's just coming to you?

THE COURT:  Yes.

THE COURTROOM DEPUTY:  He can drop it off in chambers.

THE COURT:  You can bring it to chambers, which is on the third floor of the Atkins Building.

MR. SHIFFRIN:  I mean, I will say that -- it sounds like there's material here that I have not seen.  So I would appreciate a --

THE COURT:  So then a copy of that needs to be also given to Mr. Shiffrin's office.

THE PLAINTIFF:  Those recordings were all in my production to Mr. Shiffrin.  So he has them.

THE COURT:  Oh, you've already produced them to Mr. Shiffrin?

THE PLAINTIFF:  Yes.  They're in the production.

THE COURT:  Okay.  Mr. Shiffrin, are you aware --

THE PLAINTIFF:  Your Honor, I'm -- let me -- can I clarify --

THE COURT:  Mr. Meadows, I will give you the opportunity.  Don't worry.

Mr. Shiffrin, you have --

MR. SHIFFRIN: I'll look for them in the production. That's fine.

THE COURT: All right. Mr. Meadows, go ahead.

THE PLAINTIFF: Yeah. Mr. Shiffrin, he's being a little disingenuous. He never represented Mr. Rempfer. He said he would represent Mr. Rempfer if he agreed to quash. As an unrepresented nonparty, the only individual that can quash a subpoena is Mr. Rempfer. So when Mr. Shiffrin is saying he quashed the subpoena successfully, he did not. He quashed the subpoena through an *ex parte* protective order through your Honor.

And so Mr. Rempfer was explicit 11 times. He did not want his testimony quashed. He wanted to tell the truth. He was fearful of retaliation based on what Mr. Rempfer -- or Mr. Shiffrin told him.

And I would request another Zoom hearing, if not an in-person hearing, with Mr. Rempfer as a witness. I think it's the only way this is going to be resolved truthfully and honestly. And once you hear his testimony, I think you will know exactly what happened and you'll be convinced that this motion is not only meritful; it requires significant action against both Mr. Shiffrin and Ms. Rybak.

And if this doesn't happen, I would be left with no choice but to object and take it to the Eleventh Circuit,

because this is that serious. I've been advised by counsel that it's so egregious they think Mr. Shiffrin should be disbarred and in jail. He called it -- it's like *On the Waterfront* without physical violence.

So that's a highly noted railway labor attorney that's given me this opinion. This isn't me as a *pro se* doing this. I got a lot of advice before I took this action. And I took it very seriously, because this is a significant matter.

THE COURT: So --

MR. SHIFFRIN: Can I just respond on that point, your Honor?

THE COURT: Well, not really.

MR. SHIFFRIN: Okay. Fair.

THE COURT: Here's what I'm going to do: I'm going to review those notes, Mr. Shiffrin. I'm going to listen to the recordings, Mr. Meadows. And I'll make a determination as to whether an evidentiary hearing is needed.

I can tell you, Mr. Meadows, just generally, in explaining the Florida Bar rules, the fact that Mr. Shiffrin represents the APA allows him to have conversations with an individual who was a committee member who is now being subpoenaed about APA business.

Mr. Shiffrin, as the representative of the APA, the legal representative, can move to quash a subpoena of a witness who wants to testify regarding confidential or privileged

information that would waive APA's protections, attorney-client protections, and would put confidential information from APA out into the public.  So he has the right to do to.  In fact, he is required to do so as the legal representative.

Now, what you're saying sounds that there was some sort of physical threat or at least a verbal threat to do --

THE PLAINTIFF:  There were threats --

THE COURT:  -- damage?

THE PLAINTIFF:  -- of union discipline and he was misled and intimidated, and it created a chilling effect.  And if you read 18 USC 54 --

THE COURT:  So I'd like to be able to look at your -- listen to that recording --

THE PLAINTIFF:  Okay.

THE COURT:  -- and hear Mr. Rempfer's version of that conversation.

THE PLAINTIFF:  I'll be happy to deliver it by Monday, your Honor.

THE COURT:  Great.  I will --

THE PLAINTIFF:  Your Honor, I have one question.  I'm confused.  So you're saying even though Mr. -- or F/O Rempfer is an unrepresented nonparty, but is a former committee man, APA has the control over him to quash his subpoena, yet they do not have control over former President Dan Carey to call him in?  It seems like a diametrically opposed thing.  How can

you --

THE COURT:  That's what --

THE PLAINTIFF:  -- control one thing and not the other? I'm just confused.

THE COURT:  Okay.  Here's what he has control over.  He has an obligation to represent his client and his client's confidential information and his client's attorney-client privilege.  He has an obligation to do that.

Now, if the committee member has any confidential information, any privileged information, then Mr. Shiffrin has an obligation to instruct that committee member or former committee member that he is not allowed to disclose that information.

Now, if you wanted to talk to Mr. Rempfer about something that is not confidential, depose him about something that is not privileged, on information that doesn't belong to Mr. Rempfer's -- Mr. Shiffrin's client, the APA, you're welcome to do so.  You can ask him a question about anything.

THE PLAINTIFF:  But you quashed the subpoena.

THE COURT:  But if the information --

THE PLAINTIFF:  I'd like to depose him, your Honor.

THE COURT:  But if it's information that is privileged or confidential, Mr. Shiffrin is doing his job.

THE PLAINTIFF:  Your Honor, I beg to differ.  Union confidential information is discoverable.  It's not protected

under attorney-client privilege.  And Mr. Shiffrin, by his own admission in the Zoom transcript, any conversation of APA's attorneys, I was present on a call.  And all the --

THE COURT:  Can I say something?  To your first statement, there are certain situations where privileges can be waived.  I understand that.

THE PLAINTIFF:  No, your Honor.  It's not --

THE COURT:  I don't know if that's the situation that you're going to be referring to.  But it is possible to -- for a client to waive its own privilege.

But I am at this point only talking about Mr. Shiffrin's conversation with Mr. Rempfer.  And I don't want to go off into something else --

THE PLAINTIFF:  I understand.

THE COURT:  -- at this point.  So I will listen to the evidence and I'll review the evidence and determine whether an evidentiary hearing is needed or make a ruling.  Okay?

THE PLAINTIFF:  Okay.  But, your Honor, I'm confused. I want to be -- that's -- I'm confused.  F/O Rempfer, anything that's confidential union is discoverable.  It's not attorney-client-privileged.  It's information that is considered confidential between pilots only.

Mr. Rempfer had no one-on-one conversation with APA's attorneys.  All his contact with the APA attorneys was -- included me and a few hundred pilots in my same status.  And

Mr. Shiffrin seemed to be shocked during the Zoom transcript when he learned that fact.

He also tried to allege that there was a PowerPoint presentation played to the board of directors that was attorney-client privileged because it was presented to the attorneys in closed session.  He later learned that Mr. Rempfer wrote that PowerPoint in collaboration with myself and another MDD pilot, Wallace Preitz.  So it's his own work product, not privileged in any way.

So I would like if the Court would grant the permission to depose Mr. Rempfer on his personal knowledge.  I would respectfully request that, because I would like that.  It's very relevant, because he is a subject-matter expert on every -- related to MDD and the grievances involved.  He was paid $50,000 on the committee to become an expert and research all this stuff.  And he knows more facts than virtually anyone except President Sicher.

THE COURT:  So he was paid --

THE PLAINTIFF:  So I would respectfully request to be given the authority to subpoena him and depose him.

THE COURT:  I'm a bit confused.  Did you say he was paid $50,000 to be on the committee?

THE PLAINTIFF:  No.  I said that his -- that there was a committee that was funded 50,000; and while he was on the committee, he became a subject-matter expert.  He interviewed

all the pilots like myself, all the records.  He is an absolute subject-matter expert.  So I would respectfully request the right to depose him on anything that's not privileged.

THE COURT:  Okay.  So here's my concern:  If he was on the committee, that means that it's APA business that he was conducting.  Mr. Shiffrin has an obligation to then let him know about the limits of what he can say during a deposition --

THE PLAINTIFF:  And he's done that.

THE COURT:  -- with regard to APA business.

THE PLAINTIFF:  He's done that in a detailed gag list saying what he couldn't say.  And a lot of things he said couldn't be said, have been said in four other cases of MDD pilots like myself, in *Wallace Preitz*, *Kathy Emery* in the Florida Southern District, I might add, and *Susan Twitchell* in the Arizona District Court.

So all the things I'm seeking are what other pilots have been given in other district courts, including this district court before Judge Hurley.  So I'm not asking for anything that other pilots like me haven't gotten.

So I think it's really outrageous that the information between our pilot group and our union that's not privileged can't be discovered, because it's been -- it's all over public record in PACER, a lot of this stuff.  A lot of it's in.  I need the specific stuff relevant to me.  And Mr. Rempfer is a key witness.

THE COURT:  Okay.  But now you're making a different argument.

THE PLAINTIFF:  No.

THE COURT:  Your argument is now that, well, the evidence that you want to discuss at the deposition is actually not privileged.  So that's a different argument than Mr. Shiffrin should be disqualified or that Mr. Shiffrin should be disbarred.

THE PLAINTIFF:  But it's all the same thing, because he led the Court to believe I was seeking privileged information.  I was not.  He was shocked to learn at a Zoom transcript that all the conversations he believed to be privileged, Mr. Rempfer and APA's attorneys, I was present in.  The documents he believed to be privileged I wrote.

So there's nothing privileged that I'm seeking.  And Mr. Rempfer can testify.  Again, I think it's absolutely mandatory that Mr. Rempfer is brought in as a witness.  And he's in Arizona.  I know you like to do things via Zoom.  So I think it would be easy to do via Zoom.  But it's a serious matter.  It requires an evidentiary hearing, probably an in-person one, personally.

THE COURT:  I'll definitely look over the evidence.

THE PLAINTIFF:  Thank you, your Honor.

THE COURT:  Okay.  Then the other thing -- and I want to look at this quickly; it's already 11:00 -- is it seems to

me there is a motion on the docket regarding an extension of time of all case deadlines and to stay -- and I want to make sure that I address that.

So that motion was filed before Judge Artau entered the order extending the deadlines in the case.  Am I correct?

THE PLAINTIFF:  Yes, your Honor.  But it's not fully briefed.  And I'm going to submit a significant piece of evidence next Wednesday in my reply, which will probably convince you that all these things need to be overturned.

THE COURT:  Okay.  But --

THE PLAINTIFF:  So I would respectfully request --

THE COURT:  -- Judge Artau --

THE PLAINTIFF:  -- that nothing be decided on that motion until I'm allowed the opportunity to fully brief it with my reply next Wednesday.

THE COURT:  All right.  I hear you.

But here's my concern:  If Judge Artau has already made a decision with regard to an extension of all the case deadlines --

THE PLAINTIFF:  But Judge Artau's decision, your Honor, was made without this declaration I'm about to give you.  And it was significant.

THE COURT:  It was made after you filed a motion.  And I guess it's a declaration.

THE PLAINTIFF:  But that motion is not --

(Incomprehensible speaker overlap.)

THE COURT: -- attached that to the motion.

THE PLAINTIFF: Your Honor, you're telling me you're going to decide my motion before I'm given due process to fully brief and submit additional evidence?

THE COURT: It's your motion, sir.

THE PLAINTIFF: I know, your Honor. And it's not fully briefed. I want to -- I want to maintain my right to file my reply with another declaration that will show you that this case should be stayed and should be extended. And if you don't do so, I'm going to have to object to this order. And I don't know what's going to happen, because Judge Artau wants you to decide everything, but there's several items on objection. They need to be ruled on before this case goes through limping through discovery to a summary judgment in a trial with all these dangling issues.

THE COURT: Well, I'm sure that Judge Artau --

THE PLAINTIFF: If you don't allow --

THE COURT: Excuse me, Mr. Meadows.

THE PLAINTIFF: Okay.

THE COURT: Excuse me.

If you filed objections, and Judge Artau set a deadline, he will handle those objections.

THE PLAINTIFF: Okay. But again --

THE COURT: I am pointing -- I'm pointing out that he's

already issued an order.  So I -- he's not asked me to reverse any of his orders.  So --

THE PLAINTIFF:  I'm not asking you --

THE COURT:  -- I'm pointing out to you there is already a scheduling order with regard to case deadlines.

THE PLAINTIFF:  I understand, your Honor.  And I --

THE COURT:  Until -- excuse me.

Until he changes those deadlines, the parties will need to abide by them.  Okay?

THE PLAINTIFF:  Absolutely.  I --

THE COURT:  I want to make sure that I --

THE PLAINTIFF:  Your Honor, I intend to abide by the order.  But I am respectfully asking the right to finish this briefing on this other motion because this is -- it's in addition to the -- it could extend the extension for 45 to 90 days, and it should.  And it needs to be fully briefed.

And if you rule on it now, I'm going to have to object to Judge Artau.  I don't anger him.  But I'm going to have to object and file a declaration with the objection, then, I guess, if that's what happens.  But it seems ridiculous to not allow me to fully brief it.  You don't want -- you seem like you don't want to accept all the facts and the evidence that are relevant.

But you're telling -- if I tell you I have a declaration that will convince you that this matter needs to be

stayed and must be extended, you would -- you're telling me you will not consider any additional evidence?

THE COURT:  I --

THE PLAINTIFF:  My intent was to --

THE COURT:  I would ask why that declaration wasn't part of your initial motion.

THE PLAINTIFF:  Because I just was able to start securing it now.  I don't have it yet.  I will have it soon.

THE COURT:  Okay.  And the declaration comes from whom?

THE PLAINTIFF:  I do not want to reveal that information, because I'm afraid Mr. Shiffrin will contact him and try to give him the chilling effect.

THE COURT:  Okay.

THE PLAINTIFF:  Mr. Shiffrin has contacted every single witness in this case and hired my former attorney in this case to shield their testimony.  So forgive me for not trusting Mr. Shiffrin.

THE COURT:  All I can say at this point with regard to the issue is that I'm just making sure that the parties understand that there has been a scheduling order; and until that order has been changed, the parties --

THE PLAINTIFF:  Absolutely.  I will absolutely abide by the current scheduling order until it's changed.  All I'm asking is, give me the right to finish briefing the current motion.

THE COURT: So all I can do is again say what I've already said.

But I want to thank the parties. We have to move on to the next hearing. This matter is adjourned.

THE PLAINTIFF: Your Honor --

MR. SHIFFRIN: Thank you, your Honor.

THE PLAINTIFF: Your Honor, please. One last issue. We touched on it. I raised -- the documentary production of APA is completely delinquent. Their witness yesterday admitted that the manner in which Mr. Shiffrin produced documents is not the usual manner in which they're kept in the ordinary course of business, which he represented to the Court.

I can get that transcript soon. But they -- I -- when they produced these documents from the expert, I don't want another digital needle in the haystack. I still have not been able to review their 32,000 document files because they're not globally searchable. And they're giving -- they ambushed me in a deposition and gave me a fourth tranche of documents and a privilege log I requested December 1st -- that was due December 1st. They gave it to me the morning after the deposition was scheduled to start.

So I'm extremely prejudiced with their obstruction and delinquent production. And that needs to be part of your order. They have to produce the stuff.

I -- I was unable to use -- I was able to use two of

their exhibits they emailed me the morning of the deposition. I have not been able to use any of their exhibits because [indiscernible] on time.  32,000 documents, 100 documents a day would take 320 days to review.  It's ridiculous.  I can't keyword search.

In my deposition, I keyword-searched 65,000 pages of my production and did all my documents on the fly because my stuff is globally searchable and organized by RP and organized and labeled in accordance with Rule 34.  Theirs is not.  And that's another -- I'll have to object if we don't cure their seven-week delinquent, woefully deficient and defective -- functionally defective production.  I have not been able to use any of their documents.

And under request -- if you don't grant it today, I want to redepose Mr. Myers in his individual and 30(b)(6) capacity because I have not been able to use their documents for this reason.

So I want to -- and the other issue is, they asserted privilege, like I told you, in this Bab Dennison letter.  And the privilege has been waived.  It's subject to the crime fraud exception.  It's subject to the railway labor exception under *Cox versus Administrator Carnegie U.S. Steel*.  And I'm going to need to redepose Mr. Myers.  And if you don't want to rule on that now, then I'll have to file a motion; and I'm going to respectfully request a motion to do that, because I'm

handicapped with their production.  It is completely delinquent, deficient and functionally defective.

THE COURT:  Okay.  So --

THE PLAINTIFF:  And they ambushed me in the deposition with --

THE COURT:  What I think I heard you say is the witness, Mr. Myers or some witness testified and said that the documents that were produced were not the manner in which they're kept in the ordinary course of business.  But I didn't catch which witness said that.

THE PLAINTIFF:  Yes.  Mr. Myers, the 30(b)(6) designee and the client representative.  And he was deposed in his individual capacity.  He testified he saves his emails and documents with the date, timestamp and the file name.

They gave me files with no descriptor.  It's just a Bates number.  I can't search them globally in a folder.  I can only search them individually, one by one by one, which is, like, 32,000 documents they have.

So I -- it's made it impossible --

THE COURT:  All right.  Thank you.  I think we discussed this at a prior hearing already.

THE PLAINTIFF:  Well, it has not been cured, your Honor.  It's ongoing.

THE COURT:  Okay.

MR. SHIFFRIN:  There was nothing to cure, your Honor.

I'm happy to address that.  I know that you have another hearing, but there's a lot that Mr. Meadows said that is not correct.

THE COURT:  Okay.  So I already resolved this matter.

THE PLAINTIFF:  But they didn't --

THE COURT:  If what you're saying is that the witness simply says that his emails have a date and timestamp on it, that makes sense.

MR. SHIFFRIN:  If I could boil it down, Mr. Meadows's, I think, main complaint here -- first, we've provided him all the metadata.  We covered that with you.

THE PLAINTIFF:  Your Honor, no.  That --

MR. SHIFFRIN:  Mr. Meadows, we --

(Incomprehensive speaker overlap.)

THE COURT:  That's why I don't really want to get into this discussion.

THE PLAINTIFF:  Your Honor, [indiscernible] provide metadata.  I have no -- I have no --

THE COURT:  Mr. Meadows, I'm sorry, but I do have to stop.

THE PLAINTIFF:  Sorry.  He's lying to you.

THE COURT:  If you want to send the Court an email on that issue, we'll hear it.  If you can give me a quote from what --

THE PLAINTIFF:  I will.

THE COURT:  -- the individual said, and then I'm sure Mr. Shiffrin will respond.

All right.

MR. SHIFFRIN:  Okay.  We'll do it that way.  Thank you.

THE PLAINTIFF:  Thank you, your Honor.

THE COURT:  Thank you.

Court is adjourned.

(Proceedings concluded.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter produced to the best of my ability.


_____          /s/Lisa Edwards
    DATE              LISA EDWARDS, RDR, CRR
                      (305) 439-7168
                      Reporterlisaedwards@gmail.com

**$**

**$50,000** [3] - 36:23, 49:15, 49:22

**'**

**'16** [1] - 6:25
**'21** [2] - 14:7, 14:15
**'25** [2] - 15:17, 15:18

**/**

**/s/Lisa** [1] - 60:22

**1**

**1** [1] - 1:8
**1.1** [1] - 7:16
**100** [2] - 1:23, 57:3
**1000** [1] - 1:20
**10:03** [1] - 1:6
**11** [2] - 34:12, 44:13
**11:00** [1] - 51:25
**12011** [1] - 5:9
**12012** [1] - 5:12
**1211** [1] - 5:18
**1212** [2] - 5:16, 5:20
**13** [1] - 5:20
**14th** [2] - 16:14, 27:3
**1512(b)** [1] - 35:4
**15th** [1] - 1:20
**17-22589** [1] - 3:8
**17-22589-ARTAU** [1] - 1:2
**18** [2] - 35:4, 46:11
**1900** [1] - 1:15
**1:00** [1] - 21:22
**1st** [2] - 56:19, 56:20

**2**

**2(d** [1] - 6:2
**2)(b** [1] - 6:3
**2)(b)** [1] - 6:2
**20** [2] - 4:13, 29:22
**20-year** [2] - 7:2
**20005** [1] - 1:21
**2013** [1] - 7:16
**2016** [1] - 4:13
**2017** [1] - 18:24
**2019** [1] - 4:14
**2021** [1] - 9:15
**2024** [2] - 37:13
**2025** [2] - 14:21, 15:9
**2026** [1] - 1:5

**2028** [3] - 14:14, 14:17, 18:5
**2112** [1] - 1:16
**21st** [1] - 17:12
**23** [1] - 1:5
**23rd** [1] - 25:5
**24th** [1] - 22:1
**26** [2] - 23:23, 24:13
**28** [1] - 5:17
**28th** [2] - 16:14, 19:19

**3**

**3** [1] - 5:12
**30** [7] - 5:15, 9:17, 16:19, 17:3, 17:5, 25:5, 25:24
**30(b)(6** [5] - 14:4, 17:12, 30:4, 57:15, 58:11
**305** [2] - 2:2, 60:23
**30th** [1] - 15:9
**31** [1] - 4:14
**32,000** [3] - 56:16, 57:3, 58:18
**320** [1] - 57:4
**33131** [1] - 1:24
**33139** [1] - 1:16
**34** [2] - 20:17, 57:9
**3900** [1] - 1:24

**4**

**4-3.7** [1] - 35:8
**439-7168** [2] - 2:2, 60:23
**45** [4] - 17:1, 25:24, 26:15, 54:15
**45-day** [1] - 16:16
**48** [2] - 25:21, 25:22

**5**

**50,000** [1] - 49:24
**54** [1] - 46:11
**59** [1] - 35:12

**6**

**65,000** [1] - 57:6

**7**

**70** [1] - 15:1
**7th** [1] - 37:13

**8**

**805** [1] - 1:20

**9**

**90** [2] - 15:1, 54:15

**A**

**A-10** [1] - 33:22
**a.m** [2] - 1:6, 21:22
**abeyance** [1] - 5:21
**abide** [3] - 54:9, 54:12, 55:22
**ability** [1] - 60:20
**able** [10] - 23:5, 26:19, 42:20, 46:12, 55:7, 56:16, 56:25, 57:2, 57:12, 57:16
**above-entitled** [1] - 60:20
**absence** [1] - 22:3
**absolute** [3] - 15:3, 36:15, 50:1
**absolutely** [4] - 51:16, 54:10, 55:22
**absorb** [1] - 17:15
**accept** [4] - 9:17, 10:7, 11:21, 54:22
**accordance** [1] - 57:9
**according** [1] - 27:7
**accurate** [1] - 60:19
**Act** [5] - 6:7, 6:17, 15:13, 18:21, 20:17
**action** [5] - 14:14, 15:24, 16:2, 44:22, 45:7
**acts** [1] - 15:22
**actual** [1] - 30:21
**ad** [1] - 36:23
**ADA** [5] - 14:20, 18:25, 19:3, 19:8, 20:20
**add** [7] - 13:23, 17:11, 18:24, 19:13, 19:16, 36:22, 50:14
**added** [1] - 15:24
**adding** [1] - 15:22
**addition** [1] - 54:15
**additional** [3] - 6:8, 53:5, 55:2
**address** [15] - 8:15, 9:5, 9:16, 10:24, 17:3, 20:1, 21:6, 21:7, 23:8, 23:17, 28:11, 28:12, 33:1, 52:3, 59:1

**addressed** [7] - 13:3, 20:11, 21:5, 21:8, 23:1, 30:1, 35:13
**addressee** [2] - 13:6, 22:22
**addressing** [1] - 14:9
**adjourned** [2] - 56:4, 60:7
**Administrator** [1] - 57:22
**admission** [1] - 48:2
**admit** [1] - 32:5
**admitted** [2] - 32:6, 56:9
**advance** [4] - 24:1, 24:6, 24:8, 26:18
**advice** [1] - 45:7
**advised** [2] - 31:14, 45:1
**advocate** [1] - 35:8
**advocates** [1] - 6:25
**affidavit** [2] - 12:9, 38:11
**affidavits** [1] - 8:14
**afraid** [3] - 37:25, 38:4, 55:11
**agenda** [1] - 13:24
**agree** [3] - 10:12, 10:18, 18:9
**agreed** [1] - 44:7
**agreement** [1] - 8:2
**ahead** [2] - 28:14, 44:4
**Airlines** [1] - 5:19
**al** [2] - 1:7, 3:8
**aligned** [1] - 34:17
**allege** [1] - 49:3
**allegedly** [2] - 32:6, 34:11
**Allied** [2] - 3:7, 3:16
**ALLIED** [1] - 1:7
**allow** [4] - 14:24, 22:19, 53:18, 54:21
**allowed** [5] - 14:17, 15:24, 25:22, 47:12, 52:14
**allows** [1] - 45:20
**alone** [1] - 18:16
**alternative** [1] - 8:12
**ambushed** [2] - 56:17, 58:4
**amended** [1] - 4:19
**American** [1] - 5:19
**Americans** [2] - 15:12, 18:20
**amount** [1] - 7:24
**analysis** [1] - 20:6
**ANDREW** [1] - 1:22
**anger** [1] - 54:18

**answer** [2] - 21:20, 31:20
**APA** [67] - 4:4, 5:23, 5:24, 6:3, 6:10, 6:13, 6:17, 8:10, 8:14, 8:23, 9:2, 9:5, 9:15, 9:16, 9:21, 9:22, 10:2, 10:10, 10:18, 10:25, 11:4, 11:5, 11:12, 11:21, 12:1, 12:3, 12:14, 12:20, 12:23, 14:9, 14:21, 14:25, 15:17, 16:4, 18:16, 20:5, 20:6, 27:18, 28:22, 33:4, 36:6, 36:12, 36:13, 36:18, 36:19, 36:24, 37:6, 37:7, 37:8, 39:23, 39:24, 39:25, 40:8, 40:12, 41:2, 41:12, 45:20, 45:22, 45:23, 46:2, 46:23, 47:17, 48:24, 50:5, 50:9, 56:9
**APA's** [15] - 4:7, 9:7, 10:2, 12:21, 13:2, 13:23, 16:11, 23:25, 34:18, 40:7, 40:15, 46:1, 48:2, 48:23, 51:13
**apex** [1] - 14:11
**apologize** [1] - 27:16
**appeal** [1] - 19:23
**appearance** [1] - 11:2
**APPEARANCES** [1] - 1:13
**appearances** [1] - 3:9
**appeared** [1] - 14:7
**appearing** [1] - 1:15
**appointed** [1] - 36:23
**appreciate** [3] - 22:12, 42:19, 43:13
**argue** [1] - 20:18
**argued** [3] - 6:12, 33:8, 33:10
**arguing** [2] - 33:2, 33:5
**argument** [3] - 51:2, 51:4, 51:6
**arguments** [2] - 17:15, 17:22
**Arizona** [2] - 50:15, 51:18
**Artau** [12] - 3:24, 19:15, 24:15, 38:17, 42:15, 52:4, 52:12, 52:17, 53:12, 53:17, 53:22, 54:18

**Artau's** [2] - 14:1, 52:20
**Article** [2] - 6:2, 6:3
**aside** [2] - 18:11, 37:2
**assembling** [1] - 6:19
**asserted** [1] - 57:18
**assignments** [1] - 22:3
**Association** [2] - 3:7, 3:17
**ASSOCIATION** [1] - 1:7
**assume** [4] - 36:1, 36:3, 36:5
**Atkins** [1] - 43:10
**attached** [1] - 53:2
**attempt** [1] - 13:23
**attempts** [1] - 9:19
**attended** [1] - 29:6
**attending** [1] - 28:21
**attorney** [17] - 10:6, 20:13, 21:11, 26:9, 29:4, 30:7, 31:1, 31:5, 32:12, 40:7, 45:5, 46:1, 47:7, 48:1, 48:21, 49:5, 55:15
**attorney-client** [6] - 26:9, 30:7, 46:1, 47:7, 48:1, 49:5
**attorney-client-privileged** [1] - 48:21
**attorneys** [8] - 9:7, 9:9, 23:22, 48:3, 48:24, 49:6, 51:13
**AUDIO** [1] - 1:11
**authority** [1] - 49:20
**available** [1] - 42:16
**awaiting** [1] - 27:21
**awarded** [1] - 7:15
**aware** [7] - 11:11, 11:12, 12:6, 23:4, 31:12, 41:21, 43:21

# B

**Bab** [1] - 57:19
**bar** [1] - 4:17
**Bar** [1] - 45:19
**bargaining** [1] - 8:2
**Barton** [9] - 17:5, 20:4, 20:8, 21:4, 23:1, 23:20, 23:22, 24:17, 26:13
**based** [2] - 14:20, 44:15
**baseless** [1] - 14:5
**basis** [8] - 5:2, 5:5, 5:12, 13:8, 13:9, 13:10, 13:19, 14:15
**Bates** [1] - 58:16
**Beach** [1] - 1:16
**became** [1] - 49:25
**become** [1] - 49:15
**BEFORE** [1] - 1:11
**beg** [1] - 47:24
**begging** [1] - 33:25
**behalf** [4] - 3:13, 3:15, 3:16, 11:22
**belong** [1] - 47:16
**benefit** [1] - 24:7
**beside** [1] - 41:1
**best** [3] - 24:1, 26:17, 60:20
**between** [10] - 6:13, 15:17, 23:22, 25:25, 26:3, 26:9, 26:12, 40:24, 48:22, 50:21
**biggest** [1] - 6:25
**billion** [1] - 7:16
**binder** [1] - 29:10
**binding** [1] - 7:12
**bit** [1] - 49:21
**board** [1] - 49:4
**boil** [1] - 59:9
**bound** [1] - 25:23
**breach** [2] - 6:10, 6:17
**breach-of-contract** [1] - 6:17
**break** [6] - 29:11, 29:14, 29:20, 29:21, 30:17, 30:21
**Bredhoff** [1] - 42:7
**BREDHOFF** [1] - 1:19
**brief** [3] - 52:14, 53:5, 54:21
**briefed** [3] - 52:7, 53:8, 54:16
**briefing** [2] - 54:14, 55:24
**briefly** [1] - 4:21
**bring** [2] - 6:6, 43:9
**brought** [3] - 7:4, 20:8, 51:17
**browbeating** [1] - 34:16
**budget** [1] - 36:23
**Building** [1] - 43:10
**business** [6] - 22:6, 45:22, 50:5, 50:9, 56:12, 58:9
**busy** [2] - 13:18, 14:4
**BY** [1] - 2:1
**bylaws** [4] - 5:23, 6:3, 6:11, 6:18

# C

**calculates** [1] - 14:13
**capacity** [3] - 30:5, 57:16, 58:13
**Captain** [1] - 34:25
**capture** [1] - 29:5
**career** [2] - 33:23, 33:24
**Carey** [16] - 4:3, 4:11, 4:12, 6:22, 6:24, 7:22, 9:18, 10:18, 10:19, 10:20, 10:24, 11:13, 11:22, 33:12, 46:24
**Carey's** [2] - 5:14, 11:1
**Carnegie** [1] - 57:22
**Case** [1] - 3:8
**CASE** [1] - 1:2
**case** [33] - 4:17, 6:12, 9:15, 10:19, 11:19, 12:10, 13:1, 14:11, 18:24, 18:25, 19:2, 19:7, 19:8, 19:22, 20:20, 20:25, 21:24, 22:12, 24:10, 24:23, 26:14, 32:21, 33:4, 35:13, 41:11, 52:2, 52:5, 52:18, 53:10, 53:14, 54:5, 55:15
**cases** [2] - 8:25, 50:12
**catch** [1] - 58:10
**caution** [1] - 34:2
**CBA** [1] - 5:17
**CEO** [1] - 20:11
**certain** [1] - 48:5
**certainly** [7] - 11:14, 18:9, 21:14, 25:1, 26:4, 28:3, 42:7
**certified** [1] - 38:16
**certify** [1] - 60:18
**chambers** [3] - 43:1, 43:8, 43:9
**change** [4] - 25:16, 26:25, 27:9, 27:24
**changed** [4] - 14:8, 32:7, 55:21, 55:23
**changes** [1] - 54:8
**characterization** [3] - 39:20, 40:25, 41:1
**charged** [1] - 36:9
**chilling** [3] - 33:21, 46:10, 55:12
**choice** [1] - 44:25
**Circuit** [1] - 44:25
**cited** [1] - 32:9
**civil** [2] - 30:23, 32:10
**claim** [12] - 11:11, 14:20, 14:23, 16:1, 18:19, 18:22, 18:23, 18:24, 19:6, 19:8, 30:7
**claiming** [2] - 13:5, 26:2
**claims** [6] - 4:17, 4:20, 6:16, 6:17, 6:18, 15:1
**clarify** [1] - 43:23
**class** [1] - 34:24
**clean** [1] - 32:22
**clear** [2] - 39:18, 41:8
**clerk** [2] - 13:24, 43:1
**client** [16] - 26:7, 26:9, 28:17, 28:21, 30:7, 32:13, 46:1, 47:6, 47:7, 47:17, 48:1, 48:10, 48:21, 49:5, 58:12
**client's** [2] - 47:6, 47:7
**close** [2] - 3:11, 22:6
**closed** [1] - 49:6
**coach** [4] - 30:25, 31:1, 31:4, 31:8
**coaching** [2] - 29:3, 30:25
**Coast** [1] - 21:23
**collaboration** [1] - 49:7
**colleague** [2] - 40:2, 42:2
**colleagues** [1] - 3:17
**collective** [4] - 5:11, 5:25, 6:1, 8:2
**coming** [2] - 3:22, 43:6
**commissioning** [1] - 13:13
**committee** [24] - 20:6, 36:8, 36:11, 36:14, 36:15, 36:19, 36:23, 37:11, 37:13, 37:17, 37:18, 37:19, 41:3, 45:21, 46:22, 47:9, 47:11, 47:12, 49:15, 49:22, 49:24, 49:25, 50:5
**communicated** [1] - 10:23
**communicating** [1] - 14:3
**communication** [2] - 26:3, 40:23
**communications** [6] - 23:22, 25:25, 26:1, 26:12, 41:1, 41:9
**company** [1] - 20:11
**comparator** [1] - 22:2
**compel** [1] - 11:1
**complaint** [2] - 4:19, 59:10
**completely** [3] - 14:15, 56:9, 58:1
**comply** [1] - 34:15
**concern** [3] - 26:23, 50:4, 52:17
**concerning** [1] - 18:10
**concerns** [1] - 32:23
**concluded** [2] - 40:11, 60:8
**conduct** [3] - 14:21, 15:17, 17:10
**conducting** [1] - 50:6
**confer** [2] - 14:1, 16:12
**CONFERENCE** [1] - 1:10
**conference** [1] - 3:3
**confidential** [15] - 34:4, 34:5, 38:8, 40:9, 41:3, 41:13, 45:25, 46:2, 47:7, 47:9, 47:15, 47:23, 47:25, 48:20, 48:22
**confused** [5] - 46:21, 47:4, 48:18, 48:19, 49:21
**consensus** [1] - 29:23
**consider** [1] - 55:2
**considered** [1] - 48:22
**constitutional** [4] - 5:23, 6:3, 6:11, 6:18
**constraints** [1] - 24:23
**contact** [3] - 39:24, 48:24, 55:11
**contacted** [9] - 33:10, 36:5, 37:5, 37:13, 37:15, 37:16, 39:23, 39:24, 55:14
**contacting** [2] - 33:3, 41:2
**contacts** [1] - 33:13
**contemplated** [1] - 24:12
**contemporaneous** [2] - 34:11, 42:3

**continued** [2] - 15:2, 25:20
**continuing** [2] - 15:19, 17:9
**contract** [5] - 4:15, 6:10, 6:12, 6:17, 20:8
**control** [13] - 8:18, 9:3, 9:4, 9:22, 10:18, 11:7, 11:9, 11:17, 33:12, 46:23, 46:24, 47:3, 47:5
**conversation** [4] - 46:16, 48:2, 48:12, 48:23
**conversations** [2] - 45:20, 51:12
**convince** [2] - 52:9, 54:25
**convinced** [1] - 44:21
**copy** [4] - 21:19, 22:20, 28:4, 43:14
**correct** [12] - 3:10, 4:5, 4:8, 8:23, 11:6, 19:19, 23:10, 28:25, 33:7, 42:7, 52:5, 59:3
**counsel** [8] - 3:18, 7:1, 7:2, 7:4, 9:8, 10:11, 30:7, 45:1
**counsel's** [1] - 13:23
**Count** [1] - 5:12
**country** [1] - 9:1
**counts** [1] - 19:13
**couple** [1] - 23:13
**course** [5] - 18:22, 31:8, 36:16, 56:11, 58:9
**court** [7] - 9:19, 12:10, 16:5, 25:6, 32:1, 50:18, 60:7
**Court** [26] - 8:11, 9:12, 9:19, 9:20, 11:21, 11:22, 15:4, 16:11, 22:5, 24:15, 27:2, 28:7, 32:17, 39:3, 39:4, 40:5, 40:21, 42:4, 42:13, 42:17, 43:1, 49:10, 50:15, 51:10, 56:12, 59:22
**COURT** [190] - 1:1, 3:1, 3:3, 3:14, 3:20, 4:6, 4:9, 4:18, 4:24, 5:2, 5:10, 5:22, 6:4, 6:14, 6:22, 7:18, 7:20, 7:22, 7:25, 8:4, 8:6, 8:8, 8:11, 8:17, 8:20, 8:22, 9:3, 9:10, 9:12, 9:25, 10:4, 10:6, 10:9, 10:14, 11:3, 11:7,

11:20, 12:6, 12:13, 12:15, 12:18, 13:20, 15:6, 15:10, 15:12, 15:15, 16:7, 17:7, 17:14, 17:17, 17:19, 17:21, 17:24, 18:2, 18:7, 20:14, 20:21, 21:13, 21:17, 22:10, 22:12, 22:16, 22:19, 23:3, 23:5, 23:11, 23:13, 23:17, 24:19, 25:9, 25:11, 26:7, 26:10, 26:21, 26:23, 26:25, 27:5, 27:7, 27:14, 27:20, 27:23, 28:14, 28:19, 28:23, 29:1, 30:2, 30:10, 30:14, 30:17, 30:22, 31:3, 31:7, 31:10, 32:3, 32:9, 32:20, 33:7, 33:9, 35:15, 35:17, 35:21, 35:24, 36:11, 36:19, 36:21, 37:2, 37:5, 37:10, 37:16, 37:20, 37:22, 38:3, 38:7, 38:12, 38:14, 38:18, 38:22, 38:24, 39:1, 39:6, 39:11, 39:16, 41:15, 41:18, 41:22, 41:24, 42:5, 42:10, 42:19, 42:23, 43:3, 43:7, 43:9, 43:14, 43:18, 43:21, 43:24, 44:4, 45:9, 45:12, 45:14, 46:8, 46:12, 46:15, 46:19, 47:2, 47:5, 47:20, 47:22, 48:4, 48:8, 48:15, 49:18, 49:21, 50:4, 50:9, 51:1, 51:4, 51:22, 51:24, 52:10, 52:12, 52:16, 52:23, 53:2, 53:6, 53:17, 53:19, 53:21, 53:25, 54:4, 54:7, 54:11, 55:3, 55:5, 55:9, 55:13, 55:18, 56:1, 58:3, 58:6, 58:20, 58:24, 59:4, 59:6, 59:15, 59:19, 59:22, 60:1, 60:6
**Court's** [2] - 14:15, 17:2
**courtroom** [1] - 43:3
**COURTROOM** [2] - 43:5, 43:8
**courts** [2] - 8:25, 50:17
**covered** [2] - 8:19,

59:11
**Cox** [1] - 57:22
**create** [1] - 7:12
**created** [1] - 46:10
**creation** [1] - 14:10
**crime** [1] - 57:20
**criminal** [1] - 34:20
**cross** [1] - 31:19
**cross-examine** [1] - 31:19
**CRR** [2] - 2:1, 60:23
**cure** [3] - 7:5, 57:10, 58:25
**cured** [1] - 58:22
**current** [6] - 5:17, 11:23, 12:21, 12:22, 55:23, 55:24
**curtains** [1] - 3:12

**D**

**D&O** [2] - 9:24, 11:12
**D.C** [1] - 1:21
**damage** [1] - 46:8
**damages** [6] - 14:13, 14:17, 18:4, 18:5, 18:13, 20:23
**Dan** [5] - 4:3, 4:11, 9:18, 33:12, 46:24
**dangling** [1] - 53:16
**data** [1] - 22:2
**date** [6] - 16:14, 25:17, 27:1, 27:9, 58:14, 59:7
**DATE** [1] - 60:23
**days** [10] - 5:16, 15:1, 16:19, 17:5, 23:25, 24:24, 25:6, 54:16, 57:4
**deadline** [2] - 27:2, 53:23
**deadlines** [5] - 52:2, 52:5, 52:19, 54:5, 54:8
**deal** [1] - 18:2
**dealing** [1] - 21:11
**dealings** [1] - 21:4
**deals** [1] - 17:19
**December** [5] - 15:9, 22:1, 25:5, 56:19
**decide** [2] - 53:4, 53:13
**decided** [3] - 19:21, 19:23, 52:13
**decides** [1] - 16:1
**decision** [2] - 52:18, 52:20
**declaration** [11] - 10:23, 34:8, 38:1,

39:14, 52:21, 52:24, 53:9, 54:19, 54:25, 55:5, 55:9
**declarations** [1] - 34:9
**declaring** [1] - 24:3
**decline** [1] - 12:2
**defective** [3] - 57:11, 57:12, 58:2
**Defendant** [1] - 3:16
**defendants** [1] - 1:8
**Defendants** [1] - 3:16
**DEFENDANTS** [1] - 1:18
**deficient** [2] - 57:11, 58:2
**definitely** [3] - 38:24, 39:1, 51:22
**delay** [2] - 25:20
**delinquent** [5] - 22:8, 56:9, 56:23, 57:11, 58:2
**deliver** [2] - 42:25, 46:17
**demanded** [1] - 31:20
**Dennison** [1] - 57:19
**deny** [1] - 16:11
**depose** [13] - 4:10, 16:18, 17:2, 18:8, 18:17, 20:23, 21:22, 34:1, 47:15, 47:21, 49:11, 49:20, 50:3
**deposed** [6] - 8:24, 28:24, 30:5, 30:12, 31:18, 58:12
**deposer** [1] - 32:1
**deposing** [4] - 13:25, 14:4, 16:21, 28:22
**deposition** [46] - 4:2, 4:7, 11:2, 11:16, 12:20, 13:5, 13:19, 16:13, 17:5, 17:11, 21:20, 23:15, 23:24, 23:25, 24:2, 24:6, 24:9, 24:16, 24:24, 25:1, 25:17, 26:16, 26:19, 27:1, 27:8, 27:25, 28:3, 28:4, 28:5, 28:10, 28:15, 28:19, 28:20, 30:18, 30:20, 30:21, 31:11, 32:14, 50:7, 51:5, 56:18, 56:20, 57:1, 57:6, 58:4
**depositions** [2] - 16:17, 25:12
**deputy** [1] - 43:3
**DEPUTY** [2] - 43:5,

43:8
**described** [2] - 36:2, 36:4
**descriptor** [1] - 58:15
**designee** [1] - 58:11
**destroys** [1] - 14:15
**detailed** [2] - 34:9, 50:10
**determination** [1] - 45:16
**determine** [1] - 48:16
**DFR** [1] - 6:6
**dialogue** [1] - 31:20
**diametrically** [1] - 46:25
**differ** [1] - 47:24
**different** [4] - 17:15, 31:8, 51:1, 51:6
**difficult** [1] - 9:18
**digital** [1] - 56:15
**DIGITAL** [1] - 1:11
**direct** [2] - 4:16, 14:10
**directed** [2] - 12:24, 13:10
**direction** [2] - 17:25, 27:18
**directly** [4] - 10:23, 14:9, 15:16, 22:23
**director** [1] - 7:3
**directors** [2] - 8:19, 49:4
**Disabilities** [2] - 15:13, 18:20
**disability** [2] - 4:22, 15:20
**disabled** [2] - 4:22, 34:22
**disagree** [1] - 12:14
**disagreeing** [1] - 12:15
**disbarred** [2] - 45:3, 51:8
**discipline** [2] - 34:3, 46:9
**disciplined** [1] - 41:10
**disclose** [1] - 47:12
**disclosures** [2] - 8:15, 30:4
**discoverable** [2] - 47:25, 48:20
**discovered** [1] - 50:22
**discovery** [13] - 4:6, 14:18, 14:23, 15:25, 16:3, 18:4, 18:7, 18:10, 18:11, 20:22, 24:15, 27:2, 53:15

**discriminated** [1] - 34:24
**discrimination** [2] - 14:21, 15:20
**discuss** [2] - 27:12, 51:5
**discussed** [1] - 58:21
**discussion** [1] - 59:16
**disingenuous** [1] - 44:6
**dispositive** [1] - 19:11
**dispute** [4] - 11:12, 35:25, 39:12, 39:16
**disqualification** [1] - 19:17
**disqualified** [1] - 51:7
**disqualify** [2] - 32:24, 35:7
**distributed** [1] - 7:16
**distribution** [1] - 7:15
**DISTRICT** [2] - 1:1, 1:1
**District** [4] - 9:20, 50:14, 50:15
**district** [4] - 8:25, 19:7, 50:17, 50:18
**DIVISION** [1] - 1:2
**docket** [4] - 3:25, 4:1, 32:22, 52:1
**doctrine** [1] - 14:12
**document** [5] - 6:2, 23:19, 25:4, 25:23, 56:16
**documentary** [1] - 56:8
**documents** [36] - 16:19, 16:22, 16:23, 17:1, 17:4, 17:12, 22:1, 22:6, 23:15, 23:20, 24:1, 24:4, 24:6, 24:9, 24:25, 25:3, 25:11, 25:13, 25:14, 25:18, 26:15, 26:18, 27:5, 51:13, 56:10, 56:14, 56:18, 57:3, 57:7, 57:13, 57:16, 58:8, 58:14, 58:18
**done** [7] - 6:7, 7:8, 10:21, 17:22, 29:16, 50:8, 50:10
**down** [3] - 31:2, 31:16, 59:9
**drafted** [1] - 13:11
**Drew** [1] - 3:18

**drive** [1] - 42:24
**Drive** [1] - 1:15
**drop** [1] - 43:8
**dropped** [1] - 34:23
**due** [4] - 22:4, 35:11, 53:4, 56:19
**during** [14] - 5:14, 28:2, 28:3, 28:10, 28:15, 30:17, 30:20, 30:21, 31:11, 32:13, 49:1, 50:7
**duty** [2] - 6:15, 6:16
**Dymowski** [1] - 3:19
**DYMOWSKI** [1] - 1:22

## E

**East** [1] - 21:22
**Eastern** [1] - 9:20
**easy** [1] - 51:19
**economic** [5] - 14:9, 14:16, 20:6, 20:10, 21:11
**Ed** [1] - 36:24
**Edwards** [1] - 60:22
**EDWARDS** [2] - 2:1, 60:23
**EEOC** [3] - 14:20, 15:8, 18:19
**effect** [3] - 33:21, 46:10, 55:12
**efficient** [1] - 3:23
**effort** [1] - 7:9
**efforts** [1] - 7:6
**egregious** [1] - 45:2
**either** [1] - 41:3
**Eleventh** [1] - 44:25
**eliminate** [1] - 24:16
**email** [4] - 13:24, 14:3, 27:14, 59:22
**emailed** [1] - 57:1
**emails** [3] - 33:14, 58:13, 59:7
**Emery** [1] - 50:13
**employee** [7] - 11:23, 11:24, 36:6, 36:11, 36:12, 36:13
**employees** [2] - 33:3
**end** [2] - 19:23, 31:18
**engage** [2] - 17:9, 33:13
**entered** [1] - 52:4
**entire** [1] - 24:10
**entitled** [8] - 23:23, 24:10, 24:12, 25:6, 26:15, 26:20, 40:17, 60:20

**equity** [1] - 7:15
**erroneous** [2] - 8:15, 9:16
**error** [1] - 8:22
**ESQ** [4] - 1:18, 1:18, 1:19, 1:22
**essential** [1] - 14:23
**essentially** [1] - 6:15
**et** [2] - 1:7, 3:8
**evading** [2] - 8:8, 8:9
**evaluate** [1] - 20:8
**events** [1] - 14:7
**eventually** [1] - 7:7
**evidence** [19] - 6:22, 6:24, 7:22, 7:24, 14:11, 14:17, 19:3, 19:4, 38:15, 41:18, 42:11, 48:16, 51:5, 51:22, 52:8, 53:5, 54:22, 55:2
**evidentiary** [9] - 20:1, 33:19, 35:5, 35:11, 35:25, 36:4, 45:17, 48:17, 51:20
**ex** [2] - 14:3, 44:11
**exact** [5] - 9:1, 9:15, 15:3, 16:5, 16:6
**exactly** [3] - 12:9, 39:6, 44:21
**examine** [1] - 31:19
**exceeds** [1] - 23:21
**except** [2] - 27:8, 49:17
**exception** [2] - 57:21
**excuse** [5] - 12:8, 24:17, 53:19, 53:21, 54:7
**exhibit** [1] - 31:23
**exhibits** [2] - 57:1, 57:2
**expand** [2] - 16:3, 18:24
**expanded** [1] - 14:25
**expense** [1] - 10:2
**expert** [38] - 13:3, 13:6, 13:8, 13:10, 13:14, 13:15, 16:20, 16:21, 18:7, 18:8, 18:9, 18:10, 18:16, 20:5, 20:7, 20:10, 20:23, 21:17, 21:19, 21:22, 23:2, 26:1, 26:8, 26:9, 26:10, 26:16, 28:1, 28:2, 28:3, 28:6, 34:22, 49:13, 49:15, 49:25, 50:2, 56:14
**expert's** [4] - 14:13, 18:5, 19:5, 21:24
**expertise** [1] - 35:2

**experts** [1] - 23:14
**explained** [1] - 40:6
**explaining** [3] - 12:9, 40:6, 45:19
**explicit** [1] - 44:13
**explored** [1] - 40:7
**expressed** [1] - 34:6
**expressing** [1] - 39:8
**expulsion** [1] - 34:3
**extend** [1] - 54:15
**extended** [4] - 24:15, 27:2, 53:10, 55:1
**extending** [1] - 52:5
**extension** [4] - 16:16, 52:1, 52:18, 54:15
**extent** [3] - 26:2, 31:24, 41:7
**extreme** [1] - 33:21
**extremely** [3] - 17:8, 20:18, 56:22

## F

**F-117** [1] - 33:22
**F/O** [3] - 34:12, 46:21, 48:19
**fact** [10] - 9:16, 13:7, 16:16, 21:16, 24:23, 30:3, 34:9, 45:19, 46:3, 49:2
**facts** [14] - 9:1, 15:2, 16:6, 19:13, 34:10, 36:1, 36:2, 36:3, 39:12, 39:20, 41:21, 49:16, 54:22
**failed** [1] - 16:12
**failing** [1] - 29:21
**fair** [2] - 6:16, 45:13
**family** [1] - 33:25
**far** [2] - 23:21, 31:3
**fear** [2] - 6:20, 33:23
**fearful** [1] - 44:15
**federal** [3] - 8:25, 34:5
**federally** [1] - 34:23
**few** [2] - 32:20, 48:25
**fighter** [1] - 33:22
**file** [9] - 15:23, 16:4, 19:1, 21:24, 24:10, 53:8, 54:19, 57:24, 58:14
**filed** [8] - 5:13, 14:25, 42:16, 43:6, 52:4, 52:23, 53:22
**files** [2] - 56:16, 58:15
**finance** [1] - 20:5
**financial** [2] - 20:6,

20:7
**fine** [3] - 24:21, 27:10, 44:3
**finish** [4] - 22:16, 27:18, 54:13, 55:24
**fired** [3] - 36:25, 37:8, 37:10
**first** [17] - 3:21, 4:10, 8:10, 10:18, 13:23, 14:8, 16:9, 18:2, 21:6, 21:8, 23:12, 35:13, 35:19, 37:5, 39:24, 48:4, 59:10
**First** [1] - 21:7
**five** [1] - 33:13
**flagrant** [1] - 13:25
**floor** [1] - 43:10
**FLORIDA** [1] - 1:1
**Florida** [6] - 1:4, 1:16, 1:24, 35:8, 45:19, 50:14
**fly** [1] - 57:7
**focus** [1] - 7:20
**fold** [1] - 29:9
**folder** [1] - 58:16
**FOR** [2] - 1:14, 1:18
**foregoing** [1] - 60:18
**foremost** [1] - 35:14
**forgive** [1] - 55:16
**formality** [1] - 13:3
**format** [1] - 42:21
**former** [17] - 4:3, 7:1, 9:8, 11:7, 11:9, 11:23, 11:24, 33:3, 33:22, 36:6, 36:24, 41:3, 46:22, 46:24, 47:11, 55:15
**forward** [1] - 7:10
**four** [3] - 8:25, 33:13, 50:12
**fourth** [2] - 17:12, 56:18
**frankly** [1] - 13:15
**fraud** [1] - 57:20
**free** [2] - 6:9, 28:3
**freedom** [1] - 6:19
**Friday** [1] - 24:4
**FROM** [1] - 1:11
**front** [1] - 40:23
**full** [1] - 33:19
**fully** [7] - 34:14, 52:6, 52:14, 53:4, 53:7, 54:16, 54:21
**functionally** [2] - 57:12, 58:2
**fundamentally** [1] - 14:8
**funded** [1] - 49:24

**G**

gag [1] - 50:10
general [4] - 7:1, 7:2, 7:4, 9:8
generally [1] - 45:18
given [9] - 16:22, 16:23, 21:25, 35:11, 43:15, 45:6, 49:20, 50:17, 53:4
globally [3] - 56:17, 57:8, 58:16
GORDON [1] - 1:23
Grace [3] - 3:18, 40:2, 42:2
GRACE [1] - 1:19
grant [2] - 49:10, 57:14
great [1] - 46:19
grievance [8] - 5:8, 5:11, 5:13, 5:15, 5:16, 5:19, 7:9
Grievance [3] - 5:8, 5:12, 5:20
grievances [6] - 5:6, 5:16, 6:1, 6:5, 7:11, 49:14
group [2] - 34:22, 50:21
guess [3] - 4:3, 52:24, 54:20
guy [1] - 33:22

**H**

hall [1] - 6:20
hand [1] - 31:21
handicap [1] - 35:13
handicapped [2] - 19:22, 58:1
handing [2] - 30:8, 30:9
handle [3] - 3:4, 22:13, 53:23
hands [1] - 14:22
happy [4] - 23:8, 23:18, 46:17, 59:1
Harbour [1] - 1:15
haystack [1] - 56:15
hear [4] - 44:20, 46:15, 52:16, 59:23
heard [2] - 19:25, 58:6
hearing [17] - 3:22, 19:19, 20:1, 33:19, 35:5, 35:11, 35:25, 36:4, 39:15, 44:17, 44:18, 45:17, 48:17,

51:20, 56:4, 58:21, 59:2
heart [1] - 14:22
help [1] - 7:22
helping [2] - 36:16
hereby [1] - 60:18
hi [1] - 3:1
highly [6] - 20:12, 21:5, 29:25, 31:14, 32:7, 45:5
himself [1] - 14:22
hired [3] - 13:16, 28:15, 55:15
hiring [2] - 13:8, 13:14
hoc [1] - 36:23
hold [1] - 29:15
holds [1] - 33:11
home [1] - 9:5
honestly [1] - 44:20
Honor [51] - 3:15, 4:12, 5:1, 12:4, 12:8, 12:17, 13:22, 14:6, 17:23, 19:9, 19:12, 19:18, 25:10, 25:19, 26:22, 28:12, 30:16, 31:6, 31:9, 33:6, 37:7, 37:24, 38:10, 40:15, 41:16, 41:20, 42:22, 43:22, 44:12, 45:11, 46:18, 46:20, 47:21, 47:24, 48:7, 48:18, 51:23, 52:6, 52:20, 53:3, 53:7, 54:6, 54:12, 56:5, 56:6, 56:7, 58:23, 58:25, 59:12, 59:17, 60:5
HONORABLE [1] - 1:11
hopefully [1] - 24:8
hour [2] - 3:21, 33:19
hours [3] - 25:21, 25:23, 29:21
house [1] - 7:2
hundred [1] - 48:25
hungry [1] - 29:22
Hurley [1] - 50:18

**I**

idea [1] - 29:15
ignoring [1] - 16:16
immediately [2] - 16:4, 29:19
important [1] - 15:22
impose [1] - 12:2
impossible [1] - 58:19
improper [4] - 31:15,

32:8, 33:4, 41:2
in-house [1] - 7:2
in-person [2] - 44:18, 51:21
include [2] - 8:2, 24:11
included [1] - 48:25
including [4] - 23:22, 28:17, 34:3, 50:17
incomprehensible [2] - 38:6, 53:1
incomprehensive [1] - 59:14
indefinitely [1] - 34:19
indiscernible [5] - 7:14, 14:14, 16:2, 57:3, 59:17
individual [11] - 5:8, 5:25, 6:1, 18:11, 20:4, 30:5, 44:8, 45:21, 57:15, 58:13, 60:1
individually [1] - 58:17
information [27] - 9:16, 10:19, 12:25, 23:2, 23:21, 27:25, 28:6, 40:9, 40:17, 40:19, 41:4, 41:13, 46:1, 46:2, 47:7, 47:10, 47:13, 47:16, 47:20, 47:22, 47:25, 48:21, 50:20, 51:10, 55:11
informed [1] - 29:11
initial [3] - 8:15, 30:4, 55:6
insisted [2] - 29:23, 31:19
insisting [1] - 10:12
instance [1] - 32:18
instead [3] - 25:24, 30:25, 31:20
instruct [1] - 47:11
insurance [1] - 8:19
intend [2] - 25:8, 54:12
intending [1] - 40:13
intent [3] - 34:20, 55:4
interest [5] - 20:9, 20:16, 21:12, 40:9, 40:10
interests [2] - 34:17, 40:15
interrupt [1] - 27:16
intervention [1] - 40:21
interviewed [1] - 49:25

intimidated [2] - 33:15, 46:10
introduce [1] - 14:16
invitation [1] - 24:21
involved [3] - 4:14, 21:10, 49:14
involvement [2] - 4:16, 7:3
irregular [3] - 20:12, 21:5, 32:8
issue [18] - 4:2, 4:6, 12:7, 12:19, 20:22, 22:17, 27:3, 27:8, 27:14, 27:18, 28:8, 28:13, 32:21, 39:19, 55:19, 56:7, 57:18, 59:23
issued [1] - 54:1
issues [7] - 14:16, 16:7, 23:8, 27:12, 27:17, 32:21, 53:16
it'll [1] - 15:3
items [1] - 53:13

**J**

jail [1] - 45:3
Jamler [1] - 20:7
January [3] - 1:5, 15:17, 17:1
job [1] - 47:23
John [1] - 3:18
JOHN [1] - 1:18
Johnson [1] - 20:7
Joshua [2] - 3:16, 32:24
JOSHUA [1] - 1:18
judge [3] - 19:7, 22:13, 27:16
Judge [15] - 3:24, 13:25, 19:15, 24:15, 38:16, 42:15, 50:18, 52:4, 52:12, 52:17, 52:20, 53:12, 53:17, 53:22, 54:18
JUDGE [1] - 1:12
judgment [1] - 53:15
judicial [1] - 15:4
July [3] - 4:13, 4:14, 6:25

**K**

KAISER [1] - 1:19
Kaiser [1] - 42:8
Kathy [1] - 50:13
keep [1] - 30:3
kept [3] - 34:16,

56:11, 58:9
key [2] - 34:21, 50:25
keyword [2] - 57:5, 57:6
keyword-searched [1] - 57:6
kind [1] - 41:1
knowledge [2] - 35:1, 49:11
knowledgeable [1] - 34:25
knows [2] - 40:15, 49:16

**L**

labeled [1] - 57:9
labor [2] - 45:5, 57:21
Labor [2] - 6:7, 6:17
last [6] - 13:2, 15:21, 16:23, 23:19, 24:18, 56:7
late [2] - 16:22, 25:22
law [2] - 6:11, 6:12
LAWRENCE [2] - 1:4, 1:14
Lawrence [2] - 3:7, 3:12
lawsuit [6] - 6:6, 14:25, 15:2, 15:23, 16:4, 18:23
lawyer [1] - 31:13
lawyers [1] - 7:10
learn [1] - 51:11
learned [2] - 49:2, 49:6
least [2] - 29:16, 46:6
leave [3] - 11:19, 22:3, 36:15
leaves [1] - 8:5
led [2] - 40:1, 51:10
left [3] - 28:17, 28:18, 44:24
legal [3] - 7:2, 45:24, 46:4
legitimate [1] - 13:17
less [2] - 33:13, 34:12
letter [5] - 14:20, 15:9, 15:12, 18:19, 57:19
liability [2] - 8:19, 9:23
limitation [1] - 14:16
limits [1] - 50:7
limping [2] - 19:22, 53:14
line [2] - 29:20, 37:14

**link** [1] - 39:4
**LISA** [2] - 2:1, 60:23
**LISETTE** [1] - 1:11
**list** [5] - 4:22, 4:25, 5:4, 5:7, 50:10
**listen** [4] - 39:1, 45:15, 46:13, 48:15
**Listen** [1] - 34:16
**listened** [3] - 38:13, 38:18, 38:21
**litigation** [1] - 5:3
**LMRDA** [4] - 6:9, 6:10, 6:18, 20:17
**local** [1] - 3:18
**log** [2] - 26:3, 56:19
**long-term** [1] - 20:3
**look** [6] - 29:8, 42:5, 44:2, 46:12, 51:22, 51:25
**looking** [1] - 4:19
**love** [1] - 10:20
**lunch** [2] - 29:14, 29:21
**lying** [1] - 59:21

**M**

**ma'am** [7] - 3:11, 4:23, 8:24, 15:14, 18:6, 22:11, 35:23
**MAGISTRATE** [1] - 1:12
**main** [2] - 32:23, 59:10
**maintain** [1] - 53:8
**man** [4] - 36:8, 36:11, 36:14, 46:22
**mandamus** [2] - 19:24, 35:12
**mandatory** [1] - 51:17
**manner** [4] - 29:5, 56:10, 56:11, 58:8
**MANSUKHANI** [1] - 1:23
**manual** [1] - 41:12
**March** [3] - 14:14, 16:14, 27:3
**material** [2] - 24:12, 43:12
**materials** [1] - 24:11
**Matt** [1] - 20:8
**matter** [17] - 9:14, 24:22, 29:1, 33:18, 34:22, 35:10, 35:13, 37:1, 45:8, 49:13, 49:25, 50:2, 51:20, 54:25, 56:4, 59:4, 60:20

**matters** [6] - 3:4, 3:24, 4:1, 7:4, 19:9, 20:2
**MDD** [4] - 34:22, 49:8, 49:14, 50:12
**MEADOWS** [2] - 1:4, 1:14
**Meadows** [46] - 3:5, 3:7, 3:10, 3:12, 4:10, 10:17, 10:22, 11:18, 11:20, 13:2, 13:4, 13:9, 13:20, 17:14, 22:10, 23:9, 23:14, 23:19, 23:24, 23:25, 24:11, 24:14, 24:17, 24:20, 24:24, 25:7, 25:9, 26:15, 26:19, 26:23, 32:9, 32:24, 39:22, 40:17, 40:19, 42:11, 43:24, 44:4, 45:16, 45:18, 53:19, 59:2, 59:13, 59:19
**Meadows's** [4] - 10:22, 39:19, 40:25, 59:9
**mean** [8] - 10:16, 12:4, 13:14, 19:6, 22:21, 26:10, 40:23, 43:11
**means** [1] - 50:5
**medical** [1] - 34:22
**meet** [2] - 14:1, 16:12
**member** [6] - 34:25, 41:3, 45:21, 47:9, 47:11, 47:12
**members** [3] - 5:25, 6:13, 7:7
**membership** [3] - 6:19, 20:16, 33:24
**memorandum** [1] - 5:14
**meritful** [1] - 44:22
**merits** [1] - 14:5
**message** [1] - 33:25
**messages** [1] - 42:15
**metadata** [3] - 22:9, 59:11, 59:18
**MIAMI** [1] - 1:2
**Miami** [3] - 1:4, 1:16, 1:24
**might** [3] - 19:1, 29:18, 50:14
**mind** [1] - 30:3
**minute** [1] - 24:18
**minutes** [1] - 29:22
**mis** [1] - 41:17
**misled** [3] - 33:14, 35:3, 46:10

**misrepresenting** [1] - 41:20
**misstated** [1] - 11:18
**misstatements** [1] - 19:18
**Monday** [2] - 22:7, 46:17
**monologue** [1] - 31:20
**months** [1] - 5:17
**morning** [5] - 3:1, 3:2, 3:15, 56:20, 57:1
**most** [2] - 34:24, 34:25
**motion** [28] - 13:23, 14:5, 14:19, 16:11, 19:10, 19:12, 19:17, 19:19, 19:20, 32:24, 35:22, 38:11, 42:4, 42:16, 44:22, 52:1, 52:4, 52:14, 52:23, 52:25, 53:2, 53:4, 53:6, 54:14, 55:6, 55:25, 57:24, 57:25
**motions** [5] - 19:11, 19:16, 19:17, 33:1, 38:12
**MOU** [2] - 5:13, 5:19
**move** [5] - 7:9, 27:11, 27:17, 45:24, 56:3
**moving** [2] - 24:16, 28:13
**MR** [32] - 3:2, 3:15, 4:5, 4:8, 10:16, 11:4, 11:9, 12:22, 22:21, 23:4, 23:6, 23:8, 23:12, 23:16, 23:18, 24:20, 26:12, 27:16, 27:21, 28:11, 39:18, 42:1, 42:7, 43:11, 44:2, 45:10, 45:13, 56:6, 58:25, 59:9, 59:13, 60:4
**multiple** [1] - 42:15
**must** [4] - 14:17, 15:11, 19:16, 55:1
**Myers** [12] - 28:18, 28:21, 28:24, 29:2, 29:3, 29:8, 30:3, 30:18, 57:15, 57:23, 58:7, 58:11
**Myers's** [1] - 28:19

**N**

**name** [2] - 35:17, 58:14
**named** [2] - 8:16,

35:22
**need** [19] - 15:24, 15:25, 17:25, 18:7, 19:4, 20:1, 20:23, 24:4, 25:6, 27:19, 28:1, 36:4, 38:23, 41:21, 50:24, 52:9, 53:14, 54:8, 57:23
**needed** [3] - 35:25, 45:17, 48:17
**needle** [1] - 56:15
**needs** [8] - 19:25, 23:15, 29:25, 31:24, 43:14, 54:16, 54:25, 56:23
**never** [7] - 5:18, 14:2, 17:13, 20:10, 36:14, 44:6
**new** [5] - 15:22, 16:14, 18:24, 19:13
**New** [1] - 10:25
**news** [3] - 10:17, 19:4, 22:21
**next** [8] - 12:7, 12:19, 27:14, 34:24, 52:8, 52:15, 56:4
**Nick** [8] - 4:9, 14:22, 21:7, 26:3, 26:7, 26:12, 27:18, 36:25
**NO** [1] - 1:2
**nondispositive** [1] - 19:11
**nonparty** [4] - 33:11, 37:15, 44:8, 46:22
**Northwest** [1] - 1:20
**note** [2] - 28:9, 29:24
**noted** [1] - 45:5
**notes** [19] - 27:15, 29:2, 29:7, 29:12, 29:16, 30:6, 30:9, 30:19, 31:12, 31:24, 32:13, 34:11, 40:2, 40:4, 40:5, 42:3, 42:5, 45:15
**nothing** [8] - 10:21, 11:1, 32:17, 41:2, 43:5, 51:15, 52:13, 58:25
**notice** [3] - 4:7, 12:21, 13:5
**noticed** [2] - 29:7, 32:23
**number** [2] - 23:9, 58:16
**numerous** [1] - 34:10

**O**

**object** [6] - 35:10, 44:25, 53:11, 54:17, 54:19, 57:10
**objected** [1] - 35:12
**objection** [3] - 19:14, 53:13, 54:19
**objections** [4] - 19:20, 31:17, 53:22, 53:23
**objectives** [1] - 5:24
**obligated** [2] - 21:25, 25:2
**obligation** [5] - 24:5, 47:6, 47:8, 47:11, 50:6
**observe** [1] - 28:16
**observed** [2] - 29:17, 31:25
**observer** [2] - 29:6, 29:17
**obstruction** [1] - 56:22
**obstructionist** [1] - 17:9
**obtain** [1] - 4:14
**obviously** [1] - 39:19
**occurred** [4] - 11:19, 14:2, 40:24, 42:1
**October** [4] - 12:24, 19:18, 37:13, 39:23
**OF** [1] - 1:1
**of..** [1] - 38:14
**offered** [5] - 24:14, 38:15, 38:16, 39:3, 42:15
**office** [3] - 3:17, 6:25, 43:15
**officer** [1] - 8:23
**Officer** [3] - 21:7, 21:8, 35:19
**officers** [1] - 8:19
**once** [1] - 44:20
**one** [30] - 5:24, 6:18, 6:19, 6:20, 6:25, 7:11, 8:16, 12:23, 13:11, 13:15, 16:7, 16:10, 21:21, 22:13, 28:23, 29:22, 30:11, 32:23, 33:19, 34:23, 35:25, 46:20, 47:3, 48:23, 51:21, 56:7, 58:17
**one's** [1] - 24:18
**one-hour** [1] - 33:19
**one-on-one** [1] - 48:23
**ongoing** [1] - 58:23
**opinion** [1] - 45:6

**opportunity** [3] - 27:12, 43:25, 52:14
**opposed** [1] - 46:25
**order** [20] - 11:21, 11:22, 12:10, 12:20, 14:1, 19:14, 19:21, 22:5, 25:6, 25:17, 44:11, 52:5, 53:11, 54:1, 54:5, 54:13, 55:20, 55:21, 55:23, 56:24
**ordered** [1] - 9:21
**ordering** [2] - 11:4, 17:2
**orders** [2] - 32:21, 54:2
**ordinary** [2] - 56:11, 58:9
**organized** [2] - 57:8
**original** [1] - 22:8
**otherwise** [1] - 14:24
**outrageous** [1] - 50:20
**outside** [1] - 10:11
**outstanding** [1] - 3:4
**overbroad** [2] - 23:21, 40:17
**overlap** [3] - 38:6, 53:1, 59:14
**overlaps** [1] - 19:3
**overturned** [1] - 52:9
**own** [10] - 7:4, 9:8, 10:1, 11:24, 14:13, 33:24, 34:8, 48:1, 48:10, 49:8

**P**

**PACER** [1] - 50:23
**page** [1] - 21:6
**Pages** [1] - 1:8
**pages** [1] - 57:6
**paid** [5] - 36:14, 36:18, 49:15, 49:18, 49:22
**panicked** [1] - 33:23
**paper** [2] - 31:17, 31:21
**parallel** [2] - 9:15, 15:1
**part** [9] - 18:23, 19:7, 19:8, 37:6, 37:7, 37:8, 37:17, 55:6, 56:23
**parte** [2] - 14:3, 44:11
**participation** [1] - 41:10
**particular** [2] - 8:1, 32:10

**parties** [8] - 14:1, 15:3, 15:4, 16:6, 54:8, 55:19, 55:21, 56:3
**party** [1] - 28:13
**pass** [3] - 29:9, 31:12, 32:13
**passed** [3] - 28:9, 29:2, 31:25
**passing** [4] - 29:7, 29:12, 30:6, 30:19
**passion** [1] - 22:12
**pattern** [2] - 9:16, 15:23
**pay** [3] - 9:23, 10:2, 10:11
**Pellettieri** [3] - 3:18, 14:3, 19:18
**PELLETTIERI** [1] - 1:18
**pending** [8] - 4:1, 5:13, 5:20, 14:19, 19:14, 19:16, 32:21, 35:16
**Pennsylvania** [1] - 9:20
**percipient** [1] - 14:10
**period** [3] - 13:1, 24:5, 27:12
**permission** [2] - 8:12, 49:10
**person** [7] - 10:6, 14:2, 18:8, 22:25, 35:21, 44:18, 51:21
**personal** [5] - 20:9, 21:3, 21:12, 49:11
**personally** [3] - 20:16, 20:25, 51:21
**pertains** [1] - 41:12
**petrified** [1] - 33:21
**phone** [1] - 33:14
**physical** [2] - 45:4, 46:6
**piece** [3] - 31:17, 31:21, 52:7
**pilot** [7] - 7:3, 33:22, 34:22, 36:14, 37:14, 49:8, 50:21
**pilots** [18] - 4:22, 7:6, 7:12, 7:13, 7:16, 22:2, 34:23, 34:24, 36:16, 36:17, 48:22, 48:25, 50:1, 50:13, 50:16, 50:19
**Pilots** [2] - 3:7, 3:17
**PILOTS** [1] - 1:7
**Plaintiff** [3] - 1:5, 3:10, 3:12
**PLAINTIFF** [164] - 1:14, 3:11, 4:12, 4:23, 5:1, 5:5, 5:11, 5:23,

6:6, 6:15, 6:24, 7:19, 7:21, 7:24, 8:1, 8:5, 8:7, 8:9, 8:14, 8:18, 8:21, 8:24, 9:4, 9:11, 9:14, 10:2, 10:5, 10:8, 10:10, 12:4, 12:8, 12:14, 12:17, 13:22, 15:8, 15:11, 15:14, 15:16, 16:10, 17:8, 17:16, 17:18, 17:20, 17:22, 18:1, 18:6, 19:9, 20:15, 21:3, 21:15, 21:21, 22:11, 22:15, 22:18, 23:7, 25:10, 25:19, 26:8, 26:11, 26:22, 26:24, 27:4, 27:6, 27:13, 28:12, 28:15, 28:20, 28:25, 29:3, 30:3, 30:13, 30:16, 30:20, 30:24, 31:6, 31:9, 31:14, 32:4, 32:19, 33:5, 33:8, 33:10, 35:16, 35:19, 35:23, 36:8, 36:13, 36:20, 36:22, 37:4, 37:7, 37:12, 37:19, 37:21, 37:24, 38:4, 38:10, 38:13, 38:15, 38:20, 38:23, 38:25, 39:3, 39:7, 39:12, 41:16, 41:20, 41:23, 42:14, 42:21, 42:25, 43:16, 43:20, 43:22, 44:5, 46:7, 46:9, 46:14, 46:17, 46:20, 47:3, 47:19, 47:21, 47:24, 48:7, 48:14, 48:18, 49:19, 49:23, 50:8, 50:10, 51:3, 51:9, 51:23, 52:6, 52:11, 52:13, 52:20, 52:25, 53:3, 53:7, 53:18, 53:20, 53:24, 54:3, 54:6, 54:10, 54:12, 55:4, 55:7, 55:10, 55:14, 55:22, 56:5, 56:7, 58:4, 58:11, 58:22, 59:5, 59:12, 59:17, 59:21, 59:25, 60:5
**plan** [1] - 24:7
**played** [1] - 49:4
**pleadings** [3] - 14:19, 19:13, 19:20
**PLLC** [1] - 1:19
**point** [12] - 4:24, 15:7, 19:1, 19:10, 22:24, 41:2, 41:9, 45:10, 48:11, 48:15,

55:18
**pointing** [3] - 53:25, 54:4
**policy** [5] - 9:24, 10:5, 11:12, 41:11, 41:12
**pose** [2] - 21:17, 21:18
**position** [4] - 11:5, 33:11, 40:8, 40:11
**possible** [3] - 3:23, 24:25, 48:9
**post** [1] - 14:7
**postpone** [1] - 34:19
**power** [1] - 11:16
**PowerPoint** [2] - 49:3, 49:7
**practical** [1] - 24:22
**precedent** [3] - 7:13, 12:5, 12:7
**Preitz** [6] - 9:14, 9:18, 11:19, 12:9, 49:8, 50:13
**prejudiced** [2] - 25:24, 56:22
**prejudicial** [2] - 17:8, 25:19
**prepared** [1] - 18:16
**present** [5] - 4:7, 28:2, 30:18, 48:3, 51:13
**presentation** [1] - 49:4
**presented** [1] - 49:5
**preserve** [1] - 29:15
**preserved** [1] - 32:6
**president** [14] - 4:3, 4:7, 4:13, 7:8, 9:22, 11:8, 11:10, 12:21, 12:23, 13:4, 13:18, 20:11, 21:10, 36:24
**President** [7] - 4:12, 5:14, 15:17, 21:7, 36:25, 46:24, 49:17
**pressure** [1] - 24:16
**presume** [1] - 19:5
**pretrial** [1] - 19:11
**pretty** [1] - 18:14
**prevailed** [1] - 7:12
**prevent** [2] - 32:16, 34:20
**previously** [1] - 14:6
**prime** [1] - 5:24
**privilege** [9] - 26:2, 26:3, 26:9, 47:8, 48:1, 48:10, 56:19, 57:19, 57:20
**privileged** [21] - 13:14, 25:13, 26:1, 26:4, 30:8, 34:4, 41:4,

45:25, 47:10, 47:16, 47:22, 48:21, 49:5, 49:9, 50:3, 50:21, 51:6, 51:10, 51:12, 51:14, 51:15
**privileges** [1] - 48:5
**Pro** [1] - 1:15
**pro** [2] - 3:12, 45:6
**problem** [3] - 22:13, 22:14, 26:6
**procedure** [3] - 30:23, 32:10, 32:15
**proceeded** [1] - 33:13
**proceeding** [2] - 3:12, 7:15
**proceedings** [2] - 60:8, 60:19
**process** [3] - 5:6, 35:11, 53:4
**produce** [9] - 9:21, 11:4, 16:12, 16:13, 22:1, 22:6, 26:6, 29:13, 56:24
**produced** [9] - 22:8, 25:12, 28:1, 31:23, 43:18, 56:10, 56:14, 58:8, 60:20
**product** [1] - 49:8
**production** [12] - 21:25, 22:8, 24:8, 38:20, 43:17, 43:20, 44:2, 56:8, 56:23, 57:7, 57:12, 58:1
**professional** [1] - 35:9
**prolonging** [1] - 18:25
**promises** [2] - 4:15, 8:1
**proper** [2] - 30:1, 32:2
**properly** [2] - 5:6, 16:12
**prosecute** [4] - 5:6, 6:1, 6:4, 7:11
**prosecuted** [2] - 5:15, 5:18
**prosecuting** [1] - 5:16
**protect** [2] - 5:25, 41:4
**protected** [1] - 47:25
**protecting** [1] - 40:9
**protection** [1] - 41:12
**protections** [2] - 46:1, 46:2
**protective** [3] - 19:14, 19:21, 44:11

**provide** [16] - 17:4, 21:24, 24:6, 25:2, 25:3, 26:2, 39:4, 39:25, 40:8, 40:12, 40:19, 41:11, 42:17, 42:19, 42:20, 59:17
**provided** [7] - 10:24, 24:4, 34:8, 40:4, 41:13, 42:3, 59:10
**providing** [1] - 17:3
**public** [2] - 46:3, 50:22
**purged** [1] - 7:1
**purportedly** [1] - 5:1
**pursue** [3] - 14:23, 18:20, 18:22
**push** [1] - 16:15
**put** [7] - 11:4, 20:20, 29:9, 36:3, 39:2, 42:23, 46:2

## Q

**quash** [17] - 9:6, 10:12, 10:13, 11:14, 12:20, 13:24, 16:11, 34:13, 34:18, 40:13, 40:21, 41:5, 41:6, 44:7, 44:8, 45:24, 46:23
**quashed** [6] - 12:24, 14:6, 44:10, 44:14, 47:19
**quashing** [2] - 27:25, 41:5
**questioning** [1] - 29:20
**questions** [4] - 10:20, 13:9, 13:13, 30:15
**quickly** [1] - 51:25
**quite** [1] - 13:18
**quote** [1] - 59:23

## R

**R-E-M-P-F-E-R** [1] - 35:20
**Railway** [2] - 6:7, 6:16
**railway** [2] - 45:5, 57:21
**raised** [2] - 23:9, 56:8
**range** [1] - 35:1
**RDR** [2] - 2:1, 60:23
**read** [4] - 34:11, 38:11, 38:12, 46:11
**reading** [1] - 15:13

**reality** [1] - 24:3
**really** [8] - 5:2, 15:21, 16:17, 19:25, 32:17, 45:12, 50:20, 59:15
**reason** [7] - 11:23, 13:17, 18:16, 18:18, 27:24, 32:12, 57:17
**reasons** [1] - 14:8
**rebuttal** [3] - 13:2, 13:6, 31:18
**recalled** [1] - 36:24
**received** [4] - 15:9, 18:12, 23:19, 25:4
**receiving** [1] - 29:24
**recipients** [1] - 13:12
**recognized** [1] - 34:23
**record** [3] - 3:9, 19:19, 50:23
**recorded** [1] - 42:6
**RECORDING** [1] - 1:11
**recording** [14] - 34:11, 38:13, 38:14, 38:15, 38:17, 38:19, 38:20, 38:21, 39:2, 39:6, 40:4, 42:8, 42:9, 46:13
**recordings** [6] - 39:7, 42:11, 42:14, 43:16, 45:16
**records** [1] - 50:1
**redepose** [2] - 57:15, 57:23
**REES** [1] - 1:23
**referred** [1] - 3:24
**referring** [1] - 48:9
**refused** [3] - 9:17, 29:13, 32:5
**refusing** [2] - 10:10, 10:11
**regard** [6] - 28:1, 38:8, 50:9, 52:18, 54:5, 55:18
**regarding** [9] - 4:2, 4:6, 14:21, 18:19, 18:20, 28:6, 33:4, 45:25, 52:1
**regular** [1] - 37:14
**REID** [1] - 1:11
**reinstated** [3] - 4:16, 7:14, 36:9
**reinstatement** [2] - 4:15, 5:8
**related** [4] - 5:7, 22:1, 23:20, 49:14
**relationship** [3] - 20:4, 20:9, 21:4
**relevance** [1] - 14:7

**relevant** [7] - 10:19, 12:25, 20:18, 26:13, 49:13, 50:24, 54:23
**remained** [1] - 5:3
**remedies** [1] - 6:8
**remedy** [2] - 6:5, 6:6
**remember** [1] - 16:25
**removal** [1] - 5:7
**removed** [3] - 4:24, 7:1, 7:13
**Rempfer** [34] - 33:20, 34:12, 35:19, 36:25, 39:8, 39:10, 39:13, 39:22, 39:23, 39:24, 40:7, 40:10, 40:18, 40:24, 41:9, 42:8, 44:6, 44:7, 44:9, 44:13, 44:15, 44:18, 46:21, 47:14, 48:12, 48:19, 48:23, 49:6, 49:11, 50:24, 51:12, 51:16, 51:17
**Rempfer's** [3] - 40:25, 46:15, 47:17
**rep** [1] - 40:3
**reply** [3] - 52:8, 52:15, 53:9
**report** [26] - 13:3, 13:7, 13:8, 13:10, 13:11, 13:13, 14:9, 14:13, 16:20, 16:22, 18:5, 18:8, 18:9, 18:12, 18:15, 19:5, 20:11, 21:5, 21:11, 21:19, 22:22, 23:1, 25:22, 28:1, 28:4, 28:6
**reporter** [1] - 32:1
**Reporterlisaedwar ds@gmail.com** [1] - 60:24
**reporterlisaedward s@gmail.com** [1] - 2:1
**represent** [5] - 10:11, 11:13, 34:17, 44:7, 47:6
**representation** [8] - 6:16, 9:8, 9:23, 10:1, 11:24, 39:25, 40:8, 40:12
**representative** [7] - 28:18, 28:21, 32:13, 45:23, 45:24, 46:4, 58:12
**represented** [5] - 9:7, 11:25, 34:7, 44:6, 56:12
**representing** [2] - 10:12, 40:15
**represents** [2] -

37:6, 45:20
**reprisal** [1] - 6:21
**request** [13] - 11:14, 16:11, 16:24, 23:19, 23:20, 25:23, 44:17, 49:12, 49:19, 50:2, 52:11, 57:14, 57:25
**requested** [4] - 16:23, 29:12, 39:4, 56:19
**requesting** [2] - 12:20, 25:15
**requests** [2] - 18:4, 25:4
**require** [1] - 35:6
**required** [1] - 46:4
**requirement** [1] - 12:2
**requires** [3] - 33:19, 44:22, 51:20
**requiring** [1] - 14:1
**research** [1] - 49:15
**resistance** [1] - 7:10
**resolve** [3] - 4:1, 32:20, 39:15
**resolved** [5] - 33:18, 35:5, 37:1, 44:19, 59:4
**resources** [1] - 15:4
**respect** [6] - 6:23, 12:15, 12:18, 20:22, 27:23, 28:9
**respectfully** [11] - 16:11, 19:25, 20:3, 20:18, 38:25, 49:12, 49:19, 50:2, 52:11, 54:13, 57:25
**respond** [4] - 17:21, 22:19, 45:10, 60:2
**responded** [1] - 5:18
**responding** [1] - 25:5
**response** [5] - 10:15, 13:21, 25:7, 25:8, 42:4
**responsible** [2] - 20:25, 38:9
**retaliation** [6] - 6:8, 6:21, 15:20, 33:15, 37:25, 44:15
**retaliatory** [1] - 14:21
**return** [1] - 8:3
**reveal** [1] - 55:10
**revealed** [2] - 33:16, 34:4
**reverse** [1] - 54:1
**review** [6] - 25:18, 31:21, 45:15, 48:16, 56:16, 57:4
**ridiculous** [2] -

54:20, 57:4
**right-to-sue** [3] - 14:20, 15:9, 18:19
**rights** [2] - 5:25, 6:19
**role** [1] - 40:7
**room** [2] - 29:22, 30:18
**RP** [1] - 57:8
**Rule** [9] - 9:17, 16:25, 17:3, 23:23, 24:13, 25:23, 26:15, 35:12, 57:9
**rule** [9] - 30:22, 30:23, 31:4, 31:12, 32:10, 32:15, 35:8, 54:17, 57:23
**ruled** [3] - 19:8, 20:22, 53:14
**rules** [2] - 35:9, 45:19
**ruling** [4] - 27:21, 27:24, 28:7, 48:17
**Rybak** [12] - 3:18, 28:17, 29:8, 29:9, 33:20, 34:9, 35:6, 39:10, 40:2, 40:4, 42:2, 44:23
**RYBAK** [1] - 1:19

## S

**sanctions** [1] - 19:17
**sat** [4] - 28:17, 28:18, 31:2, 31:16
**Saturday** [2] - 16:24, 23:20
**saves** [1] - 58:13
**saw** [1] - 17:13
**schedule** [1] - 13:18
**scheduled** [2] - 24:2, 56:21
**scheduling** [4] - 24:16, 54:5, 55:20, 55:23
**scope** [3] - 14:16, 14:24, 16:3
**screen** [1] - 3:19
**SCULLY** [1] - 1:23
**Se** [1] - 1:15
**se** [2] - 3:12, 45:6
**search** [3] - 57:5, 58:16, 58:17
**searchable** [2] - 56:17, 57:8
**searched** [1] - 57:6
**second** [10] - 14:5, 14:19, 14:25, 15:7, 16:4, 17:1, 18:18, 21:7, 34:25

**Second** [1] - 1:23
**section** [1] - 41:11
**securing** [1] - 55:8
**see** [9] - 3:5, 4:2, 27:14, 27:24, 29:12, 31:24, 32:4, 32:22, 39:15
**seek** [1] - 40:17
**seeking** [8] - 26:5, 34:18, 40:21, 41:5, 41:6, 50:16, 51:10, 51:15
**seeks** [1] - 19:13
**seem** [2] - 40:10, 54:21
**send** [1] - 59:22
**sense** [1] - 59:8
**sent** [2] - 14:3, 22:23
**separately** [1] - 42:8
**serious** [2] - 45:1, 51:19
**seriously** [1] - 45:8
**serve** [1] - 9:5
**served** [4] - 11:15, 13:2, 13:5, 39:22
**service** [7] - 8:8, 8:9, 8:12, 9:17, 9:19, 10:7, 11:21
**serving** [2] - 9:18, 10:22
**session** [1] - 49:6
**set** [4] - 15:2, 17:5, 21:25, 53:22
**setting** [1] - 21:20
**seven** [1] - 57:11
**seven-week** [1] - 57:11
**several** [2] - 15:21, 53:13
**share** [1] - 40:10
**shield** [1] - 55:16
**shielded** [1] - 14:11
**SHIFFRIN** [33] - 1:18, 3:2, 3:15, 4:5, 4:8, 10:16, 11:4, 11:9, 12:22, 22:21, 23:4, 23:6, 23:8, 23:12, 23:16, 23:18, 24:20, 26:12, 27:16, 27:21, 28:11, 39:18, 42:1, 42:7, 43:11, 44:2, 45:10, 45:13, 56:6, 58:25, 59:9, 59:13, 60:4
**Shiffrin** [59] - 3:16, 10:15, 12:21, 16:15, 17:3, 17:4, 21:6, 21:8, 21:9, 21:19, 22:19, 25:13, 27:7, 28:22, 29:2, 29:8, 30:6,

30:14, 30:19, 31:19, 32:25, 33:2, 33:20, 34:2, 34:7, 34:16, 35:7, 37:6, 37:13, 38:7, 39:9, 39:10, 39:17, 41:24, 42:18, 43:17, 43:19, 43:21, 44:1, 44:5, 44:9, 44:16, 44:23, 45:2, 45:15, 45:19, 45:23, 47:10, 47:23, 48:1, 49:1, 50:6, 51:7, 55:11, 55:14, 55:17, 56:10, 60:2
**Shiffrin's** [6] - 28:16, 29:20, 41:16, 43:15, 47:17, 48:12
**shifted** [1] - 27:17
**shocked** [2] - 49:1, 51:11
**short** [1] - 24:4
**shortly** [1] - 39:23
**show** [3] - 11:16, 32:5, 53:9
**showed** [1] - 34:20
**shows** [1] - 28:5
**Sicher** [4] - 34:25, 36:24, 36:25, 49:17
**side** [2] - 28:16, 29:5
**sign** [2] - 4:15, 8:2
**significant** [4] - 44:22, 45:8, 52:7, 52:22
**Silva** [35] - 4:9, 12:22, 13:4, 13:5, 13:11, 14:9, 14:22, 15:17, 16:1, 16:13, 16:18, 17:19, 17:23, 18:2, 18:14, 18:17, 20:3, 20:15, 20:25, 21:7, 21:8, 21:19, 22:20, 22:22, 22:25, 23:2, 26:4, 26:7, 26:13, 27:18, 27:23, 28:4, 28:6, 36:25
**Silva's** [3] - 14:6, 20:5, 22:16
**simply** [3] - 13:11, 30:18, 59:7
**single** [1] - 55:14
**SIP** [1] - 22:3
**situation** [3] - 16:20, 17:17, 48:8
**situations** [1] - 48:5
**six** [1] - 9:18
**slightly** [1] - 24:17
**someone** [3] - 11:16, 28:10, 37:5
**soon** [4] - 24:25, 26:18, 55:8, 56:13

**sooner** [2] - 16:24, 20:1
**sorry** [6] - 6:3, 7:21, 12:17, 17:14, 59:19, 59:21
**sort** [4] - 3:25, 8:12, 15:20, 46:5
**sought** [1] - 5:7
**sounds** [3] - 10:23, 43:11, 46:5
**Southeast** [1] - 1:23
**Southern** [1] - 50:14
**SOUTHERN** [1] - 1:1
**speaker** [3] - 38:6, 53:1, 59:14
**special** [1] - 22:3
**specific** [1] - 50:24
**speech** [2] - 6:9, 6:19
**spoken** [1] - 9:6
**staff** [1] - 25:14
**stand** [1] - 10:21
**standard** [1] - 5:16
**standing** [2] - 7:7, 31:17
**start** [7] - 3:9, 3:21, 4:18, 17:11, 35:24, 55:7, 56:21
**statement** [2] - 21:16, 48:5
**STATES** [2] - 1:1, 1:12
**states** [1] - 5:24
**status** [2] - 3:3, 48:25
**STATUS** [1] - 1:10
**stay** [1] - 52:2
**stayed** [2] - 53:10, 55:1
**Steel** [1] - 57:22
**steps** [1] - 41:4
**stick** [1] - 17:17
**still** [3] - 19:6, 22:7, 56:15
**stop** [1] - 59:20
**stopping** [1] - 29:23
**Street** [2] - 1:20, 1:23
**strenuously** [1] - 35:10
**stuff** [5] - 49:16, 50:23, 50:24, 56:24, 57:7
**subject** [7] - 34:3, 34:22, 49:13, 49:25, 50:2, 57:20, 57:21
**subject-matter** [4] - 34:22, 49:13, 49:25, 50:2
**subjecting** [1] - 13:17

**submit** [2] - 52:7, 53:5
**submitted** [2] - 12:8, 34:9
**subpoena** [25] - 9:6, 10:13, 10:22, 11:14, 11:15, 12:23, 12:24, 14:6, 16:25, 26:15, 27:25, 34:5, 34:13, 34:15, 34:18, 37:25, 39:22, 41:6, 44:9, 44:10, 44:11, 45:24, 46:23, 47:19, 49:20
**subpoenaed** [2] - 38:1, 45:22
**subpoenas** [3] - 40:13, 40:16, 40:22
**subsequently** [1] - 7:1
**substantial** [2] - 6:24, 7:24
**successfully** [2] - 41:6, 44:10
**sue** [5] - 6:9, 6:20, 14:20, 15:9, 18:19
**suffering** [1] - 15:21
**suggest** [1] - 41:9
**Suite** [2] - 1:20, 1:24
**summary** [1] - 53:15
**Sunset** [1] - 1:15
**supplement** [4] - 14:19, 19:11, 19:12, 19:20
**supplemental** [1] - 22:1
**supply** [1] - 42:12
**supports** [1] - 6:12
**supposed** [2] - 5:15, 21:22
**supreme** [1] - 6:11
**surreptitious** [1] - 29:4
**Susan** [1] - 50:14
**suspicious** [1] - 29:25
**sworn** [1] - 39:14

# T

**table** [4] - 28:16, 29:4, 29:6, 29:7
**tampered** [1] - 29:16
**telephonically** [1] - 14:2
**temporal** [3] - 14:15, 14:24, 16:3
**tenure** [1] - 5:14
**term** [1] - 20:3
**terminated** [3] - 7:3,

20:16, 37:12
**testified** [4] - 33:16, 38:8, 58:7, 58:13
**testify** [11] - 13:7, 33:23, 34:2, 34:13, 37:22, 37:23, 38:2, 38:3, 38:4, 45:25, 51:16
**testifying** [3] - 31:10, 31:11, 34:21
**testimony** [5] - 34:19, 35:6, 44:14, 44:20, 55:16
**text** [2] - 33:25, 42:15
**THE** [358] - 1:11, 1:11, 1:14, 1:18, 3:1, 3:3, 3:11, 3:14, 3:20, 4:6, 4:9, 4:12, 4:18, 4:23, 4:24, 5:1, 5:2, 5:5, 5:10, 5:11, 5:22, 5:23, 6:4, 6:6, 6:14, 6:15, 6:22, 6:24, 7:18, 7:19, 7:20, 7:21, 7:22, 7:24, 7:25, 8:1, 8:4, 8:5, 8:6, 8:7, 8:8, 8:9, 8:11, 8:14, 8:17, 8:18, 8:20, 8:21, 8:22, 8:24, 9:3, 9:4, 9:10, 9:11, 9:12, 9:14, 9:25, 10:2, 10:4, 10:5, 10:6, 10:8, 10:9, 10:10, 10:14, 11:3, 11:7, 11:20, 12:4, 12:6, 12:8, 12:13, 12:14, 12:15, 12:17, 12:18, 13:20, 13:22, 15:6, 15:8, 15:10, 15:11, 15:12, 15:14, 15:15, 15:16, 16:7, 16:10, 17:7, 17:8, 17:14, 17:16, 17:17, 17:18, 17:19, 17:20, 17:21, 17:22, 17:24, 18:1, 18:2, 18:6, 18:7, 19:9, 20:14, 20:15, 20:21, 21:3, 21:13, 21:15, 21:17, 21:21, 22:10, 22:11, 22:12, 22:15, 22:16, 22:18, 22:19, 23:3, 23:5, 23:7, 23:11, 23:13, 23:17, 24:19, 25:9, 25:10, 25:11, 25:19, 26:7, 26:8, 26:10, 26:11, 26:21, 26:22, 26:23, 26:24, 26:25, 27:4, 27:5, 27:6, 27:7, 27:13, 27:14, 27:20, 27:23, 28:12, 28:14,

28:15, 28:19, 28:20, 28:23, 28:25, 29:1, 29:3, 30:2, 30:3, 30:10, 30:13, 30:14, 30:16, 30:17, 30:20, 30:22, 30:24, 31:3, 31:6, 31:7, 31:9, 31:10, 31:14, 32:3, 32:4, 32:9, 32:19, 32:20, 33:5, 33:7, 33:8, 33:9, 33:10, 35:15, 35:16, 35:17, 35:19, 35:21, 35:23, 35:24, 36:8, 36:11, 36:13, 36:19, 36:20, 36:21, 36:22, 37:2, 37:4, 37:5, 37:7, 37:10, 37:12, 37:16, 37:19, 37:20, 37:21, 37:22, 37:24, 38:3, 38:4, 38:7, 38:10, 38:12, 38:13, 38:14, 38:15, 38:18, 38:20, 38:22, 38:23, 38:24, 38:25, 39:1, 39:3, 39:6, 39:7, 39:11, 39:12, 39:16, 41:15, 41:16, 41:18, 41:20, 41:22, 41:23, 41:24, 42:5, 42:10, 42:14, 42:19, 42:21, 42:23, 42:25, 43:3, 43:5, 43:7, 43:8, 43:9, 43:14, 43:16, 43:18, 43:20, 43:21, 43:22, 43:24, 44:4, 44:5, 45:9, 45:12, 45:14, 46:7, 46:8, 46:9, 46:12, 46:14, 46:15, 46:17, 46:19, 46:20, 47:2, 47:3, 47:5, 47:19, 47:20, 47:21, 47:22, 47:24, 48:4, 48:7, 48:8, 48:14, 48:15, 48:18, 49:18, 49:19, 49:21, 49:23, 50:4, 50:8, 50:9, 50:10, 51:1, 51:3, 51:4, 51:9, 51:22, 51:23, 51:24, 52:6, 52:10, 52:11, 52:12, 52:13, 52:16, 52:20, 52:23, 52:25, 53:2, 53:3, 53:6, 53:7, 53:17, 53:18, 53:19, 53:20, 53:21, 53:24, 53:25, 54:3, 54:4, 54:6, 54:7, 54:10, 54:11, 54:12, 55:3, 55:4, 55:5, 55:7, 55:9, 55:10, 55:13, 55:14,

55:18, 55:22, 56:1, 56:5, 56:7, 58:3, 58:4, 58:6, 58:11, 58:20, 58:22, 58:24, 59:4, 59:5, 59:6, 59:12, 59:15, 59:17, 59:19, 59:21, 59:22, 59:25, 60:1, 60:5, 60:6

**theirs** [1] - 57:9
**themselves** [1] - 14:14
**there'll** [1] - 14:25
**thereafter** [2] - 13:5, 39:23
**they've** [4] - 22:7, 25:20, 29:15, 32:7
**third** [2] - 21:25, 43:10
**threat** [3] - 40:14, 46:6
**threatened** [4] - 33:15, 35:3, 35:18, 36:16
**threats** [4] - 40:21, 40:22, 41:5, 46:7
**three** [2] - 6:16, 6:18
**thumb** [1] - 42:23
**tied** [2] - 14:7, 15:16
**timely** [3] - 5:6, 6:1, 6:4
**timestamp** [2] - 58:14, 59:7
**today** [8] - 21:25, 22:4, 22:7, 24:8, 25:5, 25:8, 57:14
**Tom** [3] - 33:20, 35:19, 39:8
**took** [11] - 6:25, 23:25, 29:11, 29:21, 29:22, 36:25, 40:2, 40:4, 42:3, 45:7
**topic** [2] - 14:18, 37:3
**totally** [1] - 35:3
**touched** [1] - 56:8
**towards** [1] - 15:16
**tranche** [2] - 17:12, 56:18
**TRANSCRIBED** [2] - 1:11, 2:1
**transcript** [11] - 34:8, 34:10, 38:16, 39:9, 40:3, 41:25, 42:2, 48:2, 49:1, 51:11, 56:13
**transcription** [1] - 60:19
**transparent** [1] - 34:14
**trial** [3] - 30:6, 31:11,

53:15
**tried** [4] - 7:9, 8:10, 30:7, 49:3
**true** [1] - 36:5
**trust** [1] - 9:9
**trusting** [1] - 55:16
**truth** [1] - 44:14
**truthfully** [2] - 34:14, 44:19
**try** [5] - 3:25, 7:4, 32:20, 39:18, 55:12
**trying** [5] - 3:11, 4:14, 22:16, 30:25, 31:1
**Tuesday** [4] - 16:21, 21:22, 23:5, 24:2
**turn** [1] - 25:15
**twice** [1] - 29:16
**Twitchell** [1] - 50:14
**two** [16] - 6:17, 11:6, 14:8, 16:17, 16:18, 16:22, 18:3, 19:16, 23:25, 24:24, 25:22, 29:21, 36:1, 39:7, 42:14, 56:25
**type** [1] - 24:12

## U

**U.S** [2] - 9:20, 57:22
**unable** [1] - 56:25
**under** [29] - 5:17, 6:7, 6:9, 6:16, 6:17, 7:13, 8:18, 9:3, 9:4, 9:17, 9:23, 10:5, 11:11, 11:17, 15:12, 16:25, 17:3, 23:23, 29:4, 29:7, 34:5, 35:7, 35:8, 48:1, 57:14, 57:21
**understood** [2] - 18:1, 21:1
**undisputed** [1] - 39:21
**unethical** [1] - 31:15
**union** [25] - 4:13, 5:5, 6:11, 6:12, 6:20, 7:7, 7:11, 7:17, 9:9, 13:4, 13:18, 20:12, 20:16, 21:10, 33:12, 33:24, 34:3, 35:1, 36:15, 36:17, 41:10, 46:9, 47:24, 48:20, 50:21
**unique** [1] - 28:6
**Unit** [1] - 1:16
**UNITED** [2] - 1:1, 1:12
**unless** [3] - 4:16,

21:11, 34:17
**unpaid** [1] - 37:21
**unrepresented** [4] - 33:11, 37:15, 44:8, 46:22
**untenable** [1] - 11:5
**up** [11] - 3:22, 8:6, 11:16, 19:23, 24:20, 29:9, 32:22, 32:25, 34:3, 38:15, 39:19
**USB** [1] - 39:4
**USC** [2] - 35:4, 46:11
**usual** [1] - 56:11

## V

**valid** [1] - 16:1
**various** [1] - 32:25
**verbal** [1] - 46:6
**verbatim** [1] - 38:16
**version** [1] - 46:15
**versus** [3] - 3:7, 9:15, 57:22
**vested** [1] - 20:15
**via** [6] - 13:24, 31:19, 33:14, 39:4, 51:18, 51:19
**video** [1] - 29:17
**videographer** [2] - 28:16, 29:5
**violated** [2] - 30:23, 32:10
**violation** [9] - 13:25, 15:3, 15:19, 18:24, 19:2, 20:17, 30:22, 31:3, 35:4
**violence** [1] - 45:4
**virtually** [1] - 49:16
**volunteer** [6] - 36:14, 36:15, 37:8, 37:19, 37:20, 37:21
**volunteers** [1] - 36:18
**vs** [1] - 1:6

## W

**wait** [1] - 16:19
**waive** [2] - 46:1, 48:10
**waived** [2] - 48:6, 57:20
**Wallace** [5] - 9:14, 9:17, 12:9, 49:8, 50:13
**wants** [8] - 9:8, 9:11, 11:24, 12:20, 38:1, 38:3, 45:25, 53:12

**Washington** [1] - 1:21
**waste** [1] - 15:4
**wasteful** [1] - 16:5
**Waterfront** [1] - 45:4
**Wednesday** [2] - 52:8, 52:15
**week** [5] - 13:2, 17:1, 23:24, 25:12, 57:11
**weeks** [5] - 16:17, 16:18, 16:22, 17:6, 25:22
**welcome** [1] - 47:17
**wide** [1] - 35:1
**wife** [1] - 29:6
**witness** [33] - 13:7, 13:25, 14:4, 14:10, 16:19, 20:19, 23:25, 30:4, 30:8, 30:11, 30:25, 31:8, 31:10, 31:11, 31:25, 33:20, 34:21, 35:8, 35:18, 37:15, 44:18, 45:24, 50:25, 51:17, 55:15, 56:9, 58:7, 58:10, 59:6
**witnesses** [3] - 8:16, 12:23, 16:6
**woefully** [1] - 57:11
**words** [2] - 33:16, 33:24
**worry** [2] - 41:22, 43:25
**writ** [2] - 19:24, 35:12
**wrote** [2] - 49:7, 51:14

## Y

**year** [1] - 37:14
**years** [3] - 5:20, 15:21, 20:17
**yesterday** [2] - 13:24, 56:9
**York** [1] - 10:25

## Z

**Zoom** [17] - 33:14, 33:19, 34:7, 34:10, 39:9, 40:1, 40:2, 41:25, 42:1, 42:6, 44:17, 48:2, 49:1, 51:11, 51:18, 51:19