UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**LAWRENCE MEADOWS,**

    Plaintiff,                                     **CASE NO. 1:17-CV-22589-EA**

v.

**ALLIED PILOTS ASSOCIATION, *et al.*,**

    Defendants.

_____/

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION AND OTHER DISCOVERY ABUSES

Defendant Allied Pilots Association ("APA") files this response to Plaintiff's motion (ECF No. 187) for sanctions for alleged spoliation of evidence and "discovery obstruction." Plaintiff seeks a default judgment or an instruction to the jury that it should draw adverse inferences against APA. Plaintiff does not establish that APA spoliated evidence or engaged in any other form of discovery abuse, let alone engaged in the type of bad-faith destruction of evidence that is a prerequisite for the sanctions he seeks. Plaintiff's motion is another in a long line of motions—in this case and others—maligning the conduct of opposing counsel in an apparent attempt to gain a litigation advantage. The motion should be denied.

### BACKGROUND

Plaintiff is a former employee of American Airlines ("American") and a former member of APA (a labor union that represents the pilots at American) with a long history of suing American and APA—unsuccessfully—regarding his 2011 termination from American. *See Meadows v. Am. Airlines*, No. 1:24-CV-20518-DPG, 2024 WL 5248006, at *1 (S.D. Fla. Oct. 22, 2024), *report and recommendation adopted*, 2024 WL 5245945 (S.D. Fla. Dec. 30, 2024), *and appeal filed* (11th Cir.

1

Jan. 30, 2025) (noting at least "33 litigation matters" brought by Plaintiff, most concerning Plaintiff's termination from American). Plaintiff notified APA in 2013 that he would likely file a lawsuit against APA. *See* ECF No. 187, at 13-14. He filed a lawsuit against APA in the District of Utah in 2014, *see Meadows v. APA*, No. 2:14-CV-00115, 2015 WL 13650044 (D. Utah Apr. 27, 2015), *aff'g order*, 822 F. App'x 653 (10th Cir. 2020) (decision dismissing complaint); he filed a separate lawsuit against APA and American in the Northern District of Illinois in 2015, *see Meadows v. Am. Airlines*, No. 1:15-CV-03899, 2016 WL 4011231 (N.D. Ill. July 27, 2016) (decision dismissing complaint); he filed the initial complaint in this case in 2017, *see* ECF No. 1; and he filed an amended complaint in this case in 2018, *see* ECF No. 35.

      APA has taken appropriate precautions to preserve evidence relevant to this lawsuit. After receiving Plaintiff's 2013 notification, APA circulated a memorandum instructing the recipients to preserve all documents related to Plaintiff. Myers Decl. ¶ 4 & Exh. A. The memorandum was sent to a list of recipients whom APA reasonably believed could potentially possess information relevant to the potential litigation identified in Plaintiff's 2013 notification. *Id.* ¶ 5. After Plaintiff initiated this lawsuit, APA recirculated that memoranda at least four times—on August 18, 2017, November 17, 2017, March 2, 2018, and August 1, 2019—instructing recipients to preserve documents related to Plaintiff. Myers Decl. ¶ 6 & Exhs. B-E. Again, APA sent the memoranda to recipients whom APA reasonably believed could potentially possess information relevant to Plaintiff's claims. *Id.*

A. **Discovery in this Case**

This case was stayed from November 1, 2018, through March 11, 2025.[1] *See* ECF Nos. 37, 50. After the stay was lifted, Plaintiff sought discovery regarding events that took place between 2022 through 2025, well after the filing of the amended complaint in 2018 and the events alleged therein. *See, e.g.*, ECF Nos. 100-2–100-9 (third-party subpoenas). In response, APA filed a motion for a protective order for a temporal limit on Plaintiff's discovery to limit discovery to events related to the claims alleged in the amended complaint. ECF No. 100, at 8-10. Magistrate Judge Reid granted the motion and entered a protective order that limited Plaintiff's discovery to the period before 2022, concluding that "limiting post-Amended Complaint discovery to the years of 2018 to 2021 is reasonable and proportional to the needs of the case." ECF No. 138, at 13.

APA subsequently produced documents in response to Plaintiff's discovery requests. After receiving the documents, Plaintiff sent an email to APA's counsel claiming that APA had failed to produce responsive text messages or Telegram messages. In response, APA's counsel explained that as part of the process of collecting documents responsive to Plaintiff's requests for production, counsel for APA had "conducted extensive custodian interviews of current APA custodians—i.e., individuals who are currently employed or hold a position with APA." ECF No. 187, at 18. APA's counsel further explained that "[t]hose interviews included performing targeted searches on individuals' phones for text messages," and through that process, APA determined that it "does not possess any text messages or Telegram messages that were responsive to the document requests in this matter during the relevant period." *Id*.

---

[1] APA circulated another litigation hold memorandum on March 31, 2025, after the stay was lifted and it appeared that Plaintiff might attempt to pursue additional claims based on post-2018 events that took place while the case was stayed. Myers Decl. ¶ 7 & Exh. F.

B.     **Former President Ed Sicher's APA-Issued Laptop**

Ed Sicher was president of APA from July 1, 2022, until he was recalled by the APA board of directors on October 7, 2024. Myers Decl. ¶ 8. Mr. Sicher previously had been an APA domicile representative *Id*. There are no allegations in the amended complaint pertaining to Mr. Sicher's tenure as president, which post-dates the Amended Complaint by several years.

APA provided Mr. Sicher with a laptop for his use as president in June 2024. Larussa Decl. ¶ 7. When Mr. Sicher's affiliation with APA ended on October 7, 2024, APA decommissioned the laptop. *Id.* ¶¶ 12-13. Under the document retention practices in place during that period, APA automatically tagged all association-issued accounts (alliedpilots.org) with "Legal Hold" status, which meant that emails and documents on Mr. Sicher's APA-issued laptop were by default retained virtually by APA for a period of 50 years and could not be permanently deleted by Mr. Sicher, even through standard deletion processes. *Id.* ¶ 8(a)-(b).

After Mr. Sicher 's presidency ended, he informed APA that he wished to retain his APA-issued computer for his personal use. *Id.* ¶ 12. APA permits departing APA members who have served in a union capacity (e.g., an APA member serving in an elected or appointed position within APA), in some circumstances, to keep their APA-issued computers after that computer is decommissioned. *Id.* ¶ 9. The departing serving member may choose to physically bring the laptop computer to the APA service desk, where technicians work with the former serving member to securely wipe the laptop, remove partitions, and reformat the drive. *Id.* ¶ 10. The device is then returned to its original Windows pre-installation state and physically handed back to the departing serving member. *Id.* The purpose of that process is to ensure that members who are no longer serving in an APA position do not retain access to confidential APA information and systems or software licensed by APA. *Id.* ¶ 11. Consistent with that practice, after Mr. Sicher informed APA

4

that he wished to retain his APA-issued computer, Mr. Sicher brought his computer to the APA service desk, and APA technicians worked with Mr. Sicher to process the laptop so that Mr. Sicher could retain the laptop for his personal use. *Id.* ¶ 13; Rust Decl. ¶ 5. The technicians obtained Mr. Sicher's permission and then securely wiped the laptop, removed partitions, reformatted the drive, and returned the laptop to Mr. Sicher. Rust Decl. ¶¶ 4-5. Given APA's document retention practices, that process would have only deleted the APA emails or documents from the laptop and not from APA systems; as noted, those APA emails or documents that were on the laptop, would have been retained virtually by APA and accessible for a period of 50 years. *Id.* ¶ 6; Larussa Decl. ¶ 14.

## LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009). Federal Rule of Civil Procedure 37(e) "authorizes and specifies measures a court may employ if [electronically stored] information that should have been preserved is lost, and specifies the findings necessary to justify these measures." Fed. R. Civ. P. 37 advisory committee's notes (2015). Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." *Id.*; *see also Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312 n.18 (11th Cir. 2023).

Under Rule 37(e), "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," a court "may" enter a default judgement or instruct the jury to draw an adverse inference against the spoliating party but "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). The Eleventh Circuit has held that "the

5

'intent to deprive another party of the information's use in the litigation' is the equivalent of bad faith in other spoliation contexts." *Skanska*, 75 F.4th at 1312. "The phrase 'intent to deprive' naturally requires that the spoliator has a 'purpose of hiding adverse evidence' from other parties," which "is more than negligence or even gross negligence." *Id.*; *see Breedlove v. Hill*, No. 24-CV-11579, 2025 WL 1906057, at *2 (11th Cir. July 10, 2025) ("Without evidence of nefarious intent, a district court cannot impose the severe default-judgment sanction.").

## ARGUMENT

Plaintiff's spoliation motion is entirely meritless. Plaintiff has not demonstrated that relevant electronic information has been lost, let alone that it has been lost because APA failed to take reasonable steps to preserve electronic information with the intent to deprive Plaintiff of the information for use in this litigation, a prerequisite to the relief Plaintiff seeks here, a default judgment and an adverse-inference instruction. Plaintiff appears to assert four grounds for finding that APA acted in bad faith, but none withstands scrutiny. APA has never acted with the nefarious intent to destroy or fail to preserve evidence to deprive Plaintiff of evidence for us in this case. To the contrary, APA has taken appropriate, reasonable steps to preserve electronic information relevant to Plaintiff's lawsuit.

1. Plaintiff's principal contention (ECF No. 187, at 1-2, 3-4, 5) is that the "wipe" of the laptop that APA provided to Mr. Sicher during his presidency is evidence of APA's bad faith. Plaintiff asserts that "APA's act of wiping clean a key custodian's laptop hard drive after his ouster is an affirmative act of destruction for which there is no innocent explanation." *Id*. at 5. According to Plaintiff, "[t]he only plausible reason is to destroy unfavorable evidence," and "[t]his intentional, bad-faith conduct has irreparably prejudiced Plaintiff, who has been deprived of years of communications from APA's highest officer." *Id.*

6

Plaintiff's arguments are frivolous. APA's "wipe" of the APA-issued laptop that Mr. Sicher used during his presidency did not—and was certainly not intended to—destroy information relevant to Plaintiff's lawsuit. As an initial matter, documents from Mr. Sicher's presidency between 2022 and 2024 are not relevant to the 2018 amended complaint in this case, as the protective order entered by Magistrate Judge Reid confirms. *See* ECF No. 138. Regardless, as described above, the emails and documents on Mr. Sicher's laptop at the time of the wipe were retained for fifty years, not destroyed. The wipe was a part of a routine process that APA follows when an APA member leaves a union position and is permitted to retain an APA-issued computer for personal use. The wipe did not destroy APA-related documents from the computer given the practices adopted by APA's IT department, which ensured that emails and documents from the computer would have been retained virtually and available to APA for a period of 50 years. Plaintiff does not provide any contrary evidence supporting his conspiratorial allegation of intentional document destruction. To the contrary, the declaration from Mr. Sicher that Plaintiff submitted in support of his spoliation motion undermines his claims, stating that "the electronic documents generated during the time of [his] Presidency, if they still exist, reside on APA's servers . . . ." ECF No. 187, at 11. Plaintiff lacks a good-faith basis to file a motion claiming intentional, bad-faith document destruction by APA.

2. Next, Plaintiff contends (*id*. at 1, 3, 4-5) that APA's bad faith is demonstrated by the fact that Ed Sicher did not receive a notice from APA to preserve documents relating to Plaintiff while he (Mr. Sicher) served as an APA officer. This argument is also without merit. APA's preservation efforts—which included circulating hold memoranda to multiple recipients on several occasions between 2013 and 2019—refute the suggestion that APA intended to deprive Plaintiff of evidence relevant to his lawsuit. APA reasonably sent litigation-hold memoranda to individuals

7

APA believed could potentially possess information relevant to Plaintiff and the claims raised by Plaintiff. Although Mr. Sicher interacted with Plaintiff on behalf of APA during his presidency between 2022 and 2024, it was reasonable for APA not to include Mr. Sicher as a recipient of a hold memo for litigation about events that long pre-dated Mr. Sicher's presidency. Indeed, the demand that Plaintiff himself sent APA in 2013, which listed numerous individuals as allegedly possessing information relevant to Plaintiff, did not list Mr. Sicher. *See id*. at 13.

Plaintiff's spoliation argument also fails on its own terms. According to Plaintiff, APA's failure to send a hold notice to Mr. Sicher amounted to "gross negligence." *Id*. at 1, 5. Plaintiff's characterization of APA's conduct is entirely unfounded; as discussed above, APA took reasonable and proportional measures to preserve documents in light of Plaintiff's claims. But regardless, even if APA's conduct arose to gross negligence, which it did not, gross negligence does not establish bad faith for purposes of requesting a default judgment or adverse-inference instruction under Rule 37(e). *See Skanska*, 75 F.4th at 1312.

3. Third, Plaintiff asserts (ECF No. 187, at 2-3) that APA's bad faith is evidenced by an allegedly "false" statement from APA's counsel (Joshua Shiffrin) that APA does not possess text messages responsive to Plaintiff's discovery requests. Mr. Shiffrin's statement, however, was entirely accurate. As Mr. Shiffrin explained, counsel for APA "conducted extensive custodian interviews of current APA custodians—i.e., individuals who are currently employed or hold a position with APA"— and determined that APA "does not possess any text messages or Telegram messages that were responsive to the document requests in this matter during the relevant period." *Id*. at 18. That statement was correct.

Plaintiff claims (*id*. at 3) that this statement was "false" because he (Plaintiff) possesses text messages from individuals at APA showing that those individuals conducted APA business

over text. But all but one of the text exchanges submitted by Plaintiff to support this claim of falsity is dated between 2022 and 2025. *See id.* at 22-26. Mr. Shiffrin made clear—in language conspicuously omitted from Plaintiff's motion—that APA did not possess text messages from "the relevant period." *Id.* at 18. Given the protective order imposing a temporal limit on Plaintiff's discovery, *see* ECF No. 138, at 13, the "relevant period" is prior to 2022. Plaintiff's possession of text messages from the period between 2022 and 2025 does not in any way establish that Mr. Shiffrin made a false statement.

The single text exchange submitted by Plaintiff from within the relevant period also does not undermine Mr. Shiffrin's statement. Plaintiff provides a brief text exchange between himself and Pat Clark from 2021. *See* ECF No. 187, at 25. That text exchange on its face does not appear to have any material connection to Plaintiff's litigation against APA, and APA does not have any other basis to conclude that Mr. Clark is a custodian of documents responsive to Plaintiff's request for documents in this case. Mr. Clark became Secretary-Treasurer of APA in July 2019 and as of July 2025 did not hold any office or position at APA. Myers Decl. ¶ 9. There are no allegations regarding Mr. Clark in the Amended Complaint, Mr. Clark was not listed on any party's initial disclosures, and APA is not otherwise aware of any connection between Mr. Clark and Plaintiff's claims against APA that would make him a likely custodian of relevant information or documents. *Id.* The text messages between Plaintiff and Mr. Clark accordingly do not undermine Mr. Shiffrin's statement that APA does not possess text messages responsive to the document requests in this matter during the relevant period, let alone establish that Mr. Shiffrin's statement was false and intended to deprive Plaintiff of relevant evidence.[2]

---

[2] Moreover, at the time Plaintiff made requests for documents from APA in this lawsuit, Mr. Clark no longer held any office or position at APA, *see* Myers Decl. ¶ 9, and therefore APA had no custody or control over any text messages on Mr. Clark's personal phone.

9

4. Finally, Plaintiff claims (ECF No. 187, at 4) that a "pattern of bad-faith discovery tactics" is evidence that APA spoliated evidence in bad faith. These claims are also baseless.

a. Plaintiff asserts (*id.*) that APA has produced documents in a manner that is intended to impede his ability to litigate this case. APA has discussed at length its production of documents. *See* ECF No. 178, at 1-2; ECF No. 185, at 5-6. As APA has explained, its document production fully conforms with the Federal Rules of Civil Procedure and is consistent with common and accepted electronic discovery practices. *See* ECF No. 185, at 2-3, 5-6.

b. Plaintiff claims (ECF No. 187, at 4) that APA's production of approximately 24 documents on January 21, 2026, was intended to "ambush" him before a deposition of Mark Myers. This claim is meritless and was aired before Magistrate Judge Reid at a hearing on February 10, 2026. In short, while finalizing a privilege log, it came to APA's attention that 24 non-privileged documents had inadvertently not been included with APA's previous productions. APA accordingly provided those documents to Plaintiff in an email sent at 10:05 a.m. EST on January 21, about an hour before the two-day deposition of Mark Myers commenced. Plaintiff had ample time to review the documents for purposes of questioning Mr. Myers between January 21 and January 22 and indeed made use of several of the documents during the deposition on January 22.

c. Plaintiff claims (*id.*) that APA failed to produce documents regarding attorney Sue Edwards and his litigation with American Airlines in 2024. Plaintiff's litigation with American in 2024 is unrelated to the allegations in Plaintiff's 2018 amended complaint in this case and outside the temporal scope of discovery permitted in this case. A claim that APA acted in bad faith by failing to produce documents from 2024 is frivolous.

\* \* \*

Plaintiff's spoliation motion is just his latest gambit to gain an advantage through impugning opposing counsel. Plaintiff has flooded the Court and APA with unfounded, baseless accusations that APA's lawyers have engaged in unethical, sanctionable, and even criminal conduct. *See, e.g.*, ECF Nos. 103, 109, 110, 118, 120, 121, 134, 137, 142, 144, 148, 155, 156. Plaintiff's filings accusing opposing counsel of misconduct fit an established pattern that Plaintiff has employed in other litigation. *See* Pl.'s Mot. and Mem. for Rule 60(b) Relief to Set Aside Order and Final Summ. J., *Meadows v. APA*, No. 2:14-CV-00115 (D. Utah Aug. 31, 2016), ECF No. 60, at 3, 7-12 (seeking sanctions against opposing counsel for alleged misrepresentations to court "in a bad faith attempt to obtain an ill-gotten judgment against Meadows"); Pl.'s Mot. and Mem. for Rule 60(b) Relief to Set Aside Order and Final Summ. J., *Meadows v. Am. Airlines*, No. 1:10-CV-22175-CMA (S.D. Fla. Mar. 20, 2014), ECF No. 89, at 4, 20 (accusing opposing counsel of a "penchant for continued unethical conduct" and "ignor[ing] its duty of candor towards this tribunal"); Am. Mot. to Intervene, *EEOC v. Am. Airlines*, No. 2:17-CV-04059 (D. Ariz. Apr. 2, 2018), ECF No. 12, at 13, 25, 27 (in seeking intervention, claiming that the "[p]arties have engaged in an egregious bad-faith effort to mislead this Court" and accusing the EEOC of "attempt[ing] to mislead this Court" and a "conflict of interest"); *see also In re AMR Corp.*, No. 1:11-BK-15463, 2022 WL 362919, at *4 (Bankr. S.D.N.Y. Feb. 7, 2022) (explaining that "the continuing blitz of litigation filed by Mr. Meadows in these cases has become a burden upon the Court's judicial resources"). Plaintiff's accusations and multiple, repetitive filings are vexatious, impose an undue burden on APA and the Court, and are without merit. Plaintiff's vexatious spoliation memo is likewise meritless and should be denied.

## CONCLUSION

Plaintiff's motion for a default judgment or an adverse inference instruction based on alleged spoliation of evidence (ECF No. 187) should be denied.[3]

                                                Respectfully submitted,

                                                */s/ Andrew Dymowski*
                                                Andrew Dymowski, Esq.
                                                Florida Bar No.1058209
                                                Capri Trigo, Esq.
                                                Florida Bar No. 28564
                                                GORDON REES SCULLY MANSUKHANI
                                                Miami Tower
                                                100 S.E. Second Street, Suite 3900
                                                Miami, Florida 33131
                                                Telephone: (305) 428-5309
                                                Email: ctrigo@grsm.com

                                                */s/ Joshua B. Shiffrin*
                                                Joshua B. Shiffrin*
                                                John M. Pellettieri*
                                                Lane M. Shadgett*
                                                BREDHOFF & KAISER PLLC
                                                805 15th Street NW, Suite 1000
                                                Washington, D.C. 20005
                                                Telephone: (202) 842-2600
                                                Email: jshiffrin@bredhoff.com
                                                Email: jpellettieri@bredhoff.com
                                                Email: grybak@bredhoff.com
                                                *Admitted *Pro Hac Vice*

---

[3] Plaintiff also seeks (ECF No. 187, at 6) reversal of the protective order limiting the temporal scope of discovery in this case and attorneys' fees. The protective order (ECF No. 138) is unrelated to the spoliation claims raised here, and attorneys' fees are not available to a pro se litigant. *See Massengale v. Ray*, 267 F.3d 1298, 1303 (11th Cir. 2001) (concluding that attorneys' fees are not available to a pro se litigation as a sanction for violating Federal Rule of Civil Procedure 11). Plaintiff has indicated that he consults with a lawyer in connection with this case. Setting aside the propriety of those consultations, *see, e.g.*, *Garcia v. Thor Motor Coach, Inc.*, No. 1:16-CV-20230-JEM, 2016 WL 9376014, at *5 (S.D. Fla. Oct. 13, 2016), *report and recommendation adopted*, 2017 WL 3112818 (S.D. Fla. Jan. 31, 2017) (explaining that Florida ethical rules limit a lawyer's ability to assist a pro se litigant with pleadings without entering an appearance), no attorney has appeared for Plaintiff in this case and thus Plaintiff's consultation with a lawyer does not provide a basis for attorneys' fees.

*Counsel for Defendant Allied Pilots Association*

Dated: February 18, 2026

13