UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 17-22589-ARTAU


LAWRENCE MEADOWS,                          Miami, Florida

            Plaintiff,                     February 10, 2026

        vs.                                9:40 a.m.

ALLIED PILOTS ASSOCIATION,
et al.,

            Defendants.          Pages 1 to 81
_____


DISCOVERY HEARING
(TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)
BEFORE THE HONORABLE LISETTE M. REID,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:


FOR THE PLAINTIFF:       LAWRENCE MEADOWS
                         (Appearing *Pro Se*)
                         1900 Sunset Harbour Drive
                         Unit 2112
                         Miami Beach, Florida 33139


FOR THE DEFENDANTS:      JOSHUA B. SHIFFRIN, ESQ.
                         JOHN M. PELLETTIERI, ESQ.
                         BREDHOFF & KAISER, PLLC
                         805 15th Street, Northwest
                         Suite 1000
                         Washington, D.C. 20005

                         ANDREW J. DYMOWSKI, ESQ.
                         GORDON, REES, SCULLY & MANSUKHANI
                         100 Southeast Second Street
                         Suite 3900
                         Miami, Florida 33131

APPEARANCES, CONT'D:

FOR NON-PARTY          MARK W. ROBERTSON, ESQ.
MARJORIE POWELL:       O'MELVENY
                       1301 Avenue of the Americas
                       Suite 1700
                       New York, New York 10019


TRANSCRIBED BY:        LISA EDWARDS, RDR, CRR
                       Reporterlisaedwards@gmail.com
                       (305) 439-7168

THE COURT:  Good morning.

So we're here to discuss some issues in Case No. 17-22589.

Let's start with appearances from counsel.

THE PLAINTIFF:  Your Honor, Lawrence Meadows, appearing on behalf of the myself *pro se* as a Plaintiff.

THE COURT:  Okay.  Mr. Shiffrin, you're still muted.

MR. SHIFFRIN:  I apologize, your Honor.  Good morning.  Joshua Shiffrin on behalf of Defendant, APA.  With me is my colleague John Pellettieri and our local counsel, Drew Dymowski.

THE COURT:  Okay.  Very good.

MR. ROBERTSON:  Good morning, your Honor.  Mark Robertson, appearing on behalf of nonparty Marjorie Powell.

THE COURT:  Okay.  Very good.

So let's start with that issue with regard to Marjorie Powell.  There's a couple of things that I need to start to address.

So, Mr. Meadows, I've noticed that the subpoena that you have sent to Marjorie Powell is not signed by the Clerk of the Court, so it's not a properly issued subpoena.  Are you aware of that?

THE PLAINTIFF:  I believe it was stamped by the clerk, your Honor.

THE COURT:  The one that I have here that we've

received -- I guess it's attached to some document that you must have submitted -- it has no signature by the Clerk of the Court.

THE PLAINTIFF: I don't believe that's correct, your Honor. But I can pull it up while we're talking here and find it for you.

THE COURT: Why don't you go ahead and do that.

THE PLAINTIFF: Okay.

THE COURT: So that's the first thing I'm seeing. Apparently, the Administrative Office of the Court has a requirement that *pro se* litigants -- that the Clerk of the Court will not be signing -- does not sign subpoenas *duces tecum* for *pro se* litigants without the permission of the Court. So that's what I've been told by the clerk's office here, and perhaps that's why it's unsigned.

THE PLAINTIFF: No. I -- every subpoena I've served in this matter, your Honor, has been signed by the clerk, always by Angela Noble, the stamp, and sealed. So I don't know what copy they have. But I'm pulling it up right now. Stand by, please.

THE COURT: Okay. Rocio -- I'm speaking to my law clerk. So I have the list -- I have on the email that you sent me yesterday all of these documents, one including the subpoena. Do you know where that subpoena attachment came from?

THE LAW CLERK:  Judge, it came from an email before I scheduled the hearing that Mr. Robertson sent.  I can forward you that email.

THE COURT:  Okay.  So the one that -- it's the email from Mr. Robertson.

So, Mr. Robertson, do you have the subpoena?

MR. ROBERTSON:  I have it in my email, yes, your Honor, that I sent it.  And I should have a hard copy here as well.  And I just forwarded the copy that Mr. Meadows has provided to us.

THE COURT:  Okay.  So under -- at signature of clerk or deputy clerk, there's nothing.

THE PLAINTIFF:  Your Honor, I'm still looking.  I didn't have that -- I apologize.  I didn't have this out.  I'm searching for the process server's copy.

THE COURT:  Okay.  So I can tell you that the one Mr. Robertson has that he's forwarded to us has no signature.  So we'll start with that.

But then the next -- the next matter to be discussed on that is, of course she's the attorney for the -- or was an attorney for the Defendants in this case.  So naturally, there's an attorney-client privilege.  How are you overcoming that privilege?

THE PLAINTIFF:  Your Honor, Mr. Robertson and Mr. Shiffrin both leave out a lot of context in this matter.

I personally met with Marjorie Powell in February of 2014 in her office in an attempt to resolve my differences. The company joined an open-door policy created by the new CEO, Doug Parker.  We spoke for over an hour.  And she basically told me that -- she's very pleasant-like.  She said she'd like to settle the matter.

I said, Well, I'm working to get my FAA medical certification.

She told me, We're not putting you back in [indiscernible].

When I asked her why, she said, We're just not.

I asked her about my travel benefits.

And she said I don't deserve them because I sued the company and filed a whistleblower complaint.  And she said, I think you missed your calling.  You should take a settlement and go back to law school.

We spoke for an hour.  I got a personal cell phone, an email.  And we attempted to negotiate for the next 15 months. It resulted in a mediation between myself as *pro se*, APA's general counsel on the phone.  Ms. Guio [phonetic] was on the phone also.  Ms. Powell was in the room with outside counsel from Atlanta, Todd Duffield, and a mediator in Salt Lake City. The mediation went for, like, eight hours.

And we ended up [indiscernible] the settlement, its stock valued -- this has been disclosed by Mr. Robertson in

other public proceedings as a matter of public record -- with a stock value of about $1.1 million.  And the other promise was they'd continue my disability benefits to retirement, but they wouldn't put that component in writing.

And I -- we had some discussions back and forth.  And Ms. Powell assured me she contacted the third-party disability plans administrator and assured me my claim would be hands-off.

However, that gave me great pause and concern because I was personally aware of her fraudulent inducement with Captain Osterman in a similar settlement the month prior, where she agreed to settle all his claims and return him back to duty.  And once he produced his medical certificate, she went behind his back and wrote a letter to the [indiscernible].  She had the corporate medical records signed stating he could not reinstate [indiscernible] firing.

Fortunately, he was successful in overcoming that and returned to work.

But this is part of a pattern and practice of Ms. Powell with pilots like me.  And there's no privilege.  I dealt directly with this woman for 15 months.  So there's -- that's where I think you're confused in this matter.  Especially in the union.  If you return as a union or a surrogate union representative, fiduciaries, they deal directly with members like me with many issues.

And this matter, because the union wasn't processing my

grievance, I had to take matters in my own hands and deal directly with management of the corporation and the attorneys. We had litigation pending.  I was trying to resolve all my claims with American.

So I just wanted to be clear on that, that I had a really longstanding with this woman, and it would have resulted in a settlement but for the fact that a week after this mediation, when I accused her of fraudulently inducing Captain Osterman, my disability benefits suddenly were suspended again, which --

THE COURT:  Okay.  So let me see if I understand what you just said.

You met with her.

THE PLAINTIFF:  Yes.

THE COURT:  When you met with her, she was representing the APA.  Correct?

THE PLAINTIFF:  No.  She was representing American Airlines.

THE COURT:  She was representing American Airlines.  Okay.

THE PLAINTIFF:  Yes.

THE COURT:  So she does not represent the APA?

THE PLAINTIFF:  Not at all.

THE COURT:  So she's an attorney for American Airlines. And you met with her and discussed a settlement when you were

suing American Airlines?

THE PLAINTIFF:  Not a settlement.  We discussed my disability benefits litigation.  They terminated my disability benefits, which I've since recovered --

THE COURT:  Yeah, but what I -- what I'm trying to understand is this:  You personally met with her.  She was an attorney for American Airlines.

THE PLAINTIFF:  Yes.

THE COURT:  How does that overcome her privilege?

THE PLAINTIFF:  There's no privilege, your Honor.  I -- she had direct, one-on-one negotiations with me directly in this matter.

Now, Mr. Shiffrin --

THE COURT:  So are you going to be asking her about things she said to you during that negotiation?

THE PLAINTIFF:  No.

THE COURT:  No?

THE PLAINTIFF:  What I think is relevant is, she is a prime rebuttal witness, because Mr. Shiffrin has opened the door.  He's questioning communications between myself and Ms. Powell and also with Mr. Robertson.  And they're trying to taint my character and impugn me and make me look hostile and threatening.  And I need to overcome that.

So I just want you to be aware, I spoke to Mark Robertson prior to this hearing.  We met and conferred.  I

offered to postpone the deposition until such time as this hearing happens.  And I offered to do it remotely.

She feigns that she has no recollection of the events over the last decade, yet she somehow recalls my voicemail to her 16 years ago -- or 15 -- 11 years ago.

So --

THE COURT:  And what is it that you want to question her about?

THE PLAINTIFF:  Well, I want a rebuttal, because they are using her to attack my character.

Now, Mr. Shiffrin --

THE COURT:  Excuse me.  I'm sorry.  That didn't answer my question.

What exactly do you want to ask her?

THE PLAINTIFF:  I want to ask her about the context of our conversations, what led to it, because they're trying to paint me as if I physically threatened her somehow.

THE COURT:  A conversation that you had with her and she felt threatened?

THE PLAINTIFF:  No.

THE COURT:  That's what you --

THE PLAINTIFF:  A voicemail I left her and letters I sent her.  And I was putting her on notice that I was going to take professional action and litigation because they terminated my benefits after this alleged mediation.

THE COURT:  And how is that relevant?

THE PLAINTIFF:  Mr. Shiffrin wants to use her to impugn my character.  And I need to rebut that testimony.

Now, I asked Mr. Shiffrin --

THE COURT:  And do you think if you asked her about the phone message that somehow that will rebut the --

THE PLAINTIFF:  Yeah.  I want to put it in context. She's relevant -- not to mention, in this lawsuit, we're talking about grievances, a purported termination from the seniority list, all traded by a letter written by her given to me by Administrator Scott Hansen to end-run the contractual process for Section 21 of the collective bargaining agreement.

Instead of terminating me with the official notice of my chief pilot supervisor, as is mandatory under the CBA and as is -- has been testified by America's managers match the CBA, Ms. Powell wrote a letter, had the director or administration sign it and send it to me and purported to remove me from the seniority list and terminate me and threatened if I didn't get a [indiscernible] my appointment would end.

So she triggered this whole lawsuit by her conduct of fabricating these type of letters, interfering in my case with the termination process.  She deprived me of my due process under Section 21 of the collective bargaining agreement.  So she's a total relevant fact witness in this case.

But first and foremost, I wanted to depose her as a

rebuttal witness because Mr. Shiffrin's insisting on using her to attack my character.  So he's using her to attack my character, and it's really unfair.  So I asked Mr. Shiffrin if he stipulates to striking any communications or conversations with her or Mr. Robertson, that I will stipulate.  You know, if they strike that line of questioning in my deposition, the evidence in the record, I won't depose her.  But he refused to do so.

THE COURT:  Okay.

THE PLAINTIFF:  So he can't have it both ways.  They can't protect her on privilege as an attorney and use her to attack my character.  It's grossly unfair.

But I will argue on both grounds that, one, she's a necessary rebuttal witness at this juncture and, number two, she is a percipient fact witness.  I've submitted a declaration from myself and from Captain Brian Osterman.

And if you've read them, you'll see there's a pattern of conduct with her with fabricating these type of letters and interfering in the return to work of former disabled pilots the company does not want back either because they were deemed to be a problematic employee, because they've sued the company or they were a whistleblower or a safety reporter in some --

THE COURT:  Okay.  So the facts -- when you're saying she's a fact witness, these are facts which occurred in the course of her representation of American Airlines?

THE PLAINTIFF:  No.  It's -- she was dealing directly with me.

THE COURT:  Well, yes.  On behalf of whom?  Because she --

THE PLAINTIFF:  American Airlines.  The union was cut out of the process.

THE COURT:  Okay.

THE PLAINTIFF:  The notice --

THE COURT:  So she was representing American Airlines when she was dealing with you?

THE PLAINTIFF:  Yes, she was, ma'am.

THE COURT:  Okay.  Thank you.

THE PLAINTIFF:  But she was dealing with me.  So our conversations were not privileged or ultimately [indiscernible] for 15 months --

THE COURT:  Okay.

THE PLAINTIFF:  -- including the mediation.

THE COURT:  All right.  Thank you.

Mr. Robertson, I'll give you an opportunity to respond.

MR. ROBERTSON:  Yes.  If I could respond to a couple of the points that Mr. Meadows has made.

Ms. Powell is and has been an in-house attorney at American.  Her only interactions with Mr. Meadows were representing American in litigation that Mr. Meadows filed.

In 2015, he left a voicemail for Ms. Powell after a

litigation he had that didn't get resolved in mediation that Ms. Powell and that American both found threatening.

He suggested that if she didn't settle the litigation, it would be poisonous to her career, that she would be gone from American by the end of the year, that he was after her big time and that others were as well.

It had nothing to do with this lawsuit.  It was separate, unrelated to litigation.

American subsequently obtained an injunction against Mr. Meadows in the Southern District of New York.  And it obtained an injunction that prohibited Mr. Meadows from suing American related to his termination or removal from the pilot seniority list and it prohibits him from contacting any American employees regarding his litigation because of his communications.

And the Southern District of New York actually cited that voicemail as an example of a communication that was, quote, "unprofessional at best and threatening at worst."

So it's not just Ms. Powell's view that it was threatening or American's, but at least one federal judge found it was, quote, "unprofessional at best and threatening at worst."

Mr. Meadows has also sued Ms. Powell personally based on her role as an in-house attorney.  That lawsuit was subsequently enjoined and we were able to get Ms. Powell

dismissed.

But it's the kind of action where he takes personal actions against individuals that cross paths with him, even if they're in their role as an attorney.

Ms. Powell has not had any interactions with Mr. Meadows for more than a decade because after he left the threatening voicemail, after he sued her personally, American removed her from all matters that would require communicating with him in her role as an attorney.

I think that the biggest part of all this, though, is that when you're dealing with a nonparty and you're looking at the [indiscernible] and the threats and the personal lawsuits and all that, you also have to put it against the relevance.

This is a lawsuit Mr. Meadows has against APA.  It is not against American, his termination from American, that has been litigated across the country in more courts than I can name.  He has an injunction pursuing him -- from pursuing that litigation.

That is not what this case is about.  We have represented to Mr. Meadows and this Court that Ms. Powell does not recall ever interacting ever with anyone at APA, either about Mr. Meadows or about any of his grievances.  The basis of his lawsuit against APA is that, you know, they didn't protect his seniority rights, they didn't pursue his grievance.

American's not a party to this lawsuit.  He's had --

it's not as if he hasn't had a day in court with American. He's had it repeatedly.  There was a decision.  We just finished litigating in the Southern District of Florida, and it's on appeal to the Eleventh Circuit right now.  And it was a motion to dismiss that the Court granted and dismissed it with prejudice.  He's sued around the country over this.

The other thing, he keeps saying he needs to do it to rebut it because apparently in his depo -- and I'll [indiscernible], obviously -- but the APA put the voicemail that -- confronted him or asked him about it.  And he wants to use that to rebut that.

But I think that is backwards.  I mean, Ms. Powell is going to testify she found it threatening.  We've already told that to the Court.  If he wants to rebut that, it would come from him or other people.  It wouldn't come from Ms. Powell.

But I think if you look at the relevancy of kind of where this fits in this case, it's so many tiers down.  Every interaction -- any interaction from the time she met Mr. Meadows to, you know, a decade ago, which was the last one, would have been in her role as an in-house attorney.  It would be privileged.

Courts in the Eleventh Circuit hold that if there's -- kind of an immediate tilt not to get into the position of an attorney, and only simply do so if the party demonstrates not only the relevance of the information, but the information

cannot be obtained elsewhere.

There's not even any information that she has, your Honor.

And his other justification is, you know, these facts or interactions with him were more than a decade ago.  That is -- that is many, many degrees removed from the basis of his claims against APA that are pending before this Court, your Honor.

THE COURT:  All right.  Thank you very much, Mr. Robertson.

Mr. Shiffrin, did you have anything that you needed to add?

MR. SHIFFRIN:  Yeah.  I just -- I'll say, we don't -- APA doesn't have a position on whether Mr. Meadows should get to depose Ms. Powell.

Just in terms of where the voicemail fits into the APA's case and the relevancy of it, one of the things that Mr. Meadows contends is that APA should have done more to help him get his job back.  And what the evidence shows is that APA made multiple requests to American for him to get his job back and American exercised its discretion to not bring him back.  And we posit that one of the reasons why American has done so is because of this threatening voicemail that Mr. Meadows left for one of its attorneys.

There's no dispute that he left the voicemail.  He said

so in his deposition.  And there's no dispute that American found it threatening.

So I don't -- from APA's point of view, that's all that's relevant to the lawsuit.  And that evidence can stand, whether or not Ms. Powell is deposed.  But it's -- this is a dispute between Mr. Meadows and Mr. Robertson -- not Mr. Robertson, but Ms. Powell and American.

THE COURT:  Okay.  I just wanted to understand how it fit in at all to this litigation.

MR. SHIFFRIN:  Yeah.

THE COURT:  And so you've explained that there's some -- this came up somehow during a deposition.  Is this something that you intend to include in the case, in the presentation of the case?

MR. SHIFFRIN:  Yes.  I mean, I do intend to argue that --

THE COURT:  That it was American's decision?

MR. SHIFFRIN:  Yeah.  The APA couldn't have done more to get Mr. Meadows his job back.  They made a request to American.  American made a decision to not bring him back.  And I think that anybody could understand this when you see the way that Mr. Meadows has behaved towards people at American Airlines.

THE COURT:  Okay.  All right.  Thank you very much.

So, Mr. Meadows, based on the review of this case and

the case law that --

THE PLAINTIFF:  Your Honor, your Honor, if I may, could I rebut Mr. Shiffrin, please?

THE COURT:  Oh, if --

THE PLAINTIFF:  I think I'm entitled to a rebuttal to Mr. Robertson and Mr. Shiffrin, please.

THE COURT:  Okay.  I'll give you a few minutes.  Go ahead.

THE PLAINTIFF:  Okay.  First of all, Mr. Robertson mischaracterizes the injunction.

APA failed to timely preserve my Sarbanes-Oxley claim and APA claim in the bankruptcy.

My claims against American relate to my pre-petition termination or removal from the seniority list were discharged due to being untimely.  And they were both in my brief as 1211, which is the substance of this matter.  And Judge Lane denied them as untimely.

Of course I've litigated in many forums trying to get my profession back and my career, because my union has failed to do so.

I only introduce evidence that APA's legal director, Jim Clark, has worked hand -- I quote -- hand in glove with Leticia Guio, blocking my return to American Airlines.  And that's going to come from the former presidents of the union, not just one, but two.  So I -- that whole thing is

mischaracterized.

Now, what Mr. Robertson leaves out is, Judge Lane issued an injunction and said I couldn't contact American or any employees regarding my pre-petition termination or removal. He did, however, say that I don't care. You think you're on disability. But whether you're on administrative separation or terminated -- and he thinks I'm terminated -- or whatever it is, he says, it sounds to me like you're someone that has a right to return and get reinstated when they get an FAA medical. I have no problem with contacting [indiscernible] regarding that.

And I submitted that to you yesterday morning. It's Pages 66 and 67 of the bankruptcy hearing transcript from January 23rd, 23, 2015. And that's related to that injunction order.

Also in Judge Lane's issued order saying that I shall be permitted to arbitrate Grievance 1211 to the Railway Labor System Board. American Airlines two weeks later agreed in federal court. If they do it, they agree to arbitrate with me so long as APA and I mutually agreed to court order such. APA is the linchpin. They refused to re-arbitrate my grievance for -- it's maybe 16 years.

Now, President Ed Sicher has testified in his declaration last week that he opened that grievance, which was preserved by -- Judge Lane preserved Grievance 1211 and 1212 in

2021 [indiscernible] stipulation of APA.

And the president of APA, Edward Sicher, on June 13th, 2014, moved that grievance forward to an arbitration. It was a scheduled and pending arbitration hearing, [indiscernible] recalled on October 7th.

Now, APA and American, Mr. Robertson and [indiscernible], misrepresent that my Grievance 1211 was closed and of zero value since 2013. And that is a bold-faced lie. It is not --

THE COURT: But how does that connect to this deposition that you want to --

THE PLAINTIFF: Because she has a hand in all of this, your Honor.

And the last thing -- let me just add one more fact, you know, fact here. Mr. Shiffrin wants to say that APA did everything they could do.

I'm telling you right now, the president of the union says they didn't do everything they could do.

(Incomprehensible cross-talk.)

THE COURT: Well, I think all those are arguments you want to make --

THE PLAINTIFF: Your Honor, let me finish.

THE COURT: Excuse me. Excuse me, Mr. Meadows.

THE PLAINTIFF: Yeah.

THE COURT: I'm trying to decide an issue regarding a

subpoena *duces tecum* for an attorney.  And all of that is very interesting.  But that's not what we're talking about at this moment.  That's why I'm interrupting you.

THE PLAINTIFF:  Okay, your Honor.  And I have the subpoena, by the way.  I'm going to email it to Rocio.  It's stamped by the clerk, as I told you.  That's a misrepresentation it wasn't stamped.  The subpoena she got was stamped.  The process server's copy was stamped and sealed by Angela Noble, Clerk of the Court.

THE COURT:  Okay.  I'm only pointing out what I have here.

THE PLAINTIFF:  Okay.

THE COURT:  I understand.

Now, as I started out to say, Attorney Powell is an attorney.  There's normally a privilege when she is interacting with someone on behalf of her client.

I'm attempting to hear your argument because I want to know why that attorney-client privilege should be waived.  So far, I haven't heard anything that justifies waiving that privilege.

If the reason that you're saying is that, Well, she's -- Mr. Shiffrin is going to bring out the fact that American made a decision in part based upon an email that you sent to Ms. Powell, I don't see how deposing her is going to add anything to that conversation.

THE PLAINTIFF:  Your Honor?

THE COURT:  And that's what I'm trying to hear from you.

THE PLAINTIFF: Okay.  Okay.  I -- okay.  So first of all, as I told you in my earlier argument, in February of 2014, she told me in no uncertain terms that American Airlines was not going to agree to reinstate me on the seniority list.  And when I asked her why, she said, "Just because."  That preceded this voicemail by 15 months.

So to say a voicemail is the reason I'm not getting back is a bold-faced lie.

THE COURT:  Okay.  But that's something that you don't need her testimony in order to make that -- take that position.  Right?

THE PLAINTIFF:  I'll make this simple for you.  I will make an oral motion, an *ore tenus* motion *in limine*:  If this Court declines to quash a subpoena that I'm in my right to question Ms. Powell as a rebuttal witness that I move to strike and exclude any and all use of the 2015 voicemail and any other related communication between Ms. Robertson -- Ms. Powell and Mr. Robertson and -- related to the pretextual 2011 termination letter, a letter that violates the CBA, my past due process rights.

That fraudulent letter is the exact pretext APA and American used in their secret 2025 [indiscernible] to

extinguish my grievance rights.  And she has direct foundational knowledge of that.

So to answer their question, it's a lie.  American did not --

THE COURT:  And do you think that if you bring her in and depose her she's going to admit that that's --

THE PLAINTIFF:  Yes.

THE COURT:  -- a lie?

THE PLAINTIFF:  Yes.

THE COURT:  Okay.

THE PLAINTIFF:  But the point is, that --

THE COURT:  Is she going to -- let me ask you this:  Is she going to say that there was never an email?

THE PLAINTIFF:  What's that?

THE COURT:  Is she going to say that you didn't send her an email?

THE PLAINTIFF:  I sent her -- I left her a voicemail, is what --

THE COURT:  A voicemail?  Okay.  Is she going to say something about that voicemail?  I mean, I'm -- from what I'm hearing, there's no dispute that you sent her a voicemail.  Correct?

THE PLAINTIFF:  She's going to say that she wrote the letter, the purported termination letter, and that she was inclined not to reinstate me in 2014, 15 months before the

voicemail.

And the settlement agreement -- the two pretexts for not returning me to work are, one, my Grievance 1211 is closed since 2013, which is a material misrepresentation of fact when the fact resulted in 2024; and, two, that the letter I got from Scott Hansen in 2011 written by Ms. Powell, it was deemed to be notice, albeit not compliant with the collective bargaining agreement. Nonetheless, they thought the totality of the circumstances would affect my grievance rights.

So those are the two reasons why I've not been returned as a matter of record in federal court pending before the Eleventh Circuit right now. The matter of Mr. Robertson is on appeal. And he and others at APA have signed a settlement agreement which is a bold-faced misrepresentation of the status of that grievance and that letter.

THE COURT: Okay.

THE PLAINTIFF: So yeah. I think she is totally relevant. But if you're inclined to quash her, I would be okay with that so long as I -- you grant a motion *in limine* to strike any testimony related to her. It's unfair for me -- she will be called at trial. If they try to introduce this testimony, she'll have to be called at trial as a rebuttal witness.

And I know what they're trying to do. They're trying to discredit me and malign my character.

THE COURT:  Okay.

THE PLAINTIFF:  And so --

THE COURT:  Well, I will let the trial judge determine any motions *in limine* if they do bring that up.

But at this point, quashing is appropriate.  There's no dispute -- first of all, she was representing American Airlines in any discussions she had with you.

Second, there's no dispute regarding the actual facts.  So the evidence of whether there was a voicemail, the evidence of decisions made by American Airlines, is already of record.

And so deposing her shows -- there seems to be no reason in this case to overcome the attorney-client privilege.

So that's my ruling.

THE PLAINTIFF:  Well, your Honor, I --

THE COURT:  Excuse me.  Excuse me.  I let you speak.

With respect to the motion *in limine* as to whether that information can come up at trial, I will leave that decision for the trial court.  That's my ruling on that issue.

THE PLAINTIFF:  Very well.

THE COURT:  Now, the other issue --

THE PLAINTIFF:  For the record, your Honor, I object.  I will --

THE COURT:  Of course.  I understand that.

THE PLAINTIFF:  I just want to put for the record, objection.  Thank you for your consideration.

THE COURT: All right. The next issue as I understand it is reconsideration of the order with respect to quashing the subpoena of Nick Silva.

THE PLAINTIFF: Yes, ma'am. Yes, your Honor.

THE COURT: Okay. Mr. Robertson, if you are -- you know, if you want to stay in the hearing, that's perfectly fine. I just wanted to let you know that you can be excused.

MR. ROBERTSON: Thank you, your Honor. Thank you.

THE COURT: All right.

MR. ROBERTSON: I will [indiscernible]. I hope everybody has a good day. Thank you.

THE COURT: All right. So with regard to a rehearing on the -- regarding Mr. Silva, what new information -- because of course, if you want a rehearing, you need to bring new information -- do you have to present regarding that issue?

THE PLAINTIFF: Actually, your Honor, your order, ECF 93, dated February 5th, states -- Paragraph 2 states that if the Plaintiff wants more information regarding -- I'm sorry. It says: APA's request to quash the subpoena Plaintiff served upon APA's current president, Nick Silva, is granted.

If Plaintiff wants more information regarding APA's rebuttal expert report, then Plaintiff must ask those questions of the expert during the expert's deposition.

So since your order -- your order is kind of like a day late -- I had deposed their expert. I had discovered that the

consulting agreement was signed by Nick Silva and that APA attorneys Mark Myers and Jim Clark and another captain at American Airlines were all involved in a group thing.  They collected all the data, made all these subjects.

The expert, his own testimony was he didn't rely upon his own assumptions.  He took assumptions of the APA's attorneys and Mr. Shiffrin as to the value of my amount of damages.

And I will add that Mr. Shiffrin shielded allegedly as work product his communications with Mark Robertson when they weren't really work product at all.  Mr. Robertson and him are hostile adversary attorneys.  APA was representing me in my ADA lawsuit against Mark Robertson, but yet they're talking to each other behind the scenes about my damages and tried to shield and disguise it as work product.

But when this hearing comes along, they suddenly cloak it with work product, which makes -- it seems really suspect to me as to what's really privileged and what's not in these proceedings.

But the point is, in that -- in that deposition, I did discover that it was Mr. Silva or President Silva that signed as a client representative for APA, signed a report.  My expert has said in his 375 trials and 180 depositions he never sees an executive or CEO of a corporation signing the economic consulting agreement.  It's always done with opposing counsel.

So I think Mr. Silva is relevant because he's had a hand and interest in this report and his background is an MBA in finance. His role in the union prior to president was the economic and financial analysis advisor to the negotiating committee.

So I believe he's specifically costing -- involved in the costing of my damages.

THE COURT: Okay.

THE PLAINTIFF: So I --

THE COURT: So if I understand --

THE PLAINTIFF: -- [indiscernible].

THE COURT: If I understand correctly what you've just said, you've said that Mr. Silva provided the assumptions, the information, that the expert used to create the expert report. Is that what you just said?

THE PLAINTIFF: I believe he is one of several individuals at APA that provided the assumptions, not --

THE COURT: That provided the assumptions.

And so you want to ask him what, then?

THE PLAINTIFF: I want to ask him why he was involved in the economic damages report and what role he had. I have several questions for him. He's the one that terminated my union membership after 34 years, in violation of the LMRDA, and signed a secret settlement that destroyed my seniority and abrogated it after all these years.

So yeah. I have a lot of questions for Mr. Silva. But specifically as to this report, I want to know why the president of the union is so personally involved and interested in my economic damages, when it should be handled behind the scenes by the attorneys.

THE COURT: It should be handled. Okay. That's your -- that's your assumption.

All right. Mr. Shiffrin, your response?

MR. SHIFFRIN: Yeah. There's much that's wrong in what Mr. Meadows just had to say.

As I provided to the Court yesterday, Mr. Silva signed the consulting agreement between -- to retain the expert witness on behalf of APA. That's his only role with respect to this. He didn't sign it on his personal behalf.

And our expert testified that he's had zero contact with Mr. Silva and Mr. Silva had no role whatsoever to play in the expert report.

So there's no questions to ask Mr. Silva about the expert report.

THE COURT: Okay. So Mr. Silva did not provide any information on which the report was based?

MR. SHIFFRIN: Correct. Zero.

THE COURT: Okay.

MR. SHIFFRIN: And Mr. Meadows has made clear that what he really wants is to depose Mr. Silva about matters that are

prohibited by the prior protective order entered in this case that limits discovery to pre-2022 matters.  So there would be no basis to ask -- to depose Mr. Silva when he can't ask those questions to begin with.

THE COURT:  Okay.

MR. SHIFFRIN:  As to -- and [indiscernible] is not there.  But Mr. Meadows also addressed Mark Myers and Jim Clark.  I'm happy to go to that as well if you'd like me to.

THE COURT:  Okay.  Go ahead.

MR. SHIFFRIN:  Mark Myers and Jim Clark are both attorneys for APA.  In the course of producing documents to Mr. Meadows in connection with the subpoena for documents related to the expert report, they -- they're copied on communications.  And the expert testified that he had received some information from Mark Myers.  This is not, as Mr. Meadows characterized, a group thing.  The expert received information from the client and did his own analysis and produced his report, just as Mr. Meadows had done the same thing.

Mr. Myers has already sat for two days of depositions in this matter, and Mr. Meadows had a full opportunity to ask him whatever questions he wanted for those two days.  He doesn't get another opportunity to go back and make Mr. Myers sit for another day of deposition.

I'll say that his deposition of Mr. Myers ended with a threat by Mr. Meadows to initiate military discipline against

Mr. Myers.  Mr. Myers is a retired admiral from the Navy.  And it would be harassing, among other reasons, and burdensome to make Mr. Myers sit for additional deposition.

Jim Clark had zero involvement in the expert report. He's copied on some emails.  He'd have nothing to say.  Again, he's an attorney for APA.

We've not opposed Mr. Meadows's seeking to depose Mr. Clark with respect to non-privileged matters within the discovery period for this case, but Mr. Meadows has never expressed an interest in that.  What he's seeking is privileged communications outside of the discovery period.

So --

THE COURT:  Okay.

MR. SHIFFRIN:  -- we don't think any of his requests are well-taken.

THE COURT:  Okay.  So --

THE PLAINTIFF:  Your Honor [indiscernible] --

THE COURT:  Going back to Mr. Meadows, so Mr. Meadows, the reason that the subpoena was quashed in the first place was at that point the only thing you could tell me was that you knew that Mr. Silva's name was -- that he received a copy of the report and that's why you wanted to depose him.

Now I understand from Mr. Shiffrin that he did not supply any information on which the report was based.  He simply signed the consulting agreement on behalf of the APA.

THE PLAINTIFF:  Well, that's hearsay, your Honor.  That's coming from Mr. Shiffrin, not Mr. Silva.

And I will -- I will ask you, your Honor --

THE COURT:  Did the expert -- can I ask this question:  Did the expert say that he was provided information which was the basis of his report from Mr. Silva?

THE PLAINTIFF:  No.  Not to my knowledge.

THE COURT:  Okay.

THE PLAINTIFF:  Mr. Shiffrin --

THE COURT:  So we have no new information, essentially.

THE PLAINTIFF:  I believe we do.

But, your Honor, let me ask you:  Mr. Shiffrin misrepresents -- I never threatened Mark Myers.  I asked him if he's aware of his obligations under the Uniform Code of Military Justice because he is on the record lying to officers of the union during an internal investigation in 2020.  So I asked -- I didn't threaten him with anything.  That's a gross mischaracterization.  I'll pull the transcript for that.

Number two, he said I've had a full and fair opportunity to depose Mr. Myers.  That's also untrue.  I had Captain Osterman with me in those proceedings.  The first day of the proceedings, five minutes after the start time of the deposition, they dumped a tranche of documents on me after the deposition started.

And then the eve of my deposition with their expert,

they gave another tranche of documents.

So they're willfully deficient and delinquent on these documents, giving them to me the day before or after depositions start.  So I have not had a full and fair opportunity to review their documents, which are deficient and defective and are not keyword searchable the way they provided them.

So I -- I -- that's offensive and not well-taken, because I've been deprived of valuable discovery documents. And I'm only finding stuff more and more each day after the fact after a deposition occurs.

So I disagree.  Mark Myers should sit for deposition again, particularly with the documents they gave me on January 21st, the day of his deposition, and January 26th, the day of the expert's deposition, because it's clear now that Mr. Myers and Clark had a direct involvement -- and the expert admitted as much -- that Mr. Myers and Clark and Captain Declerer (phonetic) were all involved in the assumptions used in the economic damage report.

So -- and I'm going to ask you one other question, your Honor:  Did you ever read the last [indiscernible] filed, two motions with two different declarations from the former APA president, Captain Ed Sicher?  Have you read those?

THE COURT:  So let me ask you something.  Since we're talking about depositions of Mr. Silva, I want to make sure

that I rule on that issue.

THE PLAINTIFF: Okay.

THE COURT: I don't see any additional information that makes a deposition of Mr. Silva any more relevant than it was when we first talked about this. So I'm going to quash that subpoena.

Now, I want to make sure I understand with respect to Mr. Myers. You want to depose Mr. Myers again?

THE PLAINTIFF: On the documents that were not provided to me prior to his deposition, yes. I believe I should be entitled to a limited deposition for purposes of the documents that were provided untimely to me --

THE COURT: Okay.

THE PLAINTIFF: -- on the 21st of January and the 26th of January that involved him.

THE COURT: And what are those documents?

THE PLAINTIFF: There's many documents from former President Carey at legal asking to seize all the emails between me and another president of APA that invoked the APA legal machinery against me to quash my freedom of speech in the union hall and was copied to various attorneys at APA legal, including Mark Myers, and then Mark Myers's involvement. He was heavily involved in the calculation -- the data and the calculation of my damages.

THE COURT: Okay. So these are documents that --

THE PLAINTIFF: And I would --

THE COURT: Excuse me, sir. I'm the one that asks the questions at this point.

THE PLAINTIFF: Yes.

THE COURT: I'm trying to make a ruling.

THE PLAINTIFF: Well, I need more --

THE COURT: Sir, sir --

(Incomprehensible cross-talk.)

THE PLAINTIFF: -- [indiscernible] -- more data for you?

THE COURT: Sir, I will ask you the questions that I need answered.

THE PLAINTIFF: Okay.

THE COURT: All right. So the documents that you received just before the deposition were documents you were unaware of prior to that date --

THE PLAINTIFF: Yes.

THE COURT: -- that you did not have prior to that date?

THE PLAINTIFF: I saw them that evening when I got home from the deposition. And I couldn't open most of them.

THE COURT: Okay.

THE PLAINTIFF: So I was able to question, like, two of them. The one -- I questioned him on, I think, five.

So it was an ambush. They call it a discovery ambush.

Giving me documents at 9:05 a.m. after a 9:00 a.m. deposition is the textbook definition of an ambush.  And giving me documents at 5:30 p.m. the evening before the deposition of their expert is another textbook -- textbook definition of ambush.

THE COURT:  Okay.

THE PLAINTIFF:  Mr. Shiffrin has been disingenuous and during -- and obstructionist in the entire process, delaying -- I still don't have -- I never got a privilege log for all these communications with Mr. Robertson.  He's been communicating with Mr. Robertson for a long time now, as admitted by both of them.

So I mean, he's produced no text messages.

I asked him [indiscernible] the declaration of Captain Sicher, because the -- your protective order should be vacated immediately based on that, because it's clear that Mr. Pellettieri's misstatements to you to obtain that order were totally disproven by Captain Edward Sicher's sworn deposition -- declarations, two of them.  And Sue Edwards was my attorney.  The testimony is that she was hired to individually represent me against Mr. Robertson and American Airlines.  And she was paid $10,000 as a retainer individually for me and --

THE COURT:  When you say Mr. Robertson, obviously you know the history of all the prior cases and I do not.

THE PLAINTIFF:  Yes, I do.

THE COURT:  And -- but what I'd like to focus on is a request for a continued deposition of Mr. Myers.

THE PLAINTIFF:  Yes.  I believe --

THE COURT:  Now, you've told me that you received some documents at 5:00 the evening before the deposition of Mr. Myers.

THE PLAINTIFF:  No.  That's incorrect, your Honor.

THE COURT:  Okay.

THE PLAINTIFF:  I received --

THE COURT:  That's what I want to understand.

THE PLAINTIFF:  I was deposing Mark Myers the 21st.  It was scheduled to start at 9:00 a.m.

MR. SHIFFRIN:  [Indiscernible.]

THE PLAINTIFF:  At 9:05 a.m., they give me a tranche of documents which I didn't see until 9:30 that evening when I got home.

THE COURT:  Okay.

THE PLAINTIFF:  Because I didn't have --

THE COURT:  I want to make sure I heard it.

Mr. Shiffrin, if you could pause for a moment.

You were supposed to depose Mr. Myers on the morning of January 21st?

THE PLAINTIFF:  At 9:00 a.m.

THE COURT:  At 9:00 a.m.

When did you receive the documents that you had requested?

THE PLAINTIFF:  They were emailed to me at 9:05 a.m.  I didn't receive them or open the emails until 9:30 p.m. that night.

THE COURT:  Okay.  So they were emailed to you the morning of the deposition five minutes after it was to have started?

THE PLAINTIFF:  Yes, ma'am.

THE COURT:  And then you weren't able to open them so that you didn't have them actually opened until after the deposition that night?

THE PLAINTIFF:  Yes, your Honor.

THE COURT:  Okay.  So let me ask you a couple of questions.

So did you then go ahead and depose Mr. Myers on the 21st?

THE PLAINTIFF:  I deposed him on the 21st.  Yes.

THE COURT:  How many hours of deposition was that?

THE PLAINTIFF:  It was approximately five and a half.

THE COURT:  Okay.  And then did you depose him the following day?

MR. SHIFFRIN:  Yes.

THE PLAINTIFF:  Yes.

THE COURT:  Okay.

THE PLAINTIFF: For about the same -- for about five hours.

THE COURT: So you also deposed him on the 22nd. At that point, you had been able to open the documents?

THE PLAINTIFF: No, I was not. I was unable, because they were not keyword searchable globally. I could only open them one by one. So I only found two or three that I could use. And I just didn't have time.

You know, I'm *pro se*. It's a total disadvantage to me to give me these documents at the eleventh hour like that.

THE COURT: Okay.

THE PLAINTIFF: If I had them prior, I could do something with them.

THE COURT: When had you initially requested those documents?

THE PLAINTIFF: November 17th. They were due December 1st. These documents were all due December 1st.

THE COURT: Okay. They had been due since December the 1st.

THE PLAINTIFF: Yes, ma'am.

THE COURT: Okay. So are these the same documents that we talked about in a prior discovery hearing that you said they weren't searchable, so you weren't able to search them?

THE PLAINTIFF: No, because these documents were supposed to be produced by that hearing, but they weren't

produced until two weeks after that hearing.

THE COURT:  Okay.  All right.

THE PLAINTIFF:  Even though --

THE COURT:  How much more time --

THE PLAINTIFF:  I'm sorry.

THE COURT:  How much more time do you need?  Now that you have had these documents since January 21st, how much more time do you need to depose Mr. Myers, is my next question.

THE PLAINTIFF:  Mr. Myers was a fairly cooperative witness.  Mr. Shiffrin was a very obstructionist, hostile opposing counsel.  I would say not -- but for Mr. Shiffrin's expected conduct, I would say probably two to three hours.

But I would like to caveat that:  If Mr. Shiffrin engages in talking objections and goes off the rails and interrupts me and the reporter, if it was just -- they couldn't even report the transcript half the time, then it might be longer.  But I would suspect two to three hours in a normal one.

THE COURT:  And what subject matters do you want to discuss in that two to three hours that you did not get to discuss previously?

THE PLAINTIFF:  Well, he sat as a 30(b)(6) witness the first day and into the second day, but there was a mutual stipulation that we could intermix individual and 30(b)(6) questions.  So there's a mix of 30(b)(6) and individual

questions based on the documents -- late-produced documents on the 21st and on the 26th.

THE COURT:  I understand.

THE PLAINTIFF:  Some involve [indiscernible] data; some involve officers using -- trying to use APA legal to discredit me and silence me and other officers, silence my speech of the union on my LMRDA claims in this action and retaliating against me.  There's evidence -- there's evidence in there of absolute retaliation against me and disparate treatment and refusal to process my grievances while they prosecuted the grievances of others similarly situated.

THE COURT:  Okay.  So you've told me what evidence is in the documents.  What questions do you need to ask him about those -- that evidence?

THE PLAINTIFF:  A litany of questions regarding all those topics.

THE COURT:  Are these --

THE PLAINTIFF:  Many of these emails are --

THE COURT:  Are these emails or documents that he prepared or that he received?

THE PLAINTIFF:  Some are.  But even if they're not, he's a 30(b)(6) witness, so I have relative topics that are relevant to those -- those issues.

THE COURT:  Okay.

THE PLAINTIFF:  Because the 30(b)(6) -- he has

individual knowledge of some, but as a 30(b)(6) I would say he has knowledge of all of them or should have knowledge of all those topics.

THE COURT:  Okay.  So here's what I'm trying to understand.  You've already deposed him for 11 hours.  And I want to understand specifically why you need two or three more hours.  So if you could frame that.  And I want to give you an opportunity to explain that to me.

THE PLAINTIFF:  Your Honor, I have not been fully able to explore the documents required to open --

THE COURT:  Which documents specifically?

THE PLAINTIFF:  The documents produced on the 21st and 26th.

THE COURT:  I understand.  But give me some more background.  You know this case very, very well.  What are in those documents that you have not had a chance to speak to him about?  Just --

THE PLAINTIFF:  Well, I've seen some of them, not all of them.  But the ones I've seen, disparate treatment, retaliation, involvement with prosecuting my grievances or not prosecuting my grievances, his involvement in -- I want to know why the attorneys at APA are involved in doing economic assumptions when they had an expert in that role when the expert admits that he really didn't make any assumptions.  They were all made by APA.  Mr. Shiffrin made one of the assumptions

related to my long-term disability benefits offsets.

So yeah.  I -- there's -- it's --

THE COURT:  So you have not had an opportunity to ask him before about disparate treatment or retaliation.

THE PLAINTIFF:  No.  There's several -- I've found key smoking-gun documents with explicit references to disparate treatment and retaliation and other officers in the union trying to invoke APA's legal machinery to silence me and former President Dan Carey.

THE COURT:  Okay.  And these smoking-gun documents are documents that you want to ask him questions about?

THE PLAINTIFF:  Yes, your Honor.

THE COURT:  Okay.  Mr. Shiffrin, your response?

MR. SHIFFRIN:  Yeah.  On several topics.

Let me start by putting some of this in context, because there's a lot missing in what Mr. Meadows has said.

Mr. Myers sat for a deposition on the 21st and 22nd.

On the morning of the 21st, we produced to Mr. Meadows and actually before the deposition began, because it didn't begin until 9:45, both our privilege log and a group of about 25 documents that in the course of producing our privilege log we determined were inadvertently withheld as privileged.  So those are the documents that were provided on the 21st. There's a small group of 25 documents.

And --

THE COURT:  What type of documents are they?  Emails?  Letters?

MR. SHIFFRIN:  Mostly emails.  Yeah.

THE COURT:  Okay.

MR. SHIFFRIN:  Generally, emails.

And so we produced them with our privilege log to say that, you know, in the course of -- so much happens.  In the course of reviewing documents, we determined there wasn't a basis for privilege in these and so we're producing them.

The next day -- so Mr. Meadows had those documents before the deposition began on the 21st.  And he asked questions about those documents, the one that he described to you about communication from a former APA president.  He used that as an exhibit on the second day of deposition.  So he had those 25 documents at his disposal to use on the 22nd.  So he's had a full opportunity to use those documents.

The documents of the 26th, those were not due to be produced to Mr. Meadows prior to the Mr. Myers deposition.  Those are documents that he had requested the Saturday before Mr. Myers was to be deposed and they were not produced -- they were produced before Mr. -- before our expert was deposed.  And we had a prior hearing with you about that, your Honor, and we produced them before the deposition, as your Honor said we could.

So --

THE COURT: Before the deposition of the expert?

MR. SHIFFRIN: Before the deposition of the expert.

THE COURT: Okay.

MR. SHIFFRIN: And so there's no -- there's no opportunity to do a do-over because he's gotten these documents and wished that he had had them before he deposed Mr. Myers. It's common in discovery that you don't have all the information at hand when you depose somebody.

I wish I could go back and ask Mr. Meadows questions about stuff that his expert said. But I don't -- you don't get to go back to witnesses again and again. It's part of Rule 30 limiting depositions.

So he -- there was no reason for Mr. Meadows to have had the documents on the 26th as of Mr. Myers's deposition. And the fact that he learned facts about those documents in Mr. Myers, that's kind of life in litigation.

Mr. Myers has sat for deposition at least six hours on the first day and five hours on the second. He's sat for -- he's done his duty as a witness in this case as far as being deposed. As I said, if Mr. Myers -- if Mr. Meadows -- if he totally -- and he's threatening him with discipline under the Uniform Code of Military Justice. I don't think that it would be fair to Mr. Myers to put Mr. Myers in a room with Mr. Meadows again.

THE COURT: Okay.

THE PLAINTIFF:  [Indiscernible.]

THE COURT:  Mr. Meadows, your response?

THE PLAINTIFF:  Yes.  Well, Mr. Shiffrin once again is being disingenuous.

He was subpoenaed on November 17th for any and all communications with Mark Myers.  And he said they weren't privileged and produced a privilege log.

He never produced a privilege log.

Now he's --

THE COURT:  Did you say he never produced -- Mr. Shiffrin never produced a privilege log?

THE PLAINTIFF:  When he told you he was fully compliant on your order of January 7th, he had never produced a privilege log.  There's a litany of privileged communications in this case.

Now, where I have a point of contention, he's saying, yeah, he --

THE COURT:  I'm sorry.  I still didn't understand the answer.

So you said that Mr. Shiffrin has never produced -- never produced a privilege log with respect to the documents that you've requested for Mr. Myers for the 30(b)(6)?

THE PLAINTIFF:  He has never produced a privilege log with requests -- all our requests for production and he produced a partial one on January 21st.

But when he told this Court that he was fully compliant and you issued an order January 7th, he had not produced a privilege log at that juncture.

And the emails that he produced on the evening of January 26th of the expert involving Mark Myers and Mr. Robertson and all these emails that I would like to have in my possession for Myers's deposition existed on January 1st and 2nd, long before you issued your order. And he still didn't produce them.

So he has withheld several documents. I know for a fact there's numerous privileged documents he has withheld and has not provided me.

And an additional matter: He's not provided me any data email documents. He has not provided any actual metadata. He tries to give me these Excel spreadsheets with listings of documents which I've never -- I'd -- like me, I gave him all the native emails and PDF mirror images. He has not given me any native emails. And so he is not compliant in production. So they've just been playing hide-the-ball the entire time. And it's like a day late and a dollar short.

I've been really prejudiced by his lack of production. To say he gave me documents -- yeah. The deposition started at 9:00 a.m. It started at 9:45. They had a conference room issue. All I got -- I searched emails, trying to globally search PDF documents one by one by one. Because what he's

given me that has these [indiscernible] times, I'll be honest with you:  At this juncture, I've found a handful of documents. I have not had time to go through them.  I've worked -- I had to take off work today and tomorrow for mediation.  I've worked every day since our last hearing.  So I've been extremely busy trying to keep up.

But I have had the time to look at all the documents at this juncture.  There's evidence as I spoke to you now -- I was given documents on January 26th at the expert deposition.  If [indiscernible] Mark Myers and Jim Clark, it should have been produced with my initial request for production for November 17th and were not.  They were dated January 1st and 17th, [indiscernible] discovery to be here on January 7th.  And he -- he asserted he was fully compliant.  He never was.

THE COURT:  So what you're saying is the documents you got on January 26th were -- should have been given to you back on -- before.  They were responsive to your requests to Mr. Myers.

THE PLAINTIFF:  Yes.

THE COURT:  So they should have been received then. They were responsive.

THE PLAINTIFF:  And the --

THE COURT:  Because what I'm trying to understand is this:  There are two different depositions you're talking about, one for an expert and one for Mr. Myers.

THE PLAINTIFF:  Right.

THE COURT:  So I'm assuming that the same -- are you saying the same documents were requested or there was some overlap in the document request for Mr. Myers --

THE PLAINTIFF:  [Indiscernible.]

THE COURT:  -- and for the expert report?

THE PLAINTIFF:  [Indiscernible] Mark Myers.

THE COURT:  I'm sorry.  You're not even waiting for me to finish my question, so I'm not sure that you've heard my question.

THE PLAINTIFF:  Go ahead.

THE COURT:  My question is:  The documents that you received, those emails on January 26th, would they have been responsive to your request, your earlier request, back in November to Mr. Myers?

THE PLAINTIFF:  Yes.

Now, Mr. Shiffrin represented to this Court that he was fully compliant as of January 7th and the 9th, that he provided everything.

He had not produced everything up to January 9th when he said that.

THE COURT:  Okay.

MR. SHIFFRIN:  May I respond to that, your Honor?

THE COURT:  Yes, of course.  I will allow you to respond, Mr. Shiffrin, but I want to make sure that I

understand what Mr. Meadows is saying.

Okay.  So there's some document that he produced on the 26th that should have been produced before.  What are those documents, essentially?  Tell me.  We're here to discuss that now.

THE PLAINTIFF:  (No audible response.)

THE COURT:  So, Mr. Meadows, I want to give you a chance to explain.

THE PLAINTIFF:  Oh, I thought you were talking to Mr. Shiffrin.

THE COURT:  Oh, no.  To you.

THE PLAINTIFF:  Your Honor, I don't know -- I can tell you that in the economic expert package given to me on the 26th, there was emails dated January 1st and 2nd between Mark Myers and Jim Clark and even Mr. Shiffrin that should have been produced.

When they asserted to this Court they were fully complete in their production or fully compliant on January 9th in the course of that January 7th hearing, they were not.  That was -- that was a misrepresentation to the Court.

THE COURT:  So what --

THE PLAINTIFF:  If your Honor --

THE COURT:  -- you've told me, though, is that the date of those emails was January 1st.

THE PLAINTIFF:  Yes.

THE COURT:  But that doesn't tell me whether they are responsive to that earlier request.

THE PLAINTIFF:  My earlier request requested any and all communications with various individuals, including Mark Myers, including Jim Clark, including Sue Edwards, who, I might add, they never produced any communications with Sue Edwards or a privilege log and they never produced the -- I asked for all her billing statements related to me.  They didn't produce those.

I found out from Captain Sicher last week that he signed several AFPs, authorizations for financial expense, that Mr. Pellettieri misrepresented to you she was never my attorney, never retained for me, when in fact she was.  They withheld all those documents.  And I still don't have those documents related to Sue Edwards.

THE COURT:  And those are documents that you want to talk to Mark Myers about?

THE PLAINTIFF:  Yes [indiscernible].

THE COURT:  Because we're talking about Mark Myers now.

THE PLAINTIFF:  Mark Myers, because he is the 30(b)(6) designee.

THE COURT:  Okay.

THE PLAINTIFF:  To the extent that they -- that there's a material dispute of fact, they say Sue Edwards never represented me when in fact she was retained specifically to

represent me and paid a $10,000 retainer to do so.  And both -- Mr. Pellettieri represented to you on October 28th that she did not represent me.

And Mr. -- Mr. Shiffrin and his associate, Grace Rybak, who I might add left the firm over this issue --

MR. SHIFFRIN:  That's a lie, Mr. --

THE COURT:  Okay, Mr. Shiffrin.  It's okay.  You'll have an opportunity to respond.

THE PLAINTIFF:  All three of them sat through that hearing and allowed them to -- despite the hearing full of misrepresentations of how Sue Edwards is not my attorney, did not represent me, what is a bold-faced lie --

THE COURT:  Okay.

THE PLAINTIFF:  -- because --

THE COURT:  So, Mr. Meadows, you paid her $10,000 to represent you?

THE PLAINTIFF:  No.  The APA president paid her 10,000 to represent me.

THE COURT:  Okay.

THE PLAINTIFF:  And he told me when she was representing me he couldn't even communicate to APA about my case because of the privilege being [indiscernible].

THE COURT:  Okay.  So I'm not sure what that has to do with Mr. Myers.

But let me go back to Mr. Shiffrin.

THE PLAINTIFF:  Well, because it has to do -- he's the 30(b)(6) designee.  He should have information, all this stuff.  And all these documents, whether they're privileged or not, should have been produced with or without a privilege log.  And they were not.

And they assert -- they -- if you go back and look at the records, I think on the 9th they said they were fully compliant with their production.  There was a dispute after your January 7th hearing, and he said he was fully compliant.

He was not.  He was never compliant.  He's still not compliant.

MR. SHIFFRIN:  Your Honor, if I can respond.

THE COURT:  Of course.  You will have an opportunity to respond.

THE PLAINTIFF:  Your Honor is --

THE COURT:  All right.  Thank you, Mr. Meadows.

THE PLAINTIFF:  -- aware.  There's a motion -- there's a motion pending for spoliation of evidence.  I have evidence now that they've wiped the hard drive of the president of the union and destroyed all his data, deleted all his texts.  He's never got a litigation hold letter prior to his departing APA.

THE COURT:  And how is that relevant to your deposition of Mr. Myers?

THE PLAINTIFF:  Yeah.  It's very relevant, because of the destruction of evidence in this case.

THE COURT:  Okay.

THE PLAINTIFF:  And it needs to be heard.

THE COURT:  And did you know about that before January 21st?

THE PLAINTIFF:  No, I did not.

THE COURT:  Okay.  When did you first learn about this destruction of evidence that has to do with Mr. Myers?

THE PLAINTIFF:  When I spoke to President Sicher.  I submitted his declaration I think -- was it last -- I lost track.  Last week?  Probably around the first week of February, when I spoke to him.  I was shocked when he told me that APA took his hard drive and wiped it on his laptop of all his APA union business data.  And he -- they had control of his personal cell phone.  He was -- he was conducting union business via text message and Signal with other officers of the union and other attorneys of the union.

THE COURT:  I see.

THE PLAINTIFF:  And he gave them his personal devices and laptop because they suspected the company had infected it with malware.  But now he suspects they put some type of spyware in there because a lot of his text messages have been stripped from his phone.

THE COURT:  All right.  Thank you.

All right, Mr. Shiffrin.  Your response?

MR. SHIFFRIN:  Yeah.  Let me see if I can --

THE COURT:  And specifically I want to determine whether there should be any further deposition of Mr. Myers based on this new data released on January 26th.

MR. SHIFFRIN:  Yeah.  Let me start by addressing what was produced on January 26th.

On January -- I think it was 17th, Mr. Meadows made a request for documents related to our expert's report.  In the main what he was seeking was, what was the information that our expert relied upon in producing his expert report?  Right?  And that's what was produced on the 26th.

THE COURT:  Okay.

MR. SHIFFRIN:  None of that was responsive to requests that were made earlier in the case.  And none of -- virtually none of that information -- I don't -- our expert wasn't retained until sometime in December of 2025.  So the documents that we're talking about did not exist as of the time that we were doing our collection and production review of documents that were produced to him in January.

THE COURT:  Okay.

MR. SHIFFRIN:  So no.  The documents that were produced to him on the 26th, there was no reason for them to have been produced prior to that day.  They didn't -- most of them didn't exist --

THE COURT:  Okay.

MR. SHIFFRIN:  -- at the time we were making our prior

productions.

THE COURT: All right.

MR. SHIFFRIN: They didn't exist when he was making the prior request.

THE COURT: Okay.

MR. SHIFFRIN: So that's that issue.

As to -- I'm looking at my notes here -- as to Sue Edwards and these other things, they all go to stuff that's not part of this case. As we sit here today --

THE COURT: Okay.

MR. SHIFFRIN: -- your ruling under the protective order. So --

THE COURT: Good. So then I don't need to know about it, because it's a lot of information with regard to that.

MR. SHIFFRIN: Right.

THE COURT: Okay. So here's my concern, Mr. Meadows: I'm asking you to tell me what documents were produced on the 26th that should have been produced earlier. And I'm not getting any specifics.

THE PLAINTIFF: Your Honor, any communications with Mark Myers, Jim Clark prior to that date should have been produced. Prior to the January 7th hearing they should have been produced, when they said they were fully compliant.

THE COURT: Well, wouldn't they have been privileged?

THE PLAINTIFF: No -- well, how would I know without a

privilege log?  They didn't -- they never provided -- he just admitted they never provided a privilege log until January 21st.

THE COURT:  But he did provide a privilege log.  So wouldn't they have been privileged, is my question.  Any documents --

THE PLAINTIFF:  No.  They're not privileged, because I --

THE COURT:  -- between the attorneys for APA and anyone else.

THE PLAINTIFF:  They may be privileged.  If they are, I asked to the extent they are to produce a privilege log.  But I will argue as this case doesn't [indiscernible], you apply.  If it doesn't get terminated for default sanctions, there should be an in-camera review.

And I would invoke the crime-fraud exception, because there's -- the union presidents will testify of the involvement that union attorneys and company attorneys to block my return. So there is a crime fraud going on here, and it's a parallel to the railway labor exception to pierce privilege under *Cox versus U.S.* --

THE COURT:  So you're making a separate argument.  But what I'm trying to find out is if you should have any additional time to --

THE PLAINTIFF:  Yes.  I believe.

THE COURT: -- to depose --

(Incomprehensible cross-talk.)

THE PLAINTIFF: -- I should, your Honor, because --

THE COURT: Excuse me. Excuse me. Excuse me.

What I'm trying to rule on is whether you should have additional time to depose Mr. Myers.

And from what I understand, there's no need for additional time because the documents that you claim should have been produced that were not -- Mr. Shiffrin claims everything that wasn't privileged was produced. And you're saying these are the documents for Mr. Myers and Mr. Clark, both of whom are attorneys for the APA. So they would have been privileged anyway --

THE PLAINTIFF: No. They're never --

THE COURT: -- would have been included on the privilege log. So based on what I'm hearing today, I see no reason to have continued depositions of --

THE PLAINTIFF: Your Honor?

THE COURT: -- Mr. Myers.

THE PLAINTIFF: Your Honor, if I may.

You cannot say they're privileged because they're in plain sight. They provided them to me. They're not privileged documents. They're communications between the economic expert and Mr. Myers and Mr. Clark. They are absolutely not privileged. And they didn't produce them when they existed.

They existed before your hearing on January 7th. They asserted they were fully compliant. They were not. And so they -- they were not privileged documents. They are not privileged. And they didn't produce them.

If they were -- if any documents are privileged, they should have produced a privilege log with my initial production request. They never did. They never produced a production log -- privilege log, a partial one, until January 1st, two weeks after your discovery dispute hearing on their production. They're grossly --

THE COURT: So now these are emails between these attorneys and their hired expert?

THE PLAINTIFF: Yeah. And they are not privileged. I have them. They're not redacted.

THE COURT: Okay. Those documents are the ones that you would like to now ask Mr. Myers about?

THE PLAINTIFF: In part. There's several others that I don't even know what else is in the tranche they've given me because I haven't had a chance to fully research it. But I have about six or seven documents that I never had before January 21st and January 26th that I'd like to ask questions on. Yes.

THE COURT: Okay.

THE PLAINTIFF: This case is a -- this case is rife with obstructionism and destruction of evidence, spoliation;

and we need to get to the bottom of it.  This matter is irreparably harmed and it's going to be impossible to get to trial under the current juncture with all the discovery disputes and issues until they're addressed.  And they're not being addressed.  I'm sorry.

THE COURT:  Well, this is what I'm attempting to do --

MR. SHIFFRIN:  Your Honor --

THE COURT:  -- is stay on task and address the discovery issues.  But it's impossible for me to do that if we're bringing up other issues and we're not clear on what it is you need to ask Mr. Myers that you have not yet had the opportunity to do.

THE PLAINTIFF:  Your Honor --

THE COURT:  So what I understand you to say is, there's some emails between Mr. Myers, who's the attorney for the APA, and the consultant that the APA has hired.

THE PLAINTIFF:  They're not privileged.

THE COURT:  And they are not privileged, you say, because you have those emails.

THE PLAINTIFF:  No.  They gave them to me.  They did not redact them.  Meaning, they did not redact them.

THE COURT:  Okay.

MR. SHIFFRIN:  Your Honor, that is true.  I mean, we gave them to him because they were related to the bases for the expert report and we're not claiming privilege.  And they fit

within the limited exception to the attorney work-product doctrine under Rule 26 with respect to [indiscernible].

THE COURT:  Okay.

MR. SHIFFRIN:  None of them were responsive to any prior requests by Mr. Meadows partly again because there's a protective order that limits discovery in this case to pre-2022.  So documents from January of 2026 would not have been produced to him --

THE COURT:  At that time.

MR. SHIFFRIN:  -- in connection with his prior request.

THE COURT:  Okay.

MR. SHIFFRIN:  Mr. Meadows has said several times that our privilege log was partial or doesn't exist.

That's not true.  We produced a privilege log in connection with all the documents reviewed.  It has thousands of entries on it.  I'm not sure what --

THE COURT:  Okay.

MR. SHIFFRIN:  -- he's suggesting is not there.  But we've done a very fulsome job of producing documents in this case.

THE COURT:  Okay.  So then you received those documents in advance of your deposition of the expert.  Were you able to ask the expert any questions that you needed to ask about those documents, Mr. Meadows?

THE PLAINTIFF:  No, because I was -- I was -- I had a

fellow expert, a friend of mine who's an expert, trying to review documents while I was deposing the guy because I didn't have time to look at them.

THE COURT:  Well --

THE PLAINTIFF:  I mean --

THE COURT:  So, Mr. Meadows, didn't you schedule that deposition?

THE PLAINTIFF:  Yeah, but it was scheduled because, remember, the fact cutoff was February 1st.  It was scheduled.

MR. SHIFFRIN:  By the time that --

THE PLAINTIFF:  And I --

MR. SHIFFRIN:  Your Honor --

(Incomprehensible cross-talk.)

THE COURT:  But -- I'm sorry.  And, Mr. Meadows, so you had the opportunity to ask if you needed additional time.  But at this point, what I'm saying is, you scheduled the deposition.  You've chosen to proceed *pro se*.  Simply because you did not have sufficient time does not mean I need to bring back Mr. Myers for --

THE PLAINTIFF:  Your Honor --

THE COURT:  -- more questioning.  I'm just trying to understand your arguments.

THE PLAINTIFF:  Well, your Honor, with all due respect, if Mr. Shiffrin followed the federal rules of procedure and produced all his documents December 1st like he's supposed to,

we wouldn't be having any of this conversation.

He did not.  He gave me six tranches of documents that were, like -- took seven or eight weeks to produce.  He never -- by his own admission at today's hearing, he produced a partial privilege log on January 21st for production that was due starting on December 1st.  So that's a bold-faced lie.  There's a litany of privileged documents that should have been produced with the privilege log in this case, and redacted or not.  And he did not.

THE COURT:  Okay.

THE PLAINTIFF:  He did not produce any metadata.  I'm telling you right now, the production is woefully deficient.  I have been totally hamstrung and handicapped.  And this is all designed to deprive me of my ability to fairly depose the few witnesses that I had and I was up against -- I wasn't late -- I had to stick to these deposition deadlines because until just recently we had a February 1st fact cutoff.

And I don't trust Mr. Shiffrin.  He keeps wanting to push stuff out even farther.  Once we get the extension the week before, he wants to push the expert deposition out till March.  He just keeps trying to run me into a corner to the fact cutoff and run out of time.

THE COURT:  Okay.

THE PLAINTIFF:  It's grossly unfair.

THE COURT:  At any rate --

THE PLAINTIFF:  And we're arguing over minutiae and --

THE COURT:  -- I see no reason to have a continued deposition of Mr. Myers based on what I've been told today.

And so did you also --

THE PLAINTIFF:  [Indiscernible.]

THE COURT:  -- want to depose Mr. Clark?

THE PLAINTIFF:  I will just object to it because I disagree.

THE COURT:  I understand that.

THE PLAINTIFF:  I'll accept your ruling.

THE COURT:  And Mr. Clark, there was a request to depose Mr. Clark.  Do I understand that?  Or that's not -- that's not the case?

THE PLAINTIFF:  Yeah, because he has direct involvement in my economic damages calculations.

THE COURT:  Okay.

THE PLAINTIFF:  And the attorneys of the union are involved in my calculation assumptions by the expert's own deposition testimony.  He has admitted that he didn't do the assumptions of the economic analysis, so the attorneys, Mark Myers, Jim Clark and Captain Declerer, Josh Shiffrin were all involved in doing my economic expert damages.

THE COURT:  Right.  And if you had questions with regard to how they determined your economic damages, those are questions you could put into interrogatories so that you can

get the answer.

THE PLAINTIFF: Your Honor, I have questions of why they're trying to subvert my damages claim. And making comments that my seniority is irrelevant doesn't -- "Don't worry about losing your [indiscernible]." I have 34 years of seniority. They're actually trying to --

THE COURT: I'm sorry. Why can't you put that into an interrogatory, the request for information about damages calculations?

THE PLAINTIFF: I think you're missing the point. I need to depose Mark Myers as a 30(b)(6) witness on a lot of these things because there's a lot of underhanded conflict going on with respect to how it even got to that point. Why are the lawyers even involved in doing my assumptions and calculations? They had an expert. By the expert's own admission, he didn't do any of it.

THE COURT: But --

THE PLAINTIFF: The only --

THE COURT: -- the expert has to start with some information. And I'm sure that you can ask this much more efficiently in interrogatories, seeing that you've already deposed him for at least 11 hours.

THE PLAINTIFF: Your Honor, I --

THE COURT: And the discovery is still open for you to do so.

THE PLAINTIFF: Your Honor --

THE COURT: So there are limits in the amount of time that a witness is deposed in the rules for a reason. And I don't see any reason in this case to supersede that. If you have additional questions on the Defendant's calculations of damages, feel free to put that into an interrogatory where you can require them to put that information in writing and you can use that within the trial --

THE PLAINTIFF: Your Honor --

THE COURT: -- or within any motion that you might file.

THE PLAINTIFF: I'm not going to get bogged down in minutiae. I think the more important issue right now is the spoliation of evidence because we're arguing over, like, trees. We should be looking at the entire forest.

THE COURT: Okay.

MR. SHIFFRIN: There's a full --

THE COURT: Well, I'll definitely take a look at your motion regarding spoliation. But we're not going to be arguing that motion this morning.

THE PLAINTIFF: I understand that. But Mr. Shiffrin keeps going back to the protective orders, which is tainted. It's the fruit of the poisonous tree based on the assertion -- the material misrepresentation of fact made by Pellettieri. So if they're going to keep going behind that, that needs to be

addressed.

I've had a standing objection to your protective order, and now the Ed Sicher declaration blows it out of the water. It shows it's based totally on material misrepresentations in fact made by Mr. Pellettieri in the presence of Mr. Shiffrin and the associate Grace Rybak at the hearing. All three have had the opportunity to get the tribunal to correct those misrepresentations. They have not.

THE COURT: All right.

THE PLAINTIFF: I find that really offensive.

I will tell you right now, I went to law school. I know you think I'm *pro se* and unlearned. I did go to law school. I'm not an officer of the Court, but I was an officer in the U.S. military. And I hold myself to a high standard. My word is my bond. If I even [indiscernible] myself even the slightest --

THE COURT: Mr. Meadows --

THE PLAINTIFF: -- [indiscernible].

THE COURT: -- I understand your argument, and I will definitely take another look at that spoliation of evidence issue.

THE PLAINTIFF: Thank you, your Honor.

THE COURT: Thank you very much.

Court is adjourned.

MR. SHIFFRIN: One --

THE COURT:  Sorry, Mr. Shiffrin?

MR. SHIFFRIN:  One quick matter.  There's a *pro hac vice* motion that's pending.

THE COURT:  Oh.

MR. SHIFFRIN:  I wanted to raise that to your attention.  It's Document No. 189.  It's for our new associate on the case.

THE COURT:  Okay.

MR. SHIFFRIN:  I don't know if you're able to deal with that.

THE COURT:  Okay.  I'll have my law clerk take a look at that today.  Thank you for bringing that to our attention.

MR. SHIFFRIN:  Thank you.

THE COURT:  All right.  Thank you.

THE PLAINTIFF:  Thank you, your Honor.

THE COURT:  Court is adjourned.

(Proceedings concluded.)

C E R T I F I C A T E


        I hereby certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter produced to the best of my ability.



                          /s/Lisa Edwards
_____      LISA EDWARDS, RDR, CRR
     DATE         (305) 439-7168
                  Reporterlisaedwards@gmail.com

## $

**$10,000** [3] - 37:22, 53:1, 53:15

## /

**/s/Lisa** [1] - 70:7

## 1

**1** [1] - 1:8
**1.1** [1] - 7:2
**10** [1] - 1:5
**10,000** [1] - 53:17
**100** [1] - 1:22
**1000** [1] - 1:20
**10019** [1] - 2:4
**11** [3] - 10:5, 43:5, 66:22
**1211** [5] - 19:15, 20:17, 20:25, 21:7, 25:3
**1212** [1] - 20:25
**1301** [1] - 2:3
**13th** [1] - 21:2
**15** [6] - 6:18, 7:20, 10:5, 13:15, 23:9, 24:25
**15th** [1] - 1:19
**16** [2] - 10:5, 20:22
**17-22589** [1] - 3:3
**17-22589-ARTAU** [1] - 1:2
**1700** [1] - 2:3
**17th** [5] - 40:16, 47:5, 49:12, 56:6
**180** [1] - 28:23
**189** [1] - 69:6
**1900** [1] - 1:15
**1st** [12] - 40:17, 40:19, 48:7, 49:12, 51:14, 51:24, 60:8, 63:9, 63:25, 64:6, 64:17

## 2

**2** [1] - 27:17
**20005** [1] - 1:20
**2011** [2] - 23:21, 25:6
**2013** [2] - 21:8, 25:4
**2014** [4] - 6:2, 21:3, 23:5, 24:25
**2015** [3] - 13:25, 20:14, 23:19
**2020** [1] - 33:16

**2021** [1] - 21:1
**2024** [1] - 25:5
**2025** [2] - 23:25, 56:15
**2026** [2] - 1:5, 62:7
**21** [2] - 11:12, 11:23
**2112** [1] - 1:16
**21st** [18] - 34:14, 35:14, 38:12, 38:23, 39:17, 39:18, 41:7, 42:2, 43:12, 44:17, 44:18, 44:23, 45:11, 47:25, 55:4, 58:3, 60:21, 64:5
**22nd** [3] - 40:3, 44:17, 45:15
**23** [1] - 20:14
**23rd** [1] - 20:14
**25** [3] - 44:21, 44:24, 45:15
**26** [1] - 62:2
**26th** [18] - 34:14, 35:14, 42:2, 43:13, 45:17, 46:14, 48:5, 49:9, 49:16, 50:13, 51:3, 51:14, 56:3, 56:5, 56:10, 56:21, 57:18, 60:21
**28th** [1] - 53:2
**2nd** [2] - 48:8, 51:14

## 3

**30** [1] - 46:11
**30(b)(6** [10] - 41:22, 41:24, 41:25, 42:22, 42:25, 43:1, 47:22, 52:20, 54:2, 66:11
**305** [2] - 2:6, 70:8
**33131** [1] - 1:23
**33139** [1] - 1:16
**34** [2] - 29:23, 66:5
**375** [1] - 28:23
**3900** [1] - 1:23

## 4

**439-7168** [2] - 2:6, 70:8

## 5

**5:00** [1] - 38:6
**5:30** [1] - 37:3
**5th** [1] - 27:17

## 6

**66** [1] - 20:13
**67** [1] - 20:13

## 7

**7th** [9] - 21:5, 47:13, 48:2, 49:13, 50:18, 51:19, 54:9, 57:22, 60:1

## 8

**805** [1] - 1:19

## 9

**93** [1] - 27:17
**9:00** [5] - 37:1, 38:13, 38:24, 38:25, 48:23
**9:05** [3] - 37:1, 38:15, 39:3
**9:30** [2] - 38:16, 39:4
**9:40** [1] - 1:6
**9:45** [2] - 44:20, 48:23
**9th** [4] - 50:18, 50:20, 51:18, 54:7

## A

**a.m** [9] - 1:6, 37:1, 38:13, 38:15, 38:24, 38:25, 39:3, 48:23
**ability** [2] - 64:14, 70:5
**able** [8] - 14:25, 36:23, 39:10, 40:4, 40:23, 43:9, 62:22, 69:9
**above-entitled** [1] - 70:5
**abrogated** [1] - 29:25
**absolute** [1] - 42:8
**absolutely** [1] - 59:24
**accept** [1] - 65:10
**accurate** [1] - 70:4
**accused** [1] - 8:8
**action** [3] - 10:24, 15:2, 42:7
**actions** [1] - 15:3
**actual** [2] - 26:8, 48:14

**ADA** [1] - 28:12
**add** [6] - 17:12, 21:14, 22:25, 28:9, 52:6, 53:5
**additional** [8] - 32:3, 35:3, 48:13, 58:24, 59:6, 59:8, 63:15, 67:5
**address** [2] - 3:18, 61:8
**addressed** [4] - 31:7, 61:4, 61:5, 68:1
**addressing** [1] - 56:4
**adjourned** [2] - 68:24, 69:16
**administration** [1] - 11:16
**administrative** [1] - 20:6
**Administrative** [1] - 4:10
**Administrator** [1] - 11:11
**administrator** [1] - 7:7
**admiral** [1] - 32:1
**admission** [2] - 64:4, 66:16
**admit** [1] - 24:6
**admits** [1] - 43:24
**admitted** [4] - 34:16, 37:11, 58:2, 65:19
**advance** [1] - 62:22
**adversary** [1] - 28:12
**advisor** [1] - 29:4
**affect** [1] - 25:9
**AFPs** [1] - 52:11
**ago** [4] - 10:5, 16:19, 17:5
**agree** [2] - 20:19, 23:7
**agreed** [3] - 7:11, 20:18, 20:20
**agreement** [9] - 11:12, 11:23, 25:2, 25:8, 25:14, 28:1, 28:25, 30:12, 32:25
**ahead** [5] - 4:7, 19:8, 31:9, 39:16, 50:11
**Airlines** [16] - 8:18, 8:19, 8:24, 9:1, 9:7, 12:25, 13:5, 13:9, 18:23, 19:23, 20:18, 23:6, 26:6, 26:10, 28:3, 37:22
**al** [1] - 1:7
**albeit** [1] - 25:7
**alleged** [1] - 10:25
**allegedly** [1] - 28:9
**ALLIED** [1] - 1:7

**allow** [1] - 50:24
**allowed** [1] - 53:10
**ambush** [4] - 36:25, 37:2, 37:5
**America's** [1] - 11:15
**American** [41] - 8:4, 8:17, 8:19, 8:24, 9:1, 9:7, 12:25, 13:5, 13:9, 13:23, 13:24, 14:2, 14:5, 14:9, 14:12, 14:14, 15:7, 15:15, 16:1, 17:20, 17:21, 17:22, 18:1, 18:7, 18:20, 18:22, 19:13, 19:23, 20:3, 20:18, 21:6, 22:23, 23:6, 23:25, 24:3, 26:6, 26:10, 28:3, 37:21
**American's** [3] - 14:20, 15:25, 18:17
**Americas** [1] - 2:3
**amount** [2] - 28:7, 67:2
**analysis** [3] - 29:4, 31:17, 65:20
**ANDREW** [1] - 1:21
**Angela** [2] - 4:18, 22:9
**answer** [4] - 10:12, 24:3, 47:19, 66:1
**answered** [1] - 36:12
**anyway** [1] - 59:13
**APA** [47] - 3:9, 8:16, 8:22, 15:14, 15:21, 15:23, 16:9, 17:7, 17:14, 17:18, 17:19, 18:18, 19:11, 19:12, 20:20, 21:1, 21:2, 21:6, 21:15, 23:24, 25:13, 28:1, 28:12, 28:22, 29:17, 30:13, 31:11, 32:6, 32:25, 34:22, 35:19, 35:21, 42:5, 43:22, 43:25, 45:13, 53:17, 53:21, 54:21, 55:11, 55:12, 58:9, 59:12, 61:15, 61:16
**APA's** [9] - 6:19, 17:17, 18:3, 19:21, 27:19, 27:20, 27:21, 28:6, 44:8
**apologize** [2] - 3:8, 5:14
**appeal** [2] - 16:4, 25:13
**APPEARANCES** [2] - 1:13, 2:1
**appearances** [1] - 3:4

**appearing** [3] - 1:15, 3:5, 3:14
**apply** [1] - 58:13
**appointment** [1] - 11:19
**appropriate** [1] - 26:5
**arbitrate** [3] - 20:17, 20:19, 20:21
**arbitration** [2] - 21:3, 21:4
**argue** [3] - 12:13, 18:15, 58:13
**arguing** [3] - 65:1, 67:14, 67:19
**argument** [4] - 22:17, 23:5, 58:22, 68:19
**arguments** [2] - 21:20, 63:22
**assert** [1] - 54:6
**asserted** [3] - 49:14, 51:17, 60:2
**assertion** [1] - 67:23
**associate** [3] - 53:4, 68:6, 69:6
**ASSOCIATION** [1] - 1:7
**assuming** [1] - 50:2
**assumption** [1] - 30:7
**assumptions** [12] - 28:6, 29:13, 29:17, 29:18, 34:18, 43:23, 43:24, 43:25, 65:18, 65:20, 66:14
**assured** [2] - 7:6, 7:7
**Atlanta** [1] - 6:22
**attached** [1] - 4:1
**attachment** [1] - 4:24
**attack** [4] - 10:10, 12:2, 12:12
**attempt** [1] - 6:2
**attempted** [1] - 6:18
**attempting** [2] - 22:17, 61:6
**attention** [2] - 69:6, 69:12
**attorney** [22] - 5:20, 5:21, 5:22, 8:24, 9:7, 12:11, 13:22, 14:24, 15:4, 15:9, 16:20, 16:24, 22:1, 22:15, 22:18, 26:12, 32:6, 37:20, 52:13, 53:11, 61:15, 62:1
**Attorney** [1] - 22:14
**attorney-client** [3] - 5:22, 22:18, 26:12
**attorneys** [17] - 8:2,

17:24, 28:2, 28:7, 28:12, 30:5, 31:11, 35:21, 43:22, 55:16, 58:9, 58:18, 59:12, 60:12, 65:17, 65:20
**audible** [1] - 51:6
**AUDIO** [1] - 1:11
**authorizations** [1] - 52:11
**Avenue** [1] - 2:3
**aware** [5] - 3:22, 7:9, 9:24, 33:14, 54:17

## B

**background** [2] - 29:2, 43:15
**backwards** [1] - 16:12
**ball** [1] - 48:19
**bankruptcy** [2] - 19:12, 20:13
**bargaining** [3] - 11:12, 11:23, 25:7
**based** [12] - 14:23, 18:25, 22:23, 30:21, 32:24, 37:16, 42:1, 56:3, 59:16, 65:3, 67:23, 68:4
**bases** [1] - 61:24
**basis** [5] - 15:22, 17:6, 31:3, 33:6, 45:9
**Beach** [1] - 1:16
**BEFORE** [1] - 1:11
**began** [2] - 44:19, 45:11
**begin** [2] - 31:4, 44:20
**behalf** [8] - 3:6, 3:9, 3:14, 13:3, 22:16, 30:13, 30:14, 32:25
**behaved** [1] - 18:22
**behind** [4] - 7:12, 28:14, 30:4, 67:25
**benefits** [7] - 6:12, 7:3, 8:9, 9:3, 9:4, 10:25, 44:1
**best** [3] - 14:18, 14:21, 70:5
**between** [11] - 6:19, 9:20, 18:6, 23:20, 30:12, 35:18, 51:14, 58:9, 59:23, 60:11, 61:15
**big** [1] - 14:5
**biggest** [1] - 15:10
**billing** [1] - 52:8
**block** [1] - 58:18
**blocking** [1] - 19:23

**blows** [1] - 68:3
**Board** [1] - 20:18
**bogged** [1] - 67:12
**bold** [5] - 21:8, 23:11, 25:14, 53:12, 64:6
**bold-faced** [5] - 21:8, 23:11, 25:14, 53:12, 64:6
**bond** [1] - 68:15
**bottom** [1] - 61:1
**BREDHOFF** [1] - 1:19
**Brian** [1] - 12:16
**brief** [1] - 19:15
**bring** [7] - 17:21, 18:20, 22:22, 24:5, 26:4, 27:14, 63:18
**bringing** [2] - 61:10, 69:12
**burdensome** [1] - 32:2
**business** [2] - 55:13, 55:15
**busy** [1] - 49:5
**BY** [1] - 2:5

## C

**calculation** [3] - 35:23, 35:24, 65:18
**calculations** [4] - 65:15, 66:9, 66:15, 67:5
**camera** [1] - 58:15
**cannot** [2] - 17:1, 59:21
**Captain** [10] - 7:9, 8:8, 12:16, 33:21, 34:17, 34:23, 37:14, 37:18, 52:10, 65:21
**captain** [1] - 28:2
**care** [1] - 20:5
**career** [2] - 14:4, 19:19
**Carey** [2] - 35:18, 44:9
**case** [29] - 5:21, 11:21, 11:24, 15:19, 16:17, 17:17, 18:13, 18:14, 18:25, 19:1, 26:12, 31:1, 32:9, 43:15, 46:19, 47:15, 53:22, 54:25, 56:13, 57:9, 58:13, 60:24, 62:6, 62:20, 64:8, 65:13, 67:4, 69:7
**CASE** [1] - 1:2
**Case** [1] - 3:2

**cases** [1] - 37:25
**caveat** [1] - 41:13
**CBA** [3] - 11:14, 11:15, 23:22
**cell** [2] - 6:17, 55:14
**CEO** [2] - 6:3, 28:24
**certificate** [1] - 7:12
**certification** [1] - 6:8
**certify** [1] - 70:3
**chance** [3] - 43:16, 51:8, 60:19
**character** [7] - 9:22, 10:10, 11:3, 12:2, 12:3, 12:12, 25:25
**characterized** [1] - 31:16
**chief** [1] - 11:14
**chosen** [1] - 63:17
**Circuit** [3] - 16:4, 16:22, 25:12
**circumstances** [1] - 25:9
**cited** [1] - 14:16
**City** [1] - 6:22
**claim** [5] - 7:7, 19:11, 19:12, 59:8, 66:3
**claiming** [1] - 61:25
**claims** [6] - 7:11, 8:4, 17:7, 19:13, 42:7, 59:9
**Clark** [18] - 19:22, 28:2, 31:8, 31:10, 32:4, 32:8, 34:16, 34:17, 49:10, 51:15, 52:5, 57:21, 59:11, 59:24, 65:6, 65:11, 65:12, 65:21
**clear** [5] - 8:5, 30:24, 34:15, 37:16, 61:10
**Clerk** [4] - 3:20, 4:2, 4:11, 22:9
**CLERK** [1] - 5:1
**clerk** [7] - 3:23, 4:17, 4:22, 5:11, 5:12, 22:6, 69:11
**clerk's** [1] - 4:14
**client** [6] - 5:22, 22:16, 22:18, 26:12, 28:22, 31:17
**cloak** [1] - 28:16
**closed** [2] - 21:7, 25:3
**Code** [2] - 33:14, 46:22
**colleague** [1] - 3:10
**collected** [1] - 28:4
**collection** [1] - 56:17
**collective** [3] - 11:12, 11:23, 25:7
**coming** [1] - 33:2

**comments** [1] - 66:4
**committee** [1] - 29:5
**common** [1] - 46:7
**communicate** [1] - 53:21
**communicating** [2] - 15:8, 37:10
**communication** [3] - 14:17, 23:20, 45:13
**communications** [13] - 9:20, 12:4, 14:15, 28:10, 31:14, 32:11, 37:10, 47:6, 47:14, 52:4, 52:6, 57:20, 59:23
**company** [6] - 6:3, 6:14, 12:20, 12:21, 55:19, 58:18
**complaint** [1] - 6:14
**complete** [1] - 51:18
**compliant** [13] - 25:7, 47:12, 48:1, 48:18, 49:14, 50:18, 51:18, 54:8, 54:9, 54:10, 54:11, 57:23, 60:2
**component** [1] - 7:4
**concern** [2] - 7:8, 57:16
**concluded** [1] - 69:17
**conduct** [3] - 11:20, 12:18, 41:12
**conducting** [1] - 55:14
**conference** [1] - 48:23
**conferred** [1] - 9:25
**conflict** [1] - 66:12
**confronted** [1] - 16:10
**confused** [1] - 7:21
**connect** [1] - 21:10
**connection** [3] - 31:12, 62:10, 62:15
**consideration** [1] - 26:25
**consultant** [1] - 61:16
**consulting** [4] - 28:1, 28:25, 30:12, 32:25
**CONT'D** [1] - 2:1
**contact** [2] - 20:3, 30:15
**contacted** [1] - 7:6
**contacting** [2] - 14:13, 20:10
**contends** [1] - 17:18
**contention** [1] - 47:16

**context** [4] - 5:25, 10:15, 11:7, 44:15
**continue** [1] - 7:3
**continued** [3] - 38:3, 59:17, 65:2
**contractual** [1] - 11:11
**control** [1] - 55:13
**conversation** [3] - 10:18, 22:25, 64:1
**conversations** [3] - 10:16, 12:4, 13:14
**cooperative** [1] - 41:9
**copied** [3] - 31:13, 32:5, 35:21
**copy** [6] - 4:19, 5:8, 5:9, 5:15, 22:8, 32:21
**corner** [1] - 64:21
**corporate** [1] - 7:14
**corporation** [2] - 8:2, 28:24
**correct** [5] - 4:4, 8:16, 24:22, 30:22, 68:7
**correctly** [1] - 29:12
**costing** [2] - 29:6, 29:7
**counsel** [6] - 3:4, 3:10, 6:20, 6:21, 28:25, 41:11
**country** [2] - 15:16, 16:6
**couple** [3] - 3:17, 13:20, 39:14
**course** [12] - 5:20, 12:25, 19:18, 26:23, 27:14, 31:11, 44:21, 45:7, 45:8, 50:24, 51:19, 54:13
**court** [7] - 16:1, 20:19, 20:20, 25:11, 26:18, 68:24, 69:16
**COURT** [227] - 1:1, 3:1, 3:7, 3:12, 3:15, 3:25, 4:7, 4:9, 4:21, 5:4, 5:11, 5:16, 8:11, 8:15, 8:19, 8:22, 8:24, 9:5, 9:9, 9:14, 9:17, 10:7, 10:12, 10:18, 10:21, 11:1, 11:5, 12:9, 12:23, 13:3, 13:7, 13:9, 13:12, 13:16, 13:18, 17:9, 18:8, 18:11, 18:17, 18:24, 19:4, 19:7, 21:10, 21:20, 21:23, 21:25, 22:10, 22:13, 23:2, 23:12, 24:5, 24:8, 24:10, 24:12,

24:15, 24:19, 25:16, 26:1, 26:3, 26:15, 26:20, 26:23, 27:1, 27:5, 27:9, 27:12, 29:8, 29:10, 29:12, 29:18, 30:6, 30:20, 30:23, 31:5, 31:9, 32:13, 32:16, 32:18, 33:4, 33:8, 33:10, 34:24, 35:3, 35:13, 35:16, 35:25, 36:2, 36:5, 36:7, 36:11, 36:14, 36:18, 36:22, 37:6, 37:24, 38:2, 38:5, 38:9, 38:11, 38:18, 38:20, 38:25, 39:6, 39:10, 39:14, 39:19, 39:21, 39:25, 40:3, 40:11, 40:14, 40:18, 40:21, 41:2, 41:4, 41:6, 41:19, 42:3, 42:12, 42:17, 42:19, 42:24, 43:4, 43:11, 43:14, 44:3, 44:10, 44:13, 45:1, 45:4, 46:1, 46:3, 46:25, 47:2, 47:10, 47:18, 49:15, 49:20, 49:23, 50:2, 50:6, 50:8, 50:12, 50:22, 50:24, 51:7, 51:11, 51:21, 51:23, 52:1, 52:16, 52:19, 52:22, 53:7, 53:13, 53:15, 53:19, 53:23, 54:13, 54:16, 54:22, 55:1, 55:3, 55:6, 55:17, 55:23, 56:1, 56:11, 56:19, 56:24, 57:2, 57:5, 57:10, 57:13, 57:16, 57:24, 58:4, 58:9, 58:22, 59:1, 59:4, 59:15, 59:19, 60:11, 60:15, 60:23, 61:6, 61:8, 61:14, 61:18, 61:22, 62:3, 62:9, 62:11, 62:17, 62:21, 63:4, 63:6, 63:14, 63:21, 64:10, 64:23, 64:25, 65:2, 65:6, 65:9, 65:11, 65:16, 65:23, 66:7, 66:17, 66:19, 66:24, 67:2, 67:10, 67:16, 67:18, 68:9, 68:17, 68:19, 68:23, 69:1, 69:4, 69:8, 69:11, 69:14, 69:16
**Court** [17] - 3:21, 4:3, 4:10, 4:12, 4:13, 15:20, 16:5, 16:14,

17:7, 22:9, 23:17, 30:11, 48:1, 50:17, 51:17, 51:20, 68:13
**courts** [2] - 15:16, 16:22
**Cox** [1] - 58:20
**create** [1] - 29:14
**created** [1] - 6:3
**crime** [2] - 58:16, 58:19
**crime-fraud** [1] - 58:16
**cross** [5] - 15:3, 21:19, 36:8, 59:2, 63:13
**cross-talk** [4] - 21:19, 36:8, 59:2, 63:13
**CRR** [2] - 2:5, 70:8
**current** [2] - 27:20, 61:3
**cut** [1] - 13:5
**cutoff** [3] - 63:9, 64:17, 64:22

## D

**D.C** [1] - 1:20
**damage** [1] - 34:19
**damages** [12] - 28:8, 28:14, 29:7, 29:21, 30:4, 35:24, 65:15, 65:22, 65:24, 66:3, 66:8, 67:6
**Dan** [1] - 44:9
**data** [8] - 28:4, 35:23, 36:9, 42:4, 48:14, 54:20, 55:13, 56:3
**DATE** [1] - 70:8
**date** [4] - 36:16, 36:19, 51:23, 57:21
**dated** [3] - 27:17, 49:12, 51:14
**days** [2] - 31:19, 31:21
**deadlines** [1] - 64:16
**deal** [3] - 7:23, 8:1, 69:9
**dealing** [4] - 13:1, 13:10, 13:13, 15:11
**dealt** [1] - 7:20
**decade** [4] - 10:4, 15:6, 16:19, 17:5
**December** [6] - 40:17, 40:18, 56:15, 63:25, 64:6
**decide** [1] - 21:25
**decision** [5] - 16:2,

18:17, 18:20, 22:23, 26:17
**decisions** [1] - 26:10
**declaration** [5] - 12:15, 20:24, 37:14, 55:9, 68:3
**declarations** [2] - 34:22, 37:19
**Declerer** [2] - 34:17, 65:21
**declines** [1] - 23:17
**deemed** [2] - 12:20, 25:6
**default** [1] - 58:14
**defective** [1] - 34:6
**Defendant** [1] - 3:9
**Defendant's** [1] - 67:5
**Defendants** [1] - 5:21
**defendants** [1] - 1:8
**DEFENDANTS** [1] - 1:18
**deficient** [3] - 34:2, 34:5, 64:12
**definitely** [2] - 67:18, 68:20
**definition** [2] - 37:2, 37:4
**degrees** [1] - 17:6
**delaying** [1] - 37:8
**deleted** [1] - 54:20
**delinquent** [1] - 34:2
**demonstrates** [1] - 16:24
**denied** [1] - 19:16
**departing** [1] - 54:21
**depo** [1] - 16:8
**depose** [21] - 11:25, 12:7, 17:15, 24:6, 30:25, 31:3, 32:7, 32:22, 33:20, 35:8, 38:22, 39:16, 39:21, 41:8, 46:8, 59:1, 59:6, 64:14, 65:6, 65:12, 66:11
**deposed** [11] - 18:5, 27:25, 39:18, 40:3, 43:5, 45:20, 45:21, 46:6, 46:20, 66:22, 67:3
**deposing** [4] - 22:24, 26:11, 38:12, 63:2
**deposition** [52] - 10:1, 12:6, 18:1, 18:12, 21:11, 27:23, 28:20, 31:23, 31:24, 32:3, 33:23, 33:24, 33:25, 34:11, 34:12, 34:14, 34:15, 35:4,

35:10, 35:11, 36:15, 36:21, 37:1, 37:3, 37:19, 38:3, 38:6, 39:7, 39:12, 39:19, 44:17, 44:19, 45:11, 45:14, 45:18, 45:23, 46:1, 46:2, 46:14, 46:17, 48:7, 48:22, 49:9, 54:22, 56:2, 62:22, 63:7, 63:17, 64:16, 64:20, 65:3, 65:19
**depositions** [7] - 28:23, 31:19, 34:4, 34:25, 46:12, 49:24, 59:17
**deprive** [1] - 64:14
**deprived** [2] - 11:22, 34:9
**deputy** [1] - 5:12
**described** [1] - 45:12
**deserve** [1] - 6:13
**designed** [1] - 64:14
**designee** [2] - 52:21, 54:2
**despite** [1] - 53:10
**destroyed** [2] - 29:24, 54:20
**destruction** [3] - 54:25, 55:7, 60:25
**determine** [2] - 26:3, 56:1
**determined** [3] - 44:22, 45:8, 65:24
**devices** [1] - 55:18
**differences** [1] - 6:2
**different** [2] - 34:22, 49:24
**DIGITAL** [1] - 1:11
**direct** [4] - 9:11, 24:1, 34:16, 65:14
**directly** [5] - 7:20, 7:23, 8:2, 9:11, 13:1
**director** [2] - 11:16, 19:21
**disability** [7] - 7:3, 7:6, 8:9, 9:3, 20:6, 44:1
**disabled** [1] - 12:19
**disadvantage** [1] - 40:9
**disagree** [2] - 34:12, 65:8
**discharged** [1] - 19:14
**discipline** [2] - 31:25, 46:21
**disclosed** [1] - 6:25
**discover** [1] - 28:21
**discovered** [1] -

27:25

**discovery** [13] - 31:2, 32:9, 32:11, 34:9, 36:25, 40:22, 46:7, 49:13, 60:9, 61:3, 61:9, 62:6, 66:24

**DISCOVERY** [1] - 1:10

**discredit** [2] - 25:25, 42:5

**discretion** [1] - 17:21

**discuss** [4] - 3:2, 41:20, 41:21, 51:4

**discussed** [3] - 5:19, 8:25, 9:2

**discussions** [2] - 7:5, 26:7

**disguise** [1] - 28:15

**disingenuous** [2] - 37:7, 47:4

**dismiss** [1] - 16:5

**dismissed** [2] - 15:1, 16:5

**disparate** [4] - 42:9, 43:19, 44:4, 44:6

**disposal** [1] - 45:15

**disproven** [1] - 37:18

**dispute** [9] - 17:25, 18:1, 18:6, 24:21, 26:6, 26:8, 52:24, 54:8, 60:9

**disputes** [1] - 61:4

**District** [3] - 14:10, 14:16, 16:3

**DISTRICT** [2] - 1:1, 1:1

**DIVISION** [1] - 1:2

**do-over** [1] - 46:5

**doctrine** [1] - 62:2

**Document** [1] - 69:6

**document** [3] - 4:1, 50:4, 51:2

**documents** [93] - 4:23, 31:11, 31:12, 33:23, 34:1, 34:3, 34:5, 34:9, 34:13, 35:9, 35:11, 35:16, 35:17, 35:25, 36:14, 36:15, 37:1, 37:3, 38:6, 38:16, 39:1, 40:4, 40:10, 40:15, 40:17, 40:21, 40:24, 41:7, 42:1, 42:13, 42:19, 43:10, 43:11, 43:12, 43:16, 44:6, 44:10, 44:11, 44:21, 44:23, 44:24, 45:1, 45:8, 45:10, 45:12, 45:15, 45:16, 45:17, 45:19, 46:5, 46:14,

46:15, 47:21, 48:10, 48:11, 48:14, 48:16, 48:22, 48:25, 49:2, 49:7, 49:9, 49:15, 50:3, 50:12, 51:4, 52:14, 52:15, 52:16, 54:3, 56:7, 56:15, 56:17, 56:20, 57:17, 58:6, 59:8, 59:11, 59:23, 60:3, 60:5, 60:15, 60:20, 62:7, 62:15, 62:19, 62:21, 62:24, 63:2, 63:25, 64:2, 64:7

**dollar** [1] - 48:20

**done** [7] - 17:18, 17:22, 18:18, 28:25, 31:18, 46:19, 62:19

**door** [2] - 6:3, 9:20

**Doug** [1] - 6:4

**down** [2] - 16:17, 67:12

**Drew** [1] - 3:10

**drive** [2] - 54:19, 55:12

**Drive** [1] - 1:15

**duces** [2] - 4:12, 22:1

**due** [9] - 11:22, 19:15, 23:22, 40:16, 40:17, 40:18, 45:17, 63:23, 64:6

**Duffield** [1] - 6:22

**dumped** [1] - 33:23

**during** [5] - 9:15, 18:12, 27:23, 33:16, 37:8

**duty** [2] - 7:11, 46:19

**DYMOWSKI** [1] - 1:21

**Dymowski** [1] - 3:11

## E

**ECF** [1] - 27:16

**economic** [12] - 28:24, 29:4, 29:21, 30:4, 34:19, 43:22, 51:13, 59:23, 65:15, 65:20, 65:22, 65:24

**Ed** [3] - 20:23, 34:23, 68:3

**Edward** [2] - 21:2, 37:18

**Edwards** [8] - 37:19, 52:5, 52:6, 52:15, 52:24, 53:11, 57:8, 70:7

**EDWARDS** [2] - 2:5,

70:8

**efficiently** [1] - 66:21

**eight** [2] - 6:23, 64:3

**either** [2] - 12:20, 15:21

**eleventh** [1] - 40:10

**Eleventh** [3] - 16:4, 16:22, 25:12

**elsewhere** [1] - 17:1

**email** [11] - 4:22, 5:1, 5:3, 5:4, 5:7, 6:18, 22:5, 22:23, 24:13, 24:16, 48:14

**emailed** [2] - 39:3, 39:6

**emails** [19] - 32:5, 35:18, 39:4, 42:18, 42:19, 45:1, 45:3, 45:5, 48:4, 48:6, 48:17, 48:18, 48:24, 50:13, 51:14, 51:24, 60:11, 61:15, 61:19

**employee** [1] - 12:21

**employees** [2] - 14:14, 20:4

**end** [3] - 11:11, 11:19, 14:5

**end-run** [1] - 11:11

**ended** [2] - 6:24, 31:24

**engages** [1] - 41:14

**enjoined** [1] - 14:25

**entered** [1] - 31:1

**entire** [3] - 37:8, 48:19, 67:15

**entitled** [3] - 19:5, 35:11, 70:5

**entries** [1] - 62:16

**especially** [1] - 7:22

**ESQ** [4] - 1:18, 1:18, 1:21, 2:2

**essentially** [2] - 33:10, 51:4

**et** [1] - 1:7

**eve** [1] - 33:25

**evening** [5] - 36:20, 37:3, 38:6, 38:16, 48:4

**events** [1] - 10:3

**evidence** [18] - 12:7, 17:19, 18:4, 19:21, 26:9, 42:8, 42:12, 42:14, 49:8, 54:18, 54:25, 55:7, 60:25, 67:14, 68:20

**exact** [1] - 23:24

**exactly** [1] - 10:14

**example** [1] - 14:17

**Excel** [1] - 48:15

**exception** [3] -

58:16, 58:20, 62:1

**exclude** [1] - 23:19

**excuse** [9] - 10:12, 21:23, 26:15, 36:2, 59:4

**excused** [1] - 27:7

**executive** [1] - 28:24

**exercised** [1] - 17:21

**exhibit** [1] - 45:14

**exist** [4] - 56:16, 56:23, 57:3, 62:13

**existed** [3] - 48:7, 59:25, 60:1

**expected** [1] - 41:12

**expense** [1] - 52:11

**expert** [45] - 27:22, 27:23, 27:25, 28:5, 28:22, 29:14, 30:12, 30:15, 30:17, 30:19, 31:13, 31:14, 31:16, 32:4, 33:4, 33:5, 33:25, 34:16, 37:4, 43:23, 43:24, 45:21, 46:1, 46:2, 46:10, 48:5, 49:9, 49:25, 50:6, 51:13, 56:9, 56:14, 59:23, 60:12, 61:25, 62:22, 62:23, 63:1, 64:20, 65:22, 66:15, 66:19

**expert's** [5] - 27:23, 34:15, 56:7, 65:18, 66:15

**explain** [2] - 43:8, 51:8

**explained** [1] - 18:11

**explicit** [1] - 44:6

**explore** [1] - 43:10

**expressed** [1] - 32:10

**extension** [1] - 64:19

**extent** [2] - 52:23, 58:12

**extinguish** [1] - 24:1

**extremely** [1] - 49:5

## F

**FAA** [2] - 6:7, 20:9

**fabricating** [2] - 11:21, 12:18

**faced** [5] - 21:8, 23:11, 25:14, 53:12, 64:6

**fact** [20] - 8:7, 11:24, 12:15, 12:24, 21:14, 21:15, 22:22, 25:4, 25:5, 34:11, 46:15, 48:11, 52:13, 52:24,

52:25, 63:9, 64:17, 64:22, 67:24, 68:5

**facts** [5] - 12:23, 12:24, 17:4, 26:8, 46:15

**failed** [2] - 19:11, 19:19

**fair** [3] - 33:19, 34:4, 46:23

**fairly** [2] - 41:9, 64:14

**far** [2] - 22:19, 46:19

**February** [7] - 1:5, 6:1, 23:5, 27:17, 55:10, 63:9, 64:17

**federal** [4] - 14:20, 20:19, 25:11, 63:24

**feigns** [1] - 10:3

**fellow** [1] - 63:1

**felt** [1] - 10:19

**few** [2] - 19:7, 64:14

**fiduciaries** [1] - 7:23

**file** [1] - 67:11

**filed** [3] - 6:14, 13:24, 34:21

**finance** [1] - 29:3

**financial** [2] - 29:4, 52:11

**fine** [1] - 27:7

**finish** [2] - 21:22, 50:9

**finished** [1] - 16:3

**firing** [1] - 7:15

**firm** [1] - 53:5

**first** [12] - 4:9, 11:25, 19:9, 23:4, 26:6, 32:19, 33:21, 35:5, 41:23, 46:18, 55:6, 55:10

**fit** [2] - 18:9, 61:25

**fits** [2] - 16:17, 17:16

**five** [6] - 33:22, 36:24, 39:7, 39:20, 40:1, 46:18

**FLORIDA** [1] - 1:1

**Florida** [4] - 1:4, 1:16, 1:23, 16:3

**focus** [1] - 38:2

**followed** [1] - 63:24

**following** [1] - 39:22

**FOR** [3] - 1:14, 1:18, 2:2

**foregoing** [1] - 70:3

**foremost** [1] - 11:25

**forest** [1] - 67:15

**former** [6] - 12:19, 19:24, 34:22, 35:17, 44:8, 45:13

**forth** [1] - 7:5

**fortunately** [1] - 7:16

**forums** [1] - 19:18
**forward** [2] - 5:2, 21:3
**forwarded** [2] - 5:9, 5:17
**foundational** [1] - 24:2
**frame** [1] - 43:7
**fraud** [2] - 58:16, 58:19
**fraudulent** [2] - 7:9, 23:24
**fraudulently** [1] - 8:8
**free** [1] - 67:6
**freedom** [1] - 35:20
**friend** [1] - 63:1
**FROM** [1] - 1:11
**fruit** [1] - 67:23
**full** [6] - 31:20, 33:19, 34:4, 45:16, 53:10, 67:17
**fully** [12] - 43:9, 47:12, 48:1, 49:14, 50:18, 51:17, 51:18, 54:7, 54:9, 57:23, 60:2, 60:19
**fulsome** [1] - 62:19

### G

**general** [1] - 6:20
**generally** [1] - 45:5
**given** [7] - 11:10, 48:17, 49:1, 49:9, 49:16, 51:13, 60:18
**globally** [2] - 40:6, 48:24
**glove** [1] - 19:22
**GORDON** [1] - 1:22
**Grace** [2] - 53:4, 68:6
**grant** [1] - 25:19
**granted** [2] - 16:5, 27:20
**great** [1] - 7:8
**Grievance** [4] - 20:17, 20:25, 21:7, 25:3
**grievance** [8] - 8:1, 15:24, 20:21, 20:24, 21:3, 24:1, 25:9, 25:15
**grievances** [6] - 11:9, 15:22, 42:10, 43:20, 43:21
**gross** [1] - 33:17
**grossly** [3] - 12:12, 60:10, 64:24
**grounds** [1] - 12:13
**group** [4] - 28:3,

31:16, 44:20, 44:24
**guess** [1] - 4:1
**Guio** [2] - 6:20, 19:23
**gun** [2] - 44:6, 44:10
**guy** [1] - 63:2

### H

**hac** [1] - 69:2
**half** [2] - 39:20, 41:16
**hall** [1] - 35:21
**hamstrung** [1] - 64:13
**hand** [5] - 19:22, 21:12, 29:2, 46:8
**handful** [1] - 49:2
**handicapped** [1] - 64:13
**handled** [2] - 30:4, 30:6
**hands** [2] - 7:7, 8:1
**hands-off** [1] - 7:7
**Hansen** [2] - 11:11, 25:6
**happy** [1] - 31:8
**harassing** [1] - 32:2
**Harbour** [1] - 1:15
**hard** [3] - 5:8, 54:19, 55:12
**harmed** [1] - 61:2
**hear** [2] - 22:17, 23:2
**heard** [4] - 22:19, 38:20, 50:9, 55:2
**HEARING** [1] - 1:10
**hearing** [23] - 5:2, 9:25, 10:2, 20:13, 21:4, 24:21, 27:6, 28:16, 40:22, 40:25, 41:1, 45:22, 49:5, 51:19, 53:10, 54:9, 57:22, 59:16, 60:1, 60:9, 64:4, 68:6
**hearsay** [1] - 33:1
**heavily** [1] - 35:23
**help** [1] - 17:18
**hereby** [1] - 70:3
**hide** [1] - 48:19
**hide-the-ball** [1] - 48:19
**high** [1] - 68:14
**hired** [3] - 37:20, 60:12, 61:16
**history** [1] - 37:25
**hold** [3] - 16:22, 54:21, 68:14
**home** [2] - 36:20, 38:17
**honest** [1] - 49:1

**Honor** [55] - 3:5, 3:8, 3:13, 3:24, 4:5, 4:17, 5:7, 5:13, 5:24, 9:10, 17:3, 17:8, 19:2, 21:13, 21:22, 22:4, 23:1, 26:14, 26:21, 27:4, 27:8, 27:16, 32:17, 33:1, 33:3, 33:12, 34:21, 38:8, 39:13, 43:9, 44:12, 45:22, 45:23, 50:23, 51:12, 51:22, 54:12, 54:15, 57:20, 59:3, 59:18, 59:20, 61:7, 61:13, 61:23, 63:12, 63:20, 63:23, 66:2, 66:23, 67:1, 67:9, 68:22, 69:15
**HONORABLE** [1] - 1:11
**hope** [1] - 27:10
**hostile** [3] - 9:22, 28:12, 41:10
**hour** [3] - 6:4, 6:17, 40:10
**hours** [11] - 6:23, 39:19, 40:2, 41:12, 41:17, 41:20, 43:5, 43:7, 46:17, 46:18, 66:22
**house** [3] - 13:22, 14:24, 16:20

### I

**images** [1] - 48:17
**immediate** [1] - 16:23
**immediately** [1] - 37:16
**important** [1] - 67:13
**impossible** [2] - 61:2, 61:9
**impugn** [2] - 9:22, 11:2
**in-camera** [1] - 58:15
**in-house** [3] - 13:22, 14:24, 16:20
**inadvertently** [1] - 44:22
**inclined** [2] - 24:25, 25:18
**include** [1] - 18:13
**included** [1] - 59:15
**including** [6] - 4:23, 13:17, 35:22, 52:4, 52:5
**Incomprehensible** [1] - 36:8

**incomprehensible** [3] - 21:19, 59:2, 63:13
**incorrect** [1] - 38:8
**indiscernible** [27] - 6:24, 7:15, 11:19, 13:14, 15:12, 16:9, 20:10, 21:1, 21:4, 21:7, 23:25, 31:6, 32:17, 34:21, 36:9, 37:14, 38:14, 42:4, 47:1, 49:1, 49:10, 49:13, 50:5, 50:7, 58:13, 65:5, 68:15
**indiscernible]** [9] - 6:10, 7:13, 27:10, 29:11, 52:18, 53:22, 62:2, 66:5, 68:18
**individual** [3] - 41:24, 41:25, 43:1
**individually** [2] - 37:21, 37:22
**individuals** [3] - 15:3, 29:17, 52:4
**inducement** [1] - 7:9
**inducing** [1] - 8:8
**infected** [1] - 55:19
**information** [24] - 16:25, 17:2, 26:17, 27:13, 27:15, 27:18, 27:21, 29:14, 30:21, 31:15, 31:16, 32:24, 33:5, 33:10, 35:3, 46:8, 54:2, 56:8, 56:14, 57:14, 66:8, 66:20, 67:7
**initial** [2] - 49:11, 60:6
**initiate** [1] - 31:25
**injunction** [6] - 14:9, 14:11, 15:17, 19:10, 20:3, 20:14
**insisting** [1] - 12:1
**instead** [1] - 11:13
**intend** [2] - 18:13, 18:15
**interacting** [2] - 15:21, 22:15
**interaction** [2] - 16:18
**interactions** [3] - 13:23, 15:5, 17:5
**interest** [2] - 29:2, 32:10
**interested** [1] - 30:3
**interesting** [1] - 22:2
**interfering** [2] - 11:21, 12:19
**intermix** [1] - 41:24
**internal** [1] - 33:16
**interrogatories** [2] -

65:25, 66:21
**interrogatory** [2] - 66:8, 67:6
**interrupting** [1] - 22:3
**interrupts** [1] - 41:15
**introduce** [2] - 19:21, 25:21
**investigation** [1] - 33:16
**invoke** [2] - 44:8, 58:16
**invoked** [1] - 35:19
**involve** [2] - 42:4, 42:5
**involved** [11] - 28:3, 29:6, 29:20, 30:3, 34:18, 35:15, 35:23, 43:22, 65:18, 65:22, 66:14
**involvement** [7] - 32:4, 34:16, 35:22, 43:20, 43:21, 58:17, 65:14
**involving** [1] - 48:5
**irrelevant** [1] - 66:4
**irreparably** [1] - 61:2
**issue** [12] - 3:16, 21:25, 26:18, 26:20, 27:1, 27:15, 35:1, 48:24, 53:5, 57:6, 67:13, 68:21
**issued** [5] - 3:21, 20:3, 20:16, 48:2, 48:8
**issues** [6] - 3:2, 7:24, 42:23, 61:4, 61:9, 61:10

### J

**January** [37] - 20:14, 34:13, 34:14, 35:14, 35:15, 38:23, 41:7, 47:13, 47:25, 48:2, 48:5, 48:7, 49:9, 49:12, 49:13, 49:16, 50:13, 50:18, 50:20, 51:14, 51:18, 51:19, 51:24, 54:9, 55:3, 56:3, 56:5, 56:6, 56:18, 57:22, 58:2, 60:1, 60:8, 60:21, 62:7, 64:5
**Jim** [10] - 19:22, 28:2, 31:7, 31:10, 32:4, 49:10, 51:15, 52:5, 57:21, 65:21
**job** [4] - 17:19,

17:20, 18:19, 62:19
**JOHN** [1] - 1:18
**John** [1] - 3:10
**joined** [1] - 6:3
**Josh** [1] - 65:21
**Joshua** [1] - 3:9
**JOSHUA** [1] - 1:18
**judge** [3] - 5:1,
14:20, 26:3
**Judge** [4] - 19:16,
20:2, 20:16, 20:25
**JUDGE** [1] - 1:12
**juncture** [5] - 12:14,
48:3, 49:2, 49:8, 61:3
**June** [1] - 21:2
**Justice** [2] - 33:15,
46:22
**justification** [1] -
17:4
**justifies** [1] - 22:19

## K

**KAISER** [1] - 1:19
**keep** [2] - 49:6, 67:25
**keeps** [4] - 16:7,
64:18, 64:21, 67:22
**key** [1] - 44:5
**keyword** [2] - 34:6,
40:6
**kind** [5] - 15:2,
16:16, 16:23, 27:24,
46:16
**knowledge** [5] -
24:2, 33:7, 43:1, 43:2

## L

**Labor** [1] - 20:17
**labor** [1] - 58:20
**lack** [1] - 48:21
**Lake** [1] - 6:22
**Lane** [3] - 19:16,
20:2, 20:25
**Lane's** [1] - 20:16
**laptop** [2] - 55:12,
55:19
**last** [9] - 10:4, 16:19,
20:24, 21:14, 34:21,
49:5, 52:10, 55:9,
55:10
**late** [4] - 27:25, 42:1,
48:20, 64:15
**late-produced** [1] -
42:1
**law** [6] - 4:21, 6:16,
19:1, 68:11, 68:12,
69:11

**LAW** [1] - 5:1
**LAWRENCE** [2] -
1:4, 1:14
**Lawrence** [1] - 3:5
**lawsuit** [9] - 11:8,
11:20, 14:7, 14:24,
15:14, 15:23, 15:25,
18:4, 28:13
**lawsuits** [1] - 15:12
**lawyers** [1] - 66:14
**learn** [1] - 55:6
**learned** [1] - 46:15
**least** [3] - 14:20,
46:17, 66:22
**leave** [2] - 5:25,
26:17
**leaves** [1] - 20:2
**led** [1] - 10:16
**left** [7] - 10:22,
13:25, 15:6, 17:23,
17:25, 24:17, 53:5
**legal** [6] - 19:21,
35:18, 35:19, 35:21,
42:5, 44:8
**Leticia** [1] - 19:23
**letter** [11] - 7:13,
11:10, 11:16, 23:22,
23:24, 24:24, 25:5,
25:15, 54:21
**letters** [4] - 10:22,
11:21, 12:18, 45:2
**lie** [7] - 21:8, 23:11,
24:3, 24:8, 53:6,
53:12, 64:6
**life** [1] - 46:16
**limine** [4] - 23:16,
25:19, 26:4, 26:16
**limited** [2] - 35:11,
62:1
**limiting** [1] - 46:12
**limits** [3] - 31:2,
62:6, 67:2
**linchpin** [1] - 20:21
**line** [1] - 12:6
**LISA** [2] - 2:5, 70:8
**LISETTE** [1] - 1:11
**list** [6] - 4:22, 11:10,
11:18, 14:13, 19:14,
23:7
**listings** [1] - 48:15
**litany** [3] - 42:15,
47:14, 64:7
**litigants** [2] - 4:11,
4:13
**litigated** [2] - 15:16,
19:18
**litigating** [1] - 16:3
**litigation** [12] - 8:3,
9:3, 10:24, 13:24,
14:1, 14:3, 14:8,

14:14, 15:18, 18:9,
46:16, 54:21
**LMRDA** [2] - 29:23,
42:7
**local** [1] - 3:10
**log** [25] - 37:9, 44:20,
44:21, 45:6, 47:7,
47:8, 47:11, 47:14,
47:21, 47:23, 48:3,
52:7, 54:4, 58:1, 58:2,
58:4, 58:12, 59:16,
60:6, 60:8, 62:13,
62:14, 64:5, 64:8
**long-term** [1] - 44:1
**longstanding** [1] -
8:6
**look** [8] - 9:22,
16:16, 49:7, 54:6,
63:3, 67:18, 68:20,
69:11
**looking** [4] - 5:13,
15:11, 57:7, 67:15
**losing** [1] - 66:5
**lost** [1] - 55:9
**lying** [1] - 33:15

## M

**ma'am** [4] - 13:11,
27:4, 39:9, 40:20
**machinery** [2] -
35:20, 44:8
**MAGISTRATE** [1] -
1:12
**main** [1] - 56:8
**malign** [1] - 25:25
**malware** [1] - 55:20
**management** [1] -
8:2
**managers** [1] - 11:15
**mandatory** [1] -
11:14
**MANSUKHANI** [1] -
1:22
**March** [1] - 64:21
**Marjorie** [4] - 3:14,
3:16, 3:20, 6:1
**MARJORIE** [1] - 2:2
**Mark** [24] - 9:24,
28:2, 28:10, 28:13,
31:7, 31:10, 31:15,
33:13, 34:12, 35:22,
38:12, 47:6, 48:5,
49:10, 50:7, 51:14,
52:4, 52:17, 52:19,
52:20, 57:21, 65:20,
66:11
**mark** [1] - 3:13
**MARK** [1] - 2:2

**match** [1] - 11:15
**material** [4] - 25:4,
52:24, 67:24, 68:4
**matter** [16] - 4:17,
5:19, 5:25, 6:6, 7:1,
7:21, 7:25, 9:12,
19:16, 25:11, 25:12,
31:20, 48:13, 61:1,
69:2, 70:5
**matters** [6] - 8:1,
15:8, 30:25, 31:2,
32:8, 41:19
**MBA** [1] - 29:2
**MEADOWS** [2] - 1:4,
1:14
**Meadows** [54] - 3:5,
3:19, 5:9, 13:21,
13:23, 13:24, 14:10,
14:11, 14:23, 15:6,
15:14, 15:20, 15:22,
16:19, 17:14, 17:18,
17:23, 18:6, 18:19,
18:22, 18:25, 21:23,
30:10, 30:24, 31:7,
31:12, 31:15, 31:18,
31:20, 31:25, 32:9,
32:18, 44:16, 44:18,
45:10, 45:18, 46:9,
46:13, 46:20, 46:24,
47:2, 51:1, 51:7,
53:15, 54:16, 56:6,
57:16, 62:5, 62:12,
62:24, 63:6, 63:14,
68:17
**Meadows's** [1] - 32:7
**mean** [7] - 16:12,
18:15, 24:20, 37:13,
61:23, 63:5, 63:18
**meaning** [1] - 61:21
**mediation** [7] - 6:19,
6:23, 8:8, 10:25,
13:17, 14:1, 49:4
**mediator** [1] - 6:22
**medical** [4] - 6:7,
7:12, 7:14, 20:10
**members** [1] - 7:24
**membership** [1] -
29:23
**mention** [1] - 11:8
**message** [2] - 11:6,
55:15
**messages** [2] -
37:13, 55:21
**met** [7] - 6:1, 8:13,
8:15, 8:25, 9:6, 9:25,
16:18
**metadata** [2] - 48:14,
64:11
**MIAMI** [1] - 1:2
**Miami** [3] - 1:4, 1:16,

1:23
**might** [4] - 41:16,
52:5, 53:5, 67:10
**Military** [2] - 33:15,
46:22
**military** [2] - 31:25,
68:14
**million** [1] - 7:2
**mine** [1] - 63:1
**minutes** [3] - 19:7,
33:22, 39:7
**minutiae** [2] - 65:1,
67:13
**mirror** [1] - 48:17
**mischaracterizatio
n** [1] - 33:18
**mischaracterized** [1]
- 20:1
**mischaracterizes** [1]
- 19:10
**misrepresent** [1] -
21:7
**misrepresentation**
[5] - 22:7, 25:4, 25:14,
51:20, 67:24
**misrepresentations**
[3] - 53:11, 68:4, 68:8
**misrepresented** [1] -
52:12
**misrepresents** [1] -
33:13
**missed** [1] - 6:15
**missing** [2] - 44:16,
66:10
**misstatements** [1] -
37:17
**mix** [1] - 41:25
**moment** [2] - 22:3,
38:21
**month** [1] - 7:10
**months** [5] - 6:18,
7:20, 13:15, 23:9,
24:25
**morning** [8] - 3:1,
3:8, 3:13, 20:12,
38:22, 39:7, 44:18,
67:20
**most** [2] - 36:21,
56:22
**mostly** [1] - 45:3
**motion** [11] - 16:5,
23:16, 25:19, 26:16,
54:17, 54:18, 67:10,
67:19, 67:20, 69:3
**motions** [2] - 26:4,
34:22
**move** [1] - 23:18
**moved** [1] - 21:3
**MR** [49] - 3:8, 3:13,
5:7, 13:20, 17:13,

18:10, 18:15, 18:18, 27:8, 27:10, 30:9, 30:22, 30:24, 31:6, 31:10, 32:14, 38:14, 39:23, 44:14, 45:3, 45:5, 46:2, 46:4, 50:23, 53:6, 54:12, 55:25, 56:4, 56:12, 56:20, 56:25, 57:3, 57:6, 57:11, 57:15, 61:7, 61:23, 62:4, 62:10, 62:12, 62:18, 63:10, 63:12, 67:17, 68:25, 69:2, 69:5, 69:9, 69:13

**multiple** [1] - 17:20
**must** [2] - 4:2, 27:22
**muted** [1] - 3:7
**mutual** [1] - 41:23
**mutually** [1] - 20:20
**Myers** [64] - 28:2, 31:7, 31:10, 31:15, 31:19, 31:22, 31:24, 32:1, 32:3, 33:13, 33:20, 34:12, 34:15, 34:17, 35:8, 35:22, 38:3, 38:7, 38:12, 38:22, 39:16, 41:8, 41:9, 44:17, 45:18, 45:20, 46:6, 46:16, 46:17, 46:20, 46:23, 47:6, 47:22, 48:5, 49:10, 49:18, 49:25, 50:4, 50:7, 50:15, 51:15, 52:5, 52:17, 52:19, 52:20, 53:24, 54:23, 55:7, 56:2, 57:21, 59:6, 59:11, 59:19, 59:24, 60:16, 61:11, 61:15, 63:19, 65:3, 65:21, 66:11
**Myers's** [3] - 35:22, 46:14, 48:7

## N

**name** [2] - 15:17, 32:21
**native** [2] - 48:17, 48:18
**naturally** [1] - 5:21
**Navy** [1] - 32:1
**necessary** [1] - 12:14
**need** [17] - 3:17, 9:23, 11:3, 23:13, 27:14, 36:6, 36:12, 41:6, 41:8, 42:13, 43:6, 57:13, 59:7, 61:1, 61:11, 63:18,

66:11
**needed** [3] - 17:11, 62:23, 63:15
**needs** [3] - 16:7, 55:2, 67:25
**negotiate** [1] - 6:18
**negotiating** [1] - 29:4
**negotiation** [1] - 9:15
**negotiations** [1] - 9:11
**never** [28] - 24:13, 28:23, 32:9, 33:13, 37:9, 47:8, 47:10, 47:11, 47:13, 47:20, 47:21, 47:23, 48:16, 49:14, 52:6, 52:7, 52:12, 52:13, 52:24, 54:10, 54:21, 58:1, 58:2, 59:14, 60:7, 60:20, 64:4
**New** [4] - 2:4, 14:10, 14:16
**new** [6] - 6:3, 27:13, 27:14, 33:10, 56:3, 69:6
**next** [6] - 5:19, 6:18, 27:1, 41:8, 45:10
**Nick** [3] - 27:3, 27:20, 28:1
**night** [2] - 39:5, 39:12
**NO** [1] - 1:2
**Noble** [2] - 4:18, 22:9
**non** [1] - 32:8
**NON** [1] - 2:2
**NON-PARTY** [1] - 2:2
**non-privileged** [1] - 32:8
**none** [4] - 56:12, 56:13, 56:14, 62:4
**nonetheless** [1] - 25:8
**nonparty** [2] - 3:14, 15:11
**normal** [1] - 41:17
**normally** [1] - 22:15
**Northwest** [1] - 1:19
**notes** [1] - 57:7
**nothing** [3] - 5:12, 14:7, 32:5
**notice** [4] - 10:23, 11:13, 13:8, 25:7
**noticed** [1] - 3:19
**November** [4] - 40:16, 47:5, 49:11, 50:15
**number** [2] - 12:14, 33:19

**numerous** [1] - 48:11

## O

**O'MELVENY** [1] - 2:2
**object** [2] - 26:21, 65:7
**objection** [2] - 26:25, 68:2
**objections** [1] - 41:14
**obligations** [1] - 33:14
**obstructionism** [1] - 60:25
**obstructionist** [2] - 37:8, 41:10
**obtain** [1] - 37:17
**obtained** [3] - 14:9, 14:11, 17:1
**obviously** [2] - 16:9, 37:24
**occurred** [1] - 12:24
**occurs** [1] - 34:11
**October** [2] - 21:5, 53:2
**OF** [1] - 1:1
**offensive** [2] - 34:8, 68:10
**offered** [2] - 10:1, 10:2
**Office** [1] - 4:10
**office** [2] - 4:14, 6:2
**officer** [2] - 68:13
**officers** [5] - 33:15, 42:5, 42:6, 44:7, 55:15
**official** [1] - 11:13
**offsets** [1] - 44:1
**once** [3] - 7:12, 47:3, 64:19
**one** [34] - 3:25, 4:23, 5:4, 5:16, 9:11, 12:13, 14:20, 16:19, 17:17, 17:22, 17:24, 19:25, 21:14, 25:3, 29:16, 29:22, 34:20, 36:2, 36:24, 40:7, 41:18, 43:25, 45:12, 47:25, 48:25, 49:25, 60:8, 68:25, 69:2
**one-on-one** [1] - 9:11
**ones** [2] - 43:19, 60:15
**open** [8] - 6:3, 36:21, 39:4, 39:10, 40:4, 40:6, 43:10, 66:24

**open-door** [1] - 6:3
**opened** [3] - 9:19, 20:24, 39:11
**opportunity** [14] - 13:19, 31:20, 31:22, 33:20, 34:5, 43:8, 44:3, 45:16, 46:5, 53:8, 54:13, 61:12, 63:15, 68:7
**opposed** [1] - 32:7
**opposing** [2] - 28:25, 41:11
**oral** [1] - 23:16
**order** [17] - 20:15, 20:16, 20:20, 23:13, 27:2, 27:16, 27:24, 31:1, 37:15, 37:17, 47:13, 48:2, 48:8, 57:12, 62:6, 68:2
**orders** [1] - 67:22
**ore** [1] - 23:16
**Osterman** [4] - 7:10, 8:9, 12:16, 33:21
**outside** [2] - 6:21, 32:11
**overcome** [3] - 9:9, 9:23, 26:12
**overcoming** [2] - 5:22, 7:16
**overlap** [1] - 50:4
**own** [7] - 8:1, 28:5, 28:6, 31:17, 64:4, 65:18, 66:15
**Oxley** [1] - 19:11

## P

**p.m** [2] - 37:3, 39:4
**package** [1] - 51:13
**Pages** [2] - 1:8, 20:13
**paid** [4] - 37:22, 53:1, 53:15, 53:17
**paint** [1] - 10:17
**Paragraph** [1] - 27:17
**parallel** [1] - 58:19
**Parker** [1] - 6:4
**part** [6] - 7:18, 15:10, 22:23, 46:11, 57:9, 60:17
**partial** [4] - 47:25, 60:8, 62:13, 64:5
**particularly** [1] - 34:13
**partly** [1] - 62:5
**party** [3] - 7:6, 15:25, 16:24
**PARTY** [1] - 2:2

**past** [1] - 23:22
**paths** [1] - 15:3
**pattern** [2] - 7:18, 12:17
**pause** [2] - 7:8, 38:21
**PDF** [2] - 48:17, 48:25
**Pellettieri** [5] - 3:10, 52:12, 53:2, 67:24, 68:5
**PELLETTIERI** [1] - 1:18
**Pellettieri's** [1] - 37:17
**pending** [6] - 8:3, 17:7, 21:4, 25:11, 54:18, 69:3
**people** [2] - 16:15, 18:22
**percipient** [1] - 12:15
**perfectly** [1] - 27:6
**perhaps** [1] - 4:15
**period** [2] - 32:9, 32:11
**permission** [1] - 4:13
**permitted** [1] - 20:17
**personal** [6] - 6:17, 15:2, 15:12, 30:14, 55:14, 55:18
**personally** [6] - 6:1, 7:9, 9:6, 14:23, 15:7, 30:3
**petition** [2] - 19:13, 20:4
**phone** [6] - 6:17, 6:20, 6:21, 11:6, 55:14, 55:22
**phonetic** [2] - 6:20, 34:18
**physically** [1] - 10:17
**pierce** [1] - 58:20
**pilot** [2] - 11:14, 14:12
**pilots** [2] - 7:19, 12:19
**PILOTS** [1] - 1:7
**place** [1] - 32:19
**plain** [1] - 59:22
**Plaintiff** [6] - 1:5, 3:6, 27:18, 27:19, 27:21, 27:22
**PLAINTIFF** [184] - 1:14, 3:5, 3:23, 4:4, 4:8, 4:16, 5:13, 5:24, 8:14, 8:17, 8:21, 8:23, 9:2, 9:8, 9:10, 9:16, 9:18, 10:9, 10:15, 10:20, 10:22, 11:2, 11:7, 12:10, 13:1,

13:5, 13:8, 13:11, 13:13, 13:17, 19:2, 19:5, 19:9, 21:12, 21:22, 21:24, 22:4, 22:12, 23:1, 23:4, 23:15, 24:7, 24:9, 24:11, 24:14, 24:17, 24:23, 25:17, 26:2, 26:14, 26:19, 26:21, 26:24, 27:4, 27:16, 29:9, 29:11, 29:16, 29:20, 32:17, 33:1, 33:7, 33:9, 33:11, 35:2, 35:9, 35:14, 35:17, 36:1, 36:4, 36:6, 36:9, 36:13, 36:17, 36:20, 36:23, 37:7, 38:1, 38:4, 38:8, 38:10, 38:12, 38:15, 38:19, 38:24, 39:3, 39:9, 39:13, 39:18, 39:20, 39:24, 40:1, 40:5, 40:12, 40:16, 40:20, 40:24, 41:3, 41:5, 41:9, 41:22, 42:4, 42:15, 42:18, 42:21, 42:25, 43:9, 43:12, 43:18, 44:5, 44:12, 47:1, 47:3, 47:12, 47:23, 49:19, 49:22, 50:1, 50:5, 50:7, 50:11, 50:16, 51:6, 51:9, 51:12, 51:22, 51:25, 52:3, 52:18, 52:20, 52:23, 53:9, 53:14, 53:17, 53:20, 54:1, 54:15, 54:17, 54:24, 55:2, 55:5, 55:8, 55:18, 57:20, 57:25, 58:7, 58:11, 58:25, 59:3, 59:14, 59:18, 59:20, 60:13, 60:17, 60:24, 61:13, 61:17, 61:20, 62:25, 63:5, 63:8, 63:11, 63:20, 63:23, 64:11, 64:24, 65:1, 65:5, 65:7, 65:10, 65:14, 65:17, 66:2, 66:10, 66:18, 66:23, 67:1, 67:9, 67:12, 67:21, 68:10, 68:18, 68:22, 69:15

**plans** [1] - 7:7
**play** [1] - 30:16
**playing** [1] - 48:19
**pleasant** [1] - 6:5
**pleasant-like** [1] - 6:5
**PLLC** [1] - 1:19

**point** [11] - 18:3, 24:11, 26:5, 28:20, 32:20, 36:3, 40:4, 47:16, 63:16, 66:10, 66:13
**pointing** [1] - 22:10
**points** [1] - 13:21
**poisonous** [2] - 14:4, 67:23
**policy** [1] - 6:3
**posit** [1] - 17:22
**position** [3] - 16:23, 17:14, 23:13
**possession** [1] - 48:7
**postpone** [1] - 10:1
**Powell** [26] - 3:14, 3:17, 3:20, 6:1, 6:21, 7:6, 7:19, 9:21, 11:16, 13:22, 13:25, 14:2, 14:23, 14:25, 15:5, 15:20, 16:12, 16:15, 17:15, 18:5, 18:7, 22:14, 22:24, 23:18, 23:20, 25:6
**POWELL** [1] - 2:2
**Powell's** [1] - 14:19
**practice** [1] - 7:18
**pre** [2] - 19:13, 20:4
**pre-2022** [2] - 31:2, 62:7
**pre-petition** [2] - 19:13, 20:4
**preceded** [1] - 23:8
**prejudice** [1] - 16:6
**prejudiced** [1] - 48:21
**prepared** [1] - 42:20
**presence** [1] - 68:5
**present** [1] - 27:15
**presentation** [1] - 18:14
**preserve** [1] - 19:11
**preserved** [2] - 20:25
**President** [5] - 20:23, 28:21, 35:18, 44:9, 55:8
**president** [10] - 21:2, 21:17, 27:20, 29:3, 30:3, 34:23, 35:19, 45:13, 53:17, 54:19
**presidents** [2] - 19:24, 58:17
**pretext** [1] - 23:24
**pretexts** [1] - 25:2
**pretextual** [1] - 23:21
**previously** [1] - 41:21
**prime** [1] - 9:19
**privilege** [38] - 5:22,

5:23, 7:19, 9:9, 9:10, 12:11, 22:15, 22:18, 22:20, 26:12, 37:9, 44:20, 44:21, 45:6, 45:9, 47:7, 47:8, 47:11, 47:13, 47:21, 47:23, 48:3, 52:7, 53:22, 54:4, 58:1, 58:2, 58:4, 58:12, 58:20, 59:16, 60:6, 60:8, 61:25, 62:13, 62:14, 64:5, 64:8
**privileged** [26] - 13:14, 16:21, 28:18, 32:8, 32:10, 44:22, 47:7, 47:14, 48:11, 54:3, 57:24, 58:5, 58:7, 58:11, 59:10, 59:13, 59:21, 59:22, 59:25, 60:3, 60:4, 60:5, 60:13, 61:17, 61:18, 64:7
**pro** [8] - 3:6, 4:11, 4:13, 6:19, 40:9, 63:17, 68:12, 69:2
**Pro** [1] - 1:15
**problem** [1] - 20:10
**problematic** [1] - 12:21
**procedure** [1] - 63:24
**proceed** [1] - 63:17
**proceedings** [6] - 7:1, 28:19, 33:21, 33:22, 69:17, 70:4
**process** [9] - 5:15, 11:12, 11:22, 13:6, 22:8, 23:22, 37:8, 42:10
**processing** [1] - 7:25
**produce** [7] - 48:9, 52:8, 58:12, 59:25, 60:4, 64:3, 64:11
**produced** [51] - 7:12, 31:17, 37:13, 40:25, 41:1, 42:1, 43:12, 44:18, 45:6, 45:18, 45:20, 45:21, 45:23, 47:7, 47:8, 47:10, 47:11, 47:13, 47:20, 47:21, 47:23, 47:25, 48:2, 48:4, 49:11, 50:20, 51:2, 51:3, 51:16, 52:6, 52:7, 54:4, 56:5, 56:10, 56:18, 56:20, 56:22, 57:17, 57:18, 57:22, 57:23, 59:9, 59:10, 60:6, 60:7, 62:8, 62:14, 63:25, 64:4,

64:8, 70:5
**producing** [5] - 31:11, 44:21, 45:9, 56:9, 62:19
**product** [5] - 28:10, 28:11, 28:15, 28:17, 62:1
**production** [12] - 47:24, 48:18, 48:21, 49:11, 51:18, 54:8, 56:17, 60:6, 60:7, 60:9, 64:5, 64:12
**productions** [1] - 57:1
**profession** [1] - 19:19
**professional** [1] - 10:24
**prohibited** [2] - 14:11, 31:1
**prohibits** [1] - 14:13
**promise** [1] - 7:2
**properly** [1] - 3:21
**prosecuted** [1] - 42:10
**prosecuting** [2] - 43:20, 43:21
**protect** [2] - 12:11, 15:23
**protective** [6] - 31:1, 37:15, 57:11, 62:6, 67:22, 68:2
**provide** [2] - 30:20, 58:4
**provided** [17] - 5:9, 29:13, 29:17, 29:18, 30:11, 33:5, 34:6, 35:9, 35:12, 44:23, 48:12, 48:13, 48:14, 50:18, 58:1, 58:2, 59:22
**public** [2] - 7:1
**pull** [2] - 4:5, 33:18
**pulling** [1] - 4:19
**purported** [3] - 11:9, 11:17, 24:24
**purposes** [1] - 35:11
**pursue** [1] - 15:24
**pursuing** [2] - 15:17
**push** [2] - 64:19, 64:20
**put** [11] - 7:4, 11:7, 15:13, 16:9, 26:24, 46:23, 55:20, 65:25, 66:7, 67:6, 67:7
**putting** [3] - 6:9, 10:23, 44:15

## Q

**quash** [5] - 23:17, 25:18, 27:19, 35:5, 35:20
**quashed** [1] - 32:19
**quashing** [2] - 26:5, 27:2
**questioned** [1] - 36:24
**questioning** [3] - 9:20, 12:6, 63:21
**questions** [22] - 27:22, 29:22, 30:1, 30:18, 31:4, 31:21, 36:3, 36:11, 39:15, 41:25, 42:1, 42:13, 42:15, 44:11, 45:12, 46:9, 60:21, 62:23, 65:23, 65:25, 66:2, 67:5
**quick** [1] - 69:2
**quote** [3] - 14:18, 14:21, 19:22

## R

**rails** [1] - 41:14
**Railway** [1] - 20:17
**railway** [1] - 58:20
**raise** [1] - 69:5
**rate** [1] - 64:25
**RDR** [2] - 2:5, 70:8
**re** [1] - 20:21
**re-arbitrate** [1] - 20:21
**read** [3] - 12:17, 34:21, 34:23
**really** [9] - 8:6, 12:3, 28:11, 28:17, 28:18, 30:25, 43:24, 48:21, 68:10
**reason** [10] - 22:21, 23:10, 26:12, 32:19, 46:13, 56:21, 59:17, 65:2, 67:3, 67:4
**reasons** [3] - 17:22, 25:10, 32:2
**rebut** [6] - 11:3, 11:6, 16:8, 16:11, 16:14, 19:3
**rebuttal** [8] - 9:19, 10:9, 12:1, 12:14, 19:5, 23:18, 25:22, 27:22
**recalled** [1] - 21:5
**receive** [2] - 39:1, 39:4

**received** [11] - 4:1, 31:14, 31:16, 32:21, 36:15, 38:5, 38:10, 42:20, 49:20, 50:13, 62:21
**recently** [1] - 64:17
**recollection** [1] - 10:3
**reconsideration** [1] - 27:2
**record** [7] - 7:1, 12:7, 25:11, 26:10, 26:21, 26:24, 33:15
**RECORDING** [1] - 1:11
**records** [2] - 7:14, 54:7
**recovered** [1] - 9:4
**redact** [2] - 61:21
**redacted** [2] - 60:14, 64:8
**REES** [1] - 1:22
**references** [1] - 44:6
**refusal** [1] - 42:9
**refused** [2] - 12:7, 20:21
**regard** [4] - 3:16, 27:12, 57:14, 65:24
**regarding** [11] - 14:14, 20:4, 20:11, 21:25, 26:8, 27:13, 27:15, 27:18, 27:21, 42:15, 67:19
**rehearing** [2] - 27:12, 27:14
**REID** [1] - 1:11
**reinstate** [3] - 7:15, 23:7, 24:25
**reinstated** [1] - 20:9
**relate** [1] - 19:13
**related** [11] - 14:12, 20:14, 23:20, 23:21, 25:20, 31:13, 44:1, 52:8, 52:15, 56:7, 61:24
**relative** [1] - 42:22
**released** [1] - 56:3
**relevance** [2] - 15:13, 16:25
**relevancy** [2] - 16:16, 17:17
**relevant** [11] - 9:18, 11:1, 11:8, 11:24, 18:4, 25:18, 29:1, 35:4, 42:23, 54:22, 54:24
**relied** [1] - 56:9
**rely** [1] - 28:5
**remember** [1] - 63:9
**remotely** [1] - 10:2

**removal** [3] - 14:12, 19:14, 20:4
**remove** [1] - 11:17
**removed** [2] - 15:8, 17:6
**repeatedly** [1] - 16:2
**report** [21] - 27:22, 28:22, 29:2, 29:14, 29:21, 30:2, 30:17, 30:19, 30:21, 31:13, 31:18, 32:4, 32:22, 32:24, 33:6, 34:19, 41:16, 50:6, 56:7, 56:9, 61:25
**reporter** [2] - 12:22, 41:15
**reporterlisaedward s@gmail.com** [1] - 2:6
**Reporterlisaedwar ds@gmail.com** [1] - 70:9
**represent** [7] - 8:22, 37:21, 53:1, 53:3, 53:12, 53:16, 53:18
**representation** [1] - 12:25
**representative** [2] - 7:23, 28:22
**represented** [4] - 15:20, 50:17, 52:25, 53:2
**representing** [8] - 8:15, 8:17, 8:19, 13:9, 13:24, 26:6, 28:12, 53:21
**request** [15] - 18:19, 27:19, 38:3, 49:11, 50:4, 50:14, 52:2, 52:3, 56:7, 57:4, 60:7, 62:10, 65:11, 66:8
**requested** [6] - 39:2, 40:14, 45:19, 47:22, 50:3, 52:3
**requests** [7] - 17:20, 32:14, 47:24, 49:17, 56:12, 62:5
**require** [2] - 15:8, 67:7
**required** [1] - 43:10
**requirement** [1] - 4:11
**research** [1] - 60:19
**resolve** [2] - 6:2, 8:3
**resolved** [1] - 14:1
**respect** [9] - 26:16, 27:2, 30:13, 32:8, 35:7, 47:21, 62:2, 63:23, 66:13
**respond** [7] - 13:19, 13:20, 50:23, 50:25,

53:8, 54:12, 54:14
**response** [5] - 30:8, 44:13, 47:2, 51:6, 55:24
**responsive** [6] - 49:17, 49:21, 50:14, 52:2, 56:12, 62:4
**resulted** [3] - 6:19, 8:6, 25:5
**retain** [1] - 30:12
**retained** [3] - 52:13, 52:25, 56:15
**retainer** [2] - 37:22, 53:1
**retaliating** [1] - 42:7
**retaliation** [4] - 42:9, 43:20, 44:4, 44:7
**retired** [1] - 32:1
**retirement** [1] - 7:3
**return** [6] - 7:11, 7:22, 12:19, 19:23, 20:9, 58:18
**returned** [2] - 7:17, 25:10
**returning** [1] - 25:3
**review** [5] - 18:25, 34:5, 56:17, 58:15, 63:2
**reviewed** [1] - 62:15
**reviewing** [1] - 45:8
**rife** [1] - 60:24
**rights** [4] - 15:24, 23:23, 24:1, 25:9
**ROBERTSON** [6] - 2:2, 3:13, 5:7, 13:20, 27:8, 27:10
**Robertson** [30] - 3:14, 5:2, 5:5, 5:6, 5:17, 5:24, 6:25, 9:21, 9:25, 12:5, 13:19, 17:10, 18:6, 18:7, 19:6, 19:9, 20:2, 21:6, 23:20, 23:21, 25:12, 27:5, 28:10, 28:11, 28:13, 37:10, 37:11, 37:21, 37:24, 48:6
**Rocio** [2] - 4:21, 22:5
**role** [9] - 14:24, 15:4, 15:9, 16:20, 29:3, 29:21, 30:13, 30:16, 43:23
**room** [3] - 6:21, 46:23, 48:23
**rule** [2] - 35:1, 59:5
**Rule** [2] - 46:11, 62:2
**rules** [2] - 63:24, 67:3
**ruling** [5] - 26:13, 26:18, 36:5, 57:11, 65:10

**run** [3] - 11:11, 64:21, 64:22
**Rybak** [2] - 53:4, 68:6

## S

**safety** [1] - 12:22
**Salt** [1] - 6:22
**sanctions** [1] - 58:14
**Sarbanes** [1] - 19:11
**Sarbanes-Oxley** [1] - 19:11
**sat** [6] - 31:19, 41:22, 44:17, 46:17, 46:18, 53:9
**Saturday** [1] - 45:19
**saw** [1] - 36:20
**scenes** [2] - 28:14, 30:5
**schedule** [1] - 63:6
**scheduled** [6] - 5:2, 21:4, 38:13, 63:8, 63:9, 63:16
**school** [3] - 6:16, 68:11, 68:13
**Scott** [2] - 11:11, 25:6
**SCULLY** [1] - 1:22
**Se** [1] - 1:15
**se** [7] - 3:6, 4:11, 4:13, 6:19, 40:9, 63:17, 68:12
**sealed** [2] - 4:18, 22:8
**search** [2] - 40:23, 48:25
**searchable** [3] - 34:6, 40:6, 40:23
**searched** [1] - 48:24
**searching** [1] - 5:15
**Second** [1] - 1:22
**second** [4] - 26:8, 41:23, 45:14, 46:18
**secret** [2] - 23:25, 29:24
**Section** [2] - 11:12, 11:23
**see** [11] - 8:11, 12:17, 18:21, 22:24, 35:3, 38:16, 55:17, 55:25, 59:16, 65:2, 67:4
**seeing** [2] - 4:9, 66:21
**seeking** [3] - 32:7, 32:10, 56:8
**sees** [1] - 28:23
**seize** [1] - 35:18

**send** [2] - 11:17, 24:15
**seniority** [9] - 11:10, 11:18, 14:13, 15:24, 19:14, 23:7, 29:24, 66:4, 66:6
**sent** [8] - 3:20, 4:22, 5:2, 5:8, 10:23, 22:24, 24:17, 24:21
**separate** [2] - 14:8, 58:22
**separation** [1] - 20:6
**served** [2] - 4:16, 27:19
**server's** [2] - 5:15, 22:8
**settle** [3] - 6:6, 7:11, 14:3
**settlement** [9] - 6:15, 6:24, 7:10, 8:7, 8:25, 9:2, 25:2, 25:13, 29:24
**seven** [2] - 60:20, 64:3
**several** [8] - 29:16, 29:22, 44:5, 44:14, 48:10, 52:11, 60:17, 62:12
**shall** [1] - 20:16
**shield** [1] - 28:14
**shielded** [1] - 28:9
**SHIFFRIN** [45] - 1:18, 3:8, 17:13, 18:10, 18:15, 18:18, 30:9, 30:22, 30:24, 31:6, 31:10, 32:14, 38:14, 39:23, 44:14, 45:3, 45:5, 46:2, 46:4, 50:23, 53:6, 54:12, 55:25, 56:4, 56:12, 56:20, 56:25, 57:3, 57:6, 57:11, 57:15, 61:7, 61:23, 62:4, 62:10, 62:12, 62:18, 63:10, 63:12, 67:17, 68:25, 69:2, 69:5, 69:9, 69:13
**Shiffrin** [45] - 3:7, 3:9, 5:25, 9:13, 9:19, 10:11, 11:2, 11:4, 12:3, 17:11, 19:3, 19:6, 21:15, 22:22, 28:7, 28:9, 30:8, 32:23, 33:2, 33:9, 33:12, 37:7, 38:21, 41:10, 41:13, 43:25, 44:13, 47:3, 47:11, 47:20, 50:17, 50:25, 51:10, 51:15, 53:4, 53:7, 53:25, 55:24,

59:9, 63:24, 64:18, 65:21, 67:21, 68:5, 69:1

**Shiffrin's** [2] - 12:1, 41:11

**shocked** [1] - 55:11

**short** [1] - 48:20

**shows** [3] - 17:19, 26:11, 68:4

**Sicher** [7] - 20:23, 21:2, 34:23, 37:15, 52:10, 55:8, 68:3

**Sicher's** [1] - 37:18

**sight** [1] - 59:22

**sign** [3] - 4:12, 11:17, 30:14

**Signal** [1] - 55:15

**signature** [3] - 4:2, 5:11, 5:17

**signed** [11] - 3:20, 4:17, 7:14, 25:13, 28:1, 28:21, 28:22, 29:24, 30:11, 32:25, 52:11

**signing** [2] - 4:12, 28:24

**silence** [3] - 42:6, 44:8

**Silva** [20] - 27:3, 27:13, 27:20, 28:1, 28:21, 29:1, 29:13, 30:1, 30:11, 30:16, 30:18, 30:20, 30:25, 31:3, 33:2, 33:6, 34:25, 35:4

**Silva's** [1] - 32:21

**similar** [1] - 7:10

**similarly** [1] - 42:11

**simple** [1] - 23:15

**simply** [3] - 16:24, 32:25, 63:17

**sit** [4] - 31:23, 32:3, 34:12, 57:9

**situated** [1] - 42:11

**six** [3] - 46:17, 60:20, 64:2

**slightest** [1] - 68:16

**small** [1] - 44:24

**smoking** [2] - 44:6, 44:10

**smoking-gun** [2] - 44:6, 44:10

**someone** [2] - 20:8, 22:16

**sometime** [1] - 56:15

**sorry** [9] - 10:12, 27:18, 41:5, 47:18, 50:8, 61:5, 63:14, 66:7, 69:1

**sounds** [1] - 20:8

**Southeast** [1] - 1:22

**SOUTHERN** [1] - 1:1

**Southern** [3] - 14:10, 14:16, 16:3

**speaking** [1] - 4:21

**specifically** [6] - 29:6, 30:2, 43:6, 43:11, 52:25, 56:1

**specifics** [1] - 57:19

**speech** [2] - 35:20, 42:6

**spoliation** [5] - 54:18, 60:25, 67:14, 67:19, 68:20

**spreadsheets** [1] - 48:15

**spyware** [1] - 55:21

**stamp** [1] - 4:18

**stamped** [5] - 3:23, 22:6, 22:7, 22:8

**stand** [2] - 4:19, 18:4

**standard** [1] - 68:14

**standing** [1] - 68:2

**start** [10] - 3:4, 3:16, 3:17, 5:18, 33:22, 34:4, 38:13, 44:15, 56:4, 66:19

**started** [5] - 22:14, 33:24, 39:8, 48:22, 48:23

**starting** [1] - 64:6

**statements** [1] - 52:8

**states** [2] - 27:17

**STATES** [2] - 1:1, 1:12

**stating** [1] - 7:14

**status** [1] - 25:14

**stay** [2] - 27:6, 61:8

**stick** [1] - 64:16

**still** [8] - 3:7, 5:13, 37:9, 47:18, 48:8, 52:14, 54:10, 66:24

**stipulate** [1] - 12:5

**stipulates** [1] - 12:4

**stipulation** [2] - 21:1, 41:24

**stock** [2] - 6:25, 7:2

**Street** [2] - 1:19, 1:22

**strike** [3] - 12:6, 23:18, 25:20

**striking** [1] - 12:4

**stripped** [1] - 55:22

**stuff** [5] - 34:10, 46:10, 54:2, 57:8, 64:19

**subject** [1] - 41:19

**subjects** [1] - 28:4

**submitted** [4] - 4:2, 12:15, 20:12, 55:9

**subpoena** [15] -

3:19, 3:21, 4:16, 4:24, 5:6, 22:1, 22:5, 22:7, 23:17, 27:3, 27:19, 31:12, 32:19, 35:6

**subpoenaed** [1] - 47:5

**subpoenas** [1] - 4:12

**subsequently** [2] - 14:9, 14:25

**substance** [1] - 19:16

**subvert** [1] - 66:3

**successful** [1] - 7:16

**suddenly** [2] - 8:9, 28:16

**Sue** [7] - 37:19, 52:5, 52:6, 52:15, 52:24, 53:11, 57:7

**sued** [5] - 6:13, 12:21, 14:23, 15:7, 16:6

**sufficient** [1] - 63:18

**suggested** [1] - 14:3

**suggesting** [1] - 62:18

**suing** [2] - 9:1, 14:11

**Suite** [3] - 1:20, 1:23, 2:3

**Sunset** [1] - 1:15

**supersede** [1] - 67:4

**supervisor** [1] - 11:14

**supply** [1] - 32:24

**supposed** [3] - 38:22, 40:25, 63:25

**surrogate** [1] - 7:23

**suspect** [2] - 28:17, 41:17

**suspected** [1] - 55:19

**suspects** [1] - 55:20

**suspended** [1] - 8:9

**sworn** [1] - 37:18

**System** [1] - 20:18

## T

**taint** [1] - 9:22

**tainted** [1] - 67:22

**task** [1] - 61:8

**tecum** [2] - 4:13, 22:1

**tenus** [1] - 23:16

**term** [1] - 44:1

**terminate** [1] - 11:18

**terminated** [6] - 9:3, 10:24, 20:7, 29:22, 58:14

**terminating** [1] -

11:13

**termination** [8] - 11:9, 11:22, 14:12, 15:15, 19:14, 20:4, 23:21, 24:24

**terms** [2] - 17:16, 23:6

**testified** [4] - 11:15, 20:23, 30:15, 31:14

**testify** [2] - 16:13, 58:17

**testimony** [7] - 11:3, 23:13, 25:20, 25:22, 28:5, 37:20, 65:19

**text** [3] - 37:13, 55:15, 55:21

**textbook** [3] - 37:2, 37:4

**texts** [1] - 54:20

**THE** [414] - 1:11, 1:11, 1:14, 1:18, 3:1, 3:5, 3:7, 3:12, 3:15, 3:23, 3:25, 4:4, 4:7, 4:8, 4:9, 4:16, 4:21, 5:1, 5:4, 5:11, 5:13, 5:16, 5:24, 8:11, 8:14, 8:15, 8:17, 8:19, 8:21, 8:22, 8:23, 8:24, 9:2, 9:5, 9:8, 9:9, 9:10, 9:14, 9:16, 9:17, 9:18, 10:7, 10:9, 10:12, 10:15, 10:18, 10:20, 10:21, 10:22, 11:1, 11:2, 11:5, 11:7, 12:9, 12:10, 12:23, 13:1, 13:3, 13:5, 13:7, 13:8, 13:9, 13:11, 13:12, 13:13, 13:16, 13:17, 13:18, 17:9, 18:8, 18:11, 18:17, 18:24, 19:2, 19:4, 19:5, 19:7, 19:9, 21:10, 21:12, 21:20, 21:22, 21:23, 21:24, 21:25, 22:4, 22:10, 22:12, 22:13, 23:1, 23:2, 23:4, 23:12, 23:15, 24:5, 24:7, 24:8, 24:9, 24:10, 24:11, 24:12, 24:14, 24:15, 24:17, 24:19, 24:23, 25:16, 25:17, 26:1, 26:2, 26:3, 26:14, 26:15, 26:19, 26:20, 26:21, 26:23, 26:24, 27:1, 27:4, 27:5, 27:9, 27:12, 27:16, 29:8, 29:9, 29:10, 29:11, 29:12, 29:16, 29:18, 29:20, 30:6, 30:20,

30:23, 31:5, 31:9, 32:13, 32:16, 32:17, 32:18, 33:1, 33:4, 33:7, 33:8, 33:9, 33:10, 33:11, 34:24, 35:2, 35:3, 35:9, 35:13, 35:14, 35:16, 35:17, 35:25, 36:1, 36:2, 36:4, 36:5, 36:6, 36:7, 36:9, 36:11, 36:13, 36:14, 36:17, 36:18, 36:20, 36:22, 36:23, 37:6, 37:7, 37:24, 38:1, 38:2, 38:4, 38:5, 38:8, 38:9, 38:10, 38:11, 38:12, 38:15, 38:18, 38:19, 38:20, 38:24, 38:25, 39:3, 39:6, 39:9, 39:10, 39:13, 39:14, 39:18, 39:19, 39:20, 39:21, 39:24, 39:25, 40:1, 40:3, 40:5, 40:11, 40:12, 40:14, 40:16, 40:18, 40:20, 40:21, 40:24, 41:2, 41:3, 41:4, 41:5, 41:6, 41:9, 41:19, 41:22, 42:3, 42:4, 42:12, 42:15, 42:17, 42:18, 42:19, 42:21, 42:24, 42:25, 43:4, 43:9, 43:11, 43:12, 43:14, 43:18, 44:3, 44:5, 44:10, 44:12, 44:13, 45:1, 45:4, 46:1, 46:3, 46:25, 47:1, 47:2, 47:3, 47:10, 47:12, 47:18, 47:23, 49:15, 49:19, 49:20, 49:22, 49:23, 50:1, 50:2, 50:5, 50:6, 50:7, 50:8, 50:11, 50:12, 50:16, 50:22, 50:24, 51:6, 51:7, 51:9, 51:11, 51:12, 51:21, 51:22, 51:23, 51:25, 52:1, 52:3, 52:16, 52:18, 52:19, 52:20, 52:22, 52:23, 53:7, 53:9, 53:13, 53:14, 53:15, 53:17, 53:19, 53:20, 53:23, 54:1, 54:13, 54:15, 54:16, 54:17, 54:22, 54:24, 55:1, 55:2, 55:3, 55:5, 55:6, 55:8, 55:17, 55:18, 55:23, 56:1, 56:11, 56:19, 56:24, 57:2, 57:5, 57:10, 57:13, 57:16, 57:20, 57:24,

57:25, 58:4, 58:7, 58:9, 58:11, 58:22, 58:25, 59:1, 59:3, 59:4, 59:14, 59:15, 59:18, 59:19, 59:20, 60:11, 60:13, 60:15, 60:17, 60:23, 60:24, 61:6, 61:8, 61:13, 61:14, 61:17, 61:18, 61:20, 61:22, 62:3, 62:9, 62:11, 62:17, 62:21, 62:25, 63:4, 63:5, 63:6, 63:8, 63:11, 63:14, 63:20, 63:21, 63:23, 64:10, 64:11, 64:23, 64:24, 64:25, 65:1, 65:2, 65:5, 65:6, 65:7, 65:9, 65:10, 65:11, 65:14, 65:16, 65:17, 65:23, 66:2, 66:7, 66:10, 66:17, 66:18, 66:19, 66:23, 66:24, 67:1, 67:2, 67:9, 67:10, 67:12, 67:16, 67:18, 67:21, 68:9, 68:10, 68:17, 68:18, 68:19, 68:22, 68:23, 69:1, 69:4, 69:8, 69:11, 69:14, 69:15, 69:16

**they've** [4] - 12:21, 48:19, 54:19, 60:18
**thinks** [1] - 20:7
**third** [1] - 7:6
**third-party** [1] - 7:6
**thousands** [1] - 62:15
**threat** [1] - 31:25
**threaten** [1] - 33:17
**threatened** [4] - 10:17, 10:19, 11:18, 33:13
**threatening** [10] - 9:23, 14:2, 14:18, 14:20, 14:21, 15:7, 16:13, 17:23, 18:2, 46:21
**threats** [1] - 15:12
**three** [7] - 40:7, 41:12, 41:17, 41:20, 43:6, 53:9, 68:6
**tiers** [1] - 16:17
**tilt** [1] - 16:23
**timely** [1] - 19:11
**today** [5] - 49:4, 57:9, 59:16, 65:3, 69:12
**today's** [1] - 64:4
**Todd** [1] - 6:22
**tomorrow** [1] - 49:4

**took** [3] - 28:6, 55:12, 64:3
**topics** [4] - 42:16, 42:22, 43:3, 44:14
**total** [2] - 11:24, 40:9
**totality** [1] - 25:8
**totally** [5] - 25:17, 37:18, 46:21, 64:13, 68:4
**towards** [1] - 18:22
**track** [1] - 55:10
**traded** [1] - 11:10
**tranche** [4] - 33:23, 34:1, 38:15, 60:18
**tranches** [1] - 64:2
**TRANSCRIBED** [2] - 1:11, 2:5
**transcript** [3] - 20:13, 33:18, 41:16
**transcription** [1] - 70:4
**travel** [1] - 6:12
**treatment** [4] - 42:9, 43:19, 44:4, 44:7
**tree** [1] - 67:23
**trees** [1] - 67:14
**trial** [7] - 25:21, 25:22, 26:3, 26:17, 26:18, 61:3, 67:8
**trials** [1] - 28:23
**tribunal** [1] - 68:7
**tried** [1] - 28:14
**tries** [1] - 48:15
**triggered** [1] - 11:20
**true** [2] - 61:23, 62:14
**trust** [1] - 64:18
**try** [1] - 25:21
**trying** [23] - 8:3, 9:5, 9:21, 10:16, 19:18, 21:25, 23:2, 25:24, 36:5, 42:5, 43:4, 44:8, 48:24, 49:6, 49:23, 58:23, 59:5, 63:1, 63:21, 64:21, 66:3, 66:6
**two** [21] - 12:14, 19:25, 20:18, 25:2, 25:5, 25:10, 31:19, 31:21, 33:19, 34:21, 34:22, 36:23, 37:19, 40:7, 41:1, 41:12, 41:17, 41:20, 43:6, 49:24, 60:8
**type** [4] - 11:21, 12:18, 45:1, 55:20

## U

**U.S** [2] - 58:21, 68:14
**ultimately** [1] - 13:14
**unable** [1] - 40:5
**unaware** [1] - 36:16
**uncertain** [1] - 23:6
**under** [9] - 5:11, 11:14, 11:23, 33:14, 46:21, 57:11, 58:20, 61:3, 62:2
**underhanded** [1] - 66:12
**unfair** [4] - 12:3, 12:12, 25:20, 64:24
**Uniform** [2] - 33:14, 46:22
**union** [23] - 7:22, 7:23, 7:25, 13:5, 19:19, 19:24, 21:17, 29:3, 29:23, 30:3, 33:16, 35:20, 42:7, 44:7, 54:20, 55:13, 55:14, 55:16, 58:17, 58:18, 65:17
**Unit** [1] - 1:16
**UNITED** [2] - 1:1, 1:12
**unlearned** [1] - 68:12
**unprofessional** [2] - 14:18, 14:21
**unrelated** [1] - 14:8
**unsigned** [1] - 4:15
**untimely** [3] - 19:15, 19:17, 35:12
**untrue** [1] - 33:20
**up** [10] - 4:5, 4:19, 6:24, 18:12, 26:4, 26:17, 49:6, 50:20, 61:10, 64:15

## V

**vacated** [1] - 37:15
**valuable** [1] - 34:9
**value** [3] - 7:2, 21:8, 28:7
**valued** [1] - 6:25
**various** [2] - 35:21, 52:4
**versus** [1] - 58:21
**via** [1] - 55:15
**vice** [1] - 69:3
**view** [2] - 14:19, 18:3
**violates** [1] - 23:22
**violation** [1] - 29:23
**virtually** [1] - 56:13
**voicemail** [18] - 10:4,

10:22, 13:25, 14:17, 15:7, 16:9, 17:16, 17:23, 17:25, 23:9, 23:10, 23:19, 24:17, 24:19, 24:20, 24:21, 25:1, 26:9
**vs** [1] - 1:6

## W

**waiting** [1] - 50:8
**waived** [1] - 22:18
**waiving** [1] - 22:19
**wants** [8] - 11:2, 16:10, 16:14, 21:15, 27:18, 27:21, 30:25, 64:20
**Washington** [1] - 1:20
**water** [1] - 68:3
**ways** [1] - 12:10
**week** [6] - 8:7, 20:24, 52:10, 55:10, 64:20
**weeks** [4] - 20:18, 41:1, 60:9, 64:3
**well-taken** [2] - 32:15, 34:8
**whatsoever** [1] - 30:16
**whistleblower** [2] - 6:14, 12:22
**whole** [2] - 11:20, 19:25
**willfully** [1] - 34:2
**wiped** [2] - 54:19, 55:12
**wish** [1] - 46:9
**wished** [1] - 46:6
**withheld** [4] - 44:22, 48:10, 48:11, 52:14
**witness** [15] - 9:19, 11:24, 12:1, 12:14, 12:15, 12:24, 23:18, 25:23, 30:13, 41:10, 41:22, 42:22, 46:19, 66:11, 67:3
**witnesses** [2] - 46:11, 64:15
**woefully** [1] - 64:12
**woman** [2] - 7:20, 8:6
**word** [1] - 68:15
**work-product** [1] - 62:1
**worry** [1] - 66:5
**worst** [2] - 14:18, 14:22
**writing** [2] - 7:4, 67:7
**written** [2] - 11:10,

25:6
**wrote** [3] - 7:13, 11:16, 24:23

## Y

**year** [1] - 14:5
**years** [6] - 10:5, 20:22, 29:23, 29:25, 66:5
**yesterday** [3] - 4:23, 20:12, 30:11
**York** [4] - 2:4, 14:10, 14:16

## Z

**zero** [4] - 21:8, 30:15, 30:22, 32:4