**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**LAWRENCE MEADOWS,**

     Plaintiff,                              **CASE NO. 1:17-CV-22589-EA**

v.

**ALLIED PILOTS ASSOCIATION,** *et al.*,

     Defendants.

_____/

**MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF**
**LAW OF DEFENDANT ALLIED PILOTS ASSOCIATION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

SUMMARY OF ARGUMENT ....................................................................................................... 5

LEGAL STANDARD ..................................................................................................................... 8

ARGUMENT .................................................................................................................................. 8

    I.    Counts I and II Are Time Barred and Foreclosed by the Material Facts ........................... 9

        A.   Legal Background: The Duty of Fair Representation ................................................. 9

        B.   The Material Facts Pertaining to Counts I and II ..................................................... 10

        C.   Counts I and II are Time Barred ............................................................................... 12

        D.   Counts I and II are Foreclosed by the Material Facts ............................................... 15

    II.   Count III is Foreclosed by the Material Facts .................................................................. 16

        A.   The Material Facts Pertaining to Grievance 12-012 ................................................. 16

        B.   Count III is Foreclosed by the Material Facts .......................................................... 18

    III.  Counts IV and V Are Preempted by the Railway Labor Act ........................................... 20

    IV.  Counts VI and VII Fail as a Matter of Law under the LMRDA ...................................... 21

        A.   The Material Facts Pertaining to Counts VI and VII ................................................ 22

        B.   Plaintiff's Legal Theory is Wrong as a Matter of Law ............................................ 24

    V.   Count VIII is Legally Deficient and Foreclosed by the Material Facts ........................... 27

        A.   Plaintiff Has Not Alleged Retaliatory Discipline ..................................................... 27

        B.   Both Plaintiff's Retaliation Theories Fail for Additional Reasons ........................... 28

            1.   *Plaintiff's Grievance 12-011 Theory is Barred by Res Judicata and Otherwise Fails as a Matter of Law* .............................................................. 28

            2.   *Plaintiff's "Course of Conduct" Theory Also Fails as a Matter of Law* ............ 31

CONCLUSION .............................................................................................................................. 35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n v. O'Neill*,
499 U.S. 65 (1991)........................................................................................................9, 15

*Airline Pilots Ass'n, Int'l v. Dep't of Transp.*,
880 F.2d 491 (D.C. Cir. 1989).......................................................................................10

*Alvey v. Gen. Elec. Co.*,
622 F.2d 1279 (7th Cir. 1980) ........................................................................................25

*Amalg. Ass'n of St., Elec. Ry. & Motor Coach Emps. of. Am. v. Lockridge*,
403 U.S. 274 (1971)......................................................................................................9, 10

*In re AMR Corp.*,
No. 11-CV-15463, 2016 WL 1559294 (Bankr. S.D.N.Y. Apr. 14, 2016),
*subsequently aff'd,* 764 F. App'x 88 (2d Cir. 2019) ....................................................3

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..........................................................................................................8

*Avera v. Airline Pilots Ass'n Int'l*,
436 F. App'x 969 (11th Cir. 2011) .................................................................................13

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015)........................................................................................................26

*Bache v. Am. Tel. & Tel.*,
840 F.2d 283 (5th Cir. 1988) ..........................................................................................16

*Bagsby v. Lewis Bros. of Tenn.*,
820 F.2d 799 (6th Cir. 1987) ..........................................................................................20

*Bakos v. Am. Airlines*,
266 F. Supp. 3d 729 (E.D. Pa. 2017) .............................................................................11

*Bakos v. Am. Airlines, Inc.*,
748 F. App'x 468 (3d Cir. 2018) ......................................................................................2

*Bensel v. APA*,
387 F.3d 298 (3d Cir. 2004)............................................................................................20

*Berry v. Crestwood Healthcare LP*,
84 F.4th 1300 (11th Cir. 2023) .......................................................................................31

*Blackston v. Shook & Fletcher Insulation Co.*,
    764 F.2d 1480 (11th Cir.1985) ....................................................................................8

*Breininger v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 6*,
    493 U.S. 67 (1989).....................................................................................................28

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006).....................................................................................................33

*Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc.*,
    822 F.2d 188 (1st Cir. 1987).....................................................................................10

*Carroll v. Int'l Ass'n of Machinists & Aerospace Workers*,
    No. 1:03-CV-03106, 2006 WL 4401479 (N.D. Ga. Mar. 15, 2006), *aff'd* 221
    F. App'x 810 (11th Cir. 2006) ...............................................................................30, 32

*Chauffeurs, Teamsters & Helpers, Loc. 391 v. Terry*,
    494 U.S. 558 (1990)...................................................................................................10

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001)...................................................................................................32

*Clayton v. UAW*,
    451 U.S. 679 (1981)...................................................................................................14

*Conkle v. Jeong*,
    73 F.3d 909 (9th Cir. 1995) ......................................................................................16

*Coppage v. USPS*,
    281 F.3d 1200 (11th Cir. 2002) ................................................................................14

*Dailide v. U.S. Att'y Gen.*,
    387 F.3d 1335 (11th Cir. 2004) ................................................................................26

*Deboles v. Trans World Airlines, Inc.*,
    552 F.2d 1005 (3d Cir. 1977).....................................................................................10

*DelCostello v. Int'l Bhd. of Teamsters*,
    462 U.S. 151 (1983)...................................................................................................12

*Dep't of Lab. v. Aluminum, Brick & Glass Workers Int'l Union, Loc. 200*,
    941 F.2d 1172 (11th Cir. 1991) ...........................................................................24, 25

*Dunn v. Air Line Pilots Ass'n*,
    836 F. Supp. 1574 (S.D. Fla. 1993), *aff'd*, 193 F.3d 1185 (11th Cir. 1999).....................20, 21

*Eisenberg v. Trans World Airlines, Inc.*,
    654 F. Supp. 125 (S.D. Fla. 1987), *aff'd*, 875 F.2d 872 (11th Cir. 1989)...............................21

iii

*Emery v. Allied Pilots Ass'n*,
   227 F. Supp. 3d 1292 (S.D. Fla. 2017) ...................................................................27, 34

*Fish v. Huddell*,
   51 F.2d 319 (D.C. Cir. 1931)....................................................................................24

*Garcia v. Zenith Elecs. Corp.*,
   58 F.3d 1171 (7th Cir. 1995) ...................................................................................10

*Hamic v. Harris Cnty. W.C. & I.D. No. 36*,
   184 F. App'x 442 (5th Cir. 2006) ............................................................................31

*Hawaiian Airlines, Inc. v. Norris*,
   512 U.S. 246 (1994)..................................................................................................20

*Hester v. Int'l Union of Operating Eng'rs*,
   830 F.2d 172 (11th Cir. 1987) ...................................................................................9

*Hester v. Int'l Union of Operating Eng'rs*,
   878 F.2d 1309 (11th Cir. 1989) ..................................................................................9

*Holschen v. International Union of Painters & Allied Trades/Painters Dist.*
   *Council #2*,
   598 F.3d 454 (8th Cir. 2010) ...................................................................................28

*Hudson v. Am. Fed'n of Gov't Emps.*,
   151 F.4th 456 (D.C. Cir. 2025)................................................................................32

*Jones v. Gulf Coast Health Care of Del., LLC*,
   854 F.3d 1261 (11th Cir. 2017) ...............................................................................32

*Kidd v. Mando Am. Corp.*,
   731 F.3d 1196 (11th Cir. 2013) ..........................................................................32, 34

*Maddalone v. Loc. 17, United Bhd. of Carpenters & Joiners of Am.*,
   152 F.3d 178 (2d Cir. 1998)....................................................................................28

*Maldonado v. U.S. Att'y Gen.*,
   664 F.3d 1369 (11th Cir. 2011) ...............................................................................30

*Mann v. Air Line Pilots Ass'n*,
   848 F. Supp. 990 (S.D. Fla. 1994) ..........................................................................21

*Marquez v. Screen Actors Guild, Inc.*,
   525 U.S. 33 (1998)......................................................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)....................................................................................................8

iv

*Meadows v. Am. Airlines*,
   No. 1:15-CV-03899, 2016 WL 4011231 (N.D. Ill. July 27, 2016) ...........................................5

*Meadows v. Am. Airlines*,
   No. 24-CV-20518, 2024 WL 5248006 (S.D. Fla. Oct. 22, 2024).........................................1, 3

*Meadows v. APA*,
   No. 2:14-CV-00115, 2015 WL 13650044 (D. Utah Apr. 27, 2015), *aff'd*, 822
   F. App'x 653 (10th Cir. 2020) ....................................................................................5, 20, 31

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002).........................................................................................................31

*Oltmanns v. Int'l Longshoremen's Ass'n*,
   837 F. App'x 689 (11th Cir. 2020) ...................................................................................10

*Phillip v. AFGE*,
   No. 19-CV-20122, 2019 WL 4540756 (S.D. Fla. Sept. 19, 2019) .........................................30

*Proudfoot v. Seafarer's Int'l Union*,
   779 F.2d 1558 (11th Cir. 1986) .......................................................................................14

*Pryner v. Tractor Supply Co.*,
   109 F.3d 354 (7th Cir. 1997) ...........................................................................................19

*Reich v. Local 30, Int'l Bhd. of Teamsters, Chauffers, Warehousemen and Helpers
   of Am.*,
   6 F.3d 978 (3rd Cir. 1993) .........................................................................................25, 26

*Richardson v. United Steelworkers of Am.*,
   864 F.2d 1162 (5th Cir. 1989) .........................................................................................21

*Rojas v. Fla.*,
   285 F.3d 1339 (11th Cir. 2002) .......................................................................................32

*Sergeant v. Inlandboatmen's Union of the Pac.*,
   346 F.3d 1196 (9th Cir. 2003) ....................................................................................25, 26

*Shelley v. Am. Postal Workers Union*,
   775 F. Supp. 2d 197 (D.D.C. 2011).................................................................................24

*Shivers v. IBEW Local*
   262 F. App'x 121 (11th Cir. 2008) ...................................................................................28

*Smallakoff v. Air Line Pilots Ass'n, Int'l*,
   825 F.2d 1544 (11th Cir. 1987) .......................................................................................12

*Spellacy v. Airline Pilots Ass'n-Int'l*,
    156 F.3d 120 (2d Cir. 1998)............................................................................................10

*Taylor v. Great Lakes Seamen's Union, Loc. 5000, United Steelworkers of Am.*,
    701 F.2d 590 (6th Cir. 1983) .....................................................................................25, 26

*Thomas v. Cooper Lighting, Inc.*,
    506 F.3d 1361 (11th Cir. 2007) ....................................................................................32

*Thompson v. Aluminum Co. of Am.*,
    276 F.3d 651 (4th Cir. 2002) ...................................................................................10, 19

*Thompson v. Union of Flight Attendants*,
    No. 81-CV-03249, 1982 WL 2153 (C.D. Cal. Jan. 25, 1982)....................................25

*Trial v. Atchison, Topeka & Santa Fe Ry. Co.*,
    896 F.2d 120 (5th Cir. 1990) .......................................................................................12

*Turner v. Singletary*,
    46 F. Supp. 2d 1238 (N.D. Fla. 1999)..........................................................................13

*TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*,
    959 F.3d 1318 (11th Cir. 2020) ...................................................................................29

*Vaca v. Sipes*,
    386 U.S. 171 (1967).......................................................................................................19

*White v. Anchor Motor Freight, Inc.*,
    899 F.2d 555 (6th Cir. 1990) .......................................................................................10

*Wood v. Houston Belt & Terminal Ry.*,
    958 F.2d 95 (5th Cir. 1992) .........................................................................................12

**Statutes and Rules**

29 U.S.C. § 401 *et seq.* (Labor-Management Reporting and Disclosure Act) ............................21

29 U.S.C. § 402(o) ....................................................................................................................25

29 U.S.C. § 411........................................................................................................21, 24, 25

29 U.S.C. § 411(a)(1)...............................................................................................................24

29 U.S.C. § 411(a)(2)...............................................................................................................24

29 U.S.C. § 411(a)(4)........................................................................................................27, 30

29 U.S.C. § 412........................................................................................................................28

29 U.S.C. § 529..................................................................................................................27

45 U.S.C.§ 181 (Under the Railway Labor Act)...............................................................9

Fed. R. Civ. P. 56(a) ...........................................................................................................8

**Other Authorities**

*Meadows v. Am. Airlines*,
  No. 26-CV-00679 (E.D.N.Y. Feb. 6, 2026)...............................................................1

*Meadows v. APA*,
  No. 2:14-CV-00115 (D. Utah, July 1, 2014), ECF No. 6 ........................................34

*Meadows v. APA*,
  No. 2:14-CV-00115 (D. Utah Nov. 3, 2015), ECF No. 35 ..................................5, 20

*Restatement (Second) of Judgments* §§ 83-84 ................................................................26

Defendant Allied Pilots Association ("APA") respectfully moves for summary judgment on all counts asserted by Plaintiff Lawrence Meadows in the Amended Complaint (ECF No. 35).

**INTRODUCTION**

Plaintiff was formerly employed as a pilot at American Airlines ("American"). He has filed this lawsuit against APA, the union that represents the more than 16,000 pilots at American. Plaintiff last flew for American in 2003, when he commenced a long period of disability leave. His federal medical certification to operate commercial aircraft expired in 2004 and was not reissued until November 2018. In 2011, American terminated Plaintiff and removed him from its pilot seniority list pursuant to a longstanding provision in the collective bargaining agreement ("CBA") between APA and American that permitted American to terminate pilots and remove them from the pilot seniority list after they had been on unpaid sick or disability leave for five years or longer.

This is just one of many lawsuits and other actions that Plaintiff has lodged over the past 15 years against American and/or APA concerning his termination and removal from the pilot seniority list.[1] *See Meadows v. Am. Airlines*, No. 24-CV-20518, 2024 WL 5248006, at *1 (S.D. Fla. Oct. 22, 2024) (noting at least "33 litigation matters" brought by Plaintiff, most of which concerned his termination from American). Plaintiff's two prior federal lawsuits against APA were dismissed. *See infra* p. 5 (citing and describing cases).[2]

As in those other lawsuits, Plaintiff alleges here that APA violated his rights and did not do enough to help him get his job back at American and have him returned to the pilot seniority list. In truth, the record facts show that APA did all it reasonably could within the bounds of its

---

[1] Although no attorney has appeared on his behalf in this case, Plaintiff has testified that he consults with a lawyer in connection with this case. Meadows Dep. Tr. 13-14.

[2] Plaintiff recently filed a fourth lawsuit against APA while this case was pending and well into discovery. Complaint, *Meadows v. Am. Airlines*, No. 26-CV-00679 (E.D.N.Y. Feb. 6, 2026).

contractual relationship with American to help Plaintiff return to work at American after he regained his medical certification, but American has refused to reinstate Plaintiff. Plaintiff's contentions that APA has violated his rights are premised on assertions unmoored from the record evidence or governing law. As we explain below, when viewed in light of the undisputable, material facts—stripped from Plaintiff's invective and conspiracy theories—the claims asserted in the Amended Complaint all fail and should be resolved in APA's favor as a matter of law.

## BACKGROUND

**I.**      APA has been the certified exclusive bargaining representative for pilots at American since 1963. Statement of Material Facts (SMF) ¶ 1. APA and American have entered into a series of CBAs that set out the terms and conditions of employment for pilots at American. SMF ¶ 6. The CBA that APA and American negotiated in 2003 was the operative CBA at the time of Plaintiff's termination from American in 2011. SMF ¶ 7.

The 2003 CBA contained rules governing how pilots at American accrued and retained seniority. SMF ¶ 8. Seniority "is a significant labor issue in the airline industry because it determines pilots' compensation, opportunities for promotions, schedules and routes, types of aircraft flown, rank within a particular crew, and vulnerability to furloughs." *Bakos v. Am. Airlines, Inc.*, 748 F. App'x 468, 469 (3d Cir. 2018); *see* SMF ¶ 9. Per the CBA, American was responsible for maintaining a seniority list that listed American-employed pilots in seniority order. SMF ¶ 10.

The 2003 CBA also contained provisions that permitted American to terminate pilots who had been on sick or disability leave for five years or longer. SMF ¶ 13. Section 11.D stated that while a pilot would retain and accrue seniority while on leave for sickness or injury, a "leave of absence for sickness or injury . . . may not exceed a total continuous period of five (5) years." SMF ¶ 14. Another section stated that "[a] pilot shall retain and continue to accrue his seniority for the

purposes of [retirement benefit calculations] only for a period of five (5) years commencing at the expiration of his paid sick leave." SMF ¶ 15.

American and APA have had a shared understanding that these provisions permitted American to terminate and remove from the seniority list a pilot who had been on unpaid sick or disability leave for more than five years (hereafter "the CBA five-year rule"). SMF ¶ 16. APA's understanding was reflected in a 2006 resolution by the APA Board of Directors, as well as in a letter from APA to Plaintiff in November 2011, shortly after his termination.[3] *Id.* (citing documents). However, the decision whether to reinstate a terminated pilot who later regained a medical certification has always been solely within American's discretion. SMF ¶ 16.

**II.**     Plaintiff started working as a pilot at American, and became a member of APA, in 1991. SMF ¶ 20. Plaintiff stopped flying for American in 2003 due to disability. SMF ¶ 21. He subsequently began a long period of unpaid sick and/or disability leave. *Id.* Plaintiff's Medical Certificate from the Federal Aviation Administration ("FAA")—a prerequisite to serving as a commercial airline pilot—expired in 2004 and could not be renewed at that time. SMF ¶¶ 4-5, 22.

In August 2011, after Plaintiff had been on disability leave for longer than five years, American informed Plaintiff that his employment with American would end unless he either regained his FAA First Class Medical Certificate and returned to work as a pilot or cooperated with American to identify an appropriate non-pilot position he could perform. SMF ¶ 24. A few months later, American sent Plaintiff a letter stating that Plaintiff's employment would end as of October

---

[3] For the sake of economy, we use the term "termination" to denote Plaintiff's separation from employment at American in October 2011; it has also been referred to as an "administrative separation." Plaintiff contends that he is still employed by American. *See* ECF No. 35 at ¶ 13. However, the Southern District of Florida and the Second Circuit have both held that Plaintiff is judicially estopped from denying that he was terminated by American. *Meadows v. Am. Airlines*, 2024 WL 5248006, at **8-10; *In re AMR Corp.*, No. 11-CV-15463, 2016 WL 1559294, at *6 (Bankr. S.D.N.Y. Apr. 14, 2016), *subsequently aff'd,* 764 F. App'x 88 (2d Cir. 2019).

21, 2011, because Plaintiff had not obtained his medical certification and would not accept a non-pilot position. SMF ¶ 25. American terminated Plaintiff and removed him from the seniority list on October 21, 2011. SMF ¶¶ 26-27.

In November 2011, in response to a request by Plaintiff that APA file a grievance regarding his termination, APA advised Plaintiff in writing that American's actions were consistent with the 2003 CBA. SMF ¶ 28.[4] It also explained that if Plaintiff were to regain his FAA First Class Medical Certificate in the future, APA would be available to assist him with requesting reinstatement at that time. *Id.* Consistent with that representation, in 2018 and early 2019—after Plaintiff regained his FAA First Class Medical Certificate, and after this lawsuit was filed—APA repeatedly requested that American reinstate him. SMF ¶¶ 98-101. However, American exercised its discretion under the CBA and declined to do so. SMF ¶¶ 102-03.

**III.**   In February 2012—when Plaintiff was still unable to operate commercial aircraft—Plaintiff filed an individual grievance (Grievance 12-011) against American asserting that his termination violated the Americans with Disabilities Act and constituted retaliation under the Sarbanes-Oxley Act for alleged whistleblower activity. SMF ¶ 31. APA advanced that grievance through the grievance procedure up until the point that it had to decide whether to submit it to arbitration. SMF ¶¶ 32-33. On August 29, 2013, APA's then-President Keith Wilson informed Plaintiff that APA declined to advance the grievance to arbitration because it was based on federal statutory claims (and therefore it would not be appropriate to submit to arbitration under the CBA). SMF ¶ 34. In October 2013, Plaintiff filed a new grievance (Grievance 13-064) asserting that

---

[4] CBAs typically contain provisions establishing procedures for a union or employee to file a grievance against an employer asserting a violation of the CBA, with a right for the union to have the grievance submitted to binding arbitration. The 2003 CBA created a multi-step procedure for grievances between APA and American. If the grievance could not be resolved in the grievance process, APA could choose to advance the grievance to arbitration. SMF ¶¶ 29-30.

Plaintiff's termination violated the CBA. SMF ¶ 40. APA declined to advance Grievance 13-064 because Plaintiff's assertion that his termination violated the contract was contrary to the language of the CBA permitting Plaintiff's termination after five years of disability leave. SMF ¶¶ 41-44.

In February 2014, Plaintiff filed suit against APA in the District of Utah, alleging that APA's decision not to advance these two grievances violated the duty of fair representation APA owed to him under the Railway Labor Act. SMF ¶¶ 37, 43. The district court dismissed those claims. Order, *Meadows v. APA*, No. 2:14-CV-00115 (D. Utah Nov. 3, 2015), ECF No. 35; *Meadows v. APA*, No. 2:14-CV-00115, 2015 WL 13650044 (D. Utah Apr. 27, 2015), *aff'd*, 822 F. App'x 653 (10th Cir. 2020). The court concluded that the System Board of Adjustment (*i.e.*, the arbitration panel responsible for hearing grievances under the CBA) did not have jurisdiction over Grievance 12-011 because it raised federal statutory claims; Grievance 13-064 was not supported by the CBA; and "[n]one of the actions by [APA] were perfunctory, made in bad faith, discriminatory, or arbitrary." 2015 WL 13650044, at *3-*4. In 2016, a subsequent lawsuit that Plaintiff filed against APA and American in the Northern District of Illinois, which asserted a claim of civil conspiracy against APA, was dismissed due to *res judicata* and failure to state a claim. *Meadows v. Am. Airlines*, No. 1:15-CV-03899, 2016 WL 4011231 (N.D. Ill. July 27, 2016).

**IV.**     In the wake of these defeats, Plaintiff filed this, his third lawsuit against APA, on July 11, 2017 (ECF No. 1). Plaintiff filed an Amended Complaint in October 2018 (ECF No. 35).

## SUMMARY OF ARGUMENT

The eight claims asserted against APA in the Amended Complaint focus on events that occurred between 2013 and 2018, related to Plaintiff's desire to be reinstated at American and his membership status within APA. Several of the claims are barred by applicable statutes of limitations or *res judicata* stemming from his prior lawsuits. In addition, all the claims fail because

5

they rely on flawed legal theories or because there is no record evidence to support them.

**I.**       Counts I and II concern the pilot seniority list integration process that occurred between 2013 and 2016 in connection with the merger of American and U.S. Airways. ECF No. 35 ¶¶ 219-241. APA was party to agreements that created a process for the integration of the airlines' seniority lists under which committees representing the interests of the legacy pilot groups from each of the airlines made proposals to an arbitration panel for the fair and equitable integration of the seniority lists. Pursuant to those agreements, the committee that represented the interest of legacy American pilots was responsible for preparing a certified seniority list reflecting the pilots employed at American as of December 9, 2013, the date of the merger. Plaintiff contends that APA violated its duty of fair representation by not including him as a pilot on the American pre-merger seniority list, even though he was not employed by American, and therefore not on the pilot seniority list as of that date. Counts I and II are time-barred, and Plaintiff's claims also fail as a matter of law.

**II.**       Count III contends that APA breached its duty of representation with respect to its handling of a grievance known as Grievance 12-012, which had not been submitted to arbitration as of the filing of the Amended Complaint. ECF No. 35 ¶¶ 242-251. Grievance 12-012 was brought on behalf of pilots based in Dallas-Fort Worth ("DFW") to challenge American's then-practices of (1) not providing notice to pilots before terminating them pursuant to the five-year rule, and (2) categorically refusing to consider reinstatement of such pilots even after they regained their medical certifications. Plaintiff was not based in DFW, and he would not have obtained reinstatement from a successful arbitration of Grievance 12-012. Plaintiff mischaracterizes Grievance 12-012 as challenging the validity of the five-year rule itself. But even if that mischaracterization were correct, Plaintiff fails to assert a viable duty-of-fair-representation claim

because he cannot prove that such a grievance would be successful in light of the plain language of the CBA and APA's and American's longstanding interpretation of that language.

**III.**     Counts IV and V are state-law contract claims asserting that APA breached its Constitution and Bylaws through the same conduct undergirding the federal claims in Counts I - III. ECF No. 35 ¶¶ 252-285. These state-law claims are preempted by the Railway Labor Act.

**IV.**     Counts VI and VII allege that APA violated the Labor-Management Reporting and Disclosure Act ("LMRDA") by failing to give Plaintiff all the rights and privileges afforded to active members in good standing. ECF No. 35 ¶¶ 286-328. The APA Constitution and Bylaws distinguish between different classes of members—including between "active members" and "inactive members," who do not have all the rights and privileges of active members. At the time of the Amended Complaint, Plaintiff fell within the definition of an inactive member under APA's Constitution and Bylaws and was treated as an inactive member. Plaintiff contends that it is unlawful under the LMRDA for APA to make a distinction between active and inactive members, and he primarily seeks an injunction that he be treated as an active member of APA. The law is settled that unions are entitled to draw reasonable distinctions between classes of members, and APA's designation of pilots who are terminated by American and unable to fly due to a prolonged period of medical disability as inactive members of APA is eminently reasonable.

**V.**     Count VIII alleges that APA violated the LMRDA by retaliating against Plaintiff for exercising his right to sue APA. Plaintiff's theory is premised on an interpretation of the LMRDA that is of questionable status in the Eleventh Circuit. In any event, the two retaliation theories Plaintiff advances here would fail under the rule that applies in any circuit. Plaintiff's first theory is that APA chose not to advance Grievance 12-011 to arbitration in retaliation against Plaintiff because he participated in an internal APA arbitration proceeding in which he cross-

examined APA officials. This theory is barred by *res judicata* stemming from Plaintiff's unsuccessful Utah lawsuit and otherwise lacks evidentiary support. Plaintiff's second theory is that APA engaged in a retaliatory "course of conduct" toward him because of the Utah lawsuit, his threat in 2014 to initiate an EEOC action, and the initial complaint in this case. This theory fails because Plaintiff cannot vaguely allege a retaliatory "course of conduct" and instead must causally link each discrete retaliatory act with a specific protected activity, and Plaintiff cannot prove that any of the individual acts he alleges constitute retaliation for protected activity.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome of the suit under the governing law." *Id.* The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir.1985) (citation omitted).

## ARGUMENT

There is no genuine dispute of material fact with respect to any of Plaintiff's claims, and APA is entitled to judgment as a matter of law.

8

## I.    Counts I and II Are Time Barred and Foreclosed by the Material Facts

As noted above, Counts I and II assert that APA breached its duty of fair representation to Plaintiff with respect to its handling of the seniority integration process. Both claims are time-barred, and, in any event, the material facts foreclose Plaintiff's claims.

### A.    Legal Background: The Duty of Fair Representation

Under the Railway Labor Act, which applies to the airline industry, *see* 45 U.S.C.§ 181, a union selected as the exclusive representative of employees in a bargaining unit owes those employees a duty of fair representation. *Hester v. Int'l Union of Operating Eng'rs*, 830 F.2d 172, 174-75 (11th Cir. 1987); *see also Hester v. Int'l Union of Operating Eng'rs*, 878 F.2d 1309, 1309-10 (11th Cir. 1989). The duty stems from the union's status as the exclusive bargaining representative for the members of the bargaining unit. *Hester*, 830 F.2d at 175.

"[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is [1] arbitrary, [2] discriminatory, or [3] in bad faith." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998). This is a "highly deferential" standard. *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991). Congress did not intend "the court to substitute its own view of the proper bargain for that reached by the union." *Id.*

Thus, "[a] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Id.* at 67 (citation omitted). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez*, 525 U.S. at 45-46 (quoting *O'Neill*, 499 U.S. at 78). To establish that a union's conduct was discriminatory, a plaintiff must "adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Amalg. Ass'n of St., Elec. Ry. & Motor Coach Emps. of. Am. v. Lockridge*, 403 U.S. 274, 301

9

(1971); *see also Oltmanns v. Int'l Longshoremen's Ass'n*, 837 F. App'x 689, 696 (11th Cir. 2020). To prove bad faith, "[t]here must be 'substantial evidence of fraud, deceitful action or dishonest conduct." *Amalgamated*, 403 U.S. at 299; *see also Oltmanns*, 837 F. App'x at 696.

In addition to establishing a breach of the union's duty of fair representation through one of these three methods (arbitrary, discriminatory, or bad-faith conduct), a plaintiff must also "demonstrate a causal connection between the union's wrongful conduct and [the plaintiff's] injuries." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998); *see Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995) (plaintiff must establish he "was actually harmed by the union's actions"); *Airline Pilots Ass'n, Int'l v. Dep't of Transp.*, 880 F.2d 491, 499 (D.C. Cir. 1989) (plaintiff must show union's breach "contributed to his injuries"); *Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1019 (3d Cir. 1977) (plaintiff must show the "breach directly causes damage to an individual or group to whom the duty is owed"). When a plaintiff alleges that a union breached its duty of fair representation by failing to respond appropriately to an employer's breach of a CBA—by, for example, "fail[ing] to handle properly the grievance of the plaintiff-employee who" claimed a breach of the CBA, *Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc.*, 822 F.2d 188, 191 (1st Cir. 1987)—the plaintiff "must prove *both* 1) that the union breached its duty of fair representation and 2) that his employer violated the collective bargaining agreement." *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002); *see also Chauffeurs, Teamsters & Helpers, Loc. 391 v. Terry,* 494 U.S. 558, 564 (1990). If the plaintiff fails to establish that the employer breached the CBA, "the inquiry into the union's failure to comply with its duty of fair representation becomes immaterial." *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 560 (6th Cir. 1990).

B.    The Material Facts Pertaining to Counts I and II

In February 2013, while American was in bankruptcy, it entered an agreement to merge

10

with U.S. Airways. SMF ¶¶ 71-72. In connection with that merger, the two airlines and the two unions representing the pilots at the airlines entered into a Memorandum of Understanding ("MOU") that addressed, among other things, steps the parties would take to merge the pilot seniority lists from the two airlines. SMF ¶ 73. Paragraph 20 stated that any dispute "over the interpretation or application" of the MOU "shall be arbitrated on an expedited basis directly before a specially-created one-person System Board of Adjustment." SMF ¶ 74.

Consistent with the MOU, in September 2014, those same parties entered into a Seniority Integration Protocol Agreement ("Protocol Agreement") that established a process for merging the pilot seniority lists. SMF ¶ 75; *see generally Bakos v. Am. Airlines*, 266 F. Supp. 3d 729, 737-39 (E.D. Pa. 2017) (describing seniority integration process). The Protocol Agreement provided for the creation of an "Arbitration Board" that would "have the authority to establish a fair and equitable integrated seniority list," which would be based on proposals submitted to the Board by separate "merger committees" formed to represent the interests of each of the pre-merger pilot groups. SMF ¶¶ 75-79. The Protocol Agreement required each of the merger committees to certify and exchange seniority lists "reflect[ing] the status quo of the . . . seniority lists in effect at the carriers on December 9, 2013." SMF ¶¶ 77-77. The Protocol Agreement also required the committees to compile and exchange lists of pilots "who ha[ve] been terminated or otherwise removed from the pre-merger seniority list" and "whose status is the subject of any pending litigation or dispute." SMF ¶¶ 78.

Prior to the execution of the Protocol Agreement, APA had established a merger committee called the American Airlines Pilot Seniority Integration Committee ("AAPSIC") to represent the interests of the legacy American pilots, and AAPSIC had requested and obtained seniority list information from American. SMF ¶¶ 80-81. AAPSIC used the information from American to

create a certified seniority list that reflected the American seniority list as of December 9, 2013. SMF ¶¶ 81-82. Plaintiff was not included on that list because he was not on American's seniority list as of December 9, 2013 (having been removed in October 2011); however, he was included in a separate list of pilots who were challenging their separation from American. SMF ¶¶ 82-83. These facts were explained to Plaintiff in an email on March 6, 2016. SMF ¶ 83.

On March 21, 2016, Plaintiff sent a letter to APA and American that purported to commence a grievance challenging his omission from the seniority list integration process under the dispute resolution procedure described in Paragraph 20 of the MOU. SMF ¶¶ 84-85. APA did not initiate arbitration in response to the letter. SMF ¶ 87. APA and American's shared interpretation of the MOU was that individual pilots did not have a right to file a grievance under the MOU. SMF ¶ 88.

The Arbitration Board finalized the integrated seniority list on September 6, 2016. SMF ¶ 89. On November 9, 2016, Plaintiff submitted a complaint to the Dispute Resolution Committee established by the Arbitration Board for purposes of resolving disputes regarding the interpretation or application of the Arbitration Panel's integrated seniority list award. SMF ¶ 91. On January 9, 2017, Plaintiff was informed that his complaint was denied. SMF ¶ 92.

C.     Counts I and II are Time Barred

Duty-of-fair-representation claims under the Railway Labor Act are subject to a six-month statute of limitations. *Smallakoff v. Air Line Pilots Ass'n, Int'l*, 825 F.2d 1544, 1545 (11th Cir. 1987). That limitations period is justified by "the strong federal policy supporting 'relatively rapid final resolution of labor disputes.'" *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 98 (5th Cir. 1992) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 168 (1983)). "The limitations period under the [Railway Labor Act] begins to run when the claimants discover, or in the exercise of reasonable diligence should discover, the acts that form the basis of their duty of fair representation claim." *Trial v. Atchison, Topeka & Santa Fe Ry. Co.*, 896 F.2d 120, 124 (5th Cir.

12

1990); *see also Avera v. Airline Pilots Ass'n Int'l*, 436 F. App'x 969, 979 (11th Cir. 2011).

Counts I and II are untimely. Plaintiff filed his initial complaint in this case on July 11, 2017. ECF No. 1. Plaintiff was on notice of the facts underlying Counts I and II well more than six months prior (*i.e.*, before January 11, 2017). His claims are therefore time barred.

1.      Count I alleges that APA violated its duty of fair representation by failing to secure Plaintiff's return to the seniority list during proceedings to integrate the respective pilot seniority lists from American and U.S. Airways. ECF No. 35 ¶¶ 219-229. By Plaintiff's admission, he knew as of February 2016 that APA (via AAPSIC) had not included him on the American seniority list it submitted as a part of the integration process. *Id.* ¶ 186. On March 6, 2016, AAPSIC's chairman confirmed to Plaintiff that his omission was intentional. SMF ¶ 83. The statute of limitations thus began to run no later than March 6, 2016, more than a year before Plaintiff filed suit.

If there were any doubt, subsequent events confirm that Plaintiff knew more than six months prior to filing suit that APA would not support his efforts to be added to the seniority list during the integration process. The Arbitration Board finalized the integrated seniority list in September 2016, and Plaintiff was informed that a complaint he filed challenging that determination was denied on January 9, 2017. *See supra* p. 12. Even if the clock on Plaintiff's duty-of-fair-representation claim started to run on *that* late date, Plaintiff's claim was untimely. *See, e.g.*, *Turner v. Singletary*, 46 F. Supp. 2d 1238, 1240 (N.D. Fla. 1999) ("The law is and always has been that a statute of limitations creates a definitive deadline; a complaint or petition filed one day late … is untimely, just as if a year late."). Indeed, in a communication with APA, Plaintiff acknowledged that he had to file his claims by July 8, 2017. SMF ¶ 95.

We note that Plaintiff also filed internal union charges against individual AAPSIC members seeking union discipline under APA's Constitution and Bylaws in December 2016. SMF ¶ 93.

Those internal charges do not change the analysis. To be sure, a statute of limitations may be tolled by internal union proceedings that could "result in either complete relief to an aggrieved employee or reactivation of his grievance." *Clayton v. UAW*, 451 U.S. 679, 692 (1981). But the only possible outcome of Plaintiff's charges against individual AAPSIC members, even if they had been successful, would have been union discipline (such as fines or suspensions) against those individuals, not Plaintiff's inclusion in the integrated seniority list. SMF ¶ 94. Plaintiff's internal charges therefore did not toll the limitations period for his duty-of-fair-representation charges pertaining to his exclusion from the integrated seniority list. *See Coppage v. USPS*, 281 F.3d 1200, 1206 (11th Cir. 2002) (limitations period for a duty-of-fair-representation claim began to run when plaintiff learned of unfavorable settlement; a plaintiff "cannot toll the statute of limitations simply by writing letters to the Union protesting" a final decision).

2.      Count II alleges that APA violated its duty of fair representation by not pursuing the grievance he sought to file under the MOU (the "MOU grievance"). ECF No. 35 ¶¶ 238-240. The expedited arbitration procedures in Paragraph 20 of the MOU—the provision cited by Plaintiff as authority for filing his grievance—provided that an MOU arbitration "shall be heard no later than thirty (30) days following submission to the System Board" and "be decided no later than thirty (30) days following the first day of the hearing, unless otherwise agreed to in writing." SMF ¶ 74. Once the 30 days passed, on April 20, 2016, without action by APA, Plaintiff was on notice that "the grievance procedure was exhausted or otherwise broke[n] down to [his] disadvantage." *Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir. 1986); *see Coppage*, 281 F.3d at 1204. Even assuming Plaintiff lacked sufficient notice on April 20, 2016, he certainly had ample notice as of September 2016, when the integrated seniority list was finalized without an arbitration having been held on Plaintiff's grievance. Plaintiff acknowledged as much in an email to

14

AAPSIC's chairman on September 19, 2016, in which he acknowledged that APA had "refused" to advance his MOU grievance to arbitration. SMF ¶ 90.

> D.     Counts I and II are Foreclosed by the Material Facts

Even if Plaintiff's claims were deemed timely, Plaintiff cannot establish on this record that APA breached its duty of fair representation or that he suffered injury from a breach.

1.     As noted above at page 13, Count I alleges that APA violated its duty of fair representation because AAPSIC did not include Plaintiff's name on the certified seniority list of legacy American pilots that AAPSIC compiled and exchanged during the arbitration proceedings, which was used to develop the final integrated seniority list. The record evidence establishes, however, that the parties to the Protocol Agreement had agreed that the merger committees would exchange certified seniority lists "reflect[ing] the status quo of the . . . seniority lists in effect at the carriers on December 9, 2013." SMF ¶ 78. Consistent with that *contractually required* criteria, the certified seniority list prepared by AAPSIC did not include Plaintiff's name because he was not on the American pilot seniority list on that date. SMF ¶ 82.

Thus, on these undisputable facts, a jury could not find that APA acted arbitrarily in omitting Plaintiff from the certified list. Far from it: AAPSIC complied with its obligations under the Protocol Agreement in preparing its certified list and subsequent integration proposal. Nor, under the terms of the Protocol Agreement, did it have the discretion to add the names of pilots to the certified list who were not employed by American as of December 9, 2013. Thus, APA's conduct fell well within the "wide range of reasonableness" afforded to unions to make choices carrying out their responsibilities. *O'Neill*, 499 U.S. at 78. Nor is there any competent record evidence that AAPSIC intentionally discriminated against Plaintiff or engaged in the type of fraud, deceit, or dishonesty necessary to establish a duty-of-fair-representation claim.

2.     Count II alleges that APA breached its duty of fair representation by choosing not

to advance Plaintiff's MOU grievance. *See supra* p. 14. The record is clear that APA made that decision based on its mutual understanding with American the MOU did not provide a mechanism for individual pilots to file grievances under its expedited procedures. As APA and American stated in a communication to another pilot—which was subsequently shared with Plaintiff—"the MOU dispute resolution process in Paragraph 20 did not create and was never intended by the parties to create an avenue for pilots to lodge collateral attacks on the [seniority list integration] process itself, or to have an arbitrator rule on the contours of federal statutes." SMF ¶ 88. In light of the purpose of the MOU, which was to provide a process for the transition of the airlines and union parties to the merger, and did not bestow any rights on individual pilots, that interpretation fell within the wide range of reasonableness afforded to unions and was not arbitrary. *See, e.g.*, *Conkle v. Jeong*, 73 F.3d 909, 915-16 (9th Cir. 1995) ("A union representative is 'entitled to decline to put forward an interpretation of the collective bargaining agreement which he and his union reasonably [believe is] incorrect.'"); *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 290 (5th Cir. 1988) ("[T]he union's authority as a collective bargaining representative necessarily empowers it to act according to its own reasonable interpretation of the labor contract."). There is also no evidence that either APA intentionally discriminated against Plaintiff when it declined to advance the MOU grievance or engaged in fraud, deceit, or dishonesty.

## II.     Count III is Foreclosed by the Material Facts

In Count III, Plaintiff alleges that APA breached its duty of fair representation by not advancing Grievance 12-012 to arbitration by the time the Amended Complaint was filed. Plaintiff's duty-of-fair-representation claim is foreclosed as a matter of law for multiple reasons.

### A.     The Material Facts Pertaining to Grievance 12-012

On May 22, 2012, the Chair and Vice Chair of APA's Dallas/Fort Worth ("DFW") Base filed a grievance—Grievance 12-012—"on behalf of all DFW-based pilots." SMF ¶ 48. A base

16

representative has the authority to file a "base grievance" on behalf of pilots assigned to the base. SMF ¶¶ 49-51. Plaintiff was not a DFW-based pilot at the time of his termination. *See* SMF ¶ 52.[5]

Grievance 12-012 asserted that American violated the CBA by "failing to reinstate pilots" to the pilot seniority list, and "failing to provide pilots notice of termination prior to terminating employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years." SMF ¶ 53. As one of the drafters of Grievance 12-012 has explained, Grievance 12-012 was intended to challenge (1) American's practice of not providing notice to disabled pilots before they reached the five-year anniversary of their disability leave, as well as (2) American's then-recent practice of categorically refusing to reinstate pilots who had been terminated under the five-year rule and had regained their medical certification. SMF ¶ 54. Contrary to Plaintiff's characterizations, *see, e.g.*, Meadows Dep. Tr. 128, 151-58, Grievance 12-012 did not seek to reinstate all pilots whom American had terminated and removed from the pilot seniority list after five years of sick or disability leave. SMF ¶¶ 55-56.

Grievance 12-012 had not been advanced to arbitration as of the filing of the Amended Complaint. SMF ¶ 57. This was not unusual; as a former APA president testified, when he came into office in 2016, there were approximately 700 pending grievances, some up to eleven years old. SMF ¶¶ 58-59. APA needs American's agreement to set grievances for arbitration, and the parties typically only arbitrate on average about 11 grievances in a given year. SMF ¶ 61.

Nonetheless, between the filing of Grievance 12-012 and the filing of Plaintiff's Amended Complaint in 2018, APA addressed the concerns raised by Grievance 12-012 through other

---

[5] Pilots at American are assigned to ten different geographical "bases" or "domiciles," corresponding to hubs for the airline. SMF ¶ 45. APA's governance structure is similarly organized by base. SMF ¶ 46. Each base has a Chair and Vice Chair, and each APA member is assigned to a base that coincides with his or her employment assignment from American. SMF ¶ 47.

avenues. SMF ¶¶ 62-70. After Grievance 12-012 was filed, APA persuaded American to give notice to pilots before they were terminated and dropped from the seniority list due to disability. SMF ¶ 63. American also had ceased its blanket refusal of reinstatement requests by formerly disabled pilots, and it had resumed considering reinstatement requests on a case-by-case basis. SMF ¶ 64. Finally, in 2016, APA negotiated an amendment to the CBA that ensured that pilots on disability for more than five years would no longer be removed from the seniority list. SMF ¶ 65. In other words, pilots would no longer be terminated and removed from the pilot seniority list even if they had been on disability leave for more than five years, and they therefore maintained a right to return to flying after regaining their FAA First Class Medical Certificate. APA sought to make that change to the CBA retroactive (so that pilots like Plaintiff would be restored to the seniority list) but American would agree to the change only on a prospective basis. SMF ¶ 66.

B.    Count III is Foreclosed by the Material Facts

Count III should be resolved in APA's favor as a matter of law for several reasons.

First, Grievance 12-012 did not apply to Plaintiff, and thus there is no causal connection between APA's decision not to advance the grievance and any alleged injury to Plaintiff. Plaintiff was not based at DFW, and thus Grievance 12-012 was not filed on his behalf.[6] Moreover, even if APA had advanced Grievance 12-012 to arbitration, prevailed, and then convinced American to apply it system-wide, that still would not have resulted in Plaintiff's reinstatement. Grievance 12-012 did not challenge the basis for Plaintiff's termination, which was the five-year rule itself. Rather, Grievance 12-012 sought relief only on behalf of (1) pilots who, unlike Plaintiff (SMF ¶¶ 24-26), had not received notice of their terminations under that rule, and (2) pilots who, unlike

---

[6] Plaintiff has frequently cited a statement by American in one of its bankruptcy filings as support for his contention that Grievance 12-012 was filed on his behalf. *See, e.g.*, ECF No. 148 at 14 (Meadows Decl. ¶ 9). Of course, statements by American do not bind APA.

Plaintiff (SMF ¶¶ 22-23), had regained their certification but whose request for reinstatement was denied under American's then-operative blanket policy of refusing to reinstate any such pilot.

Second, the mere fact that Grievance 12-012 had not been submitted to arbitration by 2018 is not itself a duty-of-fair-representation violation. The decision whether to advance a grievance to arbitration falls well within a union's discretion under the duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 191 (1967). A "union has broad discretion as to whether or not to prosecute a grievance. It may take into account tactical and strategic factors such as its limited resources and consequent need to establish priorities, just as other 'prosecutors' must do, as well as its desire to maintain harmonious relations among the workers and between them and the employer." *Pryner v. Tractor Supply Co*., 109 F.3d 354, 362 (7th Cir. 1997); *see also Thompson*, 276 F.3d at 658.

As noted above, it is not unusual for APA grievances to take years to be heard in arbitration, and the 2003 CBA did not contain any timeline for grievances to be heard. SMF ¶¶ 58-60. More to the point, while Grievance 12-012 was pending, APA successfully addressed the concerns that motivated the grievance through other means. *Supra* p. 18; SMF ¶¶ 62-70. The record evidence thus does not permit the conclusion that APA acted arbitrarily merely because Grievance 12-012 was not arbitrated before October 2018. Nor is there any evidence that would suggest that Grievance 12-012 was not arbitrated as a result of invidious discrimination against Plaintiff or because of fraud, deceit, or dishonesty on the part of APA.

Finally, even if Grievance 12-012 *were* construed as a challenge to the five-year rule itself, Plaintiff would be unable to meet his burden to prove (*see supra* pp. 6–7) that American breached the CBA. When asked how he would prove a breach of the CBA in connection with Grievance 12-012, Plaintiff could only articulate the same flawed attack on the five-year rule that the district court in Utah rejected. *See* Meadows Dep. Tr. 166-70. As that court explained, the 2003 CBA

19

"expressly allows American to remove a pilot from the Seniority List if the pilot exhausts his or her sick leave of absence," and "[t]hus, when American removed Plaintiff from the Seniority List, it acted within the confines of the CBA." Order, *Meadows v. APA*, No. 2:14-CV-00115 (D. Utah Nov. 3, 2015), ECF No. 35, at 6–7; *see also Meadows v. APA*, 2015 WL 13650044, at *3, *4 (explaining that Plaintiff's argument was "not supported by the CBA"). Moreover, even if the CBA's language were ambiguous, which it is not, both APA and American have long agreed that the 2003 CBA permitted American to terminate a pilot after five years on unpaid sick or disability leave, *see* SMF ¶ 16, and that mutual understanding by the contracting parties is entitled to substantial deference. *See, e.g.*, *Bagsby v. Lewis Bros. of Tenn.*, 820 F.2d 799, 802 (6th Cir. 1987).

### III.   Counts IV and V Are Preempted by the Railway Labor Act

Counts IV and V are state-law claims for breach of contract, alleging that APA violated its contractual obligations to Plaintiff under APA's Constitution and Bylaws. ECF No. 35 ¶¶ 253, 258. Although union constitutions are generally enforceable under contract law, Plaintiff's claims in Counts IV and V are preempted by federal law because they explicitly rest on the same allegations that undergird Plaintiff's federal breach-of-fair-duty claims in Counts I-III. *Id.* ¶¶ 261, 280-81.

Courts have recognized that the "rights and duties of unions in carrying out their representational functions is an area where 'the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law.'" *Bensel v. APA*, 387 F.3d 298, 322 (3d Cir. 2004); *see also Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1578, 1580 (S.D. Fla. 1993), *aff'd*, 193 F.3d 1185 (11th Cir. 1999) (the duty of fair representation "is defined by federal law, which preempts the application of state substantive law in the area"); *see also Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994) (the duty-of-fair-representation preemption standard under the National Labor Relations Act and the Railway Labor Act are "virtually identical")

20

To decide whether a federal duty-of-fair-representation claim preempts a breach-of-contract claim under state law, courts look to whether the plaintiff alleges that "the Union breached a duty that arose from its status as [the plaintiff's] exclusive collective bargaining agent," rather than "any breach of a state tort duty that exists independently of the . . . collective bargaining relationship." *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162 (5th Cir. 1989). The state-law claim is preempted where "the duties and obligations running from one party to another arose solely by virtue of the provisions of the Railway Labor Act" and the agreements entered into between the union and employer. *Eisenberg v. Trans World Airlines, Inc.*, 654 F. Supp. 125, 127 (S.D. Fla. 1987), *aff'd*, 875 F.2d 872 (11th Cir. 1989); *see also Dunn*, 836 F. Supp. at 1578; *Mann v. Air Line Pilots Ass'n*, 848 F. Supp. 990, 995 (S.D. Fla. 1994).

Here, Plaintiff's contract claims are preempted because they are explicitly grounded in Plaintiff's theories that APA breached its duty of fair representation under the Railway Labor Act. Count IV contends that APA breached its Constitution and Bylaws through "APA's lack of fair representation and disparate treatment" during the seniority list integration process. ECF No. 35 ¶ 261. Count V asserts that APA violated the Constitution and Bylaws "as a result of APA's breach of its duty of fair representation and disparate treatment between and amongst Meadows and similarly situated disabled MDD pilots" with respect to its handling of his MOU grievance and Grievance 12-012 *Id.* ¶¶ 280-81. Indeed, Count V expressly asks this Court to "rule that APA has breached [the] duty of fair representation based solely on its failure to prosecute these grievances." *Id.* ¶ 280. These claims are thus preempted and fail as a matter of law.

## IV.   Counts VI and VII Fail as a Matter of Law under the LMRDA

The LMRDA, 29 U.S.C. § 401 *et seq.*, protects certain rights of union members. *See* 29 U.S.C. § 411. In Counts VI and VII, Plaintiff alleges that APA unlawfully infringed on rights protected by the LMRDA by treating him as an "inactive member" under APA's Constitution and

Bylaws, rather than an "active member in good standing." *See* ECF No. 35 at ¶¶ 286-290, 308-312. Plaintiff asks this Court to "order injunctive relief and order APA [to] treat [Plaintiff] as an active APA member in good standing." *Id.* ¶¶ 307, 328. He also asks the Court to rule that he is entitled to vote, hold office, serve on committees, and attend union meetings. *Id.*[7]

Plaintiff's claims are premised on his contention that it is unlawful under the LMRDA for APA to distinguish between different classes of membership. Instead, he claims that APA—and, by extension, all unions—can only have one type of member who has the same panoply of rights and privileges afforded to all members. *Id.* ¶¶ 288, 310. That premise is fatally flawed: the LMRDA permits unions to enact reasonable rules through which they can distinguish between different groups with different rights and privileges. Indeed, it is commonplace for unions to do so through their governing documents. Plaintiff was appropriately designated as an inactive member of APA, and he was entitled to the rights and privileges of an inactive member only.

A.  The Material Facts Pertaining to Counts VI and VII

1.  APA's governing document is its Constitution and Bylaws. SMF ¶ 104. At all times relevant to this case, the Constitution and Bylaws articulated criteria for membership in APA. and established multiple classes of membership, including "active" membership and "inactive" membership. SMF ¶ 105. "Active Membership" applies to "flight deck operating crew members" who meet certain other qualifications. SMF ¶ 108. Pilots who do not actively fly for American, such as pilots on "[m]edical or [p]ersonal [l]eave of [a]bsence," qualify for inactive membership. *Id*. The Constitution and Bylaws provide that a "member in good standing shall automatically be transferred to inactive membership status upon . . . [b]eing on leave of absence . . . twelve (12)

---

[7] APA has since concluded that Plaintiff no longer qualifies as any type of member of APA, but that determination occurred outside the relevant timeframe and is not pertinent to this case.

months after the expiration of paid sick leave[.]" SMF ¶ 109.

A separate section describes the rights of active and inactive members. *See* C&B Art. 7. That section provides that "a member in good standing is entitled to participate actively in all APA activities and is entitled to all of the rights, privileges, and benefits of membership in the APA." *Id.* Art. III § 7.A. Inactive members, on the other hand, "shall enjoy all the benefits of active membership except the privileges of voting, holding elected office, and participation in Association sponsored programs where specific requirements prohibit such participation." *Id.* Art. III § 7.B. Dues for APA members are assessed as a percentage of income from American, *see id.* Art. III § 6A, and thus pilots on unpaid leaves of absence do not pay dues to APA. SMF ¶ 110.

2.      Prior to 2016, the membership status of pilots who had been terminated by American after five years of unpaid sick or disability leave—but who could potentially regain their ability to fly and seek reinstatement from American—was unsettled. SMF ¶ 111. These pilots were commonly referred to within APA as "Medical Disability Dropped" (MDD) pilots. SMF ¶ 17. In June 2016, then-President Keith Wilson, exercising his authority under the APA Constitution and Bylaws, issued a presidential interpretation that found that MDD pilots (such as Plaintiff) were inactive members in light of the provision stating that members automatically became inactive members 12 months after exhausting their paid sick leave. SMF ¶¶ 112-13.

President Wilson's interpretation was subsequently confirmed in an arbitration award in a proceeding involving Plaintiff. SMF ¶¶ 114-18. Plaintiff had filed internal union charges against President Wilson, and among the issues presented was whether Plaintiff was an active member in good standing or an inactive member. SMF ¶ 114-15. Construing the Constitution and Bylaws, the arbitrator (Edward Valverde) issued an award (the "Valverde Award") finding (1) that Plaintiff was an "inactive member," and (2) that he lost his "good standing" status when he became an inactive

23

member. *Id*. Subsequently, in 2017, then-APA President Dan Carey confirmed Arbitrator Valverde's interpretation of the Constitution and Bylaws. SMF ¶ 119.

       B.      <u>Plaintiff's Legal Theory is Wrong as a Matter of Law</u>

As explained above, Plaintiff's governing theory is that APA cannot lawfully make distinctions between "active" and "inactive" members. In other words, Plaintiff attacks the legality of APA's Constitution and Bylaws itself, and asserts that APA (and, by extension, all unions) cannot, through its governing document enact rules that assign different rights to different classes of membership. That theory is incorrect.

The LMRDA sets out a "bill of rights" for union members. 29 U.S.C. § 411. As relevant here, those rights include "equal rights" to participate in union elections, *id.* § 411(a)(1), and the right to "meet and assemble freely with other members," *id.* § 411(a)(2). However, each of those statutory rights are subject to provisos that permit unions to enact "reasonable rules" affecting those rights through their governing documents. *Id.* §§ 411(a)(1), (a)(2). Accordingly, unions are given broad latitude in fashioning systems of democratic self-government that reflect their specific needs. "Federal courts have applied a long-standing policy of avoiding judicial interference in a union's self-governance and internal affairs." *Shelley v. Am. Postal Workers Union*, 775 F. Supp. 2d 197, 207 (D.D.C. 2011) (citing *Fish v. Huddell*, 51 F.2d 319, 320 (D.C. Cir. 1931)).

In recognition of this statutory structure, a wide range of courts—including the Eleventh Circuit—have recognized that unions can accord different rights to different types of members, so long as the distinctions are reasonable. In *Dep't of Lab. v. Aluminum, Brick & Glass Workers Int'l Union, Loc. 200*, 941 F.2d 1172 (11th Cir. 1991), the Eleventh Circuit concluded that it was reasonable for a union to limit participation in union elections to "members in good standing" who had paid a strike assessment, and not provide the same rights to "members" who had not paid the

24

assessment. *Id.* at 1175-77; *see also, e.g.*, *Sergeant v. Inlandboatmen's Union of the Pac.*, 346 F.3d 1196, 1202 (9th Cir. 2003) (permitting union to preclude "non-seniority casual" employees from participating in ratification votes); *Alvey v. Gen. Elec. Co.*, 622 F.2d 1279, 1284 (7th Cir. 1980) ("The right of a union to limit participation in union affairs to members in good standing is not in issue. Such a rule is clearly reasonable and we have little doubt that it would withstand scrutiny under section 411."); *Thompson v. Union of Flight Attendants*, No. 81-CV-03249, 1982 WL 2153, at *6 (C.D. Cal. Jan. 25, 1982) ("A union may limit the rights of members who are not in good standing so long as the policy is reasonable."). As the Eleventh Circuit explained in *Dep't of Lab.* 941 F.2d at 1175-77, contrary to Plaintiff's central contention (ECF No. 35 ¶¶ 288-289, 310-311), the LMRDA's definition of "member" and "member in good standing," 29 U.S.C. § 402(o), permits reasonable distinctions between classes of members.

The distinction between "active" and "inactive" member in APA's Constitution and Bylaws is eminently "fair and reasonable," *Dep't of Lab.*, 941 F.2d at 1177, including the rule that pilots (like Plaintiff) who have been on unpaid leave for longer than 12 months become inactive members. That rule is a prime example of a so-called "working at the trade" requirement, a common requirement in many unions for holding office and exercising other membership rights. A "working at the trade requirement" distinguishes members actively at work for a union-represented employer from members who have not fully left the employer's orbit but who are nevertheless away from work for an extended period of time. The reasonableness of such "working at the trade" requirements has been repeatedly affirmed. *See, e.g., Taylor v. Great Lakes Seamen's Union, Loc. 5000, United Steelworkers of Am.*, 701 F.2d 590, 590-92 (6th Cir. 1983).

In *Reich v. Local 30, International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America*, 6 F.3d 978 (3rd Cir. 1993), for example, it was reasonable for a union to

terminate a member's good standing status—thereby precluding him from running for union office—after the member had not worked within the craft jurisdiction of the union for six months. The court acknowledged that a contrary ruling would require that "persons running for union office would be required to seek support from persons who are not employed in the craft and whose interest may be directly contrary to employees who are employed in the craft." *Id.* at 987. Other courts have similarly recognized a union's interest in ensuring those "whose substantial interests are most at stake will have the ability to determine the terms and conditions of their employment" through union participation. *Sergeant*, 346 F.3d at 1202; *see Taylor*, 701 F.2d at 592. (finding "nothing 'unreasonable' about a rule which, in effect, guarantees that internal union affairs will be governed by those whose interests are most at stake—workers presently employed").

Finally, Plaintiff's contention that he should be given the status as an active member of APA under APA's Constitution and Bylaws is foreclosed by the Valverde Award. The question of Plaintiff's status under the terms of the Constitution and Bylaws was presented and fully litigated by Plaintiff in the Valverde arbitration, and the resulting award has preclusive effect. *See Restatement (Second) of Judgments* §§ 83-84; *see also B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (rejecting an argument that issue preclusion requires a decision by an Article III court). The conditions for issue preclusion are met by the Valverde Award. *See Dailide v. U.S. Att'y Gen.*, 387 F.3d 1335, 1342 (11th Cir. 2004) (outlining conditions for issue preclusion). The issue presented here is identical to the issue determined in the Valverde Award; the determination of that iss——ue was critical to the Award; the issue was actually litigated; and Plaintiff had a full and fair opportunity to litigate the issue by submitting evidence, witness testimony, and a post-hearing brief. *See* SMF ¶¶ 114-18.[8]

---

[8] One other issue bears mention with respect to Counts VI and VII. During the relevant

## V.     Count VIII is Legally Deficient and Foreclosed by the Material Facts

Finally, Count VIII asserts that APA retaliated against Plaintiff for exercising his LMRDA-protected right to "institute an action in any court, or in a proceeding before any administrative agency." 29 U.S.C. § 411(a)(4). Plaintiff alleges two theories of retaliation in Count VIII. First, he alleges that APA chose not to advance Grievance 12-011 to arbitration to retaliate against Plaintiff for cross-examining APA officials in an internal APA arbitration held in July 2013. ECF No. 35 ¶¶ 335-344. Second, Plaintiff alleges that APA engaged in a "retaliatory course of conduct" against Plaintiff for instituting federal lawsuits. *Id.* ¶¶ 347-50. Both theories fail as a matter of law.

### A.     Plaintiff Has Not Alleged Retaliatory Discipline

Courts have recognized two potential bases for a retaliation claim under the LMRDA. The first is explicitly enshrined in Section 609 of the Act, which makes it unlawful for a union to "fine, suspend, expel, or otherwise discipline" a member for exercising any right under the LMRDA. 29 U.S.C. § 529. The Supreme Court has held that acts considered retaliation under Section 609 are limited to "punishment authorized by the union as a collective entity to enforce its rules," and

---

period, APA hosted an online discussion forum for APA members called "Challenge & Response" ("C&R"). SMF ¶¶ 120-21. In April 2014, the APA Board of Directors decided to enforce the terms of a previously enacted Acceptable Use Policy ("AUP") and limit access to C&R for inactive members. SMF ¶¶ 122-25. As a result of that decision, several groups of pilots, including MDD pilots like Plaintiff, lost access to C&R. SMF ¶ 126. An MDD pilot named Kathy Emery subsequently sued APA regarding the C&R restrictions, *Emery v. Allied Pilots Ass'n*, 227 F. Supp. 3d 1292 (S.D. Fla. 2017). The court (Hurley, J.) did not find that MDD pilots were entitled to rights as active members in good standing of APA. Instead, the court found that while APA's justifications for enforcing the AUP restrictions "were not offered to mask an impermissible discriminatory animus," *id.* at 1299, APA's "policy of denying MDD pilots access to Challenge & Response constitutes in [*sic*] an impermissible infringement on [Plaintiff Emery]'s right to free speech guaranteed under the LMRDA," *id.* at 1302. On January 13, 2017, APA restored access to C&R for all MDD pilots—including Plaintiff—and Plaintiff had access as of the filing of his Amended Complaint. SMF ¶¶ 129-31. Judge Hurley's conclusions create no triable issue in this case. Plaintiff had access to C&R at the time the Amended Complaint was filed, and so no injunctive relief is appropriate. Further, any alleged damages that Plaintiff may wish to claim as a result of being unable to post on a union online message board are beyond speculative.

therefore requires "some sort of established disciplinary process rather than ad hoc retaliation by individual union officers." *Breininger v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 6*, 493 U.S. 67, 91-92 (1989). Separately, some courts have implied a separate cause of action for retaliation in Section 102 of the LMRDA, 29 U.S.C. § 412, which creates a federal cause of action for any person "whose rights . . . have been infringed." *See Maddalone v. Loc. 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 183 (2d Cir. 1998).

In *Holschen v. International Union of Painters & Allied Trades/Painters Dist. Council #2*, 598 F.3d 454 (8th Cir. 2010), the Eighth Circuit expressed doubt whether Section 102 creates a free-standing retaliation claim for union members given that Congress specifically created a more limited anti-retaliation cause of action in Section 609. *Id.* at 466-67. Consistent with *Holschen*, in *Shivers v. IBEW Local* 349, 262 F. App'x 121 (11th Cir. 2008), the Eleventh Circuit dismissed an LMRDA retaliation claim because the plaintiff had failed to allege facts satisfying Section 609. *Id.* at 128-29. There is no retaliatory discipline within the meaning of Section 609 alleged here, and thus, the Court should grant summary judgment on Count VIII.

> B.     Both Plaintiff's Retaliation Theories Fail for Additional Reasons

Even if the Court were to assume that Plaintiff can make out a retaliation claim under Section 102 of the LMRDA, both of his theories in Count VIII fail as a matter of law.

> 1.     *Plaintiff's Grievance 12-011 Theory is Barred by Res Judicata and Otherwise Fails as a Matter of Law*

As an initial matter, Plaintiff's Grievance 12-011 theory is barred by *res judicata*. As described above, *supra* p. 8, at the time Plaintiff filed his Amended Complaint, he had already sued APA in the District of Utah, unsuccessfully challenging APA's decision not to advance Grievance 12-011 to arbitration. Plaintiff's allegations in the Utah lawsuit mirror the allegations here. *Compare* ECF No. 35 ¶¶ 335-344, *with* Shiffrin Decl. Ex. 11 ("Utah Compl.") ¶¶ 48-85. Both

28

complaints contain nearly identical allegations that "[o]n information and belief, APA's last minute refusal to arbitrate his grievance #12-011, was done in retaliation by APA's President and Legal Director, due to the hostility and personal animus exhibited by certain APA Executive Officers; whom Meadows personally cross-examined, during the previous months (July 2013) APA Equity Distribution Arbitration hearing."[9] *Compare* ECF No. 35 ¶ 344, *with* Utah Compl. ¶ 86. The Utah Complaint did not contain an LMRDA retaliation claim based on Grievance 12-011, alleging only that APA's decision not to advance Grievance 12-011 to arbitration violated APA's duty of fair representation. *See* Utah Compl. ¶¶ 144-200.

Plaintiff's Grievance 12-011 theory is barred by *res judicata*, which precludes claims that could have been brought in earlier litigation when a "prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action." *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1325 (11th Cir. 2020). A subsequent claim "involve[s] the same causes of action" when it "arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action." *Id*. *Res judicata* "applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." *Id.*

The elements of *res judicata* are readily established here. Plaintiff's Utah case was brought against APA and resulted in a final judgment in APA's favor. Both complaints alleged that APA's

---

[9] In 2013, APA received a large amount of equity (*i.e.*, stock) in American in connection with the settlement of its claims in American's bankruptcy proceedings. Myers Decl. ¶ 64. APA established a formula for the distribution of the equity to APA members, as well as a process, ending in arbitration before a neutral arbitrator, to challenge APA's distribution determinations. *Id*. ¶¶ 65-66. Plaintiff was one of several pilots who submitted challenges and participated in that arbitration. *Id*. ¶ 67. Plaintiff was successful with respect to his challenge. *Id*.

decision to not advance Grievance 12-011 was motivated by retaliatory animus. Finally, while Plaintiff's Utah complaint did not include an LMRDA retaliation claim regarding Grievance 12-011, "[i]t is by now hornbook law that the doctrine of res judicata bars the filing of claims which were raised or *could have been raised* in an earlier proceeding." *Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011) (emphasis added). That is certainly the case here. Plaintiff told APA prior to filing his amended complaint in the Utah case that he believed APA's decision not to advance the grievance was retaliatory, SMF ¶¶ 36-38, and he even admitted that he "should have" asserted his LMRDA retaliation claim in the Utah lawsuit, Meadows Dep. Tr. 149-50. Accordingly, Plaintiff's retaliation claim based on Grievance 12-011 fails.

Plaintiff's first retaliation theory fails on the merits as well. To establish a prima facie case of LMRDA retaliation, "Plaintiffs must establish that: (1) their conduct constituted an exercise of [a right] protected by the LMRDA; (2) they were subject to adverse action; and (3) the adverse action was causally connected to the exercise of [the] protected [right]." *Phillip v. AFGE*, No. 19-CV-20122, 2019 WL 4540756, at *2 (S.D. Fla. Sept. 19, 2019); *Carroll v. Int'l Ass'n of Machinists & Aerospace Workers*, No. 1:03-CV-03106, 2006 WL 4401479, at *4 (N.D. Ga. Mar. 15, 2006), *aff'd*, 221 F. App'x 810 (11th Cir. 2006).

Plaintiff claims retaliation under Section 101(a)(4) of the LMRDA, which protects the right of union members to institute actions in "court" or before an "administrative agency." 29 U.S.C. § 411(a)(4). APA is aware of no authority suggesting that conducting a cross-examination during an arbitration—the protected activity alleged here—is protected by Section 101(a)(4).

Additionally, there is also no triable issue of fact with respect to causation. As President Wilson explained in writing to Plaintiff, APA chose not to advance Grievance 12-011 to arbitration because it raised statutory claims outside the jurisdiction of the CBA grievance process, SMF ¶ 34,

30

a conclusion affirmed by the Utah district court, 2015 WL 13650044, at *3. The strength of APA's contemporaneous explanation—combined with the lack of any evidence upon which a jury could find that President Wilson was motivated by retaliatory animus—is fatal to Plaintiff's theory that the decision was retaliatory. *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307-08 (11th Cir. 2023) (plaintiff must show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's legitimate justification).

2.    *Plaintiff's "Course of Conduct" Theory Also Fails as a Matter of Law*

In Paragraph 348 of the Amended Complaint, Plaintiff alleges eleven actions purportedly taken by APA, which he contends constitute a "retaliatory course of conduct" for exercise of his Section 101(a)(4) rights—specifically, his filing of the Utah suit on February 19, 2014, his amendment of that suit on July 22, 2014, his threat to institute an EEOC action against APA on April 22, 2014, and his filing of this case on July 11, 2017. ECF No. 35 at ¶¶ 347-350.[10] This "course of conduct" theory is also unavailing, for several reasons.

As an initial matter, Plaintiff's "course of conduct" theory has no basis in the law. Implicitly acknowledging that none of the alleged acts are sufficient standing alone to sustain a claim for retaliation, Plaintiff has sought to lump a number of disparate events together to assert what he has characterized as a "continuing violation" claim for retaliation under the LMRDA. ECF No. 149, at 9. But retaliation claims are actionable based only on "discrete acts," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (each incident of retaliatory conduct is separately actionable under Title VII); *see Hamic v. Harris Cnty. W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006) ("[R]etaliation is, by definition, a discrete act, not a pattern of behavior."). Thus, Plaintiff's

---

[10] Plaintiff also identifies filing internal disciplinary charges against APA officers as protected activity, but that activity does not fall under Section 101(a)(4). *See supra* at 30.

"course of conduct" theory fails as a matter of law.

Even if the Court were to entertain each of the separate allegations in Paragraph 348 of the Amended Complaint as independent retaliation claims, each of those claims would fail. As we explain below, many of Plaintiff's characterizations of the facts at issue are unsupported by record evidence. But in any event, there is no record evidence upon which a jury could find a causal connection between Plaintiff's protected activity and any alleged retaliatory acts. To show a causal connection, a plaintiff must demonstrate, at the very least, "that the relevant decisionmaker was 'aware of the protected conduct.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013).[11] Causation may be shown by direct or circumstantial evidence. *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017). "[D]irect evidence is composed of only the most blatant remarks" that "if believed, prove[] the existence of a fact in issue without inference or presumption." *Rojas v. Fla.*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002).

Here, there is no direct evidence with respect to any of the alleged acts. As for circumstantial evidence, although close temporal proximity can be enough to create a genuine issue of material fact as to causation, "temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Proximity of three months "without more, does not rise to the level of 'very close.'" *Id.*

On this record, none of the actions described in Paragraph 348 of the Amended Complaint satisfy the elements to establish an independent, triable claim of retaliation:

1.      Plaintiff alleges that on February 27, 2014, he was denied access to APA

---

[11] The LMRDA causation inquiry is "analogous" to the retaliation inquiry under Title VII. *See, e.g.*, *Carroll*, 2006 WL 4401479, at *4; *see also Hudson v. Am. Fed'n of Gov't Emps.*, 151 F.4th 456, 461 (D.C. Cir. 2025) (LMRDA retaliation claim requires "but-for causation").

headquarters before an arbitration hearing. That is not an "adverse action" giving rise to a retaliation claim. To support a retaliation claim, an adverse action must be "materially adverse"— a standard that requires some "injury or harm" and excludes "petty slights or minor annoyances." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 68 (2006). Plaintiff can show no such injury here, as is illustrated by the fact that he cannot identify any relief that he is seeking on the basis of the event. *See* Meadows Dep. Tr. 238. Nor can Plaintiff point to any admissible evidence as to the reasons for the denial, let alone that it had any connection to his Utah lawsuit. *See id*. 237.

2.     Plaintiff alleges that on March 7, 2014, APA's secretary-treasurer amended APA's proof of claim in the American bankruptcy to Plaintiff's disadvantage by removing Grievance 12-011 from preservation through the proof of claim. *See* SMF ¶¶ 133-136. But the record evidence conclusively shows that APA made the decision to make that amendment—and even informed Meadows of that decision—*before* the Utah suit was filed. SMF ¶¶ 133-134.

3.     Plaintiff alleges that on March 27, 2014, APA refused to process a request he made for reinstatement to American. Plaintiff was not legally able to work as a pilot for American Airlines at that time as he did not possess an FAA Medical Certificate. As the evidence shows, APA's practice at all relevant times was only to formally request reinstatement for pilots who had regained their FAA First Class Medical Certificate—a practice that APA informed Meadows about as early as 2011, well before he filed the Utah lawsuit. SMF ¶¶ 16, 18. There is no record evidence to suggest that APA's application of its longstanding policy to Plaintiff was pretextual.

4.     Plaintiff alleges that APA's general counsel made a "surprise" appearance "on behalf of [his] adversary" at a bankruptcy hearing on April 17, 2014, in "a bad faith effort to help sabotage [his] statutory claims." ECF 35 ¶ 348. That characterization is contrary to the undisputed record. The transcript from that proceeding shows that APA's counsel appeared on behalf of APA

33

and informed the bankruptcy court of undisputable accurate facts: (1) that APA chose not to arbitrate Grievance 12-011 because it asserted only statutory claims, and (2) that APA took no position as to the validity of those claims. SMF ¶ 136.

5.      Plaintiff alleges that the decision that APA's Board of Directors made on April 22, 2014, to exclude MDD pilots (along with hundreds of other pilots) from the Challenge & Response online forum, *see supra* p. 27 n.8, was retaliation for a threat Plaintiff communicated to an APA lawyer via email earlier that day suggesting he might file an EEOC action. SMF ¶ 124; *see* Meadows Dep. Tr. 265-66. The court in *Emery* has already found that APA's reasons for this action were "not offered to mask an impermissible discriminatory animus." 227 F. Supp. 3d at 1299. It is also implausible that this nearly contemporaneous threat had been communicated to the APA Board, and, indeed, Plaintiff has evinced no evidence that any member of the Board of Directors was aware of that threat at the time of its decision. *See Kidd*, 731 F.3d at 1211.

6.      Plaintiff alleges that, as an act of retaliation, APA took the position in its motion to dismiss the Utah lawsuit that the internal exhaustion requirements under APA's Constitution and Bylaws were binding on Plaintiff because he had alleged he was an active member in good standing of the union. *See* Motion to Dismiss, *Meadows v. APA*, No. 2:14-CV-00115 (D. Utah, July 1, 2014), ECF No. 6. This claim is frivolous because (as Plaintiff acknowledges, *see* Meadows Dep. Tr. 284) APA was required in that motion to accept Plaintiff's allegations as true.

7.      Plaintiff alleges that APA's secretary-treasurer refused to issue him an "active membership card." ECF No. 35 ¶¶ 157, 348. However, as discussed above, *supra* pp. 21-26, Plaintiff was not an active member and was therefore not entitled to an active membership card.

8.      Plaintiff alleges that on June 20, 2016, President Wilson issued a constitutional interpretation that *all* MDD pilots were inactive members of APA in retaliation for his alleged

protected activity. Plaintiff can point to no admissible evidence that President Wilson's interpretation had any causal connection to his protected conduct. He certainly cannot rely on temporal proximity alone, as Plaintiff's most recent protected conduct before the interpretation (in June 2016) occurred more than a year-and-a-half earlier.

9.      Plaintiff alleges that on October 19, 2016, APA made "a special-side deal to reinstate" another MDD pilot but did not get the same deal for him. ECF No. 35 ¶ 348. The undisputed evidence shows that there was no such deal: the other pilot, Joe Barkate, was reinstated by American only after he obtained his FAA Medical Certificate in 2019, SMF ¶ 67-69, and APA made the *same request* for Plaintiff once he regained his FAA Medical Certificate, SMF ¶ 98-100.

10.     Plaintiff alleges that on March 2, 2017, he was temporarily denied access to APA headquarters. Even if Plaintiff was temporarily denied access as he alleges, by Plaintiff's own admission he was promptly let into the building after he called then-President Carey, who cleared up the misunderstanding. SMF ¶ 137. He also has produced no evidence establishing that the individual involved in the alleged denial was aware of his alleged protected activity.

11.     Finally, Plaintiff alleges that on October 18, 2018, APA President Carey issued a constitutional interpretation that *all* inactive members were not members in good standing. But that interpretation simply confirmed the holding of the January 2016 Valverde Award. *See supra* pp. 23-24. In any event, Plaintiff cannot show temporal proximity to any protected conduct.

*     *     *

Thus, in light of the material facts, none of the alleged actions can sustain a claim for retaliation, let alone a "retaliatory course of conduct."

**CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment for APA.

35

Dated: April 1, 2026

Respectfully submitted,

*/s/ Andrew Dymowski*
Andrew Dymowski, Esq.
Florida Bar No.1058209
Capri Trigo, Esq.
Florida Bar No. 28564
GORDON REES SCULLY MANSUKHANI
Miami Tower
100 S.E. Second Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428-5309
Email: ctrigo@grsm.com

*/s/ Joshua B. Shiffrin*
Joshua B. Shiffrin*
John M. Pellettieri*
Lane Shadgett*
BREDHOFF & KAISER PLLC
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
Email: jshiffrin@bredhoff.com
Email: jpellettieri@bredhoff.com
Email: lshadgett@bredhoff.com
*Admitted *Pro Hac Vice*

*Counsel for Defendant Allied Pilots Association*

36