IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**LAWRENCE MEADOWS,**
Plaintiff,

v.

**ALLIED PILOTS ASSOCIATION, et al.,**
Defendants.

**CASE NO. 17-cv-22589-EA**
**HONORABLE JUDGE ED ARTAU**

_____ /

FILED BY _____ D.C.

APR 14 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR RELIEF UNDER FED. R. CIV. P. 56(d)

Plaintiff Lawrence Meadows, proceeding pro se, respectfully submits this Opposition to

Defendant Allied Pilots Association's ("APA") Motion for Summary Judgment ("MSJ") (ECF No.

237) and, in support thereof, moves for relief under Federal Rule of Civil Procedure 56(d).

### PRELIMINARY STATEMENT

This is not a case ripe for summary judgment; it is a case on the verge of procedural

collapse, hobbled by a record so tainted by misconduct that a ruling on the merits is impossible.

Defendant APA now asks this Court to grant it final judgment based on a record it systematically

corrupted through spoliation, misrepresentation, and obstruction. APA's motion comes before the

Court while at least twenty-one (21) fully-briefed, case-altering motions and objections remain

undecided, including two motions to disqualify APA's counsel for severe ethical misconduct and

multiple motions for sanctions for the spoliation of evidence by three consecutive APA presidents.

(Meadows Decl. ¶ 2; Ex. A).

APA's MSJ motion relies on a fraudulent settlement agreement that is currently the subject

of a fraud-on-the-court investigation in the U.S. Court of Appeals for the Eleventh Circuit.

1

(Meadows Decl. ¶ 7). It relies on a discovery record that was artificially limited by a Protective Order procured through what sworn testimony reveals to be counsel's fraud. (Meadows Decl. ¶¶ 16-17). And it asks this Court to rule on the merits after the Magistrate Judge created a manifestly unjust playing field, granting APA overwhelming page limits while denying Plaintiff a reasonable extension of time to respond to a 716-page filing. (Meadows Decl. ¶¶ 29-30).

Plaintiff cannot at this time present facts essential to his opposition because he has been systematically denied the discovery needed to do so. Pursuant to Rule 56(d), this Court should deny APA's motion or, at a minimum, defer consideration and order the specific, essential discovery detailed in the contemporaneously filed Declaration of Lawrence Meadows. To do otherwise would reward APA's pervasive misconduct and violate Plaintiff's fundamental right to due process.

## FACTUAL AND PROCEDURAL HISTORY

This case is not a simple dispute; it is the culmination of a decade-long struggle against a union that has repeatedly breached its duties, engaged in dilatory tactics, and actively concealed evidence to defeat the rights of a long-serving member. This history is essential to understanding why summary judgment is not just premature, but a sanction against Plaintiff for Defendant's own misconduct.

### A. Plaintiff's Status and the Grievances at the Heart of This Case

Plaintiff is one of a group of pilots known as "MDD"[1] - pilots on long-term disability who were improperly removed from the American Airlines seniority list and terminated without just

---

[1]   MDD Pilots (Medical Disability Dropped from AA Seniority List) is an APA membership status code which refers to a class of former American Airlines ("AA") pilots who, after exceeding five years on long-term sick or disability leave, were dropped from the pilot seniority list and effectively terminated without notice or a just cause hearing, in violation of the American Airlines pilots' collective bargaining agreement ("CBA").

cause in violation of the American Airlines pilot's collective bargain agreement ("CBA"), and subsequently denied reinstatement when they once again obtained their FAA Airman's First Class Medical Certificate to operate as an airline pilot. In 2012, two key grievances were filed on Plaintiff's behalf to protest this illegal policy:

1. **Grievance 12-011:** An individual grievance filed by Plaintiff protesting his improper no-notice removal from the seniority list and purported Administrative termination in violation of the CBA and seeking his seniority reinstatement.

2. **Grievance 12-012:** A collective, class-action style grievance filed by APA on behalf of all similarly situated MDD pilots, also protesting the termination and removal from the seniority list of pilots who were on disability greater than 5-years and failure to reinstate them once medically requalified in violation of the CBA and past practice, also seeking reinstatement of Plaintiff and similarly situated MDD pilots.

Both these grievances were expressly preserved through American's bankruptcy by orders from the U.S. Bankruptcy Court for the Southern District of New York, most recently in November 2021. (Meadows Decl. ¶ 9). APA had both a statutory duty and a contractual duty under its own Constitution & Bylaws (Art. II.B) and the CBA (§ 23) to prosecute these grievances in a timely manner. It failed spectacularly. Ultimately, in 2025, it used the grievance as the required legal leverage to obtain the reinstatement of every similarly situated MDD pilot *except for the Plaintiff.* Nevertheless, the Court's Protective Order has denied the Plaintiff any access to evidence relevant to that discriminatory treatment.

**B. APA's "Prolonged Delay" and Judge Moore's Admonishments**

For over 13 years, APA allowed these grievances to languish, despite both the APA's Constitution and Bylaws (a binding contract between APA and its members), Article II.B requiring

3

"timely prosecution of individual and collective grievances" and CBA Section 23 mandate that grievances be arbitrated and decided within 28 months. Its conduct in this litigation has been no different. APA's strategy has been one of obstruction and delay, a fact twice recognized by this Court's presiding District Judge, the Honorable K. Michael Moore. In 2025, **Judge Moore first admonished APA for its "prolonged delay in bringing a motion to dismiss."** (ECF No. 70 at 2). Months later, Judge Moore again issued a scathing rebuke of APA's dilatory tactics, stating:

> **Here, the court finds that Defendant's position, that it did not have to respond to the Complaint until Defendant was explicitly ordered to do so by this Court, is unreasonable and does not justify its prolonged delay**... While the Court embraces its role as an active arbiter in the case management process, **the Court is not a de facto babysitter.**

(ECF No. 91 at 4). [Emphasis added].

This pattern of weaponized delay is the essential backdrop against which the subsequent discovery abuses must be viewed.

**C. The Fraudulently Procured Protective Order: Cutting Off All Avenues to the Truth**

When discovery finally commenced, APA immediately sought to cripple Plaintiff's case via the Protective Order (ECF No. 138), which the evidence now shows was procured through numerous material misrepresentations of fact. (ECF No. 205). APA's counsel, John Pelletieri, falsely represented Plaintiff's relationship with his former attorney, Sue Edwards, and falsely claimed Plaintiff was not a party to the settlement of Grievance 12-012 and its verbatim expedited twin, Grievance 23-031. (Meadows Decl. ¶ 17). Based on these falsehoods, the Magistrate issued a catastrophic order that:

1. **Arbitrarily limited the temporal scope** of all discovery to December 31, 2021; and

4

2. **Quashed all eight of Plaintiff's key fact witness subpoenas** for deposition testimony and document production, including those for the three most recent APA presidents. (Meadows Decl. ¶ 16).

This Order effectively built a wall around all of APA's post-2021 misconduct, preventing any inquiry into the final, fraudulent disposition of Plaintiff's grievance rights with the result that every similarly situated MDD pilot obtained reinstatement *but for* the Plaintiff.

**D. The "Tips of the Icebergs": The Post-2021 Evidence APA Successfully Concealed**

The fraudulent Protective Order served a clear purpose: to hide the mountains of evidence underlying the 'tips of three icebergs'—three dispositive, post-2021 events that not only prove the continuing nature of APA's bad faith and retaliation but also represent the very **culmination** of the claims in Plaintiff's First Amended Complaint.

1. **The First Iceberg Tip: The September 2022 "Member in Good Standing" Interpretation.** In April 2022, after APA's legal department argued Plaintiff was not a "member in good standing" eligible to serve on a committee, thereafter in September 2022, President Ed Sicher issued a formal, binding Sicher Presidential Constitutional Interpretation, which explcitly rescinded the prior October 2017 Carey Constitutional Interpretation that relied on the arbitration of *Meadows v. Wilson*. The Sicher Interpretation confirmed that, inactive members like Plaintiff, "have no ongoing financial obligations to the Association while in such status, it is my interpretation that under the relevant provisions of the Constitution & By-Laws, Inactive **Members, other than those who owed back dues at the time they went into inactive status, retain their good standing while in Inactive Member status."** APA's Appeal Board ruled in 2017 that Meadows had paid all dues prior to inactive status, and had no due sowing in arrears, thus the based on

5

the Sicher Interpretation he was in fact an APA who had paid were, in fact, "members in good standing", based on which he was appointed and served on the APA National Aeromedical Committed from 2022 to May 2025. **This event, proving Plaintiff's membership status, occurred in 2022**, yet the Protective Order prevents its full exploration. (Meadows Decl. ¶ 38(a) (citing Sicher Decl., ECF No. 180, Ex. 3, ¶¶ 20-21, Ex. G)).

2. **The Second Iceberg Tip: The Fraudulent January 2025 Settlement Agreement.** In January 2025, APA secretly settled Grievance 12-012. The settlement agreement reinstated three other similarly situated MDD pilots but explicitly carved out and excluded Plaintiff based on a false pretext, making him a "class of one"[2] in this targeted campaign. This settlement - the very culmination of Count III of Plaintiff's complaint - occurred in 2025, yet the Protective Order forbade any discovery into the deliberations leading up to it and the attendant motivations.

3. **The Third Iceberg Tip: The Retaliatory May 2025 Membership Termination.** When Plaintiff obtained a copy of the secret settlement and attempted to present it to the APA Board of Directors in May 2025, then-President Nick Silva summarily terminated his 34-

---

[2]  Plaintiff is a member of a class of approximately 241 pilots that APA internally designated as MDD (Medically Disability Dropped from AA Seniority List). Discovery in related federal litigation established that of the original 241 MDD pilots, 58 subsequently obtained their FAA medical certificates and sought reinstatement. Of those 58 pilots, only three were denied reinstatement: Plaintiff Lawrence Meadows, FO Kathy Emery, and FO Susan Twitchell—all of whom had sued APA for breaching its Duty of Fair Representation. The other two pilots, Emery and Twitchell, ultimately accepted monetary settlements that waived their right to reemployment. Plaintiff did not. Then, in the secret January 15, 2025, Settlement Agreement, APA and American reinstated three other similarly situated MDD pilots but explicitly carved out and excluded Plaintiff. To date, out of approximately 58 MDD pilots who have been reinstated, Plaintiff is the only one ever denied reinstatement who has never signed a settlement waiving his right to return. (ECF No. 129, Ver. Supp. Pleading ¶ 5).

year union membership. (Meadows Decl. ¶ 13). This act of retaliation, which forms the basis for Plaintiff's LMRDA claims, also occurred in 2025, well outside the discovery window permitted by the Magistrate. Here again, the Court's Order prevented access to potentially limitless evidence concerning APA's acknowledgment of his membership status and the motives underlying its sudden revocation.

These three events reflect of vast reservoir of APA's continuing violation that has been left untapped due to the Court's Protective Order. (ECF No. 138). They are not "mere conjecture," but concrete, documented acts of bad faith and retaliation which were the products of years of Defendant's machinations that were immunized from discovery by the Court.

**E. The Financial Motive: The Reason for APA's Obstruction**

APA's desperate, multi-year strategy of delay and obstruction is driven by a clear financial motive. As sworn to by former APA President Ed Sicher, APA's legal department used a secret legal opinion to justify abandoning the MDD pilots, thereby "improperly excluding them from their full share payout of the $1.1B Equity Distribution, estimated to be approximately $100,000.00 per MDD pilot, or **$24M collectively**." (Sicher Decl., ECF No. 180, Ex. 3, ¶ 19). This staggering financial exposure explains the union's willingness to engage in witness tampering, spoliation, and misrepresentations to the Court.

**F. The Resulting Jurisdictional Quagmire: The Interlocked Eleventh Circuit Appeal**

The fraudulent settlement agreement is not merely a fact in this case; it is the subject of a formal fraud-on-the-court allegation in Plaintiff's appeal, *Meadows v. American Airlines Inc.*, Case No. 25-10297, currently pending before the U.S. Court of Appeals for the Eleventh Circuit. This creates an untenable jurisdictional problem for this Court. The fraudulent disposition of Grievance 12-012 is central to Plaintiff's DFR claim (**Count III**), while the fraudulent disposition of

Grievance 12-011 is central to his LMRDA retaliation claim (**Count VIII**). For this Court to rule on APA's summary judgment motion - which necessarily requires it to consider the effects of this same settlement - before the Eleventh Circuit has addressed the foundational question of its fraudulent procurement would create a severe risk of conflicting judgments and would violate principles of judicial comity.

## LEGAL STANDARD

Summary judgment is improper unless the non-moving party has been afforded an **adequate opportunity for discovery.** *Subscriber Holdings, LLC v. Brightstar Corp.,* No. 21-12985, 2022 U.S. App. LEXIS 35963, at *16, 2022 WL 18034431 (11th Cir. Dec. 30, 2022); *Snook v. Tr. Co. of Ga. Bank of Savannah, N.A.,* 859 F.2d 865, 870 (11th Cir. 1988). **Rule 56(d) exists to prevent premature adjudication** by allowing a non-movant to show that it "cannot present facts essential to justify its opposition." When a non-movant party satisfies the rule's requirements, relief is **not merely discretionary.**

Rule 56(d) authorizes a court to "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion." *Jones v. City of Columbus, Ga.,* 120 F.3d 248, 253 (11th Cir. 1997); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5, 106 S. Ct. 2505, 2511 (1986) **(Rule 56(f) requires that "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.")**

Relief under Rule 56(d) is especially warranted where, as here, the non-moving party has not been permitted to "gain access to the requested materials":

8

> The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits. If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials. Generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests.

*Snook*, 859 F.2d at 870 (citations omitted)

To obtain Rule 56(d) relief, the non-movant must submit a sworn declaration identifying (1) the specific facts that are unavailable, and (2) how additional discovery will preclude summary judgment. *Barfield v. Brierton*, 883 F.2d 923, 931 (11th Cir. 1989). Plaintiff's 41-paragraph sworn Declaration - supported by extensive exhibits and declarations of former APA's President Sicher – more than satisfies this standard. It details, with specificity, the complete breakdown of the discovery process caused by Defendant's obstruction and the essential evidence that remains exclusively within Defendant's control.

## ARGUMENT

### I. SUMMARY JUDGMENT IS PROCEDURALLY BARRED BY A LOGJAM OF UNDECIDED MOTIONS.

As a threshold matter, this case is procedurally unfit for summary judgment. At least twenty-one (21) pending, fully briefed, or ripe dispositive motions and objections must be adjudicated before the merits can be reached. (Meadows Decl. ¶ 2; Ex. A). A ruling now would require the Court to leapfrog foundational issues that challenge the very legitimacy of this proceeding. These include:

A. **The Fitness of Opposing Counsel:** Two fully briefed motions seek to disqualify APA's counsel for severe ethical violations. The first details how counsel allegedly engaged in criminal witness tampering by contacting and intimidating a key witness—an allegation

9

supported by audio recordings submitted to the Court at the Magistrate's request over two months ago. (Meadows Decl. ¶ 3(a)). The second details how APA's counsel created an unwaivable, firm-wide conflict of interest by taking on the representation of Plaintiff's own former attorney, Sue Edwards, for the sole purpose of suppressing her testimony about the fraudulent settlement at the heart of this case. This unethical arrangement, confirmed by the sworn testimony of a former APA President, is a textbook conflict designed to conceal evidence. (Meadows Decl. ¶ 3(b)). A court cannot entertain a summary judgment motion from counsel whose very standing to participate is so profoundly in question.

B. **The Scope of the Case:** A pending Motion to Supplement Pleadings (ECF No. 129) and a Motion to Transfer Venue (ECF No. 224) seek to incorporate APA's post-2021 misconduct, including a fraudulent settlement and retaliatory termination. (Meadows Decl. ¶ 4). The Court cannot grant summary judgment on a stale, artificially truncated record when the temporal scope of the case itself remains undecided.

C. **The Integrity of the Record:** Multiple pending motions for sanctions detail APA's systemic spoliation of evidence and counsel's use of material misrepresentations to procure a crippling Protective Order. (Meadows Decl. ¶ 5; ECF Nos. 187, 205, 223). A decision on the merits is impossible until the integrity of the underlying record is established.

## II. JUDICIAL PRUDENCE REQUIRES DEFERRAL PENDING THE ELEVENTH CIRCUIT'S REVIEW OF INTERLOCKED FRAUD ALLEGATIONS.

Here, judicial prudence compels this Court to deny or defer APA's Motion for Summary Judgment - the risk of inconsistent judgments is not theoretical - it is acute. APA's motion is inextricably intertwined with an active fraud-on-the-court allegation pending before the Eleventh Circuit. APA is a co-signatory to a 2025 settlement agreement that Plaintiff has alleged, in

*Meadows v. American Airlines* (11th Cir. Case No. Case No. 25-10297-DD), was procured through fraud. (Meadows Decl. ¶ 7).

Specifically, the agreement uses the demonstrably false pretext that Plaintiff's Grievance 12-011 was "disposed of and closed…since 2013" to extinguish his rights. (Meadows Decl. ¶¶ 8-9). This pretext is not a mere factual dispute – instead the falsity of the pretext is proven by the sworn testimony of APA's own former President, Ed Sicher, who attested that the grievance was active and that he was working to advance it to an arbitration hearing in 2024. (Meadows Decl. ¶ 33; Ex. D). The Eleventh Circuit is thus presently reviewing whether the very instrument APA relies upon is the product of fraud-on-the-court. These allegations are extensively detailed in Plaintiff-Appellant's recently docketed Reply Brief and his served Motion for Sanctions against American Airlines's counsel. (Meadows Decl. ¶ 7; Exs. B, C). It would be a manifest injustice and a reckless waste of judicial resources for this Court to rule on the effects of this settlement agreement while a superior court is actively reviewing its fraudulent procurement.

Granting summary judgment now would be a **manifest injustice** and reckless waste of judicial resources, as this Court would effectively ratify a settlement agreement whose validity is under direct scrutiny for fraud by a superior appellate court. It would also create a substantial risk of inconsistent judgments: if this Court were to grant summary judgment while the Eleventh Circuit later finds the agreement fraudulent, the resulting conflict would undermine the integrity of both proceedings. Such an outcome would improperly intrude upon the appellate court's authority and disrupt the orderly administration of justice.

The Supreme Court has long emphasized that federal courts must exercise **"wise judicial administration"** to prevent duplicative or conflicting litigation. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). Further, the Supreme Court has long recognized that

11

district courts have inherent power to stay proceedings to coordinate with other courts and avoid duplicative or conflicting rulings. Indeed, **"[t]he inherent discretionary authority of the district court to stay litigation pending the outcome of [a] related proceeding in another forum is not questioned."** *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982)(citations omitted); *Glover v. LM Gen. Ins. Co.*, No. 19-21900-CIV-ALTONAGA-Goodman, 2019 U.S. Dist. LEXIS 209741, at *2 (S.D. Fla. Dec. 4, 2019)

That principle applies with special force where, as here, a superior appellate court is actively examining allegations of fraud that bear directly on the dispositive issues raised in APA's pending summary judgment motion. Accordingly, prudence and binding precedent dictate that this Court **stay its hand** until the Eleventh Circuit fully resolves the fraud-on-the-court issue. Only then can this Court adjudicate APA's motion on a stable, reliable, and non-tainted factual foundation.

## III. THE EVIDENTIARY RECORD IS FATALLY TAINTED BY SPOLIATION AND DISCOVERY ABUSE.

A merits ruling is impossible because the record has been irreparably damaged by APA's misconduct.

First, the record is incomplete due to a Protective Order (ECF No. 138) that sworn testimony now shows was procured by fraud. That Order, based on counsel's unsworn misrepresentations, quashed subpoenas for key eight fact witnesses—including three former presidents—and arbitrarily limited discovery to pre-2022 events, preventing Plaintiff from obtaining evidence on the fraudulent settlement reinstatement every similarly situated MDD pilot (but for him) or his retaliatory termination. (Meadows Decl. ¶ 16).

Second, the record has been spoiled by the willful destruction of evidence across three consecutive presidential administrations. Despite being under a duty to preserve evidence since

2013 (Meadows Decl. ¶ 18, Ex. E), the spoliation has been systemic, amounting to bad faith. *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005) (noting spoliation sanctions are warranted for bad faith resulting in prejudice); *Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F. Supp. 3d 1343, 1351 (S.D. Fla. 2016) (finding spoliation in bad faith, warranted an adverse evidentiary inference, where defendant had "no legitimate excuse for having a practice of discarding [evidence] that it had a legal obligation to preserve....."). The pattern is undeniable:

- **President Ed Sicher (2022-2024):** His APA-issued laptop was, in his sworn words, "effectively wiped clean" by APA staff, and he routinely deleted text messages because the Defendant failed to provide its own president with a litigation hold notice. (Meadows Decl. ¶ 19; Ex. F).

- **President Eric Ferguson (2019-2022):** APA successfully quashed all discovery from the very president who initiated an internal investigation into the misconduct at issue in this case. (Meadows Decl. ¶ 20).

- **President Dan Carey (2016-2019):** He admitted under oath to never receiving a litigation hold and to routinely deleting years of relevant data. (Meadows Decl. ¶ 21).

Third, APA engaged in prejudicial "discovery ambushes," dumping thousands of non-searchable documents minutes before the deposition of its key 30(b)(6) witness, Mark Myers, making meaningful examination impossible. (Meadows Decl. ¶ 23). The Magistrate's refusal to grant even a few hours of additional deposition time to cure this prejudice is documented in Plaintiff's Fifth Objection (Meadows Decl. ¶ 24; Ex. G).

## IV. THE MAGISTRATE JUDGE'S PATTERN OF PREJUDICIAL RULINGS HAS DENIED PLAINTIFF DUE PROCESS.

The Magistrate Judge has enabled APA's misconduct while denying Plaintiff basic procedural fairness, creating a manifestly unjust playing field. The Magistrate has allowed

13

dispositive motions detailing criminal witness tampering, spoliation, and fraud to languish without a ruling for months. (Meadows Decl. ¶ 27). At the same time, she has issued rulings that demonstrate clear, prejudicial bias. Most egregiously, she granted APA a 55-page brief to file its MSJ - despite APA stating it would not oppose a reasonable extension for Plaintiff - while simultaneously denying Plaintiff's reasonable request for a mere 14-day extension to respond to the 716-page filing. (Meadows Decl. ¶¶ 29-31). The Magistrate's use of a pretextual reason this Court has previously rejected amounts to a fundamental denial of due process that independently warrants denial of the motion.

## V. PLAINTIFF HAS IDENTIFIED SPECIFIC, ESSENTIAL DISCOVERY REQUIRED UNDER RULE 56(d).

Plaintiff's declaration specifies with precision the discovery required to oppose APA's motion. This is not a "fishing expedition"; it is a request to obtain specific testimony and documents from named individuals on core issues of the case, all of which was blocked by the Court's prior rulings. The following essential discovery, detailed in Plaintiff's declaration, must be permitted before any merits determination can be made. This includes, inter alia:

### A.   To Prove All Eight Counts and Establish Pervasive Bad Faith:

The deposition of former APA President **Ed Sicher** is required. As a subject matter expert on union governance, the CBA, the history of the disabled MDD pilot group, and their associated grievances and APA abandonment of their representations, his live testimony is essential to prove the allegations in **all eight counts** of Plaintiff's complaint. In particular, his testimony is required to fully explore the facts surrounding the **APA Board of Directors Resolution 2016-30**, which contains formal admissions by APA's own governing body of "disparate treatment" of American's former disabled MDD pilots - during the 3-way 2016 airline merger and resultant integrated seniority list ("ISL") proceedings - as compared to their

14

disabled pilot peers with US Airways and America West Airlines, and created a binding directive for APA negotiating committee to obtain  their immediate reinstatement to the combined ISL seniority list. This Resolution is the key evidence needed to rebut APA's defenses to **Counts I and II**. (Meadows Decl. ¶ 33).

**B. To Rebut the Declaration of APA's Corporate Voice and Attack His Credibility:**

APA's Motion for Summary Judgment relies almost entirely on the declaration of Mark Myers, the very individual APA designated under Fed. R. Civ. P. 30(b)(6) to speak on its behalf as its corporate representative. His declaration is not merely the testimony of a witness; it is the voice of APA itself. That voice, however, has been known to be compromised at the highest levels of APA leadership for years. Discovery into this institutional knowledge is essential.

The depositions of the three members of APA's own "Reinstatement of Disability Dropped" ("REDDI") investigative committee - Captains Ed Sicher, Scott Peterson, and Lisa Heller - as well as the APA President who created and then abruptly disbanded it, Eric Ferguson, are required to prove this. (Meadows Decl. ¶ 20)

The evidence of Mr. Myers's dishonesty is already substantial. As Chairman of the REDDI committee, former APA President Ed Sicher attested that his committee discovered Myers's deception. In his sworn declaration, Captain Sicher stated that:

> "[we] interviewed two APA attorneys, <u>Director of Negotiations Mark Myers, and APA Director of Representation, James Clark, who both made material misstatements of the facts</u> with respect to the existence of the legal department's secret December 12, 2016, Babb-Denison legal opinion letter..."

(*Id.* ¶ 20, 34; Sicher Decl., ECF No. 180, Ex. 3 at 24, ¶ 19) (emphasis added).

Captain Sicher went even further in sworn deposition testimony in a related federal case, **stating unequivocally that both Mr. Myers and Mr. Clark had "lied"** about the letter

during the investigation. (See *Id.*, citing Deposition of Edward Sicher, Preitz v. APA, Case No. 2:17-cv-01166-MSG).

Critically, this finding of dishonesty was not ignored; it was actively covered up. As Plaintiff has attested, Captain Sicher informed then-President Ferguson of these ethical violations and recommended that the attorneys be terminated. Instead of taking action, President Ferguson stated he "must safeguard the best interests of APA" and "abruptly disbanded the committee before it could issue its findings." (Meadows Decl. ¶ 20). This sworn testimony is independently corroborated by Plaintiff's personal knowledge from his communications with Captain Peterson, a U.S. Marine Corps JAG officer, who stated he was "disgusted and offended" by the dishonesty of Mr. Myers (then a U.S. Navy JAG officer) during that investigation, where Myers allegedly lied on two consecutive days. *Id.*

APA has now blocked discovery from every single person involved in this investigation and its subsequent cover-up. The subpoenas for both REDDI Chairman Sicher and President Ferguson were quashed by the Magistrate. Therefore, the live depositions of all involved are essential. The testimony of Captains Peterson and Heller is needed to provide direct, corroborating accounts of Myers's misrepresentations. The testimony of Captain Sicher is needed to place his prior sworn statements on the record in this case and fully detail the committee's findings. Finally, the testimony of President Ferguson is essential to discover why he chose to bury an investigation into his own attorney's dishonesty rather than act on its findings.

In sum, the Court cannot allow APA to secure summary judgment based on the word of a corporate representative whose lack of credibility has been so powerfully documented - and then concealed - by APA itself. (Meadows Decl. ¶¶ 20, 34).

16

**C. To Prove Witness Tampering:**

The depositions of First Officer **Thomas Rempfer** and APA attorneys **Joshua Shiffrin** and **Grace Rybak** are required. Mr. Rempfer has stated on a submitted audio recording that he is a "prime example of witness tampering" committed by APA's counsel. His testimony, and that of the attorneys who contacted him, is essential to prove Plaintiff's pending motion to disqualify (ECF No. 109). (Meadows Decl. ¶ 35).

**D. To Prove Bad Faith Grievance Handling (Counts III, IV, V, VIII):**

The testimony of First Officer **Thomas Rempfer** is also essential for a second purpose. As a subject matter expert on the MDD pilot group and the chairman of APA's National Dropped Reinstatement Committee ("NDRC") tasked with advancing Grievance 12-012, he has unique personal knowledge of APA's multi-year failures to prosecute Plaintiff's grievances and its subsequent retaliation, as detailed in a PowerPoint presentation he created with Plaintiff and similarly situated MDD pilot Wallace Preitz and presented at APA's Spring 2024 Board of Directors Meeting.  (Meadows Decl. ¶ 36).

**E. To Prove Breaches of Duty of Representation and Contract, LMRDA Retaliation and Collusion and Fraud in the 2025 Settlement (Counts III, IV, V, VI, VIII):**

The depositions of APA attorneys **Sue Edwards, Esq., James Clark, Esq.,** and **Tricia Kennedy, Esq.,** are required. As individuals directly involved in the creation of the fraudulent 2025 settlement agreement, their testimony is essential to prove APA's role in the collusive and retaliatory extinguishment of Plaintiff's grievance, the motives underlying the Defendant's exclusion from a settlement that reinstated every other similarly situated MDD pilot, and other rights and to support the pending Motion to Disqualify Counsel (ECF No. 142). (Meadows Decl. ¶ 37).T

**F.  To Establish the Continuing Violation (Counts III-VIII):**

17

The depositions of former APA President **Ed Sicher** and current President **Nick Silva** and are required. Their combined testimony is essential to prove the full arc of APA's post-2021 misconduct, all of which was blocked by the Protective Order.

i. The testimony of **Captain Sicher** is **essential to establish Plaintiff's status as a "member in good standing."** As detailed in his own declaration, in September 2022, he issued a formal Presidential Constitutional Interpretation confirming Plaintiff was an APA "member in  good standing" and appointed home to serve on the APA National Aeromedical Committee. After  rights after APA's own legal department challenged Meadows standing right to serve. (Meadows Decl. ¶ 38(a); Sicher Decl. ECF No. 180, Ex. 3, ¶¶ 20-21, Ex. G).

ii. The testimony of **President Silva** is essential **to prove the culmination of the continuing violations,** including his execution of the fraudulent settlement and his subsequent decision to terminate Plaintiff's union membership in May 2025. (Meadows Decl. ¶ 38(b)).

Discovery into these events is crucial to support Plaintiff's pending Motion to Supplement (ECF N0. 129) and continuing violations of the original claims in his FAC (ECF No. 35).

**G. To Prove Local DFR Breach and Information Blackout (Counts III-VIII):**

The deposition of Captain **Jay Wilhelm**, Plaintiff's former Miami domicile representative, is required to establish his failure to represent Plaintiff or provide any notice regarding the secret settlement or his membership termination, in breach of his duties under the Railway Labor Act. (Meadows Decl. ¶ 39).

18

**H. To Expose Motive and Bad Faith Under the Crime-Fraud Exception:**

Discovery of internal communications - particularly ESI in the form of personal emails and texts, and signal messages - between APA officers and their attorneys is required under the crime-fraud exception established in *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1416 (11th Cir. 1994). This discovery is essential to expose APA's financial motive and hostile animus and, which form the bedrock of Plaintiff's retaliation and bad faith claims. (Meadows Decl. ¶ 40).

Because this essential discovery has been denied - a merits response is impossible.

## VI. PLAINTIFF'S RULE 56(d) MOTION PRECLUDES A "DEEMED ADMISSION" OF FACTS UNDER LOCAL RULE 56.1(c).

Finally, APA will likely argue that its statement of facts should be "deemed admitted" under S.D. Fla. Local Rule 56.1(c) because Plaintiff is not filing a point-by-point counter-statement of facts. This argument fails as a matter of law.

**Local Rule 56.1(c) itself contains a crucial safe harbor, stating that facts may be deemed admitted *unless* "…(ii) any exception under Fed. R. Civ. P. 56 does not apply."** Fed. R. Civ. P. 56(d) is that precise exception. A party cannot be punished for failing to controvert facts when the entire basis of its sworn motion is that it has been denied the essential evidence required to do so.

The Eleventh Circuit has made clear that Rule 56(d) exists to prevent exactly this type of "gotcha" tactic. *See, e.g., Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990) (finding reversible error in district court's granting summary judgment before deciding appellant's motion to compel discovery.).

To deem APA's facts admitted in the face of Plaintiff's comprehensive, 41-paragraph Rule 56(d) declaration would render the rule a nullity and violate the core principles of due process the

19

rule is designed to protect. Plaintiff has not waived his opposition to APA's facts; he has demonstrated that, due to APA's misconduct, he cannot yet be compelled to respond.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment must be **DENIED**, or, in the alternative, **DEFERRED** pending, first and foremost, the resolution by the U.S. Court of Appeals for the Eleventh Circuit of the interlocked fraud-on-the-court allegations; the resolution of the twenty-one outstanding unadjudicated motions and objections in this Court; and, finally, the completion of the essential discovery outlined in the Declaration of Lawrence Meadows.

Dated: April 14, 2026

Respectfully submitted,

Lawrence M. Meadows
Plaintiff, Pro Se
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Pro Se Plaintiff, that on this 14th day of April, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing from CM/ECF via Email, and U.S Mail.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com
*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Lane Shadgett, Esq.**
**Grace Rybak, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com;
jpellettieri@bredhoff.com;
grybak@bredhoff.com;
*Pro Hac Vice Counsel for Defendant*