IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**LAWRENCE MEADOWS,**
　　Plaintiff,

　　v.

**ALLIED PILOTS ASSOCIATION, et al.,**
　　Defendants.

**CASE NO. 17-cv-22589-EA**
**HONORABLE JUDGE ED ARTAU**
_____/



FILED BY_____ D.C.

APR 1 4 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**DECLARATION OF LAWRENCE MEADOWS IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT AND MOTION FOR RELIEF UNDER FED. R. CIV. P. 56(d)**

I, Lawrence Meadows, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.　　　I am the pro se Plaintiff in this action and have personal knowledge of the facts stated herein. I submit this declaration to demonstrate that I cannot at this time present facts essential to support my opposition to Defendant Allied Pilots Association's ("APA") Motion for Summary Judgment ("MSJ"). Relief under Federal Rule of Civil Procedure 56(d) is required because this case is mired in a procedural logjam, the fitness of opposing counsel and standing to file an MSJ is challenged, the evidentiary record has been corrupted by fraud and spoliation, and I have been denied essential discovery, making a fair adjudication on the merits impossible.

## I. The Unresolved Procedural Logjam Precludes Summary Judgment

2.　　　As of this date, there are at least **twenty-one (21)** pending, fully briefed, or ripe dispositive motions and objections to the Magistrate's Orders before this Court that must

1

be adjudicated before summary judgment can be considered. These unresolved matters challenge every fundamental aspect of this case. A complete and categorized list of these pending matters is attached hereto as **Exhibit A**.

3.	**Fitness of Counsel:** Two fully briefed motions challenge the fitness of APA's counsel to continue in this case.

a.	**The Criminal Witness Tampering**: My first Motion to Disqualify Counsel for Criminal Witness Tampering alleges that APA's lead counsel, Joshua Shiffrin, engaged in a multi-day campaign to improperly contact and intimidate a key fact witness in violation of 18 U.S.C. § 1512(b). (ECF Nos. 109/110). I attest to the following sequence of events:

i.	On October 6, 2025, APA counsel contacted key fact witness and disabled pilot advocate, First Officer ("FO") Tom Rempfer, and informed him of their intent to "quash…and looking put off your deposition indefinitely." (Rybak Decl, Zoom Trans., ECF 113-1 at 5:9-10).

ii.	Thereafter, FO Rempfer informed me that Mr. Shiffrin had warned him that complying with my subpoena could subject him to union discipline up to and including expulsion. Mr. Shiffrin also provided a vague "gag-list" of topics which FO Rempfer characterized as, "He just warned me about the implications of saying something. Very broadly that basically you can't say anything about anything…" (Meadows Decl., ECF 110, Ex. A at 4-11:52).

iii.	When I asked FO Rempfer if he feared retaliation, he stated without hesitation, "Absolutely… I'm not just scared…they're already tried to retaliate against me…over and over again, right? So now, where does it go next?" (Id.).

2

iv.     On October 16, 2025, the chilling effect worsened. In a subsequent call, FO Rempfer expressed his extreme fear of retaliation, stating, "I'm a prime example of witness tampering because I'm very nervous." (Rempfer USB Recording, ECF No. 186, Oct. 16, 2025, at 7:20).

Since February 2, 2026, the Magistrate has possessed the audio recordings documenting this witness tampering but has failed to rule on this dispositive motion.

b.       **The Unwaivable Conflict of Interest:** My Second Motion to Disqualify Counsel (ECF No. 142) alleges that APA's counsel, Joshua Shifrrin and his law firm Bredhoff & Kaiser, created a non-waivable, firm-wide conflict of interest in violation of the Rules Regulating the Florida Bar 4.1 10(a).) that fundamentally taints these proceedings. As detailed in my fully briefed second motion to disqualify and supporting reply (ECF Nos. 142, 156), I attest that, after I refused to drop this lawsuit, APA stripped away my union-provided attorney, Sue Edwards after we had already engaged in extensive attorney-client communications. Then, when I sought to depose Ms. Edwards about her knowledge of APA's bad faith grievance handling and her role in the collusive 2025 settlement, APA's counsel took the extraordinary step of representing her for the sole purpose of quashing her subpoena and suppressing her testimony. APA's own former president, Ed Sicher, has confirmed in sworn testimony that he hired Ms. Edwards specifically to represent me individually with respect to certain statutory claims and paid her a retainer for that purpose. (Sicher Decl., ECF No. 180, Ex. 3 at 26 ¶ 26; Sicher Supplemental Decl., ECF 187, Ex. 1 at 10, ¶ 5).  A true and correct copy of Captain Sicher's declarations are attached as **Exhibits D and F.**  APA's Counsel in this matter

cannot simultaneously represent APA against me, while also representing my former attorney to prevent her from testifying against APA. This is a textbook, unwaivable conflict designed to conceal evidence, and it requires firm-wide disqualification.

I cannot be forced to litigate a dispositive motion against defense counsel whose ethical fitness to participate in these proceedings and standing to even file an MSJ, is so profoundly in question.

4.     **Scope of the Case:** The proper scope of this case is completely undecided. My Motion to Supplement the Pleadings (ECF No. 129) seeks to add crucial verified facts and claims arising from APA's post-2021 misconduct, showing ongoing violations of breaches of duty and contract and retaliation, including the fraudulent 2025 settlement agreement and my retaliatory termination from the union. Simultaneously, my Motion to Transfer Venue (ECF No. 224) seeks to consolidate the related action in the Eastern District of New York containing these same post-2021 ongoing facts and claims. Until this Court rules on these motions and sets the temporal scope, it is impossible to know what evidence is relevant or what claims are at issue.

5.     **Integrity of the Record:** The evidentiary record is demonstrably tainted. My First and Second Motions for Sanctions for Spoliation (ECF Nos. 187, 223) detail APA's bad-faith failure to preserve evidence over a decade of continuous litigation. Furthermore, my Emergency Motion to Vacate the Protective Order for Fraud on the Court (ECF No. 205) alleges the order limiting discovery was procured through counsel's material misrepresentations. It is a violation of due process to force me to oppose summary judgment using a record corrupted by spoliation and fraud.

6.      Any ruling on the merits would be premature and fundamentally unjust while these foundational motions and objections - challenging counsel's standing to even file the MSJ, the scope of the claims, and the integrity of the underlying record – all remain undecided by this Court.

## II. Interlocked Fraud on a Superior Court Requires Denial or Deferral

7.      Summary judgment is further precluded because APA's motion relies on a narrative tainted by an active fraud on the court. I attest that APA is a co-signatory to the January 15, 2025 settlement agreement, which is now the subject of formal fraud-on-the-court allegations in my appeal, *Meadows v. American Airlines, Inc.*, Case No. 25-10297, in the U.S. Court of Appeals for the Eleventh Circuit. These formal allegations are not conjecture; they are extensively detailed in two documents:

a.      My Appellant's Reply Brief, which was docketed in the Eleventh Circuit on April 1, 2026, as ECF No. 44-1. A true and correct copy is attached hereto as **Exhibit B.**

b.      My Motion for Sanctions against American Airlines' counsel for fraud on the court, which was served on opposing counsel on March 25, 2026, and is scheduled to be filed with the Eleventh Circuit on or after April 16, 2026, following the expiration of the Rule 11 safe harbor period. A true and correct copy of the served motion is attached hereto as **Exhibit C.**

8.      I attest that this settlement agreement used two distinct and demonstrably false pretexts to extinguish all of my grievance rights -- for both my individual and the collective grievance covering a disabled pilots such as myself - with prejudice and for zero value while obtaining reinstatement for similarly situated pilots.

5

9.     **First False Pretext (re: Grievance 12-011):** The agreement falsely asserts that my individual reinstatement grievance, Grievance 12-011, was "disposed of and closed…since 2013." I attest that this is a material falsehood directly contradicted by the following evidence known to me personally or from the public record:

a.     **The 2014 Bankruptcy Court Order:** On September 5, 2014 - a year *after* the grievance was supposedly "closed" - the Honorable Judge Sean H. Lane of the U.S. Bankruptcy Court for the Southern District of New York issued an order stating that I "shall be permitted to arbitrate Grievance 12-011."

b.     **The 2021 Bankruptcy Court Order:** On November 8, 2021, Judge Lane issued a subsequent order clarifying that a stipulation in that the court's determination "does not affect Grievance No. 12-011… and the parties retain their respective legal positions on the validity and status of those grievances."

c.     **The 2024 Corroboration by Former APA President:** As confirmed in the sworn declaration of former APA President Ed Sicher, he was actively working to move Grievance 12-011 forward for arbitration in June 2024 and it was still active as of October 2024. (Sicher Decl., ECF No. 180, Ex. 3, ¶¶ 27-30) (a true and correct copy of Captain Sicher's declarations are attached as **Exhibit D**).

10.     **Second False Pretext (re: Grievance 12-012):** The agreement also created a false distinction to exclude me from the class-action style reinstatement grievance, Grievance 12-012. It did so by focusing only on the "notice" prong of that grievance while ignoring its "reinstatement" prong. I attest that the agreement's own language concedes that the notice I received "may not have been compliant in form," yet it used this defective notice as a basis to extinguish my rights with prejudice and without prior notice.

6

11.     I attest that APA's actions in creating and executing this fraudulent settlement agreement constitute the ultimate breach of its duties and directly impact the central allegations of multiple counts in my First Amended Complaint (ECF No. 35):

a.     **Count III (Breach of Duty of Fair Representation):** The collusive disposal of my grievances with prejudice for zero value and without notice - based on false pretexts is the definition of arbitrary, discriminatory, and bad- faith conduct.

b.     **Count IV (Breach of Contract - APA C&B Art. II.D):** By reinstating other similarly situated pilots while using a false pretext to exclude me, APA violated its constitutional mandate to "maintain uniform principles of seniority and perpetuation thereof."

c.     **Count V (Breach of Contract - APA C&B Art. II.B):** By allowing my grievances to languish for 13 years before fraudulently extinguishing them, APA violated its contractual duty for the "timely prosecution of individual and collective grievances."

d.     **Count VIII (Retaliation In Violation of LMRDA Right to Sue):**  After I refused to drop this instant lawsuit, APA stripped away my legal counsel, Sue Edwards, who was hired to  represent me individually in my ADA lawsuit against American Airlines, and then she proceeded to negotiate the fraudulent settlement agreement with my hostile adversary attorneys from American to extinguish both my individual and collective reinstament grievances using false pre-texts to exclude me, despite being qualified and situated exactly like the other pilots who were reinstated by that agreement.

12.     I further attest that APA's decade-long refusal to process Grievance 12-011, culminating in its fraudulent disposition, is the central basis for **Count VIII** of my FAC. That count alleges that APA retaliated against me for exercising my right to sue under the LMRDA. APA's claim that Grievance 12-011 was "disposed of and closed…since 2013" was the very excuse it used for years to justify its inaction, an excuse that was only briefly overcome when President Sicher agreed to move the grievance forward on June 13, 2024 before his successors reverted to the same false pretext.

13.     I attest that upon discovering this secret agreement, I requested a copy from APA and asked to arbitrate these grievances at my own expense, but APA refused both requests. To date, APA has never formally provided me with a copy of the agreement that extinguished my rights with prejudice and without prior notice. When I later attempted to exercise my rights as a member to speak to the APA Board of Directors in May 2025 to expose the settlement, my 34-year union membership was summarily terminated. This action forms the basis of my claims for unlawful retaliation in **Count VI** (Violation of Free Speech Rights) and **Count VII** (Termination of Union Membership Rights) of my FAC. (Sicher Decl., ECF No. 180, Ex. 3, ¶¶ 31, Ex. K) (a true and correct copy of Captain Sicher's declarations are attached as **Exhibit D**).

14.     I attest that although Captain Sicher's sworn declaration - which proves the falsity of the pretexts discussed above - has been filed on the docket multiple times (e.g., ECF Nos. 180, 183, 205), the Court has not ruled on the related motions, and the substance of his bombshell testimony has never been considered in any ruling to date.

15.     It would be a manifest injustice for this Court to grant summary judgment - an action that would implicitly validate the fraudulent settlement agreement - while that very

8

same agreement is under active review for fraud by a superior federal court. Judicial prudence requires this Court to **deny** APA's motion or, at a minimum, **defer** any ruling until the Eleventh Circuit has addressed these foundational allegations *Meadows v American Airlines* (11th Cir. Case No. Case No. 25-10297-DD, ECF 44-1 filed Apr. 1, 2026).

### III. The Discovery Record is Tainted and Incomplete

16.        I attest that the discovery record in this case has been profoundly tainted by APA's litigation misconduct, which has been enabled by the Magistrate Judge's own rulings. The centerpiece of this misconduct is the Protective Order issued on November 13, 2025 (ECF No. 138), which was procured based on multiple unsworn misrepresentations of material fact made by APA counsel John Pellettieri during the October 28, 2025, hearing. This Order crippled my ability to build my case in three key ways:

a.        **It Quashed Key Witnesses:** The Order quashed all eight of my key fact witness subpoenas, preventing me from obtaining essential testimony from key individuals including former Presidents Ed Sicher, Eric Ferguson, and current President Nick Silva; and attorneys Sue Edwards, James Clark, Mark Myers, and Tricia Kennedy, and Jay Wilhelm.

b.        **It Arbitrarily Limited Temporal Scope:** The Order cut off all discovery after December 31, 2021, preventing me from obtaining discovery on APA's post-2021 misconduct, including its role in the 2025 fraudulent settlement and the 2025 retaliatory termination of my union membership all of which were ongoing violations of my existing claims. The 2025 settlement confirms the potency of the class grievance insofar as it was used as the requisite legal leverage to obtain the

9

reinstatement of three similarly situated MDD pilots. The existence of that agreement confirms that it is the tip of an iceberg of evidence concerning APA's deliberations and motivations that I was never permitted to access due to the Court's Protective Order. The 2025 retaliatory termination of my union members reflects the tip of yet another iceberg of evidence concerning my membership status and the deliberations and motivations that underlay its recission in 2025. Here again, the Court denied me access to this mountain of evidence.

c.   **It Blocked ESI Discovery:** The Order quashed my requests for personal emails and text messages from key custodians after counsel falsely argued the requests were overly intrusive.

17.   I attest that Mr. Pellettieri's misrepresentations have been directly refuted by the sworn declarations of former APA President Ed Sicher. (A true and correct copy of Captain Sicher's Primary Declaration and his Supplemental Declaration are attached collectively as **Exhibit D**). My objections to this Protective Order (ECF No. 149) and my Emergency Motion to Vacate it for Fraud Upon this Court (ECF No. 205) remain pending.

### *Willful Spoliation by Three Consecutive APA Presidents*

18.   I attest that APA has been under a continuous, uninterrupted duty to preserve evidence since 2013, when my first litigation hold letter was served. (A true and correct copy of my 2013 litigation hold letter is attached as **Exhibit E**). This duty was flagrantly breached with respect to at least three consecutive APA Presidents, all of whom were key custodians during the time period relevant to my facts and claims in my complaint and ongoing violations.

10

19.      **Spoliation by President Ed Sicher (President 2022-2024):** In his bombshell supplemental declaration, Captain Sicher - who also served as my union chairman/vice-chairman from 2015-2022 - attested under penalty of perjury to the following facts, which form the basis of my First Motion for Sanctions (ECF No. 187):

   a.      **No Litigation Hold:** "I was never notified by APA's Legal Department of a 'litigation hold' in the matter of Meadows v APA. I was never instructed by APA counsel to preserve my emails, text messages, or other ESI..."

   b.      **Routine Deletion of Evidence:** "Because I was under no instruction from APA to preserve such communications, I routinely deleted text messages from my personal devices during my tenure as President."

   c.      **Wiping of Laptop Hard Drive:** "Shortly after I was removed from office in October 2024... When I brought the laptop to APA headquarters to be serviced, the hard drive was effectively wiped clean, rendering all stored data—including emails and documents related to my duties as APA President permanently inaccessible to me from that device."(A true and correct copy of Captain Sicher's Supplemental Declaration, ECF No. 187, Ex. 1, is attached as **Exhibit F**).

20.      **Obstruction of Discovery from President Eric Ferguson (President 2019-2022):** After APA finally produced its facially deficient litigation hold letters on February 18, 2026, which excluded former Presidents Ed Sicher, Eric Ferguson, and Dan Carey, (ECF 207-1), I subpoenaed former Captain Ferguson - but APA successfully moved and the Magistrate quashed his subpoena. I attest that his testimony is essential, as he formed the "Reinstatement of Disability Dropped" (REDDI) investigative committee - chaired by Captain Sicher to investigate the grievance mishandling by APA Attorneys Mark Myers,

James Clark, and Tricia Kennedy, and their use of the erroneous Babb-Denison legal opinion letter to justify abandoning disabled pilots and their grievance claims for seniority reinstatement. In January 2020, after the REDDI Committee Chairman, Captain Sicher, informed then President Ferguson of these attorney's ethical violations and recommended they be terminated due to ethics violations of the AP A Constitution and Bylaws (C&B"), but he declined, stating he "must safeguard the best interests of APA", and instead abruptly disbanded the committee before it could issue its findings. (Sicher Decl., ECF No. 180, Ex. 3, ¶ 19) (a true and correct copy of Captain Sicher's declarations are attached as **Exhibit D**). APA has blocked all discovery from the very president who initiated an internal investigation into the misconduct at issue in this case.

21.     **Spoliation by President Dan Carey (President 2016-2019):** This pattern extends to yet another former president. I attest that in his March 4, 2026 deposition, Captain Carey admitted under oath that he also never received a litigation hold letter, that he conducted union business through his personal email and text messages, and routinely deleted those messages related to union business, and either failed to preserve or lost years of relevant data during device upgrades. This spoliation is the subject of my Second Motion for Sanctions (ECF No. 223).

22.     This widespread destruction and obstruction of evidence by three presidential administrations occurred even as APA's counsel was falsely assuring me in writing that no such ESI existed from its officers. This pattern has deprived me of essential proof of APA's motive and bad faith.

***Prejudicial Discovery Abuses***

23.     During discovery, APA also engaged in multiple "discovery ambushes" designed to prevent meaningful examination. On January 21, 2026, just minutes before the deposition of their 30(b)(6) designee, Mark Myers, APA produced thousands of non-searchable documents. This late production included documents like the email from my Miami pilot Base representative, Captain William Read concerning the disparate treatment of myself as compared to similarly situated former disabled pilot and union insider, Captain Joe Barkate, and his assertion that I was being retaliated against and my grievance wasn't being arbitrated because I has sued the union, which I was unable to use during my deposition questioning.

24.     My reasonable request to the Magistrate Judge for even a couple of additional hours to re-depose Mr. Myers on this and other relevant late-produced evidence showing collusion with American's counsel Mark Roberston - responsible for negotiating the fraudulent settlement agreement as alleged in the 11th Circuit Appellant's Reply Brief and Sanctions Motions **Exhibits B** and **C** – were summarily denied. The prejudice caused by these ambushes and the Magistrate's denial of any remedy is detailed in my Fifth Objection. (A true and correct copy of Plaintiff's Fifth Objection, ECF No. 208, is attached as **Exhibit G**).

25.     APA's procedural non-compliance has continued unabated, just last week, five days after the court-ordered MSJ deadline, it filed a "Corrected" Statement of Facts (ECF No. 244) with new attachments, further shortening my time to respond. (A true and correct copy of this late filing is attached as **Exhibit** H).

## IV. The Court's Own Rulings Have Created Manifest Prejudice

26.     I attest that in addition to APA's misconduct, the Magistrate Judge has exhibited a pattern of prejudicial bias, creating a manifestly unjust and unlevel playing field. This pattern consists of routinely denying my reasonable requests for discovery and procedural fairness while simultaneously ignoring APA's counsel's documented, systemic misconduct.

27.     I attest that throughout discovery, I have presented the Magistrate with evidence of APA's repeated violations of court orders and the Federal Rules, including motions detailing:

- Criminal witness tampering (ECF Nos. 109/110, 186);

- An impermissible firm-wide conflict of interest, created by APA's counsel representing my former attorney to quash my subpoena of her and suppress her testimony and production (ECF No. 142);

- Making material misrepresentations to the court to obtain a tainted Protective Order that quashed eight key witnesses and arbitrarily limited temporal scope to December 31, 2021 (ECF Nos. 148, 205);

- Willful spoliation of evidence from 2013 to date, and failing to preserve evidence of key custodiams across three presidential administrations (ECF Nos. 187, 223); and

- Pervasive discovery abuses, including serial-document ambushes, failure to organize or label production in accordance with RFPs, and providing globally non-searchable productions weeks past deadlines in violation of the Federal Rules (ECF No. 208).

- The Magistrate has failed to rule on any of these dispositive motions, effectively rewarding APA's misconduct with inaction.

28.     I attest that this pattern of prejudice is exemplified by the Magistrate's rulings concerning witness Marjorie Powell. APA was permitted to use my communications with Ms. Powell to impugn my character, but when I sought to depose Ms. Powell to rebut those attacks and clearly established her role as a key fact witness via declaration of myself and a similarly situated former disabled pilot, the Magistrate still quashed her subpoena, as detailed in my Fifth Objection (ECF No. 208).

29.     I attest that this one-sided process culminated in the rulings on the MSJ briefing schedule. On March 19, 2026, the Magistrate granted APA a voluminous 55-page MSJ brief (35 pages argument and 20 pages of facts) – almost double the amount allowed by the rules - while ignoring my request for reciprocal page limits and a reasonable 14-day extension, despite APA's counsel previously stating in its prior motion that it would not oppose such a reasonable request (ECF No. 231). This ruling is the subject of my pending Sixth Objection (ECF No. 232).

30.     Then, on April 2, 2026, the Magistrate denied my reasonable request for a 14-day extension to respond to APA's 716-page MSJ filing (ECF No. 243, attached as **Exhibit I**). The pretextual reason - that the case has been pending since 2017 - is disingenuous, as it ignores that it has deprived me of brief continuance necessary to respond to a dispositive motion and this Court has twice admonished APA itself for "prolonged delay" (ECF Nos. 70, 91). This ruling also ignores my professional courtesy in granting every extension APA requested, including a six-month discovery extension.

31.  This pattern of rulings - ignoring APA's gross misconduct while simultaneously denying me the basic tools and time needed to litigate my case - constitutes a fundamental denial of due process. These rulings, which are the subject of my pending Seventh Objection (ECF No. 246), demonstrate a clear prejudicial bias that makes a fair response to the MSJ impossible at this time.

## V. Specific, Essential Discovery Is Required Under Rule 56(d)

32.  I attest that I cannot present facts essential to my opposition because I have been denied the opportunity to conduct the critical discovery detailed below. This discovery was blocked by the Magistrate's Protective Order and other prejudicial rulings, and it is necessary to rebut APA's claims and prove my own.

33.  **To Prove All Counts and Establish Pervasive Bad Faith:** I require the deposition of former APA President **Ed Sicher**. The Magistrate quashed his subpoena. As a subject matter expert on union governance, the contract, and the history of the disabled pilot group, his live testimony is essential to prove the allegations in **all eight counts** of my complaint including APA's motive for treating me in a sharply disparate manner from that extended to similarly situated MDD pilot. In particular, his testimony is required to prove the facts surrounding **APA Board of Directors Resolution 2016-30**. I attest that this Board approved Resolution, which Captain Sicher himself sponsored, contains admissions by APA's own governing body that:

a.  Legacy American Airlines pilots on long-term disability were subjected to "disparate treatment" in the seniority list integration compared to pilots from U.S. Airways and America West;

b.  There was "evidence indicating that the company has unfairly withheld

16

reinstatement" to pilots who, like me, were considered "problematic employees";
and,

c.      It created a binding directive for APA to negotiate the "immediate
reinstatement" of pilots in my situation.

This Resolution directly contradicts APA's MSJ and eviscerates the credibility of
their declarants. Live testimony from its sponsor is essential to prove my foundational
claims in **Counts I and II.**

34.      **To Rebut the Myers Declaration and Attack His Credibility:** APA's MSJ relies
almost entirely on the declaration of Mark Myers. I require the depositions of Captains **Ed
Sicher, Scott Peterson,** and **Lisa Heller,** who served on the REDDI investigative
committee. I have personal knowledge from my communications with Captain Peterson
that he was "disgusted and offended" by Mr. Myers's dishonesty as a fellow JAG officer
during their investigation. Their testimony is essential to impeach APA's key declarant and
to obtain evidence of APA's discriminatory and bad faith treatment of my contractual
grievance rights. As Chairman of the REDDI committee, former APA President Ed Sicher
attested that his committee discovered Myers's deception. In his sworn declaration, Captain
Sicher stated that:

> "[we] interviewed two APA attorneys, <u>Director of Negotiations Mark
> Myers, and APA Director of Representation, James Clark,</u> who <u>both made
> material misstatements of the facts</u> with respect to the existence of the legal
> department's secret December 12, 2016, Babb-Denison legal opinion
> letter..."

(Sicher Decl., ECF No. 180, Ex. 3 at 24, ¶ 19) (a true and correct copy of Captain Sicher's
declarations are attached as **Exhibit D**). [emphasis added]

17

Captain Sicher went even further in sworn deposition testimony in a related federal case, **stating unequivocally that both Mr. Myers and Mr. Clark had "lied"** about the letter during the investigation. (See *Id.*, citing Deposition of Edward Sicher, Preitz v. APA, Case No. 2:17-cv-01166-MSG).

35.     **To Prove Witness Tampering:** I require the depositions of First Officer **Thomas Rempfer** and APA attorneys **Joshua Shiffrin** and **Grace Rybak.** First Officer Rempfer has stated on a submitted audio recording that he is a "prime example of witness tampering" by APA's counsel. His testimony, and that of the attorneys who contacted him, is essential to prove my pending motion to disqualify (ECF No. 109).

36.     **To Prove Bad Faith Grievance Handling and Retaliation (Counts III, IV, V, VIII):** The testimony of First Officer **Thomas Rempfer** is also essential for a second, crucial purpose. As a subject matter expert on the MDD pilot group and the chairman of the committee tasked with advancing Grievance 12-012, he has unique personal knowledge of APA's multi-year discriminatory and bad faith failures to prosecute my grievances and its retaliation against me for my protected activity under the ADA, LMRDA and the Railway Labor Act.

37.     **To Prove Collusion and Fraud in the 2025 Settlement (Counts III, IV, V, VIII):** I require the depositions of APA attorneys **Sue Edwards, Esq., James Clark, Esq.,** and **Tricia Kennedy, Esq.** All of their subpoenas were quashed. As individuals directly involved in the creation of the fraudulent 2025 settlement agreement, their testimony is essential to prove APA's role in the collusive and retaliatory extinguishment of my rights via the 2025 settlement agreement and to support my pending Motion to Disqualify Counsel (ECF No. 142).

38.     **To Establish the Continuing Violation (Counts III, IV, V, VI, VII, VIII):** I require the depositions of former President **Ed Sicher** and current APA President **Nick Silva**, both of whose subpoenas were quashed by the Protective Order's temporal scope limitation.

a.      I attest that Captain Sicher's testimony is essential to prove my **membership status during the post-2021 period.** In April 2022, after APA's legal department argued I was not a "member in good standing" eligible to serve on a national committee, then-President Sicher issued a formal, binding Presidential Constitutional Interpretation on September 2, 2022. I attest that this Interpretation confirmed that inactive members like me were, in fact, "members in good standing" with full rights. Based on which Captain Sicher assigned me to and I served on the APA National Aeromedical Committee, from 2022 to May 2025, as the Miami pilot domicile, Long Term Disability Coordinator, where I sponsored and helped scores of fellow disabled APA members. (Sicher Decl., ECF No. 180, Ex. 3, ¶¶ 20-22, Ex. G). A true and correct copy is attached as **Exhibit D**). The live testimony of its author is essential to explore this event, which APA now seeks to ignore.

b.      I attest that President Silva's testimony is essential to prove the **culmination of the continuing violations.** His testimony regarding his execute is attached on of the fraudulent settlement and his subsequent decision to summarily terminate my union membership in May 2025 is critical evidence of APA's ongoing illegal conduct and is necessary to support my pending Motion to Supplement (ECF No. 129).

39.     **To Prove Local DFR Breach, Retaliation, and Information Blackout (Counts III-VIII):** I require the deposition of my former Miami pilot domicile representative, Captain **Jay Wilhelm.** His subpoena was quashed. I have personal knowledge that he was aware of the hostility towards me within APA leadership due to my litigation, and his testimony is necessary to establish his bad faith and discriminatory failure to represent me or provide any notice regarding the secret settlement or my membership termination, in breach of his duties and in retaliation for my protected activity under the ADA, LMRDA, and Railway Labor Act.

40.     **To Expose Motive and Bad Faith Under the Crime-Fraud Exception:** I require discovery of internal communications (emails, texts, and signal messages, etc.) between APA officers and their attorneys regarding the bad faith handling of my grievances, retaliation, and membership termination. I believe these communications are discoverable under the crime-fraud exception as established in the Eleventh Circuit's seminal case, *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994). This discovery is essential to expose APA's financial motive and hostile animus, as detailed in my Motion to Supplement Pleadings (ECF No. 129 at 13-14, ¶¶ 7-8).

41.     Without, at a minimum, the discovery detailed above, I cannot present facts essential to support my opposition to APA's motion for summary judgment. Any ruling on summary judgment at this stage would be premature and a violation of my due process rights.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my personal knowledge.

Executed on this 14th day of April, 2026.__

Lawrence M. Meadows