**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FILED BY_____D.C.

APR 2 2 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**LAWRENCE MEADOWS,**
Plaintiff,

v.

**ALLIED PILOTS ASSOCIATION, et al.,**
Defendants.

**CASE NO. 17-cv-22589-EA**
**HONORABLE JUDGE ED ARTAU**

_____/

## PLAINTIFF'S NOTICE OF FILING SUPPLEMENTAL AUTHORITY

Plaintiff, Lawrence Meadows, respectfully submits this Notice to inform the Court of newly docketed, highly relevant authority from the U.S. Court of Appeals for the Eleventh Circuit. This authority bears directly on Defendant's pending Motion for Summary Judgment ("MSJ") (ECF No. 237), Plaintiff's Opposition thereto and Motion for Relief under Rule 56(d) (ECF Nos. 249-251), and most critically, Plaintiff's pending Emergency Motion to Vacate the Protective Order for Fraud on the Court (ECF No. 205). Specifically, this new authority provides conclusive support for the arguments made regarding the untenable jurisdictional conflict created by the interlocked fraud allegations. (ECF No. 249 at 10-12; Meadows Decl., ECF No. 251, ¶¶ 7-15).

On April 20, 2026, the Eleventh Circuit formally docketed Plaintiff-Appellant's Motion for Sanctions Against Appellee American Airlines, Inc. and Its Counsel for Fraud on the Court (the "Sanctions Motion") in *Meadows v. American Airlines, Inc.*, Case No. 25-10297 (ECF No. 48). This action follows the April 1, 2026, docketing of Plaintiff-Appellant's Eleventh Circuit Reply Brief (ECF No. 44-1). This supplemental authority is directly relevant for two dispositive reasons:

1

**1. It Crystallizes the Untenable Jurisdictional Conflict Requiring Denial or Deferral of Summary Judgment.**

As argued in Plaintiff's Opposition, judicial prudence requires this Court to deny or defer summary judgment to avoid issuing a ruling that could directly conflict with a pending determination by a superior court. The formal docketing of the Sanctions Motion crystallizes this conflict and makes deferral a judicial necessity.

The Eleventh Circuit is now actively seized with determining whether the January 15, 2025 settlement agreement is the product of a fraud on the court. That instrument is not peripheral to this matter; it is central. It resolves Grievance 23-031, which is the expedited, verbatim twin of Grievance 12-012—the very grievance that forms the basis of Plaintiff's claims for Breach of the Duty of Fair Representation (Count III), Breach of Contract (Counts IV and V), and LMRDA Retaliation (Count VIII) in his First Amended Complaint (ECF No. 35). As a co-signatory to that agreement, Defendant APA is directly implicated as a co-conspirator in the alleged fraud. For this Court to now rule on the effects of that same settlement would be a reckless waste of judicial resources and would improperly intrude upon the authority of the superior appellate court.

**2. It Provides Conclusive Evidentiary Support for Plaintiff's Pending Motion to Vacate the Protective Order for Fraud (ECF No. 205).**

Plaintiff's pending emergency motion to vacate (ECF No. 205) alleges that APA counsel John Pellettieri made multiple material misrepresentations to this Court to fraudulently obtain the Protective Order (ECF No. 138) that now shields APA's misconduct. The newly docketed Eleventh Circuit filings provide direct evidentiary support for these allegations. Specifically, during the October 28, 2025 Protective Order hearing, Mr. Pellettieri represented that:

- **Grievance 12-012 was not a "nationwide" grievance and did not apply to Plaintiff, a** Miami-based pilot. (ECF No.125, Oct. 28, 2025 Hrg. Tr., at 17:22-24). This is directly

2

contradicted by American Airlines' own bankruptcy court pleadings (See *In re AMR Corp.*, No. 11-15463-shl (Bankr. S.D.N.Y. Jan. 2, 2013), ECF No. 5926, at ¶¶ 3, 7, 11, 14) and by sworn testimony from APA's own witness, Mark Myers, who confirmed the grievance applied "system-wide" (See Deposition of Mark Myers at 22:18-25, *Preitz v. Allied Pilots Ass'n*, No. 2:17-cv-01166-MSG (E.D. Pa.), ECF No. 59).

- **The successor grievance, Grievance 23-031, "was not part of this action."** (ECF No.125, Oct. 28, 2025 Hrg. Tr., at 21:20-23). This is a direct falsehood, as Grievance 23-031 is the expedited, verbatim twin of Grievance 12-012, which is the subject of Plaintiff's claims for Breach of the Duty of Fair Representation (Count III), Breach of Contract (Counts IV and V), and LMRDA Right to Sue Retaliation (Count VIII) in his First Amended Complaint. (ECF No. 35, ¶¶ 242-251, 252-285, 329-353).

- **The settlement of Grievance 23-031 "did not include Mr. Meadows."** (ECF No.125, Oct. 28, 2025 Hrg. Tr., at 20:6-11). This is a gross misrepresentation, as the settlement agreement explicitly names Plaintiff as one of four "Identified Individuals" for the express purpose of carving him out and extinguishing his rights based on false pretexts. (See Ex. B, Sanctions Motion, Ex. A thereto).

As detailed in Plaintiff's pending motion to vacate (ECF No. 205), these are not mere arguments; they are material falsehoods directly contradicted by the sworn testimony of a former APA President, Captain Ed Sicher. The unrebutted record on the pending motion is clear. When asked about Grievance 12-012, Captain Sicher attested:

> **As APA President, I also took steps to address FO Meadows' long-pending individual and collective seniority reinstatement grievances. On March 13, 2023, at FO Meadows request, I converted the collective Grievance 12-012 into expedited Presidential Grievance 23-031.**

(ECF No. 205 at 2 (citing Sicher Decl., Ex. 1, ¶ 14)). [Emphasis added].

3

To date, Mr. Pellettieri has never filed a competing declaration to rebut Captain Sicher's sworn testimony. The attached exhibits now provide this Court with the full, detailed account of the very fraud Mr. Pellettieri was misrepresenting. A true and correct copy of Plaintiff-Appellant Meadows' docketed Eleventh Circuit Reply Brief (ECF No. 44-1) is attached hereto as **Exhibit A,** and a true and correct copy of Plaintiff-Appellant's docketed Eleventh Circuit Motion for Sanctions (ECF No. 48) is attached hereto as **Exhibit B.**

Accordingly, this supplemental authority is submitted to notify the Court that a superior appellate court is now formally and actively seized with foundational questions of fraud that are inextricably intertwined with the factual predicates of both Defendant's pending Motion for Summary Judgment (ECF No. 237) and Plaintiff's pending Emergency Motion to Vacate the Protective Order (ECF No. 205). This development directly impacts on the Court's consideration of whether a ruling on either motion is judicially prudent at this time.

Dated: April 22, 2026

Respectfully Submitted,

Lawrence M. Meadows, *Pro Se*
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Pro Se Plaintiff, hereby certify that on April 22, 2026, a true and correct copy of the foregoing was served via the Court's CM/ECF system, email, and U.S. Mail on all counsel of record.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com
*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Lane Shadgett, Esq.**
**Grace Rybak, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com;
jpellettieri@bredhoff.com;
grybak@bredhoff.com;
*Pro Hac Vice Counsel for Defendant*

# EXHIBIT A

# Case No. 25-10297-DD

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT



U.S. COURT OF APPEALS
RECEIVED
CLERK
APR 0 1 2026
ATLANTA, GA

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

APR 0 1 2026

David J. Smith
Clerk

**Lawrence Meadows**

*Plaintiff-Appellant*

v.

**American Airlines, Inc.**

*Defendant-Appellee*

### Appeal from the United States District Court
### for the Southern District of Florida

Case No. 1:24-cv-20518-DPG

## APPELLANT'S REPLY BRIEF

Dated: March 30th, 2026

Lawrence M. Meadows
1900 Sunset Harbour Dr., 2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com
**Pro Se Appellant**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant, Lawrence M. Meadows ("Meadows"), pursuant to Eleventh Circuit Rule 26.1-1, submits this Certificate of Interested Persons and Corporate Disclosure Statement. The following parties have an interest in the outcome of this case or appeal:

1. American Airlines, Inc. (Appellee);

2. American Airlines Group Inc. (corporate parent of Appellee);

3. DellaBetta, Matthew M. (Appellee's counsel);

4. Gayles, Hon. Darrin P. (United States District Judge);

5. Goodman, Hon. Jonathan (United States Magistrate Judge);

6. Kolaya, Timothy A. (Appellee's counsel);

7. Meadows, Lawrence (pro se Appellant);

8. O'Melveny & Myers LLP (Appellee's counsel's firm);

9. Robertson, Mark W. (Appellee's counsel);

10. Stumphauzer Kolaya Nadler & Sloman, PLLC (Appellee's counsel's firm);

11. Stumphauzer, Ryan K. (Appellee's counsel);

12. Wood, Kelly S. (Appellee's counsel); and

13. Zarrow, Jason (Appellee's counsel).

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned

C1 of C2

certifies that he is a natural person and not a corporation.

**Lawrence M. Meadows**
*Pro Se* Appellant

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT.................................................................. C1

TABLE OF CONTENTS............................................................................ i

TABLE OF AUTHORITIES...................................................................... iii

ARGUMENT............................................................................................. 1

I. INTRODUCTION: AMERICAN'S DEFENSES COLLAPSE UNDER THE
WEIGHT OF ITS FRAUD ON THIS COURT........................................... 1

II. AMERICAN PERPETRATED A FRAUD ON THIS COURT BY
PROFFERING A SETTLEMENT AGREEMENT PREDICATED ON A
DEMONSTRABLY FALSE PRETEXT...................................................... 3

A. American Knowingly Misrepresented the Status of Grievance 12-011........... 4

B. American Mischaracterized Grievance 12-012 to Create a False Distinction.... 5

III. AMERICAN'S FRAUD IS IRREFUTABLE PROOF OF PRETEXT, AND
ITS SUBSTANTIVE DEFENSES FAIL AS A MATTER OF LAW AND
EQUITY.................................................................................................... 6

A. The Doctrine of Unclean Hands Bars American's Reliance on Estoppel......... 6

B. The Settlement Agreement Is a New, Discrete Act of Retaliation That Renders
Appellant's Claims Timely and Establishes a Viable ADA Claim..................... 8

C. American's Reliance on *Stanley* Is Eviscerated by its Own Discriminatory
Actions...................................................................................................... 9

D. Appellant's ADA Claims Are Not Preempted by the Railway Labor Act...... 10

CONCLUSION.......................................................................................... 12

CERTIFICATE OF COMPLIANCE.......................................................... 14

CERTFICATE OF SERVICE.................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Batuyong v. Gates*, 337 F. App'x 451 (6th Cir. 2009)................................ 10

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)...................... 3

*Brown v. Illinois Central R.R. Co.*, 254 F.3d 654 (7th Cir. 2001)................ 11

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994)........................ 11

*In re AMR Corp.*, 2022 WL 1556398, at \*1.................................... 4

*Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276 (11th Cir. 2005)... 11

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)..................... 8

*New Hampshire v. Maine*, 532 U.S. 742 (2001).............................. 7

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945)... 8

*Pyles v. United Air Lines, Inc.*, 79 F.3d 1046 (11th Cir. 1996)................. 11

*Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978)....................... 3

*Stanley v. City of Sanford*, 83 F.4th 1333 (11th Cir. 2023)............... 1, 3, 9, 10

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278 (11th Cir. 1997)............................................................... 9

*Williams v. Montgomery*, 742 F.2d 586 (11th Cir. 1984)....................... 9

## Statutes

42 U.S.C. § 12111(8) Americans with Disabilities Act ("ADA")................... 10

45 U.S.C. §151 et. seq. Railway Labor Act ("RLA")........................... 10

## Rules

Fed. R. App. P. 32..................................................................... 14

Fed. R. Civ. P. 11(b)(3)............................................................... 3

## ARGUMENT

## I. INTRODUCTION: AMERICAN'S DEFENSES COLLAPSE UNDER THE WEIGHT OF ITS FRAUD ON THIS COURT

Appellee American Airlines, Inc. ("American") asks this Court to affirm a dismissal predicated on procedural defenses - estoppel, timeliness, and a flawed misapplication of *Stanley v. City of Sanford*, 83 F.4th 1333 (11th Cir. 2023). These arguments are a smokescreen designed to obscure the merits of its discriminatory and retaliatory refusal to reinstate formerly disabled Appellant Lawrence Meadows - now a fully qualified individual who meets all essential job functions of an American Airlines pilot – who was targeted for engaging in protected activity. This strategy of obstruction, however, has now crossed into sanctionable misconduct before this very Court.

At its own request, American moved to supplement the record with a settlement agreement it claims justifies its actions (ECF No. 30). This Court granted the motion, making the agreement part of the appellate record (ECF No. 40). That agreement is a confession of pretext. It is predicated on a material and demonstrably false statement: that Appellant's individual reinstatement "Grievance 12-011" seeking reinstatement was "disposed of and closed ... in 2013." (Appellant's Supplemental Appendix ["ASA"] at 2, ¶ 2).[1] As this brief will demonstrate, record

---

[1]     All citations to the Appellant's Appendix filed with the opening brief are designated as "(AA, Vol. [I, II, or III], Tab [##], at [p. ##])," referencing the

1

evidence - including prior federal court orders to which American was a party and which were explicitly cited in Appellant's Opening Brief - proves this is a fabrication.

American's fraud is the ultimate proof of pretext.

It shows American had to invent a reason to exclude Appellant from the return-to-work process ("RTW") it offered to the other formerly disabled MDD[2] pilots who were "Identified Individuals" in the settlement agreement - proving its true motive was retaliatory. This misconduct eviscerates American's procedural defenses. A party that comes to Court with unclean hands cannot seek refuge in equitable doctrines like estoppel.

---

district court ECF docket number used as the tab and the page number from that specific district court pleading. Citations to the separately filed Appellant's Supplemental Appendix are designated as "(ASA at [p. #])."

[2]    MDD ("Medically Disability Dropped from AA Seniority List") is the classification for pilots administratively dropped from the seniority list for exceeding five years on disability, which the pilots' union, the APA, protested was a violation of the American pilots' collective bargaining agreement ("CBA') and past practice. The "Identified Individuals" in the settlement agreement were all MDD pilots. (ASA at 2, ¶ 1). Of the 55 MDD pilots who obtained FAA medical certification and sought reinstatement, only three were denied: Appellant, Kathy Emery, and Susan Twitchell. All three had sued American and their union, the APA, and filed EEOC charges. Emery and Twitchell took settlements waiving reemployment rights, leaving Appellant as the only MDD pilot denied reinstatement. (AA, Vol. I, Doc 22, at p. 6, n.2).

The fraudulent settlement agreement itself is a new, discrete act of retaliation, rendering Appellant's claims timely and viable. And American's reinstatement of other MDD pilots proves its reliance on *Stanley* is disingenuous. For these reasons, the district court's judgment must be reversed.

## II. AMERICAN PERPETRATED A FRAUD ON THIS COURT BY PROFFERING A SETTLEMENT AGREEMENT PREDICATED ON A DEMONSTRABLY FALSE PRETEXT

An attorney's duty of candor to the tribunal is paramount.

By filing its Motion to Supplement, American's counsel certified that its factual contentions had evidentiary support after a reasonable inquiry. Fed. R. Civ. P. 11(b)(3). American's failure to adhere to this basic standard is spectacular. Such conduct amounts to a fraud on the court, which is "distinguished by the fact that it is a wrong against the institutions set up to protect and safeguard the public." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978).[3] By proffering a settlement agreement predicated on a demonstrably false statement of fact, American has engaged in precisely such a scheme.

This conduct is not merely sanctionable; it provides this Court with dispositive, record-based evidence that American's stated rationale for its actions was pretextual.

---

[3] Decisions of the former Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

3

## A. American Knowingly Misrepresented the Status of Grievance 12-011.

The settlement agreement states the reason for Appellant's exclusion is that his individual reinstament "Grievance 12-011" was "disposed of and closed... in 2013..." (ASA at 2, ¶ 2). This is false, and the record proves it.

**First**, on September 5, 2014 - a year after the Appellant's individual reinstament grievance 12-011was supposedly "closed" - the Honorable Judge Sean H. Lane of the U.S. Bankruptcy Court for the Southern District of New York ordered that, notwithstanding any injunction, **"Meadows shall be permitted to arbitrate Grievance 12-011..."** (AA, Vol. II, Tab 76, Ex. D, at p. 22).

**Second**, on November 8, 2021, Judge Lane issued a subsequent order stating: **"The Stipulation does not affect Grievance No. 12-011 (02/04/12 Meadows, Lawrence)** ... and the parties retain their respective legal positions on the validity and status of those grievances." (AA, Vol. II, Tab 76, Ex. E, at p. 25).

**Third**, the record reflects that Appellant's **Grievance 12-011 specifically alleged that American, in response to Appellant's disability, had engaged in "improper assertions and actions" related to his "employment status, seniority, and discharge" in violation of the CBA and the ADA.** (*In re AMR Corp.*, 2022 WL 1556398, at \*1, cited in AA, Vol. II, Tab 76, at p. 9). Furthermore, in a 2022 proceeding related to the bankruptcy, American's own counsel confirmed on the record that **"the process of fully litigating Grievance 12-011 ... is unaffected by**

4

**debtors' objection...[and] is on a separate track."** (*Id.*, cited in AA, Vol. II, Tab 76, at p. 11).

Appellant's Opening Brief put American on direct notice of this history. (Op. Br. at 11-12, 14, 16, 38-39, n.8). For counsel to then proffer a document claiming the opposite is not an innocent mistake. It is an intentional misrepresentation.

**B. American Mischaracterized Grievance 12-012 to Create a False Distinction.**

American's motion to supplement focused exclusively on the **collective, class-action style reinstatement Grievance 12-012**, arguing Appellant was different from the reinstated pilots because he received a "notice of termination" and they did not. (ECF No. 30 at 2). This argument is defective for two reasons.

**First,** American deliberately ignores the dual nature of Grievance 12-012, which not only protested the company's violation of the CBA and past practice not only for **"failing to provide pilots notice of termination prior to terminating employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years"**, but also for **"failing to reinstate pilots to the Pilots' Seniority System List."** (AA, Vol. I, Doc 67, Ex. 5). The grievance was always about seeking reinstatement of MDD pilots like Appellant, a fact American now conveniently omits.

**Second,** the settlement agreement itself concedes the sole initial notice Appellant received from a non-supervisory administrator "may not have been

compliant in form." (ASA at 2, ¶ 2). The record shows why: it was not issued by Appellant's supervisor, his Miami Base Chief Pilot (the only individual with authority to terminate a pilot), and failed to provide him the "just cause" due process rights of initial notice, investigation, hearing and final written notice guaranteed by Section 21 of the CBA. (AA, Vol. I, Doc 67, ¶ 31). American's attempt to build a wall between Appellant and the other pilots is based on a "non-compliant" notice they admit was likely invalid.

## III. AMERICAN'S FRAUD IS IRREFUTABLE PROOF OF PRETEXT, AND ITS SUBSTANTIVE DEFENSES FAIL AS A MATTER OF LAW AND EQUITY

### A. The Doctrine of Unclean Hands Bars American's Reliance on Estoppel.

American's primary defense is that Appellant is judicially estopped from pursuing his claims because a prior court deemed him "terminated." (Appellee Br. at 19-25). This argument fails on the facts, misrepresents the prior court's ruling, and is barred by American's own misconduct.

**First,** American's factual premise is flawed. Notwithstanding the "terminated" label, Appellant has, since 2011, continuously received collectively bargained long-term disability benefits, under American's Pilot Long Term Disability Plan and Retirement Benefit Plan, in the form of taxable "Pilot Employee" W-2 wages, a full "Active Pilot Employee" benefits package, and continuous uninterrupted accrual of pension "Credited Service." (AA, Vol. I, Doc 67, ¶¶ 41-47,

6

Exs. 7-15). As detailed in Appellant's Opening Brief, the governing collectively bargained plan documents for these benefits define participants as "Employees" and provide that participation ceases upon "Resignation or Discharge." (Op. Br. at 42-43). American's attempt to use a single word taken out of context to erase Appellant's substantive and ongoing employment relationship is disingenuous; under the plain and unambiguous terms of these plans, Appellant remains a "Participant" and an "Employee."

**Second,** American misrepresents the bankruptcy court's holding. While Judge Lane did use the term "terminated," he immediately qualified it by holding that Appellant's status did not extinguish his right to be reinstated. As the record reflects, Judge Lane stated: "[G]iven your status, whether it's an administrative separation or a termination, you're somebody who has it sounds like has a right to seek a position if you get [FAA] medical clearance..." (AA, Vol. I, Doc 67, Ex. G at 66:22-67:4) (emphasis added). American's estoppel argument conveniently ignores this crucial context, which recognizes the very "changed circumstance" - obtaining an FAA medical certificate - that gives rise to this ADA claim.

Finally, even if American's argument were not so factually and legally flawed, the equitable doctrine of judicial estoppel is unavailable to a party who has acted in bad faith. Judicial estoppel is an equitable doctrine whose purpose is to "protect the integrity of the judicial process." *New Hampshire v. Maine,* 532 U.S. 742, 749-50

7

(2001). It is not a technical trap for the unwary. Here, American seeks to benefit from this equitable doctrine while simultaneously perpetrating a fraud on this very Court. The overriding doctrine of unclean hands dictates that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).

American's blatant and documented misrepresentation to this Court regarding the status of Appellant's Grievance 12-011 constitutes precisely the type of inequitable conduct that bars equitable relief. American cannot defraud this Court with one hand while asking for the equitable protection of estoppel with the other.

## B. The Settlement Agreement Is a New, Discrete Act of Retaliation That Renders Appellant's Claims Timely and Establishes a Viable ADA Claim

American argues that Appellant's claims are time-barred and that he fails to state a viable claim for post-termination retaliation. (Appellee Br. at 28-38). This is wrong. The 2025 settlement agreement, which reinstated three similarly situated formerly long term disabled MDD pilots but excluded Appellant based on a fraudulent pretext, is a **new and discrete act of discrimination and retaliation.** *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (each discrete discriminatory act starts a new clock).

Moreover, the ADA's anti-retaliation provision protects former employees from post-employment adverse actions. This Court has long recognized that a former employee states a viable claim for retaliation when an employer's post-employment

8

actions – such as providing a negative reference, a refusal to hire or rehire, or, as here, blacklisting an individual from a reinstatement process – harm the former employee's prospects.

> In *Williams v. Montgomery*, this Court held that <u>**"a former employee may bring a suit against his former employer for acts of retaliation … for exercising his Title VII rights."**</u> 742 F.2d 586, 588 (11th Cir. 1984). <u>**This framework applies with equal force to the ADA**</u>. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). [Emphasis Added].

American's 2025 refusal to reinstate Appellant, predicated on a fraudulent settlement, is a classic example of post-termination retaliation against a former employee for engaging in protected activity (filing whistleblower complaints involving American's pilot disability cost savings scheme, EEOC charges of ADA discrimination and retaliation, and federal lawsuits). It is a new, actionable wrong, and Appellant's claims are therefore timely and viable.

## C. American's Reliance on *Stanley* Is Eviscerated by its Own Discriminatory Actions.

American's argument that Appellant is not a "qualified individual" under the ADA rests on its flawed analogy to the retiree plaintiff in *Stanley*. (Appellee Br. at 33-38). This fails for two dispositive reasons.

**First,** unlike the plaintiff in *Stanley* who "neither held nor desired to hold an employment position," Appellant has consistently and actively sought reinstatement through American's RTW process. The very existence of his individual Grievance

9

12-011, a grievance alleging both CBA and ADA violations, is protected activity and undeniable proof that Appellant "desires" employment. 42 U.S.C. § 12111(8) American's with Disabilities Act ("ADA"); *see also Batuyong v. Gates*, 337 F. App'x 451, 456 (6th Cir. 2009) **(grievances can be Title VII protected activity if they are related to employment discrimination)**. [Empasis added].

**Second,** American's argument is fatally contradicted by its own actions. By creating a reinstatement process for the other "Identified Individuals" who were similarly "on inactive status, unpaid sick, or disability for more than five years, were removed from the pilot seniority list and separated from employment with the Company," before American's bankruptcy pre-petition date, (ASA at 2, ¶ 1); American judicially admitted that a return-to-work path existed and that these individuals were qualified candidates, and not barred by the bankruptcy injunction.

American's argument that Appellant - who was equally qualified and actively seeking reinstatement - is somehow disqualified is legally incoherent. The only material distinction between Appellant and the reinstated pilots is that Appellant engaged in protected activity by filing EEOC charges and federal lawsuits against American and its pilots' union, the APA. (Op. Br. at 6, n.2). Proving American's reliance on *Stanley* was disingenuous.

**D. Appellant's ADA Claims Are Not Preempted by the Railway Labor Act.**

10

American argues that Appellant's claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. §151 et. seq., because they require interpretation of the CBA. (Appellee Br. at 40-42). This argument misapprehends the controlling law. The Supreme Court in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994), established that while claims that are "substantially dependent" on an analysis of a CBA are preempted, claims that allege violations of independent federal statutory rights are not. Id. at 266.

This Circuit, applying *Hawaiian*, has been clear that preemption is a narrow exception. Citing *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046 (11th Cir. 1996), American argues for preemption but omits the Eleventh Circuit's crucial caution: "The fact that reference to a CBA may be required, particularly where factual issues are involved, is insufficient of itself to preempt...; only where interpretation of a CBA is required will the claim be preempted." *Id.* at 1050 (citation omitted).

Appellant's claims fall squarely into the non-preempted category. He alleges disparate treatment and retaliation in violation of the ADA – rights that are created by federal statute, not by the CBA. Here, the CBA and the grievances are referenced not to interpret disputed contractual rights, but as factual evidence of American's discriminatory conduct, its pretextual reasoning, and its retaliatory motive. As the Seventh Circuit clarified in *Brown v. Illinois Central R.R. Co.*, a disparate treatment or retaliation claim is not preempted where the CBA is merely consulted for context.

11

254 F.3d 654, 668 (7th Cir. 2001). Because Appellant's claims are not "substantially dependent" on interpreting the CBA, they are not preempted. See *Hawaiian Airlines*, 512 U.S. at 266.

In sum, this Court has long held that a plaintiff can establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). Here, **American's explanation for excluding Appellant - that his individual "grievance 12-011" was "disposed of and closed ... in 2013" - is not merely "unworthy of credence"; it is a proven falsehood based on the appellate record.**

The pretext is manifest.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court reverse the district court's judgment of dismissal and remand this case for proceedings on the merits.

Respectfully submitted,

Dated: March 30, 2026

12

**Lawrence M. Meadows**
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Eleventh Circuit Rule 27-4, I hereby certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because this document contains 2,723 words, excluding the parts of the motion exempted by Rule 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated this 30th day of March 2026,

**Lawrence M. Meadows**
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Pro Se Appellant, hereby certify, that on

March 30, 2026, a true and correct copy of the foregoing was filed via Federal

Express with the Eleventh Circuit Clerk, and also served via Federal Express upon

counsel of record in the Service List below.

_Signature of Filer_

## SERVICE LIST

**Mark W. Robertson**
O'Melveny & Myers, LLP
1301 Avenue of the Americas Suite 1700
New York, NY 10019
212-326-4329
Email: mrobertson@omm.com
_PRO HAC VICE_
_ATTORNEY TO BE NOTICED_

**Kelly S. Wood**
O'Melveny & Myers, LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
949-823-6900
Email: kwood@omm.com
_PRO HAC VICE_
_ATTORNEY TO BE NOTICED_

**Jason Zarrow**
O'Melveny & Myers, LLP
400 S HOPE ST FL 19

LOS ANGELES, CA 90071
Firm: 213-430-6000
jzarrow@omm.com
*ATTORNEY TO BE NOTICED*

**Ryan K. Stumphauzer**
**Matthew M. DellaBetta**
**Timothy A. Kolaya**
Stumphauzer, Kolaya, Nadler & Sloman, PLLC
One Biscayne Tower
2 South Biscayne Boulevard
Ste 1600
Miami, FL 33131
305-614-1413
Email: mdellabetta@sknlaw.com
*ATTORNEY TO BE NOTICED*

**Counsel for Appellee – American Airlines. Inc.**



ORIGIN ID:MPBA   (516) 982-7
LAWRENCE MEADOWS

1800 SUNSET HARBOUR DR 2112

MIAMI BEACH, FL 33139
UNITED STATES US

TO  US COURT OF APPE
    ATTN: CLERK OF CC
    56 FORSYTH STREE

    ATLANTA GA 3030
(404) 335-6100        REF



# Envelope

TRK# 8701 3445 6058
0201

## P cycle me.

529-2008



# SP QFEA

# EXHIBIT  B

# No. 25-10297-DD

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT



**LAWRENCE MEADOWS,**
Plaintiff-Appellant,

v.

**AMERICAN AIRLINES, INC.,**
Defendant-Appellee.

Appeal from the U.S. District Court
for the Southern District of Florida
Hon. Darrin P. Gayles
No. 1:24-cv-20518-DPG

## APPELLANT'S MOTION FOR SANCTIONS AGAINST APPELLEE AND ITS COUNSEL PURSUANT TO FED. R. CIV. P. 11, FED. R. APP. P. 46, 28 U.S.C. § 1927, AND THE COURT'S INHERENT AUTHORITY

Lawrence M. Meadows
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant, Lawrence M. Meadows ("Meadows"), pursuant to Eleventh Circuit Rule 26.1-1, submits this Certificate of Interested Persons and Corporate Disclosure Statement. The following parties have an interest in the outcome of this case or appeal:

1. American Airlines, Inc. (Appellee);

2. American Airlines Group Inc. (corporate parent of Appellee);

3. DellaBetta, Matthew M. (Appellee's counsel);

4. Gayles, Hon. Darrin P. (United States District Judge);

5. Goodman, Hon. Jonathan (United States Magistrate Judge);

6. Kolaya, Timothy A. (Appellee's counsel);

7. Meadows, Lawrence (pro se Appellant);

8. O'Melveny & Myers LLP (Appellee's counsel's firm);

9. Robertson, Mark W. (Appellee's counsel);

10. Stumphauzer Kolaya Nadler & Sloman, PLLC (Appellee's counsel's firm);

11. Stumphauzer, Ryan K. (Appellee's counsel);

12. Wood, Kelly S. (Appellee's counsel); and

13. Zarrow, Jason (Appellee's counsel).

1Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned certifies that he is a natural person and not a corporation.

C1 of C2

Lawrence M. Meadows
*Pro Se* Appellant

## APPELLANT'S MOTION FOR SANCTIONS AGAINST APPELLEE AND ITS COUNSEL PURSUANT TO FED. R. CIV. P. 11, FED. R. APP. P. 46, 28 U.S.C. § 1927, AND THE COURT'S INHERENT AUTHORITY

### PRELIMINARY STATEMENT

Plaintiff-Appellant Lawrence M. Meadows, proceeding *pro se*, respectfully moves for an order imposing sanctions on Defendant-Appellee American Airlines, Inc. ("American") and its counsel of record, Mark W. Roberston, Kelly S. Wood, and Jason Zarrow, of O'Melveny & Myers LLP; and Ryan K. Stumphauzer, Timothy A. Kolaya, and Matthew M. Dellabetta of Stumphauzer Kolaya Nadler & Sloman, PLLC, for conduct violating Federal Rule of Civil Procedure 11, as made applicable by Federal Rule of Appellate Procedure 46, as well as 28 U.S.C. § 1927 and this Court's inherent authority to sanction bad-faith litigation conduct.

Counsel for American has perpetrated a fraud on this Court by filing a motion to supplement the record (ECF No. 30) that contained a material and demonstrably false statement of fact.

### FACTUAL BACKGROUND

1.      On October 6, 2025, counsel for American filed a "Motion to Supplement the Record on Appeal" (ECF No. 30), which this Court granted on March 16, 2026 (ECF No. 40). The motion's central purpose was to introduce a 2025 Settlement Agreement to explain why Appellant was excluded from a reinstatement process.

1

2.    Specifically, the Settlement Agreement paragraph 2. states as the express pretext for excluding Appellant that his **individual grievance, "Grievance 12-011", was "disposed of and closed...in 2013."** A true and correct copy of the Settlement Agreement is attached as **Exhibit A.**

3.    This representation is demonstrably false and is directly contradicted by multiple judicial records to which American and its counsel were parties, all of which are part of the record on appeal.

4.    **The 2014 Order:** On September 5, 2014 - *after* the grievance was supposedly "closed" - the Honorable Judge Sean H. Lane of the U.S. Bankruptcy Court for the Southern District of New York **issued an order stating that Appellant "shall be permitted to arbitrate Grievance 12-011."** (AA, Vol. II, Tab 76-2, Ex. D, at p. 22). A true and correct copy of the 2014 Order is attached hereto as **Exhibit B.**

5.    **The 2021 Order:** On November 8, 2021, Judge Lane issued a subsequent order stating: **"The Stipulation does not affect Grievance No. 12-011 (02/04/12 Meadows, Lawrence)...** and the parties retain their respective legal positions on the validity and status of those grievances." (AA, Vol. II, Tab 76-2, Ex. E, at p. 25, ¶ 3). A true and correct copy of the 2021 Order is attached hereto as **Exhibit C.**

6. **The 2022 Admission:** The record further reflects that Grievance 12-011 specifically alleged that American, in response to Appellant's disability, had engaged in "improper assertions and actions" related to his "employment status, seniority, and discharge" in violation of the CBA and the ADA. (*In re AMR Corp.*, 2022 WL 1556398, at *1, cited in AA, Vol. II, Tab 76, at p. 9). Furthermore, in a 2022 proceeding related to the bankruptcy, American's own counsel confirmed on the record that **"the process of fully litigating Grievance 12-011 ... is unaffected by debtors' objection...[and] is on a separate track."** (*Id.*, cited in AA, Vol. II, Tab 76, at p. 11).

7. **The 2024 Corroboration:** Finally, these judicial records and admissions are corroborated by the sworn declaration of former APA President, Captain Edward Sicher, submitted on January 28, 2026, in the parallel litigation of *Meadows v. Allied Pilots Ass'n* (S.D. Fla., No. 17-cv-22589-EA, ECF No. 180-3, ¶¶ 27, 30). **Captain Sicher attests that he directed Grievance 12-011 to be moved forward for arbitration in June 2024, and that it was still active awaiting an arbitration hearing as of October 7, 2024.** A true and correct copy of Captain Sicher's declaration is attached as **Exhibit D.**

8. American's counsel, particularly Mark W. Robertson, was deeply involved in these proceedings. The representation to this Court that Appellant

3

Meadows Grievance 12-011 was "disposed of closed...in 2013", was therefore made either with knowledge of its falsity or with a reckless disregard for the truth that falls far below the standard of "reasonable inquiry" required by Rule 11.

## ARGUMENT

By submitting a filing containing a material falsehood, American's counsel has violated multiple rules of professional conduct.

### I.   Violation of Rule 11.

Federal Rule of Civil Procedure 11(b)(3), made applicable to this Court by Fed. R. App. P. 46, requires an attorney to certify that factual contentions in a filing have evidentiary support after a reasonable inquiry. Counsel's representation was directly contradicted by multiple orders and admissions on their own client's litigation dockets, which were also part of the record in this very case. This conduct is sanctionable.

### II.   Violation of 28 U.S.C. § 1927.

By submitting a document with a false pretext, counsel has "unreasonably and vexatiously" multiplied these proceedings, forcing Appellant to expend significant resources to refute a fabricated justification.

### III.   Fraud on the Court.

4

This conduct is not a mere mistake but rises to the level of a fraud on the court - a "fraud that is directed to the judicial machinery itself." *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Counsel sought to have a false statement formally entered into the appellate record to gain an unfair litigation advantage, thereby subverting the integrity of the appellate process.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the Court enter an order imposing sanctions on Appellee American Airlines, Inc. and its counsel, and granting any other relief this Court deems just and proper.

Respectfully submitted,

Dated: March 25, 2026

Lawrence M. Meadows
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

5

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Eleventh Circuit Rule 27-4, I hereby certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because this document contains  words, excluding the parts of the motion exempted by Rule 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated this 25th day of March 2026,

**Lawrence M. Meadows**
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

**I, Lawrence M. Meadows, Pro Se Appellant, hereby certify,** that on

March 25, 2026, a true and correct copy of the foregoing was served via Email and

Federal Express upon all counsel of record at the addresses listed on the Service

List below, pursuant to Fed. R. Civ. P. 11(c)(2).

Signature of Filer

## SERVICE LIST

**Mark W. Robertson**
O'Melveny & Myers, LLP
1301 Avenue of the Americas Suite 1700
New York, NY 10019
212-326-4329
Email: mrobertson@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kelly S. Wood**
O'Melveny & Myers, LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
949-823-6900
Email: kwood@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Zarrow**
O'Melveny & Myers, LLP
400 S HOPE ST FL 19

7

LOS ANGELES, CA 90071
Firm: 213-430-6000
jzarrow@omm.com
*ATTORNEY TO BE NOTICED*

**Ryan K. Stumphauzer**
**Matthew M. DellaBetta**
**Timothy Kolaya**
Stumphauzer, Kolaya, Nadler & Sloman, PLLC
One Biscayne Tower
2 South Biscayne Boulevard
Ste 1600
Miami, FL 33131
305-614-1413
Email: mdellabetta@sknlaw.com
*ATTORNEY TO BE NOTICED*

**Counsel for Appellee - American Airlines. Inc.**

## SECOND CERTIFICATE OF SERVICE

**I, Lawrence M. Meadows, Pro Se Appellant, hereby certify**, that:

1. On March 25, 2026, at 4:17 PM EDT, the foregoing Motion for Sanctions was served upon all counsel of record for Appellee via Email and Federal Express Overnight Delivery, pursuant to the 21-day safe harbor provision of Federal Rule of Civil Procedure 11(c)(2).

2. On March 31, 2026, Appellee's counsel notified Appellant that they did not intend to withdraw the challenged filing.

3. The 21-day safe harbor period having now expired, on this 16th day of April, 2026, a true and correct copy of the foregoing Motion for Sanctions was filed with the Clerk of the Court for the U.S. Court of Appeals for the Eleventh Circuit via Federal Express and was served upon all counsel of record via Email and Federal Express to their respective firms' addresses of record.

Signature of Filer

## SERVICE LIST

**Mark W. Robertson**
O'Melveny & Myers, LLP
1301 Avenue of the Americas Suite 1700
New York, NY 10019
212-326-4329

9

Email: mrobertson@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kelly S. Wood**
O'Melveny & Myers, LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
949-823-6900
Email: kwood@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Zarrow**
O'Melveny & Myers, LLP
400 S HOPE ST FL 19
LOS ANGELES, CA 90071
Firm: 213-430-6000
jzarrow@omm.com
*ATTORNEY TO BE NOTICED*

**Ryan K. Stumphauzer**
**Matthew M. DellaBetta**
**Timothy Kolaya**
Stumphauzer, Kolaya, Nadler & Sloman, PLLC
One Biscayne Tower
2 South Biscayne Boulevard
Ste 1600
Miami, FL 33131
305-614-1413
Email: mdellabetta@sknlaw.com
*ATTORNEY TO BE NOTICED*

**Counsel for Appellee - American Airlines. Inc.**

10

**Exhibits:**

**A.** Settlement Agreement (from ECF No. 30-1)
**B.** Bankruptcy Court Order dated September 5, 2014
**C.** Bankruptcy Court Order dated November 8, 2021
**D.** Declaration of Edward Sicher (ECF 180-3, *Meadows v. APA*

## EXHIBIT A

# SETTLEMENT AGREEMENT

## Between

## AMERICAN AIRLINES, INC.

### and the

## ALLIED PILOTS ASSOCIATION

American Airlines, Inc., including its subsidiaries, affiliates, and parent companies, (collectively "American" or "Company"), and the Allied Pilots Association ("APA" or "Union") (collectively referred to as the "Parties"), mutually desire to settle and resolve Sicher Expedited Presidential Grievance 23-031 (converted from DFW Domicile Grievance No. 12-012). Accordingly, the Parties hereby agree to the following terms to compromise, settle, fully and finally resolve Sicher Expedited Presidential Grievance 23-031, including the underlying DFW Domicile Grievance No. 12-012, in its entirety, as follows:

WHEREAS, on May 22, 2012, the APA DFW Domicile Representatives filed Grievance No. 12-012 protesting the Company's alleged violation of the 2003 Collectively Bargained Agreement for failing to provide pilots notice of termination prior to terminating the employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five (5) years; and

WHEREAS, on March 13, 2023, the APA converted the DFW Domicile Grievance No. 12-012 into Sicher Expedited Presidential Grievance 23-031 (collectively with DFW Domicile Grievance No. 12-012, the "Presidential Grievance"). The Presidential Grievance continued to protest the Company's alleged violation of the Collectively Bargained Agreement for failing to provide pilot notice of termination prior to terminating the employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years; and

WHEREAS, in the Presidential Grievance the APA contended that the Company's failure to provide notice to pilots of their impending removal from the seniority list and separation from employment precluded those pilots from either attempting to return to service prior to being dropped from the seniority list and separated from their employment, and/or filing a grievance challenging the Company's decision to drop them from the seniority list and separate them from employment; and

WHEREAS, the remedy sought in the Presidential Grievance was an award ordering the Company to provide affected individuals with notice of their removal from the seniority list and separation from service thereby allowing them to then file a grievance challenging that action based upon the facts that existed at the time the original notice should have been given; and

WHEREAS, the Company contends the APA may not convert a domicile grievance into a presidential grievance and the APA disagrees with same;

WHEREAS, the Company contends the Presidential Grievance is without merit; and

WHEREAS, the Parties conducted a mediation on November 7, 2024, before a Neutral, and

Settlement Agreement                                                           Page 1 of 6

through subsequent discussions, reached an agreement to resolve the Presidential Grievance; and

WHEREAS, the Parties desire to avoid further controversy and fully settle and compromise the Presidential Grievance, without any further proceedings.

NOW, THEREFORE, in exchange for the mutual considerations described herein, the sufficiency of which is hereby acknowledged, the Parties agree to fully resolve the Presidential Grievance, as follows:

1.  Although no specific pilots are referenced in the Presidential Grievance or the underlying Domicile Grievance, the Parties have identified the following four (4) individuals who were on inactive status, unpaid sick, or disability for more than five years, were removed from the pilot seniority list and separated from employment with the Company, and have represented that they have since obtained, or have filed paperwork to obtain, an FAA First Class Medical Certificate, and expressed a desire to be reinstated to employment as a pilot with the Company: Timothy Curren (354581), Dale Churovich (354629), Lawrence Meadows (332713), and Roger Wagner (318588) (collectively the "Identified Individuals").

2.  One of the Identified Individuals, however, Lawrence Meadows, was provided and received the notice attached as Exhibit A during his prior employment in advance of his removal from the seniority list and separation from employment in 2011, and the Parties agree that none of the other Identified Individuals received similar communications from the Company prior to their separation from employment. Following Mr. Meadows' removal from the seniority list and separation from employment, he filed two grievances challenging the Company's actions. The Company disputes that the notice given was required by the CBA while the APA contends that the notice was required and that the provided notice may not have been compliant in form. However, the APA has concluded that, under the totality of circumstances of this case, it is unlikely to prevail on its argument before the System Board, particularly in light of the fact that Mr. Meadows filed Grievance 12-011 and Grievance 13-064 challenging the Company's decision to separate him from employment at the time. Both grievance 12-011 and 13-064 were subsequently disposed of and closed after the APA declined to advance them in 2013 and 2014, respectively. As a result, Mr. Meadows is deemed not to be an Eligible Individual under this Agreement, and thus, he is not eligible for reinstatement under this Agreement.

3.  Based on the Parties' knowledge, Timothy Curren (354581), Dale Churovich (354629), and Roger Wagner (318588) (collectively "Eligible Individuals") did not receive notice prior to their removal from the seniority list and separation from employment and did not file a grievance challenging the Company's actions at the time. The Eligible Individuals may elect to utilize the process detailed below for possible reinstatement to the Pilot Seniority List and return to employment and active status at the Company, provided they satisfy the conditions detailed below.

4.  The Parties agree to offer a one-time opportunity to the Eligible Individuals to utilize the following process for possible reinstatement to the Pilot Seniority List and return to

employment with the Company (the "Process for Possible Reinstatement"). The Process for Possible Reinstatement must commence within thirty (30) days of the full execution of this Settlement Agreement. Each Eligible Individual may elect to pursue or may decline to pursue this one-time opportunity to pursue the Process for Possible Reinstatement as described below.

a.   The APA will provide each Eligible Individual with the terms of the Process for Possible Reinstatement and advise them of their right to opt into pursuing reinstatement through the Process for Possible Reinstatement and that, regardless of whether they seek reinstatement, the Presidential Grievance will be withdrawn with prejudice pursuant to this Agreement. In the event an Eligible Individual does not timely and properly opt to pursue the Process for Possible Reinstatement, then the Eligible Individual will have waived his right to pursue the Process for Possible Reinstatement and will have elected not to return to employment with the Company and the APA will not advance any subsequent request for reinstatement, reemployment, or rehire on their behalf.

5.   Process for Possible Reinstatement. The Parties agree the following steps comprise the Process for Possible Reinstatement for the Eligible Individuals:

a.   Step 1: In the event an Eligible Individual opts to pursue the Process for Possible Reinstatement, the Eligible Individual must send an email to Maranda Rosenthal (maranda.rosenthal@aa.com) and Jim Clark (jclark@alliedpilots.org) so indicating no later than thirty (30) consecutive calendar days after the date this Settlement Agreement is fully executed. The Eligible Individual must include a true and correct copy of his First Class Medical Certificate along with the email.

b.   Step 2: Within 14 days of providing the Notice in Step 1, the Eligible Individual must execute a General Release (attached as Exhibit B) and email it to Maranda Rosenthal (maranda.rosenthal@aa.com) and Jim Clark (jclark@alliedpilots.org).

c.   Step 3:  The Eligible Individual shall submit to and successfully clear the standard pre-employment background checks for American pilots, including PRIA records review, submission to the Rap Back Program, fingerprinting, drug and alcohol testing, and any other standard, pre-employment requirement for New Hire American pilots.

d.   Step 4: The Eligible Individual shall execute and submit a request to the FAA for a complete copy of their medical file (commonly referred to as a "Blue Ribbon File") to be released and sent to Natasha Narayan, MD, American's Corporate Medical Director.  Dr. Narayan will review the Blue Ribbon File received from the FAA. Dr. Narayan shall have twenty (20) days to review the file upon receipt of same. In the event American's Corporate Medical Director concludes that the Blue Ribbon File is complete and accurate on its face, the Company will accept the determination rendered by the FAA in granting the medical certificate.

In the event American's Corporate Medical Director determines that the Blue Ribbon File indicates a need for further information or clarification in order for the Eligible Individual to continue on the Process for Possible Reinstatement, the Company will notify the Eligible Individual and APA in writing and identify the information/clarification needed. The criteria used in determining whether further information/clarification is necessary will be limited to: (a) suspected non-disclosure of material information; (b) evidence of non-compliance with an established treatment plan, (c) a prescribed treatment plan being inconsistent with a diagnosis or evaluation, or (d) clearance reports from a physician or specialist whose credentials are not consistent with the reported diagnosis. The Eligible Individual will then have the opportunity to provide additional information/clarification in response to the item(s) identified by the Medical Director.

Within ten (10) days of receipt of a response from the Eligible Individual, the Company will notify the Eligible Individual and APA in writing if additional information/clarification is needed and detail the basis for such determination. The Eligible Individual will be given an opportunity to withdraw their reinstatement request in writing to both the Company and the APA within ten (10) days of receipt of notification. If the Eligible Individual elects to withdraw their reinstatement request, then the Company will not take any further action. If the Eligible Individual does not withdraw his request for reinstatement or affirmatively confirms in writing his intention to continue with the reinstatement process under this Agreement, the Company shall copy the pilot on an email submission of Dr. Narayan's request for an FAA aeromedical general review at 9-AMC-GRCustomerSvc@faa.gov. An FAA request for information is not a denial. If the FAA denies the Eligible Individual's medical certificate, such Eligible Individual's reinstatement request shall be denied. If the FAA does not deny the Eligible Individual's medical certificate in response to the request for review, then the FAA determination on the medical certificate will be deemed final and binding with regard to reinstatement of the Eligible Individual.

If the Company seeks a general review of an Eligible Individual's medical certificate and the FAA confirms the medical certificate, the Eligible Individual will be entitled to be paid retroactive to the date the request for FAA general review was made at the hourly pay rate based on the Equipment Pay Band (AA-APA Agreement Section 3) that his relative seniority will allow him to hold. This period of retro pay will not be included in the 18-month guarantee provided in paragraph 6(b) below. In the event the FAA requests information directly from the Eligible Individual during the general review process, the period of time between when the request is made and when the Eligible Individual responds to the request will not be considered compensable in the event retroactive pay is required under this paragraph.

e.    **Step 5:** If an Eligible Individual successfully completes Steps 1 through 4, he will be reinstated to employment with the Company and placed on the Pilot Seniority list at the number representing approximately where he would have

been had he remained continuously employed by the Company ("relative seniority"). Reinstatement will begin effective with the commencement of training.

f.   Step 6: The Eligible Individual shall be assigned the first available training spot within three (3) months of the date reinstatement is approved, and will be given five (5) days' notice of same. The Eligible Individual will receive the standard AQP training course proffered to New Hire American pilots, inclusive of the standard remedial training offered to New Hire American pilots. Once the Eligible Individual successfully completes his training, he is considered an active employee and governed by the 2023 AA-APA Agreement and Company policies except as noted herein. In the event the Eligible Individual does not successfully complete training due to a training failure, he will not advance any further on the Process for Possible Reinstatement, and APA will not advance any subsequent request for reinstatement, reemployment, or rehire on his behalf.

6.   The following terms apply to each Eligible Individual who successfully completes the Process for Possible Reinstatement ("Reinstated Pilot"):

a.   Upon successful completion of training, each Reinstated Pilot shall be assigned as a First Officer on a narrow body aircraft until such time as the Reinstated Pilot has accomplished 1,000 hours of flight time as a narrowbody First Officer. After the completion of the required 1,000 hours of flight time, the Reinstated Pilot may exercise his seniority to bid for and be awarded whatever bid status his relative seniority can hold in the first vacancy bid award following completion. Prior to assigning the Reinstated Pilot a narrow body bid status, the Company shall confer with the Reinstated Pilot about his aircraft and base preferences and take such preferences into consideration when assigning the Reinstated Pilot a narrow body bid status.

b.   Compensation will commence once the Eligible Individual successfully completes Steps 1 through 4 above and timely reports for training as directed and described in this Settlement Agreement. Regardless of what seat and equipment is being flown, the Reinstated Pilot's hourly pay rate will be based on the Equipment Pay Band (AA-APA Agreement Section 3) that his relative seniority will allow him to hold for the first 18 months of his reinstatement. At the conclusion of the first 18 months, the Reinstated Pilot will assume the pay rate associated with whatever bid status the Reinstated Pilot holds at that time.

c.   Upon completion of training, the Reinstated Pilot's vacation bank and sick bank will reflect zero hours and will begin to accrue based upon the pilot's length of service in accordance with the 2023 Agreement. The Parties agree that the terms of LOA 18-001 do not apply to the Eligible Individuals. The Parties agree that the Reinstated Pilot's length of service will reflect the following upon timely reporting for training at the Training Academy:

Timothy Curren (354581) – updated Class Date 1/20/2016 – 9 years

Dale Churovich (354629) — updated Class Date 1/29/2017 — 8 years
Roger Wagner (318588) — updated Class Date 2/16/2020 — 5 years

7. The Parties agree that the Eligible Individuals defined above cannot be changed, expanded, or modified in any way.

8. The APA agrees to immediately withdraw with prejudice the Presidential Grievance and is resolved on a no citation and no precedence setting basis.

9. This Agreement does not constitute an admission of any kind by the Company or the APA and is being entered into to avoid the expense and uncertainty of arbitrating the Presidential Grievance.

10. The Parties agree that this Agreement constitutes the complete agreement between the Parties concerning the Presidential Grievance and that no other representations or promises have been made by the Parties in that regard.

11. This Agreement may not be modified in any manner except in a writing signed by both Parties.

**ALLIED PILOTS ASSOCIATION**

By: _____
First Officer Nick Silva
President

Dated: January 15, 2025

**AMERICAN AIRLINES, INC.**

By: _____
Maranda Rosenthal
Managing Director, Labor Relations/Flight
Assoc. General Counsel

Dated: January 15, 2025

# EXHIBIT B

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 54 of 79
USCA11 Case: 25-10297        Document: 48       Date Filed: 04/17/2026      Page: 23 of 48
Case 15-463-ch-2013-cv-2258 Doc-lec-09/05/14 Entered 09/05/19 dcket 305 Main Deagent of
USCA11 Case: 25-10297      Document:(35 Page Filed: 06/27/2025      Page: 114 of 248

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x
                                                    :
In re                                               :    Chapter 11 Case No.
                                                    :
AMR CORPORATION, *et al.*,                          :    11-15463 (SHL)
                                                    :
                          Debtors.                  :    (Jointly Administered)
                                                    :
---------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 DISALLOWING AND EXPUNGING PROOF OF CLAIM NOS. 13478, 13788, AND 13865 FILED BY LAWRENCE M. MEADOWS

1.     Upon the Objection, dated March 17, 2014 (the "Objection"),[1] of AMR Corporation and its related debtors, as debtors and reorganized debtors (collectively, the "Debtors"), pursuant to section 502(b) of title 11 of the United States Code and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure, seeking to disallow and expunge Proof of Claim Nos. 13478, 13788, and 13865 filed by Lawrence M. Meadows, all as more fully described in the Objection; and the Court having jurisdiction to consider the Objection and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Objection having been provided, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Objection (the "Hearing"); and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 55 of 79

USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 24 of 48.
Case1:863csh20518eDt2c5DoBdetc0d/0664Er Enteleah0d/65/14ct5e430905/EtB04 DBegaeftof
USCA11 Case: 25-10297   Document:(3672687af6?e Filed: 06/27/2025   Page: 115 of 248

Objection is in the best interests of the Debtors, creditors, and all parties in interest, and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Objection is granted as provided herein; and it is further

ORDERED that Proof of Claim Nos. 13478, 13788, and 13865 are disallowed and expunged in their entirety; and it is further

ORDERED that, notwithstanding the foregoing, Meadows shall be permitted to arbitrate Grievance 12-011 before the System Board to the extent ~~that such arbitration is limited in scope to claims involving the interpretation of the CBA and provides remedies, if any and if appropriate, that are customary under the grievance procedures created by the RLA~~ *permitted by applicable law*; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
September 5, 2014

/s/ Sean H. Lane
United States Bankruptcy Judge

2

# EXHIBIT C

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 57 of 79

USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 26 of 48
Case 1:17-cv-22589-DPG Document 76-21 Entered on FLSD Docket 09/05/2024 Page 24 of
USCA11 Case: 25-10297   Document: 36-2 Date Filed: 06/27/2025   Page: 117 of 248

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------x
                      :

In re                   :       **Chapter 11**

AMR CORPORATION, *et al.*,   :       **Case No. 11-15463 (SHL)**

          **Reorganized Debtor.**   :       **(Jointly Administered)**

------------------------------------------x

## ORDER AUTHORIZING THE STIPULATION AND AGREED ORDER FOR PROOF OF CLAIM FILED BY THE ALLIED PILOTS ASSOCIATION

Upon the Stipulation and Agreed Order dated September 30, 2021, (Dkt No. 13364)[1] of

AMR Corporation as the reorganized debtor (the "Reorganized Debtor" or "American") and

the Allied Pilots Association (the "APA" and, together with American, the "Parties"), for entry

of an agreed order resolving the Amended Claim, all as described more fully in the Stipulation;

and this Court having jurisdiction to consider the Stipulation and the relief requested under 28

U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated

January 31, 2012 (Preska, C.J.); and consideration of the Stipulation and the requested relief

being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the

Bankruptcy Court under 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Stipulation having been provided, and it appearing that no other or further notice need be

provided; and a hearing having been held to consider the relief requested in the Stipulation

(the "Hearing"); and upon the record of the Hearing and the proceedings had before the

Bankruptcy Court; and the Bankruptcy Court having overruled any objections for the reasons

---

[1] Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Stipulation.

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 58 of 79

USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 27 of 48
Case 1:21-cv-20516-DPG Document 76-21 Entered 19/09/20 on Docket 09705 Miami Docket 95 of
USCA11 Case: 25-10297   Document: 250 Page Filed: 06/27/2025   Page: 118 of 248

stated on the record of the Hearing; and the Bankruptcy Court having found and determined that

the relief sought in the Stipulation is in the best interests of the Reorganized Debtor, creditors,

and all parties in interest, and that the legal and factual bases in the Stipulation establish just

cause for the relief granted; and after due deliberation and sufficient cause appearing, it is

ordered that:

1.    The Stipulation shall become effective on the date that it is "So Ordered" by the

Bankruptcy Court and shall inure to the benefit of the Parties and their respective successors.

2.    The Amended Claim will be allowed in the amount of $625,000.

3.    Except for the right to receive a distribution for allowance of the Amended Claim

set forth in paragraph 2 above pursuant to the Stipulation and the Plan, the APA fully, finally,

and forever releases, relinquishes, and discharges the Debtors, their principals, officers, directors,

agents, assigns, administrators, and representatives, from all rights, claims, demands, damages of

any kind, and causes of action of every nature, whether known or unknown, asserted or

unasserted, arising from or relating to the Amended Claim. The Stipulation does not affect

Grievance No. 12-011 (02/04/12 Meadows, Lawrence) and Grievance No. 12-012 (05/22/12

DFW Domicile) identified on Exhibit 1 to the Letter of Agreement, and the parties retain their

respective legal positions on the validity and status of those grievances.

4.    Nothing in the Stipulation shall be construed as an admission of liability or

constitute, imply, or evidence the validity of any claim, allegation, objection, defense, asserted

right or remedy at law or equity, raised, or that could be raised, by any party in connection with

the Amended Claim.

5.    The Stipulation may not be modified, amended, or vacated other than by a signed

writing executed by the Parties. The Stipulation contains all of the terms agreed upon by the

Parties regarding the subject of the Stipulation. Any prior agreements, promises, negotiations, or representations, either oral or written, relating to the subject of the Stipulation that are not set forth or referred to in the Stipulation are of no force or effect.

6.    Each person who executes the Stipulation on behalf of a Party represents that he or she is duly authorized to execute the Stipulation on behalf of that Party.

7.    The Stipulation may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Evidence of execution of the Stipulation may be exchanged by electronic transmission of a scanned copy of the signature pages or by exchange of an originally signed document, each of which shall be fully binding on the Party as a signed original.

8.    The claims agent in the Debtors' chapter 11 cases is authorized to adjust the claims register in accordance with the Stipulation.

9.    The Bankruptcy Court shall retain jurisdiction to interpret, implement, and enforce the provisions of the Stipulation.

**APPROVED AND SO ORDERED**
this 8th day of November 2021

**BY THE COURT:**

/s/ Sean H. Lane
Honorable Sean H. Lane
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT D

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 61 of 79
USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 30 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 16 of 85

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

LAWRENCE M. MEADOWS,
 Plaintiff,

 v.

ALLIED PILOTS ASSOCIATION, et al.,
 Defendants.

CASE NO. 17-cv-22589-EA
Honorable Judge Ed Artau

_____/

## <u>DECLARATION OF CAPTAIN EDWARD F. SICHER</u>

I, Captain Edward F. Sicher, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am over the age of eighteen and all statements made herein are true and correct to the best of my knowledge.

2. I am a veteran who served over 20-years as a U.S. Air Force Officer, am a decorated combat fighter pilot, who retired at the rank of Lt. Colonel, and was hired as a pilot for American Airlines in 1998, where I've worked for over 27 years, and am currently a B-777 Captain (CA) flying intentional routes.

3. During my military career I was disabled and grounded from flying to due to being temporarily paralyzed as the result of a vaccine reaction during Desert Storm. My wife was pregnant with my first-born at the time and the Air Force threatened me with removal. Thus, I have experienced first-hand what it means to be a long-term disabled (LTD) pilot who has lost their flying career and suffered the associated difficulties and long fight to get medically re-certified and return to the cockpit. This is a primary reason why I am a staunch advocate for American Airline's LTD and MDD (Medical Disabled Dropped from AA seniority list) pilots.

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 62 of 79

USCA11 Case: 25-10297 . Document: 48    Date Filed: 04/17/2026    Page: 31 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 17 of 85

4.      I devoted over a decade of my 27+ year career at American Airlines (AA) as a volunteer and elected representative at the American Airlines Pilots' union, the Allied Pilots Association (APA) which serves the 16000+ pilots of American Airlines, serving both at the Miami domicile and national level. Some of my many involvements in the pilot union include serving as the Miami (MIA) domicile Contract Compliance Chair (CH), as a MIA domicile Strike Preparedness Committee member, as an elected MIA domicile base representative (three times as the Miami Domicile Vice Chair (VC) and one time as the MIA Domicile Chair), at the national level as one of APA's Board of Directors (BOD), and finally as the elected President of the Allied Pilots Association 16000+ pilots where I had the privilege of representing the world's largest independent pilots' union at a unique time while we negotiated our most recent Contractual Bargaining Agreement (CBA).

5.      As President, and in keeping with my commitment to more aggressively represent our disabled pilots, I formed several ad hoc committees to advocate for them, as is my right as President to do. I also expanded our outreach programs to our over 800 disabled pilots who were then on disability. I also hired additional outside legal advisors specialized in this area to help us more forcefully and properly advocate for our disabled pilots. I also spoke directly to American Airline's CEO Robert Isom, Chief Strategist and founding member Steve Johnson, and Chief Legal Counsel, Lucretia Guia, specifically about this issue and Larry Meadows.

6.      In August 2023, as APA President, I obtained what was at that time the most lucrative pilots' collective barging agreement ever in the history of the airline-labor collective bargaining, adding an estimated additional $9.6 billion of contractual improvements over five years to our CBA to include amongst other things, industry leading pilot long-term disability (LTD) benefits.

7.      As an APA BOD member and National Officer, I routinely communicated union business via text message and signal (during contract negotiations) on my personal electronic devices, with other APA members, committeemen, officers, and attorneys. I also primarily used my APA email hosted on APA servers, to which I was denied access after I left office.

8.      Based on my extensive and longstanding union experience listed above, and for the reasons stated below, I am considered to be one of the foremost subject matter experts (SME) on the AA-APA's most recent collective bargaining agreement (CBA), the arguments and positions at the table which resulted in the gains we made and the items we were denied, American Airline's pilot union representation, APA's governance, and American's disabled pilots' LTD benefits and MDD pilots grievances, and associated statutes of the Railway Labor Act (RLA), Labor Management Reporting and Disclosure Act (LMRDA), Americans' with Disabilities Act (ADA), and the National Mediation Board (NMB), all of which I had to know and navigate as President of the labor association during this critical time.

9.      On or around 2014 while serving my first term as MIA domicile's VC, I first met the Plaintiff, First Officer (FO) Lawrence Meadows, who was a disabled MIA pilot on LTD and MDD. As FO Meadow's local union representative I was given responsibility for the LTD and MDD issue by then MIA CH CA Thomas Copeland. FO Meadows engaged in significant protected activity, as a whistleblower, and an outspoken advocate for his fellow LTD and MDD union brothers and sisters, who were openly critical of their representation by APA during 2007-2011 time period for reasons which I will explain.

10.     This was a particularly critical time for the MDD pilots due to the fact that AA had recently declared bankruptcy and was in the process of merging with US Air, leaving in doubt these pilots' positions on the new combined seniority list with the US Air Pilots and the America West Pilots,

3

if any position at all, should these pilots ever regain their medicals and be reinstated. It also left in question the status of the MDD pilots' many pending grievances such as DFW Domicile Grievance 20-012 (see attachments) over wrongful termination. Finally, it was also an increasingly unpopular topic to breach at the board table during the intensive merger negotiations as it increasingly appeared that APA had failed in achieving one of its most fundamental objectives and one which is sought by every labor union; the protection of it's members employment. It appeared that APA was complicit in allowing AA management to selectively choose which pilots it wanted to reinstate and which they did not (the company claiming that these pilots were "administratively removed"), while simultaneously allowing others to be reinstated. There was never any contractual provision for removal from employment for this reason nor was any proper notice given to these pilots. It also appeared to me that all of the pilots who were being refused reinstatement, at least all of them that I could identify, were those pilots that chose to fight AA in court instead of accepting AA management's decisions regarding their status and benefits without question. This disparate treatment appeared to be retaliation by the company and I was adamant that our union should be strongly advocating for each and every one of them.

11.     In 2016, while serving as the MIA VC, and in an effort to get our union more aligned with the objective of reinstating our MDD pilots, I proposed a Resolution (R2016-30; see attachments) which sought to more clearly define our official union policy towards these MDD pilots and expedite the grievances which had been filed seeking their reinstatement to the seniority list. Although the legislation eventually passed, I was personally surprised at the push-back from APA's legal department. The only reason this legislation passed, after more than a year of deliberation by the BOD and objection by APA In-House Legal, was that President Dan Carey

4

Case 1:17-cv-22589-EA    Document 255    Entered on FLSD Docket 04/22/2026    Page 65 of 79
USCA11 Case: 25-10297    Document: 48    Date Filed: 04/17/2026    Page: 34 of 48
Case 1:17-cv-22589-EA    Document 180    Entered on FLSD Docket 01/29/2026    Page 20 of 85

had recently won the election for President of APA and summarily replaced the long-standing General Counsel of the union, Ed James from James and Hoffman, with Mr. George Buckley. Mr. Buckley had a fresh perspective and was willing to put the union on the right side of the issue. Also, at or about this time, long-serving Chief In-House Legal Counsel, Mr. Bennett Boggess, was replaced. Mr. Boggess had been the catalyst in allowing the company to pick and choose which pilots they chose to reinstate instead of advocating equally for all of them. Once he was gone progress towards getting APA to advocate for it's disabled members could begin

12.    In performing my due-diligence in preparing Resolution R2016-30 for debate, I talked via telephone with American Airline's Director of Flight Administration, Mr. Scott Hanson, on whether I could expect his support on reinstating the MDD pilots to the seniority list, and he replied "Absolutely not". When I inquired as to why he replied, "Because I have a business to run". It was then I realized that I was going to fight a mostly uphill battle in the next several years to make any progress at all on this issue.

13.    Also in researching this issue, I interviewed prior APA President Lloyd Hill, another MIA domicile member who served as national President from approximately 2008 until 2010. He and I discussed, amongst other issues, the hiring of an ERISA counsel in the 2008 to help APA fight this battle but then the union soon dismissed the counsel. When asked directly why this issue was abandoned Lloyd remarked that the union was in an increasingly precarious financial situation in the late 2000's and difficult decisions had to made concerning APA's expenses. For this reason he chose to concentrate APA's resources on those pilots still on the seniority list. Lloyd Hill, not coincidentally, was also the President who chose to reinstate Bennett Boggess as Chief In-House Legal counsel after he was fired in the mid-2000's.

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 66 of 79

USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 35 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 21 of 85

14.     On May 14 2012, and before I took my seat on the APA BOD, APA filed a collective LTD MDD Pilot seniority reinstatement grievance, DFW Domicile Grievance 12-012; "protesting the Company's violation of Sections 11.D, Supplement F(1), and all other related sections of the Agreement as well as past practice, for failing to reinstate pilots to the Pilots' Seniority System List and for failing to provide pilots notice of termination prior to terminating employment status of pilots who have been in inactive status, unpaid sick, or disability for more than five years." (Grievance 12-012 is attached as an exhibit). This grievance was fortunately preserved through the bankruptcy proceedings and still on the books when I started as a BOD member in 2014 (See attachment preserving the grievance through the bankruptcy). Unfortunately, American Airlines did not want to hear the grievance and therefore, with APA's complicity, continually pushed back on the hearing of the grievance for almost a decade. The union allowed the continual dismissal of the hearing and arbitration of this grievance until I became President and put additional resources and emphasis into the closure on this issue, rolling it into an expedited Presidential Grievance (G2023-31). A copy of Grievance 12-012 and it Sicher Presidential Expedited version 23-031 1 is attached hereto as **Exhibits A and B.**

15.     Of noticeable importance during the 2014-2016 timeframe when I was starting my elective service to APA, was that the three pilot groups merging into the new American Airlines (Legacy American Airlines pilots, US Air pilots, and America West pilots), were all being treated in disparate manners in the forming of the new combined seniority list integration (SLI). Legacy AA Pilots were sometimes being denied reinstatement after 5-years off of the seniority list for an LTD condition, US Air Pilots were allowed to retain their position on the merged seniority list despite not possessing a current FAA medical until mandatory retirement age of 65, and America West pilots were removed without any provision to regain their seniority after 8-years LTD.

16. APA had chosen to lockout the MDD pilots from the social media and chat platforms of the union at the time so getting the membership and other board members to hear all sides of the story was increasingly difficult. As the Miami VC with responsibility for the LTD/MDD issue in MIA, I was Kathy Emery's representative in her objections to the unions lock-out of her ability to access the social media platforms. With the new General Counsel in place we soon reached agreement on a settlement for Emery's lock out. Unfortunately, the agreement, although getting Kathy an undisclosed settlement, did not include the other LTD pilots who were likewise locked out. I did not consider this a victory. A copy of AUD Newsletter and *Emery* v. APA Court Order and is attached hereto as **Exhibits C and D.**

17. Also, of interest during the timeframe that I worked to get APA to change it's position on the MDD pilots and was attempting to achieve passage of R2016-30, work was done behind the scenes by APA Attorney Mark Meyers, Director of Negotiations, and unknown to those on the Board of Directors such as myself. Myers solicited the legal opinion of an outside law firm, Babbs-Denison. This law firm issued a legal opinion letter justifying APA's abandonment of its MDD pilots (Babbs-Dennison legal opinion letter attached). However, this opinion was based on the information that had been provided to them by Myers, and it was later discovered during my representation of another MDD pilot, Wallace Preitz, that Babbs-Dennison was never provided with the key piece of information being that APA had previously filed multiple grievances on behalf of these pilots seeking their reinstatement and protesting their wrongful termination, thus giving these pilots "rays of hope" that the union would advocate for them. I believe that there is various case-law deliberating on this very issue and stating that by establishing these "rays of hope", the union had, "by default", established a Duty of Fair Representation (DFR), although I am no longer in possession of my electronic notes kept on APA

7

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 68 of 79

USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 37 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 23 of 85

servers regarding this issue, I believe this letter, as flawed as it was, was used to justify the APA's

Legal Department abandonment of the representation of these MDD pilots. Furthermore, the

Babbs-Dennison legal opinion letter stated that although APA did not owe these pilots a duty of

fair representation (DFR), a duty would be in order if action or representation was taken on behalf

of any one of them, hence the importance of reporting the grievances that APA had filed when

soliciting Babbs-Dennison for an opinion. A copy of Babb-Dennison legal opinion is attached

hereto as **Exhibit E.**

18.     Immediately after receiving the Babbs-Dennison letter, APA legal switched from

obstructing my Resolution R2016-30, to reluctantly allowing its passage. On December 13,

2026, the APA Board of Directors ("BOD") voted in 19-3 to approve R2016-30 which stated in

part;

> "the three separate contracts prior to the merger of US Air East, America West, and
> American Airlines **treated disability retirements differently**...the American Airlines
> contract, which has been subjectively reinterpreted by the Company to allow the removal
> of a pilot from the seniority list after five (5) years of continuous disability...**the merging
> of the seniority lists is creating a disparate treatment amongst the individual pilot
> groups**...the most beneficial treatment of all of our disabled pilots is to allow them
> reinstatement from long-term disability in as expeditious and fair a manner as
> possible... there has been some evidence indicating that the company has unfairly
> withheld reinstatement to long-term disabled pilots who have regained their Class A
> medicals from being reinstated if they were considered problematic employees..."...
> [Emphasis Added].

And further created a BOD directive to the APA negotiating committee, which stated;

> ***BE IT RESOLVED, that the Negotiating Committee expeditiously engage the company
> in negotiations which seek to: 3. Negotiate contractual language that provides for
> the immediate reinstatement and return to the Pilot System Seniority List of all pilots
> who are currently out sick or on disability and who have been removed from the seniority
> list...*** [Emphasis Added].

A copy of APA BOD Resolution 2016-30 is attached hereto as **Exhibit F.**

8

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 69 of 79

USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 38 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 24 of 85

19.    During the January 2020 investigation of the MDD issue (and before I was President of the union but serving as the MIA domicile CH and BOD Member), the committee I chaired interviewed two APA attorneys, Director of Negotiations Mark Myers, and APA Director of Representation, James Clark, who both made material misstatements of the facts with respect to the existence of the legal department's secret December 12, 2016, Babb-Denison legal opinion letter obtained without knowledge or authorization from APA's Board of Directors, which appeared to be used as justification of APA legal's prior abandonment of the duty of representation of the over 240 MDD pilots; to include, improperly excluding them from their full share payout of the $1.1B Equity Distribution, estimated to be approximately $100,000.00 per MDD pilot, or $24M collectively. I informed then President Ferguson of these attorney's ethical violations and recommended they be terminated due to ethics violations of the APA Constitution and Bylaws (C&B"), but he declined, stating he "must safeguard the best interests of APA", and instead abruptly disbanded the committee before it could issue its findings. I therefore re-started the committee up as an ad-hoc committee immediately upon my winning of the Presidential election, this time under a different name. See Deposition transcript of Edward Sicher in; *Preitz v. APA* (Case No. 2:17-cv-01166-MSG, Doc 107-4, Jan 6, 2021) stating both Mr. Myers and Clark both lied about Babb-Denison letter).

20.    In or around April 2022, while serving as the Miami Domicile representative, I appointed FO Meadows to the APA National Aeromedical Committee, Disabled Pilots Awareness Sub-Committee (DPASC), to serve as the MIA Domicile Pilot LTD Coordinator to assist other disabled pilots. The APA legal department pushed back on this appointment, arguing that FO Meadows was not a "member in good standing" and was therefore ineligible to serve on a national committee. This disagreement boiled out in my issuance of a Presidential

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 70 of 79

USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 39 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 25 of 85

Interpretation on Sep 2, 2022, defining "members in good standing" (The APA President is the only union official allowed to interpret the Constitution and By-Laws at APA).

21.     The formal Constitutional Interpretation (see attachment) confirmed that inactive members, including MDD pilots, like FO Meadows, who had fulfilled all prior membership requirements, were "members in good standing." And could certainly serve on APA committees and in official APA capacities. A copy of that Presidential interpretation is attached hereto as **Exhibit G.**

22.     As a direct result of my Constitutional Interpretation FO Meadows, as a member in good standing, was able to serve as the MIA Domicile LTD Coordinator, where he sponsored and helped scores of disabled pilots.

23.     As APA President, I also took steps to address FO Meadows' long-pending individual and collective seniority reinstatement grievances. On March 13, 2023, at FO Meadows request, I converted the collective Grievance 12-012 into expedited Presidential Grievance 23-031. A copy of G-23-031 is previously attached as **Exhibit B.**

24.     I also created the National Dropped Reinstatement ad hoc Committee ("NDRC"), and around April 2023, I appointed First Officer ("FO") Thomas Rempfer as Chairman, to ensure that APA leaves "no pilot behind". The NDRC was tasked with finding avenues of reinstatement for those who have been dropped from the seniority list, by virtue of disability, merger, or other reason, not including retirement or discipline. This was intended to help obtain reinstatement of FO Meadows and other similarly situated MDD pilots. A copy of the NDRC power point presentation that FO Rempfer created in collaboration with MDD pilots FOs Meadows and Preitz is attached hereto as **Exhibit H.**

10

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 71 of 79

USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 40 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 26 of 85

25.    During the AOA Spring BOD Meeting, FO Rempfer presented the NDRC PowerPoint to the BOD, and APA Attorney Tricia Kennedy and Former APA BOD CA Thomas Westbrook attempted to orchestrate a recall of MDD advocate FO Rempfer. A copy of FO Rempfer's Memo For Record is attached hereto as **Exhibit I.**

26.    In early 2024, and due to the fact that it increasingly appeared that AA was unwilling to reinstate Larry Meadows without a legal fight, I hired attorney Sue Edwards, Esq., to personally represent FO Meadows in his individually filed ADA lawsuit against American Airlines. The objective was to put a set of professional eyes on Meadow's filings as he had up to then primarily been representing himself pro-se. Sue Edwards was trusted by the MDD pilots and had recently achieved a win for APA in a prior lawsuit against the FAA for the wrongful termination of one of our pilots for being improperly notified of a drug test. I felt that to truly succeed in court he would need professional guidance. Victory in court would hopefully persuade AA to drop its obstruction to reinstating our MDD pilots and result in the mutually beneficial outcome to both our pilots and the company. As President and the primary fiduciary of the APA, the reason I gave to the Board of Directors and legal counsel for this expenditure was that I had reached an agreement with Meadows that he would drop the lawsuits against APA if the union put the bulk of its collective resources behind what was increasingly becoming an individual fight. Meadows had originally agreed to this "quid pro quo", but when it became clear to him that he would have to drop his claims against APA before he would receive surety that his claims for reinstatement as a pilot against AA would succeed he reneged and declined to drop his claims against APA. When this occurred I directed Ms. Edwards to terminate her representation of Meadows.

11

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 72 of 79

USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 41 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 27 of 85

27.     Furthermore, on or about June 13, 2024, I directed the APA Director Of Grievances, Tricia Kennedy, to move FO Meadows' individual Grievance 12-011 forward and schedule it for an arbitration hearing. To my knowledge, that grievance was still open, active, and in the queue for a an arbitration hearing at least until I left office on October of 2024. Text messages between myself and Tom Remper attached hereto as **Exhibit J.**

28.     On or around late September 2024, I was presented with a proposed settlement agreement with American Airlines concerning Grievances 12-012 and 23-031. That proposal would have reinstated several other MDD pilots, some out on disability for much as 24-years, but explicitly excluded FO Meadows, despite the fact he was holding an FAA Airman's First Class Medical Certificate and working as current and qualified B-777 Captain and Instructor pilot in Boeings Miami Flight Training Center. I refused to sign because it was a "go-no-go decision point" to leave any pilot behind. I truly felt that to have continued the fight to this point and finally settle by letting the company decide who to reinstate and who to refuse would have left this issue unresolved, thus resulting in returning right back to where we started.

29.     In late 2024 and after an internal battle with my Board of Directors over the possible merger of our union with the Air Line Pilots Association (ALPA), a merger which I was adamantly against, I was removed from office by the Board of Directors. The Board of Directors was able to install another President they were allowed to choose due to the short remaining time left on my tenure. The replacement they chose, FO Nick Silva, had never served in a membership elected position and had very little experience, particularly dealing with APA grievances or its legal department. He had only served as a costing analyst on the negotiating committee. He summoned me down to APA to discuss the handoff from one President to the next. Despite the fact that there were hundreds of issues in play at the time, such as staff issues,

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 73 of 79

USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 42 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 28 of 85

IT upgrades. problems with AA's Safety program and the FAA oversight of the airline. etc. etc. all Nick wanted to discuss was the issue of Larry Meadows. This was a huge surprise to me and indicative of how much pressure he was under by the APA legal department to fold on APA's advocacy for Meadows and the grievances I had filed as President. The question he dwelled on for most of the 45' he had scheduled for me was "Why wouldn't you approve the proposed MDD settlement by removing Larry Meadows?"

30.     I have since learned that on January 15, 2025, the new APA President FO Silva executed a settlement that finalized the exclusion of FO Meadows and falsely claimed that his individual Grievance 12-011, the very same grievance I had ordered to arbitration months earlier, was now being declared "closed since 2013." A copy of this January 15. 2025 Grievance 12-012/23-031 Settlement are attached hereto as Exhibit K.

31.     I have also been informed by FO Meadows that on or around May 1, 2025. the current APA President Nick Silva. terminated Meadows 34-years of APA membership via a letter, in response his request to speak during membership guest hour at the 2025 Spring Board of Directors Meeting. A copy of this correspondence is attached hereto as Exhibit L.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of January, 2026.

Captain Edward F. Sicher
MIA/777/International

13

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 74 of 79
USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 43 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 74 of 85

## EXHIBIT J

Case 1:17-cv-22589-EA   Document 255   Entered on FLSD Docket 04/22/2026   Page 75 of 79

USCA11 Case: 25-10297   Document: 48   Date Filed: 04/17/2026   Page: 44 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 75 of 85

Messages - Tom Rempfer (+15208696590)                    +13053339534, annamaria717@yahoo.com, annamaria717@icloud.com

10/9/2025 5:13:40 AM

Tom Rempfer (+15208696590)
Missed your call, Landing sim early, talk after

10/10/2025 2:13:22 PM

Tom Rempfer (+15208696590)
June 14, 2024, assume the below text was from Ed to Larry, relayed to me via text from Larry:

No. I have had it with you. I have done no to king but expend time, money and resources despite the fact I have been left twisting in the wind. I have been warned by APA legal that you would do just what you are doing right now. Should have e listened to them a long time ago. They were right all along. It is about the $$.
I've held up multimillion dollar grievances for you. I've held up the probable reinstatement of other pilots for you. I've cut across the wishes of my own board to advocate and find outside counsel to advocate for you. And at the end of the day you will give nothing to help me make your case. It's over Larry. You're on your own. I'll drop your grievance. You can make the case that APA isn't advocating for you now. Treat the union as your enemy.
I've given official word to Sue and Jim to expend no more resources on you. You are on your own now Larry. APA will slot your grievance and that's all. Good luck

 Next was from me to Larry:

Only update is a fourteen or fifteen october grievance scheduling request for 12-12- 12-11 still in the cue with over 50 other unresolved grievances.

Next was from Larry to me:

In agreed to Additional 14-day on the condition we discuss...

"tAPA taking two actions on my behalf;

1) an immediate vigorous good faith effort for the APA President to meet with AA CEO within the next 14-days, to negotiate and obtain my reinstatement as an active line pilot at my relative seniority at B777 CA pay, and

2), also simultaneously immediately moving my individual Grievance 12-011 to a System Board on Presidential Expedited Basis in accordance were CBA Sec 23, to be heard in the next available

Messages - Tom Rempfer (+15208696590)          +13053339534, annamaria717@yahoo.com, annamaria717@icloud.com

arbitration slot with a pilot friendly arbitrator, using unconflicted outside counsel of my choice, with a System Board panel members picked by me or subject to my approval. The second step will put pressure on AA,"

→ Sicher text to me was apparently on the same day he texted Larry on June 14, 2024

→ We will slot his grievance 12-11 for hearing. That is all.

Conclusion, my testimony is actually irrelevant. You evidently received the same text info and commitment directly from Ed via text re 12-011 that you shared with me above. And evidently had the same commitment or expectation from your 14-day extension conference call. Plus I also gave you the same impression related to the October grievance scheduling, which indicated your grievance was in the cue, probably verifiable based on union records from that committee. Perhaps check with Tracy Parrella?

Bottom line, second hand info from your committee chairman is likely irrelevant compared to direct communications from your union President and the grievance resolution docket records. If you're grievance was closed how could it be in the queue?

Suggest you cnx my deposition and save that money since I've coordinated with legal as you suggested and they've relayed extensive restrictions on what I can testify about.

Flying tmrw morning.

10/10/2025 5:53:00 PM

Tom Rempfer (+15208696590)
Themselves



Align top o

ORIGIN ID:MPBA (516)
LAWRENCE MEADOWS

1900 SUNSET HARBOUR DR

MIAMI BEACH, FL 33139
UNITED STATES US

TO 11TH CIR. U.S.
ATTN: CLERK—
56 FORSYTH S

ATLANTA GA 3
(404) 335-6100

TRK# 8707 4178 7
0201

XG QFI

PRIORITY OVERNIGHT
529-2572

