**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FILED BY_____D.C.

APR 29 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**LAWRENCE MEADOWS,**
    Plaintiff,

    v.

**ALLIED PILOTS ASSOCIATION, et al.,**
    Defendants.

**CASE NO. 17-cv-22589-EA**
**HONORABLE JUDGE ED ARTAU**

_____/

## PLAINTIFF'S EIGHTH OBJECTION PURSUANT TO FED. R. CIV. P. 72(a) TO MAGISTRATE JUDGE'S OMNIBUS ORDER (ECF NO. 252)

Plaintiff Lawrence Meadows, proceeding *pro se*, respectfully files this Objection pursuant to Federal Rule of Civil Procedure 72(a) and S.D. Fla. Magistrate Judge Rule 4(a), requesting that District Judge Artau set aside the Magistrate Judge's Omnibus Order (ECF No. 252) (the "Order"), denying motions related Defendant Allied Pilots Association' ("APA") fitness of counsel and integrity of the record, and depriving Plaintiff due process of an evidentiary hearing.

### PRELIMINARY STATEMENT

The Magistrate Judge's Order (ECF No. 252) sweeps five critical, case-dispositive motions under the rug without holding a required evidentiary hearing. (ECF Nos. 109/110, 142, 148, 155, 183). In denying Plaintiff's motions to disqualify Defendant's counsel for criminal witness tampering and severe conflicts of interest, and in refusing to sanction counsel for making six material misrepresentations to the Court, the Magistrate committed clear errors of fact and ruled contrary to law. Most egregiously, the Magistrate issued this Order without reviewing the key evidence, or granting an evidentiary hearing. During a January 23, 2026 discovery hearing held via Zoom - after the discovery issues were addressed - the Magistrate without prior notice

1

suddenly indicated she was ready to hear and rule on the Motion to Disqualify for Witness Tampering (ECF Nos. 109/110). The Plaintiff strenuously objected and demanded full due process of an evidentiary hearing regarding the witness tampering and referenced the audio recordings; to the Magistrate shockingly responded asked, *"what audio recordings?"* - revealing she was prepared to rule without having reviewed the physical evidence.

By rubber-stamping Defendant's sanitized narrative, the Magistrate has actively shielded Defendant APA' s severe ethical misconduct and evidence of their post-2021 continuing violations of Counts III-VIII in Plaintiff's First Amended Complaint ("FAC") (ECF No. 35). The Court must intervene, set aside the Order, and hold an evidentiary hearing to restore the judicial integrity of these proceedings.

## LEGAL STANDARD

With respect to non-dispositive matters, the Court "may reconsider any pretrial matter ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed R. Civ. P. 72(a). A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997). An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Tolz v. Geico Gen. Ins. Co.*, No. 08-80663-CIV, 2010 U.S. Dist. LEXIS 6709, at *2 (S.D. Fla. Jan. 27, 2010).

The Court reviews the Magistrate Judge's application of the law de novo, because "application of an improper legal standard . . . is never within a court's discretion." *United States v. Doe No. 2*, 2009 U.S. Dist. LEXIS 143390, at *3 (S.D. Fla. Od. 23, 2009) (quoting *Johnson & Johnson Vision Care, Inc., v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002)); *United*

*States v. Grobman*, 460 F. Supp. 3d 1331, 1336 (S.D. Fla. 2020) (same). The Magistrate's Order is both clearly erroneous and contrary to law.

### FACTUAL AND PROCEDURAL BACKGROUND

This case is not a simple dispute; it is the culmination of a decade-long struggle against a union that has repeatedly breached its duties, engaged in dilatory tactics, and actively concealed evidence to defeat the rights of a long-serving member. This history is essential to understanding the gravity of the Magistrate's errors.

The case centers on APA's bad faith abandonment of the "MDD"[1] pilots- pilots on long-term disability who were improperly removed from the American Airlines seniority list and its determination to single out the Plaintiff for particular punishment in retribution for his advocacy of these disabled pilots. For over 13 years, APA allowed Grievance 12-011 (Plaintiff's individual grievance) and Grievance 12-012 (the collective grievance) to languish, a pattern of weaponized "prolonged delay" that prompted this Court's presiding District Judge Moore to issue scathing

---

[1]     Meadows' union, the APA, classifies him as MDD (Medical Disability Dropped from AA seniority list), which is the membership code for adversely affected disabled pilots administratively dropped from the seniority list for exceeding five years on disability; albeit in violation of the CBA as protested by APA in multiple grievances, including G12-012 and 23-031. Notably, both those grievances extinguished in the secret January 15, 2025 secret Settlement Agreement, which explcitly named but excluded Plaintiff from reinstament based on a false pretexts. (See. Not. Supp Authority, ECF No. 255). Discovery in *Preitz v. Allied Pilots*, Case No. 2:17-cv-01166-MSG (E.D. Pa. Mar 16, 2017) showed that out of the original 241 MDD pilots circa 2017, 55 of those who subsequently obtained their FAA Airman's First Class Medical Certificates, had applied for reinstatement to their original pilot position and relative seniority number through American's and APA published Return-To-Work ("RTW") procedure. Of those 55, only three such pilots were denied reinstatement, FO Lawrence Meadows, FO Kathy Emery, and FO Susan Twitchett, all of whom had sued APA for breaching their duty of fair representation. Two of those, Emery and Twitchell, took monetary settlement in exchange for waiving their right to reemployment as a pilot with American. Unlike Emery and Twitchell, Meadows never waived his right to reemployment, leaving him as the only MDD pitot denied reinstatement.

3

rebukes of APA's dilatory tactics and denting their motion to dismiss as untimely. (ECF Nos. 70, 91).

When discovery finally commenced, the Magistrate permitted APA's counsel to make unchecked, material misrepresentations of fact during the October 28, 2025, hearing (Hrg. Trans., ECF No. 125; ECF 148, at 4-8, ¶¶ A. 1-6). Based on those falsehoods, the Magistrate issued a draconian Protective Order (ECF No. 138) that arbitrarily limited discovery to December 31, 2021, and quashed eight key fact witness subpoenas for deposition testimony and document production.

This artificial cutoff was designed to shield APA's post-2021 misconduct, which was explicitly detailed Plaintiff's opposition to APA's MSJ as the "Three Tips of the Iceberg" (ECF No. 249 at 5-7, ¶ D.), which proves the continuing nature of APA's violations[2] as described in the

---

[2]   APA's representational failures related to Plaintiff and other MDD pilots, include but are not limited to; 1) mutually selecting and hiring a known to be procedural flawed and fraudulent non-clinical disability claims reviewer in violation of the CBA, 2) which facilitated American Airlines Corporate Medical Department's "Pilot Disability Nurse Case Management Cost Savings Reports" used to target the costly disabled pilots for benefits termination on cost savings, 3) failed to defend against these mass disability benefit terminations despite publicly promising to do so, 4) former APA's President Llyod Hills admission that the institution secretly abandonment these disabled pilot's statutory representation due to the high cost of litigating their ERISA claims and the fact that they weren't paying dues while on disability, 5) mis-handled Plaintiffs individual and collective MDD pilot seniority reinstatement grievances protesting the no-notice administrative terminative and removal from the seniority list and failure to reinstate these MDD pilots in violation of the CBA and past practice, 6) APA Director of Negotiations failed to follow union policy, APA Board resolutions and associated tasking orders seeking MDD pilot seniority reinstament, 7) APA GC and Mark Myers argued against him and 240 other MDD pilots in APA's Equity Distribution arbitration, claiming they were no longer members of the bargaining and not and not owed a duty of representation, to improperly deprive them of $24M in collective equity, 8) locked out Plaintiff and all 240 MDD pilots from the virtual and physical union hall after plaintiff threatened to file mass EEOC charges for discriminating against the MDD group, 9) sought false Babb-Denison legal opinion letters to justify their otherwise unlawful abandonment of statutory duty representation otherwise owed MDD pilots, 10) When confronted and asked about MDD legal opinions during the Jan 2020 REDDI (Reinstament of Disability Dropped Investigative) Committee, Chaired by CA Sicher, investigated both APA Director of Negotiations, Mark Myers and APA Legal Director lied to the committee about its existence and purpose, 11) APA President Sicher's hiring outside counsel Sue Edward in May 2024 to personally represent Meadows personally in his individual ADA lawsuit, only to abruptly yanking her off the case the

existing counts III - VIII in Plaintiff's FAC (ECF No. 35). That conduct culminated in a January 15, 2025 secret settlement agreement that singled out the Plaintiff for the elimination of his grievance rights "with prejudice," without notice, and for zero value. In May 2025, in further violation of the statutory rights as alleged in the FAC, APA summarily terminated his 34-yrears of union membership, when he tried to expose that secret settlement to the membership at APA's Spring 2025 Board of Directors meeting.

That secret settlement is now the subject of a fraud-on-the-court investigation in the U.S. Court of Appeals for the Eleventh Circuit, as detailed in Plaintiff's Opposition to APA's MSJ and Notice of Supplemental Authority (ECF No. 249 at 5-7, ¶ D); ECF No. 255, Exs. A and B), which is interlocked with these proceedings and its pending motions (ECF Nos. 205 and 237).

## ARGUMENT

### I. The Magistrate Committed Clear Error by Ignoring Objective Evidence of Criminal Witness Tampering (ECF Nos. 109/110).

The Magistrate's denial of the Motion to Disqualify Bredhoff & Kaiser ("B&K") for witness tampering of First Officer Tom Rempfer is clearly erroneous because it ignores

---

following month on the eve dispositive responsive deadline - after he refused to drop this instant lawsuit, 12) the prior action was done by the APA President via hostile text messages, sating, "its over Larry.. .you're on your own... APA isn't advocating for you now...treat the union as your enemy.", 13) The subsequent purging and immediate recall of President Sicher shortly after he refused to sign a grievance settlement the excluded only Plaintiff from seniority reinstament, whilst reinstating three other similarly situated MDD pilots, 14) the immediate disbanding of the APA MDD reinstatement committee and termination of Meadows key advocate FO Tom Rempfer, 14) the signing of the January 2025 Grievance 12-012/23-031 secret settlement agreement that named Meadows, but explicitly and disparatelty excluded him from seniority reinstatement, and extinguished all his grievance claims for zero value without notice, or statutory right to arbitrate at his own expense, and 15) the new APA President Nick Silva's retaliatory May 1, 2025 letter, terminating Meadows 34-years of union membership as a member in good standing serving on the APA National Aeromedical Committee, just two days after moving to reopen, this suit, and requesting to speak at the May APA Board of Director meeting to expose the secret settlement on the midst of an APA national officer election where Silva was seeking reelection as APA President.

5

objective, irrefutable audio recordings and verbatim transcripts. As attested in Plaintiff's sworn Rule 56(d) Declaration (ECF No. 251 at ¶ 3(a)), APA's lead counsel, Joshua Shiffrin, engaged in a multi-day campaign to improperly contact and intimidate a key fact witness in violation of 18 U.S.C. § 1512(b). The Magistrate ignored the following irrefutable sequence of events:

- On October 6, 2025, APA counsel, Josh Shiffrin, contacted key fact witness and disabled pilot advocate, First Officer ("FO") Tom Rempfer, and informed him of their intent to "quash…and looking [to] put off your deposition indefinitely." (Rybak Decl, Zoom Trans., ECF 113-1 at 5:9-10).

- Thereafter, FO Rempfer informed Plaintiff that Mr. Shiffrin had warned him that complying with the subpoena and warned him "…you can't say anything about anything…", could subject him to union discipline under Article VII of APA's Constitution and Bylaws (which includes expulsion). (Meadows Decl., ECF 110, Ex. A at 4-11:52)

- When Plaintiff then asked FO Rempfer if he feared retaliation, he stated without hesitation, "Absolutely… I'm not just scared…they're already tried to retaliate against me…over and over again, right?" (*Id.*)

- On October 16, 2025, FO Rempfer expressed his extreme fear of retaliation, stating, "I'm a prime example of witness tampering because I'm very nervous." (Rempfer USB Recording, ECF No. 186, Oct. 16, 2025, at 7:20).

- The Magistrate committed clear error by adopting Mr. Shiffrin's sanitized "contemporaneous notes", and post-hoc justification for the call while entirely ignoring the actual, recorded chilling effect his threats had on an unpaid, union volunteer material

6

witness, as directly evidenced by FO Rempfer's recordings and texts. (*Id.*; Meadows Decl., ECF No. 110 at 16-18, Ex. B).

## II. The Magistrate Ruled Contrary to Law Regarding the Sue Edwards Conflict (ECF No. 142).

The Magistrate denied Plaintiff's Motion to Disqualify B&K based on its representation of Sue Edwards, reasoning that disqualification is "not warranted because the law firm...never represented the plaintiff. As such, the law firm did not 'switch sides'." (ECF No. 252 at 11). This ruling attacks a strawman and is fundamentally contrary to law. The disqualification motion was based on Ms. Edwards' former attorney-client relationship with Plaintiff, as confirmed by APA President Ms. Sicher, and the unrestricted access obtained to my confidential communications with her obtained by the Defendant once B&K adopted her as a client as well.

As attested in Plaintiff's sworn Declaration (ECF No. 251 at ¶ 3(b)):

"after I refused to drop this lawsuit, APA stripped away my union-provided attorney, Sue Edwards after we had already engaged in extensive attorney-client communications. Then, when I sought to depose Ms. Edwards about her knowledge of APA's bad faith grievance handling and her role in the collusive 2025 settlement, APA's counsel took the extraordinary step of representing her for the sole purpose of quashing her subpoena and suppressing her testimony. APA's own former president, Ed Sicher, has confirmed in sworn testimony that he hired Ms. Edwards specifically to represent me individually with respect to certain statutory claims and paid her a retainer for that purpose. (Sicher Decl., ECF No. 180, Ex. 3 at 26 ¶ 26; Sicher Supplemental Decl., ECF 187, Ex. 1 at 10, ¶ 5). ... APA's Counsel in this matter cannot simultaneously represent APA against me, while also representing my former attorney to prevent her from testifying against APA. This is a textbook, unwaivable conflict designed to conceal evidence, and it requires firm-wide disqualification."

The conflict is *not* that B&K previously represented Plaintiff. The conflict is that B&K - Plaintiff's hostile adversary - took on the representation of Plaintiff's *former fiduciary and attorney*, Sue Edwards. B&K thereby gained access to Plaintiff's privileged work product, mental

7

impressions, and litigation strategy. (Meadows Decl. ¶ 4; ECF No. 142, ¶¶ 5-8). Their self-serving assertion that they have not reviewed the inadvertently produced documents is irrelevant.

The conflict arises from their representation of Ms. Edwards, who possesses this knowledge in her mind. Furthermore, the fact that Ms. Edwards was being copied on communications between Plaintiff and APA's Legal Director, Mr. James Clark, in February 2025, *after* the secret settlement was signed, strongly suggests she was assisting APA against Plaintiff's interests in this very action (Meadows Decl. ¶ 7, Ex. B), deepening the conflict. Disqualification is the only remedy. *See, e.g., State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991) (disqualification is required where there is a "possibility" that counsel could use confidential information to the detriment of the former client); FDIC v. Gonzalez-Gorrondona, Case No. 91-2791-CIV-MARCUS, 1994 U.S. Dist. LEXIS 21096, at *18-19 (S.D. Fla. Mar. 21, 1994) (same).

> Also under Florida law:
>
> a lawyer should not be allowed to represent two clients in related cases -- when one client can lawfully inform the lawyer of privileged attorney-client communications involving the opposing party in the second client's case. Indeed, it has been held that a lawyer may be disqualified from representing a client when otherwise privileged material belonging to the opposing party has been inadvertently disclosed to the lawyer. General Accident Ins. Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505 (Fla. 4th DCA 1986) (insurer's claim file containing privileged material inadvertently sent by trial judge to opposing party's lawyer; lawyer disqualified).

*Adelman v. Adelman*, 561 So. 2d 671, 672 (Fla. 3d DCA 1990).

Here, B&K was representing both APA and Sue Edwards (Plaintiff' former counsel who possessed his work product, mental impressions and litigation strategy) in this instant action opposing Plaintiff. Attorneys, such as B&K are subject to disqualification where they have potentially gained an "unfair informational advantage through related representation." *Pagidapati v. Vyas*, 353 So. 3d 1204, 1212 (Fla. 2d DCA2d 2022); see also *State Farm* 575 So. 2d at 633 ("The unfairness of the situation results from the fact that [the plaintiffs] have a potential informational advantage over those who must

defend . . . which was gained as a result of . . . former representation of [the defendant] in this action."); *Frye v. Ironstone Bank*, 69 So. 3d 1046, 1050 (Fla. 2d DCA 2011) (directing disqualification due to "unfair informational advantage" acquired via prior representation). The existence of an attorney-client relationship between Ms. Edwards and Plaintiff gives rise to a "irrefutable presumption" that her subsequent tactical collaboration with APA's legal counsel, B&K, resulted in the improper disclosure of confidences requiring Bredhoff's disqualification. *University of Miami v. Dansky*, 622 So. 2d 613, 614 (Fla. 1st DCA 1993) (citing *Junger Util. & Paving Co., Inc. v. Myers*, 578 So. 2d 1117, 1119 (Fla. 1st DCA 1989)).

Ms. Edwards' knowledge of Plaintiff's legal arguments and strategy, acquired through her attorney-client relationship with him, has provided the Defendant with an "unfair informational advantage" not permitted under Florida law. There is no manner for the Court to police the transfer of this knowledge, or control the damage arising from this unfair informational advantage, other than by disqualifying B&K.

As attested in Plaintiff's sworn Declaration (ECF No. 251 at ¶ 3(b)), after APA stripped away Ms. Edwards as Plaintiff's union-provided attorney - to represent him individually in his ADA lawsuit against American Airlines ("American") - she negotiated the secret 2025 settlement agreement between APA and American that singled out Plaintiff as the only MDD pilot to whose grievance rights were to be withdrawn "with prejudice" while other similarly situated MDD pilots obtained a path to reinstatement. When Plaintiff sought to depose her, B&K stepped in to represent her for the sole purpose of quashing her subpoena and suppressing her testimony and document production. Any communications she had with American's opposing counsel negotiating the secret settlement – particularly those related to Plaintiff - were not subject to privilege, and went to the

9

heart of the FAC Counts III – VIII. The deprivation of Ms. Edwards testimony and document production was severely periductal to Plaintiff's case.

Based on the forgoing. the Magistrates Order denying Plaintiff's Motion to Disqualify B&K for an impermissible firm-wide conflict of interest (ECF No. 142) is contrary to law and clearly erroneous.

### III. The Magistrate Committed Clear Error by Refusing to Sanction Counsel for Six Material Misrepresentations (ECF No. 148).

The Magistrate denied Plaintiff's Motion for Sanctions against John M. Pellettieri, despite Plaintiff providing irrefutable proof that Mr. Pellettieri made six material misstatements of fact during the October 28, 2025, hearing (Hrg. Trans., ECF No. 125; ECF 148, at 4-8, ¶¶ A. 1-6). Crucially, Mr. Pellettieri has *never* submitted a sworn declaration rebutting any of these allegations. Mr. Pellettieri used these unsworn falsehoods to successfully procure the draconian Protective Order (ECF No. 138), which arbitrarily limited temporal scope to December 31, 2021, and quashed the testimony and document production (personal texts and emails related to Plaintiff) of eight key witnesses.

Indeed, former APA President Sicher, attested he routinely conduct business on personal texts, encrypted Signal messages, and emails -which he routinely deleted because was never given a litigation hold letter – which included his communication with Ms. Edwards regarding Plaintiff and her representation of him in his individual claims against American. (Sicher Decl., ECF No. 180, Ex. 3 at 26, ¶ 26; Sicher Supplemental Decl., ECF 187, Ex. 1 at 10, ¶5). Thereby shielding APA's egregious continuing post-2021 misconduct and continuing violations.

By refusing to sanction this conduct, the Magistrate has actively immunized a fraud on the court, as asserted in Plaintiff's pending Emergency Motion to Vacate the Protective Order for Fraud On the Court (ECF No. 205), which is supported by the sworn declarations of former APA

President Captain Ed Sicher. (*Id.,* Exs. 1 and 2). Thus, the Magistrates Order denying Plaintiff's Motion to Correct the Record and for Sanctions (ECF No. 148) is clearly erroneous.

**IV. The Magistrate Committed Clear Error by Refusing to Supplement the Record with the Sicher Declarations.**

The Magistrate denied Plaintiff's motion (ECF 183) to supplement the record with the sworn declaration of former APA President Ed Sicher, claiming it was not "new" evidence because there was "no explanation" why it was unavailable earlier. This is clearly erroneous.

The evidence was unavailable precisely because APA's counsel engaged in a campaign of intimidation to quash the subpoenas of all material witnesses, including Captain Sicher and First Officer Rempfer, via the tainted Protective Order, who previously stated they would testify only if subpoenaed. Once Captain Sicher finally agreed to come forward on January 28, 2026, he provided two sworn bombshell declaration testimony (ECF 180, Ex. 3; ECF 187, Ex. 1 and 2; ECF 205 Exs. 1 and 2), showing direct evidence of APA's spoliation, bad faith grievance handling, the bad faith execution of the 2025 settlement, and the "Three Tips of the Iceberg" that prove the continuing nature of APA's violations of claims in Plaintiff's FAC. (ECF No. 249 at 5-7, ¶ D.).

The Magistrate's refusal to consider Plaintiff's Motion to Supplement the Record with Evidence of former APA President's bombshell Declaration (ECF No. 183, Ex. 1), and weigh that evidence against the other motions is clearly erroneous and denies Plaintiff due process.

**V. The Magistrate Ruled Contrary to Law by Denying an Evidentiary Hearing (ECF No. 155).**

Notably, here the Magistrate ignored the facts in sworn declarations from Plaintiff and former APA President Sicher corroborating APA Counsel, John Pelleteri's, material falsehoods used to obtain the draconian protective order, despite Mr. Pelletier never providing his own declaration in rebuttal. Additionally, when a party presents objective audio recordings of witness

11

tampering and competing declarations regarding a disqualifying conflict, it is contrary to law to deny an evidentiary hearing.

Finally, the Magistrate ruled contrary to law by deciding these severe, case-dispositive ethical violations on the papers alone, particularly given physical evidence of audio recordings and texts, and the lack of a rebuttal declaration submitted by Mr. Pelletieri. The denial of an evidentiary hearing on motions of such gravity is a fundamental deprivation of due process. Binding Eleventh Circuit precedent mandates that when material facts regarding attorney disqualification and severe ethical misconduct are in dispute, a court *must* hold an evidentiary hearing. *See Baxter v. Roberts*, 54 F.4th 1241, 1257 (11th Cir. 2022) (a "swearing match" cannot be resolved on a summary basis).

The Magistrate's refusal to consider Plaintiff's Motion for an Evidentiary Hearing (ECF No. 155), and weight the evidence against the other motions is clearly erroneous and contrary to law, and denies Plaintiff of the full due process to which he is entitled.

## CONCLUSION

**Wherefore,** the Magistrate's Omnibus Order (ECF No. 252) is clearly erroneous and contrary to law. It protects APA's severe ethical misconduct and preserves a tainted discovery record that is currently interlocked with a fraud-on-the-court investigation in the Eleventh Circuit (ECF No. 255). Plaintiff respectfully requests that this Court **SET ASIDE** the Magistrate's Order (ECF No. 252), **GRANT** the underlying motions denied therein, or, in the alternative, schedule an immediate evidentiary hearing on the above-referenced motions before the presiding District Judge Ed Artau, with live testimony from all relevant fact witnesses.

Dated: April 29, 2026

Respectfully submitted,

12

Lawrence M. Meadows, *Pro Se*
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Pro Se Plaintiff, hereby certify that on April 29, 2026, a true

and correct copy of the foregoing was served via the Court's CM/ECF system, email, and U.S.

Mail on all counsel of record.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com
*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Lane Shadgett, Esq.**
**Grace Rybak, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com;
jpellettieri@bredhoff.com;
grybak@bredhoff.com;
*Pro Hac Vice Counsel for Defendant*

14