## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

LAWRENCE MEADOWS,
    Plaintiff,

v.

ALLIED PILOTS ASSOCIATION, et al.,
    Defendants.

FILED BY _____ D.C.

MAY 1 1 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

CASE NO. 17-cv-22589-EA
HONORABLE JUDGE ED ARTAU

_____/

## PLAINTIFF'S TENTH OBJECTION PURSUANT TO FED. R. CIV. P. 72(a) TO MAGISTRATE JUDGE'S ORDER (ECF NO. 258) DENYING EMERGENCY MOTION TO VACATE PROTECTIVE ORDER (ECF NO. 138) BASED ON FRAUD AND MISCONDUCT OF OPPOSING BY OPPOSING COUNSEL

Plaintiff Lawrence Meadows, proceeding *pro se*, respectfully files this Objection pursuant to Federal Rule of Civil Procedure 72(a) and S.D. Fla. Magistrate Judge Rule 4(a), requesting that District Judge Artau set aside the Magistrate Judge's Order dated April 27, 2026 (ECF No. 258) (the "Order").

### I. PRELIMINARY STATEMENT

The Magistrate Judge's Order is clearly erroneous and contrary to established law. In a perfunctory, two-page ruling, the Magistrate summarily denied Plaintiff's Emergency Motion to Vacate the draconian Protective Order (ECF No. 138) for fraud on the court despite unrebutted declarations of Defendant's own president confirming the fraud. In doing so, she committed a stunning and reversible error: she failed to even mention, let alone consider, the two dispositive, sworn declarations from Defendant Allied Pilot Association's ("APA") own former President, Captain Edward Sicher, which prove APA's counsel, John Pellettieri, procured the Protective

1

Order through a series of material falsehoods. This is the second time the Magistrate has ignored the compelling evidence provided by the Sicher declarations without providing a rationale therefor.

The Protective Order is the "fruit of the poisonous tree." It has crippled Plaintiff's ability to prosecute his claims by arbitrarily limiting discovery to pre-2022 events and quashing all eight of Plaintiff's key witness subpoenas (including Captain Sicher) - based entirely on a false record created by Mr. Pellettieri. The Order at issue here (ECF No. 258) does not just deny a motion; it ratifies the original fraud, shields egregious attorney misconduct, and makes a mockery of the discovery process. It is the culmination of a documented pattern of judicial error that has resulted in a profoundly tainted and incomplete record. For the reasons set forth herein, and those detailed in Plaintiff's First and Eighth Objections (ECF Nos. 149, 259), the Order must be set aside and the tainted Protective Order vacated to restore the judicial integrity of these proceedings.

## II. PROCEDURAL BACKGROUND

This case centers on Defendant APA's bad faith abandonment of American Airlines "MDD"[1] pilots- pilots on long-term disability who were improperly removed from the American Airlines seniority list based on their former disability or long term illness or injury. For over 13 years, APA allowed individual reinstatement Grievance 12-011 and collective reinstatement

---

[1] The MDD (Medical Disability Dropped from AA seniority list), is the membership code for adversely affected disabled pilots administratively dropped from the seniority list for exceeding five years on long term disability. Since 2014, there were approximately 241 American Airlines who were in forced into MDD status, who were unilaterally removed from the pilot seniority list and administratively separated, and subsequently and denied reinstament after the FAA medically recertified for flight duty, in violation of the Collective Bargaining Agreement ("CBA") and decades of past practice. The Company stripped these MDD pilots of their recall and seniority reinstatement rights. Beginning in 2011, APA initiated legal action in response to the Company's actions by filing multiple grievances, including G12-011, 12-013, and 23-031, which asserted that the Company had violated the MDD pilots' rights under the CBA, past-practice, and the Americans with Disabilities Act. This litigation arises from APA's decade long failure to defend these pilots' individual and collective rights and timely prosecute their individual and collective grievances.

2

Dallas ("DFW") Domicile Grievance 12-012, both filed on Plaintiff's behalf, to languish while actively concealing material facts. This pattern of weaponized delay prompted this Court's former presiding Judge K. Michael Moore to issue a scathing rebuke citing APA's conduct as "unreasonable" and "prolonged delay" tactics in his order denying APA's motion to dismiss as untimely. (ECF Nos. 70, 91).

All attorneys "owe duties of complete candor and primary loyalty to the court before which they practice." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546 (11th Cir. 1993). This duty was flagrantly violated during the October 28 discovery hearing when APA's newly admitted pro hac vice defense counsel, John M. Pellettieri, suddenly appeared for the first time after witness tampering by Defendant's lead counsel, Joshua Shiffrin, was discovered.[2] During that hearing, APA's new counsel, John Pellettieri, made a series of material mispresentaions of material facts to Magistrate Judge Reid. (ECF No. 125). These falsehoods were not minor inaccuracies; they were demonstrably false statements on the core issues of witness conflicts and temporal scope, designed to mislead the Court into dramatically curtailing Plaintiff's discovery. The gambit worked. The Magistrate, relying on this false record and ignoring Plaintiff's associated strenuous objections during the hearing, proceeded to issue a draconian Protective Order (ECF No. 138) that

---

[2]      Notably, APA's newest of its cadre of seven attorneys currently working on this case is former DOJ criminal attorney John M. Pellettieri, who recently served on Jack Smith's Special Counsel Team. (See Bredhoff Bio: John M. Pellettieri). On October 22, 2025, Mr. Pellettieri filed a motion to appear pro hac vice, the day after Plaintiff filed his Emergency Motion to Disqualify Defendant's lead counsel, Joshua B. Shiffrin, for criminal witness tampering. During the first substantive hearing in this matter, Mr. Pellettieri, consistent with his extensive criminal-oriented bio, reflecting no experience in labor law, appeared in lieu of labor attorney Mr. Shiffrin, and argued in this complex labor case involving unique issues under the Railway Labor Act ("RLA") and Labor Management Relations Disclosure Act ("LMRDA"). During that October 28, 2025 hearing, he asserted that Mr. Shiffrin was still lead counsel, but was busy with a trial. This representation to the court was contradicted by the fact that Mr. Shiffrin was present during the entire Zoom hearing, but made no formal appearance and remained silent the entire time.

3

arbitrarily limited all discovery to December 31, 2021, and quashed eight key fact witness subpoenas. issued a prejudicial Protective Order (ECF No. 138).

This artificial discovery cutoff was designed to shield APA from evidence that, while arising post-2021, confirmed that its pre-2021 conduct violated its statutory obligations and that its representations to the Court concerning his pre-2021 were materially false. The magnitude of the critical evidence to which Plaintiff was denied access is addressed in the **"Three Tips of the Iceberg"** analysis detailed in Plaintiff's Opposition to APA's Motion for Summary Judgment (ECF No. 249 at 5-7), which references: (1) APA President Sicher's binding September 2, 2022, Presidential APA "Constitutional Interpretation, Inactive Member Standing" - which, "confirmed that inactive members, including MDD pilots, like FO Meadows, who had fulfilled all prior membership requirements [as Meadows had], were members in good standing." (Sicher Decl., ECF 205, Ex. 1, ¶ 21, Ex.G).; (2) the fraudulent January 2025 Secret Settlement Agreement - now the subject of a fully briefed fraud-on-the-court investigation in the Eleventh Circuit (ECF No. 255) - that excluded Plaintiff based on a false pretext, which settlement agreement refutes APA's representations throughout these proceedings that the existing contractual grievance did not provide a means of obtaining the reinstatement of MDD pilots; and (3) APA's retaliatory termination of Plaintiff's 34-year union membership in May 2025 when he attempted to expose the secret settlement to the membership during APA's Spring 2025 Board of Directors Meeting, which termination confirms that Plaintiff had been an APA member – with all attendant rights – until May 2025. The May 2025 termination constitutes an iceberg tip indicating a mountain of underlying evidence confirming Plaintiff's membership status, which would refute Defendant's

4

central defense that, as a non-member, Plaintiff cannot lay claim to statutory rights under the Railway Labor Act and LMRDA.[3]

After Plaintiff obtained two sworn declarations from former APA President Ed Sicher which proved Mr. Pellettieri's statements were fraudulent, Plaintiff filed his Emergency Motion to Vacate the Protective Order Based on Fraud and Misconduct of Opposing Counsel (ECF No. 205). The Order at issue here (ECF No. 258) denies that motion, once again immunizing counsel's misconduct and legitimizing a tainted protective order that wrongly quashed key fact witnesses and arbitrarily limited temporal scope – thereby cementing a discovery record built on numerous material misrepresentations of fact.

The resulting prejudice suffered by Plaintiff is manifest.

### III. FACTUAL BACKGROUND: A PATTERN OF MISCONDUCT AND MISREPRESENTATION AS DETAILED IN ECF NO. 148

This Court and presiding Judge Artau is reviewing these matters anew. Since the Magistrate never considered the underlying motions on their merits, Plaintiff presents the full weight of the evidence of counsel's fraud as first detailed in Plaintiff's December 1, 2025 Motion to Correct the Record and For Sanctions (ECF No. 148).

**A. Mr. Pelletieri's Six Material Misstatements to the Court**

During the October 28, 2025 protective order hearing APA's counsel, Mr. Pellettieri, made at least six demonstrably false, material misstatements to create a false narrative which misled the Magistrate into entering a tainted protective order that improperly limits and truncates discovery - by quashing all subpoenas of Plaintiff's eight key fact witnesses and arbitrarily limiting temporal

---

[3] Magistrate Reid's failure to accord the appropriate significance to the evidence related to membership status, both adduced by the Plaintiff and withheld by the Defendant, may be attributed to her admission that she lacked knowledge of the Railway Labor Act ("RLA") and Labor Management Reporting and Disclosure Act ("LMRDA") the principal statutes governing claims in this case.

scope to December 31, 2021 despite the direct relevance of post-2021 evidence to the statutory claims asserted in the First Amended Complaint. These falsehoods are directly contradicted by sworn pleadings, deposition testimony, and documentary evidence.

1. **Two Misstatements That Sue Edwards Never Represented and Did Not Represent Mr. Meadows.**
   - MR. PELLETTIERI: "*I would say, to clarify, Sue Edwards is an outside attorney who represented APA with respect to a particular grievance, and she never represented Mr.Meadows.*" (Oct. 28, 2025 Hrg. Tr., ECF No.125 at 16:8-10).
   - MR. PELLETTIERI: "*she represented APA and she did not represent... Mr. Meadows.*" (*Id.* at 16:18-20).

   - **Rebuttal: Both statements are false.** As detailed in the Declaration of Lawrence Meadows at ECF No. 148-1, President Sicher personally hired Ms. Edwards to represent Plaintiff individually in his ADA lawsuit against American Airlines. Evidence in the record confirms that, in around mid to late May 2024, after negotiations with American Airlines stalled, President Sicher became frustrated and informed Plaintiff that he was personally hiring Ms. Edwards to represent Plaintiff individually in his then pending ADA discrimination and retaliation lawsuit, *Meadows v. American Airlines*, Case No. 1:24-cv-20518-DPG (S.D. Fla.), and that he would use APA union resources to pay for her representation of Plaintiff. in his ADA case.). Ms. Edwards took substantive actions on Plaintiff's behalf, and documentary evidence, including her work product and communications regarding representation of Plaintiff, is in the record. ·(*Id.*, ¶ 5, Ex. B). Ms. Edwards' representation of the Plaintiff, though subsequently terminated by APA in retaliation for his protected activity, engendered attorney-client communications during which Plaintiff disclosed a high volume of confidential information. (Meadows Decl. ECF 142 at 14-15, ¶¶ 5-8).

**2. Misstatement That the American Pilots' Collective Bargaining Agreement ("CBA") Permitted Termination of Pilots on Disability More Than Five Years.**

- MR. PELLETTIERI: "And the collective bargaining agreement in place at the time permitted American Airlines to terminate a pilot if they were on medical leave for disability for more than five years." (Oct. 28, 2025 Hrg. Tr., ECF No.125 at 17:18-21).

- **Rebuttal: This statement is false.** CBA provides no such basis for termination, a fact confirmed in sworn deposition testimony in another similarly situated MDD pilot's litigation, *Emery v. APA*, Case No. 9:14-cv-80518-HURLEY (S.D. Fla. Jan. 4, 2017). In that case, American Airlines' own Senior Principal of Employee Relations Flight, James Anderson, the individual responsible for administering the American Airlines Pilots' CBA, was asked under oath if the CBA permits termination after five years of disability - his answer was "No." (Decl. of Lawrence Meadows, ECF No. 148-1, ¶ 6, Ex. C, at 17:24-25;18:1-4). Mr. Anderson further testified that "when removing a pilot off the seniority list after five years. That's just a practice we do. It's not a termination..." (*Id.* at 42:19-21), and finally when asked, "Is it your position that when a pilot is removed from the seniority list that they are permanently terminated," he answered "No." (*Id.* at 43:23-25, 44:1). Mr. Pellettieri's misstatement is also contradicted by APA Board of Directors Resolution, R2016-30, which states in relevant part; "...the American Airlines' contract, which has been subjectively reinterpreted by the Company to allow the removal of a pilot from the seniority list after five (5) years of continuous disability." (*Id.*, ¶ 7, Ex. D; FAC, ECF No. 35 at 109-111, Ex. B).

- As referenced above, the falsity of this representation is further confirmed by the ability of APA to secure a path to reinstatement for three MDD pilots via the

7

Settlement Agreement of January 15, 2025 based on the strength of the arguments asserted in Grievance 12-012 that the MDD pilots' contractual rights had been violated. As stated, this Settlement Agreement is doubtlessly the tip of an iceberg of evidence refuting Pellettieri's misrepresentation regarding the contractual rights of MDD pilots.

**3. Misstatement That Grievance 12-012 Was Not a "Fully National" Grievance**

- MR. PELLETTIERI: In May 2012, there was a grievance filed [DFW Domicile Grievance 12-012] on -- it was a base grievance, meaning <u>it was not fully national throughout everyone in the union</u>. (Oct. 28, 2025 Hrg. Tr., ECF No.125 at 17:22-24).

- **Rebuttal: This statement is false**. It is directly contradicted by the sworn deposition of APA attorney and Director of Negotiations, Mark Myers, Emery v. APA, 2:17-cv-01166-MSG, wherein he testified unequivocally that the issues underlying Grievance 12-12 were "systemic -- system-wide they would apply system-wide." (Decl. of Lawrence Meadows, ECF No. 148-1, ¶ 8, Ex. E). This is further corroborated by American Airlines' bankruptcy court pleadings admitting, "APA filed a grievance (DFW Domicile Grievance 12-012) on behalf of Meadows...", who was based in the Miami Domicile - confirming its application beyond a single domicile. (*Id.*, ¶ 9, Ex. F). In addition, the working lives of American pilots are governed by a single CBA that applies with equal force across the system such that contractual interpretations resulting from collective grievances arising at one pilot Domcile are, per force, applied throughout the system as precedent.

**4. Misstatement That Plaintiff Was Not Part of the Subsequent 2025 Settlement.**

- MR. PELLETTIERI: ...And APA settled that grievance in 2025. And the settlement did not include Mr. Meadows and did not provide relief to Mr. Meadows. (Oct. 28, 2025 Hrg. Tr., ECF No.125 at 20:6-11).

- **Rebuttal: This statement is a gross misrepresentation.** Plaintiff was explicitly named as one of four "identified individuals" in the settlement agreement itself. Contrary to Mr. Pellettieri's assertion, the settlement did include a direct reference to Mr. Meadows' contractual rights. Indeed, the settlement agreement referenced Plaintiff by name albeit for the express purpose of denying him the reinstatement relief granted to the other three identified pilots, and further extinguishing his grievance claims "with prejudice" for zero value and without notice, in violation of Railway Labor Act jurisprudence. (Decl. of Lawrence Meadows, ECF No. 148-1, ¶ 10, Ex. G, and ¶ 11 Ex. H).

5. **Misstatement Regarding Relevance of Grievance 23-031 to This Action.**

- THE COURT: But everything after that, the grievance 2313 [sic 23-031], that's not a part of this action?

- MR. PELLETTIERI: Absolutely. That's correct, your Honor. (Oct. 28, 2025 Hrg. Tr., ECF No.125 at 21:20-23).

- **Rebuttal: This is a direct misrepresentation** of the current procedural posture of this case. As confirmed by the Settlement Agreement of January 15, 2025, Grievance 12-012 was "converted" into Sicher Expedited Presidential Grievance 23-031[4] and, therefore, the alleged violations of Plaintiff's statutory rights related

---

[4] The American pilots' CBA Sec. 23.D.4., mandates that grievances "will be scheduled so as to be heard within twenty-eight (28) months of the original filing." After collective seniority reinstatement Grievance 12-012 languished for 11 years, as the sole MDD being denied seniority reinstatement at that time, Plaintiff in March 2023, requested that APA President Sicher finally move it to arbitration. Captain Sicher agreed to fast track it and converted it using the language of G12-012, to Sicher Expedited Presidential Grievance 23-031. The CBA Sec. 23.D.3.a. mandates for Expedited Grievances where, "The parties shall select an Arbitrator who can

to APA's handling of Grievance 12-012 were perpetuated in its handling of Grievance 23-031, which utilized the identical grievance language. (FAC Count III, ECF No. 35, ¶¶ 242-251) and Breach of Contract (FAC Counts IV-V, id. ¶¶ 252-285). This matter is squarely before the Court.

6. **Misstatement That Plaintiff Has Not Suggested Anything Under Crime-Fraud Exception.**

- MR. PELLETTIERI: *"He [Plaintiff] has not suggested anything remotely... under the crime fraud exception."* (Oct. 28, 2025 Hrg. Tr., ECF No.125 at 47:15-18).

- **Rebuttal: This statement is false.** Plaintiff's Emergency Motion to Disqualify (ECF No. 109/110) explcitly alleged criminal witness tampering occurred in violation of 18 U.S.C. §1512(b), and described how his "wife was compelled to make a recording of his conversation with FO Rempfer to preserve what she reasonably believed was evidence of ongoing criminal witness tampering." (ECF No. 109 at 9). Specifically, FO Rempfer stated that Defendant attorney Joshua Shiffrin's intent was to "quash…and looking to put off [FO Rempfer's] deposition indefinitely" (ECF 113-1 at 5) and recounted how Mr. Shiffrin cautioned and threatened that FO Rempfer could be subjected to union discipline under Article VII of APA's Constitution (which includes expulsion and fines) (ECF No. 110, Ex. A at 12, 11:23), if he disclosed "anything about anything." (*Id.* at 9, 00:52). This undisputed evidence amply supports Plaintiff's allegation of ongoing criminal witness tampering, and suppression of evidence, in an effort to conceal APA's years-long pattern of bad faith grievance handling and retaliation; thus, making

---

schedule, hear, and render a decision within one hundred twenty (120) days following the submission of the dispute to the System Board." (2015 American Airlines Pilot's Collective Bargaining Agreement ("CBA"), Section 23.D.3.).

invocation of the crime-fraud exception or its labor law parallel entirely relevant in this case, as established in *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1416 (11th Cir. 1994), which holds that a prima facie showing of a fraudulent "union cover-up" is sufficient to invoke the exception in the labor law context, without requiring proof of a literal crime as the Magistrate mistakenly believed. (Oct 28, 2024 Hrg Trans., ECF No.125 at 46:23-47:25).

**B. Willful Refusal to Correct the Record**

Following the hearing, Plaintiff made no fewer than six attempts via email between October 30 and November 11 to demand that APA's counsel, Mr. Pellettieri correct these falsehoods. Plaintiff provided him with a copy of the settlement agreement and emailed him a detailed list of six misstatements with transcript citations. (Decl. of Lawrence Meadows, ECF No. 148-1, ¶ 11, Ex. H, and ¶ 12, Ex. I). Mr. Pellettieri repeatedly and willfully refused, stating twice on November 11, "I have reviewed the transcript and stand by the record," and "We see no basis to correct the record." This refusal to correct known falsehoods transforms mere misstatements into an ongoing fraud on the Court. (*Id.*, ¶ 13, Ex. J)

### IV. LEGAL STANDARD

With respect to non-dispositive matters, the Court "may reconsider any pretrial matter … where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed R. Civ. P. 72(a). A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997). An order is contrary to law when it fails to apply or misapplies

relevant statutes, case law, or rules of procedure. *Tolz v. Geico Gen. Ins. Co.*, No. 08-80663-CIV, 2010 U.S. Dist. LEXIS 6709, at *2 (S.D. Fla. Jan. 27, 2010).

The Court reviews the Magistrate Judge's application of the law de novo, because "application of an improper legal standard . . . is never within a court's discretion." *United States v. Doe No. 2*, 2009 U.S. Dist. LEXIS 143390, at *3 (S.D. Fla. Od. 23, 2009) (quoting *Johnson & Johnson Vision Care, Inc., v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002)); *United States v. Grobman*, 460 F. Supp. 3d 1331, 1336 (S.D. Fla. 2020) (same).

The Magistrate's Order is both clearly erroneous and contrary to law.

## V. ARGUMENT

The Magistrate's Order is not just wrong; it is a dereliction of judicial duty. It ignores unrebutted, dispositive evidence of fraud, relies on indefensible circular reasoning, and arrives at a conclusion that arbitrarily linted temporal scope and quashed deposition testimony and document production from all eight key fact witnesses, is both clearly erroneous and contrary to law.

### A. The Order is Clearly Erroneous Because It Ignores Conclusive, Unrebutted Evidence of Fraud.

The foundation of Plaintiff's Emergency Motion to Vacate (ECF No. 205) was the two sworn declarations of former APA President Ed Sicher. (*Id.*, Exs. 1 and 2). The Magistrate's Order is clearly erroneous because it fails to even acknowledge this evidence, which proves Mr. Pellettieri's statements used to procure the protective order were fraudulent.

### 1. Fraudulent Misrepresentations Regarding Sue Edwards.

Mr. Pellettieri constructed a false narrative about Plaintiff's attorney, Sue Edwards, to shield her involvement in negotiating APA's secret settlement with American Airlines which extinguished Plaintiff's grievances with prejudice for zero value with  notice. Iso doing he fraudulently procured a protective order that arbitrarily limited temporal scope and misled the

12

Court to quash Ms. Edwards subpoena and suppress her deposition testimony and document production.

- Mr. Pellettieri falsely stated: *"I would say, to clarify, Sue Edwards is an outside attorney who represented APA with respect to a particular grievance, and she never represented Mr. Meadows ... But I just want to clarify up front that she represented APA and she did not represent ... Mr. Meadows."* (Oct. 28, 2025 Hrg. Tr., ECF No.125 at 16:8-20).

- Captain Sicher's sworn declarations prove this was false, attesting under oath that he, as APA President, personally retained Ms. Edwards to individually represent Plaintiff in his ADA lawsuit against American Airlines, and authorized and paid **$10,000 retainer** for that express purpose. (ECF No. 205, Ex. 1 at ¶ 26; Ex. 2 at ¶ 5).

## 2. Fraudulent Misrepresentations Regarding the Grievances and Settlement.

Mr. Pellettieri constructed a false narrative about the grievances and the associated secret Settlement Agreement to fraudulently procure a protective order, to justify his arbitrary temporal scope limitation, to shield all of APA's post-2022 ongoing bad faith grievance handling and retaliation that was a continuing violation of Counts III-VIII of Plaintiff's FAC (ECF No. 35), as previously detailed in the **"Three-tips of the iceberg."**

- Mr. Pellettieri falsely claimed Grievance 12-012 "was not fully national throughout everyone in the union", erroneously implying that limited to the DFW (Dallas) domicile MDD pilots, and did not apply to Plaintiff who was domiciled in Miami. (ECF 125 at 17:22-24). This is contradicted by the sworn testimony of APA's own Director of Negotiations, Mark Myers, who attested it applied to all adversely affected MDD pilots "system-wide." (Decl. of Lawrence Meadows, ECF No. 148-1, ¶ 8, Ex. E).

13

- Mr. Pellettieri falsely claimed Plaintiff was "not part of" Grievance 23-031, the expedited grievance that resulted in the 2025 secret settlement agreement of both that grievance and underlying grievance 12-12. (ECF 125 at 20:6-11). Captain Sicher's declaration confirms he advanced Grievance 12-012 and converted it to its verbatim expedited twin -  Sicher Presidential Expedited Grievance 23-031 - *at Plaintiff's request*. (Sicher Decl., ECF 205, Ex. 1, ¶¶ 14 and 23, Exs. A and B).

- Mr. Pellettieri falsely claimed "the settlement did not include Mr. Meadows" (Oct. 28, 2025 Hrg. Tr., ECF No.125 at 20:6-11), The settlement agreement itself proves this false, as it explicitly names Plaintiff as one of four "identified individuals" for the express purpose of withdrawing his grievance "with prejudice" and without prior notice to him. (*Id.*, ¶ 30, Settlement Agreement, Ex. K, ¶ 1-2).

- Captain Sicher's declaration proves that the Plaintiff had viable contractual claims and that Sicher personally moved Grievance 12-011 forward to arbitration in June of 2024, and the his successor, APA President Nick Silva, "falsely claimed" it  was now being declared "closed since 2013" (*Id.* at ¶¶ 27, 31).

**B. The Order Erroneously Denies the Motion Based on a Misapplication of Rule 60(b) and a Flawed "New Evidence" Analysis.**

The Magistrate incorrectly frames her analysis under Rule 60(b)(3) (ECF 258 at 1), yet a court has "plenary power" to "reconsider, revise, alter or amend" an interlocutory order like the Protective Order. *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000).

Further, the Magistrate's prior finding in ECF No. 252 that the Sicher declarations were not "new evidence" was itself clearly erroneous. Plaintiff was prevented from obtaining this testimony sooner by APA's own misconduct, including the quashing of Sicher's deposition subpoena through the fraudulently obtained Protective Order (ECF No. 138). It took Plaintiff three

14

months of diligent effort to persuade a reluctant witness to come forward voluntarily. This evidence could not have been obtained sooner and is undeniably new.

## C. The Order is Procedurally Improper and Contrary to Law.

The Order is procedurally improper. The Magistrate ruled on Plaintiff's motion to vacate the Protective Order (ECF No.205) while Plaintiff's First Objection to that very same Protective Order (ECF No. 149) remains pending before this Court. It is contrary to the principles of orderly judicial administration for a magistrate to rule on a motion attacking an order for fraud when the base legality of that same order is simultaneously under review by the District Judge. This "cart before the horse" ruling is - in and of itself - a basis to set the Order aside.

## D. The Order is Contrary to Law by Denying a Mandatory Evidentiary Hearing.

Binding Eleventh Circuit precedent mandates that when material facts are in dispute, a court cannot resolve credibility issues on a summary basis. *Baxter v. Roberts*, 54 F.4th 1241, 1257 (11th Cir. 2022) (a "swearing match" cannot be resolved on a summary basis); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (district court violated rule that it "may not take sides in a 'swearing match' between the parties")).. Here, we have Plaintiff's sworn motion and two sworn declarations from a former APA President on one side, and only the unsworn arguments of the accused attorney - who has never submitted a declaration in rebuttal - on the other. For the Magistrate to resolve this dispute on the papers violates the principles set forth in *Baxter* and constitutes a fundamental deprivation of due process

## VI. CONCLUSION

The Magistrate's Order (ECF No. 158) is not just clearly erroneous; it is an affront to the judicial process that is both clearly erroneous and contrary to law. It rubber-stamps a fraud on the court, ignores unrebutted sworn testimony of APA's own former president, and violates binding

15

Eleventh Circuit precedent. This Order, and the tainted Protective Order it protects, cannot be allowed to stand.

Plaintiff respectfully requests that this Court SET ASIDE the Magistrate's Order (ECF No. 258), GRANT the underlying Emergency Motion to Vacate (ECF No. 205), thereby VACATING the Protective Order (ECF No. 138), or, in the alternative, schedule an immediate evidentiary hearing before the District Judge to review the declarations and take live testimony regarding Mr. Pellettieri's fraud.

Dated: May 11, 2026

Respectfully submitted,

Lawrence M. Meadows, *Pro Se*
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email:lawrencemeadows@yahoo.com

16

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Pro Se Plaintiff, hereby certify that on May 11, 2026, a true and correct copy of the foregoing was served via the Court's CM/ECF system, email, and U.S. Mail on all counsel of record.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com
*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Lane Shadgett, Esq.**
**Grace Rybak, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com;
jpellettieri@bredhoff.com;
grybak@bredhoff.com;
*Pro Hac Vice Counsel for Defendant*

17