**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:17-cv-22589-EA

LAWRENCE MEADOWS,

     Plaintiff,

v.

ALLIED PILOTS ASSOCIATION, *et al.*,

     Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

**THIS CAUSE** came before the Court upon Defendant Allied Pilots Association's ("Defendant" or "APA") Motion for Summary Judgment (the "Motion"). [ECF No. 237]. *Pro se* Plaintiff Lawrence Meadows ("Plaintiff") filed a Response in Opposition and Motion for Relief Under F.R.C.P. 56(d). [ECF Nos. 249, 250].[1] APA filed a Reply. [ECF No. 254]. The Motion was referred to the Undersigned for a Report and Recommendation by The Honorable Ed Artau. *See* [ECF No. 175].

As Magistrate Judge Jonathan Goodman wrote in another case that Plaintiff litigated in this district, "[i]f tenacity and passion alone were sufficient to produce a litigation victory, then Plaintiff Laurence [] Meadows . . . would be pursuing a slam-dunk winner of a lawsuit here." *Meadows v. Amer. Airlines*, Case No. 1:24-cv-20518, 2024 WL 5248006 at *1 (S.D. Fla. Oct. 22, 2024). Indeed, the entire history of this case shows a blizzard of litigation by Plaintiff. However, such tenacity and passion cannot withstand APA's Motion for Summary Judgment. For the reasons

---

[1] It appears the same document was filed twice. For consistency purposes the Court will only cite to [ECF No. 250].

set forth below, it is **RECOMMENDED** that Defendant's Motion [ECF No. 237] be **GRANTED**, and Plaintiff's Motion for Rule 56(d) Relief [ECF No. 250] be **DENIED**.

### I.     PLAINTIFF'S FAILURE TO DISPUTE APA'S STATEMENT OF MATERIAL FACTS

As an initial matter the Court notes that in compliance with Rule 56.1(a)(1) of the Local Rules for the Southern District of Florida, APA filed a Statement of Material Facts contemporaneously with its Motion for Summary Judgment. *See* [ECF No. 238]. Plaintiff filed his response in opposition and motion for relief under Rule 56(d), [ECF No. 250]; Plaintiff, however, failed to file a statement of material facts. Thus, Plaintiff's opposition fails to comply with Rule 56.1(a)(1) of the Southern District of Florida's Local Rules. To be clear, Rule 56.1(a)(1) states that "[a] motion for summary judgment and the opposition to it shall each be accompanied by a separate and contemporaneously filed and served Statement of Material Facts. The movant's Statement of Material Facts shall list the material facts that the movant contends are not genuinely disputed." S.D. Fla. L.R. 56.1(a)(1). Importantly, Southern District of Florida Local Rule 56.1(c) provides:

> [a]ll material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply.

S.D. Fla. L.R. 56.1(c).

As such, the Court has reviewed APA's Statement of Material Facts, and after doing so, finds that the facts asserted therein are supported by properly cited record evidence. The Court further finds that no exceptions within Rule 56 of the Federal Rules of Civil Procedure are applicable to the facts asserted in APA's Statement of Material Facts and the fact that Plaintiff moved for relief under Rule 56(d) does not excuse his duty to file his statement of material facts.

*See Fid. & Deposit Co. of Maryland v. Lynx Constr. Mgmt.*, LLC, No. 20-21150-CIV, 2022 WL 18956173, n.1 (S.D. Fla. Nov. 15, 2022) (deeming the facts asserted in plaintiff's statement of material facts admitted when defendants failed to dispute plaintiff's statement and instead moved for relief under Rule 56(d))); *Reyes v. BJ's Restaurants, Inc.*, No. 17-62583-CIV, 2018 WL 3872111, at *4–5, 9 (S.D. Fla. Aug. 15, 2018), *aff'd*, 774 F. App'x. 514 (11th Cir. 2019) (denying plaintiffs' Rule 56(d) motion and stating that the grant of defendant's summary judgment motion "[was] perhaps as much a function of Plaintiffs' lack of evidence supporting their case as it [was] their failure to comply with the Federal Rules of Civil Procedure and this Court's Local Rules. Had Plaintiffs filed a statement of undisputed material facts, they may have advanced colorable evidence supporting their claims."). Therefore, the Court deems admitted the facts asserted in APA's Statement of Material Facts.

## II.     BACKGROUND[2]

Plaintiff's 113-page amended complaint [ECF No. 35] brings claims under the Railway Labor Act ("RLA") and the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA") against the APA and Pam Torell, an individual. [ECF No. 35 at 1–2]. Plaintiff also asserts claims of breach of contract. [*Id.* at 67–75]. The amended complaint arises from the following facts:

### A.   Facts Pertinent to Counts I–V

Plaintiff was a pilot for American Airlines ("American") from 1991 until he went on a leave of absence due to a medical disability. [ECF No. 35 ¶ 12; ECF No. 238 ¶¶ 20–21]. APA is a labor organization that has been the certified collective bargaining representative for pilots at

---

[2] The following facts are taken from Plaintiff's amended complaint, [ECF No. 35], Defendant's Statement of Material Facts, [ECF Nos. 238, 244], and a review of the corresponding record citations and exhibits.

American since 1963. [ECF No. 35 ¶ 2; ECF No. 238 ¶ 1]. Every pilot must possess a Federal Aviation Administration ("FAA") Medical Certificate to fly a commercial aircraft. [ECF No. 238 ¶¶ 4–7]. The Pilot Collective Bargaining Agreement ("CBA") between American and APA, sets out the rules that govern how pilots at American accrue and retain seniority. [*Id.* ¶ 8]. In the event that "a pilot at American loses their FAA Medical Certificate, is unable to operate under their unexpired medical certificate, or is unable to renew their medical certificate, that pilot is unable to operate and fly a commercial aircraft[,]" then the pilot "may take paid sick leave, unpaid sick leave, or disability leave, depending on their personal circumstances, pursuant to the terms of the CBA, until they regain their certification." [*Id.* ¶ 12]. Per the CBA, American was allowed to terminate pilots who had been on paid sick or disability leave for five years or longer. [*Id.* ¶ 13; ECF No. 238-2 at 83–84, 105].

In 2003, Plaintiff ceased flying for American due to a medical disability and he began a period of unpaid sick and disability leave. [ECF No. 238 ¶ 21; ECF No. 238-3 at 11]. Subsequently, in 2004, Plaintiff's FAA First Class Medical Certificate expired, and he did not regain it until 2018. [ECF No. 238 ¶¶ 22–23; ECF No. 238-3 at 12]. Then in 2011, pursuant to the CBA, Plaintiff's employment was terminated, and he was removed from the pilot seniority list after more than five years on disability leave. [ECF No. 237 ¶¶ 24–28; ECF No. 238-3 at 52, 58, 71]; *see, e.g.*, *In re AMR Corp.*, No. 11-15463, 2016 WL 1559294, at *2 (Bankr. S.D.N.Y. Apr. 14, 2016), *subsequently aff'd*, 764 F. App'x 88 (2d Cir. 2019) ("Meadows was ultimately terminated from his employment with American in October 2011."); *Meadows v. Allied Pilots Ass'n*, 822 F. App'x 653, 655 (10th Cir. 2020) ("In 2011, American terminated [Meadows'] employment."); *Meadows v. Am. Airlines, Inc.*, No. 15 CV 3899, 2016 WL 4011231, at *1 (N.D. Ill., July 27, 2016) ("Meadows was ... eventually terminated."); *Meadows v. AMR Corp.*, 539 B.R. 246, 248 (S.D.N.Y.

Oct. 8, 2015) ("In October 2011, Meadows's employment at American was terminated."); *Meadows v. Allied Pilots Ass'n*, No. 2:14-CV-00115-DS, 2015 WL 13650044, at *4 (D. Utah Apr. 27, 2015), *aff'd*, 822 F. App'x. 653 (10th Cir. 2020) (finding that Plaintiff's grievance alleging that American violated the CBA by removing him from the seniority list was "not supported by the CBA.").

After his termination, Plaintiff filed an individual grievance ("Grievance 12-011") challenging his removal from the pilot seniority list and discharge from American. [ECF No. 238 ¶ 31; ECF No. 238-3 at 69]. American denied the appeal of Grievance 12-011 and APA declined to advance it to arbitration. [ECF No. 238 ¶¶ 32–34; ECF Nos. 238-2 at 126, 238-3 at 71]. In 2013, Plaintiff filed another individual grievance ("Grievance 13-064") asserting that American violated the CBA by terminating him and removing him from the pilot seniority list after five years of disability leave. [ECF No. 238 ¶ 40; ECF No. 238-3 at 77–78]. Similarly to Grievance 12-011, American denied Grievance 13-064 and APA declined to advance it to arbitration. [ECF No. 238 ¶¶ 41–44; ECF No. 238-2 at 160, 162]. Plaintiff filed suit against APA in U.S. District Court for the District of Utah, relating to APA's handling of Grievance 12-011 and Grievance 13-064. [ECF No. 238 ¶¶ 36–39, 43–44]. Ultimately, the Court in Utah ruled in APA's favor. [*Id.* ¶¶ 39, 44]; *Meadows*, 2015 WL 13650044.

In 2012, the Chairman and Vice Chairman of APA's Dallas/Fort Worth ("DFW") base filed a grievance on behalf of all DFW-based pilots. [ECF No. 238 ¶¶ 48–49; ECF No. 238-3 at 83, 161]. At the time of his termination, Plaintiff was not a DFW-based pilot. [ECF No. 238 ¶ 52; ECF No. 238-2 at 3; ECF No. 238-3 at 163]. "Grievance 12-012 asserted that American violated the CBA by (1) 'failing to reinstate pilots' to the pilot seniority list, and (2) 'failing to provide pilots notice of termination prior to terminating employment status of pilots who have been on

inactive status, unpaid sick, or disability for more than five years.'" [ECF No. 238 ¶ 53 (quoting ECF No. 238-3 at 83)]. Thus, Grievance 12-012 was intended to challenge "(1) American's practice of terminating pilots who had been on unpaid sick or disability leave for five years without first providing adequate notice, and (2) American's then-recent practice of categorically refusing to reinstate pilots who had been terminated after five years of unpaid sick or disability leave but who had regained their FAA First Class Medical Certificate and thereafter sought reemployment with American." [ECF No. 238 ¶ 54; ECF No. 238-3 at 160, 170, 259–60]. Notably, Grievance 12-012 was not intended to seek reinstatement of all pilots terminated after being on unpaid sick or disability leave for five years. [ECF No. 238 ¶ 55; ECF No. 238-3 at 161, 170, 267].

After Grievance 12-012 was filed, APA accomplished the following: (1) it persuaded American to give notice to pilots before they were terminated and dropped from the seniority list after being on unpaid sick or disability leave for five years; and (2) American stopped its blanket refusal to reinstate Medical Disability Dropped ("MDD") pilots who had regained their FAA First Class Medical Certificate and resumed considering reinstatement requests on a case-by-case basis. [ECF No. 238 ¶¶ 63–64; ECF No. 238-2 at 6; ECF No. 238-3 at 174]. Further, in 2016, APA negotiated with American an amendment to the CBA so that pilots on disability leave would no longer be terminated and removed from the seniority list after five years—however, this change only applied prospectively rather than retroactively. [ECF No. 238 ¶¶ 65–66; ECF Nos. 238-2 at 121, 238-3 at 165–66]. Grievance 12-012 had not been advanced to arbitration at the time the amended complaint was filed. [ECF No. 238 ¶¶ 57–61].

In 2013, American merged with U.S Airways. [ECF No. 238 ¶ 72]. Thereafter, the two airlines and the two unions entered into a Memorandum of Understanding ("MOU") and a Seniority Integration Protocol agreement that established the procedure for merging the pilot

seniority list from the airlines. [*Id.* ¶¶ 73–81; ECF Nos. 238-1 at 1–5, 6–22, 238–2 at 164–80]. Plaintiff was not included in the certified seniority list because he had been terminated in 2011; nonetheless, Plaintiff was included in a "separate list of pilots who were challenging their separation from American." [ECF No. 238 ¶ 82, ECF No. 238-1 at 5]. The integrated seniority list was finalized in 2016, and that same year Plaintiff was informed of his exclusion from the list. [ECF No. 238 ¶¶ 83–89; ECF No. 238-1 at 118]. Plaintiff challenged his exclusion from the final seniority list, but his attempts were denied in 2017. [ECF No. 238 ¶¶ 90–95]. After the initiation of this lawsuit, Plaintiff re-obtained his FAA First Class Medical Certificate, and as a result APA petitioned American to reinstate Plaintiff; but American—exercising its discretion—refused. [*Id.* ¶¶ 98–103; ECF No. 238-3 at 143, 207–08; ECF No. 238-4 at 1–2].

B.   Facts Pertinent to Counts VI–VIII

Pursuant to APA's Constitution and Bylaws, the MDD pilots are considered inactive members of APA. [ECF No. 238 ¶¶ 106–13; ECF No. 238-2 at 22]. Specifically, APA's Constitution and Bylaws stated that "[a] member in good standing shall automatically be transferred to inactive membership status upon . . . [b]eing on leave of absence from the Company twelve (12) months after the expiration of paid sick leave." [ECF No. 238-2 at 22]. Inactive members "enjoy all of the benefits of active membership except the privileges of voting, holding elected office, and participation in Association sponsored programs where specific requirements prohibit such participation." [*Id.* at 26]. Plaintiff challenged his inactive member status, which resulted in an arbitration award (the "Valverde Award") that concluded Plaintiff was an inactive member of APA under its Constitution and Bylaws, and that an inactive member cannot be a member in "good standing;" thus, the arbitrator found that Plaintiff lost his "good standing" status when he became an inactive member. [ECF No. 238 ¶¶ 114–15, 119; ECF No. 238-2 at 220–22].

7

APA's website contains an electronic discussion forum called Challenge & Response ("C&R"). [ECF No. 238 ¶¶ 120–21]. Inactive members had access to the forum; however, the APA Board of Directors decided to revoke the access in order to enforce its Acceptable Use Policy which limited access to C&R to certain classes of membership. [*Id.* ¶¶ 122–25]. An MDD pilot sued APA regarding the C&R restriction and prevailed. [*Id.* ¶¶ 127–29]. Subsequently, APA restored access to C&R for all MDD pilots—including Plaintiff—thus, Plaintiff had access to C&R as of the filing of his amended complaint. [*Id.* ¶¶ 130–31; ECF No. 238-3 at 141].

### III.    LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56).  A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).  "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).  Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  In assessing whether the moving party has met this burden, a court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party.  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).  Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of

material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## IV.    DISCUSSION

APA argues it is entitled to summary judgment on all counts of Plaintiff's amended complaint. *See generally* [ECF No. 237]. Rather than respond to the substance of APA's arguments, Plaintiff contends he is entitled to relief under Federal Rule of Civil Procedure 56(d). [ECF No. 250]. The Court considers the parties' arguments in turn, concluding, first, that Plaintiff does not meet his burden under Rule 56(d); and second, that APA is entitled to summary judgment on all counts of the amended complaint.

### A.   Plaintiff's Rule 56(d) Opposition

Plaintiff styles his response a Rule 56(d) Opposition to the Motion for Summary Judgment. [ECF No. 250]. Federal Rule of Civil Procedure 56(d) allows a court to defer or deny a motion for summary judgment or allow additional time for discovery when "a nonmovant shows by affidavit or declaration that . . . it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). "The court's decision is discretionary and depends in large part on whether the parties had ample time and opportunity for discovery." *Black Box Royalties, Inc. v. Universal Music Publ'g, Inc.*, 839 F. App'x 346, 349 (11th Cir. 2020) (quotation marks and citations omitted). "To invoke rule 56(d), a party may not simply rely on vague assertions that additional discovery will

9

produce needed, but unspecified facts, but must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021) (quotation marks and citations omitted).

A brief procedural background is necessary here. Plaintiff filed this case in 2017 and then filed his amended complaint in 2018. *See* [ECF Nos. 1, 35]. In 2018, the parties jointly petitioned the Court to stay the case. [ECF No. 36]. The motion to stay was granted and the case remained stayed until May 12, 2025. [ECF Nos. 37, 52, 64, 71]. The initial scheduling order in this case required discovery to be completed by November 1, 2025. [ECF No. 74]. On September 4, 2025, the parties jointly moved to amend the scheduling order and sought to extend discovery by six months. [ECF No. 89]. The Court subsequently extended discovery in this case by three months with a new discovery deadline of February 2026. [ECF No. 105].

Before the February 2026 discovery cutoff, the Court entered a new scheduling order with a discovery deadline of March 14, 2026. [ECF No. 177]. After the operative scheduling order was entered, Plaintiff filed numerous motions to stay discovery and extend all case deadlines. [ECF Nos. 166, 173, 213]. Plaintiff's motion to stay discovery and extend all trial deadlines was denied by the Honorable Judge Artau on April 23, 2026. [ECF No. 256].

Plaintiff's reliance on Rule 56(d) fails. First, Plaintiff had ample opportunity—from May 12, 2025, to March 14, 2026—to conduct discovery. Second, his Response and Declaration fail to specifically demonstrate why the Court should defer or delay ruling on APA's Motion. Plaintiff fails to identify any part of APA's statement of material facts that any of the additional discovery he seeks would contest, or explain how that discovery would preclude summary judgment on any claim. *See generally* [ECF Nos. 250, 251]. For example, Plaintiff contends that the deposition of

Ed Sicher is needed to prove the allegations in all eight counts of his amended complaint. [ECF No. 250 at 14; ECF No. 251 at 16]. However, despite stating that the deposition is needed to prove *all* counts, Plaintiff only explains that the deposition is needed to prove facts surrounding APA Board of Directors Resolution 2016-30 which Plaintiff concludes is relevant to Counts I and II. [ECF No. 250 at 14–15; ECF No. 251 at 16–17] (emphasis added). Plaintiff then concludes vaguely—and without pointing to any specific argument raised by APA—that the resolution contradicts APA's Motion. [ECF No. 251 at 17]. Further, much of the discovery sought by Plaintiff is precluded by this Court's protective order [ECF No. 138]. [ECF No. 250 at 17–18] (arguing the need to depose Ed Sicher, James Clark, Tricia Kennedy, Nick Silva, and Jay Wilhelm (all individuals subject to this Court's protective order) about events that took place after 2021 (after the temporal scope allowed by the protective order)).

Third, Plaintiff's procedural arguments that there are pending objections and motions, and thus summary judgment is premature is without merit. *See generally Moore v Iron Will, Inc.*, No. CIV. A. 99-804-CB-M, 2001 WL 228352, at *2 (S.D. Ala. Feb. 21, 2001) (finding plaintiff's argument that the motion for partial summary judgment was premature without merit because defendant filed the motion "in accordance with the [Rule] 16(b) scheduling deadlines which set forth the timeframe of a case[.]"). Indeed, the Court has already ruled on several of those motions, [ECF Nos. 252, 253, 258], and only pending before the Court is Plaintiff's motion for sanctions based on alleged spoliation of evidence and objections to the Undersigned's discovery orders which are to be resolved by Judge Artau. The motion for spoliation of evidence would not affect the Undersigned's reasoning in recommending granting summary judgment in favor of APA. *See generally Sturdivant v. City of Atlanta*, No. 1:11-CV-2310-RLV-JSA, 2014 WL 11444087, at *29 (N.D. Ga. Feb. 7, 2014), *report and recommendation adopted in part*, No. 1:11-CV-2310-RLV,

11

2014 WL 11456460 (N.D. Ga. Mar. 25, 2014), *aff'd*, 596 F. App'x. 825 (11th Cir. 2015) ("Therefore, there is absolutely no materiality to this deposition as it relates to Plaintiff's lawsuit and Plaintiff has not even attempted to show otherwise as Rule 56(d) requires. Accordingly, Plaintiff has not established that Defendants' Motion for Summary Judgment [85] should be denied until the District Court has ruled on the Defendants' Objection."). Lastly, Plaintiff's argument that the Court should defer ruling on APA's Motion while the Eleventh Circuit considers his appeal of the dismissal of his case against American and his recent filing accusing American of fraud is unpersuasive as those filings are completely irrelevant to the claims at issue here.

Additionally, Plaintiff's Declaration fails "to specifically demonstrate how discovery would show a genuine issue of fact." *Burns*, 999 F.3d at 1334 (quotation marks and citation omitted). Instead, the Declaration is largely a re-hashing of the Plaintiff's previously filed motions. [ECF No. 251]. The Court thus has "all the information necessary to rule on the legal issues, and[, as will be seen, Plaintiff has] raised no genuine question of material fact that [could] preclude[] summary judgment." *Burns*, 999 F.3d at 1334 (alterations added; quotation marks and citation omitted).

For the foregoing reasons, it is recommended that Plaintiff's Rule 56(d) request for postponement be denied. The Court turns to the merits of APA's Motion for Summary Judgment.

    B.  <u>APA's Summary Judgment Motion</u>

        a.  <u>APA is Entitled to Summary Judgment on Count I and II</u>

           i.  <u>Counts I and II are time-barred</u>

APA argues that it's entitled to summary judgment on Counts I and II because the claims are time-barred. The Court agrees. Duty-of-fair-representation claims under the RLA are subject to a six-month statute of limitations. *Smallakoff v. Air Line Pilots Ass'n, Intern.*, 825 F.2d 1544,

1546 (11th Cir. 1987) ("We hold that the district court should have followed the substantial authority that applies the six-month limitations period to duty of fair representation claims under the Railway Labor Act."). "The six-month limitation period 'starts running when the plaintiff was or should have been aware of the acts constituting the alleged violation.'" *Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1582 (S.D. Fla. 1993), *aff'd*, 193 F.3d 1185 (11th Cir. 1999) (quoting *Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir.1986)). Thus, "the beginning of the limitation period has two components: the accrual of the cause of action itself, which occurs when the violation is completed, and the plaintiff's actual or constructive discovery of the violation." *Id.*

Based on this analysis, Count I is time-barred. Count I alleges that APA violated its duty of fair representation by failing to secure Plaintiff's return to the seniority list during the proceedings to integrate the pilot seniority lists from American and U.S. Airways. [ECF No. 35 ¶¶ 219–29]. In his amended complaint, Plaintiff states that he first learned he had not been included in the seniority list by February 2016. [*Id.* ¶ 186]. In addition, the chairman of AAPSIC's confirmed that Plaintiff's omission from the seniority list was intentional on March 6, 2016. [ECF No. 238-1 at 118]. The seniority list was then finalized in September 2016; Plaintiff challenged his exclusion from the list, and his complaint was denied on January 9, 2017, because Plaintiff's request fell outside the dispute resolution procedure. [ECF No. 238-3 at 96].

Despite Plaintiff being on notice since March 2016 that he was not included in the integrated seniority list, the Court finds that the alleged violation was completed on January 9, 2017, when Plaintiff's challenge was denied. Thus, Plaintiff had until July 9, 2017, to pursue his claim for breach of duty of representation in relation to his exclusion from the seniority list. Here, Count I is untimely because Plaintiff filed this lawsuit on July 11, 2017. *See* [ECF No. 1]; *Madsen*

13

*v. R&L Foods, LLC*, No. 2:22-CV-00854-AMM, 2025 WL 2735378, at \*9 (N.D. Ala. Sept. 25, 2025) ("But [plaintiff] missed the deadline by two days, making her complaint untimely."); [ECF No. 238-3 at 98] ("As I mentioned main concern is that I have a looming SLI DFR claim deadline, for which I exhausted my internal remedies via an ISL DRC Complaint, which was denied [b]y the committee on 1/8/17; so my 6 month DFR SOL is 7/8/17.").

On the other hand, Count II alleges that APA violated its duty of fair representation by failing to pursue the grievance Plaintiff sought to file under the MOU. [ECF No. 35 ¶¶ 230–41]. Under the MOU, an arbitration had to be "heard no later than thirty (30) days following submission to the System Board [and] be decided no later than thirty (30) days following the first day of the hearing, unless otherwise agreed in writing." [ECF No. 238-2 at 173]. Plaintiff knew that APA had failed to advance his grievance to arbitration after thirty days passed with no union action. Further, Plaintiff definitely had knowledge that APA failed to advance his grievance to arbitration when the integrated seniority list was finalized in September 2016, and Plaintiff acknowledged as much in an email. [ECF No. 238-1 at 121]. Therefore, Plaintiff had to file his claim against APA for breach of its duty of fair representation for failing to advance his MOU grievance by February 2017. Plaintiff failed to do so and Count II is time-barred.

ii.  <u>The Facts Demonstrate That APA Did Not Breach Its Duty of Fair Representation</u>

Even if Counts I and II were not time-barred, the material facts show APA is entitled to summary judgment on those counts. Plaintiff cannot demonstrate that APA breached its duty of fair representation or that he suffered injury from said breach. "In order to establish a breach of the union's duty of fair representation, it must be shown that the handling of the grievance was 'arbitrary, discriminatory, or in bad faith.'" *Massey v. United Transp. Union*, 868 F. Supp. 1385, 1393–94 (S.D. Ga. 1994), *aff'd*, 65 F.3d 183 (11th Cir. 1995) (quoting *Airline Pilots Assoc. Int'l*

14

*v. O'Neill,* 499 U.S. 65, 67 (1991)). "Such a showing might be made when the union ignores a meritorious grievance or processes it in perfunctory fashion." *Id.* at 1394 (internal quotations omitted). Union behavior is arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Id.* (internal quotations and citations omitted).

As explained above, Count I alleges that APA violated its duty of fair representation because Plaintiff was excluded from the certified seniority list. The Protocol Agreement, which established the process for integrating the pilot seniority lists, stated that the merger committees would exchange certified seniority lists "reflect[ing] the status quo of the . . . seniority lists in effect at the carriers on **December 9, 2013**." [ECF No. 238-1 at 10] (emphasis added). American had terminated Plaintiff and removed him from the seniority list in 2011. Therefore, the undisputed facts show that Plaintiff was not employed by American on December 9, 2013. Plaintiff cannot establish that APA's conduct was arbitrary, discriminatory, or in bad faith for failing to include his name in the certified seniority list when Plaintiff was not an employee at American at the time of the merger.

With respect to Count II, which rests on APA's failure to advance to arbitration Plaintiff's MOU Grievance, Plaintiff similarly fails to show that APA's conduct was arbitrary, discriminatory, or in bad faith. The undisputed facts show that APA's decision was based on its mutual understanding with American that the MOU did not provide a mechanism for individual pilots to file grievances under its expedited procedures. In fact, Plaintiff was not the only union member whose individual grievance was not advanced to arbitration. *See* [ECF No. 238-3 at 214]. American's and APA's understanding and interpretation of paragraph 20 of the MOU was as follows: "The MOU dispute resolution process in Paragraph 20 did not create and was never

intended by the parties to create an avenue for pilots to lodge collateral attacks on the [seniority list integration] process itself, or to have an arbitrator rule on the contours of federal statutes." [*Id.*]. Such interpretation falls within the wide range of reasonableness afforded to unions and was not arbitrary. *See Jamison v. Air Line Pilots Ass'n, Intern.*, 635 F. App'x. 647, 656 (11th Cir. 2015) ("The Supreme Court has admonished that courts must not substitute their judgment for that of a labor union, even when, as here, the union reaches a less favorable deal than what was possible. The Pilots have failed to establish that their union's conduct fell outside the wide range of reasonableness we must afford it.").

Therefore, APA is entitled to summary judgment on Counts I and II.

b.  APA is Entitled to Summary Judgment on Count III

APA is also entitled to summary judgment on Count III. Plaintiff alleges in Count III that APA breached its duty of fair representation by failing to advance Grievance 12-012 to arbitration by the time the amended complaint was filed. [ECF No. 35 ¶¶ 243–51]. The Court agrees with APA, the record shows that "Grievance 12-012 did not apply to Plaintiff, and thus there is no causal connection between APA's decision not to advance the grievance and any alleged injury to Plaintiff." [ECF No. 237 at 18]. Further, Plaintiff cannot establish that APA acted arbitrarily, in bad faith or in a discriminatory manner.

The CBA agreement in effect when Plaintiff was terminated allowed for American to terminate pilots who had been on disability or sick leave for a period of five years. In relevant part the CBA stated as follows: "Such leave of absence for sickness or injury may not exceed a total continuous period of three (3) years unless extended by mutual consent of the Company and the Association, in which case it may not exceed a total continuous period of five (5) years." [ECF No. 238-2 at 84]. American explained to Plaintiff that he had been on a sick leave of absence since

April 19, 2004, and that the CBA and company policy limited pilots' sick leave of absence to a period of three years and up to five years with approval. [ECF No. 238-3 at 52]. Further, it was explained to Plaintiff that pilots who exceeded the five-year limitation were subject to "administrative separation from employment." [*Id.*]. Thus, it was American's and APA's shared understanding that American could terminate pilots who exceeded the five-year disability period. [ECF No. 238 ¶ 16; ECF No. 238-3 at 154].

Grievance 12-012 did not challenge the five-year rule discussed above but rather asserted that American violated the CBA by failing to (1) reinstate pilots who had regained their FAA Medical Certificate to the seniority list, and (2) "failing to provide pilots notice of termination prior to terminating employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years." [ECF No. 238 ¶¶ 53–54; ECF No. 238-3 at 160, 259–60]. Plaintiff was not based in DFW—the base where the grievance was filed—and had not regained his FAA First Class Medical Certificate. *See* [ECF No. 238-2 at 3; ECF No. 238-3 at 163]. In fact, when Plaintiff later regained his FAA First Class Medical Certificate, APA requested American to reinstate Plaintiff to his relative position on the seniority list. [ECF No. 238-3 at 143, 207–08]. However, American refused to do so. [ECF No. 238-4 at 1–2]. The Court fails to see how APA acted arbitrarily, in bad faith, or in a discriminatory manner when the union petitioned for Plaintiff's reinstatement upon Plaintiff regaining his FAA First Class Medical Certificate.

Further, the Court finds that the mere fact that Grievance 12-012 had not been submitted to arbitration by 2018 is not itself a duty-of-fair-representation violation. "It is well established that no individual employee has an absolute right to have his grievance taken to arbitration. Thus, failure of a union to prosecute an employee's grievance to arbitration is not necessarily a breach of the duty of fair representation, even if the grievance is meritorious." *Cook v. United Mine*

*Workers of Am.*, No. CV 83-P-1682-S, 1984 WL 22068, at *1 (N.D. Ala. Mar. 15, 1984) (internal citations omitted). Additionally, the undisputed facts show that it is not unusual for APA grievances to take years to be heard in arbitration. [ECF No. 238 ¶¶ 58–60; ECF No. 238-2 at 8–9]. Even more, the record does not support a finding that APA acted arbitrarily because the concerns that motivated the grievance were successfully addressed through other means. [ECF No. 238 ¶¶ 62–70; ECF Nos. 238-2 at 121, 238-3 at 165–66, 174]. The Court finds that "[n]one of the actions by the [APA] were perfunctory, made in bad faith, discriminatory, or arbitrary." *Meadows*, 2015 WL 13650044, at *4.

Therefore, APA is entitled to summary judgment as to Count III.

c.   APA is Entitled to Summary Judgment on Counts IV and V

APA is entitled to Summary Judgment as a matter of law on Counts IV and V because those counts are preempted by the claims raised under the RLA. Counts IV and V are state-law breach of contract claims alleging that APA violated its contractual obligations to Plaintiff under APA's Constitution and Bylaws. [ECF No. 35 at 67–75]. However, Plaintiff's allegations in those counts rest on the same allegations as Plaintiff's federal breach of duty of fair representation claims in Counts I–III.

The RLA "governs the parties' relationship. The RLA imputes a duty of fair representation that requires a union to treat all members of the collective bargaining unit fairly, adequately, and in good faith at all stages of bargaining. This duty is defined by federal law, which preempts the application of state substantive law in the area." *Dunn*, 836 F. Supp. at 1578 (internal citations and footnotes omitted). In Count IV, Plaintiff alleges that "throughout Seniority List Integration arbitration process, which ran from 2013 through September 2016, APA violated its self-admitted contractual obligations under its own C&B, by failing to protect the individual seniority rights of

disabled MDD pilot Meadows, as well as those collective rights for and other similar situated MDD pilots." [ECF No. 35 ¶ 260]. While, Count V alleges, among other things, that "given APA's bad faith failure to timely prosecute both Collective DFW Base Grievance 12-012 and Meadows Individual MOU Grievance, it is futile for Meadows to wait any longer [to] exhaust his administrative grievance remedies," and that "as a result of APA's breach of its duty of fair representation and disparate treatment between and amongst Meadows and similarly situated MDD pilots, APA has knowingly and willfully failed to uphold its contractual obligation[.]" [*Id.* ¶¶ 280–81]. Thus, this Court finds that Plaintiff's state law claims are so inextricably intertwined and identical in substance to Plaintiff's claim that APA breached its duty of fair representation, that they are preempted by the RLA. *See Eisenberg v. Trans World Airlines, Inc.*, 654 F. Supp. 125, 128 (S.D. Fla. 1987), *aff'd sub nom. Eisenberg v. Trans World Airlines*, 875 F.2d 872 (11th Cir. 1989).

Therefore, APA is entitled to summary judgment on Counts IV and V.

> d.  APA is Entitled to Summary Judgment on Counts VI and VII

APA is entitled to Summary Judgment as a matter of law on Counts VI and VII. In Counts VI and VII, Plaintiff alleges that APA unlawfully infringed on rights protected by the LMRDA by designating him and treating him as an "inactive member" under APA's Constitution and Bylaws, rather than an "active member in good standing." [ECF No. 35 at 75–87]. However, Plaintiff cannot establish that APA violated the LMRDA.

APA's Constitution and Bylaws set out the following categories of membership: apprentice, active, inactive, and honorary. [ECF No. 238-2 at 22–23]. Under the Constitution and Bylaws "[a] member in good standing is entitled to participate actively in all APA activities and is entitled to all of the rights, privileges, and benefits of membership in the APA." [*Id.* at 26].

19

While "[i]nactive members shall enjoy all of the benefits of active membership except the privileges of voting, holding elected office, and participation in Association sponsored programs where specific requirements prohibit such participation." [*Id.*]. An active member will automatically become an inactive member "upon … [b]eing on leave of absence form the Company twelve (12) months after the expiration of paid sick leave." [*Id.* at 22]. Pilots who are on unpaid leaves of absence do not pay dues to APA. [*Id.* at 12, 24].

In 2016, then APA President Keith Wilson interpreted the Constitution and Bylaws to establish that a pilot who "loses his or her seniority under Section 11.D or Supplement F(1) of the CBA, retains his or her status as an inactive APA member until such time as the pilot returns to active pilot employment." [ECF No. 238 ¶ 113; ECF No. 238-2 at 189–90]. Plaintiff challenged such interpretation, which resulted in the Valverde Award, where the arbitrator concluded that Plaintiff was an inactive member of APA under the Constitution and Bylaws. [ECF No. 238-2 at 220–22]. Further, the arbitrator found that an inactive member could not be member in "good standing." [*Id.*]. During the arbitration proceedings, Plaintiff submitted evidence and presented witnesses. [*Id.* at 192–200]. The Valverde Award was subsequently confirmed by former APA president Dan Carey. [*Id.* at 239].

Nevertheless, Count VI alleges that APA:

willfully engaged in a malicious, arbitrary, discriminatory, and in bad-faith course of conduct and has unlawfully taken [] inconsistent positions with respect to the membership status of its LTD/MDD for the improper purpose of: 1) depriving them of their LMRDA right to Freedom of Speech and Assembly in the union hall. Including but not limited to. the APA BOD declaring LTD/MDD to be non-members and directing the APA President to unlawfully lock them out of the union's member only website discussion forum, coupled with APA's [Secretary/Treasurer's] refusal to issue LTD/MDD active membership cards. Which had the effect of depriving these pilots' access to both the virtual and physical union hall during the most crucial contract negotiations of their airline careers, during the merger of the U.S. Airways and American Airlines which also involved the integration of the pilot seniority list

20

[ECF No. 35 ¶ 305]. Count VI rests on allegations that APA violated Section 101(a)(2) of the LMRDA, which states in pertinent part

> Every member of any labor organization shall have the right to ... to express any views, arguments, or opinions... Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

[*Id.* ¶ 290]; *Emery v. Allied Pilots Ass'n*, 227 F. Supp. 3d 1292, 1299 (S.D. Fla. 2017). While Count VII alleges APA engaged in malicious, arbitrary, discriminatory, and bad faith conduct regarding the membership status of MDD pilots with the purpose of depriving them of their LMRDA rights such as "the right to nominate candidates, vote in elections, attend membership meetings and to participate in the deliberations and voting upon the business of such meetings, to be committee members, and to hold office." [ECF No. 35 ¶ 325]. Count VII rests on allegations that APA violated Section 101(a)(1) which states that every member of a labor organization "shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations." [*Id* ¶ 312].

First, the Court finds that it is not unlawful for APA to distinguish between active members and inactive members. "It is well settled that a union's consistent interpretation of its own constitution will not be disturbed by a federal court unless the challenged regulation is 'unreasonable.'" *Taylor v. Great Lakes Seamen's Union, Local 5000, United Steelworkers of Am.*, 701 F.2d 590, 592 (6th Cir. 1983) (quoting *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233 (1971)). In this instance, the Court sees nothing "unreasonable" about

21

the rule that pilots who have been on unpaid leave for longer than twelve months become inactive members. *See id.* ("[W]e see nothing 'unreasonable' about a rule which, in effect, guarantees that internal union affairs will be governed by those whose interests are most at stake-workers presently employed in the steel industry."); *Reich v. Local 30, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am., AFL-CIO*, 6 F.3d 978, 990 (3d Cir. 1993) ("Once an employee remains out of 'covered work' for a period of time greater than six months, the Union considers that employee to be permanently unemployed. The Union's justification for the rule, i.e. protecting the interests of members working under union contracts, is a legitimate one. The Union's approach seems reasonable under the LMRDA[.]").

Second, Plaintiff's reliance on *Emery* is misplaced. In that case, another MDD pilot challenged APA's decision denying all MDD pilots' access to APA's online discussion forum, Challenge & Response ("C&R"). Judge Hurley determined that "APA's policy of denying MDD pilots' access to Challenge & Response constitutes [] an impermissible infringement on Plaintiff's right to free speech guaranteed by LMRDA." *Emery*, 227 F. Supp. 3d at 1302. Judge Hurley *did not* find that APA's distinction between active and inactive members violated the LMRDA or that MDD pilots were entitled to rights as active members in good standing. *See id.* (emphasis added). Even more, APA restored access to C&R for all MDD pilots, including Plaintiff, and Plaintiff had access to the forum when the amended complaint was filed. [ECF No. 238-3 at 141].

Third, Plaintiff's arguments that he should be given the status of active member of APA are foreclosed by the Valverde Award. "Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). The elements of issue preclusion are: that "(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the

issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *Id.* "Valid arbitration decisions are accorded *res judicata* and collateral estoppel effect." *City of Gainesville, Fla. v. Island Creek Coal Sales Co.*, 618 F. Supp. 513, 517 (N.D. Fla. 1984), *aff'd sub nom. City of Gainesville, Fla. v. Island Creek Coal Co.*, 771 F.2d 1495 (11th Cir. 1985). Here, all of the elements of issue preclusion are met by the Valverde Award. The issue presented by Plaintiff—whether he should be considered an active member of the APA under its Constitution and Bylaws—is identical to the issue determined by the Valverde Award; the issue was actually litigated; the determination of the issue was a critical and necessary part of the Award; and Plaintiff had a full and fair opportunity to litigate the issue because he presented evidence, called witnesses, and submitted post-hearing briefing. [ECF No. 238-2 at 192–200, 202–06].

Therefore, APA is entitled to summary judgment on Counts VI and VII.

e.   APA is Entitled to Summary Judgment on Count VIII

APA is entitled to Summary Judgment as a matter of law on Count VIII. Count VIII alleges that APA retaliated against Plaintiff for exercising his right to sue under the LMRDA. [ECF No. 35 at 87–94]. Specifically, he alleges that APA chose not to advance Grievance 12-011 to arbitration to retaliate against him for cross-examining APA officials in an internal proceeding. [*Id.* ¶¶ 335–44]. Further, Plaintiff alleges that APA engaged in a "retaliatory course of conduct" against him for filing federal lawsuits, threatening an EEOC action, and commencing proceedings against APA officers. [*Id.* ¶¶ 348–50].

First, Plaintiff's allegations premised on APA's failure to advance Grievance 12-011 is barred by *res judicata*. "The doctrine of res judicata, or claim preclusion, bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990). "Two cases involve the same causes of action if they arise out of the same nucleus of operative fact. A claim will be barred by res judicata if: (1) there was a final judgment on the merits in the earlier case; (2) the first decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same causes of action are involved in both cases." *Levine v. EverBank, FSB*, No. 117CV00826SCJCMS, 2017 WL 6994578, at *4 (N.D. Ga. Nov. 2, 2017), *report and recommendation adopted*, No. 1:17-CV-826-SCJ, 2017 WL 6994588 (N.D. Ga. Nov. 20, 2017) (internal citations omitted). If those four elements are present, "[t]he court next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, *res judicata* applies." *Id.* (internal quotations omitted).

All elements are established here. In 2014, Plaintiff sued APA in the District of Utah alleging that APA's failure to advance Grievance 12-011 constituted a breach of APA's duty of fair representation. *Meadows*, 2015 WL 13650044 at *3. The case was dismissed with prejudice in APA's favor. *Id.* at *4. Plaintiff now alleges that APA did not advance Grievance 12-011 to retaliate against him. [ECF No. 35 ¶¶ 335–344; ECF No. 238-3 at 286 ("On information and belief APA's last-minute refusal to arbitrate his grievance #12-011, was done in retaliation by APA's President and Legal Director, due to the hostility and personal animus exhibited by certain APA Executive Officers; whom Meadows personally cross-examined, during the previous months Equity Distribution Arbitration hearing. Wherein, Meadows exposed APA's arbitrary and discriminatory treatment of its disabled pilots, and shorting them of millions of dollars.")]. Plaintiff

24

could have raised the LMRDA claim premised on Grievance 12-011 in the Utah litigation and failed to do so. Therefore, APA's failure to advance Grievance 12-011 cannot constitute the basis of Plaintiff's retaliation theory.

Second, the Court finds that Plaintiff cannot establish retaliatory discipline. "Section 609 of the LMRDA provides that it is unlawful 'to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under [Section 101 of the LMRDA].'" *Shivers v. Int'l Broth. of Elec. Workers Local Union 349*, 262 F. App'x 121, 128 (11th Cir. 2008) (quoting 29 U.S.C. § 529). The Supreme Court explained that "'otherwise discipline' does not 'include all acts that deterred the exercise of rights protected under the LMRDA, but rather meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules.'" *Id.* at 128–29 (quoting *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 91 (1989)). Alleged retaliation by individual union officers cannot constitute a violation of LMRDA under Section 609. *See Breininger*, 493 U.S. 67. Here, Plaintiff does not allege he was fined, suspended, expelled or subjected to punishment authorized by APA as a collective entity; rather he alleges separate acts that do not constitute discipline within the meaning of LMRDA. [ECF No. 35 ¶ 348] (citing alleged retaliatory instances such as being denied access to APA's headquarters, APA refusing to issue him an active membership card, APA's president's interpretation that MDD pilots are inactive members of APA, among others); *see Camporeale v. Airborne Freight Corp.*, 732 F. Supp. 358, 366 (E.D.N.Y. 1990), *aff'd sub nom. Camporeale v. Airborne*, 923 F.2d 842 (2d Cir. 1990) ("As a matter of law, Local 295's processing of the grievance and its determination not to pursue formal arbitration on behalf of Camporeale is not 'discipline' or punishment within the meaning of section 101(a)(5) of the LMRDA. Such union

25

activity is simply not covered under the statute and the Court declines to unnecessarily broaden the reach of the LMRDA.").

Therefore, APA is entitled to summary judgment on Count VIII.

## V.    CONCLUSION

**THEREFORE**, for the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion for Summary Judgment [ECF No. 237] be **GRANTED**, and Plaintiff's Motion for Relief Under Rule 56(d) [ECF No. 250] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the assigned United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except on grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**SIGNED**, this 25th day of May 2026.

_____
LISETTE M. REID
UNITED STATES MAGSISTRATE JUDGE

cc: All counsel of Record

26