# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**LAWRENCE MEADOWS,**

       Plaintiff,                         **CASE NO. 1:17-CV-22589-EA**

   v.

**ALLIED PILOTS ASSOCIATION, *et al.*,**

       Defendants.

_____/

## PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

1

## INTRODUCTION

Defendant Allied Pilots Association ("APA") respectfully submits this set of proposed jury instructions per the Court's scheduling order (ECF No. 247). As is detailed in APA's contemporaneously filed pretrial stipulation, APA sought to confer with Plaintiff regarding jury instructions and other pretrial matters in advance of the May 29 deadline in the Court's scheduling order, but Plaintiff refused APA's repeated invitations to do so. Accordingly, APA files these proposed jury instructions unilaterally.

APA has filed a motion for summary judgment (ECF No. 237), and Magistrate Judge Reid has issued a report and recommendation (ECF No. 269) that recommends the Court grant APA's motion in full. APA's position remains that the claims in this case can and should be resolved as a matter of law, and APA does not waive any of its arguments in its summary judgment motion or concede that a jury trial is necessary in any respect by submitting these proposed instructions. In addition, APA respectfully reserves the right to modify these proposed instructions if any claims remain after final resolution of APA's motion for summary judgment.

APA further notes that, as detailed in its motion for summary judgment, certain issues in this case raise pure questions of law that are for the Court and not the jury to decide—including whether Mr. Meadows' theory of contractual breach

2

underlying Count III is barred by collateral estoppel, APA's preemption defense to the breach of contract claims in Counts IV and V, and liability for the Labor Management Reporting and Disclosure Act ("LMRDA") claims in Counts VI and VII. As to each of these issues, APA has proposed instructions in the event that the Court were to rule against APA as a matter of law.

Similarly, APA's position is that punitive damages should not be available for the LMRDA claims at issue in this case for the reasons described it its motion in limine. Nonetheless, in an abundance of caution, we have included instructions on punitive damages below.

**PRELIMINARY INSTRUCTIONS**

1-1    General Preliminary Instruction

1-2    Self-Represented Party

1-3    Jury Questions

1-4    Bench Conferences

## 1-1   General Preliminary Instruction

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, statements and arguments by the parties during trial aren't evidence. In their opening statements and closing arguments, the parties will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the questions and objections by the parties aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a question suggests that it is. For example, a party may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When someone asks a witness a question or presents an exhibit, the opposing party may object if they think the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may

receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;

- the reasonableness of the witness's testimony in light of all the evidence; and

- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize what this lawsuit is about and the parties' positions.

The Plaintiff is Lawrence Meadows, who worked as a pilot at American Airlines until he was terminated from American in 2011.[1] The Defendant is Allied Pilots Association, or "APA." APA is the union that represents pilots at American Airlines. APA and American have negotiated a series of agreements – called collective bargaining agreements – that set out the terms and conditions of employment for pilots at American. For example, the collective bargaining agreements contained rules about how pilots at American accrued and retained seniority on the pilot seniority list. A pilot's position on the seniority list is important to a pilot because it determines things like his or her compensation,

---

[1] Defendant is estopped from arguing that he is still an employee of American. *Meadows v. Am. Airlines*, No. 24-CV-20518, 2024 WL 5248006, at *8, *13 (S.D. Fla. Oct. 22, 2024) (holding that judicial and collateral estoppel bar Plaintiff from arguing otherwise); *In re AMR Corp.*, No. 11-15463 (SHL), 2016 WL 1559294, at *6 (Bankr. S.D.N.Y. Apr. 14, 2016), *aff'd*, 764 F. App'x 88 (2d Cir. 2019) (noting that "three neutral decision makers have determined that Mr. Meadows was terminated" and invoking judicial estoppel to preclude his arguing otherwise).

opportunities for promotions, and schedules.[2] Under the collective bargaining agreement between APA and American, American was responsible for keeping a list of the pilots employed at American in order of seniority.

Around 2003, Mr. Meadows stopped flying airplanes for American because of a medical condition. As a result, Mr. Meadows went on long-term leave from American. He also lost his medical certification from the Federal Aviation Administration (the "FAA"), which a pilot must have to work as a pilot for a commercial airline like American. In 2011, American Airlines informed Mr. Meadows that because he had been on leave for more than five years, if he could not either regain his medical certification or find some other, non-pilot job at the airline, he would be terminated and removed from the pilot seniority list.

APA's position is that both APA and American agreed that Mr. Meadows' termination was allowed by the collective bargaining agreement between the union and American. Mr. Meadows disagrees and contends that his termination violated the collective bargaining agreement.[3]

---

[2] ECF No. 244 ¶ 9.
[3] For the reasons set out in APA's motion in limine, APA's position is that Plaintiff is barred by res judicata from making this assertion.

Mr. Meadows makes eight claims against APA. I will briefly describe them, bearing in mind that you will hear more about them when the parties present their evidence.

Counts I and II

Counts I and II relate to a merger between American and U.S. Airways that occurred around 2013.[4] As part of that merger, those airlines and the unions that represented their pilots agreed to a process to merge their pilot seniority lists.[5] When the final, integrated seniority list was created in 2016, Mr. Meadows' name was not on it.[6] In Count I, Mr. Meadows claims that APA failed in its legal duty to represent him because the committee that represented APA in the integration proceedings did not include his name on the pre-merger American pilot seniority list it submitted as a part of the process to reach a final, integrated seniority list. APA responds that Mr. Meadows was not on the pre-merger seniority list because the committee that prepared the list could only include the names of pilots who were on American's pilot seniority list as of a certain date in 2013, when Mr. Meadows was not on American's seniority list.

---

[4] ECF No. 244 ¶¶ 71-72.
[5] ECF No. 244 ¶ 73.
[6] ECF No. 244 ¶¶ 82, 89.

In Count II, Mr. Meadows claims that APA failed in its legal duty to represent him because it did not initiate arbitration of a claim regarding the integration proceedings that Mr. Meadows sought to raise against American under provisions in a Memorandum of Understanding (or "MOU") between APA and American. APA responds that that MOU did not provide a mechanism for individual pilots to raise challenges to the integration proceedings, and it did not pursue arbitration of Mr. Meadows' claim for that reason.

Count III[7]

Count III involves what is called a "grievance" filed by APA against American Airlines. The collective bargaining between APA and American permits individual pilots or APA to file a grievance asserting that American has violated the collective bargaining agreement and creates a multi-step procedure for resolving such a grievance. If APA and American were unable to resolve a grievance at an early stage of the grievance process, APA could choose to advance the grievance to arbitration.

The grievance at issue in Count III was filed by APA on behalf of other pilots who, like Mr. Meadows, were terminated after being on paid leave for more than five years. Mr. Meadows and APA disagree about what that grievance was

---

[7]    The Court should give the jury this description of Count III only if the Court finds prior to trial that Mr. Meadows' theory of contractual breach is not barred by collateral estoppel.

11

about, and I will let them tell you more about that. What the parties agree on is that from 2012, when the grievance was filed,[8] until 2018, when Mr. Meadows filed the complaint in this case, APA did not pursue that grievance to arbitration. Mr. Meadows claims that if APA had done so, it would have resulted in his reinstatement at American, and he claims that failing to arbitrate was another failure in APA's duty to represent him. APA argues that the grievance did not cover Mr. Meadows, and that under no circumstances could it have resulted in his reinstatement. APA also argues that it made a reasonable decision to pursue the goals of the grievance through negotiations with American rather than arbitration.

Counts IV and V[9]

In Counts IV and V, Mr. Meadows claims that the same actions by APA that are the subjects of Counts I, II, and III were also breaches of certain provisions of APA's Constitution and Bylaws, which are a binding contract between APA and its members. APA argues that it did not violate its Constitution and Bylaws, and in any event that Mr. Meadows was not harmed by any alleged violation because no action by APA would have resulted in Mr. Meadows' reinstatement at American.

_____

[8] ECF No. 244 ¶ 48.
[9]     The Court should give the jury this description of Counts IV and V only if the Court finds against APA on its preemption defense prior to trial.

Counts VI and VII[10]

In Counts VI and VII, Mr. Meadows claims that APA violated a federal statute that protects certain rights of union members when APA created an internal rule that certain members—including members, like Mr. Meadows, have been on a leave of absence for more than a year—are inactive members of APA who cannot vote, run for office, or attend certain union meetings. I have already determined that the rule was unlawful, and the question for the jury is whether Mr. Meadows is entitled to any damages in connection with these claims.

Count VIII

In Count VIII, Mr. Meadows claims that APA retaliated against him for exercising his right to initiate litigation against APA and others. That claim is based on the fact that Mr. Meadows has filed a number of other lawsuits against APA and American, and also threatened to initiate an enforcement action against APA with the Equal Employment Opportunity Commission. APA argues that none of its actions were motivated by Mr. Meadows' lawsuits.

Burden of proof:

---

[10]    The Court should give the jury this description of Counts VI and VII only if the Court rules against APA on the question of liability before trial and also finds that punitive damages are available to Plaintiff in connection with those claims.

Mr. Meadows has the burden of proving each of his claims by what the law calls a "preponderance of the evidence." That means Mr. Meadows must prove that, in light of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Mr. Meadows and the evidence favoring APA on opposite sides of balancing scales, Mr. Meadows needs to make the scales tip to his side. If Mr. Meadows fails to meet this burden, you must find in favor of APA.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the parties' closing arguments, and my instructions on the law – before you begin

deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, encrypted-communication applications, the Internet – including social-networking websites and apps, or any other similar technology, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For

example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Mr. Meadows will present his witnesses and ask them questions. After Mr. Meadows questions the witness, APA may ask the witness questions – this is

called "cross-examining" the witness. Then APA will present its witnesses, and

Mr. Meadows may cross-examine them. You should base your decision on all the

evidence, regardless of which party presented it.

After all the evidence is in, the parties will present their closing arguments to

summarize and interpret the evidence for you, and I'll give you instructions on the

law.[11]

You'll then go to the jury room to deliberate.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 1.1 (2025). The instruction has been modified in two respects, First, because Plaintiff is representing himself *pro se*, it has been modified to use the terms "party" or "parties" rather than "lawyer" or "lawyers." Second, because this case has not received coverage in the news, the instruction has been modified to omit the admonition not to read or listen to the news about this case.

---

[11] The Court has discretion to provide some instructions before closing arguments. *See* Fed. R. Civ. P. 51(b)(3).

17

**1-2   Self-Represented Party**

As you consider the instructions I have just given you, I am also instructing you that the Plaintiff in this case, Lawrence Meadows, is representing himself in this trial. This fact must not affect your consideration of the case. Self-represented parties and parties represented by an attorney are entitled to the same fair consideration.

Because Mr. Meadows is acting as his own lawyer, you will hear him speak at various times during the trial. He may make an opening statement and closing argument and may ask questions of witnesses, make objections, and argue legal issues to the court. I want to remind you that when Mr. Meadows speaks in these parts of the trial, he is acting as his own advocate, and his words are not evidence. The only evidence in this case comes from witnesses who testify under oath on the witness stand or by deposition and from exhibits that are admitted into evidence. When a self-represented party testifies, you should treat this testimony just as you would the testimony of any other witness.

*Authority*: This instruction is adapted from *Ninth Circuit Model Civil Jury Instruction* § 1.22 (2026).

**1-3    Jury Questions**

During this trial, you may submit questions to a witness after the parties have finished their own questioning. Here is how the procedure works: After each witness has testified, and the parties have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the parties in the case. If the rules of evidence allow your question, one of the parties or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

19

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please don't ask any questions aloud.

- Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 1.4 (2025). Because Plaintiff is representing himself *pro se*, it has been modified to use the terms "party" or "parties" rather than "lawyer" or "lawyers."

## 1-4    Bench Conferences

One final note: During the trial it may be necessary for me to talk with the parties out of your hearing by having a bench conference. If that happens, please be patient. We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. While we meet, I may invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue, and permit you to leave the courtroom for a break.

I may not always grant a party's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

*Authority*: This instruction is modeled on *Third Circuit Model Civil Jury Instruction* 1.4 (2024).

22

## INSTRUCTIONS FOR USE DURING TRIAL

2-1     Stipulations

2-2     Use of Depositions

2-3     Striking Evidence

2-4     Evidence Admitted for a Limited Purpose

23

### 2-1    Stipulations

Sometimes the parties have agreed that certain facts are true. This agreement

is called a stipulation. You must treat these facts as proved for this case.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 2.1 (2025).

**2-2    Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Likewise, just as when a witness is testifying in court, it is only the testimony of the witness – and not the questions or objections from the person conducting the deposition – that are evidence in the case.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 2.2 (2025). The penultimate paragraph has been added to reaffirm that questions, objections, or other statements by a party during a deposition are not evidence.

25

**2-3    Striking Evidence**

I have ordered that [describe the evidence] be struck from the record and I am instructing you that you must disregard that information [testimony]. That means that when you are deciding the case, you must not consider that information [testimony] in any way.

*Authority*: This instruction is modeled on *Third Circuit Model Civil Jury Instruction* 2.9 (2024).

## 2-4    Evidence Admitted for a Limited Purpose

You [have heard] [will now hear] evidence that was received for [a] particular limited purpose[s]. [This evidence can be considered by you as evidence that (describe limited purpose)]. It may not be used for any other purpose. [For example, you cannot use it as proof that (discuss specific prohibited purpose)].

*Authority*: This instruction is modeled on *Third Circuit Model Civil Jury Instruction* 2.10 (2024).

**INSTRUCTIONS FOR USE AT END OF TRIAL**

3-1     Introduction

3-2     The Duty to Follow Instructions – Union Party Involved

3-3     Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

3-4     Credibility of Witnesses

3-5     Impeachment of Witnesses Because of Inconsistent Statements

3-6     Expert Witness

3-7     Responsibility for Proof

3-8     Introduction to Claims

3-9     Introduction to Counts I-III (Duty of Fair Representation)

3-10    Count I (Duty of Fair Representation) – Essential Elements

3-11    Count I (Duty of Fair Representation) – Affirmative Defense

3-12    Count II (Duty of Fair Representation) – Essential Elements

3-13    Count II (Duty of Fair Representation) – Affirmative Defense

3-14    Count III (Duty of Fair Representation) – Essential Elements

3-15    Counts I-III (Duty of Fair Representation) – Compensatory Damages

3-16    Introduction to Counts IV-V (Breach of Contract)

3-17    Breach of Contract (Counts IV-V) – Essential Elements

3-18    Breach of Contract (Counts IV-V) – Damages

3-19    Counts VI-VII (LMRDA) – Liability

3-20   Counts VI-VII (LMRDA) – Damages

3-21   Count VIII (LMRDA Retaliation) – Essential Elements

3-22   Count VIII (LMRDA Retaliation) – Damages

3-23   Damages for Multiple Claims

3-24   Election of Foreperson; Explanation of Verdict Form

3-25   Duty to Deliberate

## 3-1   Introduction

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished, you will go to the jury room and begin your discussions, sometimes called deliberations.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 3.1 (2025).

### 3-2   The Duty to Follow Instructions – Union Party Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a union is involved as a party must not affect your decision in any way. A union and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a union is involved, of course, it may act only through people, its employees and officers; and, in general, a union is responsible under the law for the acts and statements of its employees and officers that are made within the scope of their duties to the union.

*Authority*: This instruction is modeled on Eleventh Circuit Civil Pattern Jury Instruction 3.2.2 (2025). The term "corporation" has been replaced with the term "union." The instruction has also been modified to add that a union may act through its officers as well as its employees.

**3-3     Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But anything the parties say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 3.3 (2025). Because Plaintiff is representing himself *pro se*, it has been modified to use the term "parties" rather than "lawyers."

31

**3-4    Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1.    Did the witness impress you as one who was telling the truth?

2.    Did the witness have any particular reason not to tell the truth?

3.    Did the witness have a personal interest in the outcome of the case?

4.    Did the witness seem to have a good memory?

5.    Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6.    Did the witness appear to understand the questions clearly and answer them directly?

7.    Did the witness's testimony differ from other testimony or other evidence?

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 3.4 (2025).

**3-5    Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 3.5.1 (2025).

**3-6   Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion. You should consider each expert opinion received in evidence and give it such weight as you think it deserves. If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 3.6.1 (2025). The last two sentences are taken from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 104:40 (6th ed. 2026).

**3.7    Responsibility for Proof**

In this case it is the responsibility of Mr. Meadows, as Plaintiff, to prove every essential part of his claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" means an amount of evidence that is enough to persuade you that each of Mr. Meadows' claims is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Mr. Meadows.

Because there is more than one claim involved in this case, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Mr. Meadows' claims by a preponderance of the evidence, you should find for the APA as to that claim.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 3.7.1 (2025). The word "simply" has been omitted.

### 3-8    Introduction to Claims

Now I will talk about the claims that you are tasked with deciding in this case. Mr. Meadows has asserted eight claims against APA. For each claim, I will briefly describe what the claim is. Then I will instruct you as to the law on that claim and what findings you must make to determine in favor of either Mr. Meadows or APA. I will also instruct you how to calculate damages for each claim, which you will consider only in the event you find in favor of Mr. Meadows on that claim.

I will send a written copy of these instructions with you to the jury room when you begin your deliberations.

**3-9    Introduction to Counts I-III (Duty of Fair Representation)**

In Counts I, II, and III, Mr. Meadows claims that APA breached its duty of fair representation.

A union has a legal duty to fairly represent the interests of the employees it represents and to protect their rights under a collective-bargaining agreement.[12] This is known as the duty of fair representation. A union has broad discretion to determine how it should protect the rights of the employees it represents. For example, an employee does not have an absolute right to require the union to pursue a grievance – even a potentially meritorious grievance – on their behalf.[13] A union is permitted to make discretionary decisions in representational matters, even if its judgments are ultimately wrong.[14] A union breaches its duty of fair representation only when, in the course of negotiating, administering, or enforcing the collective bargaining agreement, the union's conduct toward an employee it represents is arbitrary, discriminatory, or in bad faith.[15]

In Counts I, II, and III, Mr. Meadows alleges that APA breached its duty of fair representation in three different ways.

---

[12] *See Eleventh Circuit Civil Pattern Jury Instruction* 4.17 (2025).
[13] *See Eleventh Circuit Civil Pattern Jury Instruction* 4.17 (2025).
[14] *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (1998).
[15] 3A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 157:80 (6th ed. 2026); *Air Line Pilots Association International v. O'Neill*, 499 U.S. 65, 67 (1991).

38

*Authority*: As reflected in the footnotes, this instruction is derived from *Eleventh Circuit Civil Pattern Jury Instruction* 4.17 (2025), 3A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 157:80 (6th ed. 2026), and the relevant case law.

### 3-10   Count I (Duty of Fair Representation) – Essential Elements

In Count I, Mr. Meadows claims that APA breached its duty of fair representation when the committee established by APA to represent American pilots in the proceedings to integrate pilot seniority lists after the merger of American and U.S. Airways did not include Mr. Meadows' name on the pre-merger American pilot seniority list that the committee submitted as a part of the process to reach a final, integrated seniority list.[16]

For Count I, you must determine whether Mr. Meadows has proved the following elements by a preponderance of the evidence:

1.      First, APA's conduct was arbitrary, discriminatory, or in bad faith when the committee that represented American pilots in the integration proceedings did not include Mr. Meadows' name on the pre-merger seniority list it submitted as a part of the process to reach a final, integrated seniority list.

2.      Second, there is a causal connection between APA's arbitrary, discriminatory, or bad-faith conduct and the injuries claimed by Mr. Meadows.

With respect to the first element, I will now instruct you on what it means for a union's actions to be arbitrary, discriminatory, or in bad faith.

---

[16] ECF No. 35 ¶¶ 219-229.

A union's actions are arbitrary only if, in the light of circumstances, its behavior is so far outside a "wide range of reasonableness" as to be irrational.[17] This wide range of reasonableness gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong.[18]

A union's actions are discriminatory only if they are intentional, severe, and unrelated to legitimate union objectives.[19] There is no requirement that unions treat their members identically as long as their actions are related to legitimate union objectives.[20] The law also recognizes that a union must act in the general interest of its membership, and it may have to compromise on positions that will inevitably favor a majority of its members at the expense of other of its members.[21]

A union's actions are in bad faith only if the plaintiff can prove the actions in question were a product of fraud, deceit, or dishonesty by the union.[22]

Mere negligence is never sufficient to sustain a claim for breach of the duty of fair representation.[23] Even if you disagree with the union's decision, or think the

---

[17] *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991)

[18] *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998).

[19] *Amalg. Ass'n of St., Elec. Ry. & Motor Coach Emps. of. Am. v. Lockridge*, 403 U.S. 274, 301 (1971).

[20] *See, e.g., Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 712 (2d Cir. 2010); *Demetris v. Transp. Workers Union of Am., AFL-CIO*, 862 F.3d 799, 806 (9th Cir. 2017).

[21] *Humphrey v. Moore*, 375 U.S. 335, 349-50 (1964).

[22] *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 531 (10th Cir. 1992) (citing *Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 299 (1971)).

[23] *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1521 (11th Cir. 1988).

union made an error in judgment, that is not enough to find that it acted arbitrarily, discriminatorily, or in bad faith.

With respect to the second element, if you find that APA's conduct was arbitrary, discriminatory, or in bad faith, you must then determine whether there is a causal connection between that breach of APA's duty and the injury claimed by Mr. Meadows. That is, you must decide whether the injury would not have occurred but for APA's conduct.[24]

The injury claimed by Mr. Meadows is his non-reinstatement as a pilot employed at American at his prior position on the pilot seniority list. As a result, in order to find a causal connection, you must find that but for the fact that Mr.

---

[24] "With respect to conduct apart from the arbitration, the Union is liable for damages only if its breach was a 'but-for' cause of those damages. '[C]ourts have held unions not liable for breaches of their duty of fair representation absent evidence that but for the union's conduct the employee would not have been injured.'" *Wood v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc.* 406, 807 F.2d 493, 502 (6th Cir. 1986) (quoting *Anderson v. United Paperworkers Int'l Union,* 641 F.2d 574, 580 n.8 (8th Cir. 1981)); *see Am. Airlines Flow-Thru Pilots Coal. v. Allied Pilots Ass'n,* No. 21-16131, 2022 WL 4481533, at *3 (9th Cir. Sept. 27, 2022) ("Several of our sister circuits have also required a showing of causation in fact for duty-of-fair-representation claims.") (citing cases establishing but-for standard); *Williams v. Romano Bros. Beverage Co.*, 939 F.2d 505, 508 (7th Cir. 1991) (in a claim based on a breach of duty of fair representation in connection with grievance proceedings, "the plaintiff must establish that the Union's breach actually affected the outcome of the arbitration"); *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) ("Establishing that the union's actions were sufficiently 'arbitrary, discriminatory or in bad faith,' is only the first step toward proving a fair representation claim. Plaintiffs must then demonstrate a causal connection between the union's wrongful conduct and their injuries.").

42

Meadows' name was not included on the premerger seniority list that the American committee submitted as a part of the process to reach a final, integrated seniority list after the merger of American and U.S. Airways, Mr. Meadows would have been reinstated to employment at American and returned to his position on the pilot seniority list.

*Authority*: This instruction is derived from *Eleventh Circuit Civil Pattern Jury Instruction* 3.7.1 (2025), 3A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 157:80 (6th ed. 2026), and the relevant case law.

### 3-11  Count I (Duty of Fair Representation) – Affirmative Defense

APA asserts as a defense that the statute of limitations prohibits Mr. Meadows' claim in Count I. A statute of limitations is a law providing that a suit is prohibited if a plaintiff does not bring it within a prescribed period of time.

The applicable statute of limitations period for a duty-of-fair representation claim is six months.[25] That period begins to run when the plaintiff discovers, or in the exercise of reasonable diligence should discover, the acts that form the basis of their duty-of fair-representation claim. [26]

APA has the burden of proving the statute of limitations defense. APA must prove by a preponderance of the evidence that Mr. Meadows did not bring suit within the applicable time period.

APA must prove by a preponderance of the evidence that by January 11, 2017, Mr. Meadows had discovered, or in the exercise of reasonable diligence should have discovered, the acts by APA that form the basis for his duty-of-fair-representation claim in Count I. As I have explained, in Count I, Mr. Meadows alleges that APA violated its duty of fair representation when the committee that represented American pilots in the proceedings to integrate seniority lists after the

---

[25] *Smallakoff v. Air Line Pilots Ass'n, Int'l*, 825 F.2d 1544, 1545 (11th Cir. 1987).
[26] *Trial v. Atchison, Topeka & Santa Fe Ry. Co.*, 896 F.2d 120, 124 (5th Cir 1990); *Avera v. Airline Pilots Ass'n Int'l*, 436 F. App'x 969, 979 (11th Cir. 2011).

merger of American and U.S. Airways did not include Mr. Meadows' name on the pre-merger seniority list it submitted as a part of the process to reach a final, integrated seniority list. If you find that APA has proved by a preponderance that Mr. Meadows knew, as of January 11, 2017, that the committee had not included Mr. Meadows' name on the list it submitted in the integration proceedings, you must find against Mr. Meadows on Count I.

*Authority*: This instruction is adapted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 107:01 (6th ed. 2026).

**3-12  Count II (Duty of Fair Representation) – Essential Elements**

In Count II, Mr. Meadows claims that APA breached its duty of fair representation when it did not initiate arbitration in response to what the parties have referred to as Mr. Meadows' "MOU grievance."[27] APA's position is that it did not initiate arbitration of Mr. Meadows' MOU grievance because the agreement that it relied on, a memorandum of understanding between APA and American regarding matters affected by the merger with U.S. Airways, did not provide a mechanism for individual pilots to file grievances.

For Count II, you must determine whether Mr. Meadows has proved the following elements by a preponderance of the evidence:

1.      First, APA's decision not to advance the MOU grievance to arbitration due to its interpretation of the Memorandum of Understanding was arbitrary, discriminatory, or in bad faith.

2.      Second, there is a causal connection between APA's arbitrary, discriminatory, or bad-faith conduct and the injuries claimed by Mr. Meadows.

In my instructions on Count I, I instructed you on what it means for a union's actions to be arbitrary, discriminatory, or in bad faith. Those instructions apply to Count II as well.

---

[27] ECF No. 35 ¶¶ 230-41.

My prior instructions on Count I regarding causal connection also apply to Count II. For Count II, in order to find a causal connection, you must find that but for APA's conduct with respect to the MOU grievance, Mr. Meadows would have been reinstated to employment at American and returned to the pilot seniority list.

*Authority*: This instruction is derived from *Eleventh Circuit Civil Pattern Jury Instruction* 3.7.1 (2025), 3A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 157:80 (6th ed. 2026), and the relevant case law.

### 3-13   Count II (Duty of Fair Representation) – Affirmative Defense

As with Count I, APA also asserts as a defense that the statute of limitations prohibits Mr. Meadows' claim in Count II. I have already explained what a statute of limitations is and APA's burden of proving a statute-of-limitations defense by a preponderance of the evidence. Those instructions apply to APA's affirmative defense to Count II as well.

APA must prove by a preponderance of the evidence that by January 11, 2017, Mr. Meadows had discovered, or in the exercise of reasonable diligence should have discovered, the acts by APA that form the basis for his duty-of fair-representation claim in Count II. As I have explained, in Count II, Mr. Meadows alleges that APA violated its duty of fair representation when it did not initiate arbitration in response to Mr. Meadows' so-called "MOU grievance." If you find that APA has proved by a preponderance that Mr. Meadows knew, as of January 11, 2017, that APA had decided not to initiate arbitration of the MOU grievance, you must find against Mr. Meadows on Count II.

*Authority*: This instruction is adapted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 107:01 (6th ed. 2026).

**3-14   Count III (Duty of Fair Representation) – Essential Elements**

In Count III, Mr. Meadows claims that APA breached its duty of fair representation because it did not submit DFW Base Grievance 12-012 to arbitration between 2012 and 2018.[28]

As to Count III, you must find that Mr. Meadows proved the following elements, each by a preponderance of the evidence:

1.      First, American violated the collective bargaining agreement between APA and American by terminating Mr. Meadows in 2011.[29]

2.      Second, APA's conduct was arbitrary, discriminatory, or in bad faith when it did not submit DFW Base Grievance 12-012 to arbitration between 2012 and 2018.

3.      Third, there is a causal connection between APA's arbitrary, discriminatory, or bad-faith conduct and the injuries claimed by Mr. Meadows.

---

[28] ECF No. 35 ¶¶ 242-51.

[29] For the reasons described in APA's motion in limine, APA's position is that Mr. Meadows is barred by collateral estoppel stemming from his Utah lawsuit against APA from arguing that his 2011 termination from American violated the collective bargaining agreement, and that Count III should not be presented to a jury because Mr. Meadows cannot prove this essential element of his claim. The court in that case held that the collective bargaining agreement "expressly allows American to remove a pilot from the Seniority List if the pilot exhausts his or her sick leave of absence," and "[t]hus, when American removed Plaintiff from the Seniority List, it acted within the confines of the CBA." Order, *Meadows v. APA,* No. 2:14-CV-00115 (D. Utah Nov. 3, 2015), ECF No. 35, at 6–7; *see also Meadows v. APA*, *Meadows v. APA*, No. 2:14-CV-00115, 2015 WL 13650044 (D. Utah Apr. 27, 2015), *aff'd*, 822 F. App'x 653 (10th Cir. 2020), *4 (explaining that Plaintiff's argument was "not supported by the CBA").

In my instructions on Count I, I instructed you on what it means for a union's actions to be arbitrary, discriminatory, or in bad faith. Those instructions apply to Count III as well.

My prior instructions on Count I regarding causal connection also apply to Count III. For Count III, in order to find a causal connection, you must find that but for the fact that APA had not submitted DFW Base Grievance 12-012 to arbitration between 2012 and 2018, Mr. Meadows would have been reinstated to employment at American and returned to the pilot seniority list.

*Authority*: This instruction is derived from *Eleventh Circuit Civil Pattern Jury Instruction* 3.7.1 (2025), 3A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 157:80 (6th ed. 2026), and the relevant case law.

### 3-15   Counts I-III (Duty of Fair Representation) – Compensatory Damages

If you find for Mr. Meadows on one of more of his duty-of-fair-representation claims (Counts I, II, or III), you must then consider his compensatory damages. The damage award should be an amount that justly compensates him for the damages he incurred.

The measure of the damages for Counts I to III, if any, is the amount of compensation Mr. Meadows would have earned from American had Mr. Meadows been reinstated to employment.  You should award only those damages that Mr. Meadows has proven by a preponderance of the evidence were caused by APA's wrongful actions. The law requires that compensatory damages be based on evidence, not speculation or guesswork. But precise calculation is not required; you should use sound discretion in fixing an award that fairly compensates Mr. Meadows for the harm.[30]

 In determining the amount of any damages, you should be guided by dispassionate common sense. You must not let bias, sympathy, or prejudice affect your judgment. [31] You should not award damages as a punishment or as an example to others. (Punitive damages, which are separate, are not at issue unless I

---

[30] Adapted from *Eleventh Circuit Civil Pattern Jury Instruction* 5.13 (2025) (§ 1983 Claims-Damages).

instruct you otherwise.) The sole purpose of compensatory damages is to compensate for the loss or injury sustained. [32]

You must reduce Mr. Meadows' damages by any earnings Mr. Meadows received, or reasonably could have received, from other employment. Mr. Meadows has a duty to mitigate or minimize his damages. APA is not responsible for lost earnings to the extent that Mr. Meadows could have avoided those lost earnings by using reasonable care in seeking other employment.[33] If you should find that APA has proved that Mr. Meadows failed to seek out or take advantage of a business opportunity reasonably available to Mr. Meadows under all the circumstances shown by the evidence, then you should reduce the amount of Mr. Meadows' damages by the amount he could have reasonably realized if he had taken advantage of such opportunity.[34]

After you have determined an amount for damages, you must then apportion the damages between American and APA. Although American is not a party to this lawsuit, American is responsible for lost compensation caused by Mr. Meadows' non-reinstatement, and APA is only responsible for any increase in the amount  of

---

[32] Adapted from *Eleventh Circuit Civil Pattern Jury Instruction* 5.13 (2025) (§ 1983 Claims-Damages).

[33] *See Eleventh Circuit Civil Pattern Jury Instruction* 4.17 (2025).

[34] *See* 3A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 157:132 (6th ed. 2026)

lost compensation that it caused by breaching its duty of fair representation. [35]  So

if you decide that Mr. Meadows would have been reimbursed for lost

compensation or reinstated to his job if APA had fairly represented him, then you

must divide the lost compensation between American and APA. In that case, you

should allot damages to the APA to the extent its breach of duty to fairly represent

Mr. Meadows increased the amount of compensation he lost. In other words, you

may not assign damages that are attributable to American to APA, simply because

American is not a party to this lawsuit. [36]


*Authority*: This instruction is adapted from *Eleventh Circuit Civil Pattern Jury Instruction* 4.17 and 5.13 (2025); *Eleventh Circuit Civil Pattern Jury Instruction* 5.13 (2025); 3A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 157:132 (6th ed. 2026); and applicable case law.

---

[35] *Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 223-24 (1983) (citing *Vaca v. Sipes*, 386 U.S. 171, 197-98 (1967)); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983) (under the LMRDA "the employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.").

[36] *See Eleventh Circuit Civil Pattern Jury Instruction* 4.17 (2025). Amongst other things, these instructions were modified to account for the fact that American is not a defendant in this lawsuit, as the model instructions assume would be the case.

**3-16  Introduction to Counts IV-V (Breach of Contract)**

In Counts IV and V, Mr. Meadows claims that APA breached its contractual obligations to Mr. Meadows in APA's Constitution and Bylaws.[37]

Count IV – In Count IV, Mr. Meadows claims APA breached a contractual obligation in the Constitution and Bylaws because the committee that represented American pilots in the seniority list integration process did not include Mr. Meadows' name on the premerger pilot seniority list it submitted as part of the integration process.[38]

Count V – In Count V, Mr. Meadows claims that APA breached a contractual obligation in the Constitution and Bylaws when APA did not submit his "MOU grievance" to arbitration and did not submit DFW Base Grievance 12-012 to arbitration between 2012 and 2018.[39]

---

[37] As noted in the introduction, APA's position is that Counts IV and V are preempted by federal law, and that the Court must make a determination as to that defense prior to trial. APA submits these instructions in the event that the Court rules against APA on that issue.

[38] ECF No. 35 ¶¶ 252-64.

[39] ECF No. 35 ¶¶ 265-85.

### 3-17   Breach of Contract (Counts IV-V) – Essential Elements

For the purposes of this case, I am instructing you that, as a matter of law, APA's Constitution and Bylaws is a contract between APA and Mr. Meadows.[40]

To recover damages from APA for breach of contract on Counts IV and V, Mr. Meadows must prove the following with respect to each count:

1.     First, APA failed to do something essential which the Constitution and Bylaws required it to do.

2.     Second, Mr. Meadows was damaged by that failure.[41]

I will now give you several instructions on how you should go about interpreting disputed provisions in the contract.

You must accept APA's interpretation of its Constitution and Bylaws if you find that it is a fair and reasonable interpretation.[42] In other words, you should accept APA's interpretation of its Constitution and Bylaws as long as its

---

[40] *See Waverly 1 & 2, LLC v. Waverly at Las Olas Condo. Ass'n, Inc.*, 242 So. 3d 425, 428 (Fla. Dist. Ct. App. 2018).

[41] *See* Florida Standard Jury Instructions, Contract & Business Cases § 416.4 (2025).

[42] *Loc. 317, Nat'l Post Off. Mail Handlers, Watchmen, Messengers & Grp. Leaders Div. of Laborers' Etc. v. Nat'l Post Off. Mail Handlers, Etc.*, 696 F.2d 1300, 1302 (11th Cir. 1983); *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1187 (11th Cir. 2010) (same); *see also, e.g., Bhd. of Locomotive Eng'rs v. Folkes*, 109 S.E.2d 392, 398 (Va. 1959) ("It is well established that 'the construction of the organic agreement, by-laws, rules and regulations of a benefit society or other unincorporated voluntary association belongs, not to the court, but to the board, council or other tribunal provided for the purpose in the organization, if any. So long as the body upon which this power of interpretation has been conferred does not substitute legislation for interpretation, nor transgress the bounds of reason, common sense, or fairness, nor contravene public policy or the laws of the land, in their conclusions and decisions, the courts cannot interfere with them.'") (citing cases).

interpretation is not obviously or clearly wrong. In general, you should assume that the parties intended the disputed terms in their contract to have their plain and ordinary meaning, unless you decide that the parties intended the disputed terms to have another meaning.[43] When the disputed terms in the contract are technical or special words used in the labor relations context, those disputed terms should be given the meaning used by people in that trade.[44]

Not all words in a contract necessarily create binding obligations.[45] Sometime a contract may include language that is "precatory." Precatory words are words whose ordinary significance imports request, recommendation, or expectation rather than any mandatory direction.[46] Contract language that is precatory does not create binding, enforceable obligations.[47]

*Authority*: As indicated in the accompanying footnotes, this instruction is modeled on Florida case law, general principles of contract interpretation, and the Florida Standard Jury Instructions.

---

[43] *See* Florida Standard Jury Instructions, Contract & Business Cases, § 416.15 (2025).

[44] *See* Florida Standard Jury Instructions, Contract & Business Cases, § 416.16 (2025).

[45] Restatement (Second) of Contracts § 203, comment b. (1981) ("The preference for an interpretation which gives meaning to every part of an agreement does not mean that every part is assumed to have legal consequences.").

[46] *Grange Mut. Cas. Co. v. Woodard*, 861 F.3d 1224, 1232 (11th Cir. 2017) (quoting *Kemper v. Brown,* 325 Ga. App. 806 (2014) ("Precatory words are words whose ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction."); *Precatory*, *Black's Law Dictionary* (12th ed. 2024) (words "requesting, recommending, or expressing a desire rather than a command").

[47] *Grant v. Bessemer Tr. Co. of Fla. ex rel. Grant*, 117 So. 3d 830, 836 (Fla. Dist. Ct. App. 2013) (precatory language in a will did not create enforceable obligation).

### 3-18   Breach of Contract (Counts IV-V) – Damages

If you find for APA on Counts IV and/or V, you will not consider the matter of damages. But if you find for Mr. Meadows, you should award him an amount of money that the greater weight of the evidence shows will fairly and adequately compensate Mr. Meadows for his damages.[48]

In making that calculation, you should consider only compensatory damages. Compensatory damages is the amount of money which will put Mr. Meadows in as good a position as he would have been if APA had not breached the contract and which naturally result from the breach.[49]

If you decide that APA breached the contract but also that Mr. Meadows did not prove any loss or damage, you may still award Mr. Meadows nominal damages such as one dollar.[50]

As I have previously instructed you, Mr. Meadows has a duty to mitigate or minimize his damages. You must reduce Mr. Meadows' damages by any earnings Mr. Meadows received, or reasonably could have received, from other employment. APA is not responsible for lost earnings to the extent that Mr. Meadows could have avoided those lost earnings by using reasonable care in

---

[48] Florida Standard Jury Instructions, Contract & Business Cases, § 504.1 (2025).
[49] Florida Standard Jury Instructions, Contract & Business Cases, § 504.2 (2025).
[50] Florida Standard Jury Instructions, Contract & Business Cases, § 504.11 (2025).

seeking other employment.[51] If you should find that APA has proved that Mr. Meadows failed to seek out or take advantage of a business opportunity reasonably available to Mr. Meadows under all the circumstances shown by the evidence, then you should reduce the amount of the Mr. Meadows damages by the amount he could have reasonably realized if he had taken advantage of such opportunity.[52]

*Authority*: As indicated in the accompanying footnotes, this instruction is modeled on the Florida Standard Jury Instructions.

---

[51] *See Eleventh Circuit Civil Pattern Jury Instruction* 4.17 (2025).
[52] *See* 3A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 157:132 (6th ed. 2026).

### 3-19   Counts VI-VII (LMRDA) – Liability

In Counts VI and VII, Mr. Meadows claims APA violated his rights under the Labor-Management Reporting and Disclosure Act, or LMRDA, by designating him an inactive member of APA rather than an active member in good standing.[53]

APA's Constitution and Bylaws create a class of members known as "inactive" members.[54] The Constitution and Bylaws state that "inactive members shall enjoy all of the benefits of active membership except the privileges of voting, holding elected office, and participation in [certain] sponsored programs."[55] The Constitution and Bylaws further provide that "[a] member in good standing shall automatically be transferred to inactive membership status upon . . . [b]eing on leave of absence from the Company twelve months after the expiration of paid sick leave."[56] Mr. Meadows was treated as an inactive member when he filed this lawsuit in 2018.

The LMRDA provides that "[e]very member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings and to participate in the deliberations and voting upon the business of

---

[53] ECF No. 35 ¶¶ 286-328.
[54] ECF No. 244 ¶¶ 105-109.
[55] ECF No. 244 ¶ 107 (citing Constitution and Bylaws Art. III § 7.B).
[56] ECF No. 244 ¶ 109 (citing Constitution and Bylaws Art. III § 2.C).

such meetings, subject to reasonable rules and regulations in such organization's Constitution and Bylaws."[57]

I am instructing you that I have found, as a matter of law, that the creation of a class of inactive members in APA's Constitution and Bylaws is unreasonable and therefore violates the LMRDA. The only issue for you to consider is punitive damages.

*Authority*: As described in greater detail in APA's motion for summary judgment, it is undisputed that APA's Constitution and Bylaws create a class of "inactive" members and that Mr. Meadows was treated as an inactive member at the time he filed the Amended Complaint in 2018. *See* ECF No. 237, at 21-26. The only dispute is whether the distinction that the Constitution and Bylaws draw between "inactive" members and other classes of members is reasonable under the LMRDA. Courts have consistently treated that issue as a matter of law for a court to decide rather than a question of fact for a jury. *See id.* at 24-26 (citing cases). We have included this instruction in the event that the Court were to find against APA on the question of liability.

---

[57] 29 U.S.C. § 101(a)(1).

59

**3-20   Counts VI-VII (LMRDA) – Punitive Damages**

The only damages you may consider for Counts VI and VII are punitive

damages, which are damages intended to punish APA. You may not award

compensatory damages, including damages for any lost wages or other economic

loss. The court, and not the jury, will address the award of other, non-monetary

forms of relief.

Punitive damages are appropriate only in the most egregious cases.[58] You

may impose punitive damages for Counts VI and VII only if you find that the

union acted with actual malice or reckless or wanton indifference to the rights of

Mr. Meadows.[59] A person acts with malice if the person's conduct is motivated by

evil intent or motive.[60] A person acts with reckless indifference to the protected

federal rights of another person when the person engages in conduct with a callous

disregard for whether the conduct violates those protected federal rights.[61]

If you make an award of punitive damages, you must bear in mind that the

collective interests of the union membership, most of which is ordinarily innocent

of wrongdoing, could be directly and severely harmed by the financial impact of a

punitive damages award. As a result, the amount of any such award must not be so

---

[58] *Quinn v. DiGiulian*, 739 F.2d 637, 651 (D.C. Cir. 1984).
[59] *Parker v. Loc. 1466, United Steelworkers of Am., AFL-CIO*, 642 F.2d 104 (5th Cir. 1981) (citing *Boilermakers v. Braswell*, 388 F.2d 193, 199 (5th Cir. 1968)).
[60] *Eleventh Circuit Civil Pattern Jury Instruction* 4.1 (2025).
[61] *Eleventh Circuit Civil Pattern Jury Instruction* 4.1 (2025).

great as to cripple the union financially and detract significantly from its ability to

represent its members.[62]

*Authority*: As indicated in the accompanying footnotes, this instruction derives from cases addressing the availability of punitive damages under the LMRDA. The only damages that Mr. Meadows seeks in Counts VI and VII are punitive damages and therefore compensatory damages are unavailable at trial. ECF No. 35 ¶¶ 307, 328. APA has filed a motion in limine to exclude evidence of punitive damages but provides this instruction in case the Court denies that motion.

---

[62] *Quinn v. DiGiulian*, 739 F.2d 637, 651 (D.C. Cir. 1984).

### 3-21   Count VIII (LMRDA Retaliation) – Essential Elements

Finally, in Count VIII, Mr. Meadows claims that APA took certain actions against Mr. Meadows to retaliate against him for exercising his right to bring legal actions against APA and American Airlines. The LMRDA provides that a union member has a right to initiate a lawsuit or proceeding before an administrative agency. The law forbids a union to retaliate against a member for exercising that right.

To succeed on his retaliation claim, Mr. Meadows must prove each of the following elements by a preponderance of the evidence:

1.  First, Mr. Meadows engaged in a protected activity.

2.  Second, APA then took an adverse action against Mr. Meadows.

3.  Third, APA took the adverse action because of Mr. Meadows' protected activity.

4.  Fourth, the adverse action caused Mr. Meadows' damages.

<u>Protected Activity</u>

For the first element, in order to find that Mr. Meadows engaged in "protected activity," you must find that Mr. Meadows instituted an action in any court or a proceeding before any administrative agency.[63]

---

[63] *See* 29 U.S.C. § 411(a)(4).

<u>Adverse Action</u>

As for the second element, Mr. Meadows alleges that APA took a number of adverse actions against him. You are instructed that you must consider these actions individually, not in the aggregate. If you find that none of the actions I am about to list are sufficient to constitute adverse actions on their own, you are not permitted to decide that, taken together, they add up to an adverse action.[64]

The discrete actions alleged by Mr. Meadows are:[65]

1.  APA decided in August 2013 not to advance Grievance 12-011 to arbitration.[66]

2.  On February 14, 2014, Mr. Meadows was denied access to APA headquarters before an arbitration meeting.

3.  On March 7, 2014, APA's secretary-treasurer amended APA's proof of claim in the American bankruptcy to Plaintiff's disadvantage by removing Grievance 12- 011 from preservation through the proof of claim.

4.  On March 27, 2014, APA refused to process a request Mr. Meadows made for reinstatement to American.

5.  On April 17, 2014, APA's general counsel made a "surprise" appearance "on behalf of [his] adversary" at a bankruptcy hearing.

---

[64] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (each incident of retaliatory conduct is separately actionable under Title VII); *see Hamic v. Harris Cnty. W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006) ("[R]etaliation is, by definition, a discrete act, not a pattern of behavior.").

[65] ECF No. 35 ¶ 348; *see also* ECF No. 237, at 32-35.

[66] For the reasons described in APA's motion for summary judgment and its motion in limine, APA's position is that Mr. Meadows is barred by res judicata from asserting a retaliation claim based on APA's decision not to advance Grievance 12-011 to arbitration. APA provides this instruction in case the Court rejects APA's position.

6.  On April 22, 2014, APA's Board of Directors decided to exclude MDD pilots (along with hundreds of other pilots) from the Challenge & Response online forum.

7.  In July 2014, APA took the position in its motion to dismiss a lawsuit brought by Mr. Meadows in the District of Utah that the internal exhaustion requirements under APA's Constitution and Bylaws were binding on Plaintiff.

8.  For several years, APA's secretary-treasurer refused to issue Mr. Meadows an "active membership card."

9.  On June 20, 2016, APA President Keith Wilson issued a constitutional interpretation that all MDD pilots were inactive members of APA.

10.  On March 2, 2017, APA denied Plaintiff access to the union hall.

11.  On October 18, 2018, APA President Dan Carey issued a constitutional interpretation adopting an arbitrator's position that inactive members of APA were not members in good standing.

To find that any of those actions is an adverse action, you must determine two things.

First, you must determine by a preponderance of the evidence that the action occurred.

Second, you must determine that the action was "materially adverse" to Mr. Meadows—a standard that requires some injury or harm and excludes petty slights or minor annoyances.[67] To find that an action is materially adverse, you must find that the action would make a reasonable union member reluctant to exercise their

---

[67] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 68 (2006).

64

Case 1:17-cv-22589-EA   Document 275   Entered on FLSD Docket 05/29/2026   Page 65 of 93

right to sue. Put another way, if a reasonable union member would be less likely to initiate a lawsuit or administrative proceeding because he knew that APA would take the action in question, then that action is an adverse action. Otherwise, it is not.

Causation

For the third element, if you find that Mr. Meadows instituted an action in court or a proceeding before an administrative agency, and that APA took an adverse action against him, you must decide whether APA took that action because of Mr. Meadows' protected activity.

To determine that APA took an adverse action because of Mr. Meadows' protected activity, you must find that, all other things remaining the same, APA would not have taken the action had Mr. Meadows not engaged in the protected activity. At a minimum, Mr. Meadows must demonstrate that the relevant decisionmaker responsible for the adverse action was aware of the protected activity, and that the protected activity and the adverse action were not wholly unrelated.[68] At the same time, Mr. Meadows does not have to prove that his

---

[68] To establish a causal connection, a plaintiff must show that the relevant decisionmaker was "aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (quoting *Shannon v. Bellsouth Telecomm., Inc.,* 292 F.3d 712, 716 (11th Cir. 2002)).

65

protected activity was the only or main reason that APA took that action. APA cannot avoid liability just because some other factor played a role in its decision.

A union may not take an adverse action against a union member because of the member's protected activity. However, it is not retaliation for purposes of this lawsuit if APA took the above actions for any other reason, good or bad, fair or unfair. If you believe APA's reasons for taking adverse action against Mr. Meadows, and if you find that APA's decision to take those actions was not made because of Mr. Meadows' protected activity, you must not second guess that decision, and you must not substitute your own judgment for APA's judgment – even if you do not agree with it.

Damages

For the fourth element, in order to find that an adverse action by APA caused Mr. Meadows' damages, you must find that Mr. Meadows would not have suffered damages without APA's conduct and that the damages were a reasonably foreseeable consequence of APA's conduct.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 4.22 (2025) (Retaliation – Section 1981, Title VII, ADEA, ADA, and FLSA), with modifications where appropriate to account for LMRDA caselaw.

66

**3-22   Count VIII (LMRDA Retaliation) – Damages**

If and only if you find for Mr. Meadows on each of the four elements of an LMRDA retaliation claim, as I have just described, you must then consider damages. When you do, you may consider three kinds of damages – compensatory damages, nominal damages, and punitive damages. The court, and not the jury, will address the award of other, non-monetary forms of relief.

Compensatory Damages

A compensatory damage award should be the amount that justly compensates Mr. Meadows for the damages he incurred as a direct result of APA's retaliation. You should award only those damages that Mr. Meadows has proven by a preponderance of the evidence were caused by APA's wrongful actions. Damages must be based on evidence, not speculation or guesswork. The law does not permit you to award speculative damages (that is, compensation for future harm that might occur or for harm that is possible but not reasonably certain). But precise calculation is not required; you should use sound discretion in fixing an award that fairly compensates Mr. Meadows for the harm.[69]

You should not award damages as a punishment or as an example to others. (Punitive damages, which are separate, are not at issue unless I instruct you

---

[69] Adapted from *Eleventh Circuit Civil Pattern Jury Instruction* 5.13 (2025) (§ 1983 Claims-Damages).

67

otherwise.) The sole purpose of compensatory damages is to compensate for the loss or injury sustained. [70]

In determining the amount of any damages, you should be guided by dispassionate common sense. You must not let bias, sympathy, or prejudice affect your judgment. The damages you award must be fair and reasonable, neither inadequate nor excessive, and they must be based on the evidence presented at trial. [71]

Punitive Damages[72]

You may also consider punitive damages, which are damages intended to punish APA. My prior instructions on Counts VI and VII regarding punitive damages also apply to Count VIII.

Punitive damages are appropriate only in the most egregious cases.[73] You may impose punitive damages for Count VIII only if you find that the union acted with actual malice or reckless or wanton indifference to the rights of Mr. Meadows.[74] A person acts with malice if the person's conduct is motivated by evil

---

[70] Adapted from *Eleventh Circuit Civil Pattern Jury Instruction* 5.13 (2025) (§ 1983 Claims-Damages).

[71] Adapted from *Eleventh Circuit Civil Pattern Jury Instruction* 5.13 (2025) (§ 1983 Claims-Damages).

[72] APA has filed a motion in limine to exclude evidence of punitive damages but provides this instruction in case the Court denies that motion.

[73] *Quinn v. DiGiulian*, 739 F.2d 637, 651 (D.C. Cir. 1984).

[74] *Parker v. Loc. 1466, United Steelworkers of Am., AFL-CIO*, 642 F.2d 104 (5th Cir. 1981) (citing *Boilermakers v. Braswell*, 388 F.2d 193, 199 (5th Cir. 1968)).

intent or motive.[75] A person acts with reckless indifference to the protected federal rights of another person when the person engages in conduct with a callous disregard for whether the conduct violates those protected federal rights.[76]

If you make an award of punitive damages, you must bear in mind that the collective interests of the union membership, most of which is ordinarily innocent of wrongdoing, could be directly and severely harmed by the financial impact of a punitive damages award. As a result, the amount of any such award must not be so great as to cripple the union financially and detract significantly from its ability to represent its members.[77]

*Authority*: The authority for this instruction is derived from several sources identified in the footnotes.

---

[75] *Eleventh Circuit Civil Pattern Jury Instruction* 4.1 (2025).
[76] *Eleventh Circuit Civil Pattern Jury Instruction* 4.1 (2025).
[77] *Quinn v. DiGiulian*, 739 F.2d 637, 651 (D.C. Cir. 1984).

**3-23   Damages for Multiple Claims**

You may not award damages more than once for the same injury. For example, if Mr. Meadows were to prevail on two claims but only prove one dollar worth of damages, you could not award Mr. Meadows one dollar of damages on each claim. That is because Mr. Meadows is only entitled to be made whole again, not to recover more than he lost. Of course, if different injuries are attributed to the separate claims, then you may compensate Mr. Meadows fully for all of those injuries.

*Authority*: This instruction is adapted from 4 Leonard Sand et al., *Modern Federal Jury Instructions* 77-2 (2023).

### 3-24   Election of Foreperson; Explanation of Verdict Form

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience. In this case, the verdict form includes a series of questions for each count as I've just described them to you. Please read and follow the instructions carefully and fill out the form in its entirety, answering every question unless the form instructs otherwise.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, including asking questions about the verdict form, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 3.9 (2025).

**3-25   Duty to Deliberate**

It is your duty as jurors to consult with one another and to deliberate expecting to reach an agreement. Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone, apart from the answers you provide as a group on the verdict form.

The fact that I have given you instructions concerning the issue of Mr. Meadows' damages should not be interpreted in any way as an indication that I believe that Mr. Meadows should, or should not, prevail in this case.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

*Authority*: This instruction is modeled on *Eleventh Circuit Civil Pattern Jury Instruction* 3.8.1 (2025).

74

## (PROPOSED) SPECIAL VERDICT FORM

We, the jury in the above-entitled action, find the following Special Verdict on the following questions submitted to us in this matter.

Please answer the questions on the following pages in the order they appear.

After each question, the form will give you directions on what to do next.

## **Count I**

1)      Do you find that APA has established by a preponderance of the evidence that Mr. Meadows was aware before January 11, 2017, that the committee that represented American pilots in the seniority integration proceeding did not include Mr. Meadows' name on the pre-merger seniority list it submitted as part of the integration process?

\_\_\_\_\_ Yes (proceed to Count II)

\_\_\_\_\_ No (continue to next question)

2)      Do you find that Mr. Meadows has established by a preponderance of the evidence that APA's conduct was arbitrary, discriminatory, or in bad faith when the committee that represented American pilots in the seniority integration proceeding did not include Mr. Meadows' name on the pre-merger seniority list it submitted as part of the integration process?

\_\_\_\_\_ Yes (continue to next question)

\_\_\_\_\_ No (proceed to Count II)

3)      Do you find that Mr. Meadows has established by a preponderance of the evidence that but for the fact that Mr. Meadows' name was not included on the premerger seniority list that the American committee submitted as a part of the process to reach a final, integrated seniority list after the merger of American and U.S. Airways, Mr. Meadows would have been reinstated to employment at American and returned to his position on the pilot seniority list?

\_\_\_\_\_ Yes (continue to next question)

\_\_\_\_\_ No (proceed to Count II)

4)      Do you find that Mr. Meadows has established by a preponderance of the evidence that he experienced a loss of income because the committee that represented American pilots in the seniority integration proceeding did not include Mr. Meadows' name on the pre-merger seniority list it submitted as part of the integration process?

\_\_\_\_\_ Yes (continue to next question)

\_\_\_\_\_ No (proceed to Count II)

5)      If you answered "yes" to Question (4), state the total amount of compensatory damages (i.e., lost income attributable to APA), if any, that Mr. Meadows has proven for Count I, subtracting other income earned during the relevant time period and accounting for Mr. Meadows' duty to mitigate his damages.

Compensatory damages for Count I: _____

## Count II

1)      Do you find that APA has established by a preponderance of the evidence that Mr. Meadows was aware before January 11, 2017, that APA did not submit Mr. Meadows' MOU grievance to arbitration?

_____ Yes (proceed to Count III)

_____ No (continue to next question)

2)      Do you find that Mr. Meadows has established by a preponderance of the evidence that APA's conduct was arbitrary, discriminatory, or in bad faith when it did not submit Mr. Meadows' MOU grievance to arbitration?

_____ Yes (continue to next question)

_____ No (proceed to Count III)

3)      Do you find that Mr. Meadows has established by a preponderance of the evidence that but for APA's conduct with respect to the MOU grievance, Mr. Meadows would have been reinstated to employment at American and returned to the pilot seniority list?

_____ Yes (continue to next question)
_____ No (proceed to Count III)

4)      Do you find that Mr. Meadows has established by a preponderance of the evidence that he experienced a loss of income because APA did not advance the MOU grievance to arbitration?

_____ Yes (continue to next question)

_____ No (proceed to Count III)

5)      If you answered "yes" to Question (4), state the total amount of compensatory damages (i.e., lost income attributable to APA), if any, that Mr. Meadows has proven for Count II, subtracting other income earned during the relevant time period and accounting for Mr. Meadows's duty to mitigate his damages.

Compensatory damages for Count II:        _____

76

## **Count III**

1)      Do you find that American violated the collective bargaining agreement between APA and American by terminating Mr. Meadows in 2011?

_____ Yes (continue to next question)

_____ No (proceed to Count IV)

2)      Do you find that Mr. Meadows has established by a preponderance of the evidence that APA's conduct was arbitrary, discriminatory, or in bad faith when it did not submit DFW Base Grievance 12-012 to arbitration between October 2012 and October 2018?

_____ Yes (continue to next question)

_____ No (proceed to Count IV)

3)      Do you find that Mr. Meadows has established by a preponderance of the evidence that but for the fact that APA had not submitted DFW Base Grievance 12-012 to arbitration between 2012 and 2018, Mr. Meadows would have been reinstated to employment at American and returned to the pilot seniority list?

_____ Yes (continue to next question)

_____ No (proceed to Count IV)

4)      Do you find that Mr. Meadows has established by a preponderance of the evidence that he experienced a loss of income because APA did not arbitrate DFW Base Grievance 12-012 as of October 2018?

_____ Yes (continue to next question)

_____ No (proceed to Count IV)

5)       If you answered "yes" to Question (2) please state the total amount of compensatory damages (i.e., lost income attributable to APA), if any, that Plaintiff has proven for Count III, subtracting other income earned during the relevant time and accounting for Plaintiff's duty to mitigate his damages.

Compensatory damages for Count III: _____

77

## Count IV

1)      Do you find that Mr. Meadows has established by a preponderance of the evidence that APA breached an enforceable obligation in its Constitution & Bylaws when the committee that represented American pilots in the seniority integration proceeding did not include Mr. Meadows' name on the pre-merger seniority list it submitted as part of the integration process?

_____ Yes (continue to next question)

_____ No (proceed to Count V)

2)      Do you find that Mr. Meadows has established by a preponderance of the evidence that but for the fact that Mr. Meadows' name was not included on the premerger seniority list it submitted as part of the integration process, Mr. Meadows would have been reinstated to employment at American and returned to his position on the pilot seniority list?

_____ Yes (continue to next question)

_____ No (proceed to Count V)

3)      Do you find that Mr. Meadows has established by a preponderance of the evidence that he experienced a loss of income because the committee that represented American pilots in the seniority integration proceeding did not include Mr. Meadows' name on the pre-merger seniority list it submitted as part of the integration process?
_____ Yes (continue to next question)

_____ No (proceed to Count V)

4)       If you answered "yes" to Question (3), state the total amount of compensatory damages (i.e., lost income attributable to APA), if any, that Plaintiff has proven for Count IV, subtracting other income earned during the relevant time and accounting for Plaintiff's duty to mitigate his damages.

Compensatory damages for Count IV: _____

78

## Count V

1)      Do you find that Mr. Meadows has established by a preponderance of the evidence that APA breached an enforceable obligation in its Constitution & Bylaws when it did not submit DFW Base Grievance 12-012 to arbitration between October 2012 and October 2018 and did not submit Mr. Meadows' MOU grievance to arbitration?

_____ Yes (continue to next question)

_____ No (proceed to Count VI)

2)      Do you find that Mr. Meadows has established by a preponderance of the evidence that but for APA's conduct with respect to DFW Base Grievance 12-012 and the MOU grievance, Mr. Meadows would have been reinstated to employment at American and returned to the pilot seniority list?

_____ Yes (continue to next question)

_____ No (proceed to Count VI)

3)      Do you find that Mr. Meadows has established by a preponderance of the evidence that he experienced a loss of income because APA did not submit DFW Base Grievance 12-012 to arbitration between October 2012 and October 2018 and did not submit Mr. Meadows MOU grievance to arbitration?
_____ Yes (continue to next question)

_____ No (proceed to Count VI)

4)      If you answered "yes" to Question (3), state the total amount of compensatory damages (i.e., lost income attributable to APA), if any, that Mr. Meadows has proven for Count V, subtracting other income earned during the relevant time and accounting for Mr. Meadows's duty to mitigate his damages.

Compensatory damages for Count V: _____

79

80

## **Counts VI and VII**

1)      Do you find that Mr. Meadows has established by a preponderance of the evidence that APA's designation of Plaintiff as an inactive member of the union was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

_____ Yes (continue to next question)

_____ No (proceed to Count VIII)

2)      Please state the total amount of punitive damages you award Plaintiff based on Counts VI and VII.

Punitive damages for Count VI and VII: _____

## **Count VIII**

1.      Mr. Meadows alleges that APA decided in August 2013 not to advance Grievance 12-011 to arbitration. For that alleged action only, do you find that Mr. Meadows has established the following by a preponderance of the evidence:

    a.   That APA took the action?

         _____ Yes

         _____ No (skip to Question (2))

    b.   That the action was materially adverse to Mr. Meadows?

         _____ Yes

         _____ No (skip to Question (2))

    c.   That APA took the action because Mr. Meadows exercised his right to initiate a proceeding in federal court and/or before an administrative agency?

         _____ Yes

         _____ No (skip to Question (2))

    d.   That Mr. Meadows experienced a loss of income because APA took the action?

        If no, skip to Question (1e).

        If yes, state the total amount of compensatory damages
        you award Mr. Meadows based on the action:            _____

    e.   That APA's action was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

        If no, skip to Question (2).
        If yes, state the total amount of punitive damages
        you award Plaintiff based on the action:            _____

82

2.      Mr. Meadows alleges that on February 14, 2014, Plaintiff was denied access to APA headquarters before an arbitration meeting. For that alleged action only, do you find that Mr. Meadows has established the following by a preponderance of the evidence:

    a.   That APA took the action?

        _____ Yes

        _____ No (skip to Question (3))

    b.   That the action was materially adverse to Mr. Meadows?

        _____ Yes

        _____ No (skip to Question (3))

    c.   That APA took the action because Mr. Meadows exercised his right to initiate a proceeding in federal court and/or before an administrative agency?

        _____ Yes

        _____ No (skip to Question (3))

    d.   That Mr. Meadows experienced a loss of income because APA took the action?

        If no, skip to Question (2e).

        If yes, state the total amount of compensatory damages you award Mr. Meadows based on the action: _____

    e.   That APA's action was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

        If no, skip to Question (3).
        If yes, state the total amount of punitive damages you award Plaintiff based on the action: _____

3.    Mr. Meadows alleges that on March 7, 2014, APA's secretary-treasurer amended APA's proof of claim in the American bankruptcy to by removing Grievance 12- 011 from preservation. For that alleged action only, do you find that Mr. Meadows has established the following by a preponderance of the evidence:

    a.  That APA took the action?

        _____ Yes

        _____ No (skip to Question (4))

    b.  That the action was materially adverse to Mr. Meadows?

        _____ Yes

        _____ No (skip to Question (4))

    c.  That APA took the action because Mr. Meadows exercised his right to initiate a proceeding in federal court and/or before an administrative agency?

        _____ Yes

        _____ No (skip to Question (4))

    d.  That Mr. Meadows experienced a loss of income because APA took the action?

        If no, skip to Question (3e).

        If yes, state the total amount of compensatory damages you award Mr. Meadows based on the action:   _____

    e.  That APA's action was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

        If no, skip to Question (4).
        If yes, state the total amount of punitive damages you award Plaintiff based on the action:   _____

84

4.      Mr. Meadows alleges that on March 27, 2014, APA refused to process a request Mr. Meadows made for reinstatement to American. For that alleged action only, do you find that Mr. Meadows has established the following by a preponderance of the evidence:

   a.  That APA took the action?

          _____ Yes

          _____ No (<u>skip to Question (5)</u>)

   b.  That the action was materially adverse to Mr. Meadows?

          _____ Yes

          _____ No (<u>skip to Question (5)</u>)

   c.  That APA took the action because Mr. Meadows exercised his right to initiate a proceeding in federal court and/or before an administrative agency?

          _____ Yes

          _____ No (<u>skip to Question (5)</u>)

   d.  That Mr. Meadows experienced a loss of income because APA took the action?

       If no, skip to Question (4e).

       If yes, state the total amount of compensatory damages
       you award Mr. Meadows based on the action:              _____

   e.  That APA's action was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

       If no, skip to Question (5).
       If yes, state the total amount of punitive damages
       you award Plaintiff based on the action:              _____

84

85

5.      Mr. Meadows alleges that on April 17, 2014, APA's general counsel made a "surprise" appearance at a bankruptcy hearing. For that alleged action only, do you find that Mr. Meadows has established the following by a preponderance of the evidence:

    a.  That APA took the action?

        _____ Yes

        _____ No (skip to Question (6))

    b.  That the action was materially adverse to Mr. Meadows?

        _____ Yes

        _____ No (skip to Question (6))

    c.  That APA took the action because Mr. Meadows exercised his right to initiate a proceeding in federal court and/or before an administrative agency?

        _____ Yes

        _____ No (skip to Question (6))

    d.  That Mr. Meadows experienced a loss of income because APA took the action?

        If no, skip to Question (5e).

        If yes, state the total amount of compensatory damages
        you award Mr. Meadows based on the action:          _____

    e.  That APA's action was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

        If no, skip to Question (6).
        If yes, state the total amount of punitive damages
        you award Plaintiff based on the action:          _____

86

6.      Mr. Meadows alleges that on April 22, 2014, APA's Board of Directors decided to exclude MDD pilots from the Challenge & Response online forum. For that alleged action only, do you find that Mr. Meadows has established the following by a preponderance of the evidence:

a.   That APA took the action?

_____ Yes

_____ No (skip to Question (7))

b.   That the action was materially adverse to Mr. Meadows?

_____ Yes

_____ No (skip to Question (7))

c.   That APA took the action because Mr. Meadows exercised his right to initiate a proceeding in federal court and/or before an administrative agency?

_____ Yes

_____ No (skip to Question (7))

d.   That Mr. Meadows experienced a loss of income because APA took the action?

If no, skip to Question (6e).

If yes, state the total amount of compensatory damages you award Mr. Meadows based on the action:   _____

e.   That APA's action was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

If no, skip to Question (7).
If yes, state the total amount of punitive damages you award Plaintiff based on the action:   _____

86

7.      Mr. Meadows alleges that in July 2014, APA took the position in its motion to dismiss a lawsuit brought by Mr. Meadows that the internal exhaustion requirements under APA's Constitution and Bylaws were binding on Plaintiff. For that alleged action only, do you find that Mr. Meadows has established the following by a preponderance of the evidence:

  a.  That APA took the action?

  _____ Yes

  _____ No (skip to Question (8))

  b.  That the action was materially adverse to Mr. Meadows?

  _____ Yes

  _____ No (skip to Question (8))

  c.  That APA took the action because Mr. Meadows exercised his right to initiate a proceeding in federal court and/or before an administrative agency?

  _____ Yes

  _____ No (skip to Question (8))

  d.  That Mr. Meadows experienced a loss of income because APA took the action?

      If no, skip to Question (7e).

      If yes, state the total amount of compensatory damages
      you award Mr. Meadows based on the action:        _____

  e.  That APA's action was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

      If no, skip to Question (8).
      If yes, state the total amount of punitive damages
      you award Plaintiff based on the action:        _____

8.      Mr. Meadows alleges that APA's secretary-treasurer refused to issue Mr. Meadows an "active membership card." For that alleged action only, do you find that Mr. Meadows has established the following by a preponderance of the evidence:

a.   That APA took the action?

_____ Yes

_____ No (skip to Question (9))

b.   That the action was materially adverse to Mr. Meadows?

_____ Yes

_____ No (skip to Question (9))

c.   That APA took the action because Mr. Meadows exercised his right to initiate a proceeding in federal court and/or before an administrative agency?

_____ Yes

_____ No (skip to Question (9))

d.   That Mr. Meadows experienced a loss of income because APA took the action?

If no, skip to Question (8e).

If yes, state the total amount of compensatory damages you award Mr. Meadows based on the action:   _____

e.   That APA's action was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

If no, skip to Question (9).
If yes, state the total amount of punitive damages you award Plaintiff based on the action:   _____

89

9.      Mr. Meadows alleges that on June 20, 2016, APA President Wilson issued a constitutional interpretation that MDD pilots were inactive members of APA. For that alleged action only, do you find that Mr. Meadows has established the following by a preponderance of the evidence:

a.   That APA took the action?

_____ Yes

_____ No (<u>skip to Question (10)</u>)

b.   That the action was materially adverse to Mr. Meadows?

_____ Yes

_____ No (<u>skip to Question (10)</u>)

c.   That APA took the action because Mr. Meadows exercised his right to initiate a proceeding in federal court and/or before an administrative agency?

_____ Yes

_____ No (<u>skip to Question (10)</u>)

d.   That Mr. Meadows experienced a loss of income because APA took the action?

If no, skip to Question (9e).

If yes, state the total amount of compensatory damages you award Mr. Meadows based on the action:        _____

e.   That APA's action was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

If no, skip to Question (10).
If yes, state the total amount of punitive damages you award Plaintiff based on the action:        _____

89

10.     Mr. Meadows alleges that on March 2, 2017, APA denied Plaintiff access, for several hours, to the union hall. For that alleged action only, do you find that Mr. Meadows has established the following by a preponderance of the evidence:

    a.   That APA took the action?

        _____ Yes

        _____ No (skip to Question (11))

    b.   That the action was materially adverse to Mr. Meadows?

        _____ Yes

        _____ No (skip to Question (11))

    c.   That APA took the action because Mr. Meadows exercised his right to initiate a proceeding in federal court and/or before an administrative agency?

        _____ Yes

        _____ No (skip to Question (11))

    d.   That Mr. Meadows experienced a loss of income because APA took the action?

        If no, skip to Question (10e).

        If yes, state the total amount of compensatory damages you award Mr. Meadows based on the action: _____

    e.   That APA's action was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

        If no, skip to Question (11).
        If yes, state the total amount of punitive damages you award Plaintiff based on the action: _____

90

11.     Mr. Meadows alleges that on October 18, 2018, President Carey issued a constitutional interpretation adopting an arbitrator's position that inactive members of APA were not members in good standing. For that alleged action only, do you find that Mr. Meadows has established the following by a preponderance of the evidence:

a.  That APA took the action?

_____ Yes

_____ No (skip to Total Compensatory Damages)

b.  That the action was materially adverse to Mr. Meadows?

_____ Yes

_____ No (skip to Total Compensatory Damages)

c.  That APA took the action because Mr. Meadows exercised his right to initiate a proceeding in federal court and/or before an administrative agency?

_____ Yes

_____ No (skip to Total Compensatory Damages)

d.  That Mr. Meadows experienced a loss of income because APA took the action?

If no, skip to Question (11e).

If yes, state the total amount of compensatory damages you award Mr. Meadows based on the action:          _____

e.  That APA's action was undertaken with actual malice or reckless or wanton indifference that warrants punitive damages?

If no, skip to Total Compensatory Damages.
If yes, state the total amount of punitive damages you award Plaintiff based on the action:          _____

## **Total Compensatory Damages**

*If you awarded any compensatory damages for Counts I, II, III, IV, V, and/or VIII, please answer the following question. Otherwise, skip ahead to punitive damages on the bottom of this page.*

1)      What is the total amount of compensatory damages you award Mr. Meadows for all his successful claims, after adjusting for the principle that Mr. Meadows cannot receive damages more than once for the same harm?

Total Compensatory Damages: _____

## **Total Punitive Damages**

*If you awarded punitive damages for Counts VI, VII, and/or VIII, please answer the following question. Otherwise, please stop here. You are done with the form.*

2)      What is the total amount of punitive damages you will award Mr. Meadows, bearing in mind the principle that punitive damages should be calculated not to detract significantly from APA's ability to represent its members?

Total Punitive Damages: _____

Please advise the Court Clerk that you have completed your deliberations.

Dated: _____          _____
                                                    Foreperson

92

Respectfully submitted,

/s/ Andrew Dymowski
Andrew Dymowski, Esq.
Florida Bar No.1058209
Capri Trigo, Esq.
Florida Bar No. 28564
GORDON REES SCULLY MANSUKHANI
Miami Tower
100 S.E. Second Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428-5309
Email: ctrigo@grsm.com

/s/ Joshua B. Shiffrin
Joshua B. Shiffrin*
John M. Pellettieri*
Lane Shadgett*
BREDHOFF & KAISER PLLC
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
Email: jshiffrin@bredhoff.com
Email: jpellettieri@bredhoff.com
Email: lshadgett@bredhoff.com
*Admitted *Pro Hac Vice*

*Counsel for Defendant Allied Pilots Association*

Dated: May 29, 2026