**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**LAWRENCE MEADOWS,**

      Plaintiff,                                 **CASE NO. 1:17-CV-22589-EA**

v.

**ALLIED PILOTS ASSOCIATION,** *et al.*,

      Defendants.

_____/

**DEFENDANT APA'S MOTION IN LIMINE**

Defendant Allied Pilots Association ("APA") files this motion in limine to ensure that trial in this case is focused on the legal claims asserted in Plaintiff's Amended Complaint (ECF No. 35) and does not become a forum for Plaintiff to air his wide range of accusations regarding APA and his 2011 termination from American Airlines—or an opportunity for Plaintiff to relitigate issues that have been resolved in other fora. Plaintiff has also indicated that he will seek damages unrelated to any legal theory pleaded in the Amended Complaint. The Court should grant this motion in limine to ensure that the trial in this case is confined to the issues that are relevant to the claims asserted in Plaintiff's Amended Complaint.

As detailed in APA's pretrial stipulation, filed contemporaneously with this motion in limine, Plaintiff has refused to confer with APA regarding pre-trial matters, including witness and exhibit lists or deposition designations. APA has done its best to prepare this motion in limine based on its understanding of what evidence Plaintiff would seek to present if a trial were to be held in this matter. APA respectfully reserves the right to file an additional motion in limine once Plaintiff, if necessary, complies with any pretrial obligations.[1]

## BACKGROUND

The factual background of this case is fully described in APA's motion for summary judgment (ECF No. 237) and Magistrate Judge Reid's Report and Recommendation recommending that summary judgment be granted in favor of APA (ECF No. 269). In brief, this case arises from Plaintiff Lawrence Meadows' termination from American Airlines (American) in 2011. APA is a union that represents the pilots at American. In 2003, Plaintiff ceased flying for

---

[1] On May 25, 2026, Magistrate Judge Reid issued a Report and Recommendation (ECF No. 269) recommending that summary judgment be granted for APA on all counts. APA's position is that there are no genuine issues of material fact necessitating a trial and that judgment should be entered in its favor as a matter of law. APA nonetheless files this motion to comply with the Court's pretrial scheduling order (ECF No. 247).

1

American due to disability, and he commenced a long period of disability and/or unpaid sick leave. In 2004, Plaintiff's medical certification from the Federal Aviation Administration (FAA)—a prerequisite for a pilot to operate commercial aircraft—expired. In 2011, American terminated and removed Plaintiff from its pilot seniority list pursuant to provisions in the collective bargaining agreement (CBA) between APA and American that permitted American to terminate and remove from the seniority list pilots who had been on unpaid sick or disability leave for more than five years. ECF No. 269, at 4. This has sometimes been called the "five-year rule," and APA has referred internally to pilots terminated under this five-year rule as Medically Disability Dropped (MDD) pilots. *See generally* ECF No. 237, at 2-5; ECF No. 269, at 3-7.

In 2018, Plaintiff regained his federal medical certification permitting him to operate commercial aircraft. At that time, APA advocated for Plaintiff's reinstatement at American and return to the pilot seniority list, but American declined to reinstate Plaintiff. This case is one of several lawsuits that Plaintiff has filed challenging his termination from American. *See generally* ECF No. 237, at 4-5; ECF No. 269, at 7.

Counts I, II, and IV of Plaintiff's Amended Complaint (ECF No. 35) pertain to proceedings to integrate the pilot seniority lists from American and U.S. Airways when the two airlines merged in 2013. Counts I and II allege that APA violated its duty of fair representation to Plaintiff under the Railway Labor Act during the integration proceedings, which resulted in a final, integrated seniority list that did not include Plaintiff's name. ECF No. 35, at ¶¶ 219-241. Count IV alleges that the same conduct by APA violated contractual obligations allegedly found in APA's Constitution and Bylaws. *Id.* at ¶¶ 252-64.

Counts III and V pertain to a grievance (DFW Base Grievance 12-012) that APA filed on behalf of pilots based in Dallas-Fort Worth challenging American's then-policy of categorically

refusing to reinstate MDD pilots and American's failure to give adequate notice to MDD pilots before their termination. Count III alleges that APA violated its duty of fair representation to Plaintiff because it did not advance DFW Base Grievance 12-012 to arbitration between 2012 and 2018. *Id.* at ¶¶ 242-51. Count V alleges that the same conduct by APA violated contractual obligations allegedly found in APA's Constitution and Bylaws. *Id.* at ¶¶ 265-85.

Counts VI and VII pertain to APA's classification of Plaintiff (and other MDD pilots) as "inactive" pilots who, under the terms of APA's Constitution and Bylaws, do not have certain rights, such as the right to vote or hold union office. These claims assert that the distinction between "active" and "inactive" members in APA's Constitution and Bylaws are unlawful under the Labor-Management Reporting and Disclosure Act ("LMRDA"). *Id.* at ¶¶ 286-328.

Count VIII alleges that APA violated the LMRDA by retaliating against Plaintiff for exercising his protected right to initiate legal proceedings. Count VIII specifically alleges that APA retaliated against Plaintiff for initiating legal proceedings by (1) choosing not to advance a grievance (Grievance 12-011) to arbitration in 2013; (2) denying him access to APA headquarters before an arbitration hearing, (3) amending APA's proof of claim in American's bankruptcy proceedings in March 2014, (4) refusing to process a request for his reinstatement in March 2014, (5) making statements (through counsel) at a hearing in American's bankruptcy proceedings in April 2014 regarding Grievance 12-011, (6) excluding inactive members from an APA online forum in April 2014, (7) taking a position in a motion to dismiss in the District of Utah that Plaintiff had to exhaust internal union requirements if (as alleged in Plaintiff's complaint) he was a member in good standing of APA, (8) refusing to issue Plaintiff an active membership card, (9) issuing a presidential interpretation of APA's Constitution and Bylaws in June 2016 that MDD pilots are inactive members of APA, (10) allegedly agreeing to a special side deal in October 2016 to reinstate

another MDD pilot, (11) temporarily denying Plaintiff access to APA headquarters in March 2017, and (12) issuing a presidential interpretation of APA's Constitution and Bylaws in October 2018 that inactive members of APA were not members in good standing. *Id.* at ¶ 329-53.

APA files this motion in limine to limit the trial to these claims as alleged in Plaintiff's Amended Complaint and to foreclose Plaintiff from relitigating issues that were decided or could have been decided in other litigation Plaintiff has pursued against APA.

ARGUMENT

**I.      The Court Should Exclude Evidence About Events That Are Not Relevant to the Claims Asserted in the Amended Complaint**

"Only relevant evidence is admissible at trial." *United States v. Switlyk*, 2026 WL 810131, at *5 (11th Cir. Mar. 24, 2026); *see* Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In addition, "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b).

Plaintiff has persistently attempted to expand the scope of this case to encompass allegations about events that are not relevant to the legal claims pleaded in the Amended Complaint. Some of those allegations are recited in the Amended Complaint but nonetheless are not probative of the actual legal claims pleaded in the Amended Complaint. Other alleged events occurred after the Amended Complaint was filed in October 2018, and are thus not probative of the claims that had accrued as of the filing of the complaint. These allegations include alleged

4

events occurring between October 2018 and December 31, 2021 (as to which discovery was permitted) and alleged events occurring after December 31, 2021 (as to which discovery was not permitted under a protective order issued by Magistrate Judge Reid, *see* ECF No. 138, at 11-14).

As detailed below, Plaintiff should not be allowed to present evidence about these irrelevant allegations at trial. Even assuming those allegations are relevant, which they are not, their relevance is minimal at most and outweighed by the danger of unfair prejudice and confusing the jury. Moreover, to the extent Plaintiff seeks to use those allegations to suggest that APA has wronged him in other instances and therefore likely wronged him in the manner asserted in the Amended Complaint, those allegations should be excluded as improper propensity evidence.

A.      **American's Processing of Disability Claims (2007-08)**

The Amended Complaint contains allegations regarding what Plaintiff perceives to be improper handling of his disability-benefit claims by American in 2007 and 2008. The Amended Complaint alleges that American terminated Plaintiff's disability payments in 2007 after they had been reviewed by American's third-party claim evaluator called Western Medical Evaluators. ECF No. 35 ¶¶ 14-20. In 2010, Plaintiff filed a lawsuit against American regarding the handling of his disability benefits, which was unsuccessful. Order, *Meadows v. Am. Airlines*, No. 1:10-CV-22175-CMA (S.D. Fla. March 24, 2011), ECF No. 48, *aff'd*, Nos. 11-11894 & 11-12173 (11th Cir. May 29, 2013) (affirming grant of summary judgment in favor of American).

Plaintiff alleges that Western Medical Evaluators had participated in a "scheme" with American to reduce American's disability benefit costs, and that Western Medical Evaluators' contract with American was terminated in 2008 after its principals were indicted for fraud. ECF No. 35, at ¶¶ 23-27. According to Plaintiff, American and APA were at fault for mutually selecting Western Medical Evaluators to evaluate pilot disability claims. *Id.* ¶¶ 29-30. Plaintiff further

5

alleges that he engaged in whistleblowing activity by reporting the cost-saving "scheme" by American and was terminated by American in retaliation. *Id.* ¶¶ 35-37.[2]

The time for litigating any issues pertaining to the handling of Plaintiff's disability benefits in 2007 and 2008 has long passed. The factual allegations in the Amended Complaint about Western Medical Evaluators and American's alleged cost-saving efforts are immaterial to any of the legal claims asserted in the Amended Complaint, described above. Plaintiff claims that *American* retaliated against him as a result of his alleged whistleblowing activity, but such allegations are not relevant to any of the claims against *APA*. The allegations about Western Medical Evaluators and American's alleged cost-saving scheme could only confuse the jury, unfairly prejudice APA, or constitute improper propensity evidence.

## B.     Equity Distribution Proceedings (2013)

The Amended Complaint contains allegations (ECF No. 35 ¶¶ 76-84) regarding an internal APA proceeding that occurred in 2013 regarding how equity (*i.e.*, stock) that APA received from American would be allocated and distributed to pilots. In connection with American's 2011 bankruptcy, APA and American agreed that, in exchange for the settlement of certain claims, American would provide APA a large amount of equity to distribute to pilots. A committee within APA devised a formula and procedure for the distribution of the equity; as part of the procedure, pilots who objected to the allocation determinations could file challenges that would be heard by an independent arbitrator. Plaintiff was among the pilots that filed challenges, and he was

---

[2] Plaintiff filed a grievance (Grievance 12-011) in 2012 alleging that American violated the Sarbanes-Oxley Act by terminating him in 2011 in retaliation for his whistleblowing activity. ECF No. 244 ¶ 31. APA declined to advance that grievance to arbitration because it alleged a statutory violation and not a violation of the collective bargaining that would be cognizable in a grievance. *Id.* ¶ 34. Plaintiff filed a lawsuit in the District of Utah in 2014 alleging that APA breached its duty of fair representation by declining to advance Grievance 12-011 to arbitration. *Id.* ¶ 36. The Utah district court rejected that contention and dismissed the lawsuit. *Id.* ¶ 39.

successful in his challenge. *Id.* at ¶ 83. In particular, the arbitrator found that Plaintiff was entitled to a full equity share because, at the time, the grievance he had filed to challenge his termination (Grievance 12-011) was still pending.

Plaintiff has suggested that APA's treatment of him and other MDD pilots in the equity distribution process is a prior bad act that demonstrates APA's animus toward him and other MDD pilots. *See id.* at 18 (describing APA's conduct as "[a]rbitrary [t]reatment"). In addition to having no relevance to the claims actually at hand, these allegations are exactly the type of propensity evidence that is barred by Fed. R. Evid. 404(b). Further, the notion that the equity distribution process demonstrates wrongdoing by APA is unfounded: the equity distribution process—including the opportunity for challenges to be heard and decided by an independent arbitrator—demonstrated APA's efforts to be fair to all pilots. The mere fact that APA initially took a position regarding Plaintiff's allocation that was later overturned by the arbitrator is of no moment. As Judge Hurley held in another case in which a different MDD pilot asserted a duty-of-fair-representation claim regarding the equity distribution process, "[o]ne must reject out of hand the notion that the union breached its duty of fair representation simply by advocating positions adverse to the plaintiff's economic interests." *Emery v. APA*, 222 F. Supp. 3d 1120, 1127 (S.D. Fla. 2016). A trial in this matter should not be an opportunity to re-litigate settled matters concerning an arbitration process that concluded more than a decade ago and that is immaterial to the claims actually at issue here.

Plaintiff has also alleged that APA exhibited animus toward Plaintiff due to his success in the equity distribution process, and that, as a result, APA did not advance Grievance 12-011 to arbitration. ECF No. 35 ¶ 84. As explained further below (and as held by Magistrate Judge Reid in her Report and Recommendation, ECF No. 269, at 24-25), Plaintiff is barred by res judicata

7

from pursuing this retaliation claim in this litigation, and thus the equity distribution proceedings have no relevance for that reason as well.

### C.      The Alleged Promise from APA President Dan Carey (2019)

Plaintiff has claimed that on February 20, 2019, then-APA President Dan Carey "promised Plaintiff . . . that he would not sign a new contract (CBA) or any other major agreement" with American "that did not include Plaintiff's reinstatement." ECF No. 129, at 19. Mr. Carey testified at his deposition in this case that he did not make such a promise and, in any event, would have lacked authority to make such a commitment. Carey Dep. Tr. 147-50.

Evidence of an alleged promise by Dan Carey in 2019 is irrelevant to the claims alleged in the Amended Complaint. The alleged promise does not pertain to the seniority integration proceedings in 2013-16 that undergird Counts I, II and IV or the DFW Base Grievance 12-012 undergirding Counts III and V. Nor does the alleged promise bear any relationship to the LMRDA violations alleged in Counts VI-VIII. Evidence about the alleged promise would and could only confuse the jury, unfairly prejudice APA, or constitute improper propensity evidence.

### D.      Post-December 31, 2021 Events Subject to the Protective Order

In November 2025, Magistrate Judge Reid issued a protective order establishing a December 31, 2021 cut-off date for discovery on the basis that "limiting post-Amended Complaint discovery to the years of 2018 to 2021 is reasonable and proportional to the needs of the case." ECF No. 138, at 13. Magistrate Judge Reid later denied Plaintiff's motion to supplement the Amended Complaint to include claims based on post-2021 alleged events as well. ECF No. 253.

For the same reasons that Magistrate Judge Reid limited the scope of discovery to exclude post-2021 alleged events, such events should also be excluded from trial. Such events are not probative of the claims asserted in the Amended Complaint. These events include:

8

1.      <u>Settlement of Presidential Grievance 23-031</u>. In March 2023, then-APA President Captain Ed Sicher converted DFW Base Grievance 12-012—which was filed in 2012 on behalf of pilots based out of Dallas/Fort Worth (DFW) who had been terminated under the five-year rule—into a grievance called Sicher Expedited Presidential Grievance No. 23-031. In 2025, APA and American agreed to settle Presidential Grievance 23-031. *See* ECF No. 129, at 78-83 (settlement agreement). The settlement agreement established a process through which three other MDD pilots, but not Plaintiff, could seek reinstatement. *See id.* at 79. The settlement agreement stated that those three pilots, in contrast to Plaintiff, had not received notice prior to their termination. *Id.*

2.      <u>Attorney Sue Edwards</u>. In 2023, APA retained attorney Sue Edwards—who regularly serves as outside counsel for APA—to represent it in connection with Grievance 23-031. *See* ECF No. 152-2 ¶¶ 3-4 (Sue Edwards declaration). In or around May or June 2024, while Ms. Edwards represented APA in connection with Grievance 23-031, Mr. Sicher asked Ms. Edwards to look into whether she could assist Plaintiff with a lawsuit Plaintiff had filed against American in February 2024 in the Southern District of Florida alleging that his termination violated the Americans with Disabilities Act (ADA). *Id.* ¶ 6; *see Meadows v. Am. Airlines*, No. 1:24-CV-20518, 2024 WL 5248006 (S.D. Fla. Oct. 22, 2024), *R. & R. adopted*, 2024 WL 5245945 (S.D. Fla. Dec. 30, 2024) (report and recommendation to grant American's motion to dismiss). Ms. Edwards explored representing Plaintiff in that lawsuit but later concluded—due to Plaintiff's claims against APA in this lawsuit—that, as a lawyer for APA, she could not represent Plaintiff due to a conflict of interest. Ms. Edwards therefore did not represent Plaintiff in the ADA lawsuit. ECF No. 152-2 ¶¶ 7-9.

3.      <u>May 2025 Membership Determination</u>. On May 1, 2025, in response to a request by Plaintiff to speak at a meeting of APA's board of directors as an APA member in good standing,

APA informed Plaintiff via letter that Plaintiff no longer qualified for membership under APA's

Constitution and Bylaws, given that Plaintiff had regained his FAA medical certification and that

had American denied Plaintiff's request for reinstatement. *See* ECF No. 129, at 113.

*     *     *

These post-2021 events are irrelevant to the claims asserted in the Amended Complaint, all

of which are necessarily premised on alleged events that occurred before the Amended Complaint

was filed in 2018. As APA has explained in various contexts in which Plaintiff has attempted to

expand this case to encompass these later allegations, the events between 2023 and 2025 could

only be relevant to new claims that accrued after the Amended Complaint was filed and were not—

and could not be—alleged in the Amended Complaint. *See* ECF No. 157, at 8-12; ECF No. 154,

at 8-9; ECF No. 141, at 11-13; ECF No. 112, at 4-5. The evidence about the events between 2023

and 2025 would only confuse the jury, unfairly prejudice APA, and constitute improper propensity

evidence.

## II.     The Court Should Prohibit Plaintiff from Introducing Evidence Regarding Issues Foreclosed by Res Judicata

Res judicata "comprises two distinct doctrines regarding the preclusive effect of prior

litigation." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 411 (2020).

"The first is issue preclusion (sometimes called collateral estoppel), which precludes a party from

relitigating an issue actually decided in a prior case and necessary to the judgment." *Id.* "If

established, then estoppel operates to bar the introduction or argumentation of certain facts

necessarily established in a prior proceeding." *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d

1171, 1180 (11th Cir. 2013) (internal quotation omitted), *abrogated on different grounds by CSX

Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333 (11th Cir. 2017). "In this circuit, a party seeking to

apply the doctrine of collateral estoppel must establish (1) the issue at stake is identical to the one

10

involved in the earlier proceeding; (2) the issue was actually litigated in the earlier proceeding; (3) the determination of the issue must have been a critical and necessary part of the earlier judgment; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue." *Madura v. Bac Home Loans Servicing, LP*, 593 F. App'x 834, 843 (11th Cir. 2014); *accord Dailide v. U.S. Att'y Gen.*, 387 F.3d 1335, 1342 (11th Cir. 2004).

"The second doctrine is claim preclusion (sometimes itself called res judicata)." *Lucky Brand Dungarees, Inc.*, 590 U.S. at 412. "Unlike issue preclusion, claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Id.* "To invoke res judicata—also called claim preclusion—a party must establish four elements: that the prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action." *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1325 (11th Cir. 2020). The fourth element "asks whether a case arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action." *Id.* (citation modified). Claim preclusion "applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." *Id.*

Collateral estoppel and res judicata bar Plaintiff from relitigating issues that were already decided, or could have been raised and decided, in his prior litigation against APA. Specifically, given his prior litigation against APA, Plaintiff cannot now (1) assert that his termination by American violated the collective bargaining between APA and American; (2) assert a claim that APA retaliated against him by declining to advance Grievance 12-011 to arbitration; (3) attempt to deny that he was terminated by American; or (4) assert that he possessed a membership status other than that of "inactive" member.

11

1.        In August 2013, APA informed Plaintiff that APA would not advance Grievance 12-011 to arbitration because that grievance alleged federal statutory claims. ECF No. 244 ¶¶ 29-35. Plaintiff subsequently filed another grievance (Grievance 13-064) alleging that his termination by American violated the collective bargaining agreement between APA and American. *Id.* ¶ 40. In April 2014, APA informed Plaintiff that APA would also not advance Grievance 13-064 to arbitration because the claims in the grievance were "contrary to the plain language" of the collective bargaining agreement. *Id.* ¶ 42.

Plaintiff sued APA in the U.S. District Court for the District of Utah, alleging, among other things, that APA's decisions not to advance Grievance 12-011 and Grievance 13-064 to arbitration violated APA's duty of fair representation to Plaintiff under the Railway Labor Act. ECF No. 238-3, at 271-309 (Utah Amended Complaint). The Utah district court dismissed the complaint, concluding that APA's decision not to advance Grievance 12-011 and Grievance 13-064 to arbitration did not breach APA's duty of fair representation. *Id.* at 311-20 (Utah order dismissing complaint); *Meadows v. APA*, No. 2:14-CV-00115, 2015 WL 13650044, at \*\*3-4 (D. Utah Apr. 27, 2015), *aff'd*, 822 F. App'x 653 (10th Cir. 2020) (decision on plaintiff's motion for clarification). With respect to Grievance 13-064, the Utah court concluded that "the CBA . . . expressly allows American to remove a pilot from the Seniority List if the pilot exhausts his or her sick leave of absence," and "[t]hus, when American removed Plaintiff from the Seniority List, it acted within the confines of the CBA." ECF No. 238-3, at 316-17; *see Meadows v. APA*, 2015 WL 13650044, at \*3 (concluding that Grievance 13-064 was "not supported by the CBA").

a.        The resolution of the case in the District of Utah forecloses Plaintiff from asserting that his termination by American and removal from the seniority list violated the collective bargaining agreement between APA and American. That issue was litigated in the Utah case, the

district court's resolution of that issue (its determination that Plaintiff's termination did not violate the collective bargaining agreement) was critical to the court's dismissal ruling, and Plaintiff had a full and fair opportunity to litigate the issue.

This case raises the identical issue. Plaintiff alleges that "one of the key issues" in Grievance 13-064 was whether the five-year rule violated the collective bargaining agreement, and he alleges that "the very same issue" was raised in DFW Base Grievance 12-012, which is the subject of Count III of the Amended Complaint. *See supra* p. 3; ECF No. 35, at ¶ 69. Plaintiff claims that DFW Base Grievance 12-012 asserted that the five-year rule (and, therefore, Plaintiff's termination under the five-year rule) violated the collective bargaining agreement. As a result, according to Plaintiff, he would have obtained reinstatement if APA had advanced DFW Base Grievance 12-012 to arbitration and prevailed.

APA disagrees with Plaintiff's characterization of DFW Base Grievance 12-012. *See* ECF No. 238, at 18-20. But even accepting Plaintiff's characterization of DFW Base Grievance 12-012, res judicata precludes him from prevailing on his claim. The Utah district court expressly held that Plaintiff's termination under the five-year rule did not violate the collective bargaining agreement, and Plaintiff cannot relitigate that issue here. And because Plaintiff cannot relitigate whether his termination violated the five-year rule, he cannot prevail on a claim in Count III that APA breached its duty of fair representation by failing to advance DFW Base Grievance 12-012 to arbitration.

b.      As APA explained in its motion for summary judgment, *see* ECF No. 237, at 28-30, and as Magistrate Judge Reid found, *see* ECF No. 269, at 24, the Utah litigation also forecloses Plaintiff from advancing his claim in Count VIII that APA retaliated against him in 2013 by deciding not to advance Grievance 12-011 to arbitration. The allegations in the Utah complaint about Grievance 12-011 mirror the allegations about that grievance in the Amended Complaint in

this case. *Compare* ECF No. 35 ¶¶ 335-44 (Amended Complaint), *with* ECF No. 238-3, at 280-86 (Utah Complaint ¶¶ 48-85). Although Plaintiff did not include an LMRDA retaliation claim regarding Grievance 12-011 in his Utah complaint, "[i]t is by now hornbook law that the doctrine of res judicata 'bars the filing of claims which were raised or *could have been raised* in an earlier proceeding.'" *Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011) (emphasis added); *see TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1325 (11th Cir. 2020) ("[R]es judicata applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.") (citation omitted). Plaintiff cannot now assert and put on evidence regarding a retaliation claim that he could have raised in the Utah case.

2.      The Amended Complaint alleges that Plaintiff is currently an employee of American. *See, e.g.*, ECF No. 35 ¶¶ 13, 44. Both the Southern District of Florida and the Second Circuit have held that judicial and collateral estoppel foreclose Plaintiff from denying that he was terminated by American. *Meadows v. Am. Airlines*, 2024 WL 5248006, at *8-*15; *see also In re AMR Corp.*, No. 11-CV-15463, 2016 WL 1559294, at *6 (Bankr. S.D.N.Y. Apr. 14, 2016), *aff'd*, 764 F. App'x 88 (2d Cir. 2019) (noting that "three neutral decision makers have determined that Mr. Meadows was terminated" and invoking judicial estoppel to preclude his arguing otherwise). Plaintiff should similarly be estopped from denying his termination here.

3.      As APA explained in its motion for summary judgment, *see* ECF No. 237, at 26, and as Magistrate Judge Reid found, *see* ECF No. 269, at 22-23, collateral estoppel forecloses Plaintiff from asserting that he should have been deemed an "active" member under the APA Constitution and Bylaws during the period at issue in the Amended Complaint. As we have explained, Plaintiff had a full opportunity to litigate his membership status under the terms of the

14

APA Constitution and Bylaws in a 2017 arbitration proceeding before arbitrator Edward Valverde. That arbitration proceeding concluded in an award finding that, at the time, Plaintiff was an inactive member of APA under the terms of the APA Constitution and Bylaws. ECF No. 238-2, at 220-22. That issue was litigated in the arbitration and critical to the arbitrator's award, and Plaintiff had a full and fair opportunity to litigate the issue. *See* ECF No. 238-2, at 202-06 (excerpts from Plaintiff's post-hearing brief). Plaintiff cannot relitigate that issue at trial in this case.

### III. The Court Should Exclude Evidence of Claimed Lost Earnings During the Period Before Plaintiff Regained the Medical Certification Required to Fly as a Pilot

Compensatory damages are "those damages that will compensate the injured party for the injury sustained, and nothing more." *McMillian v. FDIC*, 81 F.3d 1041, 1055 (11th Cir. 1996) (internal quotation marks omitted). They "are intended to remedy a concrete loss suffered by the plaintiff due to the defendant's wrongful conduct and to make that plaintiff whole." *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 746 (11th Cir. 2020). A defendant cannot be liable for compensatory damages that the plaintiff would have sustained regardless of the defendant's conduct (*i.e.*, damages that were not "due to" the defendant's conduct).

Plaintiff's damages calculations (as set out in his expert's report) indicate that Plaintiff intends to seek, as damages, the compensation that Plaintiff would have received had he worked as a pilot for American from the time of his termination by American in 2011 through his projected retirement in 2028. But Plaintiff should not be permitted to seek compensatory damages for the period between October 2011 and November 2018, when he did not possess the FAA medical certification necessary to work as a pilot for American. There is no theory pleaded in the Amended Complaint under which APA could be found responsible for Plaintiff's lack of pilot income during that period of time; APA's alleged conduct did not cause Plaintiff to lose his FAA certification or prevent him from regaining his certification. The loss of compensation during a time in which

Plaintiff could not have been employed in his former position—regardless of any action taken by APA—is not a "concrete loss suffered by the plaintiff due to the defendant's wrongful conduct." *Williams*, 947 F.3d at 746.

**IV.      Plaintiff Should Not Be Permitted to Seek Punitive Damages at Trial**

Punitive damages are categorically unavailable for the Plaintiff's duty-of-fair-representation and contract claims. *See Wells v. S. Airways, Inc.*, 616 F.2d 107, 109 n.1 (5th Cir. 1980) (duty of fair representation claims); *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.,* 687 So. 2d 821, 823 (Fla. 1996) (state contract claims). As to Plaintiff's LMRDA claims, punitive damages are only available where a plaintiff proves that "the union acted with actual malice or reckless or wanton indifference" to his or her rights. *Parker v. Loc. 1466, United Steelworkers of Am., AFL-CIO*, 642 F.2d 104, 106 (5th Cir 1981) (internal quotation marks omitted); *see also Quinn v. DiGiulian*, 739 F.2d 637, 651 (D.C. Cir. 1984) (punitive damages are available under the LMRDA "only in the most egregious cases"). Here, even if APA violated the LMRDA as alleged by Plaintiff, those allegations fall well short of permitting punitive damages.

1.      As explained, Counts VI and VII allege that APA infringed Plaintiff's rights under the LMRDA by defining and maintaining a class of "inactive" members under the APA Constitution and Bylaws that covers, among others, pilots like Plaintiff who have been terminated under APA's five-year rule. ECF No. 35 ¶¶ 286-328. Plaintiff's claims are premised on his contention that it is unlawful under the LMRDA for APA to distinguish between classes of membership (*i.e.*, that APA, and all unions, are legally obligated to have only one type of member with the fully panoply of rights and privileges afforded to all members). *Id.* ¶¶ 288, 310.

That proposition is incorrect as a matter of law. But even if the Court determines that Plaintiff is right and injunctive relief is warranted, it should not send the question of punitive

damages to the jury. As APA demonstrated in its motion for summary judgment, "a wide range of courts—including the Eleventh Circuit—have recognized that unions can accord different rights to different types of members, so long as the distinctions are reasonable." ECF No. 237, at 24-25; *see also, e.g.*, *Dep't of Lab. v. Aluminum, Brick & Glass Workers Int'l Union, Loc. 200*, 941 F.2d 1172 (11th Cir. 1991). Moreover, APA's rule distinguishing active and inactive members—known as a "working at the trade" requirement—is a common requirement in many unions for exercising certain membership rights. ECF No. 237, at 25-26; *see also, e.g., Reich v. Loc. 30, Int'l Broth'd of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 6 F.3d 978, 986 (3rd Cir. 1993); *Taylor v. Great Lakes Seamen's Union, Loc. 5000*, 701 F.2d 590, 590-92 (6th Cir. 1983). Plaintiff cannot show malice or reckless indifference to the rights of inactive members based on the fact that APA adopted a common rule that has been broadly upheld as legal in other circumstances.

Nor has Plaintiff adduced any evidence that APA's rule was adopted or enforced with any malice towards him in particular. On the contrary, a neutral arbitrator found that Plaintiff was correctly categorized as an inactive member under APA's Constitution and Bylaws, not a member in good standing. ECF No. 244 ¶¶ 114-16 (discussing the Valverde Award); *see also* ECF No. 237, at 26 (explaining the preclusive effect of the Valverde Award).

2. In Count VIII, Plaintiff alleges that APA violated the LMRDA by retaliating against Plaintiff for exercising his right to sue APA. ECF No. 35 ¶¶ 329-53. Plaintiff enumerates a collection of a dozen purportedly retaliatory actions, nearly all of which are the kind of "petty slights or minor annoyances" that are not generally cognizable as retaliation in the first place. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 68 (2006). Even if APA is found liable for retaliation based on one or more of those allegations, not one of them could possibly support a

17

jury determination that APA's conduct was sufficiently egregious—or the harm sufficiently severe—to support an award of punitive damages. *See Kinslow v. Am. Postal Workers Union, Chicago Loc.*, 222 F.3d 269, 278 (7th Cir. 2000).

## CONCLUSION

For the foregoing reasons the Court should foreclose Plaintiff from presenting evidence about (1) American's processing of disability claims in 2007-08; (2) equity distribution proceedings in 2011-13; (3) the alleged promise by Dan Carey in 2019; and (3) the post-December 31, 2021 alleged conduct. The Court should also prohibit Plaintiff from asserting that (a) his termination by American and removal from the seniority list violated the collective bargaining agreement between APA and American; (b) APA retaliated against him by declining to advance Grievance 12-011 to arbitration; (c) Plaintiff remained an employee at American after 2011; and (d) he possessed a membership status other than that of "inactive" member during the period alleged in the Amended Complaint. Finally, the Court should foreclose Plaintiff from (i) presenting evidence of lost earnings between his termination (in 2011) and receipt of his FAA medical certification (in 2018); and (ii) seeking punitive damages under the LMRDA in Counts VI-VIII.

## RULE 7.1 CERTIFICATION

APA has conferred with Plaintiff, as required by Local Civil Rule 7.1(a)(3) and ECF No. 247, about the contents of this motion. Plaintiff indicated that he believes it is improper for APA to file this motion because Magistrate Reid has issued a Report and Recommendation recommending that summary judgment be granted for APA on all counts, and he takes no position on the substance of this motion.

18

Respectfully submitted,

/s/ Andrew Dymowski
Andrew Dymowski, Esq.
Florida Bar No.1058209
Capri Trigo, Esq.
Florida Bar No. 28564
GORDON REES SCULLY MANSUKHANI
Miami Tower
100 S.E. Second Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428-5309
Email: ctrigo@grsm.com

/s/ Joshua B. Shiffrin
Joshua B. Shiffrin*
John M. Pellettieri*
Lane Shadgett*
BREDHOFF & KAISER PLLC
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
Email: jshiffrin@bredhoff.com
Email: jpellettieri@bredhoff.com
Email: lshadgett@bredhoff.com
*Admitted *Pro Hac Vice*

*Counsel for Defendant Allied Pilots Association*

Dated: May 29, 2026

19