**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**LAWRENCE MEADOWS,**
  Plaintiff,

  v.

**ALLIED PILOTS ASSOCIATION, ct al.,**
  Defendants.

**CASE NO. 17-cv-22589-EA**
**HONORABLE JUDGE ED ARTAU**
_____/

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S  REPORT AND**
**RECOMMENDATION ON DEFENDANT'S MOTION FOR SMMARY JUDGMENT**

**I. INTRODUCTION**

The Magistrate Judge's Report and Recommendation (ECF No. 269) is a product of profound and multi-faceted legal error. The R&R recommends granting summary judgment based on Plaintiff's technical non-compliance with Local Rule 56.1(c), while willfully disregarding the facts set forth in Plaintiff's Opposition (ECF No. 250) that either dispute or dispositively disprove the factual predicate on which the R&R relies.

These same facts, accompanied by meticulous citations, supported the 56(d) motion incorporated in Plaintiff's Opposition, which the Eleventh Circuit has mandated must be evaluated with the "spirit of liberality." The necessity for such liberality is particularly acute where the Magistrate's improper issuance of a protective order and failure to timely address uncontested spoliation motions shut down Plaintiff's ability to obtain icebergs of evidence despite the presentation of the tips of those icebergs to the Magistrate, which, standing alone, refute the purported factual predicate on which she based her decision.

1

A court cannot deem facts "admitted" when a non-movant has been blocked from discovery and has properly invoked the safe harbor of Rule 56(d). Nor can the Court cannot rely on the Magistrate's prior orders as a basis for judgment when ten objections to those very orders remain pending before this Court. And this Court cannot adopt a recommendation that is the product of "willful blindness" to the most critical, unrebutted evidence on the docket - the sworn testimony of Defendant's own former President.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case is not a simple dispute; it is the culmination of a decade-long struggle against a union that has repeatedly breached its duties, engaged in dilatory tactics, and actively concealed evidence to defeat the rights of a long-serving member.

### A. Plaintiff's Status and the Grievances at the Heart of This Case

Plaintiff is one of a group of pilots known as "MDD Pilots"[1] - pilots on long-term disability who were improperly removed from the American Airlines seniority list and terminated without just cause in violation of the American Airlines pilot's collective bargaining agreement ("CBA"), and subsequently denied reinstatement when they once again obtained their FAA Airman's First Class Medical Certificate to operate as an airline pilot. In 2012, two key grievances were filed on Plaintiff's behalf to protest this illegal policy:

1. **Grievance 12-011:** An individual grievance filed by Plaintiff protesting his improper no-notice removal from the seniority list and purported Administrative termination in violation of the CBA and seeking his seniority reinstatement.

---

[1]   MDD Pilots (Medical Disability Dropped from AA Seniority List) is an APA membership status code which refers to a class of former American Airlines ("AA") pilots who, after exceeding five years on long-term sick or disability leave, were dropped from the pilot seniority list and effectively terminated without notice or a just cause hearing, in violation of the American Airlines pilots' collective bargaining agreement ("CBA").

2. **Grievance 12-012:** A collective, class-action style grievance filed by APA on behalf of all similarly situated MDD pilots, also protesting the termination and removal from the seniority list of pilots who were on disability greater than 5-years and failure to reinstate them once medically requalified in violation of the CBA and past practice, also seeking reinstatement of Plaintiff and similarly situated MDD pilots.

Both these grievances were expressly preserved through American's bankruptcy by orders from the U.S. Bankruptcy Court for the Southern District of New York, most recently in November 2021. (Meadows Decl. ¶ 9). APA had both a statutory duty and a contractual duty under its own Constitution & Bylaws (Art. II.B) and the CBA (§ 23) to prosecute these grievances in a timely manner. It failed spectacularly and willfully. Ultimately, pursuant to a Settlement Agreement dated January 15, 2025, it used the grievance as the required legal leverage to obtain the reinstatement of every similarly situated MDD pilot except for the Plaintiff, whose grievance rights were only then terminated by the Defendant with prejudice and without notice. These facts, clearly set forth in the Plaintiff's Opposition to Defendant's Motion for Summary Judgment, preclude the granting of the Defendant's motion. Moreover, the Court's Protective Order has denied the Plaintiff any access to critical evidence relevant to events leading up to that discriminatory Settlement Agreement or the Defendant's *subsequent* retaliatory decision to terminate Plaintiff's union member rights on May 1, 2025.

**B. APA's "Prolonged Delay" and Judge Moore's Admonishments**

For over 13 years, APA allowed these grievances to languish. Its conduct in this litigation has been no different. APA's strategy has been one of obstruction and delay, a fact twice recognized in orders entered by prior presiding District Judge, the Honorable K. Michael Moore. In 2025, he

3

first admonished APA for its "prolonged delay in bringing a motion to dismiss." (ECF No. 70 at 2). Months later, he again issued a scathing rebuke of APA's dilatory tactics, stating:

> Here, the **court finds that Defendant's position that it did not have to respond to the Complaint until Defendant was explicitly ordered to do so by this Court, is unreasonable and does not justify its prolonged delay**... While the Court embraces its role as an active arbiter in the case management process, **the Court is not a de facto babysitter.**

(ECF No. 91 at 4). (Emphasis added).

This pattern of weaponized delay is the essential backdrop against which the subsequent discovery abuses must be viewed.

## C. The Fraudulently Procured Protective Order: Cutting Off All Avenues to the Truth

When discovery finally commenced, APA immediately sought to cripple Plaintiff's case via the Protective Order (ECF No. 138), which the evidence, presented to Magistrate Reid, confirms was procured through numerous material misrepresentations of fact. (ECF No. 205). APA's counsel, John Pellettieri, falsely represented Plaintiff's relationship with his former attorney, Sue Edwards, and falsely claimed Plaintiff was not a party to the settlement of Grievance 12-012 and its verbatim expedited twin, Grievance 23-031. (ECF No. 148, Meadows Decl. ¶ 17; ECF No. 180, Ex. 3, Sicher Decl. ¶¶14, 23, Exs. A and B). Based on these falsehoods, the Magistrate issued a catastrophic order that:

1. Arbitrarily limited the temporal scope of all discovery to December 31, 2021; and

2. Quashed all eight of Plaintiff's key fact witness subpoenas for deposition testimony and document production, including those for the three most recent APA presidents. (ECF No. 138; ECF No. 251, Meadows Decl. ¶ 16).

This Order effectively built a wall around all of APA's post-2021 misconduct, preventing any inquiry into the final, fraudulent disposition of Plaintiff's grievance rights with the result that

4

every similarly situated MDD pilot obtained reinstatement but for the Plaintiff whose grievance rights were expressly terminated in the same retaliatory settlement agreement.

**D. The "Tips of the Icebergs": The Post-2021 Evidence APA Successfully Concealed**

As set forth in detail before Magistrate Reid in Defendant's opposition to Defendant's summary judgment motion, the fraudulently obtained Protective Order prevented access to the mountains of evidence underlying the 'tips of three icebergs' - three dispositive, post-2021 events that not only prove the continuing nature of APA's bad faith and retaliation but also represent the very culmination of the claims in Plaintiff's First Amended Complaint.

The evidence set forth below is a verbatim replication of the evidence presented to Magistrate Reid in Plaintiff's Opposition.  Plaintiff submits that it was reversible error for the Magistrate to willfully disregard these facts in rendering her decision based on a pro se litigant's technical non-compliance with Rule 56.1(c). *Ebsco Gulf Coast Dev., Inc. v. Tennant Land LLC*, No. 3:16-cv-153-MCR-CJK, 2017 U.S. Dist. LEXIS 216124, at *1 n.1 (N.D. Fla. Sep. 21, 2017) (court will not allow technical non-compliance with Rule 56.1(c) to preclude consideration of dispute facts set forth in non-movant's memorandum of law in opposition); *cf. N.A.S. v. Morada-Haute Furniture Boutique LLC*, No. 20-24676-Civ-GAYLES/TORRES, 2021 U.S. Dist. LEXIS 242464, at *10-11 (S.D. Fla. Dec. 20, 2021) ("Punishing [party] for not following the [*11] Local Rules precisely in this situation is clearly not merited).  Even if the draconian application of the rule were to be permitted, these same facts compel the granting of Plaintiff's 56(d) motion.

**1.  The First Iceberg Tip: September 2022 "Member in Good Standing" Interpretation.**

Magistrate Reid's dismissal of Counts VI and VII rests on the false factual predicate that the Plaintiff was not a member in good standing of Defendant APA during the relevant time period. (ECP 269 at 19-23). However, in September 2022, President Ed Sicher issued a formal, binding

Presidential Constitutional Interpretation which confirmed that inactive members like Plaintiff were, in fact, "members in good standing." Reflecting the Defendant's continuing recognition of Plaintiff's membership status, Defendant appointed Plaintiff to the APA National Aeromedical Committee on which he served from 2022 to May 2025. This event, proving Plaintiff's membership status, occurred in 2022, yet the Protective Order prevented any discovery for the purposes of seeking related evidence confirming this status and the motives underlying the renewed retaliatory efforts to terminate that status culminating in the May 1, 2025 revocation. (ECF No. 251, Meadows Decl. ¶ 38(a) (citing Sicher Decl., ECF No. 180, Ex.3, ¶¶ 20-21, Ex. G)).

### 2. The Second Iceberg Tip: Fraudulent January 2025 Settlement Agreement.

Magistrate Reid's dismissal of Count III expressly rests on the false factual predicate that Grievance 12-012 had no application to the Plaintiff. (ECF 269 at 16-17). However, the Plaintiff submitted undisputed evidence that, in January 2025, APA secretly settled Grievance 12-012. The settlement agreement reinstated three other similarly situated MDD pilots but explicitly carved out and excluded Plaintiff based on a false pretext, making him a "class of one"[2] in this targeted campaign. This settlement - the very culmination of Count III of Plaintiff's complaint - occurred in 2025, yet the Protective Order forbade any discovery into the deliberations leading up to it and the attendant motivations. (ECF No. 251, Meadows Decl. ¶11.a., 16.a., 39).

---

[2]      Plaintiff is a member of a class of approximately 241 pilots that APA internally designated as MDD (Medically Disability Dropped from AA Seniority List). Discovery in related federal litigation established that of the original 241 MDD pilots, 58 subsequently obtained their FAA medical certificates and sought reinstatement. Of those 58 pilots, only three were denied reinstatement: Plaintiff Lawrence Meadows, FO Kathy Emery, and FO Susan Twitchell- all of whom had sued APA for breaching its Duty of Fair Representation. The other two pilots, Emery and Twitchell, ultimately accepted monetary settlements that waived their right to reemployment. Plaintiff did not. Then, in the secret January 15, 2025, Settlement Agreement, APA and American reinstated three other similarly situated MDD pilots but explicitly carved out and excluded Plaintiff. To date, out of approximately 58 MDD pilots who have been reinstated, Plaintiff is the only one ever denied reinstatement who has never signed a settlement waiving his right to return. (ECF No. 129, Ver. Supp. Pleading ¶ 5).

Magistrate Reid's finding that Grievance 12-012 had no application to Plaintiff is not just an error; it is a demonstrable falsehood directly contradicted by a mountain of evidence that she willfully ignored. First, former APA President Ed Sicher personally converted this grievance into an expedited presidential grievance for the express purpose of advancing Plaintiff's claim, an official act proving APA itself treated the grievance as applying to him. (Sicher 2nd Supp. Decl., Ex. 1, ¶ 8; *see also* ECF 180, ¶ 23). Second, this fact is corroborated by the sworn deposition testimony of APA's own 30(b)(6) designee and Director of Negotiations, Mark Myers, from the related *Emery v. APA* litigation. Mr. Myers testified unequivocally that the issues underlying Grievance 12-012 were **"systemic — system-wide they would apply system-wide."** (*See* Decl. of Lawrence Meadows, ECF No. 148, ¶ 8, Ex. E). Finally, even **American Airlines admitted in its bankruptcy pleadings that "APA filed a grievance (DFW Domicile Grievance 12-012) on behalf of Meadows...,"** a Miami-based pilot, confirming the grievance's system-wide application. (*Id.* ¶ 9, Ex. F). For the Magistrate to disregard this overwhelming and unrebutted evidence from APA's own leadership, its 30(b)(6) designee, and its litigation adversary is further proof of a process tainted by willful blindness.

### 3. The Third Iceberg Tip: The Retaliatory May 2025 Membership Termination.

Again, Magistrate Reid's dismissal of Counts VI and VII rests on the false factual predicate that the Plaintiff was not a member in good standing of Defendant APA during the relevant time period. (ECP 269 at 19-23).

However, when Plaintiff obtained a copy of the secret settlement and attempted to present it to the APA Board of Directors in May 2025, it was only then that president Nick Silva summarily terminated his 34-year union membership. (Meadows Decl. ¶ 13). This act of retaliation, which forms the basis for Plaintiff's LMRDA claims, also occurred in 2025, well outside the discovery

window permitted by the Magistrate. Here again, the Court's Order prevented access to potentially limitless evidence concerning APA's acknowledgment of his membership status and the motives underlying its sudden revocation.

These three events reflect a vast reservoir of evidence confirming APA's continuing violation of its statutory and contractual obligations that has been foreclosed to the Plaintiff due to the Court's Protective Order. (ECF No. 138). The existence of post-2021 evidence of unlawful conduct is not "mere conjecture" as Magistrate Reid dismissively stated in her order; rather the culminating actions discussed above constitute concrete, documented acts of bad faith and retaliation which were the products of years of Defendant's machinations. The facts surrounding these unlawful facts were immunized from discovery by a protective order fraudulently obtained.

**E. The Financial Motive: The Reason for APA'S Obstruction**

APA'S desperate, multi-year strategy of delay and obstruction is driven by a discriminatory financial motive. As sworn to by former APA President Ed Sicher, APA'S legal department used a secret legal opinion to justify abandoning the MDD pilots; and as he explicitly attested, thereby, "improperly excluding them from their full share payout of the $1.1B Equity Distribution, estimated to be approximately $100,000.00 per MDD pilot, or $24M collectively." (Sicher Decl., ECF No. 180, Ex. 3, ¶ 19). This staggering financial exposure explains the union's willingness to engage in witness tampering, spoliation, and misrepresentations to the Court.

**F. The Resulting Jurisdictional Quagmire: The Interlocked Eleventh Circuit Appeal**

The fraudulent settlement agreement – on which APA is a cosignatory - is not merely a fact in this case; it is the subject of a formal fraud-on-the-court allegation in Plaintiff's appeal, *Meadows v. American Airlines Inc.*, Case No. 25-10297, currently pending before the U.S. Court of Appeals for the Eleventh Circuit. This creates an untenable jurisdictional problem for this

8

Court. The fraudulent disposition of Grievance 12-012 is central to Plaintiff's DFR claim (Count III), while the fraudulent disposition of Grievance 12-011 is central to his LMRDA retaliation claim (Count VIII). For this Court to rule on APA's summary judgment motion - which necessarily requires it to consider the effects of this same settlement - before the Eleventh Circuit has addressed the foundational question of its fraudulent procurement would create a severe risk of conflicting judgments and would violate principles of judicial comity.

### III. STANDARD OF REVIEW

A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation ("R&R") to which objections are made are accorded *de novo* review. *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). Any portions of the report and recommendation to which no specific objections are made are reviewed for clear error. *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001); *accord Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).

A magistrate's report and recommendation must set forth a rational analysis of the issues before it and the parties' respective arguments. *See Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2022 U.S. Dist. LEXIS 10095, at *10-11 (S.D.N.Y. Jan. 18, 2022) (rejecting report and recommendation where analysis left the court to "speculate" on the basis for the decision); *Holland v. Island Creek Corp.*, 885 F. Supp. 4, 6 (D.D.C. 1995) (holding that "it is incumbent on the Court to check the adopted findings against the record" with "painstaking[] care" where the magistrate judge's decision "does not offer a reasoned explanation ... and merely adopts one party's arguments in [its] entirety" (cleaned up)).

### IV. ARGUMENT

9

**A. The R&R is Based on a Fatal Legal Error: The Misapplication of the Rule 56(d) "Safe Harbor."**

The Magistrate's entire recommendation hinges on a two related fatal legal errors: (a) the technical failure of a pro se litigant's to create a free-standing counter-statement of material facts justifies the disregard of Plaintiff detailed refutation of Defendant's alleged facts in his opposition brief and supporting declarations, and (b) her conclusion that Plaintiff's pending Rule 56(d) motion did not excuse his duty to file a counter-statement of material facts.

Plaintiff respectfully submits the Magistrate Reid's deliberate disregarding of the declarations and exhibits accompanying Plaintiff's Opposition impermissibly elevated form over substance as reflected in the *Ebsco Gulf* decision. In the analogous context of evaluating a Rule 56(d) motion, the Eleventh Circuit has recognized that "the interests of justice sometimes require postponement in ruling on a summary judgment motion, although the technical requirements" have not been met. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 570 (11th Cir. 1990); *Snook v. Trust Co.*, 859 F.2d 865, 870 (11th Cir. 1988); *Cowan v. J.C. Penney Co.*, 790 F.2d 1529, 1532 (11th Cir. 1986) (per curiam). As discussed above, the evidence submitted with Plaintiff's Opposition – including a declaration from a former APA President – at minimum dispute, if not outright refute, the factual predicate that Magistrate Reid relied upon for her dismissal of Counts III, VI, and VII. These same facts preclude the denial of the Plaintiff's Rule 56(d) motion.

**"Rule 56(d) is 'infused with a spirit of liberality.'"** *Hendricks v. Rambosk*, **No. 2:10-cv-526-FtM-29DNF, 2011 U.S. Dist. LEXIS 40608, 2011 WL 1429646, at \*5 (M.D. Fla. Apr. 14, 2011) (quoting** *Reflectone, Inc. v. Farrand Optical Co.***, 862 F.2d 841, 844 (11th Cir. 1989));** *XTEc, Inc. v. Hembree Consulting Servs.***, No. 14-21029-CIV-ALTONAGA, 2015 U.S. Dist. LEXIS 186513, at \*4 (S.D. Fla. June 3, 2015)** **(the requirements of Rule 56(d) are to be** **"liberally construed.")** [Emphasis added]. Here, the Plaintiff through the discussion of the three

icebergs of evidence that had been denied to him, the Plaintiff specifically demonstrated how postponement of a ruling on the motion would have enabled him through discovery to rebut the Plaintiff's showing of the absence of a genuine issue of fact and, therefore, the Defendant's motion should have been denied consistent with Local Rule 56.1(c)(ii)'s creation of a safe harbor providing that facts will not be deemed admitted where an "exception under Fed. R. Civ. P. 56 applies." Fed. R. Civ. P. 56(d) is that precise exception.

The Magistrate's finding that Plaintiff's detailed, 41-paragraph sworn declaration (ECF No. 251) was "vague" is a bad-faith conclusion belied by the record. That declaration meticulously identified the specific witnesses and facts needed to rebut APA, all of which had been blocked from discovery by the Magistrate's own prior orders. This finding is all the more egregious given that Plaintiff attached Captain Sicher's two sworn original 31-paragraph and 5-paragraph 1st supplemental declarations, dated Jan. 28 and 29, 2026, as exhibits to that very filing, providing concrete testimony that the Magistrate chose to ignore in her biased, results-oriented analysis. (ECF No. 251, Exs. D & F).

Plaintiff's declaration was the opposite of vague; it meticulously identified the specific, essential discovery needed to rebut APA's motion, including, *inter alia*:

- **Deposition of Ed Sicher:** To obtain testimony regarding APA's bad-faith handling of Grievances 12-011 and 12-012, its discriminatory treatment of MDD pilots, the facts underlying his binding 2022 interpretation of Plaintiff's membership status, his direct interactions with opposing counsel, and the systemic spoliation of evidence during his presidency. (Meadows Rule 56(d) Decl., ECF No. 251, ¶¶ 32-34).

11

- **Deposition of Nick Silva:** To obtain testimony regarding the fraudulent 2025 settlement agreement that excluded Plaintiff, the retaliatory termination of Plaintiff's union membership, communications with APA's board and counsel regarding Plaintiff. (*Id.* ¶ 35).

- **Deposition of Sue Edwards:** To obtain testimony regarding the attorney-client relationship between her and Plaintiff and facts underlying the conflict of interest created by APA's counsel, Bredhoff & Kaiser, simultaneously representing APA and her. (*Id.* ¶ 36).

- **Deposition of Tom Rempfer:** To obtain testimony regarding the criminal witness tampering and efforts by APA officials to prevent him from assisting Plaintiff. (*Id.* ¶ 37).

- **Documents and Testimony Regarding the "Three Icebergs":** To obtain discovery on (1) the 2022 "Member in Good Standing" interpretation; (2) the fraudulent 2025 settlement agreement; and (3) the retaliatory May 2025 membership termination - all of which were blocked by the Protective Order. (*Id.* ¶¶ 38-40).

In sum, the Magistrate's finding that this detailed proffer was "vague and generalized" is a bad-faith conclusion that is belied by the record.[3]

"Generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests." *Fernandez* 906 F.2d at 570 (11th Cir. 1990).The grant of summary judgment in the face of a well-argued 56(d) motion constitutes reversible error. *Id.* The "spirit of liberality" with which the Eleventh Circuit analyses 56(d)

---

[3]     To deny Plaintiff's 56(d) motion without even an extension to address the summary judgment on it merits, Magistrate Reid relied on the inapposite decision in *Reyes v. BJ's Restaurants, Inc.*, No. 17-62583-CIV, 2018 WL 3872111, at *8 (S.D. Fla. Aug. 15, 2018). In *Reyes*, the court denied the 56(d) motion because it was supported by nothing more than "vague assertions" that additional discovery would produce "needed, but unspecified, facts." By contrast, in the instant matter, Plaintiff submitted a detailed, 41-paragraph sworn declaration that meticulously identified the specific witnesses and facts needed to oppose summary judgment, which evidence Plaintiff was blocked from obtaining by the court's own orders.

motion includes a permissive approach to a motion's technical non-compliance with procedural rules. *See Snook*, 859 F.2d 865, 871 (11th Cir. 1988) (holding a lawyer's written representation is "in the spirit of Rule 56(f) under the circumstances" and that justice may require postponement even if technical requirements are not met); *Young v. Hancock*, 2017 U.S. Dist. LEXIS 115557, 2017 WL 3113417, at *1-2 (S.D. Fla. Apr. 24, 2017) (same). The Magistrate's rigid application of the local rule, in direct contravention of its text and the equitable principles of *Fernandez* and *Snook*, is a clear legal error requiring *de novo* rejection by this Court.

Even assuming, *arguendo,* that the Plaintiff's cogent, well-articulated 56(d) did not pass muster with the Eleventh Circuit's liberal standards, Magistrate Reid should have adhered to the standard equitable practice of allowing the Plaintiff an extension of the deadline to address the summary judgment on its merits rather than enforcing a forfeiture of his case. *Carmona v. D'Alessandro*, 2015 U.S. Dist. LEXIS 92810, 2015 WL 4395001, at *2 (E.D. Cal. July 16, 2015) (pendency of plaintiff's Rule 56(d) request warranted grant of "one final extension" of time in which to file an opposition despite the plaintiff having had six months to reply); *Clig v. Wettlanfer*, 2017 U.S. Dist. LEXIS 59632 at *1-2 (D. Or., Mar. 20, 2017) ("This Court denied Plaintiff's [56(d)] motion by Order dated December 14, 2016 but gave Plaintiff additional time to respond to Defendants' motion for summary judgment."); *Lexington Ins. Co. v. Scott Homes Multifamily, Inc.*, 2013 U.S. Dist. LEXIS 111293 *; 2013 LX 52870; 2013 WL 4026892 (D. Ariz., Aug. 6, 2013).

**B. The R&R is Structurally Flawed Because It Was Issued on an Untrustworthy and Incomplete Record.**

The Magistrate improperly based her entire merits analysis on a set of "deemed admitted" facts while ignoring the foundational reality that the evidentiary record itself is tainted by spoliation and artificially truncated by a fraudulently procured court order.

**1.   The Record is Untrustworthy Due to Unresolved, Systemic Spoliation.**

The Magistrate issued her recommendation while three foundational, fully briefed motions - including two seeking case-altering sanctions for spoliation - remain pending and un-ruled upon. These are: **(1)** Plaintiff's Amended Motion for Extension of Deadlines and Request for Status Conference, which contained the first proffer of the Sicher 31-paragraph Declaration (ECF No. 173, Ex. 3); **(2)** Plaintiff's First Motion for Sanctions for Spoliation regarding former APA President Captain Sicher (ECF No. 187, Ex. 1); and **(3)** Plaintiff's Second Motion for Sanctions for Spoliation regarding former APA President Captain Carey (ECF No. 223, Ex. A).

These motions establish a systemic destruction of evidence across four APA presidential administrations from 2016 through 2025. This includes both the wiping of former APA President Ed Sicher's laptop and sworn testimony regarding the destruction of hundreds of his contemporaneous, handwritten legal pads - unique, irreplaceable evidence stored in five milk crates detailing high-level union business, including the sensitive Reinstatement of Disability Dropped Investigation ("REDDI") Committee, which investigated APA's improper abandonment of representation of disabled MDD pilots and perpetual decade long abeyance of their individual and collective grievances. (See Second Supplemental Declaration of Captain Edward F. Sicher ("Sicher 2nd Supp. Decl."), attached hereto as **Exhibit 1**, at ¶ 5). As confirmed by APA President Captain Sicher, this destruction of physical and electronic evidence resulted directly from APA's failure to implement a litigation hold. (*Id.* ¶ 4).

It is a fatal structural error for a court to grant summary judgment without first resolving pending motions that determine the integrity of the very record at issue. See *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002) ("To determine if the district court erred in dismissing [plaintiff's] action on summary judgment, we must first resolve whether [plaintiff] posits a

successful spoliation argument"); K*rosch v. JLG Indus., Inc.*, 590 F. Supp. 2d 1169, 1178 (D.N.D. 2008) ("Until the issue of spoliation has been…resolved by the Court, a decision on…summary judgment motion would be premature."); *Matthews v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2023 U.S. Dist. LEXIS 52318, at *16 (N.D.N.Y. Mar. 28, 2023) (reserving decision on summary judgment until spoliation sanctions were resolved); *DuPuis v. Marriott Corp.*, No. 3:12-CV-00580-AC, 2014 WL 199096 (D. Or. Jan. 15, 2014) (because a motion for sanctions related to spoliation could result in adverse inference "the court must resolve [the] motion for sanctions before it can rule on [the] summary judgment motion."); *Knupfer v. HSA Residential Mortg. Servs. of Tex., Inc. (In re Lau Capital Funding)*, 321 B.R. 287, 303 (Bankr. C.D. Cal. 2005);*Creighton v. City of New York*, No. 12 Civ. 7454, 2017 WL 636415 (S.D.N.Y. Feb. 14, 2017) ("the spoliation issue must be resolved now, because this Court may grant Plaintiff relief that could affect resolution of the cross-motions for summary judgment…").

The Eleventh Circuit has made clear that spoliation sanctions are a necessary tool to remedy prejudice, and a merits determination before resolving such claims is improper where the destruction has fatally hampered a party's case. See *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944-45 (11th Cir. 2005). The Magistrate's claim that these motions are "immaterial" is a conclusory and erroneous finding. Her failure to rule on these motions - which were delegated to her by this Court's order (ECF No. 177 at 3, attached hereto as **Exhibit 2**) - is a dereliction of her duty that renders her R&R procedurally invalid.

## 2. The Record is Incomplete Due to a Fraudulently Procured and Artificially Limited Protective Order.

The R&R's merits analysis is predicated on an artificially truncated record that excludes all post-2021 evidence, including the "Three Tips of the Iceberg" that prove the continuing nature of APA's bad faith. (ECF No. 250 at 5-7). This incomplete record is a direct result of the

Magistrate's own tainted Protective Order (ECF No. 138) which quashed evidence and the testimony of all eight of Plaintiff's key fact witnesses, including Captain Sicher, who was Plaintiff's local union Miami Pilot Domicile representative and key advocate for disabled MDD pilots during the relevant temporal period, and imposed an arbitrary temporal discovery scope cutoff of December 31, 2021, based numerous misrepresentations of material fact made by APA's counsel, John Petlletieri, during the October 28, 2026, protective order hearing.

Notably, not only did Mr. Pellettieri willfully refuse Plaintiff's six email requests to correct the record for his misrepresentation used to obtain the protective order, but he has never filed a sworn declaration in his own defense - he failed to rebut Plaintiff's declaration in the original Motion for Sanctions (ECF No. 148), which was supported by sworn deposition testimony of APA's own counsel and an American Airlines manager; and he failed to rebut the two sworn declarations of former APA President, Captain Ed Sicher, submitted in support of the Emergency Motion to Vacate (ECF No. 205), proving his representations were, in fact, a fraud on the Court.

As detailed in Plaintiff's pending First, Eighth, and Tenth Objections (ECF Nos. 149, 259, 264), the Protective Order that underpins the R&R's analysis was procured by material falsehoods from opposing counsel. The R&R now compounds this error through the use of blatant circular logic - dismissing Plaintiff's need for critical discovery by stating it is "barred by an existing protective order" (ECF 269 at 11), while ignoring that the validity of that very order is under active challenge for fraud on the court. (*See* Pl.'s Emerg. Mtn. to Vacate, ECF No. 205, supported by the Sicher Decls., Exs. 1-2). These allegations of fraud are proven by the unrebutted testimony of Defendant's own former President, who confirms that APA's counsel made material misrepresentations regarding the status of Plaintiff's grievances and his relationship with attorney Sue Edwards. (Sicher 2nd Supp. Decl. ¶ 6; see also Sicher Decl., ECF No. 187, Ex. 1, ¶ 5).

16

It is a manifest abuse of discretion for a judicial officer to use her own contested, fraudulently procured order as a shield to block discovery into facts that would confirm the fraud. The resulting compromised record cannot support summary judgment.

**C. The R&R is a Product of Willful Blindness to Unrebutted, Dispositive Evidence on the Merits.**

The R&R is a product of **willful blindness to dispositive evidence.** The Magistrate's summary judgment analysis is not just procedurally flawed; it is substantively wrong. This is proven by her willful blindness to the sworn declarations of Captain Sicher, which she has repeatedly refused to consider. Nowhere in her 26-page analysis does the Magistrate confront, analyze, or even mention the bombshell sworn declarations of former APA President Ed Sicher (ECF No. 180, Ex. 3; ECF No. 187, Ex. 1; see also attached to Meadows R56(d) Decl., ECF 251, Exs. D and F). This is a deliberate decision to ignore unrebutted evidence that proves her merits analysis is factually wrong. Plaintiff has attached hereto as **Exhibit 1,** the Second Supplemental Declaration of former APA President, Captain Edward F. Sicher ("Sicher 2nd Supp. Decl."), summarizing the substance of Sicher's prior declarations which refute the R&R's factual findings and create genuine disputes of material fact on nearly every count of Plaintiff's Complaint.

- **Counts I & II (DFR - Seniority Integration):** The R&R finds APA's actions reasonable. Captain Sicher's testimony proves this false. He confirms that APA's own Board of Directors passed Resolution R2016-30, which explicitly acknowledged that MDD pilots suffered **"disparate treatment,"** were subjectively and improperly removed from the seniority list, and that some were unfairly deemed **"problematic employees"** and denied reinstatement. (Sicher 2nd Supp. Decl., **Exhibit 1,** ¶ 7; *see also* ECF 180, ¶ 18).
- **Count III (DFR - Grievance 12-012):** The R&R finds this collective grievance did not apply to Plaintiff. This is false. Captain Sicher testifies that in March 2023, he personally

converted Grievance 12-012 into **Sicher Expedited Presidential Grievance 23-031** for the express purpose of advancing Plaintiff's claim, an official act demonstrating APA's own acknowledgment of Plaintiff's standing. (Sicher 2nd Supp. Decl., **Exhibit 1**, ¶ 8; *see also* ECF 180, ¶ 23).

- **Counts IV & V (Breach of Contract):** The R&R finds these claims preempted. Captain Sicher's testimony creates a genuine issue of material fact on this point by attesting to APA's duplicitous internal legal position - relying on a secret legal opinion to maintain that it owed no statutory duty of fair representation to MDD pilots, a position that would make its contractual duties under the APA Constitution & Bylaws all the more critical. (Sicher 2nd Supp. Decl., **Exhibit 1**, ¶ 9; *see also* ECF 180, ¶ 19).

- **Counts VI & VII (LMRDA - Membership & Free Speech):** The R&R improperly relies on a stale 2017 *Valverde* arbitration award. Captain Sicher's testimony proves this reliance is a clear error, attesting that his official September **2, 2022, Presidential Interpretation** superseded that award, affirmed Plaintiff's status as a member in good standing, and led to Plaintiff's appointment to a national APA committee. He further confirms Plaintiff's membership was terminated by President Silva only after Plaintiff sought to expose the secret 2025 settlement. (Sicher 2nd Supp. Decl., **Exhibit 1**, ¶ 10; *also* ECF 180, ¶¶ 21-22).

- **Count VIII (LMRDA - Retaliation):** The R&R finds this claim is barred. It ignores new, independent acts of retaliation. Captain Sicher's testimony provides direct evidence of this retaliation, confirming that the pretext used to exclude Plaintiff from the 2025 settlement - that his individual Grievance 12-011 was **"closed since 2013"** - was a falsehood. Captain Sicher attests that he directed that same grievance to be moved to arbitration in June 2024. (Sicher 2nd Supp. Decl., **Exhibit 1**, ¶ 11; *see also* ECF 180, ¶ 26; ECF 187-1, ¶ 5).

The Magistrate's deliberate disregard of this case-dispositive testimony from Defendant's own former president compels the rejection of her R&R.

## D. The R&R is the Product of a Biased and Procedurally Improper Process.

The R&R is the culmination of a hostile and biased case management process that disregards the fundamental structure of federal judicial review.

### 1. The R&R Improperly "Leapfrogs" this Court's Authority by Recommending Final Judgment on a Foundation of Contested Orders.

The most glaring procedural flaw in the R&R is that it improperly "leapfrogs" the authority of this Court. The Magistrate has recommended a final judgment based on a factual and legal landscape that she herself created through a series of prior orders. However, the legitimacy of that entire landscape is currently under direct, active review by this Court through ten pending Objections. This violates the clear hierarchical and sequential principles of adjudication inherent in 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The R&R is built on a house of cards, with each card being a prior, contested ruling now before this Court for *de novo* review. For example:

- **The Scope of the Record is Unsettled:** The R&R's entire merits analysis depends on an artificially truncated record. That record was created by the Magistrate's Protective Order (ECF No. 138), which quashed eight key witness subpoenas and imposed a pre-2022 discovery cutoff. Plaintiff's **First, Eighth, and Tenth Objections** (ECF Nos. 149, 259, 264) argue this order was not just legally erroneous but was procured by opposing counsel's fraud on the court. For the Magistrate to now rely on her own fraudulently procured order to justify recommending summary judgment is a mockery of the review process.

- **The Integrity of Counsel is Unsettled:** The R&R recommends judgment in favor of APA, which is represented by the firm Bredhoff & Kaiser. Plaintiff's **Eighth Objection** (ECF No.

259) seeks reversal of the Magistrate's refusal to disqualify that entire firm based on a severe, unwaivable conflict of interest. It is procedurally improper to recommend final judgment in favor of a party whose counsel may not even be permitted to remain in the case.

- **The Integrity of the Evidence is Unsettled:** As argued *supra*, the R&R was issued while two dispositive spoliation motions remain un-ruled upon (ECF Nos 187 and 223).

The Magistrate cannot short-circuit this Court's review process by rendering a final recommendation based on the presumed validity of her own contested, non-final orders. This places the cart before the horse and forces the Court into a procedural paradox. The only proper, judicially efficient course is for the District Court to first rule on the foundational Objections that define the scope of the record, the integrity of the evidence, and the propriety of counsel. Only then, on a settled and trustworthy record, can a summary judgment motion be properly considered.

### 2. The R&R Is the Product of a Pattern of Judicial Hostility and Bias.

Finally, the R&R is the end result of hostile and prejudicial case management. The Magistrate's animus is demonstrated not only by her derogatory opening, where she adopts the "blizzard of litigation" insult as her own and concludes with the predetermined finding that "such tenacity and passion could not withstand APA's motion for summary judgment," but also by a pattern of prejudicial conduct. This includes her "sandbagging" omnibus orders (ECF Nos. 252, 253), which denied motions that had been pending for months. These orders were strategically issued a mere eight hours after Plaintiff's MSJ Opposition, Motion for Relief Under Rule 56(d), and supporting Rule 56(d) Declaration (ECF Nos. 249-251) were docketed, a retaliatory act that neutralized key pillars of Plaintiff's just-filed opposition - arguments he would have structured differently had the Magistrate timely ruled. This conduct, combined with her failure to grant a status conference despite a formal request (ECF No. 173) and the offensive timing of this case-

ending ruling against a veteran plaintiff entered on a sacred holiday - Memorial Day - demonstrates a deep-seated bias that has tainted this entire process.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this honorable Court **REJECT** the Magistrate's Report and Recommendation in its entirety, **DENY** Defendant's Motion for Summary Judgment, and **GRANT** Plaintiff's Motion for Relief under Rule 56(d). In the alternative, Plaintiff respectfully requests that the Court schedule an evidentiary on the matters raised herein, or at a minimum, grant Plaintiff leave to file a full merits-based opposition to Defendant's Motion for Summary Judgment.

Dated: June 3rd, 2026.

Respectfully submitted,

Lawrence M. Meadows, *Pro Se*
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Pro Se Plaintiff, hereby certify that on June 3rd, 2026, a true

and correct copy of the foregoing was served via the Court's CM/ECF system, email, and U.S.

Mail on all counsel of record.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com
*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Lane Shadgett, Esq.**
**Grace Rybak, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com;
jpellettieri@bredhoff.com;
grybak@bredhoff.com;
*Pro Hac Vice Counsel for Defendant*

# EXHIBIT 1

# To Plaintiff's R&R Objection

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LAWRENCE MEADOWS,
    Plaintiff,

v.

ALLIED PILOTS ASSOCIATION, et al.,
    Defendants.

CASE NO. 17-cv-22589-EA
HONORABLE JUDGE ED ARTAU
_____/

## SECOND SUPPLEMENTAL DECLARATION OF CAPTAIN EDWARD F. SICHER

I, Captain Edward F. Sicher, declare and state as follows:

1.      I am over the age of eighteen and am competent to make this declaration. The facts stated herein are based on my personal knowledge.

2.      I previously submitted two sworn declarations in this matter, filed at ECF No. 180, Exhibit 3, and ECF No. 187, Exhibit 1. I have reviewed those declarations and re-affirm all statements made therein as true and correct.

3.      I submit this supplemental declaration to correct certain factual errors in the Magistrate Judge's May 25, 2026 Report and Recommendation ("R&R") [ECF No. 269]. I have dedicated a decade of my career, from 2014 to 2024, to advocating on behalf of First Officer Meadows and similarly situated disabled pilots, first as his Miami Domicile Representative and later as APA President. My knowledge spans the entire period of this litigation, both within and beyond the Court's December 31, 2021 temporal scope limitation.

1

4.        **Regarding Spoliation of Evidence:** The Magistrate's R&R recommends summary judgment on a record whose integrity is subject to a pending Motion for Sanctions for Spoliation [ECF No. 187]. As I stated in my prior declaration (ECF 187, Ex. 1) and re-affirm here, I was never placed on a litigation hold by APA's Legal Department during my entire tenure as President, and I was never instructed by APA counsel to preserve my emails text messages, or other ESI related to my union duties with respect to First Officer Meadows. Because of this failure, I routinely deleted my emails and text messages. Most egregiously, after I was removed from office, my APA-issued laptop was "effectively wiped clean" by APA staff.

5.        In addition to my laptop, I was known for keeping copious contemporaneous handwritten notes on standard yellow legal pads regarding all aspects of my union duties. These notes amounted to hundreds of individual legal pads, which I stored in approximately five milk crates. Each pad was typically dated and labeled by topic, such as "Meadows Litigation" or matters related to the REDDI committee. I relied on these contemporaneous notes for accuracy, including during sworn deposition testimony in other litigation. As I was never instructed by APA's Legal Department to preserve these materials, I discarded and destroyed all five crates of these handwritten notes when cleaning out my garage after I was removed from office in late 2024.

6.        **Regarding Fraud on the Court:** The R&R is predicated on a Protective Order that was procured by fraud. As I attested in my prior declarations (ECF 180, Ex. 3, ¶ 26; ECF 187, Ex. 1, ¶ 5), I have direct, personal knowledge that APA counsel John Pellettieri's representations to the Court that attorney Sue Edwards never represented First Officer

2

Meadows were false. I personally retained Ms. Edwards on behalf of APA to represent First Officer Meadows and authorized her retainer.

7. **Regarding Counts I & II (DFR - Seniority Integration):** The R&R's finding that APA's actions were reasonable is contradicted by the record. As I attested in my prior declaration (ECF 180, ¶ 18), I proffered APA Board of Directors Resolution R2016-30, which explicitly acknowledged that legacy American Airlines' Medically Disabled Dropped ("MDD") pilots suffered "disparate treatment" and were improperly removed from the seniority list due to the "subjective interpretation of the CBA", and that some were deemed "problematic employees" and unfairly denied reinstatement. This resolution documented the Board's acknowledgment of these issues during the ISL proceedings.

8. **Regarding Count III (DFR - Grievance 12-012):** The R&R's finding that Grievance 12-012 did not apply to First Officer Meadows is false. As I previously attested (ECF 180, ¶ 23), in March 2023, I converted Grievance 12-012 into Sicher Expedited Presidential Grievance 23-031 for the express purpose of advancing Meadows' claim, demonstrating that APA itself treated the grievance as applying to him.

9. **Regarding Counts IV & V (Breach of Contract):** The R&R's finding that these claims are preempted ignores APA's own, duplicitous legal position. As I previously attested (ECF 180, ¶ 19), I am aware that APA's Legal Department, relying on the secret "Babb-Denison" legal opinion based a false narrative, internally maintained that APA owed no statutory duty of fair representation ("DFR") to MDD pilots under the Railway Labor Act ("RLA").

10. **Regarding Counts VI & VII (LMRDA - Membership & Free Speech):** The R&R's reliance on the 2017 *Valverde* arbitration award is a clear error. As I previously

3

attested (ECF 180, ¶¶ 21-22), my official September 2, 2022, "Presidential Constitutional Interpretation, Inactive Member Standing" superseded that award and affirmed First Officer Meadows' status as a member in good standing, pursuant to which I appointed him to the APA National Aeromedical sub-committee to serve as the Miami Domicile's Long-term Disability Coordinator. I have firsthand knowledge that First Officer Meadows was previously permitted to speak at multiple Board of Directors meetings as a member in good standing. Following his request to speak and expose the secret settlement at the APA Spring 2025 Board of Directors Meeting, his membership was terminated by President Nick Silva on May 1, 2025.

11.        **Regarding Count VIII (LMRDA - Retaliation):** The R&R's finding that this claim is barred is erroneous. It ignores new, independent acts of retaliation. As I attested in my prior declarations (ECF 180, ¶ 26; ECF 187-1, ¶ 5), I have personal knowledge that APA leadership pressured First Officer Meadows to drop this lawsuit, and his legal representation was terminated after he refused. Most egregiously, the pretext used in the January 15, 2025 Settlement Agreement was the deliberate falsehood that Grievance 12-011 was "closed since 2013," a fact I know to be false as I had personally directed that same grievance to be moved to arbitration in June 2024.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _29_ day of May, 2026.

Captain Edward F. Sicher

4

# <u>EXHIBIT 2</u>

# <u>To Plaintiff's R&R Objection</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:17-cv-22589-EA

Lawrence Meadows,

      Plaintiff,

v.

Allied Pilots Association, et al.

      Defendants.

_____/

## ORDER SETTING TRIAL AND PRE-TRIAL SCHEDULE, REQUIRING MEDIATION, AND REFERRING CERTAIN MATTERS TO MAGISTRATE JUDGE

**THIS CAUSE** is set for trial during the Court's two-week trial calendar beginning on **Monday, May 18, 2026, at 9:00 am**. Calendar call will be held at **11:00 a.m. on Thursday, May 14, 2026**. The parties shall adhere to the following schedule:

| | |
|---|---|
| February 1, 2026 | The parties shall select a mediator in accordance with Local Rule 16.2; schedule a time, date and place for mediation; and jointly file a notice informing the Court of the time, date, and place for mediation. Mediation must be in person with all parties and their attorneys participating in person. If circumstances exist that require mediation to be held wholly or partially remotely, the parties must obtain leave of court. If the parties cannot agree on a mediator, they shall notify the Clerk in writing as soon as possible, and the Clerk shall designate a certified mediator on a blind rotation basis. Counsel for all parties shall familiarize themselves with and adhere to all provisions of Local Rule 16.2. Within seven days of mediation, the parties are required to file a mediation report with the Court. |
| February 1, 2026 | Parties exchange expert witness summaries or reports. |
| February 17, 2026 | Parties exchange rebuttal expert witness summaries or reports. |
| March 14, 2026 | All discovery, including expert discovery, is completed. |
| March 21, 2026 | Parties must have completed mediation **and** filed a mediation report |

April 1, 2026  All pre-trial motions and Daubert motions (which include motions to strike experts) are filed. Each party is limited to filing one Daubert motion. If all evidentiary issues cannot be addressed in a 20-page memorandum, leave to exceed the page limit will be granted. The parties are reminded that Daubert motions must contain the Local Rule 7.1(a)(3) certification.

May 8, 2026  The parties shall file the following materials:

   (1) a joint pre-trial stipulation pursuant to Local Rule 16.1(e);

   (2) a joint exhibit list and a joint trial plan;

   (3) individually filed witness lists and deposition designations (and objections thereto and counter designations);

   (4) joint proposed jury instructions and verdict form in accordance with the instructions below [or proposed findings of fact and conclusions of law, as applicable]; and

   (5) any motions *in limine* (other than *Daubert* motions). Each party is limited to filing one motion *in limine*, which may not, without leave of Court, exceed the page limits allowed by the Rules. Boilerplate motions that request the Court to order the opposing party to comply with the Federal Rules of Evidence are improper and may be denied immediately. The parties are reminded that motions *in limine* must contain the Local Rule 7.1(a)(3) certification.

**<u>Jury Instructions and Verdict Form</u>**. Although they need not agree on each proposed instruction, the parties shall file their proposed jury instructions and verdict form, including substantive charges and defenses, in a **single joint filing** on CM/ECF. Where the parties do not agree on a proposed instruction, that instruction shall be set forth in bold type. Instructions proposed only by a plaintiff shall be underlined. Instructions proposed only by a defendant shall be italicized. Every instruction must be supported by citation to authority. The parties shall use as a guide the Eleventh Circuit Pattern Jury Instructions for Civil Cases, including the directions to counsel contained therein. The parties' jury instructions should identify, as to each proposed jury instruction, whether the proposed language conforms to the Eleventh Circuit Pattern Jury

2

Instructions. If a proposed instruction deviates from the Pattern Jury Instructions in any respect, such alteration should be made clear in the filing with a supporting explanation. For instructions on filing proposed documents, please see http://www.flsd.uscourts.gov. In addition to filing the joint jury instructions and verdict form on CM/ECF, the parties shall submit that filing, in Word format, via e-mail to Artau@flsd.uscourts.gov, by the specified deadline set forth above.

**Referral to Magistrate Judge**. Pursuant to this Court's order [ECF No. 175], all dispositive matters are referred to Magistrate Judge Lisette M. Reid for report and recommendation, and (i) all non-dispositive matters; and (ii) all pretrial discovery matters, are referred to Magistrate Judge Lisette M. Reid for disposition.

**Good Faith Conferral**. For the purposes of compliance with the good faith conferral requirement of Local Rule 7.1(a)(3), the parties are instructed that a minimal e-mail exchange with opposing counsel shall not constitute a good faith effort under the Local Rules. The parties are instructed to confer either telephonically or in person.

**Discovery**. The parties may stipulate to extend the time to answer interrogatories, produce documents, and answer requests for admissions. The parties shall not file with the Court notices or motions memorializing any such stipulation unless the stipulation interferes with the deadlines set forth above. Stipulations that would so interfere may be entered into only with the Court's approval. *See* Fed. R. Civ. P. 29. In addition to the documents enumerated in Local Rule 26.1(b), the parties shall not file notices of deposition with the Court. Strict compliance with the Local Rules is expected, particularly with respect to motions practice. *See* S.D. Fla. L.R. 7.1.

**Discovery Disputes**. Magistrate Judge Lisette M. Reid has a standing discovery order. All parties should adhere to the magistrate judge's standing discovery order for handling discovery disputes. Counsel must actually confer and engage in reasonable compromise in a genuine effort

3

to resolve their discovery disputes before noticing the dispute before the magistrate judge. The Court may impose sanctions, monetary or otherwise, if it determines discovery is being improperly sought or is being withheld in bad faith.

**Summary Judgment**. In addition to contemporaneously filing a Statement of Material Facts as required under Local Rule 56.1(a)–(b), the parties shall also file a Joint Statement of Undisputed Facts, which must include all relevant facts about which there is no material dispute and be filed separately and on the same day as the motion for summary judgment itself. **Each undisputed fact shall be numbered individually and separated by paragraph. It is imperative that each fact in a Statement of Material Facts (or in a response, reply, or joint statement) be accompanied by a particularized pinpoint citation to material in the record pursuant to Local Rule 56.1(b).** If the supporting material is not in the record, the materials shall be attached to the statement as exhibits specifically titled within the CM/ECF system, and reference to a previously filed exhibit shall use the "ECF No." format. All statements of material fact are limited to 10 pages, *see* Local Rule 56.1(b)(1)(A), and any requests for leave to include additional pages must be filed as a written motion for **prior** Court approval. The parties are reminded to consult Local Rule 56.1 to ensure compliance with the form and content of Statements of Material Fact.

**Trial Exhibits**. All trial exhibits must be pre-marked. The Plaintiffs' exhibits must be marked numerically with the letter "P" as a prefix; the Defendants' exhibits must be marked numerically with the letter "D" as a prefix. The parties must submit a list setting out all exhibits in accordance with the Joint Exhibit List template referenced above. Counsel should take care to ensure that exhibits are not compound – that is, that each document, to the extent practicable, is identified and marked individually. **Additionally, no later than the time of the pretrial conference, if applicable, all parties are to provide the Court with tabbed binders containing**

**copies of all proposed exhibits.** The binder should also include an exhibit list and a witness list.

**Voir Dire Questions**. The Court will require each prospective juror to complete a brief written questionnaire prior to the commencement of questioning in the courtroom. Any party may submit up to five proposed, case-specific questions to be included in the questionnaire. The proposed questions must be filed with the Court at the time of the filing of the joint pretrial stipulation and must also be submitted to the Court, in Word format, via e-mail to Artau@flsd.uscourts.gov. **Counsel for the parties will conduct the voir dire** by questioning the venire, starting with counsel for the Plaintiff(s)/Petitioner(s) and followed by counsel for the Defendant(s)/Respondent(s). The Court will not permit the backstriking of jurors.

**Settlement Notification**. If this matter is settled, counsel shall promptly file a Notice of Settlement on CM/ECF. **The Notice of Settlement must be filed and served jointly by counsel for all parties to the settlement.** *See* S.D. Fla. L.R. 16.4. In addition to filing a Notice of Settlement, counsel shall promptly inform the Court via telephone (561) 803-3450 and/or e-mail (Artau@flsd.uscourts.gov). Furthermore, the parties shall file a joint stipulation of dismissal and proposed order granting same no later than seven (7) days following the date of filing the Notice of Settlement.

**Form of Filings**. All filings should be prepared using 12-point Times New Roman typeface that is double-spaced and fully justified. This Notice does not supplant the requirements and provisions of Local Rule 7.1(c).

**Joint Filings**. Multiple Plaintiffs or Defendants shall file joint motions with co-parties unless there are clear conflicts of position. If conflicts of position exist, parties shall explain the conflicts in their separate motions.

**Extensions of Time. Any motion for a continuance or extension shall set forth in detail**

5

the basis for such a request and be filed sufficiently in advance of the deadline at issue to permit the Court to consider the motion. Moreover, the filing by counsel of a "Notice of Unavailability" will be stricken without further notice. Such notices are not provided for under the local rules and shall not be presumed to modify or alter the Court's scheduling order.

**Duty to Comply.** Failure to comply with this or any order of this Court, the Local Rules, or any other applicable rule may result in appropriate sanctions, including dismissal without prejudice or the entry of a default, without further notice. It is the duty of all counsel and *pro se* litigants to enforce the timetable set forth in this Order to ensure an expeditious resolution of this cause.

**ORDERED** in Chambers in West Palm Beach, Florida, this 16th day of January 2026.

*Ed Artau*
_____
ED ARTAU
UNITED STATES DISTRICT JUDGE

Copies Served:

**Lawrence Meadows**
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
Email: Lawrencemeadows@yahoo.com
PRO SE

**Capri Trigo**
Gordon & Rees LLP
100 SE Second Street
Suite 3900
MIami, FL 33131
305-428-5323
Fax: 877-644-6207
Email: ctrigo@gordonrees.com

**Grace Rybak**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, DC 20005

6

(202) 842-2600
Email: grybak@bredhoff.com

**John M. Pellettieri**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, DC 20005
(202) 842-2600
Email: jpellettieri@bredhoff.com

**Joshua B. Shiffrin**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, DC 20005
(202) 842-2600
Email: jshiffrin@bredhoff.com





Part # 156297 PROS2 EXP 04/27

ORIGIN ID:PKCA   (516) 982-7718
LAWRENCE MEADOWS

1900 SUNSET HARBOUR DR 2112

MIAMI BEACH, FL 33139
UNITED STATES US

TO WILKIE FERGUSON U.S COURTHOUSE
ATTN: CLERK OF COURT
400 NORTH MIAMI AVENUE
ROOM: 8N09
MIAMI FL 33128
(305) 523-5100

SHIP DATE: 03JUN26
ACTWGT: 0.45 LB
CAD: 6572123/ROSA2710

FedEx
Express

THU - 04 JUN 10:30A
PRIORITY OVERNIGHT

TRK# 8726 1252 5752
0201

33128
FL-US   MIA

Envelope X6 MPBA
Recycle me.

ATTN: CLERK OF COURT
400 N MIAMI AVE
RM 8N09
MIAMI FL
PRIORITY OVERNIGHT
458-2571
33128-1805-49
ETP: 2
100189991046000331280087261252575 2
SP:PD:100-Y