IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LAWRENCE MEADOWS,
Plaintiff,

v.

ALLIED PILOTS ASSOCIATION, et al.,
      Defendants.

CASE NO. 17-cv-22589-EA
HONORABLE JUDGE ED ARTAU
_____/

FILED BY _____ D.C.

JUN - 8 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## PLAINTIFF'S CONSOLIDATED REPLY IN SUPPORT OF HIS MOTIONS FOR A PROTECTIVE ORDER (ECF No. 280) AND TO STRIKE (ECF No. 283)

Plaintiff Lawrence Meadows respectfully files this Consolidated Reply in further support of his Renewed Emergency Motion for Protective Order to Stay Trial Preparation (ECF No. 280) and his Cross-Motion to Strike APA's Pretrial Submissions (ECF No. 283).

## INTRODUCTION

In its opposition briefs, APA asks this Court to impose the case-ending sanction of precluding Plaintiff from submitting any pretrial materials. This request should be denied. As detailed herein and in the accompanying Declaration of Plaintiff Lawrence M. Meadows, ("Meadows Decl."), attached hereto as **Exhibit 1**, Plaintiff acted with good faith and reasonable diligence, and his decision to defer preparation for a trial that a Magistrate Judge's Report and Recommendation ("R&R") (ECF No. 269) had just recommended be cancelled was substantially justified. Plaintiff acted with prudence by repeatedly seeking relief from the Court, while APA itself conceded the futility of the pretrial process and failed to adhere to its own proposed exchange schedule. For these reasons, APA's request for a default sanction should be denied, and Plaintiff's motions should be granted.

1

## ARGUMENT

### I. Plaintiff Acted in Good Faith, Exercised Reasonable Diligence, and His Conduct Was Substantially Justified.

APA seeks sanctions against Plaintiff for failing to comply with the May 29, 2026 pretrial deadline. That request should be denied.

Plaintiff did not ignore the Court's scheduling order. To the contrary, he acted with good faith and reasonable diligence by proactively seeking relief from the very deadlines at issue. Plaintiff filed a Motion to Adjourn the Trial (ECF No. 257) and an Emergency Motion for Protective Order to Stay Trial Preparation (ECF No. 263) well before the deadline. The Court had not ruled on either motion by May 29.

Furthermore, Plaintiff's conduct was substantially justified. He reasonably believed - and still believes - that preparing for trial would have been inefficient and wasteful while a Report and Recommendation recommending complete summary judgment was pending, along with ten unresolved objections and two fully briefed spoliation motions. This good faith effort to seek Court intervention, combined with the highly unusual procedural posture of the case, distinguishes Plaintiff's conduct from the cases cited by APA, where parties simply failed to participate without ever seeking relief from the Court. Severe sanctions require a finding of "willful or bad faith conduct," which is entirely absent here. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

### II. APA's Request for a Default Sanction is Barred by Its Own Inconsistent Conduct.

APA lacks the standing to credibly seek sanctions. Its current position is directly contradicted by its own prior statements and actions, as detailed in the record and the accompanying Meadows Declaration.

2

- **APA Agreed a Stay Was Necessary:** In its brief opposing Plaintiff's motion to adjourn, APA argued that proceeding with pre-trial preparation before a summary judgment ruling would **"render those [pretrial] submissions obsolete"** and that an adjournment was necessary to **"facilitate the efficient resolution of this case."** ECF No. 261 at 2-3; Meadows Decl. ¶ 4).

- **APA's Counsel Conceded the Process was "Absurd":** During the May 29 conferral, APA's counsel acknowledged the futility of the exercise, stating, **"I see in general that it's absurd we have to go through any pre-trial process at this point..."** (Meadows Decl. ¶ 6).

- **APA Breached First:** APA repeatedly proposed a schedule via emails on May 7 and May 14, 2026, where it would serve initiate the process by first sending its jury instructions on May 20, but failed to do so. (Meadows Decl. ¶ 5). Its counsel then explained this failure by stating, **"we certainly had no obligation to send you our materials when you were unwilling to send us anything."** (Meadows Decl. ¶ 7).

APA should not be allowed to now seek the "death sentence" of preclusion against Plaintiff - for non-participation in a process it was the first to abandon.

APA's request for an award of attorney's fees and costs must also be denied. As the record demonstrates, Plaintiff did not act in bad faith, and his conduct was, at a minimum, "substantially justified" given the procedural posture of the case the pending MSJ and subsequent R&R. Accordingly, an award of fees and costs is inappropriate under Federal Rules of Civil Procedure, Rule 16(f).

**III. The July 13th Trial Date Remains Premature and Untenable.**

APA is attempting to exploit a procedural trap. On May 25, 2026 - just four days before the pretrial deadline - the Magistrate issued an R&R recommending granting APA's Motion for Summary Judgment on all counts - effectively terminating the case - and obviating the need for a trial. On June 1, 2026, Judge Artau issued an Order (ECF No. 277) resetting Calendar Call to July 7 and the Trial date to July 13, 2026. By moving the trial date, the Court tacitly recognized the disruption caused by the R&R. However, because the Order was not issued until after the May 29 deadline pre-trial submissions deadline, APA is now attempting to weaponize that timing gap to secure a default against plaintiff.

A trial cannot be fairly prepared or conducted until the Court resolves the ten pending Objections to foundational motions and fully briefed unresolved Motions for Spoliation. As explained by Plaintiff in his attached , further supported by the Second Supplemental Declaration of former APA President Captain Edward Sicher in his ("2nd Supp. Sicher Decl."), these foundational motions address:

a. **The Fitness of Opposing Counsel:** Plaintiff's Eighth Objection (ECF No. 259) seeks to disqualify APA's counsel based on a conflict of interest created when APA counsel John Pellettieri falsely represented that APA never retained attorney Sue Edwards on Plaintiff's behalf. This is directly contradicted by former APA President Captain Edward Sicher' sworn testimony in his Second Supplemental Declaration ("2nd Supp. Sicher Decl."). Wherein, he attests that he used union resources to personally retain Ms. Edwards to represent Plaintiff individually in his ADA lawsuit against American Airlines, Inc. (Meadows Decl. ¶ 10(a); Exhibit A, f2nd Supp. Sicher Decl. ¶ 6).

b. **The Integrity of the Evidentiary Record:** Plaintiff's un-ruled-upon Motions for Spoliation Sanctions (ECF Nos. 187, 223) allege systemic destruction of evidence,

4

includin, the routine deletion of former APA's Presidents text, emails, and ESI related to Plaintiff's claims, the wiping of a former president's laptop hard drive and destruction of five milk crates of hundreds of replaceable legal pad notes involving Plaintiff and his claims, because APA's Legal Department "never issued a litigation hold notice." (Meadows Decl. ¶ 10(b)).

c. **The Fundamental Scope of the Case:** Plaintiff's Objections (ECF Nos. 149, 259, 264) challenge the fraudulently procured Protective Order (ECF No. 138). That order was obtained based on APA counsel, Mr. Pellettieri's serial misrepresentations of material fact, including his false claim that Grievance 12-012 did not apply to Plaintiff - a statement Captain Sicher attests is false. (Meadows Decl. ¶ 10(c); Exhibit A, 2nd Supp. Sicher Decl.¶ 8).

To force preparation now constitutes an "undue burden" in direct violation of Federal Rule of Civil Procedure 26(c), and contravenes the core mandate of Federal Rule of Civil Procedure 1 to secure the "just, speedy, and inexpensive determination" of this action.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court:

1. **GRANT** his Renewed Emergency Motion for Protective Order (ECF No. 280) and **GRANT** his Cross-Motion to Strike (ECF No. 283);

2. Enter an **INTERIM STAY** of all deadlines including calendar call and trial date pending a ruling on these motions;

3. **Deny** APA's request for the imposition of a default sanction, and any related request for attorney's fees and costs, in its entirety; and

4.  Set a telephonic **STATUS CONFERENCE** to address a path forward for resolving the multitude of pending, case-dispositive motions before any new scheduling of pre-trial exchanges, calendar call, and trial date is contemplated.

Dated: June 5th, 2026.

Respectfully submitted,

Lawrence M. Meadows, *Pro Se*
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email:lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Pro Se Plaintiff, hereby certify that on June 5th, 2026, a true

and correct copy of the foregoing was served via the Court's CM/ECF system, email, and U.S.

Mail on all counsel of record.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com
*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Lane Shadgett, Esq.**
**Grace Rybak, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com;
jpellettieri@bredhoff.com;
grybak@bredhoff.com;
*Pro Hac Vice Counsel for Defendant*

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LAWRENCE MEADOWS,
**Plaintiff,**

v.

ALLIED PILOTS ASSOCIATION, et al.,
      **Defendants.**

CASE NO. 17-cv-22589-EA
HONORABLE JUDGE ED ARTAU
_____/

### DECLARATION OF PLAINTIFF LAWRENCE M. MEADOWS
### IN SUPPORT OF PLAINTIFF'S CONSOLIDATED REPLY

I, Lawrence Meadows, declare under penalty of perjury that the following is true and correct:

1. I am the Plaintiff in this action and make this declaration based on my personal knowledge and contemporaneous notes. I have the utmost respect for this Honorable Court and have endeavored at all times to proceed in a manner consistent with Federal Rule of Civil Procedure 1, which requires that actions be administered to secure the "just, speedy, and inexpensive determination of every action." In doing so, I have strived to preserve the resources of the parties and this Court and to avoid the "undue burden or expense" prohibited by Federal Rule of Civil Procedure 26(c).

2. On April 23, 2026, counsel for APA, Joshua Shiffrin, sent an *ex parte* email to Magistrate Judge Reid's chambers seeking to have the court impose his proposed pretrial schedule upon me. This communication occurred after our morning meet-and-confer and at a time

1

Mr. Shiffrin knew I was unavailable, as I was required to take an unscheduled break from my duties as a flight simulator instructor to respond.

3. After Magistrate Judge Reid's chambers declined to intervene and instructed the parties to comply with Judge Artau's order, I immediately acted with prudence and diligence by requesting that APA join me in a motion to adjourn. When APA refused, I filed my Unopposed Motion to Adjourn Trial on April 24, 2026 (ECF No. 257), after securing Mr. Shiffrin's agreement not to oppose it.

4. After that motion was fully briefed by May 5, 2026, and the Court had not ruled, I again diligently sought relief by filing my Emergency Motion for a Protective Order to Stay Trial Preparations on May 11, 2026 (ECF No. 263). APA's counsel advised me they took "no position" on that motion. This followed APA's pretextual opposition to my Motion to Adjourn, wherein APA strenuously argued for over a page that proceeding with trial preparation before a summary judgment ruling would "render those submissions "obsolete.", and that an adjournment was necessary to "facilitate the efficient resolution of this case." (ECF No. 261 at 2-3).

5. In separate emails on May 7, 2026, and May 14, 2026, Mr. Shiffrin proposed a pretrial exchange schedule that required APA to provide me with draft jury instructions on May 20, 2026, as the first step in the process. APA never provided these instructions and initiated no exchanges.

6. During a telephonic meet-and-confer on May 29, 2026, Mr. Shiffrin began the call by stating, **"I see in general that it's absurd we have to go through any pre-trial process at this point…,"** but stated APA intended to file its submissions anyway.

2

7. During that same May 29, 2026 call, after I noted that APA had failed to adhere to its own proposed schedule and effectively abandoned it. Specifically, that APA failed to serve its jury instructions on May 20 as twice proposed via email; to which Mr. Shiffrin stated, **"we certainly had no obligation to send you our materials when you were unwilling to send us anything."** Late of the submission deadline of May 29, APA unilaterally filed on the docket its pre-trial submissions all at once, without previously serving them upon Plainitff.

8. On June 1, 2026, after Judge Artau issued his Order resetting the trial date to July 13 (ECF No. 277), I conferred with Mr. Shiffrin regarding my intent to file a Renewed Motion for Protective Order based on the new trial date. In an email that morning, he stated APA "takes no position." Hours later, during our telephonic conferral, after I reminded him of his prior "absurd" comment, he became hostile, reversed course, and stated APA would "oppose the motion", claiming I was in default.

9. My decision to seek a stay was based on a good-faith belief that it made no sense to prepare for trial while fundamental, case-altering motions remained undecided by this Court. I was confused and uncertain how a trial could proceed.

10. This uncertainty stemmed from numerous unresolved foundational issues, including:

   **a. The Fitness of Counsel:** My Eighth Objection (ECF No. 259) seeks to disqualify APA's counsel based on a "swearing match" over a conflict of interest, created when APA counsel John Pellettieri falsely represented that APA never retained attorney Sue Edwards on my behalf (ECF No. 142). This is directly contradicted by former APA President Ed Sicher, who attests: "I personally retained Ms. Edwards on behalf of APA to represent First Officer Meadows and authorized her retainer." (Second Supplemental Declaration of Captain Edward F. Sicher ("2nd Supp. Sicher Decl."),

3

attached hereto as **Exhibit A**, 2nd Supp. Sicher Decl. ¶ 6; See also ECF No. 285, Ex. 1). This dispute requires a mandatory evidentiary hearing. *See Baxter v. Roberts*, 54 F.4th 1241, 1257 (11th Cir. 2022).

**b. The Integrity of the Record:** My two un-ruled-upon Motions for Spoliation Sanctions (ECF Nos. 187, 223) allege systemic destruction of evidence, including the deletion of text, emails, and ESI, along with the wiping of a former president's laptop hard drive and destruction of five milk crates of irreplaceable notes, because, as Captain Sicher attests, he was **"never issued a litigation hold notice"** by APA's Legal Department. (**Exhibit A**, 2nd Supp. Sicher Decl. ¶ 4; See also ECF No. 285, Ex. 1). These motions require an evidentiary hearing and could result in case-altering sanctions, including adverse jury instructions.

**c. The Scope of the Case:** My First, Eighth, and Tenth Objections (ECF Nos. 149, 259, 264) challenge the fraudulently-procured Protective Order (ECF No. 138). That order was obtained based on Mr. Pellettieri's serial misrepresentations, including his false claims that: (1) attorney Sue Edwards was never retained by APA to represent me, a statement Captain Sicher attests is false (**Exhibit A**, 2nd Supp. Sicher Decl. ¶ 6); and (2) that Grievance 12-012, which goes to the heart of Count III of my complaint, did not apply to me, a statement Captain Sicher also attests is false. (**Exhibit A**, 2nd Supp. Sicher Decl. ¶ 8). If this fraudulently obtained order is vacated, the scope of discovery would be fundamentally altered.

11. At no point did I ever willfully refuse to comply with the Court's orders. I consistently stated to opposing counsel that I must defer pretrial exchanges pending a ruling on my motions for a protective order.

4

5

Executed on June 5th, 2026.

Lawrence M. Meadows

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LAWRENCE MEADOWS,
    Plaintiff,

v.

ALLIED PILOTS ASSOCIATION, et al.,
    Defendants.

CASE NO. 17-cv-22589-EA
HONORABLE JUDGE ED ARTAU
_____/

## SECOND SUPPLEMENTAL DECLARATION OF CAPTAIN EDWARD F. SICHER

I, Captain Edward F. Sicher, declare and state as follows:

1.       I am over the age of eighteen and am competent to make this declaration. The facts stated herein are based on my personal knowledge.

2.       I previously submitted two sworn declarations in this matter, filed at ECF No. 180, Exhibit 3, and ECF No. 187, Exhibit 1. I have reviewed those declarations and re-affirm all statements made therein as true and correct.

3.       I submit this supplemental declaration to correct certain factual errors in the Magistrate Judge's May 25, 2026 Report and Recommendation ("R&R") [ECF No. 269]. I have dedicated a decade of my career, from 2014 to 2024, to advocating on behalf of First Officer Meadows and similarly situated disabled pilots, first as his Miami Domicile Representative and later as APA President. My knowledge spans the entire period of this litigation, both within and beyond the Court's December 31, 2021 temporal scope limitation.

1

4.     **Regarding Spoliation of Evidence:** The Magistrate's R&R recommends summary judgment on a record whose integrity is subject to a pending Motion for Sanctions for Spoliation [ECF No. 187]. As I stated in my prior declaration (ECF 187, Ex. 1) and reaffirm here, I was never placed on a litigation hold by APA's Legal Department during my entire tenure as President, and I was never instructed by APA counsel to preserve my emails text messages, or other ESI related to my union duties with respect to First Officer Meadows. Because of this failure, I routinely deleted my emails and text messages. Most egregiously, after I was removed from office, my APA-issued laptop was "effectively wiped clean" by APA staff.

5.     In addition to my laptop, I was known for keeping copious contemporaneous handwritten notes on standard yellow legal pads regarding all aspects of my union duties. These notes amounted to hundreds of individual legal pads, which I stored in approximately five milk crates. Each pad was typically dated and labeled by topic, such as "Meadows Litigation" or matters related to the REDDI committee. I relied on these contemporaneous notes for accuracy, including during sworn deposition testimony in other litigation. As I was never instructed by APA's Legal Department to preserve these materials, I discarded and destroyed all five crates of these handwritten notes when cleaning out my garage after I was removed from office in late 2024.

6.     **Regarding Fraud on the Court:** The R&R is predicated on a Protective Order that was procured by fraud. As I attested in my prior declarations (ECF 180, Ex. 3, ¶ 26; ECF 187, Ex. 1, ¶ 5), I have direct, personal knowledge that APA counsel John Pellettieri's representations to the Court that attorney Sue Edwards never represented First Officer

2

Meadows were false. I personally retained Ms. Edwards on behalf of APA to represent First Officer Meadows and authorized her retainer.

7.      **Regarding Counts I & II (DFR - Seniority Integration):** The R&R's finding that APA's actions were reasonable is contradicted by the record. As I attested in my prior declaration (ECF 180, ¶ 18), I proffered APA Board of Directors Resolution R2016-30, which explicitly acknowledged that legacy American Airlines' Medically Disabled Dropped ("MDD") pilots suffered "disparate treatment" and were improperly removed from the seniority list due to the "subjective interpretation of the CBA", and that some were deemed "problematic employees" and unfairly denied reinstatement. This resolution documented the Board's acknowledgment of these issues during the ISI proceedings.

8.      **Regarding Count III (DFR - Grievance 12-012):** The R&R's finding that Grievance 12-012 did not apply to First Officer Meadows is false. As I previously attested (ECF 180, ¶ 23), in March 2023, I converted Grievance 12-012 into Sicher Expedited Presidential Grievance 23-031 for the express purpose of advancing Meadows' claim, demonstrating that APA itself treated the grievance as applying to him.

9.      **Regarding Counts IV & V (Breach of Contract):** The R&R's finding that these claims are preempted ignores APA's own, duplicitous legal position. As I previously attested (ECF 180, ¶ 19), I am aware that APA's Legal Department, relying on the secret "Babb-Denison" legal opinion based a false narrative, internally maintained that APA owed no statutory duty of fair representation ("DFR") to MDD pilots under the Railway Labor Act ("RLA").

10.     **Regarding Counts VI & VII (LMRDA - Membership & Free Speech):** The R&R's reliance on the 2017 *Valverde* arbitration award is a clear error. As I previously

3

attested (ECF 180, ¶¶ 21-22), my official September 2, 2022, "Presidential Constitutional Interpretation, Inactive Member Standing" superseded that award and affirmed First Officer Meadows' status as a member in good standing, pursuant to which I appointed him to the APA National Aeromedical sub-committee to serve as the Miami Domicile's Long-term Disability Coordinator. I have firsthand knowledge that First Officer Meadows was previously permitted to speak at multiple Board of Directors meetings as a member in good standing. Following his request to speak and expose the secret settlement at the APA Spring 2025 Board of Directors Meeting, his membership was terminated by President Nick Silva on May 1, 2025.

11.     **Regarding Count VIII (LMRDA - Retaliation):** The R&R's finding that this claim is barred is erroneous. It ignores new, independent acts of retaliation. As I attested in my prior declarations (ECF 180, ¶ 26; ECF 187-1, ¶ 5), I have personal knowledge that APA leadership pressured First Officer Meadows to drop this lawsuit, and his legal representation was terminated after he refused. Most egregiously, the pretext used in the January 15, 2025 Settlement Agreement was the deliberate falsehood that Grievance 12-011 was "closed since 2013," a fact I know to be false as I had personally directed that same grievance to be moved to arbitration in June 2024.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29 day of May, 2026.

Captain Edward F. Sicher

Align top of FedEx® shipping label here.



PRIORITY OVERNIGHT

**458-1550**

4361  MON 08/08 07:08
WILKIE D FERGUSON U.S. COURTHOUSE
400 N MIAMI AVE
MIAMI FL

33128-1801-99
9771861

# Envelop
# Recycle m

ORIGIN ID:PKCA  (516) 982-7718
LAWRENCE MEADOWS

1900 SUNSET HARBOUR DR 2112

MIAMI BEACH, FL 33139
UNITED STATES US

SHIP DATE: 06JUN26
ACTWGT: 1.00 LB
CAD: 6572123/ROSA2710

TO  **ATTN: CLERK OF COURT, ROOM 8N09**
**WILKIE D FERGUSON U.S. COURTHOUSE**
**400 NORTH MIAMI AVENUE**

**MIAMI FL 33128**
(305) 523-6100    REF:



**FedEx**
Express

E

**MON – 08 JUN 10:30A**
**PRIORITY OVERNIGHT**

TRK# 8727 2404 8296
0201

**X6 MPBA**

33128
FL–US  MIA



**This envelope is only for FedEx Express® shipments.**

You can help us get your package safely to its destination by packing your items securely. Need help? Go to **fedex.com/packaging** for packing tips.

Check your FedEx shipping document, the current FedEx Service Guide, or the conditions of carriage for complete terms, conditions, and limits of liability.

© 2025 FedEx 155475/155476 REV 2/25



**PAP 21**

Please recycle. See how we are connecting the world in responsible and resourceful ways at **fedex.com/sustainability**. Recycling options may vary by location.



**Scan to learn how we can help make Earth a priority together.**

▼ Insert shipping document here.