IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LAWRENCE MEADOWS,
    Plaintiff,

v.

ALLIED PILOTS ASSOCIATION, et al.,
    Defendants.

CASE NO. 17-cv-22589-EA
HONORABLE JUDGE ED ARTAU

_____/

FILED BY _____ D.C.

JUL 23 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

PLAINTIFF'S EMERGENCY OMNIBUS MOTION
FOR AN IMMEDIATE STATUS CONFERENCE, A UNIFIED SCHEDULING
ORDER, THE WITHDRAWAL OF THE PRETRIAL REFERRAL, AND FOR
THE DISTRICT JUDGE TO ASSUME DIRECT PRETRIAL SUPERVISION

Plaintiff Lawrence Meadows respectfully moves this Court, through presiding District Judge Ed Artau, for an Emergency Omnibus Case Management Order: (1) staying the October 5, 2026 trial date and all corresponding pretrial deadlines; (2) scheduling an immediate status conference before Judge Artau; (3) vacating and withdrawing the pre-trial referral of all pending matters and motions to the Magistrate Judge Lisette M. Reid pursuant to 28 U.S.C. § 636(c)(4) and Federal Rule of Civil Procedure 73(b)(3); (4) entering a revised scheduling order that permits Plaintiff to conduct full and comprehensive trial preparation; and (5) scheduling a consolidated, multi-day evidentiary hearing before the District Judge on all pending objections and the unresolved motions on the record.

## I. Emergency Basis for Pretrial Intervention and Stay of Trial Deadlines

Plaintiff does not submit this emergency application lightly. This is an objective procedural emergency caused by the conflict between an upcoming October 5, 2026 trial date and **a profound procedural deadlock** on two pending, unresolved spoliation motions (ECF Nos. 187, 223) and

1

ten pending objections to Magistrate Judge orders as further detailed in Section IV below. While Defendant APA has completed its trial preparation, Plaintiff has been blocked from conducting essential discovery by a highly restrictive protective order that arbitrarily limits the temporal scope of the case and denies access to key witnesses, inhibiting his ability to engage in trial preparation.

Additionally, Plaintiff has two outstanding emergency motions for protective orders to stay trial preparation deadlines (ECF Nos. 262 and 281), a consolidated procedural opposition to Defendant's motion in limine, and a cross-motion to strike APA's pretrial submissions and motions in limine (ECF Nos. 282 and 283). Proceeding with trial preparation while these foundational matters are unresolved is premature and highly prejudicial to Plaintiff, who has been unable to perform necessary trial preparation due to this highly truncated, restrictive discovery process.

Pursuant to 28 U.S.C. § 636(c)(4) and Federal Rule of Civil Procedure 73(b)(3), a District Judge may vacate a referral to a Magistrate Judge upon a showing of "extraordinary circumstances" by a party, or upon the Court's own motion for "good cause." **Good cause exists here** because the Magistrate Judge's handling of the pretrial record has resulted in a profound, uncorrected procedural deadlock. Specifically, the Magistrate Judge's failure to rule on two referred, fully briefed spoliation motions (ECF Nos. 187 and 223) has left the integrity of the active trial record unresolved, preventing the compilation of a trustworthy evidentiary foundation on the eve of trial. Furthermore, **extraordinary circumstances are established** by a systemic structural breakdown of due process in the administration of this case, rendering the current trial schedule unviable, wherein the Magistrate Judge systematically excluded and failed to consider the uncontradicted sworn declarations of the union's own former President, Captain Ed Sicher, and issued precipitous, sweeping rulings that procedurally defaulted Plaintiff on all eight counts

2

without conducting the required, timely requested evidentiary hearings. Accordingly, the Court has the absolute authority to vacate the referral *sua sponte* for good cause.

Specifically, the Magistrate Judge precipitously issued two sweeping omnibus rulings (ECF Nos. 252 and 253) denying multiple motions that had been pending for almost five months—which strategically neutralized key pillars of Plaintiff's just-filed arguments that he would have structured differently had the Magistrate Judge ruled in a timely manner—a mere eight hours after Plaintiff docketed his comprehensive Opposition to Defendant's Motion for Summary Judgement and Motion for Relief under Rule 56(d). Which was supported by Plaintiff's sworn, 41-paragraph Rule 56(d) Declaration meticulously detailing the discovery needed, with extensive exhibits including the two sworn bombshell declarations of former APA President Ed Sicher (as further detailed in the next paragraph below) (ECF Nos. 249, 250, 251, and 251-1, Exs. D, F). In doing so, the Magistrate Judge completely bypassed and leapfrogged over:

- Two pending, fully briefed spoliation motions (ECF Nos. 187, 223) referred to the Magistrate by this Court under ECF No. 177, both motions remain unruled upon to date;

- Ten pending objections to prior Magistrate Judge orders disputing the fitness of counsel (ECF No. 259), the integrity of the record (ECF No. 259), and the scope of the case (ECF Nos. 260, 264), all these objections remain unruled upon to date; and,

- Plaintiff's fully briefed, time-sensitive motion for extension of all case, deadlines, stay of discovery and request for an immediate status conference (ECF No. 173), the reply to which first presented the original 31-paragraph "Sicher Declaration" (ECF No. 180, Ex. 3, this motion remains unruled upon to date.

**This systemic structural breakdown of due process meets the high threshold of "extraordinary circumstances" required under 28 U.S.C. § 636(c)(4) and Federal Rule of Civil Procedure 73(b)(3) to warrant this Court vacating the referral.**

In total disregard of the critical motions and undisputed evidence before her, the Magistrate Judge in her Report and Recommendation on Defendant's motion for summary judgement ("R&R") (ECF No.269), proceeded to summarily default Plaintiff on all eight counts in his First Amended Complaint ("FAC") (ECF No. 35) by deeming APA's statement of facts admitted, while failing to address or even mention the two uncontradicted, sworn bombshell declarations of former APA President Captain Ed Sicher (the first original 31-paragraph "Sicher Declaration" signed January 28, 2026, and the second 5-paragraph "Sicher Supplemental Declaration" signed January 29, 2026). These declarations, which were presented to the Magistrate original 31-paragraph "Sicher Declaration" across several active dockets (ECF Nos. 180, Ex. 3; 183, Ex.1; 205, Exs. 1–2; and 251-1, Exs. D, F), completely dismantle Mr. Pellettieri's factual misrepresentations used to procure the highly restrictive protective order.

Moreover, the Magistrate Judge previously denied Plaintiff's January 30, 2026 motion to supplement the record with evidence of Captain Sicher's original Declaration (ECF No. 183, Ex.1) to counter the motions to disqualify APA's Counsel and the motion to correct the record for sanctions. The Magistrate Judge erroneously found Plaintiff did not "provide an explanation as to why the [Sicher] Declaration was not available and could not have been submitted with the [previously filed motions]... Therefore, the Court will not consider the "new" evidence..." (ECF No. 252 at 6-7)—willfully ignoring that two months earlier she had previously quashed Captain Sicher's subpoena in her highly restrictive November 13, 2025 Protective Order (ECF No. 138), thereby rendering him unavailable until he finally agreed to come forward on January 28, 2026. The Magistrate Judge subsequently omitted any mention of these declarations in her summary judgment R&R (ECF No. 269) and her order (ECF No. 258) denying Plaintiff's Emergency Motion to Vacate the Protective Order (ECF No. 205) procured by Mr. Pellettieri's misrepresentations.

4

Finally, she was unable to consider Captain Sicher's third, "Sicher Second Supplemental" 11-paragraph declaration (signed May 29, 2026), which was submitted as Exhibit 1 to Plaintiff's Objection to the Magistrate Judge's R&R (ECF No. 285-1), which systematically attests to the physical spoliation of evidence, fraud on the court used to procure the protective order, and dismantles the R&R ruling on a count-by-count basis.

Furthermore, the Magistrate Judge previously denied Plaintiff's requests for an evidentiary hearing (ECF No. 153) on these threshold conflicts. Forcing a self-represented litigant to stand trial under a complete discovery blockade, while referred spoliation and disqualification motions are left undecided on an uncorrected record, constitutes the exact "good cause" and "extraordinary circumstances" required under 28 U.S.C. § 636(c)(4) and Fed. R. Civ. P. 73(b)(3) to warrant this Court vacating the referral and assuming direct pretrial supervision.

At the pretrial Calendar Call held on July 7, 2026, this Court seemed surprised and queried why these critical issues, and in particular the two spoliation motions, had not yet been addressed. Direct intervention by District Judge Artau is necessary to preserve the integrity of these proceedings, assume direct pretrial supervision, and resolve these issues before trial.

## II. The Truncated Discovery Record and the Witness Blockade

The Magistrate Judge, relying on Defendant APA counsel John Pellettieri's multiple misrepresentations of material fact made during the October 28, 2025 hearing, issued a highly restrictive protective order (ECF No. 138) that arbitrarily limited the temporal scope of discovery to December 31, 2021, and quashed deposition subpoenas, blocking access to eight key witnesses:

1. Former APA President Ed Sicher
2. Current APA President Nick Silva
3. APA Outside Counsel and Plaintiff's former attorney Sue Edwards
4. APA's Director of Legal Representation James Clark
5. APA National Disability Committee Chairman Thomas Rempfer
6. APA Miami Domicile Chairman Jay Wilhelm

7. APA Director of Grievances Tricia Kennedy

8. APA Director of Negotiations Mark Myers (whom APA subsequently designated as their 30(b)(6) corporate representative, allowing him to sit through and tailor his testimony around Plaintiff's deposition, despite APA previously quashing his individual subpoena through the protective order).

Because this restrictive protective order prevents the Plaintiff from conducting necessary discovery, proceeding to trial on the current schedule with a truncated and incomplete discovery record would violate his due process rights.

## III. The Necessity of Withdrawing the Referral & Assuming Direct Pretrial Supervision

An immediate status conference before presiding Judge Artau is imperatively necessary to address this profound procedural deadlock. Additionally, to preserve the integrity of these proceedings and protect Plaintiff's constitutional right to due process, it is essential that this Court assume direct pretrial supervision and withdraw the referral to Magistrate Judge Reid. Who has failed to rule on two critical, fully briefed spoliation motions (ECF Nos. 187 and 223) that were referred under ECF No. 177, while simultaneously issuing a Report and Recommendation (ECF No. 269) based on a truncated and disputed discovery record.

Specifically, the Magistrate Judge systematically ignored Plaintiff's 41-paragraph sworn declaration which meticulously detailed the discovery needed and his procedural arguments under Fed. R. Civ. P. 56(d) (by which Plaintiff sought safe harbor "exception" under Local Rule 56.1(c)), and instead procedurally defaulted Plaintiff on all eight counts by deeming APA's statement of facts admitted. In direct response, Captain Ed Sicher's third "Second Supplemental Declaration" (filed as Ex. 1 with ECF No. 285-1) systematically rebuts the R&R count-by-count, proving that Grievance 12-012 and expedited twin version 23-031 was advanced specifically on Plaintiff's behalf and was never "closed since 2013" as Mr. Pellettieri falsely asserted to misleadingly procure an arbitrarily restrictive protective order based on a factually inaccurate record. *Id.* ¶ 8. Indeed,

6

the APA-American Airlines' secret collusive settlement agreement of January 15, 2025 (ECF No. 180 at 77, Ex. 3 Sicher Decl. ¶ 30, Ex. K), which specifically references the Plaintiff for the purpose of terminating his grievance rights with prejudice for zero value and without notice, dispositively establishes that his grievance rights under Grievance 12-012—the same grievance that is the basis of Count III in his FAC—were not terminated until that date. (ECF No. 285 at 3, ¶ 2; at 4-5, ¶ C.; at 6-7, ¶ 2.).

This pattern of "prolonged delay" and bad faith obstruction has historically characterized APA's defense strategy—a fact twice recognized in orders entered by prior presiding District Judge, the Honorable K. Michael Moore. In May 2025, he first admonished APA for its "prolonged delay in bringing a motion to dismiss" when otherwise ordered to do so (*see* ECF No. 70 at 2). Months later, his September 15, 2025 Order issued a scathing rebuke of APA's dilatory tactics, denying APA's motion to dismiss as untimely, holding in part:

> Here, the **court finds that Defendant's position that it did not have to respond to the Complaint until Defendant was explicitly ordered to do so by this Court, is unreasonable and does not justify its prolonged delay**... While the Court embraces its role as an active arbiter in the case management process, **the Court is not a de facto babysitter.** [Emphasis added].

(ECF No. 91 at 2).

Direct judicial oversight by District Judge Artau is required to address inconsistent and misleading representations made by Defendant's counsel across jurisdictions. In parallel proceedings in the Eastern District of New York, *Meadows v. American Airlines, Inc., et al.*, No. 2:26-cv-00679-EK-ARL, APA's counsel represented to EDNY Judge Komitee in writing that **"APA is not aware of any witnesses (other than Plaintiff)... located in Florida"** to block a venue transfer to this District (EDNY ECF No. 36 at 2, ¶ 5). This statement is verifiably false and

directly contradicted by APA's own trial witness list in this case (ECF No. 273), and initial disclosures, which list former APA President Dan Carey and other Florida-resident witnesses.

**APA's verifiably false representations** in the parallel New York proceeding prompted the service and filing of a formal Motion for Sanctions under Federal Rule of Civil Procedure 11, to which Defendant's counsel responded by filing a misleading , partial letter of clarification (EDNY ECF No. 39)  two days after service—a deceptive half-measure that remains on the record. As a result, this parallel federal record has been documented and filed as a Rule 11 motion (EDNY ECF No. pending), also attached as **Exhibit A to Plaintiff's Notice of Supplemental Filing Regarding Parrallel Federal Proceedings and Sanctions Pursuant to Rule 11 in the Eastern District of New York,**  filed concurrently herewith in this case on July 22, 2026.

## IV. Outstanding Disputes Requiring a Consolidated Evidentiary Hearing

Rather than holding disjointed hearings on individual issues, the Court should schedule a consolidated evidentiary hearing over two to three days to resolve the following outstanding **threshold motions and objections**—directly affecting the **fitness of counsel, the integrity of the record, and the scope of this case**—all of which involve highly overlapping witnesses and common evidence:

A. <u>**The Fitness of Counsel (Objection Pending - ECF No. 259):**</u>

1. ***The First Motion to Disqualify Joshua B. Shiffrin and Bredhoff & Kaiser, P.L.L.C. (B&K) for Criminal Witness Tampering (SDFL ECF Nos. 109 & 110):*** Concerning lead counsel's bad-faith, extrajudicial campaign to intimidate a key fact witness and union advocate, First Officer Tom Rempfer, in violation of 18 U.S.C. § 1512(b). This application rests on a direct, unresolved conflict of fact on the record:

   - **Coercive Threats and Representation Leverage:** On October 6, 2025, APA lead counsel Joshua Shiffrin and his associate, Grace Rybak, conducted a lengthy

telephonic and Zoom conference with key non-party witness First Officer Tom Rempfer. During this call, Shiffrin and Rybak pressed Rempfer no fewer than eleven (11) times to consent to quashing his subpoena, explicitly conditioning B&K's legal representation of him on his agreement to quash the subpoena and block his testimony. Rempfer stated that Shiffrin emailed a restrictive "gag list", and *"warned me about the implications of saying something, very broadly that basically you can't say anything about anything...",* and that producing documents would *"subject the offender to disciplinary action in accordance with C&B* [APA Constitution and Bylaws] *Article VII"* (which includes expulsion).

- **The Written Confession of Intent (The Zoom Transcript):** Despite Rempfer's persistent refusal to quash his subpoena, Shiffrin made a devastating, unprompted admission on the record, stating: he was *"...looking to put off your* [Rempfer's] *deposition indefinitely."* and *"APA wants to quash the subpoena. so you wouldn't sit for a deposition or hand over documents."* These statements—submitted to this Court under oath in a declaration by B&K associate Rybak (ECF No. 113-1 at 5:9-10; 6:16-17)—constitutes a written confession of subjective intent to delay, influence, or prevent federal testimony in direct violation of 18 U.S.C. § 1512(b). FO Rempfer subsequently expressed his extreme fear of retaliation on conventionally filed USB audio recordings (ECF No. 186, Oct. 16, 2025, at 7:20), stating: *"I'm a prime example of witness tampering because I'm very nervous."*

- **The Scramble for Criminal Insulation:** Recognizing Shiffrin's severe criminal exposure under the federal witness tampering statute, APA scrambled the very next day (October 22, 2025) to admit former DOJ Criminal Attorney John Pellettieri *pro hac vice* (ECF No. 114) to insulate Shiffrin. At the October 28, 2025 discovery hearing, Pellettieri appeared in lieu of Shiffrin to argue for the highly restrictive protective order, while Shiffrin and Rybak remained silent on Zoom, making no formal appearance despite being lead counsel on the briefs.

- **Invocation of the Advocate-Witness Rule:** Because Shiffrin and Rybak are the sole other participants in these coercive communications, they are necessary fact witnesses under Florida Rule of Professional Conduct 4-3.7 (Advocate-Witness Rule). Shiffrin cannot act as an advocate at trial while being cross-examined about his own extrajudicial misconduct, requiring his own and firm-wide disqualification.

Resolution of this motion requires an evidentiary hearing to address these profound credibility conflicts and will require the testimony of First Officer Tom Rempfer, Grace Rybak, Joshua Shiffrin, and Plaintiff.

2. ***Motion to Disqualify Counsel Joshua Shiffrim and Bredhoff & Kaiser ("B&K") for Non-waivable Firm-wide Conflict (ECF No. 142):*** Concerning B&K's improper,

concurrent representation of Plaintiff's former individual counsel, Sue Edwards, for the sole purpose of quashing her deposition subpoena, suppressing her testimony and concealing her side-switching communications. This application dockets an irreconcilable, non-waivable conflict under Florida Bar Rules 4-1.09 and 4-1.10:

- **The "Side-Switching" Agency Hook:** Attorney Edwards was originally retained by former APA President Sicher, acting in his official capacity, to represent Plaintiff individually in his statutory ADA and seniority reinstatement claims against American Airlines, supported by a $10,000.00 union-funded retainer. Edwards was in possession of Plaintiff's highly confidential work product, mental impressions, and litigation strategy, but subsequently switched sides to assist APA in negotiating the collusive, secret January 15, 2025 settlement agreement (extinguishing Plaintiff's Grievances 12-012 and 23-031 with prejudice for zero value without notice). Under the controlling standard of *Hermann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006), a lawyer's turning against a former client in the same ongoing case presents the most compelling circumstances for broad, prophylactic judicial disqualification.

- **The Unfair Informational Advantage:** When Plaintiff subpoenaed Edwards as a key fact witness to testify regarding this settlement, B&K undertook her representation to quash her subpoena and suppress her testimony and document production. By representing both the hostile defendant (APA) and Plaintiff's former individual counsel, B&K obtained an "unfair informational advantage" in direct violation of Florida Bar Rule 4-1.10, creating an "irrefutable presumption" under Florida law that Plaintiff's confidential strategies were shared with his adversary. *See State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991); *see also Pagidapati v. Vyas*, 353 So. 3d 1204, 1212 (Fla. 2d DCA 2022) (disqualification is required where counsel obtains an unfair informational advantage through a related representation, which is imputed firm-wide under *Hermann*, 199 F. App'x at 752).

- **The Conflicting Sworn Declarations (The *Baxter* Swearing Match):** Defendant APA's counsel has attempted to escape disqualification by submitting the sworn declarations of Sue Edwards (ECF No. 152-2) and Joshua Shiffrin (ECF No. 152-1) claiming that no attorney-client relationship was formed and that no confidential information was shared. These unsworn and self-serving assertions are directly and verifiably contradicted by the three sworn declarations of former APA President Captain Ed Sicher (ECF Nos. 180, Ex. 3; 183, Ex.1; 205, Exs. 1–2; 251-1, Exs. D, F; and 285, Ex. 1) and the physical record of the union-funded $10,000.00 retainer paid to Edwards. Under the controlling authority of *Baxter v. Roberts*, 54 F.4th 1241, 1257 (11th Cir. 2022), this Court cannot resolve these material, dueling sworn declarations on the papers, and a live pretrial evidentiary hearing is procedurally mandated to weigh credibility and observe witness demeanor.

Resolution of this motion requires an evidentiary hearing to address these profound credibility conflicts and determine the extent of the shared confidences, which will require the testimony of former APA President Ed Sicher, Sue Edwards, Joshua Shiffrin, and Plaintiff.

**B.** **The Integrity of the Record (Fully Briefed Spoliation Motions - ECF Nos. 187 & 223):**

1. *The First Spoliation Motion (ECF No. 187):* Concerning Defendant APA's bad-faith and grossly negligent systemic, institutional failure to preserve primary electronic and physical evidence under the controlling standard of *Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*, 75 F.4th 1290 (11th Cir. 2023), which Plaintiff asserts resulted in the permanent, irretrievable loss of critical record data. This threshold motion addresses four distinct, verifiably documented categories of active spoliation:

   - **The 11-Year Custodian Hold Gap (2014–2025):** Despite receiving explicit, comprehensive ESI preservation letters from Plaintiff in September 2013 and repeatedly in subsequent years (2014, 2015, 2016, 2017, 2018, and 2020), APA acted with gross negligence and bad faith by failing to issue a single formal, written litigation hold letter to any key union custodian for over eleven years (2014 to March 2025). This unprecedented hold vacuum covered multiple presidential administrations (Carey, Ferguson, and Sicher), local Miami domicile representatives (Read, Sicher, Rintel, and Wilhelm), and national committeemen Rempfer during the critical years Plaintiff was actively seeking seniority reinstatement, resulting in the permanent loss of vital communications regarding and grievance handling and retaliation.

   - **Standardized Non-Preservation Practices on Personal and Encrypted Accounts:** In the complete absence of any litigation holds, it was the standard, documented practice for key APA officers, representatives, and attorneys to routinely conduct official, non-redundant union business regarding Plaintiff's grievances on personal email accounts, personal text messages, and encrypted Signal accounts. Because these communications completely bypassed APA's central network servers, they were routinely and permanently deleted without any retention protocols or oversight.

11

- **The Wiping of Former APA President Captain Ed Sicher's Laptop Hard Drive:** When Captain Sicher was recalled from office in October 2024, his laptop was returned to APA. Prior to the transfer of power to Nick Silva, Captain Sicher stated APA remotely locked the laptop and became *"inoperable"* and he brought to APA Headquarters to be *"serviced"*, and further attested that under the guise servicing, APA IT physically *"effectively wiped clean"* his laptop hard drive. (ECF No. 187, Ex. 2, ¶ 4). No mirror image, forensic copy, or backup was preserved. This unilateral destruction deleted not only all device-level metadata and local union communications, but also Captain Sicher's personal emails, texts, files, and photos. APA's claim that these files are preserved on network servers is factually disputed because custodians regularly bypassed the network servers by using personal email accounts, texts, and encrypted Signal messages, and because the *wiping* permanently destroyed native, non-reproducible metadata.

- **Physical Destruction of Five Milk Crates of Handwritten Legal Pad Notes:** Because APA failed to provide Captain Sicher with any litigation hold or preservation instructions, he physically disposed of five milk crates containing 300 to 400 contemporaneous handwritten legal pads of unique, irreplaceable notes and records compiled during his 10 years of APA service as Plaintiff's union representative (as Domicile Chairman and Board of Director) and during his APA Presidency. These documents included, but were not limited to: detailed high-level union business, Board Resolutions, Constitutional Interpretations, meetings with American's CEO, executives, and counsel regarding the reinstatement of Plaintiff, and the REDDI (Reinstatement of Disability Dropped Pilot Investigative) Committee's internal investigations into APA's systemic abandonment of representation of disabled pilots, their grievances, and associated litigations.

Resolution of this threshold motion is essential to establishing the baseline of discovery requires the Court to address these factual conflicts and an evidentiary determination regarding the adequacy of APA's preservation methods; which will require the testimony of former APA Presidents Captain Dan Carey, Ed Sicher, and Eric Ferguson; current President Nick Silva; APA IT employees Phil LaRussa and Adam Rust; and APA attorneys Mark Myers and James Clark.

2. *The Second Spoliation Motion (ECF No. 223):* Concerning the bad-faith, grossly negligent failure to preserve and the subsequent deletion of primary, device-level emails and text messages exchanged between former APA President

Captain Dan Carey, Plaintiff, and other key decision-makers within APA and American Airlines. This motion addresses:

- **Carey's Admission of Non-Preservation:** In his deposition, Captain Carey admitted that he was never issued a litigation hold by APA's legal department, never backed up his mobile devices or personal email accounts to the cloud, and lost his entire device history when upgrading personal cell phones during active litigation, resulting in the loss of unpreserved emails and texts exchanged with APA officers, committeemen, staff, attorneys Buckley, Clark, Myers and Kennedy, as well as the Chief Pilot of American Airlines Kimball Stone. This permanently deleted critical communications regarding the union's deliberate obstruction of Plaintiff's reinstatement, bad-faith grievance handling, abandonment of representation, and retaliation.

- **The Prejudice of Selected Production:** Defendant APA's defense that Plaintiff possesses copies of some of his own direct, bilateral exchanges with Captain Carey is legally meritless under *Skanska*, 75 F.4th at 1312. As the Eleventh Circuit established in *Skanska*, a spoliating party cannot escape sanctions by pointing to incomplete, outward-facing records preserved by the innocent party. Here, Plaintiff is severely prejudiced by the permanent, irretrievable loss of the internal, peer-to-peer text messages and emails exchanged between Captain Carey, other APA officers, union attorneys, and American Airlines management—critical, non-custodial communications to which Plaintiff was never a party and which cannot be replaced or reconstructed.

Resolution of this threshold motion is essential to establishing the baseline of discovery requires the Court to address these factual conflicts and will require the testimony of former APA President Captain Dan Carey, and the other individuals named in the First Spoliation Motion above.

3. ***Motion to Correct Record and for Sanctions Against John Pellettieri (ECF No. 148; Objection Pending ECF No. 259):*** Addressing multiple material misrepresentations of fact by APA counsel John Pellettieri to obtain a highly restrictive protective order that arbitrarily limits the temporal scope of discovery to December 31, 2021, and quashes deposition testimony of key witnesses. This will require testimony from Ed Sicher and John Pellettieri.

C. **The Scope of the Case (Objection Pending - ECF No. 264):**

1. *Emergency Motion to Vacate Protective Order based on Fraud and Misconduct (ECF No. 205 - Objection Pending - ECF No. 264):* Challenging protective order obtained through multiple misrepresentations regarding Plaintiff's representation by attorney Sue Edwards inclusion in the Grievance 12-012/23-031 settlement; which will require testimony of former APA President Ed Sicher, John Pellettieri and Joshua Shiffrin.

2. *Motion to Supplement Pleadings (ECF No. 129; Objection Pending - ECF No. 260):* Filed one day after protective order hearing—where APA's counsel argued to limit temporal scope to December 31, 2021—to supplement pleading with updated facts from2018 to 2025 to bolster existing claims and continuing violation, which the Magistrate was denied as "untimely", but only after she delayed ruling for five-months.

3. *Interlocked Appellate Fraud (ECF No. 255):* Regarding the active, pending motion for sanctions for fraud on the court in the Eleventh Circuit Court of Appeals, involving falsehoods in secret collusive settlement agreement which carved out Plaintiff and extinguished his claim under Grievances 12-012 and 23-031 which directly relate to Counts III-V and VIII of Plaintiff's First Amended Complaint (ECF No. 35).

## V. Relief Requested

Plaintiff respectfully requests that the Court:

1. **STAY the October 5, 2026 trial date** and all corresponding pretrial deadlines;

2. **SCHEDULE an Immediate Status Conference** before District Judge Artau to establish a revised pretrial schedule;

14

3. **VACATE the pre-trial referral and withdraw** all pretrial matters and pending motions previously referred to the Magistrate Judge Lisette M. Reid under ECF No. 177, pursuant to 28 U.S.C. § 636(c)(4) and Federal Rule of Civil Procedure 73(b)(3);

4. **ENTER a revised Case Management and Scheduling Order** providing a realistic schedule for Plaintiff to conduct full and comprehensive trial preparation once these threshold disputes are resolved; and

5. **SCHEDULE a consolidated, multi-day evidentiary** hearing before the District Judge on the spoliation, disqualification, and protective order issues prior to trial.

## LOCAL RULE 7.1(a)(3) MEET-AND-CONFER CERTIFICATION

Pursuant to Southern District of Florida Local Rule 7.1(a)(3) and the Court's Scheduling Order (ECF No. 177), Plaintiff Lawrence Meadows certifies that he conferred via email on July 20, 2026, and telephonically on July 21, 2026, at 3:30 p.m., with Defendant's counsel John Pellettieri regarding the relief requested in this Motion. Counsel for Defendant stated that Defendant opposes this Motion in its entirety.

Dated: July 22, 2026

Respectfully submitted.

Lawrence M. Meadows
Plaintiff, *Pro Se*
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email:lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Plaintiff, hereby certify that on July 22nd, 2026, a true

and correct copy of the foregoing was served via the Court's CM/ECF system, Email, and U.S.

Mail on all counsel of record.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
**Shea Kleinman, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com;
skleinman@grsm.com

*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Lane M. Shadgett, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com;
jpellettieri@bredhoff.com;
lshadgett@bredhoff.com

*Pro Hac Vice Counsel for Defendant*

16

# FedEx Express

