IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FILED BY ______ D.C.
AUG 21 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**LAWRENCE MEADOWS,**
Plaintiff,

**v.**

**ALLIED PILOTS ASSOCIATION, et al.,**
Defendants.

**CASE NO. 17-cv-22589-EA**
**HONORABLE JUDGE ED ARTAU**
______________________________/

**PLAINTIFF'S MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e) TO ALTER OR AMEND JUDGMENT, VACATE THE MOOTNESS DISPOSITION AS TO ECF NO. 303, AND PERMIT CONSIDERATION OF ATTACHED PROPOSED RULE 72(a) OBJECTION TO MAGISTRATE'S ORDER (ECF NO. 302)**

Plaintiff Lawrence Meadows, proceeding pro se, respectfully moves under Federal Rule of Civil Procedure 59(e) to alter or amend the Order entered August 18, 2026 (ECF No. 304), and the Final Judgment entered the same day (ECF No. 306). Plaintiff seeks post-judgment relief: restoration of the case to permit consideration of his proposed Rule 72(a) objection to the Magistrate's order denying the spoliation motions (ECF No. 302), **attached hereto as Exhibit A,** and the vacatur of the granted summary judgment or, alternatively, the reassessment of the Plaintiff's denied Rule 56(d) ruling. This motion is based on manifest procedural prejudice arising from the August 18 sequence of events as well as the Court's failure to address ten pending objections which address critical issues addressing due process and the adequacy of discovery.

**PRELIMINARY STATEMENT**

On August 13, 2026, the Magistrate Judge denied Plaintiff's two spoliation motions, ECF Nos. 187 and 223, in ECF No. 302. Five days later, Plaintiff filed an unopposed motion requesting leave to file a Rule 72(a) objection not exceeding thirty pages (ECF No. 303). That motion

specifically identified the Sicher laptop and preservation issues, the Carey communications issue, APA's March 31, 2025 preservation memorandum (ECF 207-1, Myers Decl. Ex. F), APA counsel, Joshua Shiffrin's January 14, 2026 custodian-search representation (ECF 187, Ex. 4), the later-developed evidence concerning Sicher's five milk crates contains over 300 legal pads of contemporaneous handwritten notes (ECF No. 285, Sicher second supp Decl. ¶¶ 4-5), Plaintiff's emergency omnibus motion's request for an evidentiary hearing (ECF No. 293) and the connection between preservation, Rule 56(d), and the summary-judgment record.

Early in the morning on August 18, before the Rule 72(a) objection period expired the Plaintiff filed his Unopposed motion for Leave to File Overlength 30-page Objection (ECF No. 303) to the Magistrate's order denying the spoliations motions under Rule 72(a) (ECF No. 302).

Later that same day, without ruling on Plaintiff's docketed motion, the Court adopted the Report and Recommendation, granted APA summary judgment, denied Plaintiff's Rule 56(d) motion, and denied all pending motions as moot (ECF No. 304). Although the docket entry summary did not identify Plaintiff's Rule 72(b)(2) objection, the body of ECF No. 304 expressly acknowledged ECF No. 285, APA's response, and the Court's *de novo* review. The Order did not, however, address the specific sworn propositions in Sicher's second supplemental declaration (ECF No. 285, Ex. 1), concerning his 2014–2024 service as Plaintiff's Miami Domcile union representative and as an Officer of APA Board of Directors, advocacy, preservation failures, wiped laptop, and discarded contemporaneous notes. Those propositions materially bear on the preservation dispute and the completeness of the Rule 56(d) and summary-judgment record.

Final judgment followed (ECF No. 306) despite ten critical pending objections relating to due process and the adequacy of discovery and, perhaps most importantly, the ECF No. 303 motion seeking permission to present a timely, focused challenge to the preservation ruling that directly

bore on the completeness of the Rule 56(d) and summary-judgment record. Treating that request as moot before the contemplated objection could be filed caused manifest prejudice as did the Court's failure to address the remaining ten pending objections and emergency omnibus motion addressing due process and the adequacy of discovery.

**RELEVANT PROCEDURAL HISTORY**

1. On January 20, 2026, the Court entered an order (ECF No. 177), referring *all* pretrial matters including dispositive matters to the Magistrate Judge for report and recommendation for disposition.

2. Plaintiff's first spoliation motion (ECF No. 187), addressed preservation of evidence associated with Captain Edward F. Sicher, including an APA-issued laptop and personal-device communications. Plaintiff's second spoliation motion (ECF No. 223) addressed former APA President Daniel Carey's communications and preservation history.

3. On April 13, 2026, Plaintiff filed his Rule 56(d) motion and supporting declaration and exhibits (ECF Nos. 250, 251, and 251-1). Plaintiff identified specific testimony and evidence sought from named witnesses and sources, including Sicher and other evidence bearing on grievance handling, reinstatement, membership, and alleged retaliation.

4. On May 25, 2026, the Magistrate Judge issued the Report and Recommendation ("R&R") on APA's summary-judgment motion and Plaintiff's Rule 56(d) motion (ECF No. 269).

5. On June 5, 2026, Plaintiff filed objections to the R&R supported by Sicher's second supplemental declaration (ECF No. 285. Ex. 1) to that filing was Sicher's second supplemental declaration, which reaffirmed prior declarations and stated, among other things, that Sicher serving as Miami Domicile union representative and APA Board of Director Officer ("BOD") advocated for Plaintiff from 2014 through 2024, received no Meadows-

specific preservation instruction, routinely deleted relevant ESI communications, and described the wiping of the APA laptop and later destruction of five milk crates containing of 300-page legal pads of handwritten contemporaneous notes.

6. On July 23, 2026, Plaintiff filed an emergency omnibus motion (ECF No. 293) identified the then-unresolved spoliation motions (ECF Nos. 187, 223), asserted that ten pending objections affected fitness of counsel, discovery scope and record integrity, and requested a consolidated evidentiary hearing. That motion was fully briefed but never ruled upon.

7. On August 13, 2026, the Magistrate Judge entered denying the two spoliation motions (ECF No. 302). As to Sicher, the Order accepted APA's assertion that laptop information remained available on APA servers and reasoned that Sicher's APA presidency occurred between 2022-2024—after the disputed protective order's (ECF no. 138) temporal discovery limit of December 31, 2021. As to Carey, the Order reasoned that Plaintiff presumably possessed communications to which he was a party, while ignoring APA's claim that it did not possess any texts or emails, which would include lack of important peer-to peer communications between and amongst APA's Officers, staff, attorneys and American Airlines management,

8. On August 18, 2026, Plaintiff filed an unopposed request for leave to file an overlength 30-page Rule 72(a) objection (ECF No. 303) to the Magistrate's order denying the spoliation motions (ECF No. 302). APA agreed to reciprocal thirty-page briefing. ECF No. 303 expressly explained that the proposed objection concerned the two distinct spoliation rulings and their connection to Rule 56(d) and the summary-judgment record.

9. Later, on August 18, 2026, the Court entered its Order which adopted the R&R, granted APA's motion for summary judgment, denied Plaintiff's Rule 56(d) motion, denied all pending motions as moot, and terminated deadlines (ECF No. 304). The Court then entered

final judgment and closed the case in (ECF No. 306). At the time of entry of final judgment, the Court had not yet rule on ten objections, nor the emergency omnibus motion addressing critical issues related to due process and the adequacy of discovery, (ECF Nos. 149, 259, 260, 264, 293).

**LEGAL STANDARD**

Rule 59(e) permits a district court to alter or amend a judgment. Relief is appropriate for newly discovered evidence or a manifest error of law or fact. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). A Rule 59(e) motion is not a vehicle to relitigate matters that were previously available; rather, Plaintiff invokes it to address the specific procedural prejudice created when final judgment rendered ECF No. 303 moot before Plaintiff could file the Rule 72(a) objection that ECF No. 303 sought leave to present.

Under Rule 72(a), a district judge must consider timely objections to a magistrate judge's non-dispositive order and modify or set aside any portion that is clearly erroneous or contrary to law. The specific Rule 72(a) objections that Plaintiff sought leave to file are attached hereto as Exhibit A. This motion does not ask the Court to decide Exhibit A immediately on the present motion; it asks the Court to permit orderly briefing and consideration of that objection, and remaining objections on threshold issues that remain unresolved (ECF Nos. 149, 259, 260, 264) before allowing final judgment to rest on a record Plaintiff contends was incomplete.

**ARGUMENT**

**I. FINAL JUDGMENT FORECLOSED A TIMELY, MATERIAL RULE 72(a) OBJECTION WHILE ECF NO. 303 WAS PENDING**

ECF No. 303 was not a generic request for additional briefing. It gave notice that Plaintiff intended to challenge ECF No. 302 under Rule 72(a), identified the precise preservation issues involved, and reflected APA's consent to reciprocal page limits. The filing therefore placed the

Court and APA on notice that the spoliation order would be challenged within the ordinary Rule 72(a) period.

The Court entered final judgment later that day, denied pending motions as moot, and did not address ECF No. 303 or ECF No. 302. Although ECF No. 303 was a request for leave—not itself the Rule 72(a) objection—it established Plaintiff's diligence and intent to pursue the available review process. Once final judgment was entered, a standalone objection became procedurally uncertain and potentially moot. The resulting prejudice is concrete: Plaintiff was deprived of the opportunity to present the focused preservation challenge that ECF No. 303 had requested permission to file.

Plaintiff now **attaches the proposed objection hereto as Exhibit A**. To avoid any page-limit issue, out of an abundance of caution that objection (Exhibit A) has been limited to twenty pages. Plaintiff respectfully requests that the Court grant ECF No. 303 nunc pro tunc, deem his objection to the Magistrate Judge's order denying the spoliation motions (Exhibit A) timely filed under Rule 72(a), and permit APA's response and Plaintiff's reply under a schedule the Court sets.

## II. EXHIBIT A RAISES PRESERVATION ISSUES THAT MATERIALLY BEAR ON RULE 56(d) AND THE SUMMARY-JUDGMENT RECORD

Exhibit A does not rest on the claim that every unavailable communication was necessarily unfavorable to APA. It identifies specific factual and legal premises in the Magistrate Judge's spoliation (ECF No. 302) that warrant review. In particular, that ruling treated Sicher's 2022–2024 presidency as the basis for concluding that a failure to preserve his evidence was immaterial to the 2018–2021 discovery period. Exhibit A identifies sworn record material showing that beginning in 2014 former APA President Ed Sicher served as Plaintiff's union representative and in APA roles bearing on Plaintiff's matters for eight years—within the disputed protective order's (ECF No. 138) temporal scope limitation of December 31, 2021 (ECF Nos. 180, Ex. 3. Sicher Decl. ¶¶

4-5, 9; 185, Ex.1, Sicher second supp Decl. ¶ 3). It also identifies specific First Amended Complaint ("FAC") allegations showing Sicher's centrality as a key witness in these proceedings concerning that earlier period (ECF No. 35, FAC ¶¶ 166, 213, 217, 218).

Indeed, Sicher was a key witness and the most important witness who served as Plaintiff's union representative and advocate from 2014 -2024. Further, the Order does not address the pre-2018 FAC allegations, despite their direct bearing on Sicher's relevance and the materiality of the lost evidence, which demonstrate the centrality of Sicher and, therefore, the critical nature of the evidence lost due APA's failure to engage in any effort to preserve it. "Thus, Plaintiff is left in the position of being unable to confront Defendant's most ***important*** ***witness*** with potential impeaching evidence due to Defendant's destruction of that evidence. The question pending before the Court is what should be done about it." See *Hudson v. Walmart E. LP* 3:19-cv-58 (CDL), 2021 WL 12313730, at*22 (M.D. Ga. May 25, 2021) (emphasis supplied).

Yet, neither Magistrate Judge Reid, nor this Court in its *de novo* review, addressed any of these sworn record martials, references, or the relevant issues identified therein. Of particular significance, neither determination addressed the overlooked issue regarding the destruction of evidence possessed exclusively by Sicher during his extended tenure as the Miami base representative for the APA Board of Directors.

This omission caused substantial prejudice. Magistrate Judge Reid's failure to address the FAC allegations and Sicher's sworn declarations produced a spoliation ruling based on an incomplete factual premise concerning Sicher's relevance and the materiality of the lost evidence. By adopting the R&R and allowing ECF No. 302's analysis to stand without addressing those same record materials, the District Court perpetuated that error in its de novo review. Plaintiff was therefore denied a meaningful opportunity to establish the extent of the lost evidence, obtain

appropriate preservation-related discovery, and use that evidence to oppose summary judgment under Rule 56(d). The prejudice is material because the lost evidence concerns a central witness and the factual issues underlying Plaintiff's claims.

Exhibit A further challenges the untested premise that general server-side retention establishes that particular device-resident information was restored or replaced. It seeks limited factual development concerning the repositories, accounts, native files, metadata, local and personal-device sources, search methods, and availability of the information at issue. It also explains why Plaintiff's possession of some direct Carey communications does not establish the availability of internal officer-to-officer communications that Plaintiff never possessed.

Those issues bear directly on Rule 56(d). Plaintiff's Rule 56(d) declaration sought defined discovery from identified witnesses and sources. ECF No. 302's findings concerning what was preserved, lost, or replaceable bear on whether Plaintiff was denied access to material information and whether the summary-judgment record was complete. The requested relief should therefore include, at a minimum, a limited preservation inquiry followed by reassessment of the Rule 56(d) and summary-judgment rulings on the clarified record, including vacatur or modification of those rulings if the developed record confirms material loss and prejudice.

Finally, the R&R itself confirms the procedural error. Before ECF No. 302 was decided, the R&R stated that "[t]he motion for spoliation of evidence would not affect the Undersigned's reasoning in recommending granting summary judgment in favor of APA." (ECF No. 269 at 11.) That premise was materially erroneous because the spoliation motions concerned evidence from Sicher and Carey bearing directly on the witnesses, communications, and factual record identified in Plaintiff's Rule 56(d) showing. The R&R also concluded that Plaintiff's declaration failed to demonstrate specifically how discovery would establish a genuine issue, while overlooking

Plaintiff's identified witnesses, sources, and requested discovery. (Id. at 11–12.) The later spoliation ruling cannot cure that sequencing problem because the summary-judgment recommendation had already treated the preservation dispute as immaterial.

**III. PLAINTIFF'S EMERGENCY OMNIBUS MOTION (ECF NO. 293) AND THE PENDING OBJECTIONS ARE RELEVANT CONTEXT, NOT AN INDEPENDENT REQUEST TO RELITIGATE EVERY PRIOR RULING**

The Plaintiff' emergency omnibus motion (ECF No. 293) advised the Court that Plaintiff believed the unresolved spoliation motions (ECF Nos. 187, 223), discovery-scope disputes, Rule 56(d) request, and related fully briefed unresolved objections—relating to threshold issues of fitness of counsel, integrity of record evidence, scope of the case (ECF Nos. 149, 259, 260, 264)—created an incomplete record and warranted an evidentiary hearing. The Court's August 18 order (ECF No. 304) did not specifically identify those any of the pending threshold objections or the emergency omnibus motion (ECF Nos. 149, 259, 260, 264, 293), the Magistrates' order denying the spoliation motions (ECF No. 302), or Plaintiff's motion requesting leave to file an overlength objection to that order (ECF No. 303); instead, it denied pending motions as moot.

The preservation of issues addressed in ECF No. 302 and the proposed Rule 72(a) objection thereto, as well as the remaining outstanding motions, were directly connected to the Plaintiff's Rule 56(d) motion and declaration in support (EC Nos 250, 252, 251-1), his objection to the R&R (ECF No. 285) and the adequacy of the record used to grant summary judgment. ECF No. 293 confirms that Plaintiff had raised that connection before final judgment.

**IV. THE RULE 72 PROCEDURAL SEQUENCE CONFIRMS THE MATERIAL PREJUDICE**

Rule 72(a) provides that "The magistrate judge *must* promptly conduct required proceedings and, when appropriate, issue a written order."; and further requires, "The district judge

in the case *must* consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

The two spoliation motions were fully briefed almost three months before the R&R issued, but the Magistrate Judge's order denying those motions (ECF No. 302) was not entered until nearly another three months after the R&R (ECF No. 269). Plaintiff then promptly sought leave through ECF No. 303 to file a Rule 72(a) objection to ECF No. 302. Before that contemplated objection could be filed, the Court adopted the R&R, denied Rule 56(d) relief, and denied pending motions as moot (ECF No. 304), and final judgment was entered (ECF No. 306). Although ECF No. 304 expressly addressed Plaintiff's Rule 72(b)(2) objection to the R&R (ECF No. 285), it did not separately resolve ECF No. 303, Plaintiff's pending motion for leave to file an overlength Rule 72(a) objection to ECF No. 302. Nor did the Order address the effect of the preservation issues on the Rule 56(d) record (ECF Nos. 250, 251, and 251-1), including their relationship to the spoliation dispute (ECF Nos. 187 and 223), the objection relating to protective-order and case-scope disputes (ECF Nos. 149, 259, 260, and 264), or Plaintiff's request for an immediate status conference and evidentiary hearing in his emergency omnibus motion (ECF No. 293).

The unresolved procedural posture confirms why ECF No. 303 was material: the preservation challenge directly concerns whether, given the truncated and unsettled record, Plaintiff had access to evidence necessary to oppose summary judgment. Permitting consideration of Plaintiff's Objection to ECF No. 302 (Exhibit A), and the remaining outstanding objections, is the remedy that required to enable the Court to determine whether its Rule 56(d) and summary-judgment rulings should remain in place on the existing record, or be modified or set aside.

**V. POST-JUDGMENT RELIEF IS APPROPRIATE**

In view of the foregoing, and in particular the magistrate's failure, and the Court's failure on *de novo* review, to consider the centrality of Sicher in the FAC and the evidence in his possession that has been destroyed, appropriate relief should include the vacatur of the summary judgment and the scheduling of a status conference to address the re-opening of discovery and/or appropriate adverse inferences to be drawn based on spoliation.

**RELIEF REQUESTED**

**Wherefore,** Plaintiff respectfully requests that this honorable Court:

1. grant this Motion under Rule 59(e);
2. alter or amend ECF Nos. 304 and 306 to the extent necessary to permit consideration of the attached proposed Rule 72(a) objection;
3. grant ECF No. 303 nunc pro tunc and deem Exhibit A timely filed as Plaintiff's Rule 72(a) objection to ECF No. 302;
4. set an appropriate response schedule for APA and permit Plaintiff a reply only if authorized by the Court;
5. after briefing, determine whether ECF No. 302 should be modified, set aside, and direct focused preservation fact-finding or an evidentiary hearing if warranted;
6. adjudicate, to the extent necessary to resolve the preservation and discovery-scope issues presented here, Plaintiff's outstanding objections (ECF Nos. 149, 259, 260, and 264) and the related requests in ECF No. 293 concerning the protective-order scope, preservation and record integrity, and an evidentiary hearing; then reassess Plaintiff's Rule 56(d) request and the summary-judgment ruling, including vacating or modifying ECF Nos. 304 and 306 as appropriate;

**7.** vacate the summary-judgment ruling as warranted by the resulting preservation record and, as appropriate modify or set aside ECF Nos. 304 and 306 or, alternatively, the reassess the Plaintiff's denied Rule 56(d) motion; and,

**8.** grant such other and further relief as the Court deems just and proper.

***LOCAL RULE 7.1(a)(3) CERTIFICATION***

On August 19, 2026 at 10:00 a.m., Plaintiff conferred telephonically with APA counsel John M. Pellettieri concerning the relief requested in this motion. Counsel stated that APA opposes the motion and did not add further grounds during the conference. Accordingly, this motion is opposed.

Dated: August 21, 2026

Respectfully submitted,

Lawrence M. Meadows
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email:lawrencemeadows@yahoo.com

# CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Plaintiff, hereby certify that on August 21, 2026, a true and correct copy of the foregoing was served via the Court's CM/ECF system, Email, and U.S. Mail on counsel of record.

Lawrence M. Meadows

# SERVICE LIST

**Capri Trigo, Esq.**
**Shea Kleinman, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com;
skleinman@grsm.com

*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Lane M. Shadgett, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com;
jpellettieri@bredhoff.com;
lshadgett@bredhoff.com

*Pro Hac Vice Counsel for Defendant*

# EXHIBIT A

**PLAINITIFF'S PROPOSED RULE 72(a) OBJECTION TO ECF NO. 302**

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**LAWRENCE MEADOWS,**
Plaintiff,

**v.**

**ALLIED PILOTS ASSOCIATION, et al.,**
Defendants.

**CASE NO. 17-cv-22589-EA**
**HONORABLE JUDGE ED ARTAU**
______________________________/

**PLAINTIFF'S CONSOLIDATED OBJECTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 72(a) TO ORDER DENYING MOTIONS FOR SANCTIONS FOR SPOLIATION OF EVIDENCE [ECF NO. 302], AND REQUEST FOR LIMITED PRESERVATION FACT-FINDING AND CONSOLIDATED EVIDENTIARY HEARING**

## INTRODUCTION

Plaintiff Lawrence Meadows respectfully objects under Federal Rule of Civil Procedure 72(a) to the August 13, 2026 Order denying his two motions for sanctions based on spoliation, (ECF No. 302). The Order is largely premised on the rationale that it was unnecessary to review the extent to which Defendant Allied Pilots Association ("APA") destroyed and/or failed to preserved evidence because the lost evidence was immaterial to the case.

Among other defects, Magistrate Reid's Order departs from the erroneous factual foundation that the destruction of evidence in the possession of former APA President Captain Ed Sicher was immaterial to the extent such destruction pre-dated his role as president of APA from 2022 to 2024. In so ruling, Magistrate Reid relied upon her own previously issued Protective Order that had (improperly) restricted discovery to events occurring prior to 2022. (ECF No. 138 at 13). However, even a cursory review of the First Amended Complaint ("FAC") confirms that, prior to his presidency, from 2014-2021, as an APA Miami Domicile representative and member

of Defendant's Board of Directors, Sicher was intimately involved in APA's course of conduct related to the Plaintiff (ECF Nos. 180, Ex. 3. Sicher Decl. ¶¶ 4-5, 9; 185, Ex.1, Sicher second supp Decl. ¶ 3). Indeed, Sicher is Plaintiff's single most important witness. Plaintiff respectfully submits that Magistrate Judge Reid's apparent failure to consider the FAC's allegations related to Sicher's deep involvement in this matter prior to 2022, and the destruction of evidence from that period, constitutes an error of law requiring the vacatur of the Order.

The Order further relies on the legitimacy of the above-referenced Protective Order limiting post-FAC to events pre-dating 2022, founded on the Magistrate's determination that the Plaintiff's allegations that Defendant APA was engaged in a *continuing* violation of his LMRDA and DFR rights beyond 2021 was mere "conjecture." (ECP 138). However, Magistrate Reid neglected to ever rule on a long-standing emergency motion to vacate the Protective Order (ECF No. 138) despite the Plaintiff's submission of undisputed documentary evidence that the Defendant did not extinguish his grievance rights until January 15, 2025, and thereafter revoked his membership on May 1, 2025. (ECF Nos. 259, 264; and 180, Ex.3, Sicher Decl. ¶¶ 28-31). Similarly, Magistrate Reid has never ruled on the Plaintiff's motion to supplement the pleadings with facts from 2018-2025 (ECF No. 129) based on the same documentation that vitiates the factual foundation of the Protective Order. (ECF 260). In view of this documented termination of Plaintiff's grievance and membership rights by Defendant APA in 2025, Magistrate Reid's refusal to consider the effect of the destruction of post-2021 evidence constitutes error.

The Plaintiff has also been prejudiced by the unfortunate procedural context in which Magistrate issued the challenged Order. The Court directed Magistrate Reid to rule on overlooked spoliation motions (ECF Nos. 187, 223) the rejection of which was *presupposed* by her earlier Report and Recommendation (R&R) regarding the Defendant's summary judgment motion. (ECF

No. 269). Magistrate Reid's effective curtailment of her own freedom of action requires a *de novo* review of the spoliation motions by this Court.

In view of the above and other serious oversights discussed below, Plaintiff respectfully submits that Magistrate Judge Reid's apparent failure to consider the FAC's allegations related to Sicher's deep involvement in this matter prior to 2022 along with his three sworn declarations that show he served as Plaintiff's Miami Domicile union representative and on APA's Board of Directors from 2014-2024 (ECF Nos. 180, Ex. 3. Sicher Decl. ¶¶ 4-5, 9; 185, Ex.1, Sicher second supp Decl. ¶ 3), and the effect of the destruction of evidence from that period, constitutes an error of law requiring the vacatur of the Order.

Accordingly, Plaintiff respectfully requests that this Court set aside or modify ECF No. 302, conduct or direct a limited preservation inquiry and evidentiary hearing, and reassess the Rule 56(d) and summary-judgment rulings on the resulting record, including vacating or modifying those rulings as warranted.

## BACKGROUND

Plaintiff's first spoliation motion addressed the preservation of evidence associated with Captain Sicher, including his APA-issued laptop and personal-device communications. (ECF No. 187). Plaintiff's second motion addressed the loss of communications involving former APA President Dan Carey. (ECF No. 223).

The FAC sets forth the central role of Captain Sicher's pre-2018 in the events related to Plaintiff's allegations concerning the Defendant's violation of his rights under the Railway Labor Act's duty of fair representation ("DFR") and the Labor-Management Reporting and Disclosure Act ("LMRDA"). As alleged, this involvement included: Sicher's confrontations with APA's officers regarding the discriminatory treatment of Plaintiff and APA's demands that Plaintiff waive his DFR

rights; Sicher's debates concerning the rights of similarly situated medically disqualified pilots; Sicher's advocacy of Meadows in the face of discriminatory treatment evidence of his exclusion from a reinstatement agreement benefiting a similarly situated pilot; and Sicher's own admission that APA's discriminatory treatment of the Plaintiff was motivated by animus toward his initiation of legal proceedings in defense of his LMRDA rights. (ECF No. 35 at ¶¶ 166, 213, 217, and 218).

These FAC allegations were confirmed by Sicher's original declaration, which confirmed that, prior to his presidency, he served for over a decade as an APA representative at the Miami domicile and national level, including as Miami Domicile Vice Chair, Miami Domicile Chair, Board member, and later APA President (ECF Nos. 180, Ex. 3. Sicher Decl. ¶¶ 4-5, 9; 185, Ex.1, Sicher second supp Decl. ¶ 3). Further substantiating the FAC allegations, the declaration confirms that, beginning in 2014, he served as Plaintiff's local representative with respect to pilot disability and medical disqualification issues. (*Id.* ¶ 9).

Sicher's supplemental declaration avers that, during his APA service, the Defendant's legal department never instructed him to preserve Meadows-related emails, text messages, or other ESI; he routinely deleted texts from personal devices; and his APA laptop was later wiped or rendered inaccessible. (ECF No. 187, Ex. 1, Sicher Suppl. Decl. ¶¶ 1–4,).

On March 31, 2025, APA issued a preservation memorandum concerning the Meadows lawsuit. The memorandum directed preservation of communications within APA and with American Airlines, including materials on servers, cloud storage, laptops, mobile devices, personal email, and personal devices used for union purposes. It specifically addressed former Presidents Keith Wilson, Dan Carey, Eric Ferguson, Ed Sicher, and former Secretary-Treasurer Pam Torell. (ECF No. 207-1, Myers Decl. Ex. F).

On January 14, 2026, APA counsel represented that his firm had conducted "extensive custodian interviews" of "current APA custodians," including targeted phone searches, and had concluded that APA possessed no responsive texts or Telegram messages for the relevant period. (ECF No. 187 Ex. 3, Shiffrin Jan. 14, 2026 Email,). The statement does not identify the actual custodians, devices, accounts, data sources, search terms, dates, or the role of former officers included in the March 2025 preservation memorandum.

Plaintiff's July 23, 2026 emergency omnibus motion asked the District Court to address the unresolved spoliation motions together with pending objections and requested a consolidated evidentiary hearing. [ECF No. 293]. It also placed before the Court Sicher's admitted destruction of five milk crates containing hundreds of contemporaneous legal-pad notes. (*Id.* at 11–13; ECF No. 285-1, Ex. 1, Sicher Second Suppl. Decl. ¶ 4-5).

Plaintiff's Second spoliation motion sought an adverse-inference instruction based APA's undisputed failure to provide a litigation hold letter to former president Daniel Carey. (ECF No. 223; ECF 302 at 2). The motion set forth deposition excerpts in which Carey admitted: (1) that he did not preserve the emails and texts exchanged with the Plaintiff on his personal accounts, and (2) that he routinely deleted communications and subsequently lost years of data from his personal devices due to his practice of replacing phones without utilizing cloud backups. (ECF No. 223 at 2 and Exhibit A at ¶¶ 3-4).

Significantly, APA's retrospective March 31, 2025 preservation memorandum, which directed preservation of Meadows-related information (including internal APA and American Airlines communications, from servers, cloud storage, laptops, mobile devices, personal email, and personal devices used for union work) identified as key custodians former national officers, including Carey, Ferguson, Sicher, and Torell (ECF No. 207-1, Myers Decl, Ex. F).

The August 13 Order denied both spoliation motions. As to Sicher, the Order accepted APA's assertion that information from the laptop was retained on APA servers and would remain accessible for fifty years. It concluded that omission of Sicher from earlier litigation hold directions was reasonable because his presidency was from 2022 to 2024, after the discovery period the Order described as 2018–2021. (ECF No. 302 at 4–6). As to Carey, the Order held that Plaintiff "presumably" has the communications because Plaintiff was a party to them and therefore found no loss, prejudice, or intent to deprive. (*Id.* at 6–7). The Order did not address Carey's admission that routinely deleted communications and subsequently lost years of data from his personal devices due to his practice of replacing phones without utilizing cloud backups. As conceded in APA's disclosures, the lost data included communications among APA representatives and with American Airlines in addition to communications with the Plaintiff. (See ECF Nos. 187, 207, 212, 223, 233, 235).

**LEGAL STANDARD**

With respect to non-dispositive matters, the Court "may reconsider any pretrial matter … where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed R. Civ. P. 72(a). A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997). An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Tolz v. Geico Gen. Ins. Co.,* No. 08-80663-CIV, 2010 U.S. Dist. LEXIS 6709, at *2 (S.D. Fla. Jan. 27, 2010).

The Court reviews the Magistrate Judge's application of the law de novo, because "application of an improper legal standard . . . is never within a court's discretion." *United States v. Doe No. 2*, 2009 U.S. Dist. LEXIS 143390, at *3 (S.D. Fla. Od. 23, 2009) (quoting *Johnson &*

*Johnson Vision Care, Inc., v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002)); *United States v. Grobman*, 460 F. Supp. 3d 1331, 1336 (S.D. Fla. 2020) (same).

Here, the Magistrate's Order is both clearly erroneous and contrary to law.

**ARGUMENT**

## I. THE ORDER REFLECTS MAGISTRATE REID'S FAILURE TO REVIEW THE ALLEGATIONS OF THE FAC AND SUPPORTING SUBSTANTIVE EVIDENCE IN ASSESSING THE IMPACT OF THE DESTRUCTION OF PRESIDENT SICHER'S EVIDENCE

Strikingly, Magistrate Reid acknowledged that APA failed to take action to preserve evidence in the possession of Ed Sicher but determined that the applicable discovery time period rendered the loss of evidence immaterial:

> the Court finds APA's failure to included Mr. Sicher on the litigation hold letters reasonable and not in bad faith. Mr. Sicher was the president of APA from 2022–2024. Plaintiff's 2018 amended complaint relates to conduct that occurred between 2011–2028 [sic]. *See* [ECF No. 35].

(ECF 302 at 5). Although Magistrate Reid correctly cites the docket entry number, her proffered rationale compels the conclusion that she never read the FAC, which identifies Mr. Sicher as the single most important witness in this case based on his deep involvement with the Plaintiff's issues in his capacity as the Defendant's Miami-based union representative to its Board of Directors. Indeed, the Order does not reconcile its presidency-based reasoning with the 2018 FAC allegations concerning Sicher's earlier role.

- Paragraph 166 of the FAC recounts Captain Sicher's confrontations with APA's officers, in 2017, regarding the discriminatory treatment of Meadows and references APA's improper demand that Meadow's waive his DFR claims.
- Paragraph 213 of the FAC recounts Captain Sicher's lead role, in 2016, in lobbying the APA Board of Directors for a resolution of the reinstatement claims of Meadows and

similarly situated medical disqualified pilots who were dropped from the seniority lists (hereinafter "MDD pilots")[1].

- Paragraph 217 of the FAC recounts Captain Sicher's knowledge, in 2016, of the APA president and the APA negotiating committee in successfully obtaining the reinstatement of an MDD pilot (Joe Barkate), a direct comparator to the Plaintiff.

- Paragraph 218 of the FAC recounts Captain Sicher provision of direct evidence of unlawful LMRDA retaliation via his communication to the Plaintiff that APA would not extend the Joe Barkate reinstatement deal to him because the Plaintiff had sued the union.

The Order's relevance conclusion therefore rests on a materially incomplete premise. The FAC identifies Sicher's involvement in the events underlying Plaintiff's claims before 2022, and Sicher's sworn declarations state that he represented Plaintiff beginning in 2014, first in Miami and at the national level, before later serving as APA President. (ECF Nos. 180, Ex. 3. Sicher Decl. ¶¶ 4-5, 9; 185, Ex.1, Sicher second supp Decl. ¶ 3). Even assuming arguendo that the disputed December 31, 2021 temporal limitation governs, the cited evidence places Sicher squarely within that period. By treating only his 2022–2024 presidency as relevant to preservation, without addressing the FAC allegations and sworn evidence concerning his earlier service, the Order clearly errs in its relevance analysis and fails to apply Rule 37(e) to the pertinent record.

Further, the Order does not address the foregoing pre-2018 FAC allegations, despite their direct bearing on Sicher's relevance and the materiality of the lost evidence, which demonstrate the centrality of Sicher and, therefore, the critical nature of the evidence lost due APA's failure to

---

1 Plaintiff is a member of a class of approximately 241 pilots that APA internally designated as MDD (Medically Disability Dropped from AA Seniority List). Discovery in related federal litigation established that of the original 241 MDD pilots, 58 subsequently obtained their FAA medical certificates and sought reinstatement. Of those 58 pilots, only three were denied reinstatement: Plaintiff Lawrence Meadows, FO Kathy Emery, and FO Susan Twitchell- all of whom had sued APA for breaching its Duty of Fair Representation. The other two pilots, Emery and Twitchell, ultimately accepted monetary settlements that waived their right to reemployment. Plaintiff did not. Then, in the secret January 15, 2025, Settlement Agreement, APA and American reinstated three other similarly situated MDD pilots but explicitly carved out and excluded Plaintiff. To date, out of approximately 58 MDD pilots who have been reinstated, Plaintiff is the only one ever denied reinstatement who has read signed a settlement waiving his right to return. (ECF No. 129, Ver. Supp. Pleading ¶ 5).

engage in any effort to preserve it. "Thus, Plaintiff is left in the position of being unable to confront Defendant's most ***important*** ***witness*** with potential impeaching evidence due to Defendant's destruction of that evidence. The question pending before the Court is what should be done about it." See *Hudson v. Walmart E. LP* 3:19-cv-58 (CDL), 2021 WL 12313730, at*22 (M.D. Ga. May 25, 2021) (emphasis supplied).

Ironically, in dismissing the significance of APA's failure to preserve evidence possessed by another witness – APA Secretary-Treasurer Pat Clark – Magistrate Reid favorably observes:

> APA notes that there are no allegations in the Amended Complaint regarding Mr. Clark, he was not listed on any party's initial disclosures, and APA was not aware of any connection of Mr. Clark to Plaintiff's claims.

(ECF 302 at 6).

To the contrary, Mr. Clark was APA's Secretary-Treasurer from 2019-2025, and is a relevant witness, as he handled APA membership issues and treated Plaintiff as an APA member in good standing (a constitutional requirement to attend and speak at union meetings), and periodically approved him to attend and address APA's leadership during its membership guest hour at Board of Director Meetings held at APA's Headquarters. Additionally, Mr. Clark's text message (ECF No, 187, Ex. 4 at 23-24) to which the magistrate refers in her order above, relates to Plaintiff's postings in APA's member-only virtual union hall, "The Line", its member-only discussion forum hosted on APA's website. (ECF187, Ex 4 at 23-24). Plaintiff's communications with Clark directly relates to his claim of violation of his LMRDA rights of freedom of speech and assembly in the union hall and membership rights privileges (ECF No. 35, FAC. Counts VI-VII).

More significantly, Captain Sicher, as a witness fills every box confirming his centrality as a witness: 1) there are numerous allegations regarding him in the FAC, 2) the Plaintiff listed Sicher

in his initial disclosures, and 3) APA was well aware of the connection of Captain Sicher to the Plaintiff's claims. The sheer volume of destroyed pre-2018 evidence is jaw-slackening.

Sicher began representing Plaintiff on MDD pilot disability and seniority reinstament beginning in 2014—seven years before the Magistrate's protective order temporal scope limit of December 31, 2024. (ECF 180, Ex. 3, Sicher Decl. ¶¶4–10). Due to APA's failure to provide him a litigation hold letter, he routinely deleted his electronic communications and destroyed five milk crates of physical documents consisting of hundreds of legal pads with contemporaneous handwritten notes. (ECF No. 187, Ex 1, Sicher Decl. ¶ 3; ECF No. 285, Ex. 1, Sicher Decl. ¶¶ 4-5). Magistrate Reid's Order nowhere addresses the destruction of the evidence described above.

The Order separately addresses the loss of electronic data resulting from Captain Sicher's laptop being "wiped clean" by APA (ECF No. 302 at 4 (citing ECF No. 187 ¶ 9)).[2] The Magistrate Judge discounted the significance of that action by accepting at face value APA's representation that all electronic information previously contained on the laptop had been preserved on APA servers (*Id.* at 4–5). But a general assertion of server-side retention does not establish that the specific ESI formerly resident on Sicher's laptop was restored or replaced. Depending on the system architecture and collection process, a server copy may not preserve local-only or unsynchronized material, deleted data, device-resident artifacts, personal email, text or encrypted-app communications, attachments, file-history information, or the same native metadata associated with the original local files. APA has identified none of the repositories preserved, accounts collected, native files and metadata retained, or searches performed to establish equivalency. This Court has repeatedly held that such data is discoverable and hence must be preserved. *Shenzhen*

---

[2] Sicher's supplemental declaration states that he was not instructed to preserve Meadows-related ESI, routinely deleted personal-device messages, and later lost access to laptop material after the laptop was wiped or became inoperable. (ECF No. 187, Ex. 1, Sicher Supp. Decl. ¶¶ 1–4).

*Kinwong Elec. Co., Ltd. v. Kukreja*, No. 18-61550-CIV-ALTMAN/HUNT, 2020 U.S. Dist. LEXIS 272356, at *11 (S.D. Fla. July 2, 2020) (recognizing that metadata is a separately discoverable evidentiary source); *Selectica, Inc. v. Novatus, Inc.*, No. 6:13-cv-1708-Orl-40TBS, 2015 U.S. Dist. LEXIS 30460, at *6-7 (M.D. Fla. Mar. 12, 2015) ("Metadata is discoverable so long as the relevance test in Fed.R.Civ.P. 26(b) is satisfied."). Significantly, under Rule 37(e), the question is whether the particular lost information can actually be restored or replaced through additional discovery—not whether APA maintains some related data somewhere on a server. *Skanska USA Civil Southeast, Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1314 (11th Cir. 2023).

A party has an obligation to retain relevant documents, including emails, texts, and other ESI once litigation is reasonably anticipated. *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 U.S. Dist. LEXIS 42239, at *34 (S.D. Fla. Apr. 5, 2011). "To determine the relevancy of the information sought through discovery, the court takes note of the facts set forth in the complaint." *Rose v. T-Mobile USA, Inc. T-Mobile USA, Inc.*, No. 2:24-cv-473-JLB-KCD, 2024 U.S. Dist. LEXIS 110373, at *6 (M.D. Fla. June 24, 2024); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368n.37 (11th Cir. 1997) ("The scope of allowable discovery is determined by the claims (and defenses) raised in the case.").

"[A]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Birren v. Royal Caribbean Cruises, Ltd.*, No. 20-cv-22783, 2022 U.S. Dist. LEXIS 4560, at *4 (S.D. Fla. Jan. 10, 2022). The Magistrate Reid found that the evidence at issue was not relevant and therefore denied Plaintiff's pending spoliation motion. In ruling on the relevancy of the evidence, Magistrate Reid made no attempt to review the allegations and facts set forth in the FAC. Because, in accordance with federal rules and the precedent of this court, issues

of relevancy must be determined with reference to the allegations in the relevant complaint, the Magistrate Reid's analysis was contrary to law.

## II. THE CAREY RULING IMPROPERLY EQUATES DIRECT MESSAGES WITH PEER-TO-PEER COMMUNICATIONS PLAINTIFF NEVER POSSESSED

Captain Daniel Carey served as Defendant APA's President from 2016 to 2019. Here again, the FAC establishes that he is a critical witness in this matter:

- Paragraph 153 recounts Carey's involvement in APA's consideration of the LMRDA rights of MDD pilots such as the Plaintiff.
- Paragraph 154 recounts Carey's involvement in the reinstatement of membership rights to MDD pilots.
- Paragraph 168 recounts Carey's revocation of the membership rights of the Plaintiff.
- Paragraph 217 recounts the involvement of Carey and the APA negotiating committee in successfully obtaining the reinstatement of an MDD pilot (Joe Barkate), a direct comparator to the Plaintiff.

Wholly apart from the above specific allegations, Carey was Defendant's president over a three-year span that Magistrate Reid recognized as a relevant time period for discovery purposes.

Notwithstanding the centrality of this witness, Carey admitted: (1) that he did not preserve the emails and texts exchanged with the Plaintiff on his personal accounts, and (2) that he routinely deleted communications and subsequently lost years of data from his personal devices due to his practice of replacing phones without utilizing cloud backups. (ECP No. 223 at 2 and Exhibit A at ¶¶ 3-4). Focusing exclusively on the first of these two categories, Magistrate Reid made short work of the spoliation issue stating: "Plaintiff has those communications; thus, the ESI is not lost or destroyed, and sanctions are not warranted under Rule 37(e)." (ECP No. 302 at 7). As a backup argument, Magistrate Reid further held that, even assuming that Defendant APA had failed to take reasonable steps to preserve ESI evidence and that, consequently, the relevant evidence had become unrecoverable, there was insufficient evidence of prejudice or intent to warrant sanctions

under either Rule 37(e)(1) or (e)(2). (*Id.*). Magistrate Reid's two rationales are unmoored from both the facts and the law.

Plaintiff's motion plainly stated that APA President Carey routinely deleted communications and subsequently lost years of data from his personal devices due to his practice of replacing phones without utilizing cloud backups. Plaintiff referenced the sub-category of Carey's deletion of emails and texts exchanged between them principally because it provided further dispositive evidence that the destruction of evidence had occurred. The fact remains that APA did not provide its top officer with a litigation hold letter and that, consequently, relevant ESI evidence was "routinely" destroyed over a three-year period.

Nor is this a hypothetical concern. APA's amended disclosures identify Carey as having discoverable information regarding communications among APA, American Airlines, and Plaintiff from the fall of 2018. Both parties' disclosures identify Clark as a primary witness. In view of the undisputed evidence of Carey's involvement in relevant events, the missing communications would likely reveal contemporaneous knowledge of, participation in, and motive for the actions alleged in the FAC.

Magistrate Reid's back up argument that there was insufficient evidence of prejudice or intent to warrant sanctions flies in the face of relevant precedent. In the first instance, to the extent that her order required that the Plaintiff demonstrate *both* intent and prejudice, Magistrate Reid proceeded in derogation of Eleventh Circuit precedent, which holds that, once intent to deprive an adversary party of evidence is established:

> Rule 37(e)(2) sanctions do not require "any further finding of prejudice." 2015 Committee Notes on Rule 37(e)(2). "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." *Id.*

*Skanska USA*, 75 F.4th at 1311.

The requisite intent is established where the offending party can offer no "cogent explanation" for having failed to take the requisite action to preserve relevant evidence. *Id.* at 1303, 1313. In *Skanska USA,* within days of the hurricane-related accident at issue, the orally informed employees of an evidence retention policy, which followed about a month later with a formal legal hold letter. *Id.* at 1312. Notwithstanding these precautions, there was "no cogent explanation, apart from bad faith, for Skanska's systematic failure to make *any* effort to preserve cell phone data until at least seven months after the litigation hold was (technically) in place." *Id.* at 1303. By contrast, in the instant matter, two of the principal witnesses *never* received a litigation hold letter, and consequently engaged in the routine and massive destruction of relevant evidence.

While holding that a showing of prejudice was not required, the Eleventh Circuit further observed that in view of the inadequacy of the evidence preservation efforts, it was "predictable" that "some" of the relevant would be lost. *Id.* at 1313. Nor, as Magistrate Reid's Order suggests, is prejudice meaningfully mitigate where "some" of the lost ESI can be obtained from alternative sender/recipients. *Id.* In considering a much less impactful loss of evidence, the Eleventh Circuit upheld the district court's spoliation-triggered sanctions and dismissal.

**III. ECF NO. 302 RESTS ON AN UNRESOLVED AND CONTESTED DISCOVERY RECORD.**

The protective order, the December 31, 2021 temporal restriction, the pending objections concerning that restriction, the supplemental-pleading dispute, Rule 56(d), and the spoliation motions form an interrelated chain of litigation events. The appropriate adjudicative sequence would have been to determine the relevant discovery universe; whether the custodians and sources

in that universe were preserved; determine what could be restored or obtained through targeted discovery; and then decide whether summary judgment could proceed on a complete record.

Instead, the R&R issued while the preservation motions were unresolved. ECF No. 302 then invoked the restricted discovery period to discount later evidence and to define relevance. The Court should not use an actively disputed discovery limitation as conclusive proof that preservation categories are immaterial, particularly where the same limitation is challenged as having prevented discovery necessary to oppose summary judgment.

This is not an argument that the magistrate lacked authority to rule. It is an argument that the district judge should not permit a disputed scope limitation to become self-validating: first restricting discovery, then treating the resulting absence of evidence as proof that the evidence was irrelevant or that the record was complete.

The procedural setting compounds the error. The Court's highly restrictive protective order with its arbitrary December 31, 2021 temporal scope limitation, and quashing of depositions of Plaintiff's eight key witnesses (ECF No. 138), the supplemental-pleading dispute (ECF Nos. 129, 260), and the pending protective-order objections (ECF Nos. 149, 259) define the discovery record from which the Magistrate's order denying Plaintiff's spoliation motions (ECF No. 302) drew its relevance conclusions. The R&R issued before the two spoliation motions were decided. ECF No. 302 then treated the contested scope restriction as a premise for denying preservation relief. The resulting sequence is circular: discovery was limited; the restricted record was treated as complete; and the absence of evidence from the restricted record was used against Plaintiff.

Plaintiff submits that the combined preservation record—not any single missing communication—supports an inference that APA failed to take reasonable preservation steps and acted with intent to deprive Plaintiff of relevant evidence. Plaintiff therefore seeks the Rule 37(e)

relief requested below, including an issue-limited adverse inference, together with focused factual development to determine whether additional curative measures or sanctions are warranted.

## IV. APA'S MARCH 2025 PRESERVATION MEMORANDUM AND JANUARY 2026 SEARCH REPRESENTATION REQUIRED FACTUAL CLARIFICATION.

The March 31, 2025 preservation memorandum (retrospective litigation hold letter) was issued shortly after this federal action reopened and directed broad preservation of Meadows-related information, including internal APA and American Airlines communications across enterprise and personal sources. It provides substantial circumstantial evidence that APA regarded the identified former officials, their communications, and the continuing Meadows dispute as potentially relevant to this litigation and Plaintiff's assertion of a continuing violation beyond the temporal scope limitation of the disputed Protective Order of December 31, 2021.

APA counsel Mr. Shiffrin's January 14, 226 email and its search representation should be read according to its terms. "Current APA custodians" were those then employed by or holding a position with APA. Thus, former officers did not become "current custodians" merely because the March hold named them. The correct issue is whether APA can show what it did with the separately identified former-officer sources: whether it sent timely holds; collected their devices, accounts, or backups; preserved personal or cloud sources used for APA business; and searched or restored those sources.

The necessary factual disclosures are nonprivileged: the people interviewed; current and former custodians whose devices or accounts were collected; devices, accounts, repositories, and backups included; date ranges; search terms or methodology; the roles of IT personnel or vendors; and the distinction among material not found, not searched, not possessed, and lost. Without this information, the Court cannot reliably decide reasonable preservation steps, restoration, or degree of prejudice.

## V. THE ORDER DID NOT ADDRESS THE OMNIBUS HEARING REQUEST OR THE LATER-DEVELOPED PHYSICAL-RECORD EVIDENCE.

ECF No. 293 requested a consolidated evidentiary hearing and identified the broader preservation issues, including the later-discovered disposal of the five milk crates of Sicher's legal-pad notes. ECF No. 302 does not cite or discuss the omnibus motion, the requested hearing, or the physical-record evidence.

While not ESI, the existence of former APA President Sicher's five milk crates containing legal pads of contemporaneous handwritten notes and their destruction bear on preservation practices, the availability of alternative sources, the asserted absence of prejudice, and the propriety of deciding the dispute without testimony. The measured remedy is a focused preservation inquiry and evidentiary hearing before this Court or a judicial officer designated by the Court, together with the ESI inquiry.

APA counsel's August 4 status conference correspondence is secondary. Because Plaintiff was copied on the email, it not necessarily *ex parte,* but the Magistrate's require parties to meet and confer before requesting a hearing. The relevant point is procedural consistency: APA stated that the motions were ripe and offered availability for a conference, while Plaintiff's request for an evidentiary hearing remained unaddressed. The primary issue remains the absence of factual development, not the correspondence itself.

## VI. THE PREJUDICE ANALYSIS IS INSUFFICIENT, AND THE R&R SHOULD NOT PROCEED ON AN ALLEGEDLY COMPLETE RECORD.

The Order's no-prejudice conclusion rests primarily on the presumption that Plaintiff possesses communications with Carey and the assertion that Sicher's server-side information is retained. It does not explain why missing internal communications could not affect grievance

handling, reinstatement, comparator treatment, settlement, representation, motive, retaliation, or the facts considered in the R&R.

Plaintiff's argument is not that every missing item would prove liability. It is that he has been deprived of the ordinary means to determine what principal actors said to each other and to test their later accounts. That is the concrete prejudice from missing peer-to-peer evidence. It is heightened where the information concerns persons identified by both sides as relevant witnesses.

The R&R should therefore be held pending a reliable preservation record and coordinated resolution of the discovery-scope issues. If limited discovery establishes no loss or complete restoration, the Court can proceed with a clarified record. If it establishes loss and prejudice, the Court can determine a proportionate curative remedy before considering dispositive relief.

## VII. ADDITIONAL PRESERVATION CONTEXT CONFIRMS THAT FACTUAL DEVELOPMENT WAS REQUIRED

APA's March 31, 2025 retrospective preservation memorandum specifically identifies Carey, Ferguson, Sicher, and Torell as former officers in possession of potentially relevant evidence from a broad spectrum of sources. The January 2026 "current APA custodian" search representation reports a search of persons then currently employed by or holding a position with APA. Neither source establishes whether APA timely preserved, collected, searched, or restored the former officers' devices, personal accounts, local files, or other sources. Nor does APA identify the devices, accounts, repositories, date ranges, or search methods used in the January search.

The May 2026 Sicher declaration also describes five milk crates containing hundreds of contemporaneous legal-pad notes, including notes concerning Meadows' litigation and REDDI-related matters, that were destroyed due to APA's failure to provide Sicher with a preservation instruction. The irretrievable loss of these dispositively establishes the inadequacy of APA's

preservation process and the non-existence of alternative sources – a later server search cannot restore discarded contemporaneous handwritten notes.

## VIII. THE PRESERVATION DISPUTE MATERIALLY BEARS ON THE RULE 56(d) AND SUMMARY-JUDGMENT RECORD

The preservation dispute is not collateral to the summary judgment record. Plaintiff's Rule 56(d) cogently set forth that discovery restrictions and the inability to obtain identified evidence prevented a fair response to APA's summary judgment motion. The Rule 56(d) declaration identified specific witnesses, sources, and subjects of discovery, bearing on grievance handling, reinstatement, membership status, retaliation, and APA's interactions with American Airlines.

ECF No. 302's erroneous assumptions—that Sicher's information was adequately retained on servers and that Plaintiff's direct communications with Carey eliminated prejudice—bear directly on whether Plaintiff was denied access to material evidence. The relevant evidence includes not only communications Plaintiff sent or received, but also contemporaneous communications among APA officers, counsel, committees, and American Airlines personnel that Plaintiff never possessed. A focused review of the evidence destroyed and placed off limits by the magistrate would fundamentally impact both the Rule 56(d) analysis and the factual record on which summary judgment was entered.

## IX. A FOCUSED PRESERVATION INQUIRY AND EVIDENTIARY HEARING IS THE PROPORTIONATE REMEDY

The Court should, at minimum, set aside or modify ECF No. 302 to the extent it rests on unsupported relevance, restoration, and no-prejudice assumptions, and direct a focused preservation inquiry.

That inquiry should address: (1) the timing and implementation of preservation notices; (2) the former-officer sources identified in the March 2025 memorandum; (3) Sicher's laptop,

accounts, and other repositories; (4) Carey's device and account history; (5) the January 2026 search methodology; (6) server retention, native-file availability, metadata, attachments, and restoration; and (7) the disposition of Sicher's handwritten notes.

The inquiry should distinguish among direct communications with Plaintiff; internal officer-to-officer communications; APA-system records; personal-device, personal-email, cloud, encrypted, and local sources used for APA business; and the physical legal-pad notes. Those categories cannot properly be treated as one undifferentiated body of "communications."

After that limited factual development, the Court can determine whether the ESI or other records can be restored or replaced, whether any prejudice exists, and whether a curative measure is warranted. This narrow procedure protects both parties and permits any renewed Rule 56(d) or summary-judgment determination to rest on a tested record rather than generalized assurances.

**CONCLUSION AND RELIEF REQUESTED**

For these reasons, Plaintiff respectfully requests that this honorable Court enter an order:

1. Sustaining this objection and setting aside or modifying ECF No. 302;
2. directing a focused preservation inquiry before this Court or such judicial officer as the Court specifically designates;
3. requiring, if warranted by the existing record or that inquiry, a focused evidentiary hearing or equivalent limited factual development concerning preservation, collection, search methodology, and restoration;
4. requiring disclosure of nonprivileged preservation and collection facts, including custodians, devices, accounts, repositories, backups, date ranges, and search procedures;
5. permitting narrowly tailored IT and custodian discovery as necessary;

6. altering or amending the judgment as necessary to permit consideration of this objection and, after development of the preservation record, reassessing the Rule 56(d) and summary-judgment rulings, including modifying or setting aside ECF Nos. 304 and 306 as appropriate; and
7. alternatively, if the Court finds that the existing record establishes the prerequisites of Rule 37(e)(2), entering an issue-specific adverse inference concerning APA's failure to preserve relevant Sicher- and Carey-related communications and records; otherwise reserving curative measures and sanctions pending factual development, including an inference that the lost evidence was unfavorable to APA on issues bearing on its knowledge, motive, grievance handling, retaliation, and discriminatory treatment.

Dated: August 21, 2026

Respectfully submitted,

Lawrence M. Meadows
Plaintiff, *Pro Se*
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email:lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Plaintiff, hereby certify that on August 21, 2026, a true and correct copy of the foregoing was served via the Court's CM/ECF system, Email, and U.S. Mail on counsel of record.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
**Shea Kleinman, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@gordonrees.com;
skleinman@grsm.com

*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Lane M. Shadgett, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com;
jpellettieri@bredhoff.com;
lshadgett@bredhoff.com

*Pro Hac Vice Counsel for Defendant*