**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**LAWRENCE MEADOWS,**
Plaintiff,

**v.**

**ALLIED PILOTS ASSOCIATION, et al.,**
Defendants.

FILED BY [signature] D.C.
NOV 12 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**CASE NO. 17-cv-22589-EA**

**HONORABLE JUDGE ED ARTAU**
________________________________/

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION**
**FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11(c)(2)**

## I. PRELIMINARY STATEMENT

Defendant Allied Pilots Association ("APA") comes to this Court with unclean hands. It refused to comply with this Court's own standing scheduling order on meet-and-conferrals (ECF No. 177 at 3), which requires telephonic or in-person conferral and expressly provides that a minimal email exchange shall not constitute a good-faith effort. It then filed a nine-page opposition demanding attorneys' fees under Rule 11(c)(2) and a pre-filing injunction against Plaintiff—the very sort of relief ECF 177 warns may be imposed for non-compliance. (*Id.* at 6).

The sequence is documented. On October 19, 2026, APA's pro hac vice counsel Joshua B. Shiffrin responded to Plaintiff's meet-and-confer request by declaring that, given an "implied threat" in Plaintiff's email, APA would communicate only in writing. (ECF No. 322, Ex. 3 at 4). Plaintiff's October 19 email had expressly stated he would not address bar-complaint issues or collateral allegations in any conference. (*Id.* at 5). On October 20, Plaintiff disavowed any threat, requested that Shiffrin's sponsor and lead counsel Capri Trigo participate in the meet and confer

process, and posed three specific yes-or-no questions about withdrawal of the challenged statement in "Defendant's Correction Regarding ECF No. 317" (*Id.* at 2-3). But Shiffrin did not answer them.

On October 21, Plaintiff offered yet another telephone window—October 22, 9:00 a.m. to noon Eastern—and warned that non-participation would be certified to the Court. (*Id.* at 1.) Shiffrin's reply refused everything in a single paragraph. (*Id.*) Trigo, Florida-licensed lead counsel of record and the sponsoring attorney for Shiffrin's pro hac vice admission, never responded to any email in the chain.[1] [2]

This Court's January 16, 2026 Scheduling Order explicitly requires "Good Faith Conferral", and states:

> "the parties are instructed that a **minimal e-mail exchange with opposing counsel shall not constitute a good faith effort** under the Local Rules. **The parties are instructed to confer either telephonically or in person."**

(ECF No. 177 at 3). [Emphasis added].

---

1 Ms. Trigo's non-participation also implicates Florida Rule of Professional Conduct 4-5.1, which requires a supervising lawyer to make reasonable efforts to ensure that a subordinate lawyer's conduct conforms to the Rules Regulating the Florida Bar, and which attributes responsibility to the supervising lawyer when she ratifies or fails to take reasonable remedial action regarding a violation. Ms. Trigo was the direct recipient of every email in this chain and was specifically requested to attend the meet-and-confer; Mr. Shiffrin was copied only. Mr. Shiffrin then asserted he would be the sole attorney communicating for APA, effectively cutting Ms. Trigo out of the very process that her own sponsorship made her responsible for.

2 This Court was placed on notice of APA's cross-jurisdictional pattern of verifiably false representations in Plaintiff's Emergency Omnibus Motion (ECF No. 293 at 7-8) and Notice of Supplemental Filing (ECF No. 294 at 2-3), both filed July 23, 2026. ECF 293 documents that APA's counsel represented to the Eastern District of New York that "APA is not aware of any witnesses (other than Plaintiff), documents, or facts that are located in Florida" (EDNY ECF No. 36 at 2, ¶ 5)—which was verifiably false and directly contradicted by APA's own trial witness list docketed in this case (ECF No. 273) which designated Florida resident former APA President Dan Carey, and by APA's amended initial disclosures listing Carey residing at a Naples, FL address. ECF 293 further documents that APA's counsel also told EDNY Judge Komitee that this Court lacks personal jurisdiction over APA—despite litigating here for nine years without any objection. ECF 294 attaches Plaintiff's EDNY Rule 11 motion served June 25, 2026, to which APA responded only with a partial, misleading "letter clarifying statement." (EDNY ECF No. 38).

That order further mandates the parties "Duty to Comply." and states;

> **Failure to comply with this or any order of this Court, the Local Rules, or any other applicable rule may result in appropriate sanctions,** including dismissal without prejudice or the entry of a default, without further notice."

(*Id.* at 6). [Emphasis added].

Here, APA's conduct and refusal to meet and confer telephonically are the precise scenario that this Court's January 16 scheduling order was designed to prevent. (*Id.* at 3,6).

**II. APA's Personal Attack Designed to Impugn Plaintiff's Character Does Not Substitute for a Merits Response.**

As an initial matter, APA's opposition does not engage Plaintiff's Rule 60 motion on the facts. Instead of addressing the irrefutable evidence of its flagrant misattribution of a federal court order, here, APA in its pleadings resorts to improperly impugning Plaintiff's character in effort to obtain an ill-gotten pre-filing injunction and vexatious litigant label—despite neither this Court, nor any other court ever issuing a finding or ruling that Plaintiff's filings are "meritless" or "vexatious."

Meanwhile, APA's own documented pattern of using serial misrepresentations to obtain a protective order (ECF No. 138) to shield APA's most egregious post-2021 conduct[3] goes entirely

[3] Former APA President Edward Sicher's sworn declarations (ECF 180, Ex. 3, Sicher Decl.; see also ECF 205, Exs. 1-2, Sicher Decl. and Sicher Supp. Decl) attests that: (1) he confirmed Meadows as a member in good standing via Presidential Constitutional Interpretation, September 2, 2022; (2) he appointed Plaintiff to APA's National Aeromedical Committee as the Miami pilot Domicile Long-term Disabled pilot ("LTD") Coordinator, where he served from 2022 to 2025 until current APA President Nick Silva summarily terminated Plaintiff's membership in May without statutory notice or due process or formal proceeding under the LMRDA, after Plaintiff sought to speak at the Spring Board of Directors meeting in May 2025 to expose Silva's role in signing the secret settlement, which extinguished Plaintiff's grievance rights with prejudice for zero value and falsely claimed his individual Grievance 12-011 was "closed and disposed in 2013"; (3) Sicher converted collective seniority reinstatement Grievance 12-012 into Sicher Presidential Expedited Grievance 23-031 on March 13, 2023 at Plaintiff's request and for Plaintiff's benefit; (4) he directed APA Director of Grievances Tricia Kennedy to advance Plaintiff's individual seniority reinstatement Grievance 12-011 to arbitration on June 13, 2024,

unanswered, and is the subject of two fully briefed unruled upon objections (ECF Nos. 259, 264) to the underlying motions related to correcting or vacating that protective order. (ECF Nos. 148, 205).

The APA counsel responsible for those misrepresentations never provided a sworn declaration in their defense, leaving unrebutted Plaintiff's sworn declarations, the deposition testimony of APA 30(b)(6) representative Mark Myers and American Airlines manager James Anderson (ECF No. 148, Meadows Decl. ¶¶ 3-10, Exs. C, F), and former APA President Edward Sicher's three sworn declarations (ECF Nos. 180, Ex. 3, Sicher Decl.; 205, Exs. 1-2, Sicher Decl. and Sicher Supp. Decl.; 285, Ex.1, Sicher Second Supp. Decl., ¶ 6).

Here APA's misattribution of federal court order is irrefutable and remains uncorrected.

This Court cannot ignore that APA misattributed and misquoted a federal court order to impugn Plaintiff's character for the improper purpose of obtaining an ill-gotten pre-filing injunction and vexatious label. Plaintiff finds APA's attack unfounded, highly offensive, and not well taken, particularly considering that neither this Court nor any court has ever ruled that Plaintiff's filings are "untimely and meritless" or "frivolous", as APA otherwise erroneously asserted in its pleadings. (ECF Nos. 317 at 1, 6, 11-13; 321 at 1-2).

APA asks this Court to find a pattern of vexatious filings by Plaintiff, while the record documents a pattern of serial misrepresentations by APA's counsel—in this Court and in the

---

where it remained active and pending until Sicher left office in October 2024; (5) he retained attorney Sue Edwards with a $10,000 APA Authorization for Expenditure ("AFE") to represent Meadows individually in his ADA lawsuit against American, and directed termination of that representation only after Meadows declined to drop his DFR lawsuit against APA, as was his right under the LMRDA; (6) he refused to sign the proposed secret settlement in September 2024, because it would have reinstated other MDD pilots while explicitly excluding Plaintiff by name; and (7) when Silva summoned Sicher for the presidential transfer of power briefing, Silva's sole substantive question was why Sicher had not approved removing Plaintiff from the proposed settlement.

Eastern District of New York. (ECF Nos. 148 at 4-8; 205 at 1-2; 293 at 7-8; 294 at 1-3; 317 at 1, 6, 11-13; 322 at 2-3).

**III. APA's ECF NO. 321 IS AN ADMISSION AGAINST INTEREST**

APA's October 14, 2026 filing, ECF No. 321, titled "Defendant's Correction Regarding ECF No. 317," quotes the October 2016 Utah district court order (UDC ECF No. 67; see also ECF No. 322, Ex.1 at 1), in the matter *Meadows v. Allied Pilots Association* 2:14-CV-00115 (D. Utah Aug. 31, 2015), as stating that, **"Furthermore, defendant has been ordered to cease untimely and meritless filings."** (ECF No. 321 at 2). [Emphasis Added]. That is the order's actual text.

Yet, APA's September 25, 2026 opposition to Plaintiff's Rule 60 motion had misattributed that very same language to Plaintiff, and misleadingly stated, **"The district court, noting that Plaintiff had been previously ordered "to cease untimely and meritless filings,"** misciting the otherwise plain and unambiguous Utah order as evidence of Plaintiff's alleged pattern of "vexatious filings." (ECF No. 317 at 11-12). When in fact the Utah order never said that Plaintiff's filings were "untimely and meritless" much less that they were "vexatious"—instead the Utah court explcitly attributed that conduct to "Defendant" APA. (ECF No. 322, Ex. 1 at 1). Additionally, neither this court nor any other court has ever ruled that Plaintiff's filings are meritless or vexatious.

APA's alleged "Defendant's Correction Regarding ECF No. 317", therefore concedes the Utah order's actual wording while continuing to defend its prior attribution of that language to the Plaintiff (ECF No. 321 at 2-3)—which is an admission against its own interest.

APA's "Correction" spends three pages arguing a contextual reinterpretation to justify its misattribution—that the Utah order's penultimate sentence separately advised Plaintiff to cease filing—is argument, not correction. (ECF No. 321 at 1-3). The two sentences are distinct. One

attributes the "untimely and meritless" finding to APA. The other advises Plaintiff regarding his own filings during a pending appeal. APA may present either as advocacy before this Court—it may not present the first as a quotation of the second.

Moreover, if APA genuinely believed that Utah order referred to Plaintiff instead of Defendant APA as it otherwise explicitly states, its failure to seek correction for over a decade is itself telling.[4]

On October 15, 2026, Plaintiff emailed all counsel of record requesting that APA: (1) withdraw or amend the challenged statement in ECF 317; (2) accurately state that the "untimely and meritless filings" language identifies Defendant; and (3) withdraw or amend the portion of the pre-filing-injunction request relying on that attribution. (ECF No. 322, Ex. 3 at 6-7). APA's October 19 response stated that "no additional correction or action by APA is warranted." (*Id.* at 5). APA's October 21 response confirmed it would "make no further correction beyond that included in its October 14, 2026 filing." (*Id.* at 1).

Rule 11(c)(2) provides a 21 day safe-harbor from service of the motion. Plaintiff served the safe-harbor notice on September 26, 2026. The period expired on October 17. On October 14 APA filed it's alleged "Correction Regarding ECF No. 317" (ECF No. 321)—within the window—but it did not withdraw or amend the challenged contention. Instead, it re-argues it.

---

4 APA now argues that the Utah order's statement, **"Furthermore, defendant has been ordered to cease untimely and meritless filings,"** was directed at Plaintiff and not Defendant APA, as the order otherwise explicitly states. If APA believed that attribution was erroneous, it had ten years—from October 2016 until September 2026—to move to correct the record. But it never did. See *Meadows v. Allied Pilots Association*, No. 15-cv-4139 (D. Utah), UDC ECF No. 67, (FLSD ECF No 322, Ex. 1 at 1). APA cannot sit silent on an alleged misattribution for a decade and then invoke it as grounds for a pre-filing injunction to improperly restrict the Plaintiff's access to this or other courts.

A filing that acknowledges the true text while leaving the false attribution intact, and then refuses three written requests to correct it, does not satisfy the safe-harbor. It demonstrates that APA, after being shown the order it misquoted, elected to present that misattribution to this Court anyway in support of a pre-filing injunction.[5]

## IV. APA's "AT PLAINTIFF'S URGING" CHARACTERIZATION IS INACCURATE

APA's alleged "Defendant's Correction Regarding ECF No. 317" misleadingly opens by stating that APA files its "Correction" **"At Plaintiff's urging..."** (ECF No. 321 at 1). That is inaccurate.

Plaintiff did not urge APA to file anything. Instead, Plaintiff served upon all of APA's attorneys of record a Rule 11 safe-harbor notice on September 26, 2026, which demanded APA withdraw or appropriately correct the challenged contention within the 21 day deadline pursuant to Rule 11(c)(2). APA's "Defendant's Correction Regarding ECF No. 317" was its response to that deadline. (ECF No. 321). APA framing its alleged correction as voluntary is ludicrous—and improperly suggests that APA acted voluntarily when the filing occurred during the Rule 11 safe-harbor period.

## V. SHIFFRIN'S "IMPLIED THREAT" CHARACTERIZATION WAS ITSELF A MISCHARACTERIZATION

On October 19, 2026, at 9:20 p.m., APA's pro hac counsel Joshua Shiffrin wrote: "Given the implied threat in the last line of your email, counsel for APA will only communicate with you in writing regarding this matter." (ECF No. 322, Ex. 3 at 4). The email he referenced was Plaintiff's October 19 request for a telephone conference. Its final substantive line read: "I will not address

---

[5] APA's October 14 filing (ECF No. 321) is styled as a "Correction," yet APA's October 21 email confirms it "will make no further correction beyond that included in its October 14, 2026 filing." (ECF No. 322, Ex. 3 at 5). A correction that leaves the original misattribution in place and refuses to withdraw it is not a correction under any reasonable reading of Rule 11(c)(2).

collateral allegations, personal characterizations, or unrelated proceedings during this conference. I also do not seek to discuss any bar-complaint issue in this Rule 11 conference." (*Id.*).

That sentence contains no threat. It is simply a limitation—Plaintiff telling APA what the conference would not cover. Shiffrin mischaracterized that boundary as a threat and relied on that characterization to justify refusing the Plaintiff's request for telephonic conference as otherwise mandated by this Court's standing order. (ECF No. 177 at 3). The following day, Plaintiff wrote directly to Shiffrin and lead counsel Capri Trigo: "Your October 19 email states that my prior letter implied a threat. It did not. In no way, implied or otherwise, did that letter threaten bar discipline or any collateral consequence. It addressed only the Rule 11 motion previously served on September 26. I expressly stated I would not raise bar-complaint issues in any conference, and I stand by that." (*Id.* at 2-3).

Shiffrin never withdrew the characterization. He simply repeated it as justification for refusing a court-ordered conference.

When counsel characterizes a non-threatening limitation as a threat that does not exist in the text, refuses to correct it when shown the text, and then uses that invented threat to justify non-compliance with this Court's good faith conferral order, the Court is entitled to weigh that conduct in assessing the credibility of everything else APA asks for in this opposition—including its fee request and its pre-filing injunction.

At a minimum, APA comes to this court with unclean hands seeking sanctions against plaintiff based on its own self-admitted misattribution of a federal court order (ECF No. 321 at 2-3). APA's conduct is relevant to the discretionary relief it seeks, and supports denying APA's fee request and pre-filing request in its entirety.

**VI. APA'S FEE REQUEST UNDER RULE 11(c)(2) SHOULD BE DENIED**

APA's October 19 email stated it would seek fees under Rule 11(c)(2) if Plaintiff persisted in filing. APA's opposition now formally requests them. (ECF No. 323 at 9). Rule 11(c)(2) permits a court to award reasonable expenses to a prevailing party on a Rule 11 motion. APA is not a prevailing party on this motion. The motion is pending. More fundamentally, APA's own conduct in responding to the motion is itself subject to Rule 11 scrutiny.

The 1993 advisory committee notes to Rule 11 state that a litigant's obligations "are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." APA's October 14 filing reproduced the Utah order's text, including its explicit reference to "defendant," while continuing to defend APA's misattribution of that language to Plaintiff. It then realleged the contrary attribution in opposition to the Plaintiff's Rule 11 motion doubling down on the misattribution as support for a pre-filing injunction. (ECF No. 323 at 2-3).

That is continued advocacy of a factual attribution that APA had been expressly asked to withdraw and its own filings showed was inconsistent with the Utah order's plain and unambiguous text.

APA also cites *Smith* for the proposition that fees may be awarded without a cross-motion. (*Id.* at 4, 6-7). *Smith* does not authorize fees for a party that stonewalled the very good faith conferral in-person or telephonic process that this Court mandated and enforced under threat of sanctions. (ECF No. 177 at 3, 6). APA's fee request should be denied because APA's own conduct in responding to the motion is part of the procedural record the Court must evaluate.

Here APA seeks an extraordinary remedy—a pre-filing injunction restricting Plaintiff's access to this Court—without filing a standalone motion. That request appears only as an

embedded ask inside its Rule 60 opposition (ECF No. 317 at 11-12), denying Plaintiff the dedicated notice, briefing and response such relief demands. Imposing that remedy based solely on an embedded request would be procedurally highly prejudicial and would deny Plaintiff the focused notice and opportunity to respond that an extraordinary filing restriction requires. And APA should not receive it while refusing to confer in good faith and ignoring its duty comply as otherwise mandated by this Court's standing order (ECF No. 177 at 3,6).

Therefore, APA's request should be denied outright.

**VII. CONCLUSION**

APA misattributed a federal court order in its "Defendant's Correction Regarding ECF No. 317" (ECF No. 317 at 11-12). When shown the order's plain text, it refused to withdraw or amend. (ECF No. 322, Ex. 1 at 1). When pressed to confer as this Court's scheduling order mandates (ECF No. 177 at 3) it stonewalled—and sponsoring counsel Capri Trigo, whom Plaintiff specifically requested to participate, never responded at all. (ECF 322, Ex. 3 at 1-4). Each failure is sanctionable under either Rule 11 or this Court's scheduling order's "Duty to Comply" (ECF No. 177 at 6), which explcitly warns that non-compliance with that order may result in sanctions including dismissal of the action or entry of default.

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that the Court strike APA's opposition in its entirety for failure to confer in good faith and its explicit duty to comply with this Court's Order. (*Id.* at 3, 6), or in the alternative strike APA's requests for attorneys' fees and pre-filing screening restrictions (ECF No. 323 at 8) as the product of unclean hands, deny those requests on the merits, and impose such sanctions as the Court deems appropriate.

Dated November 10, 2026.

Respectfully submitted,

Lawrence M. Meadows
Plaintiff, Pro Se
1900 Sunset Harbour Drive, #2112
Miami Beach, Florida 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, Plaintiff, Pro Se, certify that on November 10, 2026, I served a true and correct copy of the foregoing through the Court's CM/ECF system, U.S. Mail, and email, upon the following counsel of record.

Lawrence M. Meadows

## SERVICE LIST

**Capri Trigo, Esq.**
**Shea Kleinman, Esq.**
Gordon & Rees LLP
100 SE Second Street, Suite 3900
Miami, FL 33131
Email: ctrigo@grsm.com; ctrigo@gordonrees.com; skleinman@grsm.com

*Lead Counsel for Defendant*

**John M. Pellettieri, Esq.**
**Lane M. Shadgett, Esq.**
**Joshua B. Shiffrin, Esq.**
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Emails: jshiffrin@bredhoff.com; jpellettieri@bredhoff.com; lshadgett@bredhoff.com

*Pro Hac Vice Counsel for Defendant*

ORIGIN ID:PKCA (516) 982-7771
LAWRENCE MEADOWS
1900 SUNSET HARBOUR DR 2112
MIAMI BEACH, FL 33139
UNITED STATES US

SHIP DATE: 10NOV26
ACTWGT: 0.15 LB
CAD: 6575332/ROSA2710

TO WILKIE GERGUSON U.S COURTHOUSE
ATTN: CLERK OF COURT, ROOM 8N09
400 NORTH MIAMI AVENUE

MIAMI FL 33128
(305) 523-5100

FedEx Express

E

REL# 3765346

TRK# 0201 8799 4301 0107

WED - 11 NOV 10:30A
PRIORITY OVERNIGHT

XA MPBA

33128
FL-US MIA

REC'D BY

NOV 12 202

ANGELA E. NOB
CLERK U.S. DIST.
S.D. OF FLA.